**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**
www.flsb.uscourts.gov

In Re:

AUTO WHOLESALE OF BOCA, LLC,

      Debtor.

_____/

Case No.: 22-15627-EPK

FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership; FVP INVESTMENTS, LLC, a Delaware limited liability company; and FVP SERVICING, LLC, a Delaware limited liability company,

      Plaintiffs,

vs.

AUTO WHOLESALE OF BOCA, LLC,

      Defendant.

_____/

Adversary Case No.: 22-_____-EPK

**VERIFIED ADVERSARY COMPLAINT**
**TO DETERMINE EXTENT, VALIDITY AND PRIORITY OF LIENS**
**IN PROPERTY HELD BY DEBTOR,  FOR INJUNCTIVE RELIEF AS REQUIRED,**
<u>**REPLEVIN AND DECLARATORY RELIEF**</u>

COME NOW the Adversary Plaintiffs, FVP Opportunity Fund III, LP, a Delaware limited partnership (the "FVP Fund"), FVP Investments LLC, a Delaware limited liability company ("FVP Investments"), and FVP Servicing, LLC, a Delaware limited liability company ("FVP Servicing") (collectively, the "Plaintiffs"), and as and for their Complaint against Adversary Defendant Auto Wholesale of Boca, LLC, a Florida limited liability company (the "Defendant" or "AWB"), allege as follows:

**Parties**

1. At all times material hereto, Plaintiff the FVP Fund was and is a Delaware limited partnership with its principal place of business in New York County, New York.

2. At all times material hereto, Plaintiff FVP Investments was and is a Delaware limited liability company with its principal place of business in New York County, New York.

3. At all times material hereto, Plaintiff FVP Servicing was and is a Delaware limited liability company with its principal place of business in New York County, New York.

4. At all times material hereto, Defendant AWB was and is a Florida limited liability company with its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida and Palm Beach County, Florida, and is otherwise *sui juris.*

**Jurisdiction and Venue**

5. On July 22, 2020 (the "Petition Date"), Defendant AWB filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, bearing case number 22-15627-EPK.

6. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334, 1652 and 2201; Fed. R. Civ. P. 57; and B.R. 7001(1)-(2), (7) and (9),

7. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), (K) and (O).

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408-09.

**Allegations Common to Each Count**

9. The Plaintiffs, as lenders, entered into Loan and Security Agreements with listed creditors Karma of Palm Beach, Inc. and Karma of Broward, Inc., along with their individual

owners Scott Zankl and Kristen Zankl (collectively, the "Karmas"), on or about January 26, 2022.

The executed and operative transactional documents between the Plaintiffs and the Karmas include

the following, affixed hereto respectively as the following exhibit letters:

a. **Exhibit A.**  UCC and Security Interest Report of Karma of Palm Beach, Inc. ("Karma of Palm Beach") and Karma of Broward, Inc. ("Karma of Broward") dated January 11, 2022.

b. **Exhibit B.**  "Loan Agreement" by and between Karma of Palm Beach and Karma of Broward, each a "Borrower" and, together, "Borrowers," and FVP Servicing, as administrative agent.

c. **Exhibit C**. Promissory Note by Karma of Palm Beach and Karma of Broward in favor of FVP Investments, LLC, a Delaware limited liability company, as Noteholder - *$3,000,000.00*.

d. **Exhibit D**. Promissory Note by Karma of Palm Beach and Karma of Broward in favor of the FVP Fund, as Noteholder - *$4,500,000.00*.

e. **Exhibit E**. Personal Guaranty of Scott Zankl and Kristen Zankl (each a "Guarantor" and, together, "Guarantors") in favor of Agent and the Lenders.

f. **Exhibit F**. Security Agreement by and between Karma of Palm Beach and Karma of Broward, on the one hand, and FVP Servicing, on the other hand as administrative agent.

g. **Exhibit G**. Collateral Pledge Agreement by and between Karma of Palm Beach and Karma of Broward, on the one hand, and FVP Servicing, on the other hand as administrative agent.

h. **Exhibit H**. UCC Financing Statement on Assets of Karma of Palm Beach and Karma of Broward.

i. **Exhibit I**. UCC Financing Statement on Equity of Karma of Palm Beach and Karma of Broward.

j. **Exhibit J**. Intercreditor Agreement - FVP Servicing and Westlake Flooring Company, LLC.

k.  **Exhibit K**. Landlord Waiver and Consent.[1]

l.  **Exhibit L.** Letter signed by Kristen Zankl purporting to transfer the Plaintiffs' collateral to Moshe Farache as a result of the threats of violence to Scott Zankl as pled in this Complaint.

m.  **Exhibit M.** Default Letter to Karma of Palm Beach and Karma of Broward from FVP Servicing.

10.  As is reflected in the Exhibits, the Karma entities were never indebted to Farache or AWB. However, the Zankl's owned another entity, Excell Auto Group, Inc., that was indebted to Farache and AWB in which AWB held a UCC filing.

11.  On or about April 1, 2022, the Plaintiffs learned that all of the vehicles listed on their collateral inventory, and expressly serving as collateral for their loans to the Karmas, were removed from the Karmas' lots and that the businesses were closed.

12.  After repeated attempts to communicate with their Karmas borrowers went unanswered, and with the Plaintiffs' representatives having observed their collateral automobiles being missing from the lots of both Karma of Broward and Karma of Palm Beach, the Plaintiffs notified the Karmas of their default, (**Exhibit M**), and immediately retained a private investigator with federal law enforcement experience to attempt to determine what happened to the Karmas, and what happened to the automobiles expressly serving as collateral for the Plaintiffs' loans to the Karmas.

13.  The Plaintiffs learned through their private investigator that the vehicles were taken

---

[1] The "Landlord" who acknowledged and recognized the Plaintiffs' collateral now wrongfully taken by AWB as pled in this Complaint, is beneficially owned by Moshe Farache, an owner of AWB.

by Moshe Farache ("Farache"), AWB's manager and also husband and father to AWB's other two owners pursuant to AWB's Petition.

14.    The private investigator hired by the Plaintiffs, coincidentally, was personally known to Scott Zankl and Kristen Zankl. After contacting Scott Zankl and gaining his trust, Scott Zankl gave several statements to this investigator regarding the events that occurred with Farache and the Plaintiffs' collateral automobiles. Scott Zankl told the investigator:

   a. That the Zankl's were indebted to Farache from past loans which were years old.

   b. That Farache had threatened the life of Scott Zankl.

   c. That Farache had threatened to make Scott Zankl "disappear" if he did not turn over to Farache and AWB the Plaintiffs' collateral.

   d. That both Scott Zankl and Kristen Zankl were petrified of Farache.

   e. That Farache appeared at the Karma of Palm Beach location on April 1, 2022 and told Scott Zankl and Kristen Zankl that Scott Zankl would "disappear" if they did not give Farache every car along with their titles and keys.

   f. That in extreme fear for their lives, the Zankl's turned over all of the Plaintiffs' collateral automobiles, keys and titles on the lot to Farache, and that Kristen Zankl signed a document produced by Farache, (**Exhibit L**), which on its face indicates that it is "collateral" for the money owed to Farache by Scott Zankl and Kristen Zankl.

g. That **Exhibit L** was signed under direct threat to the life of Scott Zankl.

h. That Scott Zankl and Kristen Zankl considered that Farache stole the Plaintiffs' collateral automobiles by threat.

i. That Scott Zankl and Kristen Zankl were initially afraid to report the matter to the police because they feared that Farache would seek violent revenge and that the police could not protect them.

j. That on April 8, 2022, the Zankl's ultimately reported to the police that Farache had, in fact, stolen the vehicles through extortion the week prior. *See Boca Raton Police Department – Report Case No.: 22-4685.*

15. Of the many vehicles taken by Farache on April 1, 2022, nineteen (19) of the vehicles that were taken by Farache are those vehicles listed in Debtor AWB's Petition at Part B, paragraphs 46 and 47, as "owned" by the Debtor (collectively, the "Disputed Vehicles").

16. The Disputed Vehicles are subject to the superior security interest of the Plaintiffs and were taken and converted by AWB against the superior interests in this property of the Plaintiffs. *See generally* **Exhibit N** (providing a spreadsheet showing that, other than two cars which were ultimately transferred to the Karmas' inventory prior to being taken by Farache, all of the Disputed Vehicles were purchased by the Karmas). The Plaintiffs are in possession of far more detailed summaries showing the fraudulent transfer of the vehicles by AWB.

17. AWB wrongly and fraudulently transferred titles to itself for the Disputed Vehicles without right or authority.

18.     At no time was AWB a buyer in the ordinary course as defined under UCC Article 9 or the Florida Statutes.

19.     AWB has naked possession and naked title to those Disputed Vehicles, and the Disputed Vehicles are subject to a perfected UCC lien on the vehicles which existed when AWB wrongfully took possession of, and wrongfully transferred title to itself, as to the Disputed Vehicles.  Plaintiffs' Liens on the Disputed Vehicles will be referred to for convenience as the "Liens").

20.      Debtor AWB wrongfully and fraudulently lists those Disputed Vehicles as property of Debtor AWB to defraud its creditors.

21.     The Plaintiffs filed suit against AWB in the Circuit Court of Broward County, Florida in Case No.: CACE-22-5125 seeking replevin of the disputed vehicles, the appointment of a receiver and injunctive relief.

22.     The Broward Circuit Court, on April 14, 2022, entered a freeze order prohibiting Debtor AWB from transferring the Disputed Vehicles.  For clarity, the freeze order was an oral ruling only, (for ease,  the "Freeze Order")

23.     Creditor Hi Bar Capital, Inc. also intervened in that action and asserted identical claims against AWB as a priority lien holder.

24.     On May 25, 2022, the Circuit Court Judge issued its rule to show cause in replevin and scheduled the hearing for July 7, 2022 together with the Plaintiffs' motions for the aforementioned relief. **Exhibit O**.

25.     AWB's attorneys moved to vacate the freeze order, which the Circuit Court Judge denied and set a two day evidentiary hearing on the Plaintiffs' Motions for the aforementioned relief for July 25, 2022 and July 26, 2022. **Exhibit P**.

26.     The Broward Circuit Judge also set a contempt hearing for the morning of July 26, 2022 for Moshe Farache as a result of alleged intentional misrepresentations to the Circuit Court. **Exhibit Q.**

27.     On the proverbial eve of this omnibus hearing at the eleventh hour, AWB filed the instant Chapter 11 Bankruptcy.

28.     The Plaintiffs fear that AWB will attempt to transfer, sell, hypothecate or otherwise dispose of the Disputed Vehicles, and seek an order of this Court maintaining the status quo pending an adjudication of the rights of the parties.

29.     The Plaintiffs seek a preliminary determination of their rights as to priority of interest as to Debtor AWB.

30.     The Plaintiffs acknowledge a competing assertion of a lien to the same Disputed Vehicles by Hi Bar Capital, LLC, a New York Limited Liability Company, in the Broward County Circuit Court action which, if valid, would also be superior in rights to the claims of AWB. All rights relative to the dispute between the Plaintiffs and Hi Bar Capital, LLC as to priority between their respective claims is reserved by the Plaintiffs for future filings in this action, or, if appropriate, on remand to the Broward County Circuit Court action.

**Verification Page to Follow**

## <u>VERIFICATION OF PLEADING</u>

I, Keith Lee, as an authorized officer of all of the Plaintiffs, hereby swear and affirm that

the statements and representations made herein are true and correct.

_____

Keith Lee

STATE OF                    )

COUNTY OF                    )

The foregoing instrument was acknowledged before me on July 24, 2022 by Keith Lee, in his authorized capacity for the FVP Fund, FVP Investments and FVP Servicing, who is personally known to me ( ) or ( ) who produced a New York driver's license as identification, and who did take an oath and having acknowledged that each has executed this document for the purposes stated therein.

Notary Public

My commission expires

## Count One
## Determination of Extent, Validity and Priority of Liens

31.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

32.     The Plaintiffs seek a determination of the extent, validity and priority of their Liens on the Disputed Vehicles.

33.     B.R. 7001(2) affords the Plaintiffs the right to bring an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property."

34.     The Plaintiffs claim superiority of interest against AWB in the Disputed Vehicles pursuant to the UCC filings of record granting the Plaintiffs a valid and perfected lien in their collateral which were wrongfully taken by AWB.

35.     The Security Agreements and Financing Statements filed by the Plaintiffs conform to applicable law and create perfected security interests in the Karmas' vehicle inventory as of the date they were filed – January 26, 2022.

36.     As mandated by Section 679.2011(1) of the Florida Statutes, "a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors."

37.     AWB claims to be a purchaser of the Disputed Vehicles in its possession which are subject to the replevin complaints of the Plaintiffs and Hi Bar Capital, LLC. So, absent some exception recognized under Article 9 of the UCC, the Plaintiffs' right to recover their collateral through authorized remedies under Florida law trumps any claim of AWB as an alleged purchaser

of that same collateral or as an alleged creditor of the Karmas.

38.     The Plaintiffs, as secured parties, have the clear right to recover possession of their collateral upon default pursuant to their Security Agreements, Part 6 of Article 9 of the UCC (Sections 679.601 and 679.609 of the Florida Statutes), and Florida's Replevin law (Chapter 78 of the Florida Statutes).

39.     The Plaintiffs' perfected security interests relative to any vehicle that the Karmas acquired beginning upon the filing of the financing statements prevails over any claim of AWB to these Disputed Vehicles, unless AWB was a "buyer in the ordinary course of business" (a "BitOCoB") with respect to its acquisition of the vehicles. *See* § Section 679.320, Fla. Stat. [2] This provision states:

> **679.320   Buyer of goods.**—
>
> (1)   Except as otherwise provided in subsection (5), a buyer in ordinary course of business, … takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence.

40.     Section 671.201(9) of the Florida Statutes defines a BitOCoB as follows, in relevant part:

> (9)   "Buyer in ordinary course of business" means a person who, in ordinary course, buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with

---

[2] Of course, AWB's claim to ownership of the Disputed Vehicles could also be subject to challenge under other legal theories, including based on Chapter 726 of the Florida Statutes, the State's fraudulent transfer statute, rooted in either actual fraud or constructive fraud.

the seller's own usual or customary practices. …. A buyer in ordinary course of business may buy for cash, by exchange of other property, or on secured or unsecured credit and may acquire goods or documents of title under a preexisting contract for sale. Only a buyer who takes possession of the goods or has a right to recover the goods from the seller under chapter 672 may be a buyer in ordinary course of business. "Buyer in ordinary course of business" does not include a person who acquires goods in a transfer in bulk or as security for or in total or partial satisfaction of a money debt.

(Emphasis added).

41.     "Good faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing." *See* § 679.1021(qq), Fla. Stat. It is no longer merely a subjective standard, as made clear in the Official Comment thereto.

42.     AWB is another car dealer licensed as such in Florida, and therefore is a "merchant" under the UCC.

43.     In contrast, AWB is not an ordinary customer who walks into a retail dealership to buy a car. Moreover, the conduct, documentation and financial dealings between AWB and the Karmas and their agents were anything but "ordinary course." The purported sales to AWB did not, as required by Section 671.201(9) of the Florida Statutes, "comport with the usual or customary practices in the kind of business in which [the Karmas are] engaged or with the seller's own usual or customary practices." The Karmas were not in the business of selling large numbers of their cars to a wholesaler.

44.     In all events, the principals of the Karmas, Scott Zankl and Kristen Zankl, and of AWB, Farache, engaged in a series of business transactions involving the exchange of hundreds of pages of documents, funds flowing back and forth between the parties, the "fast tracking" of

applications to change the name of the owner on Certificates of Title, and many emails back and forth between them and their agents where the alleged buyer AWB is clearly leading the process.

45.     Moreover, AWB and Excell Auto Group, Inc. ("Excell"), now in its own Chapter 7 proceeding, had a pre-existing business relationship. Excell may have owed AWB money, and AWB may have had agreements with Excell that granted it a security interest in assets of Excell. Farache also may be or may have been an investor in Excell and/or its affiliates. However, what AWB was not a secured party of the Karmas at the legally relevant times.

46.     At some point, Farache, for AWB, decided to exercise self-help to try to recover money allegedly owed to him by Excell and/or Scott Zankl. AWB engaged in, and in fact led, a series of orchestrated transactions to try to reflect that AWB was buying cars from Excell, but in fact, those cars had been acquired by the Karmas from various third parties (persons or other dealers). The Karmas' names appear as the first "purchaser" on the original Certificates of Title. Farache and agents of AWB, with Scott Zankl's cooperation or acquiescence on the heels of the threats of violence made by Farache, manipulated the transactions and documents to cause purchase papers and title documents to reflect "fake," or at least "not ordinary," sales from the Karmas to AWB, or from the Karmas to Excell and then from Excell to AWB.

47.     The Plaintiffs seek an order and then a judgment stating that the Plaintiffs have a superior right in and to the Disputed Vehicles.

WHEREFORE, Plaintiffs seek an order stating that they have a superior right in and to the Disputed Vehicles, and awarding the Plaintiffs their costs and expenses, including reasonable attorneys' fees and the costs of suit, as well as such further relief as the Court deems just and

proper.

## Count Two
## Injunctive Relief As May Be Required

48.     The Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

49.     Injunctive relief is available to the Plaintiffs pursuant to B.R. 7001(7), which provides that an adversary proceeding may include "a proceeding to obtain an injunction or other equitable relief."

50.     The Plaintiffs have a clear legal right to the property superior to that of AWB.

51.     Given the existing Freeze Order in the state court that remains in effect.  If so, this Court can recognize the efficacy of that Freeze Order and Plaintiff needs no further relief in that regard.

52.     Alternatively, this Court can and should enter a similar injunction enjoining the Debtor from selling or otherwise alienating any of the Disputed Vehicles in any way, (generally, a "Sale"), pending the determination of the issues raised herein.

53.     Alternatively, the Court can and should find and determine that the Sale of any Disputed Vehicles in this context is outside the ordinary course of the Debtor's business and is enjoined without an express order of this court approving any such Sale.

54.     Given the foregoing, what the Plaintiffs seek is simply to maintain the status quo pending the determination of the ownership of the Disputed Vehicles and the obvious related issues.

WHEREFORE, if and as necessary, the Plaintiffs seek an order stating that they have a

superior right in and to the Disputed Vehicles, along with injunctive relief, designed to maintain the *status quo*, prohibiting the sale, transfer, hypothecation or movement of the Disputed Vehicles pending further order of the Court, and awarding the Plaintiffs their costs and expenses, including reasonable attorneys' fees and the costs of suit, as well as such further relief as the Court deems just and proper.

**Count Three**
**Replevin**

55.     The Plaintiffs reallege paragraphs 1 through 30  and 32 through 46 as if fully restated within this Count, and further allege that:

56.     This is an action for replevin under Chapter 78 of the Florida Statutes by the Plaintiffs against AWB.

57.     A description of the claimed property that is sufficient to make possible its identification and a requisite statement, to the best knowledge, information and belief of the Plaintiffs, is that it is the Plaintiffs' Collateral, as defined and detailed in this pleading, the Security Agreement and the UCC financing statements. See Exhibits A-G and defined in this Complaint as the Disputed Vehicles.

58.     The value of such property, rights and assets is less than the Loan's aggregate principal amount of Seven Million Five Hundred Thousand and No/100 Dollars ($7,500,000.00).

59.     The location of at least some of the Plaintiffs' collateral, upon information and belief, is at various locations in Palm Beach County, Florida owned or otherwise controlled, at least beneficially, by Farache or AWB, and other locations unknown to the Plaintiffs at this time.

60.     The Plaintiffs have a clear right to their collateral and are entitled to possession of

it.

61.    The Plaintiffs' collateral, in part, has been wrongfully detained by Farache and AWB.

62.    The means by which Farache and AWB came into possession of the Plaintiffs' collateral were unlawful, fraudulent and the result of threats and extortion.

63.    The Plaintiffs' collateral has not been taken for a tax, assessment or fine pursuant to law.

64.    The Plaintiffs' collateral has not been taken under an execution of an attachment against the property of the Plaintiffs.

65.    The Plaintiffs demanded the turnover of their collateral from AWB but Farache and his companies, through their attorney, refuse to return it.

66.    The Plaintiffs are entitled to recover from AWB the Plaintiffs' collateral in their possession, wherever located.

Request for Order to Show Cause in Replevin

67. The Plaintiffs demand that this Honorable Court issue its rule to show cause in replevin in the same manner as that issued by the state court in compliance with the requirements of Fla. Stat. § 78.065 which states:

**78.065    Order to show cause; contents.**—
"(1)    The court without delay shall examine the complaint filed; and, if on the basis of the complaint and further showing of the plaintiff in support of it the court finds that the defendant has waived in accordance with s. 78.075 his or her right to be notified and heard, the court shall promptly issue an order authorizing the clerk of the court to issue a writ of replevin.

(2)    If, upon examination of the complaint filed and on further showing of the plaintiff in support of it, the court finds that the defendant has not waived in accordance with

s. 78.075 his or her right to be notified and heard, the court shall promptly issue an order directed to the defendant to show cause why the claimed property should not be taken from the possession of the defendant and delivered to plaintiff. Such order shall:

(a)    Fix the date and time for hearing on the order. However, the date for the hearing shall not be set sooner than 5 days after the service of the order.

(b)    Direct the time within which service of the order and the complaint shall be made upon the defendant."

and thereafter hold a hearing pursuant to Fla. Stat. § 78.06.

**WHEREFORE**, the Plaintiffs request judgment against AWB and ordering AWB and to return to the Plaintiffs all of the Plaintiffs' collateral in their possession and/or a writ of replevin as required, and such other and further emergency injunctive and/or equitable relief as this Court deems just and proper.

## Count Four
## Declaratory Relief

68.    Plaintiffs repeats and realleges the allegations contained in paragraphs 1 through 29 as if fully set forth herein.

69.    A complaint for Declaratory Relief brought pursuant to B.R. 7001(9) can provide the same relief as is available to the Plaintiffs pursuant to B.R. 7001(1), (2) and (7), because the Rule provides that a declaratory judgment can include any of the relief available in any other type of adversary proceeding. It provides that an adversary proceeding includes "a proceeding to obtain a declaratory judgment relating to any of the foregoing," i.e., any of the adversary proceeding types delineated in B.R. 7001(1) through (8).

70.    The Plaintiffs seek declaratory rulings as are determined by the Court, and as is necessary to carry out the purposes and intents of the relief requested in this Complaint.

71.    The Plaintiffs seek a declaration that their rights are superior as to the Disputed

Vehicles than those asserted by Defendant AWB.

WHEREFORE, the Plaintiffs seek a determination of entitlement to their collateral property as set forth herein and awarding the Plaintiffs their cost and expenses, including reasonable attorneys' fees and the costs of suit, as well as such further relief as this Court deems just and proper.

Dated July 24, 2022.

David Softness, Esq.
David R. Softness, P.A.
201 S. Biscayne Blvd., Ste 2740
Miami, Florida 33131
Phone: (305) 763-8708
E-mail: dan@dyglaw.com

Jerrell A. Breslin, Esq.
Baron, Breslin & Sarmiento
The DuPont Building, 169 East Flagler Street, #700
Miami, Florida 33131
Phone: (305) 577-4626
E-mail: JB@RichardBaronLaw.com
           EService@RichardBaronLaw.com

Jonathan Noah Schwartz, Esq.
Florida Bar No. 1014596
Jonathan Schwartz Law PLLC
10200 NW 25th Street, Suite 111
Doral, FL 33172
Tel.: (973) 936-2176
Fax: (786) 338-7435
E-mails:      jschwartz@jonschwartzlaw.com
                  JNSEsquire@gmail.com

David R. Softness, P.A.
201 S Biscayne Blvd Ste 2740
Miami, FL 33131-4332
Tel:  305-341-3111
Email: david@softnesslaw.com

By:     s/  David R. Softness
          David R. Softness, Esq.
          Florida Bar No. 513229

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that; I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that a true and correct copy of the foregoing was served via CM/ECF electronic transmission upon those parties who are registered with the Court to receive notifications in this matter.

/ s/  David R. Softness
David R. Softness, Esq.

## INDEX TO EXHIBITS

**EXHIBIT A.**  UCC and Security Interest Report of Karma of Palm Beach, Inc. ("Karma of Palm Beach"), Karma of Broward, Inc. ("Karma of Broward") dated January 11, 2022.

**EXHIBIT B.**  "Loan Agreement" by and between Karma of Palm Beach and Karma of Broward each, a "Borrower" and, together, "Borrowers" and FVP Servicing, LLC, a Delaware limited liability company, as administrative agent.

**EXHIBIT C**. Promissory Note by Karma of Palm Beach, Inc. and Karma of Broward, Inc. in favor of FVP Investments, LLC a Delaware limited liability company as Noteholder - $3,000,000.00.

**EXHIBIT D**. Promissory Note by Karma of Palm Beach, Inc. and Karma of Broward, Inc. in favor of in favor of FVP Opportunity Fund III, LP a Delaware limited partnership as Noteholder - $4,500,000.00.

**EXHIBIT E**. Personal Guaranty of Scott Zankl and Kristen Zankl (each, a "Guarantor" and, together, "Guarantors") in favor of Agent and the Lenders.

**EXHIBIT F**. Security Agreement by and between Karma of Palm Beach, Inc. and Karma of Broward, Inc. and FVP Servicing, LLC, a Delaware limited liability company, as administrative agent.

**EXHIBIT G**. Collateral Pledge Agreement by and between Karma of Palm Beach, Inc. and Karma of Broward, Inc. and FVP Servicing, LLC, a Delaware limited liability company, as administrative agent.

**EXHIBIT H**. UCC Financing Statement on Assets of Karma of Palm Beach, Inc. and Karma of Broward, Inc.

**EXHIBIT I**. UCC Financing Statement on Equity of Karma of Palm Beach, Inc. and Karma of Broward, Inc.

**EXHIBIT J**. Intercreditor Agreement - FVP Servicing, LLC, and Westlake Flooring Company, LLC

**EXHIBIT K**. Landlord Waiver and Consent

**EXHIBIT L.** Letter signed by Kristen Zankl transferring the collateral to Moshe Farache

**EXHIBIT M.** Default Letter to Karma of Palm Beach, Inc. and Karma of Broward, Inc. from FVP Servicing, LLC

**EXHIBIT N**. Spreadsheet showing the purchase of the Disputed Automobiles.

**EXHIBIT O**. May 25, 2022 order of Circuit Court of Broward County issuing its rule to show cause in replevin and scheduling a hearing on the Plaintiff's motions for replevin, receivership and injunction.

**EXHIBIT P**. June 7, 2022 order of Circuit Court of Broward County denying the Farache Defendants motion to dissolve injunction and setting a two day evidentiary hearing on Plaintiffs motions for replevin, receivership and injunction.

**EXHIBIT Q**. Order issuing rule to show cause in contempt and setting contempt hearing for Moshe Farache for July 27, 2022.

# EXHIBIT A



Date:                01/13/2022   Exhibits Page 4 of 396
Reference:           Feenix Karma (1700101-54)
Copies Requested:    All Copies Excluding Lapsed Filings
Copy Cost Limit:     $50.00

Searched Through:   01/11/2022
Subject:            Zankl, Scott T.
Jurisdiction:       Secured Transaction Registry, FL
Index Searched:     UCC

| FILE DATE | FILE # | TYPE OF FILING | SECURED PARTY |
|-----------|--------|----------------|---------------|
| NONE OF RECORD | | | |

*Capitol Services, Inc. and its affiliates make no express or implied representation or warranty regarding search reports. All liability shall be limited to the amount of the fee paid for the report.*

**Capitol Services, Inc.** ★ PO Box 1831 ★ Austin, TX 78767 ★ (800) 345-4647



9-13214223K

Page: 1 of 1



Date:                          01/13/2022    Exhibits Page 5 of 396
Reference:                   Feenix Karma (1700101-54)
Copies Requested:        All Copies Excluding Lapsed Filings
Copy Cost Limit:          $50.00

Searched Through:     01/11/2022
Subject:                    Zankl, Kristen N.
Jurisdiction:             Secured Transaction Registry, FL
Index Searched:         UCC

| FILE DATE | FILE # | TYPE OF FILING | SECURED PARTY |
|-----------|--------|----------------|---------------|

NONE OF RECORD

*Capitol Services, Inc. and its affiliates make no express or implied representation or warranty regarding search reports. All liability shall be limited to the amount of the fee paid for the report.*

**Capitol Services, Inc.** ★ PO Box 1831 ★ Austin, TX 78767 ★ (800) 345-4647



9-13214224L

Page: 1 of 1



Date:            01/13/2022    Exhibits Page 6 of 396
Reference:       Feenix Karma (1700101-54)
Copies Requested:  All Copies Excluding Lapsed Filings
Copy Cost Limit:  $50.00

| | |
|---|---|
| Searched Through: | 01/11/2022 |
| Subject: | Karma of Broward, Inc. |
| Jurisdiction: | Secured Transaction Registry, FL |
| Index Searched: | UCC |

| FILE DATE | FILE # | TYPE OF FILING | SECURED PARTY |
|---|---|---|---|
| 03/26/2021 | 202106583131 | Financing Statement | FRANKLIN CAPITAL GROUP, LLC<br>FARMINGTON HILLS, MI |
| 11/05/2021 | 202109046722 | Amendment | |
| 11/16/2021 | 20210917156X | Amendment | |
| 11/16/2021 | 202109171578 | Amendment | |
| 11/29/2021 | 202109288491 | Amendment | |
| 11/29/2021 | 202109288505 | Amendment | |
| 12/15/2021 | 202109474228 | Financing Statement | EXCELL AUTO GROUP, INC.<br>BOCA RATON, FL |
| 12/29/2021 | 202109634419 | Termination | |
| 12/15/2021 | 202109478290 | Financing Statement | HI BAR CAPITAL<br>BROOKLYN, NY |
| 12/19/2021 | 202109512183 | Termination | |

*Capitol Services, Inc. and its affiliates make no express or implied representation or warranty regarding search reports. All liability shall be limited to the amount of the fee paid for the report.*

Capitol Services, Inc. ★ PO Box 1831 ★ Austin, TX 78767 ★ (800) 345-4647



9-13214225M

FLORIDA SECURED TRANSACTION REGISTRY

FILED

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

2021 Mar 26 09:56 AM

****** 202106583131 ******

A. NAME & PHONE OF CONTACT AT FILER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071

79641585

FLFL

File with: Department of State, FL

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO GROUP INC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1001 CLINTMOORE RD | BOCA RATON | FL | 33487 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ZANKL | KRISTEN | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 16937 PIERRE CIRCLE | DELRAY BEACH | FL | 33446 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| C T Corporation System, as representative | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 330 N Brand Blvd, Suite 700; Attn: SPRS | Glendale | CA | 91203 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
Receivables - All assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c.Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCES IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

☐ All documentary stamps due and payable
or to become due and payable pursuant to s. 201.22.F.S. have been paid

☒ Florida documentary stamp tax is not required

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
79641585

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| EXCELL AUTO GROUP INC |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| ZANKL |
| INDIVIDUAL'S FIRST PERSONAL NAME |
| THOMAS SCOTT |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16937 PIERRE CIRCLE | DELRAY BEACH | FL | 33446 | USA |

11. ☐ ADDITIONAL SECURED PARTY'S NAME    or    ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:  79641585-FL-0                         C T Corporation System, as          File with: Department of State, FL

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 18a. ORGANIZATION'S NAME |
|---|
| EXCELL AUTO GROUP INC |

OR

| 18b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KARMA OF BROWARD, INC | | | | |

OR

| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1699 S. FEDERAL HIGHWAY, SUITE 300 | BOCA RATON | FL | 33432 | USA |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KARMA OF PALM BEACH, INC. | | | | |

OR

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1001 CLINT MOORE ROAD, SUITE 101 | BOCA RATON | FL | 33487 | USA |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

22. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

23. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|---|
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

24. MISCELLANEOUS: 79641585-FL-0     C T Corporation System, as     File with: Department of State, FL

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2209 59669
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

2021 Nov 05 03:56 PM

****** 202109046722 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                    AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record      ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c      ☐ ADD name: Complete item 7a or 7b, and item 7c      ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME** C T CORPORATION SYSTEM, AS REPRESENTATIVE

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME** FRANKLIN CAPITAL GROUP, LLC

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

| 7c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME** C T CORPORATION SYSTEM, AS REPRESENTATIVE

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP INC - NJR/ASW (15492-72)

2209 59669

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

2021 Nov 16 03:55 PM

****** 20210917156X ******

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

2218 57634
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee In item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☑ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME** KARMA OF PALM BEACH, INC.

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)    SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME** FRANKLIN CAPITAL GROUP, LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor:EXCELL AUTO GROUP INC-15492-72 NJR/ASW

2218 57634

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

2218 55184
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 16 03:55 PM

****** 202109171578 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☑ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME** KARMA OF BROWARD, INC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME** FRANKLIN CAPITAL GROUP, LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor:EXCELL AUTO GROUP INC-15492-72 NJR/ASW

2218 55184

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

2223 27803
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 29 03:53 PM

****** 202109288491 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☑ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ZANKL | THOMAS SCOTT | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor:EXCELL AUTO GROUP INC-15492-72 NJR/ASW

2223 27803

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2223 20264
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 29 03:53 PM

****** 202109288505 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] |
|---|---|
| 202106583131 03/26/2021 | (or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:   **AND** Check one of these three boxes to:

This Change affects ☑ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☑ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

7. **CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME |
|---|

OR

| 7b. INDIVIDUAL'S SURNAME |
|---|
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) |

SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:  Also check one of these four boxes:**   ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral:

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:**  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐  and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC |
|---|

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA: Debtor: EXCELL AUTO GROUP INC - 15492-72 NJR/ASW

2223 20264

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

A. NAME & PHONE OF CONTACT AT FILER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)   44678 - Westlake Flooring

Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071

83880500

FLFL

FILED

2021 Dec 15 10:35 AM

****** 202109474228 ******

File with: Department of State, FL

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| KARMA OF BROWARD, INC. | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 1717 SE 17TH ST | FORT LAUDERDALE | | FL | 33316 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| KARMA BROWARD | | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 1717 SE 17TH ST | FORT LAUDERDALE | | FL | 33316 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| EXCELL AUTO GROUP, INC. | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 1001 CLINT MOORE ROAD STE 101 | BOCA RATON | | FL | 33487 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

All assets of the Debtor now owned or hereafter acquired, including but not limited to, all accounts; all equipment, goods, fixtures, and inventory, including all vehicles, vehicle parts and inventory now owned or hereafter acquired or wherever located, without limitation, purchase money inventory, the purchase of which was financed or floorplanned by Secured Party for Debtor(s); all documents, instruments and chattel paper; all letters of credit and letter-of-credit rights; all securities collateral; all investment property; all intellectual property collateral; all general intangibles; all money and all deposit accounts; all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records relating to any of the foregoing; all motor vehicles; and to the extent not covered by the foregoing, all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty with respect to any of the foregoing.

☒ All documentary stamps due and payable
or to become due and payable pursuant to s. 201.22.F.S. have been paid

☐ Florida documentary stamp tax is not required

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
83880500              100373001

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

EXCEL AUTO GROUP INC.; 5619985557

Email TOM@GRANERLAW.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2021 Dec 29 05:02 PM

****** 202109634419 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 202109474228 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME
KARMA OF BROWARD, INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME
EXCELL AUTO GROUP, INC.

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**4.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☐ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 9c. MAILING ADDRESS Line One | This space not available. | | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**
(name of assignor if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME
EXCELL AUTO GROUP, INC.

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**12. OPTIONAL FILER REFERENCE DATA**

| STANDARD FORM - FORM UCC-3 (REV.08/2018) | Filing Office Copy | Approved by the Secretary of State, State of Florida |
|---|---|---|

**FINANCING STATEMENT FORM**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

Corporation Service Company; 1-800-858-5294

Email FLSOSUCCFilingsV3@cscglobal.com

B. SEND ACKNOWLEDGEMENT TO:

**FILED**

2021 Dec 15 03:21 PM

****** 202109478290 ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO GROUP INC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 1001 CLINT MOORE ROAD #101 | This space not available. | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

| 2c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 1001 CLINT MOORE ROAD #101 | This space not available. | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| HI BAR CAPITAL | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 1825 65th St | This space not available. | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | Brooklyn | NY | 11204 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents chattel paper, licenses, leases and general intangibles, whether now owned acquired or arising, and all of debtor's books and records relating to any of the foregoing.

---

**5. ALTERNATE DESIGNATION (if applicable)**  ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR
☐ AG LIEN  ☐ NON-UCC FILING  ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**     2235 05934

STANDARD FORM - FORM UCC-1 (REV.05/2013)     Filing Office Copy     Approved by the Secretary of State, State of Florida

# STATE OF FLORIDA UNIFORM COMMERICAL CODE
# FINANCING STATEMENT FORM- ADDITIONAL PARTY

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

**20. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (20a OR 20b) - Do Not Abbreviate or Combine Names

20a. ORGANIZATION'S NAME

KARMA OF PALM BEACH INC DBA KARMA OF PALM BEACH

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

20c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (21a OR 21b) - Do Not Abbreviate or Combine Names

21a. ORGANIZATION'S NAME

AUTOMOTIVE SERVICE SYSTEMS, INC.

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

21c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (22a OR 22b) - Do Not Abbreviate or Combine Names

22a. ORGANIZATION'S NAME

KZ CONSULTANTS, INC.

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

22c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (23a OR 23b) - Do Not Abbreviate or Combine Names

23a. ORGANIZATION'S NAME

MISS KRIS, LLC

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

23c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**24. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (24a OR 24b) - Do Not Abbreviate or Combine Names

24a. ORGANIZATION'S NAME

EXCELL AUTO LEASING INC

| 24b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

24c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**25. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (25a OR 25b) - Do Not Abbreviate or Combine Names

25a. ORGANIZATION'S NAME

EXCELL AUTO WHOLESALE INC.

| 25b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

25c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

**26. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (26a OR 26b) - Do Not Abbreviate or Combine Names

26a. ORGANIZATION'S NAME

DEALER SOUQ USA LLC

| 26b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

26c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**27. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (27a OR 27b) - Do Not Abbreviate or Combine Names

27a. ORGANIZATION'S NAME

EAG WHOLESALE LLC

| 27b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

27c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**28. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (28a OR 28b) - Do Not Abbreviate or Combine Names

28a. ORGANIZATION'S NAME

KARMA OF BROWARD, INC.

| 28b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

28c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**29. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (29a OR 29b) - Do Not Abbreviate or Combine Names

29a. ORGANIZATION'S NAME

LAVISH HERO FUND INC

| 29b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

29c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**30. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (30a OR 30b) - Do Not Abbreviate or Combine Names

30a. ORGANIZATION'S NAME

KARMA OF PALM BEACH, INC.

| 30b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

30c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**31. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (31a OR 31b) - Do Not Abbreviate or Combine Names

31a. ORGANIZATION'S NAME

APPLE 3 INVESTMENTS, INC.

| 31b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

31c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

# STATE OF FLORIDA UNIFORM COMMERICAL CODE
## FINANCING STATEMENT FORM - ADDITIONAL PARTY

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

**32. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (32a OR 32b) - Do Not Abbreviate or Combine Names

| 32a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KZ CONSULTANTS INC | | | | |

| 32b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 32c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 1001 CLINT MOORE ROAD #101 | This space not available. | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

STEVEN ZAKHARYAYEV; 9546044222

Email STEVEN@STEVENZLAW.COM

**B. SEND ACKNOWLEDGEMENT TO:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

**1a. INITIAL FINANCING STATEMENT FILE #** 202109478290

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

**2a. ORGANIZATION'S NAME**

EXCELL AUTO GROUP INC

**2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

**3a. ORGANIZATION'S NAME**

HI BAR CAPITAL

**3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

---

**4.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☐ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.
☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.
☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

**8a. ORGANIZATION'S NAME**

**8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 9c. MAILING ADDRESS Line One | | This space not available. | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**
(name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

**11a. ORGANIZATION'S NAME**

HI BAR CAPITAL

**11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**12. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-3 (REV.08/2018)    Filing Office Copy    Approved by the Secretary of State, State of Florida



Exhibits Page 22 of 396

| | |
|---|---|
| **Date:** | 01/14/2022 |
| **Reference:** | Feenix Karma (1700101-54) |
| **Copies Requested:** | All Copies Excluding Lapsed Filings |
| **Copy Cost Limit:** | $50.00 |

| | |
|---|---|
| **Searched Through:** | 01/11/2022 |
| **Subject:** | Karma of Palm Beach, Inc. |
| **Jurisdiction:** | Secured Transaction Registry, FL |
| **Index Searched:** | UCC |

| FILE DATE | FILE # | TYPE OF FILING | SECURED PARTY |
|---|---|---|---|
| 03/26/2021 | 202106583131 | Financing Statement | FRANKLIN CAPITAL GROUP, LLC FARMINGTON HILLS, MI |
| 11/05/2021 | 202109046722 | Amendment | |
| 11/16/2021 | 20210917156X | Amendment | |
| 11/16/2021 | 202109171578 | Amendment | |
| 11/29/2021 | 202109288491 | Amendment | |
| 11/29/2021 | 202109288505 | Amendment | |
| 07/13/2021 | 202107709047 | Financing Statement | AUTO WHOLESALE OF BOCA LLC BOCA RATON, FL |
| 07/13/2021 | 202107709047 | Additional Secured Party on Record | |
| 11/11/2021 | 202109108747 | Termination | |
| 11/11/2021 | 202109109124 | Termination | |
| 07/16/2021 | 202107759159 | Financing Statement | FARACHE MOSHE BOCA RATON, FL |
| 11/11/2021 | 202109108871 | Termination | |
| 11/19/2021 | 20210920820X | Financing Statement | WESTLAKE FLOORING COMPANY, LLC LOS ANGELES, CA |
| 12/15/2021 | 202109478290 | Financing Statement | HI BAR CAPITAL BROOKLYN, NY |
| 12/19/2021 | 202109512183 | Termination | |
| 01/06/2022 | 202200062221 | Financing Statement | C T CORPORATION SYSTEM, AS REPRESENTATIVE GLENDALE, CA |
| 01/10/2022 | 202200087587 | Termination | |

*Capitol Services, Inc. and its affiliates make no express or implied representation or warranty regarding search reports. All liability shall be limited to the amount of the fee paid for the report.*

**Capitol Services, Inc.** ★ PO Box 1831 ★ Austin, TX 78767 ★ (800) 345-4647



9-13214226N

Page: 1 of 1

FILED

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

2021 Mar 26 09:56 AM

****** 202106583131 ******

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Lien Solutions                           79641585
P.O. Box 29071
Glendale, CA  91209-9071          FLFL

File with: Department of State, FL

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO GROUP INC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1001 CLINTMOORE RD | BOCA RATON | FL | 33487 | USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16937 PIERRE CIRCLE | DELRAY BEACH | FL | 33446 | USA |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| C T Corporation System, as representative | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 330 N Brand Blvd, Suite 700; Attn: SPRS | Glendale | CA | 91203 | USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
Receivables - All assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c.Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCES IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

☐ All documentary stamps due and payable
or to become due and payable pursuant to s. 201.22.F.S. have been paid

☒ Florida documentary stamp tax is not required

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
79641585

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| EXCELL AUTO GROUP INC |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| FIRST PERSONAL NAME |
| ADDITIONAL NAME(S)/INITIAL(S) |  SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| ZANKL |
| INDIVIDUAL'S FIRST PERSONAL NAME |
| THOMAS SCOTT |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) |  SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16937 PIERRE CIRCLE | DELRAY BEACH | FL | 33446 | USA |

11. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:  79641585-FL-0        C T Corporation System, as        File with: Department of State, FL

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

**18a. ORGANIZATION'S NAME**
EXCELL AUTO GROUP INC

OR

**18b. INDIVIDUAL'S SURNAME**

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**19a. ORGANIZATION'S NAME**
KARMA OF BROWARD, INC

OR

| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1699 S. FEDERAL HIGHWAY, SUITE 300 | BOCA RATON | FL | 33432 | USA |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**20a. ORGANIZATION'S NAME**
KARMA OF PALM BEACH, INC.

OR

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1001 CLINT MOORE ROAD, SUITE 101 | BOCA RATON | FL | 33487 | USA |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**21a. ORGANIZATION'S NAME**

OR

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

22. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

**22a. ORGANIZATION'S NAME**

OR

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

23. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

**23a. ORGANIZATION'S NAME**

OR

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

24. MISCELLANEOUS: 79641585-FL-0            C T Corporation System, as        File with: Department of State, FL

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

2209 59669
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

2021 Nov 05 03:56 PM

****** 202109046722 ******

Filed In: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:        AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| C T CORPORATION SYSTEM, AS REPRESENTATIVE | | | |

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME |
|---|
| FRANKLIN CAPITAL GROUP, LLC |

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 32300 NORTHWESTERN HWY. | FARMINGTON HILLS | MI | 48334 | USA |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME |
|---|
| C T CORPORATION SYSTEM, AS REPRESENTATIVE |

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP INC - NJR/ASW (15492-72)

2209 59669

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

2218 57634
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

2021 Nov 16 03:55 PM

****** 20210917156X ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☑ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | KARMA OF PALM BEACH, INC. | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | FRANKLIN CAPITAL GROUP, LLC | | |
|---|---|---|---|

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA:** Debtor:EXCELL AUTO GROUP INC-15492-72 NJR/ASW

2218 57634

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC    1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

2218 55184
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 16 03:55 PM

****** 202109171578 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER<br>202106583131 03/26/2021 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]<br>(or recorded) in the REAL ESTATE RECORDS<br>Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION:  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ PARTY INFORMATION CHANGE:

Check one of these two boxes:

This Change affects ☑ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c

☐ ADD name: Complete item 7a or 7b, and item 7c

☑ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME KARMA OF BROWARD, INC | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE:  Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA: Debtor: EXCELL AUTO GROUP INC-15492-72 NJR/ASW

2218 55184

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

2223 27803
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 29 03:53 PM

****** 202109288491 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ **PARTY INFORMATION CHANGE:**

Check **one** of these two boxes:

This Change affects ☑ Debtor or ☐ Secured Party of record

**AND** Check **one** of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only **one** name (6a or 6b)

**6a. ORGANIZATION'S NAME**

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | THOMAS SCOTT | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only **one** name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                                        SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ **COLLATERAL CHANGE:** Also check **one** of these four boxes: ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only **one** name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME** FRANKLIN CAPITAL GROUP, LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor:EXCELL AUTO GROUP INC-15492-72 NJR/ASW

2223 27803

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC    1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2223 20264
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 29 03:53 PM

****** 202109288505 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS |
|---|---|
| 202106583131 03/26/2021 | Filer: *attach* Amendment Addendum (Form UCC3Ad) *and* provide Debtor's name in item 13 |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):**  Provide name of Assignee in item 7a or 7b, *and* address of Assignee in item 7c *and* name of Assignor in item 9
For partial assignment, complete items 7 and 9 *and* also indicate affected collateral in item 8

4. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ **PARTY INFORMATION CHANGE:**

Check **one** of these two boxes:     AND Check **one** of these three boxes to:

This Change affects ☑ Debtor **or** ☐ Secured Party of record     ☐ CHANGE name and/or address: Complete item 6a or 6b; *and* item 7a or 7b *and* item 7c     ☐ ADD name: Complete item 7a or 7b, *and* item 7c     ☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only **one** name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only **one** name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME |
|---|

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:**  Also check **one** of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only **one** name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP INC - 15492-72 NJR/ASW

2223 20264

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# FINANCING STATEMENT FORM

Case 22-15627-EPK  Doc 10  Filed 07/24/22  Page 50 of 389

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

SCOTT C. GHERMAN; 5612516625

Email SGHERMAN@SCOTTGHERMANPA.COM

B. SEND ACKNOWLEDGEMENT TO:

**FILED**

Exhibits Page 31 of 396

2021 Jul 13 12:51 PM

****** 202107709047 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| KARMA OF PALM BEACH INC. | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 1001 CLINT MOORE RD., STE 101 | This space not available. | | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | SCOTT | | |

| 2c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 1001 CLINT MOORE RD., STE 101 | This space not available. | | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| AUTO WHOLESALE OF BOCA LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 6560 WEST ROGERS CIRCLE, SUITE #B27 | This space not available. | | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

---

**4. This FINANCING STATEMENT covers the following collateral:**

All debtor's assets and properties wherever located, including without limitation all equipment of any kind or nature, any and all vehicles (also including all "Locate Vehicles"), vehicle parts or inventory now owned or hereafter acquired, including, without limitation: all accounts and accounts receivable, general intangibles, chatel paper whether tangilble or electornic, together with all attachments, accessions, and equipment now or hereafter affixed thereto or used in connection therewith, all substitutions and replacements thereof and any products and proceeds thereof pertaining to Karma of Palm Beach Inc.

---

**5. ALTERNATE DESIGNATION (if applicable)**  ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ AG LIEN  ☐ NON-UCC FILING  ☐ SELLER/BUYER

---

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

---

**7. OPTIONAL FILER REFERENCE DATA**

---

STANDARD FORM - FORM UCC-1 (REV.05/2013)  Filing Office Copy  Approved by the Secretary of State, State of Florida

# STATE OF FLORIDA UNIFORM COMMERICAL CODE
# FINANCING STATEMENT FORM - ADDITIONAL PARTY

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME

KARMA OF PALM BEACH INC.

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

**20. ADDITIONAL SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (20a OR 20b)

20a. ORGANIZATION'S NAME

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| FARACHE | MOSHE | | |

20c. MAILING ADDRESS Line One
6560 WEST ROGERS CIRCLE, SUITE #B27

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

SCOTT C. GHERMAN;  5612516625

Email  SGHERMAN@SCOTTGHERMANPA.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1a. INITIAL FINANCING STATEMENT FILE #** 202107709047

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

KARMA OF PALM BEACH INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

AUTO WHOLESALE OF BOCA LLC

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**4.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☐ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

9c. MAILING ADDRESS Line One

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

AUTO WHOLESALE OF BOCA LLC

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**12. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-3 (REV.08/2018)    Filing Office Copy    Approved by the Secretary of State, State of Florida

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

SCOTT C. GHERMAN; 5612516625

Email SGHERMAN@SCOTTGHERMANPA.COM

**B. SEND ACKNOWLEDGEMENT TO:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

**1a. INITIAL FINANCING STATEMENT FILE #** 202107709047

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

KARMA OF PALM BEACH INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

AUTO WHOLESALE OF BOCA LLC

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**4.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☐ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

9c. MAILING ADDRESS Line One

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

AUTO WHOLESALE OF BOCA LLC

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**12. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-3 (REV.08/2018)     Filing Office Copy     Approved by the Secretary of State, State of Florida

**FINANCING STATEMENT FORM**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
SCOTT C. GHERMAN; 5612516625

Email  SGHERMAN@SCOTTGHERMANPA.COM

B. SEND ACKNOWLEDGEMENT TO:

**FILED**

Exhibits Page 35 of 396

2021 Jul 16 12:36 PM

****** 2021077759159 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| KARMA OF PALM BEACH INC. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS Line One | | | |
| 1001 CLINT MOORE RD., STE 101 | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ZANKL | SCOTT | | |
| 2c. MAILING ADDRESS Line One | | | |
| 1001 CLINT MOORE RD., STE 101 | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| FARACHE | MOSHE | | |
| 3c. MAILING ADDRESS Line One | | | |
| 6560 WEST ROGERS CIRCLE, SUITE #B27 | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

**4. This FINANCING STATEMENT covers the following collateral:**

All equipment of any kind or nature, any and all vehicles (also including "Locate Vehicles"), vehicle part or inventory now owned or hereafter acquired, including without limitation: all accounts and accounts receivable, general intangibles, chattel paper whether tangible or electronic, together with all attachments, accessions, and equipment now or hereafter affixed thereto or used in connection therewith, all substitutions and replacements thereof and any products and proceeds thereof pertaining to Karma of Palm Beach, Inc.

**5. ALTERNATE DESIGNATION (if applicable)**
☐ LESSEE/LESSOR    ☐ CONSIGNEE/CONSIGNOR    ☐ BAILEE/BAILOR
☐ AG LIEN    ☐ NON-UCC FILING    ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX
☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

SCOTT C. GHERMAN; 5612516625

Email SGHERMAN@SCOTTGHERMANPA.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2021 Nov 11 04:46 PM

\*\*\*\*\*\* 202109108871 \*\*\*\*\*\*

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1a. INITIAL FINANCING STATEMENT FILE #** 202107759159

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

KARMA OF PALM BEACH INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

FARACHE MOSHE

**4.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☐ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 9c. MAILING ADDRESS Line One | | | This space not available. | | |
|---|---|---|---|---|---|
| MAILING ADDRESS Line Two | | CITY | STATE | POSTAL CODE | COUNTRY |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor if this is an Assignment. If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

FARACHE MOSHE

**12. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-3 (REV.08/2018)     Filing Office Copy     Approved by the Secretary of State, State of Florida

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**   44678 - Westlake Flooring

Lien Solutions                    83541649
P.O. Box 29071
Glendale, CA  91209-9071          FLFL

File with: Department of State, FL

FILED

2021 Nov 19 10:15 AM

****** 20210920820X ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KARMA OF PALM BEACH, INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1001 Clint Moore Rd Ste 103 | Boca Raton | FL | 33487 | USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KARMA PALM BEACH | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1001 Clint Moore Rd Ste 103 | Boca Raton | FL | 33487 | USA |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Westlake Flooring Company, LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 4751 Wilshire Blvd | Los Angeles | CA | 90010 | USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor now owned or hereafter acquired, including but not limited to, all accounts; all equipment, goods, fixtures, and inventory, including all vehicles, vehicle parts and inventory now owned or hereafter acquired or wherever located, without limitation, purchase money inventory, the purchase of which was financed or floorplanned by Secured Party for Debtor(s); all documents, instruments and chattel paper; all letters of credit and letter-of-credit rights; all securities collateral; all investment property; all intellectual property collateral; all general intangibles; all money and all deposit accounts; all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records relating to any of the foregoing; all motor vehicles; and to the extent not covered by the foregoing, all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty with respect to any of the foregoing.

☐ All documentary stamps due and payable
or to become due and payable pursuant to s. 201.22.F.S. have been paid

☒ Florida documentary stamp tax is not required

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
83541649          100431690

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| KARMA OF PALM BEACH, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME | | |
|---|---|---|
| FIRST PERSONAL NAME | | |
| ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|
| |

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| Zankl |
| INDIVIDUAL'S FIRST PERSONAL NAME |
| Scott |

| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|
| Thomas | | |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16937 Pierre Cir | Boca Raton | FL | 33446 | USA |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|
| |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS: 83541649-FL-0  44678 - Westlake Flooring Co   Westlake Flooring Company, LLC   File with: Department of State, FL   100431690

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

**UCC FINANCING STATEMENT ADDITIONAL PARTY**

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

18a. ORGANIZATION'S NAME

KARMA OF PALM BEACH, INC.

OR

18b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)            SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Zankl | Kristen | Noel | |

| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16937 Pierre Cir | Delray Beach | FL | 33446 | USA |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

22. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

23. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

24. MISCELLANEOUS: 83541649-FL-0  44678 - Westlake Flooring Co     Westlake Flooring Company, LLC     File with: Department of State, FL     100431690

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT FORM

Case 22-15627-EPK    Doc 10    Filed 07/24/22    Page 59 of 389

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

Corporation Service Company; 1-800-858-5294

Email FLSOSUCCFilingsV3@cscglobal.com

B. SEND ACKNOWLEDGEMENT TO:

**FILED**

Exhibits Page 40 of 396

2021 Dec 15 03:21 PM

****** 202109478290 ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

## 1. DEBTOR'S EXACT FULL LEGAL NAME - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| EXCELL AUTO GROUP INC | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 1c. MAILING ADDRESS Line One | | | | | |
| 1001 CLINT MOORE ROAD #101 | | This space not available. | | | |
| MAILING ADDRESS Line Two | | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |

## 2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME ZANKL | FIRST PERSONAL NAME KRISTEN | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 2c. MAILING ADDRESS Line One | | | | | |
| 1001 CLINT MOORE ROAD #101 | | This space not available. | | | |
| MAILING ADDRESS Line Two | | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |

## 3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| HI BAR CAPITAL | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 3c. MAILING ADDRESS Line One | | | | | |
| 1825 65th St | | This space not available. | | | |
| MAILING ADDRESS Line Two | | CITY Brooklyn | STATE NY | POSTAL CODE 11204 | COUNTRY USA |

## 4. This FINANCING STATEMENT covers the following collateral:

All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents chattel paper, licenses, leases and general intangibles, whether now owned acquired or arising, and all of debtor's books and records relating to any of the foregoing.

## 5. ALTERNATE DESIGNATION (if applicable)

☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR
☐ AG LIEN  ☐ NON-UCC FILING  ☐ SELLER/BUYER

## 6. Florida DOCUMENTARY STAMP TAX - YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

## 7. OPTIONAL FILER REFERENCE DATA    2235 05934

STANDARD FORM - FORM UCC-1 (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

**20. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (20a OR 20b) - Do Not Abbreviate or Combine Names

20a. ORGANIZATION'S NAME
KARMA OF PALM BEACH INC DBA KARMA OF PALM BEACH

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

20c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (21a OR 21b) - Do Not Abbreviate or Combine Names

21a. ORGANIZATION'S NAME
AUTOMOTIVE SERVICE SYSTEMS, INC.

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

21c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (22a OR 22b) - Do Not Abbreviate or Combine Names

22a. ORGANIZATION'S NAME
KZ CONSULTANTS, INC.

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

22c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (23a OR 23b) - Do Not Abbreviate or Combine Names

23a. ORGANIZATION'S NAME
MISS KRIS, LLC

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

23c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**24. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (24a OR 24b) - Do Not Abbreviate or Combine Names

24a. ORGANIZATION'S NAME
EXCELL AUTO LEASING INC

| 24b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

24c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**25. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (25a OR 25b) - Do Not Abbreviate or Combine Names

25a. ORGANIZATION'S NAME
EXCELL AUTO WHOLESALE INC.

| 25b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

25c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

# STATE OF FLORIDA UNIFORM COMMERICAL CODE
# FINANCING STATEMENT FORM- ADDITIONAL PARTY

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME
EXCELL AUTO GROUP INC

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

---

**26. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (26a OR 26b) - Do Not Abbreviate or Combine Names

26a. ORGANIZATION'S NAME
DEALER SOUQ USA LLC

| 26b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

26c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**27. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (27a OR 27b) - Do Not Abbreviate or Combine Names

27a. ORGANIZATION'S NAME
EAG WHOLESALE LLC

| 27b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

27c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**28. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (28a OR 28b) - Do Not Abbreviate or Combine Names

28a. ORGANIZATION'S NAME
KARMA OF BROWARD, INC.

| 28b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

28c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**29. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (29a OR 29b) - Do Not Abbreviate or Combine Names

29a. ORGANIZATION'S NAME
LAVISH HERO FUND INC

| 29b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

29c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**30. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (30a OR 30b) - Do Not Abbreviate or Combine Names

30a. ORGANIZATION'S NAME
KARMA OF PALM BEACH, INC.

| 30b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

30c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**31. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (31a OR 31b) - Do Not Abbreviate or Combine Names

31a. ORGANIZATION'S NAME
APPLE 3 INVESTMENTS, INC.

| 31b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

31c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

---

# STATE OF FLORIDA UNIFORM COMMERICAL CODE
# FINANCING STATEMENT FORM - ADDITIONAL PARTY

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

**32. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (32a OR 32b) - Do Not Abbreviate or Combine Names

32a. ORGANIZATION'S NAME

KZ CONSULTANTS INC

| 32b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 32c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 1001 CLINT MOORE ROAD #101 | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |

STANDARD FORM - FORM UCC-1 ADDITIONAL PARTY (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

Case 22-15627-EPK   Doc 10   Filed 07/24/22   Page 63 of 389

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

STEVEN ZAKHARYAYEV; 9546044222

Email  STEVEN@STEVENZLAW.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2021 Dec 19 06:46 PM

****** 202109512183 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| **1a. INITIAL FINANCING STATEMENT FILE #** 202109478290 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

## 2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)

**2a. ORGANIZATION'S NAME**

EXCELL AUTO GROUP INC

**2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

## 3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

**3a. ORGANIZATION'S NAME**

HI BAR CAPITAL

**3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**4.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☐ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

## 8. CURRENT RECORD INFORMATION

- INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

**8a. ORGANIZATION'S NAME**

**8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

## 9. CHANGED (NEW) OR ADDED INFORMATION:

- INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

**9a. ORGANIZATION'S NAME**

| **9b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
|---|---|---|---|

| **9c. MAILING ADDRESS Line One** | This space not available. | | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

## 10. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

## 11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT

(name of assignor if this is an Assignment. If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

**11a. ORGANIZATION'S NAME**

HI BAR CAPITAL

**11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

## 12. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-3 (REV.08/2018)      Filing Office Copy      Approved by the Secretary of State, State of Florida

# FINANCING STATEMENT FORM

Case 22-15627-EPK  Doc 10  Filed 07/24/22  Page 64 of 389

**FILED**

Exhibits Page 45 of 396

2022 Jan 06 05:54 PM

\*\*\*\*\*\* 202200062221 \*\*\*\*\*\*

| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON |
|---|
| Wolters Kluwer Lien Solutions; (800)331-3282 |
| Email ctlsweback@wolterskluwer.com |

| B. SEND ACKNOWLEDGEMENT TO: |
|---|

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO GROUP, INC. | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS Line One | | | |
|---|---|---|---|
| 1001 Clint Moore Rd | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Ste 101 | Boca Raton | FL | 33487 | USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Karma Of Palm Beach, Inc. | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS Line One | | | |
|---|---|---|---|
| 1001 Clint Moore Rd | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Ste 101 | Boca Raton | FL | 33487 | USA |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| C T Corporation System, as representative | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS Line One | | | |
|---|---|---|---|
| 330 N Brand Blvd, Suite 700; Attn: SPRS | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | Glendale | CA | 91203 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All assets of the Debtor, now existing and hereafter arising, wherever located

**5. ALTERNATE DESIGNATION** (if applicable)  ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ AG LIEN  ☐ NON-UCC FILING  ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**    84260428-62913439

STANDARD FORM - FORM UCC-1 (REV.05/2013)      Filing Office Copy      Approved by the Secretary of State, State of Florida

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

Wolters Kluwer Lien Solutions; (800)331-3282

Email ctlsweback@wolterskluwer.com

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2022 Jan 10 03:00 PM

****** 202200087587 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # 202200062221 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

EXCELL AUTO GROUP, INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

C T Corporation System, as representative

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**4.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☐ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** — INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**9. CHANGED (NEW) OR ADDED INFORMATION:** — INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

9c. MAILING ADDRESS Line One

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

C T Corporation System, as representative

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**12. OPTIONAL FILER REFERENCE DATA**   84299945- Debtor: EXCELL

STANDARD FORM - FORM UCC-3 (REV.08/2018)    Filing Office Copy    Approved by the Secretary of State, State of Florida



Date: 01/14/2022  Exhibits Page 47 of 396
Reference: Feenix Karma (1700101-54)
Copies Requested: All Copies Excluding Lapsed Filings
Copy Cost Limit: $50.00

Searched Through:   01/11/2022
Subject:            Zankl, Kristen Noel
Jurisdiction:       Secured Transaction Registry, FL
Index Searched:     UCC

| FILE DATE | FILE # | TYPE OF FILING | SECURED PARTY |
| --- | --- | --- | --- |
| 11/03/2020 | 202005245699 | Financing Statement | WEST FLOORING COMPANY, LLC LOS ANGELES, CA |
| 11/05/2021 | 202109046846 | Financing Statement | FRANKLIN CAPITAL MANAGEMENT, LLC FARMINGTON HILLS, MI |
| 12/10/2021 | 20210942526X | Termination | |
| 11/05/2021 | 202109046854 | Financing Statement | FRANKLIN CAPITAL GROUP, LLC FARMINGTON HILLS, MI |
| 12/10/2021 | 202109425251 | Termination | |
| 11/19/2021 | 20210920820X | Financing Statement | WESTLAKE FLOORING COMPANY, LLC LOS ANGELES, CA |

*Capitol Services, Inc. and its affiliates make no express or implied representation or warranty regarding search reports. All liability shall be limited to the amount of the fee paid for the report.*



9-132142270

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**   44678 – Westlake Flooring

Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071

77502890

FLFL

File with: Department of State, FL

FLORIDA SECURED TRANSACTION REGISTRY

# FILED

2020 Nov 03 10:41 AM
****** 202005245699 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| EXCELL AUTO GROUP, INC. | | | | | |
| 1b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 1001 CLINT MOORE RD STE 101 | | BOCA RATON | FL | 33487 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| ZANKL | | KRISTEN | NOEL | | |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 16937 PIERRE CIR | | DELRAY BEACH | FL | 33446 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Westlake Flooring Company, LLC | | | | | |
| 3b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 4751 Wilshire Blvd | | Los Angeles | CA | 90010 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All assets of the Debtor now owned or hereafter acquired, including but not limited to, all accounts; all equipment, goods, fixtures, and inventory, including all vehicles, vehicle parts and inventory now owned or hereafter acquired or wherever located, without limitation, purchase money inventory, the purchase of which was financed or floorplanned by Secured Party for Debtor(s); all documents, instruments and chattel paper; all letters of credit and letter-of-credit rights; all securities collateral; all investment property; all intellectual property collateral; all general intangibles; all money and all deposit accounts; all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records relating to any of the foregoing; all motor vehicles; and to the extent not covered by the foregoing, all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty with respect to any of the foregoing.

☒ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22.F.S. have been paid

☐ Florida documentary stamp tax is not required

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
77502890          100373001

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

2021 Nov 05 03:56 PM

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

****** 202109046846 ******

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2212 80976
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ZANKL | KRISTEN | NOEL | |
| 1c. MAILING ADDRESS 16937 PIERRE CIR | CITY DELRAY BEACH | STATE FL  POSTAL CODE 33446 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 2c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME FRANKLIN CAPITAL MANAGEMENT, LLC | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI  POSTAL CODE 48334 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
Florida Documentary Stamp Tax is not required.
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: NJR/ASW (15492-72)

2212 80976

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## EXHIBIT A

**DEBTOR:**          **KRISTEN NOEL ZANKL**

**SECURED PARTY:**   **FRANKLIN CAPITAL MANAGEMENT, LLC**

All of the following property in which Debtor now or hereafter owns or has an interest, wherever located:

a)   the shares, interests, participations or other equivalents (however designated, whether voting or non-voting) of capital, whether now outstanding or issued or acquired after the date hereof, including common shares, preferred shares, membership interests in a limited liability company, limited or general partnership interests in a partnership or any other equivalent of such ownership interest, in each case, including those described in Schedule I and issued by the entities named therein (the "Pledged Shares") held by Debtor and the certificates, if any, representing such Pledged Shares and any interest of Debtor, including all interests documented in the entities on the books of the issuer of the Pledged Shares or any financial intermediary pertaining to the Pledged Shares and all dividends, cash, warrants, rights, instruments and other property or proceeds from time to time received, receivable, or otherwise distributed in respect of, or in exchange for, any or all of the Pledged Shares;

b)   all other property that may be delivered to and held by Secured Party;

c)   all additions, attachments, accessions, parts, replacements, substitutions, renewals, interest, dividends, distributions, rights of any kind (including but not limited to stock split, membership interest splits, or partnership interest splits, stock rights, membership interest rights or partnership interest rights, voting and preferential rights), products, and proceeds of or pertaining to the above including, without limit, cash or other property which were proceeds and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by Debtor; and

d)   to the extent not covered by clauses (a) through (c) above, all proceeds of any of the foregoing Collateral.

## SCHEDULE 1

### PLEDGED SHARES

| Pledgor/Record & Beneficial Owner | Issuing Entity | Class of Issued Stock/Units | Certificate No. of Issued Shares/Units | Number of Shares/Units Issued | Total Shares/Units Issued in such Class |
|---|---|---|---|---|---|
| Kristen Zankl | Excell Auto Group, Inc. | Common shares | uncertificated | 50% | 100% |

UNDER AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO SELL, ASSIGN, PLEDGE OR OTHERWISE ENCUMBER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT.  THE SALE, ASSIGNMENT, PLEDGE OR ENCUMBERING OF ANY SUCH COLLATERAL WOULD CONSTITUTE TORTIOUS INTERFERENCE WITH SECURED PARTY'S CONTRACTUAL RELATIONSHIP WITH DEBTOR.  IN THE EVENT THAT ANY THIRD PARTY PURCHASES, TAKES AN ASSIGNMENT OR PLEDGE OF, AND/OR IS GRANTED A SECURITY INTEREST IN ANY OF THE ASSETS DESCRIBED IN THIS FINANCING STATEMENT, SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH THIRD PARTY.

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

2231 10948
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Dec 10 04:00 PM

****** 20210942526X ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202109046846 11/05/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☑ **TERMINATION:** Effectiveness of the Financing Statement Identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9 For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| | |
|---|---|
| 6a. ORGANIZATION'S NAME | |

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | NOEL | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | |
|---|---|
| 7a. ORGANIZATION'S NAME | |

OR

| 7b. INDIVIDUAL'S SURNAME | |
|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | FRANKLIN CAPITAL MANAGEMENT, LLC | | |
|---|---|---|---|

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: ZANKL, KRISTEN NOEL-:NJR/ASW (15492-72)

2231 10948

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

2021 Nov 05 03:56 PM

****** 202109046854 ******

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

2212 80507
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ZANKL | KRISTEN | NOEL | |
| 1c. MAILING ADDRESS 16937 PIERRE CIR. | CITY DELRAY BEACH | STATE FL · POSTAL CODE 33446 | COUNTRY USA |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE · POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI · POSTAL CODE 48334 | COUNTRY USA |

4. **COLLATERAL:** This financing statement covers the following collateral:
Florida Documentary Stamp Tax is not required.
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: NJR/ASW (15492-72)

2212 80507

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## EXHIBIT A

DEBTOR:                    KRISTEN NOEL ZANKL

SECURED PARTY:             FRANKLIN CAPITAL GROUP, LLC

All of the following property in which Debtor now or hereafter owns or has an interest, wherever located:

a)   the shares, interests, participations or other equivalents (however designated, whether voting or non-voting) of capital, whether now outstanding or issued or acquired after the date hereof, including common shares, preferred shares, membership interests in a limited liability company, limited or general partnership interests in a partnership or any other equivalent of such ownership interest, in each case, including those described in Schedule I and issued by the entities named therein (the "Pledged Shares") held by Debtor and the certificates, if any, representing such Pledged Shares and any interest of Debtor, including all interests documented in the entities on the books of the issuer of the Pledged Shares or any financial intermediary pertaining to the Pledged Shares and all dividends, cash, warrants, rights, instruments and other property or proceeds from time to time received, receivable, or otherwise distributed in respect of, or in exchange for, any or all of the Pledged Shares;

b)   all other property that may be delivered to and held by Secured Party;

c)   all additions, attachments, accessions, parts, replacements, substitutions, renewals, interest, dividends, distributions, rights of any kind (including but not limited to stock split, membership interest splits, or partnership interest splits, stock rights, membership interest rights or partnership interest rights, voting and preferential rights), products, and proceeds of or pertaining to the above including, without limit, cash or other property which were proceeds and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by Debtor; and

d)   to the extent not covered by clauses (a) through (c) above, all proceeds of any of the foregoing Collateral.

## SCHEDULE 1

### PLEDGED SHARES

| Pledgor/Record & Beneficial Owner | Issuing Entity | Class of Issued Stock/Units | Certificate No. of Issued Shares/Units | Number of Shares/Units Issued | Total Shares/Units Issued in such Class |
|---|---|---|---|---|---|
| Kristen Zankl | Excell Auto Group, Inc. | Common shares | uncertificated | 50% | 100% |

UNDER AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO SELL, ASSIGN, PLEDGE OR OTHERWISE ENCUMBER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT.  THE SALE, ASSIGNMENT, PLEDGE OR ENCUMBERING OF ANY SUCH COLLATERAL WOULD CONSTITUTE TORTIOUS INTERFERENCE WITH SECURED PARTY'S CONTRACTUAL RELATIONSHIP WITH DEBTOR.  IN THE EVENT THAT ANY THIRD PARTY PURCHASES, TAKES AN ASSIGNMENT OR PLEDGE OF, AND/OR IS GRANTED A SECURITY INTEREST IN ANY OF THE ASSETS DESCRIBED IN THIS FINANCING STATEMENT, SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH THIRD PARTY.

Bodman_18091791_1

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

2021 Dec 10 04:00 PM

****** 202109425251 ******

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

2231 11200
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202109046854 11/05/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:        AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record   ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | NOEL | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | FRANKLIN CAPITAL GROUP, LLC | | |
|---|---|---|---|

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: ZANKL, KRISTEN NOEL-:NJR/ASW (15492-72)

2231 11200

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)** 44678 - Westlake Flooring

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

83541649

FLFL

File with: Department of State, FL

FILED

2021 Nov 19 10:15 AM

****** 20210920820X ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KARMA OF PALM BEACH, INC. | | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1001 Clint Moore Rd Ste 103 | Boca Raton | FL | 33487 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KARMA PALM BEACH | | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1001 Clint Moore Rd Ste 103 | Boca Raton | FL | 33487 | USA |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Westlake Flooring Company, LLC | | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4751 Wilshire Blvd | Los Angeles | CA | 90010 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor now owned or hereafter acquired, including but not limited to, all accounts; all equipment, goods, fixtures, and inventory, including all vehicles, vehicle parts and inventory now owned or hereafter acquired or wherever located, without limitation, purchase money inventory, the purchase of which was financed or floorplanned by Secured Party for Debtor(s); all documents, instruments and chattel paper; all letters of credit and letter-of-credit rights; all securities collateral; all investment property; all intellectual property collateral; all general intangibles; all money and all deposit accounts; all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records relating to any of the foregoing; all motor vehicles; and to the extent not covered by the foregoing, all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty with respect to any of the foregoing.

☐ All documentary stamps due and payable
or to become due and payable pursuant to s. 201.22.F.S. have been paid

☒ Florida documentary stamp tax is not required

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien ☐ Non-UCC Filing |

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
83541649          100431690

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
   because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
| --- |
| KARMA OF PALM BEACH, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME | | |
| --- | --- | --- |
| FIRST PERSONAL NAME | | |
| ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
    do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |

OR

| 10b. INDIVIDUAL'S SURNAME | | | | |
| --- | --- | --- | --- | --- |
| Zankl | | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | |
| Scott | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | SUFFIX |
| Thomas | | | | |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 16937 Pierre Cir | Boca Raton | FL | 33446 | USA |

11. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | | |
| --- | --- | --- | --- | --- |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- | --- | --- | --- |
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the
    REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
    ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16
    (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:  83541649-FL-0   44678 - Westlake Flooring Co          Westlake Flooring Company, LLC      File with: Department of State, FL          100431690

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

**UCC FINANCING STATEMENT ADDITIONAL PARTY**
FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 18a. ORGANIZATION'S NAME |
|---|
| KARMA OF PALM BEACH, INC. |

OR

| 18b. INDIVIDUAL'S SURNAME | | |
|---|---|---|
| FIRST PERSONAL NAME | | |
| ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| Zankl | Kristen | Noel | | |

| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16937 Pierre Cir | Delray Beach | FL | 33446 | USA |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|

| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

22. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

23. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

24. MISCELLANEOUS: 83541649-FL-0   44678 - Westlake Flooring Co        Westlake Flooring Company, LLC        File with: Department of State, FL        100431690

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282



| | |
|---|---|
| Date: | 01/14/2022 |
| Reference: | Feenix Karma (1700101-54) |
| Copies Requested: | All Copies Excluding Lapsed Filings |
| Copy Cost Limit: | $50.00 |

| | |
|---|---|
| Searched Through: | 01/11/2022 |
| Subject: | Zankl, Kristen |
| Jurisdiction: | Secured Transaction Registry, FL |
| Index Searched: | UCC |

| FILE DATE | FILE # | TYPE OF FILING | SECURED PARTY |
|---|---|---|---|
| 10/28/2020 | 20200516365X | Financing Statement | FRANKLIN CAPITAL GROUP, LLC<br>FARMINGTON HILLS, MI |
| 11/05/2021 | 202109046730 | Amendment | |
| 12/10/2021 | 202109425170 | Amendment | |
| 03/26/2021 | 202106583131 | Financing Statement | FRANKLIN CAPITAL GROUP, LLC<br>FARMINGTON HILLS, MI |
| 11/05/2021 | 202109046722 | Amendment | |
| 11/16/2021 | 20210917156X | Amendment | |
| 11/16/2021 | 202109171578 | Amendment | |
| 11/29/2021 | 202109288491 | Amendment | |
| 11/29/2021 | 202109288505 | Amendment | |
| 04/12/2021 | 202106742728 | Financing Statement | QUICK SHIFT CAPITAL<br>BOCA RATON, FL |
| 04/15/2021 | 202106787470 | Financing Statement | FRANKLIN CAPITAL GROUP, LLC<br>FARMINGTON HILLS, MI |
| 10/26/2021 | 20210891637X | Amendment | |
| 10/26/2021 | 202108916393 | Amendment | |
| 10/26/2021 | 202108916427 | Amendment | |
| 10/26/2021 | 202108916438 | Amendment | |
| 11/05/2021 | 202109046749 | Amendment | |
| 07/13/2021 | 202107709436 | Financing Statement | AUTO WHOLESALE OF BOCA LLC<br>BOCA RATON, FL |
| 07/13/2021 | 202107709436 | Additional Secured Party on Record | |
| 11/22/2021 | 202109232599 | Amendment | |
| 07/13/2021 | 202107709869 | Financing Statement | AUTO WHOLESALE OF BOCA LLC<br>BOCA RATON, FL |

*Capitol Services, Inc. and its affiliates make no express or implied representation or warranty regarding search reports. All liability shall be limited to the amount of the fee paid for the report.*

Capitol Services, Inc. ★ PO Box 1831 ★ Austin, TX 78767 ★ (800) 345-4647



9-13214228P



Date:                            01/14/2022  Exhibits Page 59 of 396
Reference:                   Feenix Karma (1700101-54)
Copies Requested:     All Copies Excluding Lapsed Filings
Copy Cost Limit:          $50.00

Searched Through:     01/11/2022
Subject:                      Zankl, Kristen
Jurisdiction:               Secured Transaction Registry, FL
Index Searched:          UCC

| FILE DATE | FILE # | TYPE OF FILING | SECURED PARTY |
|---|---|---|---|
| 07/13/2021 | 202107709869 | Additional Secured Party on Record | |
| 11/22/2021 | 202109232400 | Amendment | |
| 07/16/2021 | 202107758905 | Financing Statement | FARACHE MOSHE BOCA RATON, FL |
| 11/22/2021 | 202109232500 | Amendment | |
| 07/16/2021 | 202107759061 | Financing Statement | FARACHE MOSHE BOCA RATON, FL |
| 11/22/2021 | 202109232066 | Amendment | |
| 12/15/2021 | 202109478290 | Financing Statement | HI BAR CAPITAL BROOKLYN, NY |
| 12/19/2021 | 202109512183 | Termination | |

*Capitol Services, Inc. and its affiliates make no express or implied representation or warranty regarding search reports. All liability shall be limited to the amount of the fee paid for the report.*

Capitol Services, Inc.  ★ PO Box 1831  ★ Austin, TX 78767  ★ (800) 345-4647



9-13214228P

# FINANCING STATEMENT FORM

Exhibits Page 60 of 396

**FILED**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
JENNA SCHNEIDER; 4258905332
Email LEGAL@GETBACKD.COM

B. SEND ACKNOWLEDGEMENT TO:

2020 Oct 28 10:06 AM

******* 20200516365X *******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

## 1. DEBTOR'S EXACT FULL LEGAL NAME - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO GROUP, INC. | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 1001 CLINT MOORE ROAD | This space not available. | | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| SUITE 101 | BOCA RATON | FL | 33487 | US |

## 2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

| 2c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 16937 PIERRE CIRCLE | This space not available. | | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | DELRAY | FL | 33446 | US |

## 3. SECURED PARTY'S NAME  (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| AUSTIN BUSINESS FINANCE, LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 2101 S IH 35 FRONTAGE ROAD | This space not available. | | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| FOURTH FLOOR | AUSTIN | TX | 78741 | US |

## 4. This FINANCING STATEMENT covers the following collateral:

All inventory, fixtures, equipment, vehicles, accounts receivable, goods and the profits therefrom, stocks, bonds, cash or cash equivalents, household goods and furnishings, investment property, negotiable instruments, and general intangibles.

5. ALTERNATE DESIGNATION (if applicable)

☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR
☐ AG LIEN  ☐ NON-UCC FILING  ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S.. have been paid.

☐ Florida Documentary Stamp Tax is not required.

## 7. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-1 (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

FLORIDA SECURED TRANSACTION REGISTRY

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC  1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

2209 61230
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 05 03:56 PM

****** 202109046730 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
20200516365X 10/28/2020

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT** (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME AUSTIN BUSINESS FINANCE, LLC | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME AUSTIN BUSINESS FINANCE, LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP, INC. - NJR/ASW (15492-72)

2209 61230

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

2021 Dec 10 04:00 PM

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

****** 202109425170 ******

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

2231 09800
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
20200516365X 10/28/2020

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ PARTY INFORMATION CHANGE:

Check one of these two boxes:
This Change affects ☑ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP, INC.-NJR/ASW (15492-72)

2231 09800

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

FILED

2021 Mar 26 09:56 AM

****** 202106583131 ******

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

79641585

FLFL

File with: Department of State, FL

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| EXCELL AUTO GROUP INC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1001 CLINTMOORE RD | BOCA RATON | FL | 33487 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| ZANKL | KRISTEN | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 16937 PIERRE CIRCLE | DELRAY BEACH | FL | 33446 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| C T Corporation System, as representative | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 330 N Brand Blvd, Suite 700; Attn: SPRS | Glendale | CA | 91203 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
Receivables - All assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c.Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCES IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22.F.S. have been paid    ☒ Florida documentary stamp tax is not required

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
79641585

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| EXCELL AUTO GROUP INC |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|

| FIRST PERSONAL NAME |
|---|

| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| ZANKL |

| INDIVIDUAL'S FIRST PERSONAL NAME |
|---|
| THOMAS SCOTT |

| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16937 PIERRE CIRCLE | DELRAY BEACH | FL | 33446 | USA |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS: 79641585-FL-0          C T Corporation System, as          File with: Department of State, FL

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

18a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC

OR

18b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                                            SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KARMA OF BROWARD, INC | | | | |
| OR 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1699 S. FEDERAL HIGHWAY, SUITE 300 | BOCA RATON | FL | 33432 | USA |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KARMA OF PALM BEACH, INC. | | | | |
| OR 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1001 CLINT MOORE ROAD, SUITE 101 | BOCA RATON | FL | 33487 | USA |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

22. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

23. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

24. MISCELLANEOUS: 79641585-FL-0          C T Corporation System, as          File with: Department of State, FL

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)

Prepared by Len Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

FLORIDA SECURED TRANSACTION REGISTRY

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

2021 Nov 05 03:56 PM

****** 202109046722 ******

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

2209 59669
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                              AND Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | C T CORPORATION SYSTEM, AS REPRESENTATIVE | | |
|---|---|---|---|
| OR | | | |
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | FRANKLIN CAPITAL GROUP, LLC | | |
|---|---|---|---|
| OR | | | |
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 32300 NORTHWESTERN HWY. | FARMINGTON HILLS | MI | 48334 | USA |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | C T CORPORATION SYSTEM, AS REPRESENTATIVE | | |
|---|---|---|---|
| OR | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP INC - NJR/ASW (15492-72)

2209 59669

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

2021 Nov 16 03:55 PM

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

****** 20210917156X ******

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

2218 57634
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER 202106583131 03/26/2021 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee In item 7c and name of Assignor in item 9 For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:   **AND** Check one of these three boxes to:

This Change affects ☑ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☑ DELETE name: Give record name to be deleted in item 6a or 6b

6. **CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME** KARMA OF PALM BEACH, INC.

OR | **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

7. **CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR 7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment) If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME** FRANKLIN CAPITAL GROUP, LLC

OR | **9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA: Debtor: EXCELL AUTO GROUP INC-15492-72 NJR/ASW

2218 57634

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2218 55184
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 16 03:55 PM

****** 202109171578 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ ASSIGNMENT (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ PARTY INFORMATION CHANGE:

Check one of these two boxes:

This Change affects ☑ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME** KARMA OF BROWARD, INC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ COLLATERAL CHANGE:  Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME** FRANKLIN CAPITAL GROUP, LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor:EXCELL AUTO GROUP INC-15492-72 NJR/ASW

2218 55184

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2223 27803
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 29 03 53 PM

****** 202109288491 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☑ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | THOMAS SCOTT | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP INC-15492-72 NJR/ASW

2223 27803

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC    1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

┌
2223 20264
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)
┘

FILED

2021 Nov 29 03:53 PM

****** 202109288505 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:                                    AND Check one of these three boxes to:

This Change affects ☑ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c

☐ ADD name: Complete item 7a or 7b, and item 7c

☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP INC - 15492-72 NJR/ASW

2223 20264

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# FINANCING STATEMENT FORM

Case 22-15827-EPK   Doc 10   Filed 07/24/22   Page 90 of 389

**FILED**

2021 Apr 12 11:53 AM

\*\*\*\*\*\*\* 2021067427728 \*\*\*\*\*\*\*

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
GAVRIELE GREEN; 5613509723
Email zach@quickshiftcapital.com

**B. SEND ACKNOWLEDGEMENT TO:**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO GROUP INC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 1001 CLINT MOORE ROAD | This space not available. | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| STE 101 | BOCA RATON | FL | 33487 | US |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | SCOTT | | |

| 2c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 16937 PIERRE CIRCLE | This space not available. | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33446 | US |

**3. SECURED PARTY'S NAME**   (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| QUICK SHIFT CAPITAL | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 2200 BUTTS ROAD | This space not available. | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| SUITE 240 | BOCA RATON | FL | 33431 | US |

**4. This FINANCING STATEMENT covers the following collateral:**

Borrower grants to Lender a continuing security interest in all of Borrower's assets and properties, whoever located, including, without limitation, all equipment of any kind or nature; all vehicles and vehicle parts; all Inventory now owned or hereafter acquired, including, without limitation, all Lender Financed Inventory now owned or hereafter acquired; all amounts in Borrower's Reserve held by or on behalf of Lender; in any; all documents, documents of title, deposit accounts, accounts receivable, manufacturer rebates and incentive payments, chattel paper, including, without limitation; all Receivables and general intangibles now owned or hereafter acquired by Borrower; all cash reserves; all of Borrower's books and records (including any books and records contains on computer hardware or software or otherwise stored by or on behalf of Borrower in electronic or digital form); and all additions, accessions, accessories, replacements, substitutions, and proceeds.

**5. ALTERNATE DESIGNATION** (if applicable)

☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR
☐ AG LIEN   ☐ NON-UCC FILING   ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.05/2013)   Filing Office Copy   Approved by the Secretary of State, State of Florida

# STATE OF FLORIDA UNIFORM COMMERICAL CODE
## FINANCING STATEMENT FORM ADDITIONAL PARTY

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

**20. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (20a OR 20b) - Do Not Abbreviate or Combine Names

20a. ORGANIZATION'S NAME

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

20c. MAILING ADDRESS Line One

16937 PIERRE CIRCLE

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33446 | US |

**FINANCING STATEMENT FORM**

Exhibits Page 73 of 396

| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON | | |
|---|---|---|
| ONLINE DEPT.: 888-507-4593 | | |
| Email ONLINE@FICOSO.COM | | |

**FILED**

2021 Apr 15 01:28 PM

\*\*\*\*\*\*\* 20210678470 \*\*\*\*\*\*\*

B. SEND ACKNOWLEDGEMENT TO:

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO GROUP, INC. | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 1001 CLINTMOORE ROAD #101 | This space not available. | | | | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA | |

**2. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (2a OR 2b)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| KRISTEN ZANKL | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 16937 PIERRE CIRCLE | This space not available. | | | | |
| MAILING ADDRESS Line Two | CITY DELRAY BEACH | STATE FL | POSTAL CODE 33446 | COUNTRY USA | |

**3. ADDITIONAL SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | SCOTT | | |

| 3c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 16937 PIERRE CIRCLE | This space not available. | | | | |
| MAILING ADDRESS Line Two | CITY DELRAY BEACH | STATE FL | POSTAL CODE 33446 | COUNTRY USA | |

**4. This FINANCING STATEMENT covers the following collateral:**

SEE ATTACHED EXHIBIT A

**5. ALTERNATE DESIGNATION** (if applicable)  ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR
☐ AG LIEN  ☐ NON-UCC FILING  ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**    [UCC1-671172] EXCELL AUTO

STANDARD FORM - FORM UCC-1 (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

# STATE OF FLORIDA UNIFORM COMMERICAL CODE
## FINANCING STATEMENT FORM ADDENDUM

**8. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

8a. ORGANIZATION'S NAME

EXCELL AUTO GROUP, INC.

| 8b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**9. MISCELLANEOUS**

**10. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (10a OR 10b) - Do Not Abbreviate or Combine Names

10a. ORGANIZATION'S NAME

| 10b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 10c. MAILING ADDRESS Line One | This space not available. | | |
|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**11. ADDITIONAL SECURED PARTY'S NAME** or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (11a OR 11b)

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS Line One | This space not available. | | |
|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

12. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

13. Description of real estate:

14. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

15. Additional collateral description:

16. Check only if applicable and check only one box.

Collateral ☐ Held in Trust
☐ Being administrated by Decendent's Personal Representative

17. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction - effective 30 years

STANDARD FORM - FORM UCC-1 ADDENDUM (REV.05/2013)        Filing Office Copy        Approved by the Secretary of State, State of Florida

EXHIBIT A

All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets:

a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credits Rights; j. General Intangibles; k. Supporting Obligations; and l. Proceeds and Products of the foregoing.

NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN, THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCE IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

ONLINE DEPT.; 888-507-4593
Email ONLINE@FICOSO.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2021 Oct 26 04:01 PM

\*\*\*\*\*\* 20210891637X \*\*\*\*\*\*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

**1a. INITIAL FINANCING STATEMENT FILE #** 202106787470

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME
EXCELL AUTO GROUP, INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME
KRISTEN ZANKL

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**4.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☑ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☑ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.
☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.
☑ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

9c. MAILING ADDRESS Line One
16937 PIERRE CIRCLE

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | DELRAY BEACH | FL | 33446 | USA |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**
(name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME
KRISTEN ZANKL

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**12. OPTIONAL FILER REFERENCE DATA** [UCC3-671172.5]

STANDARD FORM - FORM UCC-3 (REV.08/2018)    Filing Office Copy    Approved by the Secretary of State, State of Florida

| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON | **FILED** |
|---|---|

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
ONLINE DEPT.; 888-507-4593
Email ONLINE@FICOSO.COM
**B. SEND ACKNOWLEDGEMENT TO:**

Exhibits Page 77 of 396

2021 Oct 26 04:01 PM

\*\*\*\*\*\* 202108916393 \*\*\*\*\*\*

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE #** 202106787470

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

**2a. ORGANIZATION'S NAME**
EXCELL AUTO GROUP, INC.

**2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

**3a. ORGANIZATION'S NAME**
KRISTEN ZANKL

**3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**4.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☑ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☑ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.
☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.
☑ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names
**8a. ORGANIZATION'S NAME**

**8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names
**9a. ORGANIZATION'S NAME**

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | SCOTT | | |

**9c. MAILING ADDRESS Line One**
16937 PIERRE CIRCLE

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | DELRAY BEACH | FL | 33446 | USA |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**
(name of assignor if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

**11a. ORGANIZATION'S NAME**

**11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**
ZANKL SCOTT

**12. OPTIONAL FILER REFERENCE DATA**    [UCC3-671172.4]

STANDARD FORM - FORM UCC-3 (REV.08/2018)    Filing Office Copy    Approved by the Secretary of State, State of Florida

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

ONLINE DEPT.; 888-507-4593

Email ONLINE@FICOSO.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2021 Oct 26 04:02 PM

****** 202108916427 ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1a. INITIAL FINANCING STATEMENT FILE #** 202106787470

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

EXCELL AUTO GROUP, INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

KRISTEN ZANKL

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**4.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☑ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☑ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☑ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION**   - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

ZANKL SCOTT

**9. CHANGED (NEW) OR ADDED INFORMATION:**   - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 9c. MAILING ADDRESS Line One | | This space not available. | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

ZANKL SCOTT

**12. OPTIONAL FILER REFERENCE DATA**   [UCC3-671172.3]

STANDARD FORM - FORM UCC-3 (REV.08/2018)   Filing Office Copy   Approved by the Secretary of State, State of Florida

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

ONLINE DEPT.; 888-507-4593

Email ONLINE@FICOSO.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2021 Oct. 26 04:02 PM

\*\*\*\*\*\*\* 202108916438 \*\*\*\*\*\*\*

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE #** 202106787470

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

**2a. ORGANIZATION'S NAME**

EXCELL AUTO GROUP, INC.

**2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

**3a. ORGANIZATION'S NAME**

KRISTEN ZANKL

**3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**4.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☑ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☑ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☑ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** — INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

**8a. ORGANIZATION'S NAME**

KRISTEN ZANKL

**8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**9. CHANGED (NEW) OR ADDED INFORMATION:** — INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

**9a. ORGANIZATION'S NAME**

DIVERSE CAPITAL, LLC

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 9c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 750 MAIN ST, SUITE 906 | | This space not available. | | |
| MAILING ADDRESS Line Two | CITY HARTFORD | STATE CT | POSTAL CODE 06103 | COUNTRY USA |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

**11a. ORGANIZATION'S NAME**

KRISTEN ZANKL

**11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**12. OPTIONAL FILER REFERENCE DATA** [UCC3-671172.2]

STANDARD FORM - FORM UCC-3 (REV.08/2018)   Filing Office Copy   Approved by the Secretary of State, State of Florida

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC   1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

2212 81473
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 05 03:56 PM

****** 202109046749 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
202106787470 04/15/2021

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☑ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete Item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME DIVERSE CAPITAL, LLC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |
|---|---|---|---|---|

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME DIVERSE CAPITAL, LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA: Debtor: EXCELL AUTO GROUP, INC. - NJR/ASW (15492-72)

2212 81473

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

SCOTT C. GHERMAN; 5612516625

Email SGHERMAN@SCOTTGHERMANPA.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO LEASING INC. | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 1001 CLINT MOORE RD., STE 101 | This space not available. | | | | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY US |

---

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

| 2c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 1001 CLINT MOORE RD., STE 101 | This space not available. | | | | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY US |

---

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| AUTO WHOLESALE OF BOCA LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 6560 WEST ROGERS CIRCLE, SUITE #B27 | This space not available. | | | | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY US |

---

**4. This FINANCING STATEMENT covers the following collateral:**

All debtor's assets and properties wherever located, including without limitation all equipment of any kind or nature, any and all vehicles (also including "Locate Vehicles"), vehicle parts or inventory now owned or hereafter acquired, including, without limitation: all accounts and accounts receivable, general intangibles, chattel paper whether tangible or electronic, together with all attachments, accessions, and equipment now or hereafter affixed thereto or used in connection therewith, all substitutions and replacements thereof and any products and proceeds thereof pertaining to Excell Auto Leasing Inc.

---

**5. ALTERNATE DESIGNATION (if applicable)**   ☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR   ☐ AG LIEN   ☐ NON-UCC FILING   ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

---

STANDARD FORM - FORM UCC-1 (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

# STATE OF FLORIDA UNIFORM COMMERICAL CODE
## FINANCING STATEMENT FORM ADDITIONAL PARTY

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME

EXCELL AUTO LEASING INC.

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

**20. ADDITIONAL SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (20a OR 20b)

20a. ORGANIZATION'S NAME

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| FARACHE | MOSHE | | |

| 20c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 6560 WEST ROGERS CIRCLE, SUITE #B27 | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY US |

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

SCOTT C. GHERMAN; 5612516625

Email sgherman@scottghermanpa.com

**B. SEND ACKNOWLEDGEMENT TO:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #** 202107709436

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

**2a. ORGANIZATION'S NAME**

EXCELL AUTO LEASING INC.

**2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

**3a. ORGANIZATION'S NAME**

AUTO WHOLESALE OF BOCA LLC

**3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**4.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☑ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☑ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☑ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

**8a. ORGANIZATION'S NAME**

**8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

ZANKL KRISTEN

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

**9a. ORGANIZATION'S NAME**

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**9c. MAILING ADDRESS Line One**

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

**11a. ORGANIZATION'S NAME**

**11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

**12. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-3 (REV.08/2018)    Filing Office Copy    Approved by the Secretary of State, State of Florida

# FINANCING STATEMENT FORM

**FILED**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
SCOTT C. GHERMAN; 5612516625
Email SGHERMAN@SCOTTGHERMANPA.COM

B. SEND ACKNOWLEDGEMENT TO:

2021 Jul 13 12:51 PM

****** 2021077709869 ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| | | | |
|---|---|---|---|
| 1a. ORGANIZATION'S NAME EXCELL AUTO GROUP INC. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS Line One 1001 CLINT MOORE RD., STE 101 | | This space not available. | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL  POSTAL CODE 33487 | COUNTRY US |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| | | | |
|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | |
| 2b. INDIVIDUAL'S SURNAME ZANKL | FIRST PERSONAL NAME KRISTEN | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS Line One 1001 CLINT MOORE RD., STE 101 | | This space not available. | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL  POSTAL CODE 33487 | COUNTRY US |

**3. SECURED PARTY'S NAME**   (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| | | | |
|---|---|---|---|
| 3a. ORGANIZATION'S NAME AUTO WHOLESALE OF BOCA LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS Line One 6560 WEST ROGERS CIRCLE, SUITE #B27 | | This space not available. | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL  POSTAL CODE 33487 | COUNTRY US |

**4. This FINANCING STATEMENT covers the following collateral:**

All debtor's assets and properties wherever located, including without limitation all equipment of any kind or nature, any and all vehicle (also including "Locate Vehicles"), vehicle parts or inventory now owned or hereafter acquired, including without limitation: all accounts and accounts receivable, general intangibles, chattel paper whether tangible or electronic, together with all attachments, accessions, and equipment now or hereafter affixed thereto or used in connection therewith, all substitutions and replacements thereof and any products and proceeds thereof pertaining to Excell Auto Group Inc.

**5. ALTERNATE DESIGNATION** (if applicable)

☐ LESSEE/LESSOR     ☐ CONSIGNEE/CONSIGNOR     ☐ BAILEE/BAILOR
☐ AG LIEN           ☐ NON-UCC FILING          ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.05/2013)        Filing Office Copy        Approved by the Secretary of State, State of Florida

# STATE OF FLORIDA UNIFORM COMMERICAL CODE
# FINANCING STATEMENT FORM ADDITIONAL PARTY

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC.

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

**20. ADDITIONAL SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (20a OR 20b)

20a. ORGANIZATION'S NAME

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| FARACHE | MOSHE | | |

| 20c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 6560 WEST ROGERS CIRCLE, SUITE #B27 | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY US |

STANDARD FORM - FORM UCC-1 ADDITIONAL PARTY (REV.05/2013)          Filing Office Copy          Approved by the Secretary of State, State of Florida

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

SCOTT C. GHERMAN; 5612516625

Email sgherman@scottghermanpa.com

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2021 Nov 22 02:54 PM

****** 202109232400 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

**1a. INITIAL FINANCING STATEMENT FILE #** 202107709869

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

AUTO WHOLESALE OF BOCA LLC

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**4.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☑ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☑ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☑ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

ZANKL KRISTEN

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 9c. MAILING ADDRESS Line One | This space not available. | | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

FARACHE MOSHE

**12. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-3 (REV.08/2018)     Filing Office Copy     Approved by the Secretary of State, State of Florida

# FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

SCOTT C. GHERMAN; 5612516625

Email SGHERMAN@SCOTTGHERMANPA.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

Exhibits Page 87 of 396

2021 Jul 16 12:36 PM

****** 202107758905 ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

## 1. DEBTOR'S EXACT FULL LEGAL NAME - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO LEASING INC. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS Line One | | | |
| 1001 CLINT MOORE RD., STE 101 | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

## 2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ZANKL | KRISTEN | | |
| 2c. MAILING ADDRESS Line One | | | |
| 1001 CLINT MOORE RD., STE 101 | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

## 3. SECURED PARTY'S NAME   (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| FARACHE | MOSHE | | |
| 3c. MAILING ADDRESS Line One | | | |
| 6560 WEST ROGERS CIRCLE, SUITE #B27 | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

## 4. This FINANCING STATEMENT covers the following collateral:

All equipment of any kind or nature, and and all vehicles (also including "Locate Vehicles"), vehicle parts or inventory now owned or hereafter acquired, including without limitation: all accounts and accounts receivable, general intangibles, chattel paper whether tangible or electronic, together with all attachments, accessions, and equipment now or hereafter affixed thereto or used in connection therewith, all substitutions and replacements thereof and any products and proceeds thereof pertaining to Excell Auto Group, Inc.

## 5. ALTERNATE DESIGNATION (if applicable)

☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR

☐ AG LIEN   ☐ NON-UCC FILING   ☐ SELLER/BUYER

## 6. Florida DOCUMENTARY STAMP TAX - YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

## 7. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-1 (REV.05/2013)   Filing Office Copy   Approved by the Secretary of State, State of Florida

Exhibits Page 88 of 396

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

SCOTT C. GHERMAN; 5612516625

Email  sgherman@scottghermanpa.com

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2021 Nov 22 03:06 PM

****** 202109232500 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| | |
|---|---|
| **1a. INITIAL FINANCING STATEMENT FILE #** 202107758905 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

EXCELL AUTO LEASING INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

FARACHE MOSHE

**4.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☑ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☑ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.   ☑ **DELETE** name: Give record name to be deleted in item 8a or 8b.   ☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION**      - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

ZANKL KRISTEN

**9. CHANGED (NEW) OR ADDED INFORMATION:**      - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 9c. MAILING ADDRESS Line One | | This space not available. | |
| MAILING ADDRESS Line Two | CITY | STATE POSTAL CODE | COUNTRY |

**10. AMENDMENT (COLLATERAL CHANGE): check only one box.**

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**12. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-3 (REV.08/2018)      Filing Office Copy      Approved by the Secretary of State, State of Florida

# FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
SCOTT C. GHERMAN; 5612516625
Email SGHERMAN@SCOTTGHERMANPA.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2021 Jul 16 12:36 PM

*\*\*\*\*\*\* 202107759061 \*\*\*\*\*\**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO LEASING INC. | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**1c. MAILING ADDRESS Line One**
1001 CLINT MOORE RD., STE 101                    This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

---

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

**2c. MAILING ADDRESS Line One**
1001 CLINT MOORE RD., STE 101                    This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

---

**3. SECURED PARTY'S NAME**   (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| FARACHE | MOSHE | | |

**3c. MAILING ADDRESS Line One**
6560 WEST ROGERS CIRCLE, SUITE #B27              This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

---

**4. This FINANCING STATEMENT covers the following collateral:**

All equipment of any kind or nature, any and all vehicles (also including "Locate Vehicles"), vehicle parts or inventory now owned or hereafter acquired, including without limitation: all accounts and accounts receivable, general intangibles, chattel paper whether tangible or electronic, together with all attachments, accessions, and equipment now or hereafter affixed thereto or used in connection therewith, all substitutions and replacements thereof and any products and proceeds thereof pertaining to Excell Auto Leasing, Inc.

---

**5. ALTERNATE DESIGNATION (if applicable)**
☐ LESSEE/LESSOR    ☐ CONSIGNEE/CONSIGNOR    ☐ BAILEE/BAILOR
☐ AG LIEN    ☐ NON-UCC FILING    ☐ SELLER/BUYER

---

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

---

**7. OPTIONAL FILER REFERENCE DATA**

---

STANDARD FORM - FORM UCC-1 (REV.05/2013)        Filing Office Copy        Approved by the Secretary of State, State of Florida

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

SCOTT C. GHERMAN; 5612516625

Email sgherman@scottghermanpa.com

**B. SEND ACKNOWLEDGEMENT TO:**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE #** 202107759061

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

EXCELL AUTO LEASING INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

FARACHE MOSHE

**4.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☑ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☑ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☑ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

ZANKL KRISTEN

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 9c. MAILING ADDRESS Line One | | This space not available. | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

FARACHE MOSHE

**12. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-3 (REV.08/2018)    Filing Office Copy    Approved by the Secretary of State, State of Florida

# FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

Corporation Service Company; 1-800-858-5294

Email FLSOSUCCFilingsV3@cscglobal.com

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

Exhibits Page 91 of 396

2021 Dec 15 03:21 PM

****** 202109478290 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO GROUP INC | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 1001 CLINT MOORE ROAD #101 | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

| 2c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 1001 CLINT MOORE ROAD #101 | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| HI BAR CAPITAL | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 1825 65th St | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY Brooklyn | STATE NY | POSTAL CODE 11204 | COUNTRY USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents chattel paper, licenses, leases and general intangibles, whether now owned acquired or arising, and all of debtor's books and records relating to any of the foregoing.

**5. ALTERNATE DESIGNATION (if applicable)**

☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR

☐ AG LIEN  ☐ NON-UCC FILING  ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**    2235 05934

STANDARD FORM - FORM UCC-1 (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

# STATE OF FLORIDA UNIFORM COMMERICAL CODE
# FINANCING STATEMENT FORM ADDITIONAL PARTY

Case 22-15627-EPK Doc 10 Filed 07/24/22 Page 111 of 389

Exhibits Page 92 of 396

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME
EXCELL AUTO GROUP INC

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

**20. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (20a OR 20b) - Do Not Abbreviate or Combine Names

20a. ORGANIZATION'S NAME
KARMA OF PALM BEACH INC DBA KARMA OF PALM BEACH

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

20c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101 — This space not available.

| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |
|---|---|---|---|---|

**21. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (21a OR 21b) - Do Not Abbreviate or Combine Names

21a. ORGANIZATION'S NAME
AUTOMOTIVE SERVICE SYSTEMS, INC.

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

21c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101 — This space not available.

| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |
|---|---|---|---|---|

**22. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (22a OR 22b) - Do Not Abbreviate or Combine Names

22a. ORGANIZATION'S NAME
KZ CONSULTANTS, INC.

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

22c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101 — This space not available.

| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |
|---|---|---|---|---|

**23. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (23a OR 23b) - Do Not Abbreviate or Combine Names

23a. ORGANIZATION'S NAME
MISS KRIS, LLC

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

23c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101 — This space not available.

| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |
|---|---|---|---|---|

**24. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (24a OR 24b) - Do Not Abbreviate or Combine Names

24a. ORGANIZATION'S NAME
EXCELL AUTO LEASING INC

| 24b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

24c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101 — This space not available.

| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |
|---|---|---|---|---|

**25. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (25a OR 25b) - Do Not Abbreviate or Combine Names

25a. ORGANIZATION'S NAME
EXCELL AUTO WHOLESALE INC.

| 25b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

25c. MAILING ADDRESS Line One
1001 CLINT MOORE ROAD #101 — This space not available.

| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |
|---|---|---|---|---|

STANDARD FORM - FORM UCC-1 ADDITIONAL PARTY (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

**STATE OF FLORIDA UNIFORM COMMERICAL CODE**
**FINANCING STATEMENT FORM ADDITIONAL PARTY**

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

---

**26. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (26a OR 26b) - Do Not Abbreviate or Combine Names

26a. ORGANIZATION'S NAME

DEALER SOUQ USA LLC

| 26b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) SUFFIX |
|---|---|---|

26c. MAILING ADDRESS Line One

1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**27. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (27a OR 27b) - Do Not Abbreviate or Combine Names

27a. ORGANIZATION'S NAME

EAG WHOLESALE LLC

| 27b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) SUFFIX |
|---|---|---|

27c. MAILING ADDRESS Line One

1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**28. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (28a OR 28b) - Do Not Abbreviate or Combine Names

28a. ORGANIZATION'S NAME

KARMA OF BROWARD, INC.

| 28b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) SUFFIX |
|---|---|---|

28c. MAILING ADDRESS Line One

1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**29. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (29a OR 29b) - Do Not Abbreviate or Combine Names

29a. ORGANIZATION'S NAME

LAVISH HERO FUND INC

| 29b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) SUFFIX |
|---|---|---|

29c. MAILING ADDRESS Line One

1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**30. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (30a OR 30b) - Do Not Abbreviate or Combine Names

30a. ORGANIZATION'S NAME

KARMA OF PALM BEACH, INC.

| 30b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) SUFFIX |
|---|---|---|

30c. MAILING ADDRESS Line One

1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

**31. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (31a OR 31b) - Do Not Abbreviate or Combine Names

31a. ORGANIZATION'S NAME

APPLE 3 INVESTMENTS, INC.

| 31b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) SUFFIX |
|---|---|---|

31c. MAILING ADDRESS Line One

1001 CLINT MOORE ROAD #101

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | USA |

---

STANDARD FORM - FORM UCC-1 ADDITIONAL PARTY (REV.05/2013)        Filing Office Copy        Approved by the Secretary of State, State of Florida

# STATE OF FLORIDA UNIFORM COMMERICAL CODE
# FINANCING STATEMENT FORM ADDITIONAL PARTY

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

**32. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (32a OR 32b) - Do Not Abbreviate or Combine Names

32a. ORGANIZATION'S NAME
KZ CONSULTANTS INC

| 32b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 32c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 1001 CLINT MOORE ROAD #101 | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

STEVEN ZAKHARYAYEV; 9546044222

Email STEVEN@STEVENZLAW.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2021 Dec 19 06:46 PM

★★★★★★ 202109512183 ★★★★★★

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1a. INITIAL FINANCING STATEMENT FILE #** 202109478290

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

HI BAR CAPITAL

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**4.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☐ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION**    - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**9. CHANGED (NEW) OR ADDED INFORMATION:**    - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 9c. MAILING ADDRESS Line One | | This space not available. | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

HI BAR CAPITAL

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**12. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-3 (REV.08/2018)    Filing Office Copy    Approved by the Secretary of State, State of Florida



Exhibits Page 96 of 396

| | | |
|---|---|---|
| **Date:** | 01/14/2022 | |
| **Reference:** | Feenix Karma (1700101-54) | |
| **Copies Requested:** | All Copies Excluding Lapsed Filings | |
| **Copy Cost Limit:** | $50.00 | |

| | |
|---|---|
| **Searched Through:** | 01/11/2022 |
| **Subject:** | Kristen Zankl |
| **Jurisdiction:** | Secured Transaction Registry, FL |
| **Index Searched:** | UCC |

| FILE DATE | FILE # | TYPE OF FILING | SECURED PARTY |
|---|---|---|---|
| 06/14/2017 | 201701519664 | Financing Statement | SEASIDE NATIONAL BANK & TRUST ORLANDO, FL |
| 03/19/2021 | 20210651668X | Termination | |
| 03/25/2021 | 202106578133 | Termination | |
| 06/14/2017 | 201701519672 | Financing Statement | SEASIDE NATIONAL BANK & TRUST ORLANDO, FL |
| 03/19/2021 | 202106516671 | Termination | |
| 03/25/2021 | 202106578233 | Termination | |

Filings indexed as last name only.

*Capitol Services, Inc. and its affiliates make no express or implied representation or warranty regarding search reports. All liability shall be limited to the amount of the fee paid for the report.*



Jun 14 2017 1:27PM NASON YEAGER GERSON WHITE 5614710894 p.2
Exhibits Page 97 of 396

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE
## FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Alan I. Armour II, Esquire
Phone: (561) 686-3307
**B. EMAIL ADDRESS** aarmour@nasonyeager.com

**C. SEND ACKNOWLEDGEMENT TO:**

Name    NASON, YEAGER, GERSON, WHITE & LIOCE, P.A.

Address    3001 PGA Boulevard, Suite 305

Address

City/State/Zip    Palm Beach Gardens, Florida 33410

**FLORIDA SECURED TRANSACTION REGISTRY**

# FILED

2017 Jun 14 02:24 PM

****** 201701519664 ******

Y

**1. DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names

| 1.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO GROUP, INC. | | | |
| 1.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 1.c MAILING ADDRESS Line One | | This space not available | |
| 1001 Clint Moore Road, Suite 101 | | | |
| MAILING ADDRESS Line Two | CITY | STATE / POSTAL CODE | COUNTRY |
| | Boca Raton | FL / 33487 | USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names

| 2.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| KRISTEN ZANKL | | | |
| 2.c MAILING ADDRESS Line One | | This space not available | |
| 16937 Pierre Circle | | | |
| MAILING ADDRESS Line Two | CITY | STATE / POSTAL CODE | COUNTRY |
| | Boca Raton | Florida / 33446 | USA |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (3a OR 3b)

| 3.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| SEASIDE NATIONAL BANK & TRUST | | | |
| 3.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |
| 3.c MAILING ADDRESS Line One | | This space not available | |
| 201 South Orange Avenue, Suite 1350 | | | |
| MAILING ADDRESS Line Two | CITY | STATE / POSTAL CODE | COUNTRY |
| | Orlando | FL / 32801 | USA |

**4. This FINANCING STATEMENT** covers the following collateral:

See attached Exhibit "A".

**5. ALTERNATE DESIGNATION** (if applicable)   ☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR
    ☐ AG LIEN   ☐ NON-UCC FILING   ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX
☒ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV. 05/2013)     Filing Office Copy     Approved by the Secretary of State, State of Florida

\\fs1\docs\09885\09885-24892\508353.docx/clc-lml

Jun 14 2017 1:27PM    NASON YEAGER GERSON WHITE    5614710894    Exhibits Page 98 of 596    P.3

## EXHIBIT "A" TO UCC FINANCING STATEMENT

All of Debtor's now owned and existing and hereafter acquired accounts, deposit accounts, inventory, motor vehicles, certificates of title, equipment, goods, consumer goods, fixtures, chattel paper, investment property, bank deposits, deposit accounts, general intangibles (including, without limitation, payment intangibles), instruments, certificates and policies of insurance, documents and other personal property, wheresoever located, together with proceeds thereof, including, without limitation, the following-described property. Please cross index all Debtor names.

This financing statement also covers all of the following property of Debtor, whether now or hereafter owned, existing, acquired or arising and wherever now or hereafter located (capitalized terms used herein shall have the meaning ascribed to such term under the Uniform Commercial Code as in effect in the State of Florida and/or as otherwise set forth herein):

(a)     All Accounts, and all Goods whose sale, lease or other disposition by Borrower has given rise to Accounts and have been returned to, or repossessed or stopped in transit by Debtor.

(b)     All Chattel Paper, Deposit Accounts, Farm Products, Instruments, Documents and General Intangibles (including, without limitation, all patents, patent applications, Trademarks, Trademark Licenses, trademark applications, trade names, customer lists, permits, letters of credit, negotiable documents, promissory notes, drafts, bills of exchange, trade acceptances, trade secrets, goodwill, copyrights, copyright applications, registrations, leasehold rights, licenses, franchises, customer lists, tax refund claims, rights, royalties, mineral rights, oil and gas rights, claims against carriers and shippers, claims, guarantee claims, contract rights, security interests, security deposits and any rights to indemnification);

(c)     All Inventory (including all new and used motor and other vehicles) and all title documentation pertaining to such vehicles;

(d)     All Goods and Consumer Goods;

(e)     All Equipment;

(f)     All Investment Property, Financial Assets and Security Entitlements, and shall also include (i) all securities and other property, rights or interests of any description at any time issued or issuable as an addition to, in substitution or exchange for, or with respect to the Collateral in the Account, including, without limitation, dividends, distributions, shares issued as dividends or as the result of any change or any reclassification, merger or any stock split, split-up or other corporate reorganization; (ii) all rights under and pursuant to the Account; (iii) all stock and bond powers, certificates and instruments with respect to the Collateral in the Account; (iv) all interest, cash and stock dividends, warrants, options, and other rights and amounts paid, accrued, received, receivable, or distributed with respect to the Collateral in the Account from time to time; (v) all security entitlements, voting rights, proxies, financial assets, investment property, commodity contracts, money, instruments, documents, goods, chattel paper, accounts, general intangibles, deposit accounts, and rights of redemption with respect to the Collateral in

Jun 14 2017 1:27PM   NASON YEAGER GERSON WHITE   5614710894   Exhibits Page 99 of 596   P. 4

the Account; and (vi) all books, records, replacements, reinvestments, earnings, substitutions, renewals, additions, products and proceeds of the foregoing, including insurance proceeds and payments under the Securities Investor Protection Act of 1970, as amended.

(g)  All deposits, merchandise returns and cash;

(h)  All items of property described in the Loan and Security Agreement from Debtor in favor of Secured Party;

(i)  Other Collateral;

(j)  Any other property of Debtor now or hereafter in the possession, custody or control of Secured Party or any agent or any parent, affiliate or subsidiary of Secured Party or any participant with Secured Party for any purpose (whether for safekeeping, deposit, collection, custody, pledge, transmission or otherwise); and

(k)  All warranties, increases, parts, renewals, additions and accessions to, substitutions for, and replacements, products and Proceeds of the foregoing property, including, without limitation, proceeds of all insurance policies insuring the foregoing property, and all of Debtor's books and records relating to any of the foregoing and to Debtor's business.

"Inventory" shall also mean and include all of the following:

All present and hereafter acquired inventory, wherever located, including, but not limited to, automobile vehicles, raw materials, parts, work in process and finished goods; inventory which Debtor holds for ultimate sale or lease, or which has been or will be supplied under contracts of services, or which are raw materials, work in process, or materials used or consumed in Debtor's business; and supplies used or produced in Debtor's business or in possession of Debtor; and all proceeds and products of the foregoing, and all documents of title evidencing any of the foregoing.

"Equipment" shall also mean and include all of the following:

All present and hereafter acquired equipment (including, but not limited to, any and all pumps, motors, machinery, vehicles, furniture, furnishings, fixtures, supplies, materials, building materials, manufacturing equipment, shop equipment, office and record keeping equipment, parts, tools, engines, trucks, trailers, loaders and other vehicles and any and all other equipment and machinery used by Debtor in its operations wherever located, and all replacements and substitutions therefor and all accessions thereto) wherever located and all accessories, parts and appurtenances thereto appertaining or attached, or kept or used or intended for use in connection therewith, and all other like or unlike machinery, appliances, apparatus, tools and machine tools and all substitutions, removals, improvements and replacements of and accessions and additions to any and all of the foregoing; and proceeds and products of the foregoing, and all leases and rental agreements pertaining to the Equipment.

"Proceeds" shall also mean and include all proceeds of, and all other profits, products, rents or receipts, in whatever form, arising from the collection, sale, lease, exchange, assignment,

2

licensing or other disposition of, or other realization upon collateral, including, without limitation, all licenses, permits, authorizations and applications, all claims of Debtor against third parties for loss of, damage to or destruction of, or for proceeds payable under, or unearned premiums with respect to, policies of insurance in respect of, any collateral, and any condemnation or requisition payments with respect to any collateral, in each case whether now existing or hereafter arising.

"Trademarks" means all of the foregoing: (i) all trademarks, trade names, corporate names, company names, business names, logos, other source or business identifiers, designs and general intangibles of like nature, now existing or hereafter adopted or acquired, all registrations and recordings thereof, and all applications in connection therewith, including registrations, recordings and applications in the United States Patent and Trademark Office or in any similar office or agency of the United States, any State thereof or any other country or any political subdivision thereof, including those described in the Perfection Certificate, and (ii) all extensions or renewals thereof.

"Trademark Licenses" means any written agreement now or hereafter in existence granting to Debtor any right to use any Trademark.

"Other Collateral" means all money, documents, instruments, chattel paper, and general intangibles of Debtor, each as defined in the Uniform Commercial Code as adopted in Florida (including, without limitation, all life insurance policies, documents and certificates of title, certificates of deposit, certificates and policies of insurance, contract rights, bank deposits, deposit accounts, checking accounts and cash), whether now owned or hereafter acquired or in which Debtor may now or hereafter have any interest, and all accessions, additions and increases, and all replacements, substitutions and parts of or for, and all proceeds (including, without limitation, insurance proceeds in the event of loss and profits), and all products of, and all books, records and documents relating to, all of the foregoing.

NOTE:    THE LOAN AND SECURITY AGREEMENT CONTAINS THE FOLLOWING PROVISION:

Other Lienholders. Any person or entity taking a junior encumbrance, or other lien upon the Collateral or any part thereof or any interest therein, shall take said lien subject to the rights of Secured Party to amend, modify, extend, renew, enlarge or release the Note, this Agreement or any other document or instrument evidencing, securing or guaranteeing the Note, including, but not limited to, any amendments, modifications, extensions or renewals that increase the amount outstanding under the Note, in each and every case without obtaining the consent of the holder of such junior lien and without the lien of this Agreement losing its priority over the rights of any such junior lien.

Accordingly, any person or entity taking a junior encumbrance, or other lien upon the Collateral or any part therein or any interest therein, shall take said lien subject to the provisions of the Loan and Security Agreement, including, but not limited to, the above provision.

3

FLORIDA SECURED TRANSACTION REGISTRY

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

2021 Mar 19 11:48 AM

****** 20210651668X ******

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2080 74797
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
201701519664 06/14/2017

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☑ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME EXCELL AUTO GROUP, INC. | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME UNITED COMMUNITY BANK D/B/A SEASIDE BANK AND TRUST, AS SUCCESSOR BY MERGER TO SEASIDE NATIONAL BANK & TRUST | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP, INC. - 6407504/6701

2080 74797

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

IVY COLON; 5617502445

Email   IVY@GRANERLAW.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

Exhibits Page 102 of 396

2021 Mar 25 04:20 PM

\*\*\*\*\*\* 202106578133 \*\*\*\*\*\*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

**1a. INITIAL FINANCING STATEMENT FILE #** 201701519664

**1b.** ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

EXCELL AUTO GROUP, INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

SEASIDE NATIONAL BANK & TRUST

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**4.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☐ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** — INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**9. CHANGED (NEW) OR ADDED INFORMATION:** — INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

9c. MAILING ADDRESS Line One

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

SEASIDE NATIONAL BANK & TRUST

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**12. OPTIONAL FILER REFERENCE DATA**   Debtor: EXCELL AUTO GROUP, INC. — 6407504/6701

STANDARD FORM - FORM UCC-3 (REV.08/2018)     Filing Office Copy     Approved by the Secretary of State, State of Florida

Jun 14 2017 1:30PM   NASON YEAGER GERSON WHI

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
Alan I. Armour II, Esquire
Phone: (561) 686-3307
B. EMAIL ADDRESS  aarmour@nasonyeager.com
C. SEND ACKNOWLEDGEMENT TO:
Name       NASON, YEAGER, GERSON, WHITE & LIOCE, P.A.

Address    3001 PGA Boulevard, Suite 305

Address

City/State/Zip    Palm Beach Gardens, Florida 33410

FLORIDA SECURED TRANSACTION REGISTRY

# FILED

2017 Jun 14 02:26 PM

****** 201701519672 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names**

| 1.a ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| SCOTT ZANKL |  |  |  |
| 1.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1.c MAILING ADDRESS Line One | | | |
| 16937 Pierre Circle | | | |
| MAILING ADDRESS Line Two | CITY Boca Raton | STATE FL | POSTAL CODE 33446 | COUNTRY USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names**

| 2.a ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| 2.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| KRISTEN ZANKL | | | |
| 2.c MAILING ADDRESS Line One | | | |
| 16937 Pierre Circle | | | |
| MAILING ADDRESS Line Two | CITY Boca Raton | STATE Florida | POSTAL CODE 33446 | COUNTRY USA |

**3. SECURED PARTY'S NAME   (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (3a OR 3b)**

| 3.a ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| SEASIDE NATIONAL BANK & TRUST |  |  |  |
| 3.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3.c MAILING ADDRESS Line One | | | |
| 201 South Orange Avenue, Suite 1350 | | | |
| MAILING ADDRESS Line Two | CITY Orlando | STATE FL | POSTAL CODE 32801 | COUNTRY USA |

**4. This FINANCING STATEMENT covers the following collateral:**

See attached Exhibit "A".

**5. ALTERNATE DESIGNATION (if applicable)**  ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR
                                          ☐ AG LIEN        ☐ NON-UCC FILING       ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX**
☒ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV. 05/2013)          Filing Office Copy          Approved by the Secretary of State, State of Florida

\\fs1\docs\09885\09885-24892\543773.docx/lml

## EXHIBIT "A" TO UCC FINANCING STATEMENT

This financing statement also covers all of the following property of Debtor, whether now or hereafter owned, existing, acquired or arising and wherever now or hereafter located (capitalized terms used herein shall have the meaning ascribed to such term under the Uniform Commercial Code as in effect in the State of Florida and/or as otherwise set forth herein):

(a)     All Investment Property, Financial Assets and Security Entitlements, including, but not limited to, Debtor's account with TD Ameritrade, Inc., and shall also include (i) all securities and other property, rights or interests of any description at any time issued or issuable as an addition to, in substitution or exchange for, or with respect to the Collateral in the Account, including, without limitation, dividends, distributions, shares issued as dividends or as the result of any change or any reclassification, merger or any stock split, split-up or other corporate reorganization; (ii) all rights under and pursuant to the Account; (iii) all stock and bond powers, certificates and instruments with respect to the Collateral in the Account; (iv) all interest, cash and stock dividends, warrants, options, and other rights and amounts paid, accrued, received, receivable, or distributed with respect to the Collateral in the Account from time to time; (v) all security entitlements, voting rights, proxies, financial assets, investment property, commodity contracts, money, instruments, documents, goods, chattel paper, accounts, general intangibles, deposit accounts, and rights of redemption with respect to the Collateral in the Account; and (vi) all books, records, replacements, reinvestments, earnings, substitutions, renewals, additions, products and proceeds of the foregoing, including insurance proceeds and payments under the Securities Investor Protection Act of 1970, as amended.

FLORIDA SECURED TRANSACTION REGISTRY

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

2080 75007
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Mar 19 11:48 AM

****** 202106516671 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| 201701519672 06/14/2017 | |

2. ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:   **AND** Check one of these three boxes to:
This Change affects ☐ Debtor or ☐ Secured Party of record | ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c | ☐ ADD name: Complete item 7a or 7b, and item 7c | ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:   Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | SCOTT | | |

7. CHANGED OR ADDED INFORMATION:   Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME UNITED COMMUNITY BANK D/B/A SEASIDE BANK AND TRUST, AS SUCCESSOR BY MERGER TO SEASIDE NATIONAL BANK & TRUST | | | |
|---|---|---|---|

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA: Debtor: SCOTT ZANKL - 6407504/6701

2080 75007

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

IVY COLON; 5617502445

Email IVY@GRANERLAW.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1a. INITIAL FINANCING STATEMENT FILE #** 201701519672

**1b.** [✓] This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

SCOTT ZANKL

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

SEASIDE NATIONAL BANK & TRUST

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**4.** [✓] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** [ ] **ASSIGNMENT** [ ] Full or [ ] Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** [ ] **AMENDMENT** (PARTY INFORMATION): This Amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.

**Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.**

[ ] **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

[ ] **DELETE** name: Give record name to be deleted in item 8a or 8b.

[ ] **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

9c. MAILING ADDRESS Line One

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**10. AMENDMENT (COLLATERAL CHANGE): check only one box.**

Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor check here [ ] and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

SEASIDE NATIONAL BANK & TRUST

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**12. OPTIONAL FILER REFERENCE DATA**  Debtor: SCOTT ZANKL — 6407504/6701

STANDARD FORM - FORM UCC-3 (REV.08/2018)  Filing Office Copy  Approved by the Secretary of State, State of Florida



| | | | |
|---|---|---|---|
| Date: | 01/14/2022 | | |
| Reference: | Feenix Karma (1700101-54) | | |
| Copies Requested: | All Copies Excluding Lapsed Filings | | |
| Copy Cost Limit: | $50.00 | | |

| | |
|---|---|
| Searched Through: | 01/11/2022 |
| Subject: | Zankl, Scott |
| Jurisdiction: | Secured Transaction Registry, FL |
| Index Searched: | UCC |

| FILE DATE | FILE # | TYPE OF FILING | SECURED PARTY |
|---|---|---|---|
| 04/12/2021 | 202106742728 | Financing Statement | QUICK SHIFT CAPITAL<br>BOCA RATON, FL |
| 04/15/2021 | 202106787470 | Financing Statement | FRANKLIN CAPITAL GROUP, LLC<br>FARMINGTON HILLS, MI |
| 10/26/2021 | 20210891637X | Amendment | |
| 10/26/2021 | 202108916393 | Amendment | |
| 10/26/2021 | 202108916427 | Amendment | |
| 10/26/2021 | 202108916438 | Amendment | |
| 11/05/2021 | 202109046749 | Amendment | |
| 07/13/2021 | 202107709047 | Financing Statement | AUTO WHOLESALE OF BOCA LLC<br>BOCA RATON, FL |
| 07/13/2021 | 202107709047 | Additional Secured Party on Record | |
| 11/11/2021 | 202109108747 | Termination | |
| 11/11/2021 | 202109109124 | Termination | |
| 07/16/2021 | 202107759159 | Financing Statement | FARACHE MOSHE<br>BOCA RATON, FL |
| 11/11/2021 | 202109108871 | Termination | |

*Capitol Services, Inc. and its affiliates make no express or implied representation or warranty regarding search reports. All liability shall be limited to the amount of the fee paid for the report.*

**Capitol Services, Inc.** ★ PO Box 1831 ★ Austin, TX 78767 ★ (800) 345-4647



9-132142301

Page: 1 of 1

**FINANCING STATEMENT FORM**

Case 22-15627-EPK   Doc 10   Filed 07/24/22   Page 127 of 389

**FILED**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
GAVRIELE GREEN; 5613509723
Email zach@quickshiftcapital.com

B. SEND ACKNOWLEDGEMENT TO:

2021 Apr 12 11:53 AM

\*\*\*\*\*\* 202106742728 \*\*\*\*\*\*

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| EXCELL AUTO GROUP INC | | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 1c. MAILING ADDRESS Line One 1001 CLINT MOORE ROAD | | This space not available. | | | | |
| MAILING ADDRESS Line Two STE 101 | | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | | COUNTRY US |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME ZANKL | FIRST PERSONAL NAME SCOTT | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 2c. MAILING ADDRESS Line One 16937 PIERRE CIRCLE | | This space not available. | | | | |
| MAILING ADDRESS Line Two | | CITY BOCA RATON | STATE FL | POSTAL CODE 33446 | | COUNTRY US |

**3. SECURED PARTY'S NAME**   (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | | | | |
|---|---|---|---|---|---|---|
| QUICK SHIFT CAPITAL | | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX | |
| 3c. MAILING ADDRESS Line One 2200 BUTTS ROAD | | This space not available. | | | | |
| MAILING ADDRESS Line Two SUITE 240 | | CITY BOCA RATON | STATE FL | POSTAL CODE 33431 | | COUNTRY US |

**4. This FINANCING STATEMENT covers the following collateral:**

Borrower grants to Lender a continuing security interest in all of Borrower's assets and properties, whoever located, including, without limitation, all equipment of any kind or nature; all vehicles and vehicle parts; all Inventory now owned or hereafter acquired, including, without limitation, all Lender Financed Inventory now owned or hereafter acquired; all amounts in Borrower's Reserve held by or on behalf of Lender; in any; all documents, documents of title, deposit accounts, accounts receivable, manufacturer rebates and incentive payments, chattel paper, including, without limitation; all Receivables and general intangibles now owned or hereafter acquired by Borrower; all cash reserves; all of Borrower's books and records (including any books and records contains on computer hardware or software or otherwise stored by or on behalf of Borrower in electronic or digital form); and all additions, accessions, accessories, replacements, substitutions, and proceeds.

**5. ALTERNATE DESIGNATION (if applicable)**   ☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR   ☐ AG LIEN   ☐ NON-UCC FILING   ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.05/2013)       Filing Office Copy       Approved by the Secretary of State, State of Florida

## STATE OF FLORIDA UNIFORM COMMERICAL CODE
## FINANCING STATEMENT FORM ADDITIONAL PARTY

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME

EXCELL AUTO GROUP INC

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

**20. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (20a OR 20b) - Do Not Abbreviate or Combine Names

| 20a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ZANKL | KRISTEN | | |

| 20c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 16937 PIERRE CIRCLE | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33446 | COUNTRY US |

**FINANCING STATEMENT FORM**

Exhibits Page 110 of 396

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

ONLINE DEPT.; 888-507-4593

Email ONLINE@FICOSO.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2021 Apr 15 01:28 PM

****** 20210678'7470 ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO GROUP, INC. | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS Line One | | | | | |
|---|---|---|---|---|---|
| 1001 CLINTMOORE ROAD #101 | This space not available. | | | | |
| MAILING ADDRESS Line Two | CITY BOCA RATON | STATE FL | POSTAL CODE 33487 | COUNTRY USA |

**2. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (2a OR 2b)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| KRISTEN ZANKL | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 16937 PIERRE CIRCLE | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY DELRAY BEACH | STATE FL | POSTAL CODE 33446 | COUNTRY USA |

**3. ADDITIONAL SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | SCOTT | | |

| 3c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 16937 PIERRE CIRCLE | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY DELRAY BEACH | STATE FL | POSTAL CODE 33446 | COUNTRY USA |

**4. This FINANCING STATEMENT covers the following collateral:**

SEE ATTACHED EXHIBIT A

**5. ALTERNATE DESIGNATION (if applicable)**

☐ LESSEE/LESSOR    ☐ CONSIGNEE/CONSIGNOR    ☐ BAILEE/BAILOR

☐ AG LIEN    ☐ NON-UCC FILING    ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**    [UCC1-671172] EXCELL AUTO

STANDARD FORM - FORM UCC-1 (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

# STATE OF FLORIDA UNIFORM COMMERICAL CODE
## FINANCING STATEMENT FORM ADDENDUM

**8. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

8a. ORGANIZATION'S NAME

EXCELL AUTO GROUP, INC.

| 8b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**9. MISCELLANEOUS**

**10. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (10a OR 10b) - Do Not Abbreviate or Combine Names

10a. ORGANIZATION'S NAME

| 10b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 10c. MAILING ADDRESS Line One | This space not available. | | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**11. ADDITIONAL SECURED PARTY'S NAME** or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (11a OR 11b)

11a. ORGANIZATION'S NAME

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS Line One | This space not available. | | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**12.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**13.** Description of real estate:

**14.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**15.** Additional collateral description:

**16.** Check only if applicable and check only one box.

Collateral ☐ Held in Trust
☐ Being administrated by Decendent's Personal Representative

**17.** Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction - effective 30 years

STANDARD FORM - FORM UCC-1 ADDENDUM (REV.05/2013)       Filing Office Copy       Approved by the Secretary of State, State of Florida

EXHIBIT A

All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets:

a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credits Rights; j. General Intangibles; k. Supporting Obligations; and l. Proceeds and Products of the foregoing.

NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN, THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCE IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

ONLINE DEPT.; 888-507-4593

Email ONLINE@FICOSO.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

Exhibits Page 113 of 396

2021 Oct 26 04:01 PM

****** 20210891637X ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

**1a. INITIAL FINANCING STATEMENT FILE #** 202106787470

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

---

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

**2a. ORGANIZATION'S NAME**

EXCELL AUTO GROUP, INC.

**2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

---

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

**3a. ORGANIZATION'S NAME**

KRISTEN ZANKL

**3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

---

**4.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☑ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☑ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☑ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

---

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

**8a. ORGANIZATION'S NAME**

**8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

---

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

**9a. ORGANIZATION'S NAME**

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

**9c. MAILING ADDRESS Line One**

16937 PIERRE CIRCLE

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | DELRAY BEACH | FL | 33446 | USA |

---

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

---

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

**11a. ORGANIZATION'S NAME**

KRISTEN ZANKL

**11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)**

---

**12. OPTIONAL FILER REFERENCE DATA** [UCC3-671172.5]

STANDARD FORM - FORM UCC-3 (REV.08/2018)   Filing Office Copy   Approved by the Secretary of State, State of Florida

Case 22-15627-EPK   Doc 10   Filed 07/24/22   Page 133 of 389

## A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

ONLINE DEPT.; 888-507-4593

Email ONLINE@FICOSO.COM

B. SEND ACKNOWLEDGEMENT TO:

**FILED**

Exhibits Page 114 of 396

2021 Oct 26 04:01 PM

****** 202108916393 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

**1a. INITIAL FINANCING STATEMENT FILE #** 202106787470

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

### 2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)

2a. ORGANIZATION'S NAME

EXCELL AUTO GROUP, INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

### 3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

3a. ORGANIZATION'S NAME

KRISTEN ZANKL

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

---

**4.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☑ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☑ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☑ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

### 8. CURRENT RECORD INFORMATION - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

### 9. CHANGED (NEW) OR ADDED INFORMATION: - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | SCOTT | | |

9c. MAILING ADDRESS Line One

16937 PIERRE CIRCLE

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | DELRAY BEACH | FL | 33446 | USA |

### 10. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

### 11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT

(name of assignor if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

ZANKL SCOTT

**12. OPTIONAL FILER REFERENCE DATA**   [UCC3-671172.4]

STANDARD FORM - FORM UCC-3 (REV.08/2018)   Filing Office Copy   Approved by the Secretary of State, State of Florida

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

ONLINE DEPT.; 888-507-4593

Email ONLINE@FICOSO.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

Exhibits Page 115 of 396

2021 Oct. 26 04:02 PM

****** 202108916427 ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| **1a. INITIAL FINANCING STATEMENT FILE #** 202106787470 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

EXCELL AUTO GROUP, INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

KRISTEN ZANKL

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

| 4. | ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement. |
|---|---|
| 5. | ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law. |
| 6. | ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11. |
| 7. | ☑ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☑ Secured Party of record. Check only one of these two boxes. |

**Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.**

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☑ **DELETE** name: Give record name to be deleted in item 8a or 8b.

☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

ZANKL SCOTT

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 9c. MAILING ADDRESS Line One | | This space not available. | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**10. AMENDMENT (COLLATERAL CHANGE): check only one box.**

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

ZANKL SCOTT

**12. OPTIONAL FILER REFERENCE DATA** [UCC3-671172.3]

| **STANDARD FORM - FORM UCC-3 (REV.08/2018)** | **Filing Office Copy** | **Approved by the Secretary of State, State of Florida** |
|---|---|---|

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

ONLINE DEPT.; 888-507-4593

Email  ONLINE@FICOSO.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

Exhibits Page 116 of 396

2021 Oct 26 04:02 PM

****** 202108916438 ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1a. INITIAL FINANCING STATEMENT FILE #** 202106787470

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

EXCELL AUTO GROUP, INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

KRISTEN ZANKL

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**4.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☑ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☑ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☑ CHANGE name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.

☐ DELETE name: Give record name to be deleted in item 8a or 8b.

☐ ADD name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION**   - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

KRISTEN ZANKL

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**9. CHANGED (NEW) OR ADDED INFORMATION:**   - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

DIVERSE CAPITAL, LLC

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

9c. MAILING ADDRESS Line One

750 MAIN ST, SUITE 906

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | HARTFORD | CT | 06103 | USA |

**10. AMENDMENT (COLLATERAL CHANGE): check only one box.**

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

KRISTEN ZANKL

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**12. OPTIONAL FILER REFERENCE DATA**   [UCC3-671172.2]

STANDARD FORM - FORM UCC-3 (REV.08/2018)          Filing Office Copy          Approved by the Secretary of State, State of Florida

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**
2212 81473
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 05 03:56 PM

****** 202109046749 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106787470 04/15/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME DIVERSE CAPITAL, LLC | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|
| 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI | POSTAL CODE 48334 | COUNTRY USA |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME DIVERSE CAPITAL, LLC | | | |
|---|---|---|---|
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP, INC. - NJR/ASW (15492-72)

2212 81473

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
SCOTT C. GHERMAN; 5612516625
Email SGHERMAN@SCOTTGHERMANPA.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2021 Jul 13 12:51 PM

****** 202107709047 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KARMA OF PALM BEACH INC. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS Line One | | | | |
| 1001 CLINT MOORE RD., STE 101 | | This space not available. | | |
| MAILING ADDRESS Line Two | | CITY | STATE | POSTAL CODE | COUNTRY |
| | | BOCA RATON | FL | 33487 | US |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| ZANKL | SCOTT | | | |
| 2c. MAILING ADDRESS Line One | | | | |
| 1001 CLINT MOORE RD., STE 101 | | This space not available. | | |
| MAILING ADDRESS Line Two | | CITY | STATE | POSTAL CODE | COUNTRY |
| | | BOCA RATON | FL | 33487 | US |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| AUTO WHOLESALE OF BOCA LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS Line One | | | | |
| 6560 WEST ROGERS CIRCLE, SUITE #B27 | | This space not available. | | |
| MAILING ADDRESS Line Two | | CITY | STATE | POSTAL CODE | COUNTRY |
| | | BOCA RATON | FL | 33487 | US |

**4. This FINANCING STATEMENT covers the following collateral:**

All debtor's assets and properties wherever located, including without limitation all equipment of any kind or nature, any and all vehicles (also including all "Locate Vehicles"), vehicle parts or inventory now owned or hereafter acquired, including, without limitation: all accounts and accounts receivable, general intangibles, chatel paper whether tangilble or electornic, together with all attachments, accessions, and equipment now or hereafter affixed thereto or used in connection therewith, all substitutions and replacements thereof and any products and proceeds thereof pertaining to Karma of Palm Beach Inc.

**5. ALTERNATE DESIGNATION (if applicable)**
☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR
☐ AG LIEN ☐ NON-UCC FILING ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX
☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.05/2013)        Filing Office Copy        Approved by the Secretary of State, State of Florida

**STATE OF FLORIDA UNIFORM COMMERICAL CODE**
**FINANCING STATEMENT FORM ADDITIONAL PARTY**

**18. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

18a. ORGANIZATION'S NAME

KARMA OF PALM BEACH INC.

| 18b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. MISCELLANEOUS:**

**20. ADDITIONAL SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (20a OR 20b)

20a. ORGANIZATION'S NAME

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| FARACHE | MOSHE | | |

20c. MAILING ADDRESS Line One

6560 WEST ROGERS CIRCLE, SUITE #B27

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

SCOTT C. GHERMAN; 5612516625

Email SGHERMAN@SCOTTGHERMANPA.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**

2021 Nov 11 04:46 PM

****** 202109108747 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| | |
|---|---|
| **1a. INITIAL FINANCING STATEMENT FILE #** 202107709047 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME

KARMA OF PALM BEACH INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

AUTO WHOLESALE OF BOCA LLC

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**4.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☐ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.    ☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.    ☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION**    - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**9. CHANGED (NEW) OR ADDED INFORMATION:**    - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

9c. MAILING ADDRESS Line One

This space not available.

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**

(name of assignor if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

AUTO WHOLESALE OF BOCA LLC

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**12. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-3 (REV.08/2018)    Filing Office Copy    Approved by the Secretary of State, State of Florida

| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON | **FILED** |
|---|---|
| SCOTT C. GHERMAN; 5612516625<br><br>Email SGHERMAN@SCOTTGHERMANPA.COM | Exhibits Page 121 of 396<br><br>2021 Nov 11 05:17 PM |
| B. SEND ACKNOWLEDGEMENT TO: | ****** 202109109124 ****** |
| | THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY |

| 1a. INITIAL FINANCING STATEMENT FILE # 202107709047 | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

## 2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)

2a. ORGANIZATION'S NAME

KARMA OF PALM BEACH INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

## 3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

3a. ORGANIZATION'S NAME

AUTO WHOLESALE OF BOCA LLC

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

| 4. | ☑ TERMINATION: | Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement. |
|---|---|---|
| 5. | ☐ CONTINUATION: | Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law. |
| 6. | ☐ ASSIGNMENT ☐ Full or ☐ Partial : | Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11. |
| 7. | ☐ AMENDMENT | (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes. |

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.

☐ CHANGE name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.  ☐ DELETE name: Give record name to be deleted in item 8a or 8b.  ☐ ADD name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

## 8. CURRENT RECORD INFORMATION    - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

## 9. CHANGED (NEW) OR ADDED INFORMATION:    - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 9c. MAILING ADDRESS Line One | | This space not available. | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

## 10. AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

## 11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT

(name of assignor if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

AUTO WHOLESALE OF BOCA LLC

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

## 12. OPTIONAL FILER REFERENCE DATA

STANDARD FORM - FORM UCC-3 (REV.08/2018)    Filing Office Copy    Approved by the Secretary of State, State of Florida

# FINANCING STATEMENT FORM

Case 22-15627-EPK    Doc 10    Filed 07/24/22    Page 141 of 389

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

SCOTT C. GHERMAN; 5612516625

Email SGHERMAN@SCOTTGHERMANPA.COM

**B. SEND ACKNOWLEDGEMENT TO:**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| KARMA OF PALM BEACH INC. | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 1001 CLINT MOORE RD., STE 101 | This space not available. | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | SCOTT | | |

| 2c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 1001 CLINT MOORE RD., STE 101 | This space not available. | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| FARACHE | MOSHE | | |

| 3c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 6560 WEST ROGERS CIRCLE, SUITE #B27 | This space not available. | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

**4. This FINANCING STATEMENT covers the following collateral:**

All equipment of any kind or nature, any and all vehicles (also including "Locate Vehicles"), vehicle part or inventory now owned or hereafter acquired, including without limitation: all accounts and accounts receivable, general intangibles, chattel paper whether tangible or electronic, together with all attachments, accessions, and equipment now or hereafter affixed thereto or used in connection therewith, all substitutions and replacements thereof and any products and proceeds thereof pertaining to Karma of Palm Beach, Inc.

**5. ALTERNATE DESIGNATION (if applicable)**  ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR
☐ AG LIEN  ☐ NON-UCC FILING  ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.05/2013)          Filing Office Copy          Approved by the Secretary of State, State of Florida

**FILED**

2021 Nov 11 04:46 PM

****** 202109108871 ******

| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON |
|---|
| SCOTT C. GHERMAN; 5612516625 |
| Email SGHERMAN@SCOTTGHERMANPA.COM |
| B. SEND ACKNOWLEDGEMENT TO: |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #** 202107759159

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2. CURRENT RECORD INFORMATION - DEBTOR NAME - INSERT ONLY ONE DEBTOR NAME (2a OR 2b)**

2a. ORGANIZATION'S NAME
KARMA OF PALM BEACH INC.

2b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**3. CURRENT RECORD INFORMATION - SECURED PARTY NAME - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

3a. ORGANIZATION'S NAME

3b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)
FARACHE MOSHE

**4.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT** ☐ Full or ☐ Partial : Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☐ **AMENDMENT** (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.
☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.
☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.
☐ **ADD** name: Complete item 9a or 9b, and 9c; also complete items 9d-9g (if applicable).

**8. CURRENT RECORD INFORMATION** - INSERT ONLY ONE NAME (8a OR 8b) - Do Not Abbreviate or Combine names

8a. ORGANIZATION'S NAME

8b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)

**9. CHANGED (NEW) OR ADDED INFORMATION:** - INSERT ONLY ONE NAME (9a OR 9b) - Do Not Abbreviate or Combine names

9a. ORGANIZATION'S NAME

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 9c. MAILING ADDRESS Line One | | This space not available. | | |
|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**10. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**
(name of assignor if this is an Assignment. If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME

11b. INDIVIDUAL'S NAME (SURNAME, FIRST PERSONAL NAME, ADDITIONAL NAME(S)/INITIAL(S), SUFFIX)
FARACHE MOSHE

**12. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-3 (REV.08/2018)      Filing Office Copy      Approved by the Secretary of State, State of Florida



| | |
|---|---|
| **Date:** | 01/14/2022 Exhibits Page 124 of 396 |
| **Reference:** | Feenix Karma (1700101-54) |
| **Copies Requested:** | All Copies Excluding Lapsed Filings |
| **Copy Cost Limit:** | $50.00 |

| | |
|---|---|
| **Searched Through:** | 01/11/2022 |
| **Subject:** | Zankl, Scott Thomas |
| **Jurisdiction:** | Secured Transaction Registry, FL |
| **Index Searched:** | UCC |

| FILE DATE | FILE # | TYPE OF FILING | SECURED PARTY |
|---|---|---|---|
| 11/05/2021 | 202109046838 | Financing Statement | FRANKLIN CAPITAL GROUP, LLC<br>FARMINGTON HILLS, MI |
| 12/10/2021 | 202109425286 | Termination | |
| 11/05/2021 | 202109047001 | Financing Statement | FRANKLIN CAPITAL GROUP, LLC<br>FARMINGTON HILLS, MI |
| 12/10/2021 | 202109425278 | Termination | |
| 11/19/2021 | 20210920820X | Financing Statement | WESTLAKE FLOORING COMPANY, LLC<br>LOS ANGELES, CA |

*Capitol Services, Inc. and its affiliates make no express or implied representation or warranty regarding search reports. All liability shall be limited to the amount of the fee paid for the report.*

**Capitol Services, Inc.** ★ PO Box 1831 ★ Austin, TX 78767 ★ (800) 345-4647



FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

2021 Nov 05 03:56 PM

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2209 69217
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

****** 202109046838 ******

Filed In: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ZANKL | SCOTT | THOMAS | |
| 1c. MAILING ADDRESS 16937 PIERRE CIR | CITY BOCA RATON | STATE FL   POSTAL CODE 33446 | COUNTRY USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE   POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME FRANKLIN CAPITAL MANAGEMENT, LLC | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 32300 NORTHWESTERN HWY. | CITY FARMINGTON HILLS | STATE MI   POSTAL CODE 48334 | COUNTRY USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
Florida Documentary Stamp Tax is not required.
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:** :NJR/ASW (15492-72)

2209 69217

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## EXHIBIT A

**DEBTOR:**        **SCOTT THOMAS ZANKL**

**SECURED PARTY:**        **FRANKLIN CAPITAL MANAGEMENT, LLC**

All of the following property in which Debtor now or hereafter owns or has an interest, wherever located:

a) the shares, interests, participations or other equivalents (however designated, whether voting or non-voting) of capital, whether now outstanding or issued or acquired after the date hereof, including common shares, preferred shares, membership interests in a limited liability company, limited or general partnership interests in a partnership or any other equivalent of such ownership interest, in each case, including those described in Schedule I and issued by the entities named therein (the "Pledged Shares") held by Debtor and the certificates, if any, representing such Pledged Shares and any interest of Debtor, including all interests documented in the entities on the books of the issuer of the Pledged Shares or any financial intermediary pertaining to the Pledged Shares and all dividends, cash, warrants, rights, instruments and other property or proceeds from time to time received, receivable, or otherwise distributed in respect of, or in exchange for, any or all of the Pledged Shares;.

b) all other property that may be delivered to and held by Secured Party;

c) all additions, attachments, accessions, parts, replacements, substitutions, renewals, interest, dividends, distributions, rights of any kind (including but not limited to stock split, membership interest splits, or partnership interest splits, stock rights, membership interest rights or partnership interest rights, voting and preferential rights), products, and proceeds of or pertaining to the above including, without limit, cash or other property which were proceeds and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by Debtor; and

d) to the extent not covered by clauses (a) through (c) above, all proceeds of any of the foregoing Collateral.

## SCHEDULE 1

### PLEDGED SHARES

| Pledgor/Record & Beneficial Owner | Issuing Entity | Class of Issued Stock/Units | Certificate No. of Issued Shares/Units | Number of Shares/Units Issued | Total Shares/Units Issued in such Class |
|---|---|---|---|---|---|
| Scott Zankl | Excell Auto Group, Inc. | Common shares | uncertificated | 50% | 100% |

UNDER AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO SELL, ASSIGN, PLEDGE OR OTHERWISE ENCUMBER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT. THE SALE, ASSIGNMENT, PLEDGE OR ENCUMBERING OF ANY SUCH COLLATERAL WOULD CONSTITUTE TORTIOUS INTERFERENCE WITH SECURED PARTY'S CONTRACTUAL RELATIONSHIP WITH DEBTOR. IN THE EVENT THAT ANY THIRD PARTY PURCHASES, TAKES AN ASSIGNMENT OR PLEDGE OF, AND/OR IS GRANTED A SECURITY INTEREST IN ANY OF THE ASSETS DESCRIBED IN THIS FINANCING STATEMENT, SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH THIRD PARTY.

Bodman_18080246_1

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2231 10528
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Dec 10 04:00 PM

****** 202109425286 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202109046838 11/05/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☑ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ ASSIGNMENT (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ CONTINUATION:  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | SCOTT | THOMAS | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                                SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ COLLATERAL CHANGE:  Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:**  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME FRANKLIN CAPITAL MANAGEMENT, LLC

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor:ZANKL, SCOTT THOMAS-:NJR/ASW (15492-72)

2231 10528

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

2021 Nov 05 03:56 PM

****** 202109047001 ******

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2209 68629
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **1b. INDIVIDUAL'S SURNAME** ZANKL | **FIRST PERSONAL NAME** SCOTT | **ADDITIONAL NAME(S)/INITIAL(S)** THOMAS | **SUFFIX** |
| **1c. MAILING ADDRESS** 16937 PIERRE CIR | **CITY** BOCA RATON | **STATE** FL  **POSTAL CODE** 33446 | **COUNTRY** USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| **2b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
| **2c. MAILING ADDRESS** | **CITY** | **STATE**  **POSTAL CODE** | **COUNTRY** |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|
| **3b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
| **3c. MAILING ADDRESS** 32300 NORTHWESTERN HWY. | **CITY** FARMINGTON HILLS | **STATE** MI  **POSTAL CODE** 48334 | **COUNTRY** USA |

4. COLLATERAL: This financing statement covers the following collateral:
Florida Documentary Stamp Tax is not required.
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: NJR/ASW (15492-72)

2209 68629

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**EXHIBIT A**

**DEBTOR:**          **SCOTT THOMAS ZANKL**

**SECURED PARTY:**     **FRANKLIN CAPITAL GROUP, LLC**

All of the following property in which Debtor now or hereafter owns or has an interest, wherever located:

a)  the shares, interests, participations or other equivalents (however designated, whether voting or non-voting) of capital, whether now outstanding or issued or acquired after the date hereof, including common shares, preferred shares, membership interests in a limited liability company, limited or general partnership interests in a partnership or any other equivalent of such ownership interest, in each case, including those described in Schedule I and issued by the entities named therein (the "Pledged Shares") held by Debtor and the certificates, if any, representing such Pledged Shares and any interest of Debtor, including all interests documented in the entities on the books of the issuer of the Pledged Shares or any financial intermediary pertaining to the Pledged Shares and all dividends, cash, warrants, rights, instruments and other property or proceeds from time to time received, receivable, or otherwise distributed in respect of, or in exchange for, any or all of the Pledged Shares;

b)  all other property that may be delivered to and held by Secured Party;

c)  all additions, attachments, accessions, parts, replacements, substitutions, renewals, interest, dividends, distributions, rights of any kind (including but not limited to stock split, membership interest splits, or partnership interest splits, stock rights, membership interest rights or partnership interest rights, voting and preferential rights), products, and proceeds of or pertaining to the above including, without limit, cash or other property which were proceeds and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by Debtor; and

d)  to the extent not covered by clauses (a) through (c) above, all proceeds of any of the foregoing Collateral.

**SCHEDULE 1**

**PLEDGED SHARES**

| Pledgor/Record & Beneficial Owner | Issuing Entity | Class of Issued Stock/Units | Certificate No. of Issued Shares/Units | Number of Shares/Units Issued | Total Shares/Units Issued in such Class |
|---|---|---|---|---|---|
| Scott Zankl | Excell Auto Group, Inc. | Common shares | uncertificated | 50% | 100% |

UNDER AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO SELL, ASSIGN, PLEDGE OR OTHERWISE ENCUMBER THE COLLATERAL DESCRIBED IN THIS FINANCING STATEMENT.  THE SALE, ASSIGNMENT, PLEDGE OR ENCUMBERING OF ANY SUCH COLLATERAL WOULD CONSTITUTE TORTIOUS INTERFERENCE WITH SECURED PARTY'S CONTRACTUAL RELATIONSHIP WITH DEBTOR.  IN THE EVENT THAT ANY THIRD PARTY PURCHASES, TAKES AN ASSIGNMENT OR PLEDGE OF, AND/OR IS GRANTED A SECURITY INTEREST IN ANY OF THE ASSETS DESCRIBED IN THIS FINANCING STATEMENT, SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH THIRD PARTY.

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

2231 10752
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Dec 10 04:00 PM

****** 202109425278 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202109047001 11/05/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):**  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | SCOTT | THOMAS | |

**7. CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes:  ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: ZANKL, SCOTT THOMAS-:NJR/ASW (15492-72)

2231 10752

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**   44678 - Westlake Flooring

Lien Solutions                           83541649
P.O. Box 29071
Glendale, CA  91209-9071                 FLFL

File with: Department of State, FL

FILED

2021 Nov 19 10:15 AM

****** 20210920820X ******

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| KARMA OF PALM BEACH, INC. | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1001 Clint Moore Rd Ste 103 | Boca Raton | FL | 33487 | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| KARMA PALM BEACH | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1001 Clint Moore Rd Ste 103 | Boca Raton | FL | 33487 | USA |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Westlake Flooring Company, LLC | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4751 Wilshire Blvd | Los Angeles | CA | 90010 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All assets of the Debtor now owned or hereafter acquired, including but not limited to, all accounts; all equipment, goods, fixtures, and inventory, including all vehicles, vehicle parts and inventory now owned or hereafter acquired or wherever located, without limitation, purchase money inventory, the purchase of which was financed or floorplanned by Secured Party for Debtor(s); all documents, instruments and chattel paper; all letters of credit and letter-of-credit rights; all securities collateral; all investment property; all intellectual property collateral; all general intangibles; all money and all deposit accounts; all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records relating to any of the foregoing; all motor vehicles; and to the extent not covered by the foregoing, all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty with respect to any of the foregoing.

☐ All documentary stamps due and payable
or to become due and payable pursuant to s. 201.22.F.S. have been paid

☒ Florida documentary stamp tax is not required

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

**6b.** Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
83541649          100431690

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| KARMA OF PALM BEACH, INC. |

OR

| 9b. INDIVIDUAL'S SURNAME |
|---|
| |
| FIRST PERSONAL NAME |
| |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|
| |

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| Zankl |
| INDIVIDUAL'S FIRST PERSONAL NAME |
| Scott |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Thomas | |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16937 Pierre Cir | Boca Raton | FL | 33446 | USA |

11. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|
| |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS: 83541649-FL-0  44678 - Westlake Flooring Co      Westlake Flooring Company, LLC      File with: Department of State, FL      100431690

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

**UCC FINANCING STATEMENT ADDITIONAL PARTY**

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 18a. ORGANIZATION'S NAME |
|---|
| KARMA OF PALM BEACH, INC. |

OR

| 18b. INDIVIDUAL'S SURNAME | |
|---|---|
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Zankl | Kristen | Noel | |

| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16937 Pierre Cir | Delray Beach | FL | 33446 | USA |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

22. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

23. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

24. MISCELLANEOUS: 83541649-FL-0 44678 - Westlake Flooring Co      Westlake Flooring Company, LLC      File with: Department of State, FL      100431690

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282



Date:                   01/18/2022 Exhibits Page 134 of 396
Reference:              Feenix Karma (1700101-54)
Copies Requested:       All Copies Excluding Lapsed Filings
Copy Cost Limit:        $50.00

Searched Through:    01/11/2022
Subject:             Zankl, Thomas Scott
Jurisdiction:        Secured Transaction Registry, FL
Index Searched:      UCC

| FILE DATE | FILE # | TYPE OF FILING | SECURED PARTY |
|---|---|---|---|
| 03/26/2021 | 202106583131 | Financing Statement | FRANKLIN CAPITAL GROUP, LLC<br>FARMINGTON HILLS, MI |
| 11/05/2021 | 202109046722 | Amendment | |
| 11/16/2021 | 20210917156X | Amendment | |
| 11/16/2021 | 202109171578 | Amendment | |
| 11/29/2021 | 202109288491 | Amendment | |
| 11/29/2021 | 202109288505 | Amendment | |

*Capitol Services, Inc. and its affiliates make no express or implied representation or warranty regarding search reports. All liability shall be limited to the amount of the fee paid for the report.*

Capitol Services, Inc.  ★ PO Box 1831  ★ Austin, TX 78767  ★ (800) 345-4647



9-13214232K

FLORIDA SECURED TRANSACTION REGISTRY



FILED

2021 Mar 26 09:56 AM

***** 202106583131 *****

# UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS**

A. NAME & PHONE OF CONTACT AT FILER (optional)
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Lien Solutions           79641585
P.O. Box 29071
Glendale, CA  91209-9071      **FLFL**

File with: Department of State, FL

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| EXCELL AUTO GROUP INC | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1001 CLINTMOORE RD | BOCA RATON | FL | 33487 | USA |

2. DEBTOR'S NAME: Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16937 PIERRE CIRCLE | DELRAY BEACH | FL | 33446 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| C T Corporation System, as representative | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 330 N Brand Blvd, Suite 700; Attn: SPRS | Glendale | CA | 91203 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
Receivables - All assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c.Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCES IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22.F.S. have been paid

☒ Florida documentary stamp tax is not required

5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check <u>only</u> if applicable and check <u>only</u> one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA.
79641585

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

Prepared by Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
| --- |
| EXCELL AUTO GROUP INC |

OR

| 9b. INDIVIDUAL'S SURNAME |
| --- |
| |
| FIRST PERSONAL NAME |
| |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
| --- |

OR

| 10b. INDIVIDUAL'S SURNAME |
| --- |
| ZANKL |
| INDIVIDUAL'S FIRST PERSONAL NAME |
| THOMAS SCOTT |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |
| 16937 PIERRE CIRCLE | DELRAY BEACH | FL | 33446 | USA |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
| --- |

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| --- | --- | --- | --- |
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| --- | --- | --- | --- | --- |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest).

16. Description of real estate:

17. MISCELLANEOUS: 73641585-FL-C          CT Corporation System, as          File with: Department of State, FL

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Prepared by Lion Solutions, P.O. Box 29071, Glendale CA 91209-9071 Tel (800) 331-3282

# UCC FINANCING STATEMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 18a. ORGANIZATION'S NAME |
|---|
| EXCELL AUTO GROUP INC |

OR

| 18b. INDIVIDUAL'S SURNAME |
|---|
| |
| FIRST PERSONAL NAME |
| |

| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|
| | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME |
|---|
| KARMA OF BROWARD, INC |

OR

| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1699 S. FEDERAL HIGHWAY, SUITE 300 | BOCA RATON | FL | 33432 | USA |

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME |
|---|
| KARMA OF PALM BEACH, INC. |

OR

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1001 CLINT MOORE ROAD, SUITE 101 | BOCA RATON | FL | 33487 | USA |

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME |
|---|
| |

OR

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

22. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME |
|---|
| |

OR

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

23. ☐ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME |
|---|
| |

OR

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

24. MISCELLANEOUS: 79641585 FL 0          C T Corporation System, as          File with: Department of State, FL

FLORIDA SECURED TRANSACTION REGISTRY

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

2021 Nov 05 03:56 PM

****** 202109046722 ******

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

2209 59669
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☑ **ASSIGNMENT** (full or partial):  Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:

This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:

☐ CHANGE name and/or address. Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

| | | | |
|---|---|---|---|
| **6a. ORGANIZATION'S NAME** C T CORPORATION SYSTEM, AS REPRESENTATIVE | | | |
| **6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**7. CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| | | | |
|---|---|---|---|
| **7a. ORGANIZATION'S NAME** FRANKLIN CAPITAL GROUP, LLC | | | |
| **7b. INDIVIDUAL'S SURNAME** | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| **7c. MAILING ADDRESS** 32300 NORTHWESTERN HWY. | **CITY** FARMINGTON HILLS | **STATE** MI | **POSTAL CODE** 48334 | **COUNTRY** USA |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:**  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| | | | |
|---|---|---|---|
| **9a. ORGANIZATION'S NAME** C T CORPORATION SYSTEM, AS REPRESENTATIVE | | | |
| **9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP INC - NJR/ASW (15492-72)

2209 59669

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

FLORIDA SECURED TRANSACTION REGISTRY

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FILED

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC    1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

2218 57634
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

2021 Nov 16 03 55 PM

\*\*\*\*\*\* 20210917156X \*\*\*\*\*\*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed (for record)
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes.          AND Check one of these three boxes to:

This Change affects ☑ Debtor or ☐ Secured Party of record      ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c      ☐ ADD name: Complete item 7a or 7b, and item 7c      ☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| KARMA OF PALM BEACH, INC. | | | |

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

OR

| 7b. INDIVIDUAL'S SURNAME | | | |
|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FRANKLIN CAPITAL GROUP, LLC | | | |

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor:EXCELL AUTO GROUP INC-15492-72 NJR/ASW

2218 57634

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

**UCC FINANCING STATEMENT AMENDMENT**

FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2218 55184
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 16 03 55 PM

*~~** 202109171578 *~****

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:
This Change affects ☑ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME** KARMA OF BROWARD, INC

OR

**6b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7. CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**7c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME** FRANKLIN CAPITAL GROUP, LLC

OR

**9b. INDIVIDUAL'S SURNAME** | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

**10. OPTIONAL FILER REFERENCE DATA:** Debtor:EXCELL AUTO GROUP INC-15492-72 NJR/ASW

2218 55184

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC    1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**
2223 27803
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 29 03:53 PM

******* 2021C9288491 *******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
|---|---|
| 202106583131 03/26/2021 | |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:        AND Check one of these three boxes to:

This Change affects ☑ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ZANKL | THOMAS SCOTT | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**8.** ☐ **COLLATERAL CHANGE:** Also check one of these four boxes: ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor:EXCELL AUTO GROUP INC-15492-72 NJR/ASW

2223 27803

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

FLORIDA SECURED TRANSACTION REGISTRY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC   1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2223 20264
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Florida
(S.O.S.)

FILED

2021 Nov 29 03:53 PM

***** 202109288505 *****

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
202106583131 03/26/2021

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☑ **PARTY INFORMATION CHANGE:**

Check **one** of these two boxes:

This Change affects ☑ Debtor or ☐ Secured Party of record

AND Check **one** of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☑ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:** Complete for Party Information Change - provide only **one** name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| ZANKL | KRISTEN | | |

**7. CHANGED OR ADDED INFORMATION:** Complete for Assignment or Party Information Change - provide only **one** name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME |
|---|

OR

| 7b. INDIVIDUAL'S SURNAME |
|---|
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) |

SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**8.** ☐ **COLLATERAL CHANGE:** Also check **one** of these four boxes ☐ ADD collateral  ☐ DELETE collateral  ☐ RESTATE covered collateral  ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:** Provide only **one** name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME FRANKLIN CAPITAL GROUP, LLC |
|---|

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

**10. OPTIONAL FILER REFERENCE DATA:** Debtor: EXCELL AUTO GROUP INC - 15492-72 NJR/ASW

2223 20264

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

# EXHIBIT B

EXECUTION COPY

## LOAN AGREEMENT

This **LOAN AGREEMENT** (this "Agreement") dated as of January 26, 2022, is made by and among **KARMA OF PALM BEACH, INC.**, a Florida corporation ("Palm Beach") and **KARMA OF BROWARD, INC.**, a Florida corporation ("Broward"; Palm Beach and Broward, each, a "Borrower" and collectively, "Borrowers"); each financial institution that from time to time is a Lender (as defined below) hereunder; and **FVP SERVICING, LLC**, a Delaware limited liability company (in its capacity as administrative agent for the Lenders, the "Administrative Agent" and together with Borrowers and the Lenders, the "Parties", and each, a "Party").

### W I T N E S S E T H:

WHEREAS, Borrowers have requested that Lender extend credit to Borrowers in the form of certain term loans more particularly described herein, in the aggregate original principal amount of up to Seven Million Five Hundred Thousand and No/100 Dollars ($7,500,000.00), the proceeds of which will be used by Borrowers for purposes of purchasing exotic car inventory for Palm Beach and Broward, paying transaction costs and expenses incurred in connection herewith, for general working capital purposes of Borrowers and other purposes expressly permitted hereunder, and Lenders have agreed to provide such loans, subject to the terms and conditions of this Agreement.

NOW, THEREFORE, upon the terms and conditions hereinafter stated, and in consideration of the mutual premises set forth above and other adequate consideration, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

1.      DEFINITIONS AND RULES OF CONSTRUCTION

1.1      As used in this Agreement, the following terms shall have the meanings set forth below (terms defined in the singular to have the same meaning when used in the plural and vice versa):

"Administrative Agent" shall have the meaning given to such term in the introductory paragraph of this Agreement.

"Advance" means an advance of funds by Lenders under this Agreement.

"Affiliate" of any Person means any other Person that directly or indirectly controls, is controlled by or is under direct or indirect common control with such Person.  A Person shall be deemed to "control" another Person if such first Person directly or indirectly possesses the power to direct (or to cause the direction of or to materially influence) the management and policies of the second Person, whether through the ownership of voting securities, by contract or otherwise.  Notwithstanding the foregoing, neither Administrative Agent nor any Lender shall be deemed to be an Affiliate of any Loan Party.

"Agreement" means this Loan Agreement and all exhibits, riders and schedules at any time executed by the Parties and made a part hereof by reference, either as originally executed or as hereafter amended, restated, modified or supplemented from time to time.

"Applicable Law" means all laws, rules and regulations applicable to the Person, conduct, transaction, covenant or Loan Documents in question, including, without limitation, all Applicable Law and equitable principles; all provisions of all applicable state and federal constitutions, statutes, rules, regulations and orders of governmental bodies; and all Orders.

1

"Availability Period" means, with respect to any Delayed Draw Term Loan, the period commencing on the Closing Date and continuing until the one (1) year anniversary of the Closing Date.

"Borrower" and "Borrowers" shall have the meaning given to such term in the introductory paragraph of this Agreement.

"Business Day" means a day other than a Saturday, Sunday or other day on which commercial banks in New York, New York are authorized or required by Applicable Law to close.

"Cash Flow Available for Debt Service" means, with respect to Borrowers and their respective Subsidiaries for each period of twelve (12) consecutive calendar months ending as of the last day of each fiscal quarter of Borrowers, the sum of (a) net income for such period of determination, (b) interest expense for such period of determination and (c) depreciation, amortization and other non-cash charges for such period of determination, in each case, as determined on a consolidated basis in accordance with GAAP.

"Change of Control" means any event, circumstance or occurrence that results in (a) any Guarantor owning, directly or indirectly, less than the applicable percentage of the issued and outstanding ownership interests of (i) each Borrower held by such Guarantor as of the Closing Date, as specified on Schedule 4.1(o) hereto, or (ii) each other Pledged Entity (as defined in the Pledge Agreement) held by such Guarantor as of the Closing Date, as specified on Schedule A to the Pledge Agreement, or (b) Biltmore Automotive Services ceasing to be engaged to perform financial reporting, accounting and administrative services, including all chief financial officer functions, for and on behalf of each Borrower.

"Closing Date" means January 26, 2022.

"Closing Date Term Loan" means the Loan in the original principal amount of $3,500,000.00 Advanced by Lenders to Borrowers on the Closing Date pursuant to Section 2.1(a) hereof.

"Collateral" means all Property in which Administrative Agent is at any time granted a Lien for purposes of securing the Obligations.

"Commitment" means, collectively, each Lender's commitment to Advance (a) the Closing Date Term Loan on the Closing Date, and (b) any Delayed Draw Term Loan during the Availability Period.

"Debt" of a Person, means all (a) indebtedness for borrowed money; (b) obligations for the deferred purchase price of Property or services; (c) obligations evidenced by notes, bonds, debentures or other similar instruments; (d) obligations as lessee under capital leases; (e) obligations in respect of any interest rate swaps, currency exchange agreements, commodity swaps, caps, collar agreements or similar arrangements entered into by such Person providing for protection against fluctuations in interest rates, currency exchange rates or commodity prices or the exchange of nominal interest obligations, either generally or under specific contingencies; (f) obligations under acceptance facilities and letters of credit; (g) obligations for any merchant cash advance whether based on credit card sales or otherwise; (h) guaranties, endorsements (other than for collection or deposit in the ordinary course of business), and other contingent obligations to purchase, to provide funds for payment, to supply funds to invest in any Person, or otherwise to assure a creditor against loss, in each case, in respect of indebtedness set out in clauses (a) through (g) of a Person other than such Person; and (i) indebtedness set out in clauses (a) through (h) of any Person other than such Person secured by any lien on any asset of such Person, whether or not such indebtedness has been assumed by such Person.

"Debt Service" means, with respect to Borrowers and their respective Subsidiaries for each period of twelve (12) consecutive calendar months ending as of the last day of each fiscal quarter of Borrowers,

2

4869-1815-9362.7

the sum of (a) interest paid in cash for such period of determination, (b) all installments of principal on Debt that are due on demand or during the period of determination, (c) all installments of rent under capitalized lease obligations (to the extent not already accounted for in computation of net income or Debt) that are due on demand or during the period of determination and (d) distributions and dividends to stockholders and advances to Affiliates during the period of determination, in each case, as determined on a consolidated basis in accordance with GAAP.

"Debt Service Coverage Ratio" means, with respect to each Borrower and their Subsidiaries for the period of twelve (12) consecutive calendar months ending as of the last day of each fiscal quarter of Borrowers, the ratio of (a) Cash Flow Available for Debt Service for such period to (b) Debt Service for such period.

"Debtor Relief Law" means the Bankruptcy Code and all other liquidation, conservatorship, bankruptcy, insolvency, reorganization or similar debtor relief laws.

"Default" means the occurrence of any event which, after satisfaction of any requirement for the giving of notice or the lapse of time, or both, would become an Event of Default.

"Default Rate" means the annual percentage interest rate applied to the principal of the Loans not paid when due under the terms of the applicable Loan Documents, which rate shall equal twenty percent (20%).

"Delayed Draw Loan Advance Request" means a request for an Advance in respect of a Delayed Draw Term Loan delivered by Borrower to Lender in the form of Exhibit C hereto.

"Delayed Draw Term Loan" has the meaning set forth in Section 2.1(b).

"Eligible Inventory" means, as of any date of determination, all Collateral consisting of motor vehicle inventory that is (a) acquired by a Borrower in the ordinary course of business with Loan proceeds, and constitutes "inventory" of the applicable Borrower under the UCC, (b) owned by such applicable Borrower as of such date of determination subject to no Liens other than Liens in favor of Administrative Agent, and (c) located at the applicable Site identified on Schedule 4.1(j) attached hereto, excluding any such inventory which Lender otherwise determines is not in the condition required by, or which does not satisfy each of the terms, conditions, representations, warranties and covenants under, the Loan Documents relating thereto.

"Event of Default" shall have the meaning given to such term in Section 7.1 hereof.

"Exclusivity Agreement" means the Exclusivity Agreement dated as of the Closing Date by and among FPS, Borrowers and Excell Auto Sport and Service, Inc. a Florida corporation.

as the same may be amended, modified, supplemented, restated, extended or renewed from time to time.

"FPS" means Feenix Payment Systems, LLC, a Delaware limited liability company (an Affiliate of Lenders).

"GAAP" means generally accepted accounting principles in the United States, consistently applied.

"Governmental Authority" means the government of any nation or any political subdivision thereof, whether at the national, state, territorial, provincial, municipal or any other level, and any agency,

3

4869-1815-9362.7

authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of, or pertaining to, government.

"Guaranty" means that certain Guaranty Agreement dated as of the Closing Date by Guarantors in favor of Administrative Agent and the Lenders, as the same may be amended, modified, supplemented, restated, extended or renewed from time to time.

"Guarantors" means Scott Zankl and Kristen Zankl.

"Interest Only Period" means the period commencing on the Closing Date and continuing through and including the January 26, 2023 Payment Date.

"Law" as to any Person, means any law (including common law), statute, ordinance, treaty, rule, regulation, policy or requirement of any Governmental Authority and authoritative interpretations thereon, whether now or hereafter in effect, in each case, applicable to or binding on such Person or any of its properties or to which such Person or any of its properties is subject.

"Lender" means individually and collectively, each of the Persons listed on Schedule I hereto as "Lender", together with any successor, assignee or other transferee of such Lender hereunder, and any other entity subsequently added hereto as a Lender hereunder, or any successor, assignee or other transferee thereof.

"Lender IRR" has the meaning set forth in Section 2.5(c).

"Lien" means any mortgage, pledge, security interest, lien (statutory or otherwise), charge, encumbrance, hypothecation, assignment, deposit arrangement, or other arrangement having the practical effect of the foregoing or any preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including any conditional sale or other title retention agreement and any capital lease having the same economic effect as any of the foregoing).

"Loan Documents" means this Agreement, the Security Agreement, the Pledge Agreement, the Exclusivity Agreement, the Guaranty, each Note, any Delayed Draw Loan Advance Request, the Westlake Intercreditor Agreement and all other instruments, agreements, documents and writings now or hereafter evidencing, securing or delivered to Administrative Agent and Lender in connection with the Obligations, as each of the foregoing may be amended, restated, replaced, supplemented or otherwise modified from time to time.

"Loan Parties" shall mean each Borrower, each Guarantor and each of their respective Affiliates which are a party to any of the Loan Documents, as applicable.

"Loans" means the Closing Date Term Loan and any Delayed Draw Term Loan.

"Maturity Date" means the earlier of (a) the Scheduled Maturity Date, and (b) the date on which all amounts outstanding under this Agreement have been declared or have automatically become due and payable (whether by acceleration or otherwise).

"Maximum Aggregate Loan Amount" means $7,500,000 in the aggregate of all Advances made hereunder.

4

4869-1815-9362.7

"Net Proceeds" means, in respect of (a) any incurrence of Debt (other than the Loans or Permitted Debt) by any Borrower or any of their respective Subsidiaries, (b) any casualty or condemnation event involving Property of any Borrower or any of their respective Subsidiaries (excluding any such event for which such Borrower or Subsidiary receives net insurance proceeds of less than $5,000), or (c) any sale or assignment involving Property of any Borrower or any Subsidiary, all cash proceeds (including cash proceeds as and when received in respect of non-cash proceeds received or receivable in connection with such occurrence), net of reasonable and customary out-of-pocket costs and expenses paid or incurred in connection therewith in favor of any Person not an Affiliate of a Loan Party.

"Note" has the meaning set forth in Section 2.1(b).

"Obligations" means all loans (including the Loans), Advances, debts, liabilities and obligations (including reimbursement obligations) for monetary amounts owing by any Borrower or any other Loan Party to the Administrative Agent and the Lenders, whether due or to become due, matured or unmatured, liquidated or unliquidated, contingent or non-contingent, of any kind or nature, present or future, arising under or in respect of this Agreement or any of the Loan Documents.  This term includes all principal, interest (including interest that accrues after the commencement against any Borrower or any other Loan Party of any action under the Federal Bankruptcy Code), premium, reasonable fees and expenses, including any and all arrangement fees, delivery fees, loan fees, commitment fees, agent fees, merchant processing fees and any and all other fees, expenses, costs or other sums (including reasonable attorney's fees) chargeable to any Borrower or any other Loan Party under any of the Loan Documents.

"OLV" means, as of any date of determination, the orderly liquidation value of the Collateral expected to be realized in connection with an "as-is, where-is" sale of such Collateral to one or more third-parties as of such date of determination, as determined by Administrative Agent in its sole and absolute discretion; provided, however, in no event shall any single vehicle be valued at more than $350,000.00 for purposes of calculating OLV.

"Order" as to any Person, means any order, decree, judgment, writ, injunction, settlement agreement, requirement or determination of an arbitrator or a court or other Governmental Authority, in each case, applicable to or binding on such Person or any of its properties or to which such Person or any of its properties is subject.

"Organizational Agreements" means the partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement, articles or certificate of organization, bylaws, certificate of formation and other organizational or governing documents, as applicable, of each Borrower.

"Payment Date" means the fifteenth (15th) day of each calendar month during the term of this Agreement commencing with the first Payment Date after the Closing Date; provided, however, if such day is not a Business Day, the next succeeding Business Day.

"Permitted Debt" means (a) Debt existing or arising under this Agreement and any refinancing, extension or modification thereof; (b) Westlake Debt in an amount not to exceed $1,000,000 in the aggregate, subject in all respects to the terms of the Westlake Intercreditor Agreement; (c) trade Debt incurred in the ordinary course of business consistent with past practice; (d) unsecured Debt owed in respect of any netting services, overdrafts and related liabilities arising from treasury, depository and cash management services in connection with any automated clearinghouse transfers of funds; (e) unsecured insurance premiums owing in the ordinary course of business which are also Debt; and (f) unsecured Debt in addition to the amounts in clauses (a) through (e) above in an outstanding principal amount not to exceed $50,000 in the aggregate at any time during the term of this Agreement and which is subordinate in right

5

of payment to the Debt existing or arising under this Agreement and any refinancing thereof on terms acceptable to Administrative Agent in its sole discretion.

"Permitted Liens" means (a) Liens for taxes not yet due or which are being contested in good faith by appropriate proceedings; and (b) non-consensual Liens arising by operation of law, arising in the ordinary course of business, and for amounts which are not overdue for a period of more than thirty 30 days or that are being contested in good faith by appropriate proceedings.

"Person" means a corporation, an association, partnership, an organization, a business, a business trust, a limited liability company, an individual, a government or political subdivision thereof or a governmental agency.

"Pledge Agreement" means that certain Pledge Agreement dated as of the Closing Date by Guarantors in favor of Administrative Agent and the Lenders, as the same may be modified, amended, supplemented, extended or renewed from time to time.

"Property" means the real property and personal property of a Person, and any interest of a Person in any real or personal property.

"Related Parties" means, with respect to any Person, such Person's Affiliates and the partners, directors, officers, employees, agents, trustees, administrators, managers, advisors and representatives of such Person and of such Person's Affiliates.

"Restricted Payment" means (a) any dividend or other distribution (whether in cash, securities or other Property) with respect to any equity securities of any Borrower, (b) any purchase, redemption, retirement or acquisition by any Borrower for value of any equity securities or any distribution of any kind in cash or other Property or assets in respect thereof; (c) any payment (whether in cash, securities or other Property or assets), including any sinking fund or similar deposit, on account of the purchase, redemption, retirement, acquisition, cancellation or termination of any such equity securities or on account of any return of capital to any Borrower's equity holders, partners or members (or the equivalent Person thereof), (d) any management, board or director fees or similar fee to a holder of equity securities of any Borrower or any Affiliate thereof, and (e) director or manager fees, any salary, compensation or other payment of any type or nature, or any other advance or Debt of any type or nature, in each case, to any officer, director or manager of any Borrower or any Affiliate thereof or to any equity holder of any Borrower or any Affiliate thereof, including, without limitation, all salary or other compensation of any type or nature paid or payable to Guarantors.

"Scheduled Maturity Date" means January 26, 2025.

"Security Agreement" means that certain Security Agreement dated as of the Closing Date by Borrowers in favor of Administrative Agent and the Lenders, as the same may be modified, amended, supplemented, extended or renewed from time to time.

"Security Documents" means, collectively, the Security Agreement, the Pledge Agreement, each deposit account control agreement with respect to any deposit account of Borrowers, all Uniform Commercial Code financing statements required by this Agreement to be filed with respect to the security interests created pursuant to the Security Documents and all other documents and agreements executed or delivered to Administrative Agent by Borrowers or any other Loan Party for purposes of securing the Obligations.

6

4869-1815-9362.7

"Settlement Date" means, with respect to any Advance hereunder, the date on which funds are advanced by a Lender.

"Site" means each site at which a Borrower operates an auto dealership, as set forth on Schedule 4.1(j) hereto.

"Subsidiary" means any corporation or other entity of which securities or other ownership interests having ordinary voting power to elect a majority of the board of directors or other Persons performing similar functions are at the time directly or indirectly owned by any Borrower.

"Westlake" means Westlake Services, LLC, a California limited liability company.

"Westlake Debt" means any debt under any Westlake Financing Documents owed by Borrowers and any Affiliate of Borrowers to Westlake, subject in all respects to the terms of the Westlake Intercreditor Agreement.

"Westlake Intercreditor Agreement" means that certain Intercreditor Agreement dated as of January 26, 2022 by and between Westlake and Administrative Agent.

"Westlake Financing Documents" means and financing documents between Borrowers and Westlake, including, but not limited to, that certain Master Dealer Agreement between Westlake and Palm Beach, subject in all respects to the terms of the Westlake Intercreditor Agreement.

"Yield Maintenance Fee" has the meaning set forth in Section 2.5(c).

"Yield Maintenance Trigger Date" has the meaning set forth in Section 2.5(c).

1.2     Accounting Terms and Determination.  Accounting terms used in this Agreement such as "net income," "amortization," "depreciation," and "interest expense" shall be calculated (both as to amounts and classification of items) in accordance with GAAP.

1.3     Other Interpretive Provisions.  Any pronoun used herein shall be deemed to cover all genders.  All references to statutes and related regulations shall include any amendments of same and any successor statutes and regulations, and all references to any instruments or agreements, including, without limitation, references to any of the Loan Documents, shall include any and all modifications or amendments thereto and any and all extensions or renewals thereof. Unless otherwise expressly stated or the context clearly indicates a different intention, then (as may be appropriate in the particular context) a singular reference to Lender used in any Loan Document includes the plural, and a plural reference to Lenders includes the singular.

2.     THE LOANS; USE OF PROCEEDS.

2.1     Funding of the Loans.

(a)     Subject to the terms and conditions of this Agreement, Lenders shall Advance to Borrowers the Closing Date Term Loan on the Closing Date, in the original principal amount of $3,500,000.00.  Proceeds of the Closing Date Term Loan shall be disbursed in accordance with Exhibit B attached hereto.  Upon the funding of such Advance, the Commitment of each Lender with respect to the Closing Date Term Loan hereunder shall be terminated, and no further Advances in respect of the Closing Date Term Loan shall be permitted.  Principal amounts repaid or prepaid in respect of the Closing Date

7

Term Loan will not be available for reborrowing hereunder.  The Closing Date Term Loan shall bear interest from and after the Closing Date at the applicable rate provided in the provisions of Section 2.4 hereof.

(b)    At any time during the Availability Period, Borrowers may request, pursuant to a Delayed Draw Loan Advance Request in accordance with this Section 2.1(b), that Lenders make available to Borrowers three (3) additional term loans, which shall be comprised of an Advance in the original principal amount of up to $4,000,000.00, but in any event, not less than $1,000,000 (each a "Delayed Draw Term Loan").  Each Delayed Draw Term Loan shall be subject to all terms and conditions set forth in this Agreement, including, without limitation, Section 3.2 hereof.  In no event shall any Delayed Draw Term Loan be advanced hereunder following the expiration of the Availability Period, or at any time during which an Event of Default has occurred and is continuing.  In no event will any Advance be made in respect of a Delayed Draw Term Loan which will cause the aggregate original principal amount of all Advances to exceed the Maximum Aggregate Loan Amount.  Principal amounts repaid or prepaid in respect of any Delayed Draw Term Loan will not be available for reborrowing hereunder.  Each Delayed Draw Term Loan shall bear interest from and after the related Settlement Date at the applicable rate provided in the provisions of Section 2.4 hereof.

Borrowers shall give Administrative Agent and Lenders written notice of the requested Advance in respect of each Delayed Draw Term Loan in the form of a Delayed Draw Loan Advance Request at least five (5) days prior to the requested Settlement Date; provided, that Administrative Agent and Lenders shall only be obligated to make an Advance in respect of such Delayed Draw Term Loan subject to the other terms and conditions in this Agreement.  Each Delayed Draw Loan Advance Request shall be for a minimum of $1,000,000 (or such lesser amount as Administrative Agent may approve) and shall specify in writing where such funds should be disbursed.  In no event, however, shall Borrowers have any right whatsoever to receive any Advance under any Commitment if (i) the Availability Period shall have expired, (ii) either before or after giving effect thereto, there shall exist an Event of Default, or (iii) after giving effect to any such Advance, the principal amount outstanding on such Loan would exceed the applicable Commitment thereof or the Maximum Aggregate Loan Amount.

(c)    Each Loan shall be evidenced by one or more promissory notes in the form of Exhibit A hereto (each, as amended, restated, replaced, supplemented, extended or renewed from time to time, a "Note"), in each case payable to the order of the Administrative Agent for the benefit of the applicable Lender.  Each Note will be due and payable in full on the Maturity Date.  Administrative Agent is authorized to note or endorse the date and amount of the Advance and each payment of the applicable Loan on a schedule annexed to and constituting a part of the Note.  Such notations and endorsements, if made, will constitute prima facie evidence of the information noted or endorsed on such schedule, but the absence of any such notation or endorsement will not limit or otherwise affect the obligations or liabilities of Borrowers thereunder or hereunder.

(d)    The obligations of the Lenders under this Section 2.1 shall be several and not joint. The Commitments of each Lender with respect to the Loans are as set forth on Schedule I hereto.

2.2    Repayment.

(a)    *Payment of Principal and Interest*.  On each Payment Date during the Interest Only Period, Borrowers shall make monthly payments to Administrative Agent, for the account of the Lenders, with respect to each Loan, equal to all accrued, unpaid interest on the outstanding principal amount thereof. Commencing with the first Payment Date following the Interest Only Period and continuing on each Payment Date thereafter through and including the Maturity Date, Borrowers shall make monthly payments to Administrative Agent, for the account of the Lenders, with respect to each Loan in an amount equal to the sum of (i) all accrued, unpaid interest with respect to such Loan through and including the last day of

8

4869-1815-9362.7

the calendar month immediately preceding the calendar month in which such Payment Date occurs, plus (ii) a principal component in an amount equal to two percent (2.00%) of the original principal amount of such Loan.  Administrative Agent's calculation of the principal, interest and other amounts from time to time payable hereunder shall be conclusive and binding absent manifest error.  Payments of all remaining outstanding principal and accrued, unpaid interest on the Loans, together with all other fees, costs, expenses and other Obligations then outstanding, shall be due and payable by Borrowers to the Administrative Agent, for the account of the Lenders, on the Maturity Date.

(b)      *Payment Mechanics*.  Except as provided below, all payments of principal of, or interest on, the Loan and all other sums due under the terms of the Loan Documents shall be made in either (i) immediately available funds by wire or ACH deposit or (ii) checks or money orders made payable to the Administrative Agent at the address and pursuant to the instructions provided by the Administrative Agent to Borrowers from time to time.

2.3      Use of Proceeds.  The proceeds of the Closing Date Term Loan shall be disbursed in accordance with the Flow of Funds Memorandum attached hereto as Exhibit B and shall be applied by Borrowers solely for the purposes specified therein.  Proceeds of any Delayed Draw Term Loan shall be disbursed solely for acquiring exotic car inventory for Palm Beach and Broward and as specified in the Delayed Draw Loan Advance Request.  All Loan proceeds shall be applied by Borrowers solely for a legitimate business purpose of Borrowers, and no portion of the Loan proceeds will be used for family, household or consumer purposes.

2.4      Interest.

(a)      The unpaid principal amount of each Loan shall, subject to this Section 2.4, bear interest at the rate of fifteen percent (15.00%) per annum (the "Interest Rate").  Interest shall be computed on the basis of a 360-day year for the actual number of days in the interest period.  Upon any Default, the Interest Rate shall increase from the date of such Default to a rate equal to the Default Rate.  For the avoidance of doubt, all payments of interest on the Loans outstanding under this Agreement on each Payment Date shall be made in accordance with Section 2.2 hereof.

(b)      In no contingency or event whatsoever shall the amount paid or agreed to be paid to Administrative Agent and Lenders for the use, forbearance or detention of money advanced under this Agreement exceed the highest lawful rate permissible under Applicable Law.  It is the intent hereof that Borrowers will not pay or contract to pay, and that Administrative Agent and Lenders will not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be charged to and paid by Borrowers under Applicable Law.  All interest (and charges deemed interest) paid or agreed to be paid to the Lenders shall, to the extent permitted by Applicable Law, be amortized, pro-rated, allocated and spread in equal parts throughout the full term hereof until payment in full of the principal amount of the Obligations owing hereunder (including the period of any renewal or extension hereof) so that interest on the principal amount of the Obligations outstanding hereunder for such full period will not exceed the maximum amount permitted by Applicable Law.  Each determination by Administrative Agent of an interest amount hereunder shall be made in good faith and, except for manifest error, shall be final, conclusive and binding for all purposes.

(c)      If any interest or other sum due under any Loan Document is not paid by Borrowers within ten (10) days after the date on which it is due (except for the payment due on the Maturity Date), Borrowers shall pay to Administrative Agent upon demand, an amount equal to five percent (5%) of such unpaid sum or the maximum amount permitted by Applicable Law, in order to defray the expense incurred by Administrative Agent and Lenders in handling and processing such delinquent payment and to

9

compensate Administrative Agent and Lenders for the loss of the use of such delinquent payment.  Such amount shall be secured by the Loan Documents.

2.5     Fees.

(a)     On the Closing Date, Borrowers will pay to Administrative Agent, for the account of the Lenders, a nonrefundable commitment fee in an amount equal to $75,000 (the "Commitment Fee"). The Commitment Fee shall be fully earned on the Closing Date in accordance with the terms hereof, shall be nonrefundable for any reason whatsoever and shall be in addition to any other fees, costs and expenses payable pursuant to the Loan Documents.  Borrowers' obligations to pay the Commitment Fee will not be subject to counterclaim or setoff or be otherwise affected by any claim or dispute the Loan Parties may have.

(b)     On each Payment Date, Borrowers will pay to Administrative Agent, for Administrative Agent's own account, an agent fee (the "Administrative Agent Fee") in an amount equal to the product of (i) the average outstanding daily balance of the Loans for the calendar month immediately preceding the calendar month in which such Payment Date occurs, multiplied by (ii) 0.50% per annum. The Administrative Agent Fee shall accrue at all times from and after the Closing Date in accordance with the terms hereof, shall be nonrefundable for any reason whatsoever and shall be in addition to any other fees, costs and expenses payable pursuant to the Loan Documents.  Borrowers' obligations to pay the Administrative Agent Fee will not be subject to counterclaim or setoff or be otherwise affected by any claim or dispute the Loan Parties may have.

(c)     Upon the earliest to occur of (i) the one (1) year anniversary of the Closing Date, (ii) the date on which the outstanding principal amount to Loan and all accrued unpaid interest thereon are paid in full and (iii) the date on which the Obligations are accelerated by Administrative Agent following the occurrence of an Event of Default (the "Yield Maintenance Trigger Date"), Borrowers will pay to Administrative Agent, for the account of the Lenders, a yield maintenance fee (the "Yield Maintenance Fee") in the amount necessary to result in the Lenders achieving an internal rate of return in respect of the Loan (as calculated by Administrative Agent through and including the Yield Maintenance Trigger Date, based on all payments made in respect of the principal of and accrued unpaid interest on the Loan through and including the Yield Maintenance Trigger Date) (the "Lender IRR") of fifteen percent (15.00%).  For the avoidance of doubt, no Yield Maintenance Fee shall be payable if the Lender IRR as of the Yield Maintenance Trigger Date is greater than or equal to fifteen percent (15.00%).  Borrowers' obligations to pay the Yield Maintenance Fee will not be subject to counterclaim or setoff or be otherwise affected by any claim or dispute the Loan Parties may have.

2.6     Prepayment; Application of Payments.

(a)     Voluntary Prepayment.  Borrowers shall have the right to prepay the Loans in whole or in part at any time without premium or penalty, but subject to Borrowers having provided at least fifteen (15) days prior written notice to Administrative Agent.

(b)     Mandatory Prepayment.

(i) Immediately upon the receipt by any Loan Party of any Net Proceeds, Borrowers shall deliver, or cause to be delivered, to Administrative Agent an amount equal to such Net Proceeds for application to the Obligations in accordance with Section 2.6(c) hereof.

(ii) If at any time that the aggregate outstanding balance of the Obligations under the Loan Documents exceeds fifty-five percent (55.00%) of the then-current OLV of the Eligible Inventory, then

10

4869-1815-9362.7

Borrowers shall, within ten (10) Business Days following the first date on which such excess exists, and without the requirement of demand or notice from Administrative Agent, prepay the Obligations in an amount equal to such excess (with the amounts so repaid being applied to the Obligations in accordance with Section 2.6(c)).

(c)     Application of Payments.  Notwithstanding anything herein to the contrary, (i) except as otherwise provided in Section 2.6(c)(iii), all payments, proceeds or recoveries received by Administrative Agent or the Lenders in respect of the Obligations or the Collateral prior to the occurrence of any Event of Default hereunder shall be applied (A) first, to the payment of fees, costs and expenses due and owing to Administrative Agent or any Lender, together with the amount of any protective advances made by Administrative Agent or any Lender to preserve or protect any Collateral, until paid in full, (B) second, to the payment accrued unpaid interest on the Loans, until paid in full, and (C) third, to the payment of the outstanding principal amount of the Loans, until paid in full,  (ii) following the occurrence of any Event of Default hereunder, all payments, proceeds or recoveries received by Administrative Agent or the Lenders in respect of the Obligations or the Collateral shall be applied to the Obligations in such order as Administrative Agent shall determine in its sole discretion, and (iii) with respect to any prepayments under Sections 2.5(a) or 2.5(b) hereof, so long as no Event of Default as occurred hereunder, any portion of such prepayments allocable to principal (other than scheduled periodic payments) will be applied to reduce future scheduled payments in the inverse order of maturity, and the remaining portion of such prepayment shall be applied in the order of priority specified in Section 2.5(c)(i).

2.7     Sharing of Payments by Lenders.  If any Lender shall, by exercising any right of setoff or otherwise, obtain payment in respect of any principal of or interest on its portion of the Loans or prepayment premium in connection therewith resulting in such Lender's receiving payment of a proportion of the aggregate amount of the Loans and accrued interest thereon and prepayment premium in connection therewith greater than its pro rata share thereof as provided herein, then such Lender shall (a) notify the Administrative Agent of such fact and (b) purchase (for cash at face value) participations in the portions of the Loans of the other Lenders, or make such other adjustments as shall be equitable, so that the benefit of all such payments shall be shared by the Lenders ratably in accordance with the aggregate amount of principal of, accrued interest on and prepayment premium in connection with their respective portions of the Loans and other amounts owing them; provided, that: (i) if any such participations are purchased and all or any portion of the payment giving rise thereto is recovered, such participations shall be rescinded and the purchase price restored to the extent of such recovery, without interest; and (ii) the provisions of this Section 2.7 shall not be construed to apply to (x) any payment made by or on behalf of Borrowers pursuant to and in accordance with the express terms of this Agreement or (y) any payment obtained by a Lender as consideration for the assignment of or sale of a participation in any of its portion of the Loans to any assignee or participant.  Each Loan Party consents to the foregoing and agrees, to the extent it may effectively do so under applicable Law, that any Lender acquiring a participation pursuant to the foregoing arrangements may exercise against such Borrower rights of setoff and counterclaim with respect to such participation as fully as if such Lender were a direct creditor of such Borrower in the amount of such participation.

3.     CONDITIONS PRECEDENT.

3.1     Closing Date.  The obligation of Administrative Agent and the Lenders to enter into this Agreement, the other Loan Documents and to make the Advance of the Closing Date Term Loan on the Closing Date shall be subject to the following conditions precedent:

(a)     Borrowers shall have delivered to Administrative Agent and each Lender the following documents, each in form and substance satisfactory to Administrative Agent and duly executed on behalf of each of the Persons party thereto:

11

4869-1815-9362.7

       (i)       this Agreement;

       (ii)       the Security Agreement;

       (iii)       each Note;

       (iv)       the Guaranty

       (v)       the Exclusivity Agreement;

       (vi)       the Pledge Agreement; and

       (vii)       each of the other Loan Documents and Security Documents, each in form and substance satisfactory to the Administrative Agent and each Lender.

(b)       a validly executed officer's certificate with respect to each Borrower in form and substance acceptable to the Administrative Agent and attaching (i) a fully executed copy of such Person's certificate of formation, certificate or article of incorporation, articles of organization or certificate of partnership (as applicable) bylaws, operating agreements or partnership agreements (as applicable) and all amendments thereto, (i) resolutions evidencing such Person's authorization of the Loans; (iii) evidence of such Person's good standing; and (iv) incumbency certificates.

(c)       Administrative Agent shall have received an opinion letter of counsel to the Loan Parties, in form and substance acceptable to Administrative Agent;

(d)       Administrative Agent shall have received such other documents and information as Administrative Agent may request; and

(e)       on the Closing Date, the following statements shall be true and correct and Borrowers, by requesting and accepting the Advance of the Closing Date Term Loan, shall be deemed to have represented and certified that:

       (i)       the representations, warranties and covenants of each of the Borrowers set forth in this Agreement are true and correct; and

       (ii)       no Default or Event of Default shall exist immediately before or immediately after giving effect to the Closing Date Term Loan.

3.2     <u>Future Advances</u>.  The obligation of the Administrative Agent and the Lenders to honor any request of an Advance following the Closing Date is subject to the Administrative Agent and the Lenders' receipt of a duly executed Delayed Draw Loan Advance Request and satisfaction of each of the following conditions precedent, unless waived by the Administrative Agent:

(a)       the representations and warranties contained in this Agreement and in each of the other Loan Documents shall be true and correct in all material respects on and as of the Settlement Date of such Advance;

(b)       no Default or Event of Default shall exist immediately before or immediately after giving effect to the requested Advance;

12

(c)     Borrowers shall have provided evidence satisfactory to Administrative Agent, in its sole and absolute discretion, of the price, make, model, vehicle identification number and seller of the vehicle inventory to be purchased with such Advance;

(d)     Borrowers shall have provided to Administrative Agent copies of the certificates of title with respect to all vehicle inventory (including all Eligible Inventory) then owned by Borrower, together with such additional documentation and information as Administrative Agent may require to evidence compliance by Borrower with the terms of Section 2.6(b)(ii) hereof; and

(e)     Administrative Agent shall have received such documentation and other items as Administrative Agent may require to evidence that the conditions to such Advance have been satisfied.

4.     LOAN PARTY REPRESENTATIONS AND WARRANTIES.

4.1     To induce Administrative Agent and each Lender to enter into this Agreement, each Loan Party represents and warrants to Administrative Agent and each Lender, as of the Closing Date, and at all times during which any of the Obligations hereunder remain outstanding, as follows:

(a)     *Existence; Compliance with Laws*.  Each Borrower is duly formed, validly existing and in good standing under the laws of the state of its jurisdiction of organization and has the requisite power and authority, and the legal right, to own, lease and operate its properties and assets and to conduct its business as it is now being conducted.  Each Borrower is in compliance with all Laws and Orders except to the extent that the failure to comply therewith could not be expected to have a material adverse effect on such Borrower's financial condition or the ability of such Borrower to perform its obligations under each of the Loan Documents.

(b)     *Power and Authority*.  Each Borrower has the power and authority, and the legal right, to execute and deliver each of the Loan Documents to which it is a party and to perform its obligations hereunder.

(c)     *Authorization; Execution and Delivery*.  The execution and delivery of each of the Loan Documents by Borrowers and the performance of their respective obligations thereunder have been duly authorized by all necessary corporate or limited liability company (as applicable) action in accordance with all Applicable Laws.  Each Loan Party has duly executed and delivered each of the Loan Documents to which it is a party.

(d)     *No Approvals*.  No consent or authorization of, filing with, notice to or other act by, or in respect of, any Governmental Authority or any other Person is required in order for any Borrower to execute, deliver, or perform any of its obligations under the Loan Documents.

(e)     *No Violations*.  The execution and delivery of each of the Loan Documents and the consummation by each Loan Party of the transactions contemplated hereby and thereby do not and will not (i) violate any provision of any Borrower's organizational documents; (ii) violate any material Law or Order applicable to any Loan Party or by which any of its properties or assets may be bound; or (iii) constitute a material default under any material agreement or contract by which any Loan Party may be bound.

(f)     *Enforceability*.  Each of the Loan Documents to which a Loan Party is a party is a valid, legal and binding obligation of such Loan Party, enforceable against each Loan Party in accordance with its terms.

13

4869-1815-9362.7

(g)      *No Litigation*.  No action, suit, litigation, investigation or proceeding of, or before, any arbitrator or Governmental Authority is pending or threatened by or against any Loan Party or any principal, general partner, manager, sole member, managing member or majority shareholder of any Borrower or any of its Property or assets (i) with respect to the Loan Documents or any of the transactions contemplated hereby or (ii) that could reasonably be expected to materially adversely affect any Loan Party's financial condition or the ability of any Loan Party to perform its obligations under any of the Loan Documents.

(h)      *Limited Offering of Notes*.  The offer and sale of the Notes are not required to be registered pursuant to the provisions of Section 5 of the Securities Act of 1933, as amended or the registration or qualification provisions of the blue sky laws of any state.  No Borrower, and no agent on any Borrower's behalf, has solicited or will solicit any offers to sell all or any part of the Notes, to any Person so as to bring the sale of the Notes, by Borrowers within the registration provisions of the Securities Act of 1933, as amended or any state securities laws.  All prior offerings and sales of securities of Borrowers were in compliance with all applicable federal and state securities laws.  Borrowers are under no requirement to register under the Securities Act of 1933, as amended, or the Trust Indenture Act of 1939, as amended, any of its presently outstanding securities or any of its securities that may subsequently be issued.  All taxes imposed on Borrowers in connection with the issuance, sale and delivery of the Notes have been or will be fully paid, and all laws imposing such taxes have been or will be fully satisfied by Borrowers.

(i)      *No Bankruptcy Filing*.  No bankruptcy or insolvency proceedings are pending or contemplated by any Loan Party or, to the best knowledge of each Loan Party, against any principal, general partner, manager, sole member, managing member or majority shareholder of any Borrower.  No petition in bankruptcy has been filed against any Loan Party or any principal, general partner, manager, sole member, managing member or majority shareholder of any Borrower, as applicable, and no Loan Party, nor any principal, general partner, manager, sole member, managing member or majority shareholder of any Borrower has ever made an assignment for the benefit of creditors or taken advantage of any insolvency act for the benefit of debtors.

(j)      *Title*.  Each Loan Party has good and indefeasible title to the Collateral owned and to be pledged by such Loan Party pursuant to the applicable Loan Documents, free and clear of all Liens except the Permitted Liens.  The Security Agreement, the Pledge Agreement and any UCC Financing Statements required to be filed in connection therewith, will create a valid, perfected first priority lien on each Loan Party's interest in the all Collateral, whether now owned or hereafter acquired.  As of the Closing Date, each Borrower is the owner and operator of the applicable Site(s) set forth on Schedule 4.1(j) hereof with respect to such Borrower.

(k)      *Full and Accurate Disclosure*.  No statement of fact made by any Loan Party in any Loan Documents contains any untrue statement of a material fact or omits to state any material fact necessary to make statements contained therein not misleading.  There is no material fact presently known to any Loan Party that has not been disclosed to the Administrative Agent or the Lenders which adversely affects, or, as far as any Loan Party can foresee, could reasonably be expected to materially adversely affect the Collateral or the business, operations or condition (financial or otherwise) of any Loan Party.  All financial data, including the statements of cash flow and income and operating expense, that have been delivered to Administrative Agent in respect of any Loan Party (i) are true, complete and correct in all material respects, (ii) accurately represent the financial condition of such Loan Party as of the date of such reports, and (iii) have been prepared in accordance with sound accounting practices, on a cash/tax basis, consistently applied throughout the periods covered, except as disclosed therein.  Each Loan Party represents that it does not have any contingent liabilities, liabilities for taxes, unusual forward or long-term commitments, unrealized or anticipated losses from any unfavorable commitments or any liabilities or obligations not expressly permitted by this Agreement.  Since the date of such financial statements, there

14

4869-1815-9362.7

has been no material adverse change in the financial condition, operations or business of any Loan Party from that set forth in said financial statements.

(l)       *Fraudulent Transfer*.  No Loan Party has entered into the Loan Documents or consummated any of the transactions contemplated thereby with the actual intent to hinder, delay, or defraud any creditor, and each Loan Party has received reasonably equivalent value in exchange for its obligations under the Loan Documents. Giving effect to the transactions contemplated by the Loan Documents, the fair saleable value of each Loan Party's assets exceeds and will, immediately following the execution and delivery of the Loan Documents, exceed such Loan Party's probable total liabilities, including subordinated, unliquidated, disputed or contingent liabilities, including the maximum amount of its contingent liabilities or its debts as such debts become absolute and matured.  No Loan Party's assets currently, and immediately following the execution and delivery of the Loan Documents will not, constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted.  No Loan Party intends to, and no Loan Party believes that it will, incur debts and liabilities (including contingent liabilities and other commitments) beyond its ability to pay such debts as they mature (taking into account the timing and amounts to be payable on or in respect of obligations of such Loan Party).

(m)      *ERISA*.  No Borrower has an employee pension benefit plan as defined under the Employee Retirement Income Security Act of 1974.

(n)      *No Broker*. No broker or finder introduced by any Loan Party to Administrative Agent or any Lender, brought about this transaction, or is entitled to any commission in connection therewith, except for such brokers as are identified on the Flow of Funds Memorandum attached hereto as Exhibit B and paid in full on the Closing Date, and Borrowers agree to indemnify, defend and hold Administrative Agent and Lenders harmless from and against any and all claims, demands, liabilities or expenses from brokers or other claims for commissions or fees including but not limited to reasonable attorneys' fees and expenses on account of the making of the Loan secured hereby.  Each Borrower's indemnity hereunder shall survive any discharge of the Collateral, if any, and payment in full of the Obligations.

(o)      *Ownership*.   Schedule 4.1(o) hereto sets forth a true and correct copy of the capitalization table and ownership of each Borrower.  Borrowers have no Subsidiaries.  All ownership interests in Borrowers are owned free and clear of any Lien (other than the Liens granted in connection with the Security Agreement and the Pledge Agreement).

(p)      *Name; Principal Place of Business*.  No Borrower uses, and no Borrower will use, any trade name, and no Borrower has done, and no Borrower will do, business under any name other than its actual name set forth herein.  The principal place of business of each Borrower is its primary address for notices as set forth in Section 10.1, and no Borrower has any other place of business (other than any Site Lease owned by such Borrower).

(q)      *Other Debt; Liens*.  No Borrower has any Debt, other than Permitted Debt.  No Property of any Borrower is subject to any Lien, other than Permitted Liens.

4.2      Advances.  The submission of a Delayed Draw Loan Advance Request made by Borrowers pursuant to this Agreement or any other Loan Document shall constitute an automatic representation and warranty by each Loan Party to Administrative Agent and each Lender that there does not then exist any Default or Event of Default and a reaffirmation as of the date of said request that all representations and warranties of each Loan Party contained in Section 4.1 hereof are true in all material respects on and as of the date of the Settlement Date, (a) as stated if such representation and warranty contains an express materiality qualification or (b) in all material respects if such representation and warranty does not contain

15

4869-1815-9362.7

such a qualification, except, in each case, to the extent deviations from such representation or warranty has been disclosed in writing to Administrative Agent (including on the schedules to the Loan Documents) or expressly relates to an earlier date (in which case such representation and warranty shall be true and correct as of such date).  All representations and warranties contained in this Agreement or in any of the other Loan Documents shall survive the execution, delivery and acceptance hereof by Administrative Agent and each Lender and the closing of the transactions described herein.

5.      AFFIRMATIVE COVENANTS.

        5.1     Affirmative Covenants.  During the term of this Agreement, and thereafter for so long as there is any outstanding Obligations to the Administrative Agent or any Lender, each Loan Party covenants that, unless otherwise consented to by Administrative Agent in writing, it shall:

        (a)     *Maintenance of Existence*.  (i) Preserve, renew and maintain in full force and effect its corporate or organizational existence and (ii) take all reasonable action to maintain all rights, privileges and franchises necessary or desirable in the normal conduct of its business, except, in each case, where the failure to do so could not be expected to materially adversely affect any Loan Party's financial condition or the ability of any Loan Party to perform its obligations under the Loan Documents.

        (b)     *Compliance*.  Comply with (i) all of the terms and provisions of its Organizational Agreements; (ii) its obligations under its material contracts and agreements; and (iii) all Laws and Orders applicable to it and its business, except where the failure to do so could not be expected to materially adversely affect any Borrower's financial condition or the ability of any Borrower to perform its obligations under the Loan Documents.

        (c)     *Payment Obligations*.  Pay, discharge or otherwise satisfy at or before maturity or before they become delinquent, as the case may be, all of its material obligations of whatever nature, including any and all taxes, claims or otherwise, except where the amount or validity thereof is currently being contested in good faith by appropriate proceedings, and reserves in conformity with GAAP with respect thereto have been provided on its books.

        (d)     *Notice of Events of Default*.  As soon as possible and in any event within two (2) Business Days after it becomes aware that a Default or an Event of Default has occurred, notify Administrative Agent and each Lender in writing of the nature and extent of such Default or Event of Default and the action, if any, it has taken or proposes to take with respect to such Default or Event of Default.

        (e)     *Further Assurances*.  Each Loan Party shall, on the request of Administrative Agent and at the expense of Loan Parties:  (a) promptly correct any defect, error or omission which may be discovered in the contents of this Agreement or in the contents of any of the other Loan Documents; (b) promptly execute, acknowledge, deliver and record or file such further instruments (including, without limitation, further security agreements, financing statements and continuation statements) and promptly do such further acts as may be necessary, desirable or proper to carry out more effectively the purposes of this Agreement and the other Loan Documents and to subject to the liens and security interests hereof and thereof any property intended by the terms hereof and thereof to be covered hereby and thereby, including specifically, but without limitation, any renewals, additions, substitutions, replacements or appurtenances to the Collateral; and (c) promptly execute, acknowledge, deliver, procure and record or file any document or instrument (including specifically, without limitation, any financing statement) reasonably deemed advisable by Administrative Agent to protect, continue or perfect the Liens or the security interests in the Collateral hereunder or under any of the Security Documents against the rights or interests of third persons.

16

4869-1815-9362.7

(f)      *Monthly and Quarterly Documents.* As soon as practicable or available after the end of each calendar month and each fiscal quarter of each year, commencing with the first such period ending after the Closing Date, but no later than tenth (10th) Business Day following the end of each calendar month and forty-five (45) calendar days after the end of each respective fiscal quarter of Borrowers, Borrowers must prepare and deliver to the Administrative Agent, with respect to each Borrower (i) a profit and loss statement (both actual and pro-forma for the following twelve (12) months), together with Site-level detail, (ii) a balance sheet, (iii) a cashflow and income statement, (iv) a financial analysis and supplemental financial report, in the form required by Administrative Agent from time to time, (v) a current capitalization table and (vi) a compliance certificate stating whether or not Borrowers are in compliance with the covenant set forth in Sections 5.1(p) hereof, including all calculations evidencing the same and the certification thereto by Borrowers' Chief Financial Officer or other appropriate officer.  All such financial statements and other items shall in in form and substance reasonably acceptable to the Administrative Agent.

(g)      *Annual Financial Statements.*  As soon as practicable or available after the end of each fiscal year of Borrowers, and in any event within one hundred twenty (120) calendar days after the close of each fiscal year, Borrowers must prepare and deliver to Administrative Agent the annual audited financial statement of each Borrower.  Such annual financial statements (a) must include the types of financial statements and information required on a quarterly basis under Section 5.1(f) as well as a reconciliation of consolidated net worth and capital accounts, (b) must be prepared in accordance with GAAP consistently applied and (c) must be prepared by, and include an unqualified audit opinion issued by, an independent certified public accounting firm acceptable to Administrative Agent in its reasonable discretion.  Borrowers shall also deliver no later than thirty (30) days prior to the end of each fiscal year of Borrowers, a comprehensive budget forecasting the revenues, expenses and cash position of each Borrower on a month-to-month basis for the upcoming fiscal year, in form and substance reasonably acceptable to Administrative Agent.  Upon request, Borrowers shall promptly provide any other documentation or information reasonably requested by Administrative Agent and in form and substance reasonable acceptable to Administrative Agent, including but not limited to a current capitalization table of each Borrower.

(h)      *Tax Returns*.  Within fourteen (14) days after the date that any Borrower makes any filing with the IRS relating to its liability for income taxes (or otherwise delivers to any equity owner of Borrowers annual tax or capital information on Form K-1), Borrowers must deliver a complete copy thereof to the Administrative Agent and each Lender.

(i)      *Exclusivity Agreement.*  Contemporaneously with the execution and delivery of this Agreement, Borrowers shall execute and deliver to Administrative Agent the Exclusivity Agreement.

(j)      *Insurance*.  Borrowers shall maintain insurance on the Collateral and Borrowers' businesses in such amounts and in such types as are reasonable and customary for similar businesses. The Collateral insurance shall include a lender's loss payee endorsement in favor of the Administrative Agent. Borrowers shall deliver to Administrative Agent copies of such insurance certificates, on the Closing Date and as requested by Administrative Agent thereafter.

(k)      *Collateral; New Sites; Subsidiaries*.  Loan Parties will warrant and defend the title to the Collateral, and the validity and priority of all Liens granted or otherwise given to Administrative Agent under the Loan Documents, subject only to Permitted Liens, against the claims of all Persons. Without Administrative Agent's prior written consent, Loan Parties shall not create, incur, assume, permit or suffer to exist any Lien on all or any portion of the Collateral or any direct legal or beneficial ownership interest in Borrowers or any other Pledged Entities (as defined in the Pledge Agreement)(including any Person required to be joined as a Borrower hereunder pursuant to Section 5.1(m) hereof), except Liens in

17

favor of Administrative Agent and Permitted Liens.  At all times Borrowers shall maintain Eligible Inventory compromised of not less than thirty-five (35) vehicles. Borrowers may not transfer any Collateral into a Subsidiary, an Affiliate or any other Person without the prior written consent of Administrative Agent. Concurrently with each delivery by Borrowers of quarterly financial statements pursuant to Section 4.1(f) hereof, Borrowers will provide an updated Schedule 4.1(j) hereof reflecting any new Site acquired by a Borrower, or removing any Site at which a Borrower has terminated operations, in each case, since the most recent update to Schedule 4.1(j) delivered hereunder.

(l)     *Books and Records; Inspection and Examination.*  Each Loan Party will keep accurate books of record and account for itself pertaining to the Collateral, the Sites and the business and financial condition of Borrowers and such other matters as Administrative Agent may from time to time reasonably request in which true and complete entries will be made in accordance with GAAP consistently applied and, upon request of and reasonable notice by Administrative Agent, will permit any officer, employee, auditor, attorney or accountant for Administrative Agent or any Lender to audit, review, make extracts from or copy any and all corporate and financial books and records of any Loan Party at all reasonable times during ordinary business hours, and to discuss the affairs of Loan Parties, including the operation of the Sites, with any of its members, employees or agents and to conduct a review and audit of each Loan Party's books and records (the foregoing is collectively referred to herein as "Audit Activities"). Loan Parties will reimburse Administrative Agent upon demand for all out-of-pocket costs and expenses incurred by Administrative Agent or any Lender in connection with Audit Activities.  Without limitation of the foregoing, not less frequently than two (2) times per calendar month for the first three (3) complete calendar months following the Closing Date, and once per calendar month thereafter, Borrowers will prepare and deliver to Administrative Agent, and at Administrative Agent's request shall allow Administrative Agent and/or its designees to perform and/or verify, a detailed floor plan review and audit with respect to Borrowers' business operations, which shall include a reconciliation of all vehicle inventory and sales, the existence and release of all certificates of title therefor, a sources and uses reconciliation for all Borrower cash flows, and such other matters as Administrative Agent may from time to time require.

(m)     *New Subsidiaries and Affiliates.*  Concurrently with (i) the formation by any Borrower of any Subsidiary after the Closing Date, or (ii) the formation or acquisition by any Guarantor or any Borrower of any Person constituting an Affiliate of any Guarantor or any Borrower, or any direct or indirect ownership interest by any Guarantor or any Borrower in any other Person operating a car dealership or other automotive business of any type or nature, Loan Parties will deliver to Administrative Agent (A) a joinder to this Agreement of such Person to add such Person as a "Borrower" hereunder and under the other Loan Documents and a "Merchant" under the Exclusivity Agreement, and (B) a joinder to Security Agreement granting to Administrative Agent, for the benefit of the Lenders, a first priority Lien on all assets of, and all ownership interests in, such Person, in each case, in form and substance acceptable to the Administrative Agent.

(n)     *Cash; Deposit Accounts; Certificates of Title.*  Commencing on (i) the date which is twenty (20) days following the Closing Date and continuing at all times thereafter, each Borrower shall cause all cash of Borrowers, including all revenues received by each Borrower in connection with the operation of any Site, to be remitted directly to, and be maintained solely in, one or more segregated deposit accounts of Borrowers, subject at all times to a "springing" deposit account control agreement, in form and substance acceptable to Administrative Agent, and (ii) the Closing Date and continuing at all times thereafter, each Borrower shall keep the original certificates of title with respect to all vehicle inventory of such Borrower in a secure, fireproof safe or other customary and secure on-Site storage location, and shall permit Administrative Agent and its designees with access thereto at all times during ordinary business hours for purposes of verifying compliance by Borrowers with the representations, warranties and covenants of Borrowers hereunder.

18

4869-1815-9362.7

(o)   For so long as all or any portion of the Loans or any other Obligation remain outstanding Administrative Agent shall have the right, at its sole option, to attend all meetings of the board of managers or equivalent governing body (and all committees thereof) of Borrowers as a non-voting observer.   Borrowers shall (i) give Administrative Agent notice, at the same time as furnished to the members of the board of managers or equivalent governing body (or any committee thereof), (ii) provide to Administrative Agent all notices, documents and information furnished to the such members or board, whether at or in anticipation of a meeting, an action by written consents or otherwise, at the same time as furnished to the such members or board, (iii) notify Administrative Agent by telephone of, and permit Administrative Agent to attend by telephone, emergency meetings of the board of managers or equivalent governing body (and all committees thereof), and (iv) reimburse Administrative Agent for its reasonable out-of-pocket expenses incurred in connection with its rights under this subsection (o).

(p)   *Debt Service Coverage Ratio*.   Commencing with the fiscal quarter of Borrowers ending December 31, 2021 and continuing thereafter, Borrowers, on a consolidated basis, shall maintain the Debt Service Coverage Ratio, as measured on the last day of each fiscal quarter of Borrowers for the period of twelve (12) consecutive calendar months then ended, at not less than 1.50 to 1.00.

(q)   *Other Notices*.   Each Loan Party shall give notice to Administrative Agent as soon as possible, but in any event no later than five (5) days after it becomes aware of (i) any litigation, investigation, or other adverse change with respect to itself or any other Loan Party, along with any and all pleadings or other materials relating to the same; and (ii) any default by any Loan Party on any other obligation in excess of $25,000 or other defaults under any material contract, along with a copy of any documentation received by such Loan Party pertaining to the same.   Borrowers shall also provide copies of any amendments or modifications to any Westlake Financing Documents to Administrative Agent within five (5) days of executing the same.

6.   NEGATIVE COVENANTS.

6.1   Negative Covenants.   During the term of this Agreement, and thereafter for so long as there are Obligations outstanding, each Loan Party hereby covenants that unless Administrative Agent and each Lender has first consented thereto in writing, it will not (directly or indirectly), with respect to Borrowers, and will not permit Borrowers or any Subsidiary of the foregoing to:

(a)   *Indebtedness*.   Incur, create or assume any Debt, other than Permitted Debt, or provide any Debt to any other Person.

(b)   *Liens*.   Incur, create, assume or suffer to exist any Lien on any of its Property or assets, whether now owned or hereinafter acquired other than Permitted Liens.

(c)   *Line of Business*.   Enter into any business, directly or indirectly, except for (i) those businesses in which Borrowers are engaged on the Closing Date or that are reasonably related thereto, and (ii) other businesses, the entering into of which by Borrowers could not be reasonably expected to cause a material adverse effect on any Borrower's financial condition, the ability of any Borrower to perform its obligations under any of the Loan Documents or the ability of Borrowers to utilize credit card processing and other related services provided by any Lender or any of its Affiliates.

(d)   *Transactions With Affiliates*.   Enter into, or permit to exist, any transaction or agreement with any Affiliate except transactions and agreements in the ordinary course and on terms and conditions not less favorable to them than could be obtained on an arm's-length basis from unrelated third parties.

19

4869-1815-9362.7

(e)     *Restricted Payments*.  Make any Restricted Payment, or incur any obligation (contingent or otherwise) to do so.

(f)     *Certain Prohibited Actions*.  Directly or indirectly do any of the following: (i) change its principal place of business or chief executive office without first giving Administrative Agent and each Lender thirty (30) days' prior notice; (ii) make or permit any change, amendment or modification to its certificate of formation or incorporation, operating agreement, by-laws or other organizational documents; (iii) cancel or otherwise forgive or release any claim or Debt owed to such Person by any other Person, except for adequate consideration and in the ordinary course of such Person's business in its reasonable judgment; (iv) take any action which could result in Administrative Agent and the Lenders not having a perfected Lien in all of the assets of and the ownership interests in Borrowers, subject only to Permitted Liens; (v) sell, lease, assign, transfer or otherwise dispose of any Collateral, any Site or any other material portion of such Person's Property; (vi) consolidate with or merge into any Person, or permit any other Person to merge into it, or acquire (in a transaction analogous in purpose or effect to a consolidation or merger) all or substantially all the assets of any other Person; (vii) purchase or acquire, or make any commitment to purchase or acquire any equity interests of any kind of, or any obligations or other securities of, or any interest in, any Person, including the establishment or creation of any Subsidiary hereunder and with respect to which Loan Parties have complied with the requirements of Section 5.1(n) hereof; (viii) make or purchase, or commit to make or purchase, any advance, loan, extension of credit or capital contribution to or any other investment in, any Person; (ix) liquidate, dissolve or suspend its business operations; or (x) acquire or permit an Affiliate to acquire any loans or other debt securities.

(g)     *Insolvency*.  File a petition for bankruptcy under any Debtor Relief Law, request for reorganization or liquidation, or otherwise become insolvent, seek appointment of a receiver, trustee, custodian, conservator or other similar official for it or for all or any substantial part of its assets, or make a general assignment for the benefit of its creditors.

(h)     *Organizational Documents*.  Amend or repeal any Loan Party's Organizational Agreements.

(i)     *Alteration of Rights*.  Otherwise alter the rights and preferences under any Loan Document.

(j)     *Amending Westlake Financing Documents*.  Amend any Westlake Financing Document in a manner which would cause the (1) aggregate debt owed by Borrowers and their respective Affiliates to exceed the maximum principle amount of $1,000,000 or (2) commitment of Westlake to equal an amount in excess of $1,000,000.

7.     EVENTS OF DEFAULT.

7.1     List of Events of Default.  The occurrence of any one or more of the following conditions or events shall constitute an "Event of Default":

(a)     *Failure to Pay*.  Borrowers fail to pay (i) any principal amount of the Loans when due or (ii) interest, fees or any other amount when due under the Loan Documents and such failure continues for five (5) calendar days following receipt by Borrowers of written notice from Administrative Agent of such failure.

(b)     *Breach of Representations and Warranties*.  Any representation or warranty made or deemed made by any Loan Party to Administrative Agent and/or Lender in any Loan Document is incorrect on the date as of which such representation or warranty was made or deemed made.

20

4869-1815-9362.7

(c)      *Breach of Covenants*.  Any Loan Party fails to perform or observe any other covenant, condition or agreement of (i) Sections 5 or 6 of this Agreement; or (ii) any other provision of this Agreement or any of the other Loan Documents (other than to the extent the same constitutes an Event of Default under any provision of this Section 7.1 other than this Section 7.1(c)(ii), and such event or circumstance, if capable of being cured, is not cured within (A) thirty (30) days following the occurrence thereof either; or (B) if shorter, the applicable grace period, if any, specified in such other Loan Document.

(d)      *Cross-Defaults*.  Any Loan Party fails to pay when due any of its other Debt in excess of $25,000 in the aggregate, or, in each case, any interest or premium thereon when due (whether by scheduled maturity, acceleration, demand or otherwise), and such failure continues after the applicable grace period, if any, specified in the agreement or instrument relating to such Debt (except for Debt arising under the Loan Documents).

(e)      *Bankruptcy*.  (i) Any Loan Party or any of its Subsidiaries commences any case, proceeding or other action (A) under any existing or future Law relating to bankruptcy, insolvency, reorganization, or other relief of debtors, seeking to have an order for relief entered with respect to it, or seeking to adjudicate it as bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to it or its debts or (B) seeking appointment of a receiver, trustee, custodian, conservator or other similar official for it or for all or any substantial part of its assets, or any Loan Party or any of its Subsidiaries makes a general assignment for the benefit of its creditors; (ii) there is commenced against any Loan Party or any of its Subsidiaries any case, proceeding or other action of a nature referred to in Section 7.1(e)(i) above which (A) results in the entry of an order for relief or any such adjudication or appointment or (B) remains undismissed, undischarged or unbonded for a period of thirty (30) days; (iii) there is commenced against any Loan Party or any Subsidiary any case, proceeding or other action seeking issuance of a warrant of attachment, execution or similar process against all or any substantial part of its assets which results in the entry of an order for any such relief which has not been vacated, discharged, or stayed or bonded pending appeal within thirty (30) days from the entry thereof; (iv) any Loan Party or any of its Subsidiaries takes any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the acts set forth in Section 7.1(e)(i), Section 7.1(e)(ii) or Section 7.1(e)(iii) above; or (v) any Loan Party or any of its Subsidiaries is generally not, or shall be unable to, or admits in writing its inability to, pay its debts as they become due.

(f)      *Judgments*.  One or more judgments or decrees aggregating at least $50,000 shall be entered against any Loan Party or any of its Subsidiaries and all of such judgments or decrees shall not have been vacated, discharged, stayed or bonded pending appeal within sixty (60) days from the entry thereof.

(g)      *Exclusivity Agreement*.  Any material breach of (or default under) (subject to applicable cure periods), or any early termination or non-renewal of the Exclusivity Agreement.

(h)      *Change in Condition*.  If the Administrative Agent shall have determined in its sole but reasonable discretion that one or more conditions exist or events have occurred which have resulted or may result in a material adverse change in the business, properties or financial condition of the Borrowers.

(i)      *Change of Control; Guarantors*.  The occurrence of any Change of Control; or the death or permanent incapacitation of any Guarantor that is a natural Person.

(h)      *Criminal Acts.*  Any Loan Party or Related Party of the foregoing is (i) criminally indicted or convicted of a felony; or (ii) charged under any applicable law that could reasonably be expected

21

to lead to forfeiture of any material portion of the Collateral or a material adverse effect on the financial condition, business prospects, properties or operations of such Person.

8.        REMEDIES.

8.1        Upon the occurrence of any Event of Default and at any time thereafter during the continuance of such Event of Default, the Administrative Agent may at its option, take any action that it deems advisable to protect and enforce all available rights and remedies of Administrative Agent and the Lenders hereunder, under each of the other Loan Documents or which may otherwise be available at law or in equity, including, without limitation, all rights and remedies with respect to Borrowers, each other Loan Party or the Collateral; and Administrative Agent may, at its option and without notice or demand (a) declare all outstanding Obligations owing or payable hereunder or under any other Loan Document to be immediately due and payable and terminate all Commitments of Lenders hereunder, and when any Event of Default described in subsection (e) of Section 7.1 exists, then all outstanding Obligations shall immediately and automatically become due and payable together with all other amounts payable under the Loan Documents without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by Borrowers and each other Loan Party; (c) exercise on behalf of itself and the Lenders all rights and remedies available to it and the Lenders under the Loan Documents; and (d) exercise any or all of its rights, powers or remedies under Applicable Law.  Notwithstanding the foregoing, if any Event of Default shall occur under Section 7.1(e), the principal of and accrued interest on the Loans shall become immediately due and payable, and all Commitments of Lenders hereunder shall terminate, without any notice, declaration or other act on the part of the Administrative Agent or any Lender.

8.2        If an Event of Default shall have occurred and be continuing, each Lender and each of their respective Affiliates is hereby authorized at any time and from time to time, after obtaining the prior written consent of the Administrative Agent, to the fullest extent permitted by applicable law, to set off and apply any and all deposits (general or special, time or demand, provisional or final, in whatever currency) at any time held and other obligations (in whatever currency) at any time owing by such Lender or any such Affiliate to or for the credit or the account of Borrowers or any other Loan Party against any and all of the obligations of Borrowers or such other Loan Party now or hereafter existing under this Agreement or any other Loan Document to such Lender or its Affiliates, irrespective of whether or not such Lender or Affiliate shall have made any demand under this Agreement or any other Loan Document and although such obligations of Borrowers or such other Loan Party may be contingent or unmatured or are owed to a branch office or Affiliate of such Lender different from the branch office or Affiliate holding such deposit or obligated on such Debt.  The rights of each Lender and their respective Affiliates under this Section are in addition to other rights and remedies (including other rights of setoff) that such Lender or their respective Affiliates may have.  Each Lender agrees to notify Borrowers and the Administrative Agent promptly after any such setoff and application, provided that the failure to give such notice shall not affect the validity of such setoff and application.

8.3        *Standards for Exercising Remedies*.  To the extent that applicable law imposes duties on the Administrative Agent and/or Lender to exercise remedies in a commercially reasonable manner, each Loan Party acknowledges and agrees that it is not commercially unreasonable for the Administrative Agent and/or Lender (a) to fail to incur expenses deemed significant by the Administrative Agent and/or Lender to prepare Collateral for disposition or otherwise to complete raw material or work in process into finished goods or other finished products for disposition, (b) to fail to obtain third party consents for access to Collateral to be disposed of, or to obtain or, if not required by other law, to fail to obtain governmental or third party consents for the collection or disposition of Collateral to be collected or disposed of, (c) to fail to exercise collection remedies against account debtors or other persons obligated on Collateral or to remove liens or encumbrances on or any adverse claims against Collateral, (d) to exercise collection remedies against account debtors and other persons obligated on Collateral directly or through the use of collection

22

agencies and other collection specialists, (e) to advertise dispositions of Collateral through publications or media of general circulation, whether or not the Collateral is of a specialized nature, (f) to contact other persons, whether or not in the same business as the Borrowers or any other Loan Party, for expressions of interest in acquiring all or any portion of the Collateral, (g) to hire one or more professional auctioneers to assist in the disposition of Collateral, whether or not the collateral is of a specialized nature, (h) to dispose of Collateral by utilizing internet sites that provide for the auction of assets of the types included in the Collateral or that have the reasonable capability of doing so, or that match buyers and sellers of assets, (i) to dispose of assets in wholesale rather than retail markets, (j) to disclaim disposition warranties, (k) to purchase insurance or credit enhancements to insure the Administrative Agent and/or Lender against risks of loss, collection or disposition of Collateral or to provide to the Administrative Agent and/or Lender a guaranteed return from the collection or disposition of Collateral, or (l) to the extent deemed appropriate by the Administrative Agent and/or Lender, to obtain the services of other brokers, investment bankers, consultants and other professionals to assist the Lender in the collection or disposition of any of the Collateral. Each Loan Party acknowledges that the purpose of this Section is to provide non-exhaustive indications of what actions or omissions by the Administrative Agent and/or Lender would not be commercially unreasonable in the Administrative Agent's and/or Lender's exercise of remedies against the Collateral and that other actions or omissions by the Administrative Agent and/or Lender shall not be deemed commercially unreasonable solely on account of not being indicated in this Section. Without limitation upon the foregoing, nothing contained in this Section shall be construed to grant any rights to the Borrowers or to impose any duties on the Administrative Agent and/or Lender that would not have been granted or imposed by this Agreement or by applicable law in the absence of this Section.

9.   WAIVERS.

Failure by Administrative Agent or any Lender to exercise any right, remedy or option under this Agreement, any other Loan Document, any other documents relating to the Obligations, or as provided by Applicable Law, or any delay by Administrative Agent or any Lender in exercising the same, shall not operate as a waiver of any such right, remedy or option.  No waiver hereunder shall be effective unless it is in writing, signed by the party against whom such waiver is sought to be enforced and then only to the extent specifically stated, which in the case of the Administrative Agent or any Lender shall only be granted as provided herein.  To the extent permitted by Applicable Law, neither the Administrative Agent nor any Lender, nor any party acting as attorney for the Administrative Agent or any Lender, shall be liable hereunder for any acts or omissions or for any error of judgment or mistake of fact or law other than their gross negligence or willful misconduct hereunder.  The rights and remedies of the Administrative Agent and the Lenders under this Agreement shall be cumulative and not exclusive of any other right or remedy that the Administrative Agent or the Lenders may have.

10.   NOTICES.

10.1   *Written Notices*.

(a)    All notices and other communications to any party herein to be effective shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by telecopy, as follows:

If to Borrowers or Guarantors:

c/o Karma of Palm Beach, Inc.
1001 Clint Moore Road, Unit B
Boca Raton, FL 33487
Attn: Scott Zankl

23

4869-1815-9362.7

If to Administrative Agent and/or Lenders:

c/o FVP Servicing, LLC
1202 Broadway, 7th Floor
New York, NY 10001
Attn: Keith Lee / Tom Betts
Telephone: 646.902.6645
E-mail:klee@feenixpartners.com / tbetts@feenixpartners.com

(b)     Notices if (i) mailed by certified or registered mail or sent by hand or overnight courier service shall be deemed to have been given when received; and (ii) sent by e-mail shall be deemed received upon the sender's receipt of an acknowledgment from the intended recipient (such as by a return e-mail or other written acknowledgment).

(c)     Any party hereto may change its address for notices and other communications hereunder by notice to the other parties hereto.  All such notices and other communications shall, when transmitted by overnight delivery, be effective when delivered for overnight (next-day) delivery, or if mailed, upon the third Business Day after the date deposited into the mails or if delivered, upon delivery; provided, that notices delivered to Lenders shall not be effective until actually received by such Person at its address specified in this Section 10.

(d)     Any agreement of Administrative Agent or any Lender herein to receive certain notices by telephone or e-mail is solely for the convenience and at the request of Borrowers.  Administrative Agent and each Lender shall be entitled to rely on the authority of any Person purporting to be a Person authorized by a Loan Party to give such notice and neither Administrative Agent nor any Lender shall have any liability to any Loan Party or other Person on account of any action taken or not taken by Administrative Agent or any Lender in reliance upon such telephonic or e-mail notice.  The obligation of Borrowers to repay the Loans and all other Obligations and hereunder shall not be affected in any way or to any extent by any failure of Administrative Agent or any Lender to receive written confirmation of any telephonic or e-mail notice or the receipt by Administrative Agent or any Lender of a confirmation which is at variance with the terms understood by Administrative Agent or any Lender to be contained in any such telephonic or e-mail notice.

10.2     *Electronic Communications*.

(a)     Notices and other communications to the Lenders hereunder may be delivered or furnished by electronic communication (including e-mail and internet or intranet websites) pursuant to procedures approved by Administrative Agent; provided that the foregoing shall not apply to notices to Administrative Agent or any Lender pursuant to Section 2 hereof unless Administrative Agent or such Lender has agreed to receive notices under such Section by electronic communication and have agreed to the procedures governing such communications. Any Party may, in its discretion, agree to accept notices and other communications to it hereunder by electronic communications pursuant to procedures approved by it; provided that approval of such procedures may be limited to particular notices or communications.

(b)     Unless Administrative Agent otherwise prescribes, (i) notices and other communications sent to an e-mail address shall be deemed received upon the sender's receipt of an acknowledgement from the intended recipient (such as by a return e-mail or other written acknowledgement); provided that if such notice or other communication is not sent during the normal business hours of the recipient, such notice or communication shall be deemed to have been sent at the opening of business on the next Business Day for the recipient, and (ii) notices or communications posted

24

4869-1815-9362.7

to an internet or intranet website shall be deemed received upon the deemed receipt by the intended recipient at its e-mail address as described in the foregoing clause (i) of notification that such notice or communication is available and identifying the website address therefor.

11.    EXPENSES AND INDEMNIFICATION.

11.1    Costs and Expenses. Borrowers shall reimburse Administrative Agent and each Lender upon demand for all reasonable out-of-pocket costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Administrative Agent and each Lender in connection with the Loans and other transactions contemplated hereby, including (i) the preparation, negotiation, execution and delivery of the Loan Documents and the consummation of the transactions contemplated thereby; (ii) Borrowers' ongoing performance under and compliance with the Loan Documents, including confirming compliance with environmental and insurance requirements; (iii) the negotiation, preparation, execution, delivery and administration of any consents, amendments, waivers or other modifications of or under any Loan Document and any other documents or matters requested by Administrative Agent; (iv) filing and recording of any Loan Documents; (v) the creation, perfection or protection of Administrative Agent's and Lenders' Liens in the Collateral (including fees and expenses for title and lien searches, intangibles taxes, personal property taxes, due diligence expenses, travel expenses, accounting firm fees, costs of appraisals, environmental reports, surveys and engineering reports); (vi) enforcing or preserving any rights in response to third party claims or the prosecuting or defending of any action or proceeding or other litigation, in each case against, under or affecting any Borrower, any other Loan Party, the Loan Documents, the Collateral, or any other security given for the Obligations; and (vii) enforcing any obligations of or collecting any payments due from any Borrower or any other Loan Party under any Loan Document or with respect to the Collateral or in connection with any refinancing or restructuring of the Loans in the nature of a "work-out", or any insolvency or bankruptcy proceedings. All obligations provided for in this Section 11.1 shall survive the termination of this Agreement and/or the repayment of the Obligations.

11.2    Indemnity. Each Borrower shall indemnify Administrative Agent and each Lender, each Affiliate and Subsidiary of Administrative Agent and each Lender, and each investment manager, servicer, partner, member, officer, director, employee, agent and advisor of Administrative Agent and each Lender (each, an "Indemnitee") against, defend and hold each of them harmless from, any and all Specified Losses (defined below) unless such Specified Losses incurred by any such Indemnitee are determined by a court of competent jurisdiction in a final and non-appealable judgment to have resulted from (i) the gross negligence or willful misconduct of such Indemnitee; or (ii) a claim brought by any Borrower, any other Loan Party or any third Person against such Indemnitee for breach in bad faith of such Indemnitee's obligations hereunder or under any other Loan Document. For purposes of this Section, the term "Specified Losses" means all costs, losses, liabilities, claims, damages and related expenses, including the fees, charges and disbursements of any counsel for any Indemnitee, which may be incurred by any Indemnitee, or asserted against any Indemnitee by Borrowers, any other Loan Party or any third Person, arising out of, in connection with or as a result of (a) the execution or delivery of this Agreement or any other agreement or instrument contemplated hereby and the performance by Administrative Agent or any Lender of its respective obligations hereunder or the consummation of any of the transactions contemplated hereby, (b) any Loan or any actual use of the proceeds therefrom, (c) any actual claim, litigation, investigation or proceeding relating to any of the foregoing, or (d) any actual claim, litigation or proceeding by any third party, so long as all Indemnitees are in compliance with Applicable Law related to such third party, collections or exercise of remedies relating to any third party. Borrowers shall pay, and hold Lender harmless from and against, any and all present and future stamp, documentary, and other similar taxes with respect to this Agreement and any other Loan Documents, any collateral described therein, or any payments due thereunder, and save Lender harmless from and against any and all liabilities with respect to or resulting from any delay or omission to pay such taxes.

25

11.3    Taxes.  Borrowers shall pay, and hold Lender harmless from and against, any and all present and future stamp, documentary, and other similar taxes with respect to this Agreement and any other Loan Documents, any collateral described therein, or any payments due thereunder, and save Lender harmless from and against any and all liabilities with respect to or resulting from any delay or omission to pay such taxes.

11.4    Reimbursement by Lenders.   To the extent that Borrowers for any reason fail to indefeasibly pay any amount required under this Section 11 to be paid by them to the Administrative Agent (or any sub-agent thereof) or any Related Party thereof, each Lender severally agrees to pay to the Administrative Agent (or any such sub-agent) or such Related Party, as the case may be, such Lender's pro rata share of such unpaid amount (including any such unpaid amount in respect of a claim asserted by such Lender), such payment to be made severally among them (determined as of the time that the applicable unreimbursed expense or indemnity payment is sought), provided, further that, the unreimbursed expense or indemnified loss, claim, damage, liability or related expense, as the case may be, was incurred by or asserted against the Administrative Agent (or any such sub-agent), or against any Related Party thereof acting for the Administrative Agent (or any such sub-agent) in connection with such capacity.   The obligations of the Lenders under this Section 11.4 are subject to the provisions of Section 2.1(b).

11.5    Waiver of Damages.  To the fullest extent permitted by applicable law, no Loan Party shall assert, and each Loan Party hereby waives, and acknowledges that no other Person shall have, any claim against any Indemnitee, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, any other Loan Document or any agreement or instrument contemplated hereby, the transactions contemplated hereby or thereby, any Loan or the use of the proceeds thereof.  No Indemnitee referred to in Section 11.2 above shall be liable for any damages arising from the use by unintended recipients of any information or other materials distributed by it through telecommunications, electronic or other information transmission systems in connection with this Agreement or the other Loan Documents or the transactions contemplated hereby or thereby.

11.6    Payment.  All amounts due under this Section shall be payable promptly after written demand therefor.

11.7    Survival.  The agreements and indemnity provisions of this Section 11 shall survive the resignation of the Administrative Agent, the replacement of any Lender, the termination of the Commitments and the repayment, satisfaction or discharge of all the other Obligations.

11.8    Payments Set Aside.  To the extent that any payment by or on behalf of Borrowers or any other Loan Party is made to the Administrative Agent or any Lender, or the Administrative Agent or any Lender exercises its right of setoff, and such payment or the proceeds of such setoff or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside or required (including pursuant to any settlement entered into by the Administrative Agent or such Lender in its discretion) to be repaid to a trustee, receiver or any other party, in connection with any proceeding under any Debtor Relief Law or otherwise, then (a) to the extent of such recovery, the obligation or part thereof originally intended to be satisfied shall be revived and continued in full force and effect as if such payment had not been made or such setoff had not occurred, and (b) each Lender severally agrees to pay to the Administrative Agent upon demand its applicable share (without duplication) of any amount so recovered from or repaid by the Administrative Agent, plus interest thereon from the date of such demand to the date such payment is made at a rate per annum equal to the federal funds rate from time to time in effect.  The obligations of the Lenders under clause (b) of the preceding sentence shall survive the payment in full of the Obligations and the termination of this Agreement.

4869-1815-9362.7

12.    ADMINISTRATIVE AGENT.

12.1    Appointment and Authority.   Each of the Lenders hereby irrevocably appoints the Administrative Agent to act on its behalf as the administrative agent hereunder and under the other Loan Documents and authorizes the Administrative Agent to take such actions on its behalf and to exercise such powers as are delegated to the Administrative Agent by the terms hereof or thereof, together with such actions and powers as are incidental thereto.  The provisions of this Section are solely for the benefit of the Administrative Agent and the Lenders, and Borrowers shall have no rights as third-party beneficiaries of any of such provisions.  It is understood and agreed that the use of the term "agent" herein or in any other Loan Documents (or any other similar term) with reference to the Administrative Agent is not intended to connote any fiduciary or other implied (or express) obligations arising under agency doctrine of any applicable Law.  Instead such term is used as a matter of market custom and is intended to create or reflect only an administrative relationship between contracting parties.

12.2    Rights as a Lender.  The Person serving as the Administrative Agent hereunder shall have the same rights and powers in its capacity as a Lender as any other Lender and may exercise the same as though it were not the Administrative Agent and the term "Lender" or "Lenders" shall, unless otherwise expressly indicated or unless the context otherwise requires, include the Person serving as the Administrative Agent hereunder in its individual capacity.  The Administrative Agent and its Affiliates may accept deposits from, lend money to, own securities of, act as the financial advisor or in any other advisory capacity for and generally engage in any kind of business with any Loan Party or other Affiliate thereof as if such Person were not the Administrative Agent hereunder and without any duty to account therefor to the Lenders.

12.3    Exculpatory Provisions.

(a)    The Administrative Agent shall not have any duties or obligations except those expressly set forth herein and in the other Loan Documents, and its duties hereunder shall be administrative in nature.  The parties do not intend to create any agency, partnership, joint venture, trust, fiduciary or other relationship with duties or incidents different from those of parties to an arm's-length contract.  Without limiting the generality of the foregoing, the Administrative Agent (a) shall not be subject to any fiduciary or other implied duties except as expressly set forth in this Agreement, regardless of whether a Default has occurred and is continuing; (b) shall not have any duty to take any discretionary action or exercise any discretionary powers, except discretionary rights and powers expressly contemplated hereby or by the other Loan Documents that the Administrative Agent is required to exercise as directed in writing by the Lenders, provided that the Administrative Agent shall not be required to take any action that, in its opinion or the opinion of its counsel, may expose the Administrative Agent to liability or that is contrary to any Loan Document or applicable law, including for the avoidance of doubt any action that may be in violation of the automatic stay under any Debtor Relief Law; and (c) shall not, except as expressly set forth herein and in the other Loan Documents, have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to any Loan Party or any of its Affiliates that is communicated to or obtained by the Person serving as the Administrative Agent or any of its Affiliates in any capacity.

(b)    The Administrative Agent shall not be liable for any action taken or not taken by it (i) with the consent or at the request of the Lenders or (ii) in the absence of its own gross negligence or willful misconduct as determined by a court of competent jurisdiction by final and non-appealable judgment.  The Administrative Agent shall be deemed not to have knowledge of any Default unless and until notice describing such Default is given in writing to the Administrative Agent by any Loan Party, or a Lender.

27

4869-1815-9362.7

(c)      The Administrative Agent shall not be responsible for or have any duty to ascertain or inquire into (i) any statement, warranty or representation made in or in connection with this Agreement or any other Loan Document, (ii) the contents of any certificate, report or other document delivered hereunder or thereunder or in connection herewith or therewith, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth herein or therein or the occurrence of any Default, (iv) the validity, enforceability, effectiveness or genuineness of this Agreement, any other Loan Document or any other agreement, instrument or document or (v) the satisfaction of any condition set forth herein, other than to confirm receipt of items expressly required to be delivered to the Administrative Agent.

12.4    Reliance by Administrative Agent.   The Administrative Agent shall be entitled to reasonably rely upon, and shall not incur any liability for reasonably relying upon, any notice, request, certificate, consent, statement, instrument, document or other writing (including any electronic message, Internet or intranet website posting or other distribution) believed by it to be genuine and to have been signed, sent or otherwise authenticated by the proper Person.   The Administrative Agent also may reasonably rely upon any statement made to it orally or by telephone and believed by it to have been made by the proper Person, and shall not incur any liability for relying thereon.   In determining compliance with any condition hereunder to the making of a Loan, that by its terms must be fulfilled to the satisfaction of a Lender, the Administrative Agent may presume that such condition is reasonably satisfactory to such Lender unless the Administrative Agent shall have received notice to the contrary from such Lender prior to the making of such Loan.   The Administrative Agent may consult with legal counsel (who may be counsel for any Loan Party), independent accountants and other experts selected by it, and shall not be liable for any action taken or not taken by it in accordance with the advice of any such counsel, accountants or experts. The Loan Parties shall indemnify the Administrative Agent, each Lender and the Related Parties of each of them from all losses, costs, expenses and liabilities resulting from the reliance by such Person on each notice purportedly given by or on behalf of such Loan Party.

12.5    Delegation of Duties.  The Administrative Agent may perform any and all of its duties and exercise its rights and powers hereunder or under any other Loan Document by or through any one or more sub-agents appointed by the Administrative Agent.  The Administrative Agent and any such sub-agent may perform any and all of its duties and exercise its rights and powers by or through their respective Related Parties.  The exculpatory provisions of this Section shall apply to any such sub-agent and to the Related Parties of the Administrative Agent and any such sub-agent, and shall apply to their respective activities in connection with the syndication of the credit facilities provided for herein as well as activities as Administrative Agent.  The Administrative Agent shall not be responsible for the negligence or misconduct of any sub-agents except to the extent that a court of competent jurisdiction determines in a final and non-appealable judgment that the Administrative Agent acted with gross negligence or willful misconduct in the selection of such sub-agents.

12.6    Resignation of Administrative Agent.   The Administrative Agent may resign as Administrative Agent at any time by giving thirty (30) days advance notice thereof to the Lenders and Borrowers and, thereafter, the retiring Administrative Agent shall be discharged from its duties and obligations hereunder.  Upon any such resignation, the Lenders shall have the right to appoint a successor Administrative Agent.  If no successor Administrative Agent shall have been so appointed by the Lenders, or have accepted such appointment within thirty (30) days after the Administrative Agent's giving of notice of resignation, then the Administrative Agent may, on behalf of the Lenders, appoint a successor Administrative Agent.  Upon the acceptance of any appointment as Administrative Agent hereunder by a successor Administrative Agent, such successor Administrative Agent shall thereupon succeed to and become vested with all rights, powers, privileges and duties of the retiring Administrative Agent.  After any retiring Administrative Agent's resignation hereunder as Administrative Agent, the provisions of this Section 12.6 shall continue in effect for its benefit in respect of any actions taken or omitted to be taken by

28

4869-1815-9362.7

it while it was acting as Administrative Agent.  If no successor has accepted appointment as Administrative Agent by the date which is thirty (30) days following a retiring Administrative Agent's notice of resignation, the retiring Administrative Agent's resignation shall nevertheless thereupon become effective and the Lenders shall perform all of the duties of the Administrative Agent hereunder until such time, if any, as the Lenders appoint a successor agent as provided for above.

12.7    Non-Reliance on Administrative Agent and Other Lenders.  Each Lender acknowledges that it has, independently and without reliance upon the Administrative Agent or any other Lender or any of their Related Parties and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement.  Each Lender also acknowledges that it will, independently and without reliance upon the Administrative Agent or any other Lender or any of their Related Parties and based on such documents and information as it shall from time to time deem appropriate, continue to make its own decisions in taking or not taking action under or based upon this Agreement, any other Loan Document or any related agreement or any document furnished hereunder or thereunder.

12.8    Administrative Agent May File Proofs of Claim.  In case of the pendency of any receivership, insolvency, liquidation, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial proceeding relative to Borrowers, the Administrative Agent (irrespective of whether the principal of the Loans shall then be due and payable as herein expressed or by declaration or otherwise and irrespective of whether the Administrative Agent shall have made any demand on Borrowers) shall be entitled and empowered, by intervention in such proceeding or otherwise:

(a)    to file and prove a claim for the whole amount of the principal and interest owing and unpaid in respect of the Loans and all other Obligations that are owing and unpaid and to file such other documents as may be necessary or advisable in order to have the claims of the Lenders and the Administrative Agent allowed in such judicial proceeding; and

(b)    to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same;

(c)    and any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Lender to make such payments to the Administrative Agent and, in the event that the Administrative Agent shall consent to the making of such payments directly to the Lenders, to pay to the Administrative Agent any amount due for the reasonable compensation, expenses, disbursements and advances of the Administrative Agent and its agents and counsel, and any other amounts due the Administrative Agent hereunder.

13.    MISCELLANEOUS.

13.1    Entire Agreement; Amendment.  This Agreement and the other Loan Documents embody the entire understanding and agreement between the parties hereto with respect to the subject matter hereof, and any prior agreements, whether written or oral, with respect thereof, are expressly superseded hereby.  This Agreement, or any term contained herein, may not be modified, waived or amended except by an agreement in writing signed by Borrowers and the Administrative Agent.

13.2    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided that no Loan Party may assign this Agreement, any other Loan Document, or any right or benefit hereunder to any Person.  Any Lender may assign any or all of its rights and obligations hereunder at any time and to any Person, upon Administrative Agent's prior written consent and the execution and delivery of an assignment and assumption agreement by such assigning Lender to the proposed assignee, in form and substance acceptable to Administrative

29

Agent. From and after the effective date of any such assignment, the assignee shall be a party to this Agreement and, to the extent of the interest assigned, have the rights and obligations of a Lender under this Agreement, and the assigning Lender thereunder shall, to the extent of the interest assigned by such Lender, be released from its obligations under this Agreement. Upon request, Borrowers shall execute and deliver a Note to the assignee Lender. Subject to the foregoing, any Lender shall have the right to enter into one or more participations with respect to the Obligations without prior notice or consent of Borrowers.

13.3    Governing Law. This Agreement and the other Loan Documents and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement or any of the other Loan Documents and the transactions contemplated hereby shall be governed by the laws of the State of New York.

13.4    Submission to Jurisdiction.

(a)    Each Loan Party hereby irrevocably and unconditionally (i) agrees that any legal action, suit or proceeding arising out of or relating to this Agreement and the other Loan Documents may be brought in the courts of the State of New York or of the United States of America for the Southern District of New York and (ii) submits to the exclusive jurisdiction of any such court in any such action, suit or proceeding. Final judgment against any Loan Party in any action, suit or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment. Nothing in this Section 13.4 shall affect the right of Administrative Agent and each Lender to (i) commence legal proceedings or otherwise sue any Loan Party in any other court having jurisdiction over such Loan Party or (ii) serve process upon any Loan Party in any manner authorized by the laws of any such jurisdiction.

(b)    In accordance with Rule 9, Accelerated Adjudication Actions, as set forth in Section 202.70(g) of the Rules of the Commercial Division of the Supreme Court, subject to the requirements for a case to be heard in the Commercial Division of the Supreme Court of the State of New York, Borrowers hereby agree to submit to the exclusive jurisdiction of the Commercial Division, New York State Supreme Court, and to the application of the such Court's accelerated procedures, in connection with any dispute, claim or controversy arising out of or relating to this Agreement or any other Loan Document, or the breach, termination, enforcement or validity thereof.

13.5    Venue. Each Loan Party irrevocably and unconditionally waives, to the fullest extent permitted by Applicable Law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement and the other Loan Documents in any court referred to in Section 13.4 and the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

13.6    Advertising. Administrative Agent and each Lender, and their affiliates, in their sole and absolute discretion, may disclose publicly (including on its website) for marketing and promotional purposes that the Borrowers are in such Administrative Agent's and Lender's portfolio, including but not limited to a royalty-free, non-exclusive, worldwide, irrevocable license in any intellectual property for use solely in marketing and promotional materials.

13.7    Waiver of Jury Trial. EACH LOAN PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

4869-1815-9362.7

13.8    Counterparts; Effectiveness. This Agreement and the other Loan Documents and any amendments, waivers, consents or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all taken together shall constitute a single contract.  Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement.

13.9    Waiver of Notice. Each Loan Party hereby waives demand for payment, presentment for payment, protest, notice of payment, notice of dishonor, notice of nonpayment, notice of acceleration of maturity and diligence in taking any action to collect sums owing hereunder.

13.10    USA PATRIOT Act. Administrative Agent and each Lender hereby notifies each Loan Party that pursuant to the requirements of the USA PATRIOT Act, it is required to obtain, verify, and record information that identifies each Loan Party, which information includes the name and address of each Loan Party and other information that will allow Administrative Agent and each Lender to identify such Loan Party in accordance with the USA PATRIOT Act, and each Loan Party agrees to provide such information from time to time to the Administrative Agent.

13.11    Interpretation. For purposes of this Agreement (i) the words "include," "includes" and "including" shall be deemed to be followed by the words "without limitation"; (ii) the word "or" is not exclusive; and (iii) the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Agreement as a whole. The definitions given for any defined terms in this Agreement shall apply equally to both the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  Unless the context otherwise requires, references herein: (x) to Schedules, Exhibits and Sections mean the Schedules, Exhibits and Sections of this Agreement; (y) to an agreement, instrument or other document means such agreement, instrument or other document as amended, supplemented and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder.  This Agreement and the other Loan Documents shall be construed without regard to any presumption or rule requiring construction or interpretation against the Party drafting an instrument or causing any instrument to be drafted.

13.12    Amendments and Waivers. No term of this Agreement may be waived, modified or amended except by an instrument in writing signed by the Parties hereto.  Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

13.13    Headings.  The headings of the various Sections and subsections herein are for reference only and shall not define, modify, expand or limit any of the terms or provisions hereof.

13.14    No Waiver; Cumulative Remedies.  No failure to exercise and no delay in exercising on the part of the Administrative Agent or any Lender, of any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by Applicable Law.

13.15    Electronic Execution.  The words "execution," "signed," "signature," and words of similar import in this Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under Applicable Law, including the Electronic Signatures in Global and National Commerce

31

Act of 2000 (15 USC § 7001 et seq.), the Electronic Signatures and Records Act of 1999 (N.Y. State Tech. Law §§ 301-309), or any other similar state laws based on the Uniform Electronic Transactions Act.

13.16   Severability. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the Parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

13.17   Joint and Several Obligations. The obligations of each Borrower hereunder and under each of the other Loan Documents are joint and several. Each reference to the term "Borrower" hereunder or under any other Loan Document shall be deemed to refer to each Borrower, each representation and warranty made by a Borrower hereunder or under any other Loan Document shall be deemed to have been made by each Borrower; each covenant and undertaking on the part of a Borrower hereunder or under any other Loan Document shall be deemed individually applicable with respect to each Borrower; and each event constituting a Default hereunder or under any other Loan Document shall be determined with respect to each Borrower. A separate action or actions may be brought and prosecuted against any Borrower whether an action is brought against any other Borrower or whether any other Borrower is joined in any such action or actions. Each Borrower waives the right to require Administrative Agent to: (a) proceed against any other Borrower; (b) proceed against or exhaust any Collateral held from any other Borrower; or (c) pursue any other remedy in Administrative Agent's power whatsoever. Any consent on the part of a Borrower hereunder or under any other Loan Document shall be effective when provided by any Borrower, and Administrative Agent shall be entitled to rely upon any notice or consent given by any Borrower as being notice and consent given by all Borrowers hereunder and under each other Loan Document. In the event any obligation of a Borrower hereunder and under each other Loan Document is deemed by a court of competent jurisdiction to be an agreement by any Borrower to answer for the debt or default of another Borrower or as a hypothecation of property as security therefor, each Borrower represents, warrants and agrees that: (i) no representation has been made to it as to the creditworthiness of any other Borrower; (ii) it has established an adequate means of obtaining from each other Borrower, on a continuing basis, financial or other information pertaining to each other Borrower's financial condition; (iii) it expressly waives diligence, demand, presentment, protest and notice of every kind and nature whatsoever, consents to the alteration or release by Administrative Agent (in any manner) of any Collateral now or hereafter held in connection with any obligations under any Loan Document, and consents that Administrative Agent and any Borrower may deal with each other in connection with said obligations or otherwise, including the voluntary grant of additional security for the obligations of any Borrower, or alter any contracts now or hereafter existing between them, in any manner whatsoever, including, without limitation, the renewal, extension, acceleration, changes in time for payment, and increases or decreases in any rate of interest or other amounts owing, all without in any way altering the liability of any Borrower, or affecting any security for such obligations. Upon the occurrence and during the continuance of any Default, Administrative Agent is hereby expressly given the right, at its option, to proceed in the enforcement of any Loan Document independently of any other remedy or security it may at any time hold in connection with such Loan Document and it shall not be necessary for Administrative Agent to proceed upon or against and/or exhaust any other security or remedy before proceeding to enforce its rights against any Borrower. Until the Loans and all other Debt or indebtedness under the Loan Documents have been paid in full, each Borrower further waives any right or subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid to Lender by any other Borrower. Borrowers do not intend that any Borrower be deemed to be a guarantor.

[signatures appear on following page]

32

IN WITNESS WHEREOF, the undersigned, by their duly authorized officers, have executed this Agreement and it is effective as of the day and year first above written.

**BORROWERS:**

**KARMA OF BROWARD, INC.,**
a Florida corporation

By: _____
Name: Scott Zankl
Title: President

**KARMA OF PALM BEACH, INC.,**
a Florida corporation

By: _____
Name: Scott Zankl
Title: President

**GUARANTORS:**

_____
**SCOTT ZANKL**

_____
**KRISTEN ZANKL**

*[Signature Page – Loan Agreement]*

**ADMINISTRATIVE AGENT:**

**FVP SERVICING, LLC**,
a Delaware limited liability company

By: _Keith Lee_

Name: Keith Lee
Title:    Manager

**LENDERS:**

**FVP OPPORTUNITY FUND III, LP**,
a Delaware limited partnership

By:  FVP Fund III GP, LLC, its General Partner

By: _Keith Lee_

Name: Keith Lee
Title:    Manager

**FVP INVESTMENTS, LLC**,
a Delaware limited liability company

By: _Keith Lee_

Name: Keith Lee
Title:    Manager

*[Signature Page – Loan Agreement]*
4869-1815-9362.7

**SCHEDULE I TO LOAN AGREEMENT**

**LENDER COMMITMENT SCHEDULE**

| LENDER | COMMITMENT |
|---|---|
| FVP Opportunity Fund III, LP | $4,500,000.00 |
| FVP Investments, LLC | $3,000,000.00*<br>*Subject Commitment limited to Advances in respect of the Delayed Draw Term Loan. |

4869-1815-9362.7

## SCHEDULE 4.1(O) TO LOAN AGREEMENT

## LOAN PARTY CAPITALIZATION

### KARMA OF BROWARD, INC.

| Name | Ownership |
|---|---|
| Scott Zankl | 50% |
| Kristen Zankl | 50% |
|  |  |
| Total | 100.00% |

### KARMA OF PALM BEACH, INC.

| Name | Ownership |
|---|---|
| Scott Zankl | 50% |
| Kristen Zankl | 50% |
|  |  |
| Total | 100.00% |

4869-1815-9362.7

## SCHEDULE 4.1(J) TO LOAN AGREEMENT

### SITES

| LOAN PARTY | SITE ADDRESS | CONCEPT | FEE OR LEASED/REMAINING LEASE TERM |
|---|---|---|---|
| Karma of Broward, Inc. | 1717 17th Street Ft. Lauderdale, FL 33316 | Auto Dealership | 10 years |
| Karma of Palm Beach, Inc. | 1001 Clint Moore Road Boca Raton, FL 33487 | Auto Dealership | 10 years |

4869-1815-9362.7

**EXHIBIT A TO LOAN AGREEMENT**

**NOTE**

$4,500,000.00                                                                                    January 26, 2022

        **FOR VALUE RECEIVED, KARMA OF PALM BEACH, INC.**, a Florida corporation ("Palm Beach") and **KARMA OF BROWARD, INC.**, a Florida corporation ("Broward"; Palm Beach and Broward, each, a "Borrower" and collectively, "Borrowers"), on a joint and several basis, hereby promise to pay to the order of **FVP SERVICING, LLC**, a Delaware limited liability company, as administrative agent ("Administrative Agent"), for the benefit of **FVP OPPORTUNITY FUND III, LP**, a Delaware limited partnership (the "Noteholder"), the principal amount of FOUR MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($4,500,000.00) (or, if less, the aggregate outstanding principal amount of all Advances to Borrowers in respect of the Loans) held by Noteholder, in accordance with the provisions of that certain Loan Agreement dated as of January 26, 2022, by and among Borrowers, the Noteholder, the other Lenders party thereto, Administrative Agent and the other Loan Parties party thereto (the "Loan Agreement"). Capitalized terms used herein shall have the meanings set forth in the Loan Agreement.

Borrowers promise to pay interest on the unpaid principal amount of this Note (this "Note") at such interest rates and at such times as provided in the Loan Agreement. All payments of principal and interest shall be made to Administrative Agent, for the benefit Noteholder, in immediately available funds by wire, checks or money orders made payable to Administrative Agent in accordance with Section 2.2 of the Loan Agreement. If any amount is not paid in full when due hereunder, such unpaid amount shall bear interest at a rate, to be paid as set forth in the Loan Agreement.

This Note is entitled to the benefits of the Loan Agreement and may be prepaid in whole or in part subject to the terms and conditions provided therein. Upon the occurrence and continuation of one or more of the Events of Default specified in the Loan Agreement, all amounts then remaining unpaid on this Note shall become, or may be declared to be, immediately due and payable all as and to the extent provided in the Loan Agreement. Administrative Agent may attach schedules to this Note and endorse thereon the date, amount and maturity of its Advances under the Loan Agreement and payments with respect thereto.

Each Borrower, for itself, its successors and assigns, hereby waives diligence, presentment, protest and demand and notice of protest, demand, dishonor and non-payment of this Note.

THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

[Execution Page Follows]

4869-1815-9362.7

IN WITNESS WHEREOF, Borrowers have caused this Note to be executed and delivered and it is effective as of the date first written above.

**KARMA OF BROWARD, INC.**,
a Florida corporation

By:

Name:

Title:

**KARMA OF PALM BEACH, INC.**,
a Florida corporation

By:

Name:

Title:

4869-1815-9362.7

**NOTE**

$3,000,000.00                                                                                    January 26, 2022

   **FOR VALUE RECEIVED, KARMA OF PALM BEACH, INC.**, a Florida corporation ("Palm Beach") and **KARMA OF BROWARD, INC.**, a Florida corporation ("Broward"; Palm Beach and Broward, each, a "Borrower" and collectively, "Borrowers"), on a joint and several basis, hereby promise to pay to the order of **FVP SERVICING, LLC**, a Delaware limited liability company, as administrative agent ("Administrative Agent"), for the benefit of **FVP INVESTMENTS, LLC**, a Delaware limited liability company (the "Noteholder"), the principal amount of THREE MILLION AND 00/100 DOLLARS ($3,000,000.00) (or, if less, the aggregate outstanding principal amount of all Advances to Borrowers in respect of the Loans) held by Noteholder, in accordance with the provisions of that certain Loan Agreement dated as of January 26, 2022, by and among Borrowers, the Noteholder, the other Lenders party thereto, Administrative Agent and the other Loan Parties party thereto (the "Loan Agreement"). Capitalized terms used herein shall have the meanings set forth in the Loan Agreement.

Borrowers promise to pay interest on the unpaid principal amount of this Note (this "Note") at such interest rates and at such times as provided in the Loan Agreement. All payments of principal and interest shall be made to Administrative Agent, for the benefit Noteholder, in immediately available funds by wire, checks or money orders made payable to Administrative Agent in accordance with Section 2.2 of the Loan Agreement. If any amount is not paid in full when due hereunder, such unpaid amount shall bear interest at a rate, to be paid as set forth in the Loan Agreement.

This Note is entitled to the benefits of the Loan Agreement and may be prepaid in whole or in part subject to the terms and conditions provided therein. Upon the occurrence and continuation of one or more of the Events of Default specified in the Loan Agreement, all amounts then remaining unpaid on this Note shall become, or may be declared to be, immediately due and payable all as and to the extent provided in the Loan Agreement. Administrative Agent may attach schedules to this Note and endorse thereon the date, amount and maturity of its Advances under the Loan Agreement and payments with respect thereto.

Each Borrower, for itself, its successors and assigns, hereby waives diligence, presentment, protest and demand and notice of protest, demand, dishonor and non-payment of this Note.

THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

[Execution Page Follows]

4869-1815-9362.7

IN WITNESS WHEREOF, Borrowers have caused this Note to be executed and delivered and it is effective as of the date first written above.

**KARMA OF BROWARD, INC.**,
a Florida corporation

By:_____
Name:
Title:

**KARMA OF PALM BEACH, INC.**,
a Florida corporation

By:_____
Name:
Title:

4869-1815-9362.7

**EXHIBIT B TO LOAN AGREEMENT**

**FLOW OF FUNDS MEMORANDUM (CLOSING DATE TERM LOAN)**

| Source of Funds: | Amount | |
|---|---|---|
| Loan Proceeds | $3,500,000.00 | |
| **Use of Funds** | **Amount** | **Payee/Wire Transfer Instructions** |
| Net Proceeds to Borrower | $2,913,133.55 | Bank Name:  JPMorgan Chase Bank<br>Bank Address: 240 E. Palmetto Park Road<br>        Boca Raton, FL 33432<br>Account Name:  Karma Broward<br>ABA Routing #:  021000021<br>Account #:  705157995<br>Reference:  Karma |
| Payoff of Existing Debt to Quick Shift Capital, LLC | $487,996.45 | Bank Name:  Synovus Bank<br>Bank Address: 1048 Broadway, Columbus, GA 31901<br>Account Name:  Quick Shift Capital, LLC<br>ABA Routing #:  061100606<br>Account #:  1015599176<br>Reference:  Karma |
| Commitment Fee to Lenders | $75,000.00 | To be withheld by Administrative Agent from Loan proceeds and applied to payment. |
| Attorneys' Fees of Administrative Agent and the Lenders | $23,870.00 | Bank Name:  First National Bank of Omaha<br>Bank Address: 1620 Dodge Street, Omaha, Nebraska<br>Account Name:  Kutak Rock LLP<br>ABA Routing #:  104000016<br>Account #:  24-690470<br>Reference:  Matter #1700101-54 |

4869-1815-9362.7

**EXHIBIT C TO LOAN AGREEMENT**

**FORM OF DELAYED DRAW LOAN ADVANCE REQUEST**

[**DATE**]

FVP Servicing, LLC
325 Hudson Street, 4th Floor
New York, NY 10013
Attn: Keith Lee / Tom Betts
Telephone: 646.902.6645
E-mail: klee@feenixpartners.com / tbetts@feenixpartners.com

Re:     Request for Advance under that certain Loan Agreement (the "Loan Agreement") dated as of January 26, 2022, by and among Karma of Broward, Inc. and Karma of Palm Beach, Inc. (each, a "Borrower" and, collectively, "Borrowers"), FVP Servicing, LLC, a Delaware limited liability company, as administrative agent for the "Lenders" party thereto from time to time (the "Administrative Agent") and the other parties thereto from time to time. Capitalized terms used herein shall have the meanings set forth in the Loan Agreement.

Ladies and Gentlemen:

The undersigned Borrowers hereby delivers this Delayed Draw Loan Advance Request to the Administrative Agent and the Lenders and hereby request the Lenders to advance the requested funds to Borrowers in accordance with and in reliance upon the following instructions and certifications:

| 1. | Facility Requested | Delayed Draw Term Loan |
|---|---|---|
| 2. | Total Amount Requested | $[1,000,000.00] |
| 3. | Requested Settlement Date | [_____], 20[__] |

In connection with this Delayed Draw Loan Advance Request, the undersigned Borrowers hereby represent and certify to the Administrative Agent and the Lenders as follows, which representations and certifications are accurate and complete as of the date hereof and as of the Settlement Date for the Advance requested hereunder: (i) the proceeds of the requested Advance will be used for purposes that are authorized under the Loan Agreement and otherwise in compliance with the terms of the Loan Agreement; and (ii) all conditions precedent for the Advances requested hereby under the Loan Agreement, as set forth in Section 3.2 of the Loan Agreement, have been satisfied.

The Lenders and Administrative Agent are hereby irrevocably authorized and instructed to arrange for and to disburse the proceeds of the requested Advance in accordance with the instructions below:

Bank: [_____]
Routing No.: [_____]
Account No.: [_____]
Account Name: [_____]

4869-1815-9362.7

**IN WITNESS WHEREOF**, this Delayed Draw Loan Advance Request is hereby executed, delivered and effective as of the date first written above.

Very truly yours,

**KARMA OF BROWARD, INC.**,
a Florida corporation

By:_____
Name:
Title:

**KARMA OF PALM BEACH, INC.**,
a Florida corporation

By:_____
Name:
Title:

4869-1815-9362.7

# EXHIBIT C

**NOTE**

$3,000,000.00                                                                                                          January 26, 2022

   **FOR VALUE RECEIVED, KARMA OF PALM BEACH, INC.**, a Florida corporation ("Palm Beach") and **KARMA OF BROWARD, INC.**, a Florida corporation ("Broward"; Palm Beach and Broward, each, a "Borrower" and collectively, "Borrowers"), on a joint and several basis, hereby promise to pay to the order of **FVP SERVICING, LLC**, a Delaware limited liability company, as administrative agent ("Administrative Agent"), for the benefit of **FVP INVESTMENTS, LLC**, a Delaware limited liability company (the "Noteholder"), the principal amount of THREE MILLION AND 00/100 DOLLARS ($3,000,000.00) (or, if less, the aggregate outstanding principal amount of all Advances to Borrowers in respect of the Loans) held by Noteholder, in accordance with the provisions of that certain Loan Agreement dated as of January 26, 2022, by and among Borrowers, the Noteholder, the other Lenders party thereto, Administrative Agent and the other Loan Parties party thereto (the "Loan Agreement"). Capitalized terms used herein shall have the meanings set forth in the Loan Agreement.

Borrowers promise to pay interest on the unpaid principal amount of this Note (this "Note") at such interest rates and at such times as provided in the Loan Agreement. All payments of principal and interest shall be made to Administrative Agent, for the benefit Noteholder, in immediately available funds by wire, checks or money orders made payable to Administrative Agent in accordance with Section 2.2 of the Loan Agreement. If any amount is not paid in full when due hereunder, such unpaid amount shall bear interest at a rate, to be paid as set forth in the Loan Agreement.

This Note is entitled to the benefits of the Loan Agreement and may be prepaid in whole or in part subject to the terms and conditions provided therein. Upon the occurrence and continuation of one or more of the Events of Default specified in the Loan Agreement, all amounts then remaining unpaid on this Note shall become, or may be declared to be, immediately due and payable all as and to the extent provided in the Loan Agreement. Administrative Agent may attach schedules to this Note and endorse thereon the date, amount and maturity of its Advances under the Loan Agreement and payments with respect thereto.

Each Borrower, for itself, its successors and assigns, hereby waives diligence, presentment, protest and demand and notice of protest, demand, dishonor and non-payment of this Note.

THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

[Execution Page Follows]

IN WITNESS WHEREOF, Borrowers have caused this Note to be executed and delivered and it is effective as of the date first written above.

**KARMA OF BROWARD, INC.,**
a Florida corporation

By:_____

Name: Scott Zankl

Title: Pres

**KARMA OF PALM BEACH, INC.,**
a Florida corporation

By:_____

Name: Scott Zankl

Title: Pres

# EXHIBIT D

**NOTE**

$4,500,000.00                                                                                      January 26, 2022

        **FOR VALUE RECEIVED, KARMA OF PALM BEACH, INC.**, a Florida corporation ("Palm Beach") and **KARMA OF BROWARD, INC.**, a Florida corporation ("Broward"; Palm Beach and Broward, each, a "Borrower" and collectively, "Borrowers"), on a joint and several basis, hereby promise to pay to the order of **FVP SERVICING, LLC**, a Delaware limited liability company, as administrative agent ("Administrative Agent"), for the benefit of **FVP OPPORTUNITY FUND III, LP**, a Delaware limited partnership (the "Noteholder"), the principal amount of FOUR MILLION FIVE HUNDRED THOUSAND AND 00/100 DOLLARS ($4,500,000.00) (or, if less, the aggregate outstanding principal amount of all Advances to Borrowers in respect of the Loans) held by Noteholder, in accordance with the provisions of that certain Loan Agreement dated as of January 26, 2022, by and among Borrowers, the Noteholder, the other Lenders party thereto, Administrative Agent and the other Loan Parties party thereto (the "Loan Agreement").  Capitalized terms used herein shall have the meanings set forth in the Loan Agreement.

Borrowers promise to pay interest on the unpaid principal amount of this Note (this "Note") at such interest rates and at such times as provided in the Loan Agreement.  All payments of principal and interest shall be made to Administrative Agent, for the benefit Noteholder, in immediately available funds by wire, checks or money orders made payable to Administrative Agent in accordance with Section 2.2 of the Loan Agreement.  If any amount is not paid in full when due hereunder, such unpaid amount shall bear interest at a rate, to be paid as set forth in the Loan Agreement.

This Note is entitled to the benefits of the Loan Agreement and may be prepaid in whole or in part subject to the terms and conditions provided therein.  Upon the occurrence and continuation of one or more of the Events of Default specified in the Loan Agreement, all amounts then remaining unpaid on this Note shall become, or may be declared to be, immediately due and payable all as and to the extent provided in the Loan Agreement.  Administrative Agent may attach schedules to this Note and endorse thereon the date, amount and maturity of its Advances under the Loan Agreement and payments with respect thereto.

Each Borrower, for itself, its successors and assigns, hereby waives diligence, presentment, protest and demand and notice of protest, demand, dishonor and non-payment of this Note.

THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

[Execution Page Follows]

IN WITNESS WHEREOF, Borrowers have caused this Note to be executed and delivered and it is effective as of the date first written above.

**KARMA OF BROWARD, INC.,**
a Florida corporation

By:_____

Name:  Scott Zankl

Title:  Pres

**KARMA OF PALM BEACH, INC.,**
a Florida corporation

By:_____

Name:  Scott Zankl

Title:  Pres

# EXHIBIT E

**Exhibit E**

## GUARANTY AGREEMENT

This **GUARANTY AGREEMENT** (this "**Guaranty**") is executed as of January 26, 2022, by **SCOTT ZANKL**, an individual, **KRISTEN ZANKL**, an individual, and each other Person from time to time executing a joinder hereto for purposes of becoming a "Guarantor" hereunder in accordance with Section 5.1(m) of the hereafter defined Loan Agreement (each, a "**Guarantor**" and, collectively, the "**Guarantors**"), for the benefit of **FVP SERVICING, LLC**, in its capacity as administrative agent for the Lenders under the Loan Agreement (as defined below) (the "**Administrative Agent**"), and the Lenders from time to time party to the Loan Agreement. Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such term in the Loan Agreement.

## W I T N E S S E T H:

A.      Pursuant to that certain Loan Agreement dated of even date herewith (as the same may be amended, modified, supplemented, replaced or otherwise modified from time to time, the "**Loan Agreement**") by and among Karma of Broward, Inc. and Karma of Palm Beach, Inc., as borrowers (individually and collectively, "**Borrower**"), Guarantors, Administrative Agent and the Lenders party thereto, Lenders have agreed to make certain term loans to Borrower in the aggregate original principal amount of up to $7,500,000.00 (collectively, the "**Loan**"). Lenders are not willing to make the Loan, or otherwise extend credit, to Borrower unless each Guarantor unconditionally guarantees the payment and performance to Lenders of the Guaranteed Obligations (as herein defined).

B.      Each Guarantor will directly benefit from Lender's making the Loan to Borrower.

NOW, THEREFORE, as an inducement to Lenders to make the Loan to Borrower and to extend such additional credit as Lenders may from time to time agree to extend under the Loan Documents, as an inducement to Administrative Agent and the Lenders to enter into the Loan Documents, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

## ARTICLE 1
## NATURE AND SCOPE OF GUARANTY

Section 1.1      Guaranty of Obligation.

(a)      Each Guarantor hereby irrevocably and unconditionally jointly and severally guarantees to Administrative Agent and the Lenders and each of their respective successors and assigns the payment and performance of the Guaranteed Obligations (as defined below) as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Each Guarantor hereby irrevocably and unconditionally covenants and agrees that it is jointly and severally liable for the Guaranteed Obligations as a primary obligor.

(b)      As used herein, the term "**Guaranteed Obligations**" means the aggregate principal amount of all of the Obligations, whether now existing or made subsequent hereto, or so much thereof as may be due and owing under the Loan Agreement or any of the other Loan Documents, together with interest, fees, costs, expenses and any other sums owing under the Loan Agreement or any of the other Loan Documents and all costs or expenses incurred by Administrative Agent or any Lender in the enforcement or collection of this Guaranty.

Section 1.2      Nature of Guaranty. This Guaranty is a continuing guaranty of payment and performance and not a guaranty of collection. This Guaranty may not be revoked by any Guarantor and

4874-0469-8626.4

shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by such Guarantor and after (if any Guarantor is a natural person) such Guarantor's death (in which event this Guaranty shall be binding upon such Guarantor's estate and such Guarantor's legal representatives and heirs).  The fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release or discharge the obligation of any Guarantor hereunder with respect to the Guaranteed Obligations.  This Guaranty may be enforced by the Administrative Agent, Lenders and any subsequent holder of the Loan Agreement or the Notes and shall not be discharged by the assignment or negotiation of all or part of the Loan Agreement, the Notes or the Obligations.

Section 1.3    Guaranteed Obligations Not Reduced by Offset.  The Guaranteed Obligations and the liabilities and obligations of Guarantors hereunder shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense of Borrower or any other party against the Administrative Agent or Lenders or against payment of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

Section 1.4    Payment By Guarantor.  If all or any part of the Guaranteed Obligations shall not be punctually paid when due, whether at demand, maturity, acceleration or otherwise, each Guarantor shall, immediately upon demand by Administrative Agent and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity or any other notice whatsoever, all such notices being hereby waived by each Guarantor, pay in lawful money of the United States of America, the amount due on the Guaranteed Obligations to Lenders at Administrative Agent's address as set forth herein.  Such demand(s) may be made at any time coincident with or after the time for payment of all or part of the Guaranteed Obligations and may be made from time to time with respect to the same or different items of Guaranteed Obligations.  Such demand shall be deemed made, given and received in accordance with the notice provisions hereof.

Section 1.5    No Duty To Pursue Others.  It shall not be necessary for Administrative Agent or any Lender (and Guarantor hereby waives any rights which such Guarantor may have to require Lender), in order to enforce the obligations of Guarantors hereunder, first to (i) institute suit or exhaust its remedies against Borrower or others liable on the Loan or the Guaranteed Obligations or any other Person, (ii) enforce Administrative Agent's or any Lender's rights against any collateral which shall ever have been given to secure the Loan, (iii) enforce Administrative Agent's or any Lender's rights against any other guarantors of the Guaranteed Obligations, (iv) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty, (v) exhaust any remedies available to Administrative Agent or Lenders against any collateral which shall ever have been given to secure the Loan or other Obligations, or (vi) resort to any other means of obtaining payment of the Guaranteed Obligations.  All of the remedies set forth herein and/or provided for in or at law or equity shall be equally available to Administrative Agent, and the choice by Administrative Agent of one such remedy over another shall not be subject to question or challenge by any Guarantor or any other Person, nor shall any such choice be asserted as a defense, setoff, or failure to mitigate damages in any action, proceeding, or counteraction by Administrative Agent to recover or seeking any other remedy under this Guaranty, nor shall such choice preclude Administrative Agent from subsequently electing to exercise a different remedy.

Section 1.6    Waivers.  Each Guarantor agrees to the provisions of the Loan Documents and hereby waives notice of (i) any loans or advances made by Lenders to Borrower, (ii) acceptance of this Guaranty, (iii) any amendment or extension of the Note, the Loan Agreement or any other Loan Document, (iv) the execution and delivery by Borrower, Administrative Agent and Lenders of any other loan or credit agreement or of Borrower's execution and delivery of any promissory note or other document arising under the Loan Documents, (v) the occurrence of (A) any breach by Borrower of any of the terms or conditions of the Loan Agreement or any of the other Loan Documents, or (B) an Event of Default, (vi) Administrative

2

Agent's or any Lender's transfer or disposition of the Guaranteed Obligations, or any part thereof, (vii) the sale or foreclosure (or the posting or advertising for the sale or foreclosure) of any collateral for the Guaranteed Obligations, (viii) protest, proof of non-payment or default by Borrower, or (ix) any other action at any time taken or omitted by Administrative Agent or any Lender and, generally, all demands and notices of every kind in connection with this Guaranty, the Loan Documents, any documents or agreements evidencing, securing or relating to any of the Guaranteed Obligations and/or the obligations hereby guaranteed.

Section 1.7    Payment of Expenses.  In the event that any Guarantor shall breach or fail to timely perform any provisions of this Guaranty, Guarantors shall, immediately upon demand by Administrative Agent, pay all of Administrative Agent's and each Lender's costs and expenses (including court costs and attorneys' fees) incurred by Administrative Agent and Lenders in the enforcement hereof or the preservation of all of Administrative Agent's and each Lender's rights hereunder, together with interest thereon from the date requested by Administrative Agent until the date of payment to Administrative Agent and Lenders.  The covenant contained in this Section shall survive the payment and performance of the Guaranteed Obligations.

Section 1.8    Effect of Bankruptcy.  In the event that pursuant to any insolvency, bankruptcy, reorganization, receivership or other debtor relief law or any judgment, order or decision thereunder, Administrative Agent or any Lender must rescind or restore any payment or any part thereof received by Administrative Agent or any Lender in satisfaction of the Guaranteed Obligations, as set forth herein, any prior release or discharge from the terms of this Guaranty given to Guarantor by Administrative Agent or any Lender shall be without effect and this Guaranty shall remain (or shall be reinstated to be) in full force and effect.  It is the intention of Borrower and Guarantors that Guarantor's obligations hereunder shall not be discharged except by each Guarantor's performance of such obligations and then only to the extent of such performance.

Section 1.9    Waiver of Subrogation, Reimbursement and Contribution.   Notwithstanding anything to the contrary contained in this Guaranty, each Guarantor hereby unconditionally and irrevocably waives, releases and abrogates any and all rights it may now or hereafter have under any agreement, at law or in equity (including, without limitation, any law subrogating Guarantor to the rights of Administrative Agent and each Lender), to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Borrower or any other party liable for the payment of any or all of the Guaranteed Obligations for any payment made by Guarantors under or in connection with this Guaranty or otherwise.

## ARTICLE 2
## EVENTS AND CIRCUMSTANCES NOT REDUCING
## OR DISCHARGING GUARANTOR'S OBLIGATIONS

Each Guarantor hereby consents and agrees to each of the following and agrees that such Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following and waives any common law, equitable, statutory or other rights (including, without limitation, rights to notice) which such Guarantor might otherwise have as a result of or in connection with any of the following:

Section 2.1    Modifications.  Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Notes, the Loan Agreement, the other Loan Documents or any other document, instrument, contract or understanding between Borrower, Administrative Agent and Lenders or any other parties pertaining to the Guaranteed Obligations or any failure of Administrative Agent or any Lender to notify any such Guarantor of any such action.

3

4874-0469-8626.4

Section 2.2    Adjustment.  Any adjustment, indulgence, forbearance or compromise that might be granted or given by Administrative Agent or any Lender to Borrower or any Guarantor.

Section 2.3    Condition of Borrower or Guarantor.  The insolvency, bankruptcy, arrangement, adjustment, composition, liquidation, disability, dissolution or lack of power of Borrower, any Guarantor or any other Person at any time liable for the payment of all or part of the Guaranteed Obligations; or any dissolution of Borrower or any Guarantor or any sale, lease or transfer of any or all of the assets of Borrower or any Guarantor or any changes in the direct or indirect shareholders, partners or members, as applicable, of Borrower or any Guarantor; or any reorganization of Borrower or any Guarantor.

Section 2.4    Invalidity of Guaranteed Obligations.  The invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations or any document or agreement executed in connection with the Guaranteed Obligations for any reason whatsoever.

Section 2.5    Release of Obligors.  Any full or partial release of the liability of Borrower for the Guaranteed Obligations or any part thereof, or of any co-guarantors, or of any other Person now or hereafter liable, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being recognized, acknowledged and agreed by each Guarantor that such Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support from any other Person, and such Guarantor has not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that other Persons (including Borrower) will be liable to pay or perform the Guaranteed Obligations or that Lenders will look to other Persons (including Borrower) to pay or perform the Guaranteed Obligations.

Section 2.6    Other Collateral.  The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

Section 2.7    Release of Collateral.  Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including, without limitation, negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations.

Section 2.8    Unenforceability.  The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being recognized and agreed by each Guarantor that such Guarantor is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the collateral for the Guaranteed Obligations.

Section 2.9    Offset.  Any existing or future right of offset, claim or defense of Borrower against Administrative Agent or any Lender, or any other party, or against payment of the Guaranteed Obligations, whether such right of offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise.

Section 2.10    Merger.  The reorganization, merger or consolidation of Borrower or any Guarantor into or with any other Person.

Section 2.11    Preference.  Any payment by Borrower to Administrative Agent or any Lender are held to constitute a preference under bankruptcy laws or for any reason Administrative Agent or any Lender is required to refund such payment or pay such amount to Borrower or to any other Person.

4

4874-0469-8626.4

Section 2.12    Other Actions Taken or Omitted.   Any (a) defense based upon any legal disability or other defense of Borrower, any other Guarantor or Person, or by reason of the cessation or limitation of the liability of Borrower from any cause other than full payment and performance of those obligations of Borrower which are guaranteed hereunder; (b) any defense based upon any lack of authority of the officers, directors, partners, managers, members or agents acting or purporting to act on behalf of Borrower, any Guarantor or any principal of Borrower or any Guarantor, any defect in the formation of Borrower, any Guarantor or any principal of Borrower or any Guarantor; (c) defense based upon the application by Borrower of the proceeds of the Guaranteed Obligations for purposes other than the purposes represented by Borrower to Administrative Agent or any Lender or intended or understood by Administrative Agent or any Lender or Guarantor; (d) and all rights and defenses arising out of an election of remedies by Administrative Agent or any Lender, even though that election of remedies (such as a nonjudicial foreclosure, if available and/or permitted, with respect to security for a guaranteed obligation) has or may have destroyed Guarantor's rights of subrogation and reimbursement against the principal by the operation of any applicable state law or otherwise; (e) defense based upon Administrative Agent or any Lender's failure to disclose to any such Guarantor any information concerning Borrower's financial condition or any other circumstances bearing on Borrower's ability to pay and perform its obligations under this Guaranty or any of the other Loan Documents, or upon the failure of any other principals of Borrower to guaranty the Guaranteed Obligations; (f) right of subrogation, any right to enforce any remedy which Administrative Agent or any Lender may have against Borrower and any right to participate in, or benefit from, any security for this Guaranty or the other Loan Documents; (g) presentment, demand, protest and notice of any kind; (h) the benefit of any statute of limitations affecting the liability of any Guarantor hereunder or the enforcement hereof to the extent permitted by law; and (i) duty or obligation on Administrative Agent or any Lender to proceed to collect payment or performance of the obligations from, or to commence an action against, Borrower or any other Person, or to resort to any security or to any balance of any deposit account or credit on the books of Administrative Agent or any Lender in favor of Borrower or any other Person, despite any notice or request of any Guarantor to do so.

Section 2.13    Joint and Several Liability.    THE LIABILITY OF EACH GUARANTOR UNDER THIS AGREEMENT SHALL BE JOINT AND SEVERAL WITH BORROWER AND ALL OTHER GUARANTORS OF GUARANTEED OBLIGATIONS UNDER THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS.

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES

To induce Lenders to enter into the Loan Documents and to extend credit to Borrower, the Guarantors jointly and severally represent and warrant to Administrative Agent and Lenders as follows:

Section 3.1    Benefit.   Each Guarantor is an Affiliate of Borrower, and has received, or will receive, direct or indirect benefit from the making of this Guaranty with respect to the Guaranteed Obligations.

Section 3.2    Familiarity and Reliance.   Each Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Obligations or Guaranteed Obligations; however, no Guarantor is relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

Section 3.3    No Representation By Lender.   Neither Administrative Agent, Lenders nor any other party has made any representation, warranty or statement to any Guarantor in order to induce such Guarantor to execute this Guaranty.

5

4874-0469-8626.4

Section 3.4    Guarantor's Financial Condition.  As of the date hereof, and after giving effect to this Guaranty and the contingent obligation evidenced hereby, each Guarantor (a) is and will be solvent, (b) has and will have assets which, fairly valued, exceed its obligations, liabilities (including contingent liabilities) and debts, and (c) has and will have property and assets sufficient to satisfy and repay its obligations and liabilities, including the Guaranteed Obligations.

Section 3.5    Legality.  The execution, delivery and performance by each Guarantor of this Guaranty and the consummation of the transactions contemplated hereunder do not and will not contravene or conflict with any law, statute or regulation whatsoever to which Guarantor is subject, or constitute a default (or an event which, with notice or lapse of time or both, would constitute a default) under, or result in the breach of, any indenture, mortgage, charge, lien, contract, agreement or other instrument to which such Guarantor is a party or which may be applicable to such Guarantor.  This Guaranty is a legal and binding obligation of each Guarantor and is enforceable against each Guarantor in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to the enforcement of creditors' rights.

Section 3.6    Survival.  All representations and warranties made by Guarantors herein shall survive the execution hereof.

Section 3.7    Power and Authority.  Each Guarantor has the power and authority, and the legal right, to execute and deliver this Guaranty and to perform its obligations hereunder.

Section 3.8    Authorization; Execution and Delivery.  The execution and delivery of this Guaranty by Guarantors and the performance of such Guarantor's obligations hereunder have been duly authorized by all necessary corporate or limited liability company action, as applicable, in accordance with all Applicable Laws.  Each Guarantor has duly executed and delivered this Guaranty.

## ARTICLE 4
## SUBORDINATION OF CERTAIN INDEBTEDNESS

Section 4.1    Subordination of All Guarantor Claims.  As used herein, the term "**Guarantor Claims**" shall mean all debts and liabilities of Borrower to Guarantors, whether such debts and liabilities now exist or are hereafter incurred or arise, and whether the obligations of Borrower thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or liabilities be evidenced by note, contract, open account, or otherwise, and irrespective of the Person or Persons in whose favor such debts or liabilities may, at their inception, have been, or may hereafter be, created, or the manner in which they have been, or may hereafter be, acquired by Guarantors.  The Guarantor Claims shall include, without limitation, all rights and claims of Guarantor against Borrower (arising as a result of subrogation or otherwise) as a result of Guarantor's payment of all or a portion of the Guaranteed Obligations.  So long as any portion of the Obligations or the Guaranteed Obligations remain outstanding, no Guarantor shall receive or collect, directly or indirectly, from Borrower or any other Person any amount upon the Guarantor Claims.

Section 4.2    Claims in Bankruptcy.  In the event of any receivership, bankruptcy, reorganization, arrangement, debtor's relief or other insolvency proceeding involving any Guarantor as a debtor, Administrative Agent and Lenders shall have the right to prove their claim in any such proceeding so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian dividends and payments which would otherwise be payable upon Guarantor Claims.  Each Guarantor hereby assigns such dividends and payments to Administrative Agent for the ratable benefit of the Lenders. Should Administrative Agent receive, for application against the Guaranteed Obligations, any dividend or payment which is otherwise payable to any Guarantor and which, as between Borrower and such Guarantor,

6

4874-0469-8626.4

shall constitute a credit against the Guarantor Claims, then, upon payment to Administrative Agent for the ratable benefit of the Lenders in full of the Obligations and the Guaranteed Obligations, such Guarantor shall become subrogated to the rights of Administrative Agent and Lenders to the extent that such payments to Administrative Agent and Lenders on the Guarantor Claims have contributed toward the liquidation of the Guaranteed Obligations, and such subrogation shall be with respect to that proportion of the Guaranteed Obligations which would have been unpaid if Administrative Agent and Lenders had not received dividends or payments upon the Guarantor Claims.

Section 4.3     Payments Held in Trust.  Notwithstanding anything to the contrary contained in this Guaranty, in the event that any Guarantor should receive any funds, payments, claims and/or distributions which are prohibited by this Guaranty, such Guarantor agrees to hold in trust for Administrative Agent and Lenders an amount equal to the amount of all funds, payments, claims and/or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims and/or distributions so received except to pay such funds, payments, claims and/or distributions promptly to Administrative Agent for the ratable benefit of the Lenders, and Guarantor covenants promptly to pay the same to Administrative Agent for the ratable benefit of the Lenders.

Section 4.4     Liens Subordinate.  Each Guarantor agrees that any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guarantor Claims shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of any Guarantor, Administrative Agent or any Lenders presently exist or are hereafter created or attach.  Without the prior written consent of Administrative Agent, Guarantor shall not (i) exercise or enforce any creditor's rights it may have against Borrower, or (ii) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including, without limitation, the commencement of, or the joinder in, any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, mortgages, deeds of trust, security interests, collateral rights, judgments or other encumbrances on the assets of Borrower held by any Guarantor.  The foregoing shall in no manner vitiate or amend, nor be deemed to vitiate or amend, any prohibition in the Loan Documents against Borrower granting liens or security interests in any of its assets to any Person other than Administrative Agent for the ratable benefit of the Lenders.

### ARTICLE 5
### COVENANTS

Section 5.1     Covenants.  Until all of the Obligations and the Guaranteed Obligations have been paid in full, (i) no Guarantor shall sell, pledge, mortgage or otherwise transfer any of its assets, or any interest therein, on terms materially less favorable than would be obtained in an arms-length transaction, and (ii) within ninety (90) days following the end of each calendar year, each Guarantor acknowledges and agrees to deliver to Administrative Agent, upon request, the financial statements and tax returns of such Guarantor along with such other financial information as Lender may reasonably request.

Section 5.2     Prohibited Transactions.  No Guarantor shall, at any time while a default in the payment of the Guaranteed Obligations has occurred and is continuing, either (i) enter into or effectuate any transaction with any Affiliate which would reduce the Net Worth of Guarantor, including, without limitation, the payment of any dividend or distribution to a shareholder, partner or member, as applicable, or the redemption, retirement, purchase or other acquisition for consideration of any stock or other ownership interest in such Guarantor, or (ii) sell, pledge, mortgage or otherwise transfer to any Person any of such Guarantor's assets, or any interest therein.  As used in this Section 5.2, the term "Net Worth" means, with respect to any Guarantor as of any date of determination, an amount equal to (i) such Guarantor's, total assets as of such date, less (ii) such Guarantor's total liabilities as of such date, in each case, as

7

4874-0469-8626.4

determined in accordance with GAAP.

## ARTICLE 6
## MISCELLANEOUS

Section 6.1 <u>Waiver</u> . No failure to exercise, and no delay in exercising, on the part of Administrative Agent or any Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right. The rights of Administrative Agent and Lenders hereunder shall be in addition to all other rights provided by law. No modification or waiver of any provision of this Guaranty, nor any consent to any departure therefrom, shall be effective unless in writing and no such consent or waiver shall extend beyond the particular case and purpose involved. No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

Section 6.2 <u>Notices</u>. All notices, demands, requests, consents, approvals or other communications (any of the foregoing, a "**Notice**") required, permitted or desired to be given hereunder shall be in writing and shall be sent by telefax (with answer back acknowledged) or by registered or certified mail, postage prepaid, return receipt requested, or delivered by hand or by reputable overnight courier, addressed to the party to be so notified at its address hereinafter set forth, or to such other address as such party may hereafter specify in accordance with the provisions of this <u>Section 6.2</u>. Any Notice shall be deemed to have been received: (a) three (3) days after the date such Notice is mailed, (b) on the date of sending by telefax if sent during business hours on a Business Day (otherwise on the next Business Day), (c) on the date of delivery by hand if delivered during business hours on a Business Day (otherwise on the next Business Day), and (d) on the next Business Day if sent by an overnight commercial courier, in each case addressed to the parties as follows:

| | |
|---|---|
| If to Lender: | c/o Feenix Venture Partners, LLC<br>1202 Broadway, 7th Floor<br>New York, NY 10001<br>Attn: Keith Lee<br>Telephone: 646.902.6645<br>E-mail:<u>klee@feenixpartners.com</u> |
| with a copy to: | Kutak Rock LLP<br>The Omaha Building<br>1650 Farnam Street<br>Omaha, NE 68102<br>Attention: Joel L. Wiegert<br>Email: joel.wiegert@kutakrock.com |
| If to Guarantor: | Scott Zankl<br>1001 Clint Moore Road, Unit B<br>Boca Raton, FL 33487 |
| with a copy to: | Kristen Zankl<br>1001 Clint Moore Road, Unit B<br>Boca Raton, FL 33487 |

Any party may change the address to which any such Notice is to be delivered by furnishing ten (10) days' written notice of such change to the other parties in accordance with the provisions of this <u>Section 6.2</u>.

8

4874-0469-8626.4

Notices shall be deemed to have been given on the date set forth above, even if there is an inability to actually deliver any Notice because of a changed address of which no Notice was given or there is a rejection or refusal to accept any Notice offered for delivery.  Notice for any party may be given by its respective counsel.

Section 6.3    Invalid Provisions.  If any provision of this Guaranty is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Guaranty, such provision shall be fully severable and this Guaranty shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Guaranty, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty, unless such continued effectiveness of this Guaranty, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

Section 6.4    Amendments.  This Guaranty may be amended only by an instrument in writing executed by Administrative Agent and each of the other party(ies) against whom such amendment is sought to be enforced.

Section 6.5    Parties Bound; Assignment.  This Guaranty shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, permitted assigns, heirs and legal representatives.  Administrative Agent and Lenders shall have the right to assign or transfer its rights under this Guaranty in connection with any assignment of the Loan and the Loan Documents.  Any assignee or transferee of Lenders shall be entitled to all the benefits afforded to Lenders under this Guaranty.  No Guarantor shall have the right to assign or transfer its rights or obligations under this Guaranty without the prior written consent of Administrative Agent, and any attempted assignment without such consent shall be null and void.

Section 6.6    Headings.  Section headings are for convenience of reference only and shall in no way affect the interpretation of this Guaranty.

Section 6.7    Recitals.  The recitals and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered *prima facie* evidence of the facts and documents referred to therein.

Section 6.8    Counterparts.  To facilitate execution, this Guaranty may be executed in as many counterparts as may be convenient or required.  It shall not be necessary that the signature of, or on behalf of, each party, or that the signature of all persons required to bind any party, appear on each counterpart.  All counterparts shall collectively constitute a single instrument.  It shall not be necessary in making proof of this Guaranty to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto.  Any signature page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature pages.

Section 6.9    Rights and Remedies.  If any Guarantor becomes liable for any indebtedness owing by Borrower to Administrative Agent or any Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lenders hereunder shall be cumulative of any and all other rights that Administrative Agent and Lenders may ever have against such Guarantor.  The exercise by Administrative Agent or any Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

9

Section 6.10 Entirety. **THIS GUARANTY EMBODIES THE FINAL, ENTIRE AGREEMENT OF GUARANTORS, ADMINISTRATIVE AGENT AND LENDERS WITH RESPECT TO EACH SUCH GUARANTOR'S GUARANTY OF THE GUARANTEED OBLIGATIONS AND SUPERSEDES ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF. THIS GUARANTY IS INTENDED BY GUARANTORS, ADMINISTRATIVE AGENT AND LENDERS AS A FINAL AND COMPLETE EXPRESSION OF THE TERMS OF THE GUARANTY, AND NO COURSE OF DEALING BETWEEN GUARANTORS, ADMINISTRATIVE AGENT AND LENDERS, NO COURSE OF PERFORMANCE, NO TRADE PRACTICES AND NO EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OR OTHER EXTRINSIC EVIDENCE OF ANY NATURE SHALL BE USED TO CONTRADICT, VARY, SUPPLEMENT OR MODIFY ANY TERM OF THIS GUARANTY. THERE ARE NO ORAL AGREEMENTS BETWEEN GUARANTORS, ADMINISTRATIVE AGENT AND/OR ANY LENDER.**

Section 6.11 Governing Law. This Guaranty and the other Loan Documents and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Guaranty or any of the other Loan Documents and the transactions contemplated hereby shall be governed by the laws of the State of New York.

Section 6.12 Submission to Jurisdiction. Each Guarantor hereby irrevocably and unconditionally (i) agrees that any legal action, suit or proceeding arising out of or relating to this Guaranty and the other Loan Documents may be brought in the courts of the State of New York or of the United States of America for the Southern District of New York and (ii) submits to the exclusive jurisdiction of any such court in any such action, suit or proceeding. Final judgment against Guarantor in any action, suit or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment.

Section 6.13 Venue. Each Guarantor irrevocably and unconditionally waives, to the fullest extent permitted by Applicable Law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Guaranty and the other Loan Documents in any court referred to in Section 6.12 and the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

Section 6.14 WAIVER OF JURY TRIAL. EACH GUARANTOR HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

Section 6.15 Cooperation. Each Guarantor acknowledges that Administrative Agent and/or any Lender and its successors and assigns may (i) sell this Guaranty, the Loan Agreements, the Notes and the other Loan Documents to one or more investors as a whole loan or in part, (ii) participate the Loan secured by this Guaranty to one or more investors, (iii) deposit this Guaranty, the Loan Agreements, the Note and the other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets, or (iv) otherwise sell the Loan or one or more interests therein to investors (the transactions referred to in clauses (i) through (iv) are hereinafter each referred to as "Secondary Market Transaction"). Each Guarantor shall cooperate with Administrative Agent and the Lenders in effecting any such Secondary Market Transaction and shall cooperate to implement all requirements imposed by any of the rating agencies involved in any Secondary Market Transaction. Each Guarantor shall provide such information and documents relating to such Guarantor and Borrower, as

10

applicable, as Administrative Agent or the Lenders may reasonably request in connection with such Secondary Market Transaction.  In addition, each Guarantor shall make available to Administrative Agent all information concerning its business and operations that Administrative Agent may reasonably request. Administrative Agent shall be permitted to share all such information with the investment banking firms, Rating agencies, accounting firms, law firms and other third-party advisory firms involved with the Loan and the Loan Documents or the applicable Secondary Market Transaction.  It is understood that the information provided by any Guarantor to Administrative Agent, including any and all financial statements provided to Lenders pursuant hereto, may ultimately be incorporated into the offering documents for the Secondary Market Transaction and thus various investors and potential investors may also see some or all of the information.  Administrative Agent, Lenders and all of the aforesaid third-party advisors and professional firms shall be entitled to rely on the information supplied by, or on behalf of, any such Guarantor in the form as provided by such Guarantor.  Administrative Agent and Lenders may publicize the existence of the Loan in connection with its marketing for a Secondary Market Transaction or otherwise as part of its business development.

Section 6.16   Reinstatement in Certain Circumstances.  If at any time any payment of the principal of or interest under the Loan or any other amount payable by Borrower under the Loan Documents is rescinded or must be otherwise restored or returned upon the insolvency, bankruptcy or reorganization of the Borrower or otherwise, each Guarantor's obligations hereunder with respect to such payment shall be reinstated as though such payment had been due but not made at such time.

Section 6.17   Gender; Number; General Definitions.  Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, (a) words used in this Guaranty may be used interchangeably in the singular or plural form, (b) any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, (c) the word "Borrower" shall mean "each Borrower from time to time under the Loan Agreement", (d) the word "Lender" shall mean "Lenders and any subsequent holder of a Note or otherwise party to the Loan Agreement", (e) the word "Guarantor" shall mean each Guarantor and any subsequent Guarantor from time to time party hereto, (f) the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Loan Agreement", including, without limitation, and additional notes issues under the Loan Agreement, (g) the word "Property" shall include any portion of the Property and any interest therein, and (g) the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels, incurred or paid by Administrative Agent or Lenders in protecting its interest in the Collateral, and/or in enforcing its rights hereunder.

**[NO FURTHER TEXT ON THIS PAGE]**

11

4874-0469-8626.4

IN WITNESS WHEREOF, each Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTORS:

_____
**SCOTT ZANKL**

_____
**KRISTEN ZANKL**

SIGNATURE PAGE TO GUARANTY AGREEMENT

DocuSign Envelope ID: 16F9E4D0-86C3-4F01-84FB-6B78F7F45F05

**ACKNOWLEDGED, ACCEPTED AND AGREED TO BY**:

FVP SERVICING, LLC,
as Administrative Agent

By: _____
Name:   Keith Lee
Title:   Manager

SIGNATURE PAGE TO GUARANTY AGREEMENT

# EXHIBIT F

**Exhibit F**

EXECUTION COPY

## SECURITY AGREEMENT

**THIS SECURITY AGREEMENT** is made and effective as of January 26, 2022, by and among **KARMA OF PALM BEACH, INC.**, a Florida corporation ("Palm Beach"), and **KARMA OF BROWARD, INC.**, a Florida corporation ("Broward"; Palm Beach, Broward and each other direct or indirect Subsidiary of Borrowers added as a "Grantor" hereunder, each, a "Grantor", and collectively, the "Grantors"), in favor of **FVP SERVICING, LLC**, a Delaware limited liability company, as administrative agent (including any successor, participant, assignee or transferee thereof, "Administrative Agent") for itself and the Lenders (as defined in the Loan Agreement referred to below).

R E C I T A L S

WHEREAS, pursuant to that certain Loan Agreement (as amended, restated, supplemented, extended or otherwise modified from time to time, the "Loan Agreement") dated as of the date hereof by and among Palm Beach and Broward, as borrowers (each, a "Borrower" and, together, "Borrowers"), the other Grantors from time to time party thereto, Administrative Agent and the Lenders from time to time party thereto, each Grantor is required to have executed and delivered this Security Agreement encumbering substantially all of each Grantor's tangible and intangible personal property assets in favor of Administrative Agent for the ratable benefit of itself and the Lenders; and

WHEREAS, each Grantor has determined that it is in its best interest to execute this Security Agreement.

NOW, THEREFORE, for good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged) and intending to be legally bound hereby, each Grantor and Administrative Agent hereby agree as follows:

ARTICLE 1

SECURITY INTEREST, COLLATERAL ASSIGNMENT AND PLEDGE

1.1     Grant of Security.

To secure the prompt payment and performance in full when due of the Secured Obligations, each Grantor (as of the effective date of becoming a signatory hereto) hereby grants to Administrative Agent, for the ratable benefit of itself and the Lenders, a continuing security interest in such Grantor's right, title and interest in and to all of the following (collectively, the "Collateral"): (a) all Accounts; (b) all cash and currency; (c) all Chattel Paper; (d) those certain Commercial Tort Claims set forth on Schedule 2.10 hereto; (e) all Copyrights; (f) all Copyright Licenses; (g) all Deposit Accounts; (h) all Documents; (i) all Domain Names; (j) all Equipment; (k) all Fixtures; (l) all General Intangibles; (m) all Instruments; (n) all Inventory; (o) all Investment Property; (p) all Letter-of-Credit Rights; (q) all Other Intellectual Property; (r) all Patents; (s) all Patent Licenses; (t) all Pledged Equity and dividends and distributions thereon; (u) all Software; (v) all Supporting Obligations; (w) all Trademarks; (x) all Trademark Licenses; (y) all Goods and other personal property of any kind; and (z) all Accessions and all Proceeds of any and all of the foregoing, in each instance (whether or not expressly specified above), wherever located, and whether now existing, owned, leased or licensed or hereafter acquired, leased, licensed, arising, developed, generated, adopted or created for or by any Grantor, and howsoever any Grantor's interest therein may arise or appear (whether by ownership, security interest, claim or otherwise).

1.2     Security for Secured Obligations.  This security interest created hereby in the Collateral secures the payment and performance in full when due of (a) all Obligations and (b) all costs and expenses

4870-1882-2658.5

incurred by Administrative Agent or any Lender in enforcing and collecting the Obligations (collectively, the "Secured Obligations").

1.3     Continuing Security Interest; Assignment; Termination.  This Security Agreement creates a continuing security interest in the Collateral and will remain in full force and effect until terminated in accordance with the Loan Agreement.  This Security Agreement is binding upon each Grantor and its successors, transferees and assignees, and (together with the rights and remedies of Administrative Agent hereunder) inures to the benefit of Administrative Agent and its permitted successors, transferees, participants and assignees.  Upon any such termination, (a) all security interests arising under this Security Agreement automatically shall be released, discharged and terminated (without representation, warranty, recourse or liability of any kind by Administrative Agent) and (b) Administrative Agent (at Grantors' request and sole expense) (i) will execute and deliver such UCC termination statements and other documentation and instruments (all in form and substance reasonably acceptable to Administrative Agent) as may be reasonably requested and provided to Administrative Agent to effect such releases and terminations, and (ii) will deliver to a Grantor or to another Person designated by a Grantor or, if required by applicable law, to another Person that Administrative Agent reasonably believes may be entitled thereto (without any representation, warranty or recourse of any kind whatsoever) all stock certificates, and instruments representing or evidencing Collateral being physically held by Administrative Agent hereunder.

1.4     Security Interest Absolute.  All rights of Administrative Agent and the Lenders and the security interests granted to Administrative Agent hereunder, and all obligations of each Grantor hereunder, are absolute and unconditional, irrespective of the occurrence of any one or more of the following:

(a)     Any lack of validity or enforceability of any Loan Document; or

(b)     The failure of Administrative Agent or any Lender or any holder of any Note:

(i)     To assert any claim or demand or to enforce any right or remedy under the provisions of any Loan Document or otherwise, or

(ii)     To exercise any right or remedy against any other Grantor of, or any collateral securing, any obligations of any Borrower or any other Grantor owing to any Lender; or any change in the time, manner or place of payment of, or in any other term of, any Secured Obligation; or

(c)     Any other extension, increase, refinancing, restructuring, compromise or renewal of any Secured Obligation; or

(d)     Any reduction, limitation, impairment or termination of any Secured Obligation for any reason, including any waiver, release, surrender, alteration or compromise; or

(e)     Any amendment to, rescission, waiver, or other modification of, or any consent to departure from, the terms of any Loan Document; or

(f)     Any addition, exchange, release, surrender or nonperfection of any collateral (including the Collateral), or any amendment to or waiver or release of or addition to or consent to departure from any guaranty, for any Secured Obligation; or

2

4870-1882-2658.5

(g)    Any other circumstances which might otherwise constitute a defense available to, or a legal or equitable discharge of, any Grantor or its obligations hereunder, including, without limitation, any and all suretyship defenses.

Each Grantor hereby waives any right to or any claim of any defense or setoff, counterclaim, recoupment or termination whatsoever by reason of any invalidity, illegality, nongenuineness, irregularity, compromise, unenforceability of, or any other event or occurrence affecting, any Secured Obligation.

1.5    Collateral Assignment of Contracts.

(a)    Grant of Security Interest.  Subject to Section 1.1, without limiting the generality thereof, each Grantor grants a security interest in and collaterally assigns to Administrative Agent all of such Grantor's right, title and interest in and to all of such Grantor's contracts, licenses, leases and other agreements and all rights, interests, powers, privileges and other benefits thereunder (including the rights to receive all proceeds and payments under each such contract, license, lease and other agreement.  This collateral assignment of each contract, license, lease and other agreement constitutes a fully perfected security interest and collateral assignment; provided, however, that so long as no Event of Default has occurred and is continuing, each Grantor may exercise all rights and powers under and may receive all payments and enjoy all other benefits of each such contract, license, lease and other agreement, subject to the other terms and provisions of this Security Agreement and the other Loan Documents.

(b)    Administrative Agent's Right to Cure.  Administrative Agent shall have the right (but not the obligation) to cure or remedy any breach or default on the part of any Grantor under any contract, license, lease or other agreement included in the Collateral.  The exercise by Administrative Agent of any of its rights hereunder will not release any Grantor from any of its duties or obligations under any such contracts, licenses, leases or other agreements included in the Collateral.  Neither Administrative Agent nor any Lender has any obligation or liability under any such contracts, licenses, leases or other agreements included in the Collateral by reason of this Security Agreement, nor is Administrative Agent or any Lender obligated to perform any of the obligations or duties of any Grantor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

1.6    Collateral Interest.  Notwithstanding anything to the contrary herein, Administrative Agent's interest in the Collateral is as a security interest and not as an absolute assignment.

ARTICLE 2

REPRESENTATIONS AND WARRANTIES

Each Grantor hereby represents and warrants to Administrative Agent, as of the Closing Date and as of the Settlement Date for each Advance, as set forth in this Article 2.

2.1    Location of Collateral.  Schedule 2.1 identifies (a) all of the locations at which the Collateral is located (other than (i) Inventory or Equipment in transit to any location of a Grantor or (ii) in the possession of employees of a Grantor and used on a remote basis in the ordinary course of business) and (b) the location of the chief executive office of each Grantor.

2.2    Ownership.  Grantors own or have the right to possess and use the Collateral and full corporate, partnership or limited liability company authority, as applicable, to grant a security interest in the Collateral.  There exists no "adverse claim" within the meaning of Section 8-102 of the UCC with respect to the Pledged Equity of any Grantor.

3

4870-1882-2658.5

2.3     Government Contracts.  Except as identified on Schedule 2.3, no Grantor is a party to any federal, state or local government contract (either domestic or foreign).

2.4     Negotiable Documents, Instruments, Certificated Securities and Chattel Paper. Contemporaneously with the execution hereof, each Grantor has delivered to Administrative Agent possession of all originals of all certificated Pledged Equity, Instruments, Documents or Tangible Chattel Paper (other than checks received in the ordinary course of business) owned or held by such Grantor on the date hereof (duly endorsed in blank, if requested by Administrative Agent).

2.5     Intellectual Property Collateral.   With respect to each item of Intellectual Property Collateral:

(a)     Schedule 2.5(a) sets forth a complete and accurate list of all (i) applications and registrations for Intellectual Property Collateral owned by any Grantor, (ii), all Copyright Licenses (including customized applications and systems integration software licenses, but excluding "off-the-shelf" mass market, non-customized software licenses), Patent Licenses, and Trademark Licenses and (iii) all Software (including customized applications and systems integration software licenses, but excluding "off-the-shelf" mass market, non-customized software licenses).

(b)     To each Grantor's knowledge, the Intellectual Property Collateral is subsisting, valid and enforceable; and the Intellectual Property Collateral owned by such Grantor has not been adjudged invalid or unenforceable, in whole or in part.

(c)     To each Grantor's knowledge, no claim has been made that the use of any Intellectual Property Collateral does or may violate the rights of any Person.

(d)     Each Grantor has performed all acts and has paid all required fees and taxes to maintain the Intellectual Property Collateral owned by any grantor in full force and effect in the jurisdictions in which it engages in commerce and it deems it reasonably necessary, as applicable, except where such fees and taxes are being contested in good faith with diligent prosecution.

(e)     Each Grantor owns, or is entitled to use by license or otherwise, all Intellectual Property Collateral necessary for or used in the conduct of its business.  To the extent any such Intellectual Property Collateral was developed, authored, conceived or created, in whole or in part, for or on behalf of any Grantor by any Person (except in the case of a Copyright, by an employee of any Grantor acting within the scope of such employee's employment), then such Grantor has entered into a written agreement with such Person in which such Person has assigned all right, title and interest in and to such Intellectual Property Collateral to such Grantor.

(f)     To each Grantor's knowledge, neither the operation of its business nor any slogan or other advertising device, product, process, method, substance, part or other material now employed, or now contemplated to be employed, by any Grantor violates, infringes or misappropriates any rights held by any other Person.  To each Grantor's knowledge, no claim or litigation regarding any of the foregoing is pending or threatened.

2.6     Pledged Equity.  With respect to any Pledged Equity constituting Collateral, which is set forth on Schedule 2.6, all of such Pledged Equity is validly issued, fully paid, and non-assessable and, except as set forth on Schedule 2.6, constitutes all of the issued and outstanding shares or interests (and other rights) of equity ownership of each Subsidiary owned by any Grantor.

4

4870-1882-2658.5

2.7     Valid and Perfected Security Interest.  This Security Agreement creates a valid security interest in the Collateral and proceeds thereof securing the payment and performance in full of the Secured Obligations.  Upon (a) the filing of UCC financing statements (i) naming each Grantor as "debtor", (ii) naming Administrative Agent as "secured party" and (iii) describing the Collateral, in the state of formation of such Grantor, (b) in the case of the Pledged Equity consisting of certificated Securities or evidenced by Instruments, in addition to filing of such UCC financing statements, delivery of the certificates representing such certificated Securities and delivery of such Instruments to Administrative Agent (and in the case of Pledged Equity issued by a foreign issuer, any actions required under foreign law to perfect a security interest in such Pledged Equity), in each case duly endorsed or accompanied by duly executed instruments of assignment or transfer in blank, (c) in the case of Collateral consisting of the Intellectual Property Collateral, in addition to the filing of such UCC financing statements, the recordation of a grant of security interest with the PTO, the United States Copyright Office or any other Official Body, as applicable, (d) in the case of Equipment that is covered by a certificate of title, the filing with the registrar of motor vehicles or other appropriate authority in the applicable jurisdiction of an application requesting the notation of the security interest created hereunder on such certificate of title, and (e) in the case of Collateral consisting of a Deposit Account or Securities Account or held in a Securities Account, the execution and delivery by the applicable Grantor, the applicable Bank or Securities Intermediary and Administrative Agent of an agreement granting control to Administrative Agent over such Collateral, the security interests in the Collateral granted to Administrative Agent for the ratable benefit of Lenders will constitute perfected security interests therein prior to all other Liens (except for Permitted Liens).

2.8     Authorization and Approval.  No authorization, approval or other action by (and no notice to or filing with) any Official Body or other Person is required either (a) for the grant by any Grantor of the security interest granted hereby, or (b) for the execution, delivery and performance of this Security Agreement by any Grantor, or (c) for the perfection by Administrative Agent of its rights and interests hereunder (other than as set forth in Section 2.7 hereof), or (d) for the exercise by Administrative Agent of its rights and remedies hereunder.

2.9     Type of Collateral.  None of the Collateral consists of, or is the Proceeds of, As-Extracted Collateral, Consumer Goods, Farm Products, Manufactured Homes or standing timber.

2.10     Commercial Tort Claims.  As of the date hereof, no Grantor has any Commercial Tort Claims other than as set forth on Schedule 2.10 hereto.

2.11     Partnership and Limited Liability Company Interests.  Except as set forth on Schedule 2.11 hereto, none of the Collateral (i) is dealt in or traded on a securities exchange or in a securities market, (ii) by its terms expressly provides that it is a Security governed by Article 8 of the UCC, (iii) is an investment company security, (iv) is held in a Securities Account or (v) constitutes a Security or a Financial Asset.

2.12     Title.  The Collateral is free and clear of all Liens except (a) Liens for taxes not yet due or which are being contested in good faith by appropriate proceedings; (b) non-consensual Liens arising by operation of law, arising in the ordinary course of business, and for amounts which are not overdue for a period of more than thirty 30 days or that are being contested in good faith by appropriate proceedings; and (c) those Liens listed on Schedule 2.12 (collectively, the "Permitted Liens").

2.13     Litigation. Except for the litigation disclosed on Schedule 2.13, no action, suit, litigation, investigation or proceeding of, or before, any arbitrator or Governmental Authority is pending or, to the knowledge of any Grantor, threatened by or against any Grantor.   Each Grantor represents and warrants that none of the actions disclosed on Schedule 2.13 are reasonably likely to result in a material adverse

5

4870-1882-2658.5

effect on its financial condition or the ability of such Grantor to perform its obligations under this Agreement or any of the other Loan Documents.

ARTICLE 3

COVENANTS

Each Grantor covenants and agrees that, so long as this Security Agreement remains effective, each Grantor will comply with the covenants set forth in this Article 3, unless Administrative Agent otherwise consents in writing.

3.1     Pledged Equity.

(a)     Powers and Appointments.  Each Grantor will promptly deliver to Administrative Agent all such certificates, powers, appointments, instruments and similar documents (satisfactory in form and substance to Administrative Agent) constituting Pledged Equity.  Prior to delivery to Administrative Agent, all such certificates constituting Pledged Equity shall be held in trust by such Grantor for the benefit of Administrative Agent pursuant hereto. From time to time at Administrative Agent's request after the occurrence and during the continuance of any Event of Default, each Grantor will promptly transfer any Pledged Equity or other shares of capital stock or ownership interests constituting Collateral into the name of any nominee designated by Administrative Agent.

(b)     Pledged Equity. Each Grantor will warrant and defend the right and title herein granted to Administrative Agent in and to the Pledged Equity (and all right, title, and interest represented by the Pledged Equity) against the claims and demands of all Persons.

(c)     Voting Rights.

(i)     So long as no Event of Default shall have occurred and be continuing, (A) each Grantor shall be entitled to exercise any and all voting and other consensual rights pertaining to the Pledged Equity or any part thereof for any purpose not prohibited by the terms of this Security Agreement or the Loan Agreement; provided, no Grantor shall exercise or refrain from exercising any such right if Administrative Agent shall have notified such Grantor that, in Administrative Agent's judgment, such action would infringe on the interests of the Administrative Agent in the Collateral in a material manner and such Grantor shall promptly notify Administrative Agent in writing of material infringements detected, and (B) each Grantor shall be entitled to receive and retain any and all dividends, other distributions, principal and interest paid in respect of the Pledged Equity.

(ii)     Upon the occurrence and during the continuation of an Event of Default, (A) upon written notice from Administrative Agent to any Grantor, all rights of such Grantor to exercise the voting and other consensual rights which it would otherwise be entitled to exercise pursuant hereto shall cease, and all such rights shall thereupon become vested in Administrative Agent who shall thereupon have the sole right to exercise such voting and other consensual rights; (B) all rights of such Grantor to receive the dividends and other distributions which it would otherwise be authorized to receive and retain pursuant hereto shall cease, and all such rights shall thereupon become vested in Administrative Agent who shall thereupon have the sole right to receive and hold as Collateral such dividends and other distributions; and (C) all dividends and other distributions which are received by such Grantor contrary to the provisions of clause (B) above shall be received in trust for the benefit of Administrative Agent, shall be segregated from other funds of such Grantor and shall forthwith be paid over to Administrative Agent as Collateral in the same form as

6

4870-1882-2658.5

so received (with any necessary endorsements as determined by Administrative Agent).  Upon the cure or waiver by the Administrative Agent of any such Event of Default, the provisions of clause (c)(i) above shall apply.

(iii)    In order to permit Administrative Agent to exercise the voting and other consensual rights which it may be entitled to exercise pursuant hereto and to receive all dividends and other distributions which it may be entitled to receive hereunder, (A) each Grantor shall promptly execute and deliver (or cause to be executed and delivered) to Administrative Agent all such proxies, dividend payment orders and other instruments as Administrative Agent may from time to time reasonably request, and (B) without limiting the effect of clause (A) above, each Grantor hereby grants to Administrative Agent an irrevocable proxy to vote the Pledged Equity and to exercise all other rights, powers, privileges and remedies to which a holder of the Pledged Equity would be entitled (including giving or withholding written consents of holders of equity interests, calling special meetings of holders of equity interests and voting at such meetings), which proxy shall be effective automatically and without the necessity of any action (including any transfer of any Pledged Equity on the record books of the issuer thereof) by any other Person (including the issuer of the Pledged Equity or any officer or agent thereof), upon the occurrence of an Event of Default and which proxy shall only terminate upon the payment in full of the Secured Obligations, the cure of such Event of Default or waiver thereof as evidenced by a writing executed by Administrative Agent.

3.2    As to Intellectual Property Collateral.  With respect to each item of Intellectual Property Collateral:

(a)    No Grantor (i) will fail to use a commercially appropriate standard of quality (which may be consistent with such Grantor's past practices) in the manufacture, sale and delivery of products and services sold or delivered under or in connection with Trademarks owned by or licensed to such Grantor, or (ii) will fail to employ with all Trademarks (whether or not registered with any Official Body) an appropriate notice of such Trademark, or (iii) will fail to employ with all Copyrights an appropriate notice of such Copyright, or (iv) will fail to employ with all Patents registered with the PTO, or with an Official Body in a foreign country, an appropriate notice of such registration.

(b)    No Grantor will do or permit any act (or omit to do any act) whereby any Intellectual Property Collateral owned by Grantor may lapse or become abandoned, forfeited, invalid, dedicated to the public or unenforceable (except upon expiration of the end of an unrenewable term of a registration thereof) without the prior written consent of Administrative Agent; provided that so long as no Default or Event of Default has occurred or is continuing, no Grantor shall be obligated to protect, defend or maintain any such Intellectual Property Collateral that such Grantor determines, in the good faith and reasonable exercise of its business judgment, is no longer material to such Grantor, to Grantors taken as a whole, or to the business or operations of such Grantor or Grantors taken as a whole (but provided further, that after the occurrence and during the continuance of a Default or Event of Default, Administrative Agent may require a Grantor to protect, defend or maintain such Intellectual Property Collateral and thereafter protect, defend or maintain such Intellectual Property Collateral in such jurisdictions as Administrative Agent deems necessary or desirable).

(c)    Each Grantor will promptly notify Administrative Agent if such Grantor believes (or has reason to believe) that (i) any application to register or registration relating to any Intellectual Property Collateral may become abandoned, dedicated to the public, placed in the public domain, invalid or unenforceable, or (ii) there has been or will be an adverse determination

7

or development (including the institution of, or any determination or development in, any proceeding in the PTO, the United States Copyright Office or any other Official Body) regarding such Grantor's ownership of any Intellectual Property Collateral, its right to register the same, or its right to use, keep, maintain and enforce the same.

(d)    If any Grantor files an application for the registration of any Intellectual Property Collateral with the PTO, the United States Copyright Office or any other Official Body, then such Grantor must notify Administrative Agent thereof within 90 calendar days thereafter (or 30 calendar days thereafter, for any Copyright), and upon request of Administrative Agent, must promptly execute and deliver any and all agreements, instruments, documents and papers that Administrative Agent may request to evidence Administrative Agent's security interest in such Intellectual Property Collateral.

(e)    Each Grantor will perform all acts and will pay all required fees and taxes (including in any proceeding before the PTO, the United States Copyright Office or any other Official Body) to maintain all Intellectual Property Collateral owned by such Grantor (including Domain Names registered by or on behalf of Grantor) in full force and effect in such jurisdictions as is necessary (in such Grantor's reasonable business judgment, unless otherwise provided in Section 3.2(b)) for the proper conduct of such Grantor's business and to pursue any application for registration filed with respect to such Intellectual Property Collateral, including the filing of applications for renewal, affidavits of use, affidavits of incontestability and opposition, and interference and cancellation proceedings.

(f)    Upon any Grantor's acquisition of any Intellectual Property Collateral, the acquisition of which must be recorded in order to perfect such Grantor's interest therein, then such Grantor will promptly record its interest therein.

(g)    Each Grantor (i) will protect, defend and maintain the validity and enforceability of all the Intellectual Property Collateral and (ii) will use commercially reasonable efforts to detect violations, infringements and misappropriations of such Intellectual Property Collateral and promptly notify Administrative Agent in writing of material violations, infringements and/or misappropriations detected.

(h)    Each Grantor, on a continuing basis, will apply to register such Grantor's Trademarks, pursue patent protection for such Grantor's inventions, and register the most recent versions of any of such Grantor's Copyrights and Other Intellectual Property to the extent that any such registration would be consistent with customary industry practice or such Grantor's historical business practices or the failure to register could reasonably be expected to be materially adverse to Grantor's business.

(i)    No Grantor will enter into any agreement that would impair or conflict with such Grantor's obligations hereunder with respect to the Intellectual Property Collateral, except as otherwise permitted hereby or under the Loan Agreement.

(j)    Each Grantor, on a continuing basis, will make, execute, acknowledge and deliver, and will file and record in the proper filing and recording places in the United States, any state thereof and any other country or any political subdivision thereof, all such instruments, collateral agreements and filings (including all appropriate financing and continuation statements) with the PTO, the United States Copyright Office or any other Official Body, as applicable, and will take all such action as Administrative Agent may reasonably deem to be necessary to perfect Administrative Agent's security interest in all Intellectual Property Collateral and otherwise to

8

carry out the intent and purpose of this Security Agreement, or for assuring and confirming to Administrative Agent the grant or perfection of a security interest in all Intellectual Property Collateral.

(k)     Each Grantor, on a continuing basis, will ensure that it has appropriate measures in place to ensure that all material that may constitute Intellectual Property Collateral created by or on behalf of such Grantor has been appropriately assigned by any developer to such Grantor.

3.3     <u>As to Customer and Material Business Records and Computer Software, and Trade Secrets</u>. Each Grantor will utilize standard industry precautions to safeguard the utility, value and confidentiality of all such records, materials and information covered by this Section.

3.4     <u>Issuance or Acquisition of Equity Interests</u>. No Grantor shall, without executing and delivering, or causing to be executed and delivered, to Administrative Agent such agreements, documents and instruments as Administrative Agent may reasonably require, issue or acquire any Pledged Equity consisting of an interest in a partnership or a limited liability company that (i) is dealt in or traded on a securities exchange or in a securities market, (ii) by its terms expressly provides that it is a Security governed by Article 8 of the UCC, (iii) is an investment company security, (iv) is held in a Securities Account or (v) constitutes a Security or a Financial Asset.

3.5     <u>Further Assurances</u>. Each Grantor (from time to time at its own expense) will promptly execute and deliver all further instruments and documents, and will take all further action, that may be necessary (or that Administrative Agent may reasonably request) in order to perfect any security interest, collateral assignment or pledge granted or purported to be granted hereby or to enable Administrative Agent to exercise and enforce its rights and remedies hereunder with respect to any Collateral. Without limiting the generality of the foregoing, each Grantor shall:

(a)     If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any Instrument or Tangible Chattel Paper, or if any Property constituting Collateral shall be stored or shipped subject to a Document, ensure that such Instrument, Tangible Chattel Paper or Document is either in the possession of such Grantor at all times or, if requested by Administrative Agent to perfect its security interest in such Collateral, is delivered to Administrative Agent duly endorsed in a manner satisfactory to Administrative Agent. Such Grantor shall ensure that any Collateral consisting of Tangible Chattel Paper is marked with a legend acceptable to Administrative Agent indicating Administrative Agent's security interest in such Tangible Chattel Paper.

(b)     Execute and deliver all agreements, assignments, instruments or other documents as reasonably requested by Administrative Agent for the purpose of obtaining and maintaining control with respect to any Collateral consisting of (i) Deposit Accounts, (ii) Investment Property, (iii) Letter-of-Credit Rights and (iv) Electronic Chattel Paper.

(c)     If any Collateral is at any time in the possession or control of a warehouseman, bailee or any agent or processor of such Grantor and Administrative Agent so requests (i) notify such Person in writing of Administrative Agent's security interest therein, (ii) instruct such Person to hold all such Collateral for Administrative Agent's account and subject to Administrative Agent's instructions and (iii) use reasonable best efforts to obtain a written acknowledgment from such Person that it is holding such Collateral for the benefit of Administrative Agent.

(d)     To the extent that any Grantor shall, now or at any time hereafter, hold or acquire a Commercial Tort Claim, such Grantor shall immediately notify Administrative Agent in a writing

9

4870-1882-2658.5

signed by such Grantor of the particulars thereof and grant to Administrative Agent, for the benefit of the Lenders and Administrative Agent, in such writing a security interest therein and in the proceeds thereof, all upon the terms of this Security Agreement, with such writing to be in form and substance reasonably satisfactory to Administrative Agent.

(e)     Will execute and file such financing or continuation statements, or amendments thereto, and such other instruments or notices as may be necessary (or as Administrative Agent may reasonably request) in order to perfect the security interests, collateral assignments, pledges and other rights granted or purported to be granted to Administrative Agent hereby.

(f)     Will furnish to Administrative Agent (from time to time at Administrative Agent's request) statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as Administrative Agent may reasonably request, all in reasonable detail.

(g)     Will notify Administrative Agent in writing immediately upon such Grantor becoming a party to any federal, state or local government contract (either domestic or foreign), and, upon the request of Administrative Agent, promptly take all actions required under the Federal Assignment of Claims Act or any similar state, local or foreign laws as Administrative Agent may reasonably request.

3.6     Joinder. Each Grantor added after the date hereof shall execute the joinder in the form attached hereto as Schedule 3.6, whereupon such party shall be deemed to be a party to, and shall be subject to all of the terms and conditions of, this Agreement as if it were a Grantor on the date of this Agreement.

3.7     Liens. Each grantor covenants and agrees not to create, assume or suffer to exist any Lien on any of its Property or assets, whether now owned or hereinafter acquired other than Permitted Liens.

3.8     Litigation. Each Grantor covenants and agrees to provide Administrative Agent written evidence of the payment in full for any judgment entered against such Grantor or settlement entered into by such Grantor that relates to the actions disclosed on Schedule 2.13, within the earlier of thirty (30) days of such judgment being entered or the period set forth in such settlement.

With respect to the foregoing and the grant of the security interest hereunder, each Grantor hereby authorizes Administrative Agent to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Collateral without the signature of such Grantor where permitted by law. A carbon, photographic or other reproduction of this Security Agreement or any financing statement covering the Collateral or any part thereof shall be sufficient as a financing statement where permitted by law.

ARTICLE 4

LENDER

4.1     Administrative Agent Appointed Attorney-in-Fact. Each Grantor hereby irrevocably appoints Administrative Agent as such Grantor's attorney-in-fact, with full authority in the name, place and stead of such Grantor or otherwise, from time to time in Administrative Agent's reasonable discretion, to take any action and to execute any instrument which Administrative Agent may deem reasonably necessary to accomplish the purposes of this Security Agreement. This authority includes the power, upon the occurrence of and during the continuance of an Event of Default:

4870-1882-2658.5

(a)    To ask, demand, collect, sue for, recover, compromise, restructure, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral including proceeding against any of the Collateral; and/or

(b)    To notify the parties obligated on any of the Collateral to make payment to Administrative Agent of any amount due or to become due in connection therewith; and/or

(c)    To receive, endorse, and collect any drafts, checks or other instruments, documents and chattel paper in connection with clause (a) of this Section 4.1; and/or

(d)    To file any claims or take any action or institute any proceedings which Administrative Agent may deem reasonably necessary for the collection of any of the Collateral or otherwise to enforce the rights of Administrative Agent, any Lender or any Grantor with respect to any of the Collateral; and/or

(e)    To execute (in the name, place and stead of any Grantor) endorsements, assignments, powers and other instruments of conveyance or transfer with respect to all or any of the Collateral; and/or

(f)    To exercise all rights with respect to any Pledged Collateral of such Grantor hereunder; and/or

(g)    To perform any and all of the affirmative obligations and covenants of such Grantor hereunder (with notice thereof to be provided to such Grantor by Administrative Agent within a reasonable time thereafter).

Each Grantor hereby acknowledges, consents and agrees that the power of attorney granted pursuant to this Section 4.1 is irrevocable and coupled with an interest, but that it will terminate upon the termination of this Security Agreement pursuant to Section 1.3.

4.2    Administrative Agent May Perform.  From time to time, Administrative Agent (at its option) may perform (or may cause the performance of) any act which any Grantor agrees hereunder to perform and which such Grantor fails to perform after being requested in writing so to perform (it being understood that no such request need be given during the continuance of an Event of Default), and Administrative Agent from time to time (at its option) may also take any other action (or may cause the performance of any action) which Administrative Agent reasonably deems necessary for the maintenance, preservation or protection of any of the Collateral or of its security interest therein or collateral assignments or pledges thereof.  The costs and expenses of Administrative Agent incurred in connection with any such performance will be payable by Grantors (jointly and severally) and shall be Secured Obligations.

4.3    Administrative Agent Has No Duty.  The rights and powers conferred upon Administrative Agent hereunder are solely to protect Administrative Agent's and each Lender's interest in the Collateral and do not impose any duty on Administrative Agent to exercise any such rights or powers.  Except for reasonable care of any Collateral in Administrative Agent's possession in accordance with Section 4.4 and the accounting for moneys actually received by it hereunder, Administrative Agent has no duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral.

4.4    Reasonable Care.  Administrative Agent is required to exercise reasonable care in the custody and preservation of any of the Collateral in its possession; provided, however, Administrative Agent will be deemed to have exercised such reasonable care in the custody and preservation of any of the

11

4870-1882-2658.5

Collateral if Administrative Agent takes such action for that purpose as any Grantor reasonably requests in writing at times other than after the occurrence or during the continuance of a Default. Notwithstanding the foregoing, any failure or refusal by Administrative Agent at any time to comply with any such request by any Grantor will not in itself be deemed a failure to exercise reasonable care.

## ARTICLE 5

## DEFAULTS AND REMEDIES

5.1     Certain Remedies.  If any Event of Default occurs and is continuing:

(a)     In addition to other rights and remedies provided for herein (including under Article 4) or otherwise available to Administrative Agent or any Lender (including under the other Loan Documents and/or applicable law), Administrative Agent may also exercise in respect of the Collateral all the rights and remedies of a secured party upon default under the UCC (whether or not the UCC applies to the affected Collateral).  Upon the occurrence of any Event of Default, Administrative Agent will have the immediate right to enforce and realize upon any and all collateral security granted under the Loan Documents (including the Collateral hereunder) in any manner or order that Administrative Agent deems expedient without regard to any equitable principles of marshalling or otherwise.  All rights and remedies available to Administrative Agent or any Lender are to be considered cumulative in nature.

(b)     Without notice, except as expressly specified herein or required by applicable law, Administrative Agent may also sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of Administrative Agent's offices or elsewhere, for cash, on credit or for future delivery, and upon such other terms as Administrative Agent may deem commercially reasonable.  To the extent notice of sale is required by law, each Grantor agrees that prior notice to a Grantor of at least ten (10) calendar days indicating the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification. Administrative Agent shall not be obligated to make any sale of Collateral regardless of notice of sale having been given.  Administrative Agent may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale (without further notice) may be made at the time and place to which it was so adjourned.

(c)     Administrative Agent may require Grantors to, and each Grantor hereby agrees (at its expense) that it will, forthwith assemble all or part of the Collateral as directed by Administrative Agent and make such Collateral available to Administrative Agent at a place designated by Administrative Agent that is reasonably convenient to both Administrative Agent and Grantors.

(d)     Unless Administrative Agent otherwise consents, each Grantor will remit to Administrative Agent all cash proceeds received in respect of any sale of, or collection from, or other realization upon all or any part of the Collateral.  All cash proceeds received by Administrative Agent from any Grantor or otherwise in respect of any sale of, collection from, or other realization upon all or any part of the Collateral (in the discretion of Administrative Agent) may be held by Administrative Agent as additional Collateral for the Secured Obligations, and/or then or at any time thereafter may be applied in whole or in part by Administrative Agent against all or any part of the Secured Obligations in an order consistent with the designated application of payments provided for in the Loan Agreement.  Any surplus of such cash or cash proceeds held by Administrative Agent and remaining after payment in full of all the Secured Obligations will be paid over to a Grantor or to whomsoever Administrative Agent reasonably believes may be lawfully entitled to receive such surplus.

12

(e)       To the extent any of the Collateral represents an interest in a partnership, a limited liability company or other unincorporated enterprise, in addition to any other rights and remedies available to Administrative Agent or any Lender under the Loan Documents or applicable law, Administrative Agent (at its option but with notice to the relevant Grantor) may also exercise all rights and privileges of the holder of such interest under the agreements governing such Collateral and the Organizational Documents for the related organization or may instruct such Grantor how to exercise such rights and privileges (with which instructions each Grantor hereby agrees to comply).  Each Grantor, in addition, covenants and agrees (at Administrative Agent's request) to amend (and to use commercially reasonable efforts to cause others to amend) any of the Organizational Documents for such organization in order to authorize Administrative Agent to so exercise any such rights and privileges associated with such Collateral (including voting rights and the rights to participate in management decisions).  The rights of Administrative Agent under this Section 5.1(e) may be transferred to and exercised by any subsequent acquiror or transferee of the Collateral pursuant to any sale of or foreclosure on such Collateral.  Each Grantor hereby agrees that the rights of Administrative Agent and each Lender (or any subsequent acquiror or transferee of the Collateral) under this Section 5.1(e) may be enforced by specific performance or otherwise.

5.2     Special Securities-Related Remedies—Compliance with Restrictions.   Each Grantor agrees that, in any sale of any of the Pledged Equity, Administrative Agent is authorized to comply with any limitation or restriction in connection with the type of such sale pursued as Administrative Agent may be advised by counsel is necessary in order to avoid any violation of applicable law (including compliance with such procedures as may restrict the number of prospective bidders and purchasers, require that such prospective bidders and purchasers have certain qualifications, and restrict such prospective bidders and purchasers to persons who will represent and agree that they are purchasing for their own account for investment and not with a view to the distribution or resale of such Collateral), or in order to obtain any required approval of the sale or of the purchaser by any Official Body.  Each Grantor further agrees that such compliance will not result in such sale being considered or deemed not to have been made in a commercially reasonable manner, nor will Administrative Agent or any Lender be liable or accountable to any Grantor for any discount allowed by reason of the fact that such Collateral is sold at foreclosure or otherwise in compliance with any such limitation or restriction or by reason of the fact that such Pledged Equity may represent a minority interest in any Grantor.

5.3     Special IP-Related Remedies (License of Intellectual Property Collateral).   Each Grantor hereby grants Administrative Agent a royalty-free, non-exclusive, worldwide, irrevocable license (the "Remedies License") under all present and future Intellectual Property Collateral of such Grantor to make, have made, use, sell, offer for sale, import, rent, lease, reproduce, display, distribute, perform, prepare derivative works (including the right to sub-license such rights to another Person), in any and all media now known or hereafter developed and in all channels of distribution, without restriction, from time to time after the occurrence and during the continuance of any Event of Default and delivery of notice thereof by Administrative Agent (unless such Event of Default is under Section 7.1(e) of the Loan Agreement, in which case no such notification shall be required) in connection with the maintenance, preservation, preparation, sale, disposition, collection, foreclosure, or other realization of, upon, or with respect to the Collateral or payment of the Secured Obligations in accordance with the Loan Documents, with the use of registered Trademarks subject to a commercially appropriate standard of quality.  The Remedies License shall remain in full force and effect until this Security Agreement is terminated in accordance with Section 1.3 (but any sub-license or transfer of the Remedies License prior to the termination of the Remedies License shall survive such termination of the Remedies License unless otherwise provided on such sub-license or transfer document).  The rights of Administrative Agent under the Remedies License are assignable by Administrative Agent (without the consent of such Grantor) in connection with (a) any sale or other disposition of Collateral in accordance with the Loan Documents to the extent necessary to permit the purchaser of such Collateral to have continuing and royalty free, worldwide rights with respect to the

13

items of Collateral sold to such purchaser or (b) any assignment or other transfer by Administrative Agent of all or any part of its rights under and in accordance with the Loan Documents.  Upon or at any time after the occurrence of any Event of Default, each Grantor will deliver (or cause to be delivered) to Administrative Agent (at Administrative Agent's request but at such Grantor's expense) a copy of all such Intellectual Property Collateral and all related other Collateral in a form requested by Administrative Agent. Administrative Agent's rights, as a licensee under this Section 5.3, constitute a separately enforceable contract from the balance of this Security Agreement.

5.4     Retention of Collateral.  In addition to the rights and remedies hereunder, Administrative Agent may, in compliance with Sections 9-620 and 9-621 of the UCC or otherwise complying with the requirements of applicable law of the relevant jurisdiction, accept or retain the Collateral in satisfaction of the Secured Obligations.  Unless and until Administrative Agent shall have provided such notices, however, Administrative Agent shall not be deemed to have retained any Collateral in satisfaction of any Secured Obligations for any reason.

5.5     Deficiency.  In the event that the proceeds of any sale, collection or realization are insufficient to pay all amounts to which Administrative Agent or the Lenders are legally entitled, the Grantors shall be jointly and severally liable for the deficiency, together with interest thereon as provided in the Loan Agreement, together with the costs of collection and the fees, charges and disbursements of counsel.  Any surplus remaining after the full payment and satisfaction of the Secured Obligations shall be returned to the Grantors or to whomsoever a court of competent jurisdiction shall determine to be entitled thereto.

5.6     Administrative Agent's Rights Upon Occurrence of a Liquidation Event.

(a)     Right to Certain Payments and Distributions.  Upon the occurrence of any Liquidation Event, any payment or distribution of any kind or character (whether in cash, securities or other property) that but for this Security Agreement would be payable or deliverable to a Grantor must instead be paid or delivered directly to Administrative Agent for application to the Secured Obligations.

(b)     Non-Cash Payments and Distributions.  Notwithstanding the provisions of clause (a) of this Section 5.6, if Administrative Agent receives delivery of any such payment or distribution in connection with a Liquidation Event in a form other than cash, then Administrative Agent may hold such Property as additional Collateral for the Secured Obligations, and no Grantor of the Secured Obligations will be entitled to a credit with respect to the Secured Obligations, nor will the Secured Obligations otherwise be adjusted in any respect, until such time as Administrative Agent (in its sole and absolute discretion) has sold, discounted or otherwise liquidated such distribution and then (subject to the terms of Section 7.6), such credit or adjustment to the Secured Obligations will be limited only to the net cash proceeds realized therefrom after the payment of all costs and expenses associated with such sale or liquidation.

(c)     Collection of Payments and Distributions.  In addition to any rights otherwise permitted under the Loan Documents or applicable law, each Grantor hereby irrevocably authorizes and empowers Administrative Agent, upon the occurrence of any Liquidation Event, to file and/or vote claims and take such other proceedings, in each instance in Administrative Agent's own name or in the name of a Grantor, or otherwise, all as Administrative Agent may reasonably deem necessary for the enforcement of this Security Agreement.  Each Grantor further agrees duly and promptly to (i) take such action as may be requested by Administrative Agent to assist in the collection and/or compromise of any amounts owed to any Grantor in respect of a Liquidation Event, (ii) file appropriate proofs of claim in respect of such amounts, (iii) execute and deliver to

14

Administrative Agent on demand such powers of attorney, proofs of claim, assignments of claim or other instruments as may be requested by Administrative Agent to enable Administrative Agent to enforce any and all claims upon or with respect to such amounts, and (iv) collect, compromise and receive any and all payments or distributions which may be payable or deliverable at any time upon or with respect to such amounts.

5.7     Delivery of Payments and Distributions.  If any Grantor receives any payment, distribution or any other funds or property in contravention of the provisions hereof or any other Loan Document, then such Grantor must immediately deliver such payment, distribution or other funds or property (or proceeds thereof) to Administrative Agent in precisely the form received (except for the endorsement or assignment without recourse of such Grantor where necessary) for application to the Secured Obligations (or, at Administrative Agent's option, held as additional Collateral therefor), whether or not then due or mature in accordance with the provisions of the Loan Agreement.  Until such funds or property are delivered to Administrative Agent, such Grantor must hold such payment, distribution or other funds or property (or proceeds thereof) (a) in trust for the benefit of and as property of Administrative Agent and (b) separate from (i.e., not commingled with) its other assets.  If a Grantor fails or refuses to make any such endorsement or assignment, then Administrative Agent (or any of its officers or employees) is hereby irrevocably authorized by such Grantor to make the endorsement and/or assignment.

5.8     Cooperation and Assistance.  Each Grantor agrees (during the existence of a Default or an Event of Default) to take any actions that Administrative Agent may reasonably request in order to enable Administrative Agent and each Lender to receive the full rights and benefits granted to Administrative Agent and each Lender by the Loan Documents.  Each Grantor further agrees that each Grantor will assist and cooperate with Administrative Agent (and will use its best efforts to cause others to assist and cooperate with Administrative Agent) to ensure that each Grantor continues (a) to operate in the normal course of business, (b) to fulfill all of its legal, regulatory and contractual obligations and (c) to otherwise be properly and professionally managed.  At Administrative Agent's request and the expense of Grantors (jointly and severally), at any time during the existence of an Event of Default, such assistance and cooperation may include the employment of (and, to the maximum extent not prohibited by the rules, regulations and orders of any Official Body with jurisdiction, the delegation of appropriate management authority to) one or more qualified and independent consultants and professional managers acceptable to Administrative Agent to assist in the interim operations of Grantors; all of which each Grantor hereby agrees not to challenge.

5.9     Standards for Exercising Remedies. To the extent that applicable law imposes duties on the Administrative Agent and/or Lender to exercise remedies in a commercially reasonable manner, each Grantor acknowledges and agrees that it is not commercially unreasonable for the Administrative Agent and/or Lender (a) to fail to incur expenses deemed significant by the Administrative Agent and/or Lender to prepare the Collateral for disposition or otherwise to complete raw material or work in process into finished goods or other finished products for disposition, (b) to fail to obtain third party consents for access to Collateral to be disposed of, or to obtain or, if not required by other law, to fail to obtain governmental or third party consents for the collection or disposition of Collateral to be collected or disposed of, (c) to fail to exercise collection remedies against account debtors or other persons obligated on Collateral or to remove liens or encumbrances on or any adverse claims against Collateral, (d) to exercise collection remedies against account debtors and other persons obligated on Collateral directly or through the use of collection agencies and other collection specialists, (e) to advertise dispositions of Collateral through publications or media of general circulation, whether or not the Collateral is of a specialized nature, (f) to contact other persons, whether or not in the same business as such Grantor, for expressions of interest in acquiring all or any portion of the Collateral, (g) to hire one or more professional auctioneers to assist in the disposition of Collateral, whether or not the collateral is of a specialized nature, (h) to dispose of Collateral by utilizing internet sites that provide for the auction of assets of the types included in the Collateral or that have the reasonable capability of doing so, or that match buyers and sellers of assets, (i)

15

4870-1882-2658.5

to dispose of assets in wholesale rather than retail markets, (j) to disclaim disposition warranties, (k) to purchase insurance or credit enhancements to insure the Administrative Agent and/or Lender against risks of loss, collection or disposition of Collateral or to provide to the Administrative Agent and/or Lender a guaranteed return from the collection or disposition of Collateral, or (l) to the extent deemed appropriate by the Administrative Agent and/or Lender, to obtain the services of other brokers, investment bankers, consultants and other professionals to assist the Lender in the collection or disposition of any of the Collateral. Each Grantor acknowledges that the purpose of this Section is to provide non-exhaustive indications of what actions or omissions by the Administrative Agent and/or Lender would not be commercially unreasonable in the Administrative Agent's and/or Lender's exercise of remedies against the Collateral and that other actions or omissions by the Administrative Agent and/or Lender shall not be deemed commercially unreasonable solely on account of not being indicated in this Section. Without limitation upon the foregoing, nothing contained in this Section shall be construed to grant any rights to the Grantors or to impose any duties on the Administrative Agent and/or Lender that would not have been granted or imposed by this Agreement or by applicable law in the absence of this Section.

## ARTICLE 6

## DEFINITIONS

6.1     <u>Loan Agreement Definitions</u>.  Unless otherwise defined herein or the context otherwise requires, capitalized terms used in this Security Agreement (including the preamble and recitals hereof) have the meanings provided in the Loan Agreement.

6.2     <u>Rules of Construction</u>.  The rules of interpretation and construction set forth in the Loan Agreement apply to the interpretation and construction of this Security Agreement.

6.3     <u>Certain Terms</u>.  The following terms (whether or not underscored) when used in this Security Agreement (including the preamble and recitals hereof) have the following meanings:

"<u>Administrative Agent</u>" is defined in the introductory paragraph hereof.

"<u>Borrower</u>" or "<u>Borrowers</u>" is defined in the introductory paragraph hereof.

"<u>Collateral</u>" is defined in <u>Section 1.1</u>.

"<u>Copyright License</u>" means any agreement, whether written or oral, providing for the grant by or to a Grantor of any right under any Copyright.

"<u>Copyrights</u>" means all copyright and similar rights under the laws of the United States (including all proprietary rights afforded pursuant to Title 17 of the United States Code, including, without limitation, all rights in copyrights, works of authorship, original designs and mask works) and all other countries for the full term thereof (and including all rights accruing by virtue of bilateral or international copyright treaties and conventions), whether registered or unregistered, including, but not limited to, all registrations, applications for registration, renewals, extensions, reversions or restorations thereof now or hereafter provided for by law, all rights to make applications for registrations and recordations, and all adaptations, derivations, and versions thereof, regardless of the medium of fixation or means of expression, now existing or hereafter applied for, registered, created, or acquired.

"<u>Domain Names</u>" means all internet domain names and applications therefor and all URLs.

16

"Grantor" is defined in the introductory paragraph hereof.

"Intellectual Property Collateral" means, collectively, all Copyrights, all Domain Names, all Patents, all Software, all Trademarks, all Trade Secrets, and all Other Intellectual Property owned and/or used by a Grantor, and all Copyright Licenses, all Patent Licenses, and all Trademark Licenses granted by or to a Grantor.

"Liquidation Event" means any foreclosure on or any sale of all or any material part of the assets of any Grantor, or any liquidation, dissolution or other winding up (partial or complete) of any Grantor or any Grantor's business, or any sale, receivership, insolvency or bankruptcy proceeding, any assignment for the benefit of creditors, or any other proceeding by or against any Grantor or its assets for any relief under any bankruptcy or insolvency law relating to the relief of debtors, readjustment of indebtedness, arrangements, reorganizations, compositions or extensions.

"Loan Agreement" is defined in the recitals hereof.

"Other Intellectual Property" means all worldwide intellectual property rights, industrial property rights, proprietary rights and common-law rights, whether registered or unregistered, not otherwise included in Copyrights, Copyright Licenses, Domain Names, Patents, Patent Licenses, Trademarks, Trademark Licenses and Trade Secrets, including, without limitation, all rights to and under all new and useful inventions, discoveries, technology, confidential information, methods, processes, designs, technology, art, brands, formulas, algorithms, software, concepts, protocols, electronic or other databases, tangible embodiments (in whatever form or medium), and all improvements thereof and all know-how related thereto, together with the rights to all related past, present and future causes of action and any and all interests, claims, and rights for damages, profits, and other awards or remedies by reason of any infringement, unauthorized use, dilution, misappropriation, or other violation of intellectual property rights, now existing or hereafter created or acquired.

"Patent License" means any agreement, whether written or oral, providing for the grant by or to a Grantor of any right under any Patent.

"Patents" means all letters patent and patent applications in the United States and all other countries (and all letters patent that issue therefrom), including all industrial designs, industrial models, utility models, certificates of invention and other indices of invention ownership, and all reissues, reexaminations, extensions, renewals, substitutes, divisions and continuations (including continuations-in-part and continuing prosecution applications) thereof, all rights to make applications for issuance and recordations, for the full term thereof, now existing or hereafter applied for, issued, or acquired.

"Pledged Equity" means, with respect to each Grantor, (a) 100% of the issued and outstanding equity interests of each Subsidiary that is directly owned by Grantor and (b) 66% (or such greater percentage that, due to a change in an applicable law after the date hereof, (i) could not reasonably be expected to cause the undistributed earnings of such foreign Subsidiary as determined for United States federal income tax purposes to be treated as a deemed dividend to such foreign Subsidiary's United States parent and (ii) could not reasonably be expected to cause any material adverse tax consequences) of the issued and outstanding equity interests entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) and 100% of the issued and outstanding equity interests not entitled to vote (within the meaning of Treas. Reg. Section 1.956-2(c)(2)) in each foreign Subsidiary that is directly owned by such Grantor, including the equity interests of the Subsidiaries owned by such Grantor as set forth on Schedule 2.6 hereto, in each case together with the certificates (or other agreements or instruments), if any, representing such equity interests, and all

17

4870-1882-2658.5

options and other rights, contractual or otherwise, with respect thereto, including, but not limited to, (A) all equity interests representing a dividend thereon, or representing a distribution or return of capital upon or in respect thereof, or resulting from a stock split, revision, reclassification or other exchange therefor, and any subscriptions, warrants, rights or options issued to the holder thereof, or otherwise in respect thereof; and (B) in the event of any consolidation or merger involving the issuer thereof and in which such issuer is not the surviving Person, all shares of each class of the equity interests of the successor Person formed by or resulting from such consolidation or merger, to the extent that such successor Person is a direct Subsidiary of such Grantor.

"Secured Obligations" is defined in Section 1.2.

"Security Agreement" means this Security Agreement and all exhibits, schedules and supplemental addenda hereto, all as may be amended and otherwise modified from time to time hereafter.

"Software" means computer software (including source code and object code), data, databases and all documentation related thereto.

 "Trade Secrets" means any data or information of any Grantor that is not commonly known by or available to the public, and which (a) derives economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

"Trademark License" means any agreement, written or oral, providing for the grant by or to Grantor of any right to use any Trademark.

 "Trademarks" means all trademark and service mark rights, statutory and common-law trademarks, trade names, corporate names, company names, business names, fictitious business names, trade styles, service marks, trade dress, logos and other source or business identifiers and indicia of commercial source or origin, together with all translations, adaptations, derivations and combinations thereof, and the goodwill associated therewith, all registrations and applications for registration thereof, and all rights to make applications for registrations and recordations, under the laws of the United States, any state thereof or any other country or any political subdivision thereof, or otherwise, for the full term and all renewals thereof, now existing or hereafter applied for, registered, adopted, or acquired.

6.4     UCC Definitions.  The following terms shall have the meanings ascribed to such terms as defined in the Uniform Commercial Code in effect from time to time in the State of New York except as such terms may be used in connection with the perfection of the Collateral and then the applicable jurisdiction with respect to such affected Collateral shall apply (the "UCC"): Accession, Account, As-Extracted Collateral, Bank, Chattel Paper, Commercial Tort Claim, Consumer Goods, Deposit Account, Document, Electronic Chattel Paper, Equipment, Farm Products, Financial Asset, Fixtures, General Intangible, Goods, Instrument, Inventory, Investment Property, Letter-of-Credit Right, Manufactured Home, Proceeds, Securities Entitlement, Securities Account, Securities Intermediary, Security, Software, Supporting Obligation and Tangible Chattel Paper.

ARTICLE 7

MISCELLANEOUS PROVISIONS

18

4870-1882-2658.5

7.1     Loan Document.  This Security Agreement and each separate assignment executed in connection herewith are Loan Documents executed pursuant to the Loan Agreement and (unless otherwise expressly indicated herein) are to be construed, administered and applied in accordance with the terms and provisions thereof.

7.2     Amendments.  No amendment to or waiver of any provision of this Security Agreement, nor consent to any departure by any Grantor herefrom, shall in any event be effective unless such amendment, waiver or consent is in writing and signed by Administrative Agent and Grantor.  Any such waiver or consent will be effective only in the specific instance and for the specific purpose for which given.

7.3     Notices.

(a)     Written Notices.

(i)     All notices and other communications to any party herein to be effective shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail, as follows:

If to Grantor:

c/o Excell Auto Group, Inc.
1001 Clint Moore Road, Unit B
Boca Raton, FL 33487

Attn: Scott Zankl If to Administrative Agent:

FVP Servicing, LLC
1201 Broadway, 7th Floor
New York, NY 10001
Attn: Keith Lee / Tom Betts
Telephone: 646.902.6645
E-mail:klee@feenixpartners.com / tbetts@feenixpartners.com

(ii)     Notices if (a) mailed by certified or registered mail or sent by hand or overnight courier service shall be deemed to have been given when received; and (b) sent by e-mail shall be deemed received upon the sender's receipt of an acknowledgment from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgment).

(iii)     Any party hereto may change its address for notices and other communications hereunder by notice to the other parties hereto.  All such notices and other communications shall, when transmitted by overnight delivery, be effective when delivered for overnight (next-day) delivery, or if mailed, upon the third Business Day after the date deposited into the mails or if delivered, upon delivery; provided, that notices delivered to Lenders shall not be effective until actually received by such Person at its address specified in this Section 10.

(iv)     Any agreement of Administrative Agent or any Lender herein to receive certain notices by telephone or e-mail is solely for the convenience and at the request of Borrowers.  Administrative Agent and each Lender shall be entitled to rely on the authority of any Person purporting to be a Person authorized by

19

4870-1882-2658.5

Borrowers to give such notice and neither Administrative Agent nor any Lender shall have any liability to Borrowers or other Person on account of any action taken or not taken by Administrative Agent or any Lender in reliance upon such telephonic or e-mail notice. The obligation of Borrowers to repay the Loans and all other obligations and hereunder shall not be affected in any way or to any extent by any failure of Administrative Agent or any Lender to receive written confirmation of any telephonic or e-mail notice or the receipt by Administrative Agent or any Lender of a confirmation which is at variance with the terms understood by Administrative Agent or any Lender to be contained in any such telephonic or e-mail notice.

(b)   Electronic Communications.

(i)   Notices and other communications to the Lenders hereunder may be delivered or furnished by electronic communication (including e-mail and internet or intranet websites) pursuant to procedures approved by Administrative Agent; provided that the foregoing shall not apply to notices to Administrative Agent or any Lender pursuant to Section 2 hereof unless Administrative Agent or such Lender has agreed to receive notices under such Section by electronic communication and have agreed to the procedures governing such communications. Any Party may, in its discretion, agree to accept notices and other communications to it hereunder by electronic communications pursuant to procedures approved by it; provided that approval of such procedures may be limited to particular notices or communications.

(ii)   Unless Administrative Agent otherwise prescribes, (i) notices and other communications sent to an e-mail address shall be deemed received upon the sender's receipt of an acknowledgement from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgement); provided that if such notice or other communication is not sent during the normal business hours of the recipient, such notice or communication shall be deemed to have been sent at the opening of business on the next Business Day for the recipient, and (ii) notices or communications posted to an internet or intranet website shall be deemed received upon the deemed receipt by the intended recipient at its e-mail address as described in the foregoing clause (i) of notification that such notice or communication is available and identifying the website address therefor.

7.4   Severability.   Wherever possible, each provision of this Security Agreement shall be interpreted in such manner as to be effective and valid under applicable law. If any provision of this Security Agreement shall be prohibited by or invalid under such law, then such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Security Agreement.

7.5   Entire Agreement.   This Security Agreement and the other Loan Documents constitute the entire understanding among the parties hereto with respect to the subject matter hereof and supersede any prior agreements (written or oral) with respect thereto.

7.6   Reinstatement.   To the maximum extent not prohibited by applicable law, this Security Agreement shall continue to be effective or be reinstated if at any time any amount received by

20

4870-1882-2658.5

Administrative Agent or any Lender in respect of the Loan Agreement or any other Loan Document is rescinded or must otherwise be restored or returned by Administrative Agent or any Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of any Grantor or upon the appointment of any receiver, intervenor, conservator, trustee or similar official for any Grantor or any substantial part of any Grantor's assets, or otherwise, all as though such payments had not been made.

7.7     Conflict Provision.   In the event of any irreconcilable conflict between the terms and conditions of this Security Agreement and the terms and conditions of the Loan Agreement, the terms and conditions of the Loan Agreement shall govern.

7.8     Administrative Agent.   References in this Security Agreement to Administrative Agent shall mean either to Administrative Agent in such capacity or (where appropriate) to Administrative Agent for the benefit of itself and other Lenders.  Unless otherwise indicated in this Security Agreement or the other Loan Documents, all Collateral held and all payments received by Administrative Agent are deemed to be held and received, respectively, for the benefit of itself and the other Lenders.

7.9     Waiver of Suretyship Defenses.   Each Grantor hereby waives any and all defenses and rights of discharge based on suretyship or impairment of collateral (including any lack of attachment or perfection with respect thereto) that it may now have or may hereafter acquire with respect to Administrative Agent or any Lender or any of such Grantor's obligations hereunder or under any other agreement that it may have or hereafter enter into with Administrative Agent or any Lender.

7.10     Waiver of Subrogation.   Until this Security Agreement is terminated in accordance with Section 1.3, each Grantor hereby irrevocably waives any claim or other rights which it may now have or may hereafter acquire against any other Grantor that arise from the existence, payment, performance or enforcement of any Grantor's obligations under this Security Agreement or any other Loan Document, including any right of subrogation, reimbursement, contribution, exoneration, or indemnification, any right to participate in any claim or remedy of Administrative Agent or any Lender against any other Grantor or any collateral which Administrative Agent or any Lender now has or hereafter acquires, whether or not such claim, remedy or right arises in equity, or under contract, statute or common law.

7.11     Waiver of Notice; Waiver of Bond.   Each Grantor waives all rights of notice and hearing of any kind prior to the exercise by Administrative Agent or any Lender of its rights during the continuance of any Event of Default to repossess the Collateral with judicial process or to replevy, attach or levy upon the Collateral.  Each Grantor waives the posting of any bond otherwise required of Administrative Agent or any Lender in connection with any judicial process or proceeding to obtain possession of, replevy, attach or levy upon Collateral or other security for the Secured Obligations, to enforce any judgment or other court order entered in favor of Administrative Agent or any Lender, or to enforce by specific performance, temporary restraining order or preliminary or permanent injunction this Security Agreement or any other Loan Document.

7.12     Waiver of Liability.   Each Grantor (a) agrees that neither Administrative Agent nor any Lender (nor any director, officer, employee or agent of Administrative Agent or any Lender) shall have any liability to any Grantor (whether sounding in tort, contract or otherwise) for losses or costs suffered or incurred by any Grantor in any way related to the transactions contemplated or the relationship established by any Loan Document, or any act, omission or event occurring in connection therewith, except for actual losses resulting directly from Administrative Agent's or such Lender's own gross negligence, willful misconduct or fraud, and (b) waives, releases and agrees not to sue upon any claim against Administrative Agent or any Lender (or their directors, officers, employees or agents) whether sounding in tort, contract or otherwise, except for claims for actual losses resulting directly from Administrative Agent's or such Lender's own gross negligence, willful misconduct or fraud.  Moreover, whether or not such damages are

21

4870-1882-2658.5

related to a claim that is subject to the waiver effected above and whether or not such waiver is effective, neither Administrative Agent nor any Lender (nor any director, officer, employee or agent of Administrative Agent or any Lender) shall have any liability with respect to (and each Grantor hereby waives, releases and agrees not to sue upon any claim for) any special, indirect, consequential, punitive or non-foreseeable damages suffered by any Grantor in any way related to the transactions contemplated or the relationship established by any Loan Document, or any act, omission or event occurring in connection therewith.

7.13    Counterparts.  This Security Agreement may be executed in any number of counterparts with the same effect as if all the signatures on such counterparts appeared on one document.  Each counterpart will be deemed to be an original, but all counterparts together will constitute one and the same instrument.  A signature page hereto sent or delivered by facsimile or other electronic transmission shall be as legally binding and enforceable as a signed original for all purposes.

7.14    Governing Law; Submission to Jurisdiction; Venue; WAIVER OF JURY TRIAL.  The terms of Sections 13.3, 13.4, 13.5 and 13.7 of the Loan Agreement with respect to governing law, submission to jurisdiction, venue and waiver of jury trial are incorporated herein by reference, *mutatis mutandis*, and the parties hereto agree to such terms.

[SIGNATURE PAGES FOLLOW]

22

4870-1882-2658.5

IN WITNESS WHEREOF, the undersigned, by their duly authorized officers, have executed this Security Agreement, and it is effective as of the day and year first above written.

**GRANTORS:**

**KARMA OF BROWARD, INC.,**
a Florida corporation

By:_____

Name: Scott Zubail

Title: Pres.

**KARMA OF PALM BEACH,**
**INC.,** a Florida corporation

By:_____

Name: Scott Zubail

Title: Pres.

SECURITY AGREEMENT

**ADMINISTRATIVE
AGENT:**

**FVP SERVICING, LLC**,
a Delaware limited liability company,
as Administrative Agent

By: _keith lee_____

Name: Keith Lee

Title:  Manager

SECURITY AGREEMENT

Schedule 2.1

Location of Collateral

| Grantor | Address |
|---|---|
| Karma of Broward, Inc. | 1717 17th Street, Ft. Lauderdale, FL 33316 |
| Karma of Palm Beach, Inc. | 1001 Clint Moore Road, Boca Raton, FL 33487 |

Schedule 2.3

Government Contracts

None.

Schedule 2.5A

Intellectual Property Collateral

None.

Schedule 2.6

Pledged Equity

None.

Schedule 2.10

Commercial Tort Claims


None.

Schedule 2.11

Pledged Interests – Securities

None.

Schedule 2.13

<u>Litigation</u>


None.

SECURITY AGREEMENT

Schedule 3.6
Form Joinder

JOINDER BY _____
TO SECURITY AGREEMENT

The undersigned, _____, a _____ ("New Grantor") hereby joins in the Security Agreement dated as of January 26, 2022 (the "Security Agreement") by and among the Grantors thereto (collectively, the "Grantor") and FVP SERVICING, LLC, as administrative agent (including any successor, participant, assignee or transferee thereof, "Administrative Agent") for itself and the Lenders (as defined in the Loan Agreement). All terms not defined herein shall have the meanings ascribed to them in the Security Agreement.  New Grantor has received and reviewed a copy of the Security Agreement and hereby acknowledges and affirms:

1.    the continuing validity of the Security Agreement and the other Loan Documents to which New Grantor is a party;

2.    all of the terms, conditions and obligations contained in the Security Agreement and other Loan Documents to which New Grantor is a party, which terms, conditions and obligations are and shall remain in full force and effect;

3.    that the Security Agreement and other Loan Documents to which New Grantor is a party are the legal, valid and binding obligations of New Grantor as a party thereto, and the obligations and liabilities thereunder shall not be diminished by the execution hereof; and

4.    that this instrument is executed by New Grantor as an inducement to the Administrative Agent and each Lender to continue the Loans, and with the knowledge that the Administrative Agent and each Lender shall rely on the statements made herein.

Dated: _____, 20__                    _____

Address for Notice:                              By: _____
_____                           Print Name:
_____                           Print Title:
_____

Schedule 3.6                                              SECURITY AGREEMENT

# EXHIBIT G

**Exhibit G**

## PLEDGE AND SECURITY AGREEMENT

**THIS PLEDGE AND SECURITY AGREEMENT** (the "Agreement") is dated as of January 26, 2022, and is by and among **SCOTT ZANKL**, an individual, **KRISTEN ZANKL**, an individual (individually and collectively, "Pledgor"), and **FVP SERVICING, LLC**, in its capacity as administrative agent for the Lenders under the Loan Agreement (as defined below) (the "Administrative Agent"). Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such term in the Loan Agreement.

## BACKGROUND

1.      Pledgor is the owner of the number of the Equity Interests listed next to its name on Schedule A in the entities listed on Schedule A next to its name (each such entity, a "Pledged Entity").

2.      Contemporaneously with the execution of this Agreement, Karma of Palm Beach, Inc. and Karma of Broward, Inc. (each, a "Borrower" and, together, "Borrowers") are entering into a Loan Agreement (as amended, modified, supplemented, extended, restated or renewed from time to time, the "Loan Agreement") with Administrative Agent and the lenders party thereto (collectively, the "Lenders"), pursuant to which, among other things, the Lenders have agreed to make certain term loans to Borrowers in the aggregate original principal amount of $7,500,000.00 (the "Loan").

3.      As a condition to entering into the Loan Agreement, Administrative Agent requires that Pledgor pledge and grant a security interest in favor of Administrative Agent, for the benefit of itself and the Lenders, in all of Pledgor's right, title and interest in and to all Equity Interests in each Pledged Entity to secure, *inter alia*, the repayment of the Loan and the due and prompt payment and performance of all other Obligations (as hereinafter defined) under the Loan Documents.

4.      Pledgor will derive substantial direct and indirect benefits from the making of the Loan by the Lenders to Borrowers and the consummation of the transactions contemplated by the Loan Agreement, and is willing to execute and deliver this Agreement to induce Administrative Agent to enter into the Loan Agreement.

NOW THEREFORE, the parties agree as follows:

## AGREEMENT

1.      Definitions.  As used in this Agreement, the following terms shall have the meanings specified below:

"Distributions" means all dividends, distributions, liquidation proceeds, cash, profits, instruments and other property and payments or economic benefits or interests to which Pledgor is entitled with respect to the Pledged Equity whether or not received by or otherwise distributed to Pledgor, whether such dividends, distributions, liquidation proceeds, cash, profits, instruments and other property and economic benefits are paid or distributed by each Pledged Entity in respect of operating profits, sales, exchanges, refinancing, condemnations or insured losses of the company's assets, the liquidation of the company's assets and affairs, management fees, guaranteed payments, repayment of loans, reimbursement of expenses or otherwise in respect of or in exchange for any or all of the Pledged Equity.

"Equity Interests" means (a) partnership interests (general or limited) in a partnership; (b) membership interests in a limited liability company; (c) shares or stock interests in a corporation, and (d) the beneficial ownership interests in a trust.

4870-8593-1522.4

"Event of Default" means any "Event of Default" as defined in the Loan Agreement.

"Obligations" means the "Obligations" as defined in the Loan Agreement.

"Organizational Agreement" means the partnership agreement, limited partnership agreement, operating agreement, limited liability company agreement, articles or certificate of organization, by-laws, certificate of formation and other organizational or governing documents, as applicable, of each Pledged Entity.

"Pledged Equity" means all Equity Interests issued by each Pledged Entity owned or held by or on behalf of Pledgor, whether beneficially or of record, and whether now owned or hereafter acquired, including all such Equity Interests described in Schedule A hereto, and all certificates, instruments and other documents, if any, representing or evidencing such Equity Interests and all interests of Pledgor on the books and records of each Pledged Entity with respect to such Equity Interests, and all Distributions or other dividends, distributions, cash, warrants, rights, options, instruments, securities and other property or proceeds from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of such Equity Interests.

"Security Interest" has the meaning assigned to such term in Section 2a hereof.

"UCC" means the Uniform Commercial Code as in effect from time to time in the State of New York or, when the context implies, the Uniform Commercial Code as in effect from time to time in any other applicable jurisdiction.

2.      Security Interest.

a.      Grant of Security.  As security for the payment and performance in full of the Obligations and Pledgor's obligations under this Agreement, whether allowed or allowable as claims (whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise, including without limitation the payment of amounts that would become due but for the operation of the automatic stay under Section 362(a) of the Bankruptcy Code, 11 U.S.C. §362(a)) (collectively, the "Secured Obligations"), Pledgor hereby grants, pledges, hypothecates, transfers and assigns to Administrative Agent, for the benefit of itself and the Lenders, a first priority (except to the extent of any Permitted Liens) and continuing lien on and security interest in (the "Security Interest"), and, in furtherance of such grant, pledge, hypothecation, transfer and assignment, hereby transfers and assigns to Administrative Agent, for the benefit of itself and the Lenders, as collateral security, all of Pledgor's right, title, ownership, equity or other interests in and to the following, whether now owned or hereafter acquired, now existing or hereafter arising and wherever located (collectively, the "Collateral"):

(i)      the legal and beneficial ownership interests in and to the Pledged Equity;

(ii)      all rights, privileges, general intangibles, payments intangibles, voting rights, authority and power arising from its interest in the Pledged Equity;

(iii)      the capital of Pledgor and any and all profits, losses, Distributions, and allocations attributable to the Pledged Equity as well as the proceeds of any Distribution thereof, whether arising under the terms of any Organizational Agreement or otherwise;

(iv)      all Distributions and all other payments, if any, due or to become due, to Pledgor and all other present or future claims by Pledgor against each Pledged Entity, or in respect of the Pledged Equity,

2

4870-8593-1522.4

under or arising out of (i) any Organizational Agreement, (ii) monies loaned or advanced, for services rendered or otherwise, (iii) any other contractual obligations, commercial tort claims, supporting obligations, damages, insurance proceeds, condemnation awards or other amounts due to Pledgor from each Pledged Entity or with respect to the Pledged Equity;

(v)      Pledgor's claims, rights, powers, privileges, authority, options, security interests, liens and remedies, if any, under or arising out of the ownership of the Pledged Equity;

(vi)      to the extent permitted by applicable law, Pledgor's rights, if any, in each Pledged Entity pursuant to any Organizational Agreement, or at law, to exercise and enforce every right, power, remedy, authority, option and privilege of Pledgor relating to the Pledged Equity, including without limitation, the right to (i) execute any instruments and to take any and all other action on behalf of and in the name of Pledgor in respect of the Pledged Equity, (ii) exercise any and all voting, consent and management rights of Pledgor in or with respect to each Pledged Entity, (iii) exercise any election (including, but not limited to, election of remedies) or option or to give or receive any notice, consent, amendment, waiver or approval with respect to each Pledged Entity, (iv) enforce or execute any checks, or other instruments or orders of each Pledged Entity, and (v) file any claims and to take any action in connection with any of the foregoing, together with full power and authority to demand, receive, enforce or collect any of the foregoing or any property of each Pledged Entity;

(vii)      all Investment Property (as such term is defined in Section 9-102 of the UCC) issued by or relating to each Pledged Entity, or otherwise relating to the Pledged Equity;

(viii)      all additional Equity Interests or other property, securities, or assets now existing or hereafter acquired by Pledgor relating to each Pledged Entity, including, without limitation, as a result of any consolidation, combinations, mergers, reorganizations, acquisitions, exchange offers, recapitalizations of any type, contributions to capital, splits, spin-offs, or similar actions or the exercise of options or other rights relating to the Pledged Equity;

(ix)      all partnership certificates, member certificates, stock certificates, or any other instrument, note, chattel paper, electronic chattel paper or certificate (including, without limitation, all "certificated securities" within the meaning of Section 8-102 of the UCC) (whether or not qualifying as Investment Property) representing the Pledged Equity in each Pledged Entity and any interest of Pledgor in the entries on the books of any financial intermediary pertaining to such certificates or writings, and all options and warrants for the purchase of such Equity Interests now or hereafter held in the name of Pledgor (collectively, "Certificated Securities"), and all Certificated Securities in each Pledged Entity from time to time acquired by Pledgor in any manner, and any interest of Pledgor in the entries on the books of any financial intermediary pertaining to such Certificated Securities, and all securities convertible into and options, warrants, dividends, cash, instruments and other rights and options from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of such Certificated Securities (including all rights to request or cause the issuer thereof to register any or all of the Collateral under federal and state securities laws to the maximum extent possible under any agreement for such registration rights), and all put rights, tag-along rights or other rights pertaining to the sale or other transfer of such Collateral, together in each case with all right under any Organizational Agreements pertaining to such rights; and

(x)      (i) all "proceeds" (as such term is defined in Section 9-102 of the UCC) of any or all of the foregoing (whether cash or non-cash proceeds, including insurance proceeds), (ii) whatever is receivable or received when any of the Collateral is sold, collected, exchanged or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes, without limitation, all rights to payment, including return premiums, with respect to any insurance relating thereto and also includes all interest, dividends and other property receivable or received on account of any of the Collateral or proceeds thereof, and in any

3

4870-8593-1522.4

event, shall include all Distributions or other income from any of the Collateral, all collections thereon or all Distributions with respect thereto, and (iii) all proceeds, products, accessions, rents, profits, income, benefits, substitutions and replacements of and to any of the Collateral. The inclusion of proceeds in the Collateral does not authorize Pledgor to sell, dispose of or otherwise use the Collateral in any manner not specifically authorized hereby.

b.      <u>Continuing Perfection and Priority</u>.  Pledgor hereby covenants and agrees that, if at any time on or after the date hereof any asset or property acquired, owned or held by or on behalf of Pledgor that constitutes or would constitute Collateral hereunder is not subject to the Security Interest in favor of the Administrative Agent hereunder with the perfection or priority required hereby, then Pledgor shall, at its own cost and expense, promptly (i) notify Administrative Agent thereof and (ii) execute and deliver any and all agreements, instruments and other documents, and take all further action (including the filing and recording of financing statements and other documents), that may be necessary or reasonably requested by the Administrative Agent to cause such asset or property to become subject to a perfected lien and security interest in favor of the Administrative Agent hereunder (including, where applicable, perfection by establishing "sole dominion and control" under applicable law and "control" within the meaning of the UCC), with the priority required hereby.

c.      <u>Security for Obligations</u>.  This Agreement secures, and the Collateral is collateral security for, the prompt and complete payment or performance in full when due, whether at stated maturity, by required prepayment, declaration, acceleration, demand or otherwise (including the payment of amounts that would become due but for the operation of the automatic stay under Section 262(a) of Title 11 of the United States Code, or any similar provision of any other bankruptcy, insolvency, receivership or other similar law), of all Secured Obligations.

d.      <u>No Assumption of Liability</u>.  Notwithstanding anything to the contrary herein, the Security Interest is granted as security only and shall not subject the Administrative Agent to, or in any way alter or modify, any obligation or liability of Pledgor with respect to or arising out of the Pledged Equity.

3.      <u>Representations, Warranties and Covenants</u>.

a.      <u>Representations and Warranties</u>.  Pledgor represents and warrants to the Administrative Agent, jointly and severally, for the benefit of itself and the Lenders that:

i.      Scott Zankl and Kristen Zankl are individuals and residents of the State of Florida and their full and correct legal names and the address of such individual's residence is specified on <u>Schedule A</u>, such name and address matches that reflected on each individual's respective driver's license or other government-issued identification card.

ii.      Pledgor owns the applicable Equity Interests in each Pledged Entity specified next to its name on <u>Schedule A</u>.  Pledgor has good and valid title to the Pledged Equity specified next to its name on <u>Schedule A</u> and all related Collateral, and Pledgor does not have any outstanding options or rights or other agreements to acquire or sell or otherwise transfer all or any portion of any Pledged Equity or other Collateral.

iii.      All actions and consents, including all filings, notices, registrations and recordings, necessary or desirable to create, perfect or ensure the priority of the Security Interest in the Pledged Equity and the other Collateral or for the exercise by the Administrative Agent of any voting or other rights provided for in this Agreement or the exercise of any remedies in respect of the Pledged Equity and the other Collateral have been made or obtained.

4

4870-8593-1522.4

iv.      The Pledged Equity and other Collateral of Pledgor is owned by Pledgor free and clear of any lien, security interests or other encumbrance.  Pledgor has not filed nor authorized the filing of (A) any financing statement or analogous document under the UCC or any other applicable laws covering the Pledged Equity or any other Collateral, or (B) any assignment in which Pledgor assigns any of the Pledged Equity or other Collateral, or any pledge agreement or similar instrument covering any of the Pledged Equity or other Collateral, with any foreign governmental authority or other office, in each case which financing statement, analogous document, assignment or other instrument, as applicable, is still in effect.

v.      The Pledged Equity has been duly authorized and is validly issued.

vi.      The Pledged Equity constitutes all of the issued and outstanding Equity Interests of each Pledged Entity.

vii.      The pledge of the Pledged Equity and the other Collateral pursuant to this Agreement creates a valid and, upon the filing of a financing statement in accordance with the UCC, to the extent such security interest can be perfected by filing of a financing statement under the UCC, or other appropriate method, perfected security interest in the Pledged Equity and the other Collateral securing the payment and performance of the Secured Obligations.  The taking possession by the Administrative Agent of the Certificated Securities (if any) described on Schedule A hereto, together with endorsed stock or unit powers duly executed in blank, will perfect the Administrative Agent's Security Interest in all of the Pledged Equity and related Collateral evidenced by such Certificated Securities.

viii.      Except for consents already obtained by Pledgor in connection with this Agreement, no consent of any other person or entity and no authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required (A) for the pledge by Pledgor of the Pledged Equity pursuant to this Agreement or for the execution, delivery or performance of this Agreement by Pledgor, (B) for the perfection or maintenance of the Security Interest created hereby or (C) for the exercise by Administrative Agent of the voting or other rights provided for in this Agreement or the remedies in respect of the Pledged Equity and other Collateral pursuant to this Agreement (except as may be required in connection with any disposition of any portion of the Pledged Equity by laws affecting the offering and sale of securities generally).

ix.      There are no conditions precedent to the effectiveness of this Agreement that have not been satisfied or waived.

x.      Pledgor has, independently and without reliance upon Administrative Agent, and based on such documents and information as Pledgor has deemed appropriate, and following consultation with Pledgor's independent legal counsel, made its own credit analysis and decision to enter into this Agreement.

xi.      Except as expressly provided in this Agreement, Pledgor will not sell, convey or otherwise dispose of any of the Pledged Equity or other Collateral, nor will Pledgor create, incur or permit to exist any lien, security interest or other encumbrance with respect to any of the Pledged Equity or other Collateral.

xii.      There are no contractual restrictions upon the voting rights or the transfer of the Pledged Equity.

xiii.      The execution, delivery and performance hereof, and the grant of the Security Interest in the Pledged Equity and the other Collateral hereunder, to Pledgor's knowledge, do not contravene

5

any law, rule or regulation or any judgment, decree or order of any governmental authority or any agreement or instrument to which Pledgor is a party or by which Pledgor or any of Pledgor's property is bound or affected or constitute a default thereunder.

xiv.    Attached hereto as Exhibit B are true, correct, and complete copies of the Organizational Agreement of each Pledged Entity.  Each Organizational Agreement is in full force and effect and has not been modified or amended except as attached hereto. Pledgor is not in default of any of its obligations under the Organizational Agreements.  Pledgor shall not allow any Pledged Entity to (A) amend any provision of its Organizational Agreements, (B) cause any of its Equity Interests to become Certificated Securities after the date hereof, (C) dissolve, liquidate, wind-up, merge or consolidate with any other entity, (D) transfer any of its respective assets and properties to any person or entity (or otherwise) except as permitted by the Loan Documents, or (E) take any action, or refrain from taking any action, in either case, to the extent the same would constitute an Event of Default.  The Organizational Agreements of each Pledged Entity provide that (A) all owners of Equity Interests therein are authorized to pledge or assign such Equity Interests to Administrative Agent, and that such pledge or assignment shall include all voting, management and control rights and is not limited to economic rights; (B) neither the exercise by Administrative Agent of any right or remedy under the Loan Documents, including, foreclosure of the Collateral, nor the transfer to Administrative Agent or its successors or assigns of title to any Collateral, shall constitute a default or breach, or give rise to any right of first refusal or option to purchase under the Organizational Agreement of any Pledged Entity; (C) until the Secured Obligations are paid in full: (1) no owners of Equity Interests in any Pledged Entity shall be entitled to withdraw from any Pledged Entity or assign, encumber, or convey any interest in any Pledged Entity (except in favor of Administrative Agent pursuant to the Loan Documents); (2) no additional Equity Interests in each Pledged Entity shall be created or issued, no Equity Interest shall be redeemed, exchanged, diluted or modified and, without limitation of the foregoing, no Equity Interests shall become Certificated Securities; (3) no Pledged Entity shall be dissolved, either voluntarily or as the result of the withdrawal or removal of any owners of Equity Interests in such Pledged Entity; (4) the Organizational Agreements of each Pledged Entity shall not be modified or terminated in any manner adverse to Administrative Agent; and (5) upon foreclosure or other transfer of the Pledged Equity by Administrative Agent or its successors or assigns pursuant to the Loan Documents or applicable law, Administrative Agent has the right to terminate all non-member managers of each Pledged Entity.

b.    Covenants and Agreements.  Pledgor hereby covenants and agrees as follows:

i.    Pledgor will promptly notify the Administrative Agent in writing of any change in Pledgor's legal name, the address at which Pledgor maintains its residency, maintains books or records relating to any of the Pledged Equity or Pledgor's social security number.  Pledgor agrees not to effect or permit any change referred to in the preceding sentence unless all filings have been made under the UCC or otherwise that are required in order for the Administrative Agent to continue at all times following such change to have a valid, legal and perfected security interest in all the Pledged Equity and the other Collateral with the priority required hereby.

ii.    Pledgor shall maintain, at Pledgor's own cost and expense, such complete and accurate records with respect to the Pledged Equity as is consistent with Pledgor's current practices, but in any event to include complete accounting records indicating all Distributions received with respect to any part of the Pledged Equity, and, at such time or times as the Administrative Agent may reasonably request (but in no event more than one time in any calendar year, unless an Event of Default has occurred and is continuing), promptly to prepare and deliver to the Administrative Agent a duly certified schedule or schedules in form and detail satisfactory to the Administrative Agent showing the identity and amount of any and all such Pledged Equity.

6

4870-8593-1522.4

iii.     Pledgor shall, at Pledgor's own cost and expense, take any and all actions reasonably necessary to defend title to the Pledged Equity and the other Collateral against all persons and to defend the Security Interest in the Pledged Equity and the other Collateral and the priority thereof against any lien, security interest or other encumbrance, and in furtherance thereof, Pledgor shall not take, or permit to be taken, any action not otherwise expressly permitted by the Loan Agreement that could reasonably be expected to impair the Security Interest or the priority thereof or the Administrative Agent's rights in or to the Pledged Equity or the other Collateral.

iv.     Upon reasonable prior written notice, the Administrative Agent and such persons as the Administrative Agent may designate shall have the right, at the cost and expense of Administrative Agent (except during the continuance of an Event of Default, in which event such cost and expense shall be the sole responsibility of Pledgor), to inspect all of Pledgor's records (and to make extracts and copies from such records) concerning the Pledged Equity and to verify under reasonable procedures the validity, amount, quality, quantity, value, condition and status of, or any other matter relating to, the Pledged Equity or the other Collateral.

v.     At its option after the occurrence and during the continuance of an Event of Default, Administrative Agent may discharge past due taxes, assessments, charges, fees, liens, security interests or other encumbrances at any time levied or placed on the Pledged Equity or the other Collateral, and may pay for the maintenance and preservation of the Pledged Equity or the other Collateral to the extent Pledgor fails to do so as required hereby and by the Loan Documents, and Pledgor agrees to reimburse the Administrative Agent on demand for any payment made or any reasonable expense incurred by the Administrative Agent pursuant to the foregoing authorization; provided, however, that nothing in this paragraph shall be interpreted as excusing Pledgor from the performance of, or imposing any obligation on the Administrative Agent to cure or perform, any covenants or other promises of Pledgor with respect to taxes, assessments, charges, fees, liens, security interests or other encumbrances and maintenance as set forth herein or in the Loan Documents.

vi.     Pledgor shall observe and perform all the conditions and obligations to be observed and performed by it under each contract, agreement or instrument relating to the Pledged Equity and the other Collateral, all in accordance with the terms and conditions thereof, and Pledgor agrees to indemnify, defend and hold harmless the Administrative Agent from and against any and all liability to perform such conditions and obligations, except if caused by the gross negligence or willful misconduct of Administrative Agent.

vii.     Pledgor shall not make, nor permit to be made, an assignment, pledge or hypothecation of the Pledged Equity or the other Collateral or grant any other lien, security interest or other encumbrance in respect of the Pledged Equity or the other Collateral.  Pledgor not shall make nor permit to be made any transfer of the Pledged Equity or the other Collateral, and Pledgor shall remain the owner, beneficially and of record, of the Pledged Equity and the other Collateral.

4.     <u>Pledged Equity Interests</u>.

a.     <u>Pledged Equity; Certificated Securities</u>.  Pledgor represents and warrants that, except as otherwise specified on <u>Schedule A</u> hereto, none of the Pledged Equity is issued in the form of Certificated Securities.  Pledgor represents and warrants that it has delivered to Administrative Agent all Certificated Securities constituting the Pledged Equity, duly indorsed in blank within the meaning of the UCC, and all such Certificated Securities have been in the physical possession of the applicable Pledgor at all times prior to such delivery to Administrative Agent.  Pledgor covenants and agrees that it shall not permit each Pledged Entity to convert existing Equity Interests, or issue new Equity Interests. Notwithstanding the foregoing, Pledgor shall promptly notify Administrative Agent if any Equity Interests with respect to each Pledged

7

4870-8593-1522.4

Entity (whether now owned or hereafter acquired by Pledgor) is not evidenced by a Certificated Security, and shall promptly thereafter take all actions required to perfect the security interest of Administrative Agent in such Pledged Equity under applicable law as required under Section 2. Pledgor further agrees to take such additional actions as Administrative Agent deems necessary or desirable to effect the foregoing and to permit Administrative Agent to exercise any of its rights and remedies hereunder and agrees to provide an opinion of counsel satisfactory to Administrative Agent with respect to any such pledge of Equity Interests which are not Certificated Securities promptly upon request of Administrative Agent. WITHOUT LIMITING THE EFFECT OF THE IMMEDIATELY PRECEDING CLAUSE AND SUBJECT TO SECTION 2 HEREOF, PLEDGOR HEREBY GRANTS TO ADMINISTRATIVE AGENT AN IRREVOCABLE PROXY TO, FOLLOWING THE OCCURRENCE AND DURING THE CONTINUANCE OF AN EVENT OF DEFAULT, VOTE THE PLEDGED EQUITY AND TO EXERCISE ALL OTHER RIGHTS, POWERS, PRIVILEGES AND REMEDIES TO WHICH A HOLDER OF THE PLEDGED EQUITY WOULD BE ENTITLED (INCLUDING WITHOUT LIMITATION (A) GIVING OR WITHHOLDING WRITTEN CONSENTS, (B) CALLING SPECIAL MEETINGS, (C) VOTING AT SUCH MEETINGS, AND (D) VOTING AT ANY TIME OR PLACE) WITH RESPECT TO ANY ACTION, DECISION, DETERMINATION OR ELECTION BY THE PLEDGED ENTITIES OR THE HOLDERS OF THE RESPECTIVE EQUITY INTERESTS THEREIN THAT THE PLEDGED EQUITY (OR ANY NEW OR ADDITIONAL EQUITY INTEREST IN SUCH PLEDGED ENTITY) BE, OR CEASE TO BE, A CERTIFICATED SECURITY, AND ALL OTHER MATTERS RELATED TO ANY SUCH ACTION, DECISION, DETERMINATION OR ELECTION, WHICH PROXY SHALL BE EFFECTIVE AUTOMATICALLY AND WITHOUT THE NECESSITY OF ANY ACTION (INCLUDING ANY TRANSFER OF ANY PLEDGED EQUITY ON THE RECORD BOOKS OF THE ISSUER THEREOF BY ANY OTHER PERSON (INCLUDING THE ISSUER OF THE PLEDGED EQUITY OR ANY OFFICER OR AGENT THEREOF) AS OF THE DATE HEREOF) AND WHICH PROXY SHALL ONLY TERMINATE UPON THE CURE OF SUCH EVENT OF DEFAULT. THE PROXIES AND POWERS GRANTED BY PLEDGOR PURSUANT TO THIS AGREEMENT ARE COUPLED WITH AN INTEREST AND ARE GIVEN TO SECURE THE PERFORMANCE OF PLEDGOR'S OBLIGATIONS UNDER THIS AGREEMENT.

b.    <u>Registration in Nominee Name; Denominations</u>.  Pledgor hereby agrees that (i) the Administrative Agent shall have the right (in its sole and absolute discretion) to hold any Pledged Equity in its own name as Administrative Agent or in the name of its nominee, (ii) at the Administrative Agent's request, Pledgor will promptly give to Administrative Agent copies of any material notices or other communications received by it with respect to any Pledged Equity registered in its name, and (iii) the Administrative Agent shall at all times have the right to exchange any certificates, instruments or other documents representing or evidencing any Pledged Equity owned or held by or on behalf of Pledgor for certificates, instruments or other documents of smaller or larger denominations for any purpose consistent with this Agreement.

c.    <u>Pledged Equity</u>.  Pledgor shall (a) deliver to Administrative Agent any Certificated Securities representing the Pledged Equity, in form and content reasonably acceptable to Administrative Agent, duly endorsed or subscribed in blank, or accompanied by appropriate stock or unit powers or other instruments of transfer, pledge or assignment, and enter into such other arrangements as may be necessary to give control of any Investment Property to Administrative Agent within the meaning of Section 8-106 of the UCC, (b) cause each Pledged Entity to execute and deliver the Agreement and Acknowledgment to Pledge attached hereto as Exhibit A (the "<u>Agreement and Acknowledgment</u>"), and (c) promptly take all other actions required to perfect the security interest of Administrative Agent in the Collateral under applicable law. It is the intention of Pledgor and Administrative Agent that at all times while any Secured Obligations under the Loan Agreement remains outstanding, the Pledged Equity shall constitute Investment Property, and, to that end, Pledgor shall take, and shall cause the  Pledged Entity to take, all necessary action to obtain such classification pursuant to the UCC.

8

d. <u>Issuance or Acquisition of Equity Interests</u>. Pledgor shall not, without executing and delivering, or causing to be executed and delivered, to the Administrative Agent such agreements, documents and instruments as the Administrative Agent may reasonably require, issue or acquire any Equity Interests that (i) is dealt in or traded on a securities exchange or in a securities market, (ii) by its terms expressly provides that it is a Security (as defined in the UCC) governed by Article 8 of the UCC, (iii) is an investment company security, (iv) is held in a Securities Account (as defined in the UCC) or (v) constitutes a Security or a Financial Asset (each as defined in the UCC).

e. <u>Voting and Distributions</u>.

i. Unless and until an Event of Default shall have occurred and for so long as same is continuing:

(1) Pledgor shall be entitled to exercise any and all voting and/or other consensual rights and powers inuring to an owner of the Pledged Equity, or any part thereof, for any purpose consistent with the terms of this Agreement and the other Loan Documents; provided, however, that Pledgor will not exercise any such right if the result thereof is reasonably likely to adversely affect the rights inuring to a holder of the Pledged Equity or the rights and remedies of the Administrative Agent under this Agreement or any of the other Loan Documents.

(2) Pledgor shall be entitled to receive, retain or use any cash Distributions paid on the Pledged Equity not in connection with a partial or total liquidation or dissolution, return of capital, capital surplus or paid-in surplus, in each case, to the extent expressly permitted pursuant to the terms of the Loan Agreement.

(3) All non-cash Distributions paid or payable in cash or otherwise in connection with a partial or total liquidation or dissolution, return of capital, capital surplus or paid-in surplus, and all other Distributions (other than distributions referred to in the preceding sentence) made on or in respect of the Pledged Equity, whether paid or payable in cash or otherwise, whether resulting from a subdivision, combination or reclassification of the outstanding Pledged Equity or received in exchange for the Pledged Equity, or any part thereof, or in redemption thereof, or as a result of any merger, consolidation, acquisition or other exchange of assets to which such issuer may be a party or otherwise, shall be and become part of the Pledged Equity, and, if received by Pledgor, shall not be commingled with any of its other funds or property but shall be held separate and apart therefrom, shall be held in trust for the benefit of the Administrative Agent and the Lenders hereunder and shall be forthwith delivered to the Administrative Agent in the same form received (with any necessary endorsement).

ii. Without limiting the generality of the foregoing, upon the occurrence and during the continuance of an Event of Default, all rights of Pledgor to receive and retain Distributions and to exercise the voting and consensual rights and powers it is entitled to exercise pursuant to the above, and the obligations of the Administrative Agent in connection therewith, shall cease, and all such rights shall thereupon become vested in the Administrative Agent, which shall have the sole and exclusive right and authority to exercise such voting and consensual rights and powers.

iii. All Distributions received by or on behalf of Pledgor contrary to the provisions of this Agreement or the Loan Agreement shall be held in trust for the benefit of Administrative Agent, shall be segregated from other property or funds of Pledgor and shall be forthwith delivered to the Administrative Agent upon demand in the same form as so received (with any necessary endorsement). Any and all money and other property paid over to or received by the Administrative Agent pursuant to the provisions of this Section shall be applied by Administrative Agent to the Secured Obligations in such order as Administrative

9

Agent shall determine in its sole discretion.

4.      Further Assurances

Pledgor hereby covenants and agrees, at the cost and expense of Pledgor, to execute, acknowledge, deliver and/or cause to be duly filed all such further agreements, instruments and other documents (including favorable legal opinions), and take all such further actions, that are necessary to preserve, protect and perfect to the extent contemplated hereby (including without limitation as a result of any change in applicable law) the Pledged Equity and the Security Interest granted by Pledgor and the rights and remedies created hereby, including the payment of any fees and taxes required in connection with its execution and delivery of this Agreement, the granting by Pledgor of the Security Interest and the filing of any financing statements or other documents in connection herewith or therewith.  In addition, to the extent permitted by applicable law, Pledgor hereby irrevocably authorizes the Administrative Agent to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Pledged Equity and the other Collateral and agrees that a photographic or other reproduction of this Agreement or of a financing statement shall be sufficient as a financing statement and may be filed as a financing statement in any and all jurisdictions.  Pledgor hereby further irrevocably authorizes Administrative Agent to file a record or records, including financing statements, in all jurisdictions and with all filing offices that Administrative Agent may determine, in its sole and absolute discretion, are necessary, advisable or prudent to perfect the Security Interest granted by Pledgor and agrees that such financing statements may describe the Pledged Equity and the other Collateral in the same manner as described herein or may contain an indication or description of collateral that describes such property in any other manner that the Administrative Agent may determine, in its sole and absolute discretion, is necessary, advisable or prudent to perfect the Security Interest granted by Pledgor.

5.      Administrative Agent Appointed Attorney-In-Fact

Pledgor hereby appoints the Administrative Agent as Pledgor's true and lawful agent and attorney-in-fact for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instrument that the Administrative Agent may deem necessary or advisable to accomplish the purposes hereof, which appointment is irrevocable and coupled with an interest and is effective only upon the occurrence and during the continuance of an Event of Default.  The Administrative Agent shall have the right, with power of substitution for Pledgor and in Pledgor's name or otherwise, for the use and benefit of the Administrative Agent, only upon the occurrence and during the continuance of an Event of Default, (i) to receive, endorse, assign and/or deliver any and all notes, acceptances, checks, drafts, money orders or other evidences of payment relating to the Pledged Equity, the other Collateral or any part thereof; (ii) to demand, collect, receive payment of, give receipt for, and give discharges and releases of, any of such Pledged Equity or other Collateral; (iii) to commence and prosecute any and all suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect or otherwise realize on any of the Pledged Equity or the other Collateral or to enforce any rights in respect of any of such Collateral; (iv) to settle, compromise, compound, adjust or defend any actions, suits or proceedings relating to any of such Pledged Equity or other Collateral; (v) to notify, or to require Pledgor to notify, issuers or obligors to make payment directly to the Administrative Agent, and (vi) to use, sell, assign, transfer, pledge, make any agreement with respect to or otherwise deal with any of the Pledged Equity or the other Collateral, and to do all other acts and things necessary to carry out the purposes of this Agreement, as fully and completely as though the Administrative Agent were the absolute owner of such Pledged Equity or other Collateral for all purposes; provided, however, that nothing herein contained shall be construed as requiring or obligating the Administrative Agent to make any commitment or to make any inquiry as to the nature or sufficiency of any payment received by the Administrative Agent, or to present or file any claim or notice, or to take any action with respect to any of the Pledged Equity, the other Collateral or the moneys due or to become due in respect thereof or any property covered thereby, and no action taken or omitted to be taken by the

10

Administrative Agent with respect to any of the Pledged Equity or the other Collateral shall give rise to any defense, counterclaim or offset in favor of Pledgor or to any claim or action against Administrative Agent. The provisions of this Section 5 shall in no event relieve Pledgor of any of its obligations hereunder or under the other Loan Documents with respect to any of the Pledged Equity or the other Collateral or impose any obligation on the Administrative Agent to proceed in any particular manner with respect to any of the Pledged Equity or the other Collateral, or in any way limit the exercise by the Administrative Agent of any other or further right that it may have on the date of this Agreement or hereafter, whether hereunder, under any Loan Document, by law or otherwise.

6.      <u>Remedies Upon Default</u>

a.      <u>Remedies Generally</u>.

i.      <u>General Rights</u>.  If any Event of Default shall have occurred and is continuing, the Administrative Agent shall have all the rights and remedies of a secured party under the UCC or otherwise available at law or in equity and, in addition, the Administrative Agent may without being required to give any notice, (i) liquidate any of the Pledged Equity or the other Collateral for cash for application to the payment of the Secured Obligations, absolutely free of any right or claim of Pledgor of any kind.  If Administrative Agent should be required by law to give any notice to Pledgor of the sale of any Pledged Equity or other Collateral, Pledgor agrees that notice mailed postage prepaid to Pledgor in accordance with Section 17 below at least ten (10) days before the sale shall be reasonable.  Without limiting the generality of the foregoing, Pledgor agrees that the Administrative Agent shall have the right, subject to the mandatory requirements of applicable law, to sell or otherwise dispose of any of the Pledged Equity or the other Collateral at public or private sale or at any broker's board or on any securities exchange, for cash, upon credit or for future delivery as the Administrative Agent shall deem appropriate.  At any such sale, the Pledged Equity and the other Collateral, or any portion thereof, to be sold may be sold in one lot as an entirety or in separate parcels, as Administrative Agent may determine.  The Administrative Agent shall be irrevocably authorized at any such sale of the Pledged Equity or other Collateral (if it deems it advisable to do so) to restrict the prospective bidders or purchasers to persons who will represent and agree that they are purchasing such Pledged Equity or other Collateral for their own account for investment and not with a view to the distribution or sale thereof, and upon consummation of any such sale, the Administrative Agent shall have the right to assign, transfer and deliver to the purchaser or purchasers thereof the Pledged Equity or other Collateral so sold.  Each such purchaser at any sale shall hold the property sold absolutely free from any claim or right on the part of Pledgor and Pledgor waives and releases, to the extent permitted by law, any right of equity of redemption of the Pledged Equity and the other Collateral, stay or appraisal which Pledgor now has or at any time in the future may have under any rule of law or statute, now existing or hereafter enacted.  Administrative Agent shall not be required to proceed against the Pledged Equity and the other Collateral in any order and Administrative Agent may proceed against any and all of the Pledged Equity and the other Collateral in any order it deems advisable in its sole discretion.

ii.      <u>Application of Proceeds of Sale</u>.  The Administrative Agent may apply the proceeds of any collection or sale of the Pledged Equity or the other Collateral, as well as any Collateral consisting of cash, to the Secured Obligations in such order as Administrative Agent shall determine.  The Administrative Agent shall have sole discretion as to the time of application of any such proceeds, moneys or balances in accordance with this Agreement.

7.      <u>Reimbursement of Administrative Agent</u>

In the event that Pledgor shall breach or fail to timely perform any provisions of this Agreement, Pledgor shall, immediately upon demand by Administrative Agent, pay all of Administrative Agent's and each Lender's costs and expenses (including court costs and attorneys' fees) incurred by Administrative

11

Agent and Lenders in the enforcement hereof or the preservation of all of Administrative Agent's and each Lender's rights hereunder, together with interest thereon from the date requested by Administrative Agent until the date of payment to Administrative Agent and Lenders. The covenant contained in this Section shall survive the payment and performance of the Secured Obligations.

8.      Waivers; Amendment

No failure or delay of the Administrative Agent in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power. The rights and remedies of the Administrative Agent are cumulative and are not exclusive of any rights or remedies that Administrative Agent would otherwise have. No waiver of any provision of this Agreement or any other agreement or consent to any departure by Pledgor or any Pledged Entity therefrom shall in any event be effective unless the same shall be in writing and signed by the Administrative Agent, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on Pledgor in any case shall entitle Pledgor to any other or further notice or demand in similar or other circumstances. Neither this Agreement nor any provision hereof may be waived, amended, supplemented or otherwise modified, or any departure therefrom consented to, except pursuant to an agreement or agreements in writing entered into between the Administrative Agent and Pledgor to which such waiver, amendment, supplement, modification or consent relates.

9.      Security Interest Absolute

All rights of the Administrative Agent hereunder, the Security Interest and all obligations of Pledgor hereunder shall be absolute and unconditional irrespective of (i) any lack of validity or enforceability of any of the Loan Documents, any agreement with respect to any of the Secured Obligations, or any other agreement or instrument relating to any of the foregoing, (ii) any change in the time, manner or place of payment of, or in any other term of, all or any of the Secured Obligations, or any other waiver, amendment, supplement or other modification of, or any consent to any departure from any of the Loan Documents or any other agreement or instrument relating to any of the foregoing, (iii) any exchange, release or non-perfection of any lien on any other collateral, or any release or waiver, amendment, supplement or other modification of, or consent under, or departure from, any guaranty, securing or guaranteeing all or any of the Secured Obligations, or (iv) any other circumstance that might otherwise constitute a defense available to, or a discharge of, Pledgor in respect of the Secured Obligations or in respect of this Agreement, any other Loan Document, or any other agreement or instrument between Pledgor and Administrative Agent and/or any Lender.

10.     Waivers; Obligations Not Waived

Pledgor waives presentment, demand of payment and protest in connection with any of the Obligations or the Note and also waives notice of acceptance of its pledge hereunder and notice of protest for nonpayment. To the fullest extent permitted by applicable law, the obligations of Pledgor hereunder shall not be affected by (i) the failure of the Administrative Agent to assert any claim or demand or to enforce or exercise any right or remedy against Borrower or any guarantor under the provisions of the Loan Documents, or any other document or instrument, or otherwise, (ii) any rescission, waiver, amendment or modification of, or any release from, any of the terms or provisions of this Agreement, any other document or instrument, any guarantee or any other agreement or (iii) the failure to perfect any security interest in, or the release of, any of the security held by or on behalf of the Administrative Agent or any Lender.

11.     Defenses Waived

12

4870-8593-1522.4

Pledgor waives any defense based on or arising out of any defense of Borrower or any guarantor of the Secured Obligations or the unenforceability of the Secured Obligations or any part thereof from any cause, or the cessation from any cause of the liability of Borrower or any guarantor of the Secured Obligations, other than the final and indefeasible payment in full in cash and full performance of the Secured Obligations. The Administrative Agent may, at its election, following the occurrence and during the continuance of an Event of Default, foreclose on any security held by it by one or more judicial or nonjudicial sales, accept an assignment of any such security in lieu of foreclosure, compromise or adjust any part of the Secured Obligations, make any other accommodation with any other person or exercise any other right or remedy available to it against any other person, without affecting or impairing in any way the liability of Pledgor hereunder except to the extent the Secured Obligations have been fully, finally and indefeasibly paid in cash. Pursuant to applicable law, Pledgor waives any defense arising out of any such election even though such election operates, pursuant to applicable law, to impair or to extinguish any right of reimbursement or subrogation or other right or remedy of Pledgor against each Pledged Entity, or any security.

12.     Agreement To Pay; Subordination

Upon payment by Pledgor of any sums to the Administrative Agent, all rights of Pledgor against any other person or entity arising as a result thereof by way of right of subrogation, contribution, reimbursement, indemnity or otherwise shall in all respects be subordinate and junior in right of payment to the prior final and indefeasible payment in full in cash of the Secured Obligations. If, notwithstanding the foregoing, any amount shall be paid to Pledgor on account of (i) such subrogation, contribution, reimbursement, indemnity or similar right or (ii) any such debt of any other person or entity, such amount shall be held in trust for the benefit of the Administrative Agent and shall forthwith be paid to Administrative Agent to be credited against the payment of the Secured Obligations, whether matured or unmatured.

13.     Information

Pledgor assumes all responsibility for being and keeping itself informed of all circumstances bearing upon the risk of nonpayment of the Secured Obligations and the nature, scope and extent of the risks that Pledgor assumes and incurs hereunder, and agrees that the Administrative Agent will not have any duty to advise Pledgor of information known to it regarding such circumstances or risks.

14.     Reasonable Care

Beyond the exercise of reasonable care to assure the safe custody of the Pledged Equity while held hereunder, under no circumstances shall Administrative Agent be deemed to assume any responsibility for or obligation or duty with respect to any part or all of the Pledged Equity or the other Collateral of any nature or kind or any matter or proceedings arising out of or relating thereto. Administrative Agent shall not have any duty or liability to collect any sums due in respect thereof or to protect or preserve its or Pledgor's rights pertaining thereto and shall be relieved of all responsibility for any of the Pledged Equity or the other Collateral upon surrendering the same to Pledgor.

15.     Marshalling

Administrative Agent shall not be required to marshal any present or future collateral security (including, but not limited to the Pledged Equity) for, or other assurances of payment of, the Secured Obligations, or any of them, or to resort to such collateral security or other assurances of payment in any particular order. All of Administrative Agent's rights and remedies hereunder and in respect of such

13

4870-8593-1522.4

security and other assurances of payment shall be cumulative and in addition to all other rights, however existing or arising. To the extent that Pledgor lawfully may, Pledgor hereby agrees that it will not invoke any law relating to the marshalling of collateral that might cause delay in or impede the enforcement of Administrative Agent's rights under this Agreement or under any other instrument evidencing any of the Secured Obligations or under which any of the Secured Obligations is outstanding or by which any of the Secured Obligations is secured or payment thereof is otherwise assured, and to the extent that it lawfully may, Pledgor hereby irrevocably waives the benefits of all such laws.

16.    Termination; Effectiveness

(a)    Pledgor's obligations hereunder shall terminate when all the Secured Obligations have been finally and indefeasibly paid in full in cash and all other obligations performed thereunder.

(b)    This Agreement shall continue to be effective or be automatically reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Secured Obligations is rescinded or must otherwise be restored or returned by the Administrative Agent or any of the Secured Obligations as a preference, fraudulent conveyance or otherwise under any bankruptcy, insolvency or similar law, all as though such payment had not been made; provided that in the event payment of all or any part of the Secured Obligations is rescinded or must be restored or returned, all reasonable costs and expenses (including, without limitation, attorneys' fees, the allocated cost of internal counsel and disbursements) actually incurred by the Administrative Agent or any holder of the Secured Obligations in defending and enforcing such reinstatement shall be deemed to be included as a part of the Secured Obligations.

17.    Notices

All communications and notices hereunder shall be in writing and given as provided in the Loan Agreement, in each case, at the applicable notice address specified (a) in the Loan Agreement, with respect to Administrative Agent, and (b) on Schedule A hereto (or at such other address as the applicable Pledgor may thereafter specify for such purpose in accordance with the terms of the Loan Agreement), with respect to Pledgor.

18.    Binding Effect; Several Agreement; Assignments

Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the successors and assigns of such party, and all covenants, promises and agreements by or on behalf of Pledgor that are contained in this Agreement shall bind and inure to the benefit of each party hereto and its successors and assigns. Notwithstanding the foregoing, Pledgor shall not have any right to assign its rights or obligations hereunder without the consent of Administrative Agent, and any such assignment in violation of this Section 18 shall be null and void.

19.    Survival of Agreement; Severability

All covenants, agreements, representations and warranties made by Pledgor herein and in the certificates or other instruments prepared or delivered in connection with or pursuant to this Agreement shall be considered to have been relied upon by the Administrative Agent and shall survive the execution and delivery of hereof, regardless of any investigation made by the Administrative Agent or on its behalf, and shall continue in full force and effect until this Agreement shall terminate. In the event any one or more of the provisions contained in this Agreement should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein or therein shall not in any way be affected or impaired thereby (it being understood that the invalidity of a particular provision in a particular jurisdiction shall not in and of itself affect the validity of such provision in any

4870-8593-1522.4

other jurisdiction).  The parties shall endeavor in good-faith negotiations to replace the invalid, illegal or unenforceable provisions with valid provisions the economic effect of which comes as close as possible to that of the invalid, illegal or unenforceable provisions.

20.   Counterparts

This Agreement may be executed and delivered in any number of counterparts each of which shall constitute an original, but all of which taken together shall constitute but one and the same agreement. Delivery of an executed signature page to this Agreement by facsimile or e-mail transmission shall be effective as delivery of a manually signed counterpart of this Agreement.

21.   Headings

Section headings used herein are for convenience of reference only, are not part of this Agreement and shall not affect the construction of, or be taken into consideration in interpreting, this Agreement.

22.   Governing Law

This Agreement and the other Loan Documents and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement or any of the other Loan Documents and the transactions contemplated hereby shall be governed by the laws of the State of New York.

23.   Submission to Jurisdiction; Venue

(a)   Pledgor hereby irrevocably and unconditionally (i) agrees that any legal action, suit or proceeding arising out of or relating to this Agreement may be brought in the courts of the State of New York or of the United States of America for the Southern District of New York and (ii) submits to the exclusive jurisdiction of any such court in any such action, suit or proceeding.  Final judgment against Pledgor in any action, suit or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment.  Nothing in this Agreement or any other Loan Document shall affect the right of Administrative Agent to bring any action or proceeding relating to this Agreement or any other Loan Document against Pledgor, any Pledged Entity or their respective properties in the courts of any jurisdiction.

(b)   Pledgor irrevocably and unconditionally waives, to the fullest extent permitted by Applicable Law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Agreement in any court referred to in Section 23(a) and the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

24.   Waiver of Jury Trial

**PLEDGOR HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.**

25.   Joint and Several Liability.

THE LIABILITY OF PLEDGOR UNDER THIS AGREEMENT SHALL BE JOINT AND SEVERAL WITH BORROWER UNDER THIS AGREEMENT AND THE OTHER LOAN

15

DOCUMENTS.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

4870-8593-1522.4

IN WITNESS WHEREOF, the parties hereto have duly executed this Pledge and Security Agreement as of the day and year first above written.

**PLEDGOR:**

_____
**SCOTT ZANKL**

_____
**KRISTEN ZANKL**

*Signature Page to Pledge and Security Agreement*

ADMINISTRATIVE AGENT:

**FVP SERVICING, LLC**,
as Administrative Agent

By: _Keith Lee_ _____
Name: _Keith Lee_ _____
Title: _Manager_ _____

*Signature page to Pledge and Security Agreement*

18

**SCHEDULE A**
**List of Pledged Equity Interests and Pledgor Information**

I.      Pledgor Information

| Pledgor | Pledgor Notice Address |
|---|---|
| Scott Zankl | 1001 Clint Moore Road, Unit B<br>Boca Raton, FL 33487<br>Attn: Scott Zankl |
| Kristen Zankl | 1001 Clint Moore Road, Unit B<br>Boca Raton, FL 33487<br>Attn: Scott Zankl |

II.     Pledged Equity Interests

| Pledgor | Pledged Entity | Description of Equity Interests Owned | Percentage of Issued Equity Interests Owned | Certificated Security (Yes/No) and Certificate No. (if applicable) |
|---|---|---|---|---|
| Scott Zankl | Karma of Broward, Inc. | Stock | 50% | No |
| | Karma of Palm Beach, Inc. | Stock | 50% | No |
| | Excell Auto Sport and Service, Inc. | Stock | 23% | No |
| | Excell Auto Finance, LLC | Membership Interests | 25% | No |
| Kristen Zankl | Karma of Broward, Inc. | Stock | 50% | No |
| | Karma of Palm Beach, Inc. | Stock | 50% | No |
| | Excell Auto Sport and Service, Inc. | Stock | 0% | No |
| | Excell Auto Finance, LLC | Membership Interests | 0% | No |

4870-8593-1522.4

**EXHIBIT A**

Agreement and Acknowledgment

Each of the undersigned (each, a "Pledged Entity") hereby consents to the pledge of Equity Interests in such Pledged Entity as described in the Pledge and Security Agreement dated as of January 26, 2022 (as amended, modified, supplemented, extended, restated or renewed from time to time, the "Pledge Agreement") by and among Scott Zankl and Kristen Zankl, individual and collectively as Pledgor, and FVP Servicing, LLC, as Administrative Agent. Each Pledged Entity agrees that upon the receipt of a written notice from Administrative Agent that an Event of Default has occurred and is continuing under the Loan Agreement, each Pledged Entity shall pay all Distributions on the Pledged Equity issued by it directly to Administrative Agent. All capitalized terms used herein not otherwise defined herein shall have the meanings ascribed to such terms in the Pledge Agreement.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the undersigned hereby represents, warrants, covenants and agrees for the benefit of Administrative Agent as follows:

1. Representations and Warranties. Each of the undersigned represents and warrants that (a) the execution and delivery of the Pledge Agreement does not violate any of such undersigned's Organizational Agreements or any other agreement to which such undersigned is a party or by which any of the property of such undersigned is bound, (b) the undersigned has not entered into a control agreement perfecting a security interest in any of the Pledged Equity Interests favor of any other party, other than pursuant to a Permitted Lien, (c) the Collateral is not subject to any security interest or lien in favor of any person or entity (or otherwise) other than Administrative Agent and has not been pledged, transferred or assigned to, and is not otherwise in the control of, any person or entity (or otherwise) other than Administrative Agent, in each case, other than pursuant to a Permitted Lien, (d) none of the undersigned has any present claim, right of offset, or counterclaim against Pledgor under or with respect to the Collateral or otherwise under the Organizational Agreements of any of the undersigned, (e) no Pledgor is in default to the undersigned or otherwise under or in respect of any of its respective obligations under any of such undersigned's Organizational Agreements, and (f) all of the representations and warranties of Pledgor made in the Pledge Agreement are true, accurate and complete in all respects and, without limitation of the foregoing, the ownership of each Pledged Entity, as set forth on Schedule A to the Pledge Agreement, is true, accurate and complete in all respects.

2. Covenants and Agreements.

(a) Books and Records. Each of the undersigned (i) shall cause all of its respective books and records to reflect the pledge of the Collateral to Administrative Agent and agrees not to consent to or to permit any transfer thereof or any other action that may be taken by Pledgor that might constitute an Event of Default so long as any of the Secured Obligations remain outstanding, (ii) agrees that Administrative Agent and/or its representatives may, upon reasonable advance notice and at any reasonable time during normal business hours, inspect the books, records and properties of such undersigned.

(b) UCC Matters. The undersigned confirms, agrees and acknowledges that (i) all Pledged Equity has been validly issued and is fully paid for, (ii) none of the Pledged Equity in the undersigned is, except as otherwise specified in Schedule A to the Pledge Agreement, a Certificated Security, (iii) with respect to such Pledged Equity so designated in Schedule A to the Pledge Agreement as a Certificated Security (A) such Pledged Equity is and shall continue to be evidenced by one (1) certificate issued to the Pledgor specified in Schedule A, as its sole members or shareholders, as the case may be, (B) such certificate represents and embodies all right, title and interest in and to the Pledged Equity, (C) each such original

4870-8593-1522.4

certificate that has been physically delivered to Administrative Agent, was in the physical possession of the Pledgor at all times prior to such delivery to Administrative Agent, and has been duly indorsed in blank within the meaning of the UCC, and (D) such certificate has not been modified or amended and remains in full force and effect, (iv) ownership of all Pledged Equity in each of the undersigned is registered in the respective books and records of the undersigned in the name of the Pledgor, in such amounts and in such manner as specified in Schedule A to the Pledge Agreement, subject only to the pledge thereof in favor of Administrative Agent as security for the Secured Obligations and Permitted Liens, (v) notwithstanding any provisions in the Organizational Agreements, Pledgor is hereby authorized and permitted to pledge, assign and grant a security interest in the Collateral in favor of Administrative Agent pursuant to the Pledge Agreement, (vi) this Agreement and Acknowledgment is intended to, and shall, provide Administrative Agent with "control" over the Collateral within the meaning of Articles 8 and 9 of the UCC, (vii) each of the undersigned shall comply with all instructions relating to the Collateral originated by Administrative Agent without further authorization or consent from Pledgor, the intention of such covenant being to comply with Section 8-106(c)(2) of the UCC, and (viii) no additional Equity Interest held by Pledgor in any of the undersigned other than those held by Pledgor and specified in Schedule A to the Pledge Agreement are valid or will be recognized by the undersigned.

(c) Organizational Agreements; Additional Issuances.  None of the undersigned shall (i) suffer or permit its Organizational Agreements to be amended or modified in any manner adverse to Administrative Agent, or (ii) issue any additional Equity Interests (other than to Pledgor), in each case, without the prior written consent of Administrative Agent.

(d) Notices; Defaults.  Each of the undersigned shall give Administrative Agent a copy of all notices, reports or communicates received or given pursuant to its Organizational Agreements promptly after the same shall have been received or contemporaneously with the giving thereof, as the case may be. The undersigned shall permit Administrative Agent the right to cure any default (beyond any applicable notice and cure periods) by Pledgor under the Organizational Agreements, and no notice of any default by Pledgor with respect to the Organizational Agreements shall be effective unless and until such notice has been received by Administrative Agent; provided, however, in no event shall Administrative Agent be obligated to cure such default. Administrative Agent shall have fifteen (15) days in excess of the amount of time to cure any such default as given to Pledgor under the Organizational Agreements, as measured from the date notice of such default has been received by Administrative Agent.

3. Events of Default; Sales of Collateral.  Each of the undersigned hereby agrees that during the continuance of an Event of Default, (a) all Distributions will be made directly to Administrative Agent, (b) Administrative Agent shall have the sole and exclusive right to exercise all voting, consensual and other powers of ownership pertaining to the Collateral in accordance with the Pledge Agreement, (c) Administrative Agent may take any reasonable action which Administrative Agent may deem necessary for the maintenance, preservation and protection of any of the Collateral or Administrative Agent's security interests therein, including, without limitation, the right to declare any or all Secured Obligations to be immediately due and payable without demand or notice and the right to transfer any of the Pledged Equity or other Collateral into Administrative Agent's name or the name of any designee or nominee of Administrative Agent, (d) Administrative Agent may dispose of the Collateral in accordance with Articles 8 and 9 of the UCC and the provisions of the Pledge Agreement, in which case, notwithstanding anything to the contrary in the Organizational Agreements, (i) Administrative Agent, or its designee or assign, at its election, shall automatically be admitted as a shareholder, member or partner, as the case may be, of the undersigned and shall be entitled to receive all benefits and exercise all rights in connection therewith pursuant to the Organizational Agreements of the undersigned, (ii) the undersigned shall recognize Administrative Agent (or its designee or assign), at its election, as the successor in interest to Pledgor, and (iii) notwithstanding any provisions to the contrary in the Organizational Agreements, Administrative Agent shall not be required to pay any fees or other consideration of any type, or execute any documents,

or be limited by any requirements or conditions whatsoever (regarding Distributions receivable by Administrative Agent from the undersigned, Administrative Agent's financial condition or otherwise), other than any such requirements, if any, that are expressly set forth in the Loan Documents.

4. No Liability.  Notwithstanding the security interests of Administrative Agent in the Collateral or any of its rights hereunder or under the Pledge Agreement, (a) Administrative Agent shall have no obligation or liability whatsoever for matters in connection with the Pledged Equity arising or occurring, directly or indirectly, prior to Administrative Agent's (or its designee's, successor's or assign's) becoming a shareholder, member or partner, as the case may be, of the undersigned, and (b) Administrative Agent shall not be obligated to perform any of the obligations or duties of Pledgor under any of the undersigned's Organizational Agreements, or to take any action to collect or enforce any claim for payment due Pledgor arising thereunder.

5. Transfers.  Each of the undersigned acknowledges that the security interest of Administrative Agent in the Collateral and all of Administrative Agent's rights and remedies under the Pledge Agreement may be freely transferred or assigned by Administrative Agent. In the event of any such transfer or assignment, all of the provisions of this Agreement and Acknowledgment shall inure to the benefit of the transferees, successors, and/or assigns of Administrative Agent. The provisions of this Agreement and Acknowledgment shall likewise be binding upon any and all permitted transferees, successors and assigns of the undersigned.

6. Further Assurances.  Each of the undersigned shall, from time to time, promptly execute and deliver such further instruments, documents and agreements, and perform such further acts as may be reasonably necessary or proper to carry out and effect the terms of the Pledge Agreement and this Agreement and Acknowledgment.

7. Reliance.  This Agreement and Acknowledgment is being given to induce Administrative Agent to accept the Pledge Agreement and with the understanding that Administrative Agent will rely hereon.

8. Counterparts.  This Agreement and Acknowledgment may be executed in counterparts.

9. Miscellaneous.  The provisions of Sections 8, 10, 11, 17-19, 21, 23-25 and 27 of the Pledge Agreement are hereby incorporated herein by this reference (with all references to Pledgor therein deemed to mean and refer to the undersigned).

[The remainder of this page is intentionally left blank.]

4870-8593-1522.4

IN WITNESS WHEREOF, each of the undersigned has duly executed this Agreement and Acknowledgment as of the day and year first above written.

**KARMA OF BROWARD, INC.,**
a Florida corporation

By:_____
Name:
Title:

**KARMA OF PALM BEACH, INC.,**
a Florida corporation

By:_____
Name:
Title:

**EXCELL AUTO SPORT AND SERVICE, INC.,** a Florida corporation

By:_____
Name:
Title:

**EXCELL AUTO FINANCE, LLC,**
a Florida limited liability company

By:_____
Name:
Title:

*Signature Page to Agreement and Acknowledgment*

Exhibit B
Organizational Agreements

[See Attached]

4870-8593-1522.4



# State of Florida

## Department of State

I certify the attached is a true and correct copy of the Articles of Incorporation, as amended to date, of KARMA OF BROWARD, INC., a corporation organized under the laws of the State of Florida, as shown by the records of this office.

The document number of this corporation is P20000026081.

Given under my hand and the
Great Seal of the State of Florida
at Tallahassee, the Capital, this the
Nineteenth day of November, 2021



*Laurel M. Lee*
*Secretary of State*

CR2E022 (01-11)

# Electronic Articles of Incorporation
# For

KARMA OF BROWARD, INC.

**P20000026081
FILED
March 25, 2020
Sec. Of State
wlawrence**

The undersigned incorporator, for the purpose of forming a Florida
profit corporation, hereby adopts the following Articles of Incorporation:

## Article I

The name of the corporation is:

KARMA OF BROWARD, INC.

## Article II

The principal place of business address:

1699 S. FEDERAL HIGHWAY
SUITE 300
BOCA RATON, FL.   33432

The mailing address of the corporation is:

1699 S. FEDERAL HIGHWAY
SUITE 300
BOCA RATON, FL.   33432

## Article III

The purpose for which this corporation is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The number of shares the corporation is authorized to issue is:

100

## Article V

The name and Florida street address of the registered agent is:

THOMAS U GRANER
1699 S. FEDERAL HIGHWAY
SUITE 300
BOCA RATON, FL.   33432

I certify that I am familiar with and accept the responsibilities of
registered agent.

Registered Agent Signature:   THOMAS U. GRANER

**P20000026081
FILED
March 25, 2020
Sec. Of State**
wlawrence

## Article VI

The name and address of the incorporator is:

THOMAS U. GRANER
1699 S. FEDERAL HIGHWAY
SUITE 300
BOCA RATON, FL 33432

Electronic Signature of Incorporator:   THOMAS U. GRANER

I am the incorporator submitting these Articles of Incorporation and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S.  I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of this corporation and every year thereafter to maintain "active" status.

## Article VII

The initial officer(s) and/or director(s) of the corporation is/are:

Title:   P
SCOTT  ZANKL
1699 S. FEDERAL HIGHWAY
BOCA RATON, FL.   33432  US

## Article VIII

The effective date for this corporation shall be:

03/20/2020

**Articles of Amendment**
**to**
**Articles of Incorporation**
**of**

KARMA OF BROWARD, INC.

_____
**(Name of Corporation as currently filed with the Florida Dept. of State)**

P20000026081
_____
(Document Number of Corporation (if known))

Pursuant to the provisions of section 607.1006, Florida Statutes, this *Florida Profit Corporation* adopts the following amendment(s) to its Articles of Incorporation:

**A. If amending name, enter the new name of the corporation:**

_____*The new*
*name must be distinguishable and contain the word "corporation," "company," or "incorporated" or the abbreviation "Corp.,"*
*"Inc.," or Co.," or the designation "Corp," "Inc," or "Co". A professional corporation name must contain the word*
*"chartered," "professional association," or the abbreviation "P.A."*

**B. Enter new principal office address, if applicable:**       _____
*(Principal office address MUST BE A STREET ADDRESS )*

                                                              _____

                                                              _____

**C. Enter new mailing address, if applicable:**               _____
*(Mailing address MAY BE A POST OFFICE BOX)*

                                                              _____

                                                              _____

**D. If amending the registered agent and/or registered office address in Florida, enter the name of the**
**new registered agent and/or the new registered office address:**

       *Name of New Registered Agent*      _____

                                          _____
                                                    *(Florida street address)*

       *New Registered Office Address:* _____, Florida_____
                                                    *(City)*                          *(Zip Code)*

**New Registered Agent's Signature, if changing Registered Agent:**
*I hereby accept the appointment as registered agent. I am familiar with and accept the obligations of the position.*

       _____
              *Signature of New Registered Agent, if changing*

**Check if applicable**
☐ The amendment(s) is/are being filed pursuant to s. 607.0120 (11) (c), F.S.

**If amending the Officers and/or Directors, enter the title and name of each officer/director being removed and title, name, and address of each Officer and/or Director being added:**

*(Attach additional sheets, if necessary)*

*Please note the officer/director title by the first letter of the office title:*

*P = President; V= Vice President; T= Treasurer; S= Secretary; D= Director; TR= Trustee; C = Chairman or Clerk; CEO = Chief Executive Officer; CFO = Chief Financial Officer. If an officer/director holds more than one title, list the first letter of each office held. President, Treasurer, Director would be PTD.*

*Changes should be noted in the following manner. Currently John Doe is listed as the PST and Mike Jones is listed as the V. There is a change, Mike Jones leaves the corporation, Sally Smith is named the V and S. These should be noted as John Doe, PT as a Change, Mike Jones, V as Remove, and Sally Smith, SV as an Add.*

**Example:**

| | | |
|---|---|---|
| X Change | PT | John Doe |
| X Remove | V | Mike Jones |
| X Add | SV | Sally Smith |

| Type of Action (Check One) | Title | Name | Address |
|---|---|---|---|
| 1) X Change | P | KRISTEN N.. ZANKL | 1699 S FEDERAL HIGHWAY |
| ___ Add | | | BOCA RATON, FL 33432 |
| ___ Remove | | | |
| 2) ___ Change | VP | SCOTT T. ZANKL | 1699 S FEDERAL HIGHWAY |
| X Add | | | BOCA RATON, FL 33432 |
| ___ Remove | | | |
| 3) ___ Change | | | |
| ___ Add | | | |
| ___ Remove | | | |
| 4) ___ Change | | | |
| ___ Add | | | |
| ___ Remove | | | |
| 5) ___ Change | | | |
| ___ Add | | | |
| ___ Remove | | | |
| 6) ___ Change | | | |
| ___ Add | | | |
| ___ Remove | | | |

E. **If amending or adding additional Articles, enter change(s) here:**
(Attach *additional sheets, if necessary).*    *(Be specific)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

F. **If an amendment provides for an exchange, reclassification, or cancellation of issued shares, provisions for implementing the amendment if not contained in the amendment itself:**
*(if not applicable, indicate N/A)*

_____

_____

_____

_____

_____

_____

_____

_____

**The date of each amendment(s) adoption:** _____, if other than the date this document was signed.

**Effective date if applicable:** _____

<em>(no more than 90 days after amendment file date)</em>

**Note:** If the date inserted in this block does not meet the applicable statutory filing requirements, this date will not be listed as the document's effective date on the Department of State's records.

**Adoption of Amendment(s)**        (**CHECK ONE**)

■ The amendment(s) was/were adopted by the incorporators, or board of directors without shareholder action and shareholder action was not required.

☐ The amendment(s) was/were adopted by the shareholders. The number of votes cast for the amendment(s) by the shareholders was/were sufficient for approval.

☐ The amendment(s) was/were approved by the shareholders through voting groups. *The following statement must be separately provided for each voting group entitled to vote separately on the amendment(s):*

"The number of votes cast for the amendment(s) was/were sufficient for approval

by _____ "

<em>(voting group)</em>

Dated_____

Signature _____

(By a director, president or other officer – if directors or officers have not been selected, by an incorporator – if in the hands of a receiver, trustee, or other court appointed fiduciary by that fiduciary)

SCOTT T. ZANKL

_____

(Typed or printed name of person signing)

PRESIDENT

_____

(Title of person signing)



# State of Florida

## Department of State

I certify the attached is a true and correct copy of the Articles of Incorporation of KARMA OF PALM BEACH, INC., a corporation organized under the laws of the State of Florida, filed on June 16, 2020, as shown by the records of this office.

The document number of this corporation is P20000045476.

Given under my hand and the Great Seal of the State of Florida at Tallahassee, the Capital, this the Nineteenth day of November, 2021



*Laurel M. Lee*
*Secretary of State*

CR2E022 (01-11)

# Electronic Articles of Incorporation
## For

KARMA OF PALM BEACH, INC.

P20000045476
FILED
June 16, 2020
Sec. Of State
kepage

The undersigned incorporator, for the purpose of forming a Florida profit corporation, hereby adopts the following Articles of Incorporation:

## Article I

The name of the corporation is:

KARMA OF PALM BEACH, INC.

## Article II

The principal place of business address:

1001 CLINT MOORE ROAD
SUITE 101
BOCA RATON, FL. US  33487

The mailing address of the corporation is:

1001 CLINT MOORE ROAD
SUITE 101
BOCA RATON, FL. US  33487

## Article III

The purpose for which this corporation is organized is:

ANY AND ALL LAWFUL BUSINESS.

## Article IV

The number of shares the corporation is authorized to issue is:

100

## Article V

The name and Florida street address of the registered agent is:

THOMAS U GRANER
1699 S FEDERAL HIGHWAY
SUITE 300
BOCA RATON, FL.   33432

I certify that I am familiar with and accept the responsibilities of registered agent.

Registered Agent Signature:   THOMAS U. GRANER

P20000045476
FILED
June 16, 2020
Sec. Of State
kepage

## Article VI

The name and address of the incorporator is:

THOMAS U. GRANER
1699 S FEDERAL HIGHWAY
SUITE 300
BOCA RATON, FL 33432

Electronic Signature of Incorporator:   THOMAS U. GRANER

I am the incorporator submitting these Articles of Incorporation and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S.  I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of this corporation and every year thereafter to maintain "active" status.

## Article VII

The initial officer(s) and/or director(s) of the corporation is/are:

Title:  P
SCOTT  ZANKL
1001 CLINT MOORE ROAD, #101
BOCA RATON, FL.  33487  US

Title:  VP
KRISTEN  ZANKL
1001 CLINT MOORE ROAD, #101
BOCA RATON, FL.  33487  US

# Electronic Articles of Organization
## For
# Florida Limited Liability Company

L16000193119
FILED 8:00 AM
October 19, 2016
Sec. Of State
tscott

## Article I

The name of the Limited Liability Company is:

EXCELL AUTO FINANCE, LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

5471 N. DIXIE HIGHWAY
SUITE 5
BOCA RATON, FL. US  33487

The mailing address of the Limited Liability Company is:

5471 N. DIXIE HIGHWAY
SUITE 5
BOCA RATON, FL. US  33487

## Article III

Other provisions, if any:

ANY AND ALL LAWFUL PURPOSES

## Article IV

The name and Florida street address of the registered agent is:

THOMAS U GRANER
720 E. PALMETTO PARK ROAD
BOCA RATON, FL.   33432

Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity.  I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.

Registered Agent Signature:   THOMAS U. GRANER

## Article V

The name and address of person(s) authorized to manage LLC:

L16000193119
**FILED 8:00 AM**
**October 19, 2016**
**Sec. Of State**
tscott

Title:  MGR
SCOTT  ZANKL
5471 N. DIXIE HIGHWAY, SUITE 5
BOCA RATON, FL.   33487  US

Title:  MGR
THOMAS U GRANER
720 E. PALMETTO PARK ROAD
BOCA RATON, FL.   33432  US

## Article VI

The effective date for this Limited Liability Company shall be:

10/19/2016

Signature of member or an authorized representative

Electronic Signature: THOMAS U. GRANER

I am the member or authorized representative submitting these Articles of Organization and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of the LLC and every year thereafter to maintain "active" status.

# Electronic Articles of Organization
# For
# Florida Limited Liability Company

L16000180406
**FILED 8:00 AM**
**September 27, 2016**
**Sec. Of State**
kpcardwell

## Article I

The name of the Limited Liability Company is:

EXCELL AUTO SPORT AND SERVICE, LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

5471 N. DIXIE HIGHWAY
SUITE 5
BOCA RATON, FL. US  33487

The mailing address of the Limited Liability Company is:

6560 W. ROGERS CIRCLE
SUITE 27
BOCA RATON, FL. US  33487

## Article III

Other provisions, if any:

ANY AND ALL LAWFUL PURPOSES

## Article IV

The name and Florida street address of the registered agent is:

SCOTT  GHERMAN
902 CLINT MOORE ROAD
SUITE 108
BOCA RATON, FL.   33487

Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity.  I further agree to comply with the provisions of all statutes relating to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent.

Registered Agent Signature:   SCOTT GHERMAN

## Article V

The name and address of person(s) authorized to manage LLC:

**L16000180406**
**FILED 8:00 AM**
**September 27, 2016**
**Sec. Of State**
**kpcardwell**

Title:  MGR
MOSHE  FARACHE
2660 NW 2ND AVE
BOCA RATON, FL.  33431  US

Title:  MGR
ROBERT  O'CONNELL JR
2660 NW 2ND AVE
BOCA RATON, FL.  33431  US

Title:  MGR
SCOTT  ZANKL
5471 N. DIXIE HIGHWAY, SUITE 5
BOCA RATON, FL.  33487  US

Signature of member or an authorized representative

Electronic Signature: THOMAS U. GRANER

I am the member or authorized representative submitting these Articles of Organization and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of the LLC and every year thereafter to maintain "active" status.

Bylaws
of
KARMA OF BROWARD, Inc.


### ARTICLE I – DIRECTORS

Section 1 – Function.  All corporate powers shall be exercised by or under the authority of the Board of Directors.  The business and affairs of the Corporation shall be managed under the direction of the Board of Directors.  Directors must be natural persons who are at least 18 years of age but need not be shareholders of the Corporation.  Residents of any state may be directors.  If the Corporation is a professional corporation, in order for a director to also be a shareholder of the Corporation the director must be duly licensed or otherwise legally authorized to render the same professional service as the Corporation.

Section 2 – Compensation.  The shareholders shall have authority to fix the compensation of directors.  Unless specifically authorized by a resolution of the shareholders, the directors shall serve in such capacity without compensation.

Section 3 – Presumption of Assent.  A director who is present at a meeting of the Board of Directors or a committee of the Board of Directors at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless he objects at the beginning of the meeting (or promptly upon arriving) to the holding of the meeting or transacting the specified business at the meeting, or if the director votes against the action taken or abstains from voting because of an asserted conflict of interest.

Section 4 – Number.  The Corporation shall have a least the minimum number of directors required by law.  The number of directors may be increased or decreased from time to time by the Board of Directors.

Section 5 – Election and Term.  At each annual meeting of the shareholders, the shareholders shall elect directors to hold office until the next annual meeting or until their earlier resignation, removal from office or death.  Directors shall be elected by a plurality of the votes cast by the shares entitled to vote in the election at a meeting at which a quorum is present.

Section 6 – Vacancies.  Any vacancy occurring in the Board of Directors, including a vacancy created by an increase in the number of directors, may be filled by the shareholders or by the affirmative vote of a majority of the remaining directors though less than a quorum of the Board of Directors.  A director elected to fill a vacancy shall hold office only until the next election of directors by the shareholders.  If there are no remaining directors, the vacancy shall be filled by the shareholders.

Section 7 – Removal of Directors.  At a meeting of shareholders, any director or the entire Board of Directors may be removed, with or without cause, provided the notice of the meeting states that one of the purposes of the meeting is the removal of the director.  A director may be removed only if the number of votes cast to remove him/her exceeds the number of votes cast against removal.

Section 8 – Quorum and Voting.  A majority of the number of directors fixed by these Bylaws shall constitute a quorum for the transaction of business.  The act of a majority of directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.

Section 9 – Executive and Other Committees.  The Board of Directors, by resolution adopted by a majority of the full Board of Directors, may designate from among its members one or more committees each of which must have at least two members.  Each committee shall have the authority set forth in the resolution designating the committee.

Section 10 – Place of Meeting.  Regular and special meeting of the Board of Directors shall be held at the principal place of the business of the Corporation or at another place designated by person or persons giving notice of otherwise calling the meeting.

Section 11 – Time, Notice and Call of Meetings.  Regular meetings of the Board of Directors shall be held without notice at the time and on the date designated by resolution of the Board of Directors.  Written notice of the time, date and place of special meetings of the Board of Directors shall be given to each director by mail delivery at least two days before the meeting.

Notice of a meeting of the Board of Directors need not be given to a director who signs a waiver of notice either before or after the meeting.  Attendance of a director at a meeting constitutes a waiver of notice of that meeting and waiver of all objections to the place of the meeting, the time of the meeting, and the manner in which it has been called or convened, unless a director objects to the transaction of business (promptly upon arrival at the meeting) because the meeting is not lawfully called or convened.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors must be specified in the notice or waiver of notice of the meeting.

A majority of the directors present, whether or not a quorum exists, may adjourn any meeting of the Board of Directors to another time and place.  Notice of an adjourned meeting shall be given to the directors who were not present at the time of the adjournment and, unless the time and place of the adjournment and, unless the time and place of the adjourned meeting are announced at the time of the adjournment, to the other directors.  Meetings of the Board of Directors may be called by the President of the Chairman of the Board of Directors.  Members of the Board of Directors and any committee of the Board may participate in a meeting by telephone conference or similar communications equipment if all persons participating in the meeting can hear each other at the same time.  Participation by these means constitutes presence in person at a meeting.

Section 12 – Action by Written Consent.  Any action required or permitted to be taken at a meeting of directors may be taken without a meeting if consent in writing setting forth the action to be taken and signed by all of the directors is filed in the minutes of the proceedings of the Board.  The action taken shall be deemed effective when the last director signs the consent, unless the consent specifies otherwise.

## ARTICLE II – MEETINGS OF SHAREHOLDERS

Section 1 – Annual Meeting.  The annual meeting of the shareholders of the corporation for the election of officers and for such other business as may properly come before the meeting shall be held at such time and place as designated by the Board of Directors.

Section 2 – Special Meeting.  Special meetings of the shareholders shall be held when directed by the President or when requested in writing by shareholders holding at least ten percent (10%) of the Corporation's stock having the right and entitled to vote at such meeting.  A meeting requested by shareholders shall be called by the President for a date note less than ten (10) nor more than sixty (60) days after the request is made.  Only business within the purposes described in the meeting notice may be conducted at a special shareholders' meeting.

Section 3 – Place.  Meetings of the shareholders will be held at the principal place of business of the Corporation or at such other place as is designated by the Board of Directors.

Section 4 – Notice.  A written notice of each meeting of shareholders shall be mailed to each shareholder having the right and entitled to vote at the meeting at the address as it appears on the records of the Corporation.  The meeting notice shall be mailed not less than ten (10) nor more than sixty (60) days before the date set for the meeting.  The record date for determining shareholders entitled to vote at the meeting will be the close of business on the date before the notice is sent.  The notice shall state the time and place the meeting is to be held.  A notice of a special meeting shall also state the purposes of the meeting.  A notice of meeting shall be sufficient for that meeting and any adjournment of it.  If a shareholder transfers any shares after the notice is sent, it shall not be necessary to notify the transferee.  All shareholders may waive notice of a meeting at any time.

Section 5 – Shareholder Quorum.  A majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of shareholders.  Any number of shareholders, even if less than a quorum, may adjourn the meeting without further notice until a quorum is obtained.

Section 6 – Shareholder Voting.  If a quorum is present, the affirmative vote of a majority of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the shareholders.  Each outstanding share shall be entitled to one vote on each matter submitted to a vote at a meeting of shareholders.  An alphabetical list of all shareholders who are entitled to notice of a shareholders' meeting along with their addresses and the number of shares held by each shall be produced at a shareholders' meeting upon the request of any shareholder.

Section 7 – Proxies.  A shareholder entitled to vote at any meeting of shareholders or any adjournment thereof may vote in person or by proxy executed in writing and signed by the shareholder of his attorney-in-fact.  The appointment of proxy will be effective when received by the Corporation's officer or agent authorized to tabulate votes.  No proxy shall be valid more than eleven (11) months after the date of its execution unless a longer term is expressly stated in the proxy.

Section 8 – Validation.  If shareholders who hold a majority of voting stock entitled to vote at a meeting are present at the meeting, and sign a written consent to the meeting on the record, the acts of the meeting shall be valid, even if the meeting was not legally called and noticed.

Section 9 – Conduct of Business by Written Consent.   Any action of the shareholders may be taken without a meeting if written consents, setting forth the action taken, are signed by at least a majority of shares entitled to vote and are delivered to the officer of agent of the Corporation having custody of the Corporation's records within sixty (60) days after the date that the earliest written consent was delivered.  Within ten (10) days after obtaining an authorization of an action by written consent, notice shall be given to those shareholders who have not consented in writing or who are not entitled to vote on the action.  The notice shall fairly summarize the material features of the authorized action.  If the action creates dissenters' rights, the notice shall contain a clear statement of the right of dissenting shareholders to be paid the fair value of their shares upon compliance with and as provided for by the state law governing corporations.

## ARTICLE III – OFFICERS

Section 1 – Officers; Election; Resignation; Vacancies.  The Corporation shall have the officers and assistant officers that the Board of Directors appoint from time to time.  Except as otherwise provided in an employment agreement which the Corporation has with an officer, each officer shall serve until a successor is chosen by the directors at a regular or special meeting of the directors or until removed.  Officers and agents shall be chosen, serve for the terms, and have the duties determined by the directors.  A person may hold two or more offices.

Any officer may resign at any time upon written notice to the Corporation.  The resignation shall be effective upon receipt, unless the notice specifies a later date.  If the resignation is effective at a later date and the Corporation accepts the future effective date, the Board of Directors may fill the pending vacancy before the effective date provided the successor officer does not take office until the future effective date.  Any vacancy occurring in any office of the Corporation by death, resignation, removal or otherwise may be filled for the unexpired portion of the term by the Board of Directors at any regular or special meeting.

Section 2 – Powers and Duties of Officers.  The officers of the Corporation shall have such powers and duties in the management of the Corporation to sign for loans that have been approved by the Corporation, as well as any other powers and duties as may be prescribed by the Board of Directors and, to the extent not so provided, as generally pertain to their respective offices, subject to the control of the Board of Directors.

Section 3 – Removal of Officers.  An officer or agent or member of a committee elected or appointed by the Board of Directors may be removed by the Board with or without cause whenever in its judgment the best interests of the Corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.  Election or appointment of an officer, agent or member of a committee shall not of itself create contract rights.  Any officer, if appointed by another officer, may be removed by that officer.

Section 4 – Salaries.  The Board of Directors may cause the Corporation to enter into employment agreements with any officer of the Corporation.  Unless provided for in an employment agreement between the Corporation and an officer, all officers of the Corporation serve in their capacities without compensation.

Section 5 – Bank Accounts.  The Corporation shall have accounts with financial institutions as determined by the Board of Directors.

## ARTICLE IV – DISTRIBUTIONS

The Board of Directors may, from time to time, declare distributions to its shareholders in cash, property, or its own shares, unless the distribution would cause (i) the Corporation to be unable to pay its debts as they become due in the usual course of business, or (ii) the Corporation's assets to be less than its liabilities plus the amount necessary, if the Corporation were dissolved at the time of the distribution, to satisfy the preferential rights of shareholders whose rights are superior to those receiving the distribution.  The shareholders and the Corporation may enter into an agreement requiring the distribution of corporate profits, subject to the provisions of law.

## ARTICLE V – CORPORATE RECORDS

Section 1 – Corporate Records.  The corporation shall maintain its records in written form or in another form capable of conversion into written form within a reasonable time.  The Corporation shall keep as permanent records minutes of all meetings of its shareholders and Board of Directors, a record of all actions taken by the shareholders or Board of Directors without a meeting, and a record of all actions taken by a committee of the Board of Directors on behalf of the Corporation. The Corporation shall maintain accurate accounting records and a record of its shareholders in a form that permits preparation of a list of the names and addresses of all shareholders in alphabetical order by class of shares showing the number and series of shares held by each.

The Corporation shall keep a copy of its articles or restated articles of incorporation and all amendments to them currently in effect; these Bylaws or restated Bylaws and all amendments currently in effect; resolutions adopted by the Board of Directors creating one or more classes or series of shares and fixing their relative rights, preferences, and limitations, if shares issued pursuant to those resolutions are outstanding; the minutes of all shareholders' meetings and records of all actions taken by shareholders without a meeting for the past three years; written communications to all shareholders generally or all shareholders of a class of series within the past three years, including the financial statements furnished for the last three years; a list of names and business street addresses of its current directors and officers; and its most recent annual report delivered to the Department of State.

Section 2 – Shareholders' Inspection Rights.  A shareholder is entitled to inspect and copy, during regular business hours at a reasonable location specified by the Corporation, any books and records of the Corporation.  The shareholder must give the Corporation written notice of this demand at least five (5) business dates before the date on which he/she wishes to inspect and copy the record(s).  The demand must be made in good faith and for a proper purpose.  The shareholder must describe with reasonable particularity the purpose and the records he/she desires to inspect,

and the records must be directly connected with this purpose. This Section does not affect the right of a shareholder to inspect and copy the shareholders' list described in this Article if the shareholder is in litigation with the Corporation. In such a case, the shareholder shall have the same rights as any other litigant to compel the production of corporate records for examination.

The Corporation may deny any demand for inspection if the demand was made for an improper purpose, or if the demanding shareholder has within the two (2) years preceding his demand, sold or offered for sale any list of shareholders of the Corporation or of any other corporation, had aided or abetted any person in procuring any list of shareholders for that purpose, or has improperly used any information secured through any prior examination of the records of this Corporation or any other corporation.

Section 3 – Financial Statements for Shareholders. Unless modified by resolution of the shareholders with 120 days after the close of each fiscal year, the Corporation shall furnish its shareholders with annual financial statements which may be consolidated or combined statements of the Corporation and one or more of its subsidiaries, as appropriate, that include a balance sheet as of the end of the fiscal year, an income statement for that year, and a statement of cash flows for that year. If financial statements are prepared for the Corporation on the basis of generally accepted accounting principles, the annual financial statements must also be prepared on the basis.

If the annual financial statements are reported upon by a public accountant, his/her report must accompany them. If not, the statements must be accompanied by a statement of the President or the person responsible for the Corporation's accounting records stating his reasonable belief whether the statements were prepared on the basis of generally accepted accounting principles and, if not, describing the basis of preparation and describing any respects in which the statements were not prepared on a basis of accounting consistent with the statements prepared for the preceding year. The Corporation shall mail the annual financial statements to each shareholder within 120 days after the close of each fiscal year or within such additional time thereafter as is reasonably necessary to enable the Corporation to prepare its financial statements. Thereafter, on written request from a shareholder who was not mailed the statements, the Corporation shall mail him/her the latest annual financial statement.

Section 4 – Other Reports to Shareholders. If the Corporation indemnifies or advances expenses to any director, officer, employee or agent otherwise than by court order or action by the shareholders or by an insurance carrier pursuant to insurance maintained by the Corporation, the Corporation shall report the indemnification or advance in writing to the shareholders with or before the notice of the next annual shareholders' meeting, or prior to the meeting if the indemnification or advance occurs after the giving of the notice but prior to the time the annual meeting is held. This report shall include a statement specifying the persons paid, the amounts paid, and the nature and status at the time of such payment of the litigation or threatened litigation.

If the Corporation issues or authorizes the issuance of shares for promises to render services in the future, the Corporation shall report in writing to the shareholders then number of shares authorized or issued, and the consideration received by the corporation, with or before the notice of the next shareholders' meeting.

## ARTICLE VI – STOCK CERTIFICATES

Section 1 – Issuance.  The Board of Directors may authorize the issuance of some or all of the shares of any or all of its classes or series without certificates.  Each certificate issues shall be signed by the President and the Secretary (or the Treasurer).  The rights and obligations of shareholders are identical whether or not their shares are represented by certificates.

Section 2 – Registered Shareholders.  No certificate shall be issued for any share until the share is fully paid.  The Corporation shall be entitled to treat the holder of record of shares as the holder in fact and, except as otherwise provided by law, shall not be bound to recognize any equitable or other claim to or interest in the shares.

Section 3 – Transfer of Shares.  Shares of the Corporation shall be transferred on its books only after the surrender to the Corporation of the share certificates duly endorsed by the holder of record or attorney-in-fact.  If the surrender certificates are canceled, new certificates shall be issued to the person entitled to them, and the transaction recorded on the books of the Corporation.

Section 4 – Lost, Stolen or Destroyed Certificates.  If a shareholder claims to have lost or destroyed a certificate of shares issued by the Corporation, a new certificate shall be issued upon the delivery to the Corporation of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed, and, at the discretion of the Board of Directors, upon the deposit of a bond other indemnity as the Board reasonably requires.

## ARTICLE VII – INDEMNIFICATION

Section 1 – Right to Indemnification.  The Corporation hereby indemnifies each person (including heirs, executors, administrators, or estate of such person) who is or was a director or officer of the Corporation to the fullest extent permitted or authorized by current or future legislation or judicial or administrative decision against all fines, liabilities, costs and expenses, including attorneys' fees, arising out of his or her status as a director, officer, agent, employee or representative.  The foregoing right of indemnification shall not be exclusive of other rights to which those seeking an indemnification may be entitled.  The Corporation may maintain insurance, at its expense, to protect itself and all officers and directors against fines, liabilities, costs and expenses, whether or not the Corporation would have the legal power to indemnify them directly against such liability.

Section 2 – Advances.  Costs, charges and expenses (including attorneys' fees) incurred by a person referred to in Section 1 of this Article in defending a civil or criminal proceeding shall be paid by the Corporation in advance of the final disposition thereof upon receipt of an undertaking to repay all amounts advanced if it is ultimately determined that the person is not entitled to be indemnified by the Corporation as authorized by this Article, and upon satisfaction of other conditions required by current or future legislation.

Section 3 – Savings Clause.  If this Article or any portion of it is invalidated on any ground by a court of competent jurisdiction, the Corporation nevertheless indemnifies each person described in Section 1 of this Article to the fullest extent permitted by all portions of this Article that have not been invalidated and to the fullest extent permitted by law.

## ARTICLE VIII – AMENDMENT

These Bylaws may be altered, amended or repealed, and new Bylaws adopted, by a majority vote of the directors or by a vote of the shareholders holding a majority of the shares.

I certify that these are the Bylaws adopted by the Board of Directors of the Corporation.

Date: 12-27-21

Scott Zankl, President

Date: 12-27-21

Kristen Zankl, Vice President

8

Bylaws
of
KARMA OF PALM BEACH, Inc.

### ARTICLE I – DIRECTORS

Section 1 – Function.  All corporate powers shall be exercised by or under the authority of the Board of Directors.  The business and affairs of the Corporation shall be managed under the direction of the Board of Directors.  Directors must be natural persons who are at least 18 years of age but need not be shareholders of the Corporation.  Residents of any state may be directors.  If the Corporation is a professional corporation, in order for a director to also be a shareholder of the Corporation the director must be duly licensed or otherwise legally authorized to render the same professional service as the Corporation.

Section 2 – Compensation.  The shareholders shall have authority to fix the compensation of directors.  Unless specifically authorized by a resolution of the shareholders, the directors shall serve in such capacity without compensation.

Section 3 – Presumption of Assent.  A director who is present at a meeting of the Board of Directors or a committee of the Board of Directors at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless he objects at the beginning of the meeting (or promptly upon arriving) to the holding of the meeting or transacting the specified business at the meeting, or if the director votes against the action taken or abstains from voting because of an asserted conflict of interest.

Section 4 – Number.  The Corporation shall have a least the minimum number of directors required by law.  The number of directors may be increased or decreased from time to time by the Board of Directors.

Section 5 – Election and Term.  At each annual meeting of the shareholders, the shareholders shall elect directors to hold office until the next annual meeting or until their earlier resignation, removal from office or death.  Directors shall be elected by a plurality of the votes cast by the shares entitled to vote in the election at a meeting at which a quorum is present.

Section 6 – Vacancies.  Any vacancy occurring in the Board of Directors, including a vacancy created by an increase in the number of directors, may be filled by the shareholders or by the affirmative vote of a majority of the remaining directors though less than a quorum of the Board of Directors.  A director elected to fill a vacancy shall hold office only until the next election of directors by the shareholders.  If there are no remaining directors, the vacancy shall be filled by the shareholders.

Section 7 – Removal of Directors.  At a meeting of shareholders, any director or the entire Board of Directors may be removed, with or without cause, provided the notice of the meeting states that one of the purposes of the meeting is the removal of the director.  A director may be removed only if the number of votes cast to remove him/her exceeds the number of votes cast against removal.

Section 8 – Quorum and Voting.  A majority of the number of directors fixed by these Bylaws shall constitute a quorum for the transaction of business.  The act of a majority of directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.

Section 9 – Executive and Other Committees.  The Board of Directors, by resolution adopted by a majority of the full Board of Directors, may designate from among its members one or more committees each of which must have at least two members.  Each committee shall have the authority set forth in the resolution designating the committee.

Section 10 – Place of Meeting.  Regular and special meeting of the Board of Directors shall be held at the principal place of the business of the Corporation or at another place designated by person or persons giving notice of otherwise calling the meeting.

Section 11 – Time, Notice and Call of Meetings.  Regular meetings of the Board of Directors shall be held without notice at the time and on the date designated by resolution of the Board of Directors.  Written notice of the time, date and place of special meetings of the Board of Directors shall be given to each director by mail delivery at least two days before the meeting.

Notice of a meeting of the Board of Directors need not be given to a director who signs a waiver of notice either before or after the meeting.  Attendance of a director at a meeting constitutes a waiver of notice of that meeting and waiver of all objections to the place of the meeting, the time of the meeting, and the manner in which it has been called or convened, unless a director objects to the transaction of business (promptly upon arrival at the meeting) because the meeting is not lawfully called or convened.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors must be specified in the notice or waiver of notice of the meeting.

A majority of the directors present, whether or not a quorum exists, may adjourn any meeting of the Board of Directors to another time and place.  Notice of an adjourned meeting shall be given to the directors who were not present at the time of the adjournment and, unless the time and place of the adjournment and, unless the time and place of the adjourned meeting are announced at the time of the adjournment, to the other directors.  Meetings of the Board of Directors may be called by the President of the Chairman of the Board of Directors.  Members of the Board of Directors and any committee of the Board may participate in a meeting by telephone conference or similar communications equipment if all persons participating in the meeting can hear each other at the same time.  Participation by these means constitutes presence in person at a meeting.

Section 12 – Action by Written Consent.  Any action required or permitted to be taken at a meeting of directors may be taken without a meeting if consent in writing setting forth the action to be taken and signed by all of the directors is filed in the minutes of the proceedings of the Board.  The action taken shall be deemed effective when the last director signs the consent, unless the consent specifies otherwise.

## ARTICLE II – MEETINGS OF SHAREHOLDERS

Section 1 – Annual Meeting. The annual meeting of the shareholders of the corporation for the election of officers and for such other business as may properly come before the meeting shall be held at such time and place as designated by the Board of Directors.

Section 2 – Special Meeting. Special meetings of the shareholders shall be held when directed by the President or when requested in writing by shareholders holding at least ten percent (10%) of the Corporation's stock having the right and entitled to vote at such meeting. A meeting requested by shareholders shall be called by the President for a date note less than ten (10) nor more than sixty (60) days after the request is made. Only business within the purposes described in the meeting notice may be conducted at a special shareholders' meeting.

Section 3 – Place. Meetings of the shareholders will be held at the principal place of business of the Corporation or at such other place as is designated by the Board of Directors.

Section 4 – Notice. A written notice of each meeting of shareholders shall be mailed to each shareholder having the right and entitled to vote at the meeting at the address as it appears on the records of the Corporation. The meeting notice shall be mailed not less than ten (10) nor more than sixty (60) days before the date set for the meeting. The record date for determining shareholders entitled to vote at the meeting will be the close of business on the date before the notice is sent. The notice shall state the time and place the meeting is to be held. A notice of a special meeting shall also state the purposes of the meeting. A notice of meeting shall be sufficient for that meeting and any adjournment of it. If a shareholder transfers any shares after the notice is sent, it shall not be necessary to notify the transferee. All shareholders may waive notice of a meeting at any time.

Section 5 – Shareholder Quorum. A majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of shareholders. Any number of shareholders, even if less than a quorum, may adjourn the meeting without further notice until a quorum is obtained.

Section 6 – Shareholder Voting. If a quorum is present, the affirmative vote of a majority of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the shareholders. Each outstanding share shall be entitled to one vote on each matter submitted to a vote at a meeting of shareholders. An alphabetical list of all shareholders who are entitled to notice of a shareholders' meeting along with their addresses and the number of shares held by each shall be produced at a shareholders' meeting upon the request of any shareholder.

Section 7 – Proxies. A shareholder entitled to vote at any meeting of shareholders or any adjournment thereof may vote in person or by proxy executed in writing and signed by the shareholder of his attorney-in-fact. The appointment of proxy will be effective when received by the Corporation's officer or agent authorized to tabulate votes. No proxy shall be valid more than eleven (11) months after the date of its execution unless a longer term is expressly stated in the proxy.

Section 8 – Validation.  If shareholders who hold a majority of voting stock entitled to vote at a meeting are present at the meeting, and sign a written consent to the meeting on the record, the acts of the meeting shall be valid, even if the meeting was not legally called and noticed.

Section 9 – Conduct of Business by Written Consent.   Any action of the shareholders may be taken without a meeting if written consents, setting forth the action taken, are signed by at least a majority of shares entitled to vote and are delivered to the officer of agent of the Corporation having custody of the Corporation's records within sixty (60) days after the date that the earliest written consent was delivered.  Within ten (10) days after obtaining an authorization of an action by written consent, notice shall be given to those shareholders who have not consented in writing or who are not entitled to vote on the action.  The notice shall fairly summarize the material features of the authorized action.  If the action creates dissenters' rights, the notice shall contain a clear statement of the right of dissenting shareholders to be paid the fair value of their shares upon compliance with and as provided for by the state law governing corporations.

## ARTICLE III – OFFICERS

Section 1 – Officers; Election; Resignation; Vacancies.  The Corporation shall have the officers and assistant officers that the Board of Directors appoint from time to time.  Except as otherwise provided in an employment agreement which the Corporation has with an officer, each officer shall serve until a successor is chosen by the directors at a regular or special meeting of the directors or until removed.  Officers and agents shall be chosen, serve for the terms, and have the duties determined by the directors.  A person may hold two or more offices.

Any officer may resign at any time upon written notice to the Corporation.  The resignation shall be effective upon receipt, unless the notice specifies a later date.  If the resignation is effective at a later date and the Corporation accepts the future effective date, the Board of Directors may fill the pending vacancy before the effective date provided the successor officer does not take office until the future effective date.  Any vacancy occurring in any office of the Corporation by death, resignation, removal or otherwise may be filled for the unexpired portion of the term by the Board of Directors at any regular or special meeting.

Section 2 – Powers and Duties of Officers.  The officers of the Corporation shall have such powers and duties in the management of the Corporation to sign for loans that have been approved by the Corporation, as well as any other powers and duties as may be prescribed by the Board of Directors and, to the extent not so provided, as generally pertain to their respective offices, subject to the control of the Board of Directors.

Section 3 – Removal of Officers.  An officer or agent or member of a committee elected or appointed by the Board of Directors may be removed by the Board with or without cause whenever in its judgment the best interests of the Corporation will be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed.  Election or appointment of an officer, agent or member of a committee shall not of itself create contract rights.  Any officer, if appointed by another officer, may be removed by that officer.

Section 4 – Salaries.  The Board of Directors may cause the Corporation to enter into employment agreements with any officer of the Corporation.  Unless provided for in an employment agreement between the Corporation and an officer, all officers of the Corporation serve in their capacities without compensation.

Section 5 – Bank Accounts.  The Corporation shall have accounts with financial institutions as determined by the Board of Directors.

## ARTICLE IV – DISTRIBUTIONS

The Board of Directors may, from time to time, declare distributions to its shareholders in cash, property, or its own shares, unless the distribution would cause (i) the Corporation to be unable to pay its debts as they become due in the usual course of business, or (ii) the Corporation's assets to be less than its liabilities plus the amount necessary, if the Corporation were dissolved at the time of the distribution, to satisfy the preferential rights of shareholders whose rights are superior to those receiving the distribution.  The shareholders and the Corporation may enter into an agreement requiring the distribution of corporate profits, subject to the provisions of law.

## ARTICLE V – CORPORATE RECORDS

Section 1 – Corporate Records.  The corporation shall maintain its records in written form or in another form capable of conversion into written form within a reasonable time.  The Corporation shall keep as permanent records minutes of all meetings of its shareholders and Board of Directors, a record of all actions taken by the shareholders or Board of Directors without a meeting, and a record of all actions taken by a committee of the Board of Directors on behalf of the Corporation. The Corporation shall maintain accurate accounting records and a record of its shareholders in a form that permits preparation of a list of the names and addresses of all shareholders in alphabetical order by class of shares showing the number and series of shares held by each.

The Corporation shall keep a copy of its articles or restated articles of incorporation and all amendments to them currently in effect; these Bylaws or restated Bylaws and all amendments currently in effect; resolutions adopted by the Board of Directors creating one or more classes or series of shares and fixing their relative rights, preferences, and limitations, if shares issued pursuant to those resolutions are outstanding; the minutes of all shareholders' meetings and records of all actions taken by shareholders without a meeting for the past three years; written communications to all shareholders generally or all shareholders of a class of series within the past three years, including the financial statements furnished for the last three years; a list of names and business street addresses of its current directors and officers; and its most recent annual report delivered to the Department of State.

Section 2 – Shareholders' Inspection Rights.  A shareholder is entitled to inspect and copy, during regular business hours at a reasonable location specified by the Corporation, any books and records of the Corporation.  The shareholder must give the Corporation written notice of this demand at least five (5) business dates before the date on which he/she wishes to inspect and copy the record(s).  The demand must be made in good faith and for a proper purpose.  The shareholder must describe with reasonable particularity the purpose and the records he/she desires to inspect,

and the records must be directly connected with this purpose. This Section does not affect the right of a shareholder to inspect and copy the shareholders' list described in this Article if the shareholder is in litigation with the Corporation. In such a case, the shareholder shall have the same rights as any other litigant to compel the production of corporate records for examination.

The Corporation may deny any demand for inspection if the demand was made for an improper purpose, or if the demanding shareholder has within the two (2) years preceding his demand, sold or offered for sale any list of shareholders of the Corporation or of any other corporation, had aided or abetted any person in procuring any list of shareholders for that purpose, or has improperly used any information secured through any prior examination of the records of this Corporation or any other corporation.

Section 3 – Financial Statements for Shareholders. Unless modified by resolution of the shareholders with 120 days after the close of each fiscal year, the Corporation shall furnish its shareholders with annual financial statements which may be consolidated or combined statements of the Corporation and one or more of its subsidiaries, as appropriate, that include a balance sheet as of the end of the fiscal year, an income statement for that year, and a statement of cash flows for that year. If financial statements are prepared for the Corporation on the basis of generally accepted accounting principles, the annual financial statements must also be prepared on the basis.

If the annual financial statements are reported upon by a public accountant, his/her report must accompany them. If not, the statements must be accompanied by a statement of the President or the person responsible for the Corporation's accounting records stating his reasonable belief whether the statements were prepared on the basis of generally accepted accounting principles and, if not, describing the basis of preparation and describing any respects in which the statements were not prepared on a basis of accounting consistent with the statements prepared for the preceding year. The Corporation shall mail the annual financial statements to each shareholder within 120 days after the close of each fiscal year or within such additional time thereafter as is reasonably necessary to enable the Corporation to prepare its financial statements. Thereafter, on written request from a shareholder who was not mailed the statements, the Corporation shall mail him/her the latest annual financial statement.

Section 4 – Other Reports to Shareholders. If the Corporation indemnifies or advances expenses to any director, officer, employee or agent otherwise than by court order or action by the shareholders or by an insurance carrier pursuant to insurance maintained by the Corporation, the Corporation shall report the indemnification or advance in writing to the shareholders with or before the notice of the next annual shareholders' meeting, or prior to the meeting if the indemnification or advance occurs after the giving of the notice but prior to the time the annual meeting is held. This report shall include a statement specifying the persons paid, the amounts paid, and the nature and status at the time of such payment of the litigation or threatened litigation.

If the Corporation issues or authorizes the issuance of shares for promises to render services in the future, the Corporation shall report in writing to the shareholders then number of shares authorized or issued, and the consideration received by the corporation, with or before the notice of the next shareholders' meeting.

## ARTICLE VI – STOCK CERTIFICATES

Section 1 – Issuance.  The Board of Directors may authorize the issuance of some or all of the shares of any or all of its classes or series without certificates.  Each certificate issues shall be signed by the President and the Secretary (or the Treasurer).  The rights and obligations of shareholders are identical whether or not their shares are represented by certificates.

Section 2 – Registered Shareholders.  No certificate shall be issued for any share until the share is fully paid.  The Corporation shall be entitled to treat the holder of record of shares as the holder in fact and, except as otherwise provided by law, shall not be bound to recognize any equitable or other claim to or interest in the shares.

Section 3 – Transfer of Shares.  Shares of the Corporation shall be transferred on its books only after the surrender to the Corporation of the share certificates duly endorsed by the holder of record or attorney-in-fact.  If the surrender certificates are canceled, new certificates shall be issued to the person entitled to them, and the transaction recorded on the books of the Corporation.

Section 4 – Lost, Stolen or Destroyed Certificates.  If a shareholder claims to have lost or destroyed a certificate of shares issued by the Corporation, a new certificate shall be issued upon the delivery to the Corporation of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen or destroyed, and, at the discretion of the Board of Directors, upon the deposit of a bond other indemnity as the Board reasonably requires.

## ARTICLE VII – INDEMNIFICATION

Section 1 – Right to Indemnification.  The Corporation hereby indemnifies each person (including heirs, executors, administrators, or estate of such person) who is or was a director or officer of the Corporation to the fullest extent permitted or authorized by current or future legislation or judicial or administrative decision against all fines, liabilities, costs and expenses, including attorneys' fees, arising out of his or her status as a director, officer, agent, employee or representative.  The foregoing right of indemnification shall not be exclusive of other rights to which those seeking an indemnification may be entitled.  The Corporation may maintain insurance, at its expense, to protect itself and all officers and directors against fines, liabilities, costs and expenses, whether or not the Corporation would have the legal power to indemnify them directly against such liability.

Section 2 – Advances.  Costs, charges and expenses (including attorneys' fees) incurred by a person referred to in Section 1 of this Article in defending a civil or criminal proceeding shall be paid by the Corporation in advance of the final disposition thereof upon receipt of an undertaking to repay all amounts advanced if it is ultimately determined that the person is not entitled to be indemnified by the Corporation as authorized by this Article, and upon satisfaction of other conditions required by current or future legislation.

Section 3 – Savings Clause.  If this Article or any portion of it is invalidated on any ground by a court of competent jurisdiction, the Corporation nevertheless indemnifies each person described in Section 1 of this Article to the fullest extent permitted by all portions of this Article that have not been invalidated and to the fullest extent permitted by law.

## ARTICLE VIII – AMENDMENT

These Bylaws may be altered, amended or repealed, and new Bylaws adopted, by a majority vote of the directors or by a vote of the shareholders holding a majority of the shares.

I certify that these are the Bylaws adopted by the Board of Directors of the Corporation.

Date: 12-27-21

_____
Scott Zankl, President

Date: 12-27-21

_____
Kristen Zankl, Vice President

8

## BYLAWS OF Excell Auto Sport and Service, Inc
(the "Corporation")

## SHAREHOLDERS (the "Shareholders")

### Annual Meeting

1. A meeting of the Shareholders will be held annually for the purpose of electing directors (the "Directors") of the Corporation and for the purpose of doing other business as may come before the meeting. If the day fixed for the annual meeting is a legal holiday in the State of Florida, the annual meeting will be held on the next succeeding business day or on a date determined by the board of directors for the Corporation (the "Board") that is no later than two weeks after the date specified in the meeting notice.

2. The Corporation must hold its annual meeting within any 13 months period. If the annual meeting is not held within that time period then any shareholder may apply to the circuit court of the county where the Corporation's principal office is located to fix the time and place of the meeting.

### Special Meetings

3. Unless otherwise prescribed by statute, special meetings of the Shareholders may only be called for any purpose or purposes in the following ways:

   a. By a majority of the Board; or

   b. By the president of the Corporation (the "President"); or

   c. By the holders of shares entitled to cast in total not less than 10 percent of the votes on any issue proposed for the meeting where written request(s) describing the purpose or purposes for the special meeting are signed, dated and delivered to a member of the Board or other Officer of the Corporation.

4. The Board will determine the time, place and date of any special meeting provided that, in the case of a special meeting called by the requisite percentage of Shareholders in accordance with these Bylaws, the Board will issue notice of the special meeting within 60 days of receipt of the written demand(s) by the relevant Officer of the Corporation.

**Place of Meeting**

5. The annual meetings or special meetings of the Shareholders may be held at any place in or out of the State of Florida at a place to be determined at the discretion of the Board. If no designation of the location is made for any annual or special meeting of the Shareholders, the place of the meeting will be the Principal Office of the Corporation.

**Notice of Meetings**

6. The written notice of any meeting will be given not less than 10 days, but not more than 60 days before the date of the meeting to each Shareholder entitled to vote at that meeting. The written notice of the meeting will state the place, date and hour of the meeting, the means of remote communications, if any, and, in the case of a special meeting, the purpose or purposes for which the meeting is called.

7. If mailed, notice is given when the notice is deposited in the United States mail, postage prepaid, and directed to the Shareholder at the address of the Shareholder as it appears on the records of the Corporation. An affidavit of the secretary (the "Secretary") of the Corporation that the notice has been given will, in the absence of fraud, be prima facie evidence of the facts stated in the notice.

8. A written waiver, signed by the person entitled to a notice of meeting, or a waiver by electronic transmission by the person entitled to that notice, whether before or after the time stated in the notice, will be deemed equivalent to the person receiving the notice. Further, attendance of a person at a meeting will constitute a waiver of notice of that meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened.

**Consent of Shareholders in Lieu of Meeting**

9. Any action to be taken at any annual or special meeting of Shareholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action to be taken, is signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take the action at a meeting at which all shares entitled to vote on the matter were present and voted is delivered to the Corporation. Every written consent will bear the date of signature of each Shareholder who signs the consent. However, no written consent will be effective unless the consent is delivered, either by hand or by certified or registered mail, within 90 days of the earliest dated consent, to the Principal

Office of the Corporation in this state, the Principal Place of Business of the Corporation, the corporate secretary, or another agent of the Corporation having custody of the book in which proceedings of meetings of Shareholders are recorded.

## Remote Communication Meetings

10. Remote communication means any electronic communication including conference telephone, video conference, the Internet, or any other method currently available or developed in the future by which Shareholders not present in the same physical location may simultaneously communicate with each other.

11. Where permitted under the statutes and regulations of the State of Florida, and in the sole and reasonable discretion of the Board of Directors, a meeting of Shareholders of the Corporation may be held at a specific location or may be held by any means of remote communication. Where a meeting will employ remote communication, one or more Shareholders may participate by means of remote communication or the meeting may be held solely by means of remote communication at the sole discretion of the Board of Directors. Where any remote communication is used in a Shareholder meeting, all persons authorized to vote or take other action at the meeting must be able to hear each other during the meeting and each person will have a reasonable opportunity to participate. This remote participation in a meeting will constitute presence in person at the meeting. All votes or other actions taken at the meeting by means of electronic transmission must be maintained as a matter of record by the Corporation.

## List of Shareholders Entitled to Vote

12. The Officer who has charge of the Shareholders' List of the Corporation will prepare and make, not more than 70 days before every meeting of the Shareholders, a complete list of the Shareholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each Shareholder and the number of shares of stock registered in the name of each Shareholder. The list must be available for inspection by any Shareholder beginning ten days prior to the meeting and continuing through the meeting. The list must be provided for any purpose related to the meeting:

   a. On a reasonably accessible electronic network, so long as the information required to access the list is provided with the notice of the meeting; or

b. During ordinary business hours, at the Principal Office of the Corporation, the office of the Corporation's transfer agent if specified in the meeting notice or at another place identified in the meeting notice in the city where the meeting will be held.

13. If the Corporation decides to make the list available on an electronic network, the Corporation will ensure that this information is available only to Shareholders of the Corporation. If the meeting is to be held at a physical location, then the list will be produced and kept at the time and place of the meeting during the whole time of the meeting and may be inspected by any Shareholder who is present.

14. If the meeting is to be held solely by means of remote communication, then the list will also be open to the examination of any Shareholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access the list will be provided with the notice of the meeting.

15. If any Director willfully neglects or refuses to produce the list of Shareholders at any meeting for the election of Directors, or to open such a list to examination on a reasonably accessible electronic network during any meeting for the election of Directors held solely by means of remote communication, those Directors will be ineligible for election to any office at that meeting.

16. The Shareholders' List will be the only evidence as to who are the Shareholders entitled by this section to examine the list required by this section or to vote in person or by proxy at any meeting of Shareholders.

**Quorum and Required Vote**

17. A minimum of 51 percent of the shares entitled to vote, present in person or represented by proxy, will constitute a quorum entitled to take action at a meeting of Shareholders.

18. In all matters other than the election of Directors, any act of the Shareholders must be passed by an affirmative vote of the majority of the shares present in person or represented by proxy at the meeting and entitled to vote on the matter.

19. Directors will be elected by a majority of the votes of the shares present in person or represented by proxy at the meeting and entitled to vote on the election of Directors.

20. Where a separate vote by a class or series or classes or series of shares ("Eligible Shares") is required, 51 percent of the outstanding Eligible Shares present in person or represented by proxy, will constitute a quorum entitled to take action with respect to that vote on that matter. Any act to be taken must be passed by an affirmative vote of the majority of the outstanding Eligible Shares present in person or represented by proxy.

**Shareholders Voting Rights and Proxies**

21. Subject to the Articles of Incorporation, each Shareholder will be entitled to one vote for each share of stock held by that Shareholder.

22. Each Shareholder entitled to vote at a meeting of Shareholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for that Shareholder by proxy, but no proxy will be valid after 11 months from the date of its execution unless the proxy provides for a longer period.

23. Execution of a proxy may be accomplished by the Shareholder or by the authorized Officer, Director, employee or agent of the Shareholder, signing the writing or causing that person's signature to be affixed to the writing by any reasonable means including, but not limited to, by facsimile signature.

24. A duly executed proxy will be irrevocable if it states that it is irrevocable and if, and only as long as, it is coupled with an interest sufficient in law to support an irrevocable power. A proxy may be made irrevocable regardless of whether the interest with which it is coupled is an interest in the shares or an interest in the Corporation generally.

**Voting Rights of Fiduciaries, Pledgers and Joint Owners of Shares**

25. Persons holding shares in a fiduciary capacity will be entitled to vote the shares so held. Persons whose shares are pledged will be entitled to vote, unless, in the transfer by the pledger on the books of the Corporation, that person has expressly empowered the pledgee to vote the shares, in which case only the pledgee, or that pledgee's proxy, may represent and vote the shares.

**Voting Trusts and Other Voting Agreements**

26. Two or more Shareholders may, by agreement in writing, create a voting trust by depositing their shares with a voting trustee, who will have the authority to vote the shares in accordance with the

terms and conditions of the voting trust agreement. To be valid, the voting trustee must deliver copies of the list of Shareholders and the voting trust agreement to the Principal Office of the Corporation. Upon receiving the voting trust agreement, the Corporation will issue new share certificates in the name of the trustee and cancel the old share certificates. The new share certificates issued will state that they are issued pursuant to a voting trust agreement.

27. Any amendment to a voting trust agreement will be made by a written agreement, a copy of which will be filed with the Principal Office of the Corporation.

28. The right of inspection of any voting trust agreement or related amendment by a Shareholder of record or a holder of a voting trust certificate, in person or by agent, will be the same right of inspection that applies to the securities register of the Corporation.

29. An agreement between two or more Shareholders, if in writing and signed by the parties to the agreement, may provide that in exercising any voting rights, the shares held by them will be voted as provided by the agreement, or as the parties may agree, or as determined in accordance with a procedure agreed upon by them.

30. The above provisions concerning voting trusts and voting agreements will not be deemed to invalidate any voting or other agreement among Shareholders or any irrevocable proxy which is not otherwise illegal.

## Cumulative Voting

31. Shareholders may use cumulative voting elections when electing Directors.

## BOARD OF DIRECTORS

## General Powers

32. The business and affairs of the Corporation will be managed by or under the direction of the Board.

## Number, Tenure and Quorum

33. The Board will consist of three members, each of whom will be a natural person. Directors need not be Shareholders. Each Director will hold office until that Director's successor is elected and

qualified or until that Director's earlier resignation or removal. Any Director may resign at any time upon notice given in writing or by electronic transmission to the Corporation. In order to transact business at a meeting of the Directors, a quorum of 51 percent of the total number of Directors eligible to vote will be required. The vote of the majority of the Directors present at a meeting at which a quorum is present will be the act of the Board.

## Regular Meetings

34. By resolution, the Board may provide the time and place, either within or without the State of Florida, for the holding of regular meetings without any notice other than that resolution.

## Special Meetings

35. Special meetings of the Board may be called by or at the request of the President or by a majority of the Directors. The person or persons calling that special meeting of the Board may fix any date, time or place, either within or without the State of Florida, to be the date, time and place for holding that special meeting.

## Notice

36. Written notice of the date, time, and place of a special meeting of the Board will be given at least 10 days prior to the date set for that meeting. The written notice can be given personally, by mail, by private carrier, by telegraph, by telephone facsimile, or by any other manner as permitted by the Florida Business Corporation Act. The notice will be given by the Secretary or one of the persons authorized to call Directors' meetings.

37. If written notice is mailed, correctly addressed to a Director's address as provided in the Corporation's current records, the notice will be deemed to have been given to that Director at the time of mailing. If written notice is sent by private carrier or if the written notice is sent by United States mail, postage prepaid and by registered or certified mail, return receipt requested, the notice will be deemed to have been given to a Director on the date shown on the return receipt. Otherwise notice is effective when received by a Director.

38. Notice of any Directors' meeting may be waived by a Director before or after the date and time of the meeting. The waiver must be in writing, must be signed by a Director, and must be delivered to the Corporation for inclusion in the minutes or filing with the corporate records. The attendance of a Director at a meeting of the Board will constitute a waiver of notice of that meeting except where

a Director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully convened.

## Action by Directors Without a Meeting

39. Any action to be taken at any meeting of the Board or of any committee of the Board may be taken without a meeting if all members of the Board or committee, as the case may be, consent to it in writing, or by electronic transmission and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the Board, or committee. This filing will be in paper form if the minutes are maintained in paper form and will be in electronic form if the minutes are maintained in electronic form.

## Remote Communication Meetings

40. Remote communication means any electronic communication including conference telephone, video conference, the Internet, or any other method currently available or developed in the future by which Directors not present in the same physical location may simultaneously communicate with each other.

41. A meeting of the Board may be held by any means of remote communication by which all persons authorized to vote or take other action at the meeting can hear each other during the meeting and each person has a reasonable opportunity to participate. This remote participation in a meeting will constitute presence in person at the meeting.

## Vacancies and Newly Created Directorships

42. When vacancies or newly created directorships resulting from any increase in the authorized number of Directors occur, a majority of the Directors then in office, although less than a quorum, or a sole remaining Director will have the power to appoint new Directors to fill this vacancy or vacancies. Each new Director so chosen will hold office until the next annual meeting of the Shareholders.

43. If at any time, by reason of death or resignation or other cause, the Corporation should have no Directors in office, then any Officer or any Shareholder or an executor, administrator, trustee or guardian of a Shareholder, or other fiduciary entrusted with like responsibility for the person or estate of a Shareholder, may call a special meeting of Shareholders for an election to fill the vacancy.

44. When one or more Directors resign from the Board and the resignation is to become effective at a future date, a majority of the Directors then in office, including those who have so resigned, will have the power to appoint new Directors to fill this vacancy or vacancies. The appointments of these new Directors will take effect when the resignation or resignations are to become effective, and each new Director so chosen will hold office until the next annual meeting of the Shareholders.

## Removal

45. Any Director or the entire Board may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of Directors at a special meeting of the Shareholders called for that purpose. No director may be removed when the votes cast against removal would be sufficient to elect the director if voted cumulatively at an election where the same total number of votes were cast.

## Organization

46. Meetings of the Board will be presided over by the President, or in the President's absence by a Director chosen at the meeting. The Secretary will act as secretary of the meeting, but in the absence of the Secretary, the person presiding at the meeting may appoint any person to act as secretary of the meeting.

## Chairman of the Board

47. The Chairman of the Board, if present, will preside at all meetings of the Board, and exercise and perform any other authorities and duties as may be from time to time delegated by the Board.

## Compensation

48. The Board will, by resolution, fix the fees and other compensation for the Directors for their services as Directors, including their services as members of committees of the Board. All changes to Director compensation are subject to ratification by the Shareholders.

## Presumption of Assent

49. A Director of the Corporation who is present at a meeting of the Board will be presumed to have assented to an action taken on any corporate matter at the meeting unless:

a. The Director objects at the beginning of the meeting, or promptly upon the Director's arrival, to holding the meeting or transacting business at the meeting;

b. The Director's dissent or abstention from the action taken is entered in the minutes of the meeting; or

c. The Director delivers written notice of the Director's dissent or abstention to the presiding officer of the meeting before the adjournment of the meeting or to the Corporation within a reasonable time after adjournment of the meeting.

50. Any right to dissent or abstain from the action will not apply to a Director who voted in favor of that action.

## COMMITTEES

### Appointment

51. The Board may designate one or more committees, each committee to consist of one or more of the Directors of the Corporation. The Board may designate one or more Directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.

52. In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not that member or members constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any absent or disqualified member.

53. The committee or committees, to the extent provided in the resolution of the Board will have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it. No such committee will have the power or authority in reference to the following matters:

a. Approving or adopting, or recommending to the Shareholders, any action or matter (other than the election or removal of Directors) expressly required by the Florida Business Corporation Act to be submitted to Shareholders for approval; or

b. Adopting, amending or repealing any Bylaw of the Corporation.

### Tenure

54. Each member of a committee will serve at the pleasure of the Board.

### Meetings and Notice

55. The method by which Directors' meetings may be called and the notice requirements for these meetings as set out in these Bylaws will apply to any committee designated by the Board as appropriate.

### Quorum

56. The requirements for a quorum for the Board as set out in these Bylaws will apply to any committee designated by the Board as appropriate.

### Action Without a Meeting

57. The requirements and procedures for actions without a meeting for the Board as set out in these Bylaws will apply to any committee designated by the Board as appropriate.

### Resignation and Removal

58. Any member of a committee may be removed at any time, with or without cause, by a resolution adopted by a majority of the full Board. Any member of a committee may resign from the committee at any time by giving written notice to the Chairman of the Board of the Corporation, and unless otherwise specified in the notice, the acceptance of this resignation will not be necessary to make it effective.

### Vacancies

59. Any vacancy in a committee may be filled by a resolution adopted by a majority of the full Board.

### Committee Rules of Procedure

60. A committee will elect a presiding officer from its members and may fix its own rules of procedure provided they are not inconsistent with these Bylaws. A committee will keep regular minutes of its proceedings, and report those minutes to the Board at the first subsequent meeting of the Board.


## OFFICERS

### Appointment of Officers

61. The Officers of the Corporation (individually the "Officer" and collectively the "Officers") will consist of the President, a treasurer (the "Treasurer") and the Secretary.

62. The Officers will be appointed by the Board at the first meeting of the Directors or as soon after the first meeting of the Directors as possible, if Officers have not already been appointed. Any appointee may hold one or more offices.

### Term of Office

63. Each Officer will hold office until a successor is duly appointed and qualified or until the Officer's death or until the Officer resigns or is removed as provided in these Bylaws.

### Removal

64. Any Officer or agent appointed by the Board or by the Incorporators may be removed by the Board at any time with or without cause, provided, however, any contractual rights of that person, if any, will not be prejudiced by the removal.

### Vacancies

65. The Board may fill a vacancy in any office because of death, resignation, removal, disqualification, or otherwise.

### President

66. Subject to the control and supervisory powers of the Board and its delegate, the powers and duties of the President will be:

a. To have the general management and supervision, direction and control of the business and affairs of the Corporation;

b. To preside at all meetings of the Shareholders when the Chairman of the Board is absent;

c. To call meetings of the Shareholders to be held at such times and at such places as the President will deem proper within the limitations prescribed by law or by these Bylaws;

d. To ensure that all orders and resolutions of the Board are effectively carried out;

e. To maintain records of and certify, whenever necessary, all proceedings of the Board and the Shareholders;

f. To put the signature of the Corporation to all deeds, conveyances, mortgages, guarantees, leases, obligations, bonds, certificates and other papers and instruments in writing which have been authorized by the Board or which, in the opinion of the President, should be executed on behalf of the Corporation; to sign certificates for the Corporation's shares; and, subject to the instructions of the Board, to have general charge of the property of the Corporation and to supervise and manage all Officers, agents and employees of the Corporation; and

g. To perform all other duties and carry out other responsibilities as determined by the Board.

### Treasurer

67. Subject to the control and supervisory powers of the Board and its delegate, the powers and duties of the Treasurer will be:

a. To keep accurate financial records for the Corporation;

b. To deposit all money, drafts and checks in the name of and to the credit of the Corporation in the banks and depositories designated by the Board;

c. To endorse for deposit all notes, checks and drafts received by the Corporation as instructed by the Board, making proper vouchers for them;

d. To disburse corporate funds and issue checks and drafts in the name of the Corporation, as instructed by the Board;

e. To submit to the President and the Board, as requested, an account of all transactions by the Treasurer and the financial condition of the Corporation;

f. To prepare and submit to the Board annual reports detailing the financial status of the Corporation; and

g. To perform all other duties and carry out other responsibilities as prescribed by the Board or the President.

**Secretary**

68. The Secretary will perform the following duties:

a. Prepare the minutes of the meetings of the Shareholders and meetings of the Board and keep those minutes in one or more books provided for that purpose;

b. Authenticate the records of the Corporation as will from time to time be required;

c. Ensure that all notices are duly given in accordance with the provisions of these Bylaws or as required by law;

d. Act as custodian of the corporate records and of the corporate seal, if any, and ensure that the seal of the Corporation, if any, is affixed to all documents the execution of which on behalf of the Corporation under its seal is duly authorized;

e. Keep a register of the post office address of each Shareholder;

f. Sign, along with the President, certificates for shares of the Corporation, the issuance of which will have been authorized by resolution of the Board;

g. Have general charge of the Shareholders' List of the Corporation; and

h. Perform all duties incidental to the office of Secretary and any other duties as from time to time may be delegated to the Secretary by the President or the Board.

## Delegation of Authority

69. The Board reserves the authority to delegate the powers of any Officer to any other Officer or agent, notwithstanding any provision in these Bylaws.

## LOANS, CHECKS, DEPOSITS, CONTRACTS

## Loans

70. Without authorization by a resolution of the Board, the Corporation is prohibited from making or accepting loans in its name, or issuing evidences of indebtedness in its name. The authorization of the Board for the Corporation to perform these acts can be general or specific.

## Checks, Drafts, Notes

71. All checks, drafts, or other orders for the payment of money, notes, or other evidences of indebtedness issued in the name of the Corporation must be signed by a designated Officer or Officers, agent or agents of the Corporation and in a manner as will from time to time be determined by resolution of the Board.

## Deposits

72. All funds of the Corporation not otherwise used will be deposited to the credit of the Corporation in banks, trust companies, or other depositories designated by the Board.

## Voting Securities Held by the Corporation

73. The President, or another Officer or agent designated by the Board will, with full power and authority attend, act, and vote, on behalf of the Corporation, at any meeting of security holders or interest holders of other corporations or entities in which the Corporation may hold securities or interests. At that meeting, the President or other delegated agent will have and execute any and all rights and powers incidental to the ownership of the securities or interests that the Corporation holds.

### Contracts

74. The Board may give authority to any Officer or agent, to make any contract or execute and deliver any instrument in the name of the Corporation and on its behalf, and that authority may be general or specific.

### Conflict of Interest by Directors

75. A Director or Officer of the Corporation will be disqualified from voting as a Director or Officer on a specific matter where that Director or Officer deals or contracts with the Corporation either as a vendor or purchaser.

76. A Director or Officer of the Corporation will not be disqualified as a Director or Officer for the sole reason that the Director or Officer deals or contracts with the Corporation either as a vendor, purchaser, or otherwise.

### Loans to Employees and Officers

77. The Corporation may lend money to, or guaranty any obligation of, or otherwise assist, any Officer or employee of the Corporation or of its subsidiary, including any Officer or employee who is a Director of the Corporation or any subsidiary of the Corporation, whenever, in the opinion of the Directors, the loan, guaranty or assistance may reasonably be expected to benefit the Corporation. The loan, guaranty or other assistance may be with or without interest, and may be unsecured, or secured in such manner as the Board will approve, including, without limitation, a pledge of shares of the Corporation. Nothing contained in this section is to be construed so as to deny, limit or restrict the powers of guaranty or warranty of the Corporation at common law or under any applicable statute.

## APPENDIX

### Glossary

- **Bylaws** - the purpose of these bylaws (the "Bylaws") is to provide rules governing the internal management of the Corporation.

- **Chairman of the Board** - Once a Board of Directors has been appointed or elected by the Shareholders, the Board will then elect a chairman (the "Chairman of the Board"). The Chairman of the Board will act to moderate all meetings of the Board of Directors and any other duties and obligations as described in these Bylaws.

- **Corporate Officer** - A corporate officer (individually the "Officer" and collectively the "Officers") is any individual acting for or on behalf of the Corporation. An Officer of the Corporation will usually be appointed to a specific task such as secretary, president, treasurer or other similar position. One person may hold several offices. The Officers will manage the day-to-day operations of the Corporation and report to the Board of Directors.

- **Principal Executive Office** - The Principal Executive Office for the Corporation is where the President of the Corporation has an office.

- **Principal Office** - The Principal Office of the Corporation is the address designated in the annual report where the executive offices of the Corporation are located.

- **Principal Place of Business** - The Principal Place of Business is the address at which the Corporation conducts its primary business.

- **Registered Office** - The Registered Office is the physical street address within the state where the registered agent can be contacted during normal business hours for service of process.

- **Shareholders' List** - A Shareholders' List is the complete record of the owners of shares of stock in the Corporation.

## Signature Page

By: _____

Name: Scott Zamick

Title: Director   V.P.


By: _____

Name: Rob O'Connell

Title: Director   Secretary


By: _____

Name: Jay Healey

Title: Director   pres.


By: _____

Name:

Title: Director

# OPERATING AGREEMENT

## OF

## EXCELL AUTO FINANCE, LLC

**THIS OPERATING AGREEMENT** (hereinafter referred to as the "Agreement") is made and entered into as of the ___19th___ day of ___October___, 2016, and effective as of said date ("Effective Date"), by and among SCOTT ZANKL and THOMAS GRANER (referred to from time-to-time herein collectively as the "Members" and each individually as a "Member").

### WITNESSETH:

**WHEREAS**, it is the intention of the parties to form a Limited Liability Company, pursuant to the laws of the State of Florida and, in particular, the Florida Revised Limited Liability Company Act, Chapter 605 of the Florida Statutes (the "Act");

**WHEREAS**, the parties desire to enter into this Agreement to establish their respective rights and obligations in connection with the limited liability company, which will be operated and maintained pursuant to the laws of the State of Florida and for the purposes hereinafter set forth;

**NOW, THEREFORE**, in consideration of the mutual covenants set forth herein and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties agree as follows:

## 1. Formation and Definitions

The parties hereby confirm that there has been formed a limited liability company (the "Limited Liability Company") pursuant to the provisions of Chapter 605 of the Act. To the extent permitted by the Act, the terms and provisions of this Agreement shall control if there is a conflict between such law and this Agreement.

## 2. Name; Members and Interest Holders

The name of the Limited Liability Company is EXCELL AUTO FINANCE, LLC, and all business of the Limited Liability Company shall be conducted under said name, or such other name as the Members from time to time may determine. For purposes of this Agreement, any person who owns an interest in the Limited Liability Company but is not admitted as a Member or that has become a Withdrawing Member (as defined in Article 17 below) shall be referred to as an "Interest Holder." An Interest Holder shall have no right to participate in any matter that requires the vote or consent of the Members and shall not have any other rights of a Member, except as specifically provided in this Agreement.

1

### 3. Purposes

The Limited Liability Company is formed for the purpose of engaging in an automobile financing business, and engaging in any and all activities necessary or incidental to the foregoing, and for all other purposes authorized under the Act and the laws of the State of Florida.

### 4. Place of Business

The principal place of business of the Limited Liability Company shall be 1001 Clint Moore Road, Suite 101, Boca Raton, Florida 33487, or such other or additional places of business within or outside of the State of Florida as the Members from time to time may designate. The mailing address of the Limited Liability Company shall be 1001 Clint Moore Road, Suite 101, Boca Raton, Florida 33487, or such other or additional mailing addresses within or outside of the State of Florida as the Members from time to time may designate.

The Limited Liability Company has designated Thomas Graner, whose address is 720 East Palmetto Park Road, Boca Raton, Florida 33432, as the Registered Agent of the Limited Liability Company for service of process.

The registered office and Registered Agent may be changed from time to time by the Members by filing the prescribed forms with the appropriate governmental authorities.

### 5. Term

The term of the Limited Liability Company shall continue until the occurrence of an event hereinafter set forth which causes the termination of the Limited Liability Company.

### 6. Capital Contributions

As initial contributions to the Limited Liability Company, THOMAS GRANER has agreed to contribute the capital necessary for the automobile financial transactions conducted by the Limited Liability Company; SCOTT ZANKL shall contribute to the Limited Liability Company his business contacts, prospects, customer lists and client base by directing business to the Limited Liability Company. In exchange for the foregoing initial contributions ("Capital Contributions"), the Members shall receive Percentage Interests in the Limited Liability Company in the amounts and percentages set forth on Exhibit "A" attached hereto. Each Member's initial Capital Contributions plus any additional Capital Contributions, less any distributions made to a Member pursuant to Article 8(g) and Article 20 shall be referred to as each Member's "Contribution Account."

The capital of the Limited Liability Company shall be the amount noted in the company records, which shall consist of the aggregate of the Capital Contributions made by the Members in accordance with this Agreement and applicable law.

Except as specifically provided in this Agreement or required by law, no Member shall have the right to withdraw or reduce its contributions to the capital of the Limited Liability

2

Company until the termination of the Limited Liability Company. No Member shall have the right to demand and receive any distribution from the Limited Liability Company in any form other than cash, regardless of the nature of such Member's Capital Contribution. No Member shall be paid interest on such Member's Capital Contributions to the Limited Liability Company, except as otherwise provided herein.

The liability of any Member for the losses, debts, liabilities and obligations of the Limited Liability Company shall be limited to: the Capital Contribution of such Member when due under this Agreement; such Member's share of any undistributed assets of the Limited Liability Company; and (only if and to the extent at any time required by applicable law) any amounts previously distributed to such Member by the Limited Liability Company.

The Members shall make additional Capital Contributions in cash, as may be determined by the Members from time to time to be reasonably necessary to pay any operating, capital or other expenses relating to the Limited Liability Company's business (such additional Capital Contributions, the "Additional Capital Contributions"). In the event a Member does not make timely payment of the required Additional Capital Contributions (the "Non-Contributing Member"), the other Members (the "Contributing Members") may make the Additional Capital Contribution on behalf of the Non-Contributing Member and the Contributing Members shall be entitled to reimbursement for said amount out of any proceeds and/or distributions made by the Limited Liability Company plus ten percent (10%) interest per annum until said sum is paid in full out of said proceeds and/or distributions. The Members understand and agree that the nature of the business and operations of the Limited Liability Company is such that capital calls and Additional Capital Contributions by the Members may be necessary to operate the business of the Limited Liability Company, acquire assets, service and maintain such assets, and pay costs and expenses associated therewith, and that although existing Capital Contributions will be used to a certain extent to satisfy the aforesaid costs and expenses, the Members may determine that it is in the best interest of the Limited Liability Company to utilize Additional Capital Contributions for such purposes.

For purposes of this Article 6, the term "Members" shall also include "Interest Holders," except with respect to any matter requiring the consent or vote of the Members.

## 7. Loans and Advances by Members

If any Member shall loan or advance any funds to the Limited Liability Company in excess of the Capital Contribution of such Member prescribed herein, except as described in Article 8 below, such loan or advance shall not be deemed a Capital Contribution to the Limited Liability Company and shall not in any respect increase such Member's interest in the Limited Liability Company.

For purposes of this Article 7, the term "Members" shall also include "Interest Holders."

3

## 8. Allocations and Distributions

(a)     The term "cash receipts" shall mean all cash receipts of the Limited Liability Company from whatever source derived, except not including Capital Contributions made by the Members, minus all reasonable and necessary expenses of the Limited Liability Company, including, without limitation, the proceeds of any sale, exchange, or other disposition of all or any part of the assets of the Limited Liability Company; the proceeds of any loan to the Limited Liability Company; the proceeds of any insurance policy payable to the Limited Liability Company; and the proceeds from the liquidation of the assets of the Limited Liability Company following a termination of the Limited Liability Company.

(b)     The term "Percentage Interests" shall mean the percentages of each Member as set forth in the attached Exhibit "A". Any reference to Exhibit "A" in this Agreement means Exhibit "A" as revised from time to time by the Members to reflect any changes in the information specified herein. The Members acknowledge and agree that their Percentage Interests as of the date of this Agreement are consistent with their understanding as to their interests upon formation of the Limited Liability Company.

(c)     The term "Amortized Principal" shall mean the amortized principal for each payment received pursuant to the amortization schedule to which Members shall agree for each separate financing transaction.

(d)     Profits for each fiscal year (and each item of income and gain entering into the computation thereof) shall be allocated among the Members (and credited to their respective Capital Accounts) in the following order and priority:

(i)     First, to the Members, based on the amount of Losses being offset, until the cumulative Profits allocated pursuant to this Article 8(c)(i) are equal to the cumulative Losses, if any, previously allocated to the Members pursuant to Article 8(d)(v) for all prior periods in proportion to the Members' respective shares of the Losses being offset;

(ii)     Second, to the Members, based on the amount of Losses being offset, until the cumulative Profits allocated pursuant to this Article 8(c)(ii) are equal to the cumulative Losses, if any, previously allocated to the Members pursuant to Article 8(d)(iv) for all prior periods in proportion to the Members' respective shares of the Losses being offset;

(iii)     Third, to the Members, based on the amount of Losses being offset, until the cumulative Profits allocated pursuant to this Article 8(c)(iii) are equal to the cumulative Losses, if any, previously allocated to the Members pursuant to Article 8(d)(iii) for all prior periods in proportion to the Members' respective shares of the Losses being offset;

(iv)     Fourth, to the Members, based on the amount of Losses being offset, until the cumulative Profits allocated pursuant to this Article 8(c)(iv) are equal to the cumulative Losses, if any, previously allocated to the Members pursuant to Article 8(d)(ii) for all prior periods in proportion to the Members' respective shares of the Losses being offset; and

(v)     Fifth, to the Members, in accordance with their Percentage Interests.

4

(e)    Notwithstanding the above, the Members acknowledge that THOMAS GRANER will provide the Limited Liability Company with the requisite capital for each individual financing transaction and shall be repaid by the cash receipts of the Limited Liability Company on a preferred basis.  The Limited Liability Company shall make monthly distributions from its cash receipts to the Members allocated in the following order and priority:

     (i)    First, to THOMAS GRANER, for the amount of Amortized Principal received from each financing transaction;

     (ii)    Second, to THOMAS GRANER, for the cost of capital based on the Wall Street Journal published prime rate plus two points, which is currently 3.5% (meaning the current cost of capital shall be 5.5% as of the date of this Agreement), of the amortized loan balance remaining on each financing transaction; and

     (iii)    Third, to the Members in accordance with their Percentage Interests.

(f)    Losses for each fiscal year (and each item of loss and deduction entering into the computation thereof) shall be allocated among the Members (and charged to their respective Capital Accounts) in the following order and priority:

     (i)    First, to the Members, pro rata based on the amount of Profits being offset, until the cumulative Losses allocated pursuant to this Article 8(d)(i) are equal to the cumulative Profits, if any, previously allocated to the Members pursuant to Article 8(c)(v) for all prior periods in proportion to the Members' respective shares of the Profits being offset;

     (ii)    Second, to the Members, in proportion to, and in the amount of, the excess of (1) the total amount of the additional Capital Contributions (i.e. not included in each Member's initial Capital Contributions) made by each of the Members and (2) the Losses previously allocated to each of the Members pursuant to this Article 8(d)(ii);

     (iii)    Third, if any, to the Members in accordance with their Contribution Account balances as of the end of the period to which the allocation of Losses under this Article 8(d)(iii) relates;

     (iv)    Fourth, to the Members in accordance with their Percentage Interests; and

     (v)    Losses allocated in accordance with clauses (i), (ii), (iii), or (iv) of this Article 8(d) to the Capital Account of any Member shall not exceed the maximum amount of Losses that can be so allocated without creating an Adjusted Capital Account Balance deficit with respect to such Capital Account.  This limitation shall be applied individually with respect to each Member in order to permit the allocation pursuant to this Article 8(d)(v) of the maximum amount of Losses permissible under Treasury Regulations ("Regulations") § 1.704-1(b)(2)(ii)(d).  All Losses in excess of the limitations set forth in this Article 8(d)(v) shall be allocated solely to those Members that bear the economic risk for such additional Losses within the meaning of § 704(b) of the Internal Revenue Code of 1986, as thereafter amended ("Code"), and the Regulations thereunder.  If it is necessary to allocate Losses under the preceding sentence, the Members shall, in accordance with the

5

Regulations promulgated under Code § 704(b), determine those Members that bear the economic risk for such additional Losses.

(g)     Except as otherwise provided in Article 8(f) below, for income tax purposes, all items of income, gain, loss, deduction and credit of the Limited Liability Company for any tax period shall be allocated among the Members in accordance with the allocation of Profits and Losses prescribed in this Article 8.

(h)     In accordance with Code § 704(c) and the Regulations thereunder, income, gain, loss and deduction with respect to any property contributed to the capital of the Limited Liability Company shall, solely for tax purposes, be allocated among Members so as to take account of any variation between the adjusted basis of such property to the Limited Liability Company for federal income tax purposes and its initial Gross Asset Value under the Traditional Method as defined under Regulations § 1.704-3(b). Allocations pursuant to Articles 8(e) and (f) are solely for purposes of federal, state and local taxes and shall not affect, or in any way be taken into account in computing, any Member's Capital Account or share of Profits, Losses or other items or distributions pursuant to any other provision of this Agreement.

(i)     Except as provided in Article 20 (in connection with the dissolution or liquidation of the Limited Liability Company), or otherwise agreed to by the Members, distributions of cash receipts shall be on a monthly basis and in amounts determined by the Profits for the previous month after any expenses, and any such distribution shall be allocated among the Members in proportion to the Percentage Interests.

(j)     For purposes of this Article 8, the term "Members" shall also include "Interest Holders," except with respect to any matter requiring the consent or vote of the Members.

### 9. Books, Records and Tax Returns

At all times during the continuance of the Limited Liability Company, the Members shall keep or cause to be kept complete and accurate records and books of account in which shall be entered each transaction of the Limited Liability Company in accordance with generally accepted accounting principles.

The fiscal year of the Limited Liability Company for both accounting and income tax purposes shall be the calendar year. The Limited Liability Company shall report its operations, net income and net losses in accordance with the methods of accounting selected by the Members.

To the extent deemed necessary, the Members may choose and employ, on behalf of the Limited Liability Company, and at the expense of the Limited Liability Company, such firm of certified public accountants as is appropriate to serve as the Limited Liability Company's accountants.

The Members shall prepare or cause to be prepared all required Federal, State and local income tax and information returns for the Limited Liability Company, and shall cause such tax and information returns to be filed timely with the appropriate governmental authorities. After the end of each fiscal year, the Members shall forward to each Member and Interest Holder during the

6

preceding fiscal year a true copy of the Limited Liability Company's information return filed with the Internal Revenue Service for the preceding fiscal year.

All books and records of the Limited Liability Company shall be kept at the office of the Limited Liability Company or at such other place or places as may be determined by the Members and shall be available at reasonable times during business hours and upon reasonable notice for inspection and examination by the Members or their duly authorized representatives.  For clarification, Interest Holders shall have no right to inspect and examine the books and records of the Limited Liability Company.

## 10.  Bank Accounts

All funds of the Limited Liability Company shall be deposited in the Limited Liability Company's name in such account or accounts as shall be designated by the Members.

## 11.  Management of the Limited Liability Company

Management of the Limited Liability Company is vested in the Members.  All actions or decisions affecting or arising from the management of the Limited Liability Company must be approved by the consent of the Members whose Percentage Interests exceed fifty percent (50%) of the Percentage Interests of all Members ("Majority of the Members").  Except as otherwise provided in this Agreement, acts of the Members shall require the prior consent of the Majority of the Members.  Except as expressly authorized in this Agreement or approved by the consent of the Majority of Members, no single Member is authorized or empowered to execute, deliver, or perform any agreements, acts, transactions, or matters on behalf of the Limited Liability Company as agent for the Limited Liability Company.

The business and affairs of the Limited Liability Company shall be conducted and managed by the Members of the Limited Liability Company in accordance with this Agreement and the Act. The Limited Liability Company shall have all powers afforded to such entities under the Act and any other applicable laws, and the Members may exercise all such powers and authority and take all such actions as are necessary to carry out the powers and purposes of the Limited Liability Company, in accordance with and subject to the terms and provisions of this Agreement and the Act.

The Members shall oversee the management of the business and affairs of the Limited Liability Company, and each Member shall devote such time and provide such managerial and administrative services as are necessary to further the interests of the Limited Liability Company, it being understood that the Members shall not be required to devote any specific amount of time to the affairs of the Limited Liability Company.  The Members shall not receive a salary or compensation associated with their management roles as Members of the Limited Liability Company.

The Limited Liability Company shall reimburse all reasonable costs and expenses incurred by the Members in connection with the management and administration of the Limited Liability Company.  The Members are hereby expressly authorized to negotiate and enter into contracts

7

with such brokers, agents, management firms, attorneys, and other professionals and individuals as the Members may deem in their discretion necessary for the furtherance of the purposes of the Limited Liability Company, including such contracts as may provide for payment of such individuals out of the proceeds of the operations of the Limited Liability Company, and the Limited Liability Company shall reimburse the Members for any costs and expenses advanced in connection with the foregoing.

A Member's duty of care in the discharge of the Member's duties to the Limited Liability Company and the Members is limited to refraining from engaging in grossly negligent conduct, intentional misconduct, or a knowing violation of law. In discharging the duties of a Members, each Member shall be fully protected in relying in good faith upon the records of the Limited Liability Company and upon such information, opinions, reports or statements by Members, agents, accountants, attorneys, management professionals, or other persons as to matters each Member reasonably believes are within such person's professional or expert competence, including without limitation information, opinions, reports or statements as to the value or amount of the assets, liabilities, profits or losses of the Limited Liability Company or any other facts pertinent to the existence and amount of assets from which distributions to Members might properly be paid.

To the extent of the Limited Liability Company's assets, and to the extent permitted by law, the Limited Liability Company shall indemnify and hold each Member harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred by the Member by reason of any act or omission of the Member made in good faith on behalf of the Limited Liability Company.

The Members shall have the power to hire, appoint, or promote such number of employees and officers, and to set the compensation of the same, of the Limited Liability Company or any of its affiliates as the Members deem appropriate, and to remove, replace, demote, accept the resignation of, or terminate the services of the same.

## 12. Member Meetings

(a)     Regular and special meetings of the Members may be held at any place within or without the State of Florida as agreed by the Members. In accordance with the procedures in Article 22, notice shall be delivered personally or sent by mail, fax, or email. Except where not required in this Agreement, notice is required to be given to each Member five days prior to the meeting. Any meeting, regular or special, may be held by conference telephone or similar communication equipment. So long as all Members participating in the meeting can hear one another, all such Members shall be deemed to be present at the meeting.

(b)     No annual meetings of the Members are required.

(c)     Regular meetings of the Members shall be held without notice and without call at such time as from time to time may be agreed by the Members.

(d)     Special meetings of the Members for any purpose or purposes shall be called at any time by any Member.

8

(e)     Any action of the Members may be approved without a meeting provided that such action shall be by written consent of all of the Members ("Unanimous Consent").  Such written consent or consents shall be filed with the minutes of the proceedings of the Members and shall have the same force and effect as a vote of the Majority of the Members at a meeting duly held.

(f)     The presence of the Majority of the Members at a meeting of the Members constitutes a quorum for the transaction of business.  Every act or decision done or made by the majority of the quorum at a meeting duly held at which a quorum is present shall be the act of the Members, unless a greater number, or the same number after disqualifying one or more Members from voting, is required by law, by the articles of organization, or by this Agreement.  A meeting at which a quorum is initially present may continue to transact business notwithstanding the departure of a Member, provided that any action taken is approved by at least the majority of the quorum for such meeting.  If less than a quorum shall be in attendance at the time for which said meeting shall have been called, those present may, by majority vote, adjourn the said meeting to another date certain.

(g)     Without limiting the generality of the powers of the Members to manage the Limited Liability Company, the Members are not authorized to make the following decisions without the prior Unanimous Consent of the Members:

(i)     To cause or permit the Limited Liability Company to dissolve, wind up, or liquidate;

(ii)     To terminate or amend this Agreement;

(iii)     To determine the fair market value of any property distributed in-kind to a Member, pursuant to Article 20; and

(iv)     To designate a Liquidating Agent (as defined in Article 20).

(h)     The transactions of any meeting of the Members which transactions satisfy the approval requirements set forth above, but which transactions are deficient for reason of improper notice shall be valid as though duly held after regular call and notice if a quorum is present and if, either before or after the meeting, each Member not present, or who though present had prior to the meeting or at its commencement protested the lack of proper notice to him, signs a written waiver of notice or a consent to holding such meeting or an approval of the minutes thereof.  All such waivers, consents, or approvals shall be filed with the Limited Liability Company records or made a part of the minutes of the meeting.

(i)     The majority of the quorum may adjourn any Members meeting to meet again at a stated day and hour; provided, however, that in the absence of a quorum, a majority of the Members present at any Members meeting, either regular or special, may adjourn from time to time until the time fixed for the next regular meeting of the Members.

(j)     If the meeting is adjourned for more than 24 hours, notice of any adjournment to another time or place shall be given prior to the time of the adjourned meeting to the Members who were not present at the time of adjournment.  Otherwise notice of the time and place of holding

an adjourned meeting need not be given to absent Members if the time and place be fixed at the meeting adjourned.

(k)     For clarification, Interest Holders shall have no right to participate in any matter, including, without limitation, any meeting and the receipt of any notice of any meeting, requiring the consent or vote of the Members.

## 13.  Member Deadlock and Activities

(a)     In the event that after 30 days the Members are deadlocked as to any action to be taken or task to be performed by the Members ("Deadlock Issue"), any Member may refer the Deadlock Issue to a mediator by written notice to the other Members. If not resolved by mediation, the parties shall resolve the Deadlock Issue by arbitration pursuant to this Article.  In the arbitration, a Member may tender an offer to buy the Interest of another Member or all of the assets of the Limited Liability Company.  The arbitrator has the power and authority to resolve the Deadlock Issue and may do so by compelling the sale of one or more Interests (either to a tendering Member or a third party) or the dissolution and liquidation of the Limited Liability Company, by such means and at such prices as the arbitrator determines to be in the best interests of the Limited Liability Company and its Members.  The arbitrator may compel production of documents, order reports, or retain experts to assist him in the arbitration, and the costs are allocated among the Members as the arbitrator determines.  The provisions of this Section 13 do not limit the remedies that the arbitrator may otherwise award.  Notwithstanding the foregoing, except as it pertains to a Deadlock Issue, either party may file a lawsuit in the Circuit Court of the appropriate jurisdiction as it relates to any dispute arising out of this Agreement or as otherwise allowed by applicable law.

(b)     In the event that either party hereto seeks to collect any damages resulting from, or the injunction of any action constituting, a breach of any of the terms or provisions of this Agreement, then the party found to be at fault shall pay all reasonable costs and attorneys' fees (including costs of appeal) of the other.

(c)     Each Member may engage in or possess interests in other business ventures of every kind and description for such person's own account, including but not limited to those competitive with the business of the Limited Liability Company.  Neither the Limited Liability Company nor any of the other Members shall have any rights by virtue of this Agreement in and to such independent business ventures or to the income or profits derived therefrom.

## 14.  Assignment of Interests

Except as otherwise provided in this Agreement, no Members may assign, pledge, hypothecate, transfer or otherwise dispose of all or any part of his or her interest in the Limited Liability Company, including without limitation the capital, profits or distributions of the Limited Liability Company, without the prior written consent of the Majority of the Members.

An assignment, pledge, hypothecation, transfer or other disposition of all or any part of the interest of a Member in the Limited Liability Company in violation of the provisions hereof shall be null and void for all purposes.

10

As between a Member and an assignee or transferee of such Member's interest in accordance with this Agreement, allocations and distributions for any fiscal year shall be apportioned as of the date of the assignment or transfer, on the basis of the number of days before and after said date, without regard to the results of the Limited Liability Company's operations before or after the assignment or transfer.

No assignment or other disposition of any interest of any Member may be made if such assignment or disposition, alone or when combined with other transactions, would result in the termination of the Limited Liability Company within the meaning of the Code or under any other relevant section of the Code or any successor statute. No assignment or other disposition of any interest of any Member may be made without an opinion of counsel satisfactory to the Members that such assignment or disposition is subject to an effective registration under, or exempt from the registration requirements of, applicable State and Federal securities laws. No interest in the Limited Liability Company may be assigned or given to any person below the age of 21 years or to a person who has been adjudged to be insane or incompetent.

Anything herein contained to the contrary, the Members and the Limited Liability Company shall be entitled to treat the record holder of the interest of a Member as the absolute owner thereof, and shall incur no liability by reason of distributions made in good faith to such record holder, unless and until there has been delivered to the Members the assignment or other instrument of transfer and such other evidence as may be reasonably required by the Members to establish to the satisfaction of the Members that an interest has been assigned or transferred in accordance with this Agreement.

Notwithstanding anything contained in this Article 14 or elsewhere to the contrary, assignments or other dispositions of any interest of a Member to a Member's spouse, a Member's issue, the spouse of such issue, or a trust for the benefit of any of the foregoing may be made without compliance with the terms and conditions of this Agreement pertaining to assignments or other dispositions.

For purposes of this Article 14, the term "Members" shall also include "Interest Holders," except with respect to any matter requiring the consent or vote of the Members.

## 15. Right of First Refusal

If a Member or Interest Holder desires to sell, transfer or otherwise dispose of all or any part of his or her interest in the Limited Liability Company, such Member (the "Selling Member") shall first offer to sell and convey such interest to the other Members ("Non-Selling Members") before selling, transferring or otherwise disposing of such interest to any other person, corporation or other entity ("Offer"). Such Offer shall be in writing, shall be given to every Non-Selling Member, and shall set forth the interest to be sold, the purchase price to be paid, the date on which the closing is to take place (which date shall be not less than 30 nor more than 60 days after the delivery of the offer), the location at which the closing is to take place, and all other material terms and conditions of the sale, transfer or other disposition.

11

Within 30 days after the delivery of said Offer ("Offer Period"), the Non-Selling Members shall deliver to the Selling Member a written notice either accepting or rejecting the Offer. Failure to deliver said notice within the Offer Period conclusively shall be deemed a rejection of the Offer. Any or all of the Non-Selling Members may elect to accept the Offer, and if more than one of the Non-Selling Members elects to accept the Offer, the interest being sold and the purchase price therefor shall be allocated among the Non-Selling Members accepting the Offer in proportion to such Non-Selling Members' Percentage Interests, unless they otherwise agree in writing.

If any or all of the Non-Selling Members elect to accept the Offer, then the closing of title shall be held in accordance with the Offer and the Selling Member shall deliver to the Non-Selling Members who have accepted the Offer an assignment of the interest being sold by the Selling Member, and the Non-Selling Members shall pay the purchase price prescribed in the Offer.

If no Non-Selling Member accepts the Offer, or if the Non-Selling Members who have accepted such Offer default in their obligations to purchase the interest, then the Selling Member within 120 days after the delivery of the Offer ("Post-Offer Period") may sell such interest to any other person or entity at a purchase price which is not less than the purchase price prescribed in the Offer and upon terms and conditions which are substantially the same as the terms and conditions set forth in the Offer, provided all other applicable requirements of this Agreement are complied with. An assignment of such interest to a person or entity who is not a Member of the Limited Liability Company shall only entitle such person or entity to the allocations and distributions to which the assigned interest is entitled as an Interest Holder, unless such person or entity applies for admission to the Limited Liability Company and is admitted to the Limited Liability Company as a Member in accordance with this Agreement.

If the Selling Member does not sell such interest within the Post-Offer Period, then the Selling Member may not thereafter sell such interest without again offering such interest to the Non-Selling Members in accordance with this Article 15.

For clarification, for purposes of this Article 15 the term "Selling Member" shall include "Interest Holders," but otherwise the term "Member" or "Non-Selling Member" as used in this Article 15 shall not include Interest Holders.

## 16. Admission of New Members

The Members may admit new Members (or transferees of any interests of existing Members or Interest Holders) into the Limited Liability Company only by the consent of the Majority of the Members.

As a condition to the admission of a new Member, such new Member shall execute and acknowledge such instruments, in form and substance satisfactory to the Members, as the Members may deem necessary or desirable to effectuate such admission and to confirm the agreement of such new Member to be bound by all of the terms, covenants and conditions of this Agreement, as the same may have been amended. Such new Member shall pay all reasonable expenses in connection with such admission, including without limitation reasonable attorneys' fees and the cost of the preparation, filing or publication of any amendment to this Agreement or the Articles

12

of Organization, which the Members may deem necessary or desirable in connection with such admission.

No new Member shall be entitled to any retroactive allocation of income, losses, or expense deductions of the Limited Liability Company. The Members may make pro rata allocations of income, losses or expense deductions to a new Member for that portion of the tax year in which the new Member was admitted in accordance with applicable sections of the Code and Regulations thereunder.

In no event shall a new Member be admitted to the Limited Liability Company if such admission would be in violation of applicable Federal or State securities laws or would adversely affect the treatment of the Limited Liability Company for income tax purposes.

## 17. Withdrawal Events Regarding Members and Election to Continue the Limited Liability Company

In the event of the death, permanent disability, withdrawal, expulsion, dissociation or dissolution of a Member, or an event of bankruptcy or insolvency, as hereinafter defined, with respect to a Member, or the occurrence of any other event which terminates the continued membership of a Member in the Limited Liability Company pursuant to the laws of the State of Florida (each of the foregoing being hereinafter referred to as a "Withdrawal Event" and each such Member a "Withdrawing Member"), the Limited Liability Company shall not terminate and the business of the Limited Liability Company shall continue, unless, within 60 days after notice to the Members of such Withdrawal Event, the remaining Members, by the consent of a Majority of the Members (other than the Withdrawing Member who caused the Withdrawal Event), shall elect to terminate the Limited Liability Company.

In the event of a Withdrawal Event with respect to Withdrawing Member, such Withdrawing Member's membership and participation in the Limited Liability Company shall cease, any successor in interest to such Withdrawing Member (including without limitation any executor, administrator, heir, committee, guardian, trustee, receiver, or other representative or successor) shall not become entitled to any rights or interest of such Withdrawing Member in the Limited Liability Company, including the right to review or obtain books or records of the Limited Liability Company (unless required by law), other than the allocations and distributions to which such Withdrawing Member would be entitled, unless such successor in interest is admitted as a Member in accordance with this Agreement, and the Withdrawing Member shall become and have only the rights of an Interest Holder under this Agreement.

An "event of bankruptcy or insolvency" with respect to a Member shall occur if such Member: applies for or consents to the appointment of a receiver, trustee or liquidator of all or a substantial part of his assets; or makes a general assignment for the benefit of creditors; or is adjudicated a bankrupt or an insolvent; or files a voluntary petition in bankruptcy or a petition or an answer seeking an arrangement with creditors or to take advantage of any bankruptcy, insolvency, readjustment of debt or similar law or statute, or an answer admitting the material allegations of a petition filed against him in any bankruptcy, insolvency, readjustment of debt or similar proceedings; or takes any action for the purpose of effecting any of the foregoing; or an

13

order, judgment or decree shall be entered, with or without the application, approval or consent of such Member, by any court of competent jurisdiction, approving a petition for or appointing a receiver or trustee of all or a substantial part of the assets of such Member, and such order, judgment or decree shall continue unstayed and in effect for thirty days.

## 18. Purchase Upon a Withdrawal Event

(a)  Upon the death of a Member ("Decedent"), the Limited Liability Company shall not terminate. If the Decedent's interest in the Limited Liability Company is bequeathed or passed by operation of law to one or more of the Decedent's spouse, issue, spouse of such issue or a trust for their benefit, such successors shall be substituted for the Decedent as Members of the Limited Liability Company. (The fact that the Decedent's interest may be held by the Decedent's personal representatives for a period of time shall not disqualify such interest from falling within the preceding sentence.) Otherwise, the Decedent's interest in the Limited Liability Company shall be subject to the provisions of Article 18(b) below, provided, however, that if a Majority of the Members vote to have the personal representative of the Decedent substituted for the Decedent as a Member of the Limited Liability Company, and, in such event, the personal representative agrees to such substitution, then such personal representative shall be substituted in the place and stead of the Decedent and such personal representative shall have the same rights and obligations in the Limited Liability Company as the Decedent would have had if the Decedent had survived.

(b)  Upon the occurrence of a Withdrawal Event as defined above, and subject to the provisions of Article 18(a) above, unless the remaining Members have consented to terminate the Limited Liability Company as provided in Article 17 and unless a successor of the Withdrawing Member has been substituted for the Withdrawing Member as a Member of the Limited Liability Company, within 30 days of the Withdrawal Event the Withdrawing Member, or the legal representative or representatives of, or the heirs, distributees or beneficiaries of, or the executor or administrator of, or the trustee, receiver, or guardian of the estate of the Withdrawing Member, as the case may be (the "Withdrawing Member's representative"), shall notify the Limited Liability Company in writing of the occurrence of the Withdrawal Event ("Withdrawal Notice"). If a Withdrawal Notice is not sent as contemplated herein, then notice shall be deemed given 30 days from the date the Limited Liability Company is made aware of such Withdrawal Event. For the 60 day period (the "Company's Option Period") commencing upon the date the Withdrawal Notice is given, the Limited Liability Company shall have the option (the "Company's Withdrawal-Related Purchase Option") to purchase all, and not less than all, of the Withdrawing Member's interest in the Limited Liability Company. The Company's Withdrawal-Related Purchase Option shall be deemed exercised upon delivery of written notice (the "Company's Withdrawal-Related Exercise Notice") to the Withdrawing Member (or the Withdrawing Member's representative) prior to the expiration of the Company's Option Period.

(c)  The purchase price for the interest in the Limited Liability Company purchased pursuant to this Article 18 shall be determined in accordance with the provisions of Article 19 below. The following terms and conditions shall apply to the purchase and sale of the interest in the Limited Liability Company of a Withdrawing Member:

14

(i)     Not less than 30% percent of the purchase price for the interest in the Limited Liability Company shall be paid in cash or by certified check to the Withdrawing Member or such Withdrawing Member's representative on the closing date indicated in the Company's Withdrawal-Related Exercise Notice, which shall not be a date that is less than five business days nor more than 60 business days after the end of the Company's Option Period ("Closing Date").

(ii)     Any balance of the purchase price shall be paid to the Withdrawing Member or such Withdrawing Member's representative in cash or by certified check, or, at the option of the Limited Liability Company, in 36 consecutive equal monthly installments, with the first installment to be paid on the date which is 30 days after the Closing Date, and with each subsequent payment to be paid on the like day of each succeeding month. This obligation shall be evidenced by a negotiable promissory note to the order of the Withdrawing Member or such Withdrawing Member's representative providing for: (1) the right of prepayment without penalty; and (2) acceleration of the entire unpaid principal balance in the event of a default in payment for more than ten days after notice and demand. Said promissory note shall be executed and delivered by the Limited Liability Company simultaneously with the payment provided for in Article 18(c)(i) above.

(iii)     Upon receipt of the cash payment and the promissory note, if any, required in Article 18(c)(i) and (ii) above, the Withdrawing Member or such Withdrawing Member's representative shall deliver an assignment to the Limited Liability Company of all of the interest in the Limited Liability Company of the Withdrawing Member, with any other instruments required by the Limited Liability Company, including any applicable tax waivers, so that full and complete title to the Withdrawing Member's interest in the Limited Liability Company can be transferred on the books of the Limited Liability Company.

(iv)     If the Withdrawing Member's interest in the Limited Liability Company has been purchased by delivery of a promissory note, then, when the interest is transferred as provided in Article 18(c)(iii), the Limited Liability Company shall note in its books that said interest is held as collateral security for payment of the promissory note and is not to be further transferred until the promissory note is paid in full.

If the remaining Members unanimously elect to terminate the Limited Liability Company because of the Withdrawal Event pursuant to Article 17 above, the provisions of this Article 18 shall be null and void.

## 19. Purchase Price

For purposes of a purchase of an interest in the Limited Liability Company referring to this Article 19, the purchase price for the interest in the Limited Liability Company shall be the fair market value of such interest as determined pursuant to this Article. The fair market value of each one percent interest in the Limited Liability Company as re-determined from time to time shall take into account the tangible and intangible assets of the Limited Liability Company, including good will and other relevant factors, and liabilities of the Limited Liability Company.

15

If the parties hereto fail to re-determine the fair market value of each one percent interest in the Limited Liability Company within 60 days after any fiscal year, the fair market value of each one percent interest in the Limited Liability Company for the purpose of establishing the purchase price hereunder shall be as agreed upon by the Withdrawing Member or the Withdrawing Member's representative and the Limited Liability Company. In the event the purchase price is being computed as a result of a Withdrawal Event, the fair market value shall be computed as of the date immediately preceding said Withdrawal Event. If the parties are unable to agree upon the fair market value 30 days prior to the date of the purchase, then the fair market value of each one percent interest in the Limited Liability Company shall be determined by appraisal performed by a qualified business appraiser mutually selected by the Withdrawing Member or the Withdrawing Member's representative and the Limited Liability Company. All costs of any such appraisal shall be borne equally by the Withdrawing Member or the Withdrawing Member's representative and the Limited Liability Company. If the Withdrawing Member or the Withdrawing Member's representative and the Limited Liability Company cannot agree on an appraiser within 25 days prior to the date of the purchase, then an appraiser shall be determined as follows:

(i)     Not less than 20 days prior to the date of the purchase, the Withdrawing Member or the Withdrawing Member's representative shall appoint one appraiser, and the Limited Liability Company shall appoint one appraiser.

(ii)     If either the Withdrawing Member or the Withdrawing Member's representative or the Limited Liability Company shall fail to appoint an appraiser, the appraiser appointed by the other shall determine the fair value of each interest in the Limited Liability Company.

(iii)     If the two appraisers appointed by the Withdrawing Member or the Withdrawing Member's representative and the Limited Liability Company shall fail to agree upon the fair value of each one percent interest in the Limited Liability Company ten days prior to the date of the purchase, the two appraisers shall appoint a third appraiser to evaluate the appraisals of the first two appraisers, and the determination of the majority of the appraisers shall be binding upon all parties.

(iv)     All costs of any such appraisal shall be borne equally by the Withdrawing Member or the Withdrawing Member's representative and the Limited Liability Company.

## 20.  Dissolution and Liquidation

The Limited Liability Company shall terminate upon the occurrence of any of the following: the election by Unanimous Consent of the Members to dissolve the Limited Liability Company; or any other event which pursuant to this Agreement or applicable law, as either may hereafter be amended, shall cause a termination of the Limited Liability Company.

The liquidation of the Limited Liability Company shall be conducted and supervised by the Members or by a person designated for such purposes by the Unanimous Consent of the Members (the "Liquidating Agent"). The Liquidating Agent hereby is authorized and empowered to execute any and all documents and to take any and all actions necessary or desirable to effectuate

16

the dissolution and liquidation of the Limited Liability Company in accordance with this Agreement.

Promptly after the termination of the Limited Liability Company, the Members or Liquidating Agent shall cause to be prepared and furnished to the Members a statement setting forth the assets and liabilities of the Limited Liability Company as of the date of termination. The Members or Liquidating Agent, to the extent practicable, shall liquidate the assets of the Limited Liability Company as promptly as possible, but in an orderly and businesslike manner so as not to involve undue sacrifice.

The proceeds of sale and all other assets of the Limited Liability Company shall be applied and distributed in the following order of priority: (a) to the payment of the expenses of liquidation and the debts and liabilities of the Limited Liability Company, other than debts and liabilities to Members; (b) to the payment of debts and liabilities to Members; (c) to the setting up of any reserves which the Members or Liquidating Agent may deem necessary or desirable for any contingent or unforeseen liabilities or obligations of the Limited Liability Company, to be held for a period of two years for the purpose of payment of the aforesaid liabilities and obligations, at the expiration of which period the balance of such reserves shall be distributed as hereinafter provided; (d) to the Members in accordance with the positive balance of each Member's Capital Account as determined after taking into account all Capital Account adjustments for the Limited Liability Company's taxable year during which the liquidation occurs, including any Capital Account adjustments associated with the allocation of Profits and Losses with respect to any sale, transfer or other taxable disposition of the property of the Limited Liability Company; any such distributions to the Members in respect of their Capital Accounts shall be made within the time requirements of Regulations § 1.704-1(b)(2)(ii)(b)(2); and (e) to the Members in proportion to the Members' Percentage Interests.

No Member shall have any obligation to contribute or advance any funds or other property to the Limited Liability Company by reason of any negative or deficit balance in such Member's Capital Account during or upon completion of winding up or at any other time except to the extent that a deficit balance is directly attributable to a distribution in violation of this Agreement.

A Member shall have no right to demand and receive any distribution from the Limited Liability Company in any form other than cash.

Upon compliance with the distribution plan, the Members shall cease to be such, and the Members or Liquidating Agent shall execute, acknowledge and cause to be filed such certificates and other instruments as may be necessary or appropriate to evidence the dissolution and termination of the Limited Liability Company.

For purposes of this Article 20, the term "Members" shall also include "Interest Holders," except with respect to any matter requiring the consent or vote of the Members.

17

## 21. Representations of Members

Each of the Members represents, warrants and agrees that the Member is holding the interest in the Limited Liability Company for the Member's own account as an investment and not with a view to the sale or distribution thereof; the Member, if an individual, is over the age of 21, or if the Member is an organization, such organization is duly organized, validly existing and in good standing under the laws of its state of organization and that it has full power and authority to execute and perform its obligations under this Agreement; and the Member shall not dispose of such interest or any part thereof in any manner which would constitute a violation of the Securities Act of 1933, the Rules and Regulations of the Securities and Exchange Commission, or any applicable laws, rules or regulations of any State or other governmental authorities, as the same may be amended. Each party to this Agreement represents and warrants to each other party that such party has read and fully understood the terms and provisions hereof, has had an unlimited opportunity to review this Agreement with legal counsel, and has executed this Agreement based upon such party's own judgment and advice of independent legal counsel, if sought.

For purposes of this Article 21, the term "Members" shall also include "Interest Holders."

## 22. Notices

All notices, demands, requests or other communications which any of the parties to this Agreement may desire or be required to give hereunder shall be in writing and shall be deemed to have been properly given if sent by Federal Express courier or by registered or certified mail, return receipt requested, with postage prepaid, addressed as follows: (a) if to the Limited Liability Company, to the Limited Liability Company at such address or addresses as may be designated by the Limited Liability Company or the Members by notice to the Members pursuant to this Article 22; and (b) if to any Member, to such address as may be designated by said Member by notice to the Limited Liability Company and the other Members pursuant to this Article 22. Unless otherwise designated, the addresses referred to in this Article 22 shall be the addresses reflected in the books and records of the Limited Liability Company.

For purposes of this Article 22, the term "Members" shall also include "Interest Holders," except with respect to any matter requiring the consent or vote of the Members.

## 23. Amendments

This Agreement may not be altered, amended, changed, supplemented, waived or modified in any respect or particular unless the same shall be in writing and agreed to by the Unanimous Consent of the Members.

## 24. Miscellaneous

This Agreement and the rights and liabilities of the parties hereunder shall be governed by and determined in accordance with the laws of the State of Florida. If any provision of this Agreement shall be invalid or unenforceable, such invalidity or unenforceability shall not affect the other provisions of this Agreement, which shall remain in full force and effect.

18

The captions in this Agreement are for convenience only and are not to be considered in construing this Agreement. All pronouns shall be deemed to be the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require. References to a person or persons shall include partnerships, corporations, limited liability companies, unincorporated associations, trusts, estates and other types of entities.

This Agreement, and any amendments hereto, may be executed in counterparts all of which taken together shall constitute one agreement.

To the extent any provision of this Agreement is prohibited or otherwise ineffective under Chapter 605 of the Florida Statutes, such provision shall be considered to be ineffective to the smallest degree possible in order to make this Agreement effective under Chapter 605 of the Florida Statutes. If Chapter 605 of the Florida Statutes is subsequently amended or interpreted in such a way to make any provision of this Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment.

Subject to the limitations on transferability contained herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, executors, administrators, successors and assigns. No provision of this Agreement is intended to be for the benefit of or enforceable by any third party.

(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

19

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date first above written.

**MEMBERS:**

WITNESSES:

Print Name: Ashley Durst

_____
**THOMAS GRANER**, Individually

Print Name: Ashley Durst

_____
**SCOTT ZANKL**, Individually

20

# OPERATING AGREEMENT

## OF

## EXCELL AUTO FINANCE, LLC

### EXHIBIT "A"

Percentage Interest of each Member in Limited Liability Company.

| MEMBER | PERCENTAGE INTEREST IN THE LLC |
|---|---|
| THOMAS GRANER | 75% |
| SCOTT ZANKL | 25% |

21

# EXHIBIT H

**Exhibit H**

**FINANCING STATEMENT FORM**

Case 22-15627-EPK    Doc 10    Filed 07/24/22    Page 355 of 389

**FILED**

2022 Jan 26 05:17 PM

******* 202200273243 *******

| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON |
|---|
| CAPITOL SERVICES; 8003454647 |
| Email MSHUNK@CAPITOLSERVICES.COM |
| B. SEND ACKNOWLEDGEMENT TO: |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| KARMA OF BROWARD, INC. | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 1c. MAILING ADDRESS Line One | | | |
| 1717 17TH STREET | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | FT. LAUDERDALE | FL | 33316 | US |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| KARMA OF PALM BEACH, INC. | | | |

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 2c. MAILING ADDRESS Line One | | | |
| 1001 CLINT MOORE ROAD, UNIT B | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | BOCA RATON | FL | 33487 | US |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FVP SERVICING, LLC | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 3c. MAILING ADDRESS Line One | | | |
| 1201 BROADWAY, 7TH FLOOR | This space not available. | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | NEW YORK | NY | 10001 | US |

**4. This FINANCING STATEMENT covers the following collateral:**

ALL ASSETS OF DEBTORS NOW OWNED OR HEREAFTER ACQUIRED AND WHEREVER LOCATED.

**5. ALTERNATE DESIGNATION (if applicable)**    ☐ LESSEE/LESSOR    ☐ CONSIGNEE/CONSIGNOR    ☐ BAILEE/BAILOR    ☐ AG LIEN    ☐ NON-UCC FILING    ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**    1700101-54 (FEENIX KARMA) - FL - STATE

**STANDARD FORM - FORM UCC-1 (REV.05/2013)**    Filing Office Copy    Approved by the Secretary of State, State of Florida

# EXHIBIT I

**Exhibit I**

**FINANCING STATEMENT FORM**

| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON |
|---|
| CAPITOL SERVICES; 8003454647 |
| Email  MSHUNK@CAPITOLSERVICES.COM |

**FILED**

2022 Jan 26 05:37 PM

****** 202200273465 ******

| B. SEND ACKNOWLEDGEMENT TO: |
|---|

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

---

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ZANKL | KRISTEN | NOEL | |

| 1c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 16937 PIERRE CIRCLE | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | DELRAY BEACH | FL | 33446 | US |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| ZANKL | SCOTT | THOMAS | |

| 2c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 16937 PIERRE CIRCLE | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | DELRAY BEACH | FL | 33446 | US |

**3. SECURED PARTY'S NAME**    (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FVP SERVICING, LLC | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS Line One | | | | |
|---|---|---|---|---|
| 1201 BROADWAY, 7TH FLOOR | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | NEW YORK | NY | 10001 | US |

**4. This FINANCING STATEMENT covers the following collateral:**

See attached

---

**5. ALTERNATE DESIGNATION (if applicable)**    ☐ LESSEE/LESSOR    ☐ CONSIGNEE/CONSIGNOR    ☐ BAILEE/BAILOR
☐ AG LIEN    ☐ NON-UCC FILING    ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**    1700101-54 (FEENIX KARMA) - FL - STATE

STANDARD FORM - FORM UCC-1 (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
**BRIDGET M STUHR**

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

**CAPITOL SERVICES, INC.**

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME **ZANKL** | FIRST PERSONAL NAME **KRISTEN** | ADDITIONAL NAME(S)/INITIAL(S) **NOEL** | SUFFIX |

| 1c. MAILING ADDRESS **16937 PIERRE CIRCLE** | CITY **DELRAY BEACH** | STATE **FL** | POSTAL CODE **33446** | COUNTRY **USA** |
|---|---|---|---|---|

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME **ZANKL** | FIRST PERSONAL NAME **SCOTT** | ADDITIONAL NAME(S)/INITIAL(S) **THOMAS** | SUFFIX |

| 2c. MAILING ADDRESS **16937 PIERRE CIRCLE** | CITY **DELRAY BEACH** | STATE **FL** | POSTAL CODE **33446** | COUNTRY **USA** |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **FVP SERVICING, LLC** | | | |
|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

| 3c. MAILING ADDRESS **1201 BROADWAY, 7TH FLOOR** | CITY **NEW YORK** | STATE **NY** | POSTAL CODE **10001** | COUNTRY **USA** |
|---|---|---|---|---|

4. COLLATERAL: This financing statement covers the following collateral:

**FLORIDA DOCUMENTARY STAMP TAX IS NOT REQUIRED.**

**ALL OF EACH DEBTOR'S RIGHT, TITLE AND INTEREST IN AND TO THE FOLLOWING, WHETHER NOW OWNED OR HEREAFTER ACQUIRED AND WHEREVER LOCATED:  (A) ALL OF THE MEMBERSHIP INTERESTS, STOCK, PARTNERSHIP INTEREST OR OTHER OWNERSHIP INTERESTS OF ANY TYPE OR NATURE ("EQUITY INTERESTS") OF EITHER DEBTOR IN EACH OF KARMA OF BROWARD, INC., KARMA OF PALM BEACH, INC., EXCELL AUTO SPORT AND SERVICE, INC., AND EXCELL AUTO FINANCE, LLC (EACH, A "PLEDGED ENTITY" AND, COLLECTIVELY, THE "PLEDGED ENTITIES") AND ALL OTHER ADDITIONAL EQUITY INTERESTS IN THE PLEDGED ENTITIES AND OTHER RIGHTS SUBSEQUENTLY ACQUIRED BY EITHER DEBTOR IN RESPECT OF SUCH EQUITY INTERESTS (WHETHER IN CONNECTION WITH ANY CAPITAL INCREASE, RECAPITALIZATION, RECLASSIFICATION OR REORGANIZATION OF THE PLEDGED ENTITY OR OTHERWISE); (B) ALL CERTIFICATES, INSTRUMENTS OR OTHER WRITINGS REPRESENTING OR EVIDENCING SUCH INTEREST AND ALL ACCOUNTS ARISING OUT OF, OR IN CONNECTION WITH, SUCH INTERESTS; (C) ALL RIGHTS, PRIVILEGES, GENERAL INTANGIBLES, PAYMENT INTANGIBLES, VOTING RIGHTS, AUTHORITY AND POWER ARISING FROM SUCH INTERESTS; (D) ANY AND ALL MONEYS OR PROPERTY DUE AND TO BECOME DUE TO EITHER DEBTOR NOW OR IN THE FUTURE IN RESPECT OF SUCH EQUITY INTERESTS, OR TO WHICH EITHER DEBTOR MAY NOW OR IN THE FUTURE BE ENTITLED IN ITS CAPACITY AS A MEMBER OR OWNER OF ANY PLEDGED ENTITY, WHETHER BY WAY OF A**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):   ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**1700101-54 (FEENIX KARMA) - FL - STATE**

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

DIVIDEND, DISTRIBUTION, RETURN OF CAPITAL OR OTHERWISE; (E) TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH DEBTOR'S RIGHTS, IF ANY, IN EACH PLEDGED ENTITY PURSUANT TO ANY ORGANIZATIONAL DOCUMENT, INCLUDING ANY OPERATING AGREEMENT; (F) ALL OTHER CLAIMS WHICH EITHER DEBTOR HAS OR MAY IN THE FUTURE ACQUIRE IN ITS CAPACITY AS A MEMBER OR OWNER OF ANY PLEDGED ENTITY AND ITS PROPERTY; AND (G) TO THE EXTENT NOT OTHERWISE INCLUDED, ALL PRODUCTS AND PROCEEDS OF, AND SUBSTITUTIONS OR REPLACEMENTS FOR, ANY OR ALL OF THE FOREGOING.

# EXHIBIT J

**Exhibit J**

## INTERCREDITOR
## AGREEMENT

This Intercreditor Agreement ("Agreement"), dated as of the day of January 26, 2022 (the "Effective Date"), is executed by and among Westlake Flooring Company, LLC, an entity organized under California law with an address at 4751 Wilshire Blvd., Suite 100, Los Angeles, CA 90010 ("Westlake"), and FVP SERVICING, LLC, an entity organized under Delaware law with an address at 1202 Broadway, 7th Floor, New York, NY 10001 ("FVP SERVICING").

### Recitals

Westlake provides or may provide credit, loans and other financing accommodations to KARMA OF PALM BEACH, INC., a Florida corporation with its principal place of business at 1001 Clint Moore Rd #101, Boca Raton, FL 33487 ("Palm Beach") and KARMA OF BROWARD, INC., a Florida corporation with its principal place of business at 1717 SE 17th St, Fort Lauderdale, FL 33316 ("Broward") (Palm Beach, Broward and each other direct or indirect Subsidiary of Palm Beach and Broward are each referred to and added as a "Dealer" hereunder, and collectively referred to as, the "Dealers") as more particularly described in the Promissory Note and Loan and Security Agreement as attached hereto in Appendix A ("Westlake Promissory Note and Loan Security Agreement").

Dealers have granted or may grant Westlake a Security Interest in some or all of Dealers' property.

FVP SERVICING provides or may provide credit, loans and other financing accommodations to Dealers and Dealers have granted or may grant FVP SERVICING a Security Interest in some or all of Dealers' property.

Westlake and FVP SERVICING desire to agree upon the priority of their respective security interests, liens and other legal or equitable claims and interests (collectively, "Security Interest") in Dealers' property.  All capitalized terms not otherwise defined herein shall having the meaning ascribed to them in the Uniform Commercial Code as currently in effect in the State of New York (as the same may be amended from time to time, the "Code").

### Agreement

In consideration of the premises and mutual covenants set forth, the sufficiency of which is acknowledged, Westlake and FVP SERVICING agree as follows:

1.  <u>Westlake Collateral</u>. Westlake will have a first priority-ranking Security Interest in, and FVP SERVICING subordinates to Westlake any Security Interest FVP SERVICING may have in, a Dealer's presently-owned and/or hereafter-acquired property consisting of the following in each case whether now or hereafter existing and wherever located (collectively, the "Westlake Collateral"):

    (a)    All motor vehicles, parts and accessories manufactured or distributed by Karma Automotive and/or any of its affiliates, successors or assigns ("Karma") and that are or were purchased or otherwise acquired by a Dealer from Karma with Westlake financing on or after the Effective Date of Westlake Promissory Note and Loan

4870-8471-3222.3

Security Agreement or any renewal or replacement thereof (collectively, the "Secured Karma Vehicles, Parts and Accessories").

(b)     All Accounts, Instruments, Documents, Certificates of Title, Chattel Paper, General Intangibles, Payment Intangibles, Promissory Notes, Records, contracts and leases in respect of, relating to or arising in connection with any Secured Karma Vehicles, Parts and Accessories, but only to the extent such Accounts, Instruments, Documents, Certificates of Title, Chattel Paper, General Intangibles, Payment Intangibles, Promissory Notes, Records, contracts and leases are actually in respect of, related to or arising in connection with such Secured Karma Vehicles, Parts and Accessories.

(c)     All signs, Equipment, and special tools sold or distributed to a Dealer by Karma to the extent such purchase by or distribution to a Dealer was made using Westlake financing.

(d)     All Accounts (including, without limitation, any accounts receivable, credits, incentive payments and warranty payments), Instruments, monies, contract rights and General Intangibles owed to a Dealer by Karma to the extent such Accounts, Instruments, monies, contract rights and General Intangibles are actually related to Secured Karma Vehicles, Parts and Accessories.

(e)     All products and Proceeds of any and all of the foregoing Westlake Collateral described in (a) through (d) above and, to the extent not otherwise included all payments under insurance (whether or not Westlake is the loss payee thereof), or any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of Westlake Collateral described in (a) through (d) above; in each case, howsoever a Dealer's interest therein may arise or appear (whether by ownership, Security Interest, claim or otherwise).

Any Security Interest that FVP SERVICING now or hereafter may hold in Westlake Collateral described in (a) through (e) above shall be a second-priority Security Interest, and in any event junior and subordinate to the Security Interest of Westlake therein.

2.     <u>FVP SERVICING Collateral</u>. Excluding the Westlake Collateral, FVP SERVICING will have a first priority-ranking Security Interest in, and Westlake subordinates to FVP SERVICING any interest that Westlake may have in, all or any of a Dealer's presently owned or hereafter-acquired property and all products and Proceeds thereof including, but not limited to, any Inventory (including all vehicles, parts and accessories to the extent such vehicles, parts and accessories are not Secured Karma Vehicles, Parts and Accessories), Equipment, Fixtures, Accounts Receivable, contract rights, securities, cash, General Intangibles, Documents, Instruments, Chattel Paper, Investment Property, Commercial Tort Claims, any and all equity interests of Kristen Zankel or Scott Zankel in Broward, Palm Beach, or any other Dealer, any and all property or assets of either Kristen Zankel or Scott Zankel, and any other property of a Dealer which does not constitute Westlake Collateral (collectively, the "FVP SERVICING Collateral"). Any Security Interest that Westlake may now have or hereafter hold in FVP SERVICING Collateral (other than Westlake Collateral) shall be a second-priority Security Interest, and in any

4870-8471-3222.3

event junior and subordinate to the Security Interest of FVP SERVICING therein. For avoidance of doubt, FVP SERVICING Collateral in which FVP SERVICING will have a first priority ranking Security Interest includes any Karma vehicle purchased or received by a Dealer from (i) Karma which has been or is expected to be financed by FVP SERVICING.; (ii) an online or in person auction which has been or is expected to be financed by FVP SERVICING.; or (iii) customer trade-ins or purchases which has been or is expected to be financed by FVP SERVICING.

3.      Proceeds Defined. Proceeds shall have the meaning ascribed to such term in the Code and shall include cash, including, without limitation, Cash Proceeds, deposited by a Dealer into any of its Deposit Accounts or any other accounts, and any and all non-cash proceeds received by a Dealer upon the sale, lease or other disposition of its property whether at wholesale or retail, including insurance proceeds, General Intangibles, Accounts, Chattel Paper and contract rights arising from the sale, lease or other disposition of the property.

4.      Priority of Rights in Chattel Paper. Regardless of any provision in this Agreement to the contrary, other than paragraph 7 of this Agreement (to which this paragraph is expressly made subject):

    (a)      Westlake will have the first priority-ranking Security Interest in Chattel Paper, in any form including Electronic Chattel Paper, installment sale contracts, vehicle leases and Instruments to the extent that such Chattel Paper is relates to Westlake Collateral.

    (b)      FVP SERVICING will have the first priority-ranking Security Interest in Chattel Paper, in any form including Electronic Chattel Paper, installment sale contracts, vehicle leases and Instruments to the extent that such Chattel Paper is relates to FVP SERVICING Collateral.

5.      Priority of Rights in Dealer's Property. The priorities, rights and interests of Westlake and FVP SERVICING in a Dealer's property are governed by the provisions of this Agreement regardless of the time, order, manner, or nature of attachment or perfection of Security Interests in a Dealer's property (including the giving or failure to give any purchase money security interest or other notice, or the time or order of filing financing statements) or any provision of the federal Bankruptcy Code, or other applicable law.

6.      Priority of Payments. Whether in any legal proceeding or otherwise, Westlake shall have the right to payment from and distribution of Westlake Collateral (including, without limitation, any Proceeds of sale, lease or other disposition of, and any Proceeds of insurance in relation to, Westlake Collateral, but not including any FVP SERVICING Collateral) for application to any and all liabilities owing (whether due or not due) by the Dealer to Westlake, prior to the application of any such payment or distribution to FVP SERVICING. In no event shall any payment from or distribution of Westlake Collateral be made to FVP SERVICING unless and until Westlake has notified FVP SERVICING in writing that no obligations are owed by the Dealer to Westlake and Westlake will extend no further credit to the Dealer. Whether in any legal proceeding or otherwise, FVP SERVICING shall have the right to payment from and distribution of FVP SERVICING Collateral (including, without limitation, any Proceeds of sale or other disposition of, and

4870-8471-3222.3

any Proceeds of insurance in relation to, FVP SERVICING Collateral, but not including any Westlake Collateral) for application to any and all liabilities owing by the Dealer to FVP SERVICING, prior to the application of any such payment or distribution to Westlake. In no event shall any payment from or distribution of FVP SERVICING Collateral (that is not also Westlake Collateral) be made to Westlake unless and until FVP SERVICING has notified Westlake in writing that no obligations are owedby the Dealer to FVP SERVICING and FVP SERVICING will extend no further credit or future advances to the Dealer.

7.      Bailee for Perfection; Insurance. If either Westlake or FVP SERVICING (the "first party") has possession or control of cash or any other property of a Dealer constituting Westlake Collateral and/or FVP SERVICING Collateral, and if the other party (the "second party") has a Security Interest in that same cash or other property, the first party shall, for the purpose of perfecting the Security Interest in favor of the first party and the second party, be deemed to possess or control such cash or other property as bailee on behalf of itself and the second party. In addition, if either Westlake or FVP SERVICING is loss payee of any insurance that applies to the collateral in which the other party has priority pursuant to the terms of this Agreement, the loss payee agrees to submit claims on behalf of the other party, and if the loss payee receives any payments under such insurance in relation to such collateral, the loss payee shall receive such payment in trust for the other party and shall immediately pay the same over to such party in the funds in which the loss payee received them. The priorities of the parties set forth in paragraphs 1 and 2 shall apply to all funds and any other property that is the subject of this paragraph. Except as provided in this paragraph, no party shall have any duty to any other party to maintain the attachment or perfection of, or to exercise, any Security Interests of the other party.

8.      Effect of Bankruptcy. Unless previously terminated as provided in paragraph 17 below, this Agreement continues in full force and effect after the filing of any petition by or against a Dealer under the federal Bankruptcy Code and all converted or succeeding cases in respect thereof. In such instance, the term "Dealer", as used in this Agreement, includes the Dealer, as debtor-in-possession, and any chapter 7 or chapter 11 trustee appointed in the Dealer's bankruptcy case. In the event that, in any such proceeding, any party shall obtain any collateral in substitution for Westlake Collateral or FVP SERVICING Collateral, as the case may be, the priorities set forth in this Agreement shall continue to apply to such substitute collateral as if it were Westlake Collateral or FVP SERVICING Collateral, as the case may be, pursuant to paragraphs 1 and 2 of this Agreement.

9.      No Other Beneficiaries or Limitation. This Agreement is solely for the benefit of Westlake and FVP SERVICING and their respective successors and assigns. Each Dealer acknowledges and consents to this Agreement, but are not parties hereto, and no Dealer nor any other third party is intended to be benefited, in any way whatsoever, by this Agreement. This Agreement does not create, perfect, assign, or transfer any Security Interest in any Dealer's property. This Agreement shall remain in full force and effect.  In the event the principal indebtedness, or the commitments of Westlake, under any Westlake financing documents with any Dealer shall cause the aggregate debt owing by all Dealer's to Westlake to exceed $1,000,000, Westlake shall provide FVP SERVICING with written notice of such increase, including the amount of the increase and the effective date of such increase.  In the event the principal indebtedness, or the commitments of FVP

4870-8471-3222.3

SERVICING, under any FVP SERVICING financing documents with any Dealer shall cause the aggregate debt owing by all Dealer's to FVP SERVICING to exceed $10,000,000, FVP SERVICING shall provide Westlake with written notice of such increase, including the amount of the increase and the effective date of such increase.

10.    Prohibition on Contesting Liens. Westlake shall not (and hereby waives any of its rights to) contest, support or assist any other person or entity in contesting the attachment, perfection, priority, validity or enforceability of any Security Interest of FVP SERVICING in a Dealer's property, and FVP SERVICING shall not (and each of them hereby waives any of its rights to) contest, support or assist any other person or entity in contesting the attachment, perfection, priority, validity or enforceability of any Security Interest of Westlake in a Dealer's property; provided that nothing in this paragraph shall be construed to impair the rights of any party to enforce this Agreement, including, without limitation, the priority of the Security Interests as provided in paragraphs 1 and 2.

11.    Binding on Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of Westlake and FVP SERVICING and each of their respective successors And/or assigns. Neither Westlake nor FVP SERVICING shall assign or otherwise transfer any of its respective loans, credits or Security Interests in a Dealer's property unless the assignee or transferee becomes a party to this Agreement pursuant to an agreement in writing in form and substance satisfactory to each of Westlake and FVP SERVICING. Each such assignee or transferee shall have all of the rights of and be subject to all of the obligations of the assignor or transferor under this Agreement as if they had actually entered into this Agreement as of the Effective Date.

12.    Cooperation. Westlake and FVP SERVICING will reasonably cooperate with each other to share essential information for the purpose of effectuating audits and inspection of their respective collateral, to the extent that such information is not confidential. Without limiting the generality of the foregoing, each of FVP SERVICING and Westlake shall furnish to one another copies of all financing agreements and the related security documents. Each of Westlake and FVP SERVICING will provide advance written notice to the other prior to or concurrent with commencing any judicial or non-judicial action to enforce its respective Security Interest in Dealer's property; provided that the failure to do so does not limit or affect the validity of such action or give rise to any claim or defense regarding such notice.

13.    Exclusive Agreement. This Agreement evidences the entire agreement between Westlake and FVP SERVICING. Oral agreements, course of dealing, or usage of trade shall not alter, amend, or supersede this Agreement, or operate to permit or cause an amendment of this sentence, unless agreed to in writing by each of Westlake and FVP Servicing. Waiver of any right or interest does not arise by the delay or failure of Westlake or FVP SERVICING to exercise it. Any alteration, amendment, or displacement of this Agreement will be void and of no effect unless in writing, signed by Westlake and FVP SERVICING and dated after the date of this Agreement. This Agreement supersedes and replaces any other similar intercreditor or collateral subordination agreement pertaining principally to personal property of a Dealer and previously executed among Westlake and FVP SERVICING. All rights, interests, and duties not governed by this Agreement will be determined under the Code or other applicable law.

4870-8471-3222.3

14. <u>Enforcement Rights</u>. So long as no termination has occurred pursuant to paragraph 17, and whether or not bankruptcy or insolvency proceedings have been commenced by or against a Dealer:

(a) FVP SERVICING will not, without the prior written consent of Westlake which consent may by withheld by Westlake in its sole and absolute discretion, exercise or seek to exercise any rights or remedies with respect to any of Westlake Collateral (including, without limitation, pursuant to the exercise of any rights in any lock-box or account control agreement or any judicial lien) or institute any action or proceeding with respect to such rights or remedies, whether by foreclosure or otherwise; provided that (but in each case only to the extent consistent with the other terms of this Agreement):

(i) in any bankruptcy or insolvency proceeding, FVP SERVICING may file a proof of claim with respect to the obligations of the Dealer owed to it;

(ii) FVP SERVICING may file any responsive or defensive pleadings in opposition to any motion, claim or pleading made by any person or entity objecting to or otherwise seeking disallowance of any FVP SERVICING claims or contesting the validity or priority of any Security Interest of any FVP SERVICING;

(iii) FVP SERVICING may file any pleadings, objections or motions that assert rights or interests available to unsecured creditors;

(iv) FVP SERVICING may make arguments and take any other action to create, preserve or protect its Security Interest; and

(v) in any bankruptcy or insolvency proceeding, FVP SERVICING shall be entitled to vote on and/or object to any plan of reorganization.

(b) Westlake will not, without the prior written consent of FVP SERVICING which consent may by withheld by such FVP SERVICING in its sole and absolute discretion, exercise or seek to exercise any rights or remedies with respect to FVP SERVICING Collateral not constituting Westlake Collateral (including, without limitation, pursuant to the exercise of any rights in any lock-box or account control agreement or any judicial lien) or institute any action or proceeding with respect to such rights or remedies, whether by foreclosure or otherwise; provided that (but in each case only to the extent consistent with the other terms of this Agreement):

(i) in any bankruptcy or insolvency proceeding, Westlake may file a proof of claim with respect to the obligations of the Dealer owed to it;

(ii) Westlake may file any responsive or defensive pleadings in opposition to any motion, claim or pleading made by any person or entity objecting to or otherwise seeking disallowance of any of Westlake's claims or contesting the validity or priority of any Security Interest of Westlake;

(iii) Westlake may file any pleadings, objections or motions that assert rights or

4870-8471-3222.3

interests available to unsecured creditors;

    (iv)    Westlake may make arguments and take any other action to create,preserve or protect its Security Interest; and

    (v)    in any bankruptcy or insolvency proceeding, Westlake shall be entitled to vote on and/or object to any plan of reorganization.

    (c)    Neither Westlake nor FVP SERVICING shall take any action that would hinder the other's exercise of its rights or remedies in its respective collateral to the extent that such exercise is consistent with the terms of this Agreement.

    (d)    If any party exercises its rights or remedies in its respective collateral consistently with the terms of this Agreement, the respective party may do so (or not do so) in such order, priority and manner, and may incur such expenses, as such party may determine in the exercise of its sole discretion.

    (e)    In the event that either Westlake or FVP SERVICING enforces its respective Security Interest in a Dealer's property then as between them, the party having by reason of this Agreement the junior, subordinate, and inferior interest in an item of the Dealer's property:

    (i)    will not assert any claim for marshalling;

    (ii)    consents to the disposition of such item of the Dealer's property free of the subordinate interest, provided the Proceeds are applied in conformity with the Code; and

    (iii)    will receive and hold any funds or property that, by the terms of this Agreement, belongs to the other party, in trust for such other party and, without the necessity of demand, will tum over to the other party the Proceeds of such item of the Dealer's property.

15.    <u>Notice of Sale</u>. Unless a Dealer and any other legally cognizable debtor has waived it as to themselves, Westlake and FVP SERVICING agree to give to each other written notice of any public or private sale or other disposition or retention of Dealer's property in which both Westlake and FVP SERVICING have any perfected Security Interest.

16.    <u>Notices</u>. All notices, requests, consents, claims, demands, waivers and other communications under this Agreement must be in writing and will be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Communications must be sent to the respective parties at the addresses or telecopy numbers set forth on the first page of this Agreement (or at such other address or telecopy number

4870-8471-3222.3

for a party specified in a notice given to the other parties to this Agreement.

17.    Termination. This Agreement continues in full force and effect and is may not be revoked by either Westlake or FVP SERVICING until the earlier to occur of the following:

(a)    Westlake and FVP SERVICING mutually agree in writing to terminate this Agreement; or

(b)    All of the obligations owed by Dealers to either Westlake or FVP SERVICING are fully paid and satisfied, Westlake or FVP SERVICING has discontinued any further extensions of credit to the Dealers, and all Security Interests in favor of Westlake or FVP SERVICING have been terminated and released of record.

18.    Applicable Law. This Agreement will be governed and construed in all respects by the law of the state of New York. The Agreement and all amendments thereof shall be governed by and construed in accordance with the laws of the State of New York. If a Party to this Agreement brings an action against a Party to this Agreement that party may bring that proceeding only in a court of competent jurisdiction located within New York, and each party hereby submits to the exclusive jurisdiction of those courts for purposes of any such proceeding. ALL PARTIES HEREBY IRREVOCABLY WAIVE ANY OBJECTIONS WHICH THEY MAY NOW OR HEREAFTER HAVE TO THE PERSONAL JURISDICTION OR VENUE OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT BROUGHT IN ANY SUCH COURT AND HEREBY FURTHER IRREVOCABLY WAIVE ANY CLAIM THAT SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

19.    Time is of the essence. Time is of the essence to this Agreement, and to any payments, allocations and distributions.

20.    Electronic Signature. The manual signature of any party to this Agreement that is transmitted by facsimile or by a scanned email shall be deemed for all purposes to be an original signature.

21.    No Burden or Disfavor to Drafting Party. In the event an ambiguity or question of intent or interpretation arises; this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

22.    Voluntary Acceptance & Right Seek Counsel. In entering this Agreement, the Parties represent that they voluntarily and knowingly accept the terms of this Agreement, that they have either sought legal counsel or had the opportunity to seek legal counsel and that they have read and understand the terms of this Agreement.

23.    Counterparts. The Agreement may be executed in two or more counterparts, all of which taken together shall be deemed one original.

24.    Paragraph Titles. The paragraph titles contained in this Agreement are for convenience only

4870-8471-3222.3

and are without substantive meaning or content of any kind and must not be considered part of this Agreement.

25.    <u>Further Assurances</u>. Each of the parties agrees, promptly upon request by any other party, to execute, deliver and file such further documents and do such further acts as such other party may reasonably request to further effect the purposes of this Agreement.

26.    <u>Counterparts</u>. This Agreement may be executed by each of the signatories in separate counterparts, each of which shall constitute an original and all of which taken together shall constitute one and the same agreement.

*THIS SECTION INTENTIONALLY LEFT BLANK, SIGNATURE PAGES FOLLOW*

4870-8471-3222.3

**IN WITNESS WHEREOF,** each of the Parties has caused this Agreement to be executed and delivered by its duly authorized officer, as of the date first above written.

**Westlake Flooring Company, LLC**

By:_____, its_____SVP_____(Title)

Printed Name: ___Timothy Zhan___

**FVP SERVICING, LLC**

By:_____, its_____(Title)

Printed Name: _____

**Acknowledged and consented to by:**

**KARMA OF PALM BEACH, INC.,**

By:_____, its_____VP._____(Title)

Printed Name: ___Scott Zankl___

**KARMA OF BROWARD, INC.,**

By:_____, its_____VP._____(Title)

Printed Name: ___Scott Zankl___

[SIGNATURE PAGE 1 OF 1 TO INTERCREDITOR AGREEMENT]

4870-8471-3222.3

**IN WITNESS WHEREOF,** each of the Parties has caused this Agreement to be executed and delivered by its duly authorized officer, as of the date first above written.

**Westlake Flooring Company, LLC**

By:_____, its_____(Title)

Printed Name: _____

**FVP SERVICING, LLC**

By:_____, its\_\_\_Manager_____(Title)

Printed Name: Keith Lee

**Acknowledged and consented to by:**

**KARMA OF PALM BEACH, INC.,**

By:_____, its_____(Title)

Printed Name: _____

**KARMA OF BROWARD, INC.,**

By:_____, its_____(Title)

Printed Name: _____

[SIGNATURE PAGE 1 OF 1 TO INTERCREDITOR AGREEMENT]

# EXHIBIT K

**Exhibit K**

TO:      FVP Servicing LLC

FROM:    1001 Clint Moore, LLC

DATE:    January __, 2022

Re:      Loan to Karma of Palm Beach, Inc./Karma of Broward, Inc.

_____

1001 Clint Moore LLC ("1001") is the owner of the property located at 1001 Clint Moore Road, Unit B, Boca Raton, Florida (the "Leased Premises"). The Leased Premises are currently being rented to Excell Auto Group, Inc. ("Excell") and Karma of Palm Beach, Inc., pursuant to a written lease agreements between 1001 and Excell and 1001 and Karma of Palm Beach, Inc. as amended, modified, supplemented, restated, extended or renewed from time to time, (the "Lease").

The owner/representative of Excell and Karma of Palm Beach, Inc., Scott Zankl ("Zankl"), has advised us that his companies Karma of Palm Beach, Inc./Karma of Broward, Inc., (collectively "Karma") are attempting to obtain financing from FVP Servicing LLC ("FVP"), on its own behalf and/or as agent for and on behalf of one or more other lenders (collectively, "Lender"); and, as condition to the loan, FVP requires 1001's agreement that, in the event of Excell's and/or Karma of Palm Beach, Inc., default of the Lease, 1001 will allow FVP access to the Lease Premises to retrieve the collateral that serves as the security for its loan.

Although neither 1001, nor any of its members, are parties to the loan, or will in any way either directly, or indirectly, receive any consideration by virtue of the loan to Karma, in good faith, 1001 agrees to allow FVP/Lender access to the Lease Premises to retrieve the collateral that serves as the security for its loan.

Please note that, in giving its agreement for FVP/Lender to access to the Leased Premises to retrieve the collateral securing its loan, 1001 has not been asked, nor is it agreeing to provide notice to FVP/Lender in the event of Excell's default of the lease, except as required by Florida law. In addition, the access being granted by 1001 is for the specific purpose of FVP/Lender retrieving only the property owned by Karma securing FVP/Lender's loan, and does not include any property owned by 1001, or other person or entity, including but not limited to, any fixtures, furniture, office equipment, and/or vehicles, which is currently or may from time to time be located on the Leased Premises.

Finally, in exchange 1001's good faith agreement to FVP/Lender in the event of a default of the Lease, 1001 expects that FVP/Lender will show the same good faith in the event FVP/Lender will be accessing the Leased Premises to retrieve its collateral under circumstances where there has been no default of the Lease, by providing 1001 written notice of its intent do the same. Accordingly, 1001 does hereby request that, in any circumstance where FVP/Lender will be accessing the Leased Premises for the purpose of retrieving the collateral securing its loan to Karma, FVP will give at least five (5) days prior to notice to 1001, including the date and time FVP/Lender will be making access.

Please send any and all future notices pertaining to this matter via email to:

Lisa Farache (lisafarache@gmail.com )
Moshe Farache (moshefarache@gmail.com)
Michele Martin (michelemartin1010@gmail.com )
Scott C. Gherman, Esq. (sgherman@scottghermanpa.com)

LANDLORD:

**1001 CLINT MOORE, LLC**

By: _____ Manager
Name: Lisa Farache, as Manager

# EXHIBIT L

**Exhibit L**

# KARMA | PALM BEACH

O: 561.998.5557
F: 561.998.4703
1001 Clint Moore Rd.  Ste 103
Boca Raton, FL 33487

On 04/01/2022,

The following vehicle titles are being given to Auto Wholesale of Boca LLC as collateral against the loan amount

of $_____:

2013 Ferrari 458 #0191526---$230,000
2021 Jeep Gladiator #564806---$117,000
2018 Cadillac Escalade #261612---$60,000
2018 Mclaren 720 #001804----$282,080.03
2020 Lamborghini Huracan Evo #A14316---$330,000

2017 Lamborghini Huracan #A08121---$240,000
2019 Mclaren 720s #003714---$295,000
2020 Mercedes G63 #334940---$225,000
2021 Jeep Gladiator #571540---$138,607.80

The values of these vehicles, along with the $115,000.00 wired to Auto Wholesale of Boca LLC on 4/1/22 towards 2020 Bentley Flying Spur #082455, shall serve as collateral for the aforementioned loan amount.

As the loan is reduced, these vehicle titles will be returned.

*Moshe Farache MGR*
_____
Moshe Farache--Auto Wholesale of Boca LLC

*Kristen Zankl*
_____
Kristen Zankl- Karma Palm Beach

excellauto.com

# EXHIBIT M

**Exhibit M**

**KUTAK**ROCK

**Kutak Rock LLP**
The Omaha Building | 1650 Farnam Street, Omaha, NE 68102-2186
office 402.346.6000

JOEL L. WIEGERT
402.346.6000
joel.wiegert@kutakrock.com

April 7, 2022

**VIA FEDERAL EXPRESS AND**
  **VIA ELECTRONIC MAIL**

Karma of Palm Beach, Inc.
Karma of Broward, Inc.
Scott Zankl
Kristen Zankl
1001 Clint More Road, Unit B
Boca Raton, Florida 33487

   RE:  NOTICE OF DEFAULT, ACCELERATION AND DEMAND

Ladies and Gentlemen:

   Reference is hereby made to (a) that certain Loan Agreement dated as of January 26, 2022 (as amended, modified, supplemented, extended or renewed from time to time, the "Loan Agreement") by and among Karma of Palm Beach, Inc. ("Karma Palm Beach"), Karma of Broward, Inc. ("Karma Broward"; Karma Broward and Karma Palm Beach, each, a "Borrower" and, together, "Borrowers"), FVP Servicing, LLC, as administrative agent (in such capacity, "Agent"), and the Lenders from time to time party thereto, (b) that certain Guaranty Agreement dated as of January 26, 2022 (as amended, modified, supplemented, extended or renewed from time to time, the "Guaranty") by Scott Zankl ("S. Zankl") and Kristen Zankl ("K. Zankl"; K. Zankl and S. Zankl, each, a "Guarantor" and, together, "Guarantors") in favor of Agent and the Lenders. Capitalized terms used herein without definition shall have the meanings assigned to such terms in the Loan Agreement. Kutak Rock LLP represents Agent and the Lenders in connection with the Loan Agreement, the Guaranty and the Events of Default described herein.

   Borrowers and Guarantors are hereby notified that Events of Default have occurred and are continuing under the Loan Documents as a result of, among other things, Borrowers' failure to deliver required financial reporting information, including evidence of Borrowers' vehicle inventory constituting Collateral, as and when required pursuant to Sections 5.1(f), (l) and (n) of the Loan Agreement (collectively, the "Subject Defaults"). As a result of the Subject Defaults, Agent, at the direction of the Lenders, has elected to accelerate the Obligations, including the outstanding principal amount of the Loan, all accrued unpaid interest thereon and all fees, costs and expenses payable under the Loan Documents (the "Accelerated Balance"). Interest, fees, costs and expenses shall continue to accrue on the Accelerated Balance from and after the date hereof in accordance with the terms of the Loan Documents.

   Agent hereby makes demand upon Borrowers and Guarantors, on a joint and several basis, for the immediate payment in full of the Accelerated Balance. Please contact the undersigned for a statement of the amounts required to pay the Accelerated Balance as of the applicable date of payment. Agent and the

4864-9799-9634.1

**KUTAK**ROCK

Lenders hereby reserve the right to exercise all other rights and remedies by contract, at law or in equity on account of the Subject Defaults, in such order as Agent and the Lenders may determine in their sole discretion.

Nothing contained in this letter shall be construed to (a) limit the right of Agent or any Lender to receive any and all sums that are or may become due or payable pursuant to the Loan Documents, or otherwise, including, without limitation, costs of collection (including reasonable attorneys' fees); (b) waive any default or Event of Default under any Loan Document, whether or not known to Agent or any Lender; (c) waive, limit, modify, prejudice or otherwise adversely affect any rights, remedies or powers of Agent or any Lender under the Loan Documents, by statute, at law or in equity, all of which rights, remedies and powers are expressly reserved; (d) alter or amend any of the Loan Documents; (e) create a course of dealing; or (f) waive, limit, modify, prejudice or otherwise adversely affect any of the claims of Agent or any Lender against Borrowers, Guarantors or any other obligor under the Loan Documents.

Sincerely,

Joel L. Wiegert

Kutak Rock LLP

4864-9799-9634.1                                                2

| Stock # | Veh Description | VIN | Transferor Invoice/Trade-In Info - FOR THE ORIGINAL CAR ACQUISITION | | | | Purchase Price or Trade-In Value |
|---|---|---|---|---|---|---|---|
| | | | Transferor or Trade-In Customer | Transferor Invoice # | Transferor Invoice Date or Trade-In Date | Entity Sold to | |
| M07671 | 2019 Aston Martin DB 11 Volante Beige | SCFRMFCW6KGM07671 | HITFIGURE LLC | 45214 | 2/1/2022 | Karma at Broward Inc | $175,000 |
| 221036 | 2017 Ferrari F12 Berlinetta Red | ZFF74UFA7H0221036 | FRANK EVANS | Trade | 2/2/2022 | KARMA PALM BEACH | $300,000 |
| A06529 | 2020 LAMBORGHINI URUS WHITE | ZPUA12LXLLA06529 | JIC Partners | Trade | 12/8/2021 | Karma Palm Beach | $250,000 |
| 346462 | 2020 MERCEDES G63 GREEN | W1NYC7HJ6LX346462 | HITFIGURE, LLC | 45520 | 2/18/2022 | KARMA BROWARD | $235,000 |
| S39222 | 2019 BMW X7 BLUE | 5UXCX4C56KLS39222 | SCOTT THOMAS ZANKL | N/a | 12/23/2021 | KARMA PALM BEACH | $80,000 |
| 354378 | 2019 GMC YUKON WHITE | 1GKS1CKJBKR354378 | ZACHARY SCOTT NELSON (Owner) GM Financial (Lienholder) | Trade | 10/21/2021 | KARMA PALM BEACH | $57,000 |
| 606 | 2018 MCLAREN 720S WHITE | SBM14DCA9JW000606 | HITFIGURE, LLC | 45884 | 1/25/2022 | KARMA BROWARD | $255,000 |
| 390328 | 2021 MERCEDES G WAGON WHITE | W1NVC7HJ0MX390328 | ILUSSO | | 1/25/2022 | KARMA BROWARD | $265,000 |
| 362080 | 2020 MERCEDES G63 BLUE | W1NYC7HJ6LX362080 | ISRAEL HECHTER | Trade | 2/9/2022 | KARMA BROWARD | $340,000 |
| 783176 | 2008 PORSCHE 911 RED | WP0AD299785783176 | AUGUSTE AUDATTE | Trade | 3/1/2022 | KARMA PALM BEACH | |
| 004229 | 2020 MCLAREN 720S WHITE | SBM14FCASLW004229 | SAMUEL STEPHEN PANY | Car brought in on a pre-trade | 1/17/2022 | KARMA PALM BEACH | $325,000 |
| A01961 | 2019 LAMBORGHINI URUS BLUE | ZPBUA12LXKLA01961 | C&K Auto | Purchase | 2/25/2022 | KARMA PALM BEACH | $238,025 |
| 254693 | 2020 FERRARI 812 SUPERFAST BLACK | ZFF83CLA1L0254693 | RICHARD SCOT GREENBERG | Purchase | 3/9/2022 | KARMA PALM BEACH | $425,000 |
| 261612 | 2018 CADILLAC ESCALADE BLACK | 1GYS4BKJXJR261612 | AUTO WHOLESALE OF BOCA LLC | | 7/28/2021 | Excell Auto Group | $60,000 |
| 191526 | 2013 FERRARI 458 ITALIA BLACK | ZFF68NHA8D0191526 | DEREK CLAYTON STEPHENS | Trade | 3/11/2022 | KARMA PALM BEACH | $230,000 |
| 571540 | 2021 JEEP GLADIATOR BLACK | 1C6HJTAG1ML571540 | CARRIO MOTORCARS | No invoice number - invoice in Trustee jacket | 8/28/2021 | EXCELL AUTO GROUP INC, THEN SOLD TO KPB ON 11.1.2021 KPB then sold to KB ON 1.31.2022 | $138,000 |
| A14316 | 2020 LAMBORGHINI HURACAN EVO BLACK | ZHWUT4ZF1LLA14316 | BENIDT INVESTMENTS SLINGER LLC | Trade | 3/21/2022 | KARMA PALM BEACH | $330,000 |
| 003714 | 2019 MCLAREN 720S ORANGE | SBM14FCA9KW003714 | CARRIO MOTORCARS | | 11/9/2021 | KARMA BROWARD | $295,000 |
| 334940 | 2020 MERCEDES G CLASS BLUE | WDCYC7HJ9LX334940 | HITFIGURE | 44958 | 1/26/2022 | KARMA BROWARD | $225,000 |
| A00244 | 2012 LAMBORGHINI AVENTADOR WHITE | ZHWUC1ZD2CLA00244 | HITFIGURE, LLC | | 2/18/2022 | KARMA BROWARD | |
| A08121 | 2017 LAMBORGHINI HURACAN BLACK | ZHWUR2ZF8HLA08121 | HITFIGURE, LLC | 45400 | 1/25/2022 | KARMA BROWARD | $240,000 |

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. **CACE22005125**   DIVISION: **21**   JUDGE: **Singer, Michele Towbin (21)**

**FVP Opportunity Fund III, LP, et al**

Plaintiff(s) / Petitioner(s)

v.

**Scott Zankl, et al**

Defendant(s) / Respondent(s)

_____/

**ORDER SCHEDULING EVIDENTIARY HEARING ON DEFENDANTS' MOTION TO DISSOLVE APRIL 14, 2022 ORAL FREEZE ORDER AND ON PLAINTIFFS' MOTION FOR TEMPORARY INJUNCTION AND APPOINTMENT OF RECEIVER, AND SHOW CAUSE IN REPLEVIN**

THIS CAUSE comes before the Court on Defendants, MOSHE FARACHE, AUTO WHOLESALE OF BOCA, LLC and MMS ULTIMATE SERVICES, INC.'s (the "Farache Defendants") Motion to Schedule Hearing Pursuant to Fla. R. Civ. P. 1.610(d) Within 5 Days on Defendants' Motion to Dissolve April 14, 2022 Oral Freeze Order or; Alternatively, Set Evidentiary Hearing on Plaintiffs' Verified Motion for Temporary Restraining Order and Injunction, and the Court having commenced a hearing on the Plaintiffs' Motion for Injunction and Appointment of a Receiver beginning on April 14, 2022 which the Plaintiffs seek the Court to conclude, and the Court being advised that the Plaintiffs have filed a Motion for Order to Show Cause in Replevin to which they are entitled to a hearing; and the Court being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED

1. The Parties shall appear before the Court in person in Courtroom 15170 on Defendants, Moshe Farache, Auto Wholesale Of Boca, LLC's, and MMS Ultimate Services, Inc.'s Motion to Dissolve April 14, 2022 Oral Freeze Order; Plaintiffs Motion for Injunction and Appointment of a Receiver; and to show cause should not be taken from the possession of the Farache Defendants who have possession of the same and delivered to the Plaintiffs.

2. The hearing on this matter shall be heard on July 8, 2022 at 3 p.m..

3. The Farache Defendants may file affidavits, appear personally or with an attorney, and present testimony at the time of the hearing, or, on a finding by the court pursuant to Section 78.067(2) of the Florida Statutes that the Plaintiffs are entitled to possession of the Vehicle Inventory pending final adjudication of the claims of the parties, file with the Court a written undertaking executed by a surety approved by the Court in an amount equal to the value of the property to stay an Order authorizing the delivery of the property to the Plaintiffs.

**DONE AND ORDERED** in Chambers at Broward County, Florida on 25th day of May, 2022.



CACE22005125 05-25-2022 3:56 PM
Hon. Michele Towbin Singer
**CIRCUIT JUDGE**
Electronically Signed by Singer, Michele Towbin (21)

**Copies Furnished To:**
Alan R Crane , E-mail : rrivera@furrcohen.com
Alan R Crane , E-mail : staff1@furrcohen.com
Alan R Crane , E-mail : acrane@furrcohen.com
Bradford M Cohen , E-mail : service@floridajusticefirm.com
Bradford M Cohen , E-mail : lawronin@aol.com
Cory Mauro , E-mail : cory@maurolawfirm.com
Cory Mauro , E-mail : service@maurolawfirm.com
Cory Mauro , E-mail : cory.mauro@maurolawfirm.com
Evan Appell , E-mail : evan@maurolawfirm.com
Henry B Handler , E-mail : hbh@whcfla.com
Henry B Handler , E-mail : filings@whcfla.com
Henry B Handler , E-mail : jn@whcfla.com
Jay L Farrow , E-mail : service@farrowlawfirm.com
Jay L Farrow , E-mail : stephanie@farrowlawfirm.com
Jerrell Andrew Breslin , E-mail : jerrellbreslin@gmail.com
Jerrell Andrew Breslin , E-mail : jb@richardbaronlaw.com
Jerrell Andrew Breslin , E-mail : eservice@richardbaronlaw.com
Joel L. Wiegert, Esq. , E-mail : Joel.Wiegert@KutakRock.com
Jonathan Noah Schwartz , E-mail : jnsesquire@gmail.com
Jonathan Noah Schwartz , E-mail : JNS.NGQB@case.prolific.com
Jonathan Schwartz, Esq. , E-mail : jschwartz@jonschwartzlaw.com
Jose J Teurbe-Tolon , E-mail : jose@xanderlaw.com
Jose J Teurbe-Tolon , E-mail : service@xanderlaw.com
Keith Lee , E-mail : klee@feenixpartners.com
Mark C Perry , E-mail : mark@markperrylaw.com
Mark C Perry , E-mail : maureen@markperrylaw.com

Matthew Pilkington , E-mail : mpilkington@feenixpartners.com
Michael A. Mullavey , E-mail : mmullavey@mcper.com
Michael James McMullen , E-mail : Service@FloridaJusticeFirm.com
Michael James McMullen , E-mail : Michael@FloridaJusticeFirm.com
Thomas U Graner , E-mail : kristin@granerlaw.com
Thomas U Graner , E-mail : ivy@granerlaw.com
Thomas U Graner , E-mail : tom@granerlaw.com
Xavier A Franco , E-mail : docketclerk@mcper.com
Xavier A Franco , E-mail : xfranco@mcper.com

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. <u>CACE22005125</u>   DIVISION: <u>21</u>   JUDGE: <u>Singer, Michele Towbin (21)</u>

**FVP Opportunity Fund III, LP, et al**

Plaintiff(s) / Petitioner(s)

v.

**Scott Zankl, et al**

Defendant(s) / Respondent(s)

_____/

<u>**Order on Defendants' Motion to Dissolve April 14, 2022 Oral Freeze Order**</u>

THIS CAUSE comes before the Court on Defendants, MOSHE FARACHE, AUTO WHOLESALE OF BOCA, LLC and MMS ULTIMATE SERVICES, INC.'s (the "Farache Defendants") on Defendants' Motion to Dissolve April 14, 2022 Oral Freeze Order Pursuant to Fla. R. Civ. P. 1.610(d) Within 5 Days. In response to the motion, the Court scheduled a hearing on the motion for June 3, 2022 at which hearing counsel for the Plaintiffs and the Farache Defendants appeared and the Court having heard the arguments of Counsel and the Court being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED

1. The motion of the Farache Defendants to dissolve the injunction is Denied, without prejudice, for the reasons stated by the Court on the record.

2. This Court will hold a full evidentiary hearing and has scheduled two (2) full days for the hearing on the Plaintiffs' Motion for Injunction, Plaintiffs Motion to Appoint a Receiver, Plaintiffs Rule to Show Cause in Replevin and the Farache Defendants Motion to Dissolve the Injunction. The hearing will be held on July 25, 2022 and July 26, 2022.

3. This Courts' Order of May 25, 2022 entitled "ORDER SCHEDULING EVIDENTIARY HEARING ON DEFENDANTS' MOTION TO DISSOLVE APRIL 14, 2022 ORAL FREEZE ORDER AND ON PLAINTIFFS' MOTION FOR TEMPORARY INJUNCTION AND APPOINTMENT OF RECEIVER, AND SHOW CAUSE IN REPLEVIN" is hereby modified only to the extent that the date of the hearing is

Case Number: CACE22005125

rescheduled from July 8, 2022 to July 25, 2022 and July 26, 2022.

4. The Court on June 3, 2022 also heard the Plaintiffs' *ore tenus* motion to compel the discovery due from the Farache Defendants as ordered by the Court on April 14, 2022 as well as the production requested by the Plaintiffs on the Farache Defendants on April 18, 2022. In response the parties agreed as follows:

   a. The Farache Defendants shall supply the ordered discovery and supply the discovery requested in the Plaintiffs' discovery requests by close of business June 15, 2022.

   b. The Plaintiffs shall comply with production requests from the Farache Defendants within ten (10) days of the request or by close of business June 15, 2022, whichever is later.

   c. The Court ratifies the agreement of the parties and orders the parties to comply with the Agreement to supply discovery.

   d. To the extent that there are any disputes regarding the discovery, either party shall set the dispute on the next available motion calendar date and notify opposing counsel of the date and the Court will resolve the dispute. It is the intent of the Court for discovery to be exchanged well in advance of the hearings scheduled for July 25, 2022 and July 26, 2022.

5. The Court reserves jurisdiction to enforce this Order as required.

**DONE AND ORDERED** in Chambers at Broward County, Florida on 7th day of June, 2022.

CACE22005125 0(

CACE22005125 06-07-2022 2:34 PM
Hon. Michele Towbin Singer
**CIRCUIT JUDGE**
Electronically Signed by Singer, Michele Towbin (21)

**Copies Furnished To:**
Alan R Crane , E-mail : rrivera@furrcohen.com
Alan R Crane , E-mail : staff1@furrcohen.com
Alan R Crane , E-mail : acrane@furrcohen.com
Bradford M Cohen , E-mail : bmc@floridajusticefirm.com
Bradford M Cohen , E-mail : service@floridajusticefirm.com
Bradley S Shraiberg , E-mail : dwoodall@slp.law
Bradley S Shraiberg , E-mail : bss@slp.law

Bradley S Shraiberg , E-mail : pmouton@slp.law
Cory Mauro , E-mail : cory@maurolawfirm.com
Cory Mauro , E-mail : service@maurolawfirm.com
Cory Mauro , E-mail : cory.mauro@maurolawfirm.com
Evan Appell , E-mail : evan@maurolawfirm.com
Henry B Handler , E-mail : hbh@whcfla.com
Henry B Handler , E-mail : filings@whcfla.com
Henry B Handler , E-mail : jn@whcfla.com
Jay L Farrow , E-mail : service@farrowlawfirm.com
Jay L Farrow , E-mail : stephanie@farrowlawfirm.com
Jerrell Andrew Breslin , E-mail : jerrellbreslin@gmail.com
Jerrell Andrew Breslin , E-mail : jb@richardbaronlaw.com
Jerrell Andrew Breslin , E-mail : eservice@richardbaronlaw.com
Joel L. Wiegert, Esq. , E-mail : Joel.Wiegert@KutakRock.com
Jonathan Noah Schwartz , E-mail : jnsesquire@gmail.com
Jonathan Noah Schwartz , E-mail : JNS.NGQB@case.prolific.com
Jonathan Schwartz, Esq. , E-mail : jschwartz@jonschwartzlaw.com
Jose J Teurbe-Tolon , E-mail : jose@xanderlaw.com
Jose J Teurbe-Tolon , E-mail : service@xanderlaw.com
Keith Lee , E-mail : klee@feenixpartners.com
Mark C Perry , E-mail : mark@markperrylaw.com
Mark C Perry , E-mail : maureen@markperrylaw.com
Mark J Wolfson , E-mail : CRowell@foley.com
Mark J Wolfson , E-mail : mwolfson@foley.com
Matthew Pilkington , E-mail : mpilkington@feenixpartners.com
Michael A. Mullavey , E-mail : mmullavey@mcper.com
Michael James McMullen , E-mail : Service@FloridaJusticeFirm.com
Michael James McMullen , E-mail : Michael@FloridaJusticeFirm.com
Patrick Dorsey , E-mail : pdorsey@slp.law
Thomas U Graner , E-mail : kristin@granerlaw.com
Thomas U Graner , E-mail : ivy@granerlaw.com
Thomas U Graner , E-mail : tom@granerlaw.com
Xavier A Franco , E-mail : docketclerk@mcper.com
Xavier A Franco , E-mail : xfranco@mcper.com

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. **CACE22005125**   DIVISION: **21**   JUDGE: **Singer, Michele Towbin (21)**

**FVP Opportunity Fund III, LP, et al**

Plaintiff(s) / Petitioner(s)

v.

**Scott Zankl, et al**

Defendant(s) / Respondent(s)

_____/

## ORDER ISSUING RULE TO SHOW CAUSE IN CONTEMPT AND SETTING CONTEMPT HEARING OF DEFENDANT MOSHE FARACHE

THIS CAUSE comes before the Court on the Motion For Rule To Show Cause In Contempt For Fraud Upon The Court ("Motion") directed at Defendant Moshe Farache ("Farache"), the Court has reviewed the Motion, the arguments of counsel, and noting of the Farache's counsel agreed to the setting of an evidentiary hearing upon Plaintiff's Motion, it is hereby:

ORDERED AND ADJUDGED that:

A. Defendant Moshe Farache is hereby ordered to appear before this Court to show cause as to why he should not be held in contempt of this Court for knowingly and intentionally filing allegedly false statements in an Affidavit in the record of this Court.

A. **DEFENDANT MOSHE FARACHE IS HEREBY ORDERED TO APPEAR IN PERSON BEFORE THIS COURT, THE HONORABLE MICHELE TOWBIN SINGER, CIRCUIT COURT JUDGE, BROWARD COUNTY COURTHOUSE, 201 S.E. 6TH STREET, COURTROOM WW15170, FORT LAUDERDALE, FL 33301, ON JULY 26, 2022 AT 10:30 A.M. TO SHOW CAUSE AS TO WHY HE SHOULD NOT BE HELD IN CONTEMPT OF COURT.**

B. The Defendant may have legal counsel present with him, and may present testimony, including witness testimony, or other evidence at such hearing.

C. Defendant Farache, on the record and further pursuant to the representations of his Attorney, Jay L. Farrow, Esq., has agreed to accept service of this Order by service upon Attorney Jay L. Farrow, Esq., which may be effectuated electronically.

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>8th day of July, 2022</u>.

CACE22005125 0

<u>CACE22005125 07-08-2022 3:55 PM</u>
Hon. Michele Towbin Singer
**CIRCUIT JUDGE**
Electronically Signed by Michele Towbin Singer

**Copies Furnished To:**
Alan R Crane , E-mail : staff1@furrcohen.com
Alan R Crane , E-mail : rrivera@furrcohen.com
Alan R Crane , E-mail : acrane@furrcohen.com
Allison B Duffie , E-mail : abd@mellingerlaw.com
Allison B Duffie , E-mail : legalassistant@duffie.law
Allison B Duffie , E-mail : allison@duffie.law
Bradford M Cohen , E-mail : bmc@floridajusticefirm.com
Bradford M Cohen , E-mail : service@floridajusticefirm.com
Bradley S Shraiberg , E-mail : dwoodall@slp.law
Bradley S Shraiberg , E-mail : bss@slp.law
Bradley S Shraiberg , E-mail : pmouton@slp.law
Cory Mauro , E-mail : cory@maurolawfirm.com
Cory Mauro , E-mail : service@maurolawfirm.com
Cory Mauro , E-mail : cory.mauro@maurolawfirm.com
Craig H. Blinderman , E-mail : cblinderman@kfb-law.com
Craig H. Blinderman , E-mail : bvillalobos@kfb-law.com
Craig H. Blinderman , E-mail : lbevans@kfb-law.com
Crystal B Carswell , E-mail : atownsend@foley.com
Crystal B Carswell , E-mail : ccarswell@foley.com
Darin Wade Mellinger , E-mail : dwm@mellingerlaw.com
Evan Appell , E-mail : evan@maurolawfirm.com
Henry B Handler , E-mail : hbh@whcfla.com
Henry B Handler , E-mail : filings@whcfla.com
Henry B Handler , E-mail : jn@whcfla.com
Jay L Farrow , E-mail : service@farrowlawfirm.com
Jay L Farrow , E-mail : stephanie@farrowlawfirm.com

Case Number: CACE22005125

Jerrell Andrew Breslin , E-mail : jb@richardbaronlaw.com
Jerrell Andrew Breslin , E-mail : jerrellbreslin@gmail.com
Jerrell Andrew Breslin , E-mail : eservice@richardbaronlaw.com
Joel L. Wiegert, Esq. , E-mail : Joel.Wiegert@KutakRock.com
John M. Brennan Jr. , E-mail : jessica.rolon@gray-robinson.com
John M. Brennan Jr. , E-mail : jack.brennan@gray-robinson.com
Jonathan Noah Schwartz , E-mail : jnsesquire@gmail.com
Jonathan Noah Schwartz , E-mail : JNS.NGQB@case.prolific.com
Jonathan Schwartz, Esq. , E-mail : jschwartz@jonschwartzlaw.com
Jose J Teurbe-Tolon , E-mail : service@xanderlaw.com
Jose J Teurbe-Tolon , E-mail : jose@xanderlaw.com
Keith Lee , E-mail : klee@feenixpartners.com
Mark C Perry , E-mail : mark@markperrylaw.com
Mark C Perry , E-mail : maureen@markperrylaw.com
Mark J Wolfson , E-mail : mwolfson@foley.com
Mark J Wolfson , E-mail : CRowell@foley.com
Matthew Pilkington , E-mail : mpilkington@feenixpartners.com
Michael James McMullen , E-mail : Michael@FloridaJusticeFirm.com
Michael James McMullen , E-mail : Service@FloridaJusticeFirm.com
Patrick Dorsey , E-mail : pdorsey@slp.law
Thomas U Graner , E-mail : kristin@granerlaw.com
Thomas U Graner , E-mail : ivy@granerlaw.com
Thomas U Graner , E-mail : tom@granerlaw.com