UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

*In re:*

AUTO WHOLESALE OF BOCA, LLC,           Case No.: 22- 15627-EPK
                                       Chapter 11 Subchapter V

_____Debtor-in-Possession._____ /

## PLAN OF REORGANIZATION OF AUTO WHOLESALE OF BOCA, LLC

**Submitted on October 20th, 2022 by:**

JAMES B. MILLER, ESQ.
jbm@title11law.com, bkcmiami@gmail.com
Florida Bar No. 0122548
JAMES B. MILLER, PA
Attorneys for the Debtor
19 West Flagler Street, Suite 416
Miami, Florida 33130
Telephone: (305) 374-0200
Facsimile: (305) 374-0250

## TABLE OF CONTENTS

Article I – Summary and Background..................................................................3

Article II – Definitions........................................................................6

Article III - Treatment of Administrative Expense Claims and Priority Tax Claims...... 10

Article IV - Classification and Treatment of Claims and Interests Under the Plan.............10

Article V – Allowance and Disallowance of Claims..........................................14

Article VI – Provisions for Executory Contracts and Unexpired Leases......................14

Article VII – Means for Implementation of the Plan........................................15

Article VIII – Discharge and Effect of Confirmation........................................16

Article IX – Other Provisions................................................................17

## EXHIBITS

Exhibit "A" – Liquidation Analysis and Assets

Exhibit "B" – Projected Financial Information

Exhibit "C" – List of Creditors to be Paid Pursuant to the Plan

_____

JAMES B. MILLER, P.A.

# ARTICLE I
## SUMMARY AND BACKGROUND

1.01    Introduction. This is the Plan of Reorganization (the "Plan") under Subchapter V of Chapter 11 of the Bankruptcy Code of Auto Wholesale of Boca, LLC (the "Debtor"). Creditors will receive payment from the Debtor from the cash flow of the Debtor's operations for a period of 5 years.

This Plan provides for two (2) classes of priority claims, six (6) classes of secured claims, one (1) class of non-priority unsecured claims, one (1) class of subordinated claims and one (1) class of equity security holders. General unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued at approximately 32.6% cents on the dollar, on the low end, dependent upon the resolution of issues set forth below. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Article IV of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

1.02    Description and History of the Debtor's Business. The Debtor is a Florida limited liability company that was incorporated on or about September 20th, 2012. The Debtor is an automobile dealer, licensed under Florida law to sell wholesale and retail as well as to finance the same. Debtor primarily focuses on the purchase and sale of high-end luxury automobiles. Debtor's owners are Moshe ("Moshe") Farache (49% ownership), Lisa ("Lisa") Farache (49% ownership) and Chase ("Chase") Farache (2% ownership). Moshe and Lisa are managing members of the Debtor.

Over the years, while operating, Debtor, as is customary in the automobile business, would, purchase and re-sell high-end luxury automobiles between other automobile dealers -- and sometimes to the public.

Sometime in the year 2012 or 2013, Debtor was approached by Scott Zankl ("Zankl") regarding the sale and purchase of exotic cars. After this meeting, Debtor also began to purchase automobiles from a Zankl-related entity known as Excell Auto Group, Inc. ("Excell").

Over the years, Excell owed monies to Debtor for automobiles sold by Debtor to Excell, and for which Excell had not yet re-paid. So, Debtor obtained executed promissory note(s) and guarantees (eventually with a UCC-1 (which has been recorded) and security agreements) to evidence funding of numerous transactions over time.[1]

In the interim (sometime in 2020), the Zankls (Scott and Krsiten Zankl) began operating two (2) new enterprises, Karma Palm Beach (KPB) and Karma Broward (KB), to sell high-end luxury automobiles and unbeknownst to the Debtor had been negotiating with multiple future lenders for KB and KPB for funding, all the while selling cars to Debtor.

As the property from which Excell operated was also the real property owned by Debtor's affiliate (1001 Clint Moore, LLC) and where Debtor also maintained an office, had 24/7 access, and stored its automobile overage.

---

[1] Karma Palm Beach (an entity also owned by Zankl), Scott Zankl and his wife, Kristen Zankl ("Kristen") were also guarantors of any debts owed by Excell to Debtor.

---

JAMES B. MILLER, P.A.

At all times Debtor retained its records evidencing its ownership of its own automobiles and Excell/KPB/KB never had authority to sell or otherwise subject the Debtor's cars to financing as if they were a part of the inventory of Excell, KPB or even KB.

Eventually, in March of 2022, Kristen Zankl advised Debtor to remove Debtor's overage cars that were stored at 1001 Clint Moore. Then, on or about April 14th, 2022, Excell filed a voluntary petition in bankruptcy under Chapter 7 of Title 11 in Case No. 22-12790-EPK (the "Excell Bankruptcy"), which led to a series of revelations that fraud was being committed by Zankl, Excell and the Karma entities (KB and KPB) upon, not only automobile buyers, sellers and lenders, but also the Debtor. This fraud led to a multiplication of litigation over the same cars by various alleged buyers, sellers and financers, which named Debtor, among others, as defendants.

After months and months of expensive litigation in various courts, (federal and state), the Debtor had no other option but to elect to file the instant Bankruptcy Case. This would relieve the extensive legal expenses of litigating in various forums, consolidate any such litigation in the Bankruptcy Court, significantly reduce its legal expenses, avoid potentially conflicting rulings as to the same automobiles, and otherwise allow for a more orderly resolution of these matters before a single court, in hopes of reorganizing its operations.

