Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  22-15627-EPK
Chapter 11

In re:

AUTO WHOLESALE OF BOCA, LLC,

    Debtor.

_____/


ECF # 141, 143

October 26, 2022


        The above-entitled cause came on for hearing before the HONORABLE ERIK P. KIMBALL, one of the Judges of the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, Palm Beach County, Florida, on Wednesday, October 26, 2022, commencing at or about 1:48 p.m., and the following proceedings were had:


        Transcribed from a digital recording by:
            Helayne Wills, Court Reporter


OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

Page 2

APPEARANCES:

    LINDA LEALI, Subchapter V Trustee

    JAMES B. MILLER, P.A., by
    JAMES B. MILLER, ESQ.,
    on behalf of the Debtor/Defendant

    BRYAN CAVE LEIGHTON PAISNER, LLP, by
    JARRET HITCHINGS, ESQ.,
    on behalf of Hi Bar Capital, LLC

    AKERMAN LLP, by
    LUIS CASAS, ESQ.,
    on behalf of Edward Brown

    DAVID R. SOFTNESS, P.A., by
    DAVID R. SOFTNESS, ESQ.,
    and
    BARON BRESLIN & SARMIENTO, by
    JERRELL A. BRESLIN, ESQ.,
    on behalf of the FVP Plaintiffs

    SHRAIBERG PAGE, P.A., by
    BRADLEY S. SHRAIBERG, ESQ.,
    on behalf of Wing Lake Capital Partners
    JOHN E. PAGE, ESQ.,
    on behalf of Edvard Dessalines

    KELLEY FULTON KAPLAN & ELLER, P.L., by
    C. CRAIG ELLER, ESQ.,
    on behalf of Road Rich Motors

    WEISS HANDLER & CORNWELL, P.A., by
    HARRY WINDERMAN, ESQ.,
    on behalf of Karma of Broward

    ALEXANDER RAMOS, ESQ.,
    on behalf of Woodside Credit
    ALSO PRESENT VIA COURTSOLUTIONS:
    ECRO - Electronic Court Reporting Operator

THE COURT:  Next we have Auto Wholesale of Boca, LLC.  I have a large number of parties.  Let's start -- I'm going to use my list, rather than your faces.

Mr. Miller.

MR. MILLER:  Good afternoon, Your Honor.  James Miller, M-I-L-L-E-R, on behalf of the debtor-in-possession.

THE COURT:  Ms. Leali.

MS. LEALI:  Good afternoon, Your Honor.  Linda Leali.  I'm the Subchapter V Trustee in this case.

THE COURT:  I hear Ms. Klopp is not well, so somebody must be standing in for her.  Is someone standing in for Ms. Klopp?

MR. CASAS:  Yes, Your Honor.  Good afternoon.  Luis Casas of Akerman LLC, on behalf of Edward Brown, standing in for Amanda Klopp.

THE COURT:  Thank you.  Good afternoon.

Mr. Bakst.

Mr. Eller.

MR. ELLER:  Good afternoon, Judge.  Craig Eller on behalf of Road Rich Motors.

THE COURT:  Mr. Breslin.

MR. BRESLIN:  Yes.  Good afternoon, Judge.

Co-counsel with Mr. Softness for the FVP plaintiffs.

THE COURT:  Mr. Softness.

MR. SOFTNESS:  Thank you, Judge.  David Softness S-O-F-T-N-E-S-S, for the FVP plaintiffs. Thanks, Judge.

THE COURT:  Mr. Silver.

Mr. Ramos.

MR. RAMOS:  Alexander Ramos with Woodside Credit.

THE COURT:  Mr. Hitchings.

MR. HITCHINGS:  Good afternoon, Your Honor.  Jarret Hitchings of Bryan Cave Leighton & Paisner, on behalf of the plaintiff Hi Bar Capital, LLC.

THE COURT:  All right.  Mr. Shraiberg.

MR. SHRAIBERG:  Good afternoon, Your Honor.  Brad Shraiberg on behalf of Wing Lake Capital Partners, formerly known as Franklin Capital.

THE COURT:  And Mr. Page.

MR. PAGE:  Good afternoon, Judge.  John Page on behalf of Edvard Dessalines.

THE COURT:  I see Mr. Winderman.

MR. WINDERMAN:  Harry Winderman, Weiss Handler & Cornwell, on behalf of the Karma entities.

Page 5

THE COURT:  Is there anyone else?

