**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re:                                                                       Chapter 11

AUTO WHOLESALE OF BOCA, INC.
                                                                              Case No. 22-15627-EPK
            Debtor.

                                                           /

**MOTION TO COMPEL ABANDONMENT AND TURNOVER OF TITLE TO**
**2021 ROLLS ROYCE CULLINAN VIN# ENDING IN 4097**

Edward Brown, by and through undersigned counsel, and pursuant to 11 U.S.C. § 554, files this motion for the Debtor's abandonment of the title to the 2021 Rolls Royce Cullinan VIN# Ending in 4097, and turnover of the title.  Brown and his wife are the owners of the vehicle, which they purchased from Excell Auto Group, Inc., and have been in possession of the vehicle ever since their purchase. The Debtor, at most, has bare legal title, which should be abandoned and turned over to the Browns.  In support of this Motion, Brown states as follows:

**FACTUAL BACKGROUND**

1.      To provide some context for the transaction at issue, Brown owned a 2019 Rolls Royce Cullinan ("2019 Cullinan"), which was titled in his name and was used by his wife.  In mid-2020, Brown transferred the 2019 Cullinan to Excell as a trade-in to be applied towards the future purchase of another Cullinan for his wife.[1]

---

[1] Notably, others in this bankruptcy proceeding, and the adversary proceeding, have repeatedly made the allegation that Brown never obtained title in his name to any vehicles he drove and instead exclusively drove "inventory" of Excell.  Such allegation is self-serving and crucial to their purported claim of liens.  However, the 2019 Cullinan is one of many examples that show the falsity of this allegation.  *See infra* note 2 for another such example.

*See* Declaration of Edward Brown ¶¶ 4–7 attached hereto as **Exhibit 1** ("Brown Dec.").

2. On March 26, 2021, Excell purchased a Black Badge edition 2021 Cullinan VIN #SLATV8C09MU204097 ("2021 Cullinan") from a California dealership, iLusso. Attached as **Exhibit 2** is a copy of the title and assignment for the 2021 Cullinan, dated March 26, 2021, from iLusso to Excell. The title assignment reflects the odometer reading of the vehicle as 173 miles. *Id*.

3. The same day, the principal of Excell, Scott Zankl, advised Brown that the 2021 Cullinan was available for sale, sent pictures of the 2021 Cullinan to Brown, and asked Brown if he wanted to purchase the vehicle for his wife. Brown Dec. ¶ 5. After reviewing pictures, Brown agreed to buy the 2021 Cullinan. *Id*.

4. On or about March 31, 2021, the 2021 Cullinan was delivered to Brown and his wife. Brown Dec. ¶ 6, Ex. B-C. Around the time of the delivery, a purchase agreement for the sale of the 2021 Cullinan between Excell, as seller, and the Browns, as buyer, was executed. Brown Dec. ¶ 7, Ex. C. The terms of the purchase agreement, dated April 1, 2021, reflected a purchase price of $400,000, that the 2019 Cullinan was traded-in as partial consideration for the purchase, and that the balance due after the trade-in allowance was $122,812.88. *Id*.

5. At the time that Brown purchased the 2021 Cullinan, Excell owed Brown money from the previous sales of his vehicles, including a million dollars from the sale of Brown's La Ferrari Aperta.[2] *Id*. Accordingly, the balance due

---

[2] The La Ferrari Aperta was also titled in Brown's name prior to Excell's sale of such vehicle.

under the purchase agreement for the 2021 Cullinan was paid by money that Excell owed to Brown from such previous sales. *Id.*

6. After the Browns purchased the 2021 Cullinan, the 2021 Cullinan was registered in Brown's name, Brown put his personal license plate from his prior vehicle on the 2021 Cullinan, and Brown insured the 2021 Cullinan on his insurance policy. Brown Dec. ¶ 9-10 Exs. D, E, and F.

7. Brown expected that the 2021 Cullinan would be properly titled in his name, just as the 2019 Cullinan had been titled in his name. Brown Dec. ¶ 11. Indeed, the transaction documents for the 2021 Cullinan included an application for title to be put in the names of the Browns. *Id.*, Ex. G.

8. However, when Brown went to renew his registration for the 2021 Cullinan, the DMV advised him that there was a problem with his title. Brown Dec. ¶ 13. By this point, Excell had already filed for bankruptcy and Brown was not able to get the title corrected. *Id.*

9. The title to the 2021 Cullinan was not listed as property of the Excell estate, and Excell apparently claimed no ownership of the vehicle. *See* Case No. 22-12790-EPK, ECF 36.

