**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**
www.flsb.uscourts.gov

In Re:

AUTO WHOLESALE OF BOCA, LLC,          Case No.: 22-15627-EPK

    Debtor.

_____/

**THE FVP PARTIES' SUPPLEMENTAL HEARING MEMORANDUM**
**ON NOVEMBER 28, 2022 EVIDENTIARY HEARING**

COME NOW FVP Opportunity Fund III, LP, a Delaware limited partnership (the "FVP Fund"), FVP Investments LLC, a Delaware limited liability company ("FVP Investments"), and FVP Servicing, LLC, a Delaware limited liability company ("FVP Servicing") (collectively, the "Adversary Plaintiffs"), and hereby file their Supplemental Memorandum on the issue delineated by the Court as to whether salesperson Jonathan Martin (Martin) had the corporate authority, either actual or apparent, to bind Karma of Palm Beach, Inc., (Karma) to a binding contract with Derek Stephens ("Mr. Stephens") on March 11, 2022 when Martin signed the Consignment Agreement [DE 114-1] (the "Consignment Agreement") purportedly on behalf of Karma.

<u>Introduction</u>

For the reasons stated herein, it is respectfully suggested that based on the record before the Court and well settled law, that Martin did not have *actual authority* to execute the Consignment Agreement with Mr. Stephens without preapproval from a supervising Karma principal; and that the record is clear that no such approval was either requested or given in this case. As such, no actual authority was either requested, granted, or existed.

It is further suggested that, on these facts and on the record before the Court and well settled law, that Martin did not have *apparent authority* to execute the Consignment Agreement with Mr. Stephens, because the record is clear that no principal or supervising officer made any statements or representations to Mr. Stephens that Martin had the

authority to execute the Consignment Agreement, or any other agreement for that matter. The evidence was undisputed that Martin did not draft or execute the transaction documents for Karma and had no say whatsoever in the ultimate decision to require terms in addition to those in the written documents that were ultimately directed to be included in the transaction by Scott Zankl.

In sum, the record establishes that Martin had no decision making authority as to price or terms and no signatory authority to bind the company to the transaction documents themselves. The record likewise establishes that the decision not to permit Mr. Stephens to leave with the Lamborghini was completely outside of his authority.

What the record does establish is that *after* Scott Zankl and Mr. Stephens made an agreement modifying the transaction documents, and *after* Mr. Stephens paid $250,000.00 to receive Zankl's permission to leave the lot with the Lamborghini that day; Martin made a unilateral decision to sign a Consignment Agreement without either requesting permission from anyone in authority at Karma, or notifying anyone in authority at Karma about the document and without anyone in authority at Karma making any representations to Mr. Stephens whatsoever about the Consignment Agreement.

Jonathan Martin:

Q. Did anyone else at Karma know that consignment agreement was being executed at the time?
A. There may have been a copy in the paperwork. I'm not aware if there was or if there isn't. There may have been.
Q. As it relates to the $250,000 payment made by Mr. Stephens, was this consignment agreement signed before or after that payment was made?
A. After.

*Hearing Transcript Page (Tr. P.) 43*

Q. Now, you already testified that you did not  ask Mr. Zankl whether or not you could execute a consignment agreement, correct?
A. I never asked him if I could execute --
Q. All right. So --
A. -- a consignment agreement.
Q. -- when you signed this consignment agreement document, you did that on your own? You made --
A. Yes, sir.
Q. You made that decision?

A. Yes, sir.

*Tr. P. 65*

Q. After you signed this consignment agreement, who did you give it to?
A. I gave a copy to Mr. Stephens, and then there was probably a copy in the Deal.
Q. I'd like you not to speculate.
A. Well, I don't know if they put the paperwork in the Deal.
Q. Who is "they"?
A. The office.

*Tr. P. 65*

(Transcript submitted herewith as Exhibit A)

<u>Actual Authority</u>

Martin testified that he was permitted in the past to sign a consignment agreement. This was a technically accurate statement but misleading. Scott Zankl ("Zankl"), Karma's principal officer, testified that Martin was permitted to sign a consignment agreement only with the approval of Zankl or one of the other officers or supervisors at Karma, and only after an inspection process. *Tr. P. 250, 252.*

As this Karma dealership only dealt with extraordinarily expensive automobiles for which the dealership was responsible for any cars in its possession, it would defy common business sense and logic that a non-salaried, commissioned salesperson like Martin would have the authority to unilaterally decide whether a car is taken in on consignment by the dealership without a principal's approval. ("A sales guy can't just pull a car in off the street and bring it on consignment without approval, and the car had to have an inspection done.") *Tr. P. 252.*

That said, if the Court finds that Martin had the *actual* authority to unilaterally enter into a consignment agreement regardless of approval of a principal or supervisor at the dealership, then the Court need read no further.

<u>The Law on Apparent Authority</u>

"Under Florida law, actual authority is not necessarily a precondition of an agency relationship." *Borg-Warner Leasing, a Div. of Borg-Warner Acceptance Corp. v. Doyle Elec. Co., Inc.*, 733 F.2d 833 (11th Cir. 1984). "An agent's authority need not be conferred

in express terms, but may be implied or apparent under justifying circumstances." *All Seasons Condo. Ass'n, Inc. v. Patrician Hotel, LLC*, 274 So. 3d 438 (Fla. 3d DCA 2019).

