UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                                Case No. Case No. 9:22-bk-15627
                                                                      Chapter 11

AUTO WHOLESALE OF BOCA, LLC


          Debtor.

_____/

### DEREK STEPHENS' POST-TRIAL BRIEF

At the conclusion of trial on November 28, 2022, the Court asked the parties to submit briefs on the issue of whether the Debtor, Auto Wholesale of Boca, LLC ("AWB") obtained title to the Ferrari superior to any right of Derek Stephens ("Stephens")[1] [D.E. 240]. Accordingly, this memorandum first examines whether AWB is a "good faith purchaser" within the meaning of section 672.403(1). Because AWB failed to prove that it held a security interest in the Ferrari, and also failed to prove that Karma of Palm Beach, Inc. ("Karma") acquired even voidable title, AWB is not a "good faith purchaser."

Second, this memorandum answers whether AWB is entitled to the "entruster's rights" under section 672.403(2). It is not, because a party satisfying debt is not a "buyer in the ordinary course of business" as a matter of law.

---

[1] AWB did not raise this issue, until prompted by the Court during closing arguments. Neither its written objection to Stephens' Claim nor any other filing in this Court argues good faith purchaser or buyer in the ordinary course. Nonetheless, AWB appeared to argue during closing argument that Article II of the U.C.C.. Thus, this memorandum examines the issue raised by the Court in the context of Chapter 672, Florida Statutes.

Third, AWB was on notice of Stephens' interest in the Ferrari, and was aware of other "red flags" that should have caused AWB to undertake an investigation of Stephens' interest in the vehicle.  AWB's failure to do so is another reason it does not qualify as a "good faith purchaser" or a "buyer in the ordinary course of business."

## I. AWB IS NOT ENTITLED TO "GOOD FAITH PURCHASER" PROTECTION

The first question is whether AWB is a "good faith purchaser" within the meaning of section 672.403(1), Florida Statutes, which provides,

> (1)  A purchaser of goods acquires all title which her or his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though:
>
> (a)  The transferor was deceived as to the identity of the purchaser, or
>
> (b)  The delivery was in exchange for a check which is later dishonored, or
>
> (c)  It was agreed that the transaction was to be a "cash sale," or
>
> (d)  The delivery was procured through fraud punishable as larcenous under the criminal law.

As explained below, AWB does not qualify for protection under section 672.403(1) because (1) it failed to establish a valid security interest in the Ferrari, (2) Karma did not acquire the Ferrari under a "transaction of purchase" and (3) Karma failed to acquire even voidable title.

2

**A. AWB Failed to Prove that It Had a Valid Security Interest**

A secured party who acquires property in satisfaction of a debt may qualify as a good faith purchaser under section 672.403(1),[2] but has the burden of establishing compliance with the statute. *See J.C. Equipment, Inc. v. Sky Aviation, Inc.*, 498 S.W.2d 73, 77 (Mo. App. 1973) (burden of establishing good faith purchaser lies with party asserting position); *Dweck v. Pacificorp Capital, Inc.*, 1995 WL 552745 (S.D.N.Y. 1995) (same).  In this instance, AWB utterly failed to demonstrate that it was legally entitled to take the Ferrari in exchange for debt.

AWB contends it acquired the Ferrari by swapping it for "antecedent debt" owed by Excell Auto Group, Inc. ("Excell") to AWB, and guaranteed by Karma.  Tr. Trans. 211:7-8 and 21-25, 212:17-20, 214:15-20, and 215:8-16.  The only record evidence relating to the purported "antecedent debt" is the Unconditional Guarantee (the "Guarantee") between Karma, its two owners, and AWB.  *See* Stephens Ex. 16 and Tr. Trans. 230:1-7.  The Guarantee, which makes no mention of the Ferrari, attaches to a November 11, 2021 promissory note from Excell.  But the note was not introduced as evidence at trial.

