UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

*In re:*

AUTO WHOLESALE OF BOCA, LLC,     Case No.: 22- 15627-EPK
                                 Chapter 11 Subchapter V

_____Debtor-in-Possession._____ /

## DEBTOR'S MEMORANDUM ON FERRARI 458 SPIDER

Comes Now, the Debtor-in-Possession, Auto Wholesale of Boca, LLC ("Debtor", "AWB" or "DIP"), by and through undersigned counsel and files and serves this instant *Debtor's Memorandum On Ferrari 458 Spider* per this Court's *Order Setting Briefing Schedule On Motion For Turnover Of Ferrari 458 Spider* [ECF No. 240] (the "Briefing Order"), wherein the Court directed briefing on the following two (2) issues only:

I.    Considering Only the Evidence Admitted at the Evidentiary Hearing, Assuming that Mr. Stephens Proved That He Consigned the Ferrari to Karma of Palm Beach, Whether the Debtor Nonetheless Obtained Title to the Ferrari Superior to Any Right of Mr. Stephens?

II.   Whether Jonathan Martin Had Authority, Apparent or Otherwise, to Execute the Consignment Agreement With Mr. Stephens?[1]

Thereupon, the Debtor submits as follows:

## A. EVIDENCE AND TESTIMONY

1. The evidence and testimony presented to the Court was that a certain Ferrari automobile ("Ferrari") was previously owned by Derek Stephens and was repeatedly left at the premises of KPB over several months between the end of the year 2021 through March 11 of 2022 for "consignment" purposes.

---

[1] Debtor is addressing the "consignment" issue only in this Memorandum, but reserves to rebut any brief on the second issue as well as the first issue.

2. Stephens eventually desired to purchase a certain Lamborghini ("Lambo") from KPB, and negotiated the purchase of said Lambo by virtue of agreeing to trade in the Ferrari as a credit toward the purchase price of the Lamborghini. See ECF No.207-5 (Debtor Ex 5A) (the "Purchase Agreements").

3. On March 11TH, 2022, Stephens executed and delivered a Power of Attorney (as well as a purchase agreement reflecting the trade-in of the Ferrari toward the Lambo) thereby surrendering his authority and control over, as well as ownership in, the Ferrari; and, purportedly also executed and delivered a "Consignment Agreement" to KPB. *See* ECF No.'s 207-6 (Debtor Ex. 6A) (the Power of Attorney), and ECF No. 206-1 (Stephens Ex 1) (the "Consignment Agreement")

4. Specifically, Stephens testified that although he initially had entered into the sale of the Ferrari as a trade-in toward the purchase of the Lambo, as the day (March 11, 2022) wore on and edged past 5 p.m. given Stephen's desire to drive the Lambo off the lot of KPB, Stephens agreed to tender a check for $250,000.00 (the "Lambo Check) to KPB so he could so drive the Lambo off the lot, and then purportedly executed and entered into that certain Consignment Agreement for the Ferrari.[2]

5. Jonathan Martin ("Martin"), (a salesman for KPB), in turn, delivered the $250,000.00 check to the office for KPB.

---

[2] Stephens, March 11, 2022, applied with his credit union to have the Ferrari debt transferred to the Lambo. *See* Hrg Tr at p.162, ll. 1-13. That same day, Jonathan Martin, *see infra*, called and confirmed with the credit union that it was sending payment to KPB by the following Monday (March 2022). *See* Hrg Tr at p. 59 ll.1-20; p.85 ll.2-11; p.86 ll.14-21; p.120 l.1; p.125 l.1-5.

6.  In the meantime, that same date, Martin called and confirmed with the credit union in Texas that said credit union was going to send payment to KPB by that following Monday (March14, 2022). *See* n.2 *supra*.

7.  The Lambo Check reflects in the memo section the following language "4 Hold 2017 H." (*see* ECF No.204-4) (FVP Ex 4) and was to be returned to Stephens that following Monday, March 14, 2022, upon receipt by KPB of the monies from the Stephens' credit union. *See* Hrg Tr at p.44 ll.15-19

8.  Stephens testified that he used his company's monies to fund and pay the Lambo Check. *See* Hrg Tr at p.

9.  Both Martin and Scott Zankl testified that the $250,000, represented by the Lambo Check, were to be returned to Stephens upon Stephen's credit union sending payment for the Lambo by that coming Monday (March 14th, 2022).

10. Stephens thereupon removed the Lambo from the KPB lot.

11. However, that same date (March 11, 2022), KPB did deposit and negotiate the $250,000.00 check and did not return the same to Stephens.

