**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**
**www.flsb.uscourts.gov**

In re:                                                          Chapter 11

AUTO WHOLESALE OF BOCA, INC.
                                                               Case No. 22-15627-EPK
            Debtor.
                                                    /

**EDWARD BROWN'S OMNIBUS RESPONSE IN OPPOSITION**
**TO CLAIM OBJECTIONS (ECF NOS. 220, 227, AND 229)**

EDWARD BROWN, by and through his undersigned counsel, hereby responds in opposition to the objections to Claim #19-1 ("Claim") filed by Wing Lake Capital Partners a/k/a Franklin Capital Management, LLC and Franklin Capital Funding, LLC ("Franklin Entities") (ECF No. 220), Debtor (ECF No. 227), and the FVP Parties (ECF No. 229).[1]  Claim #19-1 is based on Brown's purchase, possession, and ownership of two vehicles—a Rolls Royce Cullinan and a Lamborghini Urus—in which Debtor has asserted an interest based on Debtor's possession of the certificates of titles.  As briefed herein, Debtor has only bare legal title, obtained wrongfully from the dealerships that sold Brown the vehicles, and Debtor, in fact, has no valid title or equitable ownership interest in the vehicles.  To the extent Debtor has any interest in the vehicles, it is subject to the superior statutory security interest, or equitable lien, of Brown.  Brown's interest in the vehicles is also superior to any alleged interest of the Franklin Entities and FVP Parties, who obtained security interests from the selling dealerships months *after* the vehicles

---

[1] FVP Parties refers to FVP Opportunity Fund III, LP, FVP Investments LLC, and FVP Servicing, LLC.

67895043;2

were sold and delivered to Brown by such dealerships, at which point the dealerships no longer had any equitable interest in the vehicles to grant as collateral. In support thereof, Brown states as follows:

## A. Background on Claim and Vehicles

1. Claim #19-1 ("Claim") details Brown's claims to his ownership of: (1) a 2021 Rolls Royce Cullinan VIN ending in #4097 ("Cullinan"), which Brown purchased from Excell Auto Group Inc. ("Excell"), and (2) a 2021 Lamborghini Urus VIN ending in #2270 ("Urus"), which Brown purchased from Karma of Palm Beach Inc. ("Karma") (collectively, the Cullinan and Urus are referred to as "Vehicles" herein). The claim amount of $919,870.76 is an estimate of the value of Brown's interest in the Vehicles in law and equity, based on the consideration provided by Brown to such dealerships in connection with his purchases of the Vehicles.

2. Debtor's schedules reflect that Debtor has the certificates of title to the Vehicles, and governmental records reflect such titles were put in Debtor's name on March 29, 2022. Debtor has never had possession of the Vehicles. Rather, the Vehicles have both remained in Brown's possession after his purchases, which were months *prior* to Debtor allegedly obtaining the certificates of title.

3. Based on Debtor's alleged claim to the Vehicles, Brown filed the Claim to preserve his interests in the Vehicles under law and equity, and will pursue the Claim only to the extent that the Court denies Brown title to the Vehicles.

4. Debtor's proposed plan treatment of the Claim is that Debtor will abandon the Vehicles if it is determined that Brown has an ownership interest

2

superior to Debtor (ECF No. 196 at 11-12).  The abandonment of any interest in the Vehicles by Debtor will moot the Claim.

5.     The objections to the Claim are, effectively, contesting Brown's right, title and interest to the Vehicles.  Debtor claims to be a buyer in the ordinary course of business and alleges that the Vehicles were purchased by Debtor. (ECF No. 227.) Debtor inaccurately classifies Brown as an "insider" of Excell, despite the fact that Brown was only a customer and lender, and did not hold any ownership interest in Excell.

6.     The objections of FVP Parties and Franklin Entities both claim a superior interest in the Vehicles as secured lenders of Karma and Excell, respectively.[2]  (ECF Nos. 220, 229.)

7.     All of the objecting parties are incorrect.  Brown is the rightful owner of the Vehicles, and assuming arguendo that Debtor somehow obtained ownership, Brown would have a security interest, and equitable interest, in the Vehicles superior to the interests of Debtor, FVP Parties or Franklin Entities.

8.     The factual and legal basis for Brown's claim to each vehicle is outlined below.

**B.     Factual and Legal Basis for Brown's Interest in Cullinan**

9.     As more fully detailed in the pending *Motion to Compel Abandonment and Turnover of Title to the 2021 Rolls Royce Cullinan VIN ending in #4097* (ECF No. 252) ("Turnover Motion"), on or about April 1, 2021, Brown and his wife

---

[2] The objections are duplicative of the allegations and claims filed by such parties in the pending adversary proceeding.  *See* Adv. Pro. No. 22-01218-EPK.

