# EXHIBIT A

**Exhibit A**

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE-22-05125

FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership; FVP INVESTMENTS, LLC, a Delaware limited liability company; and FVP SERVICING, LLC, a Delaware limited liability company,

Plaintiffs,

vs.

KARMA OF BROWARD, INC., a Florida corporation; KARMA OF PALM BEACH, INC., a Florida corporation; SCOTT ZANKL, an individual; KRISTEN ZANKL, an individual; MOSHE FARACHE, an individual; LISA FARACHE, an individual; CHASE FARACHE, an individual; MMS ULTIMATE SERVICES, INC., a Florida corporation; EXCELL AUTO SPORT AND SERVICE, INC., a Florida corporation; HI BAR CAPITAL, LLC, a New York limited liability company; JOSH LUBIN, an individual; GRANER LAW GROUP d/b/a Graner Platzek & Allison, P.A.; Thomas U. Graner, an individual; KURKIN FOREHAND BRANDES LLP, a Florida limited liability partnership; and MARK BRANDES, an individual,

Defendants.

_____/

## FIRST AMENDED COMPLAINT
### JURY TRIAL DEMANDED IN COUNTS I THROUGH XIV

COME NOW the Plaintiffs, FVP Opportunity Fund III, LP, a Delaware limited partnership (the "FVP Fund"), FVP Investments LLC, a Delaware limited liability company ("FVP Investments"), and FVP Servicing, LLC, a Delaware limited liability company ("FVP Servicing") (collectively, the "Plaintiffs" or "FVP"), by and through their undersigned counsel, and sue the

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RichardBaronLaw.com

Defendants, Karma of Broward, Inc., a Florida corporation ("Karma of Broward"); Karma of Palm Beach, Inc., a Florida corporation ("Karma of Palm Beach") (collectively, Karma of Broward and Karma of Palm Beach are the "Karma Entities"); Scott Zankl, an individual ("Scott Zankl"); Kristen Zankl, an individual ("Kristen Zankl") (collectively, Scott Zankl and Kristen Zankl are the "Zankl's"); Moshe Farache, an individual ("Farache"); Lisa Farache, an individual ("Lisa Farache"); Chase Farache, an individual ("Chase Farache"); MMS Ultimate Services, Inc., a Florida corporation ("MMS"); Excell Auto Sport and Service, Inc., a Florida corporation ("Excell Auto"); Hi Bar Capital, LLC, a New York limited liability company ("Hi Bar"); Josh Lubin, an individual ("Lubin"); Graner Law Group, PA, a Florida corporation d/b/a Graner Platzek & Allison, P.A. ("Graner Law Group"); Thomas U. Graner, an individual ("Graner"); Kurkin Forehand Brandes LLP, a Florida limited liability partnership (the "Brandes Firm"); and Marc Brandes, an individual ("Brandes") (collectively, the Karma Entities, the Zankl's, Farache, Lisa Farache, Chase Farache, MMS, Excell Auto, Hi Bar, Lubin, Graner Law Group, Graner, the Brandes Firm and Brandes are the "Defendants"), for monetary damages, and demand a trial by jury on all the counts specifically identified herein as demanding a jury, and would state as follows:

## Introduction

1.      All claims as to the interests, and the priority of interests, as to any collateral as defined in the FVP security agreements attached hereto that is deemed to be owned by any entity other that the Debtor at the conclusion of the litigation in Adversary Case No.: 22-01218-EPK pending in the United States Bankruptcy Court for the Southern District of Florida are expressly reserved.

2.      This is an action for monetary damages brought on behalf of the Plaintiffs against the Defendants, as outlined *infra*, who have engaged in illegal acts, including, *inter alia*, fraudulent transfer and other tortious conduct; and who induced the Plaintiffs to loan Seven Million Five Hundred Thousand Dollars ($7,500,000.00) (the "Principal") to the Zankl's and Karma Entities. The Plaintiffs made the loan because the Plaintiffs were led to believe that the loan was fully secured by the inventory and assets of the Karma Entities as the Plaintiffs were led to believe this by, *inter alia*, Lubin, Hi Bar, the Zankl's, Moshe Farache and Lisa Farache.

3.      The Plaintiffs loaned the Zankl's Companies the Principal pursuant to those certain loan documents executed on January 26, 2022 which Principal was fully funded by February 18,

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

2022 and fully secured by collateral. By April 1, 2022, the Principal and all of the collateral intended to secure it was gone.

4.      By this action, *inter alia*, the Plaintiffs seek to recover their damages against Hi Bar and its principals and co-conspirators who perpetrated a scheme to defraud the Plaintiffs by taking actions and making representations that would, and did, lead the Plaintiffs into believing that they would have a first priority security interest in the Karma Entities' collateral, while simultaneously and surreptitiously filing a financing statement in the dead of night on the eve of the Plaintiffs loan closing with the Zankl's and Karma Entities to attempt to take a priority interest in the collateral.

5.      By this action, *inter alia*, the Plaintiffs also seek to recover their damages against Moshe Farache, Lisa Farache, Chase Farache and other aiders and abettors and co-conspirators who engaged in a scheme to defraud the Plaintiffs by converting the Plaintiffs' collateral held by the Karma Entities and engaging in a false and fraudulent cover up.

6.      In furtherance of the scheme, on April 1, 2022, Moshe Farache, Lisa Farache, Chase Farache and other aiders and abettors and co-conspirators under their direction forced the Zankl's, under threat of physical violence, to hand over in excess of $7 million in automobiles – the Plaintiffs' collateral – to Moshe Farache, Lisa Farache, Chase Farache and other aiders and abettors and co-conspirators in exchange for no money. To make perfectly clear, the automobiles that were turned over under threat of violence were the Plaintiffs' collateral.

7.      As pled below, this lawsuit brought by the Plaintiffs seeks to recover the damages suffered by the Plaintiffs at the hands of multiple tortfeasors and bad actors.

8.      The Plaintiffs expressly reserve the right to amend this pleading to bring claims as to the priority of any claims to any collateral that is removed from the jurisdiction of the United States Bankruptcy Court for the Southern District of Florida.

### INCORPORATION OF EXHIBITS BY REFERENCE

Pursuant to Fla. R. Civ. P. 1.130(a), the Plaintiffs adopt and incorporate those exhibits (collectively, the "Exhibits of Record"), as identified herein, filed of record by the Plaintiffs in this action and identified as exhibits filed in support of relief sought by the Plaintiffs at the time of their filing from the date of the filing of the original Complaint on April 10, 2022 through July 21, 2022 as if fully re-pled herein and attached hereto for all purposes. Such Exhibits of Record will be

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

identified by date and filing number.

## Jurisdiction, Venue and Parties

9.     This is an action brought by the Plaintiffs against the Defendants to recover money damages for claims whose values exceed Seven Million Five Hundred Thousand Dollars ($7,500,000.00), exclusive of attorney's fees and costs.

10.     At all times material hereto, Plaintiff the FVP Fund was and is a Delaware limited partnership with its principal place of business in New York County, New York.

11.     At all times material hereto, Plaintiff FVP Investments was and is a Delaware limited liability company with its principal place of business in New York County, New York.

12.     At all times material hereto, Plaintiff FVP Servicing was and is a Delaware limited liability company with its principal place of business in New York County, New York.

13.     At all times material hereto, Defendant Karma of Broward was and is a Florida corporation with its principal place of business in Broward County, Florida, and is otherwise *sui juris*.

14.     At all times material hereto, Defendant Karma of Palm Beach was and is a Florida corporation with its principal place of business in Palm Beach County, Florida, doing business in Broward County, Florida and is otherwise *sui juris*.

15.     At all times material hereto, Defendant Scott Zankl was and is an individual residing in Palm Beach County, Florida, and is otherwise *sui juris*.

16.     At all times material hereto, Defendant Kristen Zankl was and is an individual residing in Palm Beach County, Florida, and is otherwise *sui juris*.

17.     At all times material hereto, Defendant Farache was and is an individual residing in Palm Beach County, Florida, and is otherwise *sui juris*.

18.     At all times material hereto, Defendant Lisa Farache was and is an individual residing in Palm Beach County, Florida, and is otherwise *sui juris*.

19.     At all times material hereto, Defendant Chase Farache was and is an individual residing in Palm Beach County, Florida, and is otherwise *sui juris*.

20.     At all times material hereto, Defendant MMS was and is a Florida corporation with

Page 4

its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*.

21.    At all times material hereto, Defendant Excell Auto was and is a Florida corporation with its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*. Defendant Farache is the President of Excell Auto and Defendant Scott Zankl is the Vice President of Defendant Excell Auto.

22.    At all times material hereto, Hi Bar was and is a New York Limited Liability company doing business in Broward County, Florida, and is otherwise *sui juris*.

23.    At all times material hereto, non-party Spin Capital, LLC was and is a New York Limited Liability company ("Spin") doing business in Broward County, Florida, and is otherwise *sui juris*. The Plaintiffs reserve the right to add Spin as a party Defendant upon proper filing.

24.    At all times material hereto, Lubin was and is an individual residing in New York, and is otherwise *sui juris*.

25.    At all times material hereto, non-party Steven Zakharyayev ("Zakharyayev") was and is an individual licensed to practice law in the State of Florida and in the state of New York, and having a principal office in New York, New York, and is otherwise *sui juris*. The Plaintiffs reserve the right to add Zakharyayev as a party Defendant upon proper filing.

26.    At all times material hereto, Graner Law Group was and is a Florida corporation with its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*.

27.    At all times material hereto, Graner was and is an individual licensed to practice law in the State of Florida and having a principal office in Palm Beach County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*.

28.    At all times material hereto, Brandes was and is an individual licensed to practice law in the State of Florida and having a principal office in Miami-Dade County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*.

29.    At all times material hereto, the Brandes Firm was and is a Florida limited liability partnership with its principal place of business in Miami-Dade County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*.

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

PIERCING THE CORPORATE VEIL OF SPIN AND HI BAR
THROUGH THE ACTS OF THEIR PRINCIPALS AND OWNERS

30.     Spin is not named as a Defendant or a party of interest in this action and is named for informational and identification purposes only at this time.

31.     Defendant Lubin, at all times material hereto, acted for Spin and Hi Bar in his individual capacity; and for the acts and conduct alleged herein, the acts of Spin and Hi Bar, and the acts of Lubin, were identical.

32.     At all times outlined in this First Amended Complaint, all acts of Lubin as alleged herein done under the guise of acting for and on behalf of Spin and Hi Bar were done for Defendant Lubin, individually, and were done for an illegal or illicit purpose.

33.     The corporate identities of Spin and Hi Bar were used by Defendant Lubin to accomplish some ulterior purpose, to evade some statute or to accomplish some fraud, and were used as part of the enticement to the Plaintiffs to fund the Principal identified in this First Amended Complaint to Zankl and the Karma Entities, while Spin and Hi Bar plotted and schemed to receive the beneficial interest to the inventory purchased with the Plaintiffs' Principal.

34.     Defendant Lubin used Spin and Hi Bar for fraudulent or misleading purposes, particularly to creditors and in particular to the Plaintiffs as creditors. At all times as outlined in this First Amended Complaint, the Plaintiffs were defrauded creditors of both Spin and Hi Bar.

35.     Defendant Lubin dominated and controlled Spin and Hi Bar to such an extent that Spin and Hi Bar's independent existence was in fact non-existent, and Defendant Lubin was in fact an alter ego of Spin and Hi Bar.

36.     The corporate forms of Spin and Hi Bar were used fraudulently or for an improper purpose by Defendant Lubin to the harm of the Plaintiffs, and which caused injury and damages to the Plaintiffs.

PIERCING THE CORPORATE VEILS OF AUTO WHOLESALE OF BOCA, LLC AND MMS THROUGH THE
ACTS OF THEIR OWNERS

37.     Auto Wholesale of Boca, LLC ("AWB") is not named as a Defendant or a party of interest in this action and is named for identification and informational purposes only.

38.     This complaint does not bring claims against and does not address any property,

Page 6

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

funds, matters or interests of the Debtor Auto Wholesale Of Boca, LLC, a Florida limited liability company, over which jurisdiction is exclusively in the United States Bankruptcy Court for the Southern District of Florida.

39. This complaint seeks damages against Defendant Moshe Farache and Defendant Lisa Farache solely in their individual capacity.

40. During the time periods outlined in this complaint the acts of Defendant Moshe Farache and Defendant Lisa Farache as alleged herein under the guise of acting for and on behalf of either AWB or MMS were in fact done for Defendant Moshe Farache and Defendant Lisa Farache individually and were done for an illegal or illicit purpose.

41. The corporate identity of AWB and MMS were falsely and illegally used by Defendant Moshe Farache and Defendant Lisa Farache to accomplish some ulterior purpose, evade some statute or to accomplish some fraud and used as part of the enticement to the Plaintiffs to pay over loan proceeds to Zankl and the Karma Entities so that Defendant Moshe Farache and Defendant Lisa Farache could convert the property purchased with the proceeds to their individual accounts and fraudulently transfer the proceeds.

42. Defendant Moshe Farache and Defendant Lisa Farache dominated and controlled AWB and MMS to such an extent that AWB's and MMS' independent existence, was in fact non-existent and Defendant Moshe Farache and Defendant Lisa Farache were in fact alter egos of AWB and MMS.

43. The corporate form of AWB and MMS was used fraudulently or for an improper purpose by Defendant Moshe Farache and Defendant Lisa Farache to the harm, injury and damage of the FVP Plaintiffs.

VENUE AND JURISDICTION

44. Venue is proper in this Court as the Zankl's own and operate Defendant Karma of Broward, whose principal address is 1717 SE 17th Street, Fort Lauderdale, FL 33316 and which is thus located within Florida's Seventeenth Judicial Circuit in and for Broward County, Florida.

45. Jurisdiction is proper in this Court because the Defendants either reside in or operate, conduct, engage in or carry-on businesses or business ventures in the State of Florida, and because the Defendants have committed tortious acts within the State of Florida. Jurisdiction is

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

further proper in this Court because a substantial portion of the Plaintiffs' collateral is located within the State of Florida, and within Broward County, Florida.

46.    All conditions precedent to this action have occurred, have been performed or have been waived.

## Factual Allegations Common to All Counts

A.    THE LUBIN / HI BAR FRAUD.

47.    Non-party Spin is a New York limited liability company. Lubin is the president and controlling principal of Spin.

48.    Hi Bar is an affiliate of Spin with Lubin, the principal of Spin negotiating for and speaking for Hi Bar for all purposes at all times outlined in this First Amended Complaint. No person other than Lubin made statements for, or demands by, Hi Bar other than Lubin to Scott Zankl for the entire time period outlined in this First Amended Complaint.

49.    Hi Bar and Spin are both Merchant Cash Advance Companies ("MCAs"), which, upon information and belief, are controlled by Lubin.

50.    Zakharyayev acted at the instruction of Lubin for both Spin and Hi Bar.

51.    In or around September of 2021, Scott Zankl, on behalf of non-party Excell Auto Group (Excell), entered into communications with non-party Wing Lake Partners f/k/a Franklin Capital Group, LLC, a Delaware limited liability company ("Wing Lake"), to borrow money to pay off MCA loans that non-party Excell and the Karma Entities had with Spin and two other MCAs.

52.    Wing Lake advised Zankl that it would fund a loan to pay off the two other MCA loans only if the Spin MCA loan was satisfied, removed or otherwise declared by Spin to be paid off.

53.    In response, Zankl had extensive conversations with Lubin, the principal of Spin, about the fact that he would not be able to borrow the money from Wing Lake without Spin's MCA loan being paid off.

54.    Lubin advised Zankl that he would arrange to shift the debt owed to Spin to another company that he controlled named Hi Bar. At all times, all of Scott Zankl's communications with both Spin and Hi Bar were with Lubin.

