**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

In re:                                                    Case No. 22-15627-EPK

AUTO WHOLESALE OF BOCA, LLC.,[1]          Chapter 11

                            Debtor.             Subchapter V

_____/

**HI BAR CAPITAL, LLC'S OMNIBUS RESPONSE TO OBJECTIONS TO CLAIM**

Claimant, Hi Bar Capital, LLC ("***Hi Bar***"), by and through undersigned counsel, hereby responds to each of the objections (collectively, the "***Objections***") filed by Auto Wholesale of Boca, LLC (the "***Debtor***") [Docket No. 226]; Wing Lake Capital Partners a/k/a Franklin Capital Management, LLC and Franklin Capital Funding, LLC (together, "***Wing Lake***") [Docket No. 220]; and FVP Opportunity Fund III, LP, FVP Investments LLC, and FVP Servicing, LLC (collectively, the "***FVP Parties***" and together with the Debtor and Wing Lake, the "***Objecting Parties***") [Docket No. 230] to Hi Bar's proof of claim [Claim No. 20-1] (the "***Claim***"), and states as follows:

**Preliminary Statement**

1.      Hi Bar has a valid, perfected security interest in property claimed by the Debtor. Hi Bar timely filed its Claim on September 30, 2022.

2.      The Claim is for an unliquidated amount "TBD" based upon the extent to which Hi Bar can recover its collateral from AWB. The Claim is secured by certain vehicle inventory of non-debtors Karma of Broward, Inc. ("Karma Broward") and Karma of Palm Beach, Inc. ("Karma

---

[1] The last four digits of the Debtor's taxpayer identification number is 5162.  The Debtor's noticing address in this Chapter 11 case is 6560 West Rogers Circle, Suite B-27, Boca Raton, Florida 33487.

Palm Beach" and together with Karma Broward, "Karma" or the "Karma Entities"), which AWB wrongfully took possession of pre-petition and continues to hold.

3.    The bases for the Claim and the Objections are subject to current litigation in Adversary Proceeding No. 22-01218-EPK (the "***Adversary Proceeding***"). Each of the Objecting Parties is party to the Adversary Proceeding.

4.    Hi Bar incorporates its *Answer, Affirmative Defenses, and Counterclaims and Crossclaims* (the "***Hi Bar Answer***") into this response as if set forth fully herein, including the factual background which justifies and support Hi Bar's claim.[2]

### Hi Bar's Claim

5.    Hi Bar is engaged in the merchant cash advance business pursuant to which it purchases a percentage of a business' future revenue stream at a discount.

6.    At the material times, Karma Broward operated a car dealership in Ft. Lauderdale and Karma Palm Beach operated car dealership in Palm Beach.

7.    Both Karma entities focused on the retail sale of high-end luxury automobiles.

8.    On or about October 27, 2021, Hi Bar and Karma, among others, entered into a *Revenue Purchase Agreement* (the "Purchase Agreement"), a true and authentic copy of which is attached hereto as **Exhibit A**.

9.    The Purchase Agreement also contains a *Security Agreement and Guaranty of Performance* (the "Security Agreement") that provides, in part:

> Merchants grant to HBC a security interest in and lien upon: (a) all accounts, chattel paper, documents., equipment, general intangibles, instruments, and inventory, as those teems ace each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and

---

[2] The Hi Bar Answer is due on December 23, 2022 and is being filed concurrently herewith in the Adversary Proceeding.

future Electronic Check Transactions, and (e) any amount which may be due to HBC under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets").

*See* Exhibit A, at 5.

10.    The Security Agreement (at page 5 of the Purchase Agreement) states: "Remedies: Upon any Event of Default, HBC may pursue any remedy available at law (including those available under the provisions of the UCC) ... ."

11.    On December 19, 2021, Karma, among others, entered into a settlement agreement with Hi Bar (the "Settlement Agreement"), a true and accurate copy of which is attached hereto as **Exhibit B,** in which Karma admitted that "on November 16, 2021, the Sellers defaulted on their obligations pursuant to the Purchase Agreement." Exhibit B at 1.

