UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                  Case No. Case No. 9:22-bk-15627
                                                        Chapter 11

AUTO WHOLESALE OF BOCA, LLC


     Debtor.

_____/

**DEREK STEPHENS' RESPONSE TO AUTO WHOLESALE OF BOCA, LLC'S**
**MEMORANDUM ON FERRARI 458 SPIDER**

Derek Stephens ("Stephens") responds to Auto Wholesale of Boca, LLC's

("AWB") Response to AWB's Memorandum on Ferrari 458 Spider (DE 285) as follows:

**I.    ARTICLE IX'S CONSIGNMENT PROVISIONS HAVE NO APPLICATION HERE BECAUSE THE FERRARI WAS A CONSUMER GOOD IMMEDIATELY BEFORE IT WAS DELIVERED BY STEPHENS TO KARMA**

AWB's argument that the March 11 transaction constitutes a "consignment"

under section 679.1021(1)(t), Florida Statutes is altogether baseless.  In order to

qualify as a "consignment" thereunder, the Ferrari must not have been "consumer

goods immediately before delivery" to Karma of Palm Beacah, Inc. ("Karma").  Fla.

Stat. § 679.1021(1)(t)3.  Consumer goods are "goods that are used for or bought for

use primarily for personal, family, or household purposes."  *See id*. at (w).

The evidence at trial established that Mr. Stephens bought and used the

Ferrari his personal use.  Mr. Stephens purchased the Ferrari when, upon having

driven a friend's sports car, he got "that itch" to purchase one for himself.  Tr. Trans.

1

at 115:23-116:4. From the time he purchased it, Mr. Stephens would drive the Ferrari for a week or so when he visited Florida, and leave it with friends or at Karma while he was at home in Texas. *Id.* at 116:5-118:3. There was no evidence presented at trial that the Ferrari was used for some other purpose, nor did AWB or any other party so much as suggest such a purpose during trial or in the post-trial briefs.

The Ferrari was clearly a consumer good. *See Muro v. Hermanos Auto Wholesalers, Inc.*, 514 F.Supp.2d 1343 (S.D. Fla. 2007) (purchase of vehicle was "clearly a consumer-goods transaction" within meaning of Chapter 679); *Mackela v. Bentley*, 365 S.C. 44 (S.C. App. 2006) (Dodge was consumer good, and thus excluded from the statutory definition of a consignment). There are four mutually-exclusive types of goods under Chapter 679—consumer goods, equipment, farm products, and inventory. Official Comment 4(a) under Fla. Stat. § 670.1021. As the Comment explains, "[i]n borderline cases- a physician's car or a farmer's truck that might be either consumer goods or equipment- the principal use to which the property is put is determinative." *Id.* There is nothing borderline about Mr. Stephens' ownership of the Ferrari that he purchased for and drove himself. And while "a radio may be inventory in the hands of a dealer and consumer goods in the hands of a consumer", in this instance the question is, what was the Ferrari "immediately before delivery" to Karma. Fla. Stat. § 679.1021(1)(t)3. It is undisputed that, at that time, the Ferrari was owned and used only by Mr. Stephens—not a business, a physician, or a farmer.

Glaringly absent from AWB's post-trial brief is any argument (save a citationless, bald allegation at ¶23) that the Ferrari was not "consumer goods" at the

relevant time. Instead, AWB's argument at trial *seemed to be* that it was a good faith purchaser. Tr. Trans. 374:6-10 ("MILLER: The debtor still owns a property interest, it's still property of the estate, deemed a good faith purchaser for value under the—. THE COURT: That's the argument you need to brief. It's not in any of the documents, understood?"). Now, AWB has traded its good faith purchaser argument in for Article IX consignment. But AWB already abandoned Article IX during closing:

> THE COURT: If you look at the definition of a consignment agreement under Article IX, you'll discovery that it excludes consignments of consumer goods and a consumer good is measured from the point of view of the consignor, in this case it was a good used personally or for his family so this is not an Article IX consignment. Maybe I'm wrong, and you can—oh, you think, you're looking under Article II.
>
> MR. MILLER: Article II, 672.326.

Tr. Trans. 363:19-364:3.

As it did at trial, despite the Court calling out the issue with clarity, AWB has again failed to answer why the Ferrari was not consumer goods. The reason is simple: The Court is right about applicability of Article IX.

