UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

*In re:*

AUTO WHOLESALE OF BOCA, LLC,            Case No.: 22- 15627-EPK
                                       Chapter 11 Subchapter V

          Debtor-in-Possession.       /

**DEBTOR'S RESPONSE AND OBJECTION TO
MOTION FOR ORDER THAT STAY IS NOT APPLICABLE TO STATE
COURT AMENDED COMPLAINT, OR, ALTERNATIVELY, MOTION TO
MODIFY THE AUTOMATIC STAY TO THE EXTENT APPLICABLE**

Comes Now, the Debtor-in-Possession, Auto Wholesale of Boca, LLC ("Debtor", "AWB" or "DIP"), by and through undersigned counsel and files and serves this instant *Debtor's Response and Objection to Motion for Order That Stay is not Applicable to State Court Amended Complaint, or, Alternatively, Motion to Modify the Stay to the Extent Applicable* in response to the *Motion for Order That Stay is not Applicable to State Court Amended Complaint, or, Alternatively, Motion to Modify the Stay to the Extent Applicable* [ECF No. 303] (the "FVP Motion") filed by FVP Opportunity Fund III, LP, a Delaware limited partnership (the "FVP Fund"), FVP Investments LLC, a Delaware limited liability company ("FVP Investments"), and FVP Servicing, LLC, a Delaware limited liability company ("FVP Servicing") (collectively, "FVP") and state –

1. The Debtor is a "Debtor-in-Possession" under Title 11, Subchapter V, of the United States Code by virtue of having filed its *Petition* [Parent ECF #1] on July 22nd, 2022, seeking to reorganize itself under the Bankruptcy Code.

2. As touched upon in the DIP's *Verified Chapter 11 Case Management Summary* [Parent ECF #7] (the "Case Management Summary"), the DIP sought relief in bankruptcy based upon the fact that the Debtor had been defrauded out of millions of dollars in assets and monies by other entities

and their operators, *i.e.* – Excell Auto Group, Inc. ("Excell"), Karma of Palm Beach ("KPB") and Karma of Broward ("KB") (KPB and KB are collectively "Karma"), operated and owned primarily by Scott and Kristen Zankl (the "Zankls")

3. This fraud by the Zankls and their entities apparently included the unauthorized repeated reselling and financing of automobiles owned by Debtor and/or liened by Debtor.

4. Shortly after AWB was able to recover some of its property from the Zankls, the Zankls filed bankruptcy for Excell under Chapter 7 in Case No. 22-12790-EPK ("Excell Bankruptcy").

5. The Zankls have falsely led various lenders of Karma, and even Excell, to pursue AWB's automobiles and inventory, as well as other interested parties.

6. In the interim, pre-petition, in April, 2022, FVP filed a state court lawsuit styled FVP vs Karma of Broward, Inc., et al., Case No. CACE-22-5125 (the "FVP State Action"), in Broward County Circuit Court, against, among others, the instant Debtor seeking relief to recover the automobiles which are now subject of the instant Adversary Proceeding based upon the theory that the subject disputed automobiles were subject of a pre-existing lien in favor of FVP prior to the Debtor acquiring an interest therein.

7. Two days after the filing of the Debtor's Petition, FVP commenced this Adversary Proceeding to, among other things, recover their purported collateral, and determine right, title and interests, as well as priority and extent of same, in the subject automobiles.[1]

8. FVP has sought all forms of discovery in both this Adversary Proceeding and in the Parent Case, through multiple subpoenas, and formal and informal Debtor and third-party discovery.

---

[1] FVP is now on its Fifth Amended Complaint in this matter.

9. On November 18th, 2022, having thus far failed in their bullying antics in this Bankruptcy Case and this Adversary Proceeding against the Debtor and a clear effort to overwhelm the Debtor by paper filings, without relief from this Court or notice to the Debtor or creditors of this Estate, FVP filed, in the FVP State Action, a motion to allow FVP to amend their state court complaint along with their proposed amended complaint,  seeking the State Court's approval to add claims for alter ego/piercing corporate veil of the Debtor to proceed directly against the three (3) owners of the Debtor, Moshe Farache (48% owner), Lisa Farache (48% owner) and Chase Farache (2% owner) (collectively, the "Faraches") for purported claims that could only arise out of the determination of interests in the very automobiles and claims thereto as being litigated before this Bankruptcy Court.

