**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**
www.flsb.uscourts.gov

In Re:

**AUTO WHOLESALE OF BOCA, LLC,**       **CASE NO.: 22-15627-EPK**

Debtor.                                Chapter 11, Subchapter 5
_____/

**<u>FVP'S MOTION TO DISMISS OR CONVERT TO CHAPTER 7</u>**

This chapter 11 case (the "Case") hit a brick wall on January 25, 2023.  <u>In re Excell</u> <u>Auto Group, Inc</u>, Case No. 22-12790-EPK – is another bankruptcy also pending in this Court ("Excell" and the "Excell Case) which is quasi related to this Case (same owners, same "lenders", etc.).  On January 25, 2023, Nicole Testa Mehdipour in her capacity as the trustee in the Excell Case (the "Excell Trustee), filed a proof of claim in this Case (the "Excell POC") indicating that – put simply – the Debtor here, Auto Wholesale of Boca, LLC, ("AWB") is nothing more than a usurious lender.  A true copy of the Excell POC is attached as Exhibit A.  The Court will of course note that the Excell Trustee is not aligned with FVP on all issues and is an independent fiduciary.

The Excell POC confirms what FVP has long known, and argued generally to this Court, that AWB and its principals and related entities were (and remain to some degree) engaged in a long-term illegal loan sharking scheme and that the filing of this Bankruptcy Case was a sham to obfuscate its schemes and more importantly, protect its insiders. The Debtor's incessant incantation that it is a "Mom and Pop" auto dealer, rings more and more hollow.  In this Case,  AWB has done nothing but delay and hinder FVP (and others) and spend, and cause to be spent, an outrageous amount of attorney's fees in contesting

routine matters, claims by the lawful owners of vehicles, routine discovery requests and responses and countless delay tactics.

At the same time, AWB has no business operations, literally, none. In sum, AWB and its insiders grabbed and sold numerous vehicles to which they were not entitled sold as many as they could as quickly as they could - and has spent this entire Case seeking to retain same.

The FVP Plaintiffs contend that this Bankruptcy should be dismissed or otherwise converted to Chapter 7 so that a trustee can do what should have done from the outset, return the Cars to their rightful owners/lienholders, and seek recovery of the fraudulent transfers that went through AWB to the insiders and the companies they control.

In addition, the FVP Plaintiffs respectfully requests that the Court waive the provisions of Rule 9075-1(b) of the Local Rules for The United States Bankruptcy Court for The Southern District of Florida (The "Local Rules"), which require an affirmative statement that the movant has made a bona fide effort to resolve the issues raised in this motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution. That notwithstanding, Plaintiffs will endeavor to seek resolution with AWB prior to any hearing.

**FVP MOTION TO DISMISS OR CONVERT TO CHAPTER 7**

FVP Opportunity Fund III, LP, a Delaware limited partnership (the "FVP Fund"), FVP Investments LLC, a Delaware limited liability company ("FVP Investments"), and FVP Servicing, LLC, a Delaware limited liability company ("FVP Servicing") (collectively, the "FVP"), by and through their undersigned counsel, pursuant to Local Rule 9014-1,

and Section 1112(b) of the Bankruptcy Code, 11 U.S.C. 121(b) (generally, the "Code"), respectfully move this Court to:

    A.  Dismiss this Bankruptcy for bad faith and for cause; or

    B.  Convert this Chapter 11 Bankruptcy to Chapter 7 for cause.

### INCORPORATION BY REFERENCE OF
### VERIFIED ALLEGATIONS AND EXHIBITS OF PLEADINGS AND MOTION

Pursuant to Fed. R. Civ. P. 10, the FVP Plaintiffs incorporate by reference hereto the verified allegations filed of record in this action as part of their Adversary Complaints and all exhibits attached thereto filed of record in Case No.: 22-01218-EPK at: [CP # 1, 2, and 145].

