# EXHIBIT 1

**Exhibit 1**

## Fill in this information to identify the case:

Debtor 1   Auto Wholesale of Boca, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    **Southern District of Florida**

Case number:  **22–15627**

**FILED**

**U.S. Bankruptcy Court
Southern District of Florida**

1/25/2023

**Joseph Falzone, Clerk**

Official Form 410
# Proof of Claim

**04/19**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Excell Auto Group, Inc.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Excell Auto Group, Inc.

Name

c/o Nicole Testa Mehdipour, Trustee
Law Office of Nicole Testa Mehdipour, PA
6278 North Federal Highway, Suite 408
Fort Lauderdale, FL 33308

Contact phone       954–302–5937

Contact email      nicolem@ntmlawfirm.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**Where should payments to the creditor be sent?** (if different)

Name

Contact phone

Contact email

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known)    18    Filed on   09/30/2022
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | | |
|---|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ | |

| | | |
|---|---|---|
| 7. **How much is the claim?** | $ 114608134.69 | **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

See detailed Exhibit A

9. **Is all or part of the claim secured?**

☑ No<br>
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☑ No<br>
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

11. **Is this claim subject to a right of setoff?**

☑ No<br>
☐ Yes. Identify the property: _____

Official Form 410 — Proof of Claim — page 2

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ | No | | | **Amount entitled to priority** |
|---|---|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies    $ _____

\* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    1/25/2023
                    MM / DD / YYYY

/s/  /s/ Nicole Testa Mehdipour

Signature

Print the name of the person who is completing and signing this claim:

| Name | /s/ Nicole Testa Mehdipour |
|---|---|
| | First name      Middle name      Last name |
| Title | Nicole Testa Mehdipour, Trustee |
| Company | for In re Excell Auto Group Inc. Case 22–12790–EPK |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 6278 North Federal Highway |
| | Number   Street |
| | Fort Lauderdale, FL 33308 |
| | City   State   ZIP Code |

Contact phone   954–302–5937        Email   nicolem@ntmlawfirm.com

Exhibit A Amended Proof of Claim (Amendment to POC 18) for
Chapter 7 Estate of Excell Auto Group, Inc.

### A. Excell Trustee's Investigation is On Going and Amounts Identified are Subject to Change and the Excell Trustee Reserves the Right to Amend

1.      Nicole Testa Mehdipour ("**Excell Trustee**"), chapter 7 trustee for the bankruptcy estate of Excell Auto Group, Inc. ("**Excell**") is still investigating the finances of Excell, including all transactions between AWB and Excell.   Excell Trustee reserves the right to further amend this Proof of Claim, as necessary.

2.      Excell Trustee specifically reserves the right (i) to amend, update and /or supplement this Proof of Claim at any time and in any respect including, but not limited to increasing the Claim for any subsequently discovered pre-petition amounts due or supplementing the Claim to include any other liability or indebtedness of AWB; (ii) to file requests for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507, including without limitation, requests for expenses included in the Claim, and/or (iii) to assert a right of setoff, recoupment, indemnification, or any other right. This Proof of Claim is filed without prejudice to the filing by Excell Trustee of additional proofs of claim with respect to any other liability or indebtedness of AWB.

### B. Fraudulent Transfer of Vehicles

3.      Between January of 2019 and the date of filing, Auto Wholesale of Boca LLC ("**AWB**") received approximately 20 vehicles from Excell in the approximate amount of $4,685,260.00.  The Excell Trustee asserts that the transfers are avoidable transfers.  The transfers of the vehicles were done without payment to Excell's secured creditors, so that each transfer was done with the actual intent to hinder, delay or defraud Excell's creditors. Further, the Excell Trustee is waiting on the conclusion of the FVP adversary to determine whether AWB obtaining the vehicles constitutes civil theft.  The unlawful taking of the vehicles constitutes Civil Theft under common law and under Florida law and entitles the Excell Estate to treble damages under Fla. Stat. § 772.11.

4.      The vehicles at issue have been the subject of on-going litigation between the FVP entities, Winglake Capital f/k/a Franklin Capital, Hi Bar, and the Debtor, Adv. Pro. No. 22-01218-EPK, excluding the Brown Vehicles, are included in the Excell Civil Theft claim.  Any determination made by this Court on the issues in this adversary proceeding will be determinative of this portion of the Excell claim.  Any declaratory relief and liquidation of claims by this Court regarding the ownership of each vehicle at issue, will result in liquidation of this portion of the Excell claim with respect to those vehicles.

