UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:                                                    Case No.  22-15627-EPK
                                                          Chapter 11

AUTO WHOLESALE OF BOCA, LLC

        Debtor.

_____/

## NICOLE TESTA MEHDIPOUR'S EXPEDITED (I) MOTION TO CONVERT TO A CASE UNDER CHAPTER 7, OR, IN THE ALTERNATIVE, MOTION TO DISMISS

Exigent Circumstances

The Court has set *FVP's Motion to Dismiss of Convert to Chapter 7* [ECF No. 390] for a preliminary hearing to be heard on February 15, 2023 at 1:30 p.m. [ECF No. 396]. The Excell Trustee's Motion buttresses the FVP Motion and should be heard at the same time. Therefore, the Excell Trustee respectfully requests that this Court set this Motion for hearing on February 15, 2023 at 1:30 p.m.

Nicole Testa Mehdipour (the "***Excell Trustee***"), chapter 7 trustee for the bankruptcy estate of Excell Auto Group, Inc. and creditor in this bankruptcy case, by and through undersigned counsel, files this motion to convert case from subchapter V chapter 11 to a case under chapter 7 of the Bankruptcy Code,[1] or, in the alternative, motion to dismiss (the "**Motion**"), and respectfully states:

### SUMMARY OF THE ARGUMENT

1.      While the focus of this case has been on the vehicles subject to substantial litigation among several parties claiming interests in each of the vehicles, the bigger issue is the financial fraud in which the Debtor was engaged and the complete absence of any business operations since the filing of the bankruptcy.

_____

[1] 11 U.S.C. §§ 101, *et seq.*

1

2. The Debtor, through its principal Moshe Farache, has falsely testified in this Court and others, omitted interests in assets and transfers of assets from the Debtor's schedules and statement of financial affairs, and has taken numerous steps to hide, conceal, and secret the Debtor's assets from the creditors and cannot remain as the fiduciary of this estate.

3. The Debtor's plan is materially incomplete or otherwise insufficient, contains inaccuracies, and there is no reasonable assurance of success which, therefore, further justifies conversion.

4. Moshe Farache has a conflict of interest in properly investigating and pursuing potential fraudulent transfers and other claims or causes of action that may benefit the estate.

5. Accordingly, cause exists for this Court to convert the case from a case under subchapter V of chapter 11 of the Bankruptcy Code to a case under Chapter 7 of the Bankruptcy Code.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction to hear and determine this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**FACTUAL BACKGROUND**

**A. PERTINENT PROCEDURAL HISTORY**

8. On July 22, 2022, Auto Wholesale of Boca, LLC (the "**Debtor**") filed a voluntary petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code [ECF No. 1].

9. On November 11, 2022, the Debtor filed its First Amended Plan of Reorganization at [ECF No. 196] (the "**First Amended Plan**").

**RELIEF REQUESTED AND LEGAL BASIS**

2

I.    **CONVERSION OF CHAPTER 11 TO CHAPTER 7**

10.    Section 1112(b)(1) of the Bankruptcy Code provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court ***shall*** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ....

11 U.S.C. § 1112(b)(1) (emphasis added).

11.    A party in interest may move to convert or dismiss the case. 11 U.S.C. §1111(b)(2). Where "cause" is shown, the Court shall convert a Chapter 11 case to a Chapter 7 case, unless the Court finds that dismissal or the appointment of a Chapter 11 trustee is in the best interest of creditors, or the Court makes specific findings of unusual circumstances that conversion or dismissal is not in the best interests of the creditors and the estate, then the Creditor's relief should be granted. 11 U.S.C. § 1112(b).   Bankruptcy courts have wide discretion to convert a Chapter 11 case to one under Chapter 7 for "cause." *In re FRGR Managing Member LLC*, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009).  *Accord In re Brooks*, 488 B.R. 483 (Bankr. M.D. Fla. 2009) (citations omitted).

