UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

*In re:*

AUTO WHOLESALE OF BOCA, LLC,              Case No.: 22- 15627-EPK
                                          Chapter 11 Subchapter V

       Debtor-in-Possession.       /
FVP OPPORTUNITY FUND III, LP, a
Delaware limited partnership; FVP
INVESTMENTS, LLC, a Delaware
limited liability company; and FVP
SERVICING, LLC, a Delaware limited
liability company,

Plaintiffs,

vs.                                       Adversary Case NO.: 22-01218-EPK

AUTO WHOLESALE OF BOCA, LLC,

Defendant.
_____/

### RESPONSE TO MOTION(S) TO DISMISS

Comes Now, the Debtor-in-Possession, Auto Wholesale of Boca, LLC ("Debtor", "AWB" or "DIP"), by and through undersigned counsel and files and serves this instant *Response To Motion(s) To Dismiss*, in response to *Hi Bar Capital's Motion to Dismiss* [ECF No. 34] (the "Hi Bar MTD"),[1] *FVP's Motion To Dismiss Or Convert To Chapter 7* [ECF No. 390] (the "FVP MTD"),*The Karma Entities' Joinder To FVP's Motion To Dismiss Or Convert To Chapter 7* [ECF No. 399] (the "Karma MTD"), *Nicole Tesla Mehdipour's Expedited (i) Motion To Convert To A Case Under Chapter 7, Or, In The Alternative, Motion To Dismiss* [ECF No. 403] (the "Excell MTD"), *Party-In-Interest Omar Periu's Joinder* [ECF No. 418] (the

---

[1] Hi Bar Capital, LLC ("Hi Bar") has filed a separate Joinder [ECF No. 407] ("Hi Bar Joinder") to the FVP MTD and the Excell MTD, which also seeks to have the Hi Bar MTD heard simultaneously with FVP and Excell MTD's [*see* ECF No.'s 390 and 403].

"Periu Joinder"), *Ed Brown's Joinder* [ECF No. 419] (the "Ed Brown Joinder") and the Woodside Credit LLC Joinder [ECF No. 424] ("Woodside Joinder"), and states –

I.    **PRELIMINARY STATEMENT**

1.  The Debtor is a "Debtor-in-Possession" under Title 11, Subchapter V, of the United States Code by virtue of having filed its *Petition* [Parent ECF #1] on July 22nd, 2022, seeking to reorganize itself under the Bankruptcy Code.

2.  As touched upon in the DIP's *Verified Chapter 11 Case Management Summary* [Parent ECF #7] ("Case Management Summary"), the DIP sought relief in bankruptcy based upon the fact that the Debtor had been defrauded out of millions of dollars in assets and monies by other entities and their operators, *i.e.* – Excell Auto Group, Inc. ("Excell"), Karma of Palm Beach ("KPB") and Karma of Broward ("KB") (KPB and KB are collectively "Karma"), operated and owned primarily by Scott and Kristen Zankl (the "Zankls")

3.  This fraud by the Zankls and their entities apparently included the reselling and triple financing of automobiles owned by Debtor and/or liened by Debtor.

4.  Shortly after AWB was able to recover some of its property from the Zankls, the Zankls filed bankruptcy for Excell under Chapter 7 in Case No. 22-12790-EPK ("Excell Bankruptcy").

5.  The Zankls have falsely led various parties-in-interest of Karma to pursue AWB's automobiles and inventory. This multiplication of litigation has led to substantial legal expenses in approximately 8-10 lawsuits, with the potential for conflicting decisions and has also effectively shut down AWB's operations.

6. However, it does not help when certain purported creditors, i.e. -- Hi Bar, Franklin and FVP – continue to make such false and outlandish accusations without even the modicum of verification of the same

## II.    RELEVANT FACTS

### a.  The Parties-In-Interest

7. Debtor was incorporated in the State of Florida on September 20th, 2012, and is a family-owned enterprise.

8. Debtor is licensed by the State of Florida as an automobile dealer, and primarily buys and sells high-end luxury automobiles for profit as a wholesaler.

