Case 22-15627-EPK    Doc 477-3    Filed 03/03/23    Page 1 of 2



*"Serving you since 1985"* **LENDER: STONEMARK, ROYAL PREMIUM BUDGET INC**

8501 Wade Blvd, Suite 620 Frisco, TX 75034 Phone: (800) 955-0083 Fax: (214) 618-5802 service@stonemarkinc.com

### PREMIUM FINANCE AGREEMENT DISCLOSURE STATEMENT AND SECURITY AGREEMENT AND IRREVOCABLE LIMITED POWER OF ATTORNEY

| INSURED/BORROWER (Name and Address as shown on policy) **Quote # 25620626** | AGENT (Name and Address) **A05560** |
|---|---|
| AUTO WHOLESALE OF BOCA LLC<br>6560 WEST ROGERS CIRCLE #27<br>BOCA RATON, FL 33487<br>Main Telephone Number: (561) 771-3272 | EWING INSURANCE SERVICES INC (F)<br>14312 HOME TRAIL<br>ROANOKE, TX 76262<br>Main Telephone Number: (817) 442-8822 |

## TRUTH-IN-LENDING DISCLOSURE STATEMENT

| | | | |
|---|---|---|---|
| A   TOTAL PREMIUMS | $ 11,911.00 | AMOUNT FINANCED<br>(The Amount of Credit provided to Borrower or on its behalf) | $ 8,209.25 |
| B   CASH DOWN PAYMENT REQUIRED | $ 3,730.80 | **FINANCE CHARGE**<br>(Dollar amount credit will cost) | $ 623.15 |
| ITEMIZATION OF THE AMOUNT FINANCED BY POLICY:<br>8,180.20 | | **ANNUAL PERCENTAGE RATE**<br>(Cost of credit figured as a yearly rate) | 19.862% |

Notice: **Do not sign this Agreement before Borrower reads it and the Agreement of Borrower that appears below and, which are intended to be, and shall be treated as, part of this Agreement, or if this Agreement contains any blank spaces.** Borrower is entitled to a completely filled-in copy of this Agreement at the time that Borrower signs it. Under the law, Borrower has the right to pay off in advance the full amount due and, under certain conditions, to obtain a partial refund of the finance charge. Borrower should keep a copy of this Agreement to protect Borrower's legal rights. A Security Interest in this Premium Finance Agreement has been granted to Bank of Montreal, as Secured Party, under a Security Agreement.

| TOTAL OF PAYMENTS<br>(Amount which will have been paid after making all scheduled payments) | $ 8,832.40 |
|---|---|

### PAYMENT SCHEDULE

| Dollar Amount of Each Payment | Number of Monthly Payments | First Payment Due | Final Payment Due |
|---|---|---|---|
| 1,104.05 | 8 | 4/13/2023 | 11/13/2023 |

See this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties. Prepayment:  If Borrower pays off early, Borrower may be entitled to a refund of part of the finance charge.  Security:  Borrower is giving a security interest in the policies being financed.

## SCHEDULE OF POLICIES   (Continue Schedule on Attachment if Necessary)

| Policy Number | Name of Insurance Company and Managing General Agent | Type of Policy | Minimum Earned | Policy Term in Months. | Effective Date | Policy Premiums |
|---|---|---|---|---|---|---|
| TBI | C05984-AmGuard Insurance * Company<br>G05848-KBK INSURANCE GROUP INC<br>[CX:0]   [SR]   [DP: 3,505.80] | AL | 0.000 | 12 | 3/13/2023<br>Ernd. Taxes/Fees<br>Fin. Taxes/Fees | 11,686.00<br>0.00<br>0.00 |

DOC STAMP TAX: 29.05

| *(AR=ASSIGNED RISK), (AU=AUDITABLE), (LS=LOSS SENSITIVE) | TOTAL PREMIUMS (Record in "A") | $ 11,911.00 |
|---|---|---|

### AGREEMENT OF BORROWER

THE NAMED BORROWER HEREBY AGREES:

1. In consideration for the premium payments being financed by Borrower to the above named insurance company(ies) on Borrower's behalf, Borrower promises to pay to the order of Lender the TOTAL OF PAYMENTS to be made in accordance with the PAYMENT SCHEDULE, subject to the provisions set forth in this Agreement.

