Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-15627-EPK

IN RE:

AUTO WHOLESALE OF BOCA, LLC,

Debtors.

_____/

MOTION TO ABANDON (632), MOTION FOR PAYMENT, ETC. (579), MOTION TO SELL FREE AND CLEAR OF LIENS (618), EXPEDITED MOTION FOR ORDER AUTHORIZING ASSUMPTION AND ASSIGNMENT (652)

May 26, 2023

The above-entitled cause came on for hearing before the Honorable ERIK P. KIMBALL, one of the Judges in the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Drive, West Palm Beach, Palm Beach, Florida on May 26, 2023, commencing at or about 11:00 a.m., and the following proceedings were had:

Transcribed from a digital recording by:
Anna M. Meagher, Stenographic Reporter

APPEARANCES:

David R. Softness, P.A., by
David R. Softness, Esquire
On behalf of FVP Investments, LLC,
FVP Opportunity Fund III, LP, and FVP Servicing, LLC
Email:  David@softnesslaw.com

Stearns Weaver, by
Patricia A. Redmond, Esquire
Michael J. Harwin, Esquire (via Zoom)
On behalf of BENIDT INVESTMENTS/SLINGER, LLC
Email:  Predmond@stearnsweaver.com
Mharwin@stearnsweaver.com

VIA ZOOM VIDEO CONFERENCE:

Greenspoon Marder, by
Michael R. Bakst, Esquire
Chapter 7 Trustee
Email:  Michael.bakst@gmlaw.com

Schwartz Breslin, PLLC, by
Jerrell A. Breslin, Esquire
On behalf of FVP Investments, LLC,
FVP Opportunity Fund III, LP, and FVP Servicing, LLC
Email:  Jb@jsjb.law

Shraiberg Page, P.A., by
Patrick R. Dorsey, Esquire
On behalf of Franklin Capital Funding, LLC
Email:  Pdorsey@slp.law

Hoffman, Larin & Agnetti, P.A.
Marian G. Kennady, Esquire
On behalf of the Debtor
Email:  Mkennady@hlalaw.com

Weiss, Handler & Cornwell, P.A., by
Harry Winderman, ESQ.
On behalf of Karma of Palm Beach, Inc.
Email:  Harry4334@hotmail.com

Michael D. Lessne, P.A., by
Michael D. Lessne, Esquire
On behalf of Moshe Farache and Lisa Farache
Email:  Michael@lessne.law

Continued...

Evan D. Appell, P.A., by
Evan D. Appell, Esquire
On behalf of Derek Stephens
Email:  Evan@edalegal.com

Bryan Cave Leighton Paisner, by
Jarret P. Hitchings, Esquire
On behalf of Hi Bar Capital
Email:  Jarret.hitchings@bclplaw.com

Furr Cohen, by
Jason S. Rigoli, Esquire
On behalf of Nicole Testa Mehdipour,
Chapter 7 Trustee of the Estate of EXCEL Auto Group.
Email:  Jrigoli@furrcohen.com

Office of the United States Trustee, by
Heidi A. Feinman, Attorney/Advisor

- - - - - - -

Page 4

THE COURT:  Thank you, everyone.  Please have a seat.

(Computer prompt:  "Recording in progress.")

THE COURT:  Everything all set, Ms. Leonard?

(No audible response.)

THE COURT:  All right.  We are here in Auto Wholesale of Boca.

Why don't we start in the courtroom, since you're actually here.

MR. SOFTNESS:  Good morning, Judge.  David Softness for the FVP parties.  I believe Mr. Breslin is joining us on the Zoom.

THE COURT:  Mr. Breslin.

MS. REDMOND:  Good morning, your Honor.  Patricia Redmond on behalf Benidt Investments, and I believe Mr. Harwin is on Zoom.

THE COURT:  Very good.

All right.  Let's see in the up -- that is not Ms. Carnahan.  I think that's Mr. Bakst.

MR. BAKST:  Good morning, your Honor.  Michael Bakst, the trustee, and Ms. Carnahan was -- (distorted audio) -- trouble.

THE COURT:  I see Mr. Rigoli.

MR. RIGOLI:  Good morning, again, your Honor. Jason Rigoli on behalf of Nicole Testa Mehdipour, Chapter 7

trustee for the EXCEL Auto Group, Inc. and creditor in this case.

THE COURT:  Ms. Kennady.

MS. KENNADY:  Yes.  Good morning, your Honor. Marian Kennady of Hoffman Larin Agnetti.  I am covering this matter for Mr. Hoffman who would have been here, but this is a religious holiday and he is observing, and we represent the debtor.

THE COURT:  Thank you.

Mr. Lessne.

MR. LESSNE:  Good morning, your Honor.  Michael Lessne for Moshe Farache and Lisa Farache.

THE COURT:  Mr. Winderman.

MR. WINDERMAN:  Harry Winderman, Weiss Handler & Cornwell on behalf of the Karma entities.

