**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

In re:                                                    Case No.: 22-15627-EPK
                                                         Chapter 7

**AUTO WHOLESALE OF BOCA, LLC,**

      Debtor.

_____/

## TRUSTEE'S EX PARTE MOTION FOR ORDER ALLOWING THE TRUSTEE TO PAY MONTHLY WAREHOUSE LEASE

The Trustee, Michael R. Bakst**,** Trustee in Bankruptcy for Auto Wholesale of Boca, LLC, hereby files Trustee's Ex Parte Motion For Order Allowing The Trustee To Pay Monthly Warehouse Lease and states:

### Procedural History

1. On July 22, 2023, Auto Wholesale of Boca, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11, subchapter V of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida.

2. On May 1, 2023, the case was converted to a Chapter 7 [ECF No. 584].

3. On May 2, 2023, Michael R. Bakst was appointed as the Chapter 7 Trustee [ECF No. 589].

4. The Debtor's §341 Meeting of Creditors was held and concluded on June 8, 2023.

5. The Debtor is a lessee under an ongoing Commercial Lease for a rental of warehouse storage premises (the "Lease") located at 5471 North Dixie Highway, Boca Raton, Florida 33487 (the "Premises"), from 5471, LLC, (the "Landlord").   The Lease commenced January 1, 2022, and has a termination date of December 31, 2026, as annexed hereto as "**Exhibit 1**".

6.    The rent is a shared rent with Excell Auto Sport and Service Inc. (the "Sub-tenant"). The Sub-tenant paid the rent for the month of June 2023 in the amount of eight thousand two hundred and seventy-seven dollars and twenty cents ($8,277.20) and FVP Investments, LLC (the "Creditor") has paid the balance of two thousand eight hundred and forty-nine dollars and twenty-three cents ($2,849.23).

7.    It will be necessary for the Trustee to maintain the Lease at the current time to avoid default.

8.    Accordingly, the Trustee is seeking an ex-parte order from the Court allowing the Trustee to pay the rent for July 2023, and month to month thereafter, up to the total amount of ten thousand six hundred and twenty-one dollars and twenty-five cents ($10,621.25), with the ability to pay the lesser amount of two thousand eight hundred forty-nine dollars and twenty-three cents ($2,849.23) based upon the Sub-tenant paying their share.

9.    **WHEREFORE**, the Trustee, Michael R. Bakst**,** Trustee in Bankruptcy for Auto Wholesale of Boca, LLC, respectfully requests that the Court enter an ex-parte order allowing the Trustee to pay the rent for July 2023, and month to month thereafter, up to the total amount of ten thousand six hundred and twenty-one dollars and twenty-five cents ($10,621.25), with the ability to pay the lesser amount of two thousand eight hundred forty-nine dollars and twenty-three cents ($2,849.23) based upon the Sub-tenant paying their share plus grant such other and further relief as the Court deems just and proper.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to all parties listed below in the manner indicated on the 30th day of June 2023.

Respectfully Submitted,

**GREENSPOON MARDER LLP**

/s/ MICHAEL R. BAKST
MICHAEL R. BAKST, ESQ.
 Florida Bar No. 866377
Attorney for Trustee
CityPlace Tower
525 Okeechobee Blvd., Suite 900
West Palm Beach, FL 33401
T: (561) 838-4523  F: (561) 514-3423
Email: michael.bakst@gmlaw.com

*Mailing Information for Case 22-15627-EPK*

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Michael R Bakst**   efilemrb@gmlaw.com,
  ecf.alert+Bakst@titlexi.com;efileu1084@gmlaw.com;efileu1086@gmlaw.com;efileu386@gmlaw.com;efileu1857@gmlaw.com;efileu3163@gmlaw.com;efileu3214@gmlaw.com;efileu3291@gmlaw.com
- **Michael R. Bakst**   efileu1094@gmlaw.com,
  ecf.alert+bakst@titlexi.com;efileu1092@gmlaw.com;efileu2170@gmlaw.com;efileu386@gmlaw.com;Melissa.bird@gmlaw.com;efileu2831@gmlaw.com;efileu3214@gmlaw.com
- **Eyal Berger**   eyal.berger@akerman.com, jeanette.martinezgoldberg@akerman.com
- **Marc E Brandes**   mbrandes@kfb-law.com, bvillalobos@kfb-law.com
- **John M Brennan**   jack.brennan@gray-robinson.com, jessica.rolon@gray-robinson.com
- **Jerrell A Breslin**   jb@jsjb.law, eservice@jsjb.law
- **Melissa A. Campbell**   mcampbell@bakerdonelson.com,
  achentnik@bakerdonelson.com;cranderson@bakerdonelson.com;bkcts@bakerdonelson.com

- **Rilyn A Carnahan**    rilyn.carnahan@gmlaw.com,
  efileu1089@gmlaw.com;efileu2170@gmlaw.com;efileu1094@gmlaw.com;melissa.bird
  @gmlaw.com;efileu2831@gmlaw.com
- **Alan R Crane**    acrane@furrcohen.com,
  rrivera@furrcohen.com;ltitus@furrcohen.com;staff1@furrcohen.com;cranear84158@not
  ify.bestcase.com
- **Patrick R Dorsey**    pdorsey@slp.law,
  dwoodall@slp.law;pmouton@slp.law;pdorsey@ecf.courtdrive.com
- **C Craig Eller**    celler@kelleylawoffice.com,
  bankruptcy@kelleylawoffice.com;scott@kelleylawoffice.com
- **Jay L Farrow**    jay@farrowlawfirm.com
- **Heidi A Feinman**    Heidi.A.Feinman@usdoj.gov
- **Jonathan S. Feldman**    feldman@katiephang.com, service@katiephang.com
- **Scott C Gherman**    sgherman@scottghermanpa.com
- **Daniel Gielchinsky**    dan@dgimlaw.com,
  colleen@dgimlaw.com;dan_1836@ecf.courtdrive.com;eservice@dgimlaw.com
- **Travis A Harvey**    tharvey@butler.legal
- **Michael J. Harwin**    mharwin@stearnsweaver.com
- **Michael S Hoffman**    Mshoffman@hlalaw.com,
  hlaecf@gmail.com;cthornton@hlalaw.com;mshoffman@ecf.courtdrive.com;cthornton@
  ecf.courtdrive.com;mkennady@hlalaw.com
- **Dana L Kaplan**    dana@kelleylawoffice.com,
  cassandra@kelleylawoffice.com;bankruptcy@kelleylawoffice.com;scott@kelleylawoffic
  e.com
- **Amanda Klopp**    amanda.klopp@akerman.com,
  jeanette.martinezgoldberg@akerman.com
- **Philip J Landau**    phil@landau.law,
  plandau@ecf.courtdrive.com;diane@landau.law;dlocascio@ecf.courtdrive.com
- **Linda Marie Leali**    trustee@lealilaw.com,
  F005@ecfcbis.com;lkennedy@lealilaw.com;LindaLealiPA@jubileebk.net
- **Michael D Lessne**    michael@lessne.law
- **Nathan G Mancuso**    ngm@mancuso-law.com
- **David B Marks**    brett.marks@akerman.com, charlene.cerda@akerman.com
- **Cory Mauro**    cory@maurolawfirm.com,
  paralegal@maurolawfirm.com;evan@maurolawfirm.com
- **Nicole Testa Mehdipour**    nicolem@ntmlawfirm.com,
  cm_ecf_service@ntmlawfirm.com;atty_mehdipour@bluestylus.com;cmecfservice@gmai
  l.com;mehdipournr85783@notify.bestcase.com
- **Nicole Testa Mehdipour**    Trustee@ntmlawfirm.com,
  TRUSTEE_CMECF_Service@ntmlawfirm.com;FL80@ecfcbis.com;ntm@trustesolution
  s.net;BCasey@ntmlawfirm.com
- **James B Miller**    bkcmiami@gmail.com
- **James C. Moon**    jmoon@melandbudwick.com,
  ltannenbaum@melandbudwick.com;mrbnefs@yahoo.com;jmoon@ecf.courtdrive.com;lta
  nnenbaum@ecf.courtdrive.com;phornia@ecf.courtdrive.com
- **Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov

