**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PALM BEACH DIVISION**
www.flsb.uscourts.gov

In Re:

AUTO WHOLESALE OF BOCA, LLC,                    Case No.: 22-15627-EPK

     Debtor.

_____/

## <u>NOTICE OF FILING</u>
## (EXHIBIT A TO FVP'S SUPPLEMENT/AMENDMENT AT CP # 732)

     **COME NOW** FVP Opportunity Fund III, LP, a Delaware limited partnership (the "FVP Fund"), FVP Investments LLC, a Delaware limited liability company ("FVP Investments"), and FVP Servicing, LLC, a Delaware limited liability company ("FVP Servicing") (collectively, "FVP"), by and through their undersigned counsel and file the attached "red line" of the "First Amended Complaint" which was intended to be attached to the Supplement/Amendment filed at CP # 732) (only the "black line" was attached).

<u>For FVP</u>

| | |
|---|---|
| Jerrell A. Breslin, Esq.<br>Jonathan Noah Schwartz, Esq.<br>Schwartz Breslin PLLC<br>The DuPont Building<br>169 East Flagler Street, #700<br>Miami, Florida 33131<br>Phone: (305) 577-4626<br>E-mail:  JB@JSJB.Law<br>EService@JSJB.law<br><br>By:    s/ Jerrell Breslin<br>Jerrell Breslin, Esq.<br>Fla Bar No: 269573 | David Softness, Esq.<br>David R. Softness, P.A.<br>201 S. Biscayne Blvd., Ste 2740<br>Miami, Florida 33131<br>Phone: (305) 341-3111<br>E-mail:david@softnesslaw.com |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the following parties were served with the foregoing electronic service via EM/ECF and by email: Chapter 7 Trustee by serving Michael R Bakst, efilemrb@gmlaw.com, ecf.alert+Bakst@titlexi.com; efileu1084@gmlaw.com; efileu1086@gmlaw.com; efileu386@gmlaw.com; efileu1857@gmlaw.com; efileu3163@gmlaw.com; efileu3214@gmlaw.com; efileu3291@gmlaw.com; upon Nicole Testa Mehdipour at Nicole.Mehdipour@ntmlawfirm.com; upon counsel for Nicole Testa Mehdipour by serving Alan R. Crane, Esq. at acrane@furrcohen.com and Jason Rigoli, Esq. at jrigoli@furrcohen.com; Wing Lake Capital Partners f/k/a Franklin Capital Group, LLC by serving Bradley Shraiberg, Esq. at bss@lpplaw and Pat Dorsey, Esq. at pdorsey@slp.law; upon Karma of Broward, Inc. and Karma of Palm Beach, Inc. by serving Harry Winderman, Esq. at harry4334@hotmail.com; upon Ed Brown by serving Brett Marks, Esq., at brett.marks@akerman.com  and Amanda Klopp, Esq., at amanda.klopp@akerman.com  and Eyal Berger, Esq., at eyal.berger@akerman.com; and upon Hi Bar by serving Steven Wells at Steve@wellspc.com Jason DeJonker, Esq. at Jason.DeJonnker@bclplaw.com Jarret Hitchings, Esq. at jarret.hitchings@bclplaw.com David Unseth, Esq. at dmunseth@bclplaw.com; upon Derek Stephens by serving Cory Mauro, Esq. at cory.mauro@maurolaw.com upon Moishe, Lisa and Chase Farache by serving Scott Gherman, Esq. at Sgherman@Scottghermanpa.Com and upon Michael Halperin by serving Phil Landau, Esq. at phil@landaulaw.com and upon and upon Benidt Investments by serving Patricia Redmond, Esq. at predmond@swmwas.com.


/ s/ Jerrell Breslin
Jerrell Breslin, Esq

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE-22-05125

FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership; FVP INVESTMENTS, LLC, a Delaware limited liability company; and FVP SERVICING, LLC, a Delaware limited liability company,

     Plaintiffs,

vs.

KARMA OF BROWARD, INC., a Florida corporation; KARMA OF PALM BEACH, INC., a Florida corporation; SCOTT ZANKL, an individual; KRISTEN ZANKL, an individual; MOSHE FARACHE, an individual; LISA FARACHE, an individual; CHASE FARACHE, an individual; 1001 CLINT MOORE, LLC, a Florida limited liability company; MMS ULTIMATE SERVICES, INC., a Florida profit corporation; HI BAR CAPITAL, LLC, a New York limited liability company; AVRUMI LUBIN a/k/a JOSH LUBIN, an individual; GRANER LAW GROUP, P.A., a Florida profit corporation d/b/a GRANER PLATZEK & ALLISON, P.A.; THOMAS U. GRANER, an individual; KURKIN FOREHAND BRANDES LLP, a Florida limited liability partnership; MARK BRANDES, an individual; SAVANNAH ROW DEVELOPMENT COMPANY, LLC, a Florida limited liability company; VANTIFF LLC, a Florida limited liability company; 22 CAPITAL INC., a New York corporation; LILLIAN ROBERTS, an individual; DCG 2008 IRREVOCABLE WEALTH TRUST, KENNETH J. GOODMAN, TRUSTEE; JMD ENTERPRISES OF FLORIDA LLC, a Florida limited liability company; FRANKLIN CAPITAL FUNDING, LLC, a Delaware limited liability company; THE GORI FAMILY LIMITED PARTNERSHIP, a Florida limited partnership; MILLCO-ATWATER, LLC, an Illinois limited liability company; and PRIME AUTO CONSULTING LLC, a New Jersey limited liability company,

     Defendants.

_____/

**FIRST AMENDED COMPLAINT**
**JURY TRIAL DEMANDED IN COUNTS I THROUGH XIX AND XXIX**

COME NOW the Plaintiffs, FVP Opportunity Fund III, LP, a Delaware limited partnership (the "FVP Fund"), FVP Investments LLC, a Delaware limited liability company ("FVP Investments"), and FVP Servicing, LLC, a Delaware limited liability company ("FVP Servicing") (collectively, the FVP Fund, FVP Investments and FVP Servicing are the "Plaintiffs" or the "FVP Parties"), by and through their undersigned counsel, and sue the Defendants, Karma of Broward, Inc., a Florida corporation ("Karma of Broward"); Karma of Palm Beach, Inc., a Florida corporation ("Karma of Palm Beach") (collectively, Karma of Broward and Karma of Palm Beach are the "Karma Entities"); Scott Zankl, an individual ("Scott Zankl"); Kristen Zankl, an individual ("Kristen Zankl") (collectively, Scott Zankl and Kristen Zankl are the "Zankls"); Moshe Farache, an individual ("Moshe Farache"); Lisa Farache, an individual ("Lisa Farache"); Chase Farache, an individual ("Chase Farache"); 1001 Clint Moore, LLC, a Florida limited liability company ("1001 Clint Moore"); MMS Ultimate Services, Inc., a Florida profit corporation ("MMS"); Hi Bar Capital, LLC, a New York limited liability company ("Hi Bar"); Avrumi Lubin a/k/a Josh Lubin, an individual ("Lubin" or "Josh Lubin"); Graner Law Group, PA, a Florida profit corporation d/b/a Graner Platzek & Allison, P.A. (the "Graner Law Group"); Thomas U. Graner, an individual ("Graner"); Kurkin Forehand Brandes LLP, a Florida limited liability partnership (the "Brandes Firm"); Marc Brandes, an individual ("Brandes") (collectively, the Karma Entities, the Zankls, Farache, Lisa Farache, Chase Farache, 1001 Clint Moore, MMS, Hi Bar, Lubin, the Graner Law Group, Graner, the Brandes Firm and Brandes are the "Part I Defendants").

The FVP Parties sue the Part I Defendants for monetary damages and equitable relief, and demand a trial by jury on Counts I through XIX in Part I of this First Amended Complaint as demanding a trial by jury.

In Part II of this First Amended Complaint, the FVP Parties sue the Karma Entities, the Zankls, Hi Bar and Franklin (the "Part II Defendants") for foreclosure of security interests, and the Karma Entities and the Zankls for various contractual claims as pled *infra* within Part II.

In Part III of this First Amended Complaint, the FVP Parties sue Graner, the Graner Law Group, Savannah Row Development Company, LLC, a Florida limited liability company ("Savannah Row"), Vantiff LLC, a Florida limited liability company ("Vantiff"), 22 Capital Inc., a New York corporation ("22 Capital"); Lillian Roberts, an individual ("Roberts"); DCG 2008

Irrevocable Wealth Trust, Kenneth J. Goodman, Trustee (the "DCG Trust"); JMD Enterprises of Florida, LLC, a Florida limited liability company ("JMD"); ~~Franklin Capital Funding, LLC, a Delaware limited liability company ("Franklin");~~ The Gori Family Limited Partnership, a Florida limited partnership ("Gori"); Millco-Atwater, LLC, an Illinois limited liability company ("Millco"); and Prime Auto Consulting LLC, a New Jersey limited liability company ("Prime") (collectively, Graner, the Graner Law Group, Savannah Row, Vantiff, 22 Capital, Roberts, the DCG Trust, JMD, Franklin, Gori, Millco and Prime are the "Part III Defendants" or the "Fraudulent Transfer Defendants") to recover fraudulent transfers under Florida's Uniform Fraudulent Transfer Act.

The FVP Parties would state as follows:

### Introduction

1.      This is, *inter alia*, an action for monetary damages brought on behalf of the FVP Parties against, *inter alia*, the Part I Defendants, as outlined *infra*, who have engaged in illegal acts, including, *inter alia*, fraud in the inducement and other tortious conduct which induced the FVP Parties, and as the result of that inducement, the FVP Parties loaned Seven Million Five Hundred Thousand Dollars ($7,500,000.00) to the Zankls and the Karma Entities (the "FVP Loan") and after the loan committed other torts as pled herein. Part II brings claims on the FVP Loan documents, themselves; and Part III brings fraudulent transfer claims.

2.      The FVP Parties made the FVP Loan because the FVP Parties were led to believe that the FVP Loan was fully secured by the inventory and assets of the Karma Entities. The FVP Parties were led to believe this by, *inter alia*, intentional and material misrepresentations by Defendants Lubin, Hi Bar, Moshe Farache, Lisa Farache, 1001 Clint Moore and other aiders and abettors and co-conspirators.

3.      The FVP Parties loaned the Zankls and the Karma Entities the FVP Loan pursuant to certain loan documents executed on or about January 26, 2022.  The FVP Loan was fully funded by February 18, 2022 and the FVP Parties believed that it was fully secured by defined collateral. By April 1, 2022, the FVP Loan proceeds and all of the collateral represented to secure it was gone.

4.      By this action, *inter alia*, the FVP Parties seek to recover their damages against Defendant Hi Bar and its principals and co-conspirators who perpetrated a scheme to defraud the FVP Parties by taking actions and making representations that would, and did, lead the FVP Parties

into believing that they would have a first priority security interest in the Karma Entities' collateral, while intentionally hiding their interests and surreptitiously filing a financing statement at the proverbial eleventh hour – literally in the dead of night on the eve of the FVP Parties' closing the FVP Loan with the Karma Entities so that the FVP Parties would not be aware of the filing when the loan to the Karma Entities was funded – to attempt to fraudulently gain a priority interest in the collateral intended and represented to secure the FVP Loan.

5. By this action, *inter alia*, the FVP Parties also seek to recover their damages against Defendant Moshe Farache, in his individual capacity and as a co-conspirator ~~as well as in his individual capacity through piercing the corporate veil of non-party Auto Wholesale of Boca LLC~~; Lisa Farache, in her individual capacity as a co-conspirator as well as in her individual capacity through piercing the corporate veil of Defendant 1001 Clint Moore ~~and non-party Auto Wholesale of Boca LLC; 1001 Clint Moore~~; and other aiders and abettors and co-conspirators, known and unknown, who engaged in a scheme to defraud the FVP Parties by inducing the FVP Parties into believing that the FVP Loan to the Karma Entities would be used for the purposes stated in the loan documents, when, in fact, they conspired and schemed to divert the FVP Loan proceeds to their personal accounts.

6. In furtherance of the scheme, in or around January of 2022 Defendants Moshe Farache, Lisa Farache, 1001 Clint Moore, and others conspired to convince the FVP Parties to fund the loan by representing that the FVP Parties would have access to their loan collateral at the Karma Entities' business located at 1001 Clint Moore Road, Boca Raton, FL 33487, when they knew full well that the representation was materially false.

7. In furtherance of the scheme, in or around January of 2022 Moshe Farache, Lisa Farache, MMS and other aiders and abettors and co-conspirators conspired to convince the FVP Parties that the FVP Loan proceeds would not be diverted to 1001 Clint Moore, or any of the members of 1001 Clint Moore for their own business or personal accounts. *See* **Exhibit W**. This statement was premeditated and intentionally and materially false as Defendants Moshe Farache, Lisa Farache, 1001 Clint Moore, MMS and other aiders and abettors and co-conspirators knew full well that the FVP Loan proceeds were to be diverted to the benefit of MMS and 1001 Clint Moore to repay prior debt completely unrelated to the FVP Loan. The knowledge of the conspirators is indisputable because Defendant Moshe Farache demanded a document from the Zankls assuring Defendant Moshe Farache that the FVP Loan proceeds would be diverted from their intended

purpose. *See* **Exhibit DD**.

8.    By this action, *inter alia*, the FVP Parties also seek to recover their damages against Defendants Moshe Farache and Lisa Farache for engaging in a separate scheme to defraud the FVP Parties after the loan was funded by engaging in fraudulent transactions regarding the Plaintiffs' collateral and then outright converting the FVP Parties' collateral.

9.    As pled herein, this lawsuit brought by the FVP Parties seeks to recover the damages suffered by the FVP Parties at the hands of multiple tortfeasors and bad actors.

### INCORPORATION OF EXHIBITS BY REFERENCE

To the extent that any exhibits referenced or otherwise relied upon herein are not attached hereto, the FVP Parties, pursuant to Fla. R. Civ. P. 1.130(a), hereby expressly adopt and incorporate those exhibits (collectively, the "Exhibits of Record"), as identified herein, filed of record by the FVP Parties in this action, and identified as exhibits filed in support of relief sought by the FVP Parties at the time of their filing, from the date of the filing of the original Complaint in this action on April 10, 2022 through July 21, 2022 as if fully re-pled herein and attached hereto for all purposes. Such Exhibits of Record will be identified by date and filing number.

### Jurisdiction, Venue and Parties

10.    This is an action brought by the FVP Parties against the Part I Defendants, the Part II Defendants, and the Part III Defendants to recover money damages for claims whose values exceed Fifty Thousand Dollars ($50,000.00), exclusive of attorney's fees and costs, as well as for equitable relief as pled herein.

*A.    The Plaintiffs.*

11.    At all times material hereto, Plaintiff the FVP Fund was and is a Delaware limited partnership with its principal place of business in New York County, New York.

12.    At all times material hereto, Plaintiff FVP Investments was and is a Delaware limited liability company with its principal place of business in New York County, New York.

13.    At all times material hereto, Plaintiff FVP Servicing was and is a Delaware limited liability company with its principal place of business in New York County, New York.

*B.    The Part I Defendants and the Part II Defendants.*

14. At all times material hereto, Defendant Karma of Broward was and is a Florida corporation with its principal place of business in Broward County, Florida, and is otherwise *sui juris*.

15. At all times material hereto, Defendant Karma of Palm Beach was and is a Florida corporation with its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*.

16. At all times material hereto, Defendant Scott Zankl was and is an individual residing in Palm Beach County, Florida, and is otherwise *sui juris*.

17. At all times material hereto, Defendant Kristen Zankl was and is an individual residing in Palm Beach County, Florida, and is otherwise *sui juris*.

18. At all times material hereto, Defendant Moshe Farache was and is an individual residing in Palm Beach County, Florida, and is otherwise *sui juris*. Moshe Farache is sued in his individual capacity as a co-conspirator, and for individual torts ~~through piercing the corporate veil~~ as pled *infra*.

19. At all times material hereto, Defendant Lisa Farache was and is an individual residing in Palm Beach County, Florida, and is otherwise *sui juris*. Lisa Farache is sued in her individual capacity as a co-conspirator, as well as in her individual capacity as the manager of 1001 Clint Moore through piercing the corporate veil as pled *infra*.

20. At all times material hereto, Defendant Chase Farache was and is an individual residing in Palm Beach County, Florida, and is otherwise *sui juris*. Chase Farache is sued solely in his individual capacity.

21. At all times material hereto, Defendant 1001 Clint Moore was and is a Florida limited liability company with its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*.

22. At all times material hereto, Defendant MMS was and is a Florida profit corporation with its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*. At all times material hereto, Moshe Farache was authorized to, and did, act for and on behalf of MMS as its authorized representative. Indeed, Moshe Farache and MMS filed a joint proof of claim on June 27, 2022, numbered Claim 54-2, in the United States Bankruptcy Court in and for the Southern District of Florida, case number 22-12790-EPK,

for a joint debt; and the liability of MMS as pled in this First Amended Complaint is based on the acts and representations of Moshe Farache.

23. At all times material hereto, non-party Excell Auto Sport and Service, Inc., a Florida corporation ("Excell Auto"), was and is a Florida corporation with its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*. Defendant Moshe Farache is the President of Excell Auto, and Defendant Scott Zankl is the Vice President of Defendant Excell Auto.

24. At all times material hereto, Defendant Hi Bar was and is a New York limited liability company doing business in Broward County, Florida, and is otherwise *sui juris*.

25. At all times material hereto, non-party Spin Capital, LLC was and is a New York limited liability company ("Spin") doing business in Broward County, Florida, and is otherwise *sui juris*. The FVP Parties reserve the right to add Spin as a party defendant upon proper filing.

26. At all times material hereto, Defendant Lubin was and is an individual residing in the State of New York and in Miami-Dade County, Florida and is otherwise *sui juris*.

27. At all times material hereto, non-party Steven Zakharyayev ("Zakharyayev") was and is an individual licensed to practice law in the State of Florida and in the state of New York, and having a principal office in New York, New York, and is otherwise *sui juris*. The FVP Parties reserve the right to add Zakharyayev as a party defendant upon proper filing.

28. At all times material hereto, the Graner Law Group was and is a Florida profit corporation with its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*.

29. At all times material hereto, Graner was and is an individual licensed to practice law in the State of Florida and having a principal office in Palm Beach County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*.

30. At all times material hereto, Brandes was and is an individual licensed to practice law in the State of Florida and having a principal office in Miami-Dade County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*.

31. At all times material hereto, the Brandes Firm was and is a Florida limited liability partnership with its principal place of business in Miami-Dade County, Florida, and doing business

in Broward County, Florida, and is otherwise *sui juris*.

32.   Non-party Auto Wholesale of Boca, LLC, a Florida limited liability company ("AWB"), is no longer operational and is in Chapter 7 Bankruptcy in case number 22-12790-EPK in the United States Bankruptcy Court in and for the Southern District of Florida (the "AWB Bankruptcy"). No claims are raised herein against AWB, and AWB is named for informational purposes only. At all times material to the claims raised in this First Amended Complaint, AWB was managed by its principals Defendant Moshe Farache and Defendant Lisa Farache.

C.   *The Fraudulent Transfer Defendants.*

33. 32.  Graner and the Graner Law Group, also included as Defendants in Part I, were and are as expressly pled *supra*.

34. 33.  At all times material hereto, Defendant Roberts was and is an individual residing in Palm Beach County, Florida, and is otherwise *sui juris*.

35. 34.  At all times material hereto, Defendant Franklin, upon information and belief, was the servicing agent or assignee of that certain debt now held by Franklin, as pled herein. Franklin was the beneficiary of the fraudulent transfers outlined in this First Amended Complaint. Franklin Capital Funding was f/k/a Wing Lake Partners, f/k/a Franklin Capital Group, and is a Delaware limited liability company doing business in Broward County, Florida and is otherwise *sui juris*.

36. 35.  At all times material hereto, Defendant Savannah was and is a Florida limited liability company with its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*.

37. 36.  At all times material hereto, Defendant Vantiff was and is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*. The FVP Parties reserve the right to add its principal, Warren Fellus, personally as a named party after discovery.

38. 37.  At all times material hereto, Defendant 22 Capital was and is a New York corporation doing business in Broward County, Florida, and is otherwise *sui juris*.

39. 38.  At all times material hereto, Defendant Prime was and is a New Jersey limited liability company doing business in Broward County, Florida, and is otherwise *sui juris*.

40. 39.  At all times material hereto, Defendant DCG 2008 Irrevocable Wealth Trust,

Kenneth J. Goodman, Trustee, ("DCG 2008 Trust") was and is a trust formed under the Florida Trust Code and doing business in Broward County, Florida, and is otherwise *sui juris.*

41.40.  At all times material hereto, Defendant JMD was and is a Florida limited liability company with its principal place of business in Palm Beach County, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*.

42.41.  At all times material hereto, Defendant Gori was and is a partnership existing under the laws of Florida with its principal place of business in Pompano Beach, Florida, and doing business in Broward County, Florida, and is otherwise *sui juris*.

43.42.  At all times material hereto, Defendant Millco was and is an Illinois limited liability company with its principal place of business in Chicago, Illinois, and doing business in Broward County, Florida, and is otherwise *sui juris*.

44.43.  At all times material hereto, Defendant Prime was and is a New Jersey limited liability company with its principal place of business in New Jersey, and doing business in Broward County, Florida, and is otherwise *sui juris*.

PIERCING THE CORPORATE VEIL OF HI BAR<br>THROUGH THE ACTS OF ITS PRINCIPALS AND OWNERS

45.44.  Spin is not named as a defendant or a party of interest in this action; rather, it  is named for informational and identification purposes only at this time.

46.45.  Defendant Lubin, at all times material hereto, acted for Hi Bar in his individual capacity; and for the acts and conduct alleged herein, the acts of Hi Bar and the acts of Lubin were identical.

47.46.  At all times outlined *infra* in this First Amended Complaint, all acts of Lubin as alleged herein as being done under the guise of acting for and on behalf of Hi Bar were done for Defendant Lubin, individually, and were done for an illegal or illicit purpose.

48.47.  The corporate identity of Hi Bar was used by Defendant Lubin to accomplish some ulterior purpose, to evade some statute or to accomplish some fraud, and was used as part of the enticement to the FVP Parties to fund the FVP Loan identified herein to the Zankls and the Karma Entities, while Lubin and Hi Bar plotted and schemed to receive the beneficial interest to the inventory purchased with the Plaintiffs' FVP Loan.

49.48.  At all material times outlined in this First Amended Complaint, Lubin, and only Lubin, spoke for and represented himself to Scott Zankl to be the owner and controller of Hi Bar. During the pendency of bankruptcy proceedings, including the AWB Bankruptcy, Lubin has continued to do so. *See, e.g.*, **Exhibit HH**.

50.49.  Defendant Lubin used Hi Bar for fraudulent or misleading purposes, particularly to creditors and in particular to the FVP Parties as creditors. At all times as outlined in this First Amended Complaint, the FVP Parties were defrauded creditors.

51.50.  Defendant Lubin dominated and controlled Hi Bar to such an extent that Hi Bar's independent existence was, in fact, non-existent, and Defendant Lubin was, in fact, an alter ego of Hi Bar.

52.51.  The corporate form of Hi Bar was used fraudulently or for an improper purpose by Defendant Lubin to the harm of the FVP Parties, and which caused injury and damages to the FVP Parties.

