Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION


                              CASE NO. 22-15627-EPK

IN RE:

  AUTO WHOLESALE OF BOCA, LLC,

      Debtors.
_____/
FVP OPPORTUNITY FUND III,
L.P., et al.,

vs.                           ADV. CASE NO. 22-1218-EPK

AUTO WHOLESALE OF BOCA, LLC
_____/




  MOTION TO ABANDON (632), MOTION FOR PAYMENT, ETC. (579),
   MOTION TO SELL FREE AND CLEAR OF LIENS (618), EXPEDITED
MOTION FOR ORDER AUTHORIZING ASSUMPTION AND ASSIGNMENT (652)
           AND STATUS CONFERENCE IN ADVERSARY

                      June 14, 2023


        The above-entitled cause came on for hearing

before the Honorable ERIK P. KIMBALL, one of the Judges in

the UNITED STATES BANKRUPTCY COURT, in  and  for  the

SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Drive,

West Palm Beach, Palm Beach County, Florida on June 14,

2023, commencing at or about 11:00 a.m., and the following

proceedings were had:

        Transcribed from a digital recording by:
        Anna M. Meagher, Stenographic Reporter

APPEARANCES:

Greenspoon Marder, by
Rilyn A. Carnahan, Esquire
Michael R. Bakst, Esquire
Chapter 7 Trustee
Email:  Rilyn.carnahan@gmlaw.com
Email:  Michael.bakst@gmlaw.com

Shraiberg Page, P.A., by
Patrick R. Dorsey, Esquire
On behalf of Franklin Capital Funding, LLC
Email:  Pdorsey@slp.law
VIA ZOOM VIDEO CONFERENCE:
David R. Softness, P.A., by
David R. Softness, Esquire
On behalf of FVP Investments, LLC,
FVP Opportunity Fund III, LP, and FVP Servicing, LLC
Email:  David@softnesslaw.com
Schwartz Breslin, PLLC, by
Jerrell A. Breslin, Esquire
On behalf of FVP Investments, LLC,
FVP Opportunity Fund III, LP, and FVP Servicing, LLC
Email:  Jb@jsjb.law
Stearns Weaver, by
Patricia A. Redmond, Esquire
Michael J. Harwin, Esquire (via Zoom)
On behalf of BENIDT INVESTMENTS/SLINGER, LLC
Email:  Predmond@stearnsweaver.com
Mharwin@stearnsweaver.com

Hoffman, Larin & Agnetti, P.A.
Michael S. Hoffman, Esquire
On behalf of the Debtor
Email:  Mshoffman@hlalaw.com
Weiss, Handler & Cornwell, P.A., by
Harry Winderman, Esquire
On behalf of Karma of Palm Beach, Inc.
Email:  Harry4334@hotmail.com

Continued....

Michael D. Lessne, P.A., by
Michael D. Lessne, Esquire
On behalf of Moshe Farache and Lisa Farache
Email:  Michael@lessne.law

Evan D. Appell, P.A., by
Evan D. Appell, Esquire
On behalf of Derek Stephens
Email:  Evan@edalegal.com

Bryan Cave Leighton Paisner, by
Jarret P. Hitchings, Esquire
On behalf of Hi Bar Capital
Email:  Jarret.hitchings@bclplaw.com

Furr Cohen, by
Jason S. Rigoli, Esquire
On behalf of Nicole Testa Mehdipour,
Chapter 7 Trustee of the Estate of EXCEL Auto Group.
Email:  Jrigoli@furrcohen.com

- - - - - - -

Page 4

THE COURT:  Thank you.  I hope I'm not early, Ms. Leonard.

THE CLERK:  (Inaudible.)

THE COURT:  Okay.  Good.

Good morning, everyone.  We're here in the main case, Auto Wholesale of Boca, and also the adversary, 22-1218, FVP and others against Auto Wholesale and others.

Let's start here in the courtroom.

Ms. Carnahan.

MS. CARNAHAN:  Yes, your Honor, good morning. Rilyn Carnahan for the trustee, and I have with me in the courtroom, Michael Bakst, the trustee.

MR. BAKST:  Good morning, your Honor.

THE COURT:  Good morning to you both.

Mr. Dorsey.

MR. DORSEY:  Good morning, Judge.  Patrick Dorsey on behalf of Franklin Capital Funding, appearing in both the main case and the adversary proceeding.

THE COURT:  Let's see.  Mr. Winderman, good morning.

