**UNITED STATES BANKRUPTCY COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:                                                                    Chapter 7

AUTO WHOLESALE OF BOCA, LLC,                    Case No.: 22-15627-EPK


            Debtor.
_____/

**LIMITED OBJECTION TO MOTION TO APPROVE**
**STIPULATION TO COMPROMISE CONTROVERSY**

Linda Leali, as creditor in this case, files this limited objection to the Motion to Approve the Stipulation Agreement (the "Stipulation") by and between Trustee Michael R. Bakst (the "Trustee") and Moshe Farache ("Moshe Farache"), Lisa Farache ("L. Farache"), Chase Farache ("C. Farache"), Michele Martin ("M Martin"), Farache Enterprises, Inc. ("FEI"), M&M Development Consultants, LLC ("M&M"), Express Emergency Services, Inc. ("EES"), Mazel Tov, Inc. ("MTI"), and 1001 Clint Moore, LLC ("1001 CM", and collectively with Moshe Farache, L. Farache, C. Farache, M. Martin, FEI, M&M, EES, MTI, the "Farache Parties") [ECF No. 827] and respectfully represents as follows:

**Limited Objection**

1.      The undersigned objects to the Motion as the Stipulation is based on the Trustee's conclusions regarding solvency derived principally from the Debtor's accounting records and tax returns which this Court has already called into question. These conclusions regarding solvency contradict the Debtor's own schedules, which indicate insolvency by over $2.2 million at the petition date and are wholly inconsistent

with the Trustee relinquishing from the estate millions of dollars in proceeds from the sale of a majority of the "Debtor's automobiles" to potentially satisfy third parties. These third-party claims are not reflected on the Debtor's balance sheet that is the basis for the solvency determination. These deficiencies are concerning given the millions of dollars of allowed claims in this case and the relatively small settlement payment of $275,000 by the Farache Parties under this Stipulation along with the release of the estate's claims against American Express.

**Claims Against the Farache Parties**

2.      The Motion indicates that the Debtor made $475,000 in transfers to the Farache Parties over the four years prior to filing. However, the statement of financial affairs filed in this case provides that in the one year preceding the bankruptcy filing, the Debtor transferred $541,435 to Moishe Farache, Lisa Farache, and Chase Farache alone [ECF No. 65]. Upon inquiry as to the discrepancy, counsel to the Trustee clarified that the $475,000 is representative of transfers made by the Debtor to the Farache Parties from April 1, 2022 (the date of the seizure of the cars), to July 22, 2022 (the petition date).

3.      The Trustee has made available his financial advisors to provide additional information on certain of the issues discussed herein, however, the undersigned's concerns have not been assuaged and are only heightened.   The Trustee's conclusions surrounding solvency rely principally on the Debtor's own accounting records and tax returns which contradict the Debtor's schedules signed under oath by Moses Farache, which indicate that as of July 22, 2022, the Debtor was insolvent by over $2.2 million. There is no indication in the record that the Debtor incurred millions in additional debt from April 1, 2022, to July 22, 2022.

4. Moreover, the Trustee's conclusions did not consider claims by Franklin, FVP Opportunity Fund III, LP (including FVP Investments, LLC, and FVP Servicing, LLC), and Hi Bar Capital, LLC—who asserted perfected priority security interests in the majority of the "Debtor's assets", *i.e.*, the automobiles, that are reflected on the Debtor's balance sheet. Collectively, these entities have filed claims against the Debtor in excess of $16 million, with FVP's claims totaling $7,500,000, Franklin's claims amounting to $6,535,055.13, and Capital's claims totaling $3,125,000. The liens claimed by these entities are alleged to have arisen as follows: FVP's lien arose on January 26, 2022, pursuant to a promissory note and security agreement; Hi-Bar's lien began on October 27, 2021, in connection with a revenue purchase agreement; and Franklin's lien arose on November 3, 2021, through various loan and security agreements. These claimants are included on the Debtor's schedules as disputed in an unknown amount [ECF No. 64].

5. As this Court is aware, there has been an ongoing dispute among these entities regarding the validity, priority, and extent of their respective security interests in the majority of the "Debtor's assets", and the Trustee ultimately released all interest in the proceeds from the sale of these assets except for a modest carve-out of 9.5%. Specifically, the automobiles sold at auction for the amount of $2,547,965 (including a buyer's premium) [ECF No. 778], from which the Trustee received a carve-out of $225,169 [ECF No. 694]. By doing so, it would seem that the Trustee determined that these entities likely had valid claims against the Debtor, at least to the extent of the value of the automobiles, calling into question the Debtor's solvency at a much earlier date than April of 2022 given the dates these entities interests came into being.

