UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

*In re:*

AUTO WHOLESALE OF BOCA, LLC,                Case No.: 22- 15627-EPK
                                            Chapter 7

_____Debtor._____ /

**FORMER CHAPTER 11 COUNSEL'S LIMITED[1] RESPONSE TO FARACHE
PARTIES' OBJECTIONS TO FINAL FEE APPLICATION**

Comes Now, undersigned counsel, as former counsel to the former Chapter 11 Debtor, and files and serves this instant *Former Chapter 11 Counsel's Limited Response to Farache Parties' Objections to Final Fee Application* in response to the *Moshe Farache, M&M Development Consultants, LLC, Farache Enterprises, Inc., and Express Emergency Services, Inc.'s Amended Objections to Final Fee Application of Chapter 11 (Subchapter V) Debtor-in-Possession Counsel, James B. Miller* [ECF No. 873][2] ("*Amended Objections*") and *Auto Wholesale of Boca, LLC's Objection to Final Fee Application of Chapter 11 (Subchapter V) Debtor-in-Possession Counsel, James B. Miller* [ECF No. 874] ("*AWB Objections*") (collectively, the "*Objections*"), and states

1. The Debtor, AUTO WHOLESALE OF BOCA, LLC, filed a voluntary petition

---

[1] The undersigned requests the Court waive the attorney-client privilege in relation to the representation of the Debtor so he may appropriately defend himself in this Court as well as any other court which the Farache/AWB group decide to pursue their relief.

[2] MFarache's originally filed objections [ECF No. 784] included only three (3) purported bases for objection (*i.e.* – "excessive and unreasonable", "block billing" and then MFarache conflated pre-bankruptcy representation with the bankruptcy petition representation and asserted a lack of application of purported funds received prior to and unrelated to the bankruptcy retainer and employment regarding the Bankruptcy Case. Then, MFarache, over a year later, filed his *Amended Objections* [ECF No. 873], and has identified newly minted objections in addition to the previous ones, including: legal malpractice for AWB; and, failure to file a retainer agreement with a guarantor identified therein.

1

[ECF No.1] (the "*Petition*") under Chapter 11 of Title 11 of the United States Code, Subchapter V, on July 22nd, 2022 (the "Petition Date"), commencing the instant Bankruptcy Case under Case No. 22-15627-EPK.

2. The undersigned was retained to file this Case as a Chapter 11, Subchapter V, and to represent the former Debtor-in-Possession in the Chapter 11 proceeding only.

3. The Case was eventually converted to one under Chapter 7.

## I.   AWB OBJECTIONS

4. *AWB's Objections* are solely limited to their purported claim of malpractice.

5. Without getting into the meritless allegations, the undersigned would point to the fact that there are no claims, let alone malpractice claims, listed or disclosed in any of the Schedules executed under penalty of perjury by Moshe Farache on behalf of the Debtor in this case.

6. Further, although the Trustee "abandoned" any such claims or causes [*see* ECF No. 828] (the Abandonment"), he had to do so by investigating the matters and determining that there was nominal or inconsequential value.

7. In other words, Trustee Bakst obviously would have relied upon representations made to the Trustee by MFarache and his legal counsel in the process of determining a lack of value before abandoning the same.

8. If there were value to the purported claims of malpractice, the Trustee would have certainly approached the undersigned and tried to resolve same for a sum certain.

9. In other words, the malpractice claim of AWB is without merit; unless, MFarache purposefully misled the Trustee as to a purported value in excess of "inconsequential" for the malpractice claim.

10. Additionally, AWB is the former Debtor and has no standing to object in the administration of the estate. *See, e.g., In re George*, 23 B.R. 686 (Bankr. S.D. Fla. 1982) (where claims far exceed assets, debtor lacked standing to object to fee application).

## II.    FARACHE OBJECTIONS

11. Despite not objecting or protesting in any way as to the undersigned's *First Interim Fee Application* [ECF No. 237], the Faraches, and Debtor, now seek to claim malpractice against the undersigned for the services rendered and otherwise object to the same as well as the undersigned's *Final Fee Application* [ECF No. 750].

