Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO. 22-15627-EPK

IN RE:

AUTO WHOLESALE OF BOCA, LLC,

Debtor.

_____/

ECF (866)

September 11, 2024

The above-entitled cause came on for hearing before the Honorable ERIK P. KIMBALL, Chief Judge of the UNITED STATES BANKRUPTCY COURT, in  and  for  the SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Drive, West Palm Beach, Palm Beach County, Florida on September 11, 2024, commencing at or about 10:30 a.m., and the following proceedings were had:

Transcribed from a digital recording by:

Anna M. Meagher, Stenographic Reporter

Page 2

APPEARANCES:

Greenspoon Marder, by
Rilyn A. Carnahan, Esquire
Chapter 7 Trustee
Email:  Rilyn.carnahan@gmlaw.com


Michael D. Lessne, P.A., by
Michael D. Lessne, Esquire
On behalf of Moshe Farache and Lisa Farache
Email:  Michael@lessne.law


VIA ZOOM VIDEO CONFERENCE:
Schwartz Breslin, PLLC, by
Jerrell A. Breslin, Esquire
On behalf of FVP Investments, LLC,
FVP Opportunity Fund III, LP, and FVP Servicing, LLC
Email:  Jb@jsjb.law


David R. Softness, P.A., by
David R. Softness, Esquire
On behalf of FVP Investments, LLC,
FVP Opportunity Fund III, LP, and FVP Servicing, LLC
Email:  David@softnesslaw.com


Furr Cohen, by
Alan Crane, Esquire
On behalf of Nicole Testa Mehdipour,
Chapter 7 Trustee of the Estate of EXCEL Auto Group.
Email:  Acrane@furrcohen.com


James B. Miller, P.A., by
James B.  Miller, Esquire
On behalf of James B. Miller, P.A.
Email:  Bkcmiami@gmail.com
- - - - - - -

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

THE CLERK:  Auto Wholesale of Boca, LLC, Case No. 22-15627.

MR. BRESLIN:  Yes, good morning, Judge. Jerry Breslin for the FVP parties.

THE COURT:  Good morning, Mr. Breslin.

THE CLERK:  Mr. Miller.

MR. MILLER:  Good morning, Judge.  James Miller on behalf of my law firm.

THE COURT:  Good morning.

THE CLERK:  Mr. Crane.

MR. CRANE:  I'm just observing.

THE CLERK:  Mr. Softness.

MR. SOFTNESS:  David Softness for FVP parties, but I am observing as well.

THE CLERK:  In the courtroom.

MR. LESSNE:  Good morning, your Honor. Michael Lessne, that's L-E-S-S-N-E, for Moshe Farache, Lisa Farache, and certain of the settlement parties.

THE COURT:  Thank you.

MS. CARNAHAN:  Good morning, your Honor. Rilyn Carnahan for the trustee.

THE COURT:  Good morning.

Mr. Breslin, I assume you would like to present the motion.

MR. BRESLIN:  Yes, your Honor.

Page 4

The FVP parties have filed a motion at Docket Entry 866.  We're asking that your Honor make a finding that the FVP parties' claims -- and to the extent that we would be permitted to have alter ego claims -- would not be part of the estate.  We've cited the case law Icarus and Tampa Hyde Park.  I think your Honor is certainly familiar with the law.

In the response, you know, Mr. Lessne cites the same law, and ultimately I believe, Judge, this is a factual determination based on where our claims are in this case to determine whether or not it's a general claim, one that is owned by all the creditors, as opposed to a personal claim that is owned only by the FVP parties.

Judge, when you look at the list of creditors in this case, there's 77 creditors.  All right.  And I have uploaded a proposed amended complaint in this case that would simply add AWB as a party of interest.  We're not seeking any affirmative relief against AWB.  But we would be naming them, naming the company as a party, a defendant party to seek remedies under piercing the corporate veil.

