# EXHIBIT "A"

Common Interest Agreement

EXECUTION COPY

## COMMON INTEREST AND JOINT LITIGATION AGREEMENT

This COMMON INTEREST AND JOINT LITIGATION AGREEMENT (this "Agreement") is effective as of January 28, 2022 (the "Effective Date"), by and among SPIN CAPITAL, LLC, a New Jersey limited liability company ("Spin Capital"), and HI BAR CAPITAL, LLC, a New York limited liability company ("Hi Bar"). Spin Capital and Hi Bar shall be referred to each as a "Party" and collectively as "Parties."

## RECITALS

A.      On January 28, 2022, Hi Bar initiated an action captioned *Hi Bar Capital, LLC v. Excell Auto Group, Inc., et al.*, in the Supreme Court of the State of New York, County of Kings (the "NY Court"), as Index No. 502846/2022 (the "NY Litigation").

B.      On May 2, 2022, Hi Bar initiated an action captioned *Hi Bar Capital, LLC v. Karma of Palm Beach Inc., et al.*, in The Circuit Court of The Seventeenth Judicial Circuit, Broward County, Florida (the "Florida Court"), as Case No. 22-006401 (the "FL Litigation").

C.      In addition to Excell Auto Group, Inc. and Karma of Palm Beach Inc., the defendants in the FL Litigation include each of the following (collectively with Excell Auto Group, Inc. and Karma of Palm Beach Inc., "Defendants"): Automotive Service Systems, Inc.; Kz Consultants, Inc.; Miss Kris, LLC; Excell Auto Leasing Inc.; Excell Auto Wholesale Inc.; Dealer Souq USA LLC; Eag Wholesale LLC; Karma of Broward, Inc.; Lavish Hero Fund Inc.; Apple 3 Investments, Inc.; KZ Consultants Inc.; Excell Auto Sport And Service, Inc.; FVP Opportunity Fund III, LP; FVP Investments, LLC; FVP Servicing, LLC; Franklin Capital Group, LLC; Franklin Capital Management, LLC; Auto Wholesale of Boca, LLC; MMS Ultimate Services, Inc.; and Moshe Farache.

D.      In addition to the NY Litigation and the FL Litigation, one of the initial Defendants in the FL Litigation, Auto Wholesale of Boca, LLC ("AWB Debtor"), has filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, Case No. 22-15627-EPK (the "Bankruptcy Case"). In connection with the Bankruptcy Case, Hi Bar, along with FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (collectively, "FVP Entities"), initiated an adversary proceeding against AWB Debtor in the Bankruptcy Case, Adversary Case No. 22-01218-EPK (the "Adversary Proceeding," collectively with the Bankruptcy Case, the "Bankruptcy Proceedings").

E.      In conjunction with the NY Litigation, FL Litigation and the Bankruptcy Proceedings, (1) some or all of Defendants were indebted and liable to Hi Bar in the aggregate amount of $3,227,739.73 (the "Hi Bar MCA/Obligation") as of April 28, 2022, and (2) certain Defendants granted to Hi Bar a lien and security interest in certain vehicles, including those described on Schedule 1 hereto (the "Vehicle Collateral"), which secured the Hi Bar MCA/Obligation (the "Hi Bar Secured Claim").

F.      Hi Bar possesses or may possess claims, causes of action, and can seek certain relief against Defendants, and any entities affiliated with or owned by Defendants (collectively, "Litigation Parties") resulting or related to the Hi Bar MCA/Obligation, the Hi Bar Secured Claims, and the Vehicle Collateral, including, *inter alia*, claims, causes of action, and motion practice seeking relief for foreclosure, replevin, fraudulent transfer and avoidance claims arising under the

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and applicable state and federal law.  The foregoing claims, causes of action, and motion practice seeking relief against Litigation Parties that Hi Bar may have or may be able to assert against Litigation Parties in the NY Litigation, the FL Litigation, the Bankruptcy Proceedings, shall collectively be referred to as the "Hi Bar Claims."

G.    In addition, as the holder of a portion of the Hi Bar MCA/Obligation and the Hi Bar Secured Claim, Spin Capital possesses or may possess certain claims and causes of action against certain of Litigation Parties resulting or related to the Hi Bar MCA/Obligation and the Hi Bar Secured Claims, including, *inter alia*, claims, causes of action, and motion practice seeking relief for foreclosure, replevin, fraudulent transfer and avoidance claims arising under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and applicable state and federal law (collectively, the "Spin Capital Claims," with Hi Bar Claims, the "Litigation Claims").

H.    In the NY Litigation, on or about March 18, 2022: (x) Excell Auto Group, Inc. filed a verified third-party complaint against Spin Capital asserting certain claims and causes of action against Spin Capital; and (y) certain Defendants filed counterclaims against Hi Bar.  On or about March 25, 2022, Franklin Capital Group, LLC ("FCG LLC") initiated an action captioned *Franklin Capital Group, LLC v. Spin Capital, LLC and Hi Bar Capital, LLC,* in the United States District Court for the Eastern District of Michigan (the "MI Court"), as Case No. 2022-193300-CB (the "Michigan Litigation").[1]  Consequently, as part of and in conjunction with the NY Litigation and the Michigan Litigation (and potentially in the FL Litigation and Bankruptcy Proceedings ), certain Defendants and FCG LLC have asserted, and may assert in the future,  claims, causes of action, and counterclaims against one or both Parties (collectively, the "Counterclaims").

I.    Parties have had discussions and negotiations regarding an agreement providing for the collective pursuit of the Litigation Claims and the defense of the Counterclaims for the benefit of both Parties.  In light of Spin Capital's interest in the Hi Bar MCA/Obligation and the Hi Bar Secured Claim and its willingness to fund the litigation to recover against Litigation Parties (and to defend Parties against Counterclaims), Parties have determined that (x) the collective pursuit of the Litigation Claims by Hi Bar with the assistance and participation of Spin Capital and (y) the collective defense by Parties against the Counterclaims is in Parties' best interests.  Parties have now reached an agreement regarding the pursuit of the Litigation Claims and the defense of the Counterclaims, subject to the terms and conditions set forth herein.

J.    Each Party has concluded that the execution of this Agreement is in its respective best interest, and acknowledges that the terms and provisions hereof are fair and reasonable, that each has had the opportunity to consult with legal counsel, and that each is receiving a substantial and valuable benefit if the transactions contemplated herein are consummated.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    **Recitals**.  The recitals hereinbefore set forth constitute an integral part of this Agreement, evidencing the intent of the parties in executing this Agreement, and describing the

---

[1]    FGC LLC initially filed the Michigan Litigation in the Sixth Judicial Circuit Court of Oakland County, Michigan.  Thereafter, Parties removed the Michigan Litigation to the MI Court.

2

circumstances surrounding its execution.  Accordingly, said recitals are, by express reference, made a part of this Agreement, and this Agreement shall be construed in the light thereof. Nothing contained in the recitals shall limit the scope of or damages sought with respect to the Bankruptcy Proceedings Hi Bar Claims.

2. **Prosecution and Settlement of Litigation Claims and Defense of Counterclaims**.

(a)    From and after the Effective Date, Hi Bar hereby assigns to Spin Capital any and all Hi Bar Claims, subject to the terms and conditions of this Agreement, including but not limited to, Spin Capital's obligation to assign all Hi Bar Claims back to Hi Bar in the event it exercises its rights pursuant to Section 2(f) hereof.

(b)    From and after the Effective Date, Spin Capital will have full authority to prosecute and settle the Litigation Claims, and may settle such Litigation Claims in whole or in part against some or all of Litigation Parties, in its discretion.  Nothing contained in this Agreement is intended or shall be deemed in any manner whatsoever to govern the manner in which Spin Capital pursues (or elects not to pursue) the Litigation Claims related to Litigation Parties. Notwithstanding the foregoing, Spin Capital will cooperate with Hi Bar and keep Hi Bar abreast of the status of its pursuit of Litigation Claims and potential recoveries therefrom.  Any settlement of the Litigation Claims will be subject to Hi Bar's written consent (which consent it shall not unreasonably withhold).

(c)    From and after the Effective Date, Spin Capital will have full authority to defend the Counterclaims and will use commercially reasonable efforts to defend the Counterclaims on advice of counsel for the benefit of Parties.  Notwithstanding the foregoing, Spin Capital will cooperate with Hi Bar and keep Hi Bar abreast of the status of its defense of the Counterclaims.  Spin Capital may settle Counterclaims in conjunction with a global settlement of the Litigation Claims, but any eventual settlement may not result in Hi Bar being required to make any out of pocket payments to any Defendants, and any settlement of any Counterclaim must be paid from recoveries collected in the Litigation Claims.  Any settlement of the Counterclaims will be subject to Hi Bar's written consent (which consent it shall not unreasonably withhold).

(d)    Until termination of this Agreement (as provided in Section 2(f) hereof), Spin Capital shall pay all past, present, and future Professional Fee Claims (as defined below) as they become due.  For purposes hereof, "Professional Fee Claims" shall mean all legal and professional fees owed to counsel (and any expert witnesses and consultants retained by counsel), which professionals are retained to represent Hi Bar and the interests of Spin Capital in the prosecuting the Litigation Claims and defense of the Counterclaims.  For purposes hereof, Professional Fee Claims shall include fees owed to those counsel identified on **Schedule 2** hereof, with all such retained professionals referred to hereinafter as "Retained Professionals".

(e)    Spin Capital and Hi Bar agree that, with respect to the Litigation Claims, Hi Bar will continue to be the plaintiff or claimant for purposes of pursuing recoveries against Litigation Parties.  Hi Bar shall execute all pleadings and affidavits/declarations as requested by Spin Capital with respect to either the Litigation Claims or the Counterclaims.

(f)    **Termination Provisions**:

3

(i)      In the event that Spin Capital in its absolute discretion determines that it no longer wishes to actively pursue the recovery of any Litigation Claims, it will inform Hi Bar in writing of such decision, whereupon (and thereafter), Hi Bar shall be entitled to take the lead in pursuing the Hi Bar Claims and shall be entitled to make any decisions as to any matter relating to such pursuit (or non-pursuit) of such Hi Bar Claims.  Spin Capital shall provide written notice of such decision, which shall result in a termination of this Agreement as of the date of such notice ("SC Termination Date").  If, on or before the one (1) year anniversary of the SC Termination Date (and provided Hi Bar has not theretofore breached the terms of this Agreement), Spin Capital settles or obtains recovers on any Litigation Claims, then either Spin Capital or escrow agent (if applicable) shall provide payments to Hi Bar as provided in Section 3(a) hereof.

(ii)      In the event Hi Bar in its absolute discretion is not satisfied with Spin Capital's management of defense of Counterclaims against Hi Bar, then Hi Bar shall provide written notice of such decision, which shall result in a termination of this Agreement as of the date of such notice ("HB Termination Date"), and Hi Bar shall be entitled to continue pursuing its Hi Bar Claims and Spin Capital shall be entitled to continue pursuing Spin Capital Claims.  If, on or before the one (1) year anniversary of the HB Termination Date (and provided Spin Capital has not theretofore breached the terms of this Agreement), Hi Bar settles or obtains recovers on any of its Litigation Claims, then either Hi Bar or escrow agent (if applicable) shall provide payments to Spin Capital as provided in Section 3(a) hereof.

(g)      To the extent that Counterclaims continue to be asserted against Parties after either SC Termination Date or the HB Termination Date, then each Party shall be required to defend itself against such Counterclaims, and no Party shall have an obligation to other Party to defend such Counterclaims after the termination of this Agreement.

3.      **Agreement of Priority of Distribution**.

(a)      Parties shall direct Litigation Parties to pay any cash or other recoveries obtained from Litigation Parties (including any judgment recoveries from or settlements of any claims against Litigation Parties and the liquidation of any Vehicle Collateral) as a result of any Litigation Claims  (collectively, "Litigation Proceeds") to an escrow account designated by Parties, which shall be subject to an escrow agreement between Parties.  Escrow agent of such escrow account shall pay and distribute Litigation Proceeds as provided below:

(i)      First, all funds necessary to reimburse Spin Capital for all Professional Fee Claims;

(ii)      Second, subject to Section 3(d) hereof, all funds (if any) necessary to resolve or settle all Counterclaims;

(iii)      Third, the balance if any, after payment of the Professional Fee Claims and the Counterclaims ("Net Litigation Proceeds"), shall be paid as follows: (x) thirty percent (30%) shall be paid to Hi Bar; and (y) seventy percent (70%) shall be paid to Spin Capital of the first $1,100,000 in net Litigation Proceeds (i.e., up to $330,000 to be paid to Hi Bar and up to $770,000 to be paid to Spin Capital from the first $1,100,000 in net Litigation Proceeds);

4

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-5ED467629F02

(iv)    <u>Fourth</u>, fifteen percent (15%) shall be paid to Hi Bar and eighty-five percent (85%) shall be paid to Spin Capital of the next $900,000 in net Litigation Proceeds (*i.e.*, up to $135,000 to be paid to Hi Bar and up to $765,000 to be paid to Spin Capital from the next $900,000 in net Litigation Proceeds); and

(v)    <u>Fifth</u>, ten percent (10%) shall be paid to Hi Bar and ninety percent (90%) shall be paid to Spin Capital of all net Litigation Proceeds after the recovery by Parties of the first $2,000,000 in total net Litigation Proceeds.

By way of example only, payouts from total Net Litigation Proceeds would be as follows (assuming net Litigation Proceeds (after payment of Professional Fee Claims and Counterclaims) in the amounts set forth below):

| Total net Litigation Proceeds | Aggregate Amount to Hi Bar | Aggregate Amount to Spin Capital |
|---|---|---|
| $500,000 | $150,000 | $350,000 |
| $1,000,000 | $300,000 | $700,000 |
| $1,500,000 | $390,000 | $1,110,000 |
| $2,000,000 | $465,000 | $1,535,000 |
| $2,500,000 | $515,000 | $1,985,000 |
| $3,000,000 | $565,000 | $2,435,000 |
| $3,500,000 | $615,000 | $2,885,000 |
| $4,000,000 | $665,000 | $3,335,000 |

(b)    Notwithstanding the provisions of Section 3(a) hereof, to the extent any Party breaches this Agreement before the recovery of any Litigation Proceeds by the other Party, then breaching Party shall not be entitled to recoveries as provided in Section 3(a) to the extent of damages incurred by non-breaching Party relating to the breach, and non-breaching Party shall be entitled to direct any Litigation Parties to transfer so much of the recoveries as required to cover damages relating to the breach, directly to non-breaching Party for its own account.

(c)    Nothing contained herein is intended or shall be deemed to obligate or otherwise compel either Party to accept any non-cash payment or other non-cash distribution of any Litigation Proceeds in partial or full satisfaction of any of Litigation Claims.

