UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

|  | X |  |  |
|---|---|---|---|
|  | X |  |  |
| In Re: | X |  |  |
|  | X | Case No.: | 22-15627-EPK |
| AUTO WHOLESALE OF BOCA, LLC, | X | Chapter 7 |  |
|  | X |  |  |
| Debtor. | X |  |  |
|  | X |  |  |

### DECLARATION OF AVRUMI LUBIN IN SUPPORT OF MOTION TO DISQUALIFY THE LETO LAW FIRM AND MATTHEW LETO FROM REPRESENTING HI BAR CAPITAL <u>PURSUANT TO RULE 4-1.9 OF THE RULES REGULATING THE FLORIDA BAR</u>

I, Avrumi Lubin a/k/a Josh Lubin, pursuant to 28 U.S.C. § 1746, submit this Declaration in Support of Motion to Disqualify The Leto Law Firm and Matthew Leto from Representing Hi Bar Capital Pursuant to Rule 4-1.9 of the Rules Regulating the Florida Bar and state:

<u>Personal Background</u>

1.      I am an individual over the age of 18 and competent to testify to the matters set forth herein.

2.      I am the sole owner and president of Spin Capital, LLC (hereinafter, "Spin").

3.      I make this declaration, unless stated to be based upon information and belief, based upon personal knowledge and the business records of Spin.

4.      Spin and I are in the business of making merchant cash advances.

<u>The Common Interest Agreement and Ongoing Litigation</u>

5.      On September 20, 2022 Spin Capital, LLC (hereinafter, "Spin") and Hi Bar Capital, LLC (hereinafter, "Hi Bar") entered into a Common Interest and Joint Litigation Agreement (hereinafter, the "Common Interest Agreement") in which Hi Bar assigned all of its

1

claims to Spin effective as of January 28, 2022 and put the onus of defending certain counterclaims on Spin. A true and correct copy of the Common Interest Agreement is attached hereto as Exhibit "A"

6.     The Common Interest Agreement specifically indicates that Hi Bar had initiated suit in the Supreme Court of New York, Kings County, against Excell Auto Group, Inc. (hereinafter, "EAG"), Karma of Palm Beach, Inc. (hereinafter, "Karma PB") and others in an action captioned as Hi Bar Capital, LLC v. Excell Auto Group, Inc. *et al* and assigned Index Number 502846/2022 (hereinafter, the "Kings County Case"). A $3,136,071.44 judgment was entered against Karma PB in the Kings County Case and all counterclaims against Hi Bar were dismissed. A true and correct copy of the Judgment against Karma PB and dismissing the counter claims is attached hereto as Exhibit "B".

7.     The Common Interest Agreement also specifies that Hi Bar initiated suit on May 2, 2022, against Karma of Palm Beach, Inc., Automotive Service Systems, Inc., KZ Consultants, Inc., Miss Kris, LLC, Excell Auto Leasing, Inc., Excell Auto Wholesale, Inc., Dealer Souq USA, LLC, EAG Wholesale, LLC, Karma of Broward, Inc., Lavish Hero Fund, Inc., Apple 3 Investments, Inc., Excell Auto Sport and Service, Inc., FVP Opportunity Fund III, LP, FVP Investments, LLC, FVP Servicing, LLC, Franklin Capital Group, LLC, Franklin Capital Management, LLC, Auto Wholesale of Boca, LLC, MMS Ultimate Services, Inc., and Moshe Farache in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida and assigned case number CACE-22-006401 which was consolidated with FVP v. Karma (defined below) on June 27, 2022 (hereinafter, "Hi Bar v. Karma" and together with FVP v. Karma, the "Broward County Case"). On August 7, 2023 Matthew Leto (hereinafter, "Mr. Leto") and the Leto Law Firm (hereinafter, the "Firm") were substituted in as new counsel for Hi Bar in

2

the Hi Bar v. Karma case. A copy of the Notice of Substitution of Counsel in the Broward County Case is attached hereto as Exhibit "C".

8.      The Common Interest Agreement clearly vests all litigation decision making powers in Spin. ("Spin Capital will have full authority to prosecute and settle the Litigation Claims" ¶ 2(b); "Spin Capital will have full authority to defend the Counterclaims" ¶ 2(c))

9.      Pursuant to paragraph 2(f)(ii) of the Common Interest Agreement, Hi Bar has the ability to cancel the agreement if "in its absolute discretion [Hi Bar] is not satisfied with Spin Capital's management of defense of Counterclaims against Hi Bar". No other provisions of the Common Interest Agreement permit termination of the agreement by Hi Bar.

