**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**In re:**

                                                        **Case No.: 22-15627-EPK**

      **AUTO WHOLESALE OF BOCA, LLC,**          **Chapter 7**

          **Debtor.**

    ---------------------------------------------------------------- /

**HI-BAR CAPITAL, LLC, MATTHEW P. LETO, ESQ. AND LETO LAW FIRM'S**
**RESPONSE TO AVRUMI LUBIN'S MOTION TO DISQUALIFY THE LETO LAW**
**FIRM AND MATTHEW LETO FROM REPRESENTING HI BAR CAPITAL**
**PURSUANT TO RULE 4-1.9 OF THE RULES REGULATING THE FLORIDA BAR**

Hi-Bar Capital, LLC ("Hi-Bar"), by and through undersigned counsel, and Matthew P.

Leto and Leto Law Firm, serve the following response in opposition to Avrumi Lubin's Motion to

Disqualify the Leto Law Firm and Matthew Leto from Representing Hi Bar Capital Pursuant to

Rule 4-1.9 of the Rules Regulating the Florida Bar (the "Motion") [D.E. 925], and in opposition

state as follows:

This is the **fifth** motion filed by Lubin seeking to disqualify undersigned counsel filed by Lubin since February 2025 across three separate actions. This motion, like the others, is frivolous. Despite unambiguous language in the Representation Agreement that (i) Lubin and his company were joint clients of the undersigned firm in furtherance a joint defense agreement with Hi Bar Capital, (ii) the undersigned counsel were not counsel of record for Lubin and Spin, (iii) included an express *conflict waiver*, Lubin has filed a declaration stating his "belief" that the undersigned counsel still represents him and Spin.  Of course, this is contrary to the actual facts.  Indeed, on March 29, 2024, after Lubin refused to pay any invoices as required under the Joint Defense Agreement, Lubin instructed the undersigned as follows: "Your [sic] not allowed to contact me directly." As will be shown below, the assertions in Lubin's "Motion" [D.E. 925] and "Declaration" [D.E. 925-2] demonstrate that Lubin is improperly attempting to create his own facts, which contradict the joint defense agreement and authority to represent. Moreover, Lubin clearly waived any conflict, along with the right to seek disqualification. Lubin's litigious history and admission that his prior filing was frivolous is evidence that the instant motion is being used an improper tactical device or a means of harassment. Finally, Lubin did not even address the majority of the factors of the balancing test set forth in *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232 (S.D. Fla. 2005), thereby failing to meet his burden to establish any basis for disqualification. The motion to disqualify should be summarily denied.

## RELEVANT FACTS

1.      On January 28, 2022, Spin Capital, LLC ("Spin") and Hi-Bar Capital, LLC ("Hi Bar") entered into a Common Interest and Joint Litigation Agreement (the "JDA"). The JDA required, among other things, Spin to pay Hi-Bar's legal fees. *See* [D.E. 925-1 at 2-16]. Lubin is not a party to the JDA. *Id*. at 2. Lubin signed only in his capacity as President of Spin. *Id*. at 14.

2.      In the JDA, Hi Bar assigned certain claims to Spin in consideration for Spin agreeing to pay to prosecute the claims and defend the counterclaims. *Id*. at 4-5. Specifically, the parties agreed that: "Until termination of this Agreement (as provided in Section 2(f) hereof), Spin Capital shall pay all past, present, and future Professional Fee Claims (as defined below) as they become due." *Id*. at 4.

3.      In August 2023, Leto Law Firm was retained to represent Hi Bar and its principals (Mordechai Herbst and Yisroel Herbst) in several related matters.[1] On August 1, 2023, Lubin, Spin, Hi-Bar, Mordechai Herbst, and Yisroel Herbst signed the Authority to Represent, by which undersigned counsel agreed to represent them pursuant to their JDA. *See* [D.E. 925-1 at 39-45]. Since communications are privileged when there is a joint defense agreement and because Lubin agreed to pay the legal bills associated with the various lawsuits, Hi Bar, Herbst, Lubin and Spin were all identified as joint clients of the Leto Law Firm. However, the Authority to Represent was clear and unambiguous – Leto Law Firm was "not counsel of record in the case for Spin and Lubin," and would not be appearing on behalf of Spin or Lubin in any legal matter. *Id*. at 39 ¶ 1 Instead, Lubin and Spin would have (and have had) a number of attorneys protecting their interests and undertaking the responsibilities associated with the pending lawsuits.

