**KASEN & KASEN, P.C.**
115 Broadway
5th Floor
New York, New York 10006
Telephone: (646) 397-6226
Facsimile: (646) 786-3611
Michael J. Kasen, Esq.
mkasen@kasenlaw.com
*Attorneys for Josh Lubin*
*Admitted Pro Hac Vice*

**LAW OFFICES OF DAVID W. LANGLEY**
8551 W. Sunrise Blvd.
Suite 303
Plantation, Florida 33322
Telephone: (954) 356-0450
Facsimile: (954) 356-0451
David W. Langlet, Esq.
dave@flalawyer.com
*Local Attorney for Josh Lubin*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

|  | | |
|---|---|---|
| | X | |
| | X | |
| **In Re:** | X | |
| | X | **Case No.:**  **22-15627-EPK** |
| **AUTO WHOLESALE OF BOCA, LLC,** | X | **Chapter 7** |
| | X | |
| **Debtor.** | X | |
| | X | |

**EXPEDITED MOTION TO SUBSTITUTE AVRUMI LUBIN FOR HI BAR CAPITAL, LLC AS A PARTY IN INTEREST PURSUANT TO FEDERAL RULES OF <u>BANKRUPTCY PROCEDURE 7025 and 9014</u>**

**\*\* Expedited Hearing Requested \*\***

**The Court has scheduled a hearing on the Expedited Joint Motion (I) to Enforce Sale Order and (II) to Order Distribution of Auction Proceeds to Counsel for the FVP Parties for July 30, 2025 at 11:00 a.m.** (CM/ECF No. 932)

**The basis for this Motion will also serve as the basis for an Objection to the Expedited Joint Motion**

**COMES NOW**, Avrumi Lubin, a/k/a Josh Lubin (hereinafter, "Lubin"), by and through his undersigned counsel, and files this Motion to Substitute Avrumi Lubin for Hi Bar Capital, LLC as a Party in Interest, Pursuant to Federal Rules of Bankruptcy Procedure, and in support thereof states:

### Introduction and Factual Background

1.      Hi Bar Capital, LLC (hereinafter, "Hi Bar") has and continues to take actions that interfere with the rights and claims that, pursuant to governing agreements, now belong to Lubin.

2.      On September 20, 2022 Spin Capital, LLC (hereinafter, "Spin") and Hi Bar entered into a Common Interest and Joint Litigation Agreement (hereinafter, the "Common Interest Agreement") in which Hi Bar assigned all of its claims to Spin effective as of January 28, 2022 and put the onus of defending certain counterclaims on Spin. A true and correct copy of the Common Interest Agreement is attached hereto as Exhibit "A".

3.      The Chapter 7 Trustee previously sold certain vehicles at auction pursuant to an Order of this Court. The net proceeds (as defined in CM/ECF Nos. 694 and 738) were ordered to be held in the Court's registry (CM/ECF No. 749). Subsequently, the Court issued an Order to Show Cause (CM/ECF No. 911) directing the parties to reach agreement of the distribution of such funds or appear at a hearing in which the Court would hear argument as to why the funds should not "escheat to the Treasury of the United States" (hereinafter, the "Order to Show Cause"). The Order to Show Cause limited the parties permitted to "reach agreement" to "parties to the adversary proceeding captioned *FVP Opportunity Fund III, LP, et al. v. Auto Wholesale of Boca, LLC, et. al.*, Adv. Proc. No. 22-01218-EPK (now dismissed) and parties that appeared in the debtor's bankruptcy case and asserted an interest in the vehicles" (CM/ECF No. 911).

4.      Hi Bar was a named plaintiff, counter-defendant and intervenor defendant in the adversary proceeding captioned *FVP Opportunity Fund III, LP, et al. v. Auto Wholesale of Boca, LLC, et al.*, Adv. Proc. No. 22-01218-EPK and has otherwise asserted an interest in the vehicles, however such rights were specifically transferred to Spin by Hi Bar pursuant to the Common Interest Agreement. (*See* ¶¶ D and 2 of the Common Interest Agreement).

5.      The claims owned by Spin pursuant to the Common Interest Agreement have subsequently been assigned to Lubin. A copy of the Assignment of these claims to Lubin is attached hereto as Exhibit "B".

6.      Each and every attorney that has appeared in this bankruptcy proceeding on behalf of Hi Bar, was initially retained by Lubin, paid by Lubin and, at least as far as Lubin was aware, initially took all direction from Lubin as was contemplated by the Common Interest Agreement. When Matthew Leto (hereinafter, "Leto"), current counsel to High Bar, began acting contrary to Lubin's direction is unclear to Lubin, but it is clear that is the current state of affairs as High Bar is now improperly asserting control over Lubin's claims and rights.

7.      Among the actions Hi Bar has taken to improperly assert control over Lubin's claims and rights is Hi Bar's refusal to permit Lubin to participate in the discussions regarding the disposition of the net proceeds of the sale of the vehicles pursuant to the Order to Show Cause.

8.      In fact, on July 22, 2025 an Expedited Joint Motion (I) to Enforce Sale Order and (II) to Order Distribution of Auction Proceeds to Counsel for the FVP Parties (CM/ECF No. 931) was filed seeking, "that the auction proceeds [. . .] be disbursed to the trust account of counsel for the FVP Parties, [. . .], there to be further disbursed **in accordance with the agreement between the Movants**" (**emphasis added**).

9. Additionally, in the case currently pending in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County Florida, captioned as *Hi Bar Capital, LLC v. Karma of Palm Beach, Inc. et al,* and assigned case number CACE-22-06401 (hereinafter, the "Broward County Action"), Lubin has filed a Motion for Summary Judgment seeking enforcement of the Common Interest Agreement that Leto has argued against being heard.

10. In violation of the terms of the Common Interest Agreement, Hi Bar has apparently reached an agreement regarding the distribution of the proceeds of the Auction pursuant to a claim that rightfully belongs to Lubin, without Lubin's input or knowledge.

11. Previous attorneys representing the joint rights of High Bar and Spin pursuant to the Common Interest Agreement had advised Lubin that FVP Opportunity Fund III, LP (hereinafter, "FVP") or related entities were preserving approximately $15,000,000.00 in collateral subject to the claims now owned by Lubin, however, FVP is refusing to respond to discovery in the Broward Case that is sought to locate this collateral raising questions if the disposition of such collateral might be encompassed in the undisclosed agreement related to the Order to Show Cause.

12. Such actions demonstrate the necessity for this Motion.

### **Legal Standard and Argument**

13. Rule 25(c) of the Federal Rules of Civil Procedure, made applicable hereto pursuant to Rules 7025 and 9014 of the Federal Rules of Bankruptcy Procedure provides:

> If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

14.     Substitution under Rule 25(c) is discretionary. *See Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1357 (11th Cir. 1994). "Substitution under Rule 25(c) is purely a matter of convenience, and regardless of whether substitution is ordered the respective substantive rights of the transferor or the transferee are not affected." *Barker v. Jackson Nat. Life Ins. Co.*, 163 F.R.D. 364, 365 (N.D. Fla 1995). "The decision to order substitution or joinder is to be made by considering how the conduct of the lawsuit will be most facilitated." *Federal Deposit Ins. Corp.v. Tisch*, 89 F.R.D. 446, 448 (E.D.N.Y. 1981).

15.     Permitting Hi Bar to continue directing the disposition of the net proceeds without even disclosing to Lubin or the Court the substance of the "agreement between the parties"— despite its transfer of claims first to Spin and then to Lubin—undermines judicial efficiency and creates a risk of inconsistent or unauthorized actions. Lubin, as the rightful assignee, must be allowed to protect and enforce the claims now in his name.

### Relief Requested

16.     Because Hi Bar has transferred its interests in this matter first to Spin and then from Spin to Lubin, substitution is proper under Rule 25(c).

17.     Substituting Lubin as the party in interest will preserve judicial efficiency, avoid confusion, and reflect the proper real party in interest.

WHEREFORE, for the foregoing reasons, Avrumi Lubin respectfully requests that this Court enter an order (i) substituting Avrumi Lubin in place of Hi Bar Capital, LLC as the real party in interest with respect to all claims, defenses, rights, and causes of action previously held or asserted by Hi Bar Capital, LLC, including, but not limited to, the right to be heard in connection with this Court's Order to Show Cause; (ii) directing the Clerk and all parties

to update the official record accordingly; and (iii) granting such other and further relief as the

Court deems just and proper.

**<u>Certificate of Service</u>**

**I HEREBY CERTIFY** that I am admitted [*pro hac vice*] to the Bar of the United

States District Court for the Southern District of Florida, and I am in compliance with the

additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that a

true and correct copy of the above document was filed electronically and served via CM/ECF to

all parties and by email and mail on July 24, 2025.

Respectfully submitted,

Dated: New York, New York
      July 25, 2025

KASEN & KASEN, P.C.

By:       */s/ Michael J. Kasen*
      Michael J. Kasen, Esq.
      115 Broadway, 5th Floor
      New York, New York 10006
      Tel:   (646) 397-6226
      Fax:   (646)786-3611
      mkasen@kasenlaw.com

Attorneys for Josh Lubin
Admitted *Pro Hac Vice*

Dated: Plantation, Florida
      July 25, 2025

LAW OFFICES OF DAVID W. LANGLEY

By:       */s/ David W. Langley*
      David W. Langley, Esq.
      8551 W. Sunrise Blvd., Suite 303
      Plantation, Florida 33322
      Tel:   (954) 356-0450
      Fax:   (954) 356-0451
      dave@flalawyer.com

Attorney for Josh Lubin

# EXHIBIT "A"

Common Interest Agreement

EXECUTION COPY

## COMMON INTEREST AND JOINT LITIGATION AGREEMENT

This COMMON INTEREST AND JOINT LITIGATION AGREEMENT (this "Agreement") is effective as of January 28, 2022 (the "Effective Date"), by and among SPIN CAPITAL, LLC, a New Jersey limited liability company ("Spin Capital"), and HI BAR CAPITAL, LLC, a New York limited liability company ("Hi Bar").  Spin Capital and Hi Bar shall be referred to each as a "Party" and collectively as "Parties."

## RECITALS

A.      On January 28, 2022, Hi Bar initiated an action captioned *Hi Bar Capital, LLC v. Excell Auto Group, Inc., et al.*, in the Supreme Court of the State of New York, County of Kings (the "NY Court"), as Index No. 502846/2022 (the "NY Litigation").

B.      On May 2, 2022, Hi Bar initiated an action captioned *Hi Bar Capital, LLC v. Karma of Palm Beach Inc., et al.*, in The Circuit Court of The Seventeenth Judicial Circuit, Broward County, Florida (the "Florida Court"), as Case No. 22-006401 (the "FL Litigation").

C.      In addition to Excell Auto Group, Inc. and Karma of Palm Beach Inc., the defendants in the FL Litigation include each of the following (collectively with Excell Auto Group, Inc. and Karma of Palm Beach Inc., "Defendants"): Automotive Service Systems, Inc.; Kz Consultants, Inc.; Miss Kris, LLC; Excell Auto Leasing Inc.; Excell Auto Wholesale Inc.; Dealer Souq USA LLC; Eag Wholesale LLC; Karma of Broward, Inc.; Lavish Hero Fund Inc.; Apple 3 Investments, Inc.; KZ Consultants Inc.; Excell Auto Sport And Service, Inc.; FVP Opportunity Fund III, LP; FVP Investments, LLC; FVP Servicing, LLC; Franklin Capital Group, LLC; Franklin Capital Management, LLC; Auto Wholesale of Boca, LLC; MMS Ultimate Services, Inc.; and Moshe Farache.

D.      In addition to the NY Litigation and the FL Litigation, one of the initial Defendants in the FL Litigation, Auto Wholesale of Boca, LLC ("AWB Debtor"), has filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, Case No. 22-15627-EPK (the "Bankruptcy Case").  In connection with the Bankruptcy Case, Hi Bar, along with FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (collectively, "FVP Entities"), initiated an adversary proceeding against AWB Debtor in the Bankruptcy Case, Adversary Case No. 22-01218-EPK (the "Adversary Proceeding," collectively with the Bankruptcy Case, the "Bankruptcy Proceedings").

E.      In conjunction with the NY Litigation, FL Litigation and the Bankruptcy Proceedings, (1) some or all of Defendants were indebted and liable to Hi Bar in the aggregate amount of $3,227,739.73 (the "Hi Bar MCA/Obligation") as of April 28, 2022, and (2) certain Defendants granted to Hi Bar a lien and security interest in certain vehicles, including those described on Schedule 1 hereto (the "Vehicle Collateral"), which secured the Hi Bar MCA/Obligation (the "Hi Bar Secured Claim").

F.      Hi Bar possesses or may possess claims, causes of action, and can seek certain relief against Defendants, and any entities affiliated with or owned by Defendants (collectively, "Litigation Parties") resulting or related to the Hi Bar MCA/Obligation, the Hi Bar Secured Claims, and the Vehicle Collateral, including, *inter alia*, claims, causes of action, and motion practice seeking relief for foreclosure, replevin, fraudulent transfer and avoidance claims arising under the

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and applicable state and federal law.  The foregoing claims, causes of action, and motion practice seeking relief against Litigation Parties that Hi Bar may have or may be able to assert against Litigation Parties in the NY Litigation, the FL Litigation, the Bankruptcy Proceedings, shall collectively be referred to as the "Hi Bar Claims."

G.    In addition, as the holder of a portion of the Hi Bar MCA/Obligation and the Hi Bar Secured Claim, Spin Capital possesses or may possess certain claims and causes of action against certain of Litigation Parties resulting or related to the Hi Bar MCA/Obligation and the Hi Bar Secured Claims, including, *inter alia*, claims, causes of action, and motion practice seeking relief for foreclosure, replevin, fraudulent transfer and avoidance claims arising under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and applicable state and federal law (collectively, the "Spin Capital Claims," with Hi Bar Claims, the "Litigation Claims").

H.    In the NY Litigation, on or about March 18, 2022: (x) Excell Auto Group, Inc. filed a verified third-party complaint against Spin Capital asserting certain claims and causes of action against Spin Capital; and (y) certain Defendants filed counterclaims against Hi Bar.  On or about March 25, 2022, Franklin Capital Group, LLC ("FCG LLC") initiated an action captioned *Franklin Capital Group, LLC v. Spin Capital, LLC and Hi Bar Capital, LLC*, in the United States District Court for the Eastern District of Michigan (the "MI Court"), as Case No. 2022-193300-CB (the "Michigan Litigation").[1]  Consequently, as part of and in conjunction with the NY Litigation and the Michigan Litigation (and potentially in the FL Litigation and Bankruptcy Proceedings ), certain Defendants and FCG LLC have asserted, and may assert in the future,  claims, causes of action, and counterclaims against one or both Parties (collectively, the "Counterclaims").

I.    Parties have had discussions and negotiations regarding an agreement providing for the collective pursuit of the Litigation Claims and the defense of the Counterclaims for the benefit of both Parties.  In light of Spin Capital's interest in the Hi Bar MCA/Obligation and the Hi Bar Secured Claim and its willingness to fund the litigation to recover against Litigation Parties (and to defend Parties against Counterclaims), Parties have determined that (x) the collective pursuit of the Litigation Claims by Hi Bar with the assistance and participation of Spin Capital and (y) the collective defense by Parties against the Counterclaims is in Parties' best interests.  Parties have now reached an agreement regarding the pursuit of the Litigation Claims and the defense of the Counterclaims, subject to the terms and conditions set forth herein.

J.    Each Party has concluded that the execution of this Agreement is in its respective best interest, and acknowledges that the terms and provisions hereof are fair and reasonable, that each has had the opportunity to consult with legal counsel, and that each is receiving a substantial and valuable benefit if the transactions contemplated herein are consummated.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    **Recitals**.  The recitals hereinbefore set forth constitute an integral part of this Agreement, evidencing the intent of the parties in executing this Agreement, and describing the

---

[1]    FGC LLC initially filed the Michigan Litigation in the Sixth Judicial Circuit Court of Oakland County, Michigan.  Thereafter, Parties removed the Michigan Litigation to the MI Court.

circumstances surrounding its execution.  Accordingly, said recitals are, by express reference, made a part of this Agreement, and this Agreement shall be construed in the light thereof. Nothing contained in the recitals shall limit the scope of or damages sought with respect to the Bankruptcy Proceedings Hi Bar Claims.

2.    **Prosecution and Settlement of Litigation Claims and Defense of Counterclaims**.

(a)    From and after the Effective Date, Hi Bar hereby assigns to Spin Capital any and all Hi Bar Claims, subject to the terms and conditions of this Agreement, including but not limited to, Spin Capital's obligation to assign all Hi Bar Claims back to Hi Bar in the event it exercises its rights pursuant to Section 2(f) hereof.

(b)    From and after the Effective Date, Spin Capital will have full authority to prosecute and settle the Litigation Claims, and may settle such Litigation Claims in whole or in part against some or all of Litigation Parties, in its discretion.  Nothing contained in this Agreement is intended or shall be deemed in any manner whatsoever to govern the manner in which Spin Capital pursues (or elects not to pursue) the Litigation Claims related to Litigation Parties. Notwithstanding the foregoing, Spin Capital will cooperate with Hi Bar and keep Hi Bar abreast of the status of its pursuit of Litigation Claims and potential recoveries therefrom.  Any settlement of the Litigation Claims will be subject to Hi Bar's written consent (which consent it shall not unreasonably withhold).

(c)    From and after the Effective Date, Spin Capital will have full authority to defend the Counterclaims and will use commercially reasonable efforts to defend the Counterclaims on advice of counsel for the benefit of Parties.  Notwithstanding the foregoing, Spin Capital will cooperate with Hi Bar and keep Hi Bar abreast of the status of its defense of the Counterclaims.  Spin Capital may settle Counterclaims in conjunction with a global settlement of the Litigation Claims, but any eventual settlement may not result in Hi Bar being required to make any out of pocket payments to any Defendants, and any settlement of any Counterclaim must be paid from recoveries collected in the Litigation Claims.  Any settlement of the Counterclaims will be subject to Hi Bar's written consent (which consent it shall not unreasonably withhold).

(d)    Until termination of this Agreement (as provided in Section 2(f) hereof), Spin Capital shall pay all past, present, and future Professional Fee Claims (as defined below) as they become due.  For purposes hereof, "Professional Fee Claims" shall mean all legal and professional fees owed to counsel (and any expert witnesses and consultants retained by counsel), which professionals are retained to represent Hi Bar and the interests of Spin Capital in the prosecuting the Litigation Claims and defense of the Counterclaims.  For purposes hereof, Professional Fee Claims shall include fees owed to those counsel identified on **Schedule 2** hereof, with all such retained professionals referred to hereinafter as "Retained Professionals".

(e)    Spin Capital and Hi Bar agree that, with respect to the Litigation Claims, Hi Bar will continue to be the plaintiff or claimant for purposes of pursuing recoveries against Litigation Parties.  Hi Bar shall execute all pleadings and affidavits/declarations as requested by Spin Capital with respect to either the Litigation Claims or the Counterclaims.

(f)    **Termination Provisions**:

3

(i)      In the event that Spin Capital in its absolute discretion determines that it no longer wishes to actively pursue the recovery of any Litigation Claims, it will inform Hi Bar in writing of such decision, whereupon (and thereafter), Hi Bar shall be entitled to take the lead in pursuing the Hi Bar Claims and shall be entitled to make any decisions as to any matter relating to such pursuit (or non-pursuit) of such Hi Bar Claims.  Spin Capital shall provide written notice of such decision, which shall result in a termination of this Agreement as of the date of such notice ("SC Termination Date").  If, on or before the one (1) year anniversary of the SC Termination Date (and provided Hi Bar has not theretofore breached the terms of this Agreement), Spin Capital settles or obtains recovers on any Litigation Claims, then either Spin Capital or escrow agent (if applicable) shall provide payments to Hi Bar as provided in Section 3(a) hereof.

(ii)      In the event Hi Bar in its absolute discretion is not satisfied with Spin Capital's management of defense of Counterclaims against Hi Bar, then Hi Bar shall provide written notice of such decision, which shall result in a termination of this Agreement as of the date of such notice ("HB Termination Date"), and Hi Bar shall be entitled to continue pursuing its Hi Bar Claims and Spin Capital shall be entitled to continue pursuing Spin Capital Claims.  If, on or before the one (1) year anniversary of the HB Termination Date (and provided Spin Capital has not theretofore breached the terms of this Agreement), Hi Bar settles or obtains recovers on any of its Litigation Claims, then either Hi Bar or escrow agent (if applicable) shall provide payments to Spin Capital as provided in Section 3(a) hereof.

(g)      To the extent that Counterclaims continue to be asserted against Parties after either SC Termination Date or the HB Termination Date, then each Party shall be required to defend itself against such Counterclaims, and no Party shall have an obligation to other Party to defend such Counterclaims after the termination of this Agreement.

3.      **Agreement of Priority of Distribution**.

(a)      Parties shall direct Litigation Parties to pay any cash or other recoveries obtained from Litigation Parties (including any judgment recoveries from or settlements of any claims against Litigation Parties and the liquidation of any Vehicle Collateral) as a result of any Litigation Claims  (collectively, "Litigation Proceeds") to an escrow account designated by Parties, which shall be subject to an escrow agreement between Parties.  Escrow agent of such escrow account shall pay and distribute Litigation Proceeds as provided below:

(i)      First, all funds necessary to reimburse Spin Capital for all Professional Fee Claims;

(ii)      Second, subject to Section 3(d) hereof, all funds (if any) necessary to resolve or settle all Counterclaims;

(iii)      Third, the balance if any, after payment of the Professional Fee Claims and the Counterclaims ("Net Litigation Proceeds"), shall be paid as follows: (x) thirty percent (30%) shall be paid to Hi Bar; and (y) seventy percent (70%) shall be paid to Spin Capital of the first $1,100,000 in net Litigation Proceeds (i.e., up to $330,000 to be paid to Hi Bar and up to $770,000 to be paid to Spin Capital from the first $1,100,000 in net Litigation Proceeds);

4

(iv)     Fourth, fifteen percent (15%) shall be paid to Hi Bar and eighty-five percent (85%) shall be paid to Spin Capital of the next $900,000 in net Litigation Proceeds (*i.e.*, up to $135,000 to be paid to Hi Bar and up to $765,000 to be paid to Spin Capital from the next $900,000 in net Litigation Proceeds); and

(v)     Fifth, ten percent (10%) shall be paid to Hi Bar and ninety percent (90%) shall be paid to Spin Capital of all net Litigation Proceeds after the recovery by Parties of the first $2,000,000 in total net Litigation Proceeds.

By way of example only, payouts from total Net Litigation Proceeds would be as follows (assuming net Litigation Proceeds (after payment of Professional Fee Claims and Counterclaims) in the amounts set forth below):

| Total net Litigation Proceeds | Aggregate Amount to Hi Bar | Aggregate Amount to Spin Capital |
|---|---|---|
| $500,000 | $150,000 | $350,000 |
| $1,000,000 | $300,000 | $700,000 |
| $1,500,000 | $390,000 | $1,110,000 |
| $2,000,000 | $465,000 | $1,535,000 |
| $2,500,000 | $515,000 | $1,985,000 |
| $3,000,000 | $565,000 | $2,435,000 |
| $3,500,000 | $615,000 | $2,885,000 |
| $4,000,000 | $665,000 | $3,335,000 |

(b)     Notwithstanding the provisions of Section 3(a) hereof, to the extent any Party breaches this Agreement before the recovery of any Litigation Proceeds by the other Party, then breaching Party shall not be entitled to recoveries as provided in Section 3(a) to the extent of damages incurred by non-breaching Party relating to the breach, and non-breaching Party shall be entitled to direct any Litigation Parties to transfer so much of the recoveries as required to cover damages relating to the breach, directly to non-breaching Party for its own account.

(c)     Nothing contained herein is intended or shall be deemed to obligate or otherwise compel either Party to accept any non-cash payment or other non-cash distribution of any Litigation Proceeds in partial or full satisfaction of any of Litigation Claims.

(d)     To the extent all Counterclaims are not resolved at the time of the receipt of Litigation Proceeds, then the escrow agent shall hold all Litigation Proceeds until all such Counterclaims are either (x) resolved in favor of Parties or (y) liquidated or settled to an amount certain owed by Parties.   Notwithstanding the foregoing, Parties may order escrow agent to release Litigation Proceeds in advance of resolution of all Counterclaims subject to a further written agreement between them.

(e)     To the extent insufficient Litigation Proceeds are recovered to pay any damages awarded with respect to all Counterclaims, then Parties agree that such damages in excess of the Litigation Proceeds shall be paid seventy percent (70%) by Spin Capital and thirty percent (30%) by Hi Bar.

5

(f)    For all Professional Fees Claims incurred through the earlier of (x) the SC Termination Date, (y) the HB Termination Date, and/or (z) the resolution and settlement of all Litigation Claims and Counterclaims, and to the extent sufficient Litigation Proceeds are not recovered to pay Spin Capital in full for all Professional Fee Claims paid through such date, then Parties agree that: (i)

(i)    Hi Bar paid or must pay thirty (30%) of such amounts;

(ii)    Spin Capital paid or must pay seventy (70%) of such amounts; and

(iii)    Hi Bar shall pay Spin Capital for its proportion of these legal fees on submission of a written request by Spin Capital, provided that Spin Capital may only make such a written request on the termination of this Agreement or resolution in full of all Litigation Claims and Counterclaims (and the receipt by Parties of insufficient Litigation Proceeds to pay all Professional Fee Claims in full after resolution of all Counterclaims).

On or before the one (1) year anniversary of the date of such written request, Hi Bar shall make payment in full to Spin Capital.  To the extent Hi Bar fails to pay Spin Capital for any amounts owed pursuant to this Section 3(f), Spin Capital may initiate litigation to recover such amounts, but may not pursue litigation until the one (1) year anniversary of the date in which Spin Capital provides written notice to Hi Bar as provided in Section 3(f)(iii).

4.    **Further Assurances and Clawbacks**.  Parties shall reasonably cooperate with each other and shall coordinate their activities in respect of all actions reasonably necessary to consummate or obtain orders approving this Agreement.  Hi Bar shall deliver such other documents, instruments or agreements as Spin Capital may reasonably request in order to effect fully the grant of authority to prosecute the Hi Bar Claims.  Spin Capital, in its sole discretion, shall advance monies and funds for payment of fees and expenses of Retained Professionals, as incurred by Hi Bar in conjunction with the prosecution of the Litigation Claims and defense of Counterclaims against Litigation Parties.  In the event that any of the Litigation Proceeds paid out to any of the parties hereto are subsequently disgorged by any Party, or in the event that after Parties are paid Net Litigation Proceeds, either Party incurs further liability relating to a Counterclaim, then each Party shall fund any clawback/disgorgement or Counterclaim liability in the same proportions as their receipt of the Net Litigation Proceeds as set forth in Section 3. Parties' obligations to pay back Net Litigation Proceeds to fund any clawback/disgorgement or liability relating to counterclaims shall survive termination of this Agreement.

5.    **Relationship of Parties**. Nothing contained herein shall be construed to impose any fiduciary duty on either Party in favor of the other Party or any other person or entity. Except as expressly set forth herein, neither Party shall have any duty or obligation to the other Party by virtue of this Agreement, and without limiting the generality of the foregoing, there are no implicit duties or obligations imposed on either Party in favor of the other Party or any other person or entity by virtue of this Agreement.

6.    **Representations and Warranties**.  Each Party hereby represents and warrants to the other Party that its execution, delivery, and performance of this Agreement are within its respective powers, have been duly authorized by all necessary corporate action, and that this Agreement, when so executed and delivered shall constitute its legal, valid, and binding obligations, enforceable against it in accordance with its terms, subject to applicable bankruptcy,

6

insolvency and similar laws and general equitable principles.    Neither Party makes any representations or warranties to the other party regarding the recoverability, existence, or value of the Litigation Claims.  Except as expressly set forth in this Section 6, neither Party makes any representations or warranties, express or implied, to the other Party by virtue of this Agreement.

7.    **Effectiveness of This Agreement**.  This Agreement shall be effective as of the date hereof conditioned only upon the execution and delivery of this Agreement by all Parties.

8.    **Common Interest**.

(a)    In order to pursue the Litigation Claims and defend the Counterclaims effectively, Parties have determined that their common interests may be best served by sharing documents, factual material, mental impressions, memoranda, interview reports, and other information, including the confidences of each of them, pursuant to this Agreement (collectively, the "Common Interest Materials") *provided, however*, that no Party shall be obligated to share or disclose any Common Interest Materials with or to any other Party solely by virtue of entering into this Agreement.  Any document produced as Common Interest Materials shall be stamped or otherwise labeled as "privileged" or "confidential."  Parties agree that Common Interest Materials obtained from any of them shall remain confidential and shall be protected from disclosure to any third party except as provided herein.  Parties further agree that they will not disclose Common Interest Materials received from each other to anyone except, as applicable, their respective attorneys, representatives, employees, or agents involved in the Litigation Claims, without first obtaining the express consent of one or more of the parties who produced such Common Interest Materials.  It is understood that all work performed and to be performed has been and shall be accomplished by the law firms, their attorneys, employees and agents with regard to their representations shall be accomplished pursuant to the work product and the attorney client privileges and to the "common interest doctrine" and all other applicable rights and privileges, including those recognized in *United States v. Evans,* 113 F.3d 1457 (7th Cir. 1997); *United States v. McPartlin,* 595 F.2d 1321 (7th Cir. 1979); *Hunydee v. United States,* 355 F.2d 183 (9th Cir. 1965); and *Continental Oil Co. v. United States,* 330 F.2d 347 (9th Cir. 1964).

(b)    No Waiver.  The joint interest and defense effort undertaken by Parties, by virtue of its purpose, operation and use, is attorney work product and has required, and may in the future require, the exchange of Common Interest Materials subject to work product protection, attorney-client, joint defense and/or other privileges.  Parties do not, by virtue of entering into this Agreement, waive any privilege as to any communication or as to any sharing of work product.

(c)    Permissive, Not Mandatory.  This Agreement is intended to allow, but not require, each party to this Agreement, in its sole and exclusive discretion, to exchange with the other Parties Common Interest Materials, which are subject to work product protection, attorney-client, joint defense and/or other privileges.  Parties are not required to agree to any particular litigation strategy or position taken before any court by virtue of having entered into this Agreement.

(d)    Use.  It is further agreed that any Common Interest Materials exchanged among Parties shall be used solely in connection with the Litigation Claims and the defense of the Counterclaims.  Each Party specifically agrees that, in any subsequent litigation or action that

7

may be brought, they will not attempt to discover or offer as evidence any Common Interest Materials exchanged between them relating to the foregoing absent court order or written consent by one or more of Parties producing such Common Interest Materials.

(e)     Joint Experts.  Parties may jointly retain one or more experts in furtherance of the Litigation Claims and in the defense of the Counterclaims.  All Common Interest Materials transmitted to the joint experts, as well as any work product generated by the joint experts in any form whatsoever shall be subject to this Agreement.  No joint expert shall publish or disseminate any information, theories, opinions, or conclusions based upon Common Interest Materials in any way other than in furtherance of the Litigation Claims and in the defense of the Counterclaims without advance written approval by all of Parties by whom the expert is retained.

(f)     Individual Experts.  Nothing herein shall preclude any of Parties from individually retaining an expert.  Any Common Interest Materials or work product related to or generated by the individually retained expert shall be subject to this Agreement.

(g)     Joinder of Experts to Agreement.  No Common Interest Materials exchanged pursuant to this Agreement shall be disclosed or distributed in any way to any joint or individually retained expert until (i) such person shall have read a copy of this Agreement and shall have signed a Confidentiality Agreement agreeing to be bound by the terms of this Agreement, and (ii) advance written approval is obtained from the party whose information is to be given, shown, made available or communicated to the expert in furtherance of the Litigation Claims.

(h)     Discovery of Common Interest Materials.  If any person or entity requests or demands, by subpoena or otherwise, any Common Interest Materials received by any Party pursuant to this Agreement, the recipient of the demand shall immediately notify all other Parties. Each Party against whom the request or demand of said Common Interest Materials is directed shall take all steps necessary to permit the assertion of all applicable rights and privileges with respect to said Common Interest Materials, and shall cooperate fully with Parties in any judicial or other proceeding relating to the disclosure of said Common Interest Materials.

(i)     Withdrawal from Agreement.  Parties also agree that, if any Party to this Agreement no longer has interests in common with the other Parties, such party shall immediately notify, in writing, attorneys for the other Parties and promptly withdraw from this Agreement. Withdrawal from this Agreement shall not terminate Parties' mutual obligation to hold confidential all Common Interest Materials previously exchanged among the same.  At the request of a withdrawing party, documents furnished by such withdrawing party shall be returned to the same; *provided, however*, that such withdrawing party also returns all Common Interest Materials disclosed to it pursuant to this Agreement, and, further, destroys any internal notes, memoranda, analyses or other work product based upon or relating to Common Interest Materials produced by another party; *provided, however*, if a withdrawing party has received a subpoena or similar legal demand that would require production of any Common Interest Materials, the obligations imposed by this sentence shall be deferred until the discovery demand is resolved in accordance with the procedures outlined in this Agreement.

(j)     Electronic Communications.  Parties further agree that electronic communication (via the internet or other network) among themselves may involve the

8

communication of Common Interest Materials.  By engaging in electronic communications during the course of the Litigation Claims, Parties do not intend to waive or in any way weaken any statutory, common law or other privileges or protections to which the Common Interest Materials would otherwise be entitled.

(k)    <u>Continuation of Agreement</u>.  This Agreement is not terminated by the conclusion through trial (including appeals) or settlement or other resolution of the Litigation Claims, and Parties shall keep all Common Interest Materials confidential as directed by the terms of this Agreement, unless all Parties consent in writing to the disclosure of said Common Interest Materials.  Nothing in this Agreement, however, shall preclude any Party from disclosing their own privileged or work product materials at any time.

9.    **<u>Provisions Solely to Define Relative Rights</u>**.

(a)    The provisions of this Agreement are intended solely for the purpose of defining the rights of Parties. Without limiting the generality of the provisions hereof, there are no third party beneficiaries of this Agreement.  Without limiting the generality of the foregoing, no other person or entity, including any Litigation Party or any affiliate or creditor thereof, shall have any rights or benefits hereunder or shall otherwise be entitled in any manner whatsoever to rely on any of the provisions hereof.  Nothing contained herein is intended to or shall impair the rights of either Party against any non-party, including any Litigation Party.

(b)    This Agreement, including, *inter alia*, Section 3(f) hereof, shall not waive, release, or impair the rights of either Party against any other Party with respect to separate business relationships or other claims or causes of action any Party may have against other Party unrelated to the Litigation Claims, Counterclaims, Defendants, or any of the proceedings described in the Recitals hereto.  Any and all current or future claims or causes of actions of one Party against other Party are expressly preserved, and Parties do not intend to effect or impair such claims or causes of action as part of their Agreement hereunder.

10.    **<u>General Terms</u>**.

(a)    <u>Time is of the Essence</u>.  Parties agree that time is of the essence with respect to each of the terms and conditions of this Agreement.

(b)    <u>Waivers, Amendments, Etc</u>.  The provisions of this Agreement may from time to time be amended, modified or waived, if such amendment, modification or waiver is in writing and consented to by each Party.  No waiver or approval by any Party under this Agreement shall, except as may be otherwise stated in such waiver or approval, be applicable to subsequent transactions.  No waiver or approval hereunder shall require any similar or dissimilar waiver or approval thereafter to be granted hereunder.

(c)    <u>Notices</u>.  All notices and other communications provided to any Party hereto under this Agreement shall be in writing (except as otherwise specifically provided in this Agreement) and sent by first class mail, by overnight delivery service, or by facsimile and addressed, delivered or transmitted to such Party at its address or facsimile number set forth below its signature hereto or at such other address or facsimile number as may be designated by such Party in a notice to the other Parties.  Any notice, if mailed and properly addressed with

9

postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any notice, if transmitted by facsimile, shall be deemed given when transmitted and the Party giving such notice shall have received (including either through telephonic communication initiated by it or telephonic communication received by it) telephonic, machine, or other confirmation that such notice has been received by the intended recipient.

(d)     No Implied Right to Notice; Nonwaiver; Cumulative Remedies.  No notice to or demand on any of the parties hereto in any case shall entitle them to any notice or demand in similar or other circumstances. No failure to exercise, no delay in exercising, and no single or partial exercising, on the part of either Party, of any right, power or privilege hereunder shall operate as a waiver thereof or otherwise preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies of Parties herein provided are cumulative and not exclusive of any rights or remedies provided by law.

(e)     Successors; Survival of Agreements. All agreements, representations, warranties, and covenants made herein shall survive the consummation of this Agreement.

(f)     No Third Party Beneficiaries. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, Parties and their respective successors and assigns. No other person or entity shall be entitled to claim or assert (including as a defense to any liability) any right or benefit hereunder, including the status of being an express or implied third party beneficiary of this Agreement.

(g)     Captions.  Captions in this Agreement are for convenience of reference only and shall not define or limit any of the terms or provisions hereof. References herein to Sections or provisions without reference to the document in which they are contained are references to this Agreement.

(h)     Counterparts; Signatures.  This Agreement may be executed by Parties on any number of separate counterparts, and by each Party on separate counterparts; each counterpart shall be deemed an original instrument; and all of the counterparts taken together shall be deemed to constitute one and the same instrument. To facilitate execution of this Agreement, Parties may execute and exchange facsimile or electronic mail (e-mail) executed counterparts of this Agreement. Facsimile signatures and signatures exchanged by electronic mail (e-mail) shall be deemed valid and binding to the same extent as the original.

(i)     Expenses.  Without limiting the right of any Party to apply any Litigation Proceeds received by it in accordance with the provisions of this Agreement in satisfaction of any such expenses, each Party hereto shall be responsible for the payment of its own fees and expenses, unless otherwise set forth herein.

(j)     Entire Agreement.  This Agreement, together with the exhibits and schedules hereto, contains the entire agreement between Parties with respect to the matters addressed herein. There are no agreements, restrictions, promises, representations, warranties, covenants or undertakings, written or oral, other than those expressly set forth herein.  This Agreement supersedes all prior agreements and understandings between Parties (if any) with respect to the matters addressed herein.

(k)    <u>Interpretation</u>.  The use of the masculine, feminine or neuter gender or the singular or plural form of words herein shall not limit any provision of this Agreement.  The use of the terms "including" or "include" shall in all cases herein mean "including, without limitation" or "include, without limitation," respectively.  Reference to any person or entity includes such person's or entity's successors and assigns to the extent such successors and assigns are permitted by the terms of this Agreement, and reference to a person or entity in a particular capacity excludes such person or entity in any other capacity or individually. Reference to any agreement (including this Agreement), document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof and, if applicable, the terms hereof.  Reference to any law means such law as amended, modified, codified, replaced or re-enacted, in whole or in part, and in effect on the date hereof, including rules, regulations, enforcement procedures and any interpretations promulgated thereunder.  Underscored references to Sections, clauses, Exhibits or Schedules shall refer to those portions of this Agreement, and any underscored references to a clause shall, unless otherwise identified, refer to the appropriate clause within the same Section in which such reference occurs.  The use of the terms "hereunder", "hereof", "hereto" and words of similar import shall refer to this Agreement as a whole and not to any particular Section or clause of or Exhibit or Schedule to this Agreement.  All terms defined in this Agreement shall have the above-defined meanings when used in any certificate, report or other document made or delivered pursuant to this Agreement, unless the context therein shall clearly otherwise require.  In the computation of periods of time in this Agreement from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" each means "to, but not through."  This Agreement and the other documents relating to this Agreement are the result of negotiations among and have been reviewed by counsel to Parties, and are the products of all Parties. Accordingly, they shall not be construed against (or in favor of) either Party merely because of such Party's involvement (or non-involvement, as the case may be) in their preparation.

(l)    <u>APPLICABLE LAW</u>. THIS AGREEMENT AND ANY OTHER WRITING EXECUTED IN CONNECTION HEREWITH SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED THEREIN WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW. COURTS SITTING IN NEW YORK STATE SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL ACTIONS BROUGHT BY THE PARTIES RELATING IN ANY WAY TO THIS AGREEMENT.

(m)    <u>WAIVER OF RIGHT TO JURY TRIAL</u>. EACH OF THE PARTIES IRREVOCABLY HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN ANY AND ALL SUITS, ACTIONS OR OTHER PROCEEDINGS THAT ARISE FROM, OR CONSIST OF, A CLAIM FOR DAMAGES UNDER, A CLAIM OF A BREACH OF, OR A DECLARATORY JUDGMENT ACTION FOR THE INTERPRETATION OF, THIS AGREEMENT.

**[Signature Pages Follows]**

11

IN WITNESS WHEREOF, the parties hereto have caused this Common Interest and Joint Litigation Agreement to be executed by their respective officers thereunto duly authorized as of the day and year first above written.

HI BAR CAPITAL, LLC

By: _____ *Yisroel Herbst* _____
Name: Yisroel Herbst
Its: Owner

<u>Contact Address</u>:
HI Bar Capital, LLC
1825 65th Street
Brooklyn, NY 11204
ATTN: Yisroel Herbst
        Mordi Herbst
Email: ymherbst@gmail.com
        mordi@hibarcapital.com

*With a copy to:*
Law Office of Michael Ehrenreich PLLC
555 Willow Avenue, Suite 105
Cedarhurst, NY 11516
Attention: Michael Ehrenreich
Email: me@ehrenreichlaw.com

[Signature Page to Common Interest and Joint Litigation Agreement]

SPIN CAPITAL, LLC

By: _____

Name: Arvumi Lubin

Its: President


Contact Address:
Spin Capital, LLC
1460 Arboretum Parkway
Lakewood, NJ  08701
ATTN: Josh Lubin
Email: josh@spincapital.com

*With a copy to:*
Bryan Cave Leighton Paisner LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
ATTN: Jason J. DeJonker
Email: Jason.Dejonker@bclplaw.com

[Signature Page to Common Interest and Joint Litigation Agreement]

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

**Schedule 1**

## Schedule 2

- Bryan Cave Leighton Paisner LLP

- Feldman Law Group, P.A.

- Wells Law P.C.

- Foley & Lardner LLP

- Proskauer Rose LLP

- Law Office of Michael Ehrenreich

- Law Offices of Steven Zakharyayev

# EXHIBIT "B"

Spin/Lubin Assignment

# ASSIGNMENT AGREEMENT

This Assignment Agreement (hereinafter the "Agreement"), dated this 20 day of March , 2025, is made and entered into by and between SPIN CAPITAL, LLC, a New Jersey Limited Liability Company ("Spin") and AVRUMI LUBIN a/k/a JOSH LUBIN, and individual (the "Lubin") (all identified parties are hereinafter referred to collectively as the "Parties" or individually, as appropriate, as a "Party"):

WHEREAS, Spin is currently the sole owner of certain rights, obligations and interests in certain litigations that have been filed by it, specifically the matter currently before the Supreme Court for the State of New York, New York County, docketed as *Spin Capital, LLC v. Golden Foothill Insurance Services, LLC*, Index No. 650582/2022 and the counter-complaint filed in *Golden Foothills Insurance Services, LLC, et al. v. Spin Capiral, LLC, et al.*, Case No. 1:24-cv-08515-AS (S.D.N.Y.) (hereafter the "Litigations") and relates to breaches of certain promissory notes (hereafter the "Promissory Notes"); and

WHEREAS, Spin contends that the Promissory Notes permit for the assignment of rights therein; and

WHEREAS, Spin desires to assign such rights as to the Promissory Notes to enforce same, and to have its sole member, Lubin, to move to substitute his name on behalf of Spin in the Litigations, and enforce such agreements on his own and in his own name as though he was Spin; and

WHEREAS, in order to ensure that the rights and obligations of Spin as addressed above continue, the Parties agree that Spin will assign the rights to either prosecute those claims, including contract claims, or to defend against those claims, to Lubin; and

NOW THEREFORE, the Parties, intending to be legally bound, and in consideration of the mutual promises and other good and valuable consideration contained herein, agree as follows:

1. Spin hereby assigns, transfers and sets over to Lubin all of its right, title and interest in and to any and all contractual rights, including to enforce and defend against counterclaims, relating to the Litigation and/or the Promissory Notes.

2. Consideration for this agreement is agreed to be the amount of Ten Dollars ($10.00) the sufficiency of which is agreed to by the parties, which shall be paid from Lubin to Spin, and to which Spin agrees and warrants has been received and accepted in return for this Agreement and assignment of rights set forth herein.

3. This Assignment shall be binding upon and shall inure to the benefit of the Parties hereto and their successors and assigns.

4. This Agreement may be executed in one or more counterparts, each bearing the signatures of one or more parties. Each counterpart shall be considered an original and all of the counterparts shall constitute a single agreement binding all the parties as if all had signed a single document. For purposes of executing this Agreement, a document

1

2

signed and transmitted by electronic means (such as in PDF format via e-mail or via facsimile machine) is to be treated as an original document. The signature of any party thereon, for purposes hereof, is to be considered as an original signature, and the document transmitted is to be considered to have the same binding effect as an original signature on an original document.

5. This Agreement and any other documents referred to herein shall be governed by, construed, and enforced in accordance with the laws of the State of New York without regard to conflicts of laws principles.

6. Any disputes arising related to this Agreement, whether related to construction or performance, shall be subject to the exclusive jurisdiction of the Supreme Court of the State of New York, located in New York County, New York, and to the exclusion of any and all other such venues. By executing the within Agreement, the Parties fully consent to the jurisdiction and venue and shall not argue against such jurisdiction or venue under or for any reason including, but not limited to, lack of personal jurisdiction or *forum non conveniens*.

**[ - Signatures to Appear on Subsequent Page - ]**

Dated: 03/20/25

Spin Capital LLC (a New Jersey Limited Liability Company)

By:    Avrumi Lubin
Title: Owner

STATE OF: Utah          )
                                    SS:
COUNTY OF: Summit   )

On this 20 day of March , 20 25 , before me personally appeared Avrumi Lubin to me known and known to be the person described in and who executed the foregoing instrument, and he thereupon duly acknowledged to me that he executed same.

Notary Public

LORENA A MARTINEZ
Notary Public - State of Utah
Comm. No. 719210
My Commission Expires on
Jul 19, 2025

Dated: 03/20/25

Arvumi Lubin (individually)

STATE OF: Utah          )
                                    SS:
COUNTY OF: Summit   )

On this 20 day of March , 20 25 , before me personally appeared Avrumi Lubin to me known and known to be the person described in and who executed the foregoing instrument, and he thereupon duly acknowledged to me that he executed same.

Notary Public

LORENA A MARTINEZ
Notary Public - State of Utah
Comm. No. 719210
My Commission Expires on
Jul 19, 2025

3