**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

IN RE:

**AUTO WHOLESALE OF BOCA, LLC,**                    CASE NO.: 22-15627-EPK

    Debtor.                                           CHAPTER 7

_____/

## INTERESTED PARTY AVRUMI  LUBIN'S LIMITED OBJECTION TO THE EXPEDITED JOINT MOTION TO ENFORCE SALE ORDER

Party in Interest, Avrumi Lubin (Lubin), objects to the Expedited Joint Motion to Enforce Sale Order and to Order Distribution of Auction Proceeds to Counsel for FVP Parties (EFC 931), or in the alternative, clarification, of this Court's Order (A) Granting Motion to Reconsider and (B) Vacating in Part Order Denying Motion for Disqualification, Motion to Enforce Sale Order and Motion to Substitute Parties entered July 28, 2025, and says:

### SUMMARY OF RELIEF REQUESTED

1.    Party in Interest, Avrumi Lubin (Lubin), as assignee of Spin Capital, LLC, which in turn is the assignee of all rights of Hi Bar Capital, LLC to the Auction Proceeds presently held in the Court Registry (the "Proceeds of Sale"), is merely asking the Court to recognize that Lubin has a valid claim to the Proceeds of Sale, and to prevent any further distribution of said funds to the FVP Parties, Franklin Parties or Hi Bar absent further court order.  Lubin does not object to the funds being held in the Schwartz Breslin Trust Account provided there is no further disbursement of funds until authorized by an appropriate order from the Circuit Court of Broward County as to the proper disposition of said funds.

**INTRODUCTION**

2.        Spin Capital LLC (Spin) and Hi Bar Capital LLC (Hi Bar) entered into a Common Interest and Joint Litigation Agreement with an effective date of January 28, 2022 (The Common Interest Agreement), more fully described below, pursuant to which Hi Bar assigned the "Hi Bar Claims", which include all claims to the Auction Proceeds, to Spin, with a waterfall provision back to Hi Bar. The Common Interest Agreement is attached as Exhibit A.

3.        Spin subsequently assigned its rights to the Proceeds of Sale and other claims to Lubin.  See Exhibit E.

4.        FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (The FVP Parties), Franklin Capital Funding LLC and Franklin Capital Group LLC (the Franklin Parties) and Hi Bar, by way of their recent motions, seek to disenfranchise Spin, and its assignee Lubin, of any participation in the funds by misrepresenting to this Court and to the Broward Circuit Court that Spin and Lubin's claims have been resolved.  They have not.

5.        There may also be some confusion as to the claims and involvement of Avrumi Lubin.  Mr. Lubin previously appeared before this Court as an individual with an ownership interest in Spin Capital.  The Court's Order Granting in Part Expedited Motion to Authorize Sale, ECF 694, refers to Avrumi "Josh" Lubin having appeared "in his individual capacity".  However, he was also the person who, pursuant to the Common Interest Agreement, controlled the Hi Bar Litigation, hired, paid and and controlled the Hi Bar attorneys, including Mark Wolfson, Matthew Leto and other attorneys who appeared on behalf of Hi Bar.  He did so as the President of Spin, as assignee of Hi Bar.

6.        The Common Interest Agreement provides:

Spin Capital and Hi Bar Agree that, with respect to the Litigation Claims, Hi Bar will continue to be the plaintiff or claimant for purpose of pursuing recoveries against Litigation Parties.  Hi Bar Shall execute all pleadings and affidavits/declarations as requested by Spin Capital with respect to either the Litigation Claims or the Counterclaims.

7.        Mr. Lubin now appears before this Court as the assignee of the Hi Bar/Spin claims based on an assignment dated March 17, 2025, from Spin to Lubin.  See Exhibit E.  Hi Bar is one

of three parties recognized by the Court as having an interest in the funds in the Court Registry. Lubin is the assignee of Hi Bar's first position lien and of its claim to the Proceeds of Sale.

8.     This Court has ordered that "The proceeds of the Auction, net of the Buyer's Premium, Expenses and Carveout (such proceeds shall be referred to herein as the "Net Proceeds"), shall be held pending adjudication by a court of competent jurisdiction, as to the validity, priority and extent of property interests asserted in the Net Proceeds or consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the Adversary Proceeding and asserted interests therein".

9.     There has been no adjudication by any court as to the rights of the various parties claiming an interest in the Net Proceeds.  The FVP Partes, Franklin Parties and HI Bar are now claiming that all parties in interest have resolved their claims, but that representation is false.   The FVP Parties and the Franklin Parties have collaborated with Hi Bar to represent to Judge Haimes that these claims have been resolved in the Bankruptcy Court.   See attached Exhibit B, the transcript of the July 28, 2025 hearing before Judge Haimes, Page 20:

> THE COURT: Okay. So any issues between Hi Bar
> and Mr. Lubin and Mr. Lubin's company SLID, or JL
> Investments, whatever, that's not part of this case,
> correct?
> MR. LETO: There's not -- there's no pleading
> on that issue anywhere in this case.

10.     In this Court the FVP Parties, Franklin Parties and Hi Bar have merely asked that the funds should be placed in counsel's trust account, while not advising this Court that claims remain against those funds that have not been resolved by either Court. The FVP Parties, Franklin Parties and Hi Bar have further indicated that the funds "will be further disbursed in accordance with the agreement between the Movants" without any disclosure to Lubin or this Court of what that agreement is and how it will affect the rights of Lubin as assignee of the rights Spin acquired pursuant to the Common Interest Agreement.

11.     The FVP Parties, Franklin Parties and Hi bar have conspired not only to take possession of the Proceeds, but to disburse those funds between themselves at the expense of Lubin.  See page 16 of the attached transcript of the hearing before Judge Haimes on July 28, 2025, in which Mr. Leto advised the Court:

> Hi Bar, Franklin, and FVP, did reach a resolution **as to the distribution** of those funds.(emphasis supplied).

12.     In the Broward case Lubin and JL have filed a Motion for Summary Judgment against Hi Bar seeking a determination that the Common Interest Agreement between them is still in effect.  That has not been heard.

13.     In this case Lubin filed a Motion to Substitute, ECF 938, requesting that "this Court enter an order (i) substituting Avrumi Lubin in place of Hi Bar Capital, LLC as the real party in interest with respect to all claims, defenses, rights, and causes of action previously held or asserted by Hi Bar Capital, LLC, including, but not limited to, the right to be heard in connection with this Court's Order to Show Cause …".

14.     The FVP Parties, Franklin Parties and Hi Bar are essentially representing to this Court that everything has been resolved in the State Court, and to the State Court that everything has been resolved in this Court, while neither Court has ruled on the effectiveness of the Common Interest Agreement[1].

15.     This Court's Order Granting Motion to Reconsider appears to authorize only the transfer of the Proceeds to the Schwartz Breslin Trust Account.  However, as stated above, Mr. Leto has advised the State Court that the FVP Parties, Franklin Parties and Hi Bar intend to further

---

[1] The only basis for any of those parties to claim that the Common Interest Agreement has been terminated is a letter from attorney Matthew Leto, originally hired by Lubin, who claimed that Lubin's failure to pay all of Mr. Leto's fee billings constituted a termination of the Common Interest Agreement. That analysis is flawed for at least two reasons: (1) The Authority to Represent that forms Mr. Leto's claim for payment was specifically related to other matters, not this bankruptcy and (2) the Common Interest Agreement specifies events that could lead to termination of the Common Interest Agreement, specifically Paragraph 2(f), and failure to pay attorney's fees is not one of those events.

disburse the Proceeds to themselves, without any determination by a court of competent jurisdiction that said funds should be disbursed to those parties.

**The Common Interest Agreement and Subsequent Assignments**

16.     Spin entered into a Common Interest and Joint Litigation Agreement (The Common Interest Agreement) with Hi Bar with an effective date of January 28, 2022.

17.     The Common Interest Agreement (Exhibit A), Par. 2(a), states:

(a) From and after the Effective Date, Hi Bar hereby assigns to Spin Capital any and all Hi Bar Claims, subject to the terms and conditions of this Agreement, including but not limited to, Spin Capital's obligation to assign all Hi Bar Claims back to Hi Bar in the event it exercises its rights pursuant to Section 2(f) hereof.[2]

18.     Spin and Lubin also entered into a representation agreement with attorney Matthew Leto on August 1, 2023, the Authority to Represent Agreement.  See Exhibit C.  That Authority to Represent Agreement defines Spin and Lubin as "Clients" for purposes of this lawsuit[3].  It further states that the Common Interest and Joint Litigation Agreement provides Mr. Lubin with "the authority to prosecute and settle" the matters and unless terminated pursuant to Section 2(f).  The Authority to Represent is attached hereto as Exhibit C.

19.     The Authority to Represent further provides:

As you know, the Firm represents more than one client in this matter. An undertaking by a lawyer to represent more than one client in the same matter is called a "joint representation." The applicable rules of professional responsibility permit the representation of more than one client in the same matter provided that, among other things, the lawyer reasonably believes that he or she can adequately represent each client's interests competently and diligently and each client provides informed consent in writing to the joint representation. Joint representation is, of course, not mandatory in this matter, and you have the right to retain an attorney other than the Firm as your counsel.

---

[2] Section 2(f) is a termination provision. Hi Bar is entitled to terminate only if it is unsatisfied with Spin's defense of several counterclaims, all of which were dismissed before Matthew Leto was hired as counsel for Hi Bar and Spin.  No written notice of termination, as required by Section 2(f), was ever sent by Hi Bar pursuant to the termination provision.

[3] Although the Common Interest Agreement states that Leto will not file an appearance for Lubin or Spin, that reference does not absolve Leto from representing the interests of Lubin and Spin, or from withdrawing as counsel if he could not.

20.    Notably, the FVP Parties acknowledged Spin's right to control the litigation in a previous filing in the State Court.  Attached as Exhibit D is the FVP Parties Urgent *Ex Parte* Motion filed August 25, 2024.  In that Motion Mr. Breslin represents to the Court:

> As is seen in the "Authority to Represent", and completely inconsistent with the representations to this Court from the inception of this case, this entire time Mr. Leto has been secretly representing Josh Lubin and Spin in addition to his other clients Herbst and Hi Bar.  The "Authority to Represent" identifies Josh Lubin and Spin as a client and further states: "**Finally, counsel understands that Spin Capital and Josh Lubin have an interest in the outcome of this case**, and while not counsel of record in the case for Spin and Lubin, understands they are a joint client for purposes of this case". (emphasis supplied)

21.    The FVP Parties initially acknowledged that Spin owned and controlled the Hi Bar Claims pursuant to the Common Interest Agreement, and that the Hi Bar Claims would be pursued under the name of Hi Bar.  They have now colluded with Mr. Leto, purportedly representing Hi Bar, to attempt to eliminate Spin and Lubin's entitlement to those claims.

22.    The FVP Parties, Franklin Parties and Hi Bar have further misled by Court by stating that Avrumi Lubin (Lubin) has no interest in the Proceeds, which is false, and by failing to advise the Court:

   a.   There is an agreement between Hi Bar and Spin pursuant to which Hi Bar "assigns to Spin Capital any and all Hi Bar claims" and "Spin Capital will have full authority to prosecute and settle the Litigation Claims"; and

   b.   Spin later assigned those claims to Lubin. See Exhibit E.

   c.   Neither this Court nor the State Court has determined that the Common Interest Agreement has been terminated.

23.    Lubin, as assignee of Spin, holds a first position lien on the Proceeds of Sale. To date no court has ruled on the conflicting claims between Hi Bar and Spin / Lubin.   The FVP Parties, Franklin Parties and Hi Bar are falsely claiming that Lubin's claims have been resolved. The distribution of funds to and among the FVP Parties, Franklin Parties and Hi Bar would result in manifest injustice to Lubin.

**Lubin and Spin's Involvement in the Adversary Proceeding and the Main Bankruptcy Case**

24.     The FVP Parties, Franklin Parties and HI Bar are jointly attempting to eliminate any consideration of Lubin's claims and rights.

25.     Lubin, however, holds the first position lien on the Proceeds pursuant to the Common Interest Agreement with Hi Bar.

26.     In the Order Granting Reconsideration the Court states, "There had been substantial litigation both in Adversary Proceeding No. 22-01218 (the "Adversary Proceeding") and in the main bankruptcy case among parties claiming liens on or interests in the vehicles".  What may not be clear to the Court is that Lubin hired, paid and directed the attorneys for Hi Bar that participated in those matters, and that Lubin, as assignee of Spin, has "full authority to settle the Litigation Claims".

27.     Lubin has filed a Motion to Disqualify, ECF 925, which provides in detail Lubin's involvement in this case since its inception. He hired the attorneys who represented his and Spin's rights as assignee of the Hi Bar Claims.  He directed the litigation. He selected and paid the attorneys who appeared as counsel for Hi Bar.

28.     He now appears as the assignee of all such claims.

**Spin and Lubin did not Breach the Common Interest Agreement**

29.     The FVP Parties, Franklin Parties and Hi Bar's claims that all parties with an interest in the funds have reached an agreement for the distribution of those funds is based on the false premise that Spin and Lubin's rights to the proceeds under the Common Interest Agreement have been terminated. Spin and Lubin did not breach the Authority to Represent or the Common Interest Agreement and it remains in full force and effect.

30.     Spin, through Lubin, advised Leto that they were no longer satisfied with Leto's representation, as Leto consistently advised Lubin that he did not represent Lubin or Spin, despite Leto's obligations pursuant to the Authority to Represent.  Further, Leto took actions that were not in Spin or Lubin's interests. See Declaration of Avrumi Lubin, Exhibit F.

31.     Lubin advised Leto by email that he would not pay Leto's fees for any work done by Leto from that point onward. He did not terminate in any way the Common Interest Agreement nor did he relieve Leto of his fiduciary obligations to Lubin and Spin.

 A Claimed Breach of an Independent Covenant does not Represent a Breach of the Agreement

32.     If this Court or the State Court were to find that Spin and Lubin breached the Authority to Represent agreement, that would not justify a finding that Spin and Lubin breached the Common Interest Agreement.

33.     Conditions or covenants in a contract are classed as dependent or independent from a consideration of the intention and understanding of the parties as shown by the whole contract. *Southern Colonization Co. v. Derfler*, 73 Fla. 924, 75 So. 790, L.R.A.1917F, 744. However, only the breach of a dependent covenant, one which goes to the whole consideration of the contract, excuses performance.  *Steak House, Inc. v. Barnett*, 65 So.2d 736 (Fla. 1953).

34.     A covenant is independent where it does not go to the whole consideration of the contract but is only subordinate and incidental to its main purpose, and the breach of such a covenant will not ordinarily constitute a sufficient reason for rescission. 17 C.J.S., Contracts, § 425, pages 910-911*, Steak House, Inc. v. Barnett*, at 736, 737–38.

35.     A covenant is dependent where it goes to the whole consideration of the contract; where it is such an essential part of the bargain that the failure of it must be considered as destroying the entire contract; or where it is such an indispensable part of what both parties intended that the contract would not have been made with the covenant omitted. Black on Rescission and Cancellation, 2nd ed., Vol. I, pp. 555, 601. A breach of such a covenant amounts to a breach of the entire contract; it gives to the injured party the right to sue at law for damages, or courts of equity may grant rescission in such instances if the remedy at law will not be full and adequate. *Savage v. Horne*, 159 Fla. 301, 31 So.2d 477; 6 Pomeroy, Eq. Juris., Sec. 685.  *Steak House, Inc. v. Barnett* at 736, 737 (Fla. 1953).

36.    Here, Leto claimed in his attempted termination letter, that Lubin's failure to pay Leto's legal bill of $75,000.00 terminates Spin's right to collect on it's multi-million dollar claims under the Common Interest Agreement.

37.    The Common Interest Agreement, in Section 2(f), Termination Provisions, provides that on termination by either party (which has not been done according to the termination provision requirements), the terminating party or the Escrow Agent "shall provide payments … as provided in Section 3(a) hereof".

38.    Hi Bar's entitlement to terminate the Common Interest Agreement could only be asserted if Hi Bar was unsatisfied with Spin's defense of certain counterclaims. Those counterclaims were dismissed before Mr. Leto ever appeared as counsel for Hi Bar, without Hi Bar ever seeking to terminate the Common Interest Agreement. Hi Bar no longer has any basis to terminate the agreement.

39.    The Common Interest Agreement remains in full force and effect and Spin, and by assignment, Lubin and JL Special Investments, have the sole right to pursue the affirmative claims and to conduct the litigation, other than to defend the claims against Hi Bar and Herbst.

## CONCLUSION

40.    Lubin does not object to the funds being held in the Schwartz Breslin Trust Account provided there is no further disbursement of funds until authorized by an appropriate order from either Court as to the proper disposition of said funds.  Lubin further requests this Court either hold such a hearing on the appropriate distribution of funds, or defer to the Circuit Cout of Broward County on such a ruling, making it clear to the Circuit Court that such a ruling did not take place in the Bankruptcy Court.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that a true copy of the above document

was filed electronically and served electronically and by mail to all interested parties on attached

service list on this 6th day of August, 2025.

| | |
|---|---|
| LAW OFFICES OF DAVID W. LANGLEY | KASEN & KASEN, P.C. |
| *Attorney for Avrumi Lubin* | *Co-Counsel for Avrumi Lubin* |
| 8551 W. Sunrise Blvd., Suite 303 | 115 Broadway, 5th Floor |
| Plantation, Florida 33322 | New York, NY 10006 |
| Telephone:    954-356-0450 | Office:  (646) 397-6226 |
| Facsimile:    954-356-0451 | Fax:    (646) 786-3611 |
| | |
| E-mail: dave@flalawyer.com | mkasen@kasenlaw.com |
| | |
| By:    /s/ David W. Langley | By:   /s/ Michael Kasen |
| David W. Langley, Esq. | Michael Kasen |
| Florida Bar Number 348279 | Admitted *Pro Hac Vice* |