As set forth above, based upon the fraud of Zankl and his related entities (Excell, KPB and KB) the Debtor was named in several lawsuits regarding interests in various automobiles the Debtor owned. These lawsuits rolled into the Bankruptcy Case of the Debtor, which led to the filing of Adversary Proceeding No. 22-01218-EPK ("FVP Adv. Proc."), wherein, as of this date, the following entities are asserting interests in the Debtor's automobile inventory:  FVP OPPORTUNITY FUND III, LP, FVP INVESTMENTS, LLC and FVP SERVICING, LLC (collectively "FVP"); HI BAR CAPITAL, LLC ("Hi Bar"); Edward Brown ("Brown"); KB; KPB; and Wing Lake Capital Partners f/k/a Franklin Capital Group, LLC ("Franklin").

Each of the parties-opponent to the Debtor in the FVP Adv. Proc. assert superior interests *via* purported "liens" which they allege are superior to the Debtor's interest in the various automobiles. The Debtor has been vigorously defending its position in regards to its inventory and denies that any of the various creditors have a superior interest in its inventory.

The FVP Adv. Proc. is now awaiting the yet-to-be-filed Fourth Amended Complaint contemplated from a hearing held on September 28, 2022 before the presiding judge, Honorable Erik P. Kimball.

The automobiles in the possession of the Debtor are automobiles acquired in business transactions that were legitimate, and certainly not acquired in a strong-arm threatening manner or in bad faith by Debtor. Debtor asserts that it is the true owner of these automobiles, is an ordinary course buyer under the Uniform Commercial Code, or has a valid and unavoidable lien interest in the same, if and to the extent that the FVP litigants (FVP, Hi Bar, Franklin, Ed Brown) or others, can establish a valid, perfected, prior-in-time and unavoidable lien against any of the Debtors' inventory.

Debtor's assets, as of the Petition Date, as identified on Exhibit "A" hereto (the "Liquidation Analysis"), reflect that the Debtor had Undisputed Assets totaling approximately $282,275.61.  In the Liquidation Analysis, Debtor broke down its scheduled assets into two (2) separate categories: 1) the Undisputed Assets; and, 2) the Disputed Assets. The Undisputed Assets are those which no creditor or interested party has asserted an interest in; and, the Disputed Assets are those assets which creditors or interested parties have asserted a lien interest or superior interest in. However, if and to the extent that any of the Disputed Assets become Undisputed Assets, then they will be included in the ultimate distribution to Class 9 creditors (up to the sum total of their allowed claim(s) and no more).

JAMES B. MILLER, P.A.

Creditors have filed claims in this bankruptcy proceeding totaling $76,163,175.46, comprised of $33,301,131.11 in alleged secured claims and the balance as unsecured. Several of the claims relate solely to alleged interests in the same inventory by Franklin, FVP, Hi Bar, and even Woodside; and, therefore, depending on the resolution of the FVP Adv. Proc., the sum of these claims will ultimately be significantly, if not completely, reduced. For example, if a creditor or interested party establishes that they have a superior interest and lien in and to a particular automobile, then the lien interest on that automobile is limited to the value of the particular automobile and any party has a lien interest exceeding the value of the particular automobile would mandate that the other parties-in-interest have no claim in this estate based upon that particular automobile.

Numerous claims are objectionable and will be objected to, thereby significantly reducing the overall allowed claims in the Estate.

After deducting claims that the Debtor believes are objectionable, and after reclassifying certain claims as to their appropriate status, the Debtor estimates that the total amount of allowed general unsecured claims, exclusive of insider claims, will fall between $1,000,000.00 and $1,100,000.00. By this Plan, the Debtor will be restructuring these obligations, such that the Debtor can remain viable as a going concern.

1.03    Liquidation Analysis. To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit "A"**.

The estimated distribution in a hypothetical Chapter 7 was determined by analyzing the liquidation value of the Debtor's property, subject of the alleged lien interests identified in the various proofs of claim on file, and deducting these purported interests against the value of the property of the estate on the Petition Date, with a further deduction for Chapter 7 administrative expenses as well as Chapter 11 administrative expenses,

The liquidation value of the Debtor's Undisputed Assets on the Petition Date was $282,275.61. Subsequent to the Petition Date, many of the assets of the Debtor have been subject to abandonment or turnover to third party claimants by operation of Bankruptcy Court orders. See Exhibit "A". Therefore, the Debtor's asset values have declined, and such decrease in value would have been no different in the context of a Chapter 7 proceeding, as the same vehicles and titles would have been turned over in a similar chapter under Title 11.

Debtor currently has on-hand the assets identified on Exhibit "A" hereto, with the Disputed Assets subject of either the FVP Adv. Proc for a determination of right, title and interest, or otherwise subject of current, or previously ruled-upon, motions filed in the Bankruptcy Case seeking to compel surrender and turnover.

After deducting estimated Chapter 11 administrative expenses, as well as anticipated Chapter 7 administrative expenses, it was calculated that unsecured creditors would receive a total of $0.00 if this Case were converted to a Chapter 7 liquidation. As such, creditors are receiving in this Plan more than what they would receive in a hypothetical Chapter 7 proceeding.

1.04    Ability to Make Future Plan Payments. The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business. To that end, the Debtor has attached projected financial information as **Exhibit "B" ("Five Year Projections")**. The Debtor's financial projections, the Five Year Projections, show that the Debtor will have projected disposable income (as defined by 11 U.S.C. § 1191(d)) for the period described in 11 U.S.C. § 1191(c)(2) as follows: year 2023 the sum of $57,000.00; year 2024 the sum of $61,560.00; year 2025 the sum of $66,484.80; year 2026 the sum of $71,803.56; and, year 2027

the sum of $77,547.84. The final Plan payment is expected to be paid within the year 2027. **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

    1.05    <u>Projected Recovery of Avoidable Transfers.</u> The Debtor has analyzed its books and records and does not believe that cost-effective avoidable transfers exist that would generate a recovery for the bankruptcy estate; but believes it has significant claims against, among others, Scott and Kristen Zankl, KPB, KB and Excell. The issue becomes collectability and therefore currently values them at $0 for purposes of the plan; but, if and to the extent recoveries are made against any third parties, any net recoveries (after attorney fees, and associated costs) are paid) will then be added to the distribution to the allowed unsecured creditors, on an "as recovered" basis, so long as the same are recovered within the distribution time period set forth above. As such, the Debtor is still considering the pursuit of preference, fraudulent conveyance or other avoidable actions under Chapter 5 of the Bankruptcy Code in the Bankruptcy Case; but reserves the right to seek such relief should an identifiable and cost-effective recovery be revealed to the Debtor. Furthermore, the Debtor reserves and preserves herein the rights and claims/causes it has or may have *viz-a-viz* any and all parties-in-interest and alleged creditors relating to the Debtor's inventory, assets and proceeds, to avoid any such claims and interests and have a determination made that such interests of the Debtor are superior to those of any parties-in-interests and/or creditors.

    Debtor also reserves the right to seek surcharge and/or recovery of any and all fees, costs and expenses associated with the maintenance, care, insurance, storage, upkeep, licensing, litigation and any other fees, costs and expenses associated and/or affiliated with any of the automobiles and/or assets subject of any orders, motions, pleadings and claims of any creditors or parties-in-interest in this Bankruptcy Case.

**ARTICLE II**
**DEFINITIONS**

    All capitalized terms in this Plan shall have the meanings ascribed to them herein. Any capitalized term used in this Plan that is not defined herein or elsewhere in this Plan shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

    2.01    <u>Administrative Claim</u> - means any Claim constituting a cost or expense of administration of the above-referenced bankruptcy case under 11 U.S.C. § 503(b) and that is entitled to priority under 11 U.S.C. § 507(a), including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the bankruptcy estate and of operating the business of the Debtor; (ii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (iii) compensation or reimbursement of expenses of professionals to the extent allowed by the 11 U.S.C. §§ 330(a) or 331, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Bankruptcy Court.

    2.02    <u>Allow, Allowed, Allowance (or words of similar meaning)</u> - mean with respect to a Claim or equity interest against the Debtor that is: (a) either (i) scheduled by the Debtor in its schedules in a liquidated amount and not listed as contingent, unliquidated, zero, underdetermined or disputed, if a holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court, or (ii) asserted in the above-referenced

_____

JAMES B. MILLER, P.A.

bankruptcy case by a proof of a claim that has been timely filed, or deemed timely filed with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Court; and (b) either (i) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Court, or (ii) that has otherwise been allowed by a Final Order or pursuant to the Plan.  An Allowed Claim includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires, and shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of the Plan.

2.03    Assets - mean any and all property of the bankruptcy estate as defined under and included in 11 U.S.C. § 541(a), including without limitation, all legal or equitable pre-petition and post-petition interests of the Debtor in any and all real or personal property of any nature, whether scheduled or not.

2.04    Avoidance Actions – means any and all actions and rights to recover or avoid transfers or to avoid any lien under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, and applicable state law, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

2.05    Bankruptcy Code - means Title 11 of the United States Code, which governs the Chapter 11 case of the Debtor.

2.06    Bankruptcy Court or Court – means the United States Bankruptcy Court for the Southern District of Florida.

2.07    Bankruptcy Rules - means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida) as now in effect or hereafter amended.

2.08    Claim - means any right to payment against the Debtor or right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

2.09    Claimant – means the Holder of a Claim.

2.010  Class - means a group of Claims or Equity Interests described in Article IV of this Plan.

2.011  Confirmation Date - means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

2.012  Confirmation Order - means an Order of the Bankruptcy Court confirming the provisions of the Plan pursuant to 11 U.S.C. § 1191.

2.013  Confirmation Hearing - means the hearing at which the Bankruptcy Court confirms the Plan.

---

2.014   Debtor or Debtor-in-Possession – manes Auto Wholesale of Boca, LLC.

2.015   Disputed Claim - means any Claim designated as disputed, contingent or unliquidated in the Debtor's schedules filed in connection with the Chapter 11 case of the Debtor, or any claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Order has been entered. Holders of Disputed Claims shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan or ordered by the Court.

2.016   Distribution - means the distribution of cash or other property, as the case may be, in accordance with this Plan.

2.017   Distribution Address - means the address for a holder of an Allowed Claim as set forth in a proof of claim, as amended or supplemented. If no proof of claim is filed with respect to a particular Claim, such defined term means the address as set forth in the Debtors' Schedules.

2.018   Effective Date – means the date upon which the Confirmation Order becomes a Final Order.

2.019   Final Order - means an order or judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under 11 U.S.C. § 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedures in cases before the Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

2.020   First Payment Date – means the first day of the first month after the Effective Date of the Plan.

2.021   Holder - means the legal or beneficial Holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type).

2.022   Impaired - means an Allowed Claim that is impaired within the meaning of 11 U.S.C. § 1124.

2.023   Petition Date – means July 22nd, 2022.

2.024   Priority Claim - means a Claim entitled to priority under 11 U.S.C. §§ 507(a)(3) - (7).

2.025   Priority Tax Claim - means a Claim entitled to priority under 11 U.S.C. § 507(a)(8).

2.026   Reorganized Debtor – means the Debtor, Auto Wholesale of Boca, LLC in this Bankruptcy Case.

JAMES B. MILLER, P.A.

2.027 <u>Secured Claim</u> - means a Claim that is (i) secured by a valid and perfected lien on property in which the Debtor's estate has an interest, but only to the extent of the value of the claimant's interest in the estate's interest in such property as determined pursuant to 11 U.S.C. § 506(a), or (b) subject to setoff under 11 U.S.C. § 553, but only to the extent of the amount subject to setoff, as determined pursuant to 11 U.S.C. § 553.

2.028 <u>Subchapter V Trustee</u> – means the individual serving in this bankruptcy proceeding as trustee pursuant to 11 U.S.C. § 1183.

2.029 <u>Undersecured Claim</u> - means the amount of a prepetition Secured Claim that exceeds the value of the collateral securing that Claim and is therefore unsecured.

2.030 <u>Unsecured Claim</u> - means any Claim that is not (a) an Administrative Claim, (b) a Priority Claim; (c) a Priority Tax Claim; or (d) a Secured Claim.

(CONTINUED ON NEXT PAGE)

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE
## CLAIMS AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims. Under 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims (other than 11 U.S.C. § 507(a)(8) claims) are not in classes. However, treatment of any administrative expense claims that are not paid in full on the Effective Date of this Plan is set forth below.

3.02    Administrative Expense Claims. Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid as set forth herein, which is consistent with 11 U.S.C. § 1191(e). If not otherwise specifically provided for herein, any other allowed administrative expense claims will be paid in full, plus statutory interest if applicable, over 60 months from the First Payment Date, in 20 equal quarterly payments, which will begin on the First Payment Date, and continue on the first day of every quarter thereafter. The Debtor requests that the Court set an administrative claims bar date of fifteen (15) days after the Confirmation Date, unless an earlier date has been set by the Court.

3.03    Priority Tax Claims. Each holder of an allowed priority tax claim will be paid in full on the First Payment Date.

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLAIMS AND
## INTERESTS UNDER THE PLAN

4.01    Classified Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 1 –Priority Claim of State of Florida, Department of Revenue (Unfiled Claim) **Total claim amount: $7,691.19 (priority unsecured = $7,691.19)** | Unimpaired | Class 1, the Administrative/Priority Claim of the Florida Department of Revenue ("FDR"), is unimpaired by this Plan. FDR shall have an allowed priority claim, pursuant to 11 U.S.C. §§ 502(i) and 507(a)(8), in the amount of $7,691.19 (the "FDR Priority Claim"). The FDR Priority Claim shall be paid by the Debtor as follows: payment in the full amount of $7,691.19, on or before the Effective Date. |
| Class 2 – Other Priority Claims | Unimpaired | As to Class 2, no other Priority Claims have been filed; and no other undisputed, noncontingent and/or liquidated Priority Claims have been scheduled by the Debtor. However, in the event that it is determined by the Court that any other allowed Priority Claims do exist, then each holder of a Class 3 Priority Claim will be paid in full on the Effective Date. |
| Class 3 – Bifurcated Claim of Woodside Credit, LLC (Claim No. 4) | Impaired | Class 3, the Bifurcated Claim of Woodside Credit, LLC ("Woodside") is impaired and will be objected to as Debtor owes no debt to Woodside. The Debtor will be objecting to this claim. In the event that the Debtor's objection is overruled (in-part or whole) the Claim will then be treated as ruled upon. If fully secured, any property subject of the fully secured claim would then be abandoned by the Debtor with no claim allowed against the Estate. |

JAMES B. MILLER, P.A.

| | | |
|---|---|---|
| **Total claim amount: $989,861.46 (Secured $221,205.22//Unsecured $796.21)** | | If the claim is allowed in whole or part only, then to the extent the unsecured portion will be treated as a general unsecured claim in Class 9 below. |
| Class 4 – Secured Claim of Franklin Capital Funding LLC (alleged lien on vehicles) (Claim #11)<br><br>**Total claim amount: $6,535,055.13** | Impaired | Class 4, the Secured Claim of Franklin Capital Funding, LLC is impaired and will be objected to as Debtor owes no debt to Franklin. This Claim #11 is impaired by the Plan. This Claim #11 is also a duplicate, (other than for a security interest claimed), of Claim No. 10 filed by the same creditor. The Debtor will be objecting to this claim; and, any interest of Franklin in any of the Debtor's inventory is also subject of pending litigation in the Bankruptcy Court in Adversary Proceeding No. 22-01218-EPK, wherein the Bankruptcy Court will eventually rule upon and determine the interests, if any, of Franklin in and to the Debtor's inventory. In the event that the Debtor's objection is overruled (in-part or whole) the Claim will then be treated as ruled upon. If fully secured, any property subject of the fully secured claim would then be abandoned by the Debtor with no claim allowed against the Estate. If the claim is allowed in whole or part as unsecured, then to the extent the unsecured portion will be treated as a general unsecured claim and Claim #10 would then be disallowed and otherwise treated in Class 9 below as an Unsecured Claim |
| Class 5 – Secured Claim of FVP Opportunity Fund III, LP; FVP Investments LLC; and FVP Servicing, LLC (alleged lien on vehicles) (Claim #'s 7,8 and 9)<br><br>**Total claim amount: $8,040,416.67 (secured = $7,500,000.00; general unsecured = $540,416.67)** | Impaired | Class 5, the Secured Claim of FVP Opportunity Fund III, LP, FVP Investments LLC and FVP Servicing, LLC ("FVP") asserts a security interest in all of the Debtor's inventory which is subject of pending litigation in the Bankruptcy Court in Adversary Proceeding No. 22-01218-EPK, wherein the Bankruptcy Court will eventually rule upon and determine the interests, if any, of FVP in and to the Debtor's inventory. This claim is impaired by this Plan. . The Debtor will be objecting to this claim. In the event that the Debtor's objection is overruled (in-part or whole) the Claim will then be treated as ruled upon. If fully secured, any property subject of the fully secured claim would then be abandoned by the Debtor with no claim allowed against the Estate. If the claim is allowed in part or whole as unsecured, then to the extent the unsecured portion will be treated as a general unsecured claim and otherwise treated in Class 9 below as an Unsecured Claim As Claims #8 and #9 are duplicates, they will be objected to and otherwise disallowed in their entirety. |
| Class 6 – Secured Claim of Edward Brown (lien on automobiles) (Claim # 19)<br><br>**Total claim amount: $919,870.76 (secured = $Unk; general unsecured = $Unk)** | Impaired | Class 6, the Secured Claim of Edward Brown ("Brown") is impaired by this Plan. This claim alleges to be both secured and unsecured for the same sum, an unknown amount and appears to be a protective filing. Debtor owes no sums to Brown and will be objecting to this Claim. Brown asserts a security interest in part of the Debtor's inventory which is subject of pending litigation in the Bankruptcy Court in Adversary Proceeding No. 22-01218-EPK, wherein the Bankruptcy Court will eventually rule upon and determine the interests, if any, of Brown, and others, in and to the Debtor's inventory. The Debtor will be objecting to this claim. In the event that the Debtor's objection is overruled (in-part or whole) the Claim will then be treated as ruled upon. If fully secured, any property subject of the fully secured claim would then be abandoned by the Debtor with no claim allowed against the Estate. If the claim is allowed in part or whole as unsecured, then to the |

| | | extent the unsecured portion will be treated as a general unsecured claim and otherwise treated in Class 9 below as an Unsecured Claim. |
|---|---|---|
| Class 7 – Secured Claim of Hi Bar Capital LLC (lien on automobiles) (Claim #20)<br><br>**Total claim amount: $Unknown (secured = $Unk; general unsecured = $Unk)** | Impaired | Class 7, the Secured Claim of Hi Bar Capital LLC ("Hi Bar") is impaired by this Plan. This claim alleges to be both secured and unsecured for the same sum, an unknown amount. Debtor owes no sums to Hi Bar and will be objecting to this Claim. Hi Bar asserts a security interest in part of the Debtor's inventory which is subject of pending litigation in the Bankruptcy Court in Adversary Proceeding No. 22-01218-EPK, wherein the Bankruptcy Court will eventually rule upon and determine the interests, if any, of Hi Bar, and others, in and to the Debtor's inventory. The Debtor will be objecting to this claim. In the event that the Debtor's objection is overruled (in-part or whole) the Claim will then be treated as ruled upon. If fully secured, any property subject of the fully secured claim would then be abandoned by the Debtor with no claim allowed against the Estate. If the claim is allowed in part or whole as unsecured, then to the extent the unsecured portion will be treated as a general unsecured claim and otherwise treated in Class 9 below as an Unsecured Claim. |
| Class 8 – Secured Claim of Prestige Luxury Cars, LLC (lien on automobiles)<br><br>(Claim #21)<br><br>**Total claim amount: $1,320,000.00**<br><br>**$Unknown secured**<br><br>**$Unknown general unsecured** | Impaired | Class 8, the Secured Claim of Prestige Luxury Cars, LLC ("Prestige") is impaired by this Plan. This claim alleges to be both secured and unsecured for the same sum, an unknown amount. Debtor owes no sums to Prestige and will be objecting to this Claim. Prestige asserts an unknown security interest in assets that are not subject of this Estate. The Debtor will be objecting to this claim. In the event that the Debtor's objection is overruled (in-part or whole) the Claim will then be treated as ruled upon. If fully secured, any property subject of the fully secured claim would then be abandoned by the Debtor with no claim allowed against the Estate. If the claim is allowed in part or whole as unsecured, then to the extent the unsecured portion will be treated as a general unsecured claim and otherwise treated in Class 9 below as an Unsecured Claim. |
| Class 9 - General Unsecured Creditors<br><br>**Total Estimated Allowed General Unsecured Claims: $1,100,000.00** | Impaired | Class 9 consists of all allowed general unsecured claims, including any undersecured claims. The Class 9 Creditors shall share *pro rata* in a total distribution over the period of five (5) years with annual distributions at the end of every fiscal year in the amounts set forth above in Article I at para. 1.04 at the time indicated therein, for a total distribution of $334,396.25, or roughly 32.6% of the allowed general unsecured claims, after resolution of the claim objections and the FVP Adversary Proceeding.<br><br>In addition to any allowed unsecured claims arising out of any objections to, or rulings in regards to, Classes 1 through 8 above, Class 9 claims have been filed as follows:<br><br>Claim #1 Internal Revenue Service $100.00<br><br>Claim #2 Karma of Broward, Inc. $20,000,000.00<br><br>Claim #3 Road Rich, LLC $508,000.00<br><br>Claim #5 Derek Stephens $250,000.00 |

| | | |
|---|---|---|
| | | Claim #6 Kurkin Forehand Brandes, LP $23,740.00<br><br>Claim #10 Franklin Capital Funding, LLC $6,535,055.15<br><br>Claim #16 Calvin Erbstein $1,00,000.00<br><br>Claim #18 Nicole Testa Mehdipour Trustee $30,634,447.89<br><br>As no valid basis exists for the following claims, Debtor will be objecting to:<br><br>Claim #2 by Karma of Broward Inc. $20,000,000.00<br><br>Claim #3 Road Rich, LLC $508,000.00<br><br>Claim #5 Derek Stephens $250,000.00<br><br>Claim #10 Franklin Capital Funding, LLC $6,535,055.15<br><br>Claim #18 Nicole Testa Mehdipour Trustee $30,634,447.89<br><br>Further, Debtor reserves the right to object to any other claims.<br><br>First Payment Date and continuing on the first day of every quarter thereafter.<br><br>The estimated Class 9 general unsecured creditors to be paid under this Plan (as well as a payment schedule) are set forth in the attached **Exhibit "C"**. Unsecured creditors will be receiving a distribution of approximately 32.6% of their allowed claim(s), which is an amount in excess of what claimants would receive in a hypothetical Chapter 7 proceeding, in which case such claimants would receive 0.00%, as set forth in Exhibit "A". |
| Class 10 – Subordinated Unsecured Creditors<br><br>**Total Estimated Allowed Subordinated Unsecured Claims: $4,700,838.87** | Impaired | Class 10 is comprised of those claimants whose claims would be considered subordinated as they are "insiders" or affiliates of the Debtor or its principals. Aa these claims will likely receive no distribution, they're impaired.<br><br>This class consists of the claims filed by affiliates of the Debtor, or entities affiliated with owners of the Debtor:<br><br>Claim #12 Mazel Tov, Inc. $77,838.77<br><br>Claim #13 Express Emergency Services, Inc. $3000.00<br><br>Claim #14 Farache Enterprises, Inc. $9,059.87<br><br>Claim #15 Moshe Farache $3,321,772.46<br><br>Claim #17 M & M Development Consultants, LLC $1,289,168.77.<br><br>Scheduled Lisa Farache $Unknown<br><br>Scheduled Chase Farache $Unknown<br><br>The Creditors in Class 10 are in agreement with waiver of their claims subject to the Release Provisions being approved as set forth herein-below.<br><br>If and to the extent that, after payment of the Class 1-9 allowed claims are made, in full, and after payment of the Administrative Professional Fees and Costs of Debtor's bankruptcy counsel and the Subchapter V Trustee, then the creditors in Class 10 would share |

| | | |
|---|---|---|
| | | *pro rata* in any such distribution if and to the extent the Releases set forth below is not approved. |
| Class 11 - Equity Security Holders of the Debtor | Impaired | Class 10 consists of all allowed equity interests in the Debtor, which includes interest in any share of preferred stock, common stock, or other instruments evidencing an ownership interest in the Debtor. |
| | | All Equity Security Holders of the Debtor will retain their interest(s) in the Debtor as such interest(s) existed prior to the Petition Date, with German Duarte retaining a 49% stock interest and Stella Amador retaining a 51%) stock interest. |

4.02    Unclassified Claims and interests shall be treated as follows under this Plan:

| | |
|---|---|
| Administrative Professional Fees and Costs of Debtor's Attorneys (James B. Miller, P.A.) | The administrative professional fees and costs of the Debtor's attorneys are anticipated to be $115,000.00+, exclusive of any retainer(s) previously paid. Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing. The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan and shall be paid upon entry of the Confirmation Order or the order awarding such fees and costs, whichever is later. Any administrative professional fees and costs that are incurred post-confirmation are not included herein. |
| Administrative Professional Fees and Costs of Subchapter V Trustee (Linda Leali) | The administrative professional fees and costs of the Subchapter V Trustee are anticipated to be $25,000.00. Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing. The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan. Such fees and costs shall be paid in one lump sum due on the First Payment Date. Any administrative professional fees and costs that are incurred post-confirmation are not included herein. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a Final Order.

5.02    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and in compliance with Fed. R. Bankr. P. 9019.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumption of Executory Contracts and Unexpired Leases. The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date:

a.    Lease between the Debtor (as lessee) and 5471, LLC. (as lessor) for the warehouse/business premises located at 5471 N. Dixie Highway, Boca Raton, FL 33487.

---

JAMES B. MILLER, P.A.

b.      Lease between the Debtor (as lessee) and SC&J II, LLC. (as lessor) for the business premises located at 6560 West Rogers Circle, Suite B27, Boca Raton, FL 33487

c.      Garage Car Dealer Policy with Colony Insurance Company, Policy #TBD93470512 GP88526496.

d.      Commercial Lines/Garage Policy with Berkley Specialty Insurance Company, Policy #QCA 4AA0005352-15.

e.      Royal Premium Budget Inc and Stonemark, insurance financing agreement for Policy # QCA 4AA0005352-15.

f.      Royal Premium Budget Inc and Stonemark, insurance financing agreement for Policy # TBD93470512 GP88526496.

6.02    <u>Rejection of Executory Contracts and Unexpired Leases</u>.  The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed above, or before the Confirmation Date, upon the Effective Date of this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the Confirmation Date.

**ARTICLE VII**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

The means necessary for the implementation of this Plan include the Debtor's cash flow from operations for a period of 5 years.  The Debtor's financial projections are attached as Exhibit "B".  The Debtor's financial projections show that the Debtor will have sufficient cash over the life of the Plan to make the required Plan payments and operate its business.  The estimated cash on hand necessary as of the First Payment Date of this Plan is $222,000.00+/-.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by 11 U.S.C. § 1191(d)) for a period of 5 years of $334,396.25.  To the extent that the Debtor performs consistent with such financial projections, then such disposable income will be utilized by the Debtor in the form of cash reserves, in order to ensure that the Debtor will have sufficient cash over the life of the Plan to not only make the required Plan payments, but operate its business without any concern of illiquidity.  To the extent that the Debtor underperforms, then the Debtor's officers have agreed to defer or waive their salaries as necessary, in order to ensure that the Debtor can make the required Plan payments.

To the extent that the Debtor wishes to prepay any amounts due under this Plan, the Debtor reserves the right to do so without penalty.  The Debtor, as reorganized, will retain and will be re-vested in all property of the estate, excepting property which is to be sold or otherwise disposed of as provided herein and executory contracts which are rejected pursuant to this Plan.  The retained property shall be used by the Debtor in the ordinary course of its business.

JAMES B. MILLER, P.A.

## ARTICLE VIII
## DISCHARGE AND EFFECT OF CONFIRMATION

8.01    Discharge.  If this Plan is confirmed under 11 U.S.C. § 1191(a), then on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before the Confirmation Date, to the extent specified in 11 U.S.C. § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in 11 U.S.C. § 1141(d)(6).  If this Plan is confirmed under 11 U.S.C. § 1191(b), then confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in 11 U.S.C. § 1192.

The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in 11 U.S.C. § 1192; or (ii) excepted from discharge under 11 U.S.C. § 523(a), except as provided in Fed. R. Bankr. P. Rule 4007(c).

8.02    Vesting of Assets.  Except as otherwise set forth herein or in the Confirmation Order, as of the Effective Date, the property of the estate shall vest in the Debtor free and clear of all claims, liens, encumbrances, charges and other interests, except those specifically set forth and identified in this Plan.

8.03    Binding Effect.  Except as otherwise provided in 11 U.S.C. § 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a claim against the Debtor and its respective successors and assigns, whether or not the claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all Holders of Claims and Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts or Unexpired Leases with the Debtors.

8.04    Injunction Against Interference with Plan.  Upon the entry of the Confirmation Order, all holders of claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

8.05    **NON-DEBTOR RELEASES: Except as otherwise provided herein or in the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been addressed, satisfied or released pursuant to the Plan shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, and the Debtor's and Reorganized Debtor's officers, directors, employees and owners/principals ("Released Parties"), or any of the properties of the Reorganized Debtor: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of, in**

connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering in any manner or by any means any judgment, award, decree, or order on account of, in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind on account of, in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind on account of, in connection with or with respect to any such Claims or Interests, unless such Entity has Filed, on or before the Confirmation Date, a motion with the Bankruptcy Court requesting the right to perform such setoff, notwithstanding any indication that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan.

The substantial contributions of the Released Parties include, without limitation, (i) a complete release of the Class 10 Claims as defined in the Plan. The substantial contributions of the Debtor's principals, officers, directors and employees include, without limitation: (i) performance of all necessary acts to administer the Estate, implement the Plan, and effect an orderly management of the Debtor; (ii) timely and cost-efficient payment and resolution of all outstanding Claims; and (iii) waiver of any fee for the services performed in the post-petition management in exchange for the releases. The Release contemplated herein is a critical incentive for these substantial contributions.

8.06    Other Effect(s) of Confirmation. If not otherwise identified herein, then the effect of confirmation of the Plan is as set forth in the Bankruptcy Code and applicable law.

## ARTICLE IX
## OTHER PROVISIONS

9.01    Disbursing Agent. If this Plan is confirmed under 11 U.S.C. § 1191(a), then all Distributions hereunder shall be made by the Debtor, or such other individual or entity designated by the Debtor at the Confirmation Hearing, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein. If this Plan is confirmed under 11 U.S.C. § 1191(b), then all Distributions hereunder shall be made by the Subchapter V Trustee, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein. In such instance, the Debtor shall remit to the Subchapter V Trustee, on or before the 15th day of the month prior to the month in which each Plan payment is due, the appropriate amount(s) for the Subchapter V Trustee to remit to the respective creditor(s) under this Plan.

_____

JAMES B. MILLER, P.A.

A Disbursing Agent shall not be required to give any bond, surety or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor. If this Plan is confirmed under 11 U.S.C. § 1191(b), then the Debtor shall also pay all fees, costs and expenses of the Subchapter V Trustee in remitting such Distributions. The Bankruptcy Court shall retain jurisdiction to hear any controversy relating to such fees, costs and expenses.

9.02    Subchapter V Trustee. If this Plan is confirmed under 11 U.S.C. § 1191(a), then the service of the Subchapter V Trustee shall terminate when this Plan has been substantially consummated. The Debtor shall file with the Court and serve on the Subchapter V Trustee notice of such substantial consummation not later than 14 days after the Plan is substantially consummated. If this Plan is confirmed under 11 U.S.C. § 1191(b), then the service of the Subchapter V Trustee shall terminate upon such time that the last Distribution check is negotiated.

9.03    Default of Plan Payment(s). Unless otherwise specifically set forth above, in the event of any default by the Debtor of any payment required by ¶¶ 4.01 or 4.02 above, the Claimant (or the Subchapter V Trustee, as the case may be) shall provide the Debtor with notice of such default, by electronic mail to the Debtor's attorney, James B. Miller, Esq. (at jbm@title11law.com) and by facsimile transmittal (305-374-0250) (the "Default Notice"). The Debtor shall be afforded fourteen (14) days from the date of receipt by the Debtor's counsel of such Default Notice to cure such default (the "Cure Period"), or to seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193. In the event that the Debtor does not cure a default or otherwise seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193, within the Cure Period, which modification is subsequently approved by the Court, then the Debtor shall be deemed in Default of this Plan.

Pursuant to 11 U.S.C. § 1191(c)(3)(B), the condition that this Plan be fair and equitable with respect to each class of claims or interests includes, without limitation, the requirement that the Plan include "appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made". As such, if this Plan is confirmed under 11 U.S.C. § 1191(b), then in the event that the Debtor is in Default of this Plan, the Subchapter V Trustee shall provide all creditors and equity interest holders with notice of such Plan Default. In such instance, the remedies of any Claimant are limited to the remedies set forth in this paragraph. In the event of a Plan Default, the Debtor shall sell all of its tangible personal property (the "Sale") and remit the proceeds of such Sale to the Holders of Allowed Claims. The Debtor shall have 120 days after the date of a Plan Default to effectuate the Sale or otherwise resolve such Plan Default to the satisfaction of the Claimant(s) and/or the Subchapter V Trustee. The Sale shall be conducted by a licensed auctioneer and the Debtor shall account for all proceeds of the Sale by providing such notice to all creditors and equity interest holders. After deducting any expenses directly associated with the Sale, the proceeds of the Sale shall be distributed as follows: (1) first, to any Claimants with valid Secured Claims against such personal property, in the order and priority as set forth pursuant to Florida law; and (2) second, in accordance with 11 U.S.C. § 726. The Sale and the distribution of the Sale proceeds shall be conducted by the Debtor without the necessity of further order of the Court. After receiving the appropriate proceeds from the Sale, each Claimant shall have no further claim against the Debtor.

---

JAMES B. MILLER, P.A.

If this Plan is confirmed under 11 U.S.C. § 1191(a), then in the event that the Debtor is in Default of this Plan, then Claimants shall be entitled to any and all remedies available under applicable law, to collect the Distribution that each Claimant was entitled to under this Plan. In such case, the exclusive jurisdiction to enforce such Defaults under this Plan shall be in the Circuit Court in and for Palm Beach County, Florida.

9.04    Reservation of Right to Modify Plan Post-Confirmation.    The Debtor expressly reserves the right to request a modification of this Plan at any time after confirmation of the Plan, as long as such modification is in accordance with 11 U.S.C. § 1193, and as long as the Court confirms such modified plan, after notice and a hearing.

9.05    Post-Petition Interest on Claims.    Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim.

9.06    Delivery of Distributions and Undeliverable or Returned Distributions.    Subject to Fed. R. Bank. P. 9010, all Distributions to any Holder of an Allowed Claim shall be made at the Distribution Address.    In the event that any Distribution to any Holder is returned as an "Undeliverable or Returned Distribution", then no further Distributions to such Holder shall be made unless and until the Debtor is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder, without interest.    An "Undeliverable or Returned Distribution" shall include such distributions that are: (a) undeliverable through regular United States Mail, whether such distribution is returned to the Debtor or not; (b) returned to the Debtor because the Claimant cannot locate an account number belonging to the Debtor, despite the Debtor's reasonable diligence in providing the Claimant with the bankruptcy case number, account number and his social security number; (c) returned to the Debtor because the Claimant is no longer operating and has not provided the Debtor or the Court with any assignment information; or (d) returned to the Debtor because the Claimant indicates in writing that the Claimant does not wish to receive any Distribution under this Plan and therefore waives any right to payment.

All demands for Undeliverable or Returned Distributions shall be made on or before ninety (90) days after the date such Undeliverable or Returned Distribution was initially made. Thereafter, the amount represented by such Undeliverable or Returned Distribution shall be permanently forfeited to the Debtor. At such time, any Claim in respect of such Undeliverable or Returned Distribution shall be discharged and forever barred from assertion against the Debtor.

9.07    Time Bar to Cash Payments.    Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof. Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and eighty (180) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall be permanently forfeited to the Debtor. At such time, any Claim in respect of such voided check shall be discharged and forever barred.

9.08    Severability.    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

---

JAMES B. MILLER, P.A.

9.09     Binding Effect.    The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

9.010   Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.011   Controlling Effect.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.012   Corporate Governance.  Equity interests of the Debtor shall be treated as set forth in ¶ 4.01 of this Plan.

9.013   Post-Confirmation Operation of Business.  Except as otherwise provided herein or in the Confirmation Order, on and after the Effective Date, the Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provisions of the Bankruptcy Code.  The Debtor shall be entitled to retain and compensate professionals without the necessity of further approval of the Court.  Except as set forth in this Plan concerning objections to claims, the Debtor may also settle or compromise any claims without Court approval.

This Plan of Reorganization is dated October 20, 2022, and is hereby approved by the undersigned.

By: Moshe Farache, as Managing Member
of Auto Wholesale of Boca, LLC.

Submitted by:

**James B. Miller, Esq.**
**Florida Bar No.: 0001964**
**JAMES B. MILLER, P.A.**
19 West Flagler St., Suite 416
Miami, FL 33130
Tel. No.: 305-374-0200
Fax No.: 305-374-0250
E-Mail: jbm@title11law.com
*Attorneys for the Debtor*