MR. WINDERMAN:  And on behalf of -- I forgot his name.  The last part is Nina, that's on for this afternoon in a non-evidentiary matter.

THE COURT:  All right.  You can figure out who that is before we get to that matter.

MR. WINDERMAN:  It's Mr. Shane.

THE COURT:  Is there anybody who's failed to appear who would like to appear?

All right.  So I have two motions.  I don't know if it matters which one I start with.  Let's start with 141.  That is a motion for turnover regarding a 2018 Lamborghini.

Who would like to present that?

MR. WINDERMAN:  I believe, Your Honor, that is my motion.  I believe that this is going to be in the vein of Stephens and Periu.  I believe that -- it's conceived that it's going to take an evidentiary hearing.  I would ask the Court to set an evidentiary hearing.

There is an evidentiary hearing on the 28th for Stephens and Periu, but I'm not sure, now that we've gotten into the extensive evidence in this case, that either one of those cases, or all three of these cases, can be heard independent of

the anticipated dec action on behalf of the various parties to determine who owns the automobile.

So I'm asking for an evidentiary hearing, and I'm asking that the evidentiary hearing for Periu, Stephens and Shane all be wrapped up in the evidentiary hearing or trial when it comes to the dec action, which hadn't been filed yet, but I understand will be filed shortly.

THE COURT:  Mr. Miller.

MR. MILLER:  Thank you.  Miller speaking, Your Honor.

When counsel says dec action, I'm thinking he's referring to the Fourth Amended Complaint in the pending adversary proceeding.  He can correct me if I'm wrong.  I believe that, yes, probably these matters are going to be resolved or addressed in part, as well, in the adversary proceeding, because either the debtor's interest is going to be found to be superior, or one of the party plaintiffs is going to have a superior interest, and why not have -- the more the merrier.  Have them all in there.

So it's up to -- I think the party that probably should be asked is FVP, because they've been sort of stuck when challenged with having to draft this Fourth Amended Complaint to try and put

this into a linear single piece of paper, as well as Mr. Shraiberg, Judge, so I'd invite their insight in that.

But yes, I am certainly going to take an evidentiary hearing on this motion, because we object to any relief.

THE COURT:  And you agree that it is closely tied to the arguments that would be presented in FVP and others against Auto Wholesale of Boca?

That's 22-1218, and I also have that on the docket this afternoon.

MR. MILLER:  Miller speaking.

Yes, I believe it would be, because I believe, if I recall correctly, FVP and Mr. Breslin and Mr. Softness can assert their interests, but I think that they're also claiming an interest in the same automobiles that this entity, Shaneandninamt, that's represented by Mr. Winderman, as well as Mr. Eller's client, Road Rich, that FVP, Hi Bar, Franklin, are all going to assert an interest in these vehicles, as well.

THE COURT:  Would either of the counsel for FVP like to comment?  I notice that FVP did not respond to either of these motions.

MR. BRESLIN:  If I may, David, should I take this?

MR. SOFTNESS:  Sure.

MR. BRESLIN:  Judge, our position, we responded to the Stephens motion.  We've taken no position to the other two motions, the Periu and the Road Rich motion.  Our analysis is not quite complete.  I'll have that resolved by the end of the day.

That said, I agree with Mr. Winderman and Mr. Miller that it makes certainly sense in the sense of judicial economy for all of these matters to be litigated in what I anticipate will be a part one to the claims of all the parties each against the other, where the ownership of all the vehicles will be determined.

So to the extent that -- do we believe that it should be rolled in?  Yes.  And we will certainly make our position known as to the Road Rich and the Periu vehicles whenever it's relevant.

But as I said, as to Stephens, we've responded.  We're ready to go forward with our evidence.  That was scheduled for November 28th, but I think that it may be repetitive for everyone to have to submit identical evidence twice.  So I think

Page 9

it makes sense to consolidate those.

Did you want me to address the joint complaint and the scheduling?

THE COURT:  No, not yet.

So right now what I've heard is, no one is saying that I should not move -- I set an evidentiary hearing on 141, and it should be in some way combined with the adversary, whether it be included in the complaint yet to be filed, another amended complaint, or whether it simply be heard simultaneously.  That's where we are.

Mr. Shraiberg.

MR. SHRAIBERG:  Franklin Capital agrees with Mr. Breslin and FVP.

THE COURT:  Okay.  So you think it should actually become part of the complaint that I'm going to hear about in a moment.

MR. SHRAIBERG:  I think so.

THE COURT:  Anybody else wish to weigh in on 141?  Then I'd like to hear about the Road Rich matter, which I'm assuming is going to be the same.

All right, Road Rich, who is representing the movant on that one?

MR. ELLER:  Good afternoon, Your Honor. Craig Eller on behalf of Road Rich Motors.

Page 10

THE COURT:  Mr. Eller.

MR. ELLER:  Good to see you, sir.

THE COURT:  Is this procedurally the same issue that I just had with 141?

MR. ELLER:  I don't believe so, Your Honor, although I have not closely inspected that particular matter.  It is almost factually identical to a previous matter that we heard before this Court, the Graves matter, involving a Lamborghini, with almost identical circumstances where the Court did grant our motion.  And we are dealing with bare legal title.

I can make the presentation on that point, because I don't believe the facts are in dispute, and the Court can rule on that without any further information.

THE COURT:  In that prior matter was it an individual who you represented or a dealer?

MR. ELLER:  It was a company, Your Honor, that was involved.  It was Graves Directional Drilling that purchased the Lamborghini in that particular circumstance.

THE COURT:  Right, but it was not an entity that was a dealer in cars, correct?

MR. ELLER:  That is correct, Your Honor.

THE COURT:  That may make a difference in this instance.

So you think that I can decide 143 independent of the issues that are otherwise presented in FVP against Auto Wholesale, which is, does the debtor own any of these things, to start with?

MR. ELLER:  Correct, Judge.

THE COURT:  Well, why don't you present it, and then I'll hear the response from Mr. Miller?

MR. ELLER:  Very good, Judge.

Your Honor, this is our motion to abandon bare legal title to the 2019 Ferrari 488 Pista. Factually, again, this situation is almost identical to the Graves matter, where the debtor also, through unknown machinations, ended up with bare legal title after a purchase by a good faith purchaser for value.  And that is what the debtor has scheduled in this case in relation to the 2019 Ferrari.  Simply bare legal title, having a disclosed value of $2.

The facts in this particular circumstance are straightforward, and are supported by the affidavit of Mr. Richard Taylor.  Road Rich Motors purchased the 2019 Ferrari from Karma of Palm Beach on March 11, 2022, for the sum of $508,000.  This

was supported by a purchase agreement signed by both Road Rich Motors and Karma of Palm Beach, which is attached to the affidavit.  Furthermore, we have confirmed that $508,000 was received through bank account records of Karma of Palm Beach, which are also attached to the affidavit.

A Ferrari was delivered to Road Rich Motors on March 12th, and it has maintained possession of the vehicle since that time.  Through circumstances involving some type of attempt to secure itself leading up to the failure of Karma of Palm Beach, the Ferrari title ended up in a swoop of titles transferred to the debtor more than two weeks after the transaction with Road Rich Motors.  Again, this circumstance is not any different from the Graves matter, in which the Court granted our motion to abandon title.

The debtor has objected, saying that it has an interest in the Ferrari.  In support of this, the debtor provides a bank account statement showing it transferred $400,000 to Karma of Palm Beach on December 23rd of 2021, which is more than two months prior to the car being sold to Road Rich Motors.

There's also no dispute that the Ferrari was in the possession of Karma of Palm Beach when it

Page 13

was sold to Road Rich Motors, and delivered possession to Road Rich Motors.  Again, just like the Graves matter that was previously before the Court.

And again -- and this is what's important here, Judge, and why the distinction of who the buyer is is a distinction without a difference. Application of 672.403 Florida Statutes, again applies.  Assuming the debtor does have some interest in relation to its unsupported and unspecified deposit of funds more than two months earlier, before the transaction with Road Rich Motors, the statute says "Any entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in the ordinary course of business."

This conclusion is supported by the case of Florida Department of Corrections versus Blount Pontiac-GMC, which is a First DCA case at 411 So.2d 9030, which applied 672.403 to rule in favor of the buyer in the ordinary course of business.

The buyer, as defined by the Court is, "A person who in good faith and without knowledge that the sale to him is in violation of the ownership

rights or security interest of a third party buys in the ordinary course of business from a person in the business of selling goods of that kind."

Now, I bring up that case again, as I did in the previous matter, because the focus of the analysis here is the identity of the seller, and of that seller being a seller of goods of that kind. Neither the case law nor the statute requires a buyer to be an individual, or not a merchant in sales. In fact, if you look at the Blount case, the good faith purchaser there was a sophisticated governmental entity, the Florida Department of Corrections.

In summary, 672.403 applies to this circumstance in the same manner as it did to the Graves matter and other similar cases before this Court. And the debtor's unsupported transfer of funds months earlier, and a desperate, what I call swoop of titles, after the transaction with Rich Motors, does not change the conclusion that this entity entrusted possession of the Ferrari to Karma of Palm Beach, and Karma of Palm Beach passed title to Road Rich Motors in the ordinary course of business.

That is not in dispute. And for that

reason, Judge, we believe that the motion should be granted this afternoon.

THE COURT: Mr. Miller.

MR. MILLER: Miller speaking, Your Honor. Thank you.

Obviously, we don't agree with the factual allegations that Road Rich's counsel asserts or argues. As a matter of fact, we've attached evidence that the debtor purchased this car in December of '21. Actually, it was waiting for the vehicle to be delivered. The vehicle was eventually delivered in January of '22, and then somehow in what we call the Zankl fraud, Mr. Zankl turns around and maximizes the value by reselling cars, as well -- whatever else.

But we could have paid for the car. It was our car. We had possession of it.

THE COURT: What do you mean by -- can you stop for a moment?

What do you mean by possession? Did it move from the lot where it was located at the time it was allegedly acquired by the debtor?

MR. MILLER: Yes. What it is is, the lot is a property that there were three tenants in this big building. Among the tenants was this debtor,

Page 16

who had a unit, another entity that was in a Chapter 7, Excell, had a unit, and a third entity had a unit.

There was a lot there where these cars were parked. The debtor maintained cars on the lot, and this car apparently was one of the cars that went missing. We had communicated with Excell about the whereabouts of the car. We were told the car was being repaired after it was delivered. Mr. Zankl said he was getting it repaired, and apparently, put it on a truck and shipped it to Road Rich.

With that said, what's more important here, Judge, what counsel is not acknowledging is that the debtor is a dealer, Excell is a dealer, Karma of Palm Beach is a dealer, and so is Road Rich. They're all dealers. The standard -- there's a split of authority -- the standard as to whether or not there is a duty in regards to -- you have a higher standard as a dealer in a dealer-to-dealer transaction.

Typically, in a UCC transaction where there's a UCC-1 recorded, you can do dealer-to-dealer, because the lender at the top of the UCC acknowledges these cars are going to be

getting turned over and sold, auctioned, whatever.

But in regards to an instance like this, like we did, we always took the title to the vehicle to ensure the title could not be transferred as we awaited the delivery of the vehicle.  In this regard, this vehicle was delivered to us and then went missing, which we couldn't figure out why.  That's when we communicated with Mr. Zankl.  Mr. Zankl apparently made up a story, because the car got shipped to Road Rich in California.

Judge, this car, by the way, given the fact -- the issue is -- remember, we hold the original title.  It's never been endorsed.  We attached a copy of it.  We have the original -- maybe we didn't.  I'll have to go back and look.  We have the original title endorsed to the debtor.

Road Rich is unable to get a title issued in California.  If Road Rich has had possession of this car in all the time that Mr. Eller is arguing, why are they waiting until October of 2022 to now assert an interest in this vehicle?  I think we have some serious issues here with after-the-fact documents and questions about them, in regards to some of these matters.

We don't trust Mr. Zankl.  I don't think

he can be believed.  He has pled for over eight hours the Fifth Amendment privilege to matters, and he's proved himself an untrustworthy person.

So we would ask that -- and the issue here is, it's a title.  Road Rich has possession of the car, so there's no threat of the debtor causing damage to it, or anyone else.  They've had this car now, according to Mr. Eller, at least seven months.

So there's no issue with, let's have this matter tried in an evidentiary hearing alongside with the other matters that the Court is considering, making them all come in.  Why should we have the same person testify over various cars over multiple days, when we can just get them all done in one or two days, and just have everything resolved at that time?

We contest the interest of Road Rich, and we do not believe they're a buyer in the ordinary course.  It's not a matter of a good faith --

THE COURT:  Because?  You started your presentation by saying that you believe there are factual disputes, so what are they?

MR. MILLER:  The factual disputes are, Road Rich is a dealer.  It's a dealer-to-dealer transaction.  It's not like Graves Directional,

where it was an end user.  Road Rich is not an end user.  They're selling this car.

Road Rich took possession of this car without getting the title.  Typically you get the title first when you pay the money.  In this case, we paid the money first, in December of '21, got the title.  The car was delivered a couple of weeks later, in January of '22.  So we had the car.

The fact that Mr. Zankl stole the car, removed it, converted it, and sold it to Road Rich, doesn't give Road Rich a better interest in the car than we already have.  They don't win by default on that matter.  If Zankl took possession of this car wrongfully, then Road Rich could not have gotten a better interest in the car than Zankl had, which would have been a wrongful ownership interest, because we have the title.  We paid for the car.

THE COURT:  I'm just curious what the evidence is going to look like as to how the car was delivered to your client.  Does it remain in the same parking space and someone says, "Aha, I've received it?"

I'm trying to figure out how delivery happened.  One of the arguments Mr. Eller makes is that possession of the vehicle was entrusted to his

client's seller.  That's one of the components of the statute that he points to.  And you're saying that's not the case, because it was previously delivered to your client.

What would the evidence look like for how it was delivered?  What does delivered mean in this context?  I've taken delivery of a bunch of vehicles, and they go with me back to my house.  So here it's just one big parking lot.

MR. MILLER:  You're an end user, yes.

THE COURT:  I know that, but I'm just trying to figure out what delivery looks like.

MR. MILLER:  I don't know.  I'm assuming that because it was shipped from -- Mr. Zankl first said it was being shipped from California to Florida, and then it was being shipped from Texas to Florida.  So I'm not sure which state it came from, but I'm assuming, because these cars, you want to keep low mileage on them, that that car was put on a truck.

THE COURT:  When your client purchased the vehicle, where was it physically?

MR. MILLER:  It was supposedly in transit to us.  It actually came to us in January.  So I'm assuming that it was being driven across the western

part of the United States.

THE COURT:  And "us" is the same location as Karma of Palm Beach operated out of, and you're going to tell me it was a different part of the building, right?  But it's the same building.

MR. MILLER:  There are three separate units in the building.

THE COURT:  Obviously, I've not gone there, and I don't intend to, but if I was to go there, what would I see?  Are there just -- is it one big storefront with several signs in it?  Can you walk inside the building from one side to another?

MR. MILLER:  I don't know.  I've never been in the building, Judge.  It wouldn't be fair for me to answer.

MR. ELLER:  Your Honor, if you'd like a description of the premises I'm happy to give the Court my experience.

THE COURT:  That's fine.  Mr. Miller is telling me there are factual disputes, and I'm just curious how the delivery was accomplished, and what the evidence would look like for entrustment, Mr. Eller.

I do think there's some factual issues

here.  I don't think I can decide this as though it was a summary judgment motion right now.  And so we have a concern for timing.

Now, Mr. Eller, if I say that this needs to go to evidentiary hearing, are you agreeing this joins in with the mass of matters to be determined all concurrently?

MR. ELLER:  I can't do that, Judge, because I don't want to be pulled into the factual circumstances of others that may not be applicable to our particular circumstances.

I would also -- if the Court has ruled, I don't continue arguing, but in this particular circumstance the Court has absolutely no evidence before it whatsoever, by affidavit or otherwise. The only evidence before the Court is the affidavit that I submitted.  The other situation --

THE COURT:  But this is not an evidentiary hearing.  All Mr. Miller has to do is convince me that there might be contrary evidence, and now I have a dispute.  If you want to go through the bother of filing a summary judgment motion, you can do that.

MR. ELLER:  The contrary evidence that he's offered doesn't change the conclusion under the

Page 23

statute, is what I would argue, Judge.  Whether it was delivered and undelivered somehow, it was in the possession of Karma of Palm Beach to deliver to my client.  Therefore, the statute applies.  And he's not cited a case, and neither can he cite a case, because it doesn't exist, that states that my client's status as a dealer changes the requirement under the statute, because it doesn't.

THE COURT:  I could swear we had argument on exactly that issue at a previous hearing, and I thought I had been convinced that the status of the buyer as a dealer made a difference.

Mr. Miller.

MR. MILLER:  That is correct, Judge.  And I think that it was actually -- I think it was Mr. Breslin who may have argued at one of the earlier hearings addressing the fact that he argued that there's a difference between a dealer buying it as a merchant versus an end user.  And that's why you've ruled in regards to certain end users that are not reselling the product, and this is a reseller of the same product.

THE COURT:  Okay.  So can anybody tell me what the basis for that was?  Because I do not remember.  This is a statutory provision?  Maybe

Mr. Shraiberg will shed some light on it.

Mr. Shraiberg.

MR. SHRAIBERG:  I think it dealt with the evidentiary issue of what is the ordinary course. There was a difference between an ordinary course of a consumer walking into a dealership versus what is the ordinary course, in this specific instance, of this debtor purchasing its inventory.  I believe that Mr. Miller on numerous occasions has said, "We are definitely an operating debtor.  We have been doing this for a period of time."

And the ordinary course analysis will be, well, what were you doing over that period of time, versus an individual walking into a showroom and purchasing a car.

THE COURT:  I don't remember the applicable law, though.  Mr. Eller is telling me that he wins, and that I don't need to figure out whether there was a delivery, because clearly his client's seller had possession of the vehicle, because they literally delivered it.

Excuse me.  They handed over control of the vehicle, and it was taken away on a flat bed, to be more specific, and ended up on the west coast, apparently.

So, Mr. Miller, what facts are in dispute in that regard, any?

MR. MILLER:  I'm not sure.  When you say --

THE COURT:  I'm asking for facts that are in dispute.  Do I need to have an evidentiary hearing?

MR. MILLER:  Yes.

THE COURT:  Why?

MR. MILLER:  We need an evidentiary hearing to determine whether or not this is an ordinary course buyer that gets that defense under the statute.  The case law -- it's not the statute that determines what ordinary course buyer is.  It's the case law that defines that.  And the question becomes whether or not an ordinary course buyer -- and there are certain subsets in there that Mr. Eller would have to satisfy to establish that their interest was superior to the debtor.

And by the way, this goes to the claims of FVP, Hi Bar and Franklin, if, in fact, they cannot establish those standards, we're still litigating this very issue with FVP, Franklin and Hi Bar, because they're going to assert an interest in that vehicle, as well, because it was a vehicle that was

purchased by the debtor from Karma of Palm Beach.

THE COURT:  Okay.  Hold on just a moment.

I notice that no one else responded to these motions.  Is there any other party who takes an interest in this particular vehicle?  I'm hearing deafening silence.

Mr. Shraiberg?

MR. SHRAIBERG:  Yes.  Well, under all circumstances, we believe that a vehicle would be subject to either a lien of FVP, Franklin or Hi Bar.  So I don't think that there's an issue of ownership as to the three secured creditors.  It would be whether it's subject to our lien.

THE COURT:  So you're saying it might be subject to your client's lien, assuming the debtor wins on this motion?

MR. SHRAIBERG:  Well --

THE COURT:  Do you have a position on this motion?  That's what I'm asking.

MR. SHRAIBERG:  No.  As of this moment, we do not.  We are not objecting.

THE COURT:  You're not objecting.  And so in your view, Mr. Eller could win, you're not saying he does win, you're just saying you're not opposing it?

Page 27

MR. SHRAIBERG:  Exactly.

THE COURT:  Okay.  And Mr. Miller is telling me that there's a legal reason why Mr. Eller doesn't win, although you did not outline that in your response.  You gave me facts that you thought were different from what was described, and Mr. Eller is telling me it doesn't matter if you're right, you're not right, because his client actually has the vehicle.

So it was entrusted to their seller, to the extent necessary, to permit his client to receive the vehicle and take it away.  And therefore, it boils down to a legal issue.

Will that be your argument, Mr. Eller?

MR. ELLER:  That is correct, Judge.  It's not a factual issue, it's a legal issue that has not been presented.

THE COURT:  So one more time, Mr. Miller. What factual dispute is there?

MR. MILLER:  The factual dispute would be, if you apply the legal standard of ordinary course, what facts would they have in support of that position?  For example, is there a duty to request a copy of the title, to look at it and determine whether or not there was an interest in that

Page 28

vehicle's title?  Would they have had to pull the registration with the State of Florida to determine if there was a lien or otherwise?

THE COURT:  Those sound like legal issues.

MR. ELLER:  And the title was not issued until two weeks after my client took possession.

THE COURT:  So if they had checked at the time they took possession, title would have been in the name of, Mr. Eller?

MR. ELLER:  It would have been in the name of the prior owner, Judge, an individual.

THE COURT:  Because it was probably just endorsed in the meantime.

MR. ELLER:  Correct.

THE COURT:  Which means even if they had such a duty, Mr. Miller, it wouldn't matter.

MR. MILLER:  I think it depends on -- I don't have the title in front of me.  I didn't pull that up.  It depends on where that title was issued, was it a Florida title or was it an out-of-state title.

UNIDENTIFIED SPEAKER:  Florida title from Miami.

MR. MILLER:  I didn't finish.

If it was a Florida title --

UNIDENTIFIED SPEAKER:  I'm sorry.  I apologize.

THE COURT:  Issued apparently after Mr. Eller's client obtained physical possession of the vehicle, having paid what they perceived as their seller.

MR. MILLER:  Again, if the title was issued in Florida -- let's assume that the title that was issued eventually to the debtor, the predecessor title was a Florida title, according to Mr. Eller.  That title, if Mr. Zankl was in possession of it, you were provided a clean copy showing the endorsement to his client, to whomever, Karma or Excel.  If he didn't have that, then how would he have been able to sell the vehicle, with Road Rich having no notice of another interest?

For example, I think this was a car that came, I want to say --

THE COURT:  I think I've heard enough today.

Mr. Miller, I want you to file a new response to this motion, explain to me two things; A, why you believe the law supports you, and B, exactly what facts are in dispute.  I want the response to have a separate section that is entitled

Page 30

Facts in Dispute, that has independently lettered or numbered paragraphs that specifically says what facts are relevant that remain in dispute.  And then Mr. Eller will reply to that, and I'll decide whether I need a further hearing.  Understood?

MR. MILLER:  Thank you, Judge.

THE COURT:  How much time do you need to do that?

MR. MILLER:  One moment.  I have to look at my calendar, Judge.

I believe I could have something to the Court by the 9th.

THE COURT:  And then after that date, Mr. Eller, for you?

MR. ELLER:  So that was November 9th?

THE COURT:  Right.

MR. ELLER:  Judge, if we can have ten days, off the top of my head, that works.

THE COURT:  Sure.  And then the 19th. I'll do a brief order.

Let me take note for the record.  No one else is objecting to this motion.  And so in my view, there are no other parties to this matter. There are only two.  There's Mr. Eller's client and there's the debtor.

Page 31

I'm not currently thinking that I'll want to combine this with the existing adversary proceeding, even if I believe an evidentiary hearing is required.

Anything else on that one?

MR. SOFTNESS:  Judge, I gently want to differ.  We rely on the debtor to assemble the debtor's alleged assets or (unintelligible), and I think -- we were in communication with debtor's counsel.  We knew he was objecting.  I don't think there's a head count concept there.  If he's objecting and he wins and this car becomes property of the estate, then it may be subject to our lien.

THE COURT:  Sure.  You're not objecting right now, and if I set an evidentiary hearing you won't be participating.

MR. SOFTNESS:  I understand that.  I don't agree with it, but I understand.

THE COURT:  That's all I care about.  I just want to know who I have to keep track of for this particular motion.

MR. SOFTNESS:  If I could just say, in the event the debtor should win, we are not eclipsed from then asserting whatever rights we might have.

THE COURT:  I didn't say that.  I didn't

say that.

MR. SOFTNESS:  Okay.  That's all I wanted to make clear.

THE COURT:  My job is to resolve ECF 143. If I need to have a hearing on it, an evidentiary hearing, so be it.  If not, I enter an order.  And I've asked the only parties who have seen fit to argue the matter to address the relevant law and what facts are in dispute.

If I determine, based on what I rule is the relevant law, that there are no facts in dispute, then I will simply rule on the matter. Otherwise, I'll set it for an independent evidentiary hearing, in which the parties will be Mr. Miller's client, the estate, and Mr. Eller.

MR. SOFTNESS:  Okay.

THE COURT:  I just want to know what the universe is.  I have a big case here with a lot of people involved, and I'm trying to keep track for me and the clerk, who we will be looking to to get to a resolution of this matter.  I think I've just decided that.

Are we done with the main case?  I think so.

(Thereupon, the hearing was concluded.)

Page 33

CERTIFICATION


STATE OF FLORIDA:

COUNTY  OF  DADE:


I, HELAYNE F. WILLS, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were taken by electronic recording at the date and place as stated in the caption hereto on Page 1; that the foregoing computer-aided transcription is a true record of my stenographic notes taken from said electronic recording.

WITNESS my hand this 7th day of November, 2022.


_____
HELAYNE F. WILLS
Court Reporter and Notary Public
In and For the State of Florida at Large
Commission No:  HH157788  Expires 8/2/2025