10. Soon, it became apparent that Debtor was claiming to own the title to the 2021 Cullinan, and the records for the State of Florida reflected that Debtor was the named owner on the certificate of title.

11.    The deal jackets of the 2021 Cullinan produced by the Trustee of the Excell estate reflect a convoluted series of purported transfers <u>after</u> the vehicle was sold to the Browns, including:

a.    An undated Wholesale Order where Excell purchased the vehicle *from Debtor* with no odometer reading, attaching an invoice dated May 18, 2021 from Debtor to Excell (with no indication how the Debtor acquired it from Excell);

b.    A Wholesale Order from Excell to Karma Palm Beach dated November 1, 2021 with the (clearly false) *identical odometer reading* of 175 miles as when Excell sold the vehicle to the Browns seven months earlier; and a title reassignment dated November 1, 2021, whereby Excell reassigned the title to Karma, again, reflecting the (false) odometer reading as 175 miles; and

c.    An *undated* title reassignment whereby Karma reassigned the title to Debtor, with *no odometer reading*.

Copies of the foregoing documents are attached as **Composite Exhibit 3** hereto.

12.    The foregoing series of transactions, all of which purportedly occurred when the 2021 Cullinan was never in the possession of any of these dealerships, is presumably the source of Debtor's claim to the title of the 2021 Cullinan, which it listed on its schedules, and on its plan, with a value of $1.00.[3]

---

[3] The 2021 Cullinan is also one of the vehicles subject to the adversarial proceeding before this Court.  *See* Adv. Pro. No. 22-01218 (ECF 120, 121).

13.     Neither Debtor, Excell, nor Karma had possession of the 2021 Cullinan after the Browns bought the vehicle, and neither Excell nor Karma ever received authority to sell the vehicle from its rightful owners, the Browns.  Brown Dec. ¶ 12.

## ARGUMENT AND MEMORANDUM OF LAW

Under Florida law and bankruptcy law, including 11 U.S.C. § 554, and as further detailed herein, the Court should compel Debtor to abandon the 2021 Cullinan title to the Browns because Excell sold the vehicle to the Browns, and such sale transferred Excell's entire interest in the vehicle, and valid title, to the Browns. The fact that Excell improperly failed to transfer the certificate of title to the Browns, and instead attempted to transfer the certificate of title to Karma, who then attempted to transfer the title to Debtor, is irrelevant under Florida law, as Excell no longer had any interest to transfer.  Debtor has only bare legal title, with no beneficial interest, and the court should compel Debtor to abandon the bare legal title to the Browns.

## A.     Governing Law

Florida statutory and case law govern the determination of the Debtor's interest in the 2021 Cullinan.  *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).  Once the nature and extent of the Debtor's interest in the 2021 Cullinan is determined under state law, federal bankruptcy law dictates to what extent that interest is property of the estate.  *In re Lawrence*, 251 B.R. 630, 642 n.11 (S.D. Fla. 2000), *aff'd*, 279 F.3d 1294 (11th Cir. 2002) (citing *Bavely v. United States* (*In re Terwilliger's Catering Plus, Inc.*), 911 F.2d 1168, 1172 (6th Cir. 1990).

**B.      Valid Title Passed to the Browns Upon Their Purchase**

"A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."  Fla Stat. § 672.204(a).  It is a well-established principle of Florida law that an enforceable contract requires (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms.  *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014).

Here, the requirements of a contract under Florida law were clearly met.  On March 26, 2022, Excell, through Zankl, offered to sell the 2021 Cullinan to Brown, who agreed to buy it.  Brown Dec. ¶ 5.  The same day, Excell acquired title to the 2021 Cullinan from another dealership, iLusso, *see* Ex. 2, and on March 31, 2022, Excell delivered the vehicle to the Browns. Brown Dec. ¶ 6.  Excell further evidenced the sale by preparing a written purchase agreement, which was accepted and signed by the Browns.  Brown Dec. ¶ 7.  The consideration provided for the purchase was the 2019 Cullinan as a trade in, plus a setoff of debt that Excell owed to Brown.  *Id.*  The written purchase agreement provided that, as a cash transaction, it was binding once accepted by the dealer's authorized representative. Brown Dec. Ex. C, p. 2, ¶ 13.  The purchase agreement reflects acceptance by the dealership and is signed by the sales manager. *Id.* at p. 1.

The contract for sale of the 2021 Cullinan to the Browns contains, by default, a warranty of that title conveyed from Excell was good, and the transfer rightful. *See* Fla. Stat. § 672.312.  And, documents from the Excell Trustee evidence that

Excell did, in fact, have title to the 2021 Cullinan as of March 26, 2021, and was able to transfer this title to the Browns. *See* Ex. 2.

Under Florida law, title to goods are transferred upon delivery, unless otherwise agreed, and regardless of the documents of title being delivered at a later date. *See* Fla. Stat. § 672.401(2); *In re Aquamarine USA, Inc.*, 330 B.R. 280, 284 (Bankr. M.D. Fla. 2005) (Briskman, J.); *Palm Beach Auto Brokers, Inc. v. DeCarlo*, 620 So. 2d 250, 252 (Fla. 4th DCA 1993). Accordingly, Excell's title to the 2021 Cullinan was transferred to the Browns upon delivery of the vehicle to the Browns. Brown Dec. ¶ 6, Ex. B. And, Excell transferred valid title to the 2021 Cullinan to the Browns *regardless* of the fact that certificate of title was not transferred at that time to the Browns. While Florida's motor vehicle statutes require a certificate of title to transfer *marketable* title to a motor vehicle, such statutes do not affect the transfer of *valid* title in a motor vehicle. *Stroman v. Orlando Bank & Tr. Co.*, 239 So. 2d 621, 623 (Fla 4th DCA 1970).

After the sale of the 2021 Cullinan to the Browns, Excell was required, by statute, to transfer the certificate of title to the Browns upon their purchase of the vehicle. Fla. Stat. § 319.23(6)(a). As the Browns later discovered, Excell failed to transfer the certificate of title to them. However, while certificate of title is evidence of ownership, it is not a requirement. *See In re Kalter,* 292 F.3d 1350, 1360 (11th Cir. 2002). It is well established under Florida law that a dealership's failure to apply for certificate of title in the names of the purchasers does not affect the transfer of *valid* title to such purchasers. *See e.g., Motor Credit Corp. v.*

7

*Woolverton*, 99 So. 2d 286, 290 (Fla. 1957) ("it is settled law in this jurisdiction . . . that the failure of the purchaser to obtain the title certificate at the time of sale does not prevent the passage of title from the seller to the buyer."); *Correria v. Orlando Bank & Tr. Co.*, 235 So. 2d 20, 24 (Fla. 4th DCA 1970) ("the failure of the purchaser to obtain the title certificate at the time of the sale does not prevent the passage of title from the seller to the buyer"); *Florida Dept. of Corr. v. Blount Pontiac-GMC, Inc.*, 411 So. 2d 930, 932 (Fla. 1st DCA 1982).

Accordingly, after a dealership transfers valid title of a vehicle to a purchaser, and despite retention of the certificate of title by the dealership, the dealership has no interest to transfer to anyone else, and its attempts to do so are null and void. *See Stroman*, 239 So. 2d at 623. In *Stroman*, the court held that the dealership's attempt, *after* the dealership had sold the vehicle to a purchaser, to use such vehicle's certificate of title as collateral for a loan was "a nullity." *Id.* The dealership no longer had interest in the vehicle that it could subject to a lien, and accordingly, the lender could not acquire a security interest in the vehicle. *See id.* The "general principle [is] that no one can confer a better title than he has in personal property unless some principle of estoppel operates to bar a claim under an otherwise better title." *Id.* at 623. *See also Dicks v. Colonial Fin. Corp.*, 85 So. 2d 874, 876 (Fla. 1956) ("In the absence of some intervening principle of estoppel, no one can convey better title than he has, and conversely, in the absence of some such intervening right, one cannot claim a better title than he, in fact, receives.")

Applying *Stroman* here, after Excell delivered valid title to the Browns by virtue of the sale and delivery of the 2021 Cullinan to them, Excell no longer had any interest in the vehicle to transfer. Just as in *Stroman*, the Browns reasonably relied on the dealer, Excell, to complete the proper transfer of the certificate of title, and under Florida law, and it was Excell's duty to transfer the certificate of title to the Browns. *See Stroman*, 239 So. 2d at 623; Fla. Stat. § 319.23(6)(a). Excell failed to perform its duty to transfer the certificate of title. However, under Florida law, this dereliction of duties did not bestow upon Excell the ability to transfer valid title to the 2021 Cullinan to anyone else, after having already transferred such title to the Browns. If Excell could not transfer valid title to Karma, then likewise, Karma could not transfer valid title to Debtor under the principle that no one can confer a better title than he has in personal property absent intervening principles of estoppel. *See Stroman*, 239 So. 2d at 623; *Dicks*, 85 So. 2d at 876.

Nor is there any basis to apply any intervening principle of estoppel here against Brown. Brown never entrusted the vehicle to Excell or Zankl for sale, or took any other actions that could conceivably clothe Excell with the authority to sell the vehicle. *Cf. Carlsen v. Rivera*, 382 So. 2d 825, 826 (Fla. 4th DCA 1980). Rather, these circumstances are apt for the application of the other general principle that "'when one of two persons must suffer through the fraud of a third person, the one who made it possible for the fraud to be perpetrated must bear the loss.'" *Correria*, 235 So. 2d at 25. Here, Karma, and then Debtor, apparently ignored the fact that the 2021 Cullinan was *not* in the possession of Excell, and in doing so, turned a

9

blind eye to the likelihood that the vehicle had already been sold by Excell (which it had, 7 months earlier).  And, if Karma or Debtor had reviewed the registrant on the Florida DMV, they could have seen that Brown had registered the vehicle, thus negating any pretense that Excell actually still owned the vehicle.

In sum, after Excell transferred its interest in the 2021 Cullinan to the Browns, which interest it had obtained from iLusso, Excell had nothing but bare title left to transfer.  Excell was obligated to transfer such certificate of title to the Browns.   But regardless, any apparent attempts by Excell to resell the 2021 Cullinan to Karma, who then attempted to resell to the Debtor, transferred only what Excell had: bare legal title, not valid title or any right to possession.

**C.    The Court Should Order Debtor to Abandon the Certificate of Title to the Browns**

Where prepetition, the debtor only holds only bare legal title to property, the estate only acquires bare legal title without any equitable interest in the property. *In re Halabi*, 184 F.3d 1335, 1337 (11th Cir. 1999).  *See also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.8, 103 S. Ct. 2309, 2314, 76 L. Ed. 2d 515 (1983) ("The legislative history indicates that Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title.")

In the context of vehicles specifically, "if a debtor has only bare legal title to a vehicle, then such vehicle is not property of the estate." *In re Petersen*, 323 B.R. 512,    517    (Bankr.    N.D.    Fla.    2005)    (Killian,    Jr.,    J.)    (citing *In re Smith,* 73 B.R. 211 (Bankr. N.D. Fla. 1986)).  A certificate of title, without

beneficial ownership of the vehicle, is of inconsequential value to an estate and subject to abandonment, under 11 U.S.C. § 554, to the true owner of the vehicle. *In re Crabtree*, 39 B.R. 713, 718 (Bankr. E.D. Tenn. 1984) (Bare, J.). "The legislative history of § 554(a) explains that this section authorizes abandonment to 'any party with a possessory interest in the property abandoned.'" *In re Serv.*, 155 B.R. 512, 514 (Bankr. E.D. Mo. 1993). *See also In re Mejia*, 576 B.R. 464, 470 (Bankr. S.D.N.Y. 2017). Since the Browns have a possessory interest in the 2021 Cullinan, as explained above, the Court should order that the title to the 2021 Cullinan be abandoned, and turned over to the Browns.

**WHEREFORE**, Edward Brown requests this Court enter an Order directing the Debtor to abandon the title to the 2021 Cullinan, turn over such abandoned title to the Browns, and for all other relief that is just and proper.

Dated: December 7, 2022

Respectfully submitted,

By:    /s/ *Amanda Klopp*
D. Brett Marks, Esq.
Florida Bar Number: 099635
Email: brett.marks@akerman.com
Eyal Berger, Esq.
Florida Bar Number:  011069
Email:  eyal.berger@akerman.com
Amanda Klopp, Esq.
Florida Bar Number: 124156
Email: amanda.klopp@akerman.com
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL  33301-2999
Tel:: 954-463-2700
Fax: 954-463-2224

*Counsel for Edward Brown*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 7, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

_/s/ Amanda Klopp_
Amanda Klopp, Esq.