"It is well-established that an agent's authority may be inferred from acts, conduct and other circumstances." *Bd. of Tr. of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Markets, Inc.*, 622 F.3d 1335 (11th Cir. 2010). An employee does not bind the employer/principal simply from the employee's actions alone, even if the employee "ingeniously create[s] an appearance of authority by their own acts." *Taco Bell of California v. Zappone,* 324 So.2d 121 (Fla. 2d DCA 1975).

Critically, "'[a]pparent authority' does not arise <u>from the subjective understanding of the person dealing with the purported agent</u>, nor from appearances created by the purported agent himself; instead, '<u>apparent authority' exists only where the *principal* creates the appearance of an agency relationship</u>." *Izquierdo v. Hialeah Hosp., Inc.*, 709 So. 2d 187 (Fla. 3d DCA 1998) (emphasis added). The rationale for this requirement is that a company "permit[ing] an appearance of authority […] justif[ies] a third party's reliance upon the appearance of authority." *Roessler v. Novak*, 858 So. 2d 1158 (Fla. 2d DCA 2003).

<u>Either Zankl or Other Supervisors / Principals at Karma Would Have Had to Express to Mr. Stephens that Martin had the Authority to Bind the Dealership for Apparent Authority to Exist.</u>

For an employee or agent of a company to bind the principal in contract based on the doctrine of "apparent authority," there must be "(1) <u>a representation by the *purported principal*</u>; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance upon such representation." *Lensa Corp. v. Poinciana Gardens Ass'n, Inc.*, 765 So. 2d 296 (Fla. 4th DCA 2000) (emphasis added).

Apparent authority arises, under Florida law, *only when the principal creates the appearance of an agency relationship. Wolicki-Gables v. Arrow Intern., Inc.,* 641 F. Supp. 2d 1270 (M.D. Fla. 2009), aff'd, 634 F.3d 1296 (11th Cir. 2011); *MeterLogic, Inc. v. Copier Solutions, Inc.,* 126 F. Supp. 2d 1346 (S.D. Fla. 2000). In other words, apparent agency to bind a principal to the actions of an agent is conferred based *upon the principal's*

*actions or statements*, not the agent's actions. *UATP Management, LLC v. Barnes,* 320 So. 3d 851 (Fla. 2d DCA 2021).

Therefore, apparent authority is legally the authority that a principal *knowingly tolerates or permits by the principal's actions or words and holds the agent out as possessing. Marchisio v. Carrington Mortgage Services, LLC*, 919 F.3d 1288 (11th Cir. 2019) (applying Florida law); *Clayton v. Poggendorf*, 237 So. 3d 1041 (Fla. 4th DCA 2018); *Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19 (Fla. 2d DCA 2011); *Florida State Oriental Medical Ass'n, Inc. v. Slepin*, 971 So. 2d 141 (Fla. 1st DCA 2007); *Roessler v. Novak,* 858 So. 2d 1158 (Fla. 2d DCA 2003); *Taco Bell of California v. Zappone*, 324 So. 2d 121 (Fla. 2d DCA 1975); *H. S. A., Inc. v. Harris-In-Hollywood, Inc.,* 285 So. 2d 690 (Fla. 4th DCA 1973).

Accordingly, to attempt to establish that the Consignment Agreement was based on apparent authority, the record would need to establish that either Zankl or some other actual authorized representative at Karma with signatory authority (principal) to bind the company *represented to Mr. Stephens that Martin had the authority to execute a document* that bound the company. And, that Mr. Stephens relied on the Karma principal's representations regarding that authority – not Martin's representations about his own authority.

<u>The Record Facts Material to the Actual or Apparent Authority Issue:</u>

The evidence at the hearing of November 28, 2022 established the following:

1. Martin was a commissioned salesperson for Karma.

2. Martin testified that he sold Mr. Stephens the Ferrari 2013 Ferrari 458 Spyder (the "Ferrari") in March of 2021.

3. Mr. Stephens testified that he agreed to a trade transaction, namely the Ferrari for that certain Lamborghini (the "Lamborghini"), on or about March 11, 2022. *Tr. P. 123.*

4. Mr. Stephens testified that he notified Martin about the transaction and appeared at Karma in the early evening of March 11, 2022, and that when he appeared at Karma all of the transaction documents for the buy / sell /

with trade, which included a purchase agreement, power of attorney, trade pack, etc. (excluding the Consignment Agreement, these documents are referred to as the "Transaction Documents"), were prepared and already executed by a principal at Karma.

5. None of the Transaction Documents were executed by Jonathan Martin but were executed by an authorized principal of Karma.

6. Mr. Stephens executed the Transaction Documents at that time. *Tr. P. 121, 122.*

7. There were no Transaction Documents that did not show a trade in of the Ferrari for the Lamborghini. *Tr. P. 70, 172*

8. There is no evidence in the record that either Zankl or any principal at Karma notified Mr. Stephens that Martin had the authority to execute any of the Transaction Documents or any other agreement that would bind Karma.

9. There is no evidence in the record that either Zankl or any principal at Karma notified Mr. Stephens that Martin had the authority to execute the Consignment Agreement on behalf of Karma.

10. There is no evidence in the record that Mr. Stephens inquired from either Zankl or any principal at Karma whether Martin had the authority to execute any of the Transaction Documents, or the Consignment Agreement.

11. After the transaction documents were executed, Martin advised Mr. Stephens that Zankl advised Martin that Mr. Stephens could not leave Karma with the Lamborghini until Mr. Stephens spoke to Zankl on the phone. *Tr. P. 124*

12. Zankl advised Mr. Stephens that unless Mr. Stephens made a payment of $250,000.00, which overrode the terms of the executed Transaction Documents, that Mr. Stephens could not leave Karma with the Lamborghini.

13. After Mr. Stephens hung up from this conversation with Zankl, Mr. Stephens wrote a check for $250,000.00 and tendered the check to Karma.

14.   Martin signed the Consignment Agreement after the payment of $250,000.00 was made to Karma.

15.   Martin signed the Consignment Agreement without requesting permission from Zankl or any authorized officer at Karma to sign the agreement, and did so on his own. *Tr. P. 43, 65.*

16.   Zankl testified unequivocally that Martin did not have the authority to execute a Consignment Agreement without prior permission from Zankl or another Karma supervisor; that no such authority was given in this case by anyone at Karma; that Zankl did not authorize a consignment agreement in this transaction; and that a consignment agreement was completely inconsistent with the executed Transaction Documents. *H. Tr. 233-248.*

Conclusion:

It is respectfully suggested that the Court cannot make a finding on this record that Martin had actual authority to execute a binding consignment agreement on behalf of Karma of Palm Beach, Inc.

Likewise, it is respectfully suggested that the Court cannot make a finding on this record that any principal of Karma made any representations to Mr. Stephens that could objectively be interpreted to suggest that Martin had the apparent authority to execute a binding consignment agreement on behalf of Karma.

It is respectfully suggested that the evidence of record establishes the contrary.

It is suggested that the record evidence establishes that Jonathan Martin was simply a salesperson with no authority to bind the dealership to any agreements whatsoever other than the occasional consignment agreement and only then with express preapproval.  There was no such preapproval sought or granted as to the Ferrari at issue in this case. There were no representations whatsoever made to Mr. Stephens regarding Jonathan Martin's authority to bind the company.

As such, Mr. Stephens has failed to meet his legal burden under the doctrine of apparent authority as the record is devoid of the lynchpin requirements of "(1) a representation by *the purported principal*; and (2) reliance on that representation by (Mr.

Stephens); " *See Lensa Corp. v. Poinciana Gardens Ass'n, Inc.*, 765 So. 2d 296 (Fla. 4th DCA 2000).

Dated: December 14, 2022

For the FVP Adversary Plaintiffs

| | |
|---|---|
| Jerrell A. Breslin, Esq.<br>Baron, Breslin & Sarmiento<br>The DuPont Building<br>169 East Flagler Street, #700<br>Miami, Florida 33131<br>Phone: (305) 577-4626<br>E-mail:  JB@RichardBaronLaw.com<br>EService@RichardBaronLaw.com<br><br>By:     s/ Jerrell Breslin<br>Jerrell Breslin, Esq.<br>Fla Bar No: 269573 | David Softness, Esq.<br>David R. Softness, P.A.<br>201 S. Biscayne Blvd., Ste 2740<br>Miami, Florida 33131<br>Phone: (305) 341-3111<br>E-mail:david@softnesslaw.com<br><br>By:     s/  David R. Softness<br>David R. Softness, Esq.<br>Florida Bar No. 513229 |
| Jonathan Noah Schwartz, Esq.<br>Florida Bar No. 1014596<br>Jonathan Schwartz Law PLLC<br>10200 NW 25th Street, Suite 111<br>Doral, FL 33172<br>Tel.: (973) 936-2176<br>E-mails:jschwartz@jonschwartzlaw.com<br>JNSEsquire@gmail.com | |

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that; I electronically filed the foregoing was served via Email electronic transmission under Local Rule 7026 -1 upon those parties and attorneys who are registered with the Court to receive notifications in this matter but not filed of record and by email upon: the office of the US Trustee by serving Heidi A. Feinman, Esq. at Heidi.A.Feinman@usdoj.gov, upon the Subchapter 5 Trustee by serving Linda Leali, Esq. at lleali@lealilaw.com, upon the Debtor/Defendant by serving James B. Miller, Esq. at bkcmiami@gmail.com, upon Karma or Broward, Inc. and Karma of Palm Beach, Inc. by serving Harry Winderman, Esq. at harry4334@hotmail.com, upon Ed Brown by serving Brett Marks, Esq., at brett.marks@akerman.com, and upon Hi Bar by serving Jarret P.

Hitchings, Esq., at jarret.hitchings@bclplaw.com for Hi Bar.

/ s/ Jerrell Breslin
Jerrell Breslin, Esq.