Whether Karma is responsible for Excell's debt is one question, and the Guarantee may well answer it.  How Excell's debt is collateralized (*i.e.*, whether the Ferrari was included) is another question altogether.  Without the promissory note, there is no way for this Court to determine whether the Ferrari was AWB's

---

[2] Conversely, in the context of entruster's rights, a party who acquires property to satisfy debt may not qualify as a "buyer in the ordinary course of business."  *See* § II(A), *supra*, at p. 10.

3

"Collateral."  The Guarantee defines "Collateral" as "property taken as security for payment of the Note or any guarantee of the Note."  On the record before the Court, it is unknowable just what property was "taken as security."

Perhaps even more to the point, if Stephens' Ferrari was acquired by a Zankl entity, it was Karma, not Excell.  And yet there is debt instrument from Karma in evidence.  The promissory note would have to include language collateralizing Karma's inventory.  But there's no evidence of that either.  More problematic still, given the date of the promissory note (long, long before the March 11 transaction here at issue), the promissory note would have to include language embracing after-acquired property to capture the Ferrari as collateral.  While such language may be commonplace in debt instruments, there is no evidence that the operative instrument includes the required language.  In the end, absence of the promissory note at trial is fatal to AWB's attempt to invoke the "good faith purchaser" rule.

It is well-settled that a security interest must be evidenced by a writing granting an interest in the collateral at issue.  *In re Crandall*, 346 B.R. 220, 222 (Bankr. M.D. Fla. 2006) (citing Fla. Stat. §§ 679.1091; 679.2031; 319.27(2)).  Florida Statutes § 679.2031 provides, in relevant part,

> (1) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral . . . .
>
> (2) … a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>
> (a) Value has been given;
>
> (b) The debtor has rights in the collateral or the power to

4

transfer rights in the collateral to a secured party; and

(c) One of the following conditions is met:

1. The debtor has authenticated a security agreement that provides a description of the collateral ... [or]

2. The collateral ... is in the possession of the secured party under § 679.3131 pursuant to the debtor's security agreement[.]

None of the factors are met in this instance.  The Guarantee, in and of itself, grants no interest in the Ferrari whatsoever and therefore AWB's "good faith purchaser" defense fails. *See In re Bennett*, 208 B.R. 582, 584 (Bankr. S.D. Fla. 1997) ("a security interest is not properly perfected without an underlying security agreement or debt instrument."); *In re Mullen,* 4 B.R. 748 (Bankr. M.D. Fla. 1980) (under Florida law, a security interest cannot be perfected when there was no underlying written security agreement or debt instrument).

By omitting the operative debt instrument from evidence while also invoking "good faith purchaser" protection, AWB asks this Court to do that which it cannot—rewrite the Guarantee to encompass the Ferrari. *See Four Ambassadors Master Ass'n, Inc. v. Vice City Marina, LLC*, 298 So. 3d 1181, 1183 (Fla. 3d DCA 2020) ("it is not the job of the courts to "improve" the terms of a valid agreement, but instead merely to enforce those terms"); *Hill v. Deering Bay Marina Ass'n,* 985 So.2d 1162, 1166 (Fla. 3d DCA 2008) ("courts cannot rewrite contracts by attaching requirements that were not included in the agreement."); *Quinerly v. Dundee Corp.*, 159 Fla. 219, 31 So. 2d 533, 534 (1947) ("courts are powerless to rewrite contracts or interfere with the freedom of contracts or substitute its judgment for that of parties to

MAURO LAW | 1001 YAMATO ROAD, SUITE 401 | BOCA RATON, FLORIDA 33431 | 561.202.1992 | WWW.MAUROLAWFIRM.COM

the contract in order to relieve one of the parties from apparent hardships of an improvident bargain"). The Guarantee must be read and applied only as it is written.

Even if there was an evidentiary basis upon which to conclude that AWB had a security interest in the Ferrari, the Guarantee did not empower AWB to "swap" the Ferrari for Excell's debt. Karma only became responsible for the debt of the borrower, Excel, upon "written demand" from AWB. Stephens Ex. 16. But there is no evidence of a written demand before the Court. The Guarantee also lists the actions AWB may take to enforce the Guarantee against Karma, but makes no mention of the "self-help" tactic employed by AWB. Nothing in the Guarantee permits AWB to simply grab the Ferrari as it did, even assuming it had been acquired by Excell, and nobody even makes that claim here.

In the end, AWB had the burden of proving that it was a "good faith purchaser." Because the basis of its claim is that it swapped the Ferrari for antecedent debt, AWB was required to prove that it had a security interest in the Ferrari. However, AWB did not present the operative security instrument at trial, hitching its wagon instead to the inapposite Guarantee (which notably was not even listed as evidence by AWB). For this reason, AWB failed to prove that it is a good faith purchaser and, as a result, may not avoid Stephens' interest in the Ferrari.

MAURO LAW | 1001 YAMATO ROAD, SUITE 401 | BOCA RATON, FLORIDA 33431 | 561.202.1992 | WWW.MAUROLAWFIRM.COM

### B. Karma Never Acquired Even Voidable Title to the Ferrari

    1.  <u>No Transaction of Purchase Occurred</u>

Pursuant to section 672.403, Florida Statutes, a transferor with "voidable title" may "transfer a good title to a good faith purchaser for value."  For this to occur, the good faith purchaser must acquire the goods through a "transaction of purchase." *Touch of Class Leasing v. Mercedes-Benz Credit of Canada, Inc.*, 591 A.2d 661, 667 (N.J. App. Div. 1991).  The phrase "transaction of purchase" means that goods are delivered to a subsequent seller with intent that "the subsequent seller [] become the owner of the goods."  *Id.*   Without a transaction of purchase however, the acquiring party "possesses void title", as explained in *Touch of Class*:

> [I]f a party merely converts the goods to his own use after obtaining possession through some manner other than a transaction of purchase, he does not possess even voidable title. Rather, he possesses void title and therefore, cannot pass good title even to a good faith purchaser for value.

*Id.*

The concept of voidable title is fundamentally rooted in "voluntary conduct on the part of the property's true owner." *Exec. Cars, LLC v. W. Funding II, Inc.*, 826 S.E.2d 370, 372 (Ga. 2019).  In this instance, the evidence does not demonstrate that Stephens intended to give Karma title to the Ferrari.  Nor is there any evidence that Stephens consented to Karma swapping his car to satisfy debt, let alone for non-party Excel Auto's debt to AWB.  If a "transaction of purchase" is "limited to those situations in which a third party . . . [intends] for the subsequent seller to become the owner of

the goods," this case fails the test because there is no record evidence that Stephens intended for Karma to become the owner of his Ferrari.

There is another insurmountable problem here for AWB. Karma never held title to the Ferrari and therefore no "transaction of purchase" could have occurred. *See Touch of Class*, 591 A.2d 661 at 667; *Am. Standard Credit, Inc. v. Nat'l Cement Co.*, 643 F.2d 248, 268 (5th Cir. 1981) (to obtain even voidable title, seller must acquire goods through transaction of purchase); Fla. Stat. 672.403(1). AWB's purported title was issued on April 6, 2022, and reflects that the immediately prior issuance of title occurred on July 20, 2021—the day Stephens purchased the Ferrari (*See* Ex. AWB 2A, 4A). In other words, title to the Ferrari never passed to Karma.[3] AWB's theory of the case then is that title passed from Stephens to AWB. This is not "transaction of purchase" and accordingly, Karma did not acquire even voidable title as is required to invoke good faith purchaser protection. Fla. Stat. § 672.403(1); Tr. Trans. at 357:8-9 ("[i]f [the Ferrari] didn't sell, then the debtor doesn't own it").

Consequently, AWB could not acquire good title from Karma pursuant to section 672.403(1), and is therefore not insulated from Stephens' rights. It was AWB's burden to establish "good faith purchaser" protection, including proof that it acquired

---

[3] Scott Zankl testified that title to the Ferrari was never supposed to be given to AWB at all. *Id.* at 257:25-258:1-6; s*ee* 260:7-11 It is also undisputed that Karma did not pay Stephens for the Ferrari nor did it afford any credit for the Ferrari towards the Lamborghini. Tr. Trans. at 40:1-3; 132:25-133:5, 256:18-20, 265:11-21.

MAURO LAW | 1001 YAMATO ROAD, SUITE 401 | BOCA RATON, FLORIDA 33431 | 561.202.1992 | WWW.MAUROLAWFIRM.COM

title through a "transaction of purchase." *See J.C. Equipment,* 498 S.W.2d at 77; *Dweck,* 1995 WL 552745.  AWB failed to carry its burden.

    2.  <u>The Transaction was Unconscionable and Against Public Policy</u>

Karma's purported acquisition of the Ferrari is also void because it is unconscionable.  Courts may decline to enforce unconscionable contracts in which a party overreaches to gain an unjust and undeserved advantage over another.  *See* Fla. Stat. § 672.302; *Basulto v. Hialeah Auto.,* 141 So. 3d 1145, 1157–58 (Fla. 2014). The doctrine is tailormade for this case.

Unconscionability requires that a contract be both procedurally and substantively unconscionable. *Id.*  As the *Romano* court noted,

> Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.

*Id.* (internal citations and quotations omitted).  "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."

The March 11 transaction is loaded with both.

On the procedural front, March 11 was a trainwreck.  There were two separate purchase agreements with contradicting terms (Ex. AWB 5A), a subsequent consignment agreement with an integration provision superseding the purchase agreements (Ex. Stephens 2), and a purported oral agreement made by cellular phone between Karma and Stephens whereby Stephens would pay $250,000 cash to acquire

9

a car for which he had purportedly also traded his Ferrari, all done close to or after closing time, when the dealership did not have funds to properly transact business. Tr. Trans. at 249:3-13. The substantive problem with the transaction is similarly glaring: Karma received $480,000 for a $250,000 car (Tr. Trans. at 249:17-19), rendering this transaction one that is "so outrageously unfair as to shock the judicial conscience." *Prieto v. Healthcare & Ret. Corp. of Am.,* 919 So. 2d 531, 533 (Fla. 3d DCA 2005).

Indeed, any transaction in which a consumer is made to pay twice for a car should be invalidated as against public policy. To characterize such a transaction as the proper basis of a "good faith purchase" would be an absurd result, and contrary to public policy. Under Florida law, a contract that violates public policy is void. *See Collectarius Fin., LLC v. Statebridge Co., LLC*, No. 8:18-CV-137-T-24 AEP, 2018 WL 807041, at *2 (M.D. Fla. Feb. 9, 2018); *Neiman v. Provident Life & Accident Ins. Co.*, 217 F. Supp. 2d 1281, 1286 (S.D. Fla. 2002) ("The rationale of the rule is that the judiciary as an institution will not provide aid to enforce an obligation that arises from an illegal contract.").

Validating a consumer's purchase of a $250,000 car for $480,000 contravenes public policy. Stripping Stephens of his ownership interest in the Ferrari without compensation on these facts contravenes public policy. Rewarding Zankl by reducing his personal obligation of Karma's debt under these circumstances contravenes public policy. Allowing AWB and Karma to benefit from the lending system they established for the purpose of trading and selling cars to consumers contravenes public policy.

*See Correria v. Orlando Bank & Trust Co.*, 235 So. 2d 20, 25 (Fla. 4th DCA 1970) (party who "made possible the perpetration of a fraud and should rightly bear the loss" and "to inflict the plaintiff with such a burden does violence to the principles of justice."). To inflict Stephens with the loss that the Zankls, Excell, Karma, Farache, and AWB caused would indeed do violence to the principles of justice.

## II.   AWB IS NOT ENTITLED TO ENTRUSTER'S RIGHTS

The next question is whether AWB is a "buyer in the ordinary course of business" entitled to "entruster's rights." Under section 672.403(2), if Stephens entrusted the Ferrari with Karma, then Karma was empowered to pass valid title to a "buyer in the ordinary course of business," even if Stephens retained title:

> Any entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in ordinary course of business.

AWB cannot qualify as a buyer in the ordinary course because transactions for the satisfaction of debt, like the one at issue here, are not within the purview of the statute. At trial, AWB's representative testified that AWB acquired the Ferrari to satisfy "antecedent debt":

> Q.   When you look at Debtor's 3, what does it say was the price of the Ferrari?
>
> A.   $230,000.
>
> Q.   Who paid that?
>
> A.   That's—we not pay for it, because that's—we have agreement, that's antecedent debt from Karma. . . . We don't pay for this. It's antecedent debt or swap against something else.

MAURO LAW | 1001 YAMATO ROAD, SUITE 401 | BOCA RATON, FLORIDA 33431 | 561.202.1992 | WWW.MAUROLAWFIRM.COM

Tr. Trans. at 211:3-22.

In defining "Buyer in the ordinary course of business" section 671.201(9), Florida Statutes provides,

> "Buyer in ordinary course of business" does not include a person who acquires goods in a transfer in bulk or as security for or in total or partial satisfaction of a money debt.

AWB's purported "swap" of antecedent debt for the Ferrari does not comply with section 671.403(2). "Where one of two innocent parties must suffer from the wrongful act of a third person, the one whose conduct enabled the third party to do the wrong must suffer; **but this principle has no application to the collection of an old debt due by the wrongdoer to one of the innocent parties**." *Johnson v. Robinson*, 203 F.2d 135, 136 (5th Cir. 1953) (emphasis added). Because AWB claims it took the Ferrari to satisfy debt, it is not a buyer in the ordinary course and, therefore, not entitled to "entruster's rights." *Chrysler Credit Corp. v. Malone*, 502 S.W. 2d 910, 913 (Tex. App. 2d. 1973) (where "transfer of the car [was] for or in partial satisfaction of a money debt that the transferor then owed to the transferee of the car", purchaser "was not a 'buyer in the ordinary course of business' . . . and transaction whereby [purchaser] bought the car therefore did not extinguish the plaintiff's security interest in the car"); *First Nat'l Bank v. Proceeding Ayres Aviation Holdings, Inc.*, 342 B.R. 104 (M.D. Ga. 2006) (where debtor accepted aircraft engine in exchange for the forgiveness of debt, "the Court can come to no other conclusion that that Debtor was not a buyer in the ordinary course of business"); *Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A.*, 2002 WL 31174470 (S.D.N.Y. Sept. 26, 2002)

("Courts have consistently held that purchases offset by antecedent debt do not provide "new value," and thus do not qualify as purchases in the ordinary course of business under U.C.C. § 9-301(1) that would take free of a security interest").

Simply put, according to the statutory definition of "Buyer in the ordinary course of business", AWB is may not invoke "entruster's rights" to avoid Stephens' interest in the Ferrari.

### III.   AWB DID NOT ACT IN "GOOD FAITH" AND IS THEREFORE IS NOT ENTITLED TO PROTECTION AS A "GOOD FAITH PURCHASER" OR A "BUYER IN THE ORDINARY COURSE OF BUSINESS"

AWB may not find refuge in any "good faith" defense because it did not act in good faith.  "Good faith" means "honesty in fact and the observance of reasonable commercial standards of fair dealing."  Fla. Stat. § 671.201(20).  Only a purchaser who takes without notice "of outstanding rights of others" or "facts which would place a reasonably prudent person upon inquiry as to the title the is about to purchase" acts in good faith.  *J.C. Equip.,* 498 S.W.2d at 76.

AWB had the burden of proving that it was a "buyer in the ordinary course of business without knowledge."  *See id.*; *Lindholm v. Brant*, 2005 WL 2364884 (Conn. Aug. 29, 2005) (party asserting defense of buyer in ordinary course has the burden of proof); *Rogers v. Ricane Enters.*, 930 S.W.2d 157 (Tex. App. 1996) (same).  AWB also had the burden of proving that it was a "good faith purchaser."  *See J.C. Equipment,* 498 S.W.2d at 77 (burden of establishing good faith purchaser lies with party asserting position); *Dweck*, 1995 WL 552745.

AWB offered no evidence of good faith whatsoever.

MAURO LAW | 1001 YAMATO ROAD, SUITE 401 | BOCA RATON, FLORIDA 33431 | 561.202.1992 | WWW.MAUROLAWFIRM.COM

On the contrary, AWB's testimony revealed that it knew exactly what it was doing when it dispossessed Stephens of his Ferrari by physically preventing him from driving away in it.  There is no dispute that AWB knew Stephens claimed the Ferrari belonged to him.  First, Karma salesman Jonathan Martin told AWB on Saturday, April 2 that the Ferrari "was not part of the problem that Mr. Moshe and Scott [Zankl] were having" and that "this is Mr. Stephens' car."  Tr. Trans. at 46:11-20; 47:4-17.  This was actual notice "of outstanding rights of others" in the transaction and should end the "good faith" inquiry.  *See* Fla. Stat. § 671.201(20).

Two days later, on April 4, Mr. Stephens went to Karma to retrieve his Ferrari but AWB blocked his exit with another vehicle.  Tr. Trans. at 139:21-141:12 (Stephens); 212:1-8 (Farache). Tellingly, Farache cavalierly admitted he blocked the Ferrari from leaving because he was told that Stephens claimed he owned it:

> Meantime, John come to me and says move it as fast as you can, the guy thinks he owns it, he's going to be here, and I just block it until the police come . . . .

Tr. Trans. at 214:3-5.  It was not until two days later that AWB purportedly acquired title to the Ferrari, at which time AWB was well aware of Stephens' rights.  *See J.C. Equip.,* 498 S.W.2d at 76 (only a purchaser who takes without notice "of outstanding rights of others" or acts in good faith).

Even if AWB had been unaware of Mr. Stephens, the circumstances leading to its confiscation of multiple cars, including the Ferrari, were jaw-droppingly bizarre and should have caused AWB to thoroughly investigate ownership of the Ferrari before grabbing it and hiding the key.  *Id.* (only a purchaser who takes without notice

14

of "facts which would place a reasonably prudent person upon inquiry as to the title the is about to purchase" acts in good faith). Farache testified that, sometime prior to April 1, his lawyer advised him that "the Feds" were coming "to raid Karma Palm Beach" and to "pick up Mr. Zankl and Mrs. Zankl." Tr. Trans. at 216:22-217:12; 227:8-15. What a remarkable thing learn! That should have been reason enough for Farache to keep his distance, but instead, he sprung into action, seizing what he believed was Karma's inventory, apparently to cut off "the Feds" from interfering with his ability to be paid on Excell's loan.

Next, while he believed "the Feds" were about to knock down Karma's door, Farache maintains that Mrs. Zankl told him "I don't want you to get hurt by my husband, crying, what he does to you guys. I want you to have all the vehicles equal to your debt." Tr. Trans. at 213:8-11. Upon learning this utterly alarming news, AWB did not look to avoid "the Feds", or to cooperate with them. Instead, AWB gathered titles and physically took dozens of the Zankls' and Karma's vehicles in avoidance of what Farache believed to be a federal investigation that would culminate in the Zankls being detailed. AWB confoundingly accepted this most bizarre invitation, from a borrower, to thwart a federal investigation. It goes without saying, no definition of "good faith" provides shelter for AWB's conduct in light of AWB's knowledge of the catastrophe it believed was about to unfold at Karma. *See Walbrun v. Babbitt*, 83 U.S. 577 (1872) (one who buys under suspicious circumstances takes with full knowledge of infirmity of title).

MAURO LAW | 1001 YAMATO ROAD, SUITE 401 | BOCA RATON, FLORIDA 33431 | 561.202.1992 | WWW.MAUROLAWFIRM.COM

It cannot be forgotten that AWB and Karma had a uniquely close relationship. The record reflects not only a lengthy business history between them, including as lender/borrower and as landlord/tenant, but also that the principals' families and staffs were *very* well acquainted. Tr. Trans. 206:7-12 (Farache testifying that he had a "very good relationship" with "all of the employees of" Excell, Karma of Palm Beach and Karma of Broward); 213:5-12 (Farache testifying about the 10-year relationship between the Zankls and Faraches). In fact, Farache was so familiar with Karma's staff that he apparently can identify a Karma employee's signature. Tr. Trans. 201:2-6. His testimony about Mrs. Zankl handing over all of the business's assets to save his family from her husband, if one credits the story, demonstrates that AWB's acquisition of the Ferrari was anything but a standard or ordinary commercial transaction. Tr. Trans. at 213:8-11. Simply put, AWB was too close to Karma and the Zankls to claim ignorance of the circumstances in which the operative transaction occurred. *See Monsanto Co. v. Walter E. Heller & Co.,* 449 N.E.2d 993, 1000 (secured party did not act in good faith where it had direct involvement with the operation of the seller entity).

In the end, there is ample evidence, examined above, that AWB knew taking the Ferrari would "violate[] the rights of another person in the goods." *See* Fla. Stat. § 671.201(9); *Trumbull Chevrolet Sales Co. v. Seawright,* 134 So. 2d 829 (Fla. 1st DCA 1961) (only a buyer who takes *without* notice of a consignment may obtain good title as against original owner); *see also J.C. Equipment,* 498 S.W.2d at 76 ("A prospective purchaser has constructive notice of everything the instruments on file show with

16

respect to the chain of title."). AWB's knowledge of Stephens' claim eviscerates any possible protection as a good faith purchaser or a buyer in the ordinary course. *See Fraser v. Lewis*, 187 So. 2d 684 (Fla. 3d DCA 1966) (if purchaser is on notice of outstanding equity, she is not a bona fide purchaser, notwithstanding that she received an instrument conveying title); *Shaw v. Merchants' Nat. Bank*, 101 U.S. 557 (1879) (purchaser who has reason to believe vendor was not owner of goods is not bona fide purchaser).

Although the definition of good faith "by its terms embraces the 'reasonable commercial standards of fair dealing in the trade,' it should not-- and cannot-- be interpreted to permit, countenance or condone commercial standards of sharp trade practice or indifference." *Porter v. Wertz*, 68 A.D.2d 141, 146 (N.Y. 1979). Sharp trade practice and indifference are the very DNA of these transactions. AWB knew Stephens owned the Ferrari and knew Karma was engaged in questionable practices, but took the Ferrari anyway. This transaction may be characterized as a lot of things, but a "good faith purchase" is not one of them.

### CONCLUSION

AWB is neither a good faith purchaser, nor a buyer in the ordinary course of business. It cannot be the latter because satisfaction of debt is expressly excluded from the definition of a buyer in the ordinary course of business. And it cannot be the former, because AWB failed to prove,

- That it had a valid security interest, including, among other things, evidence that Excell's note included after-acquired property;

17

- That Karma obtained the Ferrari through a "transaction of purchase";

- That Karma acquired any title to the Ferrari, let alone "voidable title" as required under the operative rule in order to pass good title to a subsequent purchaser.

Thus, AWB is not even *eligible* for protection under section 672.403.  But even if it satisfied the foregoing mandatory requirements of the governing statute, AWB failed to prove, as it must, that it acted in "good faith"—the *sine qua non* of the defenses examined here.  Rather, its knowledge of not only the peculiar circumstances at Karma when the operative transaction occurred, but of Stephens' claim to the Ferrari affirmatively establishes that AWB acted with unmitigated indifference, which is incompatible with the protections embodied in section 672.403, Florida Statutes.

Respectfully submitted,

**MAURO LAW P.A.**

/s/  C. Cory Mauro
C. Cory Mauro
Florida Bar No.:  384739
Evan D. Appell
Florida Bar No.:  58146
1001 Yamato Road, Suite 401
Boca Raton, FL 33431
cory@maurolawfirm.com
service@maurolawfirm.com
evan@maurolawfirm.com
Telephone: (561) 202-1992
*Counsel for Derek Stephens*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed with the Court by using the Notice of Electronic Mail through the Case Management/Electronic Case Filing to those parties registered to receive electronic notices of filing in this case on December 16, 2022.

**MAURO LAW P.A.**

By: */s/ C. Cory Mauro*
       C. Cory Mauro

Mauro Law | 1001 Yamato Road, Suite 401 | Boca Raton, Florida 33431 | 561.202.1992 | www.MauroLawFirm.com