12. The Court further heard testimony regarding the change of the "trade-in/purchase" agreement (*i.e.* -- the Ferrari being traded+ in as a credit toward the purchase price of the Lambo) into a "consignment" whereby KPB was authorized to sell the Ferrari for the sum of $230,000.00 or at a price agreed to later.

13. Thereafter, on April 1 and April 2, as testified to by Moshe Farache, the Debtor was directed by Kristen Zankl to remove certain vehicles from KPB – some of which were in partial satisfaction of debts owed by KPB.

14. Included among the vehicles Debtor received the titles and vehicles from KPB was the instant Ferrari, which Debtor credited toward the debt owed by KPB to Debtor, *i.e.*-- in partial satisfaction of a then-existing debt.

15. Debtor, on Saturday, April 2nd, 2022, received from KPB: the endorsed Power of Attorney, a Bill of Sale for $230,000.00, and the endorsed original Title to the Ferrari in favor of Debtor (endorsed April 2nd, 2022).

16. Thereafter, on Monday, April 4th, 2022, Debtor was at the KPB premises taking possession of and removing the Ferrari; and, Stephens appeared and placed himself inside the Ferrari, (while sometimes standing outside of the Ferrari) and refused to leave.

17. Moshe Farache showed Stephens that the title to the Ferrari had already been endorsed and delivered to the Debtor; and, later that afternoon, Stephens departed, along with a post-dated check delivered to him by KPB for the sum of $250,000.00 (which ultimately did not clear).

18. Thereafter, on April 6th, 2022, the Florida Automobile Title was issued anew by the Florida Department of Highway Safety and Motor Vehicles to and in the name of the Debtor -- as the record owner of the Ferrari.

## B.  THE ISSUES AND ARGUMENT:

I.   **Considering Only the Evidence Admitted at the Evidentiary Hearing, Assuming that Mr. Stephens Proved That He Consigned the Ferrari to Karma of Palm Beach, Whether the Debtor Nonetheless Obtained Title to the Ferrari Superior to Any Right of Mr. Stephens?**

19. Assuming *arguendo* the Court found that Derek Stephens ("Stephens") has successfully established his argued-for legal vehicle (no pun intended) for relief, (*i.e* – the subject automobile, Ferrari, was consigned to Karma of Palm Beach ("KPB") by virtue of a last-minute change in the plans of Stephens in acquiring that certain Lamborghini which was originally to be in exchange for the trade-in of the subject Ferrari), then, as a matter of law, the Ferrari is property of the Debtor's Estate.

20. Under Florida law, whether by way of the Uniform Commercial Code or Florida Common law, the Debtor must prevail in this matter.

a.  **<u>Florida Uniform Commercial Code</u>**.

21. Article 9 of the Uniform Commercial Code ("UCC") as adopted in Florida, provides, for relevant purposes that –

**§ 679.1021. Definitions and index of definitions.**

**(1)** In this chapter, the term:

…………

**(t)**  "***Consignment***" means a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale and:

    **1.**  The merchant:

        **a.**  Deals in goods of that kind under a name other than the name of the person making delivery;

        **b.**  Is not an auctioneer; and

        **c.**  Is not generally known by its creditors to be substantially engaged in selling the goods of others;

    **2.**  With respect to each delivery, the aggregate value of the goods is $1,000 or more at the time of delivery;

    **3.**  The goods are not consumer goods immediately before delivery; and

    **4.**  The transaction does not create a security interest that secures an obligation.

………

**(w)**  "Consumer goods" means goods that are used or bought for use primarily for personal, family, or household purposes.

22. In the matter at bar, the evidence reflected that: Stephens delivered the Ferrari to KPB (a merchant who deals in goods of that kind (automobiles)), under KPB's name for re-sale.

23. No evidence was presented reflecting that: KPB was an auctioneer; KPB was generally known by its creditors to be substantially engaged in selling goods of others; or that the Ferrari was used or bought primarily for personal, family or household purposes.

24. The burden of proof to establish the purpose and use of the good is upon the party seeking such relief. *See, e.g, Davenport vs Bates*, 2006 Tenn.App. Lexis 790 (Tenn. Ct. App., December 12, 2006) (Case No. M2005-02052-COA-R3-CV), 2006 WL 3627875 (Tenn. Ct. App., December 12, 2006) (interpreting similar Tennessee UCC provision) ("When a debtor would benefit if the collateral constituted "consumer goods," the debtor has the burden of proving the nature of the collateral."), *citing to and quoting, in part*, 10 Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 9-507:77 (3rd ed. 1999) (*citing Wilmington Trust Co. v. Conner*, 415 A.2d 773, 781 (Del. 1980); *Bundrick v. First Nat'l Bank*, 570 S.W.2d 12, (Tex. Civ. App. 1978))

25. If in fact, this matter is one in which the Court has found a consignment; then, the subject Ferrari is property which could be transferred by KPB to the Debtor free of Stephens' interest because the transaction between Stephens and KPB would have been a "sale or return" under Fla. Stat. Sect. 672.326(1)(b);[3] and, since the transaction was a sale or return consignment, the Ferrari was subject to the claims of the general creditors of KPB. *See, e.g., Furr vs Corvette Experience, Inc.*, 294 B.R. 409 (Bankr. S.F. Fla. 2003).

---

[3] **672.326 provides:** (1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:..(b) A "sale or return" if the goods are delivered primarily for resale. (2) ….Goods held on approval are not subject to the claims of the buyer's creditors until acceptance; goods held on sale or return are subject to such claims while in the buyer's possession.

26. KPB accepted the Ferrari and otherwise did not reject it. *See*, Fl. Stat. Sect. 672.606 (Acceptance)).

27. KPB thereafter (April 2nd, 2022) transferred the Ferrari to AWB in partial satisfaction of an existing debt owed to AWB by KPB.

28. AWB effectively paid KPB for the Ferrari by partially satisfying the existing debt owed to AWB by KPB in accepting the Ferrari.

29. AWB was therefore a purchaser for value of the Ferrari. *See, e.g.,* Fla. Stat. Sect. 671.201(32) ("Purchase" -- means taking by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary transaction creating an interest in property), (33) ("Purchaser" -- means a person who takes by purchase) and 671.211 ("Value" -- a person gives value for rights if the person acquires them… (2) as security for, or in total or partial satisfaction of, a preexisting claim).

30. Therefore, under the Florida UCC, the Ferrari is property of the Debtor's bankruptcy estate because KPB had the authority to transfer the Ferrari to AWB and AWB paid value for the same by partially satisfying the debt owed to AWB by KPB.[4]

### b.  Florida Common Law

31. Under Florida common law, the subject Ferrari is also property of the estate of the Debtor if the Court finds common law consignment.

32. In Florida,"[w]hen one consigns personal property to a dealer in such goods with express or implied authority to sell, or delivers or consigns to another personal property with indicia of ownership, or of authority to sell but with title reserved in the owner until payment of the purchase price, a purchaser who pays value for such goods and gets possession thereof without notice of the terms or condition of the original delivery, consignment or sale obtains a

---

[4] Additionally, Fla. Stat. Sect. 672.403 also provides authority for KPB to transfer the Ferrari to the Debtor free of any interest of Stephens based upon entrustment.

god title as against the original owned which will generally prevail against the latter's reserved title." *Nash Miami Motors Inc. vs Bandel*, 37 So.2d 366 (Fla. 1948).

33. Further, the term "payment" in Florida is not limited to cash in hand, but can include setoff/recoupment and any act that discharges a debt or obligation. *See, e.g., Goble vs Frohman*, 901 So.2d 830 (Fla. 2005)).

34. As set forth above, Stephens placed the Ferrari in the hands of KPB and endorsed a power of attorney for the sale of the Ferrari; and, the title to the same was not only delivered to KPB, but also endorsed by KPB to AWB, along with a bill of sale, and AWB subsequently obtained a new Florida title in favor of AWB after paying value (by way of partial satisfaction of existing debt) to KPB.

35. AWB paid KPB for the Ferrari by partial satisfaction of indebtedness and is therefore a purchaser for value.

36. Hence, under Florida common law, the Ferrari is property of the Debtor and Stephens has no claim to it.

WHEREFORE, Debtor requests that the Court deny all relief to Stephens, determine the automobile is property of this Estate and grant such other and further relief which is equitable and just.

Respectfully submitted on December 16th, 2022.

JAMES B. MILLER, P.A.
***Counsel for Debtor-in-Possession***
19 West Flagler St., Suite 416
Miami, Florida 33130
T. 305.374.0200
F.  305.374.0250
EMAIL: BKCMIAMI@GMAIL.COM

_____/s/_____
JAMES B. MILLER, ESQ.
Fla. Bar no. 9164

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this pleading was served *via* CM/ECF simultaneously with the filing of the same with the Court this even date upon all parties-in-interest of record who are registered to receive such pleading and filings before this Court.

_____/s/_____
JAMES B. MILLER, ESQ.
Fla. Bar no. 9164