3

purchased the Cullinan, and provided consideration in the form of a trade-in vehicle (an earlier model year Cullinan), and a setoff of debt owed to Brown from Excell. Brown and his wife executed a purchase agreement evidencing the transaction, accepted delivery of the Cullinan, registered and insured the Cullinan, and placed Brown's personal license plate on the Cullinan.  Excell's records show that the sale of the Cullinan to the Browns in April 2021 was reported to the State of Florida and taxes were paid on such sale.  A copy of the sales tax record showing the sale to the Browns is attached as **Exhibit A** hereto.  Unbeknownst to Brown, Excell failed to transfer the certificate of title for the Cullinan to Brown, and the title was instead allegedly transferred to Debtor.

10.     Per the legal authority cited by Brown in his Turnover Motion, which is incorporated by reference herein, although Debtor claims to have "bought" the Cullinan (apparently from Karma), such is an legal impossibility as Excell and Karma had no ability to transfer what they did not own.  After transferring valid title to the Cullinan to Brown, Excell could not transfer any valid title to the Cullinan to anyone else.  Any attempted transfers (and successive transfers) were only successful to transfer what Excell actually owned: bare legal title (*i.e.*, the certificate of title) with no equitable ownership.  Pursuant to 11 U.S.C. § 541(d), because the transferees of the certificate of title (including Debtor) received only bare legal title, no other equitable interest in the vehicle became part of the estate.

11.     Nor can any of the creditors of Excell or Karma (including FVP Parties and Franklin Entities) claim any interest in the Cullinan as inventory of the

4

67895043;2

dealerships, given that their security interests could not attach to a vehicle that neither Excell nor Karma had any interest in, after selling it to Brown. *See Stroman v. Orlando Bank & Tr. Co.*, 239 So. 2d 621, 623 (Fla 4th DCA 1970) (holding that the dealership's attempt, *after* the dealership had sold the vehicle to a purchaser, to use such vehicle's certificate of title as collateral for a loan was "a nullity.")

12.     Furthermore, even if the Court found that the sale of the Cullinan to the Browns was not legally effective, the Browns would claim an equitable interest in the vehicle. Under Florida law, a person may be determined the equitable or beneficial owner of an asset regardless of nominal title. *See In re Trujillo*, 626 B.R. 59, 74 (Bankr. S.D. Fla. 2019). In determining who is the equitable owner, "[t]he most critical factor usually is control", and a second factor is "who is receiving the benefits of the asset." *Id.* Such doctrine of equitable ownership has been applied in the context of vehicles. *See Christensen v. Bowen*, 140 So. 3d 498, 501 (Fla. 2014) (in the context of dangerous instrumentality, "a titleholder may avoid vicarious liability if the titleholder demonstrates that he or she does not have the authority to exert any dominion or control over the vehicle and therefore is not a beneficial owner of the vehicle"). Considering such factors, the Browns are certainly the equitable or beneficial owner of the Cullinan, as the only persons who have controlled the vehicle, and received the benefit of the vehicle, since their purchase in April 2021.

5

13.    The Browns would also have an equitable interest in the Cullinan by virtue of a resulting trust.  Resulting trusts can often found where a party has paid the purchase price but not yet received legal title.  "Where, for any reason, the legal title to property is in one person under such circumstances as to make it inequitable for him to have the beneficial interest, equity will imply a trust in favor of the person entitled to the beneficial interest. It must appear from the entire transaction that there is an obligation on the part of the holder of the legal title to hold it for the benefit of someone else." *Frank v. Eeles*, 13 So. 2d 216, 218 (Fla. 1943) (citations omitted).  This type of resulting trust is "founded on the presumed intention of the parties that the one furnishing the money should have the beneficial interest, while the other held the title for convenience or for a collateral purpose."  *Id*.  Here, the Browns paid the purchase price, registration fees, all required maintenance of the vehicle, insurance on the vehicle, and typical storage expenses related to storing the vehicle.  The Browns' payment of such expenses shows the presumed intention that the Browns had the beneficial interest in the vehicle.  And, from the entire transaction, it is clear that Excell had an obligation to transfer the title of the Cullinan to the Browns, including, *inter alia,* by the purchase agreement and Excell's report of the sale to the taxing authorities of the State of Florida.  Although Excell (wrongfully) retained the paper title, equity will imply a resulting trust in favor of the Browns.

14.    Brown owns the Cullinan, and has a superior interest in the Cullinan, senior to any interest asserted by the Debtor, FVP Parties, or Franklin Entities.

6

67895043;2

**C.    Factual and Legal Basis to Brown's Interest in Urus**

15.    On August 6, 2021, Karma acquired the Urus, and on the same day, Brown paid $482,000 by wire transfer to Karma to purchase the Urus.  A copy of Karma's title to the Urus is attached as **Exhibit B**, and a copy of a bank statement evidencing the wire transfer is attached as **Exhibit C**.  On August 16, 2021, Karma shipped the Urus to Brown's Colorado residence, where Brown received and accepted delivery of the Urus.  Karma's delivery record is attached as **Exhibit D**. Brown's purchase of the Urus was complete upon the delivery of the Urus to him. *See* Fla. Stat. § 672.401(2).  Although no written agreement was required as payment was "made and accepted" and the goods were "received and accepted," *see* Section 672.201(3)(c), Florida Statutes, an executed purchase agreement further evidenced the August 2021 sale.  A copy of the purchase agreement is attached as **Exhibit E**.

16.    Under Florida law, title to goods are transferred upon delivery, unless otherwise agreed, and regardless of the documents of title being delivered at a later date.  *See* Fla. Stat. § 672.401(2); *In re Aquamarine USA, Inc.*, 330 B.R. 280, 284 (Bankr. M.D. Fla. 2005) (Briskman, J.); *Palm Beach Auto Brokers, Inc. v. DeCarlo*, 620 So. 2d 250, 252 (Fla. 4th DCA 1993).  Accordingly, Karma's title to the Urus was transferred to Brown upon delivery of the vehicle to Brown.

17.    After transferring valid title to the Urus to Brown, Karma could not transfer any valid title to the Urus to anyone else.  Any attempted transfers (and successive transfers) were only successful to transfer what Karma actually owned:

7

67895043;2

bare legal title (*i.e.*, the certificate of title) with no equitable ownership. Pursuant to 11 U.S.C. § 541(d), because the transferees of the certificate of title (including Debtor) received only bare legal title, no other equitable interest in the vehicle became part of the estate.

18.    While Brown intended to apply for documents of title (*i.e.*, a certificate of title) to be issued in his name, just as he had for the Urus he previously owned, Scott Zankl, principal of Karma, persuaded him not to. Unbeknownst to Brown, Zankl apparently sought the delay of titling customers' vehicles to attempt to use such titles in his fraudulent scheme. Brown was yet another victim of Zankl's fraud. However, as stated above, regardless of any documents of title, valid title was transferred upon delivery, and Brown received valid title to the Urus upon his acceptance of the delivery of the Urus. *See* Fla. Stat. § 672.401(2).

19.    Furthermore, Brown took title to the Urus free of any security interest of Debtor or any of the other creditors of Excell or Karma (including FVP Parties and Franklin Entities). Brown <u>gave value</u> for the Urus and <u>received delivery</u> of the Urus without knowledge of any security interest of any other party, and before any party perfected any security interest in Excell's or Karma's inventory. The Urus constituted a "good" bought by Brown primarily for personal, family, or household purposes. Accordingly, pursuant to Sections 679.3171 (2) and 679.320(2), Florida Statutes, Brown took the Urus free of any such security interest of Debtor, FVP Parties, Franklin Entities, or Karma.

20.    While Debtor has claimed that it purchased the Urus, such purchase would be legally impossible to transfer valid title to Debtor, because Karma had already transferred legal title to Brown and could not transfer what it no longer owned. *See e.g., Stroman v. Orlando Bank & Tr. Co.*, 239 So. 2d 621, 623 (Fla 4th DCA 1970); *Dicks v. Colonial Fin. Corp.*, 85 So. 2d 874, 876 (Fla. 1956).  Brown further incorporates herein the legal authorities cited in Turnover Motion.

21.    Assuming *arguendo* that Debtor somehow obtained valid title to the Urus, such title would be subject to the overriding statutory security interest of Brown.  Section 672.312, Florida Statutes, creates an implicit warranty of title that "title conveyed shall be good, and its transfer rightful" and "goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge."  If Karma, in fact, failed to transfer valid title to the Urus to Brown in exchange for his purchase price, the implicit warranty of title was breached by Karma.  Upon a breach of the implicit warranty of title, a customer may revoke acceptance of the goods and upon any "justifiable revocation of acceptance a buyer has a security interest in goods in his or her possession or control for any payments made on their price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody."  Fla. Stat. § 672.711 (3).  Accordingly, if Karma breached the implicit warranty of title and failed to convey good title to Brown, Brown has the right to revoke acceptance of the Urus and assert a security interest in the Urus for the amount of his purchase price and other expenses.  Such security interest created pursuant to Section 672.711(3),

9

Florida Statutes, is senior in priority to any other security interest when the buyer retains possession of the goods.  *See* Fla. Stat. § 679.1101(4).  Thus, not only would Brown have a secured claim against Debtor, since Brown retains possession of the Urus, Brown's security interest in the vehicle would be superior to any claims, including those of Debtor, FVP Parties or Franklin Entities.

22.    In addition, if for any reason the Court determined the sale transaction did not operate to transfer valid title of the Urus to Brown under the law, Brown would have an interest in the vehicle in equity.  Under Florida law, the equitable ownership of an asset, including a vehicle, is often determined by control and who is receiving the benefit of the assets, regardless of the nominal owner of the asset.  *See In re Trujillo*, 626 B.R. at 74.  Here, both factors weigh in favor of Brown being the equitable owner of the Urus.  Brown is the only person who has controlled the vehicle, and received the benefit of the vehicle, since his purchase.

23.    Moreover, pursuant to the law cited *supra* regarding resulting trusts, given Brown's payment of the purchase price for the Urus, plus maintenance, storage, and transport expenses for the Urus since it was delivered to him, and insurance for the Urus, are all circumstances that would make it inequitable for Debtor to have a beneficial interest in the Urus.  Moreover, Zankl's persuading Brown to hold off on titling the car, presumably for the dealership's own convenience to streamline the process of trading in the vehicle in the future, shows that the presumed intention was that Brown would have the beneficial interest in the Urus, while Karma held the paper title for the benefit of Brown.  It would be

10

inequitable for Karma (or Debtor) to retain legal title to the Urus, and therefore a Court should impose an obligation upon Karma (and Debtor) to hold the title for Brown's benefit. *See Frank*, 13 So. 2d at 218.

24.   In summary, Brown owns the Urus, and has a superior interest in the Urus, senior to any interest asserted by the Debtor, FVP Parties, or Franklin Entities in their objections to the Claim, or otherwise.

**D.   Conclusion**

As stated herein, Brown is the sole and exclusive owner of the Cullinan and Urus.   Claim #19-1 preserves Brown's right, title and interest against Debtor because Debtor has wrongfully claimed title to the Vehicles.   The Court should determine that Brown owns the Vehicles, direct the Debtor to abandon the vehicles to Brown, and the Claim will be disposed of as a result.   If the Court rules otherwise, it should determine that Brown has a security interest or equitable interest in the Vehicles in the amount of the purchase price and any expenses to maintain the Vehicles, superior to the interests of Debtor, FVP Parties, Franklin Entities, any other creditors of Excell or Karma, and overrule the objections to the Claim.   Brown reserves the right to supplement his response with additional facts and legal theories prior to any hearing on the merits of the claim objections.

**WHEREFORE**, Edward Brown requests that this Court enter an Order either (a) determining that Brown owns the Cullinan and Urus, directing the Debtor to abandon the vehicles to Brown, and disposing of the Claim as a result, or (b) if the Court finds that Debtor owns the Cullinan and Urus, determining that

67895043;2

Brown has a security interest or equitable interest in the Cullinan and Urus in the amount of the purchase price and any expenses to maintain the vehicles, superior to the interests of Debtor, or any other creditors of Excell or Karma, and overrule the objections to the Claim, and (c) for all other relief that is just and proper.

Dated: December 22, 2022

Respectfully submitted,

By:   /s/ *Amanda Klopp*
D. Brett Marks, Esq.
Florida Bar Number: 099635
Email: brett.marks@akerman.com
Eyal Berger, Esq.
Florida Bar Number:  011069
Email:  eyal.berger@akerman.com
Amanda Klopp, Esq.
Florida Bar Number: 124156
Email: amanda.klopp@akerman.com
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL  33301-2999
Tel:: 954-463-2700
Fax: 954-463-2224

*Counsel for Edward Brown*

67895043;2

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 22, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

/s/ *Amanda Klopp*
Amanda Klopp, Esq.

13

67895043;2