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

55.     In October of 2021, Zankl and Lubin agreed that Hi Bar would take over the Spin debt and that Zankl and his companies, Excell and the Karma Entities, would then only have a debt to Hi Bar, so that it would appear to Wing Lake that the Spin debt was satisfied.

56.     On October 27, 2022, the Zankl's, on behalf of Excell and the Karma Entities, executed transaction documents with Hi Bar. **Exhibit A** (affixing the "Hi Bar / Zankl transaction documents").

57.     At the time of the Hi Bar / Zankl transaction documents, Zankl and his companies, Excell and the Karma Entities, were in full compliance with the terms and conditions of the Spin loan documents.

58.     Nonetheless, the Hi Bar / Zankl transaction documents substantially increased the debt owed by Zankl, Excell and the Karma Entities by approximately one million dollars ($1,000,000) for no reason.

59.     No money was paid by Hi Bar to Spin for any purported satisfaction, payoff or refinance; and no money was paid to Zankl, Excell or any of Zankl's companies, including the Karma Entities, for the increased debt.

60.     In sum, Hi Bar paid no consideration for its imaginary multimillion dollar "merchant advance" contract with Excell and the Karma Entities.

61.     It is asserted that the Hi Bar / Zankl transaction documents were intentionally created for the express purpose to perpetrate a fraud on Wing Lake and Zankl, Excell and the Karma Entities.

62.     In response to this paperwork, Lubin and Spin notified Wing Lake that Spin no longer had any sums owed to it by Excell and the Karma Entities, but intentionally and fraudulently withheld the fact that Spin had merely rebranded the debt in the name of Hi Bar.

63.     Based on this misrepresentation, Wing Lake, on the one hand, and Excell and the Karma Entities, on the other hand, entered into a loan facility with Wing Lake.

64.     As part of the Excell / Wing Lake transaction documents, Spin executed an Assignment Agreement in which Spin represented that Spin had no rights to any sums from Zankl and Zankl's companies.

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

65.     This was a materially false statement as Spin and Hi Bar were interchangeable as Lubin acted for both Spin and Hi Bar, and the Hi Bar debt was Spin debt.

66.     Lubin, Spin and Hi Bar, and others known and unknown to the Plaintiffs, colluded and conspired to defraud Wing Lake, as the Hi Bar debt, which was *de facto* the Spin debt, was hidden from Wing Lake. As such, Wing Lake was intentionally defrauded by both Spin and Hi Bar as both companies, as well as Lubin, materially misled Wing Lake into entering into the loan agreements in the first instance by materially misrepresenting that the Spin debt was satisfied, when it was simply relabeled.

B.     THE HI BAR / ZANKL TRANSACTION DOCUMENTS PROHIBITED ZANKL FROM ENTERING INTO ANY THIRD PARTY FINANCING WITH SECURITY AGREEMENTS RELATED TO THE INVENTORY WITHOUT HI BAR'S WRITTEN CONSENT.

67.     The Hi Bar / Zankl transaction documents specifically granted Hi Bar a security interest in the Karma Entities inventory.

> "Merchant will obtain from HBC written consent prior to granting a security interest of any kind in the Secured Assets to a Third Party"
>
> "Merchant and Guarantor(s) agree to execute and deliver to HBC such instruments and documents HBC  may reasonably request to perfect and confirm the lien, security interest and right to set off in this agreement. HBC is authorized to execute all such instruments and documents in Merchant's and Guarantor's name.
>
> "Merchant and Guarantor(s) each hereby authorizes HBC to file any financing statements deemed necessary by HBC to perfect or maintain HBC's security interest. Merchant and Guarantor(s)(s) shall be liable for, and HBC may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by HBC in protecting, preserving and enforcing HBC's security interests and rights."
>
> "Merchant and Guarantor(s) each agree not to create or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or Additional Collateral"

Hi Bar Security Agreement. *Exhibit A.*

68.     Therefore, the Hi Bar / Zankl transaction documents made clear that Zankl could not enter into any financing agreement with FVP without Hi Bar's express written consent.

C.     THE LUBIN / HI BAR FRAUD CONTINUES AND EXTENDS TO THE PLAINTIFFS.

69.     Shortly after the Hi Bar / Zankl transaction and the Zankl / Wing Lake transaction, Scott Zankl engaged the Plaintiffs in communications regarding a loan transaction.

70.     To that end, through November and December of 2021, Zankl had detailed

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RichardBaronLaw.com

conversations with the Plaintiffs about a Seven Million Five Hundred Thousand Dollar ($7,500,000) loan from the Plaintiffs which would be collateralized by the inventory of the Karma Entities. It was understood and agreed that the rights of the Plaintiffs would specifically not include any collateral or security interests in non-party Excell Auto Group.

71.    The Hi Bar / Zankl transaction documents, as above stated, required Hi Bar to perfect its security interest and expressly stated that Zankl could not enter into another security transaction with anyone, including the Plaintiffs, without Hi Bar's written consent.

72.    Notwithstanding the fact that Hi Bar was authorized to file any documents on behalf of the Karma Entities to perfect its security interest, or otherwise file a UCC financing statement on October 27, 2021 to give notice of its security interests and lien to any future lenders, Hi Bar did not do so.

73.    The decision of Hi Bar not to file a financing statement was intentional and fraudulent by omission.

74.    It was Hi Bar's intent to maintain the fraud against Wing Lake hidden as long as possible, and to commit further fraud against the Plaintiffs or other lenders who Lubin was aware may loan funds to Zankl and the Karma Entities in the near future.

75.    By the beginning of December of 2021, Zankl was already in arrears on the Hi Bar loan. At that same time, Zankl had conversations with Lubin regarding the Plaintiffs' loan. Lubin specifically requested that Zankl let him know when the Plaintiffs' loan was going be funded and told Zankl to forward all of the Plaintiffs' loan documents to him for his review.

76.    It was Lubin's intent in making this request to have Zankl secure the Plaintiffs' loan without the Plaintiffs knowing about the Hi Bar loan so that Plaintiffs would make the loan without being aware of the Hi Bar loan, and upon receiving the loan proceeds Zankl would pay a substantial part of the proceeds of the Plaintiffs' Principal to Hi Bar to satisfy its illegal and usurious loan.

77.    As instructed, Zankl kept Lubin informed of the progress; and on or about December 15, 2022, Zankl advised Lubin that he would be imminently closing the loan with Plaintiffs.

78.    In response to this information, and in anticipation of the loan closing and funding, Lubin instructed Zakharyayev or another of his agents to file a UCC Financing Statement for Hi

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

Bar on Excell and the Karma Entities. The UCC Financing Statement was filed on December 15, 2021. **Exhibit B**. Lubin caused the Hi Bar UCC to be filed on that date because he was led to believe that the Plaintiffs were funding the Karma Entities' loan imminently and wanted the UCC to be filed just before any filing by the Plaintiffs.

79.    When the loan did not close, Lubin accused Zankl of misleading him and pressured Zankl to email him the actual loan documents provided by the Plaintiffs to confirm his representations. On December 17, 2022, Zankl emailed Lubin all of the FVP / Excell / Karma loan documents. **Exhibit C.**

80.    After Lubin received the Plaintiffs' loan documents, he was fully aware of the fact that the Plaintiffs' loan proceeds could not be used to repay any other lenders, including Hi Bar.

81.    On December 19, 2021, Zankl told Lubin that the Plaintiffs became aware of the December 15, 2021 filing of the UCC Financing Statement and advised Zankl that the funding was off and that therefore Zankl could not pay Hi Bar.

82.    In response, Lubin demanded that Zankl sign a "Settlement Agreement" which astronomically increased the amounts due to Hi Bar. **Exhibit D**. The December 19, 2022 "Settlement Agreement" falsely and fraudulently described a "default" that never occurred, and reiterated that Hi Bar had a "security interest" in the Karma Entities' collateral as described in the Hi Bar UCC Financing Statement filed just four (4) days prior on December 15, 2021. *See* **Exhibit B.**

83.    Notwithstanding the purported confirmation that Hi Bar was entitled to maintain the just-filed UCC filing, Hi Bar did the exact opposite of what the documents purported to grant, and on December 19, 2021, Hi Bar instead filed a termination of the four (4) days old UCC Financing Statement - **Exhibit E** - which *terminated* the Hi Bar financing statement as to Excell, Zankl and the Karma Entities.

84.    This termination of the four (4) days old UCC Financing Statement - **Exhibit E** - was specifically and intentionally made as a material direct, false and fraudulent misrepresentation to the Plaintiffs that Hi Bar had no secured interests in the Karma Entities' collateral. The termination states:

> "Effectiveness of the Financing Statement identified above is terminated with respect to the security interests of the Secured Party authorizing this Termination Statement".

Page 12

85.     This representation filed of record in **Exhibit E** was intentionally made to the Plaintiffs and was made to the Plaintiffs for the sole purpose of notifying the Plaintiffs that Hi Bar had no security interests to protect. This representation was false when made and intentionally false. The Plaintiffs justifiably relied upon the misrepresentation to their detriment.

86.     To double down on the fraud, Zakharyayev, for Lubin and Hi Bar, advised Frank O'Donnell, an agent intermediary between the Plaintiffs and Zankl, that the Hi Bar UCC Financing Statement of December 15, 2021 was a *mistake and was "erroneously filed."* **Exhibit F**. This representation was specifically made to O'Donnell to be relayed to the Plaintiffs for the sole purpose of notifying the Plaintiffs that Hi Bar had no security interests to protect. These statements were false when made and intentionally false. The Plaintiffs justifiably relied upon the misrepresentation to their detriment.

87.     The sole purpose of the termination filed in the public record and communicated to the Plaintiffs was to convince the Plaintiffs that Hi Bar had no protectable interest in the collateral of the Karma Entities so that the Plaintiffs would rest assured that Hi Bar was not a threat to their security interests and to proceed to fund a loan to the Karma Entities, with Lubin and Hi Bar waiting in the wings to pounce with a second UCC Financing Statement which would be filed minutes before any filing by the Plaintiffs.

D.     THE FRAUD WORKED.

88.     Upon being supplied the UCC termination notice, the Plaintiffs, unaware of the scheme, reinstituted the loan process with Zankl and the Karma Entities.

89.     The negotiations carried through to mid-January of 2022. During that time, Zankl was, unsurprisingly in arrears of the draconian terms of the Lubin / Hi Bar financing and was under constant pressure by Lubin to pay or suffer financial ruin. (*See e.g.,* Exhibit L). Lubin again requested that Zankl provide him with the FVP loan documents.

90.     On January 21, 2022, Zankl, like in December 2021, again emailed Lubin the Plaintiffs' loan documents and promised Lubin that as soon as he got the loan from the Plaintiffs, which he stated would be Monday January 24, 2022, Zankl would pay Lubin from the Plaintiffs' proceeds. **Exhibit G.**

91.     Again, after Lubin received the Plaintiffs' loan documents, he was fully aware of

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

the fact that the Plaintiffs' loan proceeds could not be used to repay any other lenders, including Hi Bar. Specifically, the loan proceeds could only be used "for purposes of purchasing exotic car inventory for Palm Beach and Broward, paying transaction costs and expenses incurred in connection [t]herewith, for general working capital purposes." *See* FVP Loan Documents attached *infra*.

92.     On Monday January 24, 2022, Lubin again demanded that Zankl email him all of the actual loan closing agreements. In response, Zankl sent Lubin four (4) separate emails which included all the FVP loan documents. **Exhibit H Composite**. Later that day, when no closing occurred, Zankl texted Lubin that he would be closing the next day, January 25, 2022. **Exhibit I.** The text again confirmed that Lubin would be receiving the Plaintiffs' Principal, which he was fully aware he could not receive under the terms of the Plaintiffs' transaction documents.

93.     On January 25, 2022, Zankl advised Lubin that he would be closing with the Plaintiffs the next day, January 26, 2022, with certainty.

94.     In response, and to finalize the fraud, at Lubin's direction, Zakharyayev, for Lubin and Hi Bar, refiled Hi Bar's UCC Financing Statement on January 25, 2022 at 10:55 pm. **Exhibit J.**

95.     Hi Bar refiled its UCC Financing Statement on January 25, 2022 at 10:55 pm knowing that:

   a.   the Plaintiffs' funding was to close the next day on January 26, 2022;

   b.   the Plaintiffs' Principal could not be used to pay Hi Bar;

   c.   Zankl fully intended to pay Hi Bar with the proceeds as stated in the text of January 24. 2022; and

   d.   but for the material misrepresentation of the December 19, 2021 UCC Termination, **Exhibit E**, that there never would have been a loan from the Plaintiffs in the first instance.

96.     At all times, Lubin acted for both Spin and Hi Bar in an identical fashion, and all of Zankl's communications with both Spin and Hi Bar were with Lubin.

97.     In fact, on January 3, 2022, Lubin told Zankl to wire the funds due to Hi Bar to

Page 14

Spin. **Exhibit K**.

98.     It was always Lubin who personally pressured and threatened Zankl and the Karma Entities with a (Hi Bar) lawsuit ("I have to file tomorrow") if payments were not made to Lubin's satisfaction. *See, e.g.*, **Exhibit L** (regarding pressure and threats on January 13, 2022).

99.     It was Lubin who personally directed Zankl where to send every payment due to Hi Bar after the Hi Bar documents were executed. For example, on February 7, 8 and 9 of 2022, Lubin directed Zankl to wire money to an attorney's account, which, on information and belief was that of Zakharyayev. On those dates, a total of One Million Three Hundred Thousand Dollars ($1,300,000) was wired to a Lubin / Hi Bar attorney with funds that, upon information and belief, came from the Plaintiffs' Principal loaned the prior week.

100.     The actions of Hi Bar comprise fraudulent conduct with the intended and expressed target of the fraud being the Plaintiffs.

101.     The UCC Financing Statement filed on December 19, 2021 was an "instrument" as defined in Fla. Stat. § 817.535, and was filed with the intent to defraud.

102.     The UCC Financing Statement filed on January 25, 2022 at 10:55 pm was an "instrument" as defined in Fla. Stat. § 817.535, and was filed with the intent to defraud.

103.     The UCC Financing Statement filed on January 25, 2022 at 10:55 pm contained a material false statement as it represented that Hi Bar had a legitimate lien in the property defined therein, when Hi Bar had no legitimate enforceable interest to protect; as Hi Bar paid no consideration for the alleged interest, was a participant in a fraudulent transfer as defined in Fla. Stat. § 726.105, was a participant in an illegal and usurious shake down of Zankl and the Karma Entities, and surreptitiously filed this UCC Financing Statement with the intent to defraud.

E.     THE SPIN / HI BAR LOAN WAS USURIOUS, ILLEGAL AND VIOLATES FLORIDA PUBLIC POLICY.

104.     Both Spin and Hi Bar, as aforementioned, are MCAs. Both have been subject to multiple lawsuits and scrutiny by numerous governmental agencies.

105.     MCAs have come under this intense scrutiny for their unconscionable and unlawful conduct. *See, e.g.*, *Attorney General of the State of New York, v. Various MCA Companies*, Index No. 451368/ 2020 (Supreme Court of the State of New York, County of New York) (alleging, *inter alia*, that Richmond, Giardina and others have preyed upon thousands of small businesses

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RichardBaronLaw.com

throughout the United States by offering funding under "merchant cash advances" that "are in fact fraudulent, usurious loans with interest rates in the triple and even quadruple digits, far above the maximum rate permissible for a loan under New York law") (Criminal Usury, Fraud in the Form of Unconscionability – *pending*); *Fleetwood v RAM Capital Funding, et al.,* United States District Court for the Southern District of New York, Case No. 20-cv-5120 (LJL) (June 6, 2022 Opinion and Order); *see also Federal Trade Commission v. RCG Advances*, LLC, No. 20-cv-4432 (S.D.N.Y.) (same).

106.    On August 31, 2021, Spin entered into a "Revenue Purchase Agreement" with Zankl and Excell for Excell's "Receivables" (the "First Agreement"). Excell had no receivables.

107.     Under the First Agreement, which was self-defined as a sale of receivables, Excell received Two Million Dollars ($2,000,000), but was indebted to Spin in the amount of Two Million Nine Hundred Ninety-Eight Thousand Dollars ($2,998,000).

*108.*    The First Agreement stated: *"Excell is selling a portion of future revenue to Spin at a discount, and is not borrowing money from Spin, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Spin."*

109.    The First Agreement then goes on to state that Excell must pay One Hundred Fifty Thousand Dollars ($150,000.00) weekly, or 20% of its receivables notwithstanding the fact that Excell had no receivables.

110.    Despite the fact that Excell had paid Spin Seven Hundred Fifty Thousand Dollars ($750,000) between August 31, 2021 and October 18, 2021, on October 18, 2021 Spin issued to Zankl and Excell a balance notice that stated that Excell owed Spin Two Million Two Hundred Sixty-Four Thousand Three Hundred and Twelve Dollars and Fifty Cents ($2,264,312.50).

111.    As above stated, notwithstanding the fact that neither Zankl nor Excell were in default, Zankl was required to eliminate the Spin debt to comply with the Wing Lake demands for its financing.

112.    In response to Wing Lake's requirements, Lubin agreed to "transfer" the Spin debt to Hi Bar, which he described to Zankl as a "no net refi." At all times, Lubin represented to Zankl that Hi Bar was a company that Lubin controlled and that they would simply exchange the creditors' names with no change in terms. This statement by Lubin to Zankl was an intentionally false

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

statement.

113.    Lubin emailed the Hi Bar paperwork to Zankl which Zankl viewed on his phone, and trusting Lubin's representations about what was in the paperwork, DocuSigned the documents on his phone on October 27, 2021.

114.    After Zankl was able to intelligently review the documents, he learned that that the Hi Bar paperwork increased the amount owed to Spin by over Nine Hundred Thousand Dollars ($900,000) from the week before, and that Excell and now the Karma Entities owed Hi Bar Three Million One Hundred Seventy-Seven Thousand Eight Hundred and Eighty Dollars (**$3,177,880**), with weekly payments of One Hundred Fifty Thousand Dollars ($150,000).

115.    Therefore, Lubin and Hi Bar increased the debt over Nine Hundred Thousand Dollars ($900,000.00) from what it was just a week prior with the stroke of a pen.

116.    No funds were ever paid by Hi Bar to Excell or the Karma Entities at any time.

117.    Upon information and belief, no funds were paid by Hi Bar to Spin.

118.    Over the next two (2) months, Zankl and Excell paid Hi Bar approximately Five Hundred Thousand Dollars ($500,000), and in mid-December had a balance of Two Million Six Hundred Seventy-Seven Thousand Eight Hundred and Eighty Dollars ($2,677,880).

119.    Therefore, over the course of three and one half months, Excell received Two Million Dollars ($2,000,000.00) and repaid One Million Two Hundred and Fifty Thousand Dollars ($1,250,000.00), and was told it owed a balance of Two Million Six Hundred Seventy-Seven Thousand Eight Hundred and Eighty Dollars ($2,677,880.00).

120.    Incredibly, Zankl and Excell (and now the Karma Entities, which were added as obligors) were told that they were in default and would be sued unless they signed a "Settlement Agreement."

121.    Fearing what a lawsuit would do to his business, Scott Zankl executed a "Settlement Agreement" in mid-December of 2021 which increased the balance owed to Hi Bar to Four Million Sixteen Thousand Eight Hundred and Twenty Dollars ($4,016,820) – an increase in the amount owed by One Million Three Hundred Thousand Dollars ($1,300,000).

122.    So, in approximately 100 days, Excell received Two Million Dollars ($2,000,000),

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

repaid One Million Two Hundred Thousand Dollars ($1,200,000), and owed Four Million Dollars ($4,000,000).

123.    It gets worse. By mid-January, Excell paid Hi Bar an additional One Million Three Hundred Thousand Dollars ($1,300,000), making the total payment by Excell Three Million Eighty-Three Thousand Six Hundred and Eighty-Seven Dollars and Fifty Cents ($3,083,687.50) on the original obligation of Two Million Nine Hundred and Ninety-Eight Thousand Dollars ($2,998,000) incurred on August 31, 2021.

124.    On January 28, 2022, Hi Bar sued Zankl, Excell and the Karma Entities for what it deemed it was owed under the "merchant advance" – the sum of Three Million Six Hundred Sixteen Thousand Eight Hundred and Twenty Dollars ($3,616,820), plus attorneys' fees in the amount of Six Hundred Twenty-Five Thousand Dollars ($625,000.00) or 33% of the Outstanding Balance. That case remains pending.

125.    So, in four (4) months, Excell repaid over 100% of the incurred debt (which was 33% more that the money received), and still owed One Million Six Hundred Thousand Dollars ($1,600,000) more than the original debt.

126.    Incredibly, Hi Bar never paid a penny to Excell or the Karma Entities at any time to receive this patently illegal and usurious windfall.

127.    Upon information and belief, Hi Bar never paid Spin any money to "pay off" the Spin debt, and the "Balance Transfer" transaction was simply a fiction invented by Lubin and his associates to mercilessly rip off Zankl, Excell and the Karma Entities.

128.    All of Scott Zankl's communications regarding the money owed to Hi Bar were with Josh Lubin, personally. It was Lubin who constantly pressured Zankl for the Hi Bar payments.

129.    The acts of Spin, Lubin and Hi Bar are outrageous, violate Florida Public Policy, and are illegal in Florida.

130.    The acts of Spin, Lubin and Hi Bar equally violate New York Public Policy and are equally illegal under New York law as is outlined in the lawsuit filed by the Attorney General of New York cited *supra*.

131.    Spin and Hi Bar may call it an "advance" or "purchase of receivables," but it was, and is, an obvious usurious loan, plain and simple. Lubin, Hi Bar and Spin attempted to mask their

Page 18

loan agreements as receivables purchases, but even the most cursory examination establishes it as a loan transaction given they attempted to securitize the transaction to eliminate risk to them.

132.    The Hi Bar transaction was a criminally usurious loan contract under both New York law and Florida law. As to the "Balance Transfer" to Hi Bar, the loan charges increased by 50.3%. When Hi Bar, on the one hand, and Zankl, Excell and the Karma Entities, on the other hand, executed a "Settlement Agreement," the loan charges increased another 50% –without a penny being paid to Excell.

133.    The merchant contract agreements entered into between Spin, Hi Bar, Scott Zankl, Excell and the Karma Entities were unconscionable, illegal, and violative of both New York and Florida Public Policy, and are therefore void and unenforceable.

134.    The Hi Bar UCC Financing Statement filed on January 25, 2022 at 10:55 pm was the product of a scheme to defraud and was based on unconscionable and illegal contracts, and has materially damaged the Plaintiffs.

F.    THE FVP / ZANKL - KARMA ENTITIES LOAN AND THE LOAN DOCUMENTS.

135.    As and part of the due diligence subsequent to this loan application, the Plaintiffs were provided with Scott Zankl and Kristen Zankl's tax returns and signed personal financial statements, and confirmed that no security interests hypothecated any of the Plaintiffs' anticipated collateral, which would be comprised of all of the assets of Karma of Broward and Karma of Palm Beach. (*See Exhibit A to the original Complaint and Motions previously filed of record on April 10, 2022 providing that certain UCC report dated January 11, 2022).*

136.    As and part of the due diligence, and as a required condition of the loan closing and funding, the Plaintiffs were provided with an opinion letter issued by Defendants Graner and Graner Law Group. *See* **Exhibit M.** The statements and opinions expressed in the Graner Opinion Letter were false, and Defendants Graner and the Graner Law Group knew or should have known of the falsity of the opinions and statements. In particular, the following statements and opinions were false:

4. The consummation of the transactions contemplated by the Loan Documents and the carrying out of the terms thereof will not result in violation of any provisions of the articles of incorporation, bylaws or other governing documents of any Borrower, or result in the violation of any provision of, or in a default under, any indenture, mortgage, deed of trust, indebtedness, agreement, judgment, decree, order, statute, rule or regulation to which any Credit Party is a

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

party or by which it or its property is bound.

5. There are no legal or governmental actions, suits, proceedings, inquiries or investigations pending, threatened or contemplated, or any basis therefor, to which any Credit Party is or may become a party or of which any property of any Credit Party is or may become subject, which, if determined adversely to such Credit Party, would not, individually or in the aggregate, have a material adverse effect on the financial position or results of operations of such Credit Party or on any Collateral owned by such Credit Party.

6. The provisions of the Security Agreement and the Pledge Agreement are effective to create a security interest in favor of the Administrative Agent, for the benefit of the Lenders, in all of each Borrower's right, title and interest in and to the Collateral described therein and all proceeds thereof. Such security interest has been properly perfected.

137. Relying on the aforementioned representations and assurances, the Plaintiffs entered into, *inter alia,* the Loan Documents with the Karma Entities through their owners, the Zankl's. *See* **Exhibit N** (affixing the Loan Agreement) [hereinafter, the "Loan Agreement"].

138. The Zankl's sought from the Plaintiffs, and received, a substantial loan in the amount of Seven Million Five Hundred Thousand and No/100 Dollars ($7,500,000.00) (the Loan, or, as above defined, the "Principal") "for purposes of purchasing exotic car inventory for Palm Beach and Broward." **Exhibit N** at 1.

139. Contemporaneous with the Loan Agreement, Karma of Broward and Karma of Palm Beach executed a Note with FVP Investments and FVP Servicing in the principal amount of Three Million and No/100 Dollars ($3,000,000.00). *See* **Exhibit O** (attaching the FVP Investments Note) [hereinafter, the "FVP Investments Note"].

140. Contemporaneous with the Loan Agreement, Karma of Broward and Karma of Palm Beach also executed a Note with the FVP Fund and FVP Servicing in the principal amount of Four Million Five Hundred Thousand and No/100 Dollars ($4,500,000.00). *See* **Exhibit P** (providing the FVP Fund Note) [hereinafter, the "FVP Fund Note," and, along with the FVP Investments Note, collectively, the "Notes"].

141. The FVP Fund and FVP Investments loans were funded as follows: Three Million Five Hundred Thousand Dollars ($3,500,000) at closing, Two Million Dollars ($2,000,000) on February 2, 2022, and Two Million Dollars ($2,000,000) on February 18, 2022.

142. Contemporaneous with the Loan Agreement, the Zankl's entered into a Personal Guaranty Agreement personally guaranteeing all sums due under the Loan Agreement. *See* **Exhibit**

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

**Q** (supplying the Guaranty Agreement) [hereinafter, the "Guaranty Agreement"].

143.    Contemporaneous with the Loan Agreement, the Karma Entities entered into a Security Agreement with FVP Servicing, as administrative agent for FVP Investments and the FVP Fund, granting a continuing security interest in certain Collateral, as the term Collateral is defined therein. *See* **Exhibit R** (attaching the Security Agreement) [hereinafter, the "Security Agreement"].

144.    Scott Zankl, on behalf of both of the Karma Entities, at Section 2.2 of the Security Agreement, represented that the Karma Entities "own or have the right to possess and use the Collateral and [have] full . . . authority, as applicable, to grant a security interest in the Collateral." *Id.* at § 2.2.

145.    The Security Agreement makes clear, at Schedule 2.1, that the Collateral is located at the Karma Entities. *See id.* at Schedule 2.1. Indeed, Scott Zankl, on behalf of his companies, asserted that "[t]he Collateral is free and clear of all Liens[,]" *id.* at § 2.12, and that "[n]o authorization, approval or other action by . . . any Official Body or other Person is required[,]" *id.* at § 2.8; and thus that the "Security Agreement create[d] a valid security interest in the Collateral and the proceeds thereof securing the payment and performance in full of the Secured Obligations." *Id.* at § 2.7.

146.    Contemporaneous with the Loan Agreement, the Zankl's also entered into a Pledge and Security Agreement with the Plaintiffs. *See* **Exhibit S** (attaching the Pledge and Security Agreement) [hereinafter, the "Pledge Agreement"]. In the Pledge Agreement, the Zankl's pledged as collateral their stock and membership interests in the following entities:

| Pledgor | Pledged Entity | Description of Equity Interests Owned | Percentage of Issued Equity Interests Owned |
|---|---|---|---|
| Scott Zankl | Karma of Broward, Inc. | Stock | 50% |
| | Karma of Palm Beach, Inc. | Stock | 50% |
| | Excell Auto Sport and Service, Inc. | Stock | 23% |
| | Excell Auto Finance, LLC | Membership Interests | 25% |
| Kristen Zankl | Karma of Broward, Inc. | Stock | 50% |
| | Karma of Palm Beach, Inc. | Stock | 50% |
| | Excell Auto Sport and Service, Inc. | Stock | 0% |
| | Excell Auto Finance, LLC | Membership Interests | 0% |

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

147.    Contemporaneous with the Loan Agreement, the Plaintiffs filed a UCC financing statement recording their security interests in the Karma Entities' collateral under the Loan Documents. *See* **Exhibit T**. This Financing Statement secured as collateral: "ALL ASSETS OF DEBTORS NOW OWNED OR HEREAFTER ACQUIRED AND WHEREVER LOCATED."

148.    Contemporaneous with the Loan Agreement, the Plaintiffs filed a UCC financing statement recording their security interests in the Zankl's pledged collateral under the Loan Documents. *See* **Exhibit U**. This Financing Statement secured as collateral:

ALL OF EACH DEBTOR'S RIGHT, TITLE AND INTEREST IN AND TO THE FOLLOWING, WHETHER NOW OWNED OR HEREAFTER ACQUIRED AND WHEREVER LOCATED: (A) ALL OF THE MEMBERSHIP INTERESTS, STOCK, PARTNERSHIP INTEREST OR OTHER OWNERSHIP INTERESTS OF ANY TYPE OR NATURE ("EQUITY INTERESTS") OF EITHER DEBTOR IN EACH OF KARMA OF BROWARD, INC., KARMA OF PALM BEACH, INC., EXCELL AUTO SPORT AND SERVICE, INC., AND EXCELL AUTO FINANCE, LLC (EACH, A "PLEDGED ENTITY" AND, COLLECTIVELY, THE "PLEDGED ENTITIES") AND ALL OTHER ADDITIONAL EQUITY INTERESTS IN THE PLEDGED ENTITIES AND OTHER RIGHTS SUBSEQUENTLY ACQUIRED BY EITHER DEBTOR IN RESPECT OF SUCH EQUITY INTERESTS (WHETHER IN CONNECTION WITH ANY CAPITAL INCREASE, RECAPITALIZATION, RECLASSIFICATION OR REORGANIZATION OF THE PLEDGED ENTITY OR OTHERWISE); (B) ALL CERTIFICATES, INSTRUMENTS OR OTHER WRITINGS REPRESENTING OR EVIDENCING SUCH INTEREST AND ALL ACCOUNTS ARISING OUT OF, OR IN CONNECTION WITH, SUCH INTERESTS; (C) ALL RIGHTS, PRIVILEGES, GENERAL INTANGIBLES, PAYMENT INTANGIBLES, VOTING RIGHTS, AUTHORITY AND POWER ARISING FROM SUCH INTERESTS; (D) ANY AND ALL MONEYS OR PROPERTY DUE AND TO BECOME DUE TO EITHER DEBTOR NOW OR IN THE FUTURE IN RESPECT OF SUCH EQUITY INTERESTS, OR TO WHICH EITHER DEBTOR MAY NOW OR IN THE FUTURE BE ENTITLED IN ITS CAPACITY AS A MEMBER OR OWNER OF ANY PLEDGED ENTITY, WHETHER BY WAY OF A DIVIDEND, DISTRIBUTION, RETURN OF CAPITAL OR OTHERWISE; (E) TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH DEBTOR'S RIGHT, IF ANY, IN EACH PLEDGED ENTITY PURSUANT TO ANY ORGANIZATIONAL DOCUMENT, INCLUDING ANY OPERATING AGREEMENT; (F) ALL OTHER CLAIMS WHICH DEBTOR HAS OR MAY IN THE FUTURE ACQUIRE IN ITS CAPACITY AS A MEMBER OR OWNER OF ANY PLEDGED ENTITY AND ITS PROPERTY; AND (G) TO THE EXTENT NOT OTHERWISE INCLUDED, ALL PRODUCTS AND PROCEEDS OF, AND SUBSTITUTIONS OR REPLACEMENTS FOR, ANY OR ALL OF THE

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

FOREGOING.

149.    Contemporaneous with the Loan Agreement, the Plaintiffs entered into an Intercreditor Agreement with an existing lender. *See* **Exhibit V**.

150.    All of the aforementioned various documents (collectively, the "Loan Documents") were executed and came into full force and effect upon such execution and the funding of the Loan and receipt by the Karma Entities of the Principal in the aggregate amount of Seven Million Five Hundred Thousand and No/100 Dollars ($7,500,000.00).

G.    DEFENDANTS FARACHE AND LISA FARACHE'S PARTICIPATION IN THE DUE DILIGENCE ASSURANCES INDUCING THE APPROVAL OF THE LOAN AND THE KNOWLEDGE OF FARACHE AND LISA FARACHE OF THE PLAINTIFFS' SECURITY INTERESTS IN THE COLLATERAL AUTOMOBILES.

151.    Defendant Farache is well known to the Zankl's. In fact, as above stated, Farache and Scott Zankl have been co-owners of Defendant Excell Auto since 2016. Further, Farache and his wife, Lisa Farache, are the owners of 1001 Clint Moore, LLC, which company serves as the landlord of Karma of Palm Beach.

152.    Farache and Lisa Farache were fully aware of the Plaintiffs' due diligence inquiries and security interest requirements, and participated in, and agreed to, the Plaintiffs' requirements of the Landlord entity as a condition of the Plaintiffs agreeing to enter into the loan transaction. *See* **Exhibit W** (affixing a letter from Lisa Farache, as manager of 1001 Clint Moore, LLC, which directs further communication regarding the matter to, *inter alia*, Farache) [hereinafter, the "Landlord's Waiver and Consent"].

153.    Specifically, Lisa Farache, as the landlord's manager, with the knowledge of Defendant Farache, was requested by the Plaintiffs to, and did, execute a landlord's waiver and consent expressly regarding the Plaintiffs' Loan and entitled: "Re: Loan to Karma of Palm Beach, Inc./Karma of Broward, Inc.[,]" **Exhibit W**, in which:

    a.    Farache's landlord company declares its understanding that the Karma Entities are attempting to obtain funding from the Plaintiffs, and that, as a condition of the Loan, the Plaintiffs require Farache's landlord company's agreement that Farache's landlord company will allow FVP Servicing access to Karma of Palm Beach in the event of a default of the subject lease for the purposes of allowing the Plaintiffs to

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

retrieve their Collateral, thereby establishing Farache and Lisa Farache's understanding that the Plaintiffs, not Farache and Lisa Farache, had a first right to the Collateral;

b.  Farache's landlord company agreed to allow the Plaintiffs access to the premises to retrieve their collateral under circumstances separate and apart from a default of the subject lease; and, finally,

c.  Farache's Landlord company declares that neither it, nor any of its members, *"will in any way either directly, or indirectly, receive any consideration by virtue of the [L]oan . . . ."* *Id.* (emphasis added).

## H.  FARACHE, WITH THE ASSISTANCE OF LISA FARACHE, CHASE FARACHE AND THEIR LAWYERS, CONSPIRE TO DEFRAUD, AND DEFRAUD, THE PLAINTIFFS.

154.    Frank O'Donnell of Biltmore Consultants ("O'Donnell") is an agent of the Zankl's and assumed the obligation to the Plaintiffs to confirm inventory, who, together with his colleagues, monitored the inventory of the Karma Entities.

155.    On April 7, 2022, at or around 11:39 A.M., O'Donnell was advised by a telephone call that, earlier that morning, Farache, Lisa Farache and Chase Farache, and others at their direction, removed over thirty-five (35) automobiles off the lot of Karma of Palm Beach, all of which represented the Plaintiffs' Collateral for the loan and all of which Farache and Lisa Farache were fully aware were the Plaintiffs' Collateral for the loan.

156.    After repeated attempts to communicate went unanswered, and with the Plaintiffs' representatives having observed numerous of their Collateral automobiles missing from the lots of both of the Karma Entities, the Plaintiffs notified the Zankl's and the Karma Entities of their default, **Exhibit X,** and immediately retained a private investigator with federal law enforcement experience to attempt to determine what happened to the Zankl's and the Karma Entities, and what happened to the Plaintiffs' Collateral automobiles.

157.    The private investigator hired by the Plaintiffs, coincidentally, was personally known to the Zankl's. After contacting Scott Zankl and gaining his trust, Scott Zankl gave several statements to the investigator regarding the events that occurred with Defendants Farache, Lisa Farache and Chase Farache and the Plaintiffs' Collateral automobiles. Scott Zankl told the investigator:

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RichardBaronLaw.com

a.  That the Zankl's were indebted to Farache from past loans which were years old.

b.  That Farache had threatened the life of Scott Zankl.

c.  That Farache had threatened to make Scott Zankl "disappear" if he did not turn over to him the Plaintiffs' collateral.

d.  That both Scott Zankl and Kristen Zankl were petrified of Farache.

e.  That Farache had told them that he was associated with Israeli intelligence and criminal underworld figures, and that he was a very dangerous person.

f.  That Farache sent thugs to the business location to intimidate the Zankl's.

g.  That the Zankl's believed the threats.

h.  That Farache appeared at the Karma of Palm Beach location on April 1, 2022 and told the Zankl's that Scott Zankl would "disappear" if they did not give Farache every car and their titles and keys.

i.  That in extreme fear for their lives, the Zankl's turned over all of the Plaintiffs' collateral automobiles, keys and titles on the lot to Farache, and then Kristen Zankl signed a document demanded to be signed by Farache, **Exhibit Y**, which on its face indicates that the nine (9) cars listed in the document are "collateral" for the money owed to Farache by the Zankl's**.**

j.  That on April 8, 2022, the Zankl's reported to the police that Farache had, in fact, stolen the vehicles through extortion the week prior. *Boca Raton Police Department – Report Case No.: 22-4685.*

158.    On April 9, 2022 at 3:00 P.M., the Plaintiffs' attorneys emailed Brandes, then counsel for Defendant Farache, and demanded the return of the Plaintiffs' collateral, an accounting and the location of the vehicles. The demand was not complied with.

159.    On April 9, 2022 at 7:30 pm, undersigned counsel was advised by the Plaintiffs' investigator that Defendant Farache appeared at the location of Karma of Broward and attempted to take possession of even more vehicles illegally and without court process. The police were called, and Defendant Farache left the facility.

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

I.   FARACHE, WITH THE ASSISTANCE OF HIS LAWYERS, MAKES MATERIAL MISREPRESENTATIONS TO THE PLAINTIFFS' LAWYERS, FILES INCONSISTENT AFFIDAVITS, AND MISLEADS THIS COURT TO PERMIT FARACHE TO CONVERT AND SELL THE PLAINTIFFS' COLLATERAL.

160.   Upon information and belief, the information that precipitated Farache, Lisa Farache and Chase Farache to remove all of the vehicles from the Karma Entities' lots on April 1, 2022 was that at or around the end of March of 2022, Marc Brandes told Farache that Brandes had heard from a reliable source in the automobile dealer industry that "the feds" "were going to raid" the Zankl's business locations and that Farache should collect as may cars as he could.

161.   And that is exactly what Farache, Lisa Farache and Chase Farache did.

162.   After Farache, Lisa Farache and Chase Farache took the automobiles from the Karma Entities' lots, Farache, through his attorney Brandes and the Brandes Firm, on April 8, 2022, in an attempt to legitimize the unlawful acts, filed a lawsuit in Palm Beach County, Florida, in which Farache alleged, under oath, that Farache and his companies were entitled to *foreclose a security interest in all of the aforementioned vehicles because he and his companies had a security interest in the vehicles*. **Exhibit Z**.

163.   As is seen in **Exhibit Z**, Farache's sworn complaint materially misrepresents that he did not yet have possession of the vehicles, the same vehicles that he had just taken, and attempts to mislead the Court that he is seeking possession of vehicles that he did not yet possess when he in fact had already taken possession of the vehicles. *See, e.g.*, Verified Complaint at paragraphs 106-107.

164.   Critically, Farache described himself as a *lender* and the automobiles that he sought (already took) as the *"Financed Inventory."* See Master Inventory List – Exhibit D to Exhibit A thereto. The Palm Beach complaint makes clear that Farache was seeking replevin and foreclosure of the "Financed Inventory," and that: "EAG is the record owner of the subject Financed Inventory." *See* Exhibit Z at ¶ 121.

165.   As is explained below, affiant Farache quickly changed his tune when he realized that if he was a lender, he had no rights to the vehicles. Like magic, with the help and assistance of his co-conspirators over the next seven (7) days, Farache the *lender* became Farache the *buyer*.

166.   Brandes and the Brandes Firm knew that this Verified Complaint was false when

**BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW**
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
**PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM**
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

filed, as Brandes well knew that the vehicles were already removed from the Zankl's businesses lots and in the possession of Farache at the time the Verified Complaint was filed.

167.    On April 12, 2022, counsel for the Plaintiffs via email requested that Brandes notify the Plaintiffs of the vehicles that were in the possession of Farache. In response, on April 13, 2022, Brandes sent counsel for the Plaintiffs a list containing 32 vehicles. **Exhibit AA.**

168.    Brandes knew, or on reasonable inquiry should have known, that this list was false when delivered.

*169.*    The following day, April 14, 2022. a hearing was held on the Plaintiffs' Motion for Appointment of a Receiver. *See Transcript of April 14, 2022 Hearing filed of record on 6/2/2022 Filing # 150717053.*

170.    At that hearing, attorney Craig Blinderman, on behalf of the Brandes Firm, represented to the Court that 27 of the expensive luxury cars that Defendants Farache, Lisa Farache and Chase Farache took from what the Plaintiffs claim as their collateral on the list sent to undersigned counsel the day before on April 13, 2022, were in the possession of Farache. (April 14, 2022. Transcript. P 20. "We only have these 27 vehicles. The other vehicles were sold.")

171.    However, minutes before the hearing on April 14, 2022, Defendant Farache, through his attorneys filed a *sworn affidavit* that stated:

9.    AWB also purchased, obtained title and took possession of the vehicles listed as numbers 28-36 on **Exhibit 1**. These vehicles, prior to their purchase by AWB, were in Palm Beach County, Florida, and continue to be held in Palm Beach County, Florida.

10.    AWB is presently storing the aforementioned vehicles in its possession in an air-conditioned, secured facility located in Palm Beach County, Florida. Moreover, AWB procured a commercial general liability insurance in the sum of $500,000, per vehicle, each occurrence. A copy of the certificate of insurance is attached hereto as **Exhibit 4**.

*See Exhibit GG filed of record on 7/21/2022 Filing # 153792567.*

172.    The list attached to Defendant Farache's Affidavit, at Exhibit 1, listed *22 cars*.

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

| | MAKE | MODEL | YEAR | COLOR | VIN | PURCHASE DATE | TITL |
|---|---|---|---|---|---|---|---|
| 1 | ASTON MARTIN | DB11 VOLANTE | 2019 | BEIGE | SCFRMFCW6KGM07671 | 2/28/2022 | Y |
| 2 | FERRARI | F12 BERLINETTA | 2017 | RED | ZFF74UFA7H0221036 | 2/2/2022 | Y |
| 6 | MERCEDES | G63 | 2020 | GREEN | W1NYC7HJ6LX346462 | 2/23/2022 | Y |
| 8 | ROLLS ROYCE | GHOST | 2021 | GRAY | SCATV0C04MU207524 | 3/9/2022 | N |
| 10 | BENTLEY | FLYING SPUR | 2017 | BLACK | SCBEC9ZA0HC065523 | 4/1/2022 | Y |
| 11 | BMW | X7 | 2019 | BLUE | 5UXCX4C56KLS39222 | 12/29/2021 | Y |
| 13 | GMC | YUKON | 2019 | WHITE | 1GKS1CKJ8KR354378 | 3/15/2022 | Y |
| 16 | MCLAREN | 720S | 2018 | WHITE | SBM14DCA9JW000606 | 3/1/2022 | Y |
| 17 | MERCEDES | G WAGON | 2021 | WHITE | W1NYC7HJ0MX390328 | 2/16/2022 | Y |
| 18 | MERCEDES | G63 | 2020 | BLUE | W1NYC7HJ6LX362080 | 2/9/2022 | Y |
| 20 | PORSCHE | 911 | 2008 | RED | WP0AD29978S783176 | 3/15/2022 | Y |
| 24 | MCLAREN | 720S | 2020 | WHITE | SBM14FCA5LW004229 | 1/19/2022 | Y |
| 26 | LAMBORGHINI | URUS | 2019 | BLUE | ZPBUA1ZLXKLA01961 | 3/7/2022 | N |
| 27 | FERRARI | 812 SUPERFAST | 2020 | BLACK | ZFF83CLA1L0254693 | 3/9/2022 | Y |
| 28 | CADILLAC | ESCALADE | 2018 | BLACK | 1GYS4BKJXJR261612 | 4/2/2022 | Y |
| 29 | FERRARI | 458 ITALIA | 2013 | BLACK | ZFF68NHA8D0191526 | 4/2/2022 | Y |
| 30 | JEEP | GLADIATOR | 2021 | BLACK | 1C6HJTAG0ML564806 | 4/2/2022 | Y |
| 31 | JEEP | GLADIATOR | 2021 | BLACK | 1C6HJTAG1ML571540 | 4/2/2022 | Y |
| 32 | LAMBORGHINI | HURACAN | 2017 | BLACK | ZHWUR2ZF8HLA08121 | 4/2/2022 | Y |
| 34 | MCLAREN | 720S | 2018 | BLACK | SBM14DCA7JW001804 | 4/2/2022 | Y |
| 35 | MCLAREN | 720S | 2019 | ORANGE | SBM14FCA9KW003714 | 4/2/2022 | Y |
| 36 | MERCEDES | G CLASS | 2020 | BLUE | WDCYC7HJ9LX334940 | 4/2/2022 | Y |

173. Putting aside that Brandes and Blinderman represented that "27 vehicles that currently are in Mr. Farache's possession. They're being held in an air conditioned secure location" Farache stated in writing and under oath that 22 were in his possession by affidavit on April 14, 2022. Meaning 10 cars were removed from the list sent to the Plaintiffs' attorneys the previous day.

174. At the hearing of April 14, 2022, both by attorneys Brandes and Blinderman, on behalf of the Brandes Firm, in no uncertain terms, and Defendant Farache, himself under oath in writing, stated that the number of cars as represented were safe.

175. The Court took Defendant Farache at his word and ordered a "freeze frame" wherein no cars could be sold, and the number of cars represented as being held by Farache and his attorneys safeguarded. The Court authorized the Plaintiffs to immediately check the vehicles, and the location of the vehicles was stated on the record at the hearing.

176. Immediately after the hearing, Robert Crispin, the Plaintiffs' investigator, went to the "airconditioned warehouse" identified by Defendant Farache and *found only 13 vehicles*. Defendant Farache and his wife Lisa Farache confirmed to Mr. Crispin that those were all the remaining vehicles from the over 32 originally taken by Defendants Farache, Lisa Farache and Chase Farache from the Karma Entities lots.

177. Further, one of the vehicles that Farache represented in his April 14, 2022 Affidavit as being "safeguarded" in the "air-conditioned warehouse" – Vehicle No. 30 in Exhibit 1 in the Farache Affidavit – a 2021 Jeep Gladiator Black, VIN: 1C6HJJAG0ML564806 (Gladiator 4806) which came into the possession of Farache on or about April 1, 2022, was in fact sold during or

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

after the hearing. **Exhibit BB.**

178. Critically, and inexplicably, the Affidavit of Farache filed on April 14, 2022, filed by attorneys Brandes and Blinderman, on behalf of the Brandes Firm, diametrically changed the claim that Farache was making to the vehicles from that filed under oath in the foreclosure action in Palm Beach County six (6) days prior. In the Farache April 14, 2022 Affidavit, Farache swore under oath that he *purchased* all of the vehicles and that he was entitled to the possession of the vehicles because he or his companies then owned them.

179. On April 15, 2022, the Plaintiffs immediately moved to hold Farache in contempt for his intentional misrepresentations to the Court the previous day.

180. In an attempt to defend against the rule to show cause in contempt and to spin the obviously false affidavit filed of record on April 14, 2022, Farache filed a *third* Affidavit on May 26, 2022 in which he offered various excuses for his April 14, 2022 sworn statement and then stated that he was holding *19 vehicles*. Meaning he added six (6) vehicles that he was hiding at a different location when questioned by the investigator on April 14, 2022. **Exhibit CC.**

181. In the May 26, 2022, Farache makes clear that the reason that his prior affidavit filed on April 14, 2022 was inaccurate was the fault of Marc Brandes who filed the affidavit without verifying any of the facts within it and in fact filed a document that was inaccurate. See Exhibit CC.

182. From the date the Plaintiff's collateral was taken from the Karma Entities lots, Farache, Lisa Farache and Chase Farache sold several of the vehicles that comprise the Plaintiffs' collateral and conspired with others to sell the Plaintiffs collateral and fraudulently transferred the proceeds from those sales from the jurisdiction.

183. The acts of Brandes, the Brandes Firm, Farache, Lisa Farache, Chase Farache and other coconspirators in making the aforementioned misrepresentations to the attorneys for the Plaintiffs and the Court were intentional and made for the sole purpose of delaying and obfuscating the ability of the Plaintiffs to retrieve and reclaim their Collateral, permitting Farache, Lisa Farache and Chase Farache, and their aiders, abettors and co-conspirators, to convert, sell or otherwise fraudulently transfer the Plaintiffs Collateral and the proceeds therefrom.

J. FARACHE'S CLAIM TO OWNERSHIP OF ANY OF THE PROPERTY TAKEN IS FRAUDULENT.

184. Farache's claim to ownership to any of the vehicles or other property removed from

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RichardBaronLaw.com

the lots of the Karma Entities, either personally or through any of his companies, was fabricated. The Karma Entities, at all times, owned all of the vehicles that were taken by Farache, Lisa Farache, Chase Farache and their coconspirators.

185.    Farache and Scott Zankl had a creditor / debtor relationship. Part of the creditor / debtor relationship was pursuant to a written loan agreement, while the other part was oral. The result being that Farache was charging and collecting a usurious interest rate from Zankl and his companies over the years.

186.    To hide the illegal loans, Farache created false paperwork to ostensibly show that after one of the Karma Entities purchased a vehicle, it would then purportedly be sold to Excell Auto Group and then to one of the Farache companies.

187.    These transactions were without money representing the market value of the vehicles really being paid between any of the parties and were done at the request of Farache, who apparently believed that these transactions would give the Debtor a basis to assert a security interest in the vehicle to make up for the lack of a security agreement and financing statement from the Karma Entities.

188.    At no time in 2021 for the over 100 fabricated transactions did Farache, or his companies ever take possession of any of the vehicles. At all times, the vehicles remained on the Karma Entities' lots until ultimate customers bought the vehicles by paying funds directly to the Karma Entities. In other words, the Karma Entities sold the vehicles to the end customer.

189.    Transactions in 2022 were no different. Farache, with the forced acquiescence under duress of Scott Zankl and other Karma Entities employees, created false paperwork to show ostensibly that after one of the Karma Entities purchased a vehicle from a third party, the vehicle would then be sold to Excell, which would then either transfer it to Farache or his companies, or back to one of the Karma Entities.

190.    The 2022 transactions were without objective market value being paid or adequate consideration being exchanged between any of the parties and when compared to the value of the vehicles ostensibly transacted. All of the paper transactions were done at the demand of Farache who believed that these transactions would give him or his companies, a legitimate claim to either a security interest in the vehicles, or  ownership of the vehicles.

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

191.    All of the paper transactions were false and intentionally false.

192.    All of the applicable bank records and other documentary evidence reflect that Farache and his companies received millions of dollars from the Karma Entities when it should have been paying those sums if the created putative purchase and sale paperwork was in fact true.

193.    The reason for all of the above sham transactions and the participation of Scott Zankl in the false paperwork is that when Scott Zankl told Farache that he and Excell were having problems paying the money that Zankl and Excell borrowed from Farache, Zankl was threatened by Farache who created an atmosphere of extreme duress and intimidation.

194.    All conditions precedent have occurred or have been waived.

## PART I
## TORT CLAIMS, FRAUDULENT TRANSFER AND PIERCING THE CORPORATE VEIL

### COUNT I
### FRAUD
#### AGAINST LUBIN AND HI BAR

195.    The Plaintiffs realleges paragraphs 1 through 194, and further allege:

196.    Commencing in and around October of 2021 and continuing through the date of the filing of this First Amended Complaint, Defendants Lubin and Hi Bar made representations to the Plaintiffs and others, including lawyers, witnesses and representatives of the Plaintiffs, Zankl and the Karma Entities, that Hi Bar did not have a protectable security interest in the inventory of the Karma Entities.

197.    Lubin and Hi Bar specifically and intentionally caused the filing of a UCC termination statement on or about December 19, 2021 for the express purpose of representing to the Plaintiffs and their due diligence investigators that Hi Bar did not have a protectable security interest in the inventory of the Karma Entities.

198.    This termination of the four (4) days old UCC Financing Statement - **Exhibit E** - was specifically and intentionally made as a material direct, false and fraudulent misrepresentation to the Plaintiffs that Hi Bar had no secured interests in the Karma Entities' collateral. The termination states:

"Effectiveness of the Financing Statement identified above is terminated with respect to

Page 31

the security interests of the Secured Party authorizing this Termination Statement."

199. This representation filed of record in **Exhibit E** was intentionally made to the Plaintiffs and was so made for the sole purpose of notifying the Plaintiffs that Hi Bar had no security interests to protect. This representation was false when made and intentionally false. The Plaintiffs justifiably relied upon the misrepresentation to their detriment.

200. To double down on the fraud, Zakharyayev, an attorney acting for Lubin and Hi Bar, advised O'Donnell, an agent intermediary between the Plaintiffs and Zankl, that the Hi Bar UCC Financing Statement of December 15, 2021 was a mistake and was "erroneously filed." **Exhibit F**.

201. This representation was specifically made to the Plaintiffs for the sole purpose of notifying the Plaintiffs that Hi Bar had no security interests to protect, and was false when made and intentionally false. The Plaintiffs justifiably relied upon the misrepresentation to their detriment.

202. The sole purpose of the termination filed in the public record and communicated to the Plaintiffs, together with the explanation that the filing was a mistake, was to convince the Plaintiffs that Hi Bar had no protectable interest in the collateral of the Karma Entities so that the Plaintiffs would rest assured that Hi Bar was not a threat to their security interests and proceed to fund a loan to the Karma Entities with Lubin and Hi Bar waiting in the wings to pounce with a second UCC Financing Statement which would be filed minutes before any filing by the Plaintiffs.

203. Lubin and Hi Bar knew that the statements were false.

204. Lubin and Hi Bar knew or should have known that the Plaintiffs would rely on the intentional misrepresentations.

205. The Plaintiffs did, in fact, rely upon these false and intentional misrepresentations to their detriment.

206. In justifiable reliance on the aforementioned misrepresentation, the Plaintiffs loaned the Principal to Zankl and the Karma Entities in tranches beginning on January 26, 2022, only to later learn that late the night before Hi Bar, at the request of Lubin, filed a UCC financing statement to ostensibly create a superior position for Lubin and Hi Bar in the Plaintiffs' collateral.

207. The actions of Defendants Lubin and Hi Bar constitute fraud.

Page 32

208.    As a direct and proximate result of Defendants Lubin and Hi Bar's fraud, the Plaintiffs have suffered damages in an amount within the jurisdictional limits of this Court.

209.    The Plaintiffs demand damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the Plaintiffs demand judgment against Defendants Lubin and Hi Bar for an amount within the jurisdictional limits of this Court, and respectfully reserve the right to amend this First Amended Complaint to demand punitive damages and join other parties similarly situated, if and as required. The Plaintiffs demand a trial by jury on Count I.

## COUNT II
## CIVIL CONSPIRACY TO COMMIT FRAUD
### LUBIN AND HI BAR

210.    The Plaintiffs realleges paragraphs 1 through 194, and further allege:

211.    This is an action for civil conspiracy, seeking damages in excess of $30,000, exclusive of interest, attorneys' fees and costs.

212.    Commencing in and around October of 2021, and continuing through the date of the filing of this First Amended Complaint, Defendants Lubin and Hi Bar, together with non-party co-conspirator Zakharyayev and others known and unknown to the Plaintiffs, acted in concert to develop and pursue the scheme detailed *supra* to wrongly defraud the Plaintiffs.

213.    Defendants Lubin, Zakharyayev and Hi Bar, and others known and unknown to the Plaintiffs, acted in concert to make representations to the Plaintiffs and others, including lawyers, witnesses and representatives of the Plaintiffs and Zankl and the Karma Entities, that Hi Bar did not have a protectable security interest in the inventory of the Karma Entities.

214.    Specifically, each of Defendants Lubin and Hi Bar, and non-party Zakharyayev, undertook an overt act, or multiple overt acts, in pursuit of the conspiracy, which include, but are not limited to:

    a.    the filings of the UCC Termination Statement on or about December 19, 2021;

    b.    making assurances to representatives of the Plaintiffs that Hi Bar did not have a protectable security interest in the inventory of the Karma Entities;

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

c.  pressuring Scott Zankl to deliver to Lubin confidential and private loan documents;

d.  planning to file a UCC financing statement late at night for the express purpose of hiding the filing from the due diligence inquiries of the Plaintiffs;

e.  Zakharyayev actually filing the UCC financing statement late at night at the direction of Lubin and Hi Bar for the express purpose of hiding the filing from the due diligence inquiries of the Plaintiffs; and

f.  Lubin pressuring Zankl and the Karma Entities to deliver the Principal to Lubin and Hi Bar knowing full well that the loaned funds could not be used for such purposes and directing the funds be paid to the account of Zakharyayev for distribution to the co-conspirators.

215.    The agreement, scheme and overt acts of Defendants Lubin and Hi Bar, together with non-party co-conspirator Zakharyayev, in furtherance of their unlawful and fraudulent scheme constitutes a civil conspiracy in violation of Florida law.

216.    Defendants Lubin and Hi Bar, together with non-party co-conspirator Zakharyayev, each had a personal stake in the conspiracy, which personal stake was more than incidental and motivated by personal bias.

217.    As a direct and proximate result of Defendants Lubin and Hi Bar, together with non-party co-conspirator Zakharyayev, the Plaintiffs have suffered damages in an amount within the jurisdictional limits of this Court.

218.    The Plaintiffs demand damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the Plaintiffs demand judgment against Defendants Lubin and Hi Bar for an amount within the jurisdictional limits of this Court, and respectfully reserve the right to amend this Complaint to demand punitive damages and join other parties similarly situated, if and as required. The Plaintiffs demand a trial by jury on Count II.

## COUNT III
## NEGLIGENT MISREPRESENTATION
### LUBIN AND HI BAR

219.    The Plaintiffs realleges paragraphs 1 through 194 and further allege:

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

220.    Commencing in and around October of 2021, and continuing through the date of the filing of this First Amended Complaint, Defendants Lubin and Hi Bar made representations to the Plaintiffs and others, including lawyers, witnesses and representatives of the Plaintiffs and Zankl and the Karma Entities, that Hi Bar did not have a protectable security interest in the inventory of the Karma Entities.

221.    Lubin and Hi Bar specifically and intentionally caused the filing of a UCC termination statement on or about December 19, 2021 for the express purpose of representing to the Plaintiffs and their due diligence investigators that Hi Bar did not have a protectable security interest in the inventory of the Karma Entities.

222.    This termination of the four (4) days old UCC Financing Statement - **Exhibit E** - was specifically and intentionally made as a material direct, misrepresentation to the Plaintiffs that Hi Bar had no secured interests in the Karma Entities collateral. The termination states:

"Effectiveness of the Financing Statement identified above is terminated with respect to the security interests of the Secured Party authorizing this Termination Statement.

223.    This representation filed of record in **Exhibit E** was intentionally made to the Plaintiffs and was done for the sole purpose of notifying FVP that Hi Bar had no security interests to protect.

224.    The sole purpose of the termination filed in the public record and communicated to the Plaintiffs, together with the explanation that the filing was a mistake, was to convince the Plaintiffs that Hi Bar had no protectable interest in the collateral of the Karma Entities so that the Plaintiffs would rest assured that Hi Bar was not a threat to their security interests and to proceed to fund a loan to the Karma Entities with Lubin and Hi Bar waiting in the wings to pounce with a second UCC Financing Statement which would be filed minutes before any filing by the Plaintiffs.

225.    To double down on the misrepresentation, Zakharyayev, an attorney acting for Lubin and Hi Bar, at the direction of Lubin and Hi Bar, advised O'Donnell, an agent intermediary between the Plaintiffs and Zankl, that the Hi Bar UCC Financing Statement of December 15, 2021 was a mistake and was "erroneously filed." **Exhibit F**.

226.    These representations were specifically made to the Plaintiffs for the sole purpose of notifying the Plaintiffs that Hi Bar had no security interests to protect.

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

227.    Lubin and Hi Bar, either knew the representations were false, or made the representations without knowledge as to their truth or falsity or made the representations under circumstances in which Lubin and Hi Bar ought to have known of their falsity.

228.    The misrepresentations were of a material fact.

229.    Lubin and Hi Bar intended that the Plaintiffs would rely on the misrepresentations and act upon them.

230.    The Plaintiffs, in fact, justifiably relied upon the misrepresentations and acted upon the misrepresentations to their detriment.

231.    In justifiable reliance on the aforementioned misrepresentation, the Plaintiffs loaned the Principal to Zankl and the Karma Entities in tranches beginning on January 26, 2022, only to later learn that late the night before Hi Bar, at the request of Lubin, filed a UCC financing statement to ostensibly create a superior position for the Lubin and Hi Bar in the Plaintiffs' collateral.

232.    The actions of Defendants Lubin and Hi Bar constitute negligent misrepresentation.

233.    As a direct and proximate result of Defendants Lubin and Hi Bar's negligent misrepresentation, the Plaintiffs have suffered damages in an amount within the jurisdictional limits of this Court.

234.    The Plaintiffs demand damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the Plaintiffs demand judgment against Defendants Lubin and Hi Bar for an amount within the jurisdictional limits of this Court. The Plaintiff demands a trial by jury on Count III.

## COUNT IV
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP
### LUBIN AND HI BAR

235.    The Plaintiffs reallege paragraphs 1 through 194 and further allege:

236.    This is an action for intentional interference with advantageous business relationships, seeking damages in excess of $30,000, exclusive of interest, attorneys' fees and costs.

Page 36

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

237.    Commencing in and around October of 2021 and continuing through the date of the filing of this complaint, the Plaintiffs had a prospective and ongoing business relationship with the Zankl's and the Karma Entities.

238.    Defendants Lubin and Hi Bar were fully aware of the existence of the prospective and ongoing business relationship.

239.    Through statements and acts, Defendants Lubin and Hi Bar, personally or by and through their agents, intentionally, knowingly and without justification interfered with those advantageous and prospective business relationships by making material misrepresentations, engaging in unlawful acts and surreptitiously scheming to impose their interests in a superior position to the Plaintiffs by unconscionable and tortious acts as pled in this First Amended Complaint.

240.    As a direct and proximate result, the Plaintiffs have suffered damages within the jurisdictional limits of this Court.

241.    The Plaintiffs demand damages in an amount within the jurisdictional limits of this Court.

242.    All conditions precedent to this action have occurred, have been performed or have been waived.

WHEREFORE, the Plaintiffs demand judgment against Defendants Lubin and Hi Bar for an amount within the jurisdictional limits of this Court. The Plaintiffs demand a trial by jury on Count IV.

## COUNT V
## NEGLIGENT MISREPRESENTATION
### GRANER AND GRANER LAW GROUP

243.    The Plaintiffs reallege paragraphs 1 through 194 and further allege:

244.    As and part of the Plaintiffs' due diligence and as a required condition of the loan closing and funding, the Plaintiffs required Zankl and the Karma Entities to arrange a licensed attorney in the state of Florida to issue an opinion letter regarding the Zankl's and the Karma Entities' status, and the ability of the Plaintiffs to perfect their security interest in the Karma Entities' inventory.

Page 37

245. To that end, Defendants Graner and the Graner Law Group undertook the responsibility to investigate the facts and issue the opinion.

246. On January 26, 2022, the Plaintiffs were provided with an opinion letter issued by Defendants Graner and the Graner Law Group. *See* **Exhibit M.**

247. Defendants Graner and the Graner Law Group rendered the following opinions:

> 4. The consummation of the transactions contemplated by the Loan Documents and the carrying out of the terms thereof will not result in violation of any provisions of the articles of incorporation, bylaws or other governing documents of any Borrower, or result in the violation of any provision of, or in a default under, any indenture, mortgage, deed of trust, indebtedness, agreement, judgment, decree, order, statute, rule or regulation to which any Credit Party is a party or by which it or its property is bound.

> 5. There are no legal or governmental actions, suits, proceedings, inquiries or investigations pending, threatened or contemplated, or any basis therefor, to which any Credit Party is or may become a party or of which any property of any Credit Party is or may become subject, which, if determined adversely to such Credit Party, would not, individually or in the aggregate, have a material adverse effect on the financial position or results of operations of such Credit Party or on any Collateral owned by such Credit Party.

> 6. The provisions of the Security Agreement and the Pledge Agreement are effective to create a security interest in favor of the Administrative Agent, for the benefit of the Lenders, in all of each Borrower's right, title and interest in and to the Collateral described therein and all proceeds thereof. Such security interest has been properly perfected.

248. Relying on the aforementioned representations and assurances, the Plaintiffs entered into, *inter alia,* the Loan Documents with the Karma Entities through their owners, the Zankl's. *See* **Exhibit N, et seq.**

249. The statements and opinions expressed in the Graner Opinion Letter were false, and Defendants Graner and the Graner Law Group knew or should have known of the falsity of the opinions and statements.

250. These representations were specifically and intentionally made to the Plaintiffs to rely upon in their funding decision, and Defendants Graner and the Graner Law Group intended that the Plaintiffs rely on them.

251. Defendants Graner and the Graner Law Group either knew the statements and

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

opinions were false, or made the statements and opinions without knowledge as to their truth or falsity or made the representations under circumstances in which Defendants Graner and the Graner Law Group ought to have known of their falsity.

252.    The misrepresentations were of material facts.

253.    The Plaintiffs, in fact, justifiably relied upon the misrepresentations and acted upon the misrepresentations to their detriment.

254.    In justifiable reliance on the aforementioned misrepresentation, the Plaintiffs loaned funds to Zankl and the Karma Entities on January 26, 2022, only to later learn that there were numerous and substantial indebtedness, agreements, claims and threatened proceedings in direct contradiction to the statements and opinions, and that the Plaintiffs security interests were not perfected.

255.    The actions of Defendants Graner and the Graner Law Group constitute negligent misrepresentation.

256.    As a direct and proximate result of Defendants Graner and the Graner Law Group's negligent misrepresentation, the Plaintiffs have suffered damages in an amount within the jurisdictional limits of this Court.

257.    The Plaintiffs demand damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the Plaintiffs demand judgment against Defendants Graner and the Graner Law Group for an amount within the jurisdictional limits of this Court. The Plaintiffs demand a trial by jury on Count V.

## COUNT VI
## BREACH OF FIDUCIARY DUTY
### GRANER AND GRANER LAW GROUP

258.    The Plaintiffs reallege paragraphs 1 through 194 and further allege:

259.    As and part of the Plaintiffs' due diligence and as a required condition of the loan closing and funding, the Plaintiffs required Zankl and the Karma Entities to arrange a licensed attorney in the state of Florida to issue an opinion letter regarding the Zankl and the Karma Entities' status and the ability of the Plaintiffs to perfect their security interest in the Karma Entities

Page 39

inventory.

260. To that end, Defendants Graner and the Graner Law Group undertook the responsibility to investigate the facts and issue the opinion.

261. On January 26, 2022, the Plaintiffs were provided with an opinion letter issued by Defendants Graner and the Graner Law Group. See Exhibit M.

262. Defendants Graner and the Graner Law Group rendered the following opinions:

> 4. The consummation of the transactions contemplated by the Loan Documents and the carrying out of the terms thereof will not result in violation of any provisions of the articles of incorporation, bylaws or other governing documents of any Borrower, or result in the violation of any provision of, or in a default under, any indenture, mortgage, deed of trust, indebtedness, agreement, judgment, decree, order, statute, rule or regulation to which any Credit Party is a party or by which it or its property is bound.

> 5. There are no legal or governmental actions, suits, proceedings, inquiries or investigations pending, threatened or contemplated, or any basis therefor, to which any Credit Party is or may become a party or of which any property of any Credit Party is or may become subject, which, if determined adversely to such Credit Party, would not, individually or in the aggregate, have a material adverse effect on the financial position or results of operations of such Credit Party or on any Collateral owned by such Credit Party.

> 6. The provisions of the Security Agreement and the Pledge Agreement are effective to create a security interest in favor of the Administrative Agent, for the benefit of the Lenders, in all of each Borrower's right, title and interest in and to the Collateral described therein and all proceeds thereof. Such security interest has been properly perfected.

*263.* Relying on the aforementioned representations and assurances, the Plaintiffs entered into, *inter alia*, the Loan Documents with the Karma Entities through their owners, the Zankl's. *See* Exhibit N, *et seq.*

264. The statements and opinions expressed in the Graner Opinion Letter were false, and Defendants Graner and the Graner Law Group knew or should have known of the falsity of the opinions and statements.

265. These representations were specifically and intentionally made to the Plaintiffs to rely upon in their funding decision, and Defendants Graner and the Graner Law Group intended that the Plaintiffs rely on them.

Page 40

266. Defendants Graner and the Graner Law Group made representations to the Plaintiffs about Graner's legal background, education, training and licensure to satisfy the Plaintiffs that Defendants Graner and the Graner Law Group could render an opinion on which the Plaintiffs could rely.

267. There existed a relation of trust and confidence between Defendants Graner and the Graner Law Group, on the one hand, and the Plaintiffs, on the other hand, where confidence was reposed by the Plaintiffs in Defendants Graner and the Graner Law Group, and a trust was accepted by Defendants Graner and the Graner Law Group.

268. The trust in Defendants Graner and the Graner Law Group was intentionally acquired and abused.

269. Defendants Graner and the Graner Law Group had a fiduciary duty to the Plaintiffs.

270. Defendants Graner and the Graner Law Group breached their fiduciary duty to the Plaintiffs.

271. As a direct and proximate result of Defendants Graner and the Graner Law Group's breach of fiduciary duty, the Plaintiffs have been damaged in an amount within the jurisdictional limits of this court.

272. The Plaintiffs demand damages from Defendants Graner and the Graner Law Group.

WHEREFORE, the Plaintiffs demand judgment against Defendants Graner and the Graner Law Group for an amount within the jurisdictional limits of this Court. The Plaintiffs demand a trial by jury on Count VI.

### COUNT VII
### FRAUD
#### FARACHE AND LISA FARACHE

273. The Plaintiffs reallege paragraphs 1 through 194 and further allege:

274. As outlined in paragraphs 135 through 194, commencing in January of 2022 and continuing through the time of the filing of this First Amended Complaint, Defendants Farache and Lisa Farache made numerous material representations to the Plaintiffs and others, including lawyers, witnesses and representatives of FVP and Zankl and the Karma Entities, regarding or

Page 41

relating to:

    a.   the FVP security interests in the Karma Entities' inventory;

    b.   Farache and Lisa Farache's claims to interests in the Karma Entities' collateral;

    c.   the ownership of the vehicles in the Karma Entities' collateral;

    d.   the possession of automobiles formerly in the Karma Entities' inventory;

    e.   the sale of vehicles in the Karma Entities' inventory;

    f.   false purchase and sale transactions regarding the Karma Entities' inventory; and

    g.   creating false paperwork to suggest that Defendants Farache and Lisa Farache claimed an interest in the Karma Entities' inventory.

275. The representations of Defendants Farache and Lisa Farache were specifically and intentionally made as a material direct, false and fraudulent misrepresentation to the Plaintiffs regarding the rights of the Plaintiffs in and to the Karma Entities' inventory, and the rights of Defendants Farache and Lisa Farache in and to the Karma Entities' inventory.

276. The representations of Defendants Farache and Lisa Farache were specifically and intentionally made to dissuade the Plaintiffs in enforcing their rights by providing the Plaintiffs with false and fraudulent statements and documents, and to delay and obfuscate the Plaintiff's attempts to locate and retrieve its collateral.

277. Defendants Farache and Lisa Farache at all times knew the statements, documents and representations were false.

278. Defendants Farache and Lisa Farache knew or should have known that the Plaintiffs would rely on the intentional misrepresentations.

279. The Plaintiffs did, in fact, rely upon these false and intentional misrepresentations, which caused the Plaintiffs to delay their collection and retrieval efforts to their detriment and which permitted Defendants Farache and Lisa Farache to sell vehicles to which they were not entitled and fraudulently transfer the funds outside of the jurisdiction of this court.

280. The actions of Defendants Farache and Lisa Farache constitute fraud.

281. As a direct and proximate result of Defendants Farache and Lisa Farache's fraud,

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

the Plaintiffs have suffered damages in an amount within the jurisdictional limits of this Court.

282.    The Plaintiffs demand damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the Plaintiffs demand judgment against Defendants Farache and Lisa Farache for an amount within the jurisdictional limits of this Court, and respectfully reserve the right to amend this Complaint to demand punitive damages and join other parties similarly situated, if and as required. The Plaintiffs demand a trial by jury on Count VII.

## COUNT VIII
## CONVERSION
### FARACHE, LISA FARACHE AND CHASE FARACHE

283.    The Plaintiffs reallege 1 through 194 and further allege:

284.    This is an action for conversion against Defendants Farache, Lisa Farache and Chase Farache for the intentional tort of conversion of the corporate assets of the Plaintiffs.

285.    As outlined in paragraphs 135 through 194, commencing in January of 2022 and continuing through the time of the filing of this First Amended Complaint, Defendants Farache, Lisa Farache and Chase Farache have wrongfully asserted dominion and control over the assets and property of the Plaintiffs in the form of the secured collateral of the Plaintiffs in the inventory of the Karma Entities as articulated in this First Amended Complaint.

286.    Defendants Farache, Lisa Farache and Chase Farache's acts in wrongfully depriving the Plaintiffs of their assets and property comprised a wrongful exercise or assumption of authority over the assets and property of the Plaintiffs to the detriment of the Plaintiffs.

287.    Defendants Farache, Lisa Farache and Chase Farache's acts in wrongfully depriving the Plaintiffs of their assets and property comprised a wrongful exercise or assumption of authority over the assets and property of the Plaintiffs for an indefinite period of time.

288.    Defendants Farache, Lisa Farache and Chase Farache wrongfully refused to relinquish dominion and control over the Plaintiffs' collateral despite demand from the Plaintiffs who have the right to possess the collateral.

289.    The acts of Defendants Farache, Lisa Farache and Chase Farache comprise conversion of the corporate assets of the Plaintiffs.

Page 43

290.    The Plaintiffs have been damaged by the conversion of their corporate assets.

291.    The value of the wrongfully converted assets and property are within the jurisdictional limits of this Court.

292.    The Plaintiffs demand damages in an amount within the jurisdictional limits of this Court.

293.    There is no dispute as to the respective rights, duties and obligations of the parties.

WHEREFORE, the Plaintiffs demand judgment against Defendants Farache, Lisa Farache and Chase Farache for an amount within the jurisdictional limits of this Court. The Plaintiffs demand a trial by jury on Count VIII.

## COUNT IX
## CONSPIRACY TO CONVERT FVP COLLATERAL
### FARACHE, LISA FARACHE, CHASE FARACHE, BRANDES AND THE BRANDES FIRM

294.    The Plaintiffs reallege paragraphs 1 through 194 and further allege:

295.    This is an action for civil conspiracy, seeking damages in excess of $30,000, exclusive of interest, attorneys' fees and costs.

296.    Commencing in and around October of 2021, and continuing through the date of the filing of this First Amended Complaint, Defendants Farache, Lisa Farache, Chase Farache, Brandes and the Brandes Firm, together with non-party co-conspirator Craig Blinderman and others known and unknown to the Plaintiffs, acted in concert to develop and pursue the scheme detailed above to wrongly convert the collateral of the Plaintiffs.

297.    Defendants Farache, Lisa Farache, Chase Farache, Brandes and the Brandes Firm, together with non-party co-conspirator Craig Blinderman, acted in concert to make representations to the Plaintiffs and others, including lawyers, witnesses and representatives of the Plaintiffs and Zankl and the Karma Entities, that Defendants Farache, Lisa Farache and Chase Farache had a legitimate ownership interest in the inventory of the Karma Entities and therefore the Plaintiffs' collateral.

298.    Specifically, each of Defendants Farache, Lisa Farache, Chase Farache, Brandes and the Brandes Firm, together with non-party co-conspirator Craig Blinderman, undertook an overt act, or multiple overt acts, in pursuit of the conspiracy, which include, but are not limited to:

Page 44

a.  Making material misrepresentations to the attorneys for the Plaintiffs regarding the possession and whereabouts of the Karma Entities inventory unlawfully seized on April 1, 2022.

b.  Filing a false Affidavit in this action on April 14, 2022.

c.  Materially misleading both the Plaintiffs and this Court regarding the possession and whereabouts of the Karma Entities' inventory.

d.  Hiding and disguising the sale of the Karma Entities' inventory in which the Plaintiffs have a secured interest from both the Plaintiffs and this Court.

e.  Making false assurances to the Plaintiffs and their attorneys that the Plaintiffs' collateral was safeguarded, only to hide the sale of several of the vehicles.

299.   The agreement, scheme and overt acts of Defendants Farache, Lisa Farache, Chase Farache, Brandes and the Brandes Firm, together with non-party co-conspirator Craig Blinderman, in furtherance of their unlawful and fraudulent scheme constitutes a civil conspiracy in violation of Florida law.

300.   Defendants Farache, Lisa Farache, Chase Farache, Brandes and the Brandes Firm, together with non-party co-conspirator Craig Blinderman, each had a personal stake in the conspiracy, which personal stake was more than incidental and motivated by personal bias.

301.   As a direct and proximate result of Defendants Farache, Lisa Farache, Chase Farache, Brandes and the Brandes Firm, together with non-party co-conspirator Craig Blinderman's conspiracy, the Plaintiffs have suffered damages in an amount within the jurisdictional limits of this Court.

302.   The Plaintiffs demand damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the Plaintiffs demand judgment against Defendants Farache, Lisa Farache, Chase Farache, Brandes and the Brandes Firm for an amount within the jurisdictional limits of this Court, and respectfully reserve the right to amend this First Amended Complaint to demand punitive damages and join other parties similarly situated, if and as required. The Plaintiffs demand a trial by jury on Count IX.

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

## COUNT X
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP
### FARACHE, LISA FARACHE AND CHASE FARACHE

303.    The Plaintiffs reallege paragraphs 1 through 194 and further allege:

304.    This is an action for intentional interference with advantageous business relationships, seeking damages in excess of $30,000, exclusive of interest, attorneys' fees and costs.

305.    Commencing in and around October of 2021, and continuing through the date of the filing of this First Amended Complaint, the Plaintiffs had a prospective and ongoing business relationship with the Zankl's and the Karma Entities.

306.    Defendants Farache, Lisa Farache and Chase Farache were fully aware of the existence of the prospective and ongoing business relationship.

307.    Through statements and acts, Defendants Farache, Lisa Farache and Chase Farache personally, or by and through their agents, intentionally, knowingly and without justification, interfered with those advantageous and prospective business relationships by making material misrepresentations, engaging in unlawful acts and surreptitiously scheming to convert the Plaintiffs' collateral, converting the Plaintiffs' collateral and disrupting the financial benefits flowing to the Plaintiffs from the business relationship with the Zankl's and the Karma Entities.

308.    As a direct and proximate result, the Plaintiffs have suffered damages within the jurisdictional limits of this Court.

309.    The Plaintiffs demand damages in an amount within the jurisdictional limits of this Court.

310.    All conditions precedent to this action have occurred, have been performed or have been waived.

WHEREFORE, the Plaintiffs demand judgment against Defendants Farache, Lisa Farache and Chase Farache for an amount within the jurisdictional limits of this Court. The Plaintiffs demand a trial by jury on Count X.

## COUNT XI
## FRAUDULENT TRANSFER – FL. STAT. §§ 726.105, ET. SEQ.
### FARACHE, LISA FARACHE, EXCELL AUTO,

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

**KARMA ENTITIES AND THEIR PRINCIPALS, HI BAR, JOSH LUBIN AND MMS**

311.    The Plaintiffs reallege paragraphs 1 through 194:

312.    This is a claim to avoid and recover fraudulent transfers pursuant to Section 726.105(1)(a)-(b) of the Florida Statutes, and to hold the transferees liable for damages under Florida law.

313.    The Plaintiffs are a creditor as defined in Fla. Stat. § 726.102, as they hold claims against the Karma Entities under those certain loan agreements.

314.    Each of Defendants Karma of Broward, Karma of Palm Beach and Defendants Moshe Farache, Lisa Farache, Hi Bar, Lubin and MMS are a debtor as defined in Fla. Stat. § 726.102 to the Plaintiffs.

315.    Defendants Moshe Farache, Lisa Farache and Lubin are insiders as defined in Fla. Stat. § 726.102.

316.    The Karma Entities represented that the Karma Entities would expressly use the Plaintiffs' Loan proceeds "for purposes of purchasing exotic car inventory for Palm Beach and Broward, paying transaction costs and expenses incurred in connection herewith, for general working capital purposes [] and other purposes expressly permitted hereunder." Loan Documents at 1.

317.    The Karma Entities represented that they owned the Plaintiffs' collateral free and clear of all encumbrances at §§ 2.2, Schedules 2.1, 2.7-2.8, 2.12, and that, *inter alia*, the Plaintiffs' collateral would serve as a continuing security interest to secure the prompt payment and performance of the Loan.

318.    Farache, including through a document signed by his wife Lisa Farache as Manager of the Landlord company, of which he is the beneficial owner, on which he was expressly copied, acknowledged the Plaintiffs' security interest in the Collateral and represented that he would not interfere with the Plaintiffs' rights relative to it.

319.    The aforementioned representations by the Karma Entities and Defendants Farache and Lisa Farache were and are false and intentionally false.

320.    The Karma Entities, Defendants Farache and Lisa Farache, Hi Bar and Lubin combined and conspired to defraud the Plaintiffs, and to fraudulently transfer funds, collateral and

Page 47

assets outside of the Plaintiffs' control and reach.

321.    In justifiable reliance on the false representations of the Karma Entities, the Zankl's, Defendants Farache and Lisa Farache, Lubin and Hi Bar, the Plaintiffs actually made the Loan to the Karma Entities, fully secured by the Plaintiffs' collateral comprised of the Karma Entities' collateral.

322.    Those funds, once received, upon information and belief, were transferred to Lubin, non-party Zakharyayev, Farache, Lisa Farache, MMS and other entities unknown to the Plaintiffs, and in direct violation of the loan facility agreement between the Plaintiffs, on the one hand, and the Zankl's and the Karma Entities, on the other hand.

323.    The Plaintiffs have a claim against the Karma Entities, the Zankl's, Farache, Lisa Farache, Lubin, Hi Bar and MMS, and other entities unknown to the Plaintiffs as defined under Florida's Fraudulent Transfer Act, and such claim existed on the date the Karma Entities, the Zankl's, Farache, Lisa Farache, Lubin, Hi Bar and MMS unlawfully transferred and received the Plaintiffs' loan proceeds and collateral.

324.    At the time of the transfer of the Plaintiffs' loan proceeds and collateral to Farache, Lisa Farache, Lubin, non-party Zakharyayev, Hi Bar and MMS, and other entities unknown to the Plaintiffs, the Plaintiffs were a "creditor" of the Karma Entities and the Zankl's as defined under Florida's Fraudulent Transfer Act.

325.    Any transfer to Farache, Lisa Farache, Lubin, non-party Zakharyayev, Hi Bar and MMS, and other entities unknown to the Plaintiffs, was made with the actual intent of hindering, delaying or defrauding creditors, including the Plaintiffs.

326.    At the time of the transfers described in this Count, the Karma Entities, the Zankl's, Farache and Lisa Farache had incurred or intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

327.    As a result of Farache, Lisa Farache, Lubin, Hi Bar and MMS' actions in removing the Plaintiffs' collateral from the control of the Karma Entities, the Plaintiffs hold "claims" against Farache, Lisa Farache, Lubin, Hi Bar and MMS, as the Karma Entities and the Zankl's were "debtors" of the Plaintiffs under Florida's Uniform Fraudulent Transfer Act, § 726.101, *et seq.*, Florida Statutes.

Page 48

328.    These fraudulent transfers should have been, and were expressly intended to be, applicable to payment of debt due to the Plaintiffs under the Loan Documents.

329.    These transfers constitute "transfers" within the meaning of Florida's Uniform Fraudulent Transfer Act.

330.    Accordingly, Karma Entities and the Zankl's transfers of the Plaintiffs' collateral to Farache, Lisa Farache, Lubin, non-party Zakharyayev, Hi Bar and MMS, and other entities unknown to the Plaintiffs, are avoidable and recoverable by the Plaintiffs pursuant to Chapter 726 of the Florida Statutes.

331.    The Plaintiffs seek all remedies available under Section 726.108 of the Florida Statutes, including:

(a)    avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(b)    an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law;

(c)    subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

1.    an injunction against further disposition by the debtor or a transferee, or both, of the assets transferred or of other property;

2.    appointment of a receiver to take charge of the assets transferred, or of other property of the transferee; and/or

3.    any other relief the circumstances may require.

332.    The Plaintiffs demand all damages and remedies under the law against the fraudulent transferees.

333.    The Plaintiffs reserve the right to amend this First Amended Complaint to name individual third parties of Spin Capital and Hi Bar, or other transferees under Florida's Uniform Fraudulent Transfer Act.

WHEREFORE, the Plaintiffs demand judgment against Defendants Karma of Broward, Karma of Palm Beach and Farache, Lisa Farache, Hi Bar, Lubin, and MMS, and other entities currently unknown to the Plaintiffs, setting aside and avoiding the transfers described above, for monetary damages within the jurisdiction of this Honorable Court, and for injunctive relief as the Court deems appropriate.

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

## COUNT XII
## PIERCE THE CORPORATE VEIL

### MOSHE FARACHE AND LISA FARACHE

334.    The Plaintiffs reallege paragraphs 1 through 194 and further allege:

335.    This is an action to pierce the corporate veil of AWB and MMS to hold Defendants Moshe Farache and Lisa Farache personally liable for the claims made in this complaint.

336.    Defendants Moshe Farache and Lisa Farache dominated and controlled AWB and MMS to such an extent that AWB and MMS's independent existence, was in fact non-existent and the Defendants Moshe Farache and Lisa Farache were in fact an alter ego of AWB and MMS.

337.    Defendants Moshe Farache and Lisa Farache knowingly and intentionally used AWB and MMS for improper purposes.

338.    The fraudulent or improper use of the corporate form of AWB and MMS by Defendants Moshe Farache and Lisa Farache caused injury to Plaintiff.

339.    There was a complete a lack of separateness between AWB and MMS and its owners, members and shareholder(s) Defendants Moshe Farache and Lisa Farache.

340.    There was improper conduct in the use of the corporations AWB and MMS by the shareholder(s) owners, members and shareholder(s) Defendants Moshe Farache and Lisa Farache.

341.    The improper conduct was the proximate cause of the loss to the Plaintiffs.

342.    Plaintiff demands that all sums due to the Plaintiff from the claims made in this complaint be adjudged against Defendants Moshe Farache and Lisa Farache individually.

WHEREFORE, the Plaintiff demands a judgment piercing the corporate veil and stating that Defendants Moshe Farache and Lisa Farache are personally and individually liable for the sums due the Plaintiffs as pled in this complaint.

## COUNT XIII
## PIERCE THE CORPORATE VEIL

### JOSH LUBIN, SPIN AND HI BAR

343.    The Plaintiffs reallege paragraphs 1 through 194, and further allege as follows:

344.    This is an action to pierce the corporate veil of Spin and Hi Bar to hold Defendant

Page 50

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RichardBaronLaw.com

Lubin personally liable for the claims made in this First Amended Complaint.

345.   Defendant Lubin dominated and controlled Spin and Hi Bar to such an extent that Spin and Hi Bar's independent existence was in fact non-existent, and Defendant Lubin was in fact an alter ego of Spin and Hi Bar.

346.   Defendant Lubin knowingly and intentionally used Spin and Hi Bar for improper purposes.

347.   The fraudulent or improper use of the corporate form of Spin and Hi Bar by Defendant Lubin caused injury to Plaintiffs.

348.   There was a complete a lack of separateness between Spin and Hi Bar and its owners, members and shareholder(s), and in particular Defendant Lubin.

349.    There was improper conduct in the use of the corporations Spin and Hi Bar by Defendant Josh Lubin who is a shareholder(s), owner, member or director of Spin and Hi Bar.

350.   The improper conduct was the proximate cause of the loss to the Plaintiffs.

351.   The Plaintiffs demand that all sums due to the Plaintiffs from the claims made in this First Amended Complaint against Hi Bar, and arising from Spin's conduct, be adjudged against Defendant Lubin, individually.

WHEREFORE, the Plaintiffs demand a judgment piercing the corporate veil and stating that Defendant Lubin is personally and individually liable for the sums due to the Plaintiffs as pled in this First Amended Complaint.

**COUNT XIV**
**FRAUD IN THE INDUCEMENT –**
**LOAN AGREEMENT, GUARANTY,**
**PROMISSORY NOTES, SECURITY AGREEMENT, PLEDGE AGREEMENT**
**AGAINST KARMA OF BROWARD, KARMA OF PALM BEACH,**
**SCOTT ZANKL, KRISTEN ZANKL, MOSHE FARACHE, LISA FARACHE, JOSH LUBIN AND HI BAR**

352.   The Plaintiffs reallege paragraphs 1 through 194 as if fully restated within this Count XIV, and further allege:

353.   During the due diligence preceding the Loan Agreement, the Promissory Notes, the Security Agreement, the Guaranty, and the Pledge and Security Agreement ("Loan Documents"), and continuing through April of 2022, representations were made to the Plaintiffs as follows:

Page 51

**BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW**
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
**PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM**
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RichardBaronLaw.com

a.      The Zankl's and the Karma Entities represented that there were no other agreements or obligations outstanding with any third parties or entities that would materially affect the right of the Plaintiffs to their collateral interests granted under the Loan Documents.

b.      Lubin and Hi Bar made material misrepresentations as pled herein in paragraphs 47 through 134.

c.      The Zankl's and the Karma Entities represented that the Karma Entities would expressly use the Loan proceeds "for purposes of purchasing exotic car inventory for Palm Beach and Broward, paying transaction costs and expenses incurred in connection herewith, for general working capital purposes [] and other purposes expressly permitted hereunder[,]"

d.      The Zankl's and the Karma Entities represented that they owned the Plaintiffs' collateral free and clear of all encumbrances, at §§ 2.2, Schedules 2.1, 2.7-2.8, 2.12, and that, *inter alia*, the Plaintiffs' collateral would serve as a continuing security interest to secure the prompt payment and performance of the Loan.

e.      Farache, including through a document signed by his wife Lisa Farache as Manager of the Landlord company, of which he is a beneficial owner, on which it was expressly indicated that future correspondence should be directed to Farache, expressly acknowledged the Plaintiffs' security interest in their collateral and represented that he would not interfere with the Plaintiffs' rights relative to it.

354.    The representations of the Zankl's and the Karma Entities Farache, Lisa Farache, Lubin and Hi Bar were not true when made, and were an intentional and willful misstatement of fact or facts that the Zankl's, the Karma Entities and Farache knew or should have known that the Plaintiffs would rely on to their detriment.

355.    The Zankl's, the Karma Entities, Farache, Lisa Farache, Lubin and Hi Bar made misrepresentations of material facts as outlined with specificity in this complaint.

356.    The Zankl's, the Karma Entities, Farache, Lisa Farache, Lubin and Hi Bar knew or should have known of the numerous statements' falsity.

357.    The Zankl's, the Karma Entities, Farache, Lisa Farache, Lubin and Hi Bar had the

Page 52

intent that the representations would induce the Plaintiffs to rely and act on them.

358.    The actions of the Karma Entities, the Zankl's, Farache, Lisa Farache, Lubin and Hi Bar constitute fraud.

359.    In justifiable reliance on the misrepresentations of the Karma Entities, the Zankl's, Farache, Lisa Farache, Lubin and Hi Bar, the Plaintiffs executed the Loan Agreements and funded the loans to the Karma Entities in the amount of Seven Million Five Hundred Thousand Dollars ($7,500,000.00).

360.    But for the intentional and fraudulent misrepresentations of the Karma Entities, the Zankl's, Farache, Lisa Farache, Lubin and Hi Bar, the Plaintiffs would not have executed the Loan Agreements and funded the loans to the Karma Entities in the amount of Seven Million Five Hundred Thousand Dollars ($7,500,000.00).

361.    The Loan Agreements were the product of fraudulent inducement by the Karma Entities, the Zankl's, e Farache, Lisa Farache, Lubin and Hi Bar.

362.    As a direct and proximate result of the fraud in the inducement of the Karma Entities, the Zankl's, Farache, Lisa Farache, Lubin and Hi Bar, the Plaintiffs have been damaged in the amount of Seven Million Five Hundred Thousand Dollars ($7,500,000.00) plus those costs and expenses expended to recover in this action.

WHEREFORE, the Plaintiffs demand judgment against Karma of Broward, Karma of Palm Beach, Scott Zankl, Kristen Zankl, Farache, Lisa Farache, Lubin and Hi Bar for damages in an amount within the jurisdictional limits of this Court, as well as any other and further injunctive and/or equitable relief as this Court deems just and proper in order to do justice, and respectfully reserve the right to amend this First Amended Complaint to demand punitive damages and join other parties similarly situated, if and as required. The Plaintiffs demand a trial by jury on Count XIV.

## DEMAND FOR TRIAL BY JURY

The Plaintiffs demand trial by jury on those Counts identified in Part I of this First Amended Complaint as requesting trial by jury.

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

## PART II

### COUNT XV THROUGH COUNT XXI
### THE LOAN DOCUMENTS AND FORECLOSURE COUNTS
#### AGAINST KARMA OF BROWARD, KARMA OF PALM BEACH,
#### SCOTT ZANKL, KRISTEN ZANKL

### COUNT XV
### BREACH OF CONTRACT – LOAN AGREEMENT
#### KARMA OF BROWARD AND KARMA OF PALM BEACH

363. The Plaintiffs reallege paragraphs 1 through 194 as if fully restated herein, and further allege:

364. The Plaintiffs and Defendants the Karma Entities and the Zankl's entered into the Loan Agreement. *See* **Exhibit N.**

365. The Loan Agreement imposed obligations on the parties to it.

366. The Plaintiffs complied with all of its duties and obligations under the Loan Agreement.

367. Defendants the Karma Entities and the Zankl's materially breached their duties and obligations under the Loan Agreement in multiple respects as pled herein.

368. As a direct and proximate result of the aforedescribed breach of the Loan Agreement, the Plaintiffs have sustained direct and consequential monetary damages in addition to any other damages set forth in the Loan Agreement or permitted at law or in equity, and all of the Plaintiffs' expenses incurred with respect to such default, including reasonable attorneys' fees, money expended in reliance on the contract and lost business opportunity.

369. The Plaintiffs demand all damages available under the Loan Agreement and Florida law.

370. The Plaintiffs were required to retain undersigned counsel to prosecute this action and have agreed to pay undersigned counsel a reasonable fee.

371. The Plaintiffs demand their attorney's fees and costs pursuant to the Loan Agreement between the parties.

WHEREFORE, the Plaintiffs demand judgment against Defendants Karma of Broward,

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

Karma of Palm Beach, Scott Zankl and Kristen Zankl for an amount within the jurisdictional limits of this Court, court costs, attorney's fees, and prejudgment interest; and additionally demand any other and further injunctive and/or equitable relief as this Court deems just and proper in order to do justice.

## COUNT XVI
## BREACH OF CONTRACT – DEFAULT OF FVP INVESTMENTS NOTE
### KARMA OF BROWARD AND KARMA OF PALM BEACH

372.    The FVP Plaintiffs reallege paragraphs 1 through 194 as if fully set forth herein, and further allege:

373.    FVP Investments, as holder, and Defendants Karma of Broward and Karma of Palm Beach, as Makers, entered into the FVP Investments Note. *See* **Exhibit O**.

374.    The FVP Investments Note imposed duties and obligations on Defendants the Karma Entities.

375.    FVP Investments owns and holds the FVP Investments Note.

376.    Defendants the Karma Entities failed to pay when due and after demand, and defaulted on the FVP Investments Note both monetarily and in other respects.

377.    Defendants the Karma Entities owe FVP Investments unpaid principal plus default interest at the rate defined in the FVP Investments Note, plus any advances made by the FVP Plaintiffs against the FVP Investments Note, along with all associated fees and penalties.

378.    FVP Investments has been required to retain the services of the undersigned attorneys to prosecute this claim, and therefore is entitled to attorney's fees and costs in addition to default interest and other damages.

379.    FVP Investments demands its attorney's fees and costs pursuant to the terms of the FVP Investments Note and the related Loan Documents between the parties.

380.    All demands of FVP Investments are reiterated hereby by FOP Servicing for all purposes.

WHEREFORE, FVP Investments demands judgment against Defendants Karma of Broward and Karma of Palm Beach for an amount within the jurisdictional limits of this Court,

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

court costs, attorney's fees, and prejudgment interest and default interest; and additionally demands any other and further injunctive and/or equitable relief as this Court deems just and proper in order to do justice.

## COUNT XVII
## BREACH OF CONTRACT – DEFAULT OF FVP FUND NOTE
### KARMA OF BROWARD AND KARMA OF PALM BEACH

381.    The FVP Plaintiffs reallege paragraphs 1 through 194 as if fully set forth herein, and further allege:

382.    The FVP Fund, as holder, and Defendants Karma of Broward and Karma of Palm Beach, as makers, entered into the FVP Fund Note. *See* **Exhibit P**.

383.    The FVP Fund Note imposed duties and obligations on Defendants Karma of Broward and Karma of Palm Beach.

384.    The FVP Fund owns and holds the FVP Fund Note.

385.    Defendants Karma of Broward and Karma of Palm Beach failed to pay when due and after demand, and defaulted on the FVP Fund Note both monetarily and in other respects.

386.    Defendants Karma of Broward and Karma of Palm Beach owe Plaintiff the FVP Fund unpaid principal plus default interest at the rate defined in the note, plus any advances made by Plaintiff the FVP Fund against the FVP Fund Note, along with all associated fees and penalties.

387.    The FVP Fund has been required to retain the services of the undersigned attorneys to prosecute this claim and therefore is entitled to attorney's fees and costs in addition to default interest and other damages.

388.    The FVP Fund demands its attorney's fees and costs pursuant to the terms of the FVP Fund Note and the Loan Documents between the parties.

389.    All demands of the FVP Fund are reiterated hereby by FVP Servicing for all purposes.

WHEREFORE, Plaintiff the FVP Fund demands judgment against Defendants Karma of Broward and Karma of Palm Beach for an amount within the jurisdictional limits of this Court, court costs, attorney's fees, and prejudgment interest and default interest; and additionally demands any other and further injunctive and/or equitable relief as this Court deems just and proper

Page 56

in order to do justice.

## COUNT XVIII
## BREACH OF CONTRACT – GUARANTY AGREEMENT
### SCOTT ZANKL AND KRISTEN ZANKL

390.    The FVP Plaintiffs reallege paragraphs 1 through 194 as if fully set forth herein, and further allege:

391.    The FVP Plaintiffs and Defendants Scott Zankl and Kristen Zankl entered into the Guaranty Agreement. *See* **Exhibit Q.**

392.    The Guaranty Agreement imposed duties and obligations on Defendants Scott Zankl and Kristen Zankl.

393.    The FVP Plaintiffs complied with all obligations under the Guaranty Agreement.

394.    Defendants Scott Zankl and Kristen Zankl failed to pay when due and after demand and defaulted on the Guaranty Agreement both monetarily and in other respects.

395.    Defendants Scott Zankl and Kristen Zankl owe the Plaintiffs unpaid principal plus default interest at the rate defined in the guaranteed obligations, plus other costs and expenses defined in the Guaranty Agreement.

396.    The FVP Plaintiffs have been required to retain the services of the undersigned attorneys to prosecute this claim and therefore are entitled to attorney's fees and costs in addition to the sums due the Plaintiffs under the Guaranty Agreement.

397.    The FVP Plaintiffs demand their attorney's fees and costs pursuant to the terms of the Guaranty Agreement and the Loan Documents.

WHEREFORE, the FVP Plaintiffs demand judgment against Defendants Scott Zankl and Kristen Zankl for an amount within the jurisdictional limits of this Court, court costs, attorney's fees, and prejudgment interest and default interest; and additionally demands any other and further injunctive and/or equitable relief as this Court deems just and proper in order to do justice.

## COUNT XIX
## BREACH OF CONTRACT – SECURITY AGREEMENT
### KARMA OF BROWARD AND KARMA OF PALM BEACH

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

398. FVP Servicing realleges paragraphs 1 through 194 as if fully set forth herein, and further allege:

399. FVP Servicing and Defendants Karma of Broward and Karma of Palm Beach entered into the Security Agreement. *See* **Exhibit R**.

400. The Security Agreement imposed obligations on the parties to it.

401. The FVP Plaintiffs complied with all of their duties and obligations under the Security Agreement.

402. Defendants Karma of Broward and Karma of Palm Beach materially breached their duties and obligations under the Security Agreement.

403. As a direct and proximate result of the aforedescribed breaches of the Security Agreement, the Plaintiffs have sustained direct and consequential monetary damages in an amount in excess of the jurisdictional limits of this Court; and the Plaintiffs' damages are continuing and ongoing, and such damages continue to accrue on a daily basis.

404. As a direct and proximate result of the aforedescribed breach of the Security Agreement, the Plaintiffs have sustained direct and consequential monetary damages in addition to any other damages set forth in the Security Agreement or permitted at law or in equity, and all of the Plaintiffs' expenses incurred with respect to such default, including reasonable attorneys' fees, money expended in reliance on the contract and lost business opportunity.

405. FVP Servicing demands all damages available under the Security Agreement and Florida law.

406. FVP Servicing was required to retain undersigned counsel to prosecute this action and has agreed to pay undersigned counsel a reasonable fee.

407. FVP Servicing demands its attorney's fees and costs pursuant to the Security Agreement between the parties.

WHEREFORE, FVP Servicing demands judgment against Defendants Karma of Broward and Karma of Palm Beach for an amount within the jurisdictional limits of this Court, court costs, attorney's fees, and prejudgment interest; and additionally demands any other and further injunctive and/or equitable relief as this Court deems just and proper in order to do justice.

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

## COUNT XX
## BREACH OF CONTRACT – PLEDGE AND SECURITY AGREEMENT
### AGAINST SCOTT ZANKL AND KRISTEN ZANKL

408.    FVP Servicing realleges paragraphs 1 through 194 as if fully set forth herein, and further alleges:

409.    FVP Servicing and Defendants Scott Zankl and Kristen Zankl entered into the Pledge and Security Agreement. *See* **Exhibit S**.

410.    The Pledge and Security Agreement imposed obligations on the parties to it.

411.    The FVP Plaintiffs complied with all of their duties and obligations under the Security Agreement.

412.    Defendants Scott Zankl and Kristen Zankl materially breached their duties and obligations under the Pledge and Security Agreement.

413.    As a direct and proximate result of the aforedescribed breaches of the Pledge and Security Agreement, the Plaintiffs have sustained direct and consequential monetary damages in an amount in excess of the jurisdictional limits of this Court; and the Plaintiffs' damages are continuing and ongoing, and such damages continue to accrue on a daily basis.

414.    As a direct and proximate result of the aforedescribed breach of the Pledge and Security Agreement, the Plaintiffs have sustained direct and consequential monetary damages in addition to any other damages set forth in the Pledge and Security Agreement or permitted at law or in equity, and all of the Plaintiffs' expenses incurred with respect to such default, including reasonable attorneys' fees, money expended in reliance on the contract and lost business opportunity.

415.    FVP Servicing demands all damages available under the Pledge and Security Agreement and Florida law.

416.    FVP Servicing was required to retain undersigned counsel to prosecute this action and have agreed to pay undersigned counsel a reasonable fee.

417.    FVP Servicing demands its attorney's fees and costs pursuant to the Security Agreement between the parties.

WHEREFORE, FVP Servicing demands judgment against Pledge and Security

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM

Agreement for an amount within the jurisdictional limits of this Court, court costs, attorney's fees, and prejudgment interest; and additionally demands any other and further injunctive and/or equitable relief as this Court deems just and proper in order to do justice.

**COUNT XXI**
**FORECLOSURE OF SECURITY INTERESTS**
**KARMA OF BROWARD, KARMA OF PALM BEACH,**
**EXCELL AUTO SPORT AND SERVICE, INC., SCOTT ZANKL AND KRISTEN ZANKL**

418.     The Plaintiffs reallege paragraphs 1 through 194 as if fully stated herein, and further allege:

419.     This is an action to foreclose the Plaintiffs' security interest and lien in their collateral owned by the obligor Defendants Scott Zankl, Kristen Zankl, Karma of Broward, Karma of Palm Beach, Excell Auto Sport And Service, Inc., (collectively, the "Obligors") as outlined in the Loan Documents.

420.     The Obligors entered into the Loan Agreement, the Security Agreement, the Guaranty, and the Pledge and Security Agreement. (collectively, for purposes of this Count and the following Count together with the promissory notes, the "Loan Documents").

421.     The Obligors have defaulted in their obligations under the Loan Documents.

422.     The Plaintiffs declare all sums due under the Loan Documents.

423.     The Obligors' obligations are secured, *inter alia*, by the Plaintiffs' collateral, defined in the Loan Documents as being appropriately foreclosed to satisfy the full amount of the Obligors' indebtedness to the Plaintiffs.

424.     The Obligors may claim some right, title, or interest in and to the Plaintiffs' collateral, but any such interest is subordinate and inferior to that of the Plaintiffs.

425.     The Plaintiffs demand a judgment of foreclosure of the security interests of the Plaintiffs in the Collateral.

426.     The Collateral does not include residential real property.

427.     The Plaintiffs were required to retain undersigned counsel to prosecute this action and have agreed to pay undersigned counsel a reasonable fee.

428.     The Plaintiffs demand their attorney's fees and costs pursuant to the Loan

Page 60

Documents between the parties.

WHEREFORE, the Plaintiffs request a judgment against Defendants Scott Zankl, Kristen Zankl, Karma of Broward, Karma of Palm Beach, and Excell Auto Sport And Service, Inc., foreclosing their security interest and lien in the collateral, pursuant to the Loan Documents evidencing the Obligations, and any other claims of lien, and if proceeds of such are insufficient to fully satisfy the Obligations, a deficiency judgment against Scott Zankl, Kristen Zankl, Karma of Broward and Karma of Palm Beach, and any other relief the court deems proper.

<u>Certificate of Service</u>

WE HEREBY CERTIFY that a true and correct copy of the foregoing document was filed with the Clerk of the Courts and served via email through the Florida Courts eFiling Portal in accordance with Rule 2.516 of the Florida Rules of Judicial Administration upon all counsel of record.

On December 22, 2022

Respectfully submitted,

**Baron, Breslin & Sarmiento**
**Fl. Rule of Jud. Admin. 2.516 Notice**
**Primary email: EService@RichardBaronLaw.com**
**Secondary Email: JB@RichardBaronLaw.com**

**s/ Jerry Breslin**
*Filed of Record via Eportal*

Jerry Breslin Esq.
Fla. Bar # 269573
Email: JB@RichardBaronLaw.com
Baron, Breslin & Sarmiento, Attorneys at Law
The DuPont Building
169 East Flagler Street
Suite 700
Miami, Fl 33131
Tel.: 305-577-4626
Fax.: 305-577-4630

**/s/ Jonathan Noah Schwartz, Esq.**
Jonathan Noah Schwartz, Esq.
Florida Bar No. 1014596
Jonathan Schwartz Law PLLC

Page 61

10200 NW 25th Street, Suite 111
Doral, FL 33172
Tel.: (973) 936-2176
Fax: (786) 338-7435
E-mails: jschwartz@jonschwartzlaw.com
            JNSEsquire@gmail.com

BARON, BRESLIN & SARMIENTO, ATTORNEYS AT LAW
THE DUPONT BUILDING, 169 EAST FLAGLER STREET, SUITE 700, MIAMI, FLORIDA 33131
PRIMARY EMAIL: ESERVICE@RICHARDBARONLAW.COM
TELEPHONE: (305) 577-4626 / TELEFAX: (305) 577-4630 / JERRY BRESLIN, ESQ., EMAIL - JB@RICHARDBARONLAW.COM