12.    Paragraph 1.b. of the Settlement Agreement also provides, in part:

As additional security for the prompt and complete payment and performance of any and all liabilities, obligations, covenants or agreements of Seller under this Settlement Agreement (and any future amendments of this Agreement, if any) (hereinafter referred to collectively as the "Obligations"), Sellers hereby pledge, assign and hypothecate to Purchaser (collectively, "Pledge") and grants to Purchaser a continuing, perfected and first priority lien upon and security interest in, to and under all of Sellers' right, title and interest in and to the following (collectively, the "Collateral"), whether now existing or hereafter from time to time acquired:

i. all accounts, including without limitation, all deposit accounts, accounts- receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Sellers; and all of Sellers' proceeds, as such term is defined by Article 9 of the UCC.

13.    Karma materially breached the Settlement Agreement by failing to timely pay to Hi Bar the sums required under the terms thereof.

14.    On January 25, 2022, a financing statement was filed by Hi Bar's legal representative with the Florida Secured Transaction Registry against Karma, File No.2021093624865, a certified copy of which is attached hereto as **Exhibit C**, covering among

3

other things "all accounts receivable," "inventory" and "general intangibles" that are "now owned or hereafter acquired."

15.     The "Secured Assets" under the Purchase Agreement and "Collateral" under the Settlement Agreement include but are not limited to the vehicle inventory of Karma held for sale, including the "Disputed Vehicles" described in Paragraphs 55-65, *infra*.

16.     On January 28, 2022, Hi Bar filed suit against Karma and other affiliates in the Supreme Court of New York, Kings County (the "New York Action") for breach of the Settlement Agreement.

17.     On February 1, 2022, Hi Bar and Karma, among others, entered into a *Stipulation of Settlement Pursuant to CPLR § 3215(i)* with respect to the New York Action (the "Stipulation"), a copy of which is attached hereto as **Exhibit D,** in which Karma again admitted that "on November 16, 2021 (the "Default Date"), the Obligated Parties defaulted on their obligations to Purchaser under the Agreements." *See* Exhibit D at 1.

18.     Karma then materially breached the Stipulation by failing to timely pay to Hi Bar the sums required under the terms thereof.

19.     As of April 28, 2022, Hi Bar is owed the principal sum of $2,500,000 pursuant to the Purchase Agreement, Settlement Agreement and Stipulation (collectively, the "Agreements"), plus $625,000 in attorneys' fees pursuant to the Stipulation for a subtotal of $3,125,000, and interest and additional attorney's fees and costs as provided in the Agreements.

20.     Hi Bar has never entered into any business transaction with the Debtor, and Hi Bar is not a party to any agreement with the Debtor. Hi Bar never executed a release, partial or otherwise, with respect to the Subject Vehicles in favor of the Debtor.

21.     The Debtor has no security agreement with Karma and has not filed a financing statement against Karma. Moreover, the Security Agreement provisions of the Purchase

4

Agreement (at page 5) included a negative pledge against Karma granting further security interests on Hi Bar's collateral.

22.     Between the winter of 2021 and April 2022, unbeknownst to Hi Bar, the Debtor appears to have engaged in a series of transactions with Karma where Karma, which had both possession and ownership of the Disputed Vehicles, allowed agents of the Debtor to control the title application and transfer process that resulted in the name of the Debtor to be eventually added to Certificates of Title for the Disputed Vehicles in a series of sham transactions.

23.     Because the Debtor did not have a perfected security interest in the inventory of Karma, the Debtor and its agents concocted a scheme whereby most of the Disputed Vehicles were transferred first from Karma to the Excell Debtor and then from the Excell Debtor to AWB, which Hi Bar was not aware of at the time.

24.     However, upon information and belief, the Debtor did not actually pay Karma money or otherwise provide adequate consideration to Karma that Karma retained.

25.     There were no ordinary course transfers from Karma to the Excell Debtor and then from the Excell Debtor to AWB at any time. The bank records of Karma Palm Beach, Karma Broward, the Excell Debtor and other companies controlled by AWBs's principal Moshe Farache (which includes the Debtor), establish that money was consistently paid to the Debtor by Karma to Farache owned or controlled entities despite the fact that there were paper transactions that would have required many millions of dollars paid by the Debtor to Karma.

26.     In sum, every month, when viewing the loans extended the Excell Debtors, Karma *paid* the Farache companies substantial sums. In February 2022 alone for example, Karma paid the Farache entities over $3 million dollars when the paper transactions prepared pursuant to the scheme would have required that the Debtor pay Karma approximately $2.5 million for the "purchases" the false paperwork alleges.

27. Upon information and belief, on or before April 1, 2022, all of the vehicles on the Karma lots were removed from the Karma entities' dealership lots and that the businesses were closed.

28. Upon information and belief, Moshe Farache, the Debtor's manager (and husband and father to the Debtor's other two owners), had taken unlawful possession of a substantial portion, if not all, of the vehicles on the Karma entities' lots, which included the Disputed Vehicles.

29. Upon information and belief, the Disputed Vehicles, among others, were those taken by Farache on or about April 1, 2022.

30. The Disputed Vehicles were wrongfully taken and converted by the Debtor against the superior interests in the property of Hi Bar.

31. Additionally, some of the Disputed Vehicles were wrongfully taken from other locations.

32. Employees or agents of the Debtor wrongly and fraudulently transferred titles to itself for the Disputed Vehicles without right or authority.

33. At no time was the Debtor a buyer in the ordinary course as defined under UCC Article 9, Chapter 679, Florida Statutes.

34. At most, the Debtor has naked possession and bare title to the Disputed Vehicles, and the Disputed Vehicles are subject to one or more perfected security interests at the time the Debtor wrongfully took possession of, and wrongfully transferred title of the Disputed Vehicles to itself.

35. After Hi Bar had learned that the Debtor had taken possession of the Disputed Vehicles, on May 2, 2022, Hi Bar filed an *in rem* replevin and personal property foreclosure in the Circuit Court for Broward County, Florida (the "State Court") that includes the Disputed Vehicles, captioned *Hi Bar Capital, LLC v. Karma of Palm Beach, Inc., et. al*., Case No. CACE-22-006401,

6

which has been consolidated with a similar pending action captioned *FVP Opportunity Fund III, LP, FVP Investments LLC, and FVP Services, LLC* v. *Excell Auto Group, Inc., et. al*., Case No. CACE-22-5125 (generally, the "State Court Replevin Action").

36.     The State Court had previously on April 14, 2022 entered a freeze order in the prior pending action (originally filed by FVP) prohibiting Debtor the Debtor from transferring the Disputed Vehicles (the "Freeze Order").

37.     On May 25, 2022, the State Court issued an order to show cause in replevin and scheduled the hearing for July 7, 2022 together with the plaintiffs' motions for relief seeking appointment of a receiver and an injunction.

38.     The Debtor's attorneys moved to vacate the freeze order, which the State Court denied and set a two-day evidentiary hearing on the plaintiffs' for the aforementioned relief for July 25, 2022 and July 26, 2022.

39.     The State Court also set a contempt hearing for the morning of July 26, 2022 for Moshe Farache because of alleged intentional misrepresentations to the State Court.

40.     On the last business day before the hearing, the Debtor filed the instant Chapter 11 Bankruptcy.

**The Disputed Vehicles**

41.     The Debtor claims it is the owner of the following vehicles (being the "Disputed Vehicles", inclusive of the funds which are proceeds from the sale of Vehicle 23 currently held by the Debtor):

   a.     Seventeen (17) high-end automobiles as described in Debtor's *Form*

*206A/B Schedule* [Main Case Docket No. 65 at 5-6] as assets at Part 8,[3] and more specifically

defined as (Vehicle Nos.):

1.      2017 Ferrari F12 Berlinetta, VIN# ZFF74UFA7H0221036

2.      2019 Aston Martin DB11 Volante VIN# SCFRMFCW6KGM07671

3.      2020 Mercedes G63 VIN# W1NYC7HJ6LX346462

4.      2019 BMW X7 VIN# 5UXCX4C56KLS39222

5.      2019 GMC Yukon VIN#     1GKS1CKJ8KR354378

6.      2018 MClaren 720S VIN# SBM14DCA9JW000606

7.      2021 Mercedes G Wagon VIN# W1NVC7HJ0MX390328

8.      2020 Mercedes G63 VIN# W1NYC7HJ6LX362080

9.      2008 Porsche 911 VIN# WP0AD29978S783176

10.      2020 MClaren 720S VIN# SBM14FCASLW004229

11.      2019 Lamborghini Urus VIN# ZPBUA1ZLXKLA01961

12.      2018 Cadillac Escalade VIN# 1GYS4BKJXJR261612

13.      2013 Ferrari 458 Italia VIN#ZFF68NHA8D0191526

14.      12021 Jeep Gladiator VIN# 1C6HJTAG1ML571540

15.      2020 Lamborghini Huracan VIN# ZHWUT4ZF1LLA14316

16.      2019 MClaren 720S VIN# SBM14FCA9KW003714

17.      2020 Mercedes G Class VIN# WDCYC7HJ9LX334940

      b.      One 2018 McLaren 720s Black, VIN # SBM14DCA7JW001804 (Vehicle

18), which is currently in the possession of Excell Sports, either actually or constructively, and

---

[3] *See* **Exhibit E** attached hereto. The 17 vehicles listed here include the original 19 vehicles scheduled by the Debtor minus the 2020 Lamborghini Urus Vin# 6529, and 2020 Ferrari Superfast Vin# 4963 which Hi Bar understands have been returned to their owners.

upon information and belief, parts of which are located at the business location of the Excell Sports in Broward County, Florida and other parts at a location in the state of North Carolina.

c.      One 2015 Maclaren 650 S Convertible, VIN: SBM11FAA4FW003654 (Vehicle 19) located at the Karma Broward facility in Fort Lauderdale, Florida.

d.      One 2017 Lamborghini Huracan Red, VIN, ZHWUR2ZF8HLA08121 (Vehicle 20) located at the Karma Broward facility in Fort Lauderdale, Fl.

e.      One 2021 Rolls Royce Cullinan White, VIN # SLATV8C09MU20497 (Vehicle 21), which is currently in the possession of Edward Brown and located in Palm Beach County, Florida or some other location unknown to Hi Bar.

f.      One Lamborghini Urus White, VIN # ZPBUA1ZL1MLA12270 (Vehicle 22), which is currently in the possession of Edward Brown and located in Palm Beach County, Florida or some other location unknown to Hi Bar.

g.      One 2021 Jeep Gladiator Black, VIN # 1C6HJJAG0ML564806 (Vehicle 23), which came into the possession of the Debtor, and was sold on April 14, 2022, by the Debtor for $130,000.[4]

42.     The Karma entities claim ownership to all of the Disputed Vehicles.

43.     Hi Bar agrees that all of the Disputed Vehicles were purchased by the Karma entities. Upon information and belief, after the purchase by either of the Karma entities, paperwork was created and exchanged at the request of the Debtor to ostensibly show that the Debtor was a purchaser for value. However, the applicable bank records and other documentary evidence reflect that the Debtor received millions of dollars from the Karma entities when it should have been paying those sums if the created putative purchase and sale paperwork was in fact true.

---

[4] Upon information and belief, the funds were formerly held in the trust account of Jay Farrow, Esq., and now are in the account of the Debtor

44.    The Karma entities have also asserted that Edward Brown is a lender and investor in the Excell Debtor and the Karma entities and has no other rights in the Disputed Vehicles.

45.    Nevertheless, the Karma entities have asserted, and Hi Bar believes, that Mr. Brown took possession of the following vehicles:[5]

(Vehicle 21) – 2021 Rolls Royce Cullinan White, VIN # SLATV8C09MU20497; and

(Vehicle 22) – Lamborghini Urus White, VIN # ZPBUA1ZL1MLA12270;

46.    All of the Karma/Brown Vehicles that Mr. Brown took possession of were, and at all times remained, dealer inventory of the Karma Entities.

47.    Upon information and belief, Mr. Brown never purchased any of the Karma/Brown Vehicles and Mr. Brown never paid sales tax for any of the Karma/Brown Vehicles.

48.    At all times, the Karma/Brown Vehicles remained titled to the Karma entities, were assigned dealer plates and were insured by the Karma entities and were owned by the Karma entities.

### FVP's Purported Junior Security Interests

49.    Upon information and belief, on or about January 26, 2022, FVP entered into certain loan and security agreements with Karma, along with their principals Scott Zankl and Kristen Zankl (together, the "Zankls"). Those parties purportedly executed certain documents including:

a.    a "Loan Agreement" by and between Karma and the Zanks, on one hand, and FVP Servicing, as administrative agent, on the other hand;

b.    a promissory note by Karma in favor of FVP Investments, as Noteholder in the amount of $3,000,000.00;

c.    a promissory note by Karma in favor of FVP Fund, as Noteholder in the

---

[5] Collectively referred to as the "Karma/Brown Vehicles").

amount of $4,500,000.00;

d.   a personal guaranty of Scott Zankl and Kristen Zankl in favor of FVP Servicing;

e.   a security agreement by and between Karma and FVP Servicing, as administrative agent, which among other things, allegedly granted FVP a security interest in "inventory, now or thereafter existing."

f.   a "Collateral Pledge Agreement" by and between Karma and FVP Servicing, as administrative agent;

g.   a UCC Financing Statement with FVP Servicing, as administrative agent, as the allegedly secured party and Karma as the debtors covering "All Assets."

h.   a Landlord Waiver and Consent.

50.   FVP has asserted that Karma defaulted on its loan agreements and FVP thereafter declared all sums due.

51.   FVP has asserted that Karma owes FVP Investments unpaid principal plus interest and advances, along with all associated fees and penalties, in excess of $7.5 million.

52.   FVP has asserted that the "Inventory" Karma pledged to FVP includes the Disputed Vehicles.

53.   FVP has asserted that the amounts due the FVP Plaintiffs far exceed the value of the Disputed Vehicles.

54.   For all purposes relevant to the Claim, Hi Bar's Claim and secured position with respect to its collateral is senior to any purported interest of FVP.

**Franklin's Purported Security Interests**

55.   Franklin asserts that in November 2021, the Excell Debtor obtained a loan from Franklin. Franklin also asserts that the Excell Debtor granted Franklin, among other things, a security interest in its accounts receivable and those of certain affiliates, including Karma, as collateral.

11

56.     Franklin asserts that its perfected its security interests by filing a UCC-1 financing statement with the State of Florida as to the Excell Debtor on September 9, 2021; a UCC-1 financing statement with the State of Florida as to Karma Palm Beach on January 27, 2022, and a UCC-1 financing statement with the State of Florida as to Karma Broward, Inc. on January 27, 2022 (collectively, "Franklin Financing Statements").

57.     Upon information and belief, Franklin's initial financing statement may have included the Karma entities. However, Franklin terminated its UCC filing as against the Karma entities at the request of FVP before FVP would make its loan. Franklin was permitted to refile its UCCs as to Karma, but after FVP filed its financing statement. And, in any event, the operative Franklin Financing Statements as against Karma were filed *after* Hi Bar filed its UCC as to Karma on January 25, 2022.

**Conclusion**

58.     Hi Bar denies that the Debtor has any *bona fide* legal or beneficial ownership interest in the Disputed Vehicles. Instead, Hi Bar asserts that, at most, the Debtor holds bare legal title to the Disputed Vehicles, and even if the Debtor holds an interest in the Disputed Vehicles beyond naked legal title, that interest is subject and subordinate to Hi Bar's valid, perfected security interests.

59.     Through the Adversary Proceeding, Hi Bar will establish that the Debtor holds no interest in the Disputed Vehicles recognized by section 541(a)(1) of the Bankruptcy Code and that the Disputed Vehicles are owned by either the Karma entities.

60.     In the event that the Court determines the Adversary Proceeding that the Debtor holds an interest recognized by section 541(a)(1) of the Bankruptcy Code as to the Disputed Vehicles, Hi Bar has sought a finding that the Debtor's interest is subject and inferior to the security

interests of the all other parties because, among other reasons, the Debtor was not a "buyer in the ordinary course of business" as required by Sections 679.320 and 671.201(9), Florida Statutes.

61.     Inasmuch as any party, and specifically the Debtor, has asserted in its Objection that the Hi Bar Claim is based on fraud, such assertion is wholly denied and the validity and basis of Hi Bar's claim will be litigated and proved in the Adversary Proceeding. To the extent that any other creditor has asserted an Objection to Hi Bar's Claim or the senior priority of its security interest(s) asserted in the Claim, the Court has determined that it lacks jurisdiction to consider such non-debtor/cross-creditor challenges absent first determining that the AWB has some interest in Hi Bar's collateral.

WHEREFORE, Hi Bar respectfully requests this Court enter an Order overruling each of the Objections, and awarding such other relief as may be just and proper.

[*Signature Page Follows*]

Respectfully submitted,

Dated: December 23, 2022

/s/ *Ezequiel J. Romero*
Ezequiel J. Romero
Florida Bar No. 107216
romeroe@bclplaw.com
Bryan Cave Leighton Paisner, LLP
200 South Biscayne Boulevard, Suite 400
Miami, FL 33131
Telephone:  (786) 322-7500

*Local Counsel for Hi Bar Capital, LLC*

Jason J. DeJonker, Esq.
Illinois Bar No. 6272128
Bryan Cave Leighton Paisner, LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601-3315
E-mail: Jason.dejonker@bclplaw.com
Tel: (312) 602-5005

*Admitted Pro Hace Vice*
*Counsel for Hi Bar Capital, LLC*

/s/ *Jarret P. Hitchings*
Jarret P. Hitchings, Esq.
Delaware Bar No. 5564
Pennsylvania Bar No. 312254
Bryan Cave Leighton Paisner, LLP
One Wells Fargo Center
301 S. College Street, Suite 2150[6]
Charlotte, North Carolina 28202
E-mail: jarret.hitchings@bclplaw.com
Tel: (704) 749-8965
Fax: (704) 749-8990

*Admitted Pro Hac Vice*
*Counsel for Hi Bar Capital, LLC*

---

[6] Application for admission to practice in the State of North Carolina pending. While not currently licensed in North Carolina, practicing in the state pursuant to North Carolina Rule of Professional Conduct 5.5(e), and in compliance therewith.

14

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2022, I caused the foregoing *Hi Bar Capital, LLC's Omnibus Response to Objections to Claim* (the "***Omnibus Response***") to be electronically filed with the Court using the Court's CM/ECF filing system, which generated an email notice of the filing, linked to this document, to those parties who receive electronic notices in the bankruptcy case captioned above.

I further certify that on this same date, I caused the *Omnibus Response* to be served, via electronic mail and United States Mail with postage prepaid, as noted, upon the parties listed below.

C. Craig Eller
1665 Palm Beach Lakes Boulevard
Suite 1000
West Palm Beach, FL 33401

Via electronic mail to:
celler@kelleylawoffice.com

*Counsel for the Debtor*

James B. Miller
19 West Flagler Street
Suite 416
Miami, FL 33130

Via electronic mail to:
bkcmiami@gmail.com

*Counsel for the Debtor*

Auto Wholesale of Boca, LLC
6560 West Rogers Circle
Suite B-27
Boca Raton, FL 33487

Via United States Mail to: the address listed above

*The Debtor*

Linda Marie Leali
2525 Ponce De Leon Boulevard
Suite 300
Coral Gables, FL 33134

Via electronic mail to:
trustee@lealilaw.com

*The Trustee*

Heidi A Feinman
Office of the US Trustee
51 SW 1 Avenue
Suite 1204
Miami, FL 33130

Via electronic mail to:
Heidi.A.Feinman@usdoj.gov

15

*Office of the United States Trustee*

Dated: December 23, 2022                    **BRYAN CAVE LEIGHTON PAISNER LLP**


    */s/ Ezequiel J. Romero*
Ezequiel J. Romero (Florida Bar No. 107216)
200 South Biscayne Boulevard, Suite 400
Miami, Florida 33131-5354
Telephone    (786) 322-7500
Facsimile:    (786) 322-7501
Email:       ezequiel.romero@bclplaw.com

*Counsel for Hi Bar Capital, LLC*

16