## II. AWB HAD ACTUAL KNOWLEDGE OF STEPHENS' INTEREST IN THE FERRARI AND THEREFORE IS NOT ENTITLED TO CREDITOR PROTECTION

Section 679.1021(1)(t) does not apply unless the merchant (Karma) "[i]s not generally known by its creditors to be substantially engaged in selling the goods to others." Fla. Stat. § 679.1021(1)(t)(1)(c). AWB claims there is no evidence that Karma was "generally known by its creditors to be substantially engaged in selling goods of

others." However, there is ample evidence that AWB had *actual* knowledge of the consignor Stephen's interest in the Ferrari.

Courts interpreting the UCC consignment provisions have adopted an "actual knowledge" exception to the "generally known by its creditors" exception that is now contained in U.C.C. § 9-102(1)(t)(1)(c) (or Fla. Stat. § 679.1021(1)(t)(1)(c)). *See, e.g., In re TSAWD Holdings, Inc.,* 595 B.R. 676, 683 (Bankr. D. Del. 2018) (citations omitted); *Eurpac Service Incorporated v. Republic Acceptance,* 37 P.347 (Col. App. 2000); *First Nat'l Bank of Blooming Prairie v. Olsen,* 3 UCC Rep. Serv. 2d 554, 403 N.W.2d 661 (Minn. App. 1987). "The reasoning of those courts is that the UCC policy of protecting creditors from the 'secret lien' of a consignor is not implicated if the creditor in question has actual knowledge of the consignor's lien." *In re: TSAWD Holdings,* 595 B.R. at 683; *see In re Key Book Service, Inc.,* 103 B.R. 39 (Bankr. D. Conn. 1989) ("where a secured creditor knows that goods rightfully belong to a consignor, § 42-2-326(3) is not intended to provide that creditor with protection, and the consigned goods are not subject to that creditor's lien under that provision").

Here, AWB's actual knowledge is evidenced first by the title transfer document, which reveals that title never transferred to Karma; on the contrary, the title transfer documents reflect that Stephens held title to the Ferrari when AWB purported to transfer title to itself (*See* Ex. AWB 2A, 4A). This fact alone is conclusive proof that AWB had actual knowledge that the Ferrari was owned by Stephens. Second, Karma salesman Jonathan Martin told AWB on Saturday, April 2, 2022 that the Ferrari "was not part of the problem that Mr. Moshe and Scott [Zankl] were

having" and that "this is Mr. Stephens' car." Tr. Trans. at 46:11-20; 47:4-17. This too was actual notice Stephens' interest in the Ferrari. Further, two days later, on April 4, Mr. Stephens went to Karma to retrieve his Ferrari but AWB blocked his exit with another vehicle. Tr. Trans. at 139:21-141:12 (Stephens); 212:1-8 (Farache). Farache cavalierly admitted he blocked the Ferrari from leaving <u>because</u> he was told that Stephens claimed he owned it:

> Meantime, John come to me and says move it as fast as you can, the guy thinks he owns it, he's going to be here, and I just block it until the police come . . . .

Tr. Trans. at 214:3-5. It was not until two days later that AWB purportedly acquired title to the Ferrari, at which time AWB was clearly aware of Stephens' interest.

"Failure to acknowledge an 'actual knowledge' exception in this situation would lead to an absurd result." *See Eurpac*, 37 P.3d at 450–51. As the *Eurpac* court explained,

> The effect of the literal language of the exception is to impute knowledge of the consignment arrangement to all creditors if the knowledge is "generally known." In other words, a creditor is held to knowledge which he or she could reasonably have obtained because it was "generally known" by other creditors. It would be absurd to hold a creditor responsible for imputed knowledge but not hold the same creditor responsible for actual knowledge.

*Id.; see Fariba v. Dealer Servs. Corp.*, 100 Cal. Rptr. 3d 219, 229 (Cal. App. 4th 2009) ("construing the knowledge exception to include constructive knowledge, but not actual knowledge, would lead to absurd results and we shall not interpret our

Commercial Code in such a manner."); *In re TSAWD Holdings, Inc.*, 595 B.R. at 683 (same).

It appears that no Florida court has commented directly on the "actual knowledge" exception. The closest one has come was *Rayfield Investment Co. v. Kreps*, 35 So. 3d 63, 64 (Fla. 4th DCA 2010), where the trial court found that a consignor's interest was superior to a lender's perfected interest because the lender had "actual knowledge" that the merchant sold goods on consignment. However, the District Court of Appeal, Fourth District concluded that the "[c]onsignor's case authorities are inapposite, for they involve actual knowledge by the lender of a specific consignment." *Id.* at 66. The *Rayfield* court thus acknowledged the line of cases Stephens' relies on, and for the precise proposition for which they are cited here, namely, that AWB's actual knowledge of Stephens, the specific consignor at issue, satisfies the statutory exemption.[1]

For the foregoing reasons, even if the Ferrari was not consumer goods, AWB's actual knowledge of Stephens' interest in the Ferrari means that it was not the victim of a "secret lien" and accordingly not entitled to the protections of 679.1021(1)(t).

## III.  SECTION 672.326 IS INAPPOSITE

AWB's half-hearted attempt to invoke section 672.326, Florida Statutes fails for three reasons. First, the statute only applies when the parties have not "otherwise

---

[1] *In re Corvette Collection of Boston, Inc.*, 294 B.R. 409 (Bankr. S.D. Fla. 2003) is inapplicable because (1) it did not involve consumer goods, as the Corvettes in question were apparently consigned by a car dealership not a consumer and (2) it did not involve the secured party's actual notice of the consignor's rights.

MAURO LAW | 1001 YAMATO ROAD, SUITE 401 | BOCA RATON, FLORIDA 33431 | 561.202.1992 | WWW.MAUROLAWFIRM.COM

agreed" that "delivered goods may be returned by the buyer even though they conform to the contract." Fla. Stat. § 672.326(1). In this instance, the parties entered into two purchase agreements and a Consignment Agreement, none of which provide that Karma may return the Ferrari to Stephens even though it does not conform to the contract, and nobody has made any such argument in this Court. Accordingly, because they have "otherwise agreed", and because the type of transaction to which the statute applies is simply not present here, section 672.326 may not be weaponized to redefine the transaction.

Moreover, according to the Consignment Agreement, Karma was not a "buyer" of the Ferrari but instead a consignee. Section 672.326 applies only to buyers. As the Official Comment 4 under U.C.C. § 2-326 (emphasis added) provides,

> The transactions governed by this section are sales; the persons to whom the goods are delivered are buyers. **This section has no application to transactions in which goods are delivered to a person who has neither bought the goods nor contracted to buy them**. See PEB Commentary No. 20, dated January 24, 2019. **Transactions in which a non-buyer takes delivery of goods for the purpose of selling them are bailments called consignments and are not "sale on approval" or "sale or return" transactions**. Certain consignment transactions were dealt with in former sections 2-326(3) and 9-114. Those provisions have been deleted and have been replaced by new provisions in Article 9. See, e.g., Sections 9-109(a)(4); 9-103(d); 9-319.

Further, there is no evidence that the Ferrari was acquired "primarily for use" by Karma. *See* Fla. Stat. § 672.326(1)(a). Thus, as between the two types of transactions covered by the statute, the deal between Karma and Stephens could only qualify as a "sale or return." *See id*. But as the Official Comments to U.S.C. § 2-326

(1965) explain, "[a] 'sale or return'… typically is a sale to a merchant whose unwillingness to buy is overcome by the seller's engagement to take back the goods… in lieu of payment if they fail to be resold" and further that "[a] sale or return is a present sale of goods which may be undone at the buyer's option."  That is not the transaction before the Court.  This was a consignment, and consignments are covered in Article 9.  *See* Fla. Stat. § 672.326, Comment 4; U.C.C. §§ 9-109(a)(4); 9-103(d); 9-319.  And again, as explained above, the Ferrari was consumer goods, and AWB had actual knowledge of Stephens' claim, so Article 9 is inapplicable here.

Additionally, "an 'or return' provision is so definitely at odds with any ordinary contract for sale of goods that if a written agreement is involved the 'or return' term must be contained in a written memorandum."  U.C.C. § 2-326, Comment 3 (emphasis added); *see* Fla. Stat. § 672.326(3).  There is simply no "or return" provision in evidence here.  Thus, for the foregoing reasons, section 672.326 inapposite.

## IV.    FLORIDA COMMON LAW DOES NOT CHANGE THE ANALYSIS

Finally, Florida common law commands no different result.  The only case AWB cited to support its "common law" argument is wrought with material distinctions and differences, most of which have already been examined by Stephens in his initial post-trial brief, including why AWB is not a bona fide purchaser without knowledge.  *See Nash Miami Motors v. Bandel*, 160 Fla. 925, 927 (Fla. 1948). Stephens reaffirms here his prior arguments directed to AWB's lack of good faith, and its actual knowledge of nefarious circumstances and of Stephens' rights, all of which nullify priority in AWB under the U.C.C. and under *Nash*.

MAURO LAW | 1001 YAMATO ROAD, SUITE 401 | BOCA RATON, FLORIDA 33431 | 561.202.1992 | WWW.MAUROLAWFIRM.COM

Notably, the *Nash* court held that there is a "duty upon the [secured party] to have investigated the authority of the [merchant] to give a valid lien upon the automobiles in question," reasoning:

> [A] person purchasing such personalty should not be confronted with the task of ascertaining his title or authority to sell.  It does not appear logical to extend such implied authority to sell to authority to encumber.  It is one thing for a person to purchase and take possession of personal property under such circumstances and in so doing be relieved of investigating the right of the dealer to sell; but it is another and different thing for one to advance money upon the strength of a lien on such personal property without investigating the express or actual authority, if any, of the dealer to encumber the chattels.

*Id.* at 928-29.

In this instance, AWB not only failed to investigate whether the Ferrari *could be* encumbered (and it could not; the Consignment Agreement only permitted Karma to sell the vehicle), there is also no evidence that the Ferrari was actually encumbered, or that Excell Auto's purported loan (not in evidence) reached after-acquired property.  *Nash* simply does not help AWB, nor does any uniquely-common-law concept provide an avenue for priority in its favor.

Indeed, "the U.C.C. displaces the common law to the extent it is inconsistent therewith."  *Burtman v. Tech. Chems and Prods., Inc.*, 724 So. 2d 672, 676 (Fla. 4th DCA 1999) (emphasis added).  And, for all of the reasons stated in Stephens' two post-trial briefs, Stephens has demonstrated that AWB is not entitled to priority over Stephens' under the U.C.C., including (1) as a buyer in the ordinary course, (2) as a good faith purchaser, (3) pursuant to "entruster's rights", (4) under the consignment

provisions in Article 9, or (5) pursuant to a "sale or return."  Thus, Stephens' interest in the Ferrari is superior to AWB's, whether by common law or Florida U.C.C.

## CONCLUSION

AWB failed to raise the improvised defenses it attempts to invoke post-trial, and yet audaciously trumpets a purported lack of evidence tending to <u>disprove</u> them. As examined in Stephens' first post-trial brief, it was AWB's burden to prove its defenses (assuming they had been properly preserved for trial), and yet AWB utterly failed to introduce evidence to support even the most fundamental aspects of its defense, including an encumbrance on the Ferrari.  Clearly, Article 9 provides no relief for AWB because the Ferrari is consumer goods and because AWB knew it was still owned by Stephens.   It is equally clear that this transaction is simply not a "sale or return"; the documents have no such language.   In the end, "[b]ankruptcy courts are indeed courts of equity, and they have the power to adjust claims to avoid injustice or unfairness." *In re Empire for Him, Inc.*, 1 F.3d 1156, 1160 (11th Cir. 1993).  Any outcome depriving Stephens of his Ferrari would be grossly inequitable, favoring fraudsters' and their financiers' unabashedly dishonest scheme to steal it from him.

**MAURO LAW P.A.**

/s/  C. Cory Mauro
C. Cory Mauro
Florida Bar No.:  384739
Evan D. Appell
Florida Bar No.:  58146
1001 Yamato Road, Suite 401
Boca Raton, FL 33431
cory@maurolawfirm.com
evan@maurolawfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed with the Court by using the Notice of Electronic Mail through the Case Management/Electronic Case Filing to those parties registered to receive electronic notices of filing in this case on January 6, 2023.

**MAURO LAW P.A.**

*By: /s/ C. Cory Mauro*
C. Cory Mauro

MAURO LAW | 1001 YAMATO ROAD, SUITE 401 | BOCA RATON, FLORIDA 33431 | 561.202.1992 | WWW.MAUROLAWFIRM.COM