10. Specifically, the proposed amended complaint in the FVP State Action seeks relief against the Faraches as follows:

   "5. By this action, inter alia, the Plaintiffs also seek to recover their damages against Moshe Farache, Lisa Farache, Chase Farache and other aiders and abettors and co-conspirators who engaged in a scheme to defraud the Plaintiffs by converting the Plaintiffs' collateral held by the Karma Entities and engaging in a false and fraudulent cover up. 6. In furtherance of the scheme, on April 1, 2022, Moshe Farache, Lisa Farache, Chase Farache and other aiders and abettors and co-conspirators under their direction forced the Zankl's, under threat of physical violence, to hand over in excess of $7 million in automobiles – the Plaintiffs' collateral – to Moshe Farache, Lisa Farache, Chase Farache and other aiders and abettors and co-conspirators in exchange for no money. To make perfectly clear, the automobiles that were turned over under threat of violence were the Plaintiffs' collateral."

[*See* **Exhibit "1"** (a true and correct copy of the motion to amend, with the attached proposed amended complaint and its hundreds of pages of exhibits) hereto at Exhibit "A" thereto, p.3, para.'s 5-6].[2]

11. Upon the undersigned's finding out about the attempt by FVP to make an end run around the automatic stay, the undersigned both verbally and in writing demanded counsel to FVP to immediately withdraw their motion to amend the state court complaint as it would appear to be a violation of the automatic stay [*see*, ECF No.303-2].

12. Notwithstanding such demand, FVP took a calculated risk and continued to prosecute the motion to amend in the FVP State Action, and set a hearing on their motion to amend for December 12th, 2022 (*see Exhibit "2"*, the Notice of Hearing); wherein, FVP was advised by the State Court judge, at the hearing of December 12th, that the State Court would not proceed with the hearing.

13. The fact is that the claims against the Faraches are designed to muscle them into submission and get them away from being able to reorganize the Debtor in this Case.

14. The acts complained of all relate to the vehicles subject to the Adversary Proceeding pending before this Court. If FVP does not prevail on the cars in the Bankruptcy Adversary Proceeding it cannot make such claims against the Faraches in the FVP State Action, and the fact remains that the Debtor would be a party-in-interest, if not a necessary party, in the FVP State Action as well.

---

[2] The proposed Amended Complaint also seeks fraudulent transfer claims against the Faraches, all of which would be directly from the purported automobiles subject of the pending Adversary Proceeding before this Court.

## <u>MEMO OF LAW</u>

15. The filing of the Petition [ECF No. 1] created an estate comprised of all legal or equitable interests of the Debtor on the date of commencement of the Case. *See*, 11 U.S.C. § 541(a)(1).

16. Such "interests" include causes of action which Debtor has against any others as of such date. *See, e.g., In re Icarus Holdings*, 391 F.3d 1315, 1319 (11th Cir. 2004).

17. To the extent that the Debtor holds such claim, then only the Chapter 11 Debtor has standing to prosecute such claim. *See Mennen vs Onkyo Corp.*, 248 Fed. Appx. 112, 113 (11th Cir. 2007).

18. In the matter at bar, FVP seeks relief to prosecute claims under piercing the corporate veil//alter ego theories against the owners of the Debtor for the same transactions/occurrences which are subject of this Court's jurisdiction in the now-pending Adversary Proceeding before it.

19. Two issues arise in regards to the FVP Motion: a) whether the subject litigation is "property of the estate"; and, b) whether or not the automatic stay should remain in effect.

20. For purposes of alter ego/veil piercing,[3] the 11th Circuit has established a two-prong test to determine if such actions are property of the bankruptcy estate. *See, Baillie Lumber Co. v. Thompson (In re Icarus Holdings, LLC)*, 391 F.3d 1315, 1317 (11th Cir. 2004) ("Icarus I").

---

[3] "Under Florida law, a plaintiff seeking to pierce the corporate veil must satisfy a three-prong test, showing that:

    (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;

    (2) the corporate form must have been used fraudulently or for an improper purpose; and

    (3) the fraudulent or improper use of the corporate form caused injury to the claimant."

*In re McCravy*, 2015 Bankr. Lexis 1955 (Bankr. S.D. Fla. June 16, 2015), *citing Molos Valle Del Cibao vs Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011).

21. Under the Icarus test, the Court looks to determine if the claim is: (1) a general claim common to all creditors and (2) whether it is allowed by state law.

22. As to prong two of the Icarus Test, courts in the 11th Circuit have decided that indeed a chapter 11 debtor may prosecute alter ego/piercing corporate veil actions under Florida law. *See, e.g., Icarus, supra; In re Xenerga,* 449 B.R. 594, (Bankr. M.D. Fla. 2011) (Florida law would allow a corporation to pierce its own corporate veil in an alter ego action against the corporation's principals); *In re Sigma-Tech Sales, Inc.*, 2016 Bankr. 2016 Lexis 2980 (Bankr. S.D. Fla. July 31, 2016) (An alter ego action satisfying both prongs of the Icarus Test establishes a cause of action whereby—if found liable—the alter ego becomes property of the bankruptcy estate and subject to the automatic stay); *SC Advisors , LLC vs Rudnick*, Bankr. 2021 Lexis 972 (Bankr. N.D. Fla. (March 3, 2021) (If the Rudnick Entities are Defendant's alter egos, and if Defendant is using their assets or money for his own purposes, any action to prevent him from doing so or to recover such assets belongs to the Chapter 7 Trustee, because the harm is to all creditors, not just SC Advisors).

23. The first prong of the Icarus Test, (whether the claim is unique to the creditor or can be raised by or for the benefit of the Debtor), is also one which falls in favor of the Debtor herein.

24. To the extent that FVP could establish alter ego, this in turn would mean the assets of the individuals could be assets of this Bankruptcy Estate and the Faraches would be liable for all debts of the Debtor, not just the debts of FVP. *See, e.g., Xenerga, supra* at 599-600 ("under Florida law, an injured party may pierce the corporate veil if insiders abuse the corporate form and injured a party. Trustees who represent the interest of all unsecured creditors of a debtor corporation are in the best position to assert claims against abusive insiders who have harmed the general creditor body as a whole"). *See also, generally, McCravy, supra* at *22.

25. With regards to the automatic stay, the newly minted claims by FVP are ones which are inextricably woven with the claims it seeks in the pending Adversary Proceeding against, among others, the Debtor, *i.e.* – that the subject vehicles are the collateral of FVP.

26. The only court which can determine this interest is this very Court.

27. For FVP to prevail on the alter ego claims, they have to establish that in fact the Debtor is a fraud with no true business purpose; and, that the vehicles subject of this Court's jurisdiction were subject of an unavoidable duly-perfected lien interest in favor of FVP.

28. This would be a determination of the priority and extent of interest in property of this estate and if allowed to proceed, an adjudication may serve as collateral estoppel in the pending Adversary Proceeding by deeming the vehicles subject of liens which Debtor asserts do not exist or are otherwise avoidable.

29. Therefore, the Court should not grant stay relief. *See, e.g., In re Fiddler's Creek, LLC*, 2010 Bankr. Lexis 5715 (M.D Fla. Sept. 15, 2010) (under Florida law, plaintiffs had to first establish debtors' alleged liability for their claims as a condition precedent to pursuing the remedy of alter ego or veil piercing against defendant. Because plaintiffs' substantive claims were clearly causes of action against debtors, the prosecution of the lawsuit violated the stay provisions of 11 U.S.C.S. § 362. The proof needed to pursue alter ego and veil piercing remedies was identical to the proof required to show if debtors were liable. Debtors would not have been able to defend against cross-claims. There were also collateral estoppel concerns. Debtors would necessarily have been prevented from bringing any compulsory counterclaims, which were clearly property of the estates; thus, the class action had a direct effect on, and in fact, could have eliminated debtors' ability to realize an asset of the estate. The lawsuit violated the stay and was void).

WHEREFORE, Debtor requests that the Court deny all relief to FVP, reserve on sanctions against FVP for willful violation of the automatic stay, award fees and costs to Debtor, and for such other and further relief which is equitable and just.

Respectfully submitted on January 9th, 2023.

JAMES B. MILLER, P.A.
*Counsel for Debtor-in-Possession*
19 West Flagler St., Suite 416
Miami, Florida 33130
T. 305.374.0200
F.  305.374.0250
EMAIL: BKCMIAMI@GMAIL.COM


_____/s/_____
JAMES B. MILLER, ESQ.
Fla. Bar No. 0009164


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this pleading was served *via* CM/ECF simultaneously with the filing of the same with the Court this even date upon all parties-in-interest of record who are registered to receive such pleading and filings before this Court *via* CM/ECF.

_____/s/_____
JAMES B. MILLER, ESQ.
Fla. Bar no. 9164