Introduction:

On April 1, 2022, Moshe Farache ("Farache"), threatened one of the owners of Karma of Broward and Karma of Palm Beach (for ease, the "Karma Entities" or "Karma") to transfer the titles to, and then took, over thirty high priced vehicles.  Since then, FVP and a cadre of other claimants have lodged various state and federal court claims seeking monetary and injunctive relief from which AWB to which it and its insiders have done nothing but object and obfuscate.[1]  All that litigation led to the filing of this Case, where the obfuscation only escalated.

---

[1]    This has included attempting to remove the action to the Southern District of Florida without basis in law to do so, which resulted in United States District Judge Singhal *sua sponte* remanding the case to State Court, but nonetheless resulting in delay in the Plaintiffs' and other claimants' days in Court, as this latest tactic of AWB's bankruptcy has also resulted in. See Case 0:22-cv-60808-AHS Document 18 Entered on FLSD Docket 05/02/2022.

The time has come for AWB and Farache to be removed from the protections of Chapter 11 as the process has been abused and it has been used to protect what is now apparent as unlawful conduct (per the Excell Trustee and Excell POC).

The Plaintiffs' State Court Action

The Plaintiffs sued Farache and AWB, etc. in the Broward County Circuit Court case number CACE 22-5125 (the "State Court Action"), which remains pending. The State Court Action is currently stayed as to all claims against AWB and Farache. That lawsuit seeks injunctive relief and monetary damages against - without limitation - AWB and Farache, who have engaged in illegal acts, including, *inter alia*, fraud, civil conspiracy, and fraudulent transfer.

The lawsuit emanates from a loan ("Loan") of Seven and One-Half Million Dollars ($7,500,000.00) which the FVP extended to the Karma Entities. FVP made the Loan after due diligence indicated that the Loan would be fully secured by the inventory and assets of the Karma Entities (generally, the "Cars"). FVP duly and properly filed its UCC against (for ease, and without limitation) the Cars (the "Lien"). When AWB seized all of the Karma inventory, FBP's Loan was suddenly without collateral. Litigation ensued.

FVP had set an omnibus hearing in the State Court Lawsuit for June 25 and 26, 2022, on an order to show cause in replevin, and alternatively for the appointment of a receiver to safeguard the Cars, as well as an order to show cause as to why Moshe Farache personally should not be held in contempt of Court for filing a false affidavit regarding the number of disputed vehicles he alleged to have in his possession, AWB

filed this Chapter 11 proceeding on the proverbial eve of that omnibus hearing.

This Court is well aware that litigation has mushroomed with no issue or argument too small or insignificant to be fully explored.

This Bankruptcy case should be dismissed or converted to a Chapter 7 because:

1. AWB has no car sales operations and never did. The evidence is overwhelming that AWB was a lender and only a lender to the Karma Entities (and Excell). See e.g., **Exhibit 2** – several emails from AWB to Scott Zankl with attached spreadsheets outlining the loans and what AWB expected in return. The only thing that AWB did before April 1, 2022 was lend money and the only thing that it has done since it took the Cars on April 1, 2022 is sell them and spend that money attempting to defend the claims of fraudulent transfers and other torts.

2. The vast majority of the debts listed on the Debtor's schedules are to insiders.

3. Farache has adopted numerous postures regarding the Cars, the latest being that he purchased the Cars in the ordinary course.  Of course, the truth is anything but.  FVP's view is stated perfectly, by Farache in a lawsuit in Palm Beach against – without limitation, Karma and Excell.  A true copy of the verified complaint is attached as **Exhibit 3**. In connection with loans to Excell, the complaint states, at Par. 32 ("So as to protect their interest, AWB would have the title of the vehicle placed in the name of AWB").

When Farache and AWB realized that they would lose in a lien superiority contest, they (now) disclaim their own loan documents and insists that AWB is a buyer, not a lender. See **Exhibit 4**, at page 86:

> Q.    Did AWB ever loan any money to either Scott Zankl or any of his companies? And by his companies we mean Excell Auto Group or the Karma entities. Okay? Do you understand that?
>
> A.    We purchased vehicle.
>
> Q.    So my question to you is: Did AWB ever loan money to Excell Auto Group, Inc.?
>
> A.    We purchased vehicle.

4.  The acts of the Debtor have been purely to shield the insiders. The Debtor has taken no steps whatsoever to account for, investigate or certainly pursue fraudulent transfers, money transfers, or similar claw-back causes of action.

5.  "Cause" and bad faith also exists because Debtor's principal, Farache, filed a false Official Form 204 in an attempt to misrepresent to the court and creditors the extent of *bona fide* unsecured creditors of the Debtor. Specifically, notwithstanding the clear mandate of the Bankruptcy Rules and the express warning in bold letters on Official Form 204, the Debtor listed the following entities as non-insider creditors making up part of the "top twenty" largest unsecured creditors: M & M Development Consultants LLC ("M&M") with a claim of $1,289,168.77, Mazel Tov Inc. ("Mazel Tov") with a claim of $77,838.87, and Express Emergency Services, Inc. with a

claim of $3,000. The Debtor has further compounded the problem by listing the insider debts as being undisputed, non-contingent and liquidated. A review of official public records of the Florida Department of State reflect that the members (owners) of the Debtor, Moshe, Lisa and Chase Farache, are also members (owners) of M&M (Moshe, Lisa and Chase), Mazel Tov (Lisa and Chase), and Express (Moshe).

6. The Debtor's principal Farache has failed to respond in good faith to discovery requests and to answer questions in good faith under oath. (the FVP Plaintiffs will file a detailed analysis of the Farache deposition responses prior to hearing but **Exhibit 4** gives a fair sampling.)

7. In the 192 days since the Petition date:

   a. The Debtor has no assets other than the Cars which it took on April 1, 2022 and the proceeds of the sales of some of those Cars.

   b. The Debtor has not engaged in any business activities (the buying or selling of any cars).

   c. The sole activity of the Debtor (and the alleged assets of the estate) have been used solely for the payment of attorney's fees to shield the insiders.

   d. To that end the Debtor proposed a plan which included broad releases for the insiders (for ease, "Releases") and equally startling, a release for the Debtor in the event it did not prevail in the

Adversary. The fact that Debtor's counsel has assured that the Releases will be withdrawn from an Amended Plan in response to this Court ruling that the Releases engendered discovery into the insiders finances does not diminish the bad faith of both the initial filing and ongoing litigation.

e. Finally, the plan offers only to pay insiders and one family friend, with the proceeds of a non-existent business.

f. The Debtor has not even attempted to proffer an appropriate Chapter 11 Plan sufficient to demonstrate that the Debtor is a going concern capable of paying any creditors.

<u>The Facts</u>

1. AWB had a long-term lender / borrow relationship with Excell Auto Group, Inc., and the Karma Entities. See **Exhibits 2 and 3**.

2. The FVP Plaintiffs loaned the Zankl's Companies $7,500,000.00 on January 26, 2022 pursuant to loan documents filed of record.

3. On March 31, 2022, the Karma Entities were (or appeared to be and were represented to be) multi-million-dollar companies with over eight million dollars ($8,000,000.00) in inventory which served as the Plaintiffs' collateral for their seven and one-half million-dollar ($7,500,000.00) loan to the Karma Entities. On April 1, 2022, all of the luxury automobiles were gone, and the stores closed.

4. The reason being that Farache took every meaningful vehicle on the lots,

including cars that were owned by customers and simply being serviced, and numerous titles to vehicles. Many of those vehicles have already been returned by this Court to their lawful owners.

5. On April 8, 2022, Scott and Kristen Zankl, (the Zankl's) filed a police report and reported that the Plaintiffs' collateral automobiles taken by Farache on April 1, 2022 were, in fact, *stolen by extortion* by Farache. *See Boca Raton Police Department – Report Case No.: 22-4685.*

6. On April 8, 2022 in Palm Beach County's Circuit Court, styled *Moshe Farache and Auto Wholesale of Boca, Inc. v Scott Zankl, et al.*, Case No: 50 2022 CA 3358XXXXMB, **Exhibit 2,** Farache asserted in that lawsuit under oath that the Zankl's owed him millions of dollars and that he was entitled to *foreclose* on automobiles that Farache had already taken on April 1, 2022 – as collateral for his long overdue debt.

7. That lawsuit states *under oath* (by Farache) that the "remaining Financed Inventory (collateral automobiles) are presently located at EAG's principal place of business: 1001 Clint Moore Road, Suite 101, Boca Raton, FL 33487." This statement under oath was patently false as those automobiles were removed a week prior on April 1, 2022.

8. In response, the FVP Plaintiffs filed their lawsuit, the State Court Action, Broward County Circuit Court case number CACE 22-5125, on April 10, 2022. In that action, Farache filed various affidavits that he was not a lender, but a purchaser. In fact, on January 12, 2023 during deposition Farache disclaimed on numerous occasions that

he was a lender and at all times he was purchaser. See Farache Depo Excerpts as

**Exhibit 4**.

9.      The financial and bank records establish that the Debtor's books and records do not comport with the Debtor's assertion of ownership. See **Exhibit 5** affidavit of Brian Rohl.

10.      The Debtor's own business records establish the fraudulent nature of the paperwork created by and for the Debtor to shield his usurious activities.

11.      During deposition Mr. Farache was asked about a sampling of the AWB business records provided during discovery. In particular, the AWB Deal Jackets. The AWB Deal Jackets were *provided by AWB* and show numerous purchase and sale agreements between AWB and Excell regarding vehicles on dates that the vehicles were owned by customers of the Karma Entities. A sampling of deal jackets that Mr. Farache was asked about during deposition and gave no intelligent response involved the following vehicles. [2]

   a. 2020 LAMBO Vin 6981 showing AWB purchasing the car from Excell on 10/26/2021 and selling it back to Excell on 3/2/2022 when the car was purchased by the Karma Entities on November 12, 2021 and sold to an end user on November 15, 2022. (Depo Folder B 7).
   b. 2018 PORSCHE Vin 2124, showing AWB purchasing the car from Excell on 7/12/2021 and selling the car back to Excell on 9/23/2021 when the car was purchased by the Karma Entities from an end user on 9/18/2021 and sold to an end user on the same date of 9/18/2021. (Depo Folder B 9).
   c. 2018 PORSCHE Vin 6822, showing AWB purchasing the car from

---

[2]      The following vehicles are a sampling of a sampling. The witness was questioned about nine AWB deal jackets with ten left unaddressed of the nineteen deal jacket samples chosen for examination.

Excell on 9/22/2021 and selling it back to Excell on 10/8/2021 when the car was purchased by the Karma Entities from an end user on 9/27/2021 and sold to an end user on the same date of 9/27/2021. Depo Folder B 11).

d. 2013 DODGE Vin 0608, showing AWB purchasing the car from Excell on 12/7/2021 and selling it back to Excell on 11/5/2021 when the car was purchased by the Karma Entities from an end user on 11/1/2021 and sold to an end user on 11/3/2021. Depo Folder B 17).

e. 2013 MERCEDES Vin 9244, showing AWB purchasing the car from Excell on 7/30/2021 and selling it back to Excell on 9/20/2021 when the car was purchased by the Karma Entities from an end user on 8/31/2021 and sold to an end user the same day on 8/31/20210. (Depo Folder B 19).

f. 2008 PORSHE Vin 9039, showing AWB purchasing the car from Excell on 10/14/2021 and selling it back to Excell on 12/29/2021 when the car was taken on consignment by the Karma Entities from an end user on 9/18//2021 and sold to an end on 12/13/2021. (Depo Folder B 21).

All of the aforementioned files are in the deposition record of Moshe Farache and will be made available at a hearing on a motion to convert.

## LEGAL ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

### A. DISMISSAL UNDER 11 U.S.C. 1112.

Section 1112(b)(1) provides that the court shall dismiss a case under Chapter 11 for cause. Section 1112(b)(4) sets forth a non-exhaustive list of grounds that may constitute "cause" for dismissal. A case also may be dismissed for cause if the petition was not filed in good faith. *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir. 1984).

It has long been the law in this district that bad faith cases, such as this one, are dismissed. See, generally, *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394 (11th Cir.1988 See also *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984).

Section 1112(b)(1) provides in relevant part: "Except as provided in paragraph (2)

and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ..." The filing of a Chapter 11 case in bad faith constitutes cause. *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988). Although there is no particular test for determining whether a debtor has filed a petition in bad faith, courts may consider factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." Id. (quoting *Albany Partners, Ltd. v. Westbrook* (In re Albany Partners, Ltd. ), 749 F.2d 670, 674 (11th Cir. 1984) ). In Phoenix Piccadilly, the Eleventh Circuit affirmed the district court's decision affirming the bankruptcy court's dismissal of a case for cause pursuant to § 1112(b). The Piccadilly factors are guideposts rather than a rigid standard for determining bad faith. In re Stafford Rhodes, LLC, 2012 WL 5439041 at *3 (M.D. Ga. Nov. 7, 2012). A court has broad discretion to evaluate the totality of the circumstances in each case and to determine whether those [572 B.R. 389] circumstances indicate a petition was filed in bad faith. See *Singer Furniture Acquisition Corp. v. SSMC Inc., N.V.* 254 B.R. 46, 51 (M.D. Fla. 2000).

Second, here the Debtor cannot reorganize within a reasonable amount of time as it has no operations, no income, and no ability to fund operations either during or after bankruptcy. Rehabilitation has also been considered in the dismissal context and has been defined as whether the debtor will be able *to reestablish its business*. "... the

standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort. Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas, confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation." Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.04[6][a][ii] (16th ed.2013). "Instead, rehabilitation signifies something more, with it being described as 'to put back in good condition; re-establish on a firm, sound basis.' " In re Creekside Senior Apts., L.P., 489 B.R. 51, 61 (B.A.P. 6th Cir.2013) citing In re Westgate Props., Ltd., 432 B.R. 720, 723 (Bankr.N.D.Ohio 2010) (quoting In re V. Cos., 274 B.R. 721, 725 (Bankr.N.D.Ohio 2002)). "Rehabilitation is the restoration of a business' vitality and depends on whether the debtor can formulate within a reasonable amount of time a reasonably detailed business plan." In re 221–06 Merrick Blvd. Assocs. LLC, 2010 Bankr.Lexis 4431, *5 (Bankr.E.D.N.Y.2010). The purpose of Section 1112(b)(1) is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." Loop Corp. v. United States Tr., 379 F.3d 511, 516 (8th Cir.2004) (quoting In re Lizeric Realty Corp., 188 B.R. 499, 503 (Bankr.S.D.N.Y.1995)). Here rehabilitation is not possible.

Here, the only business of AWB was its loan business with Excell and arguably the Karma Entities. As AWB's principals put the Karma Entities out of business, there is no possibility that that AWB can "reestablish its business." As such, dismissal is appropriate.

**B. CONVERSION OF CHAPTER 11 TO CHAPTER 7**

To the extent that the Court deems dismissal inappropriate, the FVP Plaintiffs would request an immediate conversion to Chapter 7 to stop the bleeding of the Estates assets on attorney's fees that are being expended for the sole purpose of shielding the insiders.

Section 1112(b)(1) of the Bankruptcy Code provides:

Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ....

11 U.S.C. § 1112(b)(1) (emphasis added).

Where "cause" is shown, the Court shall convert a Chapter 11 case to a Chapter 7 case upon the request of a party in interest absent "unusual circumstances."  11 U.S.C. § 1112(b)(2).  If "cause" for conversion exists, the Courts discretion is limited to those instances in which the court makes specific findings that unusual circumstances "establish that the requested conversion or dismissal is not in the best interests of the creditors and the estate." *See In re Broad Creek Edgewater, LP*, 371 B.R. 752, 759 (Bankr. D.S.C. 2007) (involuntary Chapter 7 debtor could not convert its case to one under Chapter 11 because cause existed for conversion or dismissal of the proposed Chapter 11 case).

Bankruptcy courts have wide discretion to convert a Chapter 11 case to one under Chapter 7 for "cause."  *In re FRGR Managing Member LLC*, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009).  *Accord, In re Brooks*, 488 B.R. 483 (Bankr. M.D.Fla. 2009) (citations

omitted).

Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of examples of "cause."  11 U.S.C. § 1112(b)(4).  Notwithstanding the numerous factors, "cause" is simply good or sufficient reason, as good, proper, or adequate ground of action, or as reasonable grounds for doing something.  "Although these definitions vary in their precise terms, the common thread among them is unmistakable: the ordinary meaning of "cause" is adequate or sufficient reason." *Piazza v. Nueterra Healthcare Physical therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1261 (11th Cir. 2013) (*citing Black's Law Dictionary* 279 (4th ed. 1968); *Black's Law Dictionary* 200 (5th ed. 1979); *Black's Law Dictionary* 717 (9th ed. 2009); *Funk & Wagnalls College Standard Dictionary* 198 (1941); *American Heritage Dictionary, New College Edition* 214 (6th ed. 1976); *2 Oxford English Dictionary* 1000 (2d ed. 1989); *New Oxford American Dictionary* 272 (3d ed. 2005)).

Here, the Debtor has apparently omitted material assets and transfers of assets in his schedules and amendments thereto in the years prior to filing. The Proof of Claim filed by the Excell Trustee is seismic. **Exhibit 1**. In addition to the evidence of substantial sums going through the AWB that are not accounted for, the assertions that the Debtor and its insiders were usurious lenders supports the position taken by the FVP Plaintiffs from the outset.

### a. FIDUCIARY DUTIES OF DEBTOR IN POSSESSION

A debtor in possession is the representative of the estate in a chapter 11 case with all the rights and powers and shall perform the functions and duties of a trustee. 11 U.S.C.

§ 1184. *See also In re SunCruz Casinos, LLC,* 187 B.R. 821, 829 (Bankr. S.D.Fla. 2003) (citations omitted).  "Chief among these ... is that the debtor in possession is a *fiduciary* to all of its creditors and equity security holders."  *Id.* (citations omitted).  "[A] fiduciary— the debtor in possession—is proscribed from acting solely in its self-interest to the exclusion of the other interests which the debtor in possession has the fiduciary obligation to protect." *Id.* at 830 (citation omitted). Here the opposite has occurred.

> **b. THE DEBTOR HAS NOT AND IS NOT GOING TO INVESTIGATE AND BRING ALL CLAIMS TO RECOVER ASSETS FOR THE ESTATE AFTER SPENDING SUBSTANTIAL TIME, EFFORT AND FUNDS TO CREATE A SHELL TO SHELTER THE INSIDERS.**

The Debtor is clearly not going to investigate and bring all the possible avoidance or other causes of action that arise from transfers in a clear attempt to avoid collection by his creditors.

> **c. THE FACE OF THE SCHEDULES EVIDENCE AN IMPOSSIBILITY OF REORGANIZATION**

On the face of the Debtor's schedules, it is evident that the Debtor cannot reorganize or confirm a plan because it has no income.  Selling the Cars, which it does not own, is not income and is not a business.

The Debtor's schedules and its conduct throughout this Case, completely ignores the 800-pound gorilla, which is the years of fraudulent transfers to its insiders.

> **d. DEBTOR'S PRINCIPAL'S PERJURY REGARDING THE FACT THAT THE DEBTOR IS A BUYER AND NOT A LENDER.**

As this Court is already aware, the Debtor has taken multiple contradictory positions with respect to his relationship to the disputed vehicles. On April 8, 2022 he was a *lender* under oath, **Exhibit 3**. On April 14, 2022 he was a *buyer* and made other

representations to which he remains subject to contempt and a rule to show cause that remains issued and pending. Both sworn statements cannot be truthful and are diametrically opposed. The overwhelming evidence is that Farache's current testimony is false when looking at AWB's own business records and communications.

As to Farache's current position on the matter, he wholly disputes his own loan documents and security agreements. See **Exhibit 4.** It cannot be logically, reasonably or objectively suggested that the Debtors principal has ever been truthful in any affidavit or testimony and that has continued through his deposition on January 12 and 13, 2023.

**WHEREFORE**, the FVP Plaintiffs respectfully request that this Court enter an order: (i) granting this Motion; (ii) either dismissing this case or converting this case from a case under subchapter V of Chapter 11 to a case under Chapter 7 of the Bankruptcy Code; and (iii) granting such other and further relief as this Court deems just and proper.

Respectfully submitted:

Dated January 31, 2023.

David Softness, Esq.
David R. Softness, P.A.
201 S. Biscayne Blvd., Ste 2740 #700
Miami, Florida 33131
Phone: (305) 763-8708
E-mail: dan@dyglaw.com

Jerrell A. Breslin, Esq.
Baron, Breslin & Sarmiento
The DuPont Building, 169 East Flagler Street,

Miami, Florida 33131
Phone: (305) 577-4626
E-mail: JB@RichardBaronLaw.com
        EService@RichardBaronLaw.com

Jonathan Noah Schwartz, Esq.
Florida Bar No. 1014596
Jonathan Schwartz Law PLLC
10200 NW 25th Street, Suite 111
Doral, FL 33172
Tel.: (973) 936-2176

Fax: (786) 338-7435
E-mails:   jschwartz@jonschwartzlaw.com
JNSEsquire@gmail.com


David R. Softness, P.A.
201 S Biscayne Blvd Ste 2740
Miami, FL 33131-4332
Tel:  305-341-3111
Email: david@softnesslaw.com

By:   s/  David R. Softness
David R. Softness, Esq.
Florida Bar No. 513229

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that; I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that a true and correct copy of the foregoing was served via CM/ECF electronic transmission upon: upon: the Subchapter5 Trustee by serving Linda Leali, Esq. at lleali@lealilaw.com; upon the Debtor/Defendant by serving James B. Miller, Esq. at bkcmiami@gmail.com and jbm@title11law.com; upon Wing Lake Capital Partners f/k/a Franklin Capital Group, LLC by serving Bradley Shraiberg, Esq. at bss@lpplaw and Pat Dorsey, Esq. at pdorsey@slp.law; upon Karma of Broward, Inc. and Karma of Palm Beach, Inc. by serving Harry Winderman, Esq. at harry4334@hotmail.com; upon Ed Brown by serving Brett Marks, Esq., at brett.marks@akerman.com and Amanda Klopp, Esq., at amanda.klopp@akerman.com and Eyal Berger, Esq., at eyal.berger@akerman.com; and upon Hi Bar by serving Steven Wells at Steve@wellspc.com, Jason DeJonker, Esq. at Jason.DeJonnker@bclplaw.com, Jarret Hitchings, Esq. at jarret.hitchings@bclplaw.com, David Unseth, Esq. at

dmunseth@bclplaw.com, and James Moon, Esq., at Jmoon@melandbudwick.com; upon

Derek Stephens by serving Cory Mauro, Esq. at cory.mauro@maurolaw.com, and upon

Moishe, Lisa and Chase Farache by serving Scott Gherman, Esq. at

sgherman@scottghermanpa.com.

     In addition, this Motion will be served upon all creditors and parties in interest by

mail in accord with a Certificate of such service which will be filed thereupon.


/ s/ David R. Softness
David R. Softness, Esq.