### C. $36.4MM in Cash Transfers from Excell to AWB in the Four Year Preceding the Excell Bankruptcy

5.      As of the filing of this Amended Proof of Claim, during the period December 3, 2018 through March 1, 2022, the Excell Trustee and her professionals have identified $36,440.958.23 in cash transfers from Excell to AWB while during the same period

$12,311,993.57 in cash transfers from AWB to Excell, leaving a difference of $24,128,964.66, of cash received by AWB for which no consideration to Excell has been identified. Based upon information and belief, the Excell Trustee asserts that the $36,440,958.23 is attributable to loan repayments. The Excell Trustee is continuing her investigation and will amend this POC as necessary.

### (i)     Collection of Unlawful Debt/Usurious Loans

6.     The Excell Estate is entitled to recover treble damages under Fla. Stat. §§ 895.02, 895.03, and 895.05. The Excell Civil RICO – Collection of Unlawful Debt- AWB and others formed "association-in-fact" enterprise for the purpose of issuing commercial loans to Excell at rates that are more than the enforceable amount under Florida law. For the purposes of federal Civil RICO statutes, the amount was at least two times the enforceable interest rate under Florida law. During a deposition of Moshe Farache, a member of the Debtor and who exercised management and control of AWB, testified that the promissory notes, on which state court lawsuits were filed by AWB and AWB's proof of claim was filed, between AWB and Excell were fraudulent notes only existing to protect Mr. Farache's family if something were to happen or if a vehicle in which the Debtor purportedly had a lien or other interest was sold without the Debtor being compensated. Mr. Farache also testified that the Debtor engaged in transactions where the Debtor transferred money on specific vehicles that were purportedly presold to a third-party buyer, but which Excell needed to acquire from a third-party dealer and for which the Debtor would receive 50% of the net profit as interest. These transactions were loans on which AWB collected usurious rates of interest.

7.     Excell fits within the definition of "person" under 18 U.S. §1964(c).

8.     AWB fits within the definition of culpable "person" within 18 U.S.C. §1961(3).

9.     AWB is separate and distinct from the others that formed the "association-in-fact" enterprise.

10.     AWB's participation in the "association-in-fact" enterprise caused damages to Excell through the collection of unlawful debt.

11.     Alternatively, AWB conspired with others in the "association-in-fact" enterprise that caused damages to Excell through the collection of unlawful debt.

12.     The damages to Excell are approximately $36,440.958.23 from the collection of the unlawful debt.

13.     Excell is entitled to treble damages plus attorneys' fees and costs.

### (ii)     Avoidable Fraudulent Transfers

14.     As set forth above, in the four years prior to the filing of the Excell's bankruptcy the Excell Trustee and her professionals have identified avoidable fraudulent transfers of approximately $24,128,964.66.

15. The transfers were made with the actual intent to hinder, delay or defraud creditors of Excell.

16. Alternatively, the transfers were made within the four years prior to the filing of the Excell bankruptcy. Excell was, or became, insolvent as a result of the transfers. Further, Excell received less than reasonable equivalent value.

17. As a result of the transfers Excell was damaged in the approximate amount of $24,128,964.66.

### (iii) Unjust Enrichment

18. The Excell Trustee seeks recovery of the $24,128,964.66 on the grounds of unjust enrichment.

19. Excell conferred a benefit on AWB in the form of over $24 million in cash transfers.

20. AWB accepted over $24 million in cash transfers voluntarily or requested the benefit.

21. AWB did not pay or otherwise offer Excell compensation or other consideration in exchange for the over $24 million in cash transfers.

22. AWB's benefit of over $24 million in cash without recompense to Excell is inequitable to Excell and its estate.

### (iv) Breach(es) of Contract by AWB

23. The Excell Trustee also seeks damages for breach(es) of contract with respect to any written or oral contracts between AWB and Excell.

24. The Excell Trustee is only aware of the written promissory notes and security agreements on which AWB filed lawsuits in state court against Excell, which were instituted after AWB had taken possession of the vehicles identified above and more, purportedly in satisfaction of these promissory notes.

25. Notwithstanding, Mr. Farache, on behalf of AWB recently disavowed the validity and enforceability of these promissory notes and security agreements. Mr. Farache also testified that AWB engaged in what is generally referred to as spot financing transactions with Excell, but for which no documents have been provided or located.

26. Based upon the volume of cash flowing from Excell to AWB well in excess of any amounts that could be due under the promissory notes, no documentation of any other agreements, and AWB's taking of the vehicles purportedly in satisfaction of these obligations AWB is in breach of its contractual obligations with Excell.

27. Excell is entitled to the damages set forth in this proof of claim.

**D. Excell Administrative and Professional Fees**

28.     The estate is entitled to recover its administrative and professional fees incurred which are estimated at $600,000.00.

**E. Damages Calculations**

29.     The total damages based upon the above is $114,608,134.69, plus prejudgment interest, attorney's fees and costs.