12.    Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of examples of "cause."  11 U.S.C. § 1112(b)(4).  Notwithstanding the numerous factors, "cause" is simply good or sufficient reason, as good, proper, or adequate ground of action, or as reasonable grounds for doing something.  "Although these definitions vary in their precise terms, the common thread among them is unmistakable: the ordinary meaning of "cause" is adequate or sufficient reason." *Piazza v. Nueterra Healthcare Physical therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1261 (11th Cir. 2013) (internal citations omitted).

13.     Here, the Debtor, through its principal, has omitted material assets and transfers of assets in his schedules and amendments thereto.  The Debtor, through its principal, has falsely testified in this Court and the Circuit Courts for the State of Florida.  The principal of the Debtor has continuously shown a complete disregard for his legal obligations and the courts.

II.     **FALSE TESTIMONY OF MOSHE FARACHE ON BEHALF OF THE DEBTOR**

(a) **MR. FARACHE ON BEHALF OF THE DEBTOR TESTIFIED THE DEBTOR NEVER LOANED THE LUMP SUM AMOUNTS STATED IN THE PROMISSORY NOTES UPON WHICH THE DEBTOR FILED ITS STATE COURT LITIGATION**

14.     In the adversary proceeding, 22-01218-EPK pending before this Court, FVP[2] deposed Mr. Farache and specifically questioned Mr. Farache about the Promissory Notes upon which the Debtor had filed its complaint.  Mr. Farache repeatedly testified that AWB never loaned Excell the amounts set forth in the promissory notes; Mr. Farache insisted that the Debtor only bought and sold vehicles with Excell.

15.     Mr. Farache's testimony in this case directly contradicts his previous sworn statements, on behalf of the Debtor, made in various state court proceedings and the Proof of Claim filed by the Debtor in the Excell Auto Group, Inc. ("*Excell*") Bankruptcy Case, 22-12790-EPK.

16.     On April 8, 2022, the Debtor filed a verified complaint ("*AWB State Court Complaint*") in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida for breach of note and security agreement, replevin, foreclosure of security interest and appointment of a Receiver against Excell and others, in the case styled *Auto Wholesale of Boca, LLC, et al., v. Excell Auto Group, Inc., et al.,* Case No. 502022CA003358XXXXMB.  Moshe Farache signed verifications attesting to the facts in the complaint as Manager of the Debtor and in his individual capacity.

---

[2] "FVP" means FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC, collectively.

4

17.     In paragraph 17 of the complaint, Mr. Farache affirmatively stated that the Debtor "advanced funds to [Excell]" pursuant to the two promissory notes attached as exhibits A and C to the complaint.  *See AWB State Court Complaint*, p. 3, ¶ 17.

18.     The remainder of the AWB State Court Complaint further alleges that AWB in fact funded these loans and was secured in the inventory of Excell, s*ee generally AWB State Court Complaint*, including that Excell breached the contracts by selling inventory out of trust, and seeking relief of Replevin and Foreclosure of Security Interest.  *AWB State Court Complaint,* pp. 19-23.

19.     Oddly, the Debtor also alleges that at about the same time it purportedly learned that Excell "sold $4,000,000 of vehicle out of trust," the Debtor amended and restated its first promissory note for $2,500,000 and lent $2,664.450 to Excell under a second secured promissory note, both dated November 11, 2021.  *See AWB State Court Complaint*, p. 3, ¶ 16, and p. 10, ¶ 35, and Exhibits A and C.

### (b) THE DEBTOR THEN TAKES A DIFFERENT POSITION WHEN SUED BY FVP

20.     Then in the state court litigation brought by FVP against the Debtor in Broward County,[3] Moshe Farache filed an affidavit stating that AWB purchased 36 vehicles – although the schedule to the affidavit only lists 22 vehicles – and "in an abundance of caution" filed its UCC-1.  *See* Affidavit of Moshe Farache.

### (c) THE DEBTOR FILES A FALSE PROOF OF CLAIM IN THE EXCELL BANKRUPTCY CASE

21.     The Debtor takes a third position in its proof of claim filed in the Excell Bankruptcy Case.  The Debtor field Proof of Claim No. 55 ("POC 55") in the Excell Bankruptcy Case in the

---

[3] *FVP Opportunity Fund III, LP, et al., v. Karma of Broward, Inc., et al.*, Case No.: CACE-22-005125 (21), in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

amount of $7,115,550.11, claiming to be secured in $3,500,000 in vehicles in the possession of the Debtor, and earning interest at 25%, just at the threshold of criminally usurious loans under Florida law. *See* POC 55 [22-1279-EPK].

22.     First, if the Debtor purchased these vehicles from Excell and is in possession of the vehicles and titles, then the Debtor has no claim for these vehicles against Excell.

23.     Second, the interest rate set forth in POC 55 is facially and demonstrably false. Promissory Note #1 purported to charge interest at 15% per annum. Promissory Note #2 between the Debtor and Excell calls for 50/50 split of profits of all vehicles purchased and sold by Excell using the proceeds of Promissory Note # 2. Both Promissory Note #1 and # 2 were filed by the Debtor in the AWB State Court litigation and in the state court FVP litigation.

24.     The Debtor purports to have other oral agreements with Excell for what have been termed "locate deals," in which the Debtor would fund the purchase of a vehicle by Excell, so that vehicle could be re-sold by Excell to another buyer who already agreed to purchase the vehicle at a higher price and Excell and the Debtor would purportedly split the profits 50/50.

25.     The interest on these locate deal loans has to be calculated on a deal-by-deal basis, and most likely greatly exceed 25% per annum interest, which in addition to being a false statement, goes to the second issue which is the usurious loans being engaged in by the Debtor.

III.    **THE DEBTOR'S BUSINESS WAS PRIMARILY ISSUING CRIMINALLY USURIOUS LOANS AND ENGAGING IN FINANCIAL FRAUD NOT AS A WHOLESALE PURCHASER AND RESELLER OF HIGH-END LUXURY VEHICLES, THE DEBTOR'S BUSINESS**

26.     The Debtor was issuing usurious loans to Excell and has not accounted for substantial amounts of funds it has received.

27.     The Debtor has consistently taken the position and the records have been produced which evidence that the Debtor was lending money to Excell.

28.     As stated above, Promissory Note # 2 called for a 50/50 profit split from the sale of any vehicles obtained with the funds of Promissory Note # 2.

29.     The same is true for these purported oral agreements between the Debtor and Excell, which purportedly called for 50/50 split of the profits from the sale of a vehicle which were to be repaid in the two to three weeks.  *See* (Farache Dep. Tr. (Vol. I), page 88/line 6 – page 89/Line 3, January 12, 2023).

30.     The Excell Trustee and her professional to date have been able to identify $36,440.958.23 in cash transfers from Excell to the Debtor during the period December 3, 2018 through March 1, 2022.  During the same period, there were $12,311,993.57 in cash transfers from the Debtor to Excell, leaving a difference of $24,128,964.66, of cash received by the Debtor for which no consideration to Excell has been identified[4].

**IV.     THE DEBTOR IN POSSESSION OWES FIDUCIARY DUTIES TO ALL ITS CREDITORS**

31.     A debtor in possession is the representative of the estate in a chapter 11 case with all the rights and powers and shall perform the functions and duties of a trustee. 11 U.S.C. § 1184. *See also In re SunCruz Casinos, LLC*, 187 B.R. 821, 829 (Bankr. S.D.Fla. 2003) (citations omitted).  "Chief among these ... is that the debtor in possession is a *fiduciary* to all of its creditors and equity security holders."  *Id*. (citations omitted).  "[A] fiduciary—the debtor in possession— is proscribed from acting solely in its self-interest to the exclusion of the other interests which the debtor in possession has the fiduciary obligation to protect." *Id*. at 830 (citation omitted).

**(i)     The Debtor Has Not Done Any Business Since the Filing of this Bankruptcy Case and Has No Chance at a Reorganization**

---

[4] The professionals in Excell have not completed their investigation and are awaiting additional bank statements from subpoenas previously issued, but where complete documentation was not provided.

32.    According to the Debtor's statement of financial affairs the Debtor had gross revenues in 2020 of $37.3 million, 2021 $41.4 Million, and for the beginning of 2022, $7.3 million. ECF No. 1, p. 40].  The Debtor in both its *Case Management Summary* [ECF No. 7] and *First Amended Plan of Reorganization of Auto Wholesale of Boca, LLC* [ECF No. 196] purports to buy and sell high-end luxury automobiles.  It appears from the Debtor's books and records, that the Debtor primarily conducted business with Excell, Karma of Broward, Inc. and Karma of Palm Beach, Inc.  All three of those entities are not active or conducting business with the Debtor.

33.    However, since the Petition Date, the Debtor has not purchased and resold one vehicle.  *See* ECF Nos. 95, 117, 158, 189, 275, and 358.  The Debtor has had almost no revenue and absolutely no revenue from the sale of high-end luxury vehicles.  Yet, without any basis, the Debtor's means for implementation of the First Amended Plan is from the "Debtor's cash flow from operations for a period of 5 years," and projects monthly gross revenues of $368,000 beginning in month 1 and increasing to over $500,000 beginning in month 49.  *See* [ECF No. 196-1].

34.    The Debtor's plan is materially incomplete or otherwise insufficient, contains inaccuracies and no reasonable assurance of success and, therefore, justifies conversion. *See In re No Rust Rebar, Inc.,* 641 B.R. 412, 425-26 (Bankr. S.D. Fla. 2022) (Russin, J.) (citations omitted).

   **(ii)    The Debtor is not Going to Investigate and Bring all Claims to Recover Assets for the Estate after**

35.    The Debtor is clearly not going to investigate and bring all the possible avoidance or other causes of action that arise from any transfers of property by the Debtor.

36.    The Debtor filed this case to avoid the state court litigation and solely to protect the Debtor's principals and related entities.  The First Amended Plan contains zero analysis regarding avoidable transfers against the Debtor's principals or related entities. *See* ECF No. 196, p. 6.

However, based on a preliminary analysis, it appears that the Debtor received at least $24 million from Excell during the period beginning December 3, 2018 through March 1, 2022, an amount which to date remains unaccounted.

37.     Moshe Farache has a conflict of interest in the investigation and bringing claims against Moshe Farache and his other family members for potential breaches of his fiduciary duty and avoidance claims.

38.     Instead of providing an analysis of potential claims, the First Amended Plan includes a facially impermissible bar order releasing the Debtor's officer, directors, employees and owners/principals whose substantial contribution is to release claims against the Debtor that are subordinate to all other claims and performing everything they are required to do in connection with the First Amended Plan. *See* First Amended Plan § 8.05 [ECF No. 196, p.16-17].

39.     For all these reasons "cause" exists, and the case should be converted to a case under Chapter 7 of the Bankruptcy Code.

**WHEREFORE**, the Excell Trustee respectfully request that this Honorable Court enter an order: (i) granting this Motion; (ii) converting this case from a case under subchapter V of Chapter 11 to a case under Chapter 7 of the Bankruptcy Code; and (iii) granting such other and further relief as this Court deems just and proper.

Respectfully submitted this 6th day of February 2023.

> FURR AND COHEN, P.A.
> *Special Counsel for Trustee*
> 2255 Glades Road, Suite 419A
> Boca Raton, Fl 33431
> Telephone: (561) 395-0500
> Facsimile: (561) 338-7532
>
> By: */s/ Alan R. Crane*
> Alan R. Crane
> Florida Bar No.: 0963836

E-Mail: Acrane@Furrcohen.com
Jason S. Rigoli, Esq.
Florida Bar No. 91990
E-mail: jrigoli@furrcohen.com

-and-

**LAW OFFICE OF**
**NICOLE TESTA MEHDIPOUR,**
**P.A.**
*Counsel for Chapter 7 Trustee*
6278 N. Federal Highway, Suite 408
Fort Lauderdale, FL 33308
Tel: (954) 858-5880
Fax: (954) 208-0888

/s/ Nicole Testa Mehdipour
Nicole Testa Mehdipour
Florida Bar No. 177271
Nicole.Mehdipour@ntmlawfirm.com