9. Over the years, while operating, Debtor, as is customary in the business of automobile sales, would, purchase and re-sell high-end luxury automobiles.

10. In or about early in the year 2012, Debtor was approached by Scott Zankl regarding exotic cars which could be profitable.

11. Thereafter, Debtor would purchase automobiles from Excell and Zankl-related entities, take possession of the title and obtain a bill of sale. If Debtor did not resell the automobiles on its own and Excell found a buyer (wholesaler), Debtor would typically agree to sell at a price, then the automobile would be sold to Excell for resale to said ultimate buyer.

12. Over the years, Excell began to accrue debt owed to Debtor for automobiles sold by (or funded by) Debtor to Excell, and for which Excell had not repaid.  So, to evidence this preceding debt, Debtor obtained executed promissory note(s) and guarantees (eventually with a UCC-1 and security agreement) to evidence funding of these prior numerous transactions over time. Debtor obtained executed promissory notes,[2] with

---

[2] Debtor has also paid the documentary stamp taxes on these two (2) Notes. However, FVP, Franklin nor Hi Bar have paid such Florida taxes on the purported debts owed by Excell, KPB and/or KB.

guaranty, security agreement and UCC-1 (recorded in the public Florida UCC transaction records on July 13th, 2021) in favor of the Debtor from Excell (as well as Karma).[3]

13. In the interim, the Zankls began operating two (2) new enterprises (KPB and KB) to sell high-end luxury automobiles; and, unbeknownst to the Debtor, had been negotiating with multiple potential lenders for funding.

14. Apparently, among the purported lenders to KPB and KB were: FVP Opportunity Fund III, LP and FVP Investments, LLC (collectively, "FVP"); Spin Capital, LLC ("Spin"); Hi Bar Capital, LLC ("Hi Bar"); and, Franklin Capital ("Franklin").[4]

15. Both Spin and Hi Bar are in the "Merchant Cash Advance" business, wherein they troll struggling businesses (like a payday lender for a consumer) and make disguised loans at exorbitant usurious rates hidden behind sham paperwork to purportedly make otherwise illegal loans to appear to be something akin to factoring agreements for the purchase of "accounts receivable", and all the while taking back guarantees and placing liens on general assets to insure "repayment" without bearing the risk of loss from the "purchase" –*i.e.* -- a disguised loan.

16. FVP is a hard money lender charging exorbitant fees and lending at above-market rates.

17. Franklin is also a hard money lender charging high-interest rates on its loans.

---

[3] Karma Palm Beach, among others, was also a guarantor of debts owed by Excell to Debtor.

[4] Ed Brown also apparently made substantial investments and/or loans (unsecured) in or to Excell in excess of $13,000,000.00; and, Omar Periu purports to have acquired an interest in a certain automobile which Debtor holds as of even date as Debtor asserts an interest in the same -- which is subject of a separate motion [*see* ECF No.127].

### i.  SPIN/HI BAR

18. Pre-petition, on or about August 31, 2021, Excell borrowed from Spin approximately $2,000,000.00 and agreed to repay Spin the sum of $2,998,000.00), with Spin to receive $150,000.00 per week.

19. This loan from Spin was disguised as a "Revenue Purchase Agreement" to acquire "receivables" of Excell.

20. However, Excell never had "receivables".

21. In October, 2021, Excell fell behind with Spin, and Zankl (on behalf of Excell) told Spin that he was trying to obtain new financing and needed to figure out how to resolve Spin's debt (then still owing @ $2,000,000 ("Spin Debt") after paying $717,375.00) so money could be borrowed from other sources; and, Spin (*via* Josh Lubin, owner) advised Zankl that Spin would move its debt to Hi Bar (another entity owned and operated by Josh Lubin) to make it "appear" as if Excell was not in default or otherwise owed anything to Spin.

22. Thereupon, Lubin had Excell (and Karma entities) execute a new agreement with Hi Bar, to make it appear as if Hi Bar was funding a new debt, and in fact it was not.

23. Worse yet, Hi Bar had new documents drawn up to reflect that Hi Bar had "purchased" receivables from Excell (and the Karma entities) by purportedly paying Excell and/or Karma the sum of $2,120,000.00 in exchange for receivables of $3,177,880.00 – however, no such money was ever delivered to Excell or Karma.

24. In the meantime, Franklin was purportedly acquiring the Spin Debt from Spin.

25. Literally, one hour after executing the assignment of debt to Franklin, Spin assigned the same debt to Hi Bar.

26. Thereafter, Hi Bar continued to default Excell and the Karma entities to the point that Hi Bar sued Excell and the other entities in New York Supreme Court, Kings County, Case No. 502846 to enforce the purported

indebtedness of over $4,000,000 plus attorney fees in excess of $1,000,000.00 (liquidated fees).

27. Despite having given no consideration to Excell and/or the Karma entities, Hi Bar recorded a UCC1 on the late evening of January 25th, 2022 against Excell and the Karma entities in an attempt to place liens on the assets of these entities.

28. Furthermore, by the time of the filing of the New York lawsuit by Hi Bar against Excell and the Karma entities, Excell and/or the Karma entities had remitted payment to Hi Bar totaling no less than $3,083,687.50.

29. Despite being paid substantially all of the usurious debt, Hi Bar continues to seek "more".

30. Hi Bar's claim arises out of its false assertion that it has a purported lien on the Debtor's inventory due to the fact that many of the automobiles in Debtor's possession were acquired from Excell and/or the Karma entities.

31. Also, Debtor not only had liens on Excell preceding Hi Bar (as well as Franklin), but Debtor also paid real money in exchange for most all of the vehicles acquired from Excell and the Karma entities.[5]

## ii. FRANKLIN

32. Although Franklin has not, as of the writing of this Response, field a joinder or separate motion, the undersigned has been advised that Franklin intends, at some point, to do so.

33. Franklin has alleged that it acquired a lien on the assets of Excell sometime in 2021 (and even in January 2022), after: a) funding monies Excell in November 2021 (well after the UCC-1 recording by Debtor against Excell), and b) by acquiring the debt owed by Excell to Spin (see supra)

---

[5] Neither Excell nor KPB or KB acquired inventory with the monies (if any) from Franklin, Hi Bar or FVP.

34. As noted, the UCC1 of Debtor executed against Excell was filed and recorded in the State of Florida's Registry for the same on July 13th, 2021. Franklin did not record prior to that date.

35. Further, Franklin wants its cake and to it eat too.

36. On the one hand (baking the cake) Franklin asserts that it was defrauded by Spin and Hi Bar when Spin advised Franklin, in writing, that no debt was owed to Spin by Excell in October 2021 and executed documents to that effect – thereby lulling Franklin into a position behind Hi Bar on a subsequently recorded lien instrument.

37. On the other hand (eating the cake), Franklin takes the position that Spin was owed no money, and therefore Franklin acquired nothing, yet Franklin also wants to argue that Franklin is protected by a prior recorded UCC1 in favor of Spin in early 2021 -- ahead in time before the Debtor's recorded UCC1 as to Excell.

38. Yet, if no debt was owed by Excell to Spin at the time of Franklin's acquisition, then Franklin acquired no debt and the earlier recorded Spin UCC1 had no value.

### iii.    FVP

39. FVP purports to have entered into a lending arrangement with KPB and KB (but not Excell) in early 2022.

40. FVP claims to have lent upwards of $7.5 million dollars to the Karma entities.

41. FVP was in the market to lend to cash-strapped enterprises, such as the Karma entities, and decided to take a risk with lending to the Karma entities (notably carving out Excell from any loans).

42. FVP did little to investigate and certify the accuracy of the Karma inventories, records and finances.

43. However, FVP did ultimately lend, (in early 2022), to the Karma Entities and executed a series of documents to evidence the same (the "FVP Loan Documents").

44. Of import for purposes of this Response, is the fact that the FVP Loan Documents, when read together, amounted to no more than a standard loan for specific automobiles, whereby FVP would have needed to place a lien on the titles to the vehicles acquired with the FVP loan proceeds, rather than recording a UCC1. This is because the FVP Loan Documents contained exclusionary liens, wherein it was agreed between FVP and the Karma entities that FVP would not obtain a lien on any pre-existing inventory of Karma nor on any vehicles which were not acquired with the FVP loan proceeds, and had not been approved for acquisition by FVP.

### iv. Periu and Ed Brown

45. Both Omar Periu and Ed Brown have filed joinders to the various motions to dismiss, the reason being obvious, as they claim an interest in vehicles which Debtor also claims an interest in.

46. However, Periu is not a creditor and never filed a proof of claim, but asserts an interest in the title to a vehicle he claims he owns for which Debtor holds the title and claims ownership as well; and, Brown's claim is based upon a claim for titles to two (2) vehicles wherein Debtor has possession of the titles.

47. However, neither Brown nor Periu argue in their Joinders and chose to ride the coattails of FVP and the Excell Trustee.

### v. KARMA ENTITIES

48. The Karma Entities (Karma of Palm Beach and Karma of Broward) have filed their own joinder [ECF No. 399], the Karma MTD, with *de minimis* argument, and otherwise relying upon the arguments in the FVP MTD and riding FVP's coattails.

49. It's kind of hard for the Karma entities to argue anything in this Case, let alone any other, when it was the Karma entities with the Zankls and Excell that led to the fraud upon the Debtor, the creditors of Excell and the parties-in-interest making claims in this Case.

### vi. EXCELL TRUSTEE

50. The Excell Trustee came into existence upon the filing of the Chapter 7 bankruptcy case of Excell Auto Group, Inc., in Case No. 22-12790-EPK (the "Excell Bankruptcy") on or about April 9th, 2022.

51. Since the commencement of the Excell Bankruptcy, Debtor's principals have opened their doors (literally) to the Excell Trustee to inspect the former rental premises of Excell, take possession of the premises, and otherwise use the premises as well as remove purported inventory, equipment, materials/documents *etc*.

52. At no point in time has the Excell Trustee sought discovery of the Debtor in either the Excell Bankruptcy or the instant bankruptcy case.

53. The only interaction in this bankruptcy case between the Excell Trustee and the Debtor has been in regards to the Debtor's objection to the proof of claim [*see* Claim No. 18][6] of the Excell Trustee [*see* ECF No.'s 225 (the "Excell Objection"), 228 (the "Excell Response").

54. Despite not having conducted an iota[7] of discovery (formal or informal) of the Debtor, the Excell Trustee has filed her Amended Claim No. 18 in

---

[6] Excell's Claim has been amended, per Court Order directing amendment [*see* ECF No. 348]) from its original purported debt of $30,634,447.89 to a whopping $114,608,134.69 -- these numbers literally make no sense and in fact the amended claim seeks additional claims and causes not raised in the original claim and are otherwise barred.

[7] Even the word Iota seems too large to describe the absence of discovery sought by the Excell Trustee in this Case from the Debtor.

this Case, which apparently triggered the filing of the FVP MTD, and the multiple joinders thereafter.

55. The original Excell Claim 18 sought a claim for $30,634,447.89 for:

> "claims under 11 U.S.C. §546, including but not limited to, claims pursuant to §§ 544, 547, 548, 549, and 550; treble damages for converting certain of the Debtor's high-end luxury vehicles pursuant to Fla. Stat. § 772.11; treble damages for usurious loans pursuant to 18 U.S.C. § 1962, Fla. Stat. §§ 895.02, 895.03, 895.05; breach of contract, unjust enrichment, and administrative fees and costs incurred by the Trustee and her professionals in the
>
> estimated amount
>
> of $600,000.00."

56. After an initial hearing on the Debtor's Objection to the Excell Trustee's Claim [ECF No. 225], the Court directed the Excell Trustee to amend Claim No. 18 to better fill out and clarify the claims sought with more supporting facts.

57. Thereafter, the Excell Trustee filed Amended Claim No. 18, now asserting a substantially greater claim in the sum of $114,608,139.69 for:

> Fraudulent transfers (statute not cited), Civil Theft and treble damages arising therefrom, and usurious loans/Florida Rico

58. The hearing on the Objection to Claim No. 18 is scheduled for May 10, 2023 [*see* ECF No. 348].

III.    **THE MOTIONS TO DISMISS**[8]

59. Both FVP and the Excell Trustee seek dismissal or conversion of the instant case by making hyperbolic and inflammatory allegations as to the purported impropriety of the Debtor at different points in time – none of which are accurate, material, agreed to, or otherwise based in fact.

   b.    **Disputed Facts**

60. FVP alleges the following facts in support of the FVP MTD:

   a.  Debtor has no sales operations and never did;

   b.  Majority of debts are to insiders;

   c.  Debtor was a lender;

   d.  Debtor is protecting the insiders from potential clawback claims;

   e.  Debtor filed an erroneous Form 204 (list of 20 unsecured creditors);

   f.  Debtor's principal (Moshe Farache) has failed to respond to discovery in good faith;

   g.  Debtor has no assets (other than the cars and monies it had as of the Petition Date??);

   h.  Debtor has not engaged in business post-petition;

   i.  Sole activity of Debtor has been to pay attorney fees and shield insiders;

---

[8] First and foremost, as has been sadly par for the course by FVP's counsel, the representation in the FVP Motion, at p.2, requesting waiver of Local Rule 9075-1(b) as "the relief requested herein is urgent in nature and does not lend itself to advance resolution. That notwithstanding, Plaintiffs will endeavor to seek resolution with AWB prior to any hearing" is intentionally misleading. Specifically, and amazingly, on the date the FVP MTD was filed, (and apparently during its drafting), the undersigned was in a several hours-long Zoom Conference with Attorney Jerry Breslin regarding issues in the case, including Debtor's much-sought discovery from FVP relating to the Debtor's *Motion to Compel* [ECF No. 172]. Further, FVP has not once reached out to the undersigned to discuss the FVP MTD.

j.  Debtor proposed insider releases (and has advised they are withdrawing the same); proposed plan would only pay insiders and a family friend.

61. The Excell MTD argues the following facts in support of their motion:

a.  Farache testified he never made a "loan" although there are two (2) promissory notes in favor of Debtor from Excell;

b.  Debtor filed a false proof of claim in the Excell Bankruptcy requesting 25% annual interest – apparently on the edge of criminal usury;

c.  Debtor's primary business is a criminally usurious loans and financial fraud;

d.  Debtor has done no business post-petition; and,

e.   Debtor will not pursue insiders.

62. Both the FVP MTD and Excell MTD go on to argue that conversion or dismissal is appropriate under 11 U.S.C. Sect. 1112(b)(1) and (b)(4).

63. Needless to say, but the Debtor disputes all of the facts which these parties assert form a basis for relief.

64. Recall, the Debtor has had possession of the vehicles it has listed in its Schedules as of the Petition Date – other than those the Court has ordered released to third parties.

65. In July and August, 2022, the Court directed the vehicles not be sold without Court approval; and the Debtor has already sought such approval but same was objected to by the various parties and the Court denied such relief in the interim.

66. Debtor cannot liquidate its inventory without court approval, cannot use the proceeds therefrom unless and until the Court rules upon the matters raised in the pending adversary proceedings (*see* Adv. Proc. No. 22-01218-EPK and Adv. Proc. No. 22-01424-EPK).

67. The Court has recently ruled on and otherwise denied [*see* ECF No. 422] *Derek Stephens' Motion To Compel Turnover Of 2013 Ferrari 458 Spider*

*And To Abandon Title* [ECF No. 114], for which Debtor attended and actively participated at an evidentiary hearing on November 28th, 2022.

68. Debtor is current with all of its Monthly Operating Reports, timely filed its Plan, timely served the Plan and Ballots, timely objected to claims, filed all mandatory documents required thus far, attended its 341 Meeting of Creditors and IDI conducted by the Office of the United States Trustee, and has otherwise been in compliance with regards to maintaining a Chapter 11 proceeding as well as in compliance with the requirements in the pending two (2) adversary proceedings, (including disclosures, responses, *etc.*).

69. In spite of the hardships heaved upon Debtor during these proceedings by the overly burdensome motion practice and discovery antics of FVP, the Debtor has continued to retain and maintain the automobiles in a safe area, insure them, care for them and otherwise attempt to operate.

70. The Debtor has, despite the assertions of both FVP and Excell Trustee, to actually purchase a vehicle and sold it for a substantial profit post-petition – which will be reflected in the Debtor's January 2023 MOR.

71. Although the Debtor has incurred and continues to incur legal fees in regards to representing its interests, such legal fees should be anticipated given this Case and its history and antics by FVP and others in their widely cast net.

72. The fact remains that Debtor awaits a ruling by the Court on the ownership and priority and extent, if any, of any interests of Franklin, FVP and Hi Bar in the inventory of the Debtor, as well as a particular vehicle in the related Benidt Adversary Proceeding (#22-01424-EPK).

73. The Debtor has been active throughout the history of this Case, and the US Trustee nor the Sub V Trustee have asserted any bad acts, failure to comply or other matters which would cause this Court any concern.

74. As for discovery, the only discovery sought has been in the FVP Adversary Proceeding (#22-01218-EPK) and Debtor has not only complied

with the three (3) separate requests for production, but also in regards to informal discovery (*i.e.* even allowing FVP to inspect the vehicles subject of the FVP Adversary Proceeding, although no formal request was made). As a matter of fact, the only discovery in dispute and at issue is in the FVP Adversary Proceeding wherein the Debtor still awaits compliance with its August 2022 production request to FVP -- which FVP continues to struggle with.

75. Debtor has also listed and disclosed all of its purported creditors (whether contingent, disputed and/or unliquidated) as required by the Code, yet FVP complains of such compliance and merely argues that there are more "insiders" than non-insiders.

76. Debtor listed and identified at least 108 potential creditors, and FVP identified and complains of three (3) "insider" claims (M&M Development, Mazel Tov Inc and Express Emergency Services) – certainly 3 out of 108 listed creditors would not form a majority.

77. Furthermore, FVP cites to an exchange at a two (2) day (15.5 hours) examination conducted by FVP's counsel of Moshe Farache as "corporate representative", wherein the areas of inquiry were never identified -- leaving preparation for such an examination to be guessed at, or assumed that it would be limited to the scope of the vehicles at issue and identified in the FVP Adversary pleadings.[9]

78. Over 13.5 hours of the examination, as conducted bv FVP, were regarding matters unrelated to the FVP Adversary Proceeding and the references in the FVP Motion are to matters unaffiliated with said Adversary Proceeding.

79. In fact, the exchange referred to in the FVP Motion makes reference to a "loan", and Mr. Farache does not view the Notes referenced therein as

---

[9] The issues raised in the FVP MTD and Excell MTD in regards to the testimony of Farache are irrelevant to the FVP Adversary Proceeding wherein it was conducted.

"loans"; but, rather evidence of prior outstanding debts owed to AWB by Excell and Karma.

80. In other words, the Notes and documents relating thereto were to evidence prior debt owed from short-term advances but outstanding as of July 2021. The cars in dispute in the two (2) pending Adversary Proceedings were vehicles which Debtor acquired through purchase (*i.e.* payment of funds directly and in exchange for said automobile), swaps (i.e. -- payment for a particular vehicle but for which another vehicle was substituted of like kind, *etc*.) and partial satisfaction of antecedent debt (paydown toward the outstanding debt owed previously to Debtor as evidenced by the Notes referenced above).[10]

81. The Excell Trustee's view of the Proof of Claim filed by Debtor in the Excell Bankruptcy Case is inaccurate, and Debtor does not seek any form of usurious interest, with the Notes even containing a usury savings clause to not charge or seek unlawful interest.

82. As for the pursuit of insiders, this is a Subchapter V, wherein the insiders are not pursued but the likely collectability of any purported claims are reviewed and calculated in the context of a plan.

83. The reality is that the allegations made by the parties-in-interest are the same historical hyperbolic points raised throughout the history of this Case and without merit or clearly without knowledge.

## IV.    MEMORANDUM OF LAW

84. Pursuant to § 1112(b)(1), the bankruptcy "court shall convert a case under  Chapter 11 to a case under chapter 7 or dismiss a case under Chapter 11, whichever is in the best interests of creditors and the estate, for cause."

---

[10] FVP and the Excell Trustee find something sinister in the filing of a suit in West Palm Beach by Debtor, pre-petition, asserting a lien interest in automobiles based upon the Debtor's Notes and lien documents set forth above.

85. Section 1112(b)(4) sets forth the types of actions that constitute cause, which include:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B) Gross mismanagement of the estate;
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E) failure to comply with an order of the court;
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
> (K) failure to pay any fees or charges required under chapter 123 of title 28;
> (L) revocation of an order of confirmation under section 1144;
> (M) inability to effectuate substantial consummation of a confirmed plan;
> (N) material default by the debtor with respect to a confirmed plan;
> (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
> (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

86. In that regard, neither FVP nor any of the other parties-in-interest have articulated any "cause" under §1112(b)(4)

87. The movants are unhappy with having to prove up their position *viz-a-viz* Debtor in the vehicles of the Debtor, and establish their proofs of claim; and, in the meantime, Debtor is on the verge of a trial on the merits of the interest in the vehicles.

88. Quite simply, the automobiles in the possession of the Debtor are automobiles acquired in business transactions that were legitimate, and certainly not acquired in a strong-arm threatening manner or in bad faith by Debtor.

89. The fact remains that a determination must be made regarding the vehicles in Debtor's inventory and it is not a basis for conversion or dismissal to await the resolution of the same. *See, e.g., In re Crosby*, 93 B.R. 798, 799 (S.D. Ga. 1988) (court denied trustee's conversion motion. Trustee moved to convert case because debtor was unable to propose a confirmed plan. Debtor was unable to formulate a plan mainly due to his inability to receive timely medicare/medicaid reimbursements from the state for prescriptions he claimed to have filled for eligible customers. Debtor was also the subject of a state criminal fraud investigation. Given debtor's continuing efforts to recover funds, however, the court denied the motion to convert the case on an interim basis. Although each of the criteria under § 1112(b) existed in debtor's case, the court held that a favorable resolution of debtor's provider status dispute and a favorable termination of the criminal fraud investigation would likely enable him to propose a confirmable plan and rehabilitate himself).

90. Therefore, no relief should be granted to Movants.

WHEREFORE, Debtor requests the Court deny all relief to the Movants, and for such other and further relief which is equitable and just.

JAMES B. MILLER, P.A.
***Counsel for Debtor-in-Possession***
19 West Flagler St., Suite 416
Miami, Florida 33130
T. 305.374.0200
F.  305.374.0250
EMAIL: BKCMIAMI@GMAIL.COM

_____/s/_____
JAMES B. MILLER, ESQ.
Fla. Bar No. 9164

Respectfully submitted on February 13th, 2023.

JAMES B. MILLER, P.A.
***Counsel for Debtor-in-Possession***
19 West Flagler St., Suite 416
Miami, Florida 33130
T. 305.374.0200
F.  305.374.0250
EMAIL: BKCMIAMI@GMAIL.COM


\_\_\_\_\_/s/_____
JAMES B. MILLER, ESQ.
Fla. Bar No. 9164


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this pleading, with all attachments, was served via CM/ECF simultaneously with the filing of the same with the Court this even date upon all parties-in-interest of record in said Adversary Proceeding and who are registered with the Court for such service; along with a courtesy copy of the same sent *via* Email to Debtor in pdf format this 13th day of February, 2023.

\_\_\_\_\_/s/_____
JAMES B. MILLER, ESQ.
Fla. Bar No. 9164


**Certificate of Admission**

**I HEREBY CERTIFY** that I am admitted to the Bar for the District Court in and for the Southern District of Florida, and am duly-qualified to practice before this Court as set forth in Local Rule 2090-1(A).

\_\_\_\_\_/s/_____
JAMES B. MILLER, ESQ.
Fla. Bar No. 9164