2.  a.  If there is an amount listed as "Brokers Fee" in the schedule of Policies listed above, this fee is charged under Section 2119 of the New York Insurance Law or the Law, if any, of the state in which Borrower lives. This fee is charged for obtaining and servicing the Policy or where the risk to be insured under the Policy resides.

    b. A fee of $225.00, which is not being financed, has been charged under the provisions of these Laws. If none has been charged, $0.00 is shown.

3. The undersigned Agency will receive from Lender approximately ____ % of the total amount financed for aiding in the preparation of this agreement and payment of the financed premiums.

### IRREVOCABLE LIMITED POWER OF ATTORNEY

The Borrower irrevocably appoints Lender and each of its successors and assignees as the Borrower's lawful Attorney-in-Fact, with full power of substitution and authority upon default to cancel the policy(ies) listed on this Agreement and with full power to sign or otherwise execute the policy(ies), and to collect or receive unearned premiums, dividend payments, and loss payments which may become payable under said policy(ies). This power of attorney is limited as provided above, and is coupled with an interest, and shall survive the death or disability of the Borrower.

**THE BORROWER AGREES TO THE PROVISIONS ABOVE AND ON THE ATTACHED PAGE TITLED "AGREEMENT OF INSURED/BORROWER (cont.)"**

RMID: 46612, Q# 25620626, PRN: 030223, CFG: 1  15/10, RT: fantastic, DD: N/A, BM: ACH, P/F: 164.18 Qtd For: A05560 Original

### AGREEMENTS OF AGENT OR BROKER

THE AGENT OR BROKER UNDERSIGNED:

1. Represents and warrants as follows:  (a) the signature of the Borrower is genuine or, to the extent permitted by applicable Law, the undersigned's Agent or Broker has been authorized (in writing) by the Borrower to sign this Agreement on behalf of the Borrower; (b) the Borrower has received a copy of this Agreement; (c) the Borrower is not insolvent, does not anticipate seeking voluntary protection from any bankruptcy court (or in any bankruptcy proceeding) at this time or in the foreseeable future, and that no individual or entity has (formally or informally) threatened to put Borrower into involuntary bankruptcy; (d) the scheduled Policies are in full force and effect and all information is correctly stated on this Agreement, including policy term, pure premium, tax and stamping fees, and fully earned fees; the pure premiums are not fully earned or subject to accelerated cancelation tables, and the Policies are cancellable upon default; (e) fees for additional insured, waiver of subrogation and inspection fees, if any, are stated as part of the fully earned fees that are not being financed. 2. Agent/Broker further warrants and represents that it is not the Agent of Lender, but that it is the authorized Policy issuing Agent of the insurance company(ies) or the Broker placing coverage directly with the insurance company(ies) on all of the Policies scheduled, and that it assumes full and sole responsibility to the Borrower under the terms of this Agreement and agrees to hold Lender harmless from and against, and to fully indemnify Lender for, any claim, loss, or damage resulting from any errors, omissions, or inaccuracies of Agent/Broker in arriving at this Agreement. 3. Agent/Broker further warrants and represents that all of the provisions listed above have been fully complied with in the production of this Agreement. 4. Any payment received from Borrower in excess of Down payment, or Credit Refunds for Borrower's policies received from Insurer or it's representative will be forwarded to Lender and Lender's assigns upon receipt.

**THE AGENT OR BROKER AGREES TO THE PROVISIONS ABOVE AND ON THE ATTACHED**

**PAGE TITLED "AGREEMENT OF AGENT OR BROKER (cont.)"**

| 03-02-23 | 03-02-23 |
|---|---|
| Date   SIGNATURE AND TITLE OF BORROWER or AGENT ON THEIR BEHALF* | Date   SIGNATURE AND TITLE OF AGENT OR BROKER |

When signed by the Borrower, or an Agent or Broker on behalf of the Borrower **\*(to the extent permitted by Law),** the Borrower acknowledges receipt of a copy of this Agreement and agrees to the provisions provided above and on the page titled "Agreement of Insured/Borrower", and the Borrower acknowledges that this entire Agreement constitutes the Agreement between the Borrower and Lender.

**4. Payment**. Borrower shall make payment directly to Lender in the amounts and at the same time specified on page 1 of this Agreement. Payments shall be made at Lender's address given at the top of page 1 or such other address as Lender may direct in writing. Payments made to any other address, person, firm, corporation or insurance agency, (including but not limited to Borrower's agent or broker) shall not constitute payment to Lender. Borrower grants Lender authority to draft payments with bank information provided and ACH selected for Billing Method.

**5. Cancellation**. Borrower understands that if Borrower does not make payment when it is due or if Borrower is otherwise in default under this Agreement Lender will exercise its limited power of attorney and cancel the Policy in accordance with the provisions contained in the Agreement and act in the place of Borrower with regard to the POLICY. Borrower understands that before Lender cancels the POLICY Lender will mail or email where allowed by applicable laws a Notice of Intent to Cancel to Borrower at Borrower's last address or email address as shown on Lender's records, and that Lender will send a Notice of Cancellation to the Insurance Company and to Borrower canceling the Policy if Borrower does not make any payment that is overdue or if Borrower does not otherwise cure the default within 10 days (13 days in Iowa, NY and Utah, 15 days in Idaho and Pennsylvania). When cancellation by Lender is in accordance with the laws of the State of Florida, Lender is not responsible for consequential damages, and the Borrower shall be responsible for costs and attorney's fees in any unsuccessful action filed as a result thereof.

**6. Money Received After Cancellation**. If Lender receives a payment after Lender sends a Notice of Cancellation, Lender may apply it to what Borrower owes without changing or waiving any of Lender's rights under this Agreement. After the Policy is cancelled (whether by Lender or by Borrower or by anyone else), Lender has the right to receive all refunds of unearned premiums and to apply them to what is unpaid. If the refund is more than Borrower owes, Lender will return to Borrower only what is left after all amounts due under this Agreement are paid in full, as long as the return due Borrower is $5.00 or more, $1 or more in PA. If the refund due is less than Borrower owes, Borrower will pay Lender the difference. Lender may act in the place of Borrower to do whatever is necessary to collect such refunds. The Insurance Company may rely on whatever Lender tells it regarding the Policy; it does not have to get any proof from Borrower or anyone else. **BORROWER ACKNOWLEDGES THAT** (A) Lender is not an insurance agent or an insurance company, (B) This Agreement is a financing agreement and not an insurance policy or a guarantee of insurance coverage, (C) Lender has played no part in the selection or structuring of the insurance policy(ies), (D) Lender has no obligation to request reinstatement of any insurance policies properly cancelled after a default (by Borrower) under the terms of this Agreement, and (E) **The decision to reinstate insurance coverage that has been cancelled after a default (by Borrower) under the terms of this Agreement is a decision that will be made solely by the insurance company providing coverage, and not by Lender.** Borrower further understands and agrees that if Lender chooses to request reinstatement of the cancelled policy(ies) on behalf of Borrower that Lender shall have no liability to Borrower if the cancelled policy(ies) are not reinstated, and Borrower agrees to hold Lender harmless from and against any loss that may incur as a result of Borrower's insurance company's denial of reinstatement request should Lender make such a request for reinstatement to Borrower's insurance company. Borrower further acknowledges and understands that Lender might request reinstatement of the cancelled policy(ies) with Borrower's insurance company but that Lender has no obligation to do so. Borrower further acknowledges that if Lender elects to make such a request, Lender will do so without any calculated judgment as to whether or not Borrower's insurance company will honor or deny such a request. Finally, **Borrower understands that if the policy(ies) is/are cancelled by Borrower's insurance company and if a request for reinstatement is made, it shall be the responsibility of Borrower to verify with Borrower's insurance company and/or Borrower's Agent that the cancelled policy(ies) has/have been reinstated and whether coverage is in force, and Lender has no obligation to notify Borrower otherwise**.

**7. Insolvency**. Borrower specifically warrants and represents to Lender that it is not insolvent, that it does not anticipate seeking voluntary protection from any bankruptcy court (or in any bankruptcy proceeding) at this time or in the foreseeable future, and that no individual or entity has (formally or informally) threatened to put Borrower into involuntary bankruptcy.

**8. Cancellation Charge**. If any default results in the cancellation of the Policy, Borrower agrees to pay a cancellation charge in accordance with applicable Law.

**9. Return Check Charge**. If any payment made by check is returned for any reason, Borrower will be charged the maximum fee, if any, permitted under applicable Law, (AZ $10.00; FL $15.00; MD $25.00; MS $15.00; VA $20.00; PA $50.00). Not applicable in Kentucky.

**10. Default**. A default shall occur if Borrower fails to pay any sums required by this Agreement in a timely manner, including interest and late charges or if Borrower fails to carry out any other obligations under this Agreement. After Default, any unpaid balance of the total amount financed may become immediately due and payable in full at the option of Lender, and Lender may enforce it's security interest and it's rights under the Irrevocable Limited Power of Attorney. Interest will continue to accrue on the unpaid balance at the annual percentage rate or maximum rate allowed by applicable Law, at the option of Lender, until all balances owed under this Agreement are paid.

**11. Security**. To secure payment of all amounts due under this Agreement, Borrower pledges and assigns to Lender, and grants Lender a security interest in, the Policy and all Borrower's rights, title and interests under or relating to the Policy, including (but only to the extent permitted by applicable law): (a) all money and rights to payment of money, which is or may become due Borrower because of a loss under the Policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee); (b) any return of the premium for the Policy, including without limitation all unearned premiums due upon cancellation of the Policy and all rights to payment of such premiums; and (c) all dividends and rights to payment of dividends, which may become due Borrower in connection with the Policy. Also, **Lender shall have the right to offset any amounts due Lender under any notes between Lender and Borrower with any credit due Borrower under any other notes**.

**12. Rights to Demand Immediate Payment in Full**. At any time after default, Lender can demand and have the right to receive immediate payment from Borrower (except to the extent otherwise provided by applicable Law, in which case Lender will have the right to receive such payment in accordance with such Law) of the total unpaid balance due under this Agreement even if Lender has not received any refund of unearned premium.

**13. Early Payment**. At any time, Borrower may pay the whole amount still unpaid. If Borrower pays the full amount before it is due, Borrower will be given a refund for the unearned Finance Charge computed by the method of refund as required by applicable Law. (Rule of 78 method of refund in Texas.)

**14. Assignments**. Borrower may not assign the Policy without Lender's written consent. However, Borrower does not need Lender's written consent to add mortgagees or other persons as loss payees. Lender may transfer Lender's rights under this Agreement to anyone without the consent of Borrower. All of Lender's rights shall inure to the benefit of its successors and assigns.

**15. Collection**. If money is due and Borrower fails to pay, Lender may collect the unpaid balance along with any and all costs that it is forced to incur (internally or through third parties) in seeking to collect the money due without recourse to the security interest granted under this Agreement. Not Applicable in Kentucky.

**16. Late Charges**. Upon default in payment of any installments for five days (or such greater number of days required by applicable law), Borrower agrees to pay a late charge in accordance with applicable Law. In no event shall such late charge exceed a maximum of 5% of such installment. ($5 maximum in Massachusetts; in Texas, 5% of installment if payment is 10 days past due; in Maryland, not to exceed 5% up to $8.00 for personal, 5% up to $100.00 for commercial; in Florida, not to exceed $10.00 personal)

**17. Finance Charges**. The finance charge includes interest and may include a nonrefundable administrative fee in the maximum amount permitted by applicable Law (in Texas $25 for a loan over $1000.00 or $20 for a loan of $1000.00 or less) and begins to accrue on the earliest effective date of the policies shown in the Schedule of Policies. In Kentucky, the maximum service charge which may be collected is $12.00 per $100.00 financed per year, plus an additional charge of $15 per premium finance agreement in accordance with Kentucky Sec. 304.30-090(3) of the Kentucky Revised Statutes

**18. Attorney Fees**. If Lender hires an attorney (which is not Lender's salaried employee) to collect any money Borrower owes under this Agreement, Borrower will pay that attorney's statutory fees and costs if and to the extent permitted by applicable Law. (Not applicable in Maine or Kentucky.)

**19. Agent or Broker**. Borrower acknowledges that Borrower's agent or broker is not Lender's agent and cannot legally bind Lender in any way (except to the extent expressly provided by applicable Law).

**20. Amendments**. If the insurance contract has not been issued at the time of the signing of this Agreement, Lender may, to the extent permitted by applicable Law, insert the name of the insurance companies issuing the policies and the policy numbers (if they are not known when Borrower signs this Agreement) and the due date of the first installment. No other blank space should appear on this Agreement after Borrower signs it. Post issue amendments or changes must be acknowledged by a signature from the PA Borrower and the Lender.

**21. Increase in Premium**. Only those premiums shown will be advanced on behalf of the Borrower. Payment of any additional premiums is the responsibility of the Borrower. Should the Borrower desire to finance any additional premiums, written request from Borrower or Borrower's agent with permission from Borrower must be provided to Lender with appropriate down payment being paid to insurer or its representative. There must be two payments or more remaining and the account must be current at time of request.

**22. Effective Date**. This Agreement shall have no force or effect until Lender's written acceptance is either mailed or emailed to Borrower.

**23. Audit Policies**. If any Policy in the Schedule of Policies is an audit or reporting form Policy, and if such Policies are cancelled, Borrower agrees to pay to Lender, on demand, the difference between what the insurance company earns on the Policy and the amount of the premium payments made by Lender that the insurance company does not refund to Lender and, in addition to this, all earned finance charges, late charges and applicable fees.

**24. CALIFORNIA RESIDENTS**: FOR INFORMATION CONTACT THE DEPARTMENT OF CORPORATIONS, STATE OF CALIFORNIA. Borrower agrees that, in accordance with Section 18608 of the California Financial Code, Lender's liability to the Borrower upon the exercise of Lender's authority to cancel the Policies shall be limited to the amount of the principal balance of this loan, except in the event of Lender's willful failure to mail the notice of cancellation required under California Law.

**25. Venue**. Lender and Borrower agree that Borrower's obligations to make payments pursuant to this Agreement shall be performed solely in Collin County, Texas.

**26. Choice of Law and Forum**. In the event that Lender and Borrower dispute the validity or formation of this Agreement, the meaning, interpretation, or operation of any term, condition, definition, or provision of this Agreement, or breach thereof resulting in litigation, arbitration, or other form of dispute resolution, Lender and Borrower agree that the laws of the State of Texas shall apply, and that all litigation, arbitration, or other form of dispute resolution shall take place in Collin County, Texas. PA policies are governed by their court system.

**27.Signature and Acknowledgment**. Borrower has signed and received a copy of this Agreement. If the Borrower is a corporation, an officer of that corporation is authorized to sign this Agreement; if the Borrower is not a corporation, all the Borrowers listed in any Policy have signed this Agreement. Borrower acknowledges and understands that insurance premium financing law does not require an insured to enter into a premium financing agreement as a condition of the purchase of any insurance policy.

**AGREEMENT OF AGENT OR BROKER (cont.)** 5. Upon cancellation of any of the scheduled Policies, the undersigned Agent or Broker agrees upon demand to pay to Lender or Lender's assigns its commission on any unearned premiums applicable to the cancelled Policies. 6. Agent/Broker will advise Lender of any increase or decrease in premiums immediately upon change. 7. Agent/Broker warrants and represents that it is the authorized Policy issuing agent of the insurance companies or the broker placing the coverage directly with the insurance company on all the Policies scheduled except for those listed below, if any. 8. Cash down payment required has been collected and will be timely paid to carrier/general agent.