THE COURT:  Mr. Harwin.

MR. HARWIN:  Good morning, your Honor.  On behalf of Benidt Investments, and, obviously, Ms. Redmond is there as well on behalf of Benidt.

THE COURT:  Mr. Appell.

MR. APPELL:  Good morning, your Honor.  Evan Appell on behalf of Derek Stephens.

THE COURT:  Mr. Hitchings.

MR. HITCHINGS:  Good morning, your Honor.  Jarret Hitchings, Bryan Cave Leighton Paisner, on behalf of Hi Bar

Page 6

Capital, LLC.

THE COURT:  Thank you.

Mr. Breslin, I don't think you appeared earlier.

MR. BRESLIN:  Yes.  Good morning, Judge.  Jerry Breslin for the FVP parties with Mr. Softness.

THE COURT:  Mr. Dorsey.

MR. DORSEY:  Good morning, Judge.  Patrick Dorsey on behalf of Franklin Capital Funding, LLC.

THE COURT:  Ms. Feinman.

MS. FEINMAN:  Your Honor, Heidi Feinman for the U.S. trustee.  We're just listening in.  Thank you.

THE COURT:  Is there anyone else who would like to appear in Auto Wholesale of Boca?

(No audible response.)

THE COURT:  All right.  So, Mr. Bakst, obviously I have several matters on, but they all center around the same nucleus at this point.

If you could let me know where we stand.

MR. BAKST:  Thank you, your Honor.  I'll give you a little bit of history.

We had filed our motion, it's actually to approve a sale, hire auctioneer, and, alternatively, for abandonment a few weeks ago.  The matter was heard on an expedited basis.  At that hearing there were requests by certain parties in interest, including FVP, if we would continue the

hearing a week to try to reach some resolution.  They agreed to pay certain costs and expenses associated with that, so the matter was continued for a week.  The next week, which was last week, we were before the Court.  Several of us were there in person, and the Court was very gracious and gave us an hour and a half to all meet to try to reach some resolution.

The Court may recall before the hearing last week, there were various objections filed, various positions taken by various parties, including FVP, that was requesting abandonment, Benidt that wanted the abandonment of their car, to which I have no objection.  Franklin seemed to take the position that they wanted abandonment, and they objected to -- they objected to abandonment, and they objected to a sale.  The EXCEL trustee took the position that there should be some type of sale.  It appeared that -- Hi Bar appeared to join in on a motion to approve sale.

That was in a reply we filed at 650 with the Court, where I also outlined, based on at least what the latest was from any of the creditors in writing, was that I would be fine with the greater -- a surcharge, the greater of seven and a half percent of the gross sale proceeds or $200,000 or such other higher amount as the Court deems appropriate pursuant to a request by the trustee after a final adjudication of an adversary proceeding, with the

Court to retain jurisdiction to make such a determination. That was my position going into the hearing last week.

The parties, at least the ones present in court, thought that they were pretty close to some type of agreement, possibly, so we asked the Court to continue the matter to today, which is where we are.

Monday at noon we circulated a proposed agreed order to at least the parties that were in court, outlining at least what I would agree to, and I'm not saying they were agreeing to it -- (distorted audio).  I arranged inspections at the request of FVP and of Franklin that occurred on Tuesday, had the auctioneer go out there, and had two potential buyers inspect -- (distorted audio) -- no further response as far as the agreed order.

We then circulated, I think it was either Wednesday, I think, or early Thursday, a proposed order, agreed order, on abandonment, and this we circulated to all the parties, I believe everyone that's present in court today, to see if we could get consensus on abandonment.  I was ignored.  No one responded to me.

I have had dealings with Benidt, and, again, I agreed to abandoning their vehicle.  It makes sense.  The only response I received was something last night on behalf of FVP, essentially, objecting to certain provisions of that order.

So where we are today, your Honor, is, unfortunately, various parties are emboldened by this Court's ruling of May 1, so much so the Court needs to look no further than the motion of Karma seeking abandonment where they treat statements by the Court at that hearing as well -- (distorted audio) -- that the debtor doesn't own these vehicles, and, therefore, they should be abandoned. And it's based on that position that various parties in interest take the position that there is no bona fide dispute.  The Court's already considered this, and there should be no sale.

My position, your Honor, is if you think there's a bona fide dispute under 363(f)(4) and the vehicles should be sold, then that's fine.  If you don't, then they should all be abandoned.  Also if the Court thinks that we're proposing as a reasonable surcharge -- the minimal amount that I have there is something that would be reasonable at a minimum, because there needs to be some benefit to unsecured creditors -- then there should be a sale.

However, if the Court doesn't find that there is a bona fide dispute, and if the Court -- and/or the Court determines that the minimum surcharge I'm proposing is not appropriate, then I don't see enough of a possible benefit to unsecured creditors, and I'd ask that the Court approve abandonment of these vehicles.

Page 10

I was seeking for it to be deemed immediate, however, I understand that there are the Jewish holidays, so I have communicated with counsel for the debtor that it be effective, deemed effective on Tuesday, so it's after today, and that would be, I think, reasonable.

I think I have to abandon everything to the principal of the debtor, to the member of this LLC. I think that's how abandonment works, and that's what I would do, turn over the vehicles, the keys, the titles, any owners manuals that I have to the debtor.

So as briefly as I could have said it, that is my position today, your Honor.

THE COURT: Now, based on what Mr. Bakst just said, perhaps I should comment briefly on what my ruling actually was with regard to the debtor's ownership interest. I think if you read the transcript, which I'm confident it would be identical to the notes that I read, I did not make any finding with regard to the debtor's ownership ultimately. I did say, I would not be "surprised" if the debtor's rights in the vehicles were very limited and the debtor didn't have any ownership in many, if not all, of the vehicles. But I certainly did not make any ruling on that. I only found, given the evidence I had heard in connection with a two-day evidentiary hearing on a variety of issues, that the debtor's position seemed doubtful, but that's all I

Page 11

said.

Let me also say that the issue of whether there is a bona fide dispute under Section 363(f) is a different issue, and so these are two different matters.  So -- and what I have today, among other things -- and I do need to note that 579 is also on the docket today, and that's a motion for payment by the debtor.  But the other matters are all related to either approving a sale process or abandonment of the vehicles.

So let's hear from the other parties.

So the trustee's position is, not surprisingly, "I would like to sell all the vehicles, but I'm not going to do it if it turns out that the result is not for the benefit of any creditors in the estate."  And so the proposal is that there be some kind of carve-out for the estate, and the trustee, in its most recent filing, which -- in his most recent filing, which Mr. Bakst just outlined, suggested a different treatment than was originally proposed in 618.  I think the most recent filing is 650.

And do you wish to elaborate at all after I've made those comments, Mr. Bakst?

MR. BAKST:  No, your Honor.  I think the Court has accurately stated what I've said today.

THE COURT:  Okay.  Who would like to be heard next?

Page 12

Yes, Mr. Softness.

MR. SOFTNESS:  Thank you, Judge.

I think it's simpler than it appears from the discussion so for.  The parties did negotiate fervently at various points, less so this week.  I think the simple answer is that we did not come to terms, and we took the trustee at his word and said we would prefer an abandonment and we'll take our chances in the state court.  I think that's what he proposed, and that's what we agreed to.  I don't speak for anybody but FVP, but my sense is -- (chuckles) -- I'm not alone at the podium here, but I'll let everybody speak for themselves.

We have one issue.  It's a simple issue, and I think -- I hope you'll see it our way.  We don't want the abandonment to be today, and we also don't want it to be Tuesday, it being a long holiday weekend.  My client, FVP, has already agreed to pay the rent and to pay insurance, so I don't see any risk to the estate or its professionals.  If we could have 14 days, we could line it all up.  You know the history.  You know what we have dealt with with this debtor.  We don't want to do that again.  Cars are transitory, as you know.  They're ephemeral in a sense.

So all we're asking is you do grant the motion for abandonment.  You can enter the order today, but no order is final for 14 days, and judges shorten that all --

THE COURT:  Certain orders are, in fact, final immediately, but the rules provide for some of them not to be.

MR. SOFTNESS:  Correct.  Well, whether we fit into the subcategory or not, you can always order it that way. Fourteen days puts nobody at risk, and we'd have plenty of time.

I would -- in conjunction with this, I would ask ore tenus for stay relief just to go back and secure our rights in the state court, simply as to the cars, nothing beyond that.  I don't see a downside to what I'm proposing. So with that I --

THE COURT:  Why would I do that and not simply continue the matter two weeks and not enter any orders?  And in the meantime your client would continue to pay for insurance and the warehouse.

MR. SOFTNESS:  That's a heck of a good question, Judge.

THE COURT:  It seems like a really complicated solution that you just proposed --

MR. SOFTNESS:  It's like you come out here, and I'll come -- (laughter).

THE COURT:  Well, you know -- all right.

MR. SOFTNESS:  I don't differ with that necessarily.  We'd prefer to get things moving in that one

direction.  That would be our preference, but you're suggestion is -- makes sense as well.

THE COURT:  Let me go back to Mr. Bakst, because the proposal in the original motion and then the follow-up, the tone of it, and I may be reading into this, but the tone of it is, "This is what we propose as an auction, and if the creditors are not going to agree, then the Court should approve abandonment."

Am I saying that too simply, Mr. Bakst?

MR. BAKST:  Only slightly, other than -- and also, I mean, because there is a 363(f)(4), the Court would have to find that there's a bona fide dispute, and so if the Court doesn't find a bona fide dispute, if we didn't have the agreement of the creditors, then, of course, I would have to abandon.

THE COURT:  Okay.  So --

MR. BAKST:  I think that --

THE COURT:  -- hold on.

So let me restate this then.  The trustee proposes the sale with what you described as a surcharge, a word I would not necessarily use, and you're saying if there isn't agreement, you would still like to propose the auction sale and you would want me to rule on the bona fide dispute issue.

MR. BAKST:  And -- yes, and I would want the Court

Page 15

to find some minimum, whether we call it surcharge or carve-out, as outlined in my reply at Court Paper 650.  If that was not determined by the Court, then I don't see -- I don't think it's beneficial to unsecured creditors to go forward with the sale with the risk that there could be nothing going to unsecured creditors from the sale.  That's essentially my position --

THE COURT:  Okay.

MR. BAKST:  -- and, your Honor, I -- okay.  Thank you.

THE COURT:  But it isn't, if there's no agreement, than abandonment?  There is a middle ground from the trustee's point of view, which would require me to rule on at least two issues, whether --

MR. BAKST:  Yes, your Honor.

THE COURT:  -- there's a bona fide dispute and whether there should be something in an order at the time a sale is approved before the sale happens ruling that the estate would be entitled to some carve-out from the proceeds?

MR. BAKST:  Correct.

THE COURT:  All right.  The second issue I don't think anybody has really addressed in any way, in any real way in anything that I've seen filed, in spite of the fact that there's one, two, three, four, five, six, seven, eight,

Page 16

nine, ten different filings associated with ECF 618 alone, not including the separate motions to abandon.

So, all right, and your view on -- taken that way, it's a proposed sale with specific terms.  If not agreed then the trustee hopes to force the matter, and then if not, there would be abandonment.

MR. BAKST:  That's correct, your Honor.

And I can respond as far as to Mr. Softness' statements if the Court wants me to or wants me to wait.

THE COURT:  Why what?  I'm sorry.

MR. BAKST:  I can respond to Mr. Softness' arguments to the Court in regard to the effectiveness of an abandonment.  I would not want it to be two weeks.  There is a risk as far as these vehicles, whether or not there's insurance, doesn't mean I wouldn't have to fight with an insurance company if something did happen to the vehicles. I would not want abandonment to not be final any day other than --

THE COURT:  Okay --

MR. BAKST:  -- Tuesday.

THE COURT:  -- but there's insurance right now.

MR. BAKST:  There is.

THE COURT:  So if I didn't rule for two weeks, there'd still be insurance?

MR. BAKST:  Correct.

THE COURT:  Okay.  Good.

Back to you.

MR. SOFTNESS:  Ah -- (laughter.)

THE COURT:  I mean, if the trustee is going to force forward on the motion for sale, your response is?

MR. SOFTNESS:  Well, my response, honestly, Judge, is we would continue to try to work with the trustee as we have unsuccessfully to date.  That doesn't mean we wouldn't be successful.

I want to be real careful.  I'm not agreeing with you that continuing this two weeks is the better way, but I see your point.  And if I'm understanding the question you're asking me, of course, we'll try to work with Mr. Carnahan, according to the Zoom -- (chuckles), try to work with Mr. Bakst and see if we can get there.

I don't --

THE COURT:  All right.  But a substantive response to the motion if he's moving forward on it?

Let's see, are you moving forward on it today, Mr. Bakst?

MR. BAKST:  Well, it's -- I am moving forward on it today, your Honor.  I think that it just -- it needs to be ruled on one way or another.  It's not fair to me.  It's not fair to the auctioneer.  This is the third hearing on the same motion.  I have no more confidence today than I did

two and a half weeks ago that any resolution could be reached that everybody is going to reach it.

THE COURT: Right.

So why am I not hearing this right now?

MR. BRESLIN: Judge, may I be heard for the FVP parties very briefly?

THE COURT: Sure.

MR. BRESLIN: I know you have a one person rule.

Judge, FVP's position is we were given a choice between take a certain resolution to this, and that involves giving the trustee an amount of money that we did not think makes business sense, or there was going to be an abandonment. We did not brief any other issues regarding a motion for sale. We did not anticipate for that today. And if your Honor is going to take that up, I would ask that your Honor give us sometime to brief it and address it --

THE COURT: Okay. What --

MR. BRESLIN: -- because --

THE COURT: -- can you explain to me --

MR. BRESLIN: -- we've --

THE COURT: -- what you'd be addressing?

MR. BRESLIN: Well, Judge, our understanding was that we were going to come here today, and there was going to be an agreed order of abandonment, and we've been acting under that position, because that's the position that

Mr. Bakst gave to us from day one. It was take this, or it's going to be an abandonment. He circulated an agreed order of abandonment this week. We kept trying to figure out a way for it to make business sense to give Mr. Bakst what he wanted in his agreed order, and we just could not come to that, and it was only last night that we realized that we could not.

We believe that the only thing that makes sense for the FVP parties is abandonment, and we object very extraneously to the auctioneer that Mr. Bakst has brought in. That was one of the problems we had from the beginning, is that he brought in an auctioneer that not only the FVP parties, but other parties, felt was not competent to sell these very high-priced cars and that a more specialized service would be appropriate. And that was one of the things that we were trying to talk to Mr. Bakst about, but he was adamant about keeping his auctioneer on.

And just so you know, Judge, we had cash buyers that were ready come in and make cash offers and wanted to take a look at the cars. And they were given exactly one hour to look at the cars, and after having -- one was given an hour and a half and one was given an hour. And, you know, I've spoken to both of those, and after that -- after the second bidder said that they were not interested, you know, he was given an hour, and then he said, you know, "I

Page 20

can't work under these conditions," and then made no bid. And then the first bidder, the Grecko Company, they sent an email to Mr. Bakst, and they dramatically reduced, you know, what they felt was -- what they offered prior to that very short inspection.

So, Judge, I think that it would just be unfair to us for you to -- for us to come into this hearing, and then the result of this hearing is that the cars are going to be sold by the auctioneer when we believe that if these cars are sold by this auctioneer, they're going to be sold for a fraction of what they're worth.  That was the whole reason --

THE COURT:  But you've already said that.  You said that in your initial objection.  It's there.  Right?

I'm trying to figure out what I will benefit from if I delay and have you brief something.

What are you briefing?

I have to tell you all, in my view there are two legal issues that are dispositive in connection with the motions and objections that I have, and no one has raised them, and so I will not be hinting at what they are until and if I need to rule on the motion as it's currently presented, as modified by 650, so -- and I was hoping that you would negotiate a resolution.

So my question for today is, am I ruling on what I

have, 618 as modified by 650, or am I giving you all one last chance to reach agreement?

UNIDENTIFIED SPEAKER:  Judge, may I be --

THE COURT:  Because I am, at this moment, prepared to rule on all of the matters on the docket today.  I could do it right now.

UNIDENTIFIED SPEAKER:  We would request -- we would request more time, Judge.

MR. BAKST:  Your Honor, I would --

THE COURT:  And Mr. Bakst --

MR. BAKST:  -- I'm sorry, your Honor.

THE COURT:  -- is going to tell me, you've had three chances, right, Mr. Bakst?

MR. BAKST:  That is correct.

THE COURT:  And from the estate's point of view, the vehicles are insured -- and now we have Ms. Carnahan labeled as Mr. Bakst.  I have to tell you, it's so funny because when I look at the squares, I am -- want to say the name of the person who is identified, and I -- and it actually causes me to stop for a moment.

All right.  So, Mr. Bakst, you're about to tell me why I should rule on it right now, and the estate is not protected in the next two weeks?

MR. BAKST:  Oh, I -- the estate is protected by insurance.  That doesn't mean that something couldn't happen

Page 22

between now and then, your Honor.  But I don't see a reason not to rule on it.  I think that as much as FVP wants to say somehow they thought there was some agreement on abandonment, it would have been nice if they had responded to me at all.

I gave -- two proposed orders went out, and no one responded one way or another, so there's other parties that have filed conflicting positions here.  I'd like to know what they think, your Honor.  If, you know, is -- does everybody want me to abandon today?  I -- my impression was that there was some that still wanted these cars to be sold.

THE COURT:  Okay.  So I've only heard from one party so far.

Who wants to go next?

UNIDENTIFIED SPEAKER:  Judge --

UNIDENTIFIED SPEAKER:  I would, your Honor.

THE COURT:  And who is that?  Mr. Winderman?

MR. WINDERMAN:  Yeah, Patrick can go first.

THE COURT:  Mr. Dorsey.

MR. DORSEY:  Okay.  Very briefly, Judge, I would second FVP's comments that -- well, first of all, let me apologize publicly to Mr. Bakst.  I was at a hearing before Judge Russin until 7:00 p.m. last night.  It was certainly not my intent to not respond to emails or not respond to him.

Page 23

Let me just say -- let me echo FVP's comments, that the position taken by the trustee has consistently been, "We will sell this via a consent process, or I will abandon them."  To my knowledge there has never been a hint that I will attempt to sell the cars, notwithstanding consent from the secured creditors, and I think there's an obvious reason he can't do that, and it is that if we put forth evidence on this point, these are wholly encumbered assets.  There's no benefit to the estate and its unsecured creditors by selling the encumbered assets absent a consensual carve-out from the secured creditors.

THE COURT:  Okay.  Well, now, I'll interject.  There is bona fide dispute on that issue.  So I'll just let you know ahead of time, that issue there's a bona fide dispute.  That is still not one of the two issues that I think are dispositive on the motions before the Court.

Go ahead.

MR. DORSEY:  Correct.

I can tell your Honor part of the frustrating process from my client's perspective has been, it is not a melting ice cube, there's no negative cash flow, there's no DIP financing that's going to mature.  You have a secured creditor who has said, "I will pay the insurance and the storage costs for these vehicles."  And I do take Mr. Bakst's point of, "Well, what if I have to fight with an

Page 24

insurance company," but these vehicles are sitting in a warehouse.  They are not out being driven around the streets of South Florida.  They are sitting in a warehouse.  I think by any reasonable measure, they are safe.  And, frankly, the only rush here is the rush being created by the trustee.  Nothing prevents him, frankly, from withdrawing the entire sale motion without prejudice and going back to the drawing board.

And it's just -- the trustee's business judgment is his business judgment.  I'm not saying I'm going to substitute mine for his, but it seems odd to me that he would rather abandon the vehicles when it seems by public filings in this case, and otherwise, there is money for the estate via a consensual sale process and the trustee would rather choose abandonment over that.

THE COURT:  All right.  Thank you.

Next.

MR. WINDERMAN:  Mr. Winderman.

THE COURT:  Yes.

MR. WINDERMAN:  Thank you, your Honor.

Your Honor, my motion goes further than I believe the others.  We're asking the cars not just be abandoned, but turned over to their actual owners, the Karma entities, and I think that that --

THE COURT:  But wouldn't that require me to make a

ruling that Karma is the owner, which I have not made that ruling?  And it's not how abandonment works, Mr. Winderman. Abandonment is throwing you all to the wolves, and you get to go back to state court where I think there's an existing injunction; is there not?

MR. SOFTNESS:  There is, Judge.

MR. WINDERMAN:  There is, your Honor, and making Karma the owners -- and I agree you haven't made those factual findings --

THE COURT:  Nope.  I was about to --

MR. WINDERMAN:  -- and I disagree with --

THE COURT:  -- have a five-day evidentiary --

MR. WINDERMAN:  -- with Mr. Bakst on --

THE COURT:  -- hearing on that question, which I have not had yet.

MR. WINDERMAN:  And that's my point, your Honor. And that's my point, your Honor, the cost to the estate of a hearing that would last five days, considering all of the secured creditors, it's better to put this back into the hands of the state court and allow the state court, which already has pleadings filed by everybody, to make a determination as to the secured creditors and to any equity and to establish the ownership of the cars, which I think is pretty clear from your ruling on May 1st, where you did say -- and I attached the entire ruling, your Honor.  I

didn't mean to --

THE COURT:  I -- I'm really familiar with the ruling, and I did --

MR. WINDERMAN:  Yes.  I thought you would be.

THE COURT:  -- I read the transcript to make sure it reflected what I said.

MR. WINDERMAN:  And it did.

THE COURT:  Okay.  And?

MR. WINDERMAN:  And what I'm saying is that you determined, I believe, bottom line, that AWB was nothing more than a lender.  If AWB was nothing more than a lender --

THE COURT:  I didn't say that.  I said AWB was "primarily" a lender.  That does not mean that it did not own any of the vehicles, and I haven't taken evidence independently on each of the vehicles.  There's some that we've had evidence on and that I've ruled on.

MR. WINDERMAN:  Right.  And I think all of those -- I think all of your rulings, including the May 1st ruling, makes it very clear that AWB did not own any of the cars.  They even said the only reason they took ownership was a security interest.  They never took actual title and never sold any of the cars after they took title --

THE COURT:  I know what the ruling --

MR. WINDERMAN:  -- ergo --

Page 27

THE COURT:  -- is, Mr. Winderman.

MR. WINDERMAN:  -- they were simply a lender.

THE COURT:  How does this help you today?

MR. WINDERMAN:  It helps me today, your Honor, by getting these cars out of the hands of this Court and into the hands of the state court, where I can act more as an owner than I can as a party that everybody looks past in trying to reach an agreement.

THE COURT:  Okay.  Anyone else?

Mr. Appell.

MR. APPELL:  Your Honor -- yes, your Honor.  Evan Appell on behalf of Derek Stephens.

We've not really been privy to any of these conversations, but to the extent that your Honor is inclined to order that these cars be sold at auction, we, again, reassert our request that our car be carved out of that auction process given the pending appeal.

THE COURT:  All right.  Anybody else?

MR. HARWIN:  Your Honor, I -- this is Michael Harwin here on behalf of Benidt Investments.

I don't want to sort of jump in line in case Ms. Redmond was going to speak, but I do want to sort of note that Benidt Investments has sort of negotiated separately, and I believe we are, in large part, in agreement with both the trustee and the other creditors with

Page 28

regard to how the silver Lamborghini that's the subject of Benidt Investments' claim is to be treated.  So I just want to make sure that the Court is aware that we have some agreement to that, and I'll defer to Ms. Redmond.  I see her approaching the podium on that point.

MS. REDMOND:  Yes, your Honor.  And let me just go a little bit further.

Unlike the other parties to the case, we have been able to reach an agreement with the trustee and the other parties, and we have everybody sign off on a form of order, which would abandon the car, put it in the custody and control of Karma, with all rights preserved of all parties and have the car with all kinds of constraints.

In addition to that, the only court that has jurisdiction over the two cars that are involved with Benidt is the federal court, and so we are circulating an agreed motion to withdraw reference so the pieces of the lawsuit that came to you --

THE COURT:  Would go back?

MS. REDMOND:  -- from the District Court lawsuit would go back to the District Court, so after this order --

THE COURT:  I'd like to message Judge Singal --

MS. REDMOND:  -- is entered, another court --

THE COURT:  -- and say the ball a back in your court.

Page 29

MS. REDMOND:  Another court would have jurisdiction over the whole lawsuit.

THE COURT:  Great.

Okay.  So, go ahead, who is next?

MR. SOFTNESS:  Judge, I just -- I did respond late, but I did respond, late yesterday after the close of business, that with everything, we had elected to support an abandonment.  We still do.  I understand what the Court is saying.  I think I can even guess what the dispositive issues are, and I'm not going to put it on the record because I'm probably wrong.  But I will echo, because I'm smart, Mr. Breslin.  We came here thinking this was a done deal, and I understand the Court's perspective, but we were hoping it was a done deal, and that only leaves the issue of timing.

THE COURT:  Well, it isn't my perspective.  It's what the trustee is asking.

MR. SOFTNESS:  I understand.

THE COURT:  Okay.  So the request that I have before the Court is not, if there's no agreement on sale, then the Court should abandon, in which case there probably would only be one party who would be disagreeing with that at this point.  That isn't what the trustee is requesting.

Right, Mr. Bakst?

MR. BAKST:  That's correct, your Honor.

Page 30

What I'm requesting is what's outlined in my motion since I never got anything dispositive from anybody agreeing to anything in regard to the motion.  So my motion -- (distorted audio) -- to 363(f)(4), that is in there.  If someone wanted to negotiate something with me this week, they knew where to find me, and they chose to ignore me.

THE COURT:  All right.  Hold on.  I want to look at the calendar.

So this is what I'm going to do, I have 618, which has been modified by 650.  That's the trustee's motion.  And then mirror images of that, I have 632, which is Karma's independent motion, and I think that's joined by FVP at ECF 638, so that makes it theirs as well.  Hold on a second.  And I think those are the only ones that are current.

What I'm going to do is, I'm going to enter an order that moves 618, as modified by 650, plus the mirror image motion to abandon at 632, joined in by FVP at 638, I am going to ignore all prior responses.  I'm going to set a new response deadline a week before my continued hearing.  There will be a page limit, five pages, only five pages of response.  There will even typeface requirements, so you don't try to use minuscule type.  I want to know what the objections are very basically to the relief requested by trustee.

I don't think the estate is harmed by the delay. We have a party that's paying for the warehouse. The vehicles are insured. I will be prepared to rule that day. I think you all need to be ready for the Court to rule on the two requests, either a sale of some kind that will be overseen by the trustee via auction or an abandonment of all the vehicles.

Let me make it clear that any abandonment is consistent with the Bankruptcy Code. It is not a directed transfer of title to a party other than the debtor. The debtor, through its principal, will get control of all the vehicles at the moment an abandonment order is entered.

Now, I'm pretty sure there's already an injunction in the state court, so I don't see why that would not be immediately effective, but I cannot rule on that in any regard, and anything I say is dicta. It's worse than dicta. It's meaningless with regard to the state court.

If I do approve a sale, it has to be the sale that has been proposed by the trustee, unless the trustee modifies that request. So what I have is a modification so far at ECF 650. Of course, you can agree to something else if you wish, and I am, of course, prepared to hear alternatives to the sale structure if that is what the trustee determines and the trustee's business judgment is appropriate to present at this continued hearing.

What I'm worried about is, I don't want to end up on the same day as something else. I'm going to put it at 11 o'clock on the 14th of June, and the deadline for responses is the 7th at 4:00 p.m., again, five pages, which means you just need to tell me what your objections are. "My objection is this legal theory or this factual concern." You can elaborate on it at the hearing. What I don't want is 30 pages of case law that I already know exists on a particular issue. If there are two cases that you think are dispositive on something, please cite them. You do not need to -- I will read whatever you cite. So if you cite a whole bunch of things that are useless, I will be annoyed. And if you cite things that useful, I will have read them and I will see that they are useful, and you can elaborate on them at the hearing.

Are there any questions?

(No audible response.)

THE COURT: Okay. I'd like to hear the motion for payment at 579.

Who's presenting that?

Yes, Ms. Redmond.

MS. REDMOND: Just before you -- will your Honor enter the order --

THE COURT: Yes.

MS. REDMOND: -- that we've all agreed upon in the

Page 33

abandonment of the silver Lamborghini today?

THE COURT:  Has it been tendered?

MS. REDMOND:  Your Honor, it's not been tendered. It's --

THE COURT:  Okay.

MS. REDMOND:  I have two more parties just to sign off on it.  I have Franklin Capital and Hi Bar that need to sign off on it.

THE COURT:  I mean, is there -- if I'm tendered with that agreed order, I'll enter it.

MS. REDMOND:  Okay.

THE COURT:  Unless there's something wrong with the order.  Obviously, I'm going to read it, but yes --

MS. REDMOND:  Thank you, your Honor.

THE COURT:  -- your concern is you want to be out.

MS. REDMOND:  Yes, your Honor.

THE COURT:  I get it.

MS. REDMOND:  Thank you.

THE COURT:  And I won't take that personally.

Who is that online?

MR. BAKST:  Your Honor, this is Michael Bakst.  I haven't seen the -- I had sent revisions to Ms. Redmond and Mr. Harwin.  I haven't seen that final -- if those have -- those changes made.  That would be my only caveat to submitting the order --

Page 34

THE COURT:  Yes.

MR. BAKST:  -- I haven't seen the final.

MS. REDMOND:  Your Honor, we'll recirculate it to Mr. Bakst as well.

THE COURT:  Okay.  Good.  Thank you.

And then for those of you who go to the retreat, you can hang out by the pool and negotiate a resolution to this matter, and if I happen to see all of you together, I won't walk over and say hello.

All right.  So let's go back to 579.

Who would like to present that?

Ms. Kennady, your -- yes.

MS. KENNADY:  We believe that in the event of abandonment, the motion for reimbursement will be withdrawn. So perhaps it should be continued until the issue as to whether there will be a sale or abandonment has taken place.

THE COURT:  Okay.  I'll be glad to move that with the others.  Thank you.  We'll do that.  It's going to be by order, Mr. Hess.  No, not Mr. Hess, because he's not working on this case.  Someone else will do it.

All right.  Do I have anything left in this case?

MR. SOFTNESS:  Oh, plenty, Judge.

MR. BAKST:  Your Honor --

UNIDENTIFIED SPEAKER:  Your Honor --

THE COURT:  Oh, I have the warehouse lease.  I'm

Page 35

carrying the warehouse lease as well.  All right.  And there's no further objections to that.

All right.  Mr. Lessne.

MR. LESSNE:  Your Honor, not as to something today, but there is a hearing on the objections to claims that's set for next Wednesday.

THE COURT:  Okay.

MR. LESSNE:  I've discussed or corresponded with Mr. Shraiberg, and we would agree to a continuance to allow the trustee to address those objections rather than having a hearing on Wednesday about it --

THE COURT:  So --

MR. LESSNE:  -- so I thought it was appropriate --

THE COURT:  Okay.  So file a brief motion, and then we'll move it.

MR. LESSNE:  Yes.  Thank you, your Honor.

THE COURT:  All right.  Thank you.

Anything else in this case?  I'm afraid to ask now.

UNIDENTIFIED SPEAKER:  Judge, I --

UNIDENTIFIED SPEAKER:  Judge, can I -- I just wanted to explain to Mr. Bakst when he circulated the abandonment order, we were vigorously negotiating on our side to try to come to some resolution that I wanted to be able to come to before I reached out to him.  We were not

ignoring him.  We spent literally all day every day on this case, so no one ignored him.  We just didn't have an answer.

THE COURT:  Well, he was feeling ignored, because nobody wrote back to him and said, "We're all talking, we'll get back to you," which is --

UNIDENTIFIED SPEAKER:  Well, or when he circulated the abandonment order, we just assumed that was his position, and so I just don't want you to think we ignored him, because we don't practice law that way, Judge.

THE COURT:  Okay.  Understood.

MR. SOFTNESS:  Judge, I may have misheard you, but the warehouse lease motion was offered today --

THE COURT:  Let's carry that.  I don't see why we wouldn't.

MR. SOFTNESS:  Yeah, I agree, but I'm just making sure.

THE COURT:  All right.  Anything else in this case?

If might be wise -- one of the reasons why I put the objection deadline a week ahead of the hearing is so that you all will know what your positions are and you can get together and talk, because oftentimes my making a decision, I am limited by the facts and the law before me, and you all can come up with a creative solution that I cannot order.  So I'm hoping that you'll come up with a

Page 37

creative solution, because I have a funny feeling what the ruling will be.

All right.  Anything else?  Anything else today?

MR. SOFTNESS:  No, Judge.

MS. REDMOND:  No, your Honor.

THE COURT:  Great.  Thank you.

UNIDENTIFIED SPEAKER:  Thank you, your Honor.

THE COURT:  Court is in recess until 1:30.

(Whereupon, the hearing was concluded.)

Page 38

CERTIFICATION


STATE OF FLORIDA                    :

COUNTY OF BREVARD                   :


          I, Anna M. Meagher, Stenographic Reporter, and

Notary Public in and for the State of Florida at Large, do

hereby certify that the foregoing proceedings were

transcribed by me from a digital recording held on the date

and from the place as stated in the caption hereto on page 1

to the best of my ability.

          WITNESS my hand this 31st day of May 2023.




                    _____
                    Anna M. Meagher, Stenographic Reporter
                              and Notary Public
                    in and for the State of Florida at Large
                            Commission #HH59960
                            January 9, 2025