- **John E Page**    jpage@slp.law, dwoodall@slp.law;pmouton@slp.law;pmouton@ecf.courtdrive.com;jpage@ecf.courtdrive.com
- **Eric S Pendergraft**    ependergraft@slp.law, dwoodall@slp.law;dlocascio@slp.law;bshraibergecfmail@gmail.com;pmouton@slp.law
- **Patricia A Redmond**    predmond@stearnsweaver.com, jmartinez@stearnsweaver.com;cgraver@stearnsweaver.com;jless@stearnsweaver.com;mfernandez@stearnsweaver.com
- **Ryan C Reinert**    rreinert@shutts.com, jheard@shutts.com
- **Jason S Rigoli**    jrigoli@furrcohen.com, rrivera@furrcohen.com;staff1@furrcohen.com
- **Ezequiel Joseph Romero**    romeroe@bryancave.com, zeke.romero30@gmail.com
- **Carlos E. Sardi**    carlos@sardilaw.com, carlos@ecf.courtdrive.com;sardi.carlose.b110401@notify.bestcase.com
- **Zach B Shelomith**    zbs@lss.law, info@lss.law;mch@lss.law;zshelomith@ecf.inforuptcy.com
- **Bradley S Shraiberg**    bss@slp.law, dwoodall@slp.law;dwoodall@ecf.courtdrive.com;pmouton@slp.law
- **Eric J Silver**    esilver@stearnsweaver.com, jless@stearnsweaver.com;fsanchez@stearnsweaver.com;cgraver@stearnsweaver.com;mfernandez@stearnsweaver.com
- **David R. Softness**    david@softnesslaw.com
- **Christian Somodevilla**    cs@lss.law, info@lss.law;cs@ecf.courtdrive.com;mch@lss.law
- **David M Unseth**    dmunseth@bclplaw.com
- **Harry Winderman**    harry4334@hotmail.com, lynoramae@gmail.com,lm@whcfla.com,filings@whcfla.com
- **Ryan Mitchell Wolis**    rwolis@stearnsweaver.com, valfonso@stearnsweaver.com

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service).

**ACE Insurance Company of the Midwest a/s/o Richard Greenberg**
Kramer, Green, Zuckerman, Greene & Buchs
4000 Hollywood Boulevard
Suite 485-S
Hollywood, FL 33021

**Chapford Credit Opportunities Fund LP**
c/o Scott Rose
200 South Biscayne Blvd., Ste 3200
Miami, FL 33131

**Chapford Specialty Finance LLC**
c/o Scott Rose
200 South Biscayne Blvd., Ste 3200
Miami, FL 33131

**Jason J. DeJonker**
161 North Clark Street, Suite 4300
Chicago, IL 60601

**Joel D. Glick**
Berkowitz Pollack Advisors and CPA
200 S Biscayne Blvd., 7 floor
Miami, FL 33131

**Jarret Hitchings**
301 S. College Street, Suite 2150
Charlotte, NC 28202

**Soneet Kapila**
1000 S Federal Hwy #200
Fort Lauderdale, FL 33316

**Alan Lester Raines**
2500 N. Military Trail, Suite 303
Boca Raton, FL 33431

**John R. Schreiber**
111 E. Wisconsin Ave. Suite 1400
Milwaukee, WI 53202

**Vanessa Dawn Sloat-Rogers**
6409 Congress Ave., Suite 100
Boca Raton, FL 33487

**Steven William Wells**
229 Warner Road
Lancaster, NY 14086

**FVP Servicing, LLC**
c/o David R. Softness, Esq.
201 South Biscayne Boulevard #2740
Miami, FL 33131

**Benidt Investments/Slinger, LLC**
c/o Eric J Silver
150 West Flagler Street

Miami, FL 33130

**Auto Wholesale of Boca, LLC**
c/o Moshe Farache, Managing Member
6560 West Rogers Circle
Suite B27
Boca Raton, FL 33487

AML
29511.0636

## COMMERCIAL LEASE

**THIS LEASE** is made and executed by and between **5471, LLC, a Florida limited liability company** (hereinafter, the "LANDLORD"), and **AUTO WHOLESALE OF BOCA, LLC, a Florida Corporation** (hereinafter, the "TENANT").

1. **DESCRIPTION OF PREMISES.** LANDLORD hereby leases to TENANT, and TENANT hereby hires from LANDLORD, the premises identified in Exhibit "A" attached hereto and made a part hereof, having an approximate total square footage of 10,220 SF feet (the "Premises"), which is located at 5471 North Dixie Highway, Boca Raton, Florida 33487 (the "Building"), under the terms and conditions that follow.

2. **TERM.** The "Initial Term" of this Lease shall commence on **1/1/2022** (the "Commencement Date"), and end on **12/31/2026** (the "Termination Date").

3. **RENT.** The "Rent" which includes the "Minimum Base Rent" as set forth hereinbelow, is due throughout the Term of this Lease shall be as follows:

| Months | Base Monthly Rent | Taxes | Total Rent |
|--------|-------------------|-------|------------|
| 1 to 12 | $9,682.82 | $629.38 | $10,312.20 |
| 13 to 24 | $9,973.01 | $648.24 | $10,621.25 |
| 25 to 36 | $10,272.50 | $667.71 | $10,940.21 |
| 37 to 48 | $10,580.67 | $687.74 | $11,268.41 |
| 49 to 60 | $10,898.10 | $708.37 | $11,606.47 |

The base rent is based on rent of $11.36 per/sf and does not include sales tax. In addition to the base rent, Tenant shall pay sales tax to Landlord on a monthly basis at a rate of 6.5% on the base monthly rent due, as may be amended from time to time. The base monthly rent and sales tax is due on the **First** day of each month. Rent payments shall be made out to: **5471, LLC** and delivered or mailed to Mary Lafuente at 509 N.W. 55th Terrace, Boca Raton, Florida 33487.

Tenant acknowledges the total monthly rent is due and payable on the first of each month, and that 5% late fee will be charges for all rents received after the fifth of the month, due and payable automatically as additional rent, without necessity of notice to TENANT.

4. **RENT INCREASES.** Commencing on the second year of the initial five (5) year term, and any subsequent term the lease may be extended, the rent shall increase by 3% yearly.

5. **RENEWAL.** Provided TENANT is not in default under any term of this Lease, TENANT shall have the option to extend this lease for one (1) additional term of five (5) years. If TENANT chooses to exercise this Option, TENANT shall provide to LANDLORD notice of its intent by certified mail, no less than ninety (90) days prior to the end of the original term of the lease.

6. **RIGHT OF FIRST REFUSAL.** In addition to the Option to Renew contained in Paragraph 5, the Landlord hereby grants Tenant the first right of refusal to

Page 1 of 16

**EXHIBIT "1"**

execute a new lease for the Premises after this Lease and renewal term shall expire. The additional will be available only if Landlord elects to lease the Premises again. The annual rent in effect at the expiration of Tenants lease shall be adjusted to reflect the current fair market value for comparable space in Boca Raton, Florida and/or Palm Beach County, Florida and at Landlords sole and absolute discretion. Landlord shall advise Tenant of the new annual rent for the Premises no later than thirty (30) days after receipt of Tenant's written request, therefore.

7.    **SECURITY DEPOSIT AND PRE-PAID RENT.** TENANT acknowledges that on or before execution of this Lease, the **TENANT** shall deliver the following payments to the **LANDLORD**:

A.    Tenant hereby waives the requirement that all sums paid as advanced rent shall be held in a separate bank account for the benefit of Tenant and acknowledges that all sums be delivered to Landlord without any restrictions whatsoever except as otherwise provided in this Lease.

B.    Upon execution of this Lease, **TENANT** deliver to **LANDLORD** a Security Deposit in the amount of **TWENTY-ONE THOUSAND TWO HUNDRED EIGHT-NINE AND 29/100 ($21,289.29)[1] DOLLARS**, less any applicable credits, which **LANDLORD** shall retain under the terms of this Lease as a security deposit herein, subject to the terms of this paragraph, as security for **TENANT**'s faithful and timely performance of this Lease. **LANDLORD** is not obligated to apply the Security Deposit to Rent or other charges in arrears, or to damages for **TENANT**'s failure to perform the Lease. However, **LANDLORD** may so apply the Security Deposit, at its sole option, and its right to possession of the Premises for nonpayment of Rent or for any other reason shall not, in that event, be affected by reason of the fact that it holds this Security Deposit. The Security Deposit, if not otherwise applied toward payment of arrearages or damages as herein provided, shall be returned to **TENANT** when this Lease Term expires, after **TENANT** has vacated the Premises and delivered possession thereof to **LANDLORD** in the same condition as of the Commencement Date, reasonable wear and tear excepted.

C.    Upon execution of this Lease, **TENANT** shall pay **LANDLORD** the sum of **TEN THOUSAND THREE HUNDRED TWELVE AND 20/100 ($10,312.20.) DOLLARS**, which includes applicable Florida Sales and Use Tax (the "Pre-Paid Rent"), which **LANDLORD** shall apply towards the payment of the Rent (the Minimum BaseRent and Additional Rent) for the first month of the Term of this Lease.

If **LANDLORD** repossesses the Premises because of **TENANT**'s default or breach, it may apply the Security Deposit to any damages suffered by **LANDLORD** by reason of such default or breach.

---

[1] Security Deposit shall equal one months' base rent ($9,682.82, excluding tax) and the last months' rent and applicable taxes ($11,606.47.)

8.　**ADDITIONAL RENT**. In addition to the Rent and all other charges specified herein, **TENANT** agrees to pay the following, as "Additional Rent" (plus all applicable sales, use or other taxes due thereon):

　　A.　**TAXES**. **TENANT** shall pay before delinquency any and all taxes levied or assessed on **TENANT**'s fixtures, equipment and personal property located in and/or placed at the Premises, whether or not affixed to the real property.

9.　**GUARANTY.** Upon execution of this Lease, **LANDLORD** shall cause **MOSHE FARACHE** (the "Guarantor") to execute that certain Guaranty in favor of **TENANT** in the form attached as Exhibit "B" hereto and made a part hereof (the "Guaranty").

10.　**USE OF PREMISES - GENERALLY**. The Premises are leased to be used only and exclusively as an **AUTOMOTIVES SALES SERVICE AND REPAIR facility**, and for no other purpose. **TENANT** agrees to restrict its use to such purposes, and not to use, or permit the use of the Premises for any other purpose, without first obtaining the consent in writing of **LANDLORD**. On its part, **LANDLORD** expressly covenants and agrees that such consent shall not be unreasonably or arbitrarily refused, but one consent by **LANDLORD** shall not be deemed to be consent to a subsequent, different use of the Premises. **TENANT** agrees not to store any materials, supplies, pallets or unlicensed vehicles or auto parts in parking area of the building. All business and service activities are to be confined to the interior of Premises.　If **TENANT** fails to comply with the above, **LANDLORD** shall have the right comply at the expense of **TENANT**, and the same shall be deemed to be a material default under the terms of this Lease.

11.　**NO USE THAT INCREASES INSURANCE RISK**. **TENANT** shall not use the Premises in any manner, even in its use for the purposes for which the Premises are leased, that will increase risks covered by insurance on the Premises and/or increase the rate of insurance on the Premises, and/or to cause cancellation of any insurance policy covering the Premises. **TENANT** further agrees not to keep on the Premises, or permit to be kept, used, or sold thereon, anything prohibited by applicable law and/or **LANDLORD**'s policy of hazard insurance covering the Premises. **TENANT** shall comply, at its own expense, with all requirements of **LANDLORD**'s insurers, necessary to keep in force the hazard and public liability insurance covering the Premises.

12.　**NO WASTE, NUISANCE OR UNLAWFUL USE**. **TENANT** shall not commit, or allow to be committed, any waste on the Premises, create or allow any nuisance to exist on the Premises, or use or allow the Premises to be used for any unlawful purpose.

13.　**DELAY IN DELIVERING POSSESSION**. This Lease shall not be rendered void or voidable by **LANDLORD**'s inability to deliver possession to **TENANT** at the Commencement Date; nor shall such inability to deliver render **LANDLORD** liable to **TENANT** for loss or damage suffered thereby. If **LANDLORD** cannot deliver the Premises at such time, the Rent for the period between the Commencement Date and the time when **LANDLORD** actually delivers possession shall be deducted from the total Rent of the Lease. No extension of the Lease shall result from a delay in delivering possession.

14. **DELIVERY, ACCEPTANCE AND SURRENDER OF PREMISES; COMPLIANCE WITH THE AMERICANS WITH DISABILITIES ACT OF 1990.** TENANT agrees to accept the Premises on possession "AS IS", and further agrees to surrender the Premises to **LANDLORD** at the end of the Lease term, or of extension thereof, in at least the same condition as when **TENANT** took possession, allowing for reasonable use and wear. In addition, it shall be the exclusive responsibility of **TENANT** to assure that the Premises, the immediately adjacent exterior areas, and all approaches and accesses to the Premises, comply with the requirements of the Americans with Disabilities Act of 1990.

TENANT acknowledges that prior to the execution of this Lease, it has had the opportunity to inspect the Premises, and to, among other things, verify **LANDLORD's** calculation of the square footage of the Premises. Accordingly, the square footage of the Premises has been conclusively determined by the parties. **TENANT** further acknowledges and agrees that notwithstanding any variance which might ultimately be determined to exist in the size or dimension of the Premises, **TENANT's** Rent and Additional Rent shall not vary from the amounts specified herein, said amounts being based upon the nature, configuration and location of the Premises, and not based upon the actual rentable square footage of the Premises.

TENANT agrees that any and all equipment installed in or on, or operating in the Premises, including, but not limited to the air conditioning system, is taken and accepted by **TENANT** in its "As-Is" condition and state of repair as of the inception of this Lease. **TENANT** agrees further that it shall be solely responsible for all repairs to said equipment, as well as to replace said equipment in the event that it cannot be repaired.

TENANT shall remove all business signs or symbols placed on the Premises by **TENANT**, before redelivery of the Premises to **LANDLORD**, and shall restore the portion of the Premises on which they were placed to the same condition as before their placement.

15. **ENVIRONMENTAL LAWS.** TENANT shall strictly comply with all local, state and federal environmental laws and regulations. In the event TENANT violates any such laws, the LANDLORD may terminate this Lease. TENANT shall remain liable for the cleanup of any such violation and for any other costs, fines or penalties based upon such violation. TENANT shall take precautions customary to the automotive repair industry to protect property from contamination caused by hazardous materials. Tires, batteries, and similar items shall be disposed of properly and shall not be stored outside.

16. **REPAIRS, MAINTENANCE, HURRICANE PREPARATIONS.** TENANT, at its sole cost and expense, shall maintain and keep the Premises, including, without limitation, air conditioning systems, windows, doors, skylights, and interior walls, in good and sanitary condition and repair. In particular, **TENANT** shall keep the front and the adjacent sidewalks and areas in front of, and behind the Premises, free from dirt and debris. **TENANT** shall ensure that no citations are issued from the applicable governmental agencies as a result of **TENANT's** failure to comply with this provision of the Lease. In addition, in the event of a tropical storm or hurricane affecting the area where the Premises are located, **TENANT** shall be responsible for protecting the Premises against all damage,

including, but not limited to, covering all window openings and all plate glass with properly installed hurricane-proof materials. LANDLORD, at its sole cost and expense, shall maintain the roof, building structure and parking lot.

17. **PAYMENT OF UTILITIES**. **TENANT** shall pay for all utilities furnished to the Premises throughout the Term of this Lease and any extension thereof, including all electricity, gas, water, telephone service, internet services and trash collection.

18. **PARTIAL DESTRUCTION OF PREMISES**. Partial destruction of the Premises shall not render this Lease void or voidable, or terminate it, except as expressly provided herein.

If the Premises is partially destroyed during the Term of this Lease (through no fault or negligence of **TENANT**), **LANDLORD** shall repair the same to the extent **LANDLORD**'s insurance shall cover such damage or destruction and provided such repairs can be made in conformity with local, state and federal laws and regulations within 180 days of the partial destruction. **LANDLORD** agrees that, within 30 days after said partial destruction, **LANDLORD** shall determine whether such repairs can be made as aforesaid at **LANDLORD**'s sole and absolute discretion. Provided, however, that **LANDLORD** may make such determination within a reasonable time thereafter, in the event that circumstances beyond **LANDLORD**'s control do not allow **LANDLORD** to make such determination within said 30 day period. Provided further that, in the latter event, the parties agree that any additional time beyond said initial 30 day determination period, resulting from said circumstances, shall not be computed in determining said 180 day repair period, should **LANDLORD** decide to make such repairs. Rent for the Premises will be reduced proportionally to the extent to which the repair operations interfere with the normal conduct of **TENANT**'s business on the Premises.

If the building in which the Premises are located is more than one third (1/3) destroyed, **LANDLORD** may, at its sole option, terminate the Lease, whether the Premises are affected or not.

19. **LANDLORD'S ENTRY FOR INSPECTION AND MAINTENANCE**. **LANDLORD** reserves the right to enter the Premises at all reasonable times to inspect them, to perform required maintenance and repair, or to make additions or alterations to any part of the building in which the Premises are located, and **TENANT** agrees to permit **LANDLORD** to do so. **LANDLORD** may, in connection with such alterations, additions or repairs, erect scaffolding, fences and similar structures, post relevant notices and place moveable equipment, without any obligation to reduce **TENANT**'s Rent for the Premises during such period, and without incurring liability to **TENANT** for disturbance of quiet enjoyment of the Premises, or loss of occupation thereof.

20. **POSTING OF SIGNS BY LANDLORD**. **LANDLORD** reserves the right to place "For Sale" signs at any time during the Term of the Lease, or "For Lease", or "For Rent" signs on the Premises at any time within ninety (90) days from the Termination Date, or at any time following **TENANT**'s breach or default under this Lease.

Page 5 of 16

21. **POSTING OF SIGNS, AWNINGS, OR MARQUEES BY TENANT**. Tenant shall have the right to install and maintain, at Tenant's own expense, a storefront sign subject to written approval of LANDLORD as to dimensions, location, and design, which approval shall not be unreasonably withheld. TENANT shall not install any exterior awnings, banners, or lighting without the written consent of LANDLORD. Any signage must meet any City of Boca Raton ordinances and requirements.

22. **TENANT TO CARRY LIABILITY INSURANCE**. TENANT shall procure and maintain in force and effect, at its expense, during the Term of this Lease and any extension thereof, public liability insurance with companies approved by **LANDLORD**, adequate to protect against liability for damage claims and broken glass through public use of, or arising out of accidents or incidents occurring in or around the Premises, in a minimum amount of **ONE MILLION AND NO/100 ($1,000,000.00) DOLLARS** for each person injured and **TWO MILLION AND NO/100 ($2,000,000.00) DOLLARS** for any one accident or incident. Such insurance policies shall provide primary coverage, shall provide coverage for **LANDLORD**'s contingent liability on such claims or losses and shalllist **LANDLORD** as additional insured. The policies or copies of them shall be delivered to **LANDLORD** for keeping. **TENANT** agrees to obtain a written obligation from the insurers to notify **LANDLORD** in writing at least thirty (30) days prior to cancellation or refusal to renew any such policies. **TENANT** agrees that if such insurance policies are not kept in force during the entire Term of this Lease and any extension of it, **LANDLORD** may procure the necessary insurance and pay the premium, and that such premium shall be repaid to**LANDLORD** as Additional Rent for the month following the date on which such premiums are paid.

23. **ASSIGNMENT, OR SUBLEASE**. TENANT agrees not to assign or sublease the Premises, any part thereof, or any right or privilege connected therewith, orto allow any other person, except **TENANT**'s agents and employees to occupy the Premises or any part of them, without first obtaining **LANDLORD**'s express and written consent. **LANDLORD** expressly covenants and agrees that such consent may be withheld, conditioned or denied by **LANDLORD** at **LANDLORD's** sole and absolute discretion. One consent by **LANDLORD** shall not be consent to a subsequent assignment, sublease or occupation by other persons. **TENANT**'s unauthorized assignment, sublease or license to occupy shall be void, and shall terminate the Lease at **LANDLORD**'s option. **TENANT**'s interest in this Lease is not assignable by operation of law, nor is any assignment of **TENANT**'s interest in this Lease valid without written consent.

24. **ACT OF DEFAULT DEFINED**. Each of the following shall be deemed a default by **TENANT** and a breach of this Lease:

A. Failure to timely pay a Rent installment, or any Additional Rent, or charges owed to **LANDLORD** for a period of five (5) days after the same is due.

B. Failure to do, observe, keep, and perform any of the other terms, covenants, conditions, agreements, and provisions in this Lease contained on the part of **TENANT** to be done, observed, kept and performed, for a period of seven

(7) days after said performance is due under the terms of this Lease.

      C.     Appointment of a Receiver to take possession of **TENANT**'s assets; **TENANT**'s general assignment for the benefit of creditors; or **TENANT**'s insolvency or taking or suffering action under the Bankruptcy Act, is a breach of this Lease; or the taking possession of the property of **TENANT** by any governmental office or agency pursuant to statutory authority for the dissolution or liquidation of **TENANT**.

      D.     Vacation or desertion of the Premises or permitting the same to be empty and unoccupied for more than ten (10) business days.

      E.     **TENANT**'s removal or attempt to remove or manifesting an intention to remove **TENANT**'s goods or property from or out of the Premises otherwise than in the ordinary and usual course of business without having first paid and satisfied **LANDLORD** for all Rent which may become due during the entire Term of this Lease.

      F.     **TENANT**'s failure to conduct its business in the Premises in accordance with all applicable governmental laws, ordinances, rules and regulations, as may be amended from time to time.

For the purposes of this paragraph, if the default complained of be a default other than one which may be cured by the payment of money, **LANDLORD** shall not exercise any remedies against **TENANT** if steps shall have been commenced in good faith by **TENANT** within ten (10) days' notice from **LANDLORD**, within the time period set forth in this paragraph, to rectify the same, and shall be prosecuted to completion in good faith, with due diligence and continuity.

      25.     **LANDLORD'S AND TENANT'S REMEDIES IN EVENT OF DEFAULT**. In the event of any default specified in paragraph 23 hereof by **TENANT** and after the period to cure by **TENANT** has expired, **LANDLORD** may serve a written notice upon **TENANT** that **LANDLORD** elects to terminate this Lease upon a specified date not less than seven (7) days after the date of serving such notice.

In the event of a default by **LANDLORD**, **TENANT** shall notify LANDLORD in writing and provide **LANDLORD** with clear details specifying any alleged default. **LANDLORD** shall have a reasonable opportunity to evaluate any alleged default and shall have a reasonable opportunity to cure the same. Under no circumstances shall **TENANT** have any "set-off" rights with respect to any default by **LANDLORD**.

      26.     **LANDLORD'S REMEDIES ON TENANT'S BREACH**. If **TENANT** breaches this Lease, **LANDLORD** shall have the following remedies, in addition to its other rights and remedies in such event:

      A.     **Termination and Acceleration**. **LANDLORD** may declare **TENANT** in default and immediately terminate the Lease and accelerate all Rent

and all otherpayments obligations due under the Lease.

**Reentry**. **LANDLORD** may reenter the Premises immediately and remove all of **TENANT**'s personnel and property. **LANDLORD** may store the property in a public warehouse or at another place of its choosing, at **TENANT**'s expense or to **TENANT**'s account. After reentry, LANDLORD may terminate the Lease by giving seven (7) days' written notice of such termination to TENANT. Reentry only, without notice of termination, will not terminate the Lease. After reentry, **LANDLORD** may terminate the Lease on giving seven (7) days' written notice of such termination to **TENANT**. Reentry only, without notice of termination, will not terminate the Lease.

27.    **HOLDOVER**. If TENANT holds over and continues possession of the Premises, or any part thereof, after the expiration of the Lease without LANDLORD's permission, or at any time TENANT is no longer legally entitled to possession, LANDLORD may recover double the amount due for each day TENANT holds over and refuses to surrender possession. TENANT shall be considered to be in possession of the Premises so long as it remains or any of its personal property remains in the Premises or TENANT has not returned all keys to LANDLORD.

28.    **EXCULPATION**. **TENANT** agrees that, notwithstanding anything in this Lease agreement to the contrary, it shall look solely to the estate and property of the **LANDLORD** in the land and building comprising Premises are a part for the collection of any judgment (or any other judicial process) requiring the payment of money by **LANDLORD** in the event of any default or breach by **LANDLORD** with respect to any of the terms, covenants and conditions of this Lease to be observed and performed by **LANDLORD**, and no other property or estates of **LANDLORD** shall be subject to levy, execution or other enforcement procedures for the satisfaction of **TENANT**'s remedies.

29.    **EFFECT OF EMINENT DOMAIN PROCEEDINGS**. Eminent domain proceedings resulting in the condemnation of a part of the Premises that leave the rest usable by **TENANT** for purposes of the business for which the Premises are leased, will not terminate this Lease unless **LANDLORD**, at its option, terminates it by giving written notice of termination to **TENANT**. The effect of such condemnation, should such option not be exercised, will be to terminate the Lease as to the portion of the Premises condemned, and leave it in effect as to the remainder of the Premises. **TENANT**'s rental for the remainder of the Lease Term shall, in such case, be reduced by the amount that the usefulness of the Premises to **TENANT** for such business purposes is reduced. All compensation awarded in the eminent domain proceedings as a result of such condemnation, shall be **LANDLORD**'s. **TENANT** hereby assigns and transfers to **LANDLORD** any claim that **TENANT** may have to compensation for damages as a result of such condemnation.

30.    **FIRE OR CASUALTY**. In the event the Premises are partially damaged by fire or other casualty, **LANDLORD** shall repair same within ninety (90) days of **LANDLORD's** notice of same. In the event the Premises are destroyed and are untenable, the rent shall abate, and **LANDLORD** may rebuild the Premises within one hundred eighty (180) days or **TENANT** may terminate the Lease if the term of the Lease has not already

expired. In such event, the **LANDLORD** shall return **TENANT** last month rent and security deposit.

31.     **MECHANICS' LIENS PRECLUDED**. **TENANT** and all persons with whom the **TENANT** may deal, are hereby put upon notice that the **TENANT** has no power to subject **LANDLORD**'s interest to any claim for mechanics' or materialmen's liens and all persons dealing with **TENANT** must look to the credit of **TENANT** and its assets and not to **LANDLORD** or its assets.

32.     **ATTORNEYS' FEES AND COSTS**. In the event that any litigation or other dispute resolution proceeding (the proceeding) is commenced involving, arising out of, or relating to this agreement, the prevailing party shall be entitled to an award of its taxable Court costs, other related, but nontaxable costs and expenses and reasonable attorneys' fees, from the time that the proceeding is commenced, through any and all appeals, until any judgment or other final order becomes final and nonappealable. This paragraph shall apply whether the proceeding seeks a legal or an equitable remedy.

33.     **PRESUIT MEDIATION**. Prior to bring any lawsuit under this Lease, the parties hereto agree to submit any and all disputes to pre-suit mediation under the Florida Rules of Civil Procedure. Accordingly, the parties agree to strictly follow said rules and abide by any agreement made as the result of mediation. Good faith compliance with this provision shall be a condition precedent to the right of any party hereto to bring a lawsuit under this Lease. This provision shall survive termination of this Lease.

34.     **WAIVER OF JURY TRIAL**. TO THE EXTENT PERMITTED BY LAW, IT IS MUTUALLY AGREED BY AND BETWEEN LANDLORD AND TENANT THAT THE RESPECTIVE PARTIES HERETO SHALL, AND THEY DO HEREBY, WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BETWEEN THE PARTIES HERETO OR THEIR SUCCESSORS OR ASSIGNS ON ANY MATTERS ARISING OUT OF, OR IN ANY WAY CONNECTED WITH, THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT, AND/OR TENANT'S USE OF, OR OCCUPANCY OF, THE PREMISES (INCLUDING AN ACTION OR PROCEEDINGBETWEEN LANDLORD AND THE TRUSTEE OR DEBTOR IN POSSESSION WHILE TENANT IS A DEBTOR IN POSSESSION WHILE TENANT IS A DEBTOR IN A PROCEEDING UNDER ANY BANKRUPTCY LAW). THIS WAIVER IS MADE FREELY AND VOLUNTARILY, WITHOUT DURESS AND ONLY AFTER EACH OF THE PARTIES HERETO HAS HAD THE BENEFIT OF ADVICE FROM LEGAL COUNSEL ON THIS SUBJECT. **LANDLORD** and **TENANT** agree that this paragraph  constitutes  a written consent to waiver of trial by jury, and **TENANT** does hereby authorize andempower **LANDLORD** to file this paragraph and/or this Lease, as required, with the clerk or judge of any court of competent jurisdiction as a written consent to waiver of jury trial.

35.     **TRANSFER OF LANDLORD'S INTEREST**. In the event of any transfer or transfers of **LANDLORD**'s interest in the Premises or in the Commercial Units, the transferor shall be automatically relieved of any and all obligations and liabilities on the

Page **9** of **16**

part of **LANDLORD** accruing from and after the date of such transfer. All of the provisions of this Lease shall bind and inure to the benefit of the parties hereto, and their respective heirs,legal representatives, successors and assigns.

36.     **INTEREST ON PAST DUE OBLIGATIONS**. Any amount due from **TENANT** to **LANDLORD** hereunder which is not paid when due shall bear interest at the highest rate of interest allowed by law (but not to exceed eighteen percent (18%) per annum) from the date due until paid unless otherwise specifically provided herein, but the payment of such interest shall not excuse or cure any default by **TENANT** under this Lease.

37.     **MANNER OF GIVING NOTICE**. Notices given pursuant to the provisions of this Lease, or necessary to carry out its provisions, shall be in writing, and delivered personally to the person to whom the notice is to be given, or mailed postage prepaid, addressed to such person. **LANDLORD**'s address for this purpose shall be 509 NW 55th Terrace, Boca Raton, Florida 33487 or such other address as **LANDLORD** may subsequently designate to **TENANT** in writing. Notices to **TENANT** may be addressed to **TENANT** at the Premises.

38.     **EFFECT OF LANDLORD'S WAIVER**. **LANDLORD**'s waiver of breach of one covenant or condition of this Lease is not a waiver of breach of others, or of subsequent breach of the one waived.

39.     **RECORDING**. **LANDLORD** shall have the right to record this Lease or any memorandum of this Lease and, at the request of **LANDLORD, TENANT** agrees to execute a memorandum of lease, or the necessary acknowledgment required to record the Lease. **TENANT** shall not record this Lease without the prior written consent of **LANDLORD**. Any recording of the Lease by **TENANT** without first having obtained the express and prior written approval of **LANDLORD** shall be deemed to be a material breach of this Lease.

40.     **RADON GAS**. Radon gas is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, it may present health risksto persons who are exposed to it over a period of time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

41.     **BINDING EFFECT AND ENTIRE AGREEMENT**. The agreements set forth in this Lease contain the entire understanding of the parties and no modification of this Lease shall be valid unless it is set forth in writing, and is executed by all parties hereto, or their successors or assigns. The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives and assigns of the parties hereto, and all covenants are to be construed as conditions of this Lease.

42.     **RIGHT OF FIRST REFUSAL TO PURCHASE**. If at any time Landlord shall receive a bona fide written offer to purchase the Premises or any portion thereof or a direct controlling interest in Landlord's ownership (whether stock, partnership interest or

membership interests) from a third party which is not affiliated with Landlord, which offer Landlord or its ownership is willing to accept, ("Outside Contract"), Landlord shall give written notice ("Sale Notice") thereof, together with a copy of such Outside Contract, to Tenant. Tenant shall have a right of first refusal ("Refusal Right") to purchase the Premises or the controlling interest therein or the portion of Landlord's ownership interests that is subject to the Outside Contract in accordance with the terms and provisions thereof. If Tenant desires to exercise the Refusal Right, Tenant shall deliver written notice to that effect to Landlord within Twenty (20) days after receipt of the Sale Notice ("Refusal Period"). If Tenant exercised the Refusal Right by the time and in the manner set forth in this subsection, Landlord and Tenant shall promptly  execute a contract which includes the same material terms and conditions as the Outside Contract "(Sale Contract")") and Tenant shall deposit when due any earnest money deposit required thereunder. If Tenant does not execute a Sale Contract within Fifteen (15) days after Tenant's receipt of such Sale Contract from Landlord, signed on behalf of Landlord, or if Tenant defaults in its obligations under such Sale Contract, then Landlord shall be free to consummate the sale pursuant to the Outside Contract.

43. **ADDITIONAL CLAUSES**. Tenant is responsible for waste disposal and any expense related to dumpsters on the Premises. In addition, Tenant shall pay pro-rated share of any increase in insurance and real estate taxes. Such payment is due within 15 days of receipt of written bill from Landlord.

44. **TIME OF ESSENCE**. Time is of the essence of this Lease.

**EXECUTED** at _Boca Raton_, Palm Beach, Florida this _12th_ day of November, 2021.

WITNESSES:

_____
As to Landlord  Antonette Leidy

_____
As to Landlord  BRIAN LEIDY

WITNESSES:

_____
As to Tenant  MICHELE MARTIN

_____
As to Tenant  Scott CGHERMAN

LANDLORD:
5471, LLC

_____
By: Mary Lafuente
Title:

TENANT:
Auto Wholesale of Boca, LLC

_____
By: Moshe Farache
Title: Manager

Page **11** of **16**

## EXHIBIT "A"

### The Premises

A parcel of land lying in Section 5, Township 47 South, Range 43, East, Boca Raton, Palm Beach County, Florida, being more particularly described as follows:

Beginning at the intersection of the North line of the N.W. ¼ of the S.W. ¼ of the S.E. ¼ and the West right-of-way line of Old Dixie Highway; thence along the aforesaid right-of-way line of Old Dixie Highway with a curve to the right, in the southeasterly direction, having a radius of 1859.86 feet, a chord of 302.58 feet, an angle of 9 degrees 19'54" an arc distance of 302.92 feet; thence in a westerly direction with an included angle of 100 degrees 00'56" as measured from the chord of the aforesaid curve a distance of 142.70 feet to a point on the East right-of-way line, with an included angle of 81 degrees 28'00", 110.10 feet to a point; thence West parallel with an aforesaid North line, 35.65 feet to a point on the North-South ¼ line of Section 5; thence North along said ¼ line, 60.00 feet to a point; thence East parallel with the aforementioned North line 43.97 feet to a point; thence North along the right-of-way line of said railroad, 131.30 feet to a point on the aforementioned North line; thence East along the said North line 150.71 feet more or less to the Point of Beginning.

LESS AND EXCEPT THE SOUTH 100 FEET OF THE ABOVE DESCRIBED PROPERTY.

## EXHIBIT "B"

### GUARANTY

This Guaranty is made and entered into by **MOSHE FARACHE** (hereinafter referred toas "Guarantor") in favor of **5471, LLC a Florida limited liability company** (hereinafter, referred to as "LANDLORD")

### WITNESSETH:

WHEREAS, **AUTO WHOLESALE OF BOCA, LLC** ("TENANT") negotiated a Commercial Lease by and between the TENANT and the LANDLORD (the "Lease") for the Premises, as defined in the Lease; and

WHEREAS, the undersigned has induced LANDLORD to execute and deliver the Leaseby executing this Agreement as Guarantor; and

WHEREAS, Guarantor has a financial interest in TENANT and will benefit fromLANDLORD entering into the Lease with TENANT.

NOW THEREFORE, inconsideration of the execution and delivery of the Lease by LANDLORD, and for other valuable consideration, receipt of which is acknowledged by Guarantor, it is agreed as follows:

1.      Guarantor absolutely, unconditionally and irrevocably guarantees to LANDLORD and to any mortgagee holding a mortgage upon the interest of LANDLORD in the Premises, the due and punctual payment of each installment of Rent payable under the Lease, as well as the full, prompt, and complete performance by TENANT of all TENANT's covenants, conditions, and provisions in the Lease, for the full term and any extensions of the Lease including during a hold over, with no less force and effect than if the undersigned were named as TENANT in the Lease. **This Guaranty shall be absolute, continuing, and unlimited for a period of three (3) years.** Guarantor shall, on demand, pay all amounts at any time in arrears or accelerated, and will make good any and all defaults by TENANT under the Lease including but  not limited to reasonable attorney's fees and costs incurred by LANDLORD through the appellate level in connection with the enforcement of this Guaranty, whether or not suit is brought. Guarantor irrevocably appoints TENANT as its agent for service of process related to this Guaranty. Notwithstanding this provision, LANDLORD must also serve Guarantors simultaneously with service to TENANT.

2.      Guarantor does hereby further assent, covenant and agree that LANDLORD may from time to time before or after any default by TENANT under the Lease, with or without further notice or assent from Guarantor, enter into, approve or consent to the following (and this Guaranty shall remain and continue in full force and effect, notwithstanding): (a) any amendment or modification of the Lease, whether or not Guarantor has approved same and whether or not Guarantor has any knowledge of same, (b) any assignment of the rights and obligations in any other document, instrument, or writing executed in connection with the transactions contemplated under the Lease, (c) any extension or indulgence granted with respect to TENANT's payment or performance under the Lease, (d) any release, sale, surrender, impairment, exchange, substitution of any property of any nature held by or which may create a part of any security available to LANDLORD for the payment or performance of any of TENANT's obligations to LANDLORD, and (e) any settlement, release, adjustment, or compromise of any claim of LANDLORD against TENANT or any other person otherwise liable (including, without limitation, any other guarantor) for any indebtedness, liability, or obligation of TENANT guaranteed hereby, provided said change does not further obligate Guarantor beyond the scope or dollar amount contemplated by this Guaranty. In the event said change further obligates Guarantor in any way or manner, LANDLORD shall give notice of proposed change or amendment to Guarantor prior to any such change.

3.      Guarantor hereby waives: (a) demand, Presentment, notice, protest, and all suretyship defenses at law and in equity including, without limitation, waste or impairment of the collateral, if any, and notice of sale for consideration; (b) any right to have TENANT or any other guarantor, if any, joined in any suit in which LANDLORD and Guarantor are parties; (c) any right to require LANDLORD to sue TENANT on any obligations guaranteed hereby as a prerequisite to any action by LANDLORD against Guarantor; (d) any right to have Guarantor joined in any suit against TENANT and the bringing of such suit against TENANT by LANDLORD shall not waive any rights that LANDLORD may have against Guarantor pursuant to this Guaranty; (e) the lack of authority, death of disability of any other party or revocation hereof by any other guarantor or by any other party; (f) any defense arising by virtue of the failure of LANDLORD to file or enforce a claim of any kind of any defense based upon an election of remedies by LANDLORD which destroys or otherwise impairs the subrogation rights, if any, of Guarantor to proceed against TENANT for reimbursement or both; and (g) any duty on the part of LANDLORD to disclose to Guarantor any facts which LANDLORD many now or hereafter knows about TENANT, it being understood and agreed that Guarantor is fully responsible for being and keeping informed of the financial condition of TENANT and all the circumstances bearing on the risk  of nonpayment and nonperformance of any and all obligations hereby guaranteed.

4.      Any indebtedness of TENANT now or hereafter held by Guarantor is herebysubordinated to any obligations of TENANT under the Lease to LANDLORD; any such indebtedness of TENANT to Guarantor, if LANDLORD so requests, shall be collected, enforced and received by guarantor as Trustee for LANDLORD and shall be paid over to LANDLORD on

account of the indebtedness of TENANT to LANDLORD, but without reducing or affecting in anymanner the remaining liability of Guarantor under the provisions of this Guaranty.

5.      The obligations of Guarantor hereunder are independent to the obligations of TENANT and upon any default under the Lease or this Guaranty, separate action or actions may be brought and prosecuted against Guarantor whether or not action is brought against TENANT, but only after LANDLORD has reasonably complied with the notice and cure provisions set forth in the Lease. No delay on the part of LANDLORD in exercising any rights hereunder or failure to exercise same shall operate as a waiver of such rights. All of the rights, powers and remedies of LANDLORD hereunder under the Lease and any other agreement entered into between Guarantor and LANDLORD shall be cumulative and nonexclusive and shall be in addition to all rights, remedies and powers available to LANDLORD hereunder, by law or otherwise.

6.      No action or proceeding brought or instituted under this guaranty against the undersigned, and no recovery had in pursuance thereof shall be any bar or defense to any further actions or proceeding which may be brought under this Guarantyby reason of any further default or defaults of TENANT.

7.      The liability of Guarantor shall not be deemed to be waived, released, discharged, impaired or affected by reason of the release or discharge of TENANT in any creditors, receivership, bankruptcy (including Chapter X or Chapter XI bankruptcy proceedings or other reorganization proceedings under the Bankruptcy Act) or other proceedings, or the rejection or disaffirmance of the Lease in any proceedings.

8.      There shall be no modification of the provisions of this Guaranty unless the modification is in writing and signed by the undersigned and LANDLORD. All terms utilized in this Guaranty shall have the same meaning as defined in the Lease except as otherwise expressly provided.

9.      All of the terms, agreements and conditions of this Guaranty shall be joint and several, and shall extend to and be binding upon Guarantor, their heirs, executors, administrators, and assigns, and shall inure to the benefit of LANDLORD, its successors and assigns, and to any future owner of the fee of the Premises and to any mortgage on the fee interest of LANDLORD in the Premises. This Guaranty shall not be construed more strictlyby one party than the other, merely because it may have been prepared by counsel for one of the  parties, it being recognized that Guarantor has review and approved the terms hereof.

10.      In the event any provision hereof is determined to be invalid or unenforceable, the remaining provisions shall and do remain in full force and effect.

11.      Guarantor agrees that in any action or proceeding brought on, under  orby virtue of this Guaranty, the undersigned shall and does waive all present and future rights to trial by jury, and the undersigned agrees that the applicable courts of Florida may have jurisdiction over the undersigned upon appropriate service upon the undersigned in any state of the United States in a manner in accordance with the laws ofFlorida. Further, if

Guarantor is the "head of family," as defined by §222.11(2)(c), Florida Statutes, as a natural person who provides more than one-half of the support for a dependent, than Guarantor hereby voluntarily, expressly, and specifically agrees that all Guarantor's disposable earnings greater than Five Hundred Dollars ($500.00) per week may be attached or garnished to the fullest extent permitted by §222.11(2), Florida Statutes. Venue in any suit brought under this Guaranty shall be in Palm Beach County, Florida.

WITNESSES:

As to GUARANTOR  Scott C Gherman

MOSHE FARACHE, Individually
GUARANTOR

STATE OF FLORIDA          )
                                              :
ss.COUNTY OF PALM
BEACH )

I HEREBY CERTIFY that on this date before me, an Officer duly authorized in the State and County named above to take acknowledgments, personally appeared MOSHE FARACHE, personally known to me or who produced the following identification: and known to me to be the person described in and who executed the foregoing instrument individually and as Guarantor, and who acknowledged before me that he executed the foregoing instrument individually.

SWORN TO AND SUBSCRIBED before me at Boca Raty, Palm Beach County, Florida, this 11 th day of November 2021

Notary Public, State of Florida
My Commission expires:

Notary Public State of Florida
Scott C. Gherman
My Commission GG 951287
Expires 01/27/2024