PIERCING THE CORPORATE VEIL OF 1001 CLINT MOORE
THROUGH THE ACT OF ITS OWNER

53.52.  This First Amended Complaint seeks damages against Defendant Lisa Farache as the manager and owner of 1001 Clint Moore through piercing the corporate veil of 1001 Clint Moore. This First Amended Complaint also sues Defendant Lisa Farache in her individual capacity as a co-conspirator with Defendant Moshe Farache, as well as with non-parties Michelle Martin and other aiders, abettors and co-conspirators, as alleged *infra*.

54.53.  During the time periods outlined in this First Amended Complaint, the acts of Defendant Lisa Farache, as alleged herein under the guise of acting for and on behalf of Defendant 1001 Clint Moore, were, in fact, done for Defendant Lisa Farache, individually, and were done for an illegal or illicit purpose.

55.54.  The corporate identity of 1001 Clint Moore was falsely and illegally used by Defendant Lisa Farache to accomplish some ulterior purpose, to evade some statute or to accomplish some fraud, and was used as part of the enticement to the FVP Parties to make the FVP Loan to the Zankls and the Karma Entities so that Defendants Lisa Farache and 1001 Clint Moore could divert the FVP Loan proceeds to their personal and corporate accounts.

56.55.  Defendant Lisa Farache dominated and controlled Defendant 1001 Clint Moore to

such an extent that Defendant 1001 Clint Moore's independent existence was, in fact, non-existent and Defendant Lisa Farache was, in fact, an alter ego of Defendant 1001 Clint Moore.

57.56. The corporate form of Defendant 1001 Clint Moore was used fraudulently or for an improper purpose by Defendant Lisa Farache to the harm, injury and damage of the FVP Parties.

PIERCING THE CORPORATE VEIL OF AUTO WHOLESALE OF BOCA, LLC
THROUGH THE ACTS OF ITS OWNERS

58. AWB is not named in this First Amended Complaint as a defendant or a party of interest, and is named for identification and informational purposes only.

59. This First Amended Complaint does not bring claims against and does not address any property, funds, matters or interests that remain of AWB as debtor, over which jurisdiction lies exclusively in the United States Bankruptcy Court in and for the Southern District of Florida, and rather this First Amended Complaint addresses only claims over interests that have been disclaimed.

60. This First Amended Complaint seeks damages against Defendant Moshe Farache and Defendant Lisa Farache solely in their individual capacity.

61. During the time periods outlined in this First Amended Complaint, the acts of Defendant Moshe Farache and Defendant Lisa Farache as alleged herein under the guise of acting for and on behalf of AWB were, in fact, done for Defendant Moshe Farache and Defendant Lisa Farache, individually, and were done for an illegal or illicit purpose.

62. The corporate identity of AWB was falsely and illegally used by Defendant Moshe Farache and Defendant Lisa Farache to accomplish some ulterior purpose, evade some statute or to accomplish some fraud, and used as part of the enticement to the FVP Parties to make the FVP Loan to the Zankls and the Karma Entities so that Defendant Moshe Farache and Defendant Lisa Farache could convert the property purchased with the FVP Loan proceeds to their individual accounts and fraudulently transfer the proceeds or otherwise convert the collateral securing the FVP Loan.

63. Defendant Moshe Farache and Defendant Lisa Farache dominated and controlled AWB to such an extent that AWB was, in fact, non-existent, and Defendant Moshe Farache and Defendant Lisa Farache were, in fact, alter egos of AWB.

64. The corporate form of AWB was used fraudulently or for an improper purpose by

Defendant Moshe Farache and Defendant Lisa Farache to the harm, injury and damage of the FVP Parties.

VENUE AND JURISDICTION

65.57. Venue is proper in this Court as the Zankls own and operate Defendant Karma of Broward, whose principal address is 1717 SE 17th Street, Fort Lauderdale, FL 33316, and which is located within Florida's Seventeenth Judicial Circuit in and for Broward County, Florida and one or more of the Defendants reside in Broward County, Florida.

66.58. Jurisdiction is proper in this Court because all named defendants either reside in or operate, conduct, engage in or carry-on businesses or business ventures in the State of Florida, or otherwise have committed tortious acts within the State of Florida, and engaged in substantial, not isolated and continuous contacts within Florida. Jurisdiction is further proper in this Court because any remaining portion of the FVP Parties' collateral or the funds derived from the sale of the collateral is located within the State of Florida.

**Factual Allegations Common to All Counts**

A.   THE LUBIN / HI BAR FRAUD PERPETRATED ON THE FVP PARTIES.

    a.   BACKGROUND.

67.59. Non-party Spin is a New York limited liability company. Lubin is the president and controlling principal of Spin.

68.60. Hi Bar is an affiliate of Spin with Lubin, the principal of Spin, negotiating for and speaking for Hi Bar for all purposes at all times outlined in this First Amended Complaint.

69.61. No person other than Lubin made statements for, or demands by, Hi Bar other than Lubin to Scott Zankl for the entire time period outlined in this First Amended Complaint [hereinafter, this "Complaint").

70.62. Hi Bar and Spin are both merchant cash advance companies ("MCAs"), which are controlled by Lubin.

71.63. Non-party Zakharyayev acted at the instruction of Lubin for both Spin and Hi Bar.

72.64. In or around August of 2021, Spin entered into a usurious loan agreement with the Zankls, the Karma Entities and other companies, which Spin entitled a "Revenue Purchase

Agreement." *See* **Composite Exhibit A** [hereinafter, the "Hi Bar / Zankl Transaction Documents")].

73.65.  To understand the onerous nature of the Spin financing, as is seen in the Hi Bar / Zankl Transaction Documents, the Zankls were offered the early payment benefit of only paying Four Hundred Thousand Dollars ($400,000) in interest on the  Two Million Dollar ($2,000,000) loan if the loan was paid off in 45 days – an interest rate of One Hundred Sixty Percent (160%).

74.66.  In or around September of 2021, Scott Zankl, on behalf of non-party EAG, named herein for background and informational purposes only, entered into communications with Franklin, then known as "Wing Lake," to borrow money to pay off the aforementioned MCA loan that EAG and the Karma Entities had with Spin and two other MCAs.

75.67.  Franklin advised Scott Zankl that it would fund a loan to pay off the other two MCA loans only if the Spin MCA loan was satisfied, removed or otherwise declared by Spin to be paid off.

76.68.  In response, Scott Zankl had extensive conversations with Lubin, the principal of Spin, about the fact that Scott Zankl would not be able to borrow the money from Franklin without Spin's MCA loan being paid off.

77.69.  Lubin advised Scott Zankl that he would arrange to shift the debt owed to Spin to another company that Lubin controlled named Hi Bar. At all times material hereto, all of Scott Zankl's communications with both Spin and Hi Bar were with Lubin.

78.70.  In or around October of 2021, Scott Zankl and Lubin agreed that Hi Bar would take over the Spin debt and that Scott Zankl and his companies, EAG and the Karma Entities, would then only have a debt to Hi Bar, so that it would appear to Franklin that the Spin debt was satisfied.

79.71.  On October 27, 2021, the Zankls, on behalf of EAG and the Karma Entities, executed transaction documents with Hi Bar. *See* **Composite Exhibit A** (providing the Hi Bar / Zankl Transaction Documents).

80.72.  At the time of the execution of the Hi Bar / Zankl Transaction Documents, Scott Zankl and his companies, EAG and the Karma Entities, were in full compliance with the terms and conditions of the Spin loan documents.

81.73.  Nonetheless, the Hi Bar / Zankl Transaction Documents substantially increased the

debt owed by the Zankls, EAG and the Karma Entities by approximately One Million Dollars ($1,000,000.00) for no reason.

82.74.  No money was paid by Hi Bar to Spin for any purported satisfaction, payoff or refinance; and no money was paid to the Zankls, EAG or any of the Zankls' companies, including the Karma Entities, for the increased debt.

83.75.  In sum, Hi Bar paid no consideration whatsoever for its imaginary multimillion dollar "merchant advance" "receivables purchase" contract with EAG and the Karma Entities.

84.76.  It is asserted that the Hi Bar / Zankl Transaction Documents were intentionally created by Lubin and Hi Bar for the express purpose of perpetrating a fraud on Franklin and future creditors of the Karma Entities, such as the FVP Parties who were then an anticipated future creditor of the Karma Entities.

85.77.  In response to this paperwork, Lubin and Spin notified Franklin that Spin no longer had any sums owed to it by EAG and the Karma Entities, but intentionally and fraudulently withheld the fact that Spin had merely rebranded the debt in the name of Hi Bar.

86.78.  Based on this misrepresentation, Franklin entered into a loan facility with EAG and the Karma Entities.

87.79.  As part of the EAG / Franklin loan transaction documents, Lubin, for Spin, executed an Assignment Agreement in which Spin represented that Spin had no rights to any sums from the Zankls and the Zankls' companies.

88.80.  This was a materially false statement by Lubin, as Spin and Hi Bar were interchangeable given that Lubin acted for both Spin and Hi Bar, and that the Hi Bar debt was, in fact, Spin debt.

89.81.  Lubin, Spin and Hi Bar, and others known and unknown to the FVP Parties, colluded and conspired to defraud Franklin, as the Hi Bar debt, which was *de facto* the Spin debt, was hidden from Franklin. As such, Franklin was intentionally defrauded by both Spin and Hi Bar.

90.82.  Further, Lubin materially misled Franklin into entering into the loan agreements in the first instance by materially misrepresenting that the Spin debt was satisfied, when it was simply relabeled as Hi Bar debt with a jointly controlled company.

    b.  THE HI BAR / ZANKL TRANSACTION DOCUMENTS PROHIBITED SCOTT ZANKL FROM

ENTERING INTO ANY THIRD PARTY FINANCING WITH SECURITY AGREEMENTS RELATED TO THE KARMA ENTITIES' INVENTORY ABSENT HI BAR'S WRITTEN CONSENT.

91.83.  The Hi Bar / Zankl Transaction Documents expressly granted Hi Bar a security interest in the Karma Entities' inventory.

"Merchant will obtain from HBC written consent prior to granting a security interest of any kind in the Secured Assets to a Third Party."

"Merchant and Guarantor(s) agree to execute and deliver to HBC such instruments and documents HBC may reasonably request to perfect and confirm the lien, security interest and right to set off in this agreement. HBC is authorized to execute all such instruments and documents in Merchant's and Guarantor's name."

"Merchant and Guarantor(s) each hereby authorizes HBC to file any financing statements deemed necessary by HBC to perfect or maintain HBC's security interest. Merchant and Guarantor(s)(s) shall be liable for, and HBC may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by HBC in protecting, preserving and enforcing HBC's security interests and rights."

"Merchant and Guarantor(s) each agree not to create or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or Additional Collateral."

**Composite Exhibit A** (providing the Hi Bar Security Agreement).

92.84.  Therefore, the Hi Bar / Zankl Transaction Documents made clear that the Zankls and the Karma Entities could not enter into any financing agreement with any of the FVP Parties without Hi Bar's express written consent.

c.   THE LUBIN / HI BAR FRAUDULENT CONDUCT CONTINUES AND EXTENDS TO THE FVP PARTIES.

93.85.  Shortly after the Hi Bar / Zankl transaction and the Zankl / Franklin transaction were signed, Scott Zankl engaged the FVP Parties in communications regarding a loan from the FVP Parties to the Karma Entities.

94.86.  To that end, through November and December of 2021, Scott Zankl had detailed conversations with the FVP Parties about a Seven Million Five Hundred Thousand Dollar ($7,500,000) loan from the FVP Parties to the Zankls and the Karma Entities which would be fully collateralized by the existing and future inventory of the Karma Entities. It was understood and agreed that the rights of the FVP Parties would specifically not include any collateral or security interests in non-party EAG.

95.87. The Hi Bar / Zankl Transaction Documents, as quoted *supra* from **Composite Exhibit A**, granted Hi Bar a security interest and lien, and contemplated filing a UCC statement and, indeed, charged the Zankls for the filing of same, and expressly stated that the Zankls could not enter into another security transaction with anyone, including the FVP Parties, without Hi Bar's written consent.

96.88. Notwithstanding the fact that Hi Bar was authorized to file any documents on behalf of the Karma Entities to perfect its security interest, or otherwise to file a UCC financing statement on October 27, 2021 to give notice of its security interests and lien to any future lenders, Hi Bar did not do so.

97.89. The decision of Hi Bar not to file a financing statement was intentional and part of a scheme and artifice to defraud.

98.90. It was Hi Bar's intent to maintain the fraud against Franklin hidden as long as possible, and to commit further fraud against the FVP Parties or other lenders who Lubin was aware may loan funds to the Zankls and the Karma Entities in the near future so that those funds could be paid to Lubin and Hi Bar under the illegal loan transaction guised as a revenue purchase.

99.91. By the beginning of December of 2021, the Zankls and the Karma Entities were, unsurprisingly, already in arrears on the Hi Bar loan. At that same time, Scott Zankl had ongoing conversations with Lubin regarding the FVP Parties' prospective loan. Lubin was fully aware that the FVP Parties were unaware of the Hi Bar debt as Hi Bar intentionally did not file a UCC for that purpose. Lubin specifically requested that Scott Zankl let him know when the FVP Parties' loan was going be funded and told Scott Zankl to forward all of the FVP Parties' loan documents to Lubin for his review.

100.92. It was Lubin's and Hi Bar's intent in making this request to have Scott Zankl secure the FVP Parties' loan without the FVP Parties knowing about the Hi Bar loan so that the FVP Parties would make the loan without being aware of the Hi Bar loan. It was Lubin's and Hi Bar's intent that upon the Karma Entities receiving the FVP Parties' loan proceeds, the Zankls would pay a substantial part of the proceeds of the Plaintiffs' FVP Loan to Hi Bar to satisfy its illegal and usurious loan.

101.93. As instructed, Scott Zankl kept Lubin informed of the progress; and on or about December 15, 2021, Scott Zankl advised Lubin that he would be imminently closing the FVP

Loan with the FVP Parties.

102.94.        In response to this information, and in anticipation of the FVP Parties' loan closing and funding, Lubin instructed either non-party Zakharyayev, or another of his agents, to file a UCC Financing Statement for Hi Bar on EAG and the Karma Entities. This first Hi Bar UCC Financing Statement was filed on December 15, 2021. **Exhibit B**. Lubin caused this Hi Bar UCC to be filed on that date because Lubin believed that the FVP Parties were funding the Karma Entities' loan imminently and wanted the UCC to be filed just before any filing by the FVP Parties.

103.95.        When the FVP Parties' loan initially did not close, Lubin accused Scott Zankl of misleading him and pressured Scott Zankl to email him the actual loan documents provided to Scott Zankl by the FVP Parties to confirm Scott Zankl's representations. On or about December 17, 2021, Scott Zankl emailed Lubin all of the FVP Parties' loan documents. *See* **Exhibit C.**

104.96.        After Lubin received the FVP Parties' loan documents, Lubin was fully aware of the fact that the FVP Parties' loan proceeds could not be used to repay any other lenders, including Hi Bar.

105.97.        On or about December 19, 2021, Scott Zankl told Lubin that the FVP Parties became aware of Hi Bar's December 15, 2021 filing of the UCC Financing Statement and advised Scott Zankl that the FVP Parties' funding was off and that therefore the Zankls could not pay Hi Bar.

106.98.        In response, Lubin demanded that Scott Zankl sign a "Settlement Agreement" which astronomically increased the amounts due to Hi Bar. **Exhibit D**.

107.99.        The December 19, 2021 Settlement Agreement (the "December 19, 2021 Settlement Agreement"):

    a.  Falsely and fraudulently described a "default" that never occurred.

    b.  Increased the amount due Hi Bar to Four Million Sixteen Thousand Eighty-Two Dollars ($4,016,082) with payments of Two Hundred Thousand Dollars ($200,000) per week, with only Two Million Nine Hundred Forty-Five Thousand Six Hundred Sixty-Eight Dollars ($2,945,668) needed to be paid if it was paid within 30 days.

    c.  Granted Hi Bar a renewed security interest in the Karma Entities' inventory and

rights to both file and maintain a UCC Financing Statement.

    d.   Stated that when all sums were paid, Hi Bar would terminate the Hi Bar UCC Financing Statement filed four (4) days prior on December 15, 2021 within (5) days of payment. *See* **Exhibit B**.

100.    Notwithstanding the express confirmation that Hi Bar would maintain the just-filed UCC filing in the December 19, 2021 Settlement Agreement, Hi Bar did the exact opposite.

101.    Instead, on December 19, 2021 Hi Bar filed *a termination* of the four (4) days old UCC Financing Statement. **Exhibit E**.

102.    This termination of the four (4) days old UCC Financing Statement, **Exhibit E**, was specifically and intentionally made by Lubin and Hi Bar as a material, direct, false and fraudulent misrepresentation to the FVP Parties that Hi Bar had no secured interests in the Karma Entities' collateral. The termination states:

> "Effectiveness of the Financing Statement identified above is terminated with respect to the security interests of the Secured Party authorizing this Termination Statement."

103.    This representation filed of record as **Exhibit E** was intentionally directed and made to the FVP Parties, who Lubin and Hi Bar knew were in the process of making a loan to the Zankls and the Karma Entities, so that the FVP Parties would make the loan and Lubin and Hi Bar would gain the proceeds.

104.    This representation filed of record as **Exhibit E** was directed to the FVP Parties for the sole purpose of notifying the FVP Parties that Hi Bar had no security interests to protect. This representation was false when made and intentionally false. The FVP Parties justifiably relied upon the misrepresentation to their detriment.

105.    To double down on the fraud, non-party Zakharyayev, acting for Lubin and Hi Bar, advised non-party Frank O'Donnell ("O'Donnell"), an agent intermediary between the FVP Parties and the Zankls, that the Hi Bar UCC Financing Statement of December 15, 2021 was a *mistake and was "erroneously filed."* **Exhibit F**.

106.    This representation made by non-party Zakharyayev, acting for Lubin and Hi Bar, was specifically made to O'Donnell whom they knew and intended would relay the

information to the FVP Parties for the sole and specific purpose of notifying the FVP Parties that Hi Bar had no security interests to protect for the purpose of inducing the FVP Loan. These statements were false when made and intentionally false. The FVP Parties justifiably relied upon the misrepresentation to their detriment.

115.107.    The sole purpose of the termination filed in the public record and communicated to the FVP Parties was to convince the FVP Parties that Defendant Hi Bar maintained no valid or protectable interest in the collateral of the Karma Entities so that the FVP Parties would rest assured that Defendant Hi Bar was not a threat to their security interests and proceed to fund a loan to the Karma Entities.

116.108.    The scheme contemplated both Defendant Lubin and Defendant Hi Bar waiting in the wings to pounce with a second UCC Financing Statement which would be filed just before the FVP Loan and before the FVP Parties would know of the filing through a UCC search.

117.109.    The purpose of the scheme was to defraud the FVP Parties into making the FVP Loan, so that Lubin and Hi Bar would receive a large payment from the Zankls from the FVP Loan proceeds.

d.  THE FRAUD ACHIEVED ITS PURPOSE.

118.110.    Upon being supplied the UCC termination notice at the direction of Hi Bar and its representatives, the FVP Parties, who were unaware of the scheme, reinstituted the loan process with the Zankls and the Karma Entities.

119.111.    The negotiations carried through to mid-January of 2022. During that time, the Zankls and Karma Entities were, unsurprisingly, in even further arrears of the draconian terms of the Lubin / Hi Bar financing and the December 19, 2021 Settlement Agreement. Scott Zankl was under constant pressure by Lubin to pay or suffer financial ruin. *See e.g.,* **Exhibits K and L**.

120.112.    In January of 2022 Scott Zankl continuously promised Lubin that the FVP Parties' loan was imminent, and Lubin again requested that Scott Zankl provide him with the FVP Loan documents so that Hi Bar and Lubin would know of the closing date.

121.113.    On or about January 21, 2022, Scott Zankl, like in December of 2021, again emailed Lubin and Hi Bar the FVP Parties' loan documents, **Exhibit G**, and promised Lubin that as soon as he got the FVP Loan from the FVP Parties, which he stated would be on Monday, January 24, 2022, Scott Zankl would pay Lubin and Hi Bar from the FVP Loan proceeds.

122.114.      Again, after Lubin and Hi Bar received the FVP Parties' loan documents, Lubin and Hi Bar were fully aware of the fact that the FVP Loan proceeds could not be used to repay any other lenders, including Hi Bar. Specifically, the FVP Loan proceeds could only be used "for purposes of purchasing exotic car inventory for Palm Beach and Broward, paying transaction costs and expenses incurred in connection [t]herewith, for general working capital purposes." *See* FVP Loan Documents exhibited *infra*.

123.115.      On Monday, January 24, 2022, Lubin again demanded that Scott Zankl email him all of the actual FVP Loan closing agreements. In response, Scott Zankl sent Lubin four (4) separate emails which included all of the FVP Loan documents. **Composite Exhibit H**. Later that day, when no closing occurred, Scott Zankl texted Lubin that he would be closing the FVP Loan the following day, January 25, 2022. **Exhibit I.** This January 25, 2022 text message again confirmed that Lubin would be receiving the Plaintiffs' FVP Loan, the proceeds of which Lubin was fully aware that neither he nor Hi Bar could receive under the terms of the FVP Parties' transaction documents which Lubin had in hand. **Composite Exhibit H**.

124.116.      On January 25, 2022, Scott Zankl advised Lubin that he would be closing the FVP Loan with the FVP Parties the following day, January 26, 2022, with certainty.

125.117.      In response, and to finalize the fraud, at Lubin's direction, non-party Zakharyayev, for Lubin and Hi Bar, refiled Hi Bar's UCC Financing Statement on January 25, 2022 at 10:55 P.M. **Exhibit J.**

126.118.      Defendants Lubin and Hi Bar refiled the UCC Financing Statement on January 25, 2022 at 10:55 P.M. knowing that:

    a.   the FVP Parties' funding was to close the next day – on January 26, 2022;

    b.   the public record stated that Lubin and Hi Bar had no secured interest to protect;

    c.   the FVP Parties were wholly unaware of any Lubin or Hi Bar secured interest in the Karma Entities' collateral;

    d.   that neither Lubin nor Hi Bar gave written consent for the FVP Parties to have a secured interest in the Karma Entities' collateral as required by either the Hi Bar / Zankl Transaction Documents or the December 19, 2021 Settlement Agreement;

    e.   neither Lubin nor Hi Bar notified the FVP Parties of either the Hi Bar / Zankl

Page 20 of 90

Transaction Documents or the December 19, 2021 Settlement Agreement;

f.   the FVP Parties would have no way of discovering the UCC filing prior to closing;

g.   the Plaintiffs' FVP Loan could not be used to pay Hi Bar or Lubin;

h.   Scott Zankl, in response to Lubin's pressure, promised Lubin that he would pay Lubin and Hi Bar with the FVP Loan proceeds as stated in the text message of January 24, 2022; and

i.   but for the material misrepresentation of the December 19, 2021 UCC Termination, **Exhibit E**, filed as part of the scheme to defraud, there never would have been a loan from the FVP Parties to the Zankls and the Karma Entities in the first instance.

127.119.    At all times, Lubin acted for both Spin and Hi Bar in an identical fashion, and all of Scott Zankl's communications with both Spin and Hi Bar were with Lubin. In fact, on January 3, 2022, Lubin told Scott Zankl to wire the funds due to Hi Bar to his company Spin. **Exhibit K**.

128.120.    It was always Lubin who personally pressured and threatened Scott Zankl and the Karma Entities with a (Hi Bar) lawsuit ("I have to file tomorrow") if payments were not made to Lubin's satisfaction. *See, e.g.*, **Exhibit L** (evidencing pressure and threats on January 13, 2022).

129.121.    It was Lubin who personally directed Scott Zankl where to send every payment due to Hi Bar after the Hi Bar documents were executed. For example, on February 7, 8 and 9 of  2022, Lubin directed Scott Zankl to wire money to an attorney's account, which, upon information and belief, was that of non-party Zakharyayev. On those dates, a total of One Million Three Hundred Thousand Dollars ($1,300,000) was wired to a Lubin / Hi Bar attorney with funds that, upon information and belief, came from the Plaintiffs' FVP Loan loaned the prior week.

130.122.    It was Lubin who attempted to fabricate a defense to the late night UCC filing in a text message exchange with Scott Zankl. Lubin suggested that *maybe* Hi Bar filed the UCC late at night the night before the FVP Loan closing because "if it was just filed because ur (sic) weren't paying and Hi Bar noticed a few months later then your fucked[,]" *see* **Exhibit EE**, suggesting Hi Bar would argue that it filed the notice late the night of January 25, 2022 because it just happened to notice the late payments. This comment was a continuation of the fraudulent conduct.

Page 21 of 90

131.123.    The actions of Lubin and Hi Bar comprise fraudulent conduct with the intended and expressed target of the fraud being the FVP Parties.

132.124.    The UCC Financing Statement filed on December 19, 2021 was an "instrument" as defined in Section 817.535 of the Florida Statutes and contained a materially false, fictitious, or fraudulent statement or representation and was filed with the intent to defraud.

133.125.    The UCC Financing Statement filed on January 25, 2022 at 10:55 P.M. was an "instrument" as defined in Section 817.535 of the Florida Statutes and was filed with the intent to defraud.

134.126.    The UCC Financing Statement filed on January 25, 2022 at 10:55 P.M. contained a materially false, fictitious, or fraudulent statement or representation as it represented that Hi Bar had a legitimate lien in the property defined therein, when, in fact, Hi Bar had no legitimate enforceable interest to protect as:

    a.   the filing was made for the sole purpose of defrauding the FVP Parties;

    b.   Hi Bar paid no consideration for the alleged interest;

    c.   Lubin and Hi Bar were participants in the scheme to defraud Franklin;

    d.   Lubin and Hi Bar were participants in a fraudulent transfer as defined in Section 726.105 of the Florida Statutes; and

    e.   Lubin and Hi Bar were participants in an illegal and usurious shake down of Scott Zankl and the Karma Entities, and surreptitiously filed this UCC Financing Statement with the intent to defraud.

135.127.    The UCC Financing Statement filed on January 25, 2022 at 10:55 P.M. was therefore an overt act as part of the conspiracy to defraud the FVP Parties and an instrument used to perpetrate and effectuate the fraud, and must be set aside and voided.

B.    THE SPIN / HI BAR LOAN TO THE ZANKLS AND THE KARMA ENTITIES WAS USURIOUS AND ILLEGAL, AND VIOLATES FLORIDA PUBLIC POLICY.

136.128.    Both Spin and Hi Bar, as aforementioned, are MCAs. Both have been subject to multiple lawsuits and scrutiny by numerous governmental agencies.

137.129.    MCAs have come under intense scrutiny for their unconscionable and unlawful conduct. *See, e.g.*, *Attorney General of the State of New York, v. Various MCA Companies*,

Index No. 451368/ 2020 (Supreme Court of the State of New York, County of New York) (alleging, *inter alia*, that Richmond, Giardina and others have preyed upon thousands of small businesses throughout the United States by offering funding under "merchant cash advances" that "are in fact fraudulent, usurious loans with interest rates in the triple and even quadruple digits, far above the maximum rate permissible for a loan under New York law") (Criminal Usury, Fraud in the Form of Unconscionability – *pending*); *Fleetwood v RAM Capital Funding, et al.,* United States District Court for the Southern District of New York, Case No. 20-cv-5120 (LJL) (June 6, 2022 Opinion and Order); *see also, e.g.*, *Federal Trade Commission v. RCG Advances*, LLC, No. 20-cv-4432 (S.D.N.Y.) (same).

138.130.     On August 31, 2021, Spin entered into a "Revenue Purchase Agreement" with the Zankls and EAG to ostensibly purchase EAG's "Receivables" (the "First Agreement"). As EAG's business model had no receivables, it would purchase cars and sell them for payment on sale.

139.131.      Under the First Agreement, and the only agreement pursuant to which either Scott Zankl or any of his companies received any funds, and which was self-defined as a sale of receivables, EAG received Two Million Dollars ($2,000,000) but was indebted to Spin in the amount of Two Million Nine Hundred Ninety-Eight Thousand Dollars ($2,998,000).

140.132.     The First Agreement stated that

> *"E[AG] is selling a portion of future revenue stream to SPC at a discount, and is not borrowing money from Spin, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Spin."*

**Exhibit A** (emphasis added).

141.133.     The First Agreement then goes on to state that EAG must pay One Hundred Fifty Thousand Dollars ($150,000) weekly, or twenty percent (20%) of its receivables, notwithstanding the fact that EAG had no receivables.

142.134.     EAG made payments to Spin as agreed. Despite the fact that EAG had paid Spin Seven Hundred Fifty Thousand Dollars ($750,000) between August 31, 2021 and October 18, 2021, on October 18, 2021 Spin issued to Scott Zankl and EAG a balance notice stating that EAG owed Spin Two Million Two Hundred Sixty-Four Thousand Three Hundred Twelve Dollars and Fifty Cents ($2,264,312.50).

143.135.    In sum, Two Million Dollars ($2,000,000.00) was borrowed on August 31, 2021, Seven Hundred Fifty Thousand Dollars ($750,000.00) was repaid, and on October 18, 2021 Two Million Two Hundred Sixty-Four Thousand Three Hundred Twelve Dollars and Fifty Cents ($2,264,312.50) was alleged to be owed to Spin – meaning over One Million Dollars ($1,000,000) in interest and charges were somehow claimed by Spin over a period of approximately 10 weeks.

144.136.    *It gets worse.* As above stated, notwithstanding the fact that neither the Zankls nor EAG were in default, Scott Zankl was required to eliminate the Spin debt to comply with the Franklin demands for its financing.

145.137.    In response to Franklin's requirements, Lubin agreed to "transfer" the Spin debt to Hi Bar, which he described to Zankl as a "no net refi." At all times, Lubin represented to Scott Zankl that Hi Bar was a company that Lubin controlled and that they would simply exchange the creditors' names with no change in terms. This statement by Lubin to Scott Zankl was an intentionally false statement.

146.138.    Lubin emailed the Hi Bar paperwork to Scott Zankl which Scott Zankl viewed on his phone, and, trusting Lubin's representations about what was in the paperwork, "DocuSigned" the documents on his phone on October 27, 2021.

147.139.    After Scott Zankl was able to intelligently review the documents, he learned that that the Hi Bar paperwork increased the amount owed to Spin by over Nine Hundred Thousand Dollars ($900,000) from the week before, and that EAG, and now the Karma Entities, owed Hi Bar Three Million One Hundred Seventy-Seven Thousand Eight Hundred and Eighty Dollars ($3,177,880), with weekly payments of One Hundred Fifty Thousand Dollars ($150,000).

148.140.    Therefore, Lubin and Hi Bar increased the debt by more than One Million Dollars ($1,000,000) in interest and charges that were somehow claimed by Spin over a period of approximately 10 weeks and added another Nine Hundred Thousand Dollars ($900,000) of interest with the stroke of a pen. In sum, Two Million Dollars ($2,000,000) was borrowed on August 31, 2021, Seven Hundred Fifty Thousand Dollars ($750,000) was repaid, and on October 18, 2021 Three Million One Hundred Seventy-Seven Thousand Eight Hundred Eighty Dollars ($3,177,880) was alleged to be owed – meaning almost $2 million dollars in interest and charges were somehow claimed by Spin over a period of approximately 10 weeks on a $2 million dollar loan by relabeling the Spin debt to be Hi Bar debt.

149.141.     No funds were ever paid by Hi Bar to EAG or the Karma Entities at any time for the Three Million One Hundred Seventy-Seven Thousand Eight Hundred Eighty Dollars ($3,177,880) it was alleged to be owed at the time of the Hi Bar / Spin refinancing.

150.142.     Upon information and belief, no funds were paid by Hi Bar to Spin.

151.143.     Over the next two (2) months, Zankl and EAG paid Hi Bar approximately Five Hundred Thousand Dollars ($500,000) – and with this payment making total payments of $1.25 million on the original $2 million dollar debt –, and in mid-December 2021 Hi Bar alleged that it had a balance owed of Two Million Six Hundred Seventy-Seven Thousand Eight Hundred Eighty Dollars ($2,677,880).

152.144.     Therefore, over the course of three and one half (3 ½) months, EAG and the Karma Entities received Two Million Dollars ($2,000,000) and repaid One Million Two Hundred Fifty Thousand Dollars ($1,250,000) and were told they owed a balance of Two Million Six Hundred Seventy-Seven Thousand Eight Hundred Eighty Dollars ($2,677,880).

153.145.     Incredibly, Scott Zankl, EAG and the Karma Entities were told that they were in default and would be sued unless they signed a "Settlement Agreement."

154.146.     Fearing what a lawsuit would do to his business, Scott Zankl executed the December 19, 2021 Settlement Agreement which somehow magically increased the balance owed to Hi Bar to Four Million Sixteen Thousand Eight Hundred Twenty Dollars ($4,016,820) – an increase in the already fictitious amount owed by One Million Three Hundred Thousand Dollars ($1,300,000) with yet another stroke of a pen. Again, no money was paid by Hi Bar for the execution of the December 19, 2021 Settlement Agreement.

155.147.     So, in approximately 100 days, EAG received Two Million Dollars ($2,000,000), repaid One Million Two Hundred Thousand Dollars ($1,200,000) and owed Four Million Sixteen Thousand Eight Hundred Twenty Dollars ($4,016,820).

156.148.     *It gets even worse.*

157.149.     By mid-January of 2022, EAG and the Karma Entities paid Lubin and Hi Bar an additional One Million Three Hundred Thousand Dollars ($1,300,000), bringing the total payment by EAG and the Karma Entities to Lubin and Hi Bar Three Million Eighty-Three Thousand Six Hundred Eighty-Seven Dollars and Fifty Cents ($3,083,687.50) on the original debt of Two Million Nine Hundred Ninety-Eight Thousand Dollars ($2,998,000), with only Two Million

Dollars ($2,000,000) received, incurred on August 31, 2021.

158.150.    So, in four (4) months, EAG repaid over One Hundred Percent (100%) of the incurred debt – which was thirty-three percent (33%) more than the money received – and somehow still owed One Million Six Hundred Thousand Dollars ($1,600,000) more than the original debt.

159.151.    Incredibly, Hi Bar never paid a penny to EAG or the Karma Entities at any time to receive this patently illegal and usurious windfall.

160.152.    Upon information and belief, Hi Bar never paid Spin any money to "pay off" the Spin debt, and the "Balance Transfer" transaction was simply a fiction invented by Lubin and his associates to mercilessly rip off the Zankls, EAG and the Karma Entities and lure the FVP Parties into a false sense of security.

161.153.    All of Scott Zankl's communications regarding the money owed to Hi Bar were with Lubin, personally. It was Lubin who constantly pressured Scott Zankl for the Hi Bar payments.

162.154.    The acts of Spin, Lubin and Hi Bar are outrageous, violate Florida public policy, and are illegal in Florida.

163.155.    Spin and Hi Bar may call it an "advance" or "purchase of receivables," but it was, and is, an obvious usurious and illegal loan, plain and simple. Lubin, Hi Bar and Spin attempted to mask their loan agreements as receivables purchases, but even the most cursory examination establishes it as a loan transaction given that they attempted to securitize the transaction to eliminate risk to them.

164.156.    On January 28, 2022, Hi Bar sued Scott Zankl, EAG and the Karma Entities for breach of the December 19, 2021 Settlement Agreement. By suing under the December 19, 2021 Settlement Agreement, Hi Bar masked the nature of the underlying transaction as it made it appear that the underlying loan was greater than $2.5 million as New York usury laws do not apply to loans that exceed $2.5 million. In that lawsuit, the New York Court ruled that since the debt in question exceeded $2.5 million, the New York usury laws do not apply. The New York Court failed to contemplate and rule on the fact that the initial loan was under $2.5 million, and that therefore the New Your usury laws did apply because it was only the illegal interest rate that pushed the debt amount over the $2.5 million threshold.  That ruling is under reconsideration and appeal.

165.157.    The underlying Hi Bar transaction was a criminally usurious loan contract under both New York law and Florida law. As to the "Balance Transfer" to Hi Bar, the loan charges increased by Fifty and Three-Tenths percent (50.3%). When Hi Bar, on the one hand, and the Zankls, E[AG] and the Karma Entities, on the other hand, executed a "Settlement Agreement," the loan charges increased another Fifty Percent (50%) – without a penny being paid to E[AG] or the Karma Entities.

166.158.    The merchant contract agreements entered into between Spin, Hi Bar, Scott Zankl, EAG and the Karma Entities were unconscionable, illegal, and violative of both New York and Florida public policy, and are therefore void and unenforceable.

167.159.    The Hi Bar UCC Financing Statement filed on January 25, 2022 at 10:55 P.M. was the product of a scheme to defraud as above pled, and was additionally the product of unconscionable and illegal contracts, and has materially damaged the FVP Parties and must be voided, or deemed void, as a matter of law.

C.    THE FVP / ZANKL – KARMA ENTITIES LOAN AND THE LOAN DOCUMENTS.

168.160.    As and part of the due diligence subsequent to a loan application, the FVP Parties were provided with Scott Zankl and Kristen Zankl's tax returns and signed personal financial statements, and confirmed that no security interests hypothecated any of the FVP Parties' anticipated collateral, which would be comprised of all of the assets of the Karma Entities.

169.161.    As part of the due diligence, and as a required condition of the FVP Loan closing and funding, the FVP Parties were provided with an opinion letter issued by Defendants Graner and the Graner Law Group. *See* **Exhibit M** (the "Graner Opinion Letter"). The statements and opinions expressed in the Graner Opinion Letter were false, and Defendants Graner and the Graner Law Group knew or should have known of the falsity of the opinions and statements. In particular, the following statements and opinions were false:

> 4. The consummation of the transactions contemplated by the Loan Documents and the carrying out of the terms thereof will not result in violation of any provisions of the articles of incorporation, bylaws or other governing documents of any Borrower, or result in the violation of any provision of, or in a default under, any indenture, mortgage, deed of trust, indebtedness, agreement, judgment, decree, order, statute, rule or regulation to which any Credit Party is a party or by which it or its property is bound.
>
> 5. There are no legal or governmental actions, suits, proceedings, inquiries or investigations pending, threatened or contemplated, or any basis therefor, to which any

Credit Party is or may become a party or of which any property of any Credit Party is or may become subject, which, if determined adversely to such Credit Party, would not, individually or in the aggregate, have a material adverse effect on the financial position or results of operations of such Credit Party or on any Collateral owned by such Credit Party.

6. The provisions of the Security Agreement and the Pledge Agreement are effective to create a security interest in favor of the Administrative Agent, for the benefit of the Lenders, in all of each Borrower's right, title and interest in and to the Collateral described therein and all proceeds thereof. Such security interest has been properly perfected.

*Id.*

170.162.    Relying on the aforementioned representations and assurances, the FVP Parties entered into, *inter alia,* the loan documents with the Karma Entities through their owners, the Zankls. *See* **Exhibit N** (affixing the Loan Agreement) [hereinafter, the "Loan Agreement"].

171.163.    The Zankls sought from the FVP Parties, and received, a substantial loan in the amount of Seven Million Five Hundred Thousand and No/100 Dollars ($7,500,000) (as above defined, the "FVP Loan") expressly "for purposes of purchasing exotic car inventory for Palm Beach and Broward." **Exhibit N** at 1.

172.164.    Contemporaneous with the Loan Agreement, Karma of Broward and Karma of Palm Beach executed a Note with FVP Investments and FVP Servicing in the principal amount of Three Million and No/100 Dollars ($3,000,000). *See* **Exhibit O** (attaching the FVP Investments Note) [hereinafter, the "FVP Investments Note"].

173.165.    Contemporaneous with the Loan Agreement, Karma of Broward and Karma of Palm Beach also executed a Note with the FVP Fund and FVP Servicing in the principal amount of Four Million Five Hundred Thousand and No/100 Dollars ($4,500,000). *See* **Exhibit P** (providing the FVP Fund Note) [hereinafter, the "FVP Fund Note," and, along with the FVP Investments Note, collectively, the "Notes"].

174.166.    The FVP Loan was funded as follows: Three Million Five Hundred Thousand Dollars ($3,500,000) at closing, Two Million Dollars ($2,000,000) on February 2, 2022, and Two Million Dollars ($2,000,000) on February 18, 2022.

175.167.    Contemporaneous with the Loan Agreement, the Zankls entered into a Personal Guaranty Agreement personally guaranteeing all sums due under the Loan Agreement.

*See* **Exhibit Q** (supplying the Guaranty Agreement) [hereinafter, the "Guaranty Agreement"].

176.168.     Contemporaneous with the Loan Agreement, the Karma Entities entered into a Security Agreement with FVP Servicing, as administrative agent for FVP Investments and the FVP Fund, granting a continuing security interest in certain Collateral, as the term Collateral is defined therein. *See* **Exhibit R** (attaching the Security Agreement) [hereinafter, the "Security Agreement"].

177.169.     Scott Zankl, on behalf of both of the Karma Entities, at Section 2.2 of the Security Agreement, represented that the Karma Entities "own or have the right to possess and use the Collateral and [have] full . . . authority, as applicable, to grant a security interest in the Collateral." *Id.* at § 2.2.

178.170.     The Security Agreement makes clear, at Schedule 2.1, that the Collateral is located at the Karma Entities' locations. *See id.* at Schedule 2.1. Scott Zankl, on behalf of his companies, asserted that "[t]he Collateral is free and clear of all Liens[,]" *id.* at § 2.12, and that "[n]o authorization, approval or other action by . . . any Official Body or other Person is required[,]" *id.* at § 2.8; and thus, that the "Security Agreement create[d] a valid security interest in the Collateral and the proceeds thereof securing the payment and performance in full of the Secured Obligations." *Id.* at § 2.7.

179.171.     Contemporaneous with the Loan Agreement, the Zankls also entered into a Pledge and Security Agreement with the FVP Parties. *See* **Exhibit S** (attaching the Pledge and Security Agreement) [hereinafter, the "Pledge Agreement"]. In the Pledge Agreement, the Zankls pledged as collateral their stock and membership interests in the following entities:

| Pledgor | Pledged Entity | Description of Equity Interests Owned | Percentage of Issued Equity Interests Owned |
|---|---|---|---|
| Scott Zankl | Karma of Broward, Inc. | Stock | 50% |
| | Karma of Palm Beach, Inc. | Stock | 50% |
| | Excell Auto Sport and Service, Inc. | Stock | 23% |
| | Excell Auto Finance, LLC | Membership Interests | 25% |
| Kristen Zankl | Karma of Broward, Inc. | Stock | 50% |
| | Karma of Palm Beach, Inc. | Stock | 50% |
| | Excell Auto Sport and Service, Inc. | Stock | 0% |
| | Excell Auto Finance, LLC | Membership Interests | 0% |

180.172.    Contemporaneous with the Loan Agreement, the FVP Parties filed a UCC financing statement recording their security interests in the Karma Entities' collateral under the Loan Documents. *See* **Exhibit T**. This Financing Statement secured as collateral: "ALL ASSETS OF DEBTORS NOW OWNED OR HEREAFTER ACQUIRED AND WHEREVER LOCATED."

181.173.    Contemporaneous with the Loan Agreement, the FVP Parties filed a UCC financing statement recording their security interests in the Zankls' pledged collateral under the Loan Documents. *See* **Exhibit U**. This Financing Statement secured as collateral:

ALL OF EACH DEBTOR'S RIGHT, TITLE AND INTEREST IN AND TO THE FOLLOWING, WHETHER NOW OWNED OR HEREAFTER ACQUIRED AND WHEREVER LOCATED: (A) ALL OF THE MEMBERSHIP INTERESTS, STOCK, PARTNERSHIP INTEREST OR OTHER OWNERSHIP INTERESTS OF ANY TYPE OR NATURE ("EQUITY INTERESTS") OF EITHER DEBTOR IN EACH OF KARMA OF BROWARD, INC., KARMA OF PALM BEACH, INC., EXCELL AUTO SPORT AND SERVICE, INC., AND EXCELL AUTO FINANCE, LLC (EACH, A "PLEDGED ENTITY" AND, COLLECTIVELY, THE "PLEDGED ENTITIES") AND ALL OTHER ADDITIONAL EQUITY INTERESTS IN THE PLEDGED ENTITIES AND OTHER RIGHTS SUBSEQUENTLY ACQUIRED BY EITHER DEBTOR IN RESPECT OF SUCH EQUITY INTERESTS (WHETHER IN CONNECTION WITH ANY CAPITAL INCREASE, RECAPITALIZATION, RECLASSIFICATION OR REORGANIZATION OF THE PLEDGED ENTITY OR OTHERWISE); (B) ALL CERTIFICATES, INSTRUMENTS OR OTHER WRITINGS REPRESENTING OR EVIDENCING SUCH INTEREST AND ALL ACCOUNTS ARISING OUT OF, OR IN CONNECTION WITH, SUCH INTERESTS; (C) ALL RIGHTS, PRIVILEGES, GENERAL INTANGIBLES, PAYMENT INTANGIBLES, VOTING RIGHTS, AUTHORITY AND POWER ARISING FROM SUCH

INTERESTS; (D) ANY AND ALL MONEYS OR PROPERTY DUE AND TO BECOME DUE TO EITHER DEBTOR NOW OR IN THE FUTURE IN RESPECT OF SUCH EQUITY INTERESTS, OR TO WHICH EITHER DEBTOR MAY NOW OR IN THE FUTURE BE ENTITLED IN ITS CAPACITY AS A MEMBER OR OWNER OF ANY PLEDGED ENTITY, WHETHER BY WAY OF A DIVIDEND, DISTRIBUTION, RETURN OF CAPITAL OR OTHERWISE; (E) TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH DEBTOR'S RIGHT, IF ANY, IN EACH PLEDGED ENTITY PURSUANT TO ANY ORGANIZATIONAL DOCUMENT, INCLUDING ANY OPERATING AGREEMENT; (F) ALL OTHER CLAIMS WHICH DEBTOR HAS OR MAY IN THE FUTURE ACQUIRE IN ITS CAPACITY AS A MEMBER OR OWNER OF ANY PLEDGED ENTITY AND ITS PROPERTY; AND (G) TO THE EXTENT NOT OTHERWISE INCLUDED, ALL PRODUCTS AND PROCEEDS OF, AND SUBSTITUTIONS OR REPLACEMENTS FOR, ANY OR ALL OF THE FOREGOING.

182.174.      Contemporaneous with the Loan Agreement, the FVP Parties entered into an Intercreditor Agreement with an existing lender. *See* **Exhibit V**.

183.175.      All of the aforementioned various documents between all or some of the FVP Parties, on the one hand, and all or some of the Zankls and/or the Karma Entities, on the other hand (collectively, the "Loan Documents"), were executed and came into full force and effect upon such execution and the funding of the FVP Loan and receipt by the Karma Entities of the FVP Loan in the aggregate amount of Seven Million Five Hundred Thousand and No/100 Dollars ($7,500,000).

184.176.      After repeated attempts to communicate went unanswered, and with the FVP Parties' representatives having observed numerous of their collateral automobiles missing from the lots of both of the Karma Entities, the FVP Parties notified the Zankls and the Karma Entities of their default, **Exhibit X,** and immediately retained a private investigator with federal law enforcement experience to attempt to determine what happened to the Zankls and the Karma Entities, and what happened to the FVP Parties' Collateral automobiles.

D.      DEFENDANTS MOSHE FARACHE AND LISA FARACHE'S PARTICIPATION IN THE DUE DILIGENCE ASSURANCES INDUCING THE APPROVAL OF THE FVP LOAN.

185.177.      Defendant Moshe Farache is well known to the Zankls. In fact, as above stated, Moshe Farache and Scott Zankl have been co-owners of non-party Excell Auto since 2016.

186.178.      Moshe Farache and Lisa Farache were fully aware of the FVP Parties'

anticipated loan to the Zankls and the Karma Entities.

~~187.~~179.     In fact, Moshe Farache, Lisa Farache, non-party Michele Martin and their attorney, non-party Scott Gherman, demanded copies of, and were provided copies of, the FVP Parties' Loan Documents in January of 2022 prior to the making of the FVP Loan. On January 5, 2022, Michele Martin, the bookkeeper and assistant to Moshe Farache, wrote to Scott Zankl and stated:

> On Jan 5, 2022, at 10:37 AM, Michele Martin <michelemartin1010@gmail.com> wrote:
> >
> > Scott,
> >
> > Moshe said that he wants to see the loan documents, including, but not limited to, the list of collateral that you are pledging to get this loan, which was referenced as an attachment in the document you supplied, but there was no attachment.
> >
> > Upon receipt of these documents he will authorize  our attorney to speak with you as you have requested.
> >
> >
> > Thank You.
> >
> > Michele Martin
> > 1001 Clint Moore LLC
> > 6560 W Rogers Circle, Suite 27
> > Boca Raton FL  33487
> > 561-372-9001

~~188.~~180.     In response, all of the FVP Parties' loan documents regarding the FVP Loan were provided to Defendant Moshe Farache, Defendant Lisa Farache, non-party Michele Martin and non-party Scott Gherman by Scott Zankl on or before January 6, 2022.

~~189.~~181.     After the receipt of the FVP Parties' Loan Documents, and thus knowing full well that the FVP Loan proceeds were to be used only for the purchase of vehicles and business operations of the Karma Entities, Defendant Moshe Farache, Defendant Lisa Farache and non-party Michele Martin combined and conspired to assure the FVP Parties that the FVP Loan to the Karma Entities was safe and secured in the Karma Entities' inventory, when they believed, at all times, that the Karma Entities had no exotic car inventory whatsoever. These intentionally false assurances were made for the sole purpose of taking the FVP Loan proceeds for the benefit of Defendant Moshe Farache, Defendant Lisa Farache, Defendant 1001 Clint Moore and Defendant MMS

without the knowledge or consent of the FVP Parties.

E.    LISA FARACHE, 1001 CLINT MOORE AND OTHERS CONSPIRE TO FRAUDULENTLY INDUCE THE FVP PARTIES INTO MAKING THE FVP LOAN.

190.182.    On January 18, 2022, Moshe Farache, with the assistance of Lisa Farache and Michele Martin, sent to Scott Zankl an email pressuring Scott Zankl to sign a document that promised Scott Zankl would pay over a substantial portion of the FVP Loan to MMS and 1001 Clint Moore. **Exhibit DD**.

191.183.    As **Exhibit DD** makes clear, Moshe Farache demanded that Scott Zankl sign a contract to make the following payments to Defendants Moshe Farache, MMS and 1001 Clint Moore "within 5 days of closing your line of credit, on January 26, 2022" – the closing date of the FVP Loan – :

1. Return of the MMS locate loan of $1,080,000.00.
2. Return of the $440,000.00 1001 Line which is included as a part of the $2,664,450.00.

192.184.    As **Exhibit DD** also makes clear, the Zankls executed the contract promising to pay Defendants MMS and 1001 Clint Moore a substantial portion of the FVP Loan proceeds when received.

193.185.    Upon the receipt of the signed contract acknowledging that they were to receive approximately $1.8 million of the FVP Loan proceeds, Defendants Moshe Farache, Lisa Farache and 1001 Clint Moore, intentionally and with premeditation, misled the FVP Parties in their due diligence inquiries.

194.186.    As part of the FVP Parties' due diligence and preconditions to the FVP Loan closing, Defendant Lisa Farache, by and through Defendant 1001 Clint Moore, was requested to provide assurances to the FVP Parties that the FVP Parties would have access to the Karma Entities and that Defendants Lisa Farache, and 1001 Clint Moore would *not* receive any direct or indirect consideration from the FVP Loan.

195.187.    In response, Defendants Lisa Farache and 1001 Clint Moore, with the assistance and urging of Defendant Moshe Farache, provided those assurances to the FVP Parties. *See* **Exhibit W** (affixing a letter from Defendant Lisa Farache, as manager of Defendant 1001 Clint Moore, which directs any and all future notices to Defendant Lisa Farache, Defendant Moshe Farache, non-party Michele Martin and non-party Scott Gherman) [hereinafter, the "Landlord's

Waiver and Consent"].

196.188.    Specifically, Defendant Lisa Farache, as the manager of Defendant 1001 Clint Moore, in a communication entitled: "Re: Loan to Karma of Palm Beach, Inc./Karma of Broward, Inc.[,]" **Exhibit W**, represented to the FVP Parties that:

a. 1001 Clint Moore declared its understanding that the Karma Entities are attempting to obtain funding from the FVP Parties, and that, as a condition of the FVP Loan, the FVP Parties require 1001 Clint Moore's agreement that 1001 Clint Moore will allow FVP Servicing access to Karma of Palm Beach in the event of a default for the purposes of allowing the FVP Parties to retrieve the collateral securing the FVP Loan, thereby establishing Defendants Moshe Farache, Lisa Farache and 1001 Clint Moore's understandings that the Plaintiffs' FVP Loan was to be collateralized with automobile inventory located at the 1001 Clint Moore property and that the FVP Parties had the right to seek their collateral;

b. Defendant 1001 Clint Moore agreed to allow the FVP Parties' access to the premises to retrieve their collateral securing the FVP Loan under circumstances separate and apart from a default of the subject lease; and, critically,

c. Defendant 1001 Clint Moore declares that neither it, *nor any of its members, "will in any way either directly, or indirectly, receive any consideration by virtue of the [L]oan . . . ." Id.* (emphasis added).

It further stated to "**[p]lease send any and all future notices pertaining to this matter by email to: (Lisa Farache, Moshe Farache, Michele Martin and Scott Gherman).**"

197.189.    Defendant Lisa Farache made the representations in **Exhibit W** for herself, and for 1001 Clint Moore at the request of her husband, Defendant Moshe Farache, who was acting for himself and as an agent of MMS.

198.190.    Defendant Lisa Farache was fully aware that Defendants 1001 Clint Moore, Moshe Farache and MMS would receive substantial consideration from the FVP Loan once funded. Therefore, Defendants Lisa Farache and 1001 Clint Moore, together with her husband Defendant Moshe Farache, who was acting for himself and Defendant MMS, all participated in the representation, and all expected to receive consideration from the FVP Loan.

199.191.     This representation was made after the January 18, 2022 agreement executed by the Zankls, **Exhibit DD**, to take over $1.8 million of the FVP Loan proceeds for the "MMS" and "1001 Line[.]"

200.192.     Therefore, **Exhibit W** was a knowing and intentional misstatement of facts made by Defendants Lisa Farache and 1001 Clint Moore for herself, her company and Defendants Moshe Farache and MMS with their urging knowledge and consent, with the intention that the FVP Parties would rely on it.

201.193.     The FVP Parties did, in fact, rely on the misrepresentation to their detriment and damage.

F.   THE LUBIN / HI BAR FRAUD, AND THE MOSHE FARACHE / LISA FARACHE / 1001 CLINT MOORE FRAUD, ACHIEVED ITS ILLEGAL PURPOSE.

202.194.     The manipulations, bad acts and fraudulent inducement by Defendants Lubin, Hi Bar, Moshe Farache and Lisa Farache worked.

203.195.     On January 26, 2022 the FVP Parties funded the first tranche of the FVP Loan to the Karma Entities, not knowing that the Hi Bar UCC was filed just before midnight the night before or that Defendants Lubin, Hi Bar, Moshe Farache and Lisa Farache all made material misrepresentations to induce the FVP Loan, which they expected to receive payments from.

204.196.     Shortly after the Zankls and the Karma Entities received the FVP Parties' loan proceeds, Defendants Hi Bar, MMS and 1001 Clint Moore received the funds they demanded from the FVP Loan proceeds from Scott Zankl and the Karma Entities, either by direct payment or to a designated payee for their benefit.

G.   MOSHE FARACHE, WITH THE ASSISTANCE OF LISA FARACHE AND THEIR LAWYERS, CONSPIRED TO DEFRAUD, AND DID DEFRAUD, THE FVP PARTIES AFTER THE LOAN CLOSING.

205.197.     Nonparty O'Donnell is an agent of the Zankls and assumed the obligation to the FVP Parties to confirm inventory. Together with his colleagues, O'Donnell monitored the inventory of the Karma Entities.

206.198.     On April 7, 2022, at or around 11:39 A.M., O'Donnell was advised by a telephone call that, earlier that morning, Defendants Moshe Farache, Lisa Farache and Chase Farache, and others at their direction, removed over 35 automobiles from the lot of Karma of Palm

Beach, all of which represented the FVP Parties' Collateral for the FVP Loan and all of which Defendants Moshe Farache and Lisa Farache were fully aware constituted the FVP Parties' Collateral for the FVP Loan.

207.199.    After repeated attempts to communicate went unanswered, and with the FVP Parties' representatives having observed numerous of their collateral automobiles missing from the lots of both of the Karma Entities, the FVP Parties notified the Zankls and the Karma Entities of their default, **Exhibit X,** and immediately retained a private investigator with federal law enforcement experience to attempt to determine what happened to the Zankls and the Karma Entities, and what happened to the FVP Parties' collateral automobiles.

208.200.    The private investigator hired by the FVP Parties, coincidentally, was personally known to the Zankls. After contacting Defendant Scott Zankl and gaining his trust, Defendant Scott Zankl gave several statements to the investigator regarding the events that occurred with Defendants Farache, Lisa Farache and Chase Farache and the FVP Parties' collateral automobiles. Defendant Scott Zankl told the investigator:

a.   That the Zankls were indebted to Defendants Moshe Farache and Lisa Farache from past loans which were years old.

b.   That Defendant Moshe Farache had threatened the life of Defendant Scott Zankl.

c.   That Defendant Moshe Farache had threatened to make Defendant Scott Zankl "disappear" if he did not turn over to him the FVP Parties' collateral.

d.   That Defendants Scott Zankl and Kristen Zankl both feared Defendant Moshe Farache.

e.   That Defendant Moshe Farache had bragged that he was associated with Israeli intelligence and criminal underworld figures, and that he was a very dangerous person.

f.   That Defendant Moshe Farache sent thugs to the business location to intimidate the Zankls.

g.   That the Zankls believed the threats.

h.   That because of fear and intimidation, the Zankls turned over all of the FVP Parties' collateral automobiles, keys and titles on the lot to Defendant Moshe Farache.

209.201.	In an attempt to have Defendant Moshe Farache give back titles to cars that were already sold, Defendant Kristen Zankl signed a document demanded to be signed by Defendant Moshe Farache, **Exhibit Y**, which on its face indicates that the nine (9) cars listed in the document are "collateral" for the money owed to Defendant Moshe Farache by the Zankls**.**

210.202.	On April 8, 2022, the Zankls reported to the police that Defendant Moshe Farache had, in fact, stolen the vehicles through extortion the week prior. *See Boca Raton Police Department – Report Case No.: 22-4685.*

211.203.	On April 9, 2022 at 3:00 P.M., the FVP Parties' attorneys emailed Brandes, then counsel for Defendant Farache, and demanded the return of the FVP Parties' collateral, an accounting and the location of the vehicles. The demand was not complied with.

212.204.	On April 9, 2022 at 7:30 P.M., Defendant Moshe Farache appeared at the location of Karma of Broward and attempted to take possession of even more vehicles illegally and without court process. The police were called, and Defendant Moshe Farache left the facility.

H.	MOSHE FARACHE, WITH THE ASSISTANCE OF HIS LAWYERS, MADE MATERIAL MISREPRESENTATIONS TO THE FVP PARTIES' LAWYERS, FILED INCONSISTENT AFFIDAVITS, AND MISLED THIS COURT TO PERMIT MOSHE FARACHE TO CONVERT AND SELL THE FVP PARTIES' COLLATERAL.

213.205.	The information that precipitated Defendants Moshe Farache, Lisa Farache and Chase Farache to remove all of the vehicles from the Karma Entities' lots on April 1, 2022 was that at or around the end of March of 2022, Defendant Brandes told Defendant Lisa Farache that Defendant Brandes had heard from a reliable source in the automobile dealer industry, of which Brandes was a veteran, that "the feds" "were going to raid" the Zankls business locations and that Defendant Moshe Farache should collect as may cars as he could.

214.206.	And that is exactly what Defendants Moshe Farache, Lisa Farache and Chase Farache did.

215.207.	After Defendants Moshe Farache, Lisa Farache and Chase Farache took the automobiles from the Karma Entities' lots, Defendant Moshe Farache, through his attorney Brandes and the Brandes Firm, on April 8, 2022, in an attempt to legitimize the unlawful acts, filed a lawsuit in Palm Beach County, Florida, in which Defendant Moshe Farache alleged, under oath, that Defendant Moshe Farache and his companies were entitled to *foreclose a security interest in all of the aforementioned vehicles because he and his companies had a security interest in the vehicles.*

**Exhibit Z**.

216.208.	As is seen in **Exhibit Z**, Defendant Moshe Farache's *sworn* complaint materially misrepresents that he did not yet have possession of the vehicles – the same vehicles that he had just taken, and his lawyers knew he had just taken – and attempts to mislead the Court that he is seeking possession of vehicles that he did not yet possess, when he, in fact, had already taken possession of the vehicles. *See, e.g.*, **Exhibit Z** at ¶¶ 106-107.

217.209.	Critically, Defendant Moshe Farache described himself as a *lender* and the automobiles that he sought (already took) as the *"Financed Inventory." See id.* at Master Inventory List – Exhibit D to Exhibit A thereto. The aforementioned Palm Beach sworn complaint makes clear that Defendant Moshe Farache was seeking replevin and foreclosure of the "Financed Inventory," and that "EAG is the record owner of the subject Financed Inventory." *See id.* at ¶ 121.

218.210.	As is explained below, affiant Defendant Moshe Farache quickly changed his tune when he realized that if he was a lender, he had no rights to the vehicles. Like magic, with the help and assistance of his co-conspirators over the next seven (7) days, Defendant Moshe Farache the *lender* became Defendant Moshe Farache the *buyer*.

219.211.	Defendants Brandes and the Brandes Firm knew that this Palm Beach Verified Complaint was false when filed, as Brandes well knew that the vehicles were already removed from the Zankls business' lots and were in the possession of Defendant Moshe Farache at the time the Verified Complaint was filed.

220.212.	On April 12, 2022, counsel for the FVP Parties, via email, requested that Brandes notify the FVP Parties of the vehicles that were in the possession of Defendant Moshe Farache. In response, on April 13, 2022, Brandes sent counsel for the FVP Parties a list containing 32 vehicles. **Exhibit AA**.

221.213.	Brandes knew, or on reasonable inquiry should have known, that this list was false when delivered.

222.214.	The following day, April 14, 2022, a hearing was held on the FVP Parties' Motion for Appointment of a Receiver. *See Transcript of April 14, 2022 Hearing, Filed of Record on June 2, 2022 as Filing No. 150717053.*

223.215.	At that hearing, attorney Craig Blinderman, on behalf of the Brandes Firm, represented to the Court that 27 of the expensive luxury cars that Defendants Moshe Farache, Lisa

Farache and Chase Farache took from what the FVP Parties claim as their collateral on the list sent to undersigned counsel the day before, on April 13, 2022, were in the possession of Defendant Moshe Farache. *See id.* at 20 (emphasis added) ("**We only have these 27 vehicles. The other vehicles were sold.**")

224.216. However, minutes before the hearing on April 14, 2022, Defendant Moshe Farache, through his attorneys, filed a *sworn affidavit* that stated:

9. AWB also purchased, obtained title and took possession of the vehicles listed as numbers 28-36 on **Exhibit 1**. These vehicles, prior to their purchase by AWB, were in Palm Beach County, Florida, and continue to be held in Palm Beach County, Florida.

10. AWB is presently storing the aforementioned vehicles in its possession in an air-conditioned, secured facility located in Palm Beach County, Florida. Moreover, AWB procured a commercial general liability insurance in the sum of $500,000, per vehicle, each occurrence. A copy of the certificate of insurance is attached hereto as **Exhibit 4**.

*Affidavit of Moshe Farache, Filed of Record on July 21, 2022 as Filing No. 153792567 (filed then as Exhibit GG – not to be confused with Exhibit GG to this Complaint ).*

225.217. The list attached to Defendant Moshe Farache's immediately aforementioned Affidavit, at Exhibit 1, listed **22 cars**.

| | MAKE | MODEL | YEAR | COLOR | VIN | PURCHASE DATE | TITL |
|---|---|---|---|---|---|---|---|
| 1 | ASTON MARTIN | DB11 VOLANTE | 2019 | BEIGE | SCFRMFCW6KGM07671 | 2/28/2022 | Y |
| 2 | FERRARI | F12 BERLINETTA | 2017 | RED | ZFF74UFA7H0221036 | 2/2/2022 | Y |
| 6 | MERCEDES | G63 | 2020 | GREEN | W1NYC7HJ6LX346462 | 2/23/2022 | Y |
| 8 | ROLLS ROYCE | GHOST | 2021 | GRAY | SCATV0C04MU207524 | 3/9/2022 | N |
| 10 | BENTLEY | FLYING SPUR | 2017 | BLACK | SCBEC9ZA0HC065523 | 4/1/2022 | Y |
| 11 | BMW | X7 | 2019 | BLUE | 5UXCX4C56KLS39222 | 12/29/2021 | Y |
| 13 | GMC | YUKON | 2019 | WHITE | 1GKS1CKJ8KR354378 | 3/15/2022 | Y |
| 16 | MCLAREN | 720S | 2018 | WHITE | SBM14DCA9JW000606 | 3/1/2022 | Y |
| 17 | MERCEDES | G WAGON | 2021 | WHITE | W1NYC7HJ0MX390328 | 2/16/2022 | Y |
| 18 | MERCEDES | G63 | 2020 | BLUE | W1NYC7HJ6LX362080 | 2/9/2022 | Y |
| 20 | PORSCHE | 911 | 2008 | RED | WP0AD29978S783176 | 3/15/2022 | Y |
| 24 | MCLAREN | 720S | 2020 | WHITE | SBM14FCA5LW004229 | 1/19/2022 | Y |
| 26 | LAMBORGHINI | URUS | 2019 | BLUE | ZPBUA1ZLXKLA01961 | 3/7/2022 | N |
| 27 | FERRARI | 812 SUPERFAST | 2020 | BLACK | ZFF83CLA1L0254693 | 3/9/2022 | Y |
| 28 | CADILLAC | ESCALADE | 2018 | BLACK | 1GYS4BKJXJR261612 | 4/2/2022 | Y |
| 29 | FERRARI | 458 ITALIA | 2013 | BLACK | ZFF68NHA8D0191526 | 4/2/2022 | Y |
| 30 | JEEP | GLADIATOR | 2021 | BLACK | 1C6HJTAG0ML564806 | 4/2/2022 | Y |
| 31 | JEEP | GLADIATOR | 2021 | BLACK | 1C6HJTAG1ML571540 | 4/2/2022 | Y |
| 32 | LAMBORGHINI | HURACAN | 2017 | BLACK | ZHWUR2ZF8HLA08121 | 4/2/2022 | Y |
| 34 | MCLAREN | 720S | 2018 | BLACK | SBM14DCA7JW001804 | 4/2/2022 | Y |
| 35 | MCLAREN | 720S | 2019 | ORANGE | SBM14FCA9KW003714 | 4/2/2022 | Y |
| 36 | MERCEDES | G CLASS | 2020 | BLUE | WDCYC7HJ9LX334940 | 4/2/2022 | Y |

226.218. Putting aside that Brandes and Blinderman represented that "27 vehicles

Page 39 of 90

that currently are in Mr. Farache's possession. They're being held in an air conditioned secure location[,]" Defendant Moshe Farache stated in writing and under oath that 22 were in his possession by Affidavit on April 14, 2022. *Meaning 10 cars were removed from the list sent to the FVP Parties' attorneys the previous day.*

227.219.    At the hearing of April 14, 2022, attorneys Brandes and Blinderman, on behalf of the Brandes Firm, in no uncertain terms, stated that the number of cars as represented were safe.

228.220.    The Court took Defendant Moshe Farache at his word and ordered a "freeze frame," wherein no cars could be sold and the number of cars represented as being held by Defendant Moshe Farache and his attorneys safeguarded. The Court authorized the FVP Parties to immediately check the vehicles, and the location of the vehicles was stated on the record at the hearing.

229.221.    Immediately after the hearing, Robert Crispin, the FVP Parties' investigator, went to the "airconditioned warehouse" identified by Defendant Moshe Farache and *found only 13 vehicles*. Defendants Moshe Farache and Lisa Farache confirmed to Mr. Crispin that those were all the remaining vehicles from the over 32 originally taken by Defendants Moshe Farache, Lisa Farache and Chase Farache from the Karma Entities' lots.

230.222.    Further, one of the vehicles that Defendant Moshe Farache represented in his April 14, 2022 Affidavit as being "safeguarded" in the "air-conditioned warehouse" – Vehicle No. 30 in Exhibit 1 in the Farache Affidavit, a 2021 Jeep Gladiator Black, VIN: 1C6HJJAG0ML564806 (Gladiator 4806) which came into the possession of Defendant Moshe Farache on or about April 1, 2022 – was, in fact, sold during or after the hearing. **Exhibit BB**.

231.223.    Critically, and inexplicably, the Affidavit of Defendant Moshe Farache filed on April 14, 2022, filed by attorneys Brandes and Blinderman, on behalf of the Brandes Firm, diametrically changed the claim that Defendant Moshe Farache was making to the vehicles from that filed under oath in the foreclosure action in Palm Beach County just six (6) days prior. In Defendant Moshe Farache's April 14, 2022 Affidavit, Defendant Moshe Farache swore under oath that he *purchased* all of the vehicles and that he was entitled to the possession of the vehicles because he or his companies then owned them.

232.224.    On April 15, 2022, the FVP Parties immediately moved to hold Defendant

Moshe Farache in contempt for his intentional misrepresentations to the Court the previous day.

233.225.      In an attempt to defend against the rule to show cause in contempt and to spin the obviously false affidavit filed of record on April 14, 2022, Defendant Moshe Farache filed a *third* Affidavit on May 26, 2022 in which he offered various excuses for his April 14, 2022 sworn statement and then stated that he was holding *19 vehicles*. Meaning he added six (6) vehicles that he was hiding at a different location when questioned by the investigator on April 14, 2022. **Exhibit CC**.

234.226.      In the May 26, 2022 Affidavit, Defendant Moshe Farache makes clear that the reason that his prior affidavit filed on April 14, 2022 was inaccurate was the fault of Brandes who filed the affidavit without verifying any of the facts within it and, in fact, filed a document that was inaccurate. See **Exhibit CC**.

235.227.      From the date the Plaintiffs' collateral was taken from the Karma Entities' lots,  Defendants Moshe Farache and Lisa Farache sold several of the vehicles that comprise the FVP Parties' collateral and conspired with others to sell the FVP Parties' collateral.

236.228.      The acts of Defendants Brandes, the Brandes Firm, Moshe Farache, Lisa Farache and other coconspirators in making the aforementioned misrepresentations to the attorneys for the FVP Parties and the Court were intentional and made for the sole purpose of delaying and obfuscating the ability of the FVP Parties to retrieve and reclaim their Collateral, permitting Defendants Moshe Farache and Lisa Farache, and their aiders, abettors and co-conspirators, to convert, sell or otherwise fraudulently transfer the FVP Parties' collateral and the proceeds therefrom.

237.229.      The conspiracy and aiding and abetting as pled in this Complaint involving the Brandes Firm commenced in March of 2022, and prior to any litigation and was not part of any litigation or anticipated litigation with the FVP Parties or other parties.

238.230.      However, once the litigation was evident and then commenced, the Brandes Firm had the ability to withdraw from the conspiracy but elected to remain as co-conspirators with Defendants Moshe Farache, Lisa Farache and others during and as part of the litigation for the intended purpose of removing the FVP Parties' collateral from their reach while vehicles were sold.

239.231.      None of the funds from the sale of any of the vehicles that the Brandes Firm announced were sold at the April 14, 2022 hearing were safeguarded by the Brandes Firm pending

the claims of the FVP Parties.

240.232.     Due to the acts of Brandes and the Brandes Firm, the FVP Parties were damaged.

I.     MOSHE FARACHE'S CLAIM TO OWNERSHIP OF ANY OF THE VEHICLES TAKEN WAS FRAUDULENT AND AN INTENTIONAL ACT TO DEFRAUD THE FVP PARTIES .

241.233.     Defendant Moshe Farache's claim to ownership of any of the vehicles or other property removed from the lots of the Karma Entities, either personally or through any of his companies, was fabricated. The Karma Entities, at all times, owned all of the vehicles that were taken by Defendants Moshe Farache, Lisa Farache, Chase Farache and their coconspirators on or about April 1, 2022.

242.234.     Defendants Farache and Scott Zankl had a creditor / debtor relationship. Part of the creditor / debtor relationship was pursuant to a written loan agreement, while the other part was oral. The result being that Defendant Moshe Farache was charging and collecting a usurious interest rate from Scott Zankl and his companies over the years.

243.235.     To hide the illegal loans, Defendant Moshe Farache created false paperwork to ostensibly show that after one of the Karma Entities purchased a vehicle, it would then purportedly be sold to non-party EAG and then to one of the Farache's companies.

244.236.     These transactions were without money representing the market value of the vehicles really being paid between any of the parties and were done at the request of Defendant Moshe Farache, who apparently believed that these transactions would give the Debtor Defendant Moshe Farache a basis to assert a security interest in the vehicle to make up for the lack of a security agreement and financing statement from the Karma Entities.

245.237.     At no time in 2021 for the over 100 fabricated transactions did Defendant Moshe Farache or his companies ever take possession of any of the vehicles. At all times, the vehicles remained on the Karma Entities' lots until ultimate customers bought the vehicles by paying funds directly to the Karma Entities. In other words, the Karma Entities sold the vehicles to the end customer.

246.238.     Transactions in 2022 were no different. Defendant Moshe Farache, with the forced acquiescence under duress of Scott Zankl and other Karma Entities employees, created false paperwork to show, ostensibly, that after one of the Karma Entities purchased a vehicle from a third

party, the vehicle would then be sold to non-party EAG, which would then either transfer it to Defendant Moshe Farache or his companies, or back to one of the Karma Entities.

247.239.      The 2022 transactions were without objective market value being paid or adequate consideration being exchanged between any of the parties when compared to the value of the vehicles ostensibly transacted. All of the paper transactions were done at the demand of Defendant Moshe Farache who believed that these transactions would give him or his companies a legitimate claim to either a security interest in the vehicles, or ownership of the vehicles.

248.240.      All of the paper transactions were false and intentionally false.

249.241.      All of the applicable bank records and other documentary evidence reflect that Defendant Moshe Farache and his companies received millions of dollars from the Karma Entities when it should have been paying those sums if the created putative purchase and sale paperwork was in fact true.

250.242.      The reason for all of the above sham transactions and the participation of Scott Zankl in the false paperwork is that when Scott Zankl told Defendant Moshe Farache that he and non-party EAG were having problems paying the money that Scott Zankl and non-party EAG borrowed from Defendant Moshe Farache, Scott Zankl was threatened by Defendant Moshe Farache who created an atmosphere of extreme duress and intimidation.

J.      AS A CONTINUATION OF THE FRAUD, MOSHE FARACHE, WITH THE HELP OF HIS LAWYERS FILED A FALSE AND FRAUDULENT BANKRUPTCY PETITION FOR THE SOLE PURPOSE OF MAKING THE FVP PARTIES SPEND EXTRAORDINARY FEES AND COSTS TO RECOVER THEIR COLLATERAL IN A SEPARATE LAWSUIT.

251.243.      On the eve of a hearing scheduled for July of 2022 in which the FVP Parties sought to recover their collateral by replevin, Defendant Farache, for non-party AWB, filed the AWB Bankruptcy.

252.244.      The filing of the AWB Bankruptcy required the FVP Parties to spend an extraordinary amount of money in attorney's fees and costs as it placed the FVP Parties in a position where it was necessary to protect their interests in a suit against the AWB Bankruptcy estate as well as against Defendants Hi Bar and Franklin as a result the fraud of Defendant Moshe Farache and his co-conspirators.

253.245.      The fraud committed by Defendant Moshe Farache and his co-conspirators placed the FVP Parties in a position where it was necessary to protect their interests in a suit against

the AWB Bankruptcy estate as well as Hi Bar and Franklin in the Bankruptcy Case in an adversary complaint.

254.246.      The FVP Parties demand from Defendant Moshe Farache and his co-conspirator Defendant Lisa Farache their attorney's fees and costs incurred in the AWB Bankruptcy which were wholly caused by their fraud and deceit and were the natural and necessary consequences of their fraudulent acts.

K.      THE BANKRUPTCY COURT FOUND THAT THE AWB BANKRUPTCY WAS FILED IN BAD FAITH, SUGGESTED THAT DEFENDANT MOSHE FARACHE ENGAGED IN ACTS TO DEFRAUD THE FVP PARTIES AND THAT DEFENDANT MOSHE FARACHE COULD NOT BE BELIEVED.

255.247.      The salient order of the United States Bankruptcy Court in and for the Southern District of Florida entered in the AWB Bankruptcy is filed herewith as **Exhibit FF**.

256.248.      That order converted the AWB Bankruptcy case to a Chapter 7.

257.249.      As a result of this conversion to a Chapter 7, the remaining vehicles taken by Defendant Moshe Farache were ordered auctioned, with the proceeds to be placed into an escrow account pending the outcome of the priority determination that is the subject matter of the claims in this Complaint against Hi Bar regarding the priority of the claimed security interests to the claimed collateral (the "Auctioned Vehicle Fund"). **Exhibit GG**. The Auctioned Vehicle Fund will also include those funds derived from the sale of any other vehicles which comprise the FVP Parties collateral not included in the AWB Bankruptcy.

258.250.      The FVP Parties seek, *inter alia*, an order directing the entire Auctioned Vehicle Fund be paid over to the FVP Parties as well as any other FVP Parties collateral or funds derived therefrom.

259.251.      Neither Defendants Moshe Farache nor Lisa Farache, nor non-party AWB, were ever a purchaser in good faith of any of the vehicles that are being sold to comprise the Auctioned Vehicle Fund.

260.252.      The FVP Parties have retained undersigned counsel and have agreed to pay undersigned counsel a reasonable fee for their services.

261.253.      All conditions precedent to bringing this action have been met, have occurred or have been waived.

**PART I**

**TORT CLAIMS AND**
**PIERCING THE CORPORATE VEIL**

**COUNT I**
**FRAUD AND FRAUD IN THE INDUCEMENT**
**AGAINST LUBIN AND HI BAR**

262.254.    The FVP Parties reallege paragraphs 1 through 261253, and further allege:

263.255.    Commencing in and around October of 2021, and continuing through the date of the filing of this Complaint, Defendants Lubin and Hi Bar made representations to the FVP Parties and others, including lawyers, witnesses and representatives of the FVP Parties, Scott Zankl and the Karma Entities, that Hi Bar did not have a protectable security interest in the inventory of the Karma Entities.

264.256.    Lubin and Hi Bar specifically and intentionally caused the filing of a UCC termination statement on or about December 19, 2021 for the express purpose of representing to the FVP Parties and their due diligence investigators that Hi Bar did not have a protectable security interest in the inventory of the Karma Entities.

265.257.    This termination of the four (4) days old UCC Financing Statement - **Exhibit E** - was specifically and intentionally made as a material direct, false and fraudulent misrepresentation to the FVP Parties that Hi Bar had no secured interests in the Karma Entities' collateral. The termination states:

> "Effectiveness of the Financing Statement identified above is terminated with respect to the security interests of the Secured Party authorizing this Termination Statement."

*Id*.

266.258.    This representation filed of public record, **Exhibit E**, was intentionally made to the FVP Parties and was so made for the sole purpose of notifying the FVP Parties that Hi Bar had no security interests to protect. This representation was false when made and intentionally false. The FVP Parties justifiably relied upon the misrepresentation to their detriment.

267.259.    To double down on the fraud, non-party Zakharyayev, an attorney acting for Defendants Lubin and Hi Bar, advised non-party O'Donnell, an agent intermediary between the FVP Parties and Zankl, that the Hi Bar UCC Financing Statement of December 15, 2021 was a mistake and was "erroneously filed." **Exhibit F**.

268.260.    This representation was specifically made to the FVP Parties for the sole purpose of notifying the FVP Parties that Hi Bar had no security interests to protect, and was false when made and intentionally false. The FVP Parties justifiably relied upon the misrepresentation to their detriment.

269.261.    The sole purpose of the termination filed in the public record and communicated to the FVP Parties, together with the explanation that the filing was a mistake, was to convince the FVP Parties that Hi Bar had no protectable interest in the collateral of the Karma Entities so that the FVP Parties would rest assured that Hi Bar was not a threat to their security interests and proceed to fund a loan to the Karma Entities with Defendants Lubin and Hi Bar waiting in the wings to pounce with a second UCC Financing Statement which would be filed minutes before any filing by the FVP Parties.

270.262.    Defendants Lubin and Hi Bar knew that the statements were false.

271.263.    Defendants Lubin and Hi Bar knew or should have known that the FVP Parties would rely on their intentional misrepresentations.

272.264.    The FVP Parties did, in fact, rely upon these false and intentional misrepresentations to their detriment.

273.265.    In justifiable reliance on the aforementioned misrepresentation, the FVP Parties loaned the FVP Loan to the Zankls and the Karma Entities in tranches beginning on January 26, 2022; only to later learn that late the night before, Defendant Hi Bar, at the request of Defendant Lubin, filed a UCC financing statement to ostensibly create a superior position for Defendants Lubin and Hi Bar in the FVP Parties' collateral.

274.266.    The actions of Defendants Lubin and Hi Bar constitute fraud.

275.267.    The fraud was perpetrated by Defendants Lubin and Hi Bar to unlawfully receive the funds that the FVP Parties would loan to the Karma Entities by transfer from the Karma Entities that the FVP Parties were unaware of and did not approve, and would not have made the loan had they been aware of such.

276.268.    As a direct and proximate result of Defendants Lubin and Hi Bar's fraud, the FVP Parties have suffered damages in an amount within the jurisdictional limits of this Court.

277.269.    But for the fraud, the FVP Loan would not have been made. The FVP

Parties' damages are the amount of the FVP Loan plus costs and prejudgment interest minus any recovery from joint tortfeasors.

278.270.     The fraud committed by Defendants Lubin and Hi Bar placed the FVP Parties in a position where it was necessary to protect their interests in a separate lawsuit filed in an adversary complaint against the AWB Bankruptcy estate as well as against Hi Bar in the AWB Bankruptcy.

279.271.     In addition to other damages, the FVP Parties demand from Defendants Lubin and Hi Bar those attorney's fees and costs incurred in that adversary complaint litigation against the AWB Bankruptcy estate as well as Defendant Hi Bar in the AWB Bankruptcy resulting from the fraud and deceit of Defendants Lubin and Hi Bar as the natural and necessary consequences of their fraudulent acts.

280.272.     The FVP Parties demand damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the FVP Parties demand judgment against Defendants Lubin and Hi Bar for damages in an amount within the jurisdictional limits of this Court and respectfully reserve the right to amend this Complaint to demand punitive damages and join other parties similarly situated, if and as required. The FVP Parties demand a trial by jury on this Count I.

### COUNT II
### CIVIL CONSPIRACY TO COMMIT FRAUD
### LUBIN AND HI BAR

281.273.     The FVP Parties realleges paragraphs 1 through 261253, and further allege:

282.274.     This is an action for civil conspiracy, seeking damages in excess of $50,000, exclusive of interest, attorneys' fees and costs.

283.275.     Commencing in and around October of 2021, and continuing through the date of the filing of this Complaint, Defendants Lubin and Hi Bar, together with non-party co-conspirator Zakharyayev and others known and unknown to the FVP Parties, acted in concert to develop and pursue the scheme detailed *supra* to wrongly defraud the FVP Parties.

284.276.     Defendants Lubin and Hi Bar, and non-party Zakharyayev and others known and unknown to the FVP Parties, acted in concert to make representations to the FVP Parties

and others, including lawyers, witnesses and representatives of the FVP Parties, Scott Zankl and the Karma Entities, that Hi Bar did not have a protectable security interest in the inventory of the Karma Entities.

285.277.      The misrepresentations were made to fraudulently induce the loan that the FVP Parties intended to make to the Zankls and the Karma Entities for the express intent that Defendants Lubin and Hi Bar would be given a portion of the loan proceeds, sums to which they were not entitled.

286.278.      Specifically, each of Defendants Lubin and Hi Bar, and non-party Zakharyayev, undertook an overt act, or multiple overt acts, in pursuit of the conspiracy, which include, but are not limited to:

    a.   the filings of the UCC Termination Statement on or about December 19, 2021;

    b.   making assurances to representatives of the FVP Parties that Defendant Hi Bar did not have a protectable security interest in the inventory of the Karma Entities;

    c.   pressuring Scott Zankl to deliver to Defendant Lubin confidential and private loan documents;

    d.   planning to file a UCC financing statement late at night for the express purpose of hiding the filing from the due diligence inquiries of the FVP Parties;

    e.   non-party Zakharyayev actually filing the UCC financing statement late at night at the direction of Defendants Lubin and Hi Bar for the express purpose of hiding the filing from the due diligence inquiries of the FVP Parties;

    f.   Defendant Lubin pressuring Scott Zankl and the Karma Entities to deliver the FVP Loan to Defendants Lubin and Hi Bar knowing full well that the loaned funds could not be used for such purposes, and directing the funds be paid to the account of non-party Zakharyayev for distribution to the co-conspirators; and

    g.   demanding unconscionable and illegal payments on loans masquerading as a purchase of "receivables."

287.279.      The agreement, scheme and overt acts of Defendants Lubin and Hi Bar, together with non-party co-conspirator Zakharyayev and other co-conspirators unknown to the FVP Parties at this time, in furtherance of their unlawful and fraudulent scheme constitutes a civil

conspiracy in violation of Florida law.

288.280.    Defendants Lubin and Hi Bar, together with non-party co-conspirator Zakharyayev, each had a personal stake in the conspiracy, which personal stake was more than incidental and motivated by personal bias.

289.281.    As a direct and proximate result of Defendants Lubin and Hi Bar, together with non-party co-conspirator Zakharyayev, the FVP Parties have suffered damages in an amount within the jurisdictional limits of this Court.

290.282.    But for the conspiracy, the FVP Loan would not have been made. The FVP Parties' damages are the amount of the FVP Loan plus costs and prejudgment interest minus any recovery from joint tortfeasors.

291.283.    The fraud committed by Defendants Lubin and Hi Bar placed the FVP Parties in a position where it was necessary to protect their interests in a separate lawsuit filed in an adversary complaint against the AWB Bankruptcy estate as well as Defendant Hi Bar in the AWB Bankruptcy case.

292.284.    In addition to other damages, the FVP Parties demand from Defendants Lubin and Hi Bar those attorney's fees and costs incurred in that adversary complaint against the AWB Bankruptcy estate as well as Defendant Hi Bar in the AWB Bankruptcy case resulting from the fraud and deceit of Defendants Lubin and Hi Bar as the natural and necessary consequences of their fraudulent acts.

293.285.    The FVP Parties demand damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the FVP Parties demand judgment against Defendants Lubin and Hi Bar for an amount within the jurisdictional limits of this Court, and respectfully reserve the right to amend this Complaint to demand punitive damages and join other parties similarly situated, if and as required. The FVP Parties demand a trial by jury on this Count II.

**COUNT III**
**NEGLIGENT MISREPRESENTATION**
**LUBIN AND HI BAR**

294.286.    The FVP Parties realleges paragraphs 1 through 261253 and further allege:

295.287.    Commencing in and around October of 2021, and continuing through the date of the filing of this Complaint, Defendants Lubin and Hi Bar made representations to the FVP Parties and others, including lawyers, witnesses and representatives of the FVP Parties, Scott Zankl and the Karma Entities, that Defendant Hi Bar did not have a protectable security interest in the inventory of the Karma Entities.

296.288.    Defendants Lubin and Hi Bar specifically and intentionally caused the filing of a UCC termination statement on or about December 19, 2021 for the express purpose of representing to the FVP Parties and their due diligence investigators that Defendant Hi Bar did not have a protectable security interest in the inventory of the Karma Entities.

297.289.    This termination of the four (4) days old UCC Financing Statement - **Exhibit E** - was specifically and intentionally made as a material direct misrepresentation to the FVP Parties that Hi Bar had no secured interests in the Karma Entities' collateral. The termination states:

> "Effectiveness of the Financing Statement identified above is terminated with respect to the security interests of the Secured Party authorizing this Termination Statement."

298.290.    This representation filed of record as **Exhibit E** was intentionally made to the FVP Parties and was done for the sole purpose of notifying the FVP Parties that Defendant Hi Bar had no security interests to protect.

299.291.    The sole purpose of the termination filed in the public record and communicated to the FVP Parties, together with the explanation that the filing was a mistake, was to convince the FVP Parties that Defendant Hi Bar had no protectable interest in the collateral of the Karma Entities so that the FVP Parties would rest assured that Defendant Hi Bar was not a threat to their security interests and as a result proceed to fund a loan to the Karma Entities, with Defendants Lubin and Hi Bar waiting in the wings to pounce with a second UCC Financing Statement which would be filed minutes before any filing by the FVP Parties.

300.292.    To double down on the misrepresentation, non-party Zakharyayev, an attorney acting for Defendants Lubin and Hi Bar at their direction, advised non-party O'Donnell, an agent intermediary between the FVP Parties and the Zankls, that the Hi Bar UCC Financing Statement of December 15, 2021 was a mistake and was "erroneously filed." **Exhibit F**.

301.293.    These representations were specifically made to the FVP Parties for the sole

Page 50 of 90

purpose of notifying the FVP Parties that Hi Bar had no security interests to protect.

302.294.      Defendants Lubin and Hi Bar either knew the representations were false, or made the representations without knowledge as to their truth or falsity, or made the representations under circumstances in which Defendants Lubin and Hi Bar ought to have known of their falsity.

303.295.      The misrepresentations were of a material fact.

304.296.      Defendants Lubin and Hi Bar intended that the FVP Parties would rely on the misrepresentations and act upon them.

305.297.      The FVP Parties, in fact, justifiably relied upon the misrepresentations and acted upon the misrepresentations to their detriment.

306.298.      In justifiable reliance on the aforementioned misrepresentations, the FVP Parties loaned the FVP Loan to the Zankls and the Karma Entities in tranches beginning on January 26, 2022, only to later learn that late the night before, Defendant Hi Bar, at the request of Defendant Lubin, filed a UCC financing statement to ostensibly create a superior position for Defendants Lubin and Hi Bar in the FVP Parties' collateral securing the FVP Loan.

307.299.      The actions of Defendants Lubin and Hi Bar constitute negligent misrepresentation.

308.300.      As a direct and proximate result of Defendants Lubin and Hi Bar's negligent misrepresentation, the FVP Parties have suffered damages in an amount within the jurisdictional limits of this Court.

309.301.      But for the negligent misrepresentation, the FVP Loan would not have been made. The FVP Parties' damages are the amount of the FVP Loan plus costs and prejudgment interest minus any recovery from joint tortfeasors.

310.302.      The FVP Parties demand damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the FVP Parties demand judgment against Defendants Lubin and Hi Bar for an amount within the jurisdictional limits of this Court, and respectfully reserve the right to amend this Complaint to demand punitive damages and join other parties similarly situated, if and as required. The FVP Parties demand a trial by jury on this Count III.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP**
**LUBIN AND HI BAR**

311.303. The FVP Parties reallege paragraphs 1 through 261253 and further allege:

312.304. This is an action for intentional interference with advantageous business relationships, seeking damages in excess of $50,000, exclusive of interest, attorneys' fees and costs.

313.305. Commencing in and around October of 2021 and continuing through the date of the filing of this Complaint, the FVP Parties had a prospective and ongoing business relationship with the Zankls and the Karma Entities.

314.306. Defendants Lubin and Hi Bar were fully aware of the existence of the prospective and ongoing business relationship.

315.307. Through statements and acts, Defendants Lubin and Hi Bar, personally or by and through their agents, intentionally, knowingly and without justification interfered with those advantageous and prospective business relationships by making material misrepresentations, engaging in unlawful acts and surreptitiously scheming to impose their interests in a superior position to the FVP Parties by unconscionable and tortious acts as pled in this Complaint.

316.308. As a direct and proximate result, the FVP Parties have suffered damages within the jurisdictional limits of this Court.

317.309. The FVP Parties' damages are the amount of the FVP Loan plus costs and prejudgment interest minus any recovery from joint tortfeasors.

318.310. The FVP Parties demand damages in an amount within the jurisdictional limits of this Court.

319.311. All conditions precedent to this action have occurred, have been performed or have been waived.

WHEREFORE, the FVP Parties demand judgment against Defendants Lubin and Hi Bar for an amount within the jurisdictional limits of this Court, and respectfully reserve the right to amend this Complaint to demand punitive damages and join other parties similarly situated, if and as required. The FVP Parties demand a trial by jury on this Count IV.

**COUNT V**

## COMPLAINT TO VOID OR SUBORDINATE HI BAR UCC FILING BASED ON FRAUD

### LUBIN AND HI BAR

320.312.    The FVP Parties reallege paragraphs 1 through 261253 and further allege:

321.313.    The FVP Parties seek to void or subordinate any lien arising from the January 25, 2022 Hi Bar UCC filing, **Exhibit J**, based on fraud in any of the Karma Entities' inventory and the Auctioned Vehicle Fund.

322.314.    The actions of Defendant Hi Bar comprise fraudulent conduct with the intended and express target of the fraud being the FVP Parties.

323.315.    The UCC Termination Statement filed on December 19, 2021 was an "instrument" as defined in Section 817.535 of the Florida Statutes, and contained materially false information and was filed with the intent to defraud.

324.316.    The UCC Financing Statement filed on January 25, 2022 at 10:55 pm was an "instrument" as defined in Section 817.535 of the Florida Statutes, and was filed with the intent to defraud and was the second act to the immediately aforementioned December 19, 2022 fraudulent filing.

325.317.    The UCC Financing Statement filed on January 25, 2022 at 10:55 P.M. was a materially false, fictitious, or fraudulent statement or representation as the filing itself was the final overt act to execute the sting and the last deliberate action taken to carry out the con and perpetrate a fraud against the FVP Parties; was filed for the sole purpose of defrauding the FVP Parties; and Defendant Hi Bar paid no consideration for the alleged interest.

326.318.    The FVP Parties demand that the UCC Financing Statement filed on January 25, 2022 at 10:55 P.M. be declared null and void *ab initio* or otherwise subordinating it to the UCC filing of the FVP Parties.

327.319.    The FVP Parties demand a finding of intent to defraud or harass to be determined by a jury.

328.320.    The FVP Parties demand actual damages and such other relief as the Court deems just and proper within its sound discretion.

329.321.    The FVP Parties have retained undersigned counsel and have agreed to pay undersigned counsel a reasonable fee.

WHEREFORE, the FVP Parties demand judgment against Defendants Lubin and Hi Bar voiding the UCC statement in whole or in part, or otherwise subordinating it to the UCC filing of the FVP Parties, attorneys fees and costs, and such other relief as the Court deems just and proper, and reserve the right to move to amend this Complaint to seek punitive damages. The FVP Parties demand a trial by jury on this Count V.

**COUNT VI**
**COMPLAINT TO VOID  OR SUBORDINATE HI BAR UCC FILING**
**BASED ON ILLEGALITY**

**LUBIN AND HI BAR**

330.322.    The FVP Parties reallege paragraphs 1 through 261253 and further allege:

331.323.    The FVP Parties seek to void or subordinate any lien arising from the January 25, 2022 Hi Bar UCC filing, **Exhibit J**, based on illegality in any of the Karma Entities' inventory and the Auctioned Vehicle Fund.

332.324.    The acts of Lubin and Hi Bar are outrageous, violate Florida public policy, are unconscionable and are unquestionably illegal in Florida. To the extent that this Court is required to view the acts of Defendant Hi Bar through the prism of New York law; it is clear that the loans were less than $2.5 million at commencement and the usurious interest, itself, cannot be used to bootstrap an illegal loan into a legal loan by combining legal principal and illegal interest.

333.325.    Defendants Lubin and Hi Bar may call it an "advance" or "purchase of receivables," but it was, and is, an obvious usurious loan, plain and simple. None of the borrowers had receivables. Hi Bar and Spin attempted to mask their loan agreements as receivables purchases, but Hi Bar never bothered to analyze the receivables because the fact that borrowers had no receivables would have made no difference.

334.326.    These were criminally usurious loan contracts under both New York law and Florida law created by very smart lawyers for very unethical lenders. As to the "Balance Transfer" to Defendant Hi Bar, the loan charges increased by Fifty and Three-Tenths Percent (50.3%). When Hi Bar and Scott Zankl, non-party EAG and the Karma Entities executed a "Settlement Agreement," the loan charges increased another Fifty Percent (50%) – without a penny being paid to non-party EAG or the Karma Entities.

335.327.    The FVP Parties demand that this Court find that the merchant contract

agreements entered into between Hi Bar, Scott Zankl, non-party EAG and the Karma Entities, and ensuing conduct and pressure tactics, were unconscionable, illegal, and violative of Florida public policy and therefore the UCC that spawned from the illegal conduct void and unenforceable.

336.328.    The Hi Bar UCC Financing Statement filed on January 25, 2022 was the intended result and the fruit of the unconscionable and illegal conduct, and was intended to cause direct harm to the FVP Parties.

337.329.    The FVP Parties demand that the court declare the Hi Bar UCC Financing Statement filed on January 25, 2022 at 10:55 P.M. null and void or otherwise subordinated to the lawful UCC filing of the FVP Parties.

WHEREFORE, the FVP Parties demand judgment against Defendants Lubin and Hi Bar voiding the UCC statement in whole or in part, or otherwise subordinating it to the UCC filing of the FVP Parties, and such other relief as the Court deems just and proper. The FVP Parties demand a trial by jury on this Count VI.

### COUNT VII
### COMPLAINT TO VOID OR SUBORDINATE HI BAR UCC FILING BASED ON THE FLORIDA UNIFORM FRAUDULENT TRANSFER ACT

#### LUBIN AND HI BAR

338.330.    The FVP Parties reallege paragraphs 1 through 261253 and further allege:

339.331.    The FVP Parties seek to void or subordinate any lien arising from the January 25, 2022 Hi Bar UCC filing, **Exhibit J**, based on the Florida Uniform Fraudulent Transfer Act (the "FUFTA") in any Karma Entities' inventory and the Auctioned Vehicle Fund.

340.332.    This is a claim to avoid a fraudulent obligation as to a future creditor pursuant to Sections 726.105(1)(a) and (b) as well as Section 726.108(1) of the Florida Statutes, the FUFTA.

341.333.    The FVP Parties are a creditor as defined in Section 726.102 of the Florida Statutes as they hold claims against the Karma Entities under loan agreements and as a future creditor as defined in Section 726.105 of the Florida Statutes.

342.334.    The Karma Entities are a debtor as defined in Section 726.102 of the Florida Statutes to both the FVP Plaintiffs and Hi Bar.

343.335.    On or about October 17, 2021, Scott Zankl, for non-party EAG and the

Karma Entities, entered into a financial transaction with Defendant Hi Bar.

344.336.     The result of that transaction was that non-party EAG, and the Karma Entities became obligated to Defendant Hi Bar as debtors, resulting in Defendant Hi Bar having purported rights under the transaction documents, to which the FVP Plaintiffs object, to file a UCC Financing Statement against the Karma Entities' inventory.

345.337.     The obligation to Hi Bar was incurred by Scott Zankl for non-party EAG and the Karma Entities with the actual intent of hindering, delaying, or defrauding creditors, including the FVP Parties, and was made (a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation.

346.338.     At the time of the obligation, Scott Zankl, for non-party EAG and the Karma Entities, was engaged in, or was about to engage in, a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or, intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her or its ability to pay as they became due.

347.339.     At the time the obligation was incurred, Scott Zankl, for non-party EAG and the Karma Entities, concealed the obligation; prior to the obligation, non-party EAG and the Karma Entities were sued or threatened with suit; the obligation was incurred just days before another substantial debt was incurred; non-party EAG and the Karma Entities received no equivalent value for the obligation, and, in fact, received additional debt instead of consideration; no proceeds of the Hi Bar "financing" were funded to, or for, the benefit of the Karma Entities; and non-party EAG and the Karma Entities were insolvent at the time the obligation was incurred, or were rendered insolvent by such obligation, or became insolvent shortly after the obligation was incurred.

348.340.     The FVP Parties are entitled to the avoidance of the Karma Entities / Hi Bar obligation to the extent necessary to satisfy their claims to their security interests in the Karma Entities or the Auctioned Vehicle Fund pursuant to Section 726.108(1)(a) of the Florida Statutes.

349.341.     The FVP Parties have a claim in the amount of $7.5 million dollars against the Karma Entities, which is reflected in a lien on the inventory and assets of the Karma Entities.

350.342.     Defendant Hi Bar alleges to have a corresponding lien on the Karma

Entities' inventory or the Auctioned Vehicle Fund that arises from a transaction that is voidable under the FUFTA.

351.343. The FVP Parties demand that the Court avoid or subordinate the Hi Bar UCC Financing Statement filed on January 25, 2022 at 10:55 P.M. if, and only to the extent that, it creates a lien that could be deemed superior to that of the FVP Parties in any Karma Entities' inventory and the Auctioned Vehicle Fund.

WHEREFORE, the FVP Parties demand judgment against Defendants Lubin and Hi Bar voiding the UCC statement in whole or in part, or otherwise subordinating it to the UCC filing of the FVP Parties, and such other relief as the Court deems just and proper. The FVP Parties demand a trial by jury on this Count VII.

## COUNT VIII
## COMPLAINT TO EQUITABLY SUBORDINATE THE HI BAR UCC FILING
### LUBIN AND HI BAR

352.344. The FVP Parties reallege paragraphs 1 through 261253 and further allege:

353.345. The FVP Parties seek to void or subordinate any lien arising from the January 25, 2022 Hi Bar UCC filing, **Exhibit J**, based on common law equitable subordination in any Karma Entities' inventory and the Auctioned Vehicle Fund.

354.346. The actions of Defendants Lubin and Hi Bar as outlined in this Complaint comprise fraud, gross misconduct and inequitable conduct.

355.347. The actions of Defendants Lubin and Hi Bar as outlined in this Complaint are unconscionable, egregious and severely unfair to other creditors, including the FVP Parties.

356.348. The gross misconduct and inequitable conduct of Defendants Lubin and Hi Bar caused injury to the FVP Parties.

357.349. The gross misconduct and inequitable conduct of Defendants Lubin and Hi Bar conferred an unfair advantage to Defendant Hi Bar over the FVP Parties.

358.350. The FVP Parties have a claim in the amount of $7.5 million dollars against the Karma Entities which is reflected in a lien on the inventory and assets of the Karma Entities.

359.351. Hi Bar alleges to have a corresponding lien on the Karma Entities' inventory or the Auctioned Vehicle Fund that arises from gross misconduct and inequitable conduct.

360.352.      The FVP Parties demand that the court avoid or subordinate the Hi Bar UCC Financing Statement filed on January 25, 2022 at 10:55 P.M. if, and only to the extent, that it creates a lien that could be deemed superior to that of the FVP Parties in any of the Karma Entities' inventory and the Auctioned Vehicle Fund under the common law doctrine of equitable subordination.

WHEREFORE, the FVP Parties demand judgment against Defendants Lubin and Hi Bar voiding the Hi Bar UCC Financing Statement filed on January 25, 2022 at 10:55 P.M. in whole or in part, or otherwise subordinating it to the UCC filing of the FVP Parties, and such other relief as the Court deems just and proper. The FVP Parties demand a trial by jury on this Count VIII.

**COUNT IX**
**NEGLIGENT MISREPRESENTATION**
**GRANER AND GRANER LAW GROUP**

361.353.      The FVP Parties reallege paragraphs 1 through 261253 and further allege:

362.354.      As and part of the FVP Parties' due diligence and as a required condition of the loan closing and funding, the FVP Parties required the Zankls and the Karma Entities to arrange a licensed attorney in the state of Florida to issue an opinion letter regarding the Zankls and the Karma Entities' status, and the ability of the FVP Parties to perfect their security interest in the Karma Entities' inventory.

363.355.      To that end, Defendants Graner and the Graner Law Group undertook the responsibility to investigate the facts and issue the opinion.

364.356.      On January 26, 2022, the FVP Parties were provided with an opinion letter issued by Defendants Graner and the Graner Law Group. *See* **Exhibit M** (the "Graner Opinion Letter").

365.357.      Defendants Graner and the Graner Law Group rendered the following opinions:

> 4. The consummation of the transactions contemplated by the Loan Documents and the carrying out of the terms thereof will not result in violation of any provisions of the articles of incorporation, bylaws or other governing documents of any Borrower, or result in the violation of any provision of, or in a default under, any indenture, mortgage, deed of trust, indebtedness, agreement, judgment, decree, order, statute, rule or regulation to which any Credit Party is a party or by which it or its property is bound.

5. There are no legal or governmental actions, suits, proceedings, inquiries or investigations pending, threatened or contemplated, or any basis therefor, to which any Credit Party is or may become a party or of which any property of any Credit Party is or may become subject, which, if determined adversely to such Credit Party, would not, individually or in the aggregate, have a material adverse effect on the financial position or results of operations of such Credit Party or on any Collateral owned by such Credit Party.

6. The provisions of the Security Agreement and the Pledge Agreement are effective to create a security interest in favor of the Administrative Agent, for the benefit of the Lenders, in all of each Borrower's right, title and interest in and to the Collateral described therein and all proceeds thereof. Such security interest has been properly perfected.

*Id.*

366.358.      Relying on the aforementioned representations and assurances, the FVP Parties entered into, *inter alia,* the Loan Documents with the Karma Entities through their owners, the Zankls. *See* **Exhibit N,** *et seq.*

367.359.      The statements and opinions expressed in the Graner Opinion Letter were false, and Defendants Graner and the Graner Law Group knew or should have known of the falsity of the opinions and statements.

368.360.      These representations were specifically and intentionally made to the FVP Parties to rely upon in their funding decision, and Defendants Graner and the Graner Law Group intended that the FVP Parties would rely on them to fund the FVP Loan.

369.361.      Defendants Graner and the Graner Law Group either knew the statements and opinions were false, or made the statements and opinions without knowledge as to their truth or falsity, or made the representations under circumstances in which Defendants Graner and the Graner Law Group ought to have known of their falsity.

370.362.      The misrepresentations were of material facts.

371.363.      The FVP Parties, in fact, justifiably relied upon the misrepresentations and acted upon the misrepresentations to their detriment.

372.364.      In justifiable reliance on the aforementioned misrepresentations, the FVP Parties loaned the FVP Loan to the Zankls and the Karma Entities on January 26, 2022, only to later learn that there were numerous and substantial indebtedness, agreements, claims and

threatened proceedings in direct contradiction to the statements and opinions of the Graner Opinion Letter, and that the FVP Parties' security interests were not perfected.

373.365.    The actions of Defendants Graner and the Graner Law Group constitute negligent misrepresentation.

374.366.    As a direct and proximate result of Defendants Graner and the Graner Law Group's negligent misrepresentation, the FVP Parties have suffered damages in an amount within the jurisdictional limits of this Court.

375.367.    The FVP Parties' damages are the amount of the FVP Loan plus costs and prejudgment interest minus any recovery from joint tortfeasors.

376.368.    The FVP Parties demand damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the FVP Parties demand judgment against Defendants Graner and the Graner Law Group for an amount within the jurisdictional limits of this Court. The FVP Parties demand a trial by jury on this Count IX.

**COUNT X**
**BREACH OF FIDUCIARY DUTY**
**GRANER AND GRANER LAW GROUP**

377.369.    The FVP Parties reallege paragraphs 1 through 261253 and further allege:

378.370.    As and part of the FVP Parties' due diligence and as a required condition of the FVP Loan closing and funding, the FVP Parties required the Zankls and the Karma Entities to arrange a licensed attorney in the state of Florida to issue an opinion letter regarding the Zankls and the Karma Entities' status and the ability of the FVP Parties to perfect their security interest in the Karma Entities' inventory.

379.371.    To that end, Defendants Graner and the Graner Law Group undertook the responsibility to investigate the facts and issue the opinion.

380.372.    On January 26, 2022, the FVP Parties were provided with an opinion letter issued by Defendants Graner and the Graner Law Group. See **Exhibit M** (the "Graner Opinion Letter").

381.373.    Defendants Graner and the Graner Law Group rendered the following

Page 60 of 90

opinions:

4. The consummation of the transactions contemplated by the Loan Documents and the carrying out of the terms thereof will not result in violation of any provisions of the articles of incorporation, bylaws or other governing documents of any Borrower, or result in the violation of any provision of, or in a default under, any indenture, mortgage, deed of trust, indebtedness, agreement, judgment, decree, order, statute, rule or regulation to which any Credit Party is a party or by which it or its property is bound.

5. There are no legal or governmental actions, suits, proceedings, inquiries or investigations pending, threatened or contemplated, or any basis therefor, to which any Credit Party is or may become a party or of which any property of any Credit Party is or may become subject, which, if determined adversely to such Credit Party, would not, individually or in the aggregate, have a material adverse effect on the financial position or results of operations of such Credit Party or on any Collateral owned by such Credit Party.

6. The provisions of the Security Agreement and the Pledge Agreement are effective to create a security interest in favor of the Administrative Agent, for the benefit of the Lenders, in all of each Borrower's right, title and interest in and to the Collateral described therein and all proceeds thereof. Such security interest has been properly perfected.

*Id.*

382.374.    Relying on the aforementioned representations and assurances, the FVP Parties entered into, *inter alia*, the Loan Documents with the Karma Entities through their owners, the Zankls. *See* **Exhibit N,** *et seq*.

383.375.    The statements and opinions expressed in the Graner Opinion Letter were false, and Defendants Graner and the Graner Law Group knew or should have known of the falsity of the opinions and statements.

384.376.    These representations were specifically and intentionally made to the FVP Parties to rely upon in their funding decision relative to the FVP Loan, and Defendants Graner and the Graner Law Group intended that the FVP Parties would rely on them to issue the FVP Loan.

385.377.    Defendants Graner and the Graner Law Group made representations to the FVP Parties about Graner's legal background, education, training and licensure to satisfy the FVP Parties that Defendants Graner and the Graner Law Group could render an opinion on which the FVP Parties could rely.

386.378.    There existed a relation of trust and confidence between Defendants Graner

and the Graner Law Group, on the one hand, and the FVP Parties, on the other hand, where confidence was reposed by the FVP Parties in Defendants Graner and the Graner Law Group, and a trust was accepted by Defendants Graner and the Graner Law Group.

387.379.     The trust in Defendants Graner and the Graner Law Group was intentionally acquired and abused.

388.380.     Defendants Graner and the Graner Law Group had a fiduciary duty to the FVP Parties.

389.381.     Defendants Graner and the Graner Law Group breached their fiduciary duty to the FVP Parties.

390.382.     As a direct and proximate result of Defendants Graner and the Graner Law Group's breach of fiduciary duty, the FVP Parties have been damaged in an amount within the jurisdictional limits of this court.

391.383.     The FVP Parties' damages are the amount of the FVP Loan plus costs and prejudgment interest minus any recovery from joint tortfeasors.

392.384.     The FVP Parties demand damages from Defendants Graner and the Graner Law Group.

WHEREFORE, the FVP Parties demand judgment against Defendants Graner and the Graner Law Group for an amount within the jurisdictional limits of this Court. The FVP Parties demand a trial by jury on this Count X.

## COUNT XI
## FRAUD IN THE INDUCEMENT OF THE FVP LOAN
### LISA FARACHE AND 1001 CLINT MOORE

393.385.     The FVP Parties reallege paragraphs 1 through 261253 and further allege:

394.386.     Defendant Lisa Farache is sued in her individual capacity and as the owner of 1001 Clint Moore through piercing of the corporate veil as pled in this Complaint.

395.387.     In or around January of 2022, Defendants Lisa Farache and 1001 Clint Moore made material misrepresentations to the FVP Parties regarding or relating to the fact that Defendants Lisa Farache and 1001 Clint Moore would not benefit, directly or indirectly, from the FVP Loan to the Karma Entities.

396.388.     The material misrepresentations made to the FVP Parties are based on the representations in **Exhibit W**, wherein Defendant Lisa Farache, for Defendant 1001 Clint Moore, declares that neither it, nor any of its members, *"will in any way either directly, or indirectly, receive any consideration by virtue of the [L]oan . . . ."* *Id.* (emphasis added).

397.389.     The material misrepresentations were made by Defendants Lisa Farache and 1001 Clint Moore for both herself and 1001 Clint Moore, and for and on behalf of her husband, Defendant Moshe Farache, with his knowledge, consent and urging to benefit himself, personally, and in his representative capacity for MMS.

398.390.     Defendants 1001 Clint Moore and Lisa Farache received direct consideration, and Defendants Moshe Farache and MMS received indirect consideration.

399.391.     The material misrepresentations of Defendants Lisa Farache and 1001 Clint Moore were specifically and intentionally made as a material direct, false and fraudulent misrepresentation to the FVP Parties regarding the destination and use of the FVP Loan proceeds for the purpose of assuring the FVP Parties that the FVP Loan proceeds would be used for their intended purpose.

400.392.     The representations were false when made and Defendants Lisa Farache and 1001 Clint Moore knew or should have known that the FVP Parties would rely on them.

401.393.     The FVP Parties, in fact, relied on the representations to their detriment.

402.394.     The material misrepresentations were specifically and intentionally made to convince the FVP Parties that the FVP Loan would be used for its intended purpose and not paid over to Defendants Lisa Farache and/or 1001 Clint Moore, or indirectly to other companies or family members for money owed to them unrelated to the purpose of the FVP Loan stated in the FVP Loan Documents which they were provided.

403.395.     Defendants Lisa Farache and 1001 Clint Moore at all times knew that the representation to the FVP Parties that they would not receive any direct or indirect consideration from the FVP Loan was false.

404.396.     Defendants Lisa Farache and 1001 Clint Moore knew or should have known that the FVP Parties would rely on these intentional misrepresentations.

405.397.     The FVP Parties did, in fact, rely upon these false and intentional

misrepresentations, which caused the FVP Parties to close the FVP Loan.

406.398.      But for the material misrepresentations, the FVP Loan would not have been made.

407.399.      The actions of Defendants Lisa Farache and 1001 Clint Moore constitute fraud.

408.400.      As a direct and proximate result of Defendants Lisa Farache and 1001 Clint Moore's fraud, the FVP Parties have suffered damages in an amount within the jurisdictional limits of this Court.

409.401.      But for the fraud, the FVP Loan would not have been made. The FVP Parties' damages are the amount of the FVP Loan plus costs and prejudgment interest minus any recovery from joint tortfeasors.

WHEREFORE, the FVP Parties demand judgment against Defendants Lisa Farache and 1001 Clint Moore for an amount within the jurisdictional limits of this Court, and respectfully reserve the right to amend this complaint to demand punitive damages and join other parties similarly situated, if and as required. The FVP Parties demand a trial by jury on this Count XI.

## COUNT XII
## UNJUST ENRICHMENT
### MMS AND 1001 CLINT MOORE

410.402.      The FVP Parties reallege paragraphs 1 through 261253 and further allege:

411.403.      This is an action for unjust enrichment in equity for damages in excess of $50,0000.00 and within the jurisdictional limits of this Honorable Court.

412.404.      In or around January of 2022, Defendants Lisa Farache, MMS, through its representatives, 1001 Clint Moore and other coconspirators wrongfully conspired to divert, and did divert, FVP Loan proceeds that were directed to the Karma Entities to which they were not entitled.

413.405.      By such taking, Defendants MMS and 1001 Clint Moore received a benefit from the FVP Parties, albeit without their knowledge or consent.

414.406.      Defendants MMS and 1001 Clint Moore had knowledge of, accepted, and have retained the benefit conferred.

415.407.      The circumstances are such that it would be inequitable for Defendants MMS and 1001 Clint Moore to retain the benefit without paying fair value for it.

416.408.      The FVP Parties demand damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the FVP Parties demand judgment against Defendants MMS and 1001 Clint Moore for an amount within the jurisdictional limits of this Court. The FVP Parties demand a trial by jury on this Count XII.

## COUNT XIII
## CONSPIRACY TO COMMIT FRAUD TO INDUCE THE FVP LOAN
### MOSHE FARACHE, LISA FARACHE, MMS AND 1001 CLINT MOORE

417.409.      The FVP Parties reallege paragraphs 1 through 261253 and further allege:

418.410.      Defendant Moshe Farache is sued in his individual capacity and in his capacity as the representative of MMS.

419.411.      Defendant Lisa Farache is sued in her individual capacity and as the owner of 1001 Clint Moore.

420.412.      This is an action for civil conspiracy, seeking damages in excess of $50,000, exclusive of interest, attorneys' fees and costs.

421.413.      In or around January of 2022, Defendants Moshe Farache, Lisa Farache, MMS and 1001 Clint Moore, along with non-party Michele Martin and others known and unknown the FVP Parties at this time, acted in concert to develop and pursue the scheme detailed above to wrongly induce the FVP Parties into making the FVP Loan to the Zankls and the Karma Entities so that Defendants Moshe Farache, Lisa Farache, MMS and 1001 Clint Moore would receive a large portion of those funds loaned to the Karma Entities to which they were not entitled.

422.414.      Defendants Moshe Farache, Lisa Farache, MMS and 1001 Clint Moore acted in concert to make material misrepresentations to the FVP Parties and their lawyer that Defendants Moshe Farache, Lisa Farache, MMS and 1001 Clint Moore had no claim to or interest in, and would not receive any consideration from, the FVP Loan to the Zankls and the Karma Entities.

423.415.      Specifically, each of Defendants Moshe Farache, Lisa Farache, MMS and

1001 Clint Moore undertook an overt act, or multiple overt acts, in pursuit of the conspiracy, which include, but are not limited to:

    a.  Sending the January 18, 2022 email to the Zankls and the Karma Entities. **Exhibit DD**.

    b.  Requiring the Zankls and the Karma Entities to execute documents requiring the Zankls and the Karma Entities to divert the FVP Loan proceeds to Defendants Moshe Farache, Lisa Farache, MMS and 1001 Clint Moore in direct contravention to the FVP Loan Documents. **Exhibit DD**.

    c.  Making intentional material misrepresentations to the FVP Parties. **Exhibit W**.

424.416.    The agreement, scheme and overt acts of Defendants Moshe Farache, Lisa Farache, MMS and 1001 Clint Moore in furtherance of their unlawful and fraudulent scheme constitutes a civil conspiracy in violation of Florida law.

425.417.    Defendants Moshe Farache, Lisa Farache, MMS and 1001 Clint Moore each had a personal stake in the conspiracy, which personal stake was more than incidental and was motivated by personal bias.

426.418.    As a direct and proximate result of Defendants Moshe Farache, Lisa Farache, MMS and 1001 Clint Moore's conspiracy, the FVP Parties have suffered damages in an amount within the jurisdictional limits of this Court.

427.419.    But for the conspiracy, the FVP Loan would not have been made. The FVP Parties' damages are the amount of the FVP Loan plus costs and prejudgment interest minus any recovery from joint tortfeasors.

428.420.    The FVP Parties demand damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the FVP Parties demand judgment against Defendants Moshe Farache, Lisa Farache, MMS and 1001 Clint Moore for an amount within the jurisdictional limits of this Court, and respectfully reserve the right to amend this Complaint to demand punitive damages and join other parties similarly situated, if and as required. The FVP Parties demand a trial by jury on this Count XIII.

**COUNT XIV**

**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP**
**MOSHE FARACHE, LISA FARACHE, MMS AND 1001 CLINT MOORE**

429.421.        The FVP Parties reallege paragraphs 1 through 261253 and further allege:

430.422.        Defendant Moshe Farache is sued in his individual capacity and in his capacity as the principal of MMS.

431.423.        Defendant Lisa Farache is sued in her individual capacity and as the owner of 1001 Clint Moore.

432.424.        This is an action for intentional interference with advantageous business relationships, seeking damages in excess of $50,000, exclusive of interest, attorneys' fees and costs.

433.425.        In or around January of 2022, the FVP Parties had a prospective and ongoing business relationship with the Zankls and the Karma Entities.

434.426.        Defendants Moshe Farache, Lisa Farache, MMS and 1001 Clint Moore were fully aware of the existence of the prospective and ongoing business relationship.

435.427.        Through statements and acts, Defendants Moshe Farache, Lisa Farache, MMS and 1001 Clint Moore, personally, or by and through their agents, intentionally, knowingly and without justification, interfered with those advantageous and prospective business relationships by making material misrepresentations, engaging in unlawful acts and surreptitiously scheming to divert the  Plaintiffs' FVP Loan proceeds, and then, on information and belief, receiving a substantial portion of the Plaintiffs' FVP Loan proceeds to personal or company accounts and thereby disrupting the financial benefits flowing to the FVP Parties from their business relationship with the Zankls and the Karma Entities.

436.428.        By scheming and taking a portion of the FVP Loan proceeds for their own account, Defendants Moshe Farache, Lisa Farache, MMS and 1001 Clint Moore interfered with the business relationship between the FVP Parties, on the one hand, and the Zankls and Karma Entities, on the other hand, by undermining the purpose of the FVP Loan and the ability of the FVP Loan to achieve its intended purpose.

437.429.        After the FVP Loan was funded, Defendants Moshe Farache and MMS acted intentionally to create false book transactions to attempt to subvert the FVP Parties' security interests in and to the Karma Entities' inventory.

438.430.    As a direct and proximate result, the FVP Parties have suffered damages within the jurisdictional limits of this Court.

439.431.    The FVP Parties' damages are the amount of the FVP Loan plus costs and prejudgment interest minus any recovery from joint tortfeasors.

440.432.    The FVP Parties demand damages in an amount within the jurisdictional limits of this Court.

441.433.    All conditions precedent to this action have occurred, have been performed or have been waived.

WHEREFORE, the FVP Parties demand judgment against Defendants Moshe Farache, Lisa Farache, MMS and 1001 Clint Moore for an amount within the jurisdictional limits of this Court, court costs, and prejudgment interest and reserve the right to amend this Complaint to seek punitive damages. The FVP Parties demand a trial by jury on this Count XIV.

## COUNT XV
## FRAUD AFTER THE FVP LOAN

### MOSHE FARACHE AND LISA FARACHE

442.434.    The FVP Parties reallege paragraphs 1 through 261253 and further allege:

443.435.    Commencing in January of 2022 and continuing through the time of the filing of this Complaint, Defendants Farache and Lisa Farache made numerous material representations to the FVP Parties and others, including lawyers, witnesses and representatives of the FVP Parties, and the Zankls and the Karma Entities, regarding or relating to:

    a.  the FVP Parties' security interests in the Karma Entities' inventory;

    b.  Moshe Farache and Lisa Farache's claims to interests in the Karma Entities' collateral;

    c.  the ownership of the vehicles in the Karma Entities' collateral;

    d.  the possession of automobiles formerly in the Karma Entities' inventory;

    e.  the sale of vehicles in the Karma Entities' inventory;

    f.  false purchase and sale transactions regarding the Karma Entities' inventory; and

g.  creating false paperwork to suggest that Defendants Moshe Farache and Lisa Farache claimed an interest in the Karma Entities' inventory.

444.436.     The representations of Defendants Moshe Farache and Lisa Farache were specifically and intentionally made as a material direct, false and fraudulent misrepresentation to the FVP Parties regarding the rights of the FVP Parties in and to the Karma Entities' inventory, and the rights of Defendants Moshe Farache and Lisa Farache in and to the Karma Entities' inventory.

445.437.     The representations of Defendants Moshe Farache and Lisa Farache were specifically and intentionally made to dissuade the FVP Parties in enforcing their rights by providing the FVP Parties with false and fraudulent statements and documents, and to delay and obfuscate the Plaintiffs' attempts to locate and retrieve their collateral.

446.438.     Defendants Moshe Farache and Lisa Farache at all times knew the statements, documents and representations were false.

447.439.     Defendants Moshe Farache and Lisa Farache knew or should have known that the FVP Parties would rely on their intentional misrepresentations.

448.440.     The FVP Parties did, in fact, rely upon these false and intentional misrepresentations, which caused the FVP Parties to delay their collection and retrieval efforts to their detriment and which permitted Defendants Moshe Farache and Lisa Farache to sell vehicles to which they were not entitled and fraudulently transfer the funds outside of the jurisdiction of this Court.

449.441.     The actions of Defendants Moshe Farache and Lisa Farache constitute fraud.

450.442.     As a direct and proximate result of Defendants Moshe Farache and Lisa Farache's fraud, the FVP Parties have suffered damages in an amount within the jurisdictional limits of this Court.

451.443.     The fraud committed by Defendants Moshe Farache and Lisa Farache placed the FVP Parties in a position where it was necessary to protect their interests in a separate lawsuit filed as an adversary complaint against the AWB Bankruptcy estate in the AWB Bankruptcy case.

452.444.     In addition to other damages, the FVP Parties demand from Defendants

Moshe Farache and Lisa Farache those attorney's fees and costs incurred in that AWB Bankruptcy adversary complaint litigation against the AWB Bankruptcy estate resulting from the fraud and deceit of Defendants Moshe Farache and Lisa Farache as the natural and necessary consequences of their fraudulent acts.

453.445.    The FVP Parties demand damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the FVP Parties demand judgment against Defendants Moshe Farache and Lisa Farache for an amount within the jurisdictional limits of this Court, and respectfully reserve the right to amend this Complaint to demand punitive damages and join other parties similarly situated, if and as required. The FVP Parties demand a trial by jury on Count XV.

**COUNT XVI**
**CONVERSION OF THE FVP PARTIES COLLATERAL**

**MOSHE FARACHE,  LISA FARACHE AND CHASE FARACHE**

454.446.    The FVP Parties reallege paragraphs 1 through 261253 and further allege:

455.447.    This is an action for conversion against Defendants Moshe Farache, Lisa Farache and Chase Farache for the intentional tort of conversion of the corporate assets of the FVP Parties.

456.448.    Commencing in January of 2022 and continuing through the time of the filing of this Complaint, Defendants Moshe Farache, Lisa Farache and Chase Farache have wrongfully asserted dominion and control over the assets and property of the FVP Parties in the form of the secured collateral of the FVP Parties in the inventory of the Karma Entities as pled herein.

457.449.    Defendants Moshe Farache, Lisa Farache and Chase Farache's acts in wrongfully depriving the FVP Parties of their assets and property comprised a wrongful exercise or assumption of authority over the assets and property of the FVP Parties to the detriment of the FVP Parties.

458.450.    Defendants Moshe Farache, Lisa Farache and Chase Farache's acts in wrongfully depriving the FVP Parties of their assets and property comprised a wrongful exercise or assumption of authority over the assets and property of the FVP Parties for an indefinite period

of time.

459.451.     Defendants Moshe Farache, Lisa Farache and Chase Farache wrongfully refused to relinquish dominion and control over the FVP Parties' collateral despite demand from the FVP Parties who have the right to possess the collateral.

460.452.     The acts of Defendants Moshe Farache, Lisa Farache and Chase Farache comprise conversion of the corporate assets of the FVP Parties.

461.453.     The FVP Parties have been damaged by the conversion of their corporate assets.

462.454.     The value of the wrongfully converted assets and property are within the jurisdictional limits of this Court.

463.455.     The FVP Parties demand damages in an amount within the jurisdictional limits of this Court.

464.456.     There is no dispute as to the respective rights, duties and obligations of the parties.

WHEREFORE, the FVP Parties demand judgment against Defendants Moshe Farache, Lisa Farache and Chase Farache for an amount within the jurisdictional limits of this Court. The FVP Parties demand a trial by jury on Count XVI.

**COUNT XVII**
**CIVIL CONSPIRACY**

**MOSHE FARACHE, LISA FARACHE,  BRANDES AND THE BRANDES FIRM**

465.457.     The FVP Parties reallege paragraphs 1 through 261253 and further allege:

466.458.     This is an action for civil conspiracy, seeking damages in excess of $50,000, exclusive of interest, attorneys' fees and costs.

467.459.     Commencing in and around October of 2021, and continuing through the date of the filing of this Complaint, Defendants Moshe Farache, Lisa Farache, Brandes and the Brandes Firm, together with non-party co-conspirator Craig Blinderman and others known and unknown to the FVP Parties, acted in concert to develop and pursue the scheme detailed above to wrongly convert the collateral of the FVP Parties.

468.460.        Defendants Moshe Farache, Lisa Farache, Brandes and the Brandes Firm, together with non-party co-conspirator Craig Blinderman, acted in concert to make representations to the FVP Parties and others, including lawyers, witnesses and representatives of the FVP Parties, and the Zankls and the Karma Entities, that Defendants Moshe Farache and Lisa Farache had a legitimate ownership interest in the inventory of the Karma Entities and therefore the FVP Parties' collateral.

469.461.        Specifically, each of Defendants Farache, Lisa Farache, Brandes and the Brandes Firm, together with non-party co-conspirator Craig Blinderman, undertook an overt act, or multiple overt acts, in pursuit of the conspiracy, which include, but are not limited to:

> d.  Making material misrepresentations to the attorneys for the FVP Parties regarding the possession and whereabouts of the Karma Entities' inventory unlawfully seized on or about April 1, 2022.
>
> e.  Filing a false Affidavit of Moshe Farache in this action on April 14, 2022.
>
> f.  Materially misleading both the FVP Parties and this Court regarding the possession and whereabouts of the Karma Entities' inventory.
>
> g.  Hiding and disguising the sale of the Karma Entities' inventory, in which the FVP Parties have a secured interest, from both the FVP Parties and this Court.
>
> h.  Making false assurances to the FVP Parties and their attorneys that the FVP Parties' collateral was safeguarded, only to hide the sale of several of the vehicles.

470.462.        The agreement, scheme and overt acts of Defendants Moshe Farache, Lisa Farache, Brandes and the Brandes Firm, together with non-party co-conspirator Craig Blinderman, in furtherance of their unlawful and fraudulent scheme constitutes a civil conspiracy in violation of Florida law.

471.463.        Defendants Moshe Farache, Lisa Farache, Brandes and the Brandes Firm, together with non-party co-conspirator Craig Blinderman, each had a personal stake in the conspiracy, which personal stake was more than incidental and motivated by personal bias.

472.464.        As a direct and proximate result of Defendants Moshe Farache, Lisa Farache, Brandes and the Brandes Firm, together with non-party co-conspirator Craig Blinderman's, conspiracy, the FVP Parties have suffered damages in an amount within the

jurisdictional limits of this Court.

WHEREFORE, the FVP Parties demand judgment against Defendants Moshe Farache, Lisa Farache, Brandes and the Brandes Firm for an amount within the jurisdictional limits of this Court. The FVP Parties demand a trial by jury on Count XVII.

<u>**COUNT XVIII**</u>
<u>**AIDING AND ABETTING**</u>

<u>**BRANDES AND THE BRANDES FIRM**</u>

473.465.    The FVP Parties reallege paragraphs 1 through 261253 and further allege:

474.466.    There existed a fraud being perpetrated on the FVP Parties by Defendants Moshe Farache and Lisa Farache.

475.467.    Defendants Brandes and the Brandes Firm knew or should have known of the fraudulent conduct of Defendants Moshe Farache and Lisa Farache as pled in this Complaint.

476.468.    Defendants Brandes and the Brandes Firm each provided substantial assistance or encouragement of the wrongdoing.

477.469.    There existed a conversion of collateral assets being perpetrated on the FVP Parties by Defendants Moshe Farache and Lisa Farache.

478.470.    Defendants Brandes and the Brandes Firm knew or should have known of the conversion of collateral assets by Defendants Moshe Farache and Lisa Farache as pled in this Complaint.

479.471.    Defendants Brandes and the Brandes Firm each provided substantial assistance or encouragement of the wrongdoing.

480.472.    As a direct and proximate result of the aiding and abetting the wrongful conduct of Defendants Moshe Farache and Lisa Farache by Defendants Brandes and the Brandes Firm, the FVP Parties have suffered damages in an amount within the jurisdictional limits of this Court.

WHEREFORE, the FVP Parties demand judgment against Defendants Brandes and the Brandes Firm for an amount within the jurisdictional limits of this Court. The FVP Parties demand a trial by jury on Count XVIII.

**COUNT XIX**
**TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP**

**MOSHE FARACHE AND LISA FARACHE**

481.473.      The FVP Parties reallege paragraphs 1 through 261253 and further allege:

482.474.      This is an action for intentional interference with advantageous business relationships, seeking damages in excess of $50,000, exclusive of interest, attorneys' fees and costs.

483.475.      Commencing in and around October of 2021, and continuing through the date of the filing of this Complaint, the FVP Parties had a prospective and ongoing business relationship with the Zankls and the Karma Entities.

484.476.      Defendants Moshe Farache and Lisa Farache were fully aware of the existence of the prospective and ongoing business relationship.

485.477.      Through statements and acts, Defendants Moshe Farache and Lisa Farache personally, or by and through their agents, intentionally, knowingly and without justification, interfered with those advantageous and prospective business relationships by making material misrepresentations, creating false financial transactions to show a false claim to the FVP Parties' collateral, making threats to Scott Zankl, demanding vehicles and titles to vehicles which were the rightful property of the Karma Entities and the FVP Parties' collateral, engaging in conspiracies and schemes to defraud and convert the FVP Parties' collateral, converting the FVP Parties' collateral, fraudulently transferring funds that should have been available to be paid to the Karma Entities and then to the FVP Parties, and disrupting the financial benefits flowing to the FVP Parties from their business relationship with the Zankls and the Karma Entities.

486.478.      As a direct and proximate result, the FVP Parties have suffered damages within the jurisdictional limits of this Court.

487.479.      The FVP Parties demand damages in an amount within the jurisdictional limits of this Court.

488.480.      All conditions precedent to this action have occurred, have been performed or have been waived.

WHEREFORE, the FVP Parties demand judgment against Defendants Moshe Farache and Lisa Farache for an amount within the jurisdictional limits of this Court. The FVP Parties demand

a trial by jury on Count XIX.

**COUNT XX**
**PIERCE THE CORPORATE VEIL**

**LISA FARACHE AND 1001 CLINT MOORE**

489.481.        The FVP Parties reallege paragraphs 1 through 261253, and further allege:

490.482.        This is an action to pierce the corporate veil of Defendant 1001 Clint Moore to hold Defendant Lisa Farache personally liable for the claims made in this Complaint against Defendant 1001 Clint Moore.

491.483.        Defendant Lisa Farache dominated and controlled Defendant 1001 Clint Moore to such an extent that Defendant 1001 Clint Moore's independent existence was, in fact, non-existent and Defendant Lisa Farache was, in fact, an alter ego of Defendant 1001 Clint Moore.

492.484.        Defendant Lisa Farache knowingly and intentionally used Defendant 1001 Clint Moore for improper purposes.

493.485.        The fraudulent or improper use of the corporate form of Defendant 1001 Clint Moore by Defendant Lisa Farache caused injury to the FVP Parties.

494.486.        There was a complete lack of separation between Defendant 1001 Clint Moore and its owners, who include Defendant Lisa Farache.

495.487.        There was improper conduct in the use of the corporation of Defendant 1001 Clint Moore by its owner, Defendant Lisa Farache.

496.488.        The improper conduct was the proximate cause of the loss to the FVP Parties.

497.489.        The FVP Parties demand that all sums due to the FVP Parties from the claims made in this Complaint against Defendant 1001 Clint Moore be adjudged against Defendant Lisa Farache, individually.

WHEREFORE, the FVP Parties demand a judgment piercing the corporate veil of Defendant 1001 Clint Moore and stating that Defendant Lisa Farache is personally and individually liable for the sums due to the FVP Parties from Defendant 1001 Clint Moore as pled in this Complaint.

### COUNT XXI
### PIERCE THE CORPORATE VEIL

#### JOSH LUBIN AND HI BAR

498.490.    The FVP Parties reallege paragraphs 1 through 261253, and further allege as follows:

499.491.    This is an action to pierce the corporate veil of Defendant Hi Bar to hold Defendant Lubin personally liable for the claims made against Defendant Hi Bar in this Complaint.

500.492.    Defendant Lubin dominated and controlled Hi Bar to such an extent that Defendant Hi Bar's independent existence was, in fact, non-existent, and Defendant Lubin was, in fact, an alter ego of Defendant Hi Bar.

501.493.    Defendant Lubin knowingly and intentionally used Defendant Hi Bar for improper purposes.

502.494.    The fraudulent or improper use of the corporate form of Defendant Hi Bar by Defendant Lubin caused injury to the FVP Parties.

503.495.    There was a complete lack of separation between Defendant Hi Bar and its owners, and in particular Defendant Lubin.

504.496.    There was improper conduct in the use of the corporation of Defendant Hi Bar by Defendant Lubin who has self-represented that he is an owner and/or director of Defendant Hi Bar or otherwise speaks for Defendant Hi Bar. *See e.g.,* **Exhibit HH**.

505.497.    The improper conduct was the proximate cause of the loss to the FVP Parties.

506.498.    The FVP Parties demand that all sums due to the FVP Parties from the claims made in this Complaint against Defendant Hi Bar be also adjudged against Defendant Lubin, individually.

WHEREFORE, the FVP Parties demand a judgment piercing the corporate veil of Defendant Hi Bar and stating that Defendant Lubin is personally and individually liable for the sums due to the FVP Parties from Defendant Hi Bar as pled in this Complaint.

### COUNT XXII
### PIERCE THE CORPORATE VEIL

MOSHE FARACHE AND LISA FARACHE

507. The FVP Parties reallege paragraphs 1 through 261253, and further allege as follows:

508. This is an action to pierce the corporate veil of AWB to hold Defendants Moshe Farache and Lisa Farache personally liable for the claims made in this complaint.

509. Defendants Moshe Farache and Lisa Farache dominated and controlled AWB to such an extent that AWB independent existence, was in fact non-existent and the Defendants Moshe Farache and Lisa Farache were in fact an alter ego of AWB.

510. Defendants Moshe Farache and Lisa Farache knowingly and intentionally used AWB for improper purposes.

511. The fraudulent or improper use of the corporate form of AWB by Defendants Moshe Farache and Lisa Farache caused injury to Plaintiff.

512. There was a complete lack of separateness between AWB and MMS and its owners, members and shareholder(s) Defendants Moshe Farache and Lisa Farache.

513. There was improper conduct in the use of the corporation AWB by the shareholder(s) owners, members and shareholder(s) Defendants Moshe Farache and Lisa Farache.

514. The improper conduct was the proximate cause of the loss to the FVP Parties.

515. Plaintiff demands that all sums due to the Plaintiff from the claims made in this complaint be adjudged against Defendants Moshe Farache and Lisa Farache individually.

WHEREFORE, the Plaintiff demands a judgment piercing the corporate veil and stating that Defendants Moshe Farache and Lisa Farache are personally and individually liable for the sums due the FVP Parties as pled in this complaint.

**DEMAND FOR TRIAL BY JURY**

The FVP Parties demand trial by jury on Counts I through XIX identified *supra* in Part I of this complaint as requesting trial by jury.

**PART II**

Page 77 of 90

**COUNT XXIII THROUGH COUNT XXIX**
**THE LOAN DOCUMENTS AND FORECLOSURE COUNTS**
**AGAINST KARMA OF BROWARD, KARMA OF PALM BEACH,**
**SCOTT ZANKL, KRISTEN ZANKL, AND HI BAR**

**COUNT XXIII**
**BREACH OF CONTRACT – LOAN AGREEMENT**
**KARMA OF BROWARD AND KARMA OF PALM BEACH**

~~516.~~499.   The FVP Parties reallege paragraphs 1 through 261 as if fully restated herein, and further allege:

~~517.~~500.   The FVP Parties and Defendants the Karma Entities and the Zankls entered into the Loan Agreement. *See* **Exhibit N**.

~~518.~~501.   The Loan Agreement imposed obligations on the parties to it.

~~519.~~502.   The FVP Parties complied with all of their duties and obligations under the Loan Agreement.

~~520.~~503.   Defendants the Karma Entities and the Zankls materially breached their duties and obligations under the Loan Agreement in multiple respects as pled herein.

~~521.~~504.   As a direct and proximate result of the aforedescribed breach of the Loan Agreement, the FVP Parties have sustained direct and consequential monetary damages in addition to any other damages set forth in the Loan Agreement or permitted at law or in equity, and all of the FVP Parties' expenses incurred with respect to such default, including reasonable attorneys' fees, money expended in reliance on the contract and lost business opportunity.

~~522.~~505.   The FVP Parties demand all damages available under the Loan Agreement and Florida law.

~~523.~~506.   The FVP Parties were required to retain undersigned counsel to prosecute this action and have agreed to pay undersigned counsel a reasonable fee.

~~524.~~507.   The FVP Parties demand their attorney's fees and costs pursuant to the Loan Agreement between the parties.

WHEREFORE, the FVP Parties demand judgment against Defendants Karma of Broward, Karma of Palm Beach, Scott Zankl and Kristen Zankl for an amount within the

jurisdictional limits of this Court, court costs, attorney's fees, and prejudgment interest; and additionally demand any other and further injunctive and/or equitable relief as this Court deems just and proper in order to do justice.

### COUNT ~~XXIV~~XXIII
### BREACH OF CONTRACT – DEFAULT OF FVP INVESTMENTS NOTE
### FVP INVESTMENTS VS. KARMA OF BROWARD AND KARMA OF PALM BEACH

~~525.~~508.        FVP Investments realleges paragraphs 1 through ~~261~~253 as if fully set forth herein, and further alleges:

~~526.~~509.        FVP Investments, as holder, and Defendants Karma of Broward and Karma of Palm Beach, as Makers, entered into the FVP Investments Note. See **Exhibit O**.

~~527.~~510.        The FVP Investments Note imposed duties and obligations on Defendants the Karma Entities.

~~528.~~511.        FVP Investments owns and holds the FVP Investments Note.

~~529.~~512.        Defendants the Karma Entities failed to pay when due and after demand, and defaulted on the FVP Investments Note, both monetarily and in other respects.

~~530.~~513.        Defendants the Karma Entities owe FVP Investments unpaid principal plus default interest at the rate defined in the FVP Investments Note, plus any advances made by the FVP Parties against the FVP Investments Note, along with all associated fees and penalties.

~~531.~~514.        FVP Investments has been required to retain the services of the undersigned attorneys to prosecute this claim, and therefore is entitled to attorney's fees and costs in addition to default interest and other damages.

~~532.~~515.        FVP Investments demands its attorney's fees and costs pursuant to the terms of the FVP Investments Note and the related Loan Documents between the parties.

~~533.~~516.        All demands of FVP Investments are reiterated hereby by FVP Servicing for all purposes.

WHEREFORE, FVP Investments demands judgment against Defendants Karma of Broward and Karma of Palm Beach for an amount within the jurisdictional limits of this Court, court costs, attorney's fees, and prejudgment interest and default interest; and additionally

demands any other and further injunctive and/or equitable relief as this Court deems just and proper in order to do justice.

**COUNT XXIV**
**BREACH OF CONTRACT – DEFAULT OF FVP FUND NOTE**
**FVP FUND V. KARMA OF BROWARD AND KARMA OF PALM BEACH**

534.517.    The FVP Fund realleges paragraphs 1 through 261253 as if fully set forth herein, and further alleges:

535.518.    The FVP Fund, as holder, and Defendants Karma of Broward and Karma of Palm Beach, as makers, entered into the FVP Fund Note. *See* **Exhibit P**.

536.519.    The FVP Fund Note imposed duties and obligations on Defendants Karma of Broward and Karma of Palm Beach.

537.520.    The FVP Fund owns and holds the FVP Fund Note.

538.521.    Defendants Karma of Broward and Karma of Palm Beach failed to pay when due and after demand, and defaulted on the FVP Fund Note both monetarily and in other respects.

539.522.    Defendants Karma of Broward and Karma of Palm Beach owe Plaintiff the FVP Fund unpaid principal plus default interest at the rate defined in the note, plus any advances made by Plaintiff the FVP Fund against the FVP Fund Note, along with all associated fees and penalties.

540.523.    The FVP Fund has been required to retain the services of the undersigned attorneys to prosecute this claim and therefore is entitled to attorney's fees and costs in addition to default interest and other damages.

541.524.    The FVP Fund demands its attorney's fees and costs pursuant to the terms of the FVP Fund Note and the Loan Documents between the parties.

542.525.    All demands of the FVP Fund are reiterated hereby by FVP Servicing for all purposes.

WHEREFORE, Plaintiff the FVP Fund demands judgment against Defendants Karma of Broward and Karma of Palm Beach for an amount within the jurisdictional limits of this Court, court costs, attorney's fees, and prejudgment interest and default interest; and additionally

demands any other and further injunctive and/or equitable relief as this Court deems just and proper in order to do justice.

## COUNT XXVI
## BREACH OF CONTRACT – GUARANTY AGREEMENT
### SCOTT ZANKL AND KRISTEN ZANKL

543.526.    The FVP Parties reallege paragraphs 1 through 261253 as if fully set forth herein, and further allege:

544.527.    The FVP Parties, on the one hand, and Defendants Scott Zankl and Kristen Zankl, on the other hand, entered into the Guaranty Agreement. *See* **Exhibit Q**.

545.528.    The Guaranty Agreement imposed duties and obligations on Defendants Scott Zankl and Kristen Zankl.

546.529.    The FVP Parties complied with all obligations under the Guaranty Agreement.

547.530.    Defendants Scott Zankl and Kristen Zankl failed to pay when due and after demand, and defaulted on the Guaranty Agreement, both monetarily and in other respects.

548.531.    Defendants Scott Zankl and Kristen Zankl owe the FVP Parties unpaid principal plus default interest at the rate defined in the guaranteed obligations, plus other costs and expenses defined in the Guaranty Agreement.

549.532.    The FVP Parties have been required to retain the services of the undersigned attorneys to prosecute this claim and therefore are entitled to attorney's fees and costs in addition to the sums due the FVP Parties under the Guaranty Agreement.

550.533.    The FVP Parties demand their attorney's fees and costs pursuant to the terms of the Guaranty Agreement and the Loan Documents.

WHEREFORE, the FVP Parties demand judgment against Defendants Scott Zankl and Kristen Zankl for an amount within the jurisdictional limits of this Court, court costs, attorney's fees, and prejudgment interest and default interest; and additionally demands any other and further injunctive and/or equitable relief as this Court deems just and proper in order to do justice.

## COUNT XXVII
## BREACH OF CONTRACT – SECURITY AGREEMENT

**FVP Servicing v. Karma Of Broward And Karma Of Palm Beach**

551.534.    FVP Servicing realleges paragraphs 1 through 261253 as if fully set forth herein, and further alleges:

552.535.    FVP Servicing and Defendants Karma of Broward and Karma of Palm Beach entered into the Security Agreement. *See* **Exhibit R**.

553.536.    The Security Agreement imposed obligations on the parties to it.

554.537.    The FVP Parties complied with all of their duties and obligations under the Security Agreement.

555.538.    Defendants Karma of Broward and Karma of Palm Beach materially breached their duties and obligations under the Security Agreement.

556.539.    As a direct and proximate result of the aforedescribed breaches of the Security Agreement, FVP Servicing has sustained direct and consequential monetary damages in an amount in excess of the jurisdictional limits of this Court; and its damages are continuing and ongoing, and such damages continue to accrue on a daily basis.

557.540.    As a direct and proximate result of the aforedescribed breach of the Security Agreement, FVP Servicing has sustained direct and consequential monetary damages in addition to any other damages set forth in the Security Agreement or permitted at law or in equity, and all of the FVP Parties' expenses incurred with respect to such default, including reasonable attorneys' fees, money expended in reliance on the contract and lost business opportunity.

558.541.    FVP Servicing demands all damages available under the Security Agreement and Florida law.

559.542.    FVP Servicing was required to retain undersigned counsel to prosecute this action and has agreed to pay undersigned counsel a reasonable fee.

560.543.    FVP Servicing demands its attorney's fees and costs pursuant to the Security Agreement between the parties.

WHEREFORE, FVP Servicing demands judgment against Defendants Karma of Broward and Karma of Palm Beach for an amount within the jurisdictional limits of this Court, court costs, attorney's fees, and prejudgment interest; and additionally demands any other and further injunctive and/or equitable relief as this Court deems just and proper in order to do justice.

## COUNT XXVIII
### BREACH OF CONTRACT – PLEDGE AND SECURITY AGREEMENT
#### FVP SERVICING V. SCOTT ZANKL AND KRISTEN ZANKL

561.544.       FVP Servicing realleges paragraphs 1 through 261253 as if fully set forth herein, and further alleges:

562.545.       FVP Servicing and Defendants Scott Zankl and Kristen Zankl entered into the Pledge and Security Agreement. *See* **Exhibit S**.

563.546.       The Pledge and Security Agreement imposed obligations on the parties to it.

564.547.       The FVP Parties complied with all of their duties and obligations under the Security Agreement.

565.548.       Defendants Scott Zankl and Kristen Zankl materially breached their duties and obligations under the Pledge and Security Agreement.

566.549.       As a direct and proximate result of the aforedescribed breaches of the Pledge and Security Agreement, the FVP Parties have sustained direct and consequential monetary damages in an amount in excess of the jurisdictional limits of this Court; and the FVP Parties' damages are continuing and ongoing, and such damages continue to accrue on a daily basis.

567.550.       As a direct and proximate result of the aforedescribed breach of the Pledge and Security Agreement, the FVP Parties have sustained direct and consequential monetary damages in addition to any other damages set forth in the Pledge and Security Agreement or permitted at law or in equity, and all of the FVP Parties' expenses incurred with respect to such default, including reasonable attorneys' fees, money expended in reliance on the contract and lost business opportunity.

568.551.       FVP Servicing demands all damages available under the Pledge and Security Agreement and Florida law.

569.552.       FVP Servicing was required to retain undersigned counsel to prosecute this action and have agreed to pay undersigned counsel a reasonable fee.

570.553.       FVP Servicing demands its attorney's fees and costs pursuant to the Security Agreement between the parties.

WHEREFORE, FVP Servicing demands judgment against Pledge and Security Agreement for an amount within the jurisdictional limits of this Court, court costs, attorney's fees, and prejudgment interest; and additionally demands any other and further injunctive and/or equitable relief as this Court deems just and proper in order to do justice.

**COUNT ~~XXI~~XXIII**
**FORECLOSURE OF SECURITY INTERESTS**
**KARMA OF BROWARD, KARMA OF PALM BEACH,**
**SCOTT ZANKL, KRISTEN ZANKL , HI BAR AND FRANKLIN**

~~571.~~554.    The FVP Parties reallege paragraphs 1 through ~~261~~253 as if fully stated herein, and further allege:

~~572.~~555.    This is an action to foreclose the FVP Parties' security interest and lien in their collateral owned by the obligor Defendants Scott Zankl, Kristen Zankl, Karma of Broward, Karma of Palm Beach (collectively, the "Obligors") as outlined in the Loan Documents. *See* **Exhibits N et seq.**

~~573.~~556.    The Obligors entered into the Loan Agreement, the Security Agreement, the Guaranty, and the Pledge and Security Agreement (collectively, for purposes of this Count and the following Count, together with the promissory notes, the "Loan Documents").

~~574.~~557.    The Obligors have defaulted in their obligations under the Loan Documents.

~~575.~~558.    The FVP Parties declare all sums due under the Loan Documents.

~~576.~~559.    The Obligors' obligations are secured, *inter alia*, by the FVP Parties' collateral, defined in the Loan Documents as being appropriately foreclosed to satisfy the full amount of the Obligors' indebtedness to the FVP Parties.

~~577.~~560.    The Obligors may claim some right, title, or interest in and to the FVP Parties' collateral, but any such interest is subordinate and inferior to that of the FVP Parties.

~~578.~~561.    The FVP Parties demand a judgment of foreclosure of the security interests of the FVP Parties in the collateral securing the FVP Loan which includes the Auctioned Vehicle Fund and those funds contained therein as those funds represent the funds derived from the sale of the Plaintiffs' collateral, any collateral or vehicles not included in the AWB Bankruptcy and therefore not reduced to cash, and any collateral or the proceeds from the sale of that collateral that is either added to the Auctioned Vehicle Fund or held separately in escrow by the agreement of the

parties or court order pending a determination of the party entitled to those funds or collateral

579.562.    To the extent that Defendant Hi Bar claims a security interest in and to any of the Plaintiffs' collateral and / or the Auctioned Vehicle Fund, those interests are inferior to those of the FVP Parties as pled *supra* in Counts I through VIII of this Complaint.

580.563.    To the extent that Defendant Hi Bar claims a security interest in and to any of the Plaintiff's collateral and / or the Auctioned Vehicle Fund which Defendant Hi Bar suggests are superior to those interests of the FVP Parties, then the FVP Parties demand trial by jury on Counts I through VIII of this Complaint to determine the priority of the competing interests.

581.564.    To the extent that Franklin claims a security interest in and to any of the Plaintiffs' collateral and / or the Auctioned Vehicle Fund, those interests are inferior to those of the FVP Parties.

582.565.    The collateral securing the FVP Loan does not include residential real property.

583.566.    The FVP Parties were required to retain undersigned counsel to prosecute this action and have agreed to pay undersigned counsel a reasonable fee.

584.567.    The FVP Parties demand their attorney's fees and costs pursuant to the Loan Documents between the parties as to Defendants Scott Zankl, Kristen Zankl, Karma of Broward, and Karma of Palm Beach.

WHEREFORE, the FVP Parties request a judgment against Defendants Scott Zankl, Kristen Zankl, Karma of Broward, and Karma of Palm Beach, and any and all competing claimants to the collateral of funds derived from the collateral, including, without limitation, Defendant Hi Bar, foreclosing their security interest and lien in the collateral, pursuant to the Loan Documents evidencing the Obligations, and any other claims of lien, or interests claimed by any of the named defendants to this Complaint, and if proceeds of such are insufficient to fully satisfy the Obligations, a deficiency judgment against Scott Zankl, Kristen Zankl, Karma of Broward and Karma of Palm Beach, and any other relief the court deems proper. The FVP Parties demand trial by jury as to all factual disputes between the FVP Parties and any other claimants other than the Zankls and the Karma Entities regarding the priority to the collateral or the Auctioned Vehicle Fund.

## PART III
## FRAUDULENT TRANSFER

**COUNT XXIX**
**FRAUDULENT TRANSFER – FL. STAT. §§ 726.105, ET. SEQ.**

**AGAINST THE FRAUDULENT TRANSFER DEFENDANTS**

585.568.      The FVP Parties reallege paragraphs 1 through 261253, and further allege that:

586.569.      This is a claim to avoid and recover fraudulent transfers pursuant to Section 726.105(1)(a)-(b) of the Florida Statutes in an amount far greater than the $50,000.00 jurisdictional limits of this Honorable Court.

587.570.      This claim is brought against the Fraudulent Transfer Defendants as defined in ¶¶ 33-44 *supra*.

588.571.      This claim seeks to hold the transferees liable for funds received by fraudulent transfer under Florida law, or to make the FVP Parties whole with other property of the transferees in accordance with applicable law for the following transfers made by the debtor Karma Entities, against the rights of the FVP Parties as creditor, as follows:

| Date | Transfer to: | Amount: | Account Ending in: | From Company [1] |
|---|---|---|---|---|
| 3.3.2022 | Savannah Row | $15,500.00 | 8711 | KPB |
| 3.7.2022 | Lilian Roberts | $5,000.00 | 6603 | KPB |
| 3.10.2022 | 22 Capital Inc. | $282,000.00 | 6603 | KPB |
| 3.11.2022 | Vantiff LLC | $100,000.00 | 8711 | KPB |
| 3.14.2022 | Franklin Capital Management | $160,555.00 | 8711 | KPB |
| 3.14.2022 | Franklin Capital Management | $15,000.00 | 8711 | KPB |
| 3.15.2022 | Graner Law Group, PA | $100,000.00 | 8711 | KPB |
| 3.15.2022 | Lilian Roberts | $30,000.00 | 8711 | KPB |
| 3.15.2022 | DCG Wealth Trust | $33,000.00 | 8711 | KPB |
| 3.15.2022 | JMD Enterprises | $136,000.00 | 8711 | KPB |
| 3.17.2022 | Graner Law Group, PA | $100,000.00 | 5966 | KB |
| 3.17.2022 | Savannah Row | $15,000.00 | 8711 | KPB |
| 3.17.2022 | Vantiff LLC | $100,000.00 | 8711 | KPB |

Formatted Table

---

[1]  KPB is Karma of Palm Beach, Inc. KB is Karma of Broward, Inc.

| 3.18.2022 | Gori Family Limited Partnership | $400,000.00 | 6603 | KPB |
|---|---|---|---|---|
| 3.31.2022 | Prime Auto Consulting LLC | $50,000.00 | 8711 | KPB |
| 3.3.2022 - 3.9.2022 | Millco Atwater LLC | $705,000.00 | 6603 | KPB |

589.572.      Each of the Fraudulent Transfer Defendants were lenders to, or otherwise were owed money or obligations from, either EAG or another person or entity other than the payor companies Karma of Palm Beach and Karma of Broward. Nonetheless, Fraudulent Transfer Defendants were paid sums from Karma of Palm Beach and Karma of Broward which companies had no obligations to the Fraudulent Transfer Defendants.

590.573.      Each of the Fraudulent Transfer Defendants were involved in substantial, not isolated and continuous contacts and business activity within the state of Florida.

591.574.      The FVP Parties are a creditor as defined in the Florida Uniform Fraudulent Transfer Act of the Florida Statutes, as they hold claims against the Karma Entities under those certain loan agreements pled in this complaint.

592.575.      Defendants Scott Zankl, Kristen Zankl and the Karma Entities (collectively, for this Count, the "Karma Entities Debtors") are debtors as defined under the Florida Uniform Fraudulent Transfer Act.

593.576.      The FVP Parties have and had a claim against the Karma Entities Debtors at the time of the aforementioned transfers above defined and pled in this count.

594.577.      At the time of the transfers, the FVP Parties were a "creditor" of the Karma Entities and the Zankls as defined under Florida's Fraudulent Transfer Act.

595.578.      All of the aforementioned transfers were made to the Fraudulent Transfer Defendants by the Karma Entities with the actual intent of hindering, delaying or defrauding creditors, including the FVP Parties.

596.579.      All of the above payments were made with the Karma Entities' funds, including the FVP Loan funds, and used to repay debt not owed by the Karma Entities. The funds were transferred to pay the debt of third party separate entities. The Karma Entities received no equivalent value for the transfers, and in fact no value at all.  Likewise, the FVP Parties received no value.

597.580.      At the time of the transfers described in this Count, the Karma Entities had already incurred, or intended to incur, or believed or reasonably should have believed that they would incur, debts far beyond their ability to pay as they became due.

598.581.      The Karma Entities Debtors both removed and concealed these transfers from the FVP Parties; no consideration received by the Karma Entities Debtors was reasonably equivalent to the value of the transfers; the Karma Entities Debtors were insolvent or became insolvent shortly after the transfer was made; and the transfers occurred shortly before or after a substantial debt was incurred.

599.582.      As a result, the above transfers to the Fraudulent Transfer Defendants constitute "transfers" within the meaning of Florida's Uniform Fraudulent Transfer Act.

600.583.      Accordingly, the Karma Entities' transfers to the Fraudulent Transfer Defendants are avoidable and recoverable by the FVP Parties pursuant to Chapter 726 of the Florida Statutes.

601.584.      The FVP Parties seek all remedies available under Section 726.108 of the Florida Statutes, including:

(a)   avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(b)   an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law;

(c)   subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

1.   an injunction against further disposition by the debtor or a transferee, or both, of the assets transferred or of other property;

2.   appointment of a receiver to take charge of the assets transferred, or of other property of the transferee; and/or

3.   any other relief the circumstances may require.

602.585.      The FVP Parties demand all remedies under Florida's Uniform Fraudulent Transfer Act against the Fraudulent Transfer Defendants who are recipients of the fraudulently transferred funds, including, without limitation, judgment against the transferees for the amount transferred plus prejudgment interest.

603.586.      The FVP Parties reserve the right to amend this Complaint to name other transferees under Florida's Uniform Fraudulent Transfer Act.

WHEREFORE, the FVP Parties demand judgment against the Fraudulent Transfer Defendants setting aside and avoiding the transfers described above, to the extent necessary to satisfy the creditor's claims, judgment for an attachment or other provisional remedy against the asset transferred or judgment against other property or funds of the transferee in the amount of the funds transferred plus prejudgment interest and for injunctive relief if properly raised by motion, or other relief as the Court deems appropriate.

<u>Certificate of Service</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing document was filed with the Clerk of the Courts and served via email through the Florida Courts eFiling Portal in accordance with Rule 2.516 of the Florida Rules of Judicial Administration upon all counsel of record.

On ~~June 21~~July 9, 2023.

Respectfully jointly submitted,

**Schwartz | Breslin PLLC**
**Fl. Rule of Jud. Admin. 2.516 Notice**
**Primary email: EService@JSJB.LAW**
**Secondary Email: JB@JSJB.LAW**

**s/ Jerry Breslin**

Jerry Breslin Esq.
Fla. Bar # 269573
Email: JB@JSJB.Law
Schwartz | Breslin, Attorneys at Law
The DuPont Building
169 East Flagler Street
Suite 700
Miami, Fl 33131
Tel.: 305-577-4626
Fax.: 305-577-4630

**/s/ Jonathan Noah Schwartz, Esq.**

Jonathan Noah Schwartz, Esq.
Florida Bar No. 1014596
Email: JS@JSJB.Law
Schwartz | Breslin, Attorneys at Law

**COHEN & MCMULLEN, P.A.**

**/s/ Bradford Cohen, Esq.**

**/s/ Michael J. McMullen, Esq.**

1132 SE 3rd Avenue
Fort Lauderdale, Florida 33316
Telephone: (954) 523-7774
Facsimile: (954) 523-2656