MR. WINDERMAN:  Good morning, your Honor.  Harry Winderman, Weiss, Handler & Cornwell on behalf of the Karma entities.

THE COURT:  Mr. Breslin, good morning, again.

MR. BRESLIN:  Yes.  Good morning, Judge.  Jerry

Breslin for the FVP parties, and David softness is attending remotely as well.

THE COURT:  Very good.  Good morning, Mr. Softness.

MR. SOFTNESS:  Good morning, Judge.  Thank you.

THE COURT:  Mr. Appell.

MR. APPELL:  Good morning, your Honor.  Evan Appell on behalf of Derek Stephens.

THE COURT:  Mr. Harwin.

MR. HARWIN:  Good morning, your Honor.  Michael Harwin and Patricia Redmond from Stearns Weaver on behalf of Benidt Investments.

THE COURT:  Good morning, Ms. Redmond.

MS. REDMOND:  Good morning, your Honor.

THE COURT:  Mr. Rigoli.

MR. RIGOLI:  Good morning, your Honor.  Jason Rigoli on behalf of Nicole Testa Mehdipour, Chapter 7 trustee for EXCEL Auto Group, Inc. and a creditor in the main bankruptcy case.

THE COURT:  Mr. Lessne.

MR. LESSNE:  Good morning, your Honor.  Michael Lessne Moshe Farache and Lisa Farache individually in the main case.

THE COURT:  Mr. Hoffman.

MR. HOFFMAN:  Good morning, your Honor.  Michael

Page 6

Hoffman on behalf of the debtor in the main case.

THE COURT:  Mr. Hitchings.

MR. HITCHINGS:  Good morning, your Honor.  Jarret Hitchings, Bryan Cave Leighton Paisner on behalf of Hi Bar Capital, LLC.

THE COURT:  Is there anyone who I failed to call who would like to appear in either case?

(No audible response.)

THE COURT:  All right.  I assume you would like to take the podium.  Good morning.

MS. CARNAHAN:  Yes, your Honor.  Good morning.

So after the last hearing, your Honor, on the trustee's motion to approve his sale and other related relief, including the procedures on the sale, the trustee spent a lot of time with creditors Franklin and FVP negotiating a proposed agreed order on the trustee's motion, and we did, in fact, reach an agreement as far as the sale, the terms of the sale, and the rest of the trustee's requested relief in his motion, which is at Docket Entry 618.

So last Friday, on June 9th, the trustee -- we filed that proposed agreed order on the docket pursuant to a notice of filing at Docket Entry 685.  So everybody that has filed a notice of appearance in this case would have received both electronic service of that proposed agreed

Page 7

order, and I also emailed it out to -- and I believe everybody on Zoom today and in the courtroom received a copy of this.  I asked that people please respond to me and let me know if they have any comments or objections.  And, your Honor, we did receive a response from Hi Bar who has also filed a limited objection to the trustee's motion.

Your Honor, I believe that as far as their limited objection and from the comments that I received to the trustee's, Franklin's, and FVP's proposed agreed order, I don't believe any of Hi Bar's objections would prevent the Court today from entering the trustee's agreed order with creditors FVP and Franklin.  Although, I will let Hi Bar speak to that, since they are on today.  And it's my understanding that as far as Hi Bar, their only concern is that there is something definitive that everybody -- all of the creditors agree upon as far as what is to be done with the net proceeds of the sale after the sale and after the trustee obtains his carve-out.

Right now the notice of filing, the one that's been filed with the court, has a blank for --

THE COURT:  For the escrow agent, right.

MS. CARNAHAN:  Exactly.

So I don't think that that's anything that the those -- the trustee really does not obviously have any interest in that, but I don't think that that's anything

that those parties cannot agree upon, Franklin, FVP, and Hi Bar.  Certainly I've proposed that if they cannot agree upon an escrow agent to hold the money that the trustee would just then deposit the funds into the court registry, and it could be held there, but I think they --

THE COURT:  When you say "there," do you mean this court registry?  That's find of an interesting problem, because the order says that after the sale is done, I no longer have subject matter jurisdiction over those funds because the estate has disclaimed any interest in the net proceeds, so -- but anyway.

MS. CARNAHAN:  Yes, your Honor.  And it could also be the state court registry as well.

But I believe that your Honor could enter the proposed order that the trustee has submitted today and just reserve jurisdiction to -- for that matter, that issue, to be determined maybe at a hearing in two weeks, and we could continue the hearing only with respect --

THE COURT:  To the identity --

MS. CARNAHAN:  -- that issue.

THE COURT:  -- of who's going to hold the money or where will it go, right.

MS. CARNAHAN:  I think so, your Honor, because that's a fairly simple issue in my opinion, and it's my understanding that Franklin and FVP doesn't care who holds

Page 9

the money, and they are willing to agree to --

THE COURT:  So long as it is a reliable repository.

MS. CARNAHAN:  Agreed.

THE COURT:  All right.  So the way I take the proposed order, which is in -- attached to ECF 685 is it that the estate claims an interest in the assets to be sold at least to the extent of the agreed carve-out, and that's certainly sufficient to support subject matter jurisdiction over the relief that's requested.  And once the sale happens, the estate would disclaim any interest in the net proceeds, as they are defined in the order, and then the adversary would be dismissed, because I would have no subject matter jurisdiction over the remainder of the disputes.  That's the theory, correct?

MR. BAKST:  Correct.

MS. CARNAHAN:  Correct, your Honor.  So there is at least a bona fide dispute up until the time that they are sold and the trustee receives his carve-out, and then at that point in time, the trustee would disclaim any --

THE COURT:  Understood.

MS. CARNAHAN:  -- ownership in the net proceeds.

THE COURT:  Okay.  Good.

And the only -- the auction date was also not filled in in the proposed order.  There were two blanks.

Page 10

One was where the money goes, and it says, "Escrow Agent."
So if the agreement were something different than that, for
example, the court registry, it would need to say that,
but -- and the other is the auction, the auction date.
Otherwise everything else was complete.

All right.  So, Mr. Hitchings, perhaps I should
start with you.

MR. HITCHINGS:  Thank you, your Honor.  Good
morning again.  Jarret Hitchings for Hi Bar.

Your Honor, this motion has been set for a period
of time.  The Court asked for objections to the motion last
week.  We filed a motion that really -- I'm sorry, an
objection that focused on, not the sale, but the alternative
relief.  And, frankly, Hi Bar didn't have an issue with the
sale as proposed.  After the objection deadline, we were
presented with an agreed upon order with two of the
purported secured creditors, but at least involving my
office, didn't include the third purported secured creditor,
Hi Bar, which has an equal, if not better interest, in the
proceeds.

And our concern is that despite counsel's
suggestion that where the money will go is fairly simple,
nothing in this case has been fairly simple.  And we think
that if the trustee is going to today ask for authority to
disclaim or abandon or however we're going to characterize

its interests in the proceeds, we need certainty as to what's going to happen with those proceeds.

The Court is right that it's questionable where, if any, court the proceeds can be paid into, so I don't -- I share the Court's skepticism --

THE COURT:  I didn't say that actually.

MR. HITCHINGS:  -- that that --

THE COURT:  I said only that if the estate is no longer expressing any interest in the "net proceeds," and I'm using that term specifically, because it is a defined determine in the order attached to the ECF 685, once the sale happens and the order is effective and the estate no longer has an interest in the defined net proceeds, then I don't know they get lodged with this Court, because I would have no jurisdiction over any dispute over them.  That's all I said.  I didn't say "no other court."  There is litigation pending elsewhere.  I made no suggestion with regard to that, nor would I, and even if I did, it would be meaningless.

All right.  So the question is, if the estate has no interest and that means I can't do anything with those proceeds, they need to go someplace, and you would think you could have agreement over where that would be.  I mean, I -- is there a lawyer that wants to be escrow agent, "want" is a very strong word under the circumstances.

But, okay, so go ahead.  Mr. Hitchings, right now I'm curious about your client's position on the order that's attached to 685.

MR. HITCHINGS:  As far as the order is concerned, we would ask that it not be entered until there's an agreement between the parties as to where the proceeds are going to be -- where the net proceeds are going to be held post-sale and post-disclaiming of the interest by the trustee.

THE COURT:  All right.  And either that agreement is going to happen during this hearing and before 11:30, or it will happen before 1:30.  Otherwise, I will continue the matter to 1:30, and I'll make up my own mind where the money will go.  It will be one of those two things.

So that's your only concern, is where the money will go?

MR. HITCHINGS:  That's our issue with the motion today, your Honor.

THE COURT:  Okay.  Anybody else want to be heard -- hold on.  Anybody else want to be heard on now the proposed resolution of the current motion, which is in a form of order attached to 685?

MR. APPELL:  Yes, your Honor.  Evan Appell on behalf of Derek Stephens.

We just want to reiterate, as we stated in our

response, our request that Mr. Stephens -- while the case is up on an appeal that the vehicle at issue be carved out from this order.  We've spoken with the trustee's counsel about that.  They've not agreed to that.  But we would ask that during the pendency of the appeal that vehicle be carved out and not included in any sale or auction going forward.

THE COURT:  Let's hear about that.

MS. CARNAHAN:  And so, your Honor, and Mr. Appell, I apologize I was getting to his response next, he did file a response, and he did respond to my email sending out the proposed order saying that they do object.

So as your Honor is aware, your Honor has entered an order denying Mr. Stephens' motion for turnover of the vehicle.  In fact, your Honor made specific affirmative findings that Mr. Stephens retained no rights to the Ferrari.  So at this point in time, the only potential parties that I believe, you know, may assert some right to the vehicle or among whom there is a bona fide dispute at least that would be as between the estate and Karma and --

THE COURT:  Well, let me point out, there is no stay of my order, correct?

MS. CARNAHAN:  That is correct.  And your Honor has already entered an order denying Mr. Stephens' motion for stay pending appeal, and Mr. Stephens, in fact, even after your Honor denied the motion, filed a motion for stay

Page 14

pending appeal with the District Court in the appellate case and the District Court, Judge Dimitrouleas denied the motion for stay pending appeal as well.

THE COURT:  Right.  The ruling is based almost entirely on factual findings that there was a complete meeting of the minds between Mr. Stephens and the actual principal of the party who he was dealing with, and that, thereafter, there was an attempt by the entity's employee to change the deal in order to, at least theoretically, help Mr. Stephens.  And Mr. Stephens could not possibly have believed that that person had authority to change the deal he had literally just struck on the phone with the principal of the party he was dealing with.

I don't know how there's any theory that he will succeed on appeal.  But I've already denied the motion for stay pending appeal, which means that the property can be sold.

So what other position do you have, Mr. Appell?

MR. APPELL:  That was our only position, your Honor, just that it -- during the pendency of the appeal that the car not be sold, but your Honor has made --

THE COURT:  The point -- the point of that is that if you want that not to happen, then you need to have obtained a stay pending an appeal, and my order is currently effective, and that objection will be overruled.

Page 15

All right.  Did I -- I didn't realize I interrupted your presentation.

MS. CARNAHAN:  You did not, your Honor.  I might have gone on a tangent as well, so I was getting to the two parties that actually responded and actually filed responses by the deadline set forth in your Honor's order, which set the hearing for today, and your Honor has addressed both of those.

So we do believe that there's nothing preventing the Court today from entering the proposed agreed order filed by the trustee, FVP, and Franklin and to which we believe no party, other than Hi Bar and Mr. Stephens, have objected and the Court addressed both of those issues.

THE COURT:  Right.  We haven't addressed where the money would go yet.

MS. CARNAHAN:  Right.

THE COURT:  Would anybody else like to be heard in connection with the proposed resolution that's attached to ECF 685.

Yes, Mr. Dorsey.

MR. DORSEY:  Judge, I'll just note that the sale procedures set forth in the proposed order provide for a minimum 14-day marketing period and then a separate 14-day auction period.  The sale is not going to close for 28 days at a minimum.

Page 16

And so while I certainly share Mr. Hitchings concerns that we all want this money to go to a safe place where it will be kept pending an adjudication by a court of competent jurisdiction, I do think it doesn't necessarily be an issue that couldn't be resolved today.  I'm happy to come back in a week.  The order can be as watertight as Mr. Hitchings wants in terms of an escrow agent "shall be" determined at a subsequent hearing.  My larger point is, I just don't know that it needs to be determined today prior to the entry of an order, given that the sale is not going to close for a month.

THE COURT:  I think that's fair.

And, Mr. Hitchings, maybe the best thing for me to do is, we can modify the order slightly to say that it's granted and that the trustee can come back and ask what to do with the net proceeds by a separate request, not a continued hearing on this motion, and that I will either direct that it be held by a specific escrow agent or lodged -- and even if this Court has no ongoing jurisdiction of disputes, I can direct that the fund be held by the -- by the court registry solely to relieve the trustee of the duty to hold the funds.  And then you all can figure out what to do with them, and the government will gladly hold your money in the meantime.

MS. CARNAHAN:  And, your Honor, I don't know

Page 17

whether, perhaps, maybe Mr. Hitchings law firm would like to hold the funds as well.

THE COURT:  Well, he can think about that.

I used to be a partner at a law firm where the policy was we never except escrow at all, ever, so -- and also no contingent fees, but -- (laughter.)

MS. CARNAHAN:  That's a good policy.

THE COURT:  Anyway, but I -- we can do that and say that the trustee may, by separate request, ask me to order what happens with the funds.

MS. CARNAHAN:  And we would just take that paragraph out of the --

THE COURT:  Right --

MS. CARNAHAN:  -- proposed order then.

THE COURT:  -- and include a provision saying that the trustee will ask for further direction, you know, prior to closing, where the funds will go, and then, hopefully, you can agree on that in the meantime.

MS. CARNAHAN:  And then one last thing, your Honor, which Mr. Bakst reminded me about.  About two days ago, Mr. Crane notified the trustee that early -- I believe in January, I believe all the parties to this proceeding received sort of a -- an email that was not clear from a potential party who may or may not claim an interest in the vehicles, and the entity's name is True Business Funding,

LLC, so -- claiming through someone named Joshua --

MR. BAKST:  Lubin.

MS. CARNAHAN:  -- Lubin, and he was quite well aware of both bankruptcy proceedings and indicated at that time that they were going to be retaining an attorney to make appearance, and as far as we're aware, they never did so.  However, in an abundance of caution, as far as this motion, we do want to make sure that all potential entities that could claim any interest in the vehicles do get notice of the motion and the order, and what we would propose to do as to that entity, we have already served the motion and the order setting today's hearing on them via overnight mail, and we would --

THE COURT:  Okay.  And when did you do that?

MS. CARNAHAN:  We actually just did it yesterday though --

THE COURT:  Okay.

MS. CARNAHAN:  -- your Honor, being that we just found out about it on Monday.

THE COURT:  Well, this is a person who admitted to you that they had knowledge of this bankruptcy and the EXCEL bankruptcy.

MS. CARNAHAN:  Not to me.  They emailed all of the parties to this hearing and indicated that they were going to be obtaining an attorney, and they have not done so.

Page 19

So it would be --

THE COURT:  And when did that happen?

MS. CARNAHAN:  That was in January, so Mr. Crane forwarded --

THE COURT:  In January?

MS. CARNAHAN:  Correct, and Mr. Crane forwarded that email to me.  So all I had was the email to go on.

So we would propose that we would put negative notice in the order that would be entered giving them one week to --

THE COURT:  That's extremely generous.  This is someone who has known about the bankruptcy since January and has done nothing to protect whatever rights they might allegedly have.  So, sure, I'll be glad to do that.

MS. CARNAHAN:  Okay.  We will do that, your Honor.  We'll give them one week until next Wednesday to file any objection that they might have to the order that your Honor would enter coming out of this hearing.

THE COURT:  Fine.  All right.

Mr. Miller.

MR. MILLER:  Good morning, your Honor.  I was just -- I just wanted to listen in.  However, I felt a need to speak to help Ms. Carnahan out.

Mr. Lubin is also the principal of Hi Bar, which is represented by Mr. Hitchings' firm.  So Mr. Lubin has

Page 20

been well aware of this bankruptcy case for quite a long time.

THE COURT:  Okay.  So, Mr. Hitchings, is this correct?

MR. HITCHINGS:  Your Honor, I'm not exactly sure as to Mr. Lubin's direct interest in Hi Bar, but he is affiliated with Hi Bar.

THE COURT:  Okay.  And have you had any communications with Mr. Lubin during this case?

MR. HITCHINGS:  I have, your Honor.

THE COURT:  You have.

So he knows about this case?

MR. HITCHINGS:  He is aware, your Honor.

THE COURT:  Okay.  There will be no provision regarding seven days.  You know, this is somebody who has been knowledgeable of the case.  They need to get involved earlier.  We don't need to bend over backwards to provide them with process, which way more than that is due under relevant Eleventh Circuit and Supreme Court law.

All right.  So we have -- anybody else wish to be heard on the proposed order?

MR. HITCHINGS:  Your Honor, if I may just for --

THE COURT:  Sure.

MR. HITCHINGS:  -- the record?

I am only retained by Hi Bar capital, LLC, not --

Page 21

THE COURT:  I get that, and --

MR. HITCHINGS:  -- Mr. Lubin in connection --
(inaudible.)

THE COURT:  -- I didn't take that as a statement
on behalf of Mr. Lubin.  But my problem is that we have
somebody who has been knowledgeable of the case, and if they
had an interest in the vehicles, they needed to come forward
and be involved.  They don't get to sit by the side and wait
until something happens, and then have the trustee extremely
graciously offer to provide them with extra notice.  No,
that's not what happens.  If you have actual notice of a
bankruptcy case, you need to do something about it.  And
this case has been pending for a long time.

So all I -- I was just taking your statement and
my question -- my question and your response as indicative
of the fact consistent with the statement that counsel just
made that this person has known about the case for a long
time.  If he wanted to hire counsel, he should have done it
ages ago.

All right.  I've overruled the only -- the one, I
guess, substantive objection, and that's Mr. Stephens for
the reasons stated.  I have an order that is, while under
appeal, still enforceable and has not been stayed, despite
two motions for stay pending appeal, apparently, and that
does not prevent the trustee from seeking to sell that

Page 22

vehicle.

And in terms of where the money will go, which is really the only objection that I got from Mr. Hitchings, I'm preserving that. And so the trustee -- the order will say only that the trustee will, prior to closing, ask the Court to direct where the proceeds go, which you may say, "May include the registry of the United States Bankruptcy Court for the Southern District of Florida," because my view is that we have sufficient ability to hold the funds in order to relieve the trustee of the duty of holding funds which the estate has disclaimed, at that point, any interest in.

And you may tender the order.

Anything else today?

Yes, there is. There's a motion for payment, which I think is still pending. Let's have a look at -- and, I guess, let me address the other things in the calendar, because I think that they should be carried or abated. There's the motion with respect to the warehouse lease.

What would you like to do with that?

MS. CARNAHAN: Yes, your Honor. Rilyn Carnahan for the trustee.

We would like to continue that matter, if that's okay with your Honor until --

THE COURT: Yes.

Case 22-15627-EPK   Doc 754   Filed 07/27/23   Page 23 of 25

Page 23

MS. CARNAHAN:  -- certainly until after the sale occurs.

THE COURT:  Let's choose a date that is -- how far out do you want?

MR. BAKST:  A month.

MS. CARNAHAN:  A month?  You want 60 days?

THE COURT:  Is that enough?

MR. BAKST:  Forty-five days.

MS. CARNAHAN:  Is 45 days okay?

THE COURT:  That's fine, of course.

What can we give them, Ms. Leonard?  That's 652 by the way.

THE CLERK:  (Inaudible.)

THE COURT:  Okay.  July 26th, that's for 652. We'll do an electronic re-notice.

What time will it be.

THE CLERK:  (Inaudible.)

THE COURT:  Okay.  One.

THE CLERK:  No, 9:30.

THE COURT:  9:30, okay, 9:30.

The motion to abandon filed by Karma, I would like to leave that outstanding.

What should I do with that, Mr. Winderman?

MR. WINDERMAN:  I'm here, your Honor, and I think you can continue it for the same 45 days and hopefully it

Page 24

will get resolved.

THE COURT:  Right.  Okay.  That's 632.  We'll do the same thing.

And, then, I think lastly I have 579, which is the motion for payment, I believe, to Mr. and Mrs. Farache.

Who would like to address that?

MR. LESSNE:  Your Honor, this is Michael Lessne.

I would also suggest that that be continued, perhaps, to the same date and time.

THE COURT:  Very good, I'll do it.

Electronic notice, Ms. Leonard.

And is there anything else in this docket?

(No audible response.)

THE COURT:  Good.  Thank you all.

Congratulations to everyone for moving on this.  I think that you chose the right outcome.

MS. CARNAHAN:  Thank you, your Honor.

THE COURT:  I won't say anything else.

Court is in recess until 1:30.

(Whereupon, the hearing was concluded.)

Page 25

CERTIFICATION


STATE OF FLORIDA                    :

COUNTY OF BREVARD                   :


        I, Anna M. Meagher, Stenographic Reporter, and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were transcribed by me from a digital recording held on the date and from the place as stated in the caption hereto on page 1 to the best of my ability.

        WITNESS my hand this 13th day of July 2023.




_____
Anna M. Meagher, Stenographic Reporter
            and Notary Public
in and for the State of Florida at Large
          Commission #HH59960
          January 9, 2025