6. The Trustee's relinquishment of over $2 million in proceeds from the sale

of automobiles along with the valuations set forth in the schedules all lean towards a conclusion that the Debtor was insolvent well prior to April 1, 2022. As a result, the Motion would benefit from a more thorough explanation addressing the above considerations and their applicability, along with the conclusion that only $475,000 in payments made to the Farache Parties were arguably fraudulent transfers.

### Claims Against American Express

7.      While not referenced in the Motion, the Stipulation provides for a waiver of claims against American Express for payments made on behalf of the Farache Parties. In addition to the same solvency concerns discussed above, the Motion does not contain any information about the value of these claims being released. A more detailed explanation is necessary to provide clarity on the value of the claims against American Express that are being waived. This information is essential to ensure that the settlement is equitable and that all parties involved can make an informed evaluation of its fairness.

### Malpractice Claims & Allowed Claims

8.      While not referenced in the Motion, in the Stipulation the Trustee is abandoning legal and professional malpractice claims to the Debtor. The Trustee has already filed a notice of abandonment of the legal malpractice claims [ECF No. 828] (which is already effective) so presumably the Trustee has determined these claims to lack value.

9.      Additionally, while not referenced in the Motion, the Trustee has also agreed to allow three specific claims of the Farache Parties as general unsecured claims against the Estate, including: Claim No. 13 of EES. as a general unsecured claim for $3,000; Claim No. 17 of M&M as a general unsecured claim for $11,000; and Claim No. 14 of FEI as a general unsecured claim for $11,000. The allowance of these specific claims as general

unsecured claims, without detailed explanation or justification, is somewhat unusual under the circumstances and further complicates the evaluation of the settlement's fairness.

## Justice Oaks Factors

10.     In the Motion, the Trustee argues that the Stipulation should be approved under the standards set forth in *Justice Oaks* (*In re Justice Oaks II, Ltd*, 898 F.2d 1544 (11th Cir. 1990) factors. The Motion lacks any real facts or real analysis to support this position. The Trustee's blanket assertion that the settlement avoids litigation difficulties and expenses, while claiming the Trustee's belief in the merits of his claims, overlooks actually providing a meaningful analysis of these claims and the challenges of an adversary proceeding. In fact, the Trustee has not conducted an analysis on the issue of solvency other than reviewing the Debtor's own balance sheet and tax returns on the question of solvency which apparently show that the Debtor is solvent.  This conclusion is inapposite to the Schedules and the Trustee's turnover of in excess of $2.1 million in sales proceeds from the automobiles.

11.     Moreover, the Trustee's statement about potential collection difficulties is unfounded, as he admits in the Motion to lacking financial discovery that would actually indicate whether there would be any difficulty in collecting on a judgment obtained by the estate. This lack of due diligence undermines the credibility of the Trustee's rationale for the settlement.  The Trustee argues that settling avoids the difficulty, expense, and delays of litigation (Motion ¶ 15(a)). However, without a detailed assessment of the strengths and weaknesses of the claims, this argument is speculative. An attempt at a comprehensive cost-benefit analysis comparing potential litigation outcomes to the settlement amount is necessary to justify this point.

12.     Finally, with respect to the factor concerning creditors' views, it's not clear that any creditors' views were given consideration in connection with the entry into the Stipulation other than perhaps certain of the Farache Parties who were given allowed claims. Moreover, the Trustee expects that there will be no recovery in this chapter 7 cases for unsecured creditors.  This factor does not support approval of the Stipulation.

13.     The Trustee through counsel has cautioned the undersigned that the filing of this Objection will only result in additional fees in this Case.  The undersigned is mindful of this possibility, as well as the upcoming expiration of the two-year deadline to file any avoidance actions, but given the inconsistencies discussed herein determined it was prudent to file this Objection.

### **Conclusion**

For the reasons stated above, the undersigned respectfully requests that the Court deny the Motion to Approve the Stipulation Agreement as it currently stands. The Trustee's solvency conclusion is questionable, given conflicting financial information and substantial creditor claims. The Motion also lacks essential details and transparency regarding the waiver of claims against American Express, and the allowance of specific unsecured claims of the Farache Parties. A more thorough analysis and detailed explanation are necessary to ensure the settlement is fair and in the best interests of the estate and its creditors.

Respectfully submitted this 24th day of June, 2024.

LINDA LEALI, P.A.
2525 Ponce De Leon Blvd., Suite 300
Coral Gables, FL 33134

Telephone:    (305) 341-0671

By:    /s/ Linda Leali
        LINDA LEALI
        lleali@lealilaw.com
        Florida Bar No. 186686
        *Subchapter V Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on June 24, 2024, a true and correct copy of foregoing was electronically filed with the Court using the CM/ECF system, which sent notification and was electronically served upon all parties in interest participating in the CM/ECF system.

By: */s/ Linda Leali*
LINDA LEALI
Florida Bar No. 186686