12. In the *Amended Objections*, Moshe Farache, M&M Development Consultants, LLC, Farache Enterprises, Inc., and Express Emergency Services, Inc. (collectively, the Faraches") raise a number of objections, *i.e.* --  a) "excessive and unreasonable"; b) "block billing"; c) failure to apply a prepetition non-bankruptcy fee as a credit toward the bankruptcy case; d) legal malpractice for AWB; and, e) failure to file a retainer agreement with a guarantor identified therein.

13. The Faraches lack standing to object to the Fee Applications. *See, George, supra*.

14. However, in an abundance of caution, the matters will be preliminarily addressed herein.

3

### a. Reasonable and Necessary

15. No time or costs were incurred which were not reasonable and necessary in this Case.[3]

16. The record reflects, in part,[4] the herculean efforts of the undersigned.

17. Pre-petition, Debtor was being pursued, and also sought relief, in various state and federal courts arising out of or relating to Debtor's transactions with Excell Auto Group – who had filed their own Chapter 7 proceeding in Case No. 22-12790-EPK (the "Excell Bankruptcy") in April, 2022.

18. The litigation in these numerous cases heated up in the summer of 2022, wherein Debtor was expending large sums of money to litigate and was unable to operate (per MFarache), and led the Debtor to seek bankruptcy relief in a single court, *i.e.* -- bankruptcy court --, where the judges are generally experts in matters relating to the extent and priority of liens, interests and encumbrances in property (real and personal) and disputes and matters tend to get resolved much more quickly than elsewhere.

19. In the interim, Debtor timely complied with all bankruptcy mandates and undersigned acted as counsel for the Debtor, including but not limited to: preparing and filing necessary pleadings, documents and other materials; attending the IDI (Initial Debtor Interview); attending the 341 meeting(s) of

---

[3] Additional unreimbursed costs were never paid by Debtor and not part of the fee applications as MFarache had advised he would pay these bills directly to the vendors (*i.e.* -- court reporters); but MFarache did not, and the undersigned paid for them instead.

[4] There are numerous hours of unaccounted time which are not in the Fee Applications, as the undersigned could not keep track of all of the Faraches' late night, after hours and weekend meetings, holiday phone calls and zoom conferences.

4

creditors (held over a few days); responding to all inquiries by, and interacting with, the Office of the US Trustee, the creditors and interested parties; attending multiple and lengthy examinations; reviewing volumes of documentation; conduct extensive research on issues; conduct settlement negotiations; responding to the multiple and various interested parties in the various automobiles and titles in Debtor's possession; litigating various claims and interests in adversary proceedings and the parent case; drafting and responding to voluminous discovery requests of the interested parties; address and attend to emergency matters; obtaining financing and approval for same as it relates to insuring the automobiles in Debtor's possession; objecting to the claims of interested parties and seeking a determination therein as to the priority and extent of liens, *etc.*; seeking relief in relation to the automobiles; attend multiple judicial settlement conferences; attend and litigate at evidentiary hearings; drafting of briefs; and, otherwise represent the Debtor in all aspects of the Bankruptcy Case while working with the interested parties and Sub V Trustee in the Case to try and reach a consensus on matters.

20. Without getting into the lengthy combative and litigious history of this Bankruptcy Case, which is clearly reflected on the Court's dockets (*i.e.* – Parent Case and related Adversary Proceedings) and in the pleadings, the matter was complex and difficult.

21. The undersigned also sought ways to reduce and otherwise cap fees and costs for the Debtor, especially as it related to the time-consuming litigation with the FVP parties.

5

22. Thereupon, Jonathan Feldman, Esq., was successfully brought into the Case to handle the pending adversary proceeding with FVP/Hi Bar and Franklin at no additional cost or expense to the Debtor, other than an agreed-upon percentage if successful – which was approved by this Court.[5]

23. Mr. Feldman also assisted by sitting first chair at the evidentiary hearing on the Motion(s) to Dismiss,[6] held in late March, 2023 – again, at no legal expense to the Debtor.

24. Unfortunately, the Case was converted by the Court to one under Chapter 7 and Mr. Bakst is now the Chapter 7 Trustee.

25. However, the efforts of the undersigned at the time taken were reasonable and necessary to benefit the bankruptcy estate.

26. Therefore, the various objections should be overruled.


   **b. Block Billing**

27. The second issue raised is the block billing argument, *i.e.* – the assertion that undersigned did not adequately breakdown the matters for certain particular days into sufficient time periods so as to allow for the Court to discern what was done and how long for each item.

28. However, the undersigned has clarified the objected-to time entries and filed the clarification with the Court [*see* ECF No.'s 882 and 882-1].

29. Therefore, there should be no remaining objection based upon the block billing

---

[5] The Debtor timely objected to claims, but those matters were continued to coincide with or otherwise be determined after the resolution of the issues in the FVP Adversary Proceedings.

[6] There were several motions to dismiss filed along with joinders.

argument; and, the objection should be overruled.

### c. Pre-petition Non-Bankruptcy Retainer

30. As noted above, the Faraches complain of the application of legal fees and costs arising from pre-petition services and costs rendered unrelated to this Case.

31. This is yet another fictitious misleading objection with no merit.

32. Specifically, the Faraches again attempt to mislead the Court and feign lack of knowledge of things.

33. In relation to the Excell Bankruptcy case, pre-petition, the undersigned was paid the sums $12,500.00 on or about April 12, 2022; $10,000.00 on or about May 4, 2022; $10,000.00 on or about June 24, 2022; and, $50,000.00 on or about July 19, 2022 – all for services unrelated to the instant is Bankruptcy Case.

34. Within the 90-day period pre-petition, the payments would have amounted to $70,000.00.

35. On July 18, 2022, the undersigned delivered an invoice to MFarache and Lisa Farache for outstanding fees and costs relating to the prior representation unaffiliated with this Case – which was voluntarily and significantly reduced after discussions with the Faraches to the sum of $50,000.00.

36. Debtor thereafter retained the undersigned to file the instant bankruptcy case and paid an Initial Retainer of $55,000.00 plus $1,738.00 for costs to file the Case.

7

37. Between the time of retention for the Bankruptcy case and the time of filing, the undersigned's firm incurred billable time and costs of $14,858.00 – which were deducted from the Bankruptcy Retainer per the terms of the Retainer Agreement. Attached hereto as Exhibit "1' is a true and correct copy of the Bankruptcy Retainer Agreement.

38. An invoice for the pre-petition bankruptcy services and costs was generated July 22, 2024 and delivered to the Faraches when they met with the undersigned.

39. Upon filing the Petition, the undersigned filed his 11 U.S.C. Sect. 329(a) and FRCP 2016 Disclosure indicating that he had received, pre-petition, for purposes of the initial retainer fee, the sum of $55,000.00 and for costs the sum of $1,738.00. *See* ECF No. 4 ("2016 Disclosure") – a copy of which was also provided to the Faraches

40. The 2016 Disclosure further provided a breakdown of the balance in the pre-petition retainer as of the Petition filing in the sum of $41,880.00 (after applying pre-petition fees/costs toward the pre-petition bankruptcy preparation and filing).[7]

41. So, all monies paid to the undersigned for the benefit of Debtor have been wholly accounted for and disclosed before this Court and to the Faraches.

42. Therefore, their objection should be overruled.

---

[7] The Bankruptcy Retainer Agreement provided, in relevant part that "[o]f the Advance Payment Retainer, the sum necessary to pay for the hours incurred before the time of filing will be deducted therefrom and the balance will remain in the Firm's Trust Account (IOLTA Account) pending Bankruptcy Court ruling(s) […]". Exhibit "1" hereto is a true and correct copy of the executed Bankruptcy Retainer Agreement.

**d. Legal Malpractice**

43. The Faraches assert, apparently through no fault of their own, that the Case was converted because the undersigned simply did not do enough to save it; despite the efforts the record reflects by the undersigned.

44. The undersigned spent numerous hours preparing a Plan and Disclosure Statement, reviewing financial information, arguing for the retention of assets, negotiating the return of assets to third parties, battling the right, title and interest in the assets, trying to liquidate them over the objections of the various parties-in-interest (with the limited information MFarache provided, retain a financial expert, bring in co-counsel who obviously believed in the position of the Debtor *viz-a-viz* the parties-in-interest as to the automobiles, and also attend numerous official (*i.e.* -- Judicial Settlement Conference) and unofficial settlement negotiations -- none of which could pan out as there was always a party-in-interest not agreeing.

45. Unfortunately, MFarache's testimony did not prove to be beneficial and the Case was converted by the Court.

46. Therefore, the objection should be overruled.


**e.   Retainer Agreement**

47. In their final objection, the Faraches argue the failure of the undersigned to include the executed Bankruptcy Retainer Agreement (Ex. 1 hereto) in his initial filings should result in the denial of fees and costs, thereby rewarding the Faraches.

48. However, the failure to file the retainer was an oversight; and, in fact not one party-in-interest, other than the Faraches have complained.

49. The reason being, the Bankruptcy Retainer Agreement is a standard retainer agreement, with no surprises.

50. More importantly, it includes language indicating that the undersigned was not representing MFarache at all in the Bankruptcy Case, despite his false protestations; and would not change the disinterestedness analysis.[8]

51. Further, the *Employment Application* [ECF No.5] included, as an attachment, the undersigned's affidavit of disinterestedness, which disclosed pre-petition representation of Moshe Farache ("MFarache"), 1001 Clint Moore LLC ("CMoore"), MMS Ultimate Services Inc. ("MMS"), and Debtor in the Excell Auto Group, Inc. Bankruptcy Case (No. 22-12790-EPK) ("Excell Bankruptcy"). *See* ECF 5-1 ("Employment Affidavit").

52. Additionally, the Employment Affidavit [ECF No. 5-1] addressed that each of these entities, (MMS, MFarache and CMoore) (other than Debtor), created no conflict because, among other things, MFarache had retained or continued with his then-current counsel to represent him,[9] and neither CMoore nor MMS had

---

[8] The Bankruptcy Retainer Agreement executed by MFarache for the Debtor (and as personal guarantor) for purposes of the Bankruptcy Case clearly states that "Moshe Farache herein, individually and as Managing Member of AWB […] understands that any all representation in the to-be-filed bankruptcy case contemplated herein for AWB by the Firm is solely and strictly related to legal representation by the Firm for the benefit of AWB and not Moshe Farache, the insiders of AWB or others."

[9] MFarache continued, post-petition, to utilize as his personal/family and corporate counsel(s) -- the same counsel he had used for personal/family and corporate matters pre-petition, *i.e.* -- Scott Gherman, Jay Farrow, Catherine Gleason (who worked at Jay Farrow's firm at the time) and Will Dilly; and, would go on to retain John Moffa, Esq. and subsequently Michael Lessne and Catherine Gleason for the Bankruptcy Case post-conversion. Attorney Michael Hoffman was retained for purposes of the post-conversion representation of Debtor; however, it appears that Ms. Gleason is now acting as counsel in that regard for Debtor.

a claim or interest in the Bankruptcy Case.[10]

53. Therefore, the objection should be overruled.

**WHEREFORE**, Counsel respectfully requests this Court enter an order overruling

the Objections, award the requested final fee fees and costs and for such other and further

relief this Court deems equitable and just.

Respectfully submitted on September 16th, 2024.

James B. Miller, P.A.
James B. Miller, Esq.
19 West Flagler Street, Suite 416
Miami, FL 33130
Telephone: (305) 374-0200
Facsimile: (305) 374-0250
Email:  jbm@title11law.com

By: _____/s/_____
        JAMES B. MILLER
        Fla. Bar No. 0009164

**I HEREBY** certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

By: _____/s/_____
        JAMES B. MILLER
        Fla. Bar No. 0009164

I HEREBY CERTIFY that a true and correct copy of this pleading was served *via* CM/ECF in pdf format upon filing same with the Court on September 16th, 2024, upon those registered to receive such filings *via* CM/ECF as of date and time of filing.

By: _____/s/_____
        JAMES B. MILLER
        Fla. Bar No. 0009164

---

[10] The Bankruptcy Retainer Agreement executed by MFarache for the Debtor (and as personal guarantor) for purposes of the Bankruptcy Case clearly states that "Moshe Farache herein, individually and as Managing Member of AWB […] understands that any all representation in the to-be-filed bankruptcy case contemplated herein for AWB by the Firm is solely and strictly related to legal representation by the Firm for the benefit of AWB and not Moshe Farache, the insiders of AWB or others."