So, Judge, when you look at this case factually and you look at all the creditors, the question becomes, when you look at Hyde Park, whether or not this is a general claim, one that -- a claim that could be

brought by all the creditors or if it's personal to the FVP parties.  When you look at the history of this case, the adversary complaint, the hearing before your Honor to convert, the findings that your Honor made at the hearing to convert, which I uploaded and I could bring those to your Honor's attention if you'd like, you made it very clear that it appeared to be a fraud that was perpetrated on the FVP parties and certainly wasn't perpetrated on any of the other creditors, general creditors.

But I think the -- and I could quote your Honor.  It's on page 10 of Docket Entry 869 -- you indicated that -- you said in the middle of the page, line 11, "When Mr. Farache terminated the UCC to make way for FVP, Mr. Farache knew that FVP intended to obtain a lien on all of Mr. Zankl's auto inventory, which by that time was bought and sold almost exclusively through the Karma entities."  And then your Honor goes on and you state on page 11, line 5, "Why would Mr. Farache insist on this change of transactions, because he knew FVP claimed a security (distorted audio) obtained by Karma.  He was trying to defeat FVP's interest in the vehicles."

So, Judge, when you look at the history in this case, there's pretty much one plaintiff that has attempted to bring any claims against either Mr. Farache, Mrs. Farache or FVP.  So I believe that when you look at

Page 6

the Hyde Park decision, which is very recent, and you look at the definition of what a general claim is and what a personal claim is, I think it's objectively undisputable that this is a personal claim to the FVP parties.

So, therefore, the question becomes what's the remedy?  If it's a personal claim to FVP parties, the question then -- normally, you know, if there was no settlement entered, then it would be, can we bring the claims?  And I would ask your Honor for that ruling, which, of course, is part of what I'm asking your Honor to rule, but there's a settlement that's already been entered in this case.

So the trustee and the Farache parties enter into a settlement, and if you take a look at this settlement, Judge, that settlement can be found on -- let me see, Docket Entry -- let me find the docket entry, Judge.  I'm sorry.

THE COURT:  That's okay.  I looked at it.

MR. BRESLIN:  Right.  So it at 827, it's filed of record.

That settlement is about fraudulent transfer claims.  Alter ego is not mentioned.  There's nothing in that settlement agreement that would indicate that any possible claims that the FVP parties could have brought against the company were included in it.  But that's

Page 7

neither here nor there when you have general release language, which turns us back to Hyde Park.

So when you look at Hyde -- Tampa Hyde Park, it's Tampa Hyde Park Cafe Properties, which I've cited, that addresses specifically a settlement agreement that was already entered into. And the court in Hyde Park ruled that the trustee did not have standing to enter into that agreement, because those claims were not claims that the trustee could have negotiated and settled and, therefore, the settlement agreement does not apply to the IRS, which had claims.

So I think Hyde Park is very compelling for a number of reasons. Number one, it addresses the definition of a general claim and a private claim, and it also talks about what happens when the trustee enters into a settlement agreement. And they addressed it on standing grounds, which is, in essence, jurisdictional grounds.

So for all those reasons, Judge, I think this is a fact based analysis. I think if your Honor looks at the amendments that I want to make to my fourth amended complaint to add just AWB as a named party, and then, you know, seek to pierce that corporate veil to achieve personal liability by Mr. and Mrs., I believe that both the law and facts support the FVP parties' position.

Thank you, your Honor.

Page 8

THE COURT:  Thank you very much.

Mr. Lessne.

MR. LESSNE:  Good morning again, your Honor.

So the redline draft of the fourth amended complaint was filed yesterday.  I did get a chance to look at it yesterday, and what it shows is that the FVP parties are really seeking to assert claims that are property of the estate and that were released by the trustee pursuant to the court approved agreement with my clients.

The complaint itself adds back allegations that were previously removed upon an agreement that was reached with the trustee last year, as your Honor may recall, because this similar issue was before the Court in June of last year when they sought stay relief, and they had removed the claims to pierce the corporate veil of AWB, and he adds those back.  And those claims are based on allegations that the Faraches dominated and controlled the debtor and used the corporate identity of the debtor for improper purposes, and then interlineated throughout the amended complaint are allegations that the Faraches and AWB were alter egos.

I believe the Court was clear at the time that FVP could only assert independent claims that it had, not estate claims.

THE COURT:  No, I didn't rule that those

Page 9

specifics claims, which are indicated in the redline, were in fact estate claims.  Did I?

MR. LESSNE:  You did not rule that they were estate claims, but there was plainly recognition by the FVP parties at the time that they were, as they had removed them.  But --

THE COURT:  Or they didn't want to do battle with the trustee on the issue at the time.

MR. LESSNE:  Perhaps.

So I think the Xenerga case here is on all fours, and it expressly barred what really are affirmative alter ego claims and claims derivative of the alter ego allegations.  And in that case, the court held that two customer creditors of the corporate debtor could not assert claims based on alter ego allegations against the debtor's principal to hold him liable for the debtor's debts.

THE COURT:  But in that case, wasn't the allegation that the entirety of the debtor's business was done solely for the insiders' benefit, and there were no specific allegations that the insiders' actions were aimed at those particular creditors?

MR. LESSNE:  Well, I think they were -- was really about depletion of and misuse of the assets.

THE COURT:  In general.

Page 10

MR. LESSNE:  Generally.

THE COURT:  Okay.  And that's what you say I would find when I look at 872, the redline filed yesterday, was --

MR. LESSNE:  Well, what you'll --

THE COURT:  -- it's not about the FVP parties; it's harming the debtor in general?

MR. LESSNE:  Yeah.  I think the distinction here that is important is talking about direction of the claim.  You know, the Tampa Hyde Park case talked about a claim that was attempting to be asserted against the debtor entity, and the court said that that was okay because in that case the harm was to the IRS, who had a claim against the debtor by virtue of its alter ego nature, since the IRS had a claim against the alleged third party.  And there weren't any --

THE COURT:  I actually cannot figure out why that case was relevant to today at all, because it's not about whether the estate has a claim -- that's the claim we have here, right -- it's about whether someone has a claim against the estate.

MR. LESSNE:  Exactly.

THE COURT:  So I don't understand why I'm considering that case --

MR. LESSNE:  I think that it is being used

here in an effort to support a proposition that this type of affirmative claim that's being sought here is permissible, rather than it being an estate claim.

THE COURT: Okay. Sure. But that -- my question is, isn't the court's question, the claim in question -- I'm using the word "question" multiple times.

The claims that are indicated in the redline attached to the ECF 872 -- so we'll just call those the alter ego claims -- they are piercing the corporate veil claims, but they are both, there's a distinction there. We can overlook that.

The question is whether those claims are estate claims or not.

MR. LESSNE: Right.

THE COURT: If they're estate claims, they were released, and if they're not estate claims, then they can be pursued.

MR. LESSNE: Yes. So I think that -- I think it's helpful to look at the Xenerga case, and specifically determine -- what the court said about derivative claims, "Claims are derivative if they rely upon a finding of alter ego liability against the Principals but are direct if the Principal's liability is entirely independent of any alter ego finding."

Here, the question I have is what's the

purpose of adding these back, but for coming -- being able to assert a claim based upon the alter ego liability. They're specifically asking here to rely upon this alter ego liability in order to support these claims that they were -- in order to allow the state court -- to allow the state court to make a determination on these claims.

Therefore, if the -- if they -- why do they need to include that, but to rely upon the claims themselves as -- the allegations themselves that the Faraches are alter egos of the debtor, and those claims that are based entirely on that relationship, those are the estate's claims that were released by the settlement.

THE COURT:  So the estate released claims that are based on, at least what I saw in 872, allegations that only FVP was harmed.  It's all about alleged fraud -- I'm using the word "fraud" loosely, obviously -- against FVP, that's what the complaint, the extremely long complaint, is about, and so the estate has released claims based on damage to FVP.

MR. LESSNE:  The estate has released claims that are based upon anybody being an alter ego of --

THE COURT:  So every alter ego claim is always owned by the estate?

MR. LESSNE:  Where it's being asserted affirmatively on the basis that the third-party is a mere

instrumentality --

THE COURT:  Well --

MR. LESSNE:  -- set up for an improper purpose --

THE COURT:  -- you're giving me the definition --

MR. LESSNE:  Well, okay, but for that --

THE COURT:  But your argument is that every alter ego claim --

MR. LESSNE:  I believe so where --

THE COURT:  -- is property of the bankruptcy estate?

MR. LESSNE:  -- where -- where that claim is one in which all of the other creditors also have that and is, therefore, general --

THE COURT:  Well, if it's --

MR. LESSNE:  -- where it's being asserted --

THE COURT:  You just restated Icarus.  I mean, I -- why would the Eleventh Circuit have to give a test if the answer was always one thing?  I mean, it --

MR. LESSNE:  So this case --

THE COURT:  So the question is whether it's a generalized claim or whether it's a personal claim.

MR. LESSNE:  I think the answer here is what -- what would -- what is happening through the claim

itself?  Here, in this scenario, they are seeking to recover -- it would be a -- if the trustee had pursued that claim, as opposed to settling it out, it would have been in a position to --

THE COURT:  The trustee could have pursued the claims in this complaint?

MR. LESSNE:  The trustee could have pursued an alter ego claim --

THE COURT:  To recover a judgment for FVP?

MR. LESSNE:  No, no.  To recover money based upon a third party --

THE COURT:  Damage to FVP.

MR. LESSNE:  Damage to the estate.  The injury here is to the estate based on the alter ego allegations, not to FVP.

THE COURT:  Okay.  So I assume we've both read the same redline.

Can you show me something that talks about injury, generally, to Auto Wholesale of Boca anywhere in that complaint?

MR. LESSNE:  Well, I would say that --

THE COURT:  It's really, really long, so that's a difficult question.

MR. LESSNE:  No, but I think I can answer your question, your Honor, because I think the purpose --

the issue that I -- that I think is present here is, where they go -- let me just -- I have that. So it's --

THE COURT: Painfully, I read the whole complaint before I got the redline, and the redline adds stuff, so that makes it really easy to figure out what's -- you know, what I had to focus on.

MR. LESSNE: Right. So all the alter ego allegations are generally alleged in 58 through 66 of the complaint.

THE COURT: Right.

MR. LESSNE: And then throughout the rest of the complaint, they make reference to allegations that the Faraches are alter egos of the debtor, and it seems like they're --

THE COURT: For purposes of carrying out actions that were alleged to be aimed specifically at causing FVP to either make an advance or give up collateral. Those are estate claims?

MR. LESSNE: The claims that are estate claims is if those causes of action require a finding that they -- that AWB was an alter ego of those third parties.

THE COURT: So any cause of action that requires that finding is an estate cause of action, even if the only harm alleged is specifically to an individual creditor?

MR. LESSNE:  I believe so, where it's affirmatively asserted against the third -- against the alleged alter ego to allow for the recovery to come back into the estate because of the injury to the debtor.

THE COURT:  Okay.  What you just said does not match the complaint at all.  I mean, it's a -- the claim is against Mr. and Ms. Farache, right?

MR. LESSNE:  Right.

THE COURT:  It's not actually against Auto Wholesale.  It's about their actions using the shield of Auto Wholesale.  That's what their complaint is about.

MR. LESSNE:  Wouldn't it mean then, your Honor, that any third party could come in and basically say that, "Well, we have our claims against these individuals, and those -- and so -- and the basis for those claims are that the individuals are the alter egos of the debtor company"?

THE COURT:  Yes, that is, in fact, the point of Icarus, that there are circumstances where the claim is personal.  Otherwise, if you're right, then there's never a circumstance where the claim is personal.

MR. LESSNE:  Well, I think a good example of that would be what happened in Hyde Park, where there was these -- there were these alter egos allegations that were raised against the debtor that would have -- that did the

Page 17

very --

THE COURT:  But that's about a claim against the debtor.  I still can't figure out why that is relevant here.

MR. LESSNE:  That could have had the effect also of that -- if there was an alter ego determination and that nondebtor entity, which is now an alter ego, if it has assets, those assets are now arguably property of the debtor's estate.

THE COURT:  Okay.  We're getting further away.

MR. LESSNE:  Okay.  Well, it -- I'll stand.

THE COURT:  Thank you.

Does the trustee have a view?

MS. CARNAHAN:  Your Honor, the trustee did have a view, but I don't imagine it will be helpful --

THE COURT:  Of course --

MS. CARNAHAN:  -- here.

THE COURT:  -- usually everything you say is helpful.

MS. CARNAHAN:  Well, your Honor, the trustee has always taken the position in this case, as well with respect to the stay relief filed last year, that the alter ego claims are claims belonging to the estate --

THE COURT:  Always --

Page 18

MS. CARNAHAN:  -- only.

THE COURT:  -- no matter the harm resulting?

MS. CARNAHAN:  Well, your Honor, and I guess -- I guess the reason -- one of the reasons the trustee took the position is, because it appeared to the trustee that the FVP parties could proceed on their claims without those allegations.  And it seemed to the trustee that if they really are truly independent claims that the parties would not need alter ego allegations, because, certainly, and as the Court mentioned, the same facts -- just because they are the same facts and just because maybe Mr. Farache was taking certain actions, that still independent claims could be brought against him for those actions.  So the trustee did recognize that the FVP parties may, in fact, have independent claims against Mr. Farache, but the trustee didn't understand why any alter ego allegations or claims would need to be brought in order for them for bring those, and certainly --

THE COURT:  Well, sometimes an individual purports to act in the name of a corporate entity and not in his or her personal capacity, and if that is one of the actions that one is relying on to bring a claim based on harm to your individual creditor, the alter ego or piercing the corporate veil claim might be necessary to rely on that specific allegation.  Just giving an example.

Page 19

So and I'm also trying to figure out why the Eleventh Circuit bothered to write the Icarus decision if every alter ego claim is automatically, no matter who the harm is to, is automatically property of the estate. It seems to me I would have to say, "Well, the Eleventh Circuit is wrong, I will ignore that decision." I'm not going to do that.

And, in fact, I think Judge Jennemann's decision is useful, because in that particular one, she held that the claim was, in fact, a common harm. She's applying Icarus, right? It is a very different allegation in that case, I would think, however. And the Tampa case, I don't know how that's useful at all. I still can't figure it out.

MS. CARNAHAN: That's a fair point, your Honor. The trustee's only, I guess, position here -- and it's not really the trustee's fight, obviously. But the trustee's position here was that we had agreed with the FVP parties last year at the time that the stay relief was sought to remove alter ego claims and allegations.

THE COURT: Now they want to add them back --

MS. CARNAHAN: That is correct.

THE COURT: -- and, you know, I don't know that they're necessarily bound by that agreement. They

can try to add them back, and that's what they are asking to do.

MS. CARNAHAN:  Understood, your Honor.  And I understand your Honor's point.

THE COURT:  Any last word anyone?

MR. BRESLIN:  Judge, very briefly.

THE COURT:  Sure.

MR. BRESLIN:  Last year what we were trying to do is get a complaint filed in the state court.  We sent it to the trustee, and they asked that certain parts be removed, and we removed them, and we filed our complaint.  We never entered into any type of formal agreement.

As far as the Tampa Hyde Park case, Judge, I think it's relevant on the standing issue, because there's a settlement involved.  I'm certainly not going to presume to talk to your Honor about the law, but I found --

THE COURT:  Well, I mean, that is what lawyers do.  That's what lawyers do.  You get to do that.

MR. BRESLIN:  I'm not gonna do it with you, Judge.

THE COURT:  I mean, I'm occasionally wrong, and I'm, apparently, more than 50 percent wrong at home, but, you know, so that's what you're job is, to tell me why I'm wrong.

Page 21

MR. BRESLIN:  So in any event, Judge, I think this is highly fact driven, and, therefore, I'd asked your Honor to grant the motion.

THE COURT:  You're right about that.

Yes, Mr. Lessne.

MR. LESSNE:  Your Honor, I just -- to answer a question that I think you were asking earlier, I think that the example of Hyde Park is a good one to show the harm to -- that's not generalized to the creditors, because here it's being brought against the debtor's estate in order to assert a claim against the debtor. None of the creditors of the debtor --

THE COURT:  Wait, here?  Here, it's being --

MR. LESSNE:  No, no, in Hyde Park.

THE COURT:  Okay.

MR. LESSNE:  In Hyde Park.

So that's an example where you can identify specifically something that is personal to the IRS.  It wasn't something that was generalized among all of the creditors of the debtor, Hyde Park.

Here, the basis -- as I understand it, the basis of these claims are that the -- that the Faraches and that AWB were alter ego, and there's affirmative relief that's being sought against the Faraches based upon that allegation.  To the extent that, as Judge Jennemann

Page 22

said in Xenerga, to the extent that the claim relies upon a determination of that alter ego nature, that is a generalized claim.  That would be something --

THE COURT:  It doesn't say that.  She said it was in that instance, based on the allegations in that case.

MR. LESSNE:  I understood -- I understood her to say -- can I just quote from it?

THE COURT:  Sure.  And then I'll pull it up. Hold on --

MR. LESSNE:  Thank you.

THE COURT:  -- hold on.  Let's take a moment.  Figures.

MR. LESSNE:  It's starts 600.

THE COURT:  What's that?

MR. LESSNE:  It's starts 600 of the --

THE COURT:  Well, that's not going to be helpful to me.  But just a second.

I need you to pull up the case.  It's reported, 449 Bankruptcy Reporter 594.

MR. LESSNE:  Yes, at 600.

THE COURT:  Just give me a second.

All right.  Just give me a moment.

Okay.  Where's the quote?

MR. LESSNE:  So in the paragraph that

Page 23

begins, "Having held."

THE COURT:  "Having held that only -- may bring an alter ego claim on behalf of the general creditor body," yes.

MR. LESSNE:  The next issue is whether all of the claims are derivative of its alter ego allegations, which those two creditors can no longer pursue and which the trustee can settle, or instead whether those creditors have alleged direct claims against the principals.  The claims -- and this is the quote, "The claims are derivative if they rely upon a finding of alter ego liability against the Principals but are direct if the Principals' liability is entirely independent of any alter ego finding."

THE COURT:  That is inconsistent with her own analysis on the prior page and her cite to the Eleventh Circuit decision.

If what you're arguing is that any time the words "alter ego" appear in a complaint, that the claim, whatever it is, is property of estate, that is not what the Eleventh Circuit said.  And I think you should go to page 599 and look at the actual allegations from the complaint that she is focusing on.

What they say is these two individuals used the debtor as an instrumentality, in general, to steal

Page 24

money for themselves, harmful to everyone, including the plaintiffs, not harmful specifically to the plaintiffs. And if you're taking that quote to -- asking me to conclude that that means that anytime there's a finding based on alter ego liability that it has to be general, that can't be the right answer.

MR. LESSNE:  Yeah, I'm not suggesting that, your Honor.  I don't believe that that's the law, that it's every single time, but I think it's --

THE COURT:  How do you interpret that sentence; "If they rely on a finding of alter ego"?

MR. LESSNE:  Because those claims themselves are necessarily dependent upon a determination of alter ego.

THE COURT:  Okay.  Give me an example under your argument --

MR. LESSNE:  Okay.

THE COURT:  -- where an alter ego claim is a claim held solely by an individual creditor?

MR. LESSNE:  So where a claim is -- an alter ego claim is held solely by -- and, therefore, it's specific to that creditor, you're saying?

THE COURT:  Yes.

MR. LESSNE:  So I think the Hyde Park is a good example.

Page 25

But what I'm suggesting here is -- let's take a conversion count. If the conversion count here is -- the conversion count is against, let's say, against the Faraches for converting FVP's collateral. If that conversion count necessarily requires a finding that the Faraches and AWB are alter egos, then I believe it's a derivative alter ego claim.

THE COURT: I'm trying -- I want you to give me an example that does not involve the IRS filing against the estate, okay, any example. I don't mean from a case.

Give me a hypothetical example of a claim that includes an alter ego allegation that is personal to a creditor in your view.

I think Judge Jennemann -- that one sentence in her decision is unfortunate, because it doesn't agree with the rest of the decision. What she's saying is, on the prior page, that the allegations are general harm. That's what she's saying. And that's why there's problem in that case.

MR. LESSNE: Right. I agree with all of that, and I agree that if it's -- if -- for example, if the trustee -- the trustee can bring an alter ego claim to recover against a third party to bring into the estate the assets of that third party, and --

THE COURT: Okay. The Eleventh Circuit's

decision leaves open, obviously, the possibility that there's an alter ego claim that is not property of the estate.  Yes?

MR. LESSNE:  Yes.

THE COURT:  Okay.  And you're saying -- I'd like you to give me an example of one of those.

MR. LESSNE:  I mean, an example is where the claim itself is against -- it's where it's being given in the opposite direction, where -- what Hyde Park does, is the example.

THE COURT:  What do you mean in the "opposite" direction?

MR. LESSNE:  The claim is against the debtor, as opposed to by the debtor, because the alter ego claim itself --

THE COURT:  No.  No, no.  Stop --

MR. LESSNE:  -- is the same --

THE COURT:  -- stop --

MR. LESSNE:  -- is creating the same entity.

THE COURT:  -- stop.

The Eleventh Circuit is always talking about claims that would be brought by the estate, always, or by another creditor.  That's the analysis.

I want you to give me an example of a claim that is pursued by a creditor against somebody other than

Page 27

the debtor based on alter ego tying to debtor that is personal and would satisfy the Eleventh Circuit's test.

I don't think you can based on your argument.  That's why I'm asking this question.

MR. LESSNE:  I don't think --

THE COURT:  The Eleventh Circuit's case is not about claims against the estate.  Not.  It's about claims against someone else based on their involvement with the estate and the debtor.

MR. LESSNE:  Yeah, I don't -- I can't think of an example.

THE COURT:  Because you would like to tell me that the Eleventh Circuit is wrong.  I'm trying -- because there has to be some example --

MR. LESSNE:  And I think the reason --

THE COURT:  -- and I'm trying to figure out --

MR. LESSNE:  -- why is because in order to form the alter ego claim to pierce the corporate veil, it has to be -- it has to be a generalized type of harm.

THE COURT:  No.  It doesn't.  That's the problem.  You can have someone say that the principal of the debtor did acts using the debtor's name specifically to harm me.  It's not generalized.  It's a personal harm.

And the problem in Judge Jennemann's case is

Page 28

that the allegations in the complaint themselves made clear that it's general harm to the debtor, and we're among the debtor's creditors whom it harmed. That is insufficient. That's what she's saying in that case. Unfortunately, that one sentence that you cite is really not helpful. It erases the entire page and a half that precedes it, and that can't be right.

Anyway, anything else?

MR. LESSNE: No, your Honor.

THE COURT: All right. Any last words?

(No audible response.)

THE COURT: No. All right. I'm going to rule on it directly.

This is the Court's ruling on a motion filed by FVP Opportunity Fund III, L.P. and related parties. That's in the docket at ECF No. 866.

I reviewed the response filed by Mr. and Ms. Farache and related parties. That's in the docket at ECF No. 868, and also notices of filing by FVP in the docket at ECF Nos. 869 and 872. The document filed at ECF No. 872 is a redline of the existing state court complaint showing proposed changes to present the alter ego claims at issue in today's motion. I've also considered the arguments presented at the hearing today.

In the motion the movants ask the Court to

Page 29

rule that the automatic stay in effect in this case does not apply to any claims the movants have against Moshe Farache and Lisa Farache based on alter ego under Florida law arising as a result of their actions in connection with the debtor, Auto Wholesale of Boca.  If the Court rules that the automatic stay does apply, FVP seeks relief from stay for cause.  The Farache parties object.  They argue that the trustee settled with them, releasing all claims held by the bankruptcy estate and that any such alter ego claims for property of the bankruptcy estate were released.

So first the Court must determine whether the alter ego claims proposed by the movants against Mr. and Ms. Farache are property of this bankruptcy estate.  Both parties cite the proper standard derived from the Eleventh Circuit's 2004 decision in Icarus Holding reported at 391 F.3d 1315.

Under Bankruptcy Code Section 541, the bankruptcy estate includes a state law alter ego claim when it is a general claim common to all creditors and the claim is something the debtor could pursue under state law.  An alter ego claim is personal to a creditor, and thus not property of the bankruptcy estate, when the injury is to that creditor and not to all creditors generally.

Page 30

The movants' claim against Mr. and Ms. Farache and, indeed, against all of the defendants in the state court action are based on specific alleged acts aimed and resulting in harm solely to the movants.  The movants' claims against Mr. and Ms. Farache, based in alter ego or otherwise, are excellent examples of claims based on injury to a specific party and not based on generalized harm to the debtor and its creditor body.

Among other things, the movants allege that Mr. and Ms. Farache used the corporate form of the debtor to entice the movants to make loans so that Mr. and Mrs. Farache could divert the loan proceeds and the movants' collateral for their personal benefit.  The movants seek to remedy harm alleged to them alone and not to the debtor's creditors generally.  The movants' claims against Mr. and Ms. Farache and their related entities are not property of the estate in this bankruptcy case.

Those claims were not released by the estate as a result of the settlement approved by this Court by the order entered at ECF No. 833.  Because the movants' claims against Mr. and Ms. Farache, including any claims relying on alter ego theories, were never property of this bankruptcy estate and were not released by the trustee on behalf of the bankruptcy estate, there's nothing to stop the movants from pursuing those claims in the state court

Page 31

action, including as proposed in the document on file here at ECF No. 872.

For these reasons the motion at ECF No. 866 will be granted.  I ask that, Mr. Breslin, that you tender a proposed order incorporating this oral ruling and also send a copy of the proposed order to chamber's email box in Word format.

Any questions?

MR. BRESLIN:  No, your Honor.

Thank you your Honor.

THE COURT:  Very good.

Thank you very much.  Good morning, everyone.

(Whereupon, the hearing was concluded.)

Page 32

CERTIFICATION

STATE OF FLORIDA          :

COUNTY OF BREVARD          :

I, Anna M. Meagher, Shorthand Reporter, do hereby certify that the foregoing proceedings were transcribed by me from a digital recording held on the date and from the place as stated in the caption hereto on Page 1 to the best of my ability.

WITNESS my hand this 2nd day of May, 2025.

_____

ANNA M. MEAGHER,

Shorthand Reporter