(d)    To the extent all Counterclaims are not resolved at the time of the receipt of Litigation Proceeds, then the escrow agent shall hold all Litigation Proceeds until all such Counterclaims are either (x) resolved in favor of Parties or (y) liquidated or settled to an amount certain owed by Parties.  Notwithstanding the foregoing, Parties may order escrow agent to release Litigation Proceeds in advance of resolution of all Counterclaims subject to a further written agreement between them.

(e)    To the extent insufficient Litigation Proceeds are recovered to pay any damages awarded with respect to all Counterclaims, then Parties agree that such damages in excess of the Litigation Proceeds shall be paid seventy percent (70%) by Spin Capital and thirty percent (30%) by Hi Bar.

(f)    For all Professional Fees Claims incurred through the earlier of (x) the SC Termination Date, (y) the HB Termination Date, and/or (z) the resolution and settlement of all Litigation Claims and Counterclaims, and to the extent sufficient Litigation Proceeds are not recovered to pay Spin Capital in full for all Professional Fee Claims paid through such date, then Parties agree that: (i)

(i)    Hi Bar paid or must pay thirty (30%) of such amounts;

(ii)    Spin Capital paid or must pay seventy (70%) of such amounts; and

(iii)    Hi Bar shall pay Spin Capital for its proportion of these legal fees on submission of a written request by Spin Capital, provided that Spin Capital may only make such a written request on the termination of this Agreement or resolution in full of all Litigation Claims and Counterclaims (and the receipt by Parties of insufficient Litigation Proceeds to pay all Professional Fee Claims in full after resolution of all Counterclaims).

On or before the one (1) year anniversary of the date of such written request, Hi Bar shall make payment in full to Spin Capital.  To the extent Hi Bar fails to pay Spin Capital for any amounts owed pursuant to this Section 3(f), Spin Capital may initiate litigation to recover such amounts, but may not pursue litigation until the one (1) year anniversary of the date in which Spin Capital provides written notice to Hi Bar as provided in Section 3(f)(iii).

4.    **Further Assurances and Clawbacks**.  Parties shall reasonably cooperate with each other and shall coordinate their activities in respect of all actions reasonably necessary to consummate or obtain orders approving this Agreement.  Hi Bar shall deliver such other documents, instruments or agreements as Spin Capital may reasonably request in order to effect fully the grant of authority to prosecute the Hi Bar Claims.  Spin Capital, in its sole discretion, shall advance monies and funds for payment of fees and expenses of Retained Professionals, as incurred by Hi Bar in conjunction with the prosecution of the Litigation Claims and defense of Counterclaims against Litigation Parties.  In the event that any of the Litigation Proceeds paid out to any of the parties hereto are subsequently disgorged by any Party, or in the event that after Parties are paid Net Litigation Proceeds, either Party incurs further liability relating to a Counterclaim, then each Party shall fund any clawback/disgorgement or Counterclaim liability in the same proportions as their receipt of the Net Litigation Proceeds as set forth in Section 3. Parties' obligations to pay back Net Litigation Proceeds to fund any clawback/disgorgement or liability relating to counterclaims shall survive termination of this Agreement.

5.    **Relationship of Parties**. Nothing contained herein shall be construed to impose any fiduciary duty on either Party in favor of the other Party or any other person or entity. Except as expressly set forth herein, neither Party shall have any duty or obligation to the other Party by virtue of this Agreement, and without limiting the generality of the foregoing, there are no implicit duties or obligations imposed on either Party in favor of the other Party or any other person or entity by virtue of this Agreement.

6.    **Representations and Warranties**.  Each Party hereby represents and warrants to the other Party that its execution, delivery, and performance of this Agreement are within its respective powers, have been duly authorized by all necessary corporate action, and that this Agreement, when so executed and delivered shall constitute its legal, valid, and binding obligations, enforceable against it in accordance with its terms, subject to applicable bankruptcy,

6

insolvency and similar laws and general equitable principles.   Neither Party makes any representations or warranties to the other party regarding the recoverability, existence, or value of the Litigation Claims.  Except as expressly set forth in this Section 6, neither Party makes any representations or warranties, express or implied, to the other Party by virtue of this Agreement.

7.      **Effectiveness of This Agreement**.  This Agreement shall be effective as of the date hereof conditioned only upon the execution and delivery of this Agreement by all Parties.

8.      **Common Interest**.

(a)      In order to pursue the Litigation Claims and defend the Counterclaims effectively, Parties have determined that their common interests may be best served by sharing documents, factual material, mental impressions, memoranda, interview reports, and other information, including the confidences of each of them, pursuant to this Agreement (collectively, the "Common Interest Materials") *provided, however*, that no Party shall be obligated to share or disclose any Common Interest Materials with or to any other Party solely by virtue of entering into this Agreement.  Any document produced as Common Interest Materials shall be stamped or otherwise labeled as "privileged" or "confidential."  Parties agree that Common Interest Materials obtained from any of them shall remain confidential and shall be protected from disclosure to any third party except as provided herein.  Parties further agree that they will not disclose Common Interest Materials received from each other to anyone except, as applicable, their respective attorneys, representatives, employees, or agents involved in the Litigation Claims, without first obtaining the express consent of one or more of the parties who produced such Common Interest Materials.  It is understood that all work performed and to be performed has been and shall be accomplished by the law firms, their attorneys, employees and agents with regard to their representations shall be accomplished pursuant to the work product and the attorney client privileges and to the "common interest doctrine" and all other applicable rights and privileges, including those recognized in *United States v. Evans,* 113 F.3d 1457 (7th Cir. 1997); *United States v. McPartlin,* 595 F.2d 1321 (7th Cir. 1979); *Hunydee v. United States,* 355 F.2d 183 (9th Cir. 1965); and *Continental Oil Co. v. United States,* 330 F.2d 347 (9th Cir. 1964).

(b)      No Waiver.  The joint interest and defense effort undertaken by Parties, by virtue of its purpose, operation and use, is attorney work product and has required, and may in the future require, the exchange of Common Interest Materials subject to work product protection, attorney-client, joint defense and/or other privileges.  Parties do not, by virtue of entering into this Agreement, waive any privilege as to any communication or as to any sharing of work product.

(c)      Permissive, Not Mandatory.  This Agreement is intended to allow, but not require, each party to this Agreement, in its sole and exclusive discretion, to exchange with the other Parties Common Interest Materials, which are subject to work product protection, attorney-client, joint defense and/or other privileges.  Parties are not required to agree to any particular litigation strategy or position taken before any court by virtue of having entered into this Agreement.

(d)      Use.  It is further agreed that any Common Interest Materials exchanged among Parties shall be used solely in connection with the Litigation Claims and the defense of the Counterclaims.  Each Party specifically agrees that, in any subsequent litigation or action that

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-5ED467629F02

may be brought, they will not attempt to discover or offer as evidence any Common Interest Materials exchanged between them relating to the foregoing absent court order or written consent by one or more of Parties producing such Common Interest Materials.

(e)     Joint Experts.  Parties may jointly retain one or more experts in furtherance of the Litigation Claims and in the defense of the Counterclaims.  All Common Interest Materials transmitted to the joint experts, as well as any work product generated by the joint experts in any form whatsoever shall be subject to this Agreement.  No joint expert shall publish or disseminate any information, theories, opinions, or conclusions based upon Common Interest Materials in any way other than in furtherance of the Litigation Claims and in the defense of the Counterclaims without advance written approval by all of Parties by whom the expert is retained.

(f)     Individual Experts.  Nothing herein shall preclude any of Parties from individually retaining an expert.  Any Common Interest Materials or work product related to or generated by the individually retained expert shall be subject to this Agreement.

(g)     Joinder of Experts to Agreement.  No Common Interest Materials exchanged pursuant to this Agreement shall be disclosed or distributed in any way to any joint or individually retained expert until (i) such person shall have read a copy of this Agreement and shall have signed a Confidentiality Agreement agreeing to be bound by the terms of this Agreement, and (ii) advance written approval is obtained from the party whose information is to be given, shown, made available or communicated to the expert in furtherance of the Litigation Claims.

(h)     Discovery of Common Interest Materials.  If any person or entity requests or demands, by subpoena or otherwise, any Common Interest Materials received by any Party pursuant to this Agreement, the recipient of the demand shall immediately notify all other Parties. Each Party against whom the request or demand of said Common Interest Materials is directed shall take all steps necessary to permit the assertion of all applicable rights and privileges with respect to said Common Interest Materials, and shall cooperate fully with Parties in any judicial or other proceeding relating to the disclosure of said Common Interest Materials.

(i)     Withdrawal from Agreement.  Parties also agree that, if any Party to this Agreement no longer has interests in common with the other Parties, such party shall immediately notify, in writing, attorneys for the other Parties and promptly withdraw from this Agreement. Withdrawal from this Agreement shall not terminate Parties' mutual obligation to hold confidential all Common Interest Materials previously exchanged among the same.  At the request of a withdrawing party, documents furnished by such withdrawing party shall be returned to the same; *provided, however*, that such withdrawing party also returns all Common Interest Materials disclosed to it pursuant to this Agreement, and, further, destroys any internal notes, memoranda, analyses or other work product based upon or relating to Common Interest Materials produced by another party; *provided, however*, if a withdrawing party has received a subpoena or similar legal demand that would require production of any Common Interest Materials, the obligations imposed by this sentence shall be deferred until the discovery demand is resolved in accordance with the procedures outlined in this Agreement.

(j)     Electronic Communications.     Parties further agree that electronic communication (via the internet or other network) among themselves may involve the

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

communication of Common Interest Materials.  By engaging in electronic communications during the course of the Litigation Claims, Parties do not intend to waive or in any way weaken any statutory, common law or other privileges or protections to which the Common Interest Materials would otherwise be entitled.

(k)      Continuation of Agreement.  This Agreement is not terminated by the conclusion through trial (including appeals) or settlement or other resolution of the Litigation Claims, and Parties shall keep all Common Interest Materials confidential as directed by the terms of this Agreement, unless all Parties consent in writing to the disclosure of said Common Interest Materials.  Nothing in this Agreement, however, shall preclude any Party from disclosing their own privileged or work product materials at any time.

9.      **Provisions Solely to Define Relative Rights**.

(a)      The provisions of this Agreement are intended solely for the purpose of defining the rights of Parties. Without limiting the generality of the provisions hereof, there are no third party beneficiaries of this Agreement.  Without limiting the generality of the foregoing, no other person or entity, including any Litigation Party or any affiliate or creditor thereof, shall have any rights or benefits hereunder or shall otherwise be entitled in any manner whatsoever to rely on any of the provisions hereof.  Nothing contained herein is intended to or shall impair the rights of either Party against any non-party, including any Litigation Party.

(b)      This Agreement, including, *inter alia*, Section 3(f) hereof, shall not waive, release, or impair the rights of either Party against any other Party with respect to separate business relationships or other claims or causes of action any Party may have against other Party unrelated to the Litigation Claims, Counterclaims, Defendants, or any of the proceedings described in the Recitals hereto.  Any and all current or future claims or causes of actions of one Party against other Party are expressly preserved, and Parties do not intend to effect or impair such claims or causes of action as part of their Agreement hereunder.

10.      **General Terms**.

(a)      Time is of the Essence.  Parties agree that time is of the essence with respect to each of the terms and conditions of this Agreement.

(b)      Waivers, Amendments, Etc.  The provisions of this Agreement may from time to time be amended, modified or waived, if such amendment, modification or waiver is in writing and consented to by each Party.  No waiver or approval by any Party under this Agreement shall, except as may be otherwise stated in such waiver or approval, be applicable to subsequent transactions.  No waiver or approval hereunder shall require any similar or dissimilar waiver or approval thereafter to be granted hereunder.

(c)      Notices.  All notices and other communications provided to any Party hereto under this Agreement shall be in writing (except as otherwise specifically provided in this Agreement) and sent by first class mail, by overnight delivery service, or by facsimile and addressed, delivered or transmitted to such Party at its address or facsimile number set forth below its signature hereto or at such other address or facsimile number as may be designated by such Party in a notice to the other Parties.  Any notice, if mailed and properly addressed with

9

postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any notice, if transmitted by facsimile, shall be deemed given when transmitted and the Party giving such notice shall have received (including either through telephonic communication initiated by it or telephonic communication received by it) telephonic, machine, or other confirmation that such notice has been received by the intended recipient.

(d)    No Implied Right to Notice; Nonwaiver; Cumulative Remedies.  No notice to or demand on any of the parties hereto in any case shall entitle them to any notice or demand in similar or other circumstances. No failure to exercise, no delay in exercising, and no single or partial exercising, on the part of either Party, of any right, power or privilege hereunder shall operate as a waiver thereof or otherwise preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies of Parties herein provided are cumulative and not exclusive of any rights or remedies provided by law.

(e)    Successors; Survival of Agreements. All agreements, representations, warranties, and covenants made herein shall survive the consummation of this Agreement.

(f)    No Third Party Beneficiaries. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, Parties and their respective successors and assigns. No other person or entity shall be entitled to claim or assert (including as a defense to any liability) any right or benefit hereunder, including the status of being an express or implied third party beneficiary of this Agreement.

(g)    Captions.  Captions in this Agreement are for convenience of reference only and shall not define or limit any of the terms or provisions hereof. References herein to Sections or provisions without reference to the document in which they are contained are references to this Agreement.

(h)    Counterparts; Signatures.  This Agreement may be executed by Parties on any number of separate counterparts, and by each Party on separate counterparts; each counterpart shall be deemed an original instrument; and all of the counterparts taken together shall be deemed to constitute one and the same instrument. To facilitate execution of this Agreement, Parties may execute and exchange facsimile or electronic mail (e-mail) executed counterparts of this Agreement. Facsimile signatures and signatures exchanged by electronic mail (e-mail) shall be deemed valid and binding to the same extent as the original.

(i)    Expenses.  Without limiting the right of any Party to apply any Litigation Proceeds received by it in accordance with the provisions of this Agreement in satisfaction of any such expenses, each Party hereto shall be responsible for the payment of its own fees and expenses, unless otherwise set forth herein.

(j)    Entire Agreement.  This Agreement, together with the exhibits and schedules hereto, contains the entire agreement between Parties with respect to the matters addressed herein. There are no agreements, restrictions, promises, representations, warranties, covenants or undertakings, written or oral, other than those expressly set forth herein.  This Agreement supersedes all prior agreements and understandings between Parties (if any) with respect to the matters addressed herein.

(k)  <u>Interpretation</u>.  The use of the masculine, feminine or neuter gender or the singular or plural form of words herein shall not limit any provision of this Agreement.  The use of the terms "including" or "include" shall in all cases herein mean "including, without limitation" or "include, without limitation," respectively.  Reference to any person or entity includes such person's or entity's successors and assigns to the extent such successors and assigns are permitted by the terms of this Agreement, and reference to a person or entity in a particular capacity excludes such person or entity in any other capacity or individually. Reference to any agreement (including this Agreement), document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof and, if applicable, the terms hereof.  Reference to any law means such law as amended, modified, codified, replaced or re-enacted, in whole or in part, and in effect on the date hereof, including rules, regulations, enforcement procedures and any interpretations promulgated thereunder.  Underscored references to Sections, clauses, Exhibits or Schedules shall refer to those portions of this Agreement, and any underscored references to a clause shall, unless otherwise identified, refer to the appropriate clause within the same Section in which such reference occurs.  The use of the terms "hereunder", "hereof", "hereto" and words of similar import shall refer to this Agreement as a whole and not to any particular Section or clause of or Exhibit or Schedule to this Agreement.  All terms defined in this Agreement shall have the above-defined meanings when used in any certificate, report or other document made or delivered pursuant to this Agreement, unless the context therein shall clearly otherwise require.  In the computation of periods of time in this Agreement from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" each means "to, but not through."  This Agreement and the other documents relating to this Agreement are the result of negotiations among and have been reviewed by counsel to Parties, and are the products of all Parties. Accordingly, they shall not be construed against (or in favor of) either Party merely because of such Party's involvement (or non-involvement, as the case may be) in their preparation.

(l)  <u>APPLICABLE LAW</u>. THIS AGREEMENT AND ANY OTHER WRITING EXECUTED IN CONNECTION HEREWITH SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED THEREIN WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW. COURTS SITTING IN NEW YORK STATE SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL ACTIONS BROUGHT BY THE PARTIES RELATING IN ANY WAY TO THIS AGREEMENT.

(m)  <u>WAIVER OF RIGHT TO JURY TRIAL</u>. EACH OF THE PARTIES IRREVOCABLY HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN ANY AND ALL SUITS, ACTIONS OR OTHER PROCEEDINGS THAT ARISE FROM, OR CONSIST OF, A CLAIM FOR DAMAGES UNDER, A CLAIM OF A BREACH OF, OR A DECLARATORY JUDGMENT ACTION FOR THE INTERPRETATION OF, THIS AGREEMENT.

**[Signature Pages Follows]**

IN WITNESS WHEREOF, the parties hereto have caused this Common Interest and Joint Litigation Agreement to be executed by their respective officers thereunto duly authorized as of the day and year first above written.

HI BAR CAPITAL, LLC

By: _____

Name: Yisroel Herbst
Its: Owner

Contact Address:
HI Bar Capital, LLC
1825 65th Street
Brooklyn, NY 11204
ATTN: Yisroel Herbst
        Mordi Herbst
Email: ymherbst@gmail.com
        mordi@hibarcapital.com

*With a copy to:*
Law Office of Michael Ehrenreich PLLC
555 Willow Avenue, Suite 105
Cedarhurst, NY 11516
Attention: Michael Ehrenreich
Email: me@ehrenreichlaw.com

[Signature Page to Common Interest and Joint Litigation Agreement]

SPIN CAPITAL, LLC

By: _____
Name: Arvumi Lubin
Its: President


Contact Address:
Spin Capital, LLC
1460 Arboretum Parkway
Lakewood, NJ  08701
ATTN: Josh Lubin
Email: josh@spincapital.com

*With a copy to:*
Bryan Cave Leighton Paisner LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
ATTN: Jason J. DeJonker
Email: Jason.Dejonker@bclplaw.com

[Signature Page to Common Interest and Joint Litigation Agreement]

**Schedule 1**

## Schedule 2

- Bryan Cave Leighton Paisner LLP

- Feldman Law Group, P.A.

- Wells Law P.C.

- Foley & Lardner LLP

- Proskauer Rose LLP

- Law Office of Michael Ehrenreich

- Law Offices of Steven Zakharyayev

# EXHIBIT "B"

<u>Hi Bar Capital, LLC v. Excell Auto Group, Inc.</u>
Judgment

Case 22-15627-EPK    Doc 925-1    Filed 07/03/25    Page 18 of 76

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

|  |  |
|---|---|
| HI BAR CAPITAL, LLC<br><br>        Plaintiffs,<br><br>  -against-<br>EXCELL AUTO GROUP, INC.; KARMA OF PALM BEACH INC.; AUTOMOTIVE SERVICE SYSTEMS, INC.; KZ CONSULTANTS, INC.; MISS KRISS, LLC; EXCELL AUTO LEASING INC.; EXCELL AUTO WHOLESALE INC.; DEALER SOUQ USA LLC; EAG WHOLESALE LLC; KARMA OF BROWARD, INC.; LAVISH HERO FUND; KARMA OF PALM BEACH, INC.; APPLE 3 INVESTMENTS, INC.; KZ CONSULTANTS INC.; EXCELL AUTO SPORT AND SERVICE, INC.; and KRISTEN ZANKL, SCOTT THOMAS ZANKL<br><br>        Defendants | Index No.: 502846/2022<br><br>**JUDGMENT**<br><br><br><br><br><br><br><br><br><br><br><br>**Plaintiff's Address:**<br>1825 65th Street<br>Brooklyn NY 11204 |

WHEREAS, this action this action having been commenced by the filing of a Summons and Verified Complaint on January 28, 2022 (NYSCEF Doc. No. 1);

WHEREAS, the Summons and Verified Complaint in the above-entitled action have been served upon defendants, EXCELL AUTO GROUP, INC.; KARMA OF PALM BEACH INC.; AUTOMOTIVE SERVICE SYSTEMS, INC.; KZ CONSULTANTS, INC.; MISS KRISS, LLC; EXCELL AUTO LEASING INC.; EXCELL AUTO WHOLESALE INC.; DEALER SOUQ USA LLC; EAG WHOLESALE LLC; KARMA OF BROWARD, INC.; LAVISH HERO FUND; KARMA OF PALM BEACH, INC.; APPLE 3 INVESTMENTS, INC.; KZ CONSULTANTS INC.; EXCELL AUTO SPORT AND SERVICE, INC.; and KRISTEN ZANKL, SCOTT THOMAS ZANKL, on January 31, 2022;

1

WHEREAS, the Summons and Verified Complaint in this action have been served upon Defendants and proofs of service thereof have been filed with the Court and additional copies of the Summons and Verified Complaint have been mailed;

WHEREAS, on March 18, 2022, and EXCELL AUTO GROUP, INC.; KARMA OF PALM BEACH INC.; AUTOMOTIVE SERVICE SYSTEMS, INC.; KZ CONSULTANTS, INC.; MISS KRISS, LLC; EXCELL AUTO LEASING INC.; EXCELL AUTO WHOLESALE INC.; DEALER SOUQ USA LLC; EAG WHOLESALE LLC; KARMA OF BROWARD, INC.; LAVISH HERO FUND; KARMA OF PALM BEACH, INC.; APPLE 3 INVESTMENTS, INC.; KZ CONSULTANTS INC.; EXCELL AUTO SPORT AND SERVICE, INC.; and KRISTEN ZANKL, SCOTT THOMAS ZANKL ("Defendants") filed an Amended Answer and Counterclaims (NYSCEF Doc. Nos. 30-36);

WHEREAS, pursuant to a Stipulation Regarding Discontinuance this action was discontinued without prejudice as against Defendant Excell Auto Group, Inc. on October 26, 2022 on account of Excell Auto Group, Inc. having filed for bankruptcy relief (NYSCEF Doc. No. 133);

WHEREAS, on April 6, 2022, Plaintiff made a motion for summary judgment (the "Motion for Summary Judgment") pursuant to CPLR § 3212 (NYSCEF Doc. Nos. 57-70) seeking judgment against Defendants KARMA OF PALM BEACH INC., AUTOMOTIVE SERVICE SYSTEMS, INC.; KZ CONSULTANTS, INC.; MISS KRISS, LLC; EXCELL AUTO LEASING INC.; EXCELL AUTO WHOLESALE INC.; DEALER SOUQ USA LLC; EAG WHOLESALE LLC; KARMA OF BROWARD, INC.; LAVISH HERO FUND; KARMA OF PALM BEACH, INC.; APPLE 3 INVESTMENTS, INC.; KZ CONSULTANTS INC.; EXCELL AUTO SPORT AND SERVICE, INC., KRISTEN ZANKL & SCOTT THOMAS ZANKL (collectively, the "Remaining Defendants"), and dismissing the Remaining Defendants' Counterclaims;

2

Case 22-15627-EPK    Doc 925-1    Filed 07/03/25    Page 20 of 76

WHEREAS, the Remaining Defendants submitted opposition to the Motion for Summary Judgment on September 14, 2022 (NYSCEF Doc. Nos. 108-122) and Plaintiff submitted its reply to the Remaining Defendants' opposition to the Motion for Summary Judgment on September 19, 2022 (NYSCEF Doc. Nos. 123-137);

WHEREAS, pursuant to a Decision and Order dated January 13, 2023 (NYSCEF Doc. No. 149), the Court granted the Motion for Summary Judgment to the extent of dismissing the Remaining Defendants' Counterclaims for breach of contract, fraudulent inducement, criminal usury and unjust enrichment, but otherwise denied the motion;

WHEREAS, on February 10, 2023, Plaintiff filed a motion to reargue the Court's denial of Plaintiff's Motion for Summary Judgment (NYSCEF Doc. Nos. 153-155);

WHEREAS, on April 17, 2023, the Remaining Defendants filed their opposition to the Motion to Reargue (NYSCEF Doc. No. 164) and a cross-motion to reargue the dismissal of the Remaining Defendants' counterclaims against Plaintiff (NYSCEF Doc. Nos. 165-166) and Plaintiff filed its reply in further support of the Motion for Reargument and opposition to the Remaining Defendants' Cross-Motion for Reargument on May 3, 2023 (NYSCEF Doc. No. 175);

WHEREAS, pursuant to a Decision and Order entered on May 11, 2023 (NYSCEF Doc. No. 177), Plaintiff's Motion to Reargue was granted, and upon reargument, the Court granted the Motion for Summary Judgment and directed Plaintiff to submit a judgment on notice within 30 days itemizing the outstanding balance due on the Stipulation, accrued interest, any fees, and Plaintiff's request for attorneys' fees, and the Remaining Defendants' Cross-Motion to Reargue the dismissal of their Counterclaims was denied.

WHEREAS, the itemization of the amounts for which Plaintiff seeks judgment pursuant to the Stipulation (NYSCEF Doc. No. 61) are as follows:

3

| | |
|---|---|
| Unpaid Settlement Amount | $2,500,000.00 (Settlement Amount less $1,300,000) |
| Interest at 16% (2/11/22-09/13/23) | $ 635,616.44 (Section 3 of Stipulation) |
| Costs and Disbursements | $ 455.00 (Bill of Costs) |
| **TOTAL** | **$3,136,071.44** |

Now, on motion of Steven Zakharyayev, Esq. attorney for HI BAR CAPITAL, LLC, it is

ADJUDGED that HI BAR CAPITAL, LLC, located at 1825 65th Street Brooklyn NY 11204, have judgment and recover from Defendants, (i) KARMA OF PALM BEACH INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (ii) AUTOMOTIVE SERVICE SYSTEMS, INC., with an address at 6023 Town Country Drive, Suite #223, Boca Raton, FL 33433; (iii) KZ CONSULTANTS, INC., with an address at 16937 Pierre Cir., Delray Beach, FL 33446; (iv) MISS KRISS, LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (v) EXCELL AUTO LEASING INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (vi) EXCELL AUTO WHOLESALE INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (vii) DEALER SOUQ USA LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (viii) EAG WHOLESALE LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (ix) KARMA OF BROWARD, INC., with an address at 1699 SE 17th Street, Fort Lauderdale, FL 33316; (x) LAVISH HERO FUND, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xi) KARMA OF PALM BEACH, INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xii) APPLE 3 INVESTMENTS, INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xiii) KZ CONSULTANTS INC., with an address at 16937 Pierre Cir., Delray Beach, FL 33446; (xix) EXCELL AUTO SPORT AND SERVICE, INC., with an address at 5471 N. Dixie Hwy., Suite 5, Boca Raton, FL 33487, (xx) KRISTEN ZANKL, who

4

resides at 16937 Pierre Cir., Delray Beach, FL 33446; and (xxi) SCOTT THOMAS ZANKL, who resides at 16937 Pierre Cir., Delray Beach, FL 33446, jointly and severally, the sum of $2,500,000.00, plus interest at the rate of 16% per annum from interest from February 11, 2022, in the amount of $ **635,616.44**, plus $455 in costs and disbursements as taxed by the Clerk, amounting in all to the sum of $ **3,136,071.44**, and the Plaintiff have execution therefore; *and it is further*

ADJUDGED that the Counterclaims against Plaintiff HI BAR CAPITAL, LLC, located at 1825 65th Street Brooklyn NY 11204, by Defendants (i) KARMA OF PALM BEACH INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (ii) AUTOMOTIVE SERVICE SYSTEMS, INC., with an address at 6023 Town Country Drive, Suite #223, Boca Raton, FL 33433; (iii) KZ CONSULTANTS, INC., with an address at 16937 Pierre Cir., Delray Beach, FL 33446; (iv) MISS KRISS, LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (v) EXCELL AUTO LEASING INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (vi) EXCELL AUTO WHOLESALE INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (vii) DEALER SOUQ USA LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (viii) EAG WHOLESALE LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (ix) KARMA OF BROWARD, INC., with an address at 1699 SE 17th Street, Fort Lauderdale, FL 33316; (x) LAVISH HERO FUND, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xi) KARMA OF PALM BEACH, INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xii) APPLE 3 INVESTMENTS, INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xiii) KZ CONSULTANTS INC., with an address at 16937 Pierre Cir., Delray Beach, FL 33446; (xix) EXCELL AUTO SPORT AND SERVICE, INC., with

5

an address at 5471 N. Dixie Hwy., Suite 5, Boca Raton, FL 33487, (xx) KRISTEN ZANKL, who resides at 16937 Pierre Cir., Delray Beach, FL 33446; and (xxi) SCOTT THOMAS ZANKL, who resides at 16937 Pierre Cir., Delray Beach, FL 33446, are dismissed.

ENTER

Date: 9/13/23

_____
Hon.  Reginald A. Boddie, J.S.C.

HON. REGINALD A. BODDIE
J.S.C.

**CLERK**

# FILED

2023 SEP 14 PM 12:05

## KINGS COUNTY CLERK

## FEE _____

6

SUPREME COURT OF THE STATE OF NEW
YORK COUNTY OF KINGS

|   |   |
|---|---|
| HI BAR CAPITAL, LLC | Index No.: 502846/2022 |
| -against- Plaintiffs, | **BILL OF COSTS** |
| EXCELL AUTO GROUP, INC, et al. | |
| Defendants | |

Costs and Disbursements:

| | |
|---|---|
| Cost by Statue | $200.00 |
| Filing Fee (CPLR 8018[a]): | $210.00 |
| Entering and Docketing Judgment CPLR 8301(a)(7), 8016(a)(2) | $45.00 |

**Total:** $455.00

### Attorney Affirmation

The undersigned, an attorney admitted to practice law in the State of New York, affirms under penalty of perjury that I am the Managing Attorney at **WELLS LAW P.C.**, attorneys for HI BAR CAPITAL, LLC, and that the disbursements specified above are true, correct, and have been or will necessarily be incurred herein and are reasonable in amount.

Dated: June 1, 2023
        New York, New York

/s/ Steven W. Wells
Steven W. Wells
WELLS LAW P.C.
229 Warner Road
Lancaster, New York 14086
(716) 983-4750
steve@wellspc.com

**FILED**

2023 SEP 14 PM 12:05

**KINGS COUNTY CLERK**

FEE _____

# EXHIBIT "C"

Notice of Substitution

<div align="right">

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY FLORIDA**

</div>

HI BAR CAPITAL, LLC
a New York limited liability company,

        Plaintiff,

v.

Karma of Palm Beach,
Inc., a Florida corporation,
et al.,

        Defendants.

_____/

Consolidated case
Case No. CACE-22-006401

<div align="center">

**STIPULATION FOR SUBSTITUTION OF COUNSEL**

</div>

IT IS HEREBY STIPULATED AND AGREED that MATTHEW P. LETO, CHARLES

P. GOURLIS and LETO LAW FIRM shall be substituted in the place of MORAGN B.

EDELBOIM and EDELBOIM LIEBERMAN REVAH PLLC, as counsel of record for

Plaintiff, HI BAR CAPITAL, LLC, in the above action, and that MORGAN B. EDELBOIM

AND EDELBOIM LIEBERMAN REVAH PLLC, shall be relieved of any and all further

responsibility as counsel for HI BAR CAPITAL, LLC in this matter.

Respectfully submitted,

**LETO LAW FIRM**
201 South Biscayne Blvd.
Suite 2700
Miami, FL 33131
Telephone: (305) 341-3155

By: /s/ Matthew P. Leto
    MATTHEW P. LETO
    Florida Bar No. 14504
    mleto@letolawfirm.com
    kzelaya@letolawfirm.com
    pleadings@letolawfirm.com
    CHARLES P. GOURLIS
    Florida Bar No. 85924
    cgourlis@letolawfirm.com

**EDELBOIM LIEBERMAN REVAH PLLC**
20200 W. Dixie Highway
Suite 905
Miami, FL 33180
Telephone: (305) 768-9909

By:    /s/ Morgan B. Edelboim
    MORGAN B. EDELBOIM
    Florida Bar No. 40955
    morgan@elrolaw.com

<u>Consent</u>: Pursuant to Fla. Jud. R. Adm. 2.505, HI BAR CAPITAL, LLC, consents to the foregoing substitution of counsel.

Yisroel Herbst
Mordi Herbst, its Manager

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was filed for service through the E-Filing portal to the following persons on ~~June 30~~ Aug 7, 2023 on all counsel of record.

/s/ Matthew P. Leto
MATTHEW P. LETO

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

# EXHIBIT "D"

Hi Bar Capital's Motion to Intervene

Filing # 152053214 E-Filed 06/23/2022 11:56:53 AM

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

|  |  |
|---|---|
| FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership; FVP INVESTMENTS, LLC, a Delaware limited liability company; and FVP SERVICING, LLC, a Delaware limited liability company, | Case No: CACE-22-05125 |
| Plaintiffs, vs. | |
| KARMA OF BROWARD, INC., et. al., | |
| Defendants, _____/ | |

**HI BAR CAPITAL LLC'S MOTION TO INTERVENE**

Hi Bar Capital LLC ("Hi Bar"), pursuant to Rule 1.230, Florida Rules of Civil Procedure, without prejudice to its rights in below described legal action, hereby moves this Court to intervene in the above-captioned case as a defendant, counter-claimant, cross-claimant, and third-party plaintiff, and in accordance with Rule 1.130(b), Florida Rules of Civil Procedure, Hi Bar, hereby adopts and incorporates herein its Verified Complaint, Notice of Lis Pendens, Motion for Entry of Replevin Show Cause Order and the Show Cause Order filed in that certain action captioned *Hi Bar Financial LLC v. Karma of Broward, Inc., et al.*, Case No.: CACE–22–6401, Circuit Court for Broward County, Florida (the "Hi Bar Action"), a copy of which are attached hereto as **Composite Exhibit 1** (the "Hi Bar Pleadings"), in support of this Motion to Intervene as if those legal papers were attached hereto for all purposes. [1]  In support, Hi Bar seeks intervention to protect

---

[1] Excell Auto Group, Inc., a Florida corporation is not named in this action as it is a chapter 7 debtor in the United States Bankruptcy Court for the Southern District of Florida, West Palm

4885-5868-6245.2

its rights in the property that is the subject matter of this legal action and to support the motion of the FVP Plaintiffs seeking the appointment of a receiver during the pendency of this case. The Hi Bar Pleadings constitute Hi Bar's Counterclaim to the FVP Complaint, a Cross-claim against the defendants named in the above-captioned case,[2] and third-party complaint against the defendants named in the Hi Bar Action but not above-captioned case.[3] Hi Bar's proposed Answer and Defenses to the Complaint filed in this action is attached hereto as **Exhibit 2**. In support of this Motion, Hi Bar states:

## BACKGROUND FACTS

1.      FVP OPPORTUNITY FUND III, LP, FVP INVESTMENTS, LLC, and FVP SERVICING, LLC (the "FVP Plaintiffs") filed this action by a verified complaint for injunctive relief, foreclosure of security interests, replevin and money damages (the "FVP Complaint") against KARMA OF BROWARD, INC. and KARMA OF PALM BEACH, INC. (the "Karma Entities"), that relates to the acquisition primarily by the Karma Entities of numerous high-end automobiles that were acquired for resale.

2.      Among other allegations, the FVP Complaint alleges that FVP Plaintiffs made several loans to the Karma Entities, of which approximately $7 million in principal remains outstanding, and that the Karma Entities executed a Security Agreement granting the FVP

---

Beach Division, Case No. 22-12790-EPK.  Hi Bar is not seeking to enforce any legal rights against Excell Auto Group, Inc. or its property.

[2] Karma of Palm Beach Inc.; Karma of Broward, Inc.; and Lavish Hero Fund, Inc.; Auto Wholesale Of Boca, LLC; MMS Ultimate Services, Inc.; and Moshe Farache; Automotive Service Systems, Inc.; KZ Consultants, Inc.; Miss Kris, LLC; Excell Auto Leasing Inc.; Excell Auto Wholesale Inc.; Dealer Souq USA LLC; EAG Wholesale LLC; Apple 3 Investments, Inc.; and Excell Auto Sport And Service, Inc.

[3] Franklin Capital Group, LLC and Franklin Capital Management, LLC.

2

4885-5868-6245.2

Plaintiffs security interests in substantially all the assets of the Karma Entities.  The FVP Plaintiffs also allege that they filed initial financing statements with the Florida Secured Transactions Registry on January 26, 2022, which appear to be "all asset" filings. The above-described Security Agreement and financing statements are attached to the FVP Complaint.  The FVP Plaintiffs' Security Agreement includes "inventory," which the FVP Plaintiffs assert includes dozens of high end automobiles that are described in **Exhibit 3** attached hereto (the "Vehicle Inventory").

3.    In this case, the FVP Plaintiffs also have filed a verified motion for appointment of a receiver with respect to its collateral, including the Vehicle Inventory, which motion has been supplemented by the FVP Plaintiffs (the "Receiver Motion").

4.    However, on or about October 27, 2021, Hi Bar and the Karma Entities, and certain other defendants (the "Obligor Defendants"), entered into a Revenue Purchase Agreement (the "Purchase Agreement"), a copy of which is attached to the Hi Bar Complaint as **Exhibit A.**

5.    Among other things, the Purchase Agreement granted Hi Bar a security interest in substantially all of the assets of the Obligor Defendants, including the Karma Entities, where it provides, in part, at the top of Page 5:

> Merchants grant to HBC a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those teems ace each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to HBC under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets").

6.    The Obligor Defendants materially breached the Purchase Agreement by failing to remit the accounts receivable purchased by Hi Bar.

4885-5868-6245.2

7.      On December 19, 2021, the Obligor Defendants entered into a settlement agreement with Hi Bar regarding the aforesaid breach (the "Settlement Agreement"), a true and accurate copy of which is attached to the Hi Bar Complaint as **Exhibit B.**

8.      Paragraph 1.b. of the Settlement Agreement also granted Hi Bar a security interest in substantially all of the assets of the Karma Entities, as follows:

> As additional security for the prompt and complete payment and performance of any and all liabilities, obligations, covenants or agreements of Seller under this Settlement Agreement (and any future amendments of this Agreement, if any) (hereinafter referred to collectively as the "Obligations"), Sellers hereby pledge, assign and hypothecate to Purchaser (collectively, "Pledge") and grants to Purchaser a continuing, perfected and first priority lien upon and security interest in, to and under all of Sellers' right, title and interest in and to the following (collectively, the "Collateral"), whether now existing or hereafter from time to time acquired:
>
> i. all accounts, including without limitation, all deposit accounts, accounts receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Sellers; and all of Sellers' proceeds, as such term is defined by Article 9 of the UCC.

9.      On January 25, 2022, Hi Bar's legal representative filed an initial financing statement with the Florida Secured Transaction Registry against Obligor Defendants, File No.202109624865, covering among other things "all accounts receivable," "inventory" and "general intangibles" that are "now owned or hereafter acquired", a copy of which is attached to the Hi Bar Complaint as **Exhibit E** (the "Hi Bar Financing Statement").

10.     Hi Bar asserts the "Secured Assets" under the Purchase Agreement and "Collateral" under the Settlement Agreement (collectively, "Hi Bar's Collateral") include but is not limited to the Vehicle Inventory.

11.     The Obligor Defendants materially breached the Settlement Agreement by failing to timely pay to Hi Bar the sums required under the terms thereof.

4

4885-5868-6245.2

12.     On January 28, 2022, Hi Bar filed suit in the Supreme Court of New York, Kings County, *Hi Bar Capital, LLC, v. Excell Auto Group, Inc. et. al.,* Index No. 502846/2022 (the "New York Action") for breach of the Settlement Agreement.[4]

13.     On February 1, 2022, Hi Bar and the Obligor Defendants entered into a Stipulation of Settlement Pursuant to CPLR § 3215(i) with respect to the New York Action (the "**Stipulation**"), a copy of which is attached to the Hi Bar Complaint as **Exhibit C**.

14.     The Obligor Defendants materially breached the Stipulation by failing to timely pay Hi Bar the sums required under the terms thereof.

15.     As of April 28, 2022, Obligor Defendants owe Hi Bar the principal sum of $2,500,000 plus $625,000 in attorneys' fees pursuant to the Stipulation for a subtotal of $3,125,000, and interest on that amount at the rate of 16% per annum from February 11, 2022 ($102,739.73 as of 4/28/2022), all of which Hi Bar asserts is secured by its security interest in the Hi Bar Collateral, including the Vehicle Inventory.

16.     On June 16, 2022, Hi Bar filed a Motion to Consolidate and to Transfer (the "Motion to Consolidate") requesting the Hi Bar Action be transferred to this division and be consolidated with this case.  Additionally, pursuant to A.O. 2018-100-Civ(c)(4)(a), Hi Bar filed Notices of Related Case in this matter and the Hi Bar Action.

17.     The Motion to Consolidate was also filed in the Hi Bar Action, along with five (5) separate Joint Stipulations between Hi Bar and (1) the FVP Plaintiffs; (2) Auto Wholesale of Boca, LLC, MMS Ultimate Services, Inc., and Moshe Farache (collectively the "Farache Parties"); (3) Karma of Palm Beach Inc., Karma Of Broward, Inc., and Lavish Hero Fund (collectively the

---

[4] Because the collateral secured obligations under the Purchase Agreement and Settlement Agreement was located in Florida, the New York Action could not include enforcement of any remedy against collateral situated here.

5

4885-5868-6245.2

"Karma Parties"); (4) Franklin Capital Group, LLC, and Franklin Capital Management, LLC (collectively, the "Franklin Parties"); and (5) Excell Auto Sport and Service, Inc. ("Excell"). Pursuant to the Joint Stipulations, the Franklin Parties, the Karma Parties, the Farache Parties, the FVP Plaintiffs, and Excell do not oppose the Motion to Consolidate or this instant Motion to Intervene.

18. On June 17, 2022 and June 22, 2022, the Joint Stipulations were likewise filed in this action.

**LEGAL ARGUMENT SUPPORTING INTERVENTION**

19. Pursuant to Rule 1.230, Florida Rules of Civil Procedure, "[a]nyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention" so long as the intervenor has a "direct and immediate" interest in the case such that he will "gain or lose" as a result of the case. *See Houston Specialty Ins. Co.* v. *Vaughn,* 261 So. 3d 607 (Fla. 2d DCA 2018) (citing *Union Central Life Ins. Co.* v. *Carlisle,* 593 So. 2d 505, 507 (Fla. 1992))

20. "[T]he proper and controlling standard for intervention is not whether the party seeking to intervene is indispensable in the simple and literal meaning of the word, but more directly, whether the party's interest in the litigation is of a direct and immediate character, as determined by the complete analysis enunciated by the Florida Supreme Court." S. *Comfort Grill, Inc.* v. *Hanks Const., LLC,* 162 So. 3d 144, 145 (Fla. 4th DCA 2015).

21. The intervention rule is liberally construed. *Grimes* v. *Walton County,* 591 So. 2d 1091 (Fla. 1st DCA 1992).

22. Because of the security agreement embedded in the Purchase Agreement and Settlement Agreement, and in view of the prior filed Hi Bar Financing Statement, Hi Bar has

6

4885-5868-6245.2

asserted a priority security interest in the Hi Bar Collateral, including the Vehicle Inventory (while understanding that the FVP Plaintiffs have not conceded this point).

23. Consequently, this Court's adjudication of the issues pertaining to the Vehicle Inventory has a direct impact on the Hi Bar and its rights under applicable law, including the Uniform Commercial Code and therefore Hi Bar is entitled to intervene.

24. In addition, Hi Bar supports the FVP Plaintiffs' Receiver Motion subject with the understanding that these parties will agree the proposed receiver and the receiver order terms and conditions, and that motion directly affects property in which Hi Bar asserts a security interest.

WHEREFORE, Hi Bar respectfully requests that this Court enter grant this Motion and enter an Order allowing Hi Bar to intervene in this action to assert the rights identified in the Hi Bar Pleadings (without prejudice to its rights in the Hi Bar Action) and support the FVP Plaintiffs' Receiver Motion, motion for injunctive relief, and replevin show cause order, all subject to Hi Bar's asserted rights in the Hi Bar Pleadings, and grant such additional relief as it deems just and proper.

Dated: June 23, 2022

Respectfully submitted,

/s/ Mark J. Wolfson
Mark J. Wolfson, Esq.
FL Bar No. 0352756
FOLEY & LARDNER LLP
100 North Tampa Street, Suite 2700
Tampa, FL 33602-5810
P.O. Box 3391
Tampa, FL 33601-3391
Primary email: mwolfson@foley.com
Secondary email: crowell@foley.com
Telephone: 813.229.2300
Facsimile: 813.221.4210

*Attorneys for HI Bar Capital, LLC*

4885-5868-6245.2

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above-described Motion to Intervene has been served this 23rd day of June, 2022 through the Florida Court's E-Filing Portal's Notice of Electronic Filing which generates a notice of the filing to all attorneys of record.

/s/ *Mark J. Wolfson*
Attorney

8

4885-5868-6245.2

# EXHIBIT "E"

Retainer Agreement

## AUTHORITY TO REPRESENT

Hi Bar Capital, LLC, Mordi Herbst, Yisroel Herbst, Spin Capital, and Josh Lubin (referred to herein as "Clients") hereby retain and authorize the Leto Law Firm to represent them in the following lawsuits:

- Nicole Testa Mehdipour v. Hi Bar Capital, et. al., Southern District of Florida Case No.: 22-12790-EPK;
- Hi Bar Capital, LLC v. Karma of Palm Beach, Inc., et. al., Broward County Case No.: 22-006401

1.      For services rendered, it is understood that Joshua Lubin has agreed to pay all fees and costs associated with this representation pursuant to the terms of the *Common Interest and Joint Litigation Agreement* dated January 28, 2022, which is incorporated herein by reference. Furthermore, it is understood by Clients that the *Common Interest and Joint Litigation Agreement* provides Mr. Lubin with "the authority to prosecute and settle" the matters and unless terminated pursuant to Section 2(f).  Finally, counsel understands that Spin Capital and Josh Lubin have an interest in the outcome of this case, and while not counsel of record in the case for Spin and Lubin, understands they are a joint client for purposes of this case

2.      For the representation described above, it agreed that Leto Law Firm shall receive an initial $20,000 non-refundable retainer. Although the retainer is non-refundable and deemed earned upon receipt, Clients will not be billed until services rendered on an hourly basis exceed the amount of the non-refundable retainer. Matthew Leto will bill at an hourly rate of $525 per hour and Charlie Gourlis will bill at an hourly rate of $450 per hour. Any paralegal time will be billed at $125 per hour.  In addition to the forgoing, a refundable trial retainer in the amount of $50,000 will be required no later than 30 days prior to any scheduled trial date. Any unused portion of that trial retainer (after application to pending fees) shall be returned at the conclusion of the trial.

3.      In addition to the fees described above, Mr. Lubin also agrees to pay all necessary costs incurred in this matter and out-of-pocket expenses incurred related to this representation. These costs include, but are not limited to, items such as filing fees, costs of serving summonses and subpoenas, witness fees, court reporting fees, expert witness fees, postage, photocopying, parking, certified copies, courier services, travel expenses, photographs, graphics, and records.

4.      As you know, the Firm represents more than one client in this matter. An undertaking by a lawyer to represent more than one client in the same matter is called a "joint representation." The applicable rules of professional responsibility permit the representation of more than one client in the same matter provided that, among other things, the lawyer reasonably believes that he or she can adequately represent each client's interests competently and diligently and each client provides informed consent in writing to the joint representation. Joint representation is, of course, not mandatory in this matter, and you have the right to retain an attorney other than the Firm as your counsel.

We believe, based on the information furnished to us, that the Clients share a common interest with respect to the Engagement. Based upon the information provided to us about the facts of this matter, there does not appear to be an actual conflict among the Clients. It is possible that, however, that, in the future, your goals, objectives and interests in the Engagement might change and become different from that the other Clients. This creates a potential conflict of interest in the Firm's representation of the Clients now and may create an actual conflict of interest in the future. You are entitled to counsel who does not face either a potential or actual conflict of interest. Should you wish to retain the Firm, each Client agrees to waive any potential and/or actual conflict of interest which arises from our Firm's joint representation of the other Clients.

Although we are not currently aware of any actual or reasonably foreseeable adverse effects of joint representation, it is possible that issues may arise in which our representation of you may be materially limited by our representation of the other Clients. And, you acknowledge that it is not possible to predict all of the conflicts which may arise in a matter where multiple clients are being jointly represented. If such circumstances arise, the Firm will evaluate whether continued joint representation is appropriate, as discussed below.

We understand that no Client objects to the Firm representing the other Clients in this matter and that, to the extent that any potential conflict may exist or appear to exist, each Client waives any such conflict. Based on the information provided to us by you, and your expressed desire for joint representation, we have concluded that the Firm may appropriately represent the Clients in this matter at this time. If at any time you have any concerns about the appropriateness of continued joint representation, you should let us know immediately so that we can reevaluate the Firm's continuing joint representation of the Clients. If we become aware of any such circumstances, we will do the same.

In the event that joint representation is no longer appropriate in the Firm's determination, including because of any adversity, dispute, conflict, or differing interests among the Clients, you agree that the Firm may in its sole discretion withdraw from representing any of the Clients and may in its sole discretion continue to represent the other Clients in the Engagement. In such scenario, each Client agrees not to move to disqualify the Firm from continuing to represent the other Clients in any action related to the Engagement, nor will the client authorize any counsel they retain to move for such disqualification.

You also understand that if the Firm were to represent any Client alone in this matter, it would not be able to share the information provided by the Client with anyone except as provided by law. However, when a law firm jointly represents multiple clients in a single matter, there is no privilege which may be asserted as between the clients. You understand, therefore, that the Firm may elect, as it deems appropriate, to share information provided by you with the other Clients; but you further understand that the Firm may not necessarily share with you all of the information it receives from any other Client. You agree that, should the Firm be discharged by you or should the Firm withdraw from representing you under any of the circumstances described in this Engagement Letter, any information previously acquired by the Firm from you may be used by the Firm in furtherance of its continued representation of the other Clients in this matter.

Your signature below confirms that you have been given the option to consult with independent counsel concerning the conflict and joint representation issues discussed above and have had adequate time to do so, and further confirms that you waive any actual and/or potential conflicts of interest raised by the Firm's joint representation in this matter.

5.      Clients understand that there have been no guarantees made regarding the disposition of any phase of this case. All expressions which relate to the possible results in the case are based strictly on opinion. Likewise, it is impossible to determine in advance the amount of time or expenses needed to complete your case and no assurances of what those costs will ultimately be can be given to you.

6.      All bills for costs incurred shall be payable upon receipt. In addition, Clients and Mr. Lubin agree to carefully review all statements and to promptly notify this firm in writing of any errors or discrepancies in billing within twenty (20) days of the date of the statement.

7.      As permitted by law, an award of legal fees and/or costs may be sought from the opposing party. The payment of such fees shall not be determinative of the amount owed by Clients. Clients understands that the pursuit of an award of attorney's fees is an additional service and any time required to collect the amount due from the opposing party will also be chargeable to Clients.

8.      Representation in this matter will be withdrawn if Clients misrepresent or fail to disclose material facts, or if Clients fails to cooperate or follow advice as given, or if Clients do not make the payments required by this agreement. If suit must be filed for the collection of any sums due under this agreement, then Clients shall pay reasonable attorney's fees together with court costs for collection of such unpaid amounts. In addition, should Clients fail to timely pay for services rendered, Clients acknowledge that an attorney's charging lien and/or retaining lien may be placed against any proceeds or assets you receive or retain pursuant to this matter.

9.      Clients understand that this representation is limited to the matter described above. Should any appeal proceedings be required, a new fee agreement for that appeal will have to be signed.

10.     The provisions of this agreement may be disclosed to the Court in connection with any application for fees and services which may be rendered on Clients' behalf and the Court may be advised by the undersigned of any amounts that have been received on account of fees and costs.

9       This agreement contains the entire understanding between us and may not be varied or modified unless in writing.

11.     FLORIDA LAW GOVERNS THIS FEE AGREEMENT AND ITS TERMS AND CONDITIONS (EXCLUDING FLORIDA'S CONFLICT OF LAW RULES) AND YOU CONSENT TO EXCLUSIVE JURISDICTION AND VENUE IN A COURT IN MIAMI DADE COUNTY, FLORIDA FOR RESOLUTION OF ANY DISPUTE ARISING FROM OR RELATED TO THIS FEE AGREEMENT.

12.    If the above correctly and fully sets forth our agreement, please sign a copy hereof where indicated below and return it with the initial retainer fee.

13.    YOU UNDERSTAND THAT LETO LAW FIRM DOES NOT HAVE THE AUTHORITY PROCEED UNTIL SUCH TIME AS THIS DOCUMENT IS SIGNED BY ALL PARTIES.

THIS IS A LEGALLY BINDING CONTRACT.  BEFORE SIGNING, PLEASE READ IT CAREFULLY AND BE SURE YOU UNDERSTAND ALL OF ITS CONTENTS.  IF THERE IS ANYTHING YOU DO NOT UNDERSTAND, PLEASE ASK. DO NOT HESITATE TO HAVE THIS AGREEMENT REVIEWED BY ANOTHER ATTORNEY OF YOUR CHOICE.

READ, APPROVED AND ACCEPTED THIS __ DAY OF_____, 2023.


By: _____
    Mordechai Herbst (Aug 1, 2023 12:46 EDT)
    Hi Bar Captial, LLC

_____
Address:  2250 59th street Brooklyn NY
Business Telephone:    929-491-9130
Cellular Telephone:    929-491-9130
E-Mail: Mordi@hibarcapital.com

By: _____
    Mordechai Herbst (Aug 1, 2023 12:46 EDT)
    Mordi Herbst

_____
Address:  2250 59th street Brooklyn NY
Business Telephone:    929-491-9130
Cellular Telephone:    929-491-9130
E-Mail: Mordi@hibarcapital.com

By: _____
    Yisroel M Herbst (Aug 1, 2023 17:50 GMT+1)
    Yisroel Herbst

_____
Address:  2250 59th Street Brooklyn NY 11204
Business Telephone:    91757738882
Cellular Telephone:    9175773882
E-Mail: Ymherbst@gmail.com

By: _____
Joshua Lubin (Aug 1, 2023 18:42 GMT+2)

Joshua Lubin

_____
Address: 1460 arboretum pkwy lakewood  NJ 0i8701

Business Telephone: 732-608-4905

Cellular Telephone: 732-608-4905

E-Mail: Josh@spincapital.com

The above employment is hereby accepted upon the terms stated above.

Dated: _____       _____

Matthew Leto
LETO LAW FIRM

# Authority to Represent - Hi-Bar Matters

Final Audit Report                                                     2023-08-01

| | |
|---|---|
| Created: | 2023-08-01 |
| By: | Matthew Leto (mleto@letolawfirm.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAX2MzRrj-KnxuofdWUFMwj9Lj5tx_WLA5 |

## "Authority to Represent - Hi-Bar Matters" History

📄 Document created by Matthew Leto (mleto@letolawfirm.com)
2023-08-01 - 2:47:45 PM GMT- IP address: 38.132.160.173

✉ Document emailed to josh@spincapital.com for signature
2023-08-01 - 2:50:34 PM GMT

📄 Email viewed by josh@spincapital.com
2023-08-01 - 4:39:45 PM GMT- IP address: 174.208.226.102

✅ Signer josh@spincapital.com entered name at signing as Josh lubin
2023-08-01 - 4:42:05 PM GMT- IP address: 174.208.226.102

✅ Document e-signed by Josh lubin (josh@spincapital.com)
Signature Date: 2023-08-01 - 4:42:07 PM GMT - Time Source: server- IP address: 174.208.226.102

✉ Document emailed to mordi@hibarcapital.com for signature
2023-08-01 - 4:42:08 PM GMT

📄 Email viewed by mordi@hibarcapital.com
2023-08-01 - 4:44:16 PM GMT- IP address: 104.47.66.126

✅ Signer mordi@hibarcapital.com entered name at signing as Mordechai Herbst
2023-08-01 - 4:46:35 PM GMT- IP address: 69.118.107.4

✅ Document e-signed by Mordechai Herbst (mordi@hibarcapital.com)
Signature Date: 2023-08-01 - 4:46:37 PM GMT - Time Source: server- IP address: 69.118.107.4

✉ Document emailed to ymherbst@gmail.com for signature
2023-08-01 - 4:46:38 PM GMT

📄 Email viewed by ymherbst@gmail.com
2023-08-01 - 4:47:32 PM GMT- IP address: 86.8.175.20

Adobe Acrobat Sign

Signer ymherbst@gmail.com entered name at signing as Yisroel M Herbst

2023-08-01 - 4:49:59 PM GMT- IP address: 86.8.175.20

Document e-signed by Yisroel M Herbst (ymherbst@gmail.com)

Signature Date: 2023-08-01 - 4:50:01 PM GMT - Time Source: server- IP address: 86.8.175.20

Agreement completed.

2023-08-01 - 4:50:01 PM GMT

# EXHIBIT "F"

Sampling of Billing Statements



# INVOICE

Invoice # 1547
Date: 02/01/2024
Due Upon Receipt

201 South Biscayne Blvd, Suite 2700
Miami , Florida 33131

Mordi Herbst

# FVP Opportunity Fund III, LP v. Hi Bar Capital (CACE-22-005125) / Consolidated: (CACE-22-006401) / Bankruptcy 22-12790-EPK / 4D2023-3057

### Services

| Type | Date | Attorney | Notes | Quantity | Rate | Total |
|---|---|---|---|---|---|---|
| Service | 01/02/2024 | MPL | Various emails with Josh; call with Josh; emails with Breslin regarding depositions and hearing; review motion to postpone; review declaration. | 1.80 | $525.00 | $945.00 |
| Service | 01/08/2024 | MPL | Attend hearing on various motions related to Interface intervention; initial review of response to motion to dismiss; review production requests to Wing Lake regarding Hi Bar docs | 2.20 | $525.00 | $1,155.00 |
| Service | 01/10/2024 | MPL | Review various orders; prep for hearing | 1.00 | $525.00 | $525.00 |
| Service | 01/11/2024 | MPL | Prepare for and attend hearing on motion to dismiss; emails with opposing counsel regarding Ed Brown vehicles and sale procedure; call with Josh re: same | 5.40 | $525.00 | $2,835.00 |
| Service | 01/12/2024 | MPL | Attend Halperin depo in BK case | 1.00 | $525.00 | $525.00 |
| Service | 01/15/2024 | MPL | Review FVP motion for leave to amend by interlineation; review email from Franklin related to Michigan production; research in preparation of motion to continue summary judgment hearing | 0.50 | $525.00 | $262.50 |
| Service | 01/16/2024 | MPL | Attend hearing on Graner Motion to Dismiss; review motion for protective order regarding Hi Bar discovery; review trial order; review order on motion to dismiss | 1.20 | $525.00 | $630.00 |
| Service | 01/16/2024 | CG | Draft response to motion to take judicial notice. | 0.50 | $450.00 | $225.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Service | 01/17/2024 | MPL | Review interrogatory answers | 0.30 | $525.00 | $157.50 |
| Service | 01/18/2024 | MPL | Work on motion to compel; call with Josh and Bernie; call with Josh | 1.00 | $525.00 | $525.00 |
| Service | 01/19/2024 | MPL | Attend hearing on motion to dismiss by Farache; draft motion to compel | 2.00 | $525.00 | $1,050.00 |
| Service | 01/21/2024 | MPL | Review motion to appoint magistrate and expedite discovery | 0.20 | $525.00 | $105.00 |
| Service | 01/22/2024 | MPL | Call with Scott Gherman regarding aligned interest on discovery against FVP | 0.30 | $525.00 | $157.50 |
| Service | 01/23/2024 | MPL | Emails with Breslin regarding car sale; review depo of Keith Lee; emails regarding discovery and special master; call with Farache lawyer regarding cars | 1.00 | $525.00 | $525.00 |
| Service | 01/24/2024 | MPL | Draft response to FVP's Motion to Shorten Time and Appoint Magistrate; emails regarding mediation and discovery; meet and confer regarding discovery; review additional documents from Tyler Zankl | 1.70 | $525.00 | $892.50 |
| Service | 01/25/2024 | MPL | Research and draft reply memorandum regarding agreement with Zankl | 2.00 | $525.00 | $1,050.00 |
| Service | 01/29/2024 | MPL | Draft subpoena to Biltmore Consultants; call with Lubin and Bernie; work on answer and defenses | 2.00 | $525.00 | $1,050.00 |
| Service | 01/30/2024 | MPL | Draft answer and defenses; draft supplemental rfp | 4.00 | $525.00 | $2,100.00 |

| | | |
|---|---|---|
| **Services Subtotal** | | **$14,715.00** |

## Expenses

| Type | Date | Notes | Quantity | Rate | Total |
|---|---|---|---|---|---|
| Expense | 01/02/2024 | December 2023 Copies (b/w) | 79.00 | $0.15 | $11.85 |
| Expense | 01/02/2024 | December 2023 Copies (color) | 4.00 | $0.25 | $1.00 |
| Expense | 01/04/2024 | Prestige Reporting Service, Inc. Case: CACE22005125 Invoice: 117873 Job number: 121909 Hearing before Honorable Jack Ttuter 12/12/2023 | 1.00 | $220.40 | $220.40 |

| | | |
|---|---|---|
| **Expenses Subtotal** | | **$233.25** |

| Time Keeper | Quantity | Rate | Total |
|---|---|---|---|

Invoice # 1547 - 02/01/2024

| | | | |
|---|---|---|---|
| Charlie Gourlis | 0.5 | $450.00 | $225.00 |
| Matthew Leto | 27.6 | $525.00 | $14,490.00 |
| | | **Subtotal** | **$14,948.25** |
| | | **Total** | **$14,948.25** |

## Detailed Statement of Account

### Other Invoices

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 1507 | 01/07/2024 | $18,590.55 | $0.00 | $18,590.55 |

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 1547 | 02/01/2024 | $14,948.25 | $0.00 | $14,948.25 |
| | | | **Outstanding Balance** | **$33,538.80** |
| | | | **Total Amount Outstanding** | **$33,538.80** |

Please make all amounts payable to: Leto Law Firm

Payment is due upon receipt.



# INVOICE

Invoice # 1591
Date: 03/01/2024
Due Upon Receipt

201 South Biscayne Blvd, Suite 2700
Miami , Florida 33131

Mordi Herbst

# FVP Opportunity Fund III, LP v. Hi Bar Capital (CACE-22-005125) / Consolidated: (CACE-22-006401) / Bankruptcy 22-12790-EPK / 4D2023-3057

## Services

| Type | Date | Attorney | Notes | Quantity | Rate | Total |
|------|------|----------|-------|----------|------|-------|
| Service | 02/02/2024 | MPL | Finalize answer and affirmative defenses | 1.50 | $525.00 | $787.50 |
| Service | 02/05/2024 | MPL | Review and analyze sur-reply on common interest issue | 0.20 | $525.00 | $105.00 |
| Service | 02/07/2024 | MPL | Attend bankruptcy hearing regarding turnover of Spin docs; emails regarding sale of Brown vehicles; coordinate depositions on Hi Bar side; meet with Yisroel; review various filings | 2.00 | $525.00 | $1,050.00 |
| Service | 02/08/2024 | MPL | Draft motion for extension; prepare documents for expert | 0.50 | $525.00 | $262.50 |
| Service | 02/12/2024 | MPL | Various calls and emails with all parties regarding depositions and hearings | 0.40 | $525.00 | $210.00 |
| Service | 02/13/2024 | MPL | Draft response and objections to second and third rfp; call with Patrick Dorsey regarding Franklin's Motion to Continue; prepare for hearing on Hi Bar's Motion to Compel and FVP's Motion to Appoint Magistrate | 3.40 | $525.00 | $1,785.00 |
| Service | 02/14/2024 | MPL | Attend hearing on Franklin's BK motion; Attend hearing on Hi Bar Motion to Compel; FVP motion to appoint; and Farache Motion to Compel | 2.50 | $525.00 | $1,312.50 |
| Service | 02/15/2024 | MPL | Review dropbox link from Lubin; review and revise proposed order on appointment of general magistrate | 1.00 | $525.00 | $525.00 |
| Service | 02/16/2024 | MPL | Review and revise order on FVP motion for | 0.30 | $525.00 | $157.50 |

| | | | extension to respond to Complaint | | | |
|---|---|---|---|---|---|---|
| Service | 02/19/2024 | MPL | Draft amended notice of video deposition for Lee; draft motion for order to show cause against Biltmore; email O Donnell counsel regarding deposition dates; prepare for Keith Lee deposition; draft proposed answers to FVP interrogatories; attend meet and confer on Hi Bar objections: call with expert | 5.00 | $525.00 | $2,625.00 |
| Service | 02/20/2024 | MPL | Call with Josh; prepare for deposition; attend deposition of Milco; calls with Mordi and Yisroel regarding interrogatory answers | 3.50 | $525.00 | $1,837.50 |
| Service | 02/20/2024 | CG | Attend deposition of Nick Stratigakis. | 1.70 | $450.00 | $765.00 |
| Service | 02/21/2024 | CG | Attend hearing on Trustee's expedited motion to compel in bankruptcy court. | 0.50 | $450.00 | $225.00 |
| Service | 02/21/2024 | MPL | Attend depo of Keith Lee | 7.00 | $525.00 | $3,675.00 |
| Service | 02/22/2024 | MPL | Attend continued depo of Keith Lee | 4.50 | $525.00 | $2,362.50 |
| Service | 02/26/2024 | MPL | Draft response to Franklin RFP; review Franklin discovery responses | 1.20 | $525.00 | $630.00 |
| Service | 02/27/2024 | MPL | Review topics on deposition notice and draft email with objections and requests for clarification | 0.30 | $525.00 | $157.50 |
| Service | 02/28/2024 | MPL | Attended hearing on Franklin's Motion to Continue Trial; pre-depo prep call with Mordi | 1.00 | $525.00 | $525.00 |

**Services Subtotal**     **$18,997.50**

## Expenses

| Type | Date | Notes | Quantity | Rate | Total |
|---|---|---|---|---|---|
| Expense | 02/02/2024 | DLE Legal<br>Invoice: 2024006650<br>Served to Records Custodian Biltmore Automotive Services | 1.00 | $120.00 | $120.00 |
| Expense | 02/05/2024 | January 2024 prints (b/w) | 177.00 | $0.15 | $26.55 |
| Expense | 02/05/2024 | January 2024 prints (color) | 589.00 | $0.25 | $147.25 |
| Expense | 02/20/2024 | Certified Mail to Biltmore Automotive Services<br>Motion for Order to Show Cause | 1.00 | $10.40 | $10.40 |
| Expense | 02/26/2024 | U.S. Legal Support<br>Invoice: 20240618615-12<br>Job date: 2.22.2024 | 1.00 | $970.00 | $970.00 |

| | | Keith Lee Depo | | | |
|---|---|---|---|---|---|
| Expense | 02/29/2024 | U.S. Legal Support<br>invoice: 20240621445-12<br>Job date: 2.21.2024<br>Videography Services of Keith Lee | 1.00 | $1,555.00 | $1,555.00 |
| Expense | 03/01/2024 | February 2024 prints (b/w) | 42.00 | $0.15 | $6.30 |
| Expense | 03/01/2024 | February 2024 prints (color) | 17.00 | $0.25 | $4.25 |
| | | | **Expenses Subtotal** | | **$2,839.75** |

| Time Keeper | Quantity | Rate | Total |
|---|---|---|---|
| Charlie Gourlis | 2.2 | $450.00 | $990.00 |
| Matthew Leto | 34.3 | $525.00 | $18,007.50 |
| | | **Subtotal** | **$21,837.25** |
| | | **Total** | **$21,837.25** |

## Detailed Statement of Account

### Other Invoices

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 1507 | 01/07/2024 | $18,590.55 | $0.00 | $18,590.55 |
| 1547 | 02/01/2024 | $14,948.25 | $0.00 | $14,948.25 |

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 1591 | 03/01/2024 | $21,837.25 | $0.00 | $21,837.25 |
| | | | **Outstanding Balance** | **$55,376.05** |
| | | | **Total Amount Outstanding** | **$55,376.05** |

Please make all amounts payable to: Leto Law Firm

Payment is due upon receipt.

# EXHIBIT "G"

Sanctions Motion

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

FVP OPPORTUNITY FUND III, LP,
A Delaware limited partnership, FVP
INVESTMENTS, LLC, A Delaware limited
liability company, and FVP SERVICING,
LLC, a Delaware limited liability company

CASE NO.: CACE-22-005125

     Plaintiffs,

v.

KARMA OF BROWARD, INC., a Florida
corporation, ET AL

     Defendant.

_____/

HI BAR CAPITAL, LLC, New York Limited
Liability Company,

Consolidated Case
CASE NO.: CACE-22-006401

     Plaintiff,

v.

KARMA OF PALM BEACH, INC. a Florida
Corp., et. al.

     Defendants.

_____/

### MATTHEW P. LETO, ESQ. AND LETO LAW FIRM'S
### MOTION FOR SANCTIONS PURSUANT TO FLA. STAT. 57.105

Matthew P. Leto, Esq. and Leto Law Firm, counsel to Defendants, Hi-Bar Capital, LLC

("Hi-Bar"), Mordechai Herbst, and Yisroel Herbst, (collectively, "Hi-Bar Defendants"), serve the

following Motion for Sanctions Pursuant to Fla. Stat. 57.105 against Defendant Avrumi Lubin,

proceeding *pro se*, which will not be filed for twenty one days to allow Defendant an opportunity

to withdraw his Motion to Disqualify filed February 3, 2025 (Filing # 215853371), and states the

following.

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 04/29/2025 10:35:45 AM.****

**INTRODUCTION**

Lubin's motion fails to establish any basis for disqualification in this case. Indeed, Lubin failed to address the majority of the factors set forth in *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232 (S.D. Fla. 2005). Furthermore, as Lubin admits in his motion, he signed an express conflict waiver at the outset of the representation. In that waiver, Lubin specifically waived the right to seek disqualification of the undersigned counsel. For all of the reasons set forth herein, the motion to disqualify is both factually and legally frivolous and should be summarily denied.

**RELEVANT FACTS**

1.      On January 28, 2022, Spin Capital, LLC ("Spin") and Hi-Bar Capital, LLC ("Hi Bar") entered into a Common Interest and Joint Litigation Agreement (the "JDA"). The JDA required, among other things, Spin to pay Hi-Bar's legal fees in various legal proceedings. *See* **Exhibit A** ¶ 2(d).

2.      In August 2023, Leto Law Firm was retained to represent the Hi Bar Defendants in this lawsuit and a related lawsuit pending in Broward County. On August 1, 2023, Lubin, Spin, Hi-Bar, Mordechai Herbst, and Yisroel Herbst signed the Authority to Represent, by which undersigned counsel agreed to represent Hi-Bar, Mordechai Herbst, and Yisroel Herbst as counsel of record in various legal proceedings pursuant to their JDA. *See* **Exhibit B**. Since communications are privileged when there is a joint defense agreement and because Lubin agreed to pay the legal bills associated with the various lawsuits, Hi Bar, Herbst, Lubin and Spin were all identified as joint clients of the Leto Law Firm. However, the Authority to Represent was clear and unambiguous – Leto Law Firm was "not counsel of record in the case for Spin and Lubin," and would not be appearing on behalf of Spin or Lubin in any legal matter. *See* Ex. B at ¶ 1. Instead,

Lubin and Spin would have (and have had) separate legal counsel protecting their interests and undertaking the responsibilities associated with the pending lawsuits.

3. Further, given the potential for competing interests that sometimes occur with any joint representation scenario, Hi-Bar, the Herbsts and Lubin expressly waived any conflict of interest. That waiver, which is in strict compliance with Rule 4-1.7 of the Florida Bar Rules, provides, in full:

> As you know, the Firm represents more than one client in this matter. An undertaking by a lawyer to represent more than one client in the same matter is called a "joint representation." The applicable rules of professional responsibility permit the representation of more than one client in the same matter provided that, among other things, the lawyer reasonably believes that he or she can adequately represent each client's interests competently and diligently and each client provides informed consent in writing to the joint representation. Joint representation is, of course, not mandatory in this matter, and you have the right to retain an attorney other than the Firm as your counsel.
>
> We believe, based on the information furnished to us, that the Clients share a common interest with respect to the Engagement. Based upon the information provided to us about the facts of this matter, there does not appear to be an actual conflict among the Clients. It is possible that, however, that, in the future, your goals, objectives and interests in the Engagement might change and become different from that the other Clients. This creates a potential conflict of interest in the Firm's representation of the Clients now and may create an actual conflict of interest in the future. You are entitled to counsel who does not face either a potential or actual conflict of interest. **Should you wish to retain the Firm, each Client agrees to waive any potential and/or actual conflict of interest which arises from our Firm's joint representation of the other Clients.**
>
> Although we are not currently aware of any actual or reasonably foreseeable adverse effects of joint representation, it is possible that issues may arise in which our representation of you may be materially limited by our representation of the other Clients. And, you acknowledge that it is not possible to predict all of the conflicts which may arise in a matter where multiple clients are being jointly represented. If such circumstances arise, the Firm will evaluate whether continued joint representation is appropriate, as discussed below.
>
> We understand that no Client objects to the Firm representing the other Clients in this matter and that, to the extent that any potential conflict may exist or appear to exist, each Client waives any such conflict. Based on the information provided to us by you, and your expressed desire for joint representation, we have concluded

Page 3 of 19

that the Firm may appropriately represent the Clients in this matter at this time. If at any time you have any concerns about the appropriateness of continued joint representation, you should let us know immediately so that we can reevaluate the Firm's continuing joint representation of the Clients. If we become aware of any such circumstances, we will do the same.

**In the event that joint representation is no longer appropriate in the Firm's determination, including because of any adversity, dispute, conflict, or differing interests among the Clients, you agree that the Firm may in its sole discretion withdraw from representing any of the Clients and may in its sole discretion continue to represent the other Clients in the Engagement. In such scenario, each Client agrees not to move to disqualify the Firm from continuing to represent the other Clients in any action related to the Engagement, nor will the client authorize any counsel they retain to move for such disqualification.**

**You also understand that if the Firm were to represent any Client alone in this matter, it would not be able to share the information provided by the Client with anyone except as provided by law.** However, when a law firm jointly represents multiple clients in a single matter, there is no privilege which may be asserted as between the clients. You understand, therefore, that the Firm may elect, as it deems appropriate, to share information provided by you with the other Clients; but you further understand that the Firm may not necessarily share with you all of the information it receives from any other Client. **You agree that, should the Firm be discharged by you or should the Firm withdraw from representing you under any of the circumstances described in this Engagement Letter, any information previously acquired by the Firm from you may be used by the Firm in furtherance of its continued representation of the other Clients in this matter.**

**Your signature below confirms that you have been given the option to consult with independent counsel concerning the conflict and joint representation issues discussed above and have had adequate time to do so, and further confirms that you waive any actual and/or potential conflicts of interest raised by the Firm's joint representation in this matter.**

*See* Ex. B at ¶ 4.

4.      As the litigation progressed, Lubin's behavior became more unpredictable and somewhat erratic. Lubin would email and text at all hours of the night making illogical claims.

Lubin would also directly email the opposing lawyers and parties.[1] By March 2024, not only was Lubin unilaterally writing emails to the opposing parties and their counsel at all hours of the night, Lubin also stated that he would no longer be paying any invoices for Hi Bar and instructed the undersigned to deal directly with that entity going forward. Lubin's statements, and the mutual decision to sever any relationship between the undersigned and Lubin, were memorialized in various emails in March 2024. *See* **Exhibit C.**

5.       At that time, Lubin and Spin owed the undersigned more than $75,000.00. When the undersigned continued to demand payment given the amount owed, on March 29, 2024, Lubin finally responded that "Your [sic] not allowed to contact me directly."



6.       After being four months in arrears and after stating he would not pay undersigned counsel's invoices for his representation of Hi Bar, and owing approximately $78,000, on April 2,

---

[1] To this day, Lubin has continued sending emails to his cast of former lawyers, the parties and their counsel, and various new agencies on almost a daily basis making various threats and other defamatory statements. Since January 6, 2025, Lubin has sent 179 emails that the undersigned has been copied on.

2024, undersigned counsel filed suit against Lubin and Spin in state court in Miami-Dade County.[2] That action was assigned Case No. 2024-005793-CA-01.[3]

7.  Obviously, by that point, there was no attorney-client relationship between Lubin, Spin and the undersigned. Due to Lubin's failure to pay legal fees, by letter dated April 3, 2024, Hi Bar also made the decision to terminate the Joint Defense Agreement. A copy of the letter terminating the JDA is attached as **Exhibit D.** Although not an issue in this case, the JDA expressly permits either party to terminate the JDA in their sole discretion. Should that occur (which it did), Hi Bar was entitled to continue pursuing its claims and defenses, which it has done, and Spin could pursue its claims and defenses (which it has).

8.  **Notably, neither party to this case (or any other action) has taken any merits-based or legal position that is adversarial to the other.** Indeed, Spin has actually *joined* in a motion for summary judgment filed by Hi Bar in the bankruptcy case demonstrating the lack of any conflict in their respective positions. [D.E. 174].

## MEMORANDUM OF LAW

### A. Legal Standard for Section 57.105

Florida Statute § 57.105 provides that a party and its counsel[4] shall be liable for attorney's fees if the Court finds that either or both knew or should have known that a claim was unable to be supported in law or in fact. Section 57.105 states:

---

[2] All parties to the state court action were aware of this lawsuit and the Complaint was filed in the record by FVP earlier this year when seeking to compel Lubin's deposition.

[3] On November 5, 2024, the case was jointly dismissed with prejudice pursuant to a written settlement agreement.

[4] Section 57.105 applies to *pro se* litigants. *Morales v. Marques*, 931 So. 2d 169, 170 (Fla. 5th DCA 2006).

Upon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:

> (a)   Was not supported by the material facts necessary to establish the claim or defense; or
>
> (b)   Would not be supported by the application of then-existing law to those material facts.

"The central purpose of section 57.105 is, and always has been, to deter meritless filings and thus streamline the administration and procedure of the courts." *Mullins v. Kennelly*, 847 So.2d 1151, 1154 (Fla. 5th DCA 2003) *citing Whitten v. Progressive Cas. Ins. Co.,* 410 So.2d 501, 505 (Fla.1982). ("The purpose of section 57.105 is to discourage baseless claims, stonewall defenses and sham appeals in civil litigation by placing a price tag through attorney's fees awards on losing parties who engage in these activities."); *Visoly v. Sec. Pacific Credit Corp.,* 768 So.2d 482, 492 (Fla. 3d DCA 2000) ("The general policy behind awarding attorney's fees for bringing a frivolous action is to discourage baseless claims, stonewall defenses, and sham appeals by sanctioning those responsible for unnecessary litigation costs.").

Applied to cases analogous to the instant matter, Section 57.105 "imposes a duty, or at least a penalty for failing to voluntarily dismiss a claim or defense when it becomes clear that the claim or defense is untenable." *Mullins*, 347 So.2d at 1155 n.3.

## B. Legal Standard to Disqualify

"There is a 'constitutionally based right to counsel of choice' in civil as well as criminal cases, but that right is not absolute." *In re Patrick Power Corp.,* 2007 WL 2883179, at *1 (Bankr. S.D. Fla. Sept. 26, 2007) (quoting *In re BellSouth Corporation,* 334 F.3d 941, 955 (11th Cir. 2003)). Disqualification of counsel is a harsh and drastic remedy that should be granted only in

rare circumstances because it often works a substantial hardship on an innocent third party – the client. *In re Patrick Power Corp.*, 2007 WL 2883179, at \*1; *Alters v. Villoldo*, 230 So. 3d 115, 117 (Fla. 3d DCA 2017); *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at \*2 (S.D. Fla. May 6, 2008).

The party moving to disqualify bears a "heavy" burden of proving the grounds for disqualification. *In re Evergreen Sec., Ltd.*, 363 B.R. 267, 301–02 (Bankr. M.D. Fla. 2007) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir. 1983)). "Disqualification motions are subject to 'careful and exacting' review because of the potential for strategic abuse." *In re Evergreen*, 363 B.R. at 301–02 (quoting *In re American Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992)). *See also Alters*, 230 So. 3d at 117 ("Motions for disqualification are generally viewed with skepticism because disqualification of counsel impinges on a party's right to employ a lawyer of choice, and such motions are often interposed for tactical purposes."). Disqualification "is never automatic." *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1236 (S.D. Fla. 2005) (quoting *SWS Financial Fund A v. Salomon Bros., Inc.*, 790 F.Supp. 1392, 1400 (N.D.Ill. 1992).

When considering whether to disqualify counsel, courts employ a balancing test. *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1237 (S.D. Fla. 2005) (collecting cases). Courts consider a handful of factors, including the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment. *Id.*

Finally, a motion to disqualify "should be made with reasonable promptness after the party seeking the disqualification learns of the conflict of interest." *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at \*2 (S.D. Fla. May

6, 2008) (collecting cases). "The rationale behind this rule is to prevent a litigant from using the motion as a tool to deprive his opponent of counsel of his choice after completing substantial preparation of the case." *Transmark, USA, Inc., v. State Dept. of Insur.*, 631 So.2d 1112, 1116 (Fla. 1st DCA 1994).

### C. Lubin's Argument that Counsel be Disqualified is Frivolous.

Here, Lubin knows or should know that his Motion to Disqualify is both factually and legally frivolous. In fact, Lubin filed an identical motion in the bankruptcy proceeding and withdrew it during the safe harbor period after being served with a Rule 11 motion for sanctions, conceding that he knew the attempt was frivolous and would result in sanctions. Lubin's notice of withdrawal is attached as **Exhibit E**. Even though Lubin is *pro se*, no specialized legal knowledge or training is necessary to comprehend the frivolous nature of what Lubin is attempting to achieve.

As the party bearing the "heavy burden" to show why undersigned counsel should be disqualified, Lubin totally failed to discharge his obligation. *In re Evergreen Sec., Ltd.*, 363 B.R. 267, 301–02 (Bankr. M.D. Fla. 2007).

Lubin failed to address four of the five factors in the balancing test articulated in *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1237 (S.D. Fla. 2005). Lubin arguably addressed the first factor – the nature of the ethical violation – but his discussion of this factor is rambling and at times incoherent. Lubin relies largely on the *presumption* of harm to him. *E.g.*, motion at 6-9. In any event, Lubin failed to address the other four factors. Because Lubin failed to meet his burden, the motion should be summarily denied. *See In re Patrick Power Corp.*, No. 06-12423 BKCJKO, 2007 WL 2883179, at *4 (Bankr. S.D. Fla. Sept. 26, 2007) (denying motion to disqualify as legally and factually insufficient). As will be shown below, there is absolutely no basis in fact or in the law to disqualify counsel.

**D.** **The Balancing Test Factors Demonstrate that there is No Factual or Legal Basis to Disqualify Hi Bar's Counsel.**

According to the balancing test articulated in *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1237 (S.D. Fla. 2005), the relevant factors the court should consider are: the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment. As will be shown below, none of these factors weigh in favor of disqualification.

**1.** **The nature of the ethical violation**

Here, there has not been any ethical violation, so this factor compels the denial of Lubin's motion.

As set forth above, Lubin is a former client of the undersigned. Therefore, Florida Rule of Professional Conduct 4-1.9 is implicated.[5] Rule 4-1.9 provides:

A lawyer who has formerly represented a client in a matter must not afterwards:

(a) represent another person in the same or a substantially related matter in which **that person's interests are materially adverse to the interests of the former client** unless the former client gives informed consent;

**(b)** use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or

**(c)** reveal information relating to the representation except as these rules would permit or require with respect to a client.

---

[5] Lubin's references to rule 4-1.7, which governs conflicts of interest vis-à-vis current clients, is puzzling since he and Spin are no longer joint clients pursuant to the JDA. Therefore, Rule 4-1.7 does not apply. *See Schulte v. Angus*, 14 So. 3d 1279, 1280-81 (Fla. 3d DCA 2009) (affirming denial of motion to disqualify counsel based on Rule 4-1.7 where petitioner failed to show he was a current client).

"In order for an attorney to be disqualified under Rule 4–1.9, the moving party must show that '(1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently **represented the interest adverse to the former client** was the same or substantially related to the matter in which it represented the former client.'" *In re Skyway Communications Holding Corp.,* 415 B.R. 859, 865 (Bankr. M.D. Fla. 2009) (quoting *State Farm Mutual Automobile Insurance Company v. K.A.W.,* 575 So.2d 630, 633 (Fla. 1991)).

Lubin fails to coherently explain the "conflict" he claims requires disqualification. Presumably, it is the fact that the JDA was terminated, *see* Motion at 4-5, and Lubin's claim that "once the conflict arose," counsel was required "to seek a waiver of conflict and explain the conflict in detail in seeking the waiver[,]" which he claims counsel failed to do. *Id.* at 8. However, Lubin breached the Common Interest and Joint Litigation Agreement by failing to pay for the costs of litigation pursuant and by terminating the attorney-client relationship with undersigned counsel. *See supra*. However, the fact that Lubin refuses to pay the legal fees (as he obligated himself in the Common Interest and Joint Litigation Agreement) does not create any conflict.

Furthermore, Rule 4-1.9 requires that Lubin show why the parties are **adverse**. He totally failed to do so, necessitating the denial of his motion. While Lubin and Spin were former joint clients pursuant to the JDA, the undersigned's representation of the Hi Bar Defendants in this case is not adverse to Lubin or Spin. To the contrary, the Hi Bar Defendants and Lubin and Spin have taken entirely consistent positions in this case, which is that their MCA agreements are not loans and are not violative of any applicable usury laws. In fact, the Hi Bar Defendants filed a motion for summary judgment in the bankruptcy case asserting those very arguments. [D.E. 168]. Notably, both Lubin and Spin filed a joinder to that motion, reflecting their complete alignment with the Hi

Bar Defendants' positions. [D.E. 174]. Furthermore, none of these parties has asserted any cross-claims against each other. Under these circumstances, the motion to disqualify should be denied. *Suchite v. Kleppin*, 784 F. Supp. 2d 1343, 1347 (S.D. Fla. 2011) (denying motion to disqualify based on Rule 4-1.7 where counsel obtained the informed written consent of clients and finding parties were not necessarily adverse); *In re Niroomand*, No. 09-12141-BKC-AJC, 2013 WL 414446, at *3 (Bankr. S.D. Fla. Jan. 31, 2013) (Cristol, J.) (denying motion to disqualify based on Rule 4-1.7 and finding the parties' positions were "clearly aligned and not adverse.").

Moreover, even if these parties took positions adverse to each other (they have not), Rule 4-1.9 does not require disqualification "if the former client gives informed consent," *which occurred here*. The Authority to Represent provides:

> **In the event that joint representation is no longer appropriate in the Firm's determination, including because of any adversity, dispute, conflict, or differing interests among the Clients, <u>you agree that the Firm may in its sole discretion withdraw from representing any of the Clients and may in its sole discretion continue to represent the other Clients in the Engagement. In such scenario, each Client agrees not to move to disqualify the Firm from continuing to represent the other Clients in any action related to the Engagement, nor will the client authorize any counsel they retain to move for such disqualification.</u>**
>
> …
>
> **Your signature below confirms** that you have been given the option to consult with independent counsel concerning the conflict and joint representation issues discussed above and have had adequate time to do so, and further confirms **that you waive any actual and/or potential conflicts of interest raised by the Firm's joint representation in this matter.**

*See* Ex. B at ¶ 4 (emphasis supplied).

Lubin conveniently ignores the fact that he and Spin each signed a conflict waiver before the representation began. *See* Ex. B at ¶ 4. He also ignores the fact that he agreed not to seek disqualification. Thus, the conflict waiver demonstrates there is simply no merit to his argument

that he did not give informed consent to counsel's continued representation of the Hi Bar Defendants. Disqualification based on Rule 4-1.9 should be denied.

Lubin's inclusion of authority applicable to current clients (thus implicating Rule 4-1.7) is nonsensical, *see* Motion at 6-8, since Lubin is a former client based on his refusal to pay the Hi Bar Defendants' attorneys' fees (as it was contractually obligated) and terminate the attorney-client relationship with undersigned counsel. Even if, *arguendo*, Rule 4-1.7 applied, a case Lubin cites is instructive. In *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *1–2 (S.D. Fla. May 6, 2008), the law firm represented a defendant in the lawsuit and also represented the plaintiff in unrelated litigation. At the outset, the court explained: "The two basic purposes of Rule 4-1.7 are (1) to protect confidences that a client may have shared with his attorney and (2) to safeguard loyalty as a feature of the attorney-client relationship." *Id.* at *1. In denying the motion to disqualify, the court highlighted the following factors: the law firm only represented the plaintiff because it was a surety to one of the law firm's subcontractor clients; the law firm submitted affidavits averring the plaintiff never shared any confidences with the law firm in connection with the firm's representation of plaintiff; and the plaintiff had other counsel protecting its interests in the lawsuit. *Id.* at *2. Here, client confidences are protected by Paragraph Eight of the JDA, which governs the disclosure of "Common Interest Materials." *See* Exhibit A at ¶ 8. Specifically, the parties agreed "that they will not disclose Common Interest Materials received from each other to anyone except, as applicable, their respective attorneys, representatives, employees, or agents involved in the Litigation Claims, without first obtaining the express consent of one or more of the parties who produced such

Common Interest Materials." *Id*. at ¶ 8(a).[6] And, even though Lubin breached the JDA, the parties must still keep the Common Interest materials confidential. *See* Ex. A at ¶ 8(i) ("Withdrawal from this Agreement shall not terminate Parties' mutual obligation to hold confidential all Common Interest Materials previously exchanged among the same."). And, as in *Great Am. Ins.*, undersigned counsel was never counsel of record for Lubin or Spin in this or the state court action, and Lubin and Spin have always had their own counsel protecting their interests.[7]

## 2. The prejudice to the parties

The Hi Bar Defendants have been represented by undersigned counsel in this action as well as the bankruptcy proceeding for the past eighteen months, since August 1, 2023. The trial in this action is anticipated to take place in September 2025. The pretrial conference in the bankruptcy proceeding is scheduled for June 11, 2025. [D.E. 203 at 2]. The Hi Bar Defendants would be severely prejudiced if they had to obtain new counsel in two lawsuits after a year and a half of representation. *See, e.g., Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008).

On the other hand, Lubin has not shown any prejudice he would suffer if undersigned counsel continued to represent the Hi Bar Defendants.

## 3. The effectiveness of counsel in light of the violations

This factor does not apply because undersigned counsel no longer represents Lubin. In any event, Lubin has not articulated any argument on this point.

---

[6] It is important to note that Lubin has stated several times in this Court that it is his intention to waive his attorney-client privilege. Moreover, Lubin continuously copies all parties and their counsel on emails his own lawyers. Therefore, Lubin's position that the undersigned has "confidential information" that needs protection is baffling.

[7] During this lawsuit, Lubin and/or Spin have been represented by Jacob Nemon, Brian Dervishi, Oliver Griffin, Bernard Egozi, Hilda Piloto, and Marko Cerenko.

### 4. **The public's perception of the profession**

This factor also weighs in favor of the undersigned. Here, counsel complied with the Florida Rules of Professional Conduct and obtained a conflict waiver in advance. Therefore, the public's perception of the legal profession will not be negatively affected by the denial of Lubin's motion.

### 5. **Whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment.**

Lubin's conduct plainly appears designed to harass counsel and the Hi Bar Defendants. For nearly a full year, Lubin has sent hundreds of emails and text messages to counsel threatening to take action against him and committing defamation *per se* by calling him a "criminal" – which is absolutely false and defamatory. Unsurprisingly, none of Lubin's attorneys ever filed a motion to disqualify because the engagement letter provides that Lubin would not file such a motion and, moreover, no legal basis exists. *See* Ex. B at ¶ 4. Thus, the motion Lubin has now filed *pro se* appears to be the latest salvo in a year-long attack on counsel.

Finally, Lubin waited nearly twelve months to file his motion to disqualify, which makes it untimely. Courts have found that a delay of nine months between learning of the basis to disqualify and the filing of the motion is unreasonable and constitutes a waiver. *Info. Sys. Associates, Inc. v. Phuture World, Inc.*, 106 So. 3d 982, 985 (Fla. 4th DCA 2013); *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008). *See also Transmark, U.S.A., Inc. v. State, Dept. of Ins.*, 631 So. 2d 1112, 1116 (Fla. 1st DCA 1994) (ten month delay in filing motion constituted waiver). During the past year, the Hi Bar Defendants have engaged in substantial discovery and moved for summary judgment in the bankruptcy proceeding. [D.E. 168]. The Hi Bar Defendants have substantially prepared the

case for trial and are in the process of finalizing all briefing related to the various summary judgment motions. Lubin's untimely motion to disqualify would deprive the Hi Bar Defendants of counsel of their choice after completing substantial preparation of the case. It is "an inescapable fact that granting this Motion would have the exact effect of which the *Transmark* court warned." *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008); *Transmark*, 631 So. 2d at 1116 ("The rationale behind this rule is to prevent a litigant from using the motion as a tool to deprive his opponent of counsel of his choice after completing substantial preparation of the case."). This factor actively militates in favor of denying the motion to disqualify.

The undersigned takes his reputation and professional responsibility to his clients and this Court seriously. Leto Law Firm has complied with all of the applicable rules and no basis exists for disqualification.

**E. The Court Should Require Lubin and the Attorney Who Ghostwrote Lubin's Motion to Comply with Rule 4-1.2 and Rule 11 by Disclosing Their Participation.**

It is well-settled that where an attorney represents a client, that attorney must file a notice of appearance and must sign every document filed on behalf of the client. Fla. R. Gen Prac. & Jud. Adm. 2.515(a), (e); Fed. R. Civ. P. 11(a). The Rules Regulating The Florida Bar require that an attorney who is ghostwriting any document filed with a court ensure the document states: "Prepared with the assistance of counsel". Specifically, Rule 4-1.2 states:

> If the lawyer assists a pro se litigant by drafting any document to be submitted to a court, the lawyer is not obligated to sign the document. However, the lawyer must indicate "Prepared with the assistance of counsel" on the document to avoid misleading the court, which otherwise might be under the impression that the person, who appears to be proceeding pro se, has received no assistance from a lawyer.

*See also In re Hood*, 727 F.3d 1360, 1364 (11th Cir. 2013) (same).

Lubin, a non-lawyer, is ostensibly proceeding *pro se*. However, he has previously testified he suffers from dyslexia. Therefore, the six-page memorandum of law included in his motion suggests that Lubin has employed another attorney to ghostwrite the motion without disclosing his/her role, in violating of Rule Regulating The Florida Bar 4-1.2 and Fed. R. Civ. P. 11. Specifically, the motion does not state that it was "prepared with the assistance of counsel". It would be improper for Lubin to obtain the indulgence of the Court as a *pro se* litigant while actually having his motions drafted – but not signed – by an attorney. Fla. R. Gen Prac. & Jud. Adm. 2.515(a), (e); *Duran v. Carris*, 238 F.3d 1268, 1273 (10th Cir. 2001) ("We hold today, however, that any ghostwriting of an otherwise pro se brief must be acknowledged by the signature of the attorney involved."); *Hammett v. Sec'y, Dep't of Homeland Sec.*, No. 609CV397ORL31KRS, 2011 WL 13175525, at *1 n.1 (M.D. Fla. Apr. 28, 2011), *aff'd,* 488 Fed. Appx. 405 (11th Cir. 2012) ("An attorney who ghost-writes pleadings for a purportedly *pro se* litigant engages in unethical behavior and violates Fed. R. Civ. P. 11."); *Deforest v. Johnny Chisholm Glob. Events, LLC*, No. 3:08CV498MCREMT, 2010 WL 1792094, at *5 n.9 (N.D. Fla. May 4, 2010), *report and recommendation adopted,* No. 3:08CV498/MCR/EMT, 2010 WL 2278356 (N.D. Fla. June 4, 2010) ("Any counsel hired by Chisholm in connection with proceedings before the court, whether to represent him on a 'piecemeal' basis or otherwise, should conduct him or herself appropriately, *i.e.,* by entering an appearance."). This arrangement would allow this unnamed attorney to "guide the course of the litigation with an unseen hand." *Duran v. Carris*, 238 F.3d 1268, 1271–72 (10th Cir. 2001) ("This court is concerned with attorneys who 'author[ ] pleadings and necessarily guide[ ] the course of the litigation with an unseen hand.'"). It would also shield this unnamed attorney "from responsibility and accountability for his actions and counsel." *Id. See also Ellis v. State of Me.*, 448 F.2d 1325, 1328 (1st Cir. 1971).

Lubin should be required to comply with the Florida Rules of Civil Procedure and the attorney ghostwriting his motions should comply with the Florida Bar Rules by either filing a notice of appearance and signing the motions s/he is drafting on Lubin's behalf. At a minimum, Lubin should be ordered to disclose that his legal submissions have been "prepared with the assistance of counsel." Fla. Bar Rule 4-1.2.

## CONCLUSION

Defendant knew or should have known that the applicable law and facts referenced above did not support his Motion to Disqualify. For these reasons, Hi Bar respectfully requests that this Court enter an order awarding Hi Bar's reasonable attorneys' fee and costs, including pre-judgment interest, arising from their opposition to Defendant's Motion to Disqualify.

This Motion will be served but not filed for 21 days to provide Defendant with the opportunity to withdraw his Motion to Disqualify.

Respectfully submitted,

LETO LAW FIRM
201 S. Biscayne Blvd.
Suite 2700
Miami, Florida 33131
Tel.   305-341-3155
Fax:   305-397-1168

/s/ Matthew P. Leto
MATTHEW P. LETO
Florida Bar No.: 014504
mleto@letolawfirm.com
kzelaya@letolawfirm.com
pleadings@letolawfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 29, 2025 a true and correct copy of the foregoing was served by filing on the e-Filing portal, which shall deliver a copy by email on all counsel of record and Avrumi Lubin at josh@spincapital.com.

<div align="center" style="margin-left:auto">

/s/ Matthew P. Leto
MATTHEW P. LETO

</div>

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

EXHIBIT "H"

Letter from Mr. Leto to Mr. Egozi dated April 3, 2024



201 South Biscayne Blvd.
Suite 2700
Miami, Florida 33131

305.341.3155 tel
305.397.1168 fax
www.letolawfirm.com

April 3, 2024

<u>**Via Email**</u>
Bernie Egozi
Egozi & Bennett, P.A.
2999 NE 191st Street
Aventura View, Suite 407
Aventura, Florida 3318

<div align="center">

Re:    Common Interest and Joint Litigation Agreement
Hi Bar/Spin Capital
</div>

Dear Mr. Egozi:

As you are aware, the undersigned represents Hi Bar Capital, LLC, Yisroel Herbst, and Mordi Herbst. I am writing to you in your capacity as counsel for Josh Lubin and Spin Capital, LLC.

On January 28, 2022, Spin Capital and Hi Bar Capital entered into a Common Interest and Joint Litigation Agreement ("the JDA"). Pursuant to the JDA, Spin Capital was obligated to pay for all litigation costs associated with various legal proceedings. In exchange, Spin Capital retained the right to prosecute and settle certain claims (subject to Hi Bar's consent) and was also entitled to a certain waterfall payout in the event any funds were recovered. Later, Mr. Lubin personally (along with Spin) incorporated the terms of the JDA into a fee agreement with my law firm for additional cases, including the FVP Action and an Adversary Action filed in the Excell Bankruptcy case. Under the Fee Agreement with my law firm and the JDA, Mr. Lubin and Spin were obligated to pay all legal fees and costs incurred on behalf of Hi Bar and the Herbst's that were associated with the cases identified in the JDA and in the Fee Agreement.

Notwithstanding those written agreements to pay fees and costs, on several occasions during the week of March 18, 2024, Mr. Lubin expressly severed the attorney-client relationship with my firm and stated that he would no longer pay the legal fees and costs incurred by Hi Bar or the Herbst's in any action going forward. In addition, while he committed to paying the outstanding invoices incurred to date, Mr. Lubin has failed to tender payment. Finally, and for reasons unknown and without any factual basis, Mr. Lubin has taken litigation positions that are adversarial to Hi Bar.

Those actions, singularly and collectively, constitute a breach of the JDA. Based upon Mr. Lubin and Spin's breach of the JDA and Fee Agreement, Hi Bar is no longer obligated to perform under any of the provisions set forth therein, including but not limited to the obligation

<div align="center">

**EXHIBIT**

**D**
</div>

that allows Spin and/or Mr. Lubin the right engage in settlement discussions and case strategy or Spin's right to receive payment under Section 3 of the JDA. To be clear, given Mr. Lubin and Spin's breach, in the event Hi Bar resolves any of the pending matters, Spin is not entitled to payment under the Priority of Distribution Section and all funds will be paid to Hi Bar. *See e.g. Markham Gardens L.P. v. 511 9th LLC*, 38 Misc. 3d 325, 331, 954 N.Y.S.2d 811, 815 (Sup. Ct. 2012)("When one party commits a material breach of a contract, the other party to the contract is relieved, or excused, from further performance under the contract."); *JP Pizza Eastport LLC v. Luigi's Main St. Pizza Inc.*, 75 Misc. 3d 427, 433, 166 N.Y.S.3d 485, 489–90 (N.Y. Sup. Ct. 2022)("A party will not be able to prevail on a breach-of-contract claim unless it proves, by a preponderance of the evidence, that it performed its own obligations under the contract. Thus, a party is relieved of its duty to perform under a contract when the other party has committed a material breach.")

It is unfortunate that Mr. Lubin has taken these recent actions. Nevertheless, that is the situation he has unilaterally created. Please instruct Mr. Lubin to govern himself accordingly.

Sincerely,

MATTHEW P. LETO

*Matthew P. Leto*

LETO LAW FIRM

cc:  Yisroel Herbst
Mordi Herbst

FILED-USBC, FLS-WPB
'25 MAR 11 AM10:14

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

EXCELL AUTO GROUP, INC.

    Debtor.
-------------------------------------------------- /
NICOLE TESTA MEHDIPOUR, as Chapter 7 Trustee for
Excell Auto Group, Inc.

    Plaintiff.

    -v-

HI BAR CAPITAL, LLC, SPIN CAPITAL LLC,
YISROEL HERBST, MORDECHAI DOV BER
HERBST a/k/a MORDI HERBST, AVRUMI LUBIN
a/k/a JOSH LUBIN, FRANKLIN CAPITAL FUNDING,
LLC and FRANKLIN CAPITAL GROUP, LLC d/b/a
WING LAKE CAPITAL,

    Defendants.
-------------------------------------------------- /

Case No.: 22-12790-EPK
Chapter 7

Adv. Pro. No. 23-01132-EPK

### AVRUMI LUBIN'S NOTICE OF WITHDRAWAL OF MOTION

Avrumi Lubin, *pro se*, hereby withdraws his Motion to Disqualify [D.E. 231] without

prejudice and respectfully requests the hearing on this motion scheduled for March 12, 2025 be

cancelled.

Date: March 10, 2025

    Avrumi Lubin, *pro se*

Scanned with CamScanner

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

EXHIBIT
E