10.     On April 8, 2022 Excell Auto Group, Inc. (hereinafter "EAG") filed a voluntary petition under Chapter 7 of the Bankruptcy Code. This Bankruptcy Case has been assigned Case Number 22-12790-EPK (hereinafter, the "EAG Bankruptcy Case") and remains pending in the Southern District of Florida. On April 23, 2024 the Firm entered a Notice of Appearance in the EAG Bankruptcy Case on behalf of Hi Bar (Case No. 22-12790-EPK, CM/ECF No. 758).

11.     On April 10, 2022, FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (hereinafter, collectively, "FVP") filed a Complaint in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County Florida against Karma of Broward, Inc, Karma of Palm Beach, Inc., Scott Zankl, Kristen Zankl, Moshe Farache, Auto Wholesale of Boca, LLC, MMS Ultimate Services, Inc., Excell Auto Sport and Service, Inc., and Excell Auto Finance, LLC assigned case number CACE-22-005125 (hereinafter, "FVP v. Karma"). Leto entered the FVP v. Karma case by the filing of a Motion to Intervene on June 23, 2022 on behalf of Hi Bar, which motion was granted that same day. A true and correct copy of the Motion to Intervene is attached hereto as Exhibit "D". The Complaint in the FVP v. Karma case was

3

amended to add Mr. Lubin and Spin Capital as defendants on July 26, 2023. The basics of the FVP suit is an assertion of FVP's right to certain collateral Spin believes it has a superior right to.

12.     On June 30, 2023, Nicole Testa Mehdipour, the Trustee in the EAG Bankruptcy Case, (hereinafter, the "Trustee") initiated an Adversary Proceeding in the EAG Bankruptcy Case against the Spin Parties, the Hi Bar Parties and others, seeking, among other things, to invalidate certain agreements between Spin and the Debtor and between Spin and Hi Bar. This Adversary Proceeding has been assigned Adversary Proceeding Number 23-01132-EBK (hereinafter, the "Excell Adversary"). The Firm entered a Notice of Appearance in the Excell Adversary on October 3, 2023 (Adv. Pro. No. 23-01132-EPK, CM/ECF No. 22).

13.     All of the litigation described above and other litigation pertains to ongoing disputes regarding the priority rights of the various parties to certain collateral of the various debtors, including Auto Wholesale of Boca, LLC, the Debtor in this case (hereinafter, the "Debtor" or "AWB").

**Prior Representation**

14.     On August 1, 2023, while embroiled in significant litigation in multiple jurisdictions I retained Matthew Leto and the Leto Law Firm to represent my self and Spin and to represent Hi Bar, Mordi Herbst and Yisroel Herbst (the two principals of Hi Bar) to defend my rights pursuant to the Common Interest Agreement and Hi Bar's rights against the various other litigants which inured to Spin's benefit pursuant to the Common Interest Agreement.

15.     In retaining Mr. Leto and the Firm, Mr. Leto drafted an agreement he titled "Authority to Represent" (hereinafter, the "Retainer Agreement"). A true and correct copy of the Retainer Agreement is attached hereto as Exhibit "E".

16.     The Retainer Agreement defines each of myself, Spin, Hi Bar, Mordi Herbst and Yisroel Herbst as "Client".

17.     The Retainer Agreement specifies that the scope of the agreement and representation is limited to the EAG Adversary and the Broward Case.

18.     The Retainer Agreement specifically incorporates by reference the Common Interest Agreement.

19.     Mr. Leto and the Firm had many discussions with me regarding the Common Interest Agreement and associated litigation and I shared with Mr. Leto certain documents pertaining to these same issues. Mr. Leto took direction from me as his client and I shared knowledge and information pertaining to the Common Interest Agreement, the underlying transactions, Spin's business operation and Hi Bar's business operations. I have attached a sampling of billing statements from the Firm that indicate these discussions as Exhibit "F". (*See i.e.* billing entries dated January 2. 2024; January 18, 2024; February 15, 2024; and February 20, 2024).

20.     In short, I believed Mr. Leto and the Firm to be my attorneys. I was listed as the "Client" on the Retainer Agreement; I had sole authority (by way of my membership interest in Spin) to direct the litigation Mr. Leto and the Firm were hired to assist with; and I was the point person among the "Clients" providing Mr. Leto and the Firm information related to the litigation.

21.     It is unclear to me if and when Mr. Leto and the Firm ceased representing me and Spin, but what is clear is that Mr. Leto is now taking action directly adverse to my interest.

**Conflict of Interest**

5

22. Mr. Leto and the Firm have already demonstrated in this case and others that he will espouse positions directly antithetical to my interests and the interests of Spin despite having represented me and Spin previously in related litigation.

23. Mr. Leto and the Firm have filed a Motion, on behalf of Mordi Herbst, Yisroeal Hebst and Hi Bar, seeking sanctions against me in the Broward Case (hereinafter, the "Sanctions Motion"). A true and correct copy of the Sanctions Motion is attached hereto as Exhibit "G". This is a clear indication that Mr. Leto is taking actions directly adversarial to me and Spin.

24. Mr. Leto and the Firm have contested the clear meaning of and the interpretation Spin has of the Common Interest Agreement's "Priority of Distributions". Mr. Leto has indicated that Hi Bar will take the position that "Hi Bar is no longer obligated to perform" under the Common Interest Agreement, eliminating "Spin's right to receive payment" thereunder. A true and correct copy of the letter espousing these positions is attached hereto as Exhibit "H". This is an absurd position to take that is clearly contrary to the plan language of the Common Interest Agreement, is clearly directly adversarial to my position and that of Spin, and is clearly closely related to the matter in which Mr. Leto and the Firm represented me and Spin.

25. Mr. Leto and the Firm have taken the position, in this case and others, that Spin violated the Common Interest Agreement in a manner that would permit Hi Bar to terminate the Common Interest Agreement. The Common Interest Agreement makes clear, in paragraph 2(f) that the basis for hi Bar's termination of the Common Interest Agreement is solely dissatisfaction with Spin or my defense of certain specified counter-claims against Hi Bar. All such claims have been dismissed. There has never been any indication that Hi Bar is dissatisfied with this result, and such dissatisfaction would be nonsensical. Nevertheless, Mr. Leto and the Firm have taken the position that the Common Interest Agreement has been terminated. The only logical reason to

take such position is if Mr. Leto and the Firm are representing Hi Bar and the Hi Bar Parties to the direct detriment of Spin and myself.

26. Mr. Leto and the Firm have also failed to respond to a Motion for Summary Judgment in the Broward Case putting Spin's and my interest at risk.

27. Upon information and belief, Mr. Leto and the Firm have shared confidential information they gained through representing me with other litigants in other matters.

28. Your Honor has recently issued an Order to Show Cause directing the parties to reach agreement regarding the disposition of certain funds held in the courts repository or risk such funds reverting to the United States Treasury (CM/ECF No. 911) (hereinafter, the "Order to Show Cause").

29. The issues presented in the Order to Show Cause hit at the heart of the dispute between the Hi Bar Parties and the Spin Parties.

30. I fear that if Mr. Leto and the Leto Firm are permitted to continue to represent the Hi Bar Parties in this case, certain confidences I have shared with Mr. Leto and the Firm could be utilized to my detriment.

31. This situation presents a clear conflict of interest under Rule 4-1.9 of the Rules Regulating the Florida Bar, which prohibits a lawyer from representing a client in a matter adverse to a former client in the same or substantially related matter without informed consent. The prior and current matter are substantially related and no informed consent has been given by me.[1]

---

[1] I recognize that the Retainer Agreement contained what purported to be a conflict waiver, however, (1) at the time of execution of that agreement neither I, nor Mr. Leto were aware of the direct conflicts that have arisen and as such any waiver could not have been made with "informed consent"; and (2) the retainer agreement pertained only to matters related to the EAG Adversary and Broward Case, and any consent to the conflicts would not pertain to this case.

**Prejudice**

32.    Permitting Mr. Leto and the Firm's continued representation of Hi Bar in this proceeding would result in substantial unfairness and prejudice to me, as it places at risk the misuse – whether intentional or inadvertent – of confidential information obtained during the prior representation.

**Good Faith**

33.    This Declaration and the accompanying motion are brought in good faith and not for purposes of delay. The disqualifications of Mr. Leto and the Firm are necessary to preserve the integrity of the proceedings and uphold the ethical standards of the profession.

I declare under penalty of perjury under the laws of the United States of America that the forgoing statements by me are true and correct to the best of my recollection and after due investigation of the matters attested to.

Executed by me on this  1st   day of June, 2025.

_____

AVRUMI LUBIN a/k/a Josh Lubin