4.      Given the potential for competing interests that sometimes occur with any joint representation scenario, Hi-Bar, the Herbsts and Lubin expressly waived any conflict of interest through a waiver that is in strict compliance with Rule 4-1.7 of the Florida Bar Rules. *See* [D.E. 925-1 at 39-41 at ¶ 4].[2]

---

[1] Undersigned are counsel of record for Hi Bar, Mordechai Herbst, and Yisroel Herbst in the instant matter, Case No. 22-12790-EPK and the related adversary proceeding, Case No. 23-01132-EPK (the "Adversary Proceeding"), and in two cases pending in Broward County Circuit Court, Case Nos. CACE-22-005125 and CACE-22-006401 (collectively, the "Broward County Action").

[2] Due to the page limit, the conflict waiver is not block quoted in this Response.

5.      As the litigation progressed, Lubin's behavior became more unpredictable and somewhat erratic. Lubin would email and text at all hours of the night making illogical claims. Lubin would also directly email the opposing lawyers and parties. By March 2024, not only was Lubin unilaterally writing emails to opposing counsel at all hours of the night, Lubin also stated that he would no longer be paying any invoices for Hi Bar and instructed the undersigned to deal directly with that entity going forward. Lubin's statements, and the mutual decision to sever any relationship between the undersigned and Lubin, were memorialized in various emails in March 2024. *See* **Exhibit A**.

6.      At that time, Lubin and Spin owed the undersigned more than $75,000.00. When the undersigned continued to demand payment given the amount owed, on March 29, 2024, Lubin finally responded that "Your [sic] not allowed to contact me directly." *See* **Exhibit B**.

7.      After being four months in arrears and after stating he would not pay undersigned counsel's invoices, and owing approximately $78,000, on April 2, 2024, undersigned counsel filed suit against Lubin and Spin in state court in Miami-Dade County. That action was assigned Case No. 2024-005793-CA-01 and was subsequently jointly dismissed with prejudice pursuant to a written settlement agreement. Obviously, by that point, there was no attorney-client relationship between Lubin, Spin and the undersigned. Due to Lubin's failure to pay legal fees, by letter dated April 3, 2024, Hi Bar also made the decision to terminate the JDA. *See* [D.E. 925-1 at 74-75].

### MEMORANDUM OF LAW

### I.      The Standard for Disqualification

"There is a 'constitutionally based right to counsel of choice' in civil as well as criminal cases, but that right is not absolute." *In re Patrick Power Corp.,* 2007 WL 2883179, at \*1 (Bankr. S.D. Fla. Sept. 26, 2007) (quoting *In re BellSouth Corporation,* 334 F.3d 941, 955 (11th Cir.

2003)). Disqualification of counsel is a harsh and drastic remedy that should be granted only in rare circumstances because it often works a substantial hardship on an innocent third party – the client. *In re Patrick Power Corp.,* 2007 WL 2883179, at *1; *Alters v. Villoldo*, 230 So. 3d 115, 117 (Fla. 3d DCA 2017); *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008). The party moving to disqualify bears a "heavy" burden of proving the grounds for disqualification. *In re Evergreen Sec., Ltd.*, 363 B.R. 267, 301–02 (Bankr. M.D. Fla. 2007). "Disqualification motions are subject to 'careful and exacting' review because of the potential for strategic abuse." *Id.*   When considering whether to disqualify counsel, courts employ a balancing test. *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1237 (S.D. Fla. 2005) (collecting cases). Courts consider a handful of factors, including the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment. *Id.* Finally, a motion to disqualify "should be made with reasonable promptness after the party seeking the disqualification learns of the conflict of interest." *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008) (collecting cases). "The rationale behind this rule is to prevent a litigant from using the motion as a tool to deprive his opponent of counsel of his choice after completing substantial preparation of the case." *Transmark, USA, Inc., v. State Dept. of Insur.,* 631 So.2d 1112, 1116 (Fla. 1st DCA 1994).

II.     **Lubin Failed to Show Why Disqualification is Required and the Balancing Test Factors Demonstrate that there is No Factual or Legal Basis to Disqualify Hi Bar's Counsel.**

As the party bearing the "heavy burden" to show why undersigned counsel should be disqualified, Lubin totally failed to discharge his obligation. *In re Evergreen Sec., Ltd.*, 363 B.R.

267, 301–02 (Bankr. M.D. Fla. 2007). According to the balancing test articulated in *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1237 (S.D. Fla. 2005), the relevant factors the court should consider are: the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment. Lubin failed to address four of the five factors. Because Lubin failed to meet his burden, the motion should be summarily denied. *See In re Patrick Power Corp.*, No. 06-12423 BKCJKO, 2007 WL 2883179, at *4 (Bankr. S.D. Fla. Sept. 26, 2007) (denying motion to disqualify as legally and factually insufficient). As will be shown below, there is absolutely no basis in fact or in the law to disqualify counsel.

1. **The nature of the ethical violation**

With regard to the first factor, there has not been any ethical violation, so this factor compels the denial of Lubin's motion. As set forth above, Lubin is a former client of the undersigned. Therefore, Florida Rule of Professional Conduct 4-1.9 is implicated.  "In order for an attorney to be disqualified under Rule 4–1.9, the moving party must show that '(1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently **represented the interest adverse to the former client** was the same or substantially related to the matter in which it represented the former client.'" *In re Skyway Communications Holding Corp.*, 415 B.R. 859, 865 (Bankr. M.D. Fla. 2009).

Lubin fails to coherently explain the "conflict" he claims requires disqualification. Instead, Lubin claims that he shared confidences with undersigned counsel, which he baldly asserts gives counsel "an informational advantage…which Leto can use to Mr. Lubin's detriment." [D.E. 925

at 5-6]. In his declaration, Lubin speculates, "[u]pon information and belief, Mr. Leto and the Firm have shared confidential information they gained through representing me with other litigants in other matters." [D.E. 925-2 at ¶ 27]. However, Lubin's rank speculation, which he couches as his own "information and belief", cannot establish that any confidences were shared. Indeed, Mr. Leto has not shared any "confidential information" he gained through representing Lubin or Spin with "other litigants in other matters." *See* Leto Decl. ¶ 7, attached as **Exhibit C.** Nor has anyone else in Leto Law Firm. *Id.* Moreover, since April 2024, Lubin has copied the undersigned on 650 direct emails to counsel and parties involved in the various lawsuits. In some of those emails, Lubin expressly stated that he waived all privileges. If anything, Lubin is the individual sharing his "confidential information" with opposing parties. *Id.* at ¶ 8.

Furthermore, Rule 4-1.9 requires that Lubin show why the parties are **adverse**. He totally failed to do so, necessitating the denial of his motion. Lubin claims the parties are now adverse because: (a) Hi Bar terminated the JDA when Spin refused to perform its obligations to fund the litigation and instructed undersigned counsel to stop contacting him, and (b) Hi Bar and undersigned have sought sanctions for filing frivolous motions to disqualify. *See* [D.E. 925 at 3]; [D.E. 925-2 at ¶ 23 & Ex. G]. Spin cannot receive the benefit of the JDA without performing its obligations, including the requirement that it fund the litigation. [D.E. 925-1 at 4 at ¶ 2(d)]. Part of the consideration for Hi Bar to assign its rights to Spin included the obligation for Spin to pay the costs associated with the litigation. Spin indisputably failed to do so, racking up invoices of approximately $78,000, for which undersigned counsel had to file suit against Lubin and Spin in Miami Circuit Court to recover payment. The JDA provided Hi Bar with the "absolute discretion" to terminate the JDA, *id.* at ¶ 2(f)(ii), which Hi Bar elected to do when Spin and Lubin breached

the JDA. [D.E. 925-1 at 74-75]. Pointing this out in the face of Lubin's five motions to disqualify does not create adversity where none otherwise exists.

In addition, while Lubin and Spin were former joint clients pursuant to the JDA, the undersigned's representation of Hi Bar as to the merits of this bankruptcy proceeding is not – and was not - adverse to Lubin or Spin. Moreover, even if these parties took positions adverse to each other, Rule 4-1.9 does not require disqualification "if the former client gives informed consent," *which occurred here*. The Authority to Represent provides:

> **In the event that joint representation is no longer appropriate in the Firm's determination, including because of any adversity, dispute, conflict, or differing interests among the Clients, <u>you agree that the Firm may in its sole discretion withdraw from representing any of the Clients and may in its sole discretion continue to represent the other Clients in the Engagement. In such scenario, each Client agrees not to move to disqualify the Firm from continuing to represent the other Clients in any action related to the Engagement, nor will the client authorize any counsel they retain to move for such disqualification</u>.**

[D.E. 925-1 at 40-41] (emphasis supplied).

In an attempt to avoid the conflict waiver, Lubin makes an affirmatively false statement in his Motion, declaring: "Mr. Leto has alleged that his representation of the Spin Parties has terminated, however, the Spin Parties have never received any formal termination of the attorney-client relationship." [D.E. 925 at 3]. Yet Lubin attached the letter terminating the JDA as Exhibit H to his Declaration. [D.E. 925-1 at 74-75]. And, as depicted in the screenshot of Lubin's WhatsApp message, Lubin instructed counsel not to contact him directly. *See supra* at 4. Finally, Lubin and Spin were sued for unpaid fees by the undersigned in April 2024. Thus, the statements in Lubin's declaration are demonstrably false.

Lubin compounds this false statement with another, representing in his declaration that he <u>did not</u> provide informed consent. *See* [D.E. 925-2 at ¶ 31]. But the objective facts demonstrate

that Lubin and Spin each signed a conflict waiver before the representation began. [D.E. 925-1 at 39-45]. Lubin and Spin also agreed not to seek disqualification. *Id*. at 40. Thus, the conflict waiver demonstrates there is simply no merit to his argument that he did not give informed consent to counsel's continued representation of Hi Bar.  As the moving party, Lubin bore a "heavy burden" to show why undersigned counsel should be disqualified. *In re Evergreen Sec., Ltd.*, 363 B.R. 267, 301–02 (Bankr. M.D. Fla. 2007). The fact that Lubin does not even address the conflict waiver demonstrates the complete absence of any merit to his motion.

## 2.   The prejudice to the parties

Hi Bar and its principals have been represented by undersigned counsel in this action, the Adversary Proceeding, and the Broward County Action for the past eighteen months, since August 1, 2023. The pretrial conference in the Adversary Proceeding is scheduled to occur on August 13, 2025. *See* Case No. 23-01132-EPK [D.E. 323]. If undersigned counsel were disqualified in the instant matter, Lubin would likely seek to apply the same result to the Adversary Proceeding – even though Lubin withdrew his previous filing in that matter during the Rule 11/Rule 9011 safe harbor period, thereby admitting it was a frivolous filing. Hi Bar and its principals would be severely prejudiced if they had to obtain new counsel in three lawsuits after nearly two full years representation. *See, e.g.*, *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008). On the other hand, Lubin has not shown any prejudice he would suffer if undersigned counsel continued to represent Hi Bar and its principals.

## 3.   The effectiveness of counsel in light of the violations

Lubin has not articulated any argument on this point, thereby failing to meet his burden. Moreover, this factor does not apply because undersigned counsel no longer represents Lubin.

4. **The public's perception of the profession**

Lubin has not articulated any argument on this point, thereby failing to meet his burden. Moreover, because counsel obtained a conflict waiver in advance, was never counsel of record for Lubin or Spin, the public's perception of the legal profession will not be negatively affected by the denial of Lubin's motion.

5. **Whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment.**

Finally, Lubin's conduct plainly appears designed to harass counsel and Hi Bar and its principals, mitigating in favor of the denial of this motion. Lubin filed similar motions seeking disqualification in the Adversary Proceeding on February 3, 2025 [D.E. 214] and February 12, 2025 [D.E. 231]); and in the Broward County Action on February 3, 2025 (Filing # 215853810) and April 9, 2025 (Filing # 220696996).[3] As Lubin admits in the instant motion, he voluntarily withdrew the motion filed in the Adversary Proceeding on February 12, 2025 during the Rule 11/Rule 9011 safe harbor period, thereby admitting it was a frivolous filing. *See* [D.E. 925-1 at 76]. There are no new facts that make the instant motion anything but frivolous.

Finally, Lubin waited to file this motion to disqualify until fifteen months passed from his receipt of the letter terminating the JDA, which makes it untimely. [D.E. 925-1 at 74-75]. Courts have found that a delay of <u>nine months</u> between learning of the basis to disqualify and the filing of the motion is unreasonable and constitutes a waiver. *Info. Sys. Associates, Inc. v. Phuture World, Inc.*, 106 So. 3d 982, 985 (Fla. 4th DCA 2013); *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008). *See also Transmark, U.S.A., Inc. v. State, Dept. of Ins.*, 631 So. 2d 1112, 1116 (Fla. 1st DCA 1994) (ten-

---

[3] This filing was styled as a "Motion for Order to Show Cause" but plainly seeks to cause counsel to be removed.

month delay in filing motion constituted waiver). Hi Bar and its principals have substantially prepared the case for the trials in these matters, with the adversary proceeding set to begin in the next few months. Lubin's untimely motion to disqualify would deprive Hi Bar and its principals of counsel of their choice after completing substantial preparation of the case. Therefore, it is "an inescapable fact that granting this Motion would have the exact effect of which the *Transmark* court warned." *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008); *Transmark*, 631 So. 2d at 1116 ("The rationale behind this rule is to prevent a litigant from using the motion as a tool to deprive his opponent of counsel of his choice after completing substantial preparation of the case."). This factor actively mitigates in favor of denying the motion to disqualify.

The undersigned takes his reputation and professional responsibility to his clients and this Court seriously. Leto Law Firm has complied with all of the applicable rules and no basis exists for disqualification.

## CONCLUSION

Based on the foregoing, Hi Bar, Matthew P. Leto, and Leto Law Firm respectfully request this Court deny the Motion. [D.E. 925].

\

Respectfully submitted,

LETO LAW FIRM
201 S. Biscayne Blvd.
Suite 2700
Miami, Florida 33131
Tel.    305-341-3155
Fax:    305-397-1168

*/s/ Matthew P. Leto*
MATTHEW P. LETO
Florida Bar No.: 014504
mleto@letolawfirm.com
kzelaya@letolawfirm.com
pleadings@letolawfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 23, 2025, the foregoing document was filed on

CM/ECF, which shall deliver a copy to counsel for Lubin as follows:

| **Attorneys for Josh Lubin** | **Local Attorney for Josh Lubin** |
|---|---|
| KASEN & KASEN, P.C. | LAW OFFICES OF DAVID W. LANGLEY |
| 115 Broadway | 8551 W. Sunrise Blvd. |
| 5th Floor | Suite 303 |
| New York, New York 10006 | Plantation, Florida 33322 |
| Telephone: (646) 397-6226 | Telephone: (954) 356-0450 |
| Facsimile: (646) 786-3611 | Facsimile: (954) 356-0451 |
| Michael J. Kasen, Esq. | David W. Langlet, Esq. |
| mkasen@kasenlaw.com | dave@flalawyer.com |

*/s/ Matthew P. Leto*
MATTHEW P. LETO