```
            IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
                 IN AND FOR BROWARD COUNTY, FLORIDA
                    CASE NO. CACE-22-005125 (07)


FVP OPPORTUNITY FUND III,LP, a
Delaware limited partnership;FVP
INVESTMENTS, LLC, a Delaware
limited liability company; and
FVP Servicing,LLC, a Delaware
limited liability company,

          Plaintiffs,

   -vs-


HI BAR CAPITAL, LLC, a New York
Limited liability company, et
al.,,

          Defendants.
   _____/


                              -  -  -



            HEARING BEFORE THE HONORABLE JUDGE HAIMES


                   Monday, July 28, 2025
          BROWARD COUNTY COURTHOUSE, COURTROOM 17150
                 FORT LAUDERDALE, FLORIDA
                 9:00 a.m. - 9:30 a.m.



   Reported By:
   KIMBERLY SULLIVAN, Court Reporter
   Notary Public, State of Florida
   BAILEY & ASSOCIATES REPORTING, INC.
   Fort Lauderdale Office
   Phone - 954-358-9090
```

APPEARANCES:

On behalf of the Plaintiffs:
JERRELL A BRESLIN, Esquire
Schwartz | Breslin PLLC
169 E Flagler Street
Suite 700
Miami, Florida 33131-1203
305-577-4626

On behalf of the Franklin Parties:
PATRICK RICHARD DORSEY, Esquire
Shraiberg Page, P.A.
2385 NW Executive Center Dr
Suite 300
Boca Raton, Florida 33431-8530
561-443-0800.

On behalf of Avrumi Josh Lubin:
DAVID LANGLEY, Esquire
David Langley PA
8551 W Sunrise Blvd
Ste 303
Plantation, Florida 33322-4007
954-356-0450

On behalf of Hi Bar:
MATTHEW LETO, Esquire
Leto Law Firm
201 S Biscayne Blvd
Ste 2700
Miami, FL 33131-4330
305-341-3155
          -  -   -

(The following proceedings were had):

THE COURT:  All right.  So our court reporter is Kim Sullivan with Bailey Entin.

All right.  We are on the record.  Okay.  CACE22-5125, FVP Opportunity Fund III, LLP, et al.  Versus Scott Zangl, et al. Let me start with the plaintiffs.

Can I get appearances?

MR. BRESLIN:  Judge, I represent the FVP party.  Jerrell Breslin.  Thank you.

THE COURT:  Good morning, Mr. Breslin.

MR. DORSEY:  Good morning, Judge.  Patrick Dorsey, D-O-R-S-E-Y on behalf of the Franklin parties.

Judge, this is my first time appearing in this courtroom.  I assume you want me seated to be closer to the microphone or do you want me standing?

THE COURT:  No, no, no. If you want, you can use -- there is a microphone right there on the podium, so if you prefer.  And then what I can do as well, so if everybody wanted, I can always click this button here.  And then it -- yeah, on Zoom they can see you.

MR. DORSEY:  I'll just get seated, but I just want to make sure -- you know, sometimes I just want

you standing across from the Court, so --

THE COURT:  All right.  Good morning, Mr. Dorsey.

You represent the Franklin parties.

MR. DORSEY:  Correct.

THE COURT:  All right.  And then appearance on behalf of Scott Zangl.  Mr. Zangl is a no-show.

All right.  And then how about the remaining defendants?  Let me start with Mr. Lubin -- Avrumi Josh Lubin.

MR. LANGLEY:  Yes, good morning, Your Honor, David Langley.  I'm here for Mr. Lubin and for the invested party JL Special Investments.

THE COURT:  Okay.  All right.  And then we have some more people on Zoom.

MR. LETO:  Good morning.  May it please the Court, Your Honor.  Matthew Leto on behalf of the Hi Bar Parties.

THE COURT:  Good morning.  All right.  Anybody here for the Farache's?  I think that's how you pronounce it, right?

MR. LANGLEY:  This hearing, Judge, doesn't concern the Farache's.

THE COURT:  Okay.

MR. LANGLEY:  It's a counsel's hearing.

THE COURT: All right. So we're here on plaintiff's motion to strike the pleadings of Avrumi Josh Lubin. Let's start with that one.

MR. BRESLIN: Yes, thank you. Your Honor. Jerry Breslin here for the FVP Parties.

As I mentioned to Your Honor last week, this was not set before Your Honor for today for you to make the determination on the motion to strike. The motion to strike is substantial. It's 400 pages. There are 21 exhibits attached to the motion. And just to give you a general idea -- and what I'm asking Your Honor to do is to consider the motion and determine whether or not you would -- you would grant it if I could prove what's alleged in the motion. And if that's the case, then we can set it for an evidentiary hearing at some time prior to trial.

Because the trial, on the Lubin aspect of this case, was going to go first, and that's going to be scheduled for September 26th. So if Your Honor is inclined to have a hearing on it, after you review my motion, then we can schedule it at Your Honor's convenience.

So, Judge, just to outline the allegations in the complaint.

THE COURT:  Yeah, I can't do it.  This is a motion to strike pleadings based on fraud.  You're saying that there's been perjury, et cetera.

MR. BRESLIN:  Right.  There's just been a history -- a litany of things that have gone on for well over a year and it's still going on, Judge.  And so -- I've outlined it in my motion.  It would take me 15 minutes just to list it much less prove it.

And, you know, it's our position that the fraud on the Court by Mr. Lubin continues.  And the most recent fraud on the Court is being engaged by Mr. Lubin's latest gambit, and that is that Mr. Lubin has, as you will hear at some point, he entered into a common interest agreement with Hi Bar that was terminated a year ago.  And based on that agreement, he just re-files obstructive motions trying to say that he is Hi Bar, that he speaks for Hi Bar.

Hi Bar is owned by a gentleman by the name of Israel Ernst (phonetic).  Mr. Ernst is represented by Mr. Leto.  So Mr. Lubin has attacked Mr. Leto personally.  He's attacked me personally.  He's been insulting, disruptive, and, you know, it's outlined in the motion.  So -- and it goes on.  And the reason I say that it continues to go on is because

Mr. Langley has filed an appearance in this case for two parties.  He's filed an appearance as co-counsel for a pro se party, which, you know, quite frankly -- you know, I used to practice criminal law, and I've been involved in those, but I've never seen him in a civil case.  And then the second thing is he's filing motions and discovery requests, et cetera, from a party called -- it's not a party, it's a company called JL Investments.

JL Investments has never sought to intervene in this case.  They're not a party.  But Mr. Langley has filed an appearance for JL Investments, and he's just filing things on behalf of JL Investments because he suggests that Mr. -- that JL Investments has the rights of Hi Bar because Josh Lubin gave him the rights of Hi Bar pursuant to this terminated common interest agreement.

And it's worse than that because this assignment that has been filed of record that allegedly gives JL Investments some rights is an assignment that's dated in April, and after that assignment was filed, Mr. Lubin filed affidavits in other courts, including the bankruptcy court, where he says he's the assignee.

THE COURT:  So who's going to respond first?

Is it going to be either Mr. Langley?

MR. LANGLEY:  Yes, Judge.

Okay.  Your Honor, I've got a fairly lengthy response, if you'll allow it.  I don't need to talk to the jury.

THE COURT:  There you go.  Again, we're not hearing the merits of the case right now.

MR. LANGLEY:  I understand, Judge, but there's a lot of background here that kind of explains why Mr. Lubin, my client, has been rather frustrated during this case and has spoken his mind at times, which is what they're complaining about.

I first want to just mention the common interest agreement was not terminated.  There's a letter from Mr. Leto just simply saying, you didn't pay my attorney's fees, so we're terminating the agreement.  And they misrepresent the termination provision.  I'm getting a little off, but I think it's important for you to know that my client has interest pursuant to a common interest agreement.

THE COURT:  Let me just ask you -- let me just put it in context.  I had two trials.

MR. LANGLEY:  Yeah.

THE COURT:  Okay.  It was severed out.  The first trial is between the parties that are claiming

that funds that have been recovered by the trustee in the bankruptcy court.  And that is the trial that is supposed to go September 22nd for a week -- that week.  And then followed by the separate claims against the Farache's.  So you're only -- tell me how Mr. Lubin is somehow involved with either of those.

MR. LANGLEY:  Yes, Judge.  Okay.  So the one thing that nobody contests is that the Hi Bar lien is in first position.  It was the first thing that was recorded.

THE COURT:  Well, I think Mr. Breslin might contest that.

MR. LANGLEY:  Well, not as far as timing. There are motions to subordinate to various other things in the claim that it's usury, but it was recorded first.  There was an agreement between Hi Bar and Spin.  I represent the assignee of Spin here, so there is the common interest agreement. It's an actual assignment of these claims of that first position lien against all the assets to Spin. It's an absolute assignment.  And it also is a delegation of duties to control the litigation.  And so it was Mr. Lubin, who owns Spin Capital, who hired Mr. Leto, who controls the litigation for a

certain period of time until Mr. Leto declared the common interest agreement null and void because his fees were not paid.  That's a ridiculous claim. There's no basis for him to do that.  We contend the common interest agreement still stands.

More recently, and this is another misrepresentation, I believe, by Mr. Breslin, if you look at my motion to substitute party.  I had one hearing before you, Judge.  I just noticed in on this case May 1st. We had a hearing on a motion to strike, a motion for summary judgment.  I was representing JL Special Investments.  You told me I should file a motion to substitute, which I did.  I did July 9th.

THE COURT:  I'm sure I didn't tell you you should do that.

MR. LANGLEY:  Well, you said -- you asked me to do something --

THE COURT:  To clarify, if you're not a party, you can't.  Okay.  So -- and you decided that. Again, I don't give advice to attorneys.  I don't give advice to parties.

MR. LANGLEY:  You asked me to clarify.

THE COURT:  Okay.

MR. LANGLEY:  And then pursuant to Rule 1.260C,

which says if there's an assignment, you substitute the party.  Right on the first page of my motion to substitute, I point out that there is one assignment to Mr. Lubin of the rights under the common interest Agreement -- the rights to the Hi Bar claims.  Basically the rights to collect the money.  There's a separate assignment that's attached to my motion, that's an April assignment to JL Special Investments.  That's an assignment and a delegation of duties to control the litigation.  So it may be a little confusing, but it certainly isn't fraud on the Court as Mr. Breslin alleges.

And, Judge, I noticed in -- I'm almost as new to the case as you are.  I noticed in on May 1st. I listened to your two-hour hearing on May 1st. And as you, again, mentioned today, there are three years worth of litigation, and we still have a fourth amended complaint with 30 counts in the complaint, that's 92 pages and a lot of documents and not a whole lot of resolution of issues.

What I would add to that observation is that it appears that the strategy of the parties is not to resolve issues on the merits, but to attack parties and attack attorneys and, you know, file motions for sanctions.

Judge, there have been 12 motions for sanctions filed in this case.  17 motions to strike.  The plaintiff even filed a motion for leave to add punitive damages in a UCC case.  I was served with a notice under 57105 for my notice of appearance.  My client has been served with three different motions for sanctions by former counsel, Mr. Leto.  I was served with a notice on May 8th, a 57105 notice, on a pleading that I never filed or signed.  And what's really troublesome, Judge, is Friday in the bankruptcy case, Mr. Breslin filed a motion claiming fraud on the Court, naming me, claiming I committed fraud on the Court.  And yesterday in this case, he filed a motion stating the same thing.

He misrepresents what I put in my motion to substitute.  No, there hasn't been a motion to intervene, but there is a motion to substitute that explains the two different assignments and reconciles them.  It's not fraud on the Court, and in any event, I'm representing both parties.  So I'm representing basically the parties that are claiming rights under the common interest agreement.

Now, as far as the merits of Mr. Breslin's motion, I understand that certain parties have been offended by some of Mr. Lubin's comments, but I

think you can understand, Judge, he's the one claiming the right to the first position lien, and he's the target of everybody's motions and motions for sanctions and claims of fraud on the court. What I would point out is two things.  One is Judge Tudor basically already heard this.  August 25, 2024, FVP filed an urgent ex parte motion asking for an order to show cause.  The next day, August 26, there's an order from Judge Tudor, ex parte order to show cause.  That resulted in a hearing where all the parties were directed to show up in the courtroom, and on September 25, Judge Tudor entered an order on the ex parte order to show cause.  It vacated the order to show cause.  It said that the common interest agreement should be produced, which it has been, and it authorized discovery against Lubin and Spin, including Mr. Lubin's deposition. So he has complied with that.

THE COURT:  To strike a party's pleadings, you've got to show a direct violation of the court order and numerous warnings, and we don't have that here.

THE COURT:  Okay.  We're not hearing the merits of this, all right?

MR. LANGLEY:  Okay.

THE COURT:  And so just the context.  I'm not

sure why this is even on today, but I guess it's related to the motion to stay as well.

MR. LANGLEY:  I believe separate, Judge.

The point I'm trying to make, there's been a lot of difficulty, a lot of aggressive litigation by all the parties.  Striking somebody's pleadings is the most severe sanction.  If you look at the case law that I cited, and I've uploaded it to you, Judge, that shouldn't take place.  There shouldn't even be a motion to strike until a party has disregarded court orders, disregarded numerous warnings, which hasn't happened here.

If you're going to do anything, I would suggest you do it to all the parties.  In the punitive damages area, a party has to seek permission.

THE COURT:  I've got to cut you off at some point.  Because, again, we're not here --

MR. LANGLEY:  I'm just saying if you're going to order any kind of sanctions --

THE COURT:  You can make that argument when we actually have the hearing on that.  All right.  If we do have a hearing on it.  All I know is I have a special set trial over the proceeds that were collected by the bankruptcy trustee on September 22nd.

Are you part of that case?

MR. BRESLIN:  Yes, I am.

THE COURT:  Are you part of that trial?

MR. BRESLIN:  Yes, I am.

THE COURT:  Okay.  You have a motion.  You're saying you're part of the Franklin's motion to intervene, and now you want to substitute parties?  Something to that effect and they want to strike you out.  Then we have a motion to stay.

Let me just real briefly, Mr. Leto, do you want to weigh in.

MR. LETO:  Yes.

THE COURT:  And then I will hear from Mr. Breslin why we're even here this morning.

MR. LETO:  Yes, Your Honor.  I mean, just to weigh in on the factual recitation from Mr. Langley, I just want Your Honor to understand that the common interest agreement is terminable at my client's sole discretion.  Sole discretion is the language used for any reason, and Mr. Lubin violated the agreement in numerous ways, which is why it was terminated more than one year ago.

And I'll just add that there is no claim by Mr. Lubin to these proceeds at all in this case.  No pleading asks for that relief.  Only Hi Bar asks for

that relief.

And then finally, I just want Your Honor to understand that the parties that do have a claim to those funds, meaning Hi Bar, Franklin, and FVP, did reach a resolution as to the distribution of those funds. So just as far as the trial that's going to be upcoming in September --

THE COURT:  That's been settled?

MR. LETO:  I believe, yes, that we have to get approval to have the funds released from the bankruptcy court, which I think we're going to be able to achieve based upon the order that was received this morning from Judge Kimball.  However, we haven't reached that position, and we have to have a hearing on that.  But if that occurs, which we expect it to occur, the trial in September, the first one, would only be the -- I guess, affirmative claims by FVP against Mr. Lubin for fraud, whatever else they've claimed against him.  But it would not be related to the funds because the only three parties that have claims to those funds.  Right now the first trial haven't resolved those issues at this point.

THE COURT:  Okay.

MR. LANGLEY:  Can I just briefly respond to

that, Judge?

THE COURT:  All right.

MR. LANGLEY:  I'd like to read you the termination provision that Mr. Leto just said was terminable at will for any reason.

It says, in the event Hi Bar, in its absolute discretion, is not satisfied with Spin Capital's management of defensive counterclaims against Hi Bar, then Hi Bar shall provide written notice of such decision.

So it's not just wipe out this $2 million claim at will for any reason.  It's if they're not satisfied with the defense of the counterclaims.

THE COURT:  Okay.

MR. LANGLEY:  The counterclaims have been dismissed.

THE COURT:  How does that affect me, though, in this case?

MR. LANGLEY:  Just to point out that the common interest agreement still stands.

THE COURT:  All right.

MR. LANGLEY:  And so it's basically --

THE COURT:  I'm the one to make that determination, correct?

MR. LANGLEY:  No, but Spin --

THE COURT:  Okay.  So as far as I'm concerned, why does it affect me?  It doesn't affect me.  It does affect this trial.  It doesn't affect this case.

MR. LANGLEY:  It does affect the trial. Mr. Leto is saying any money that goes in favor of the first position lien for Hi Bar goes to Hi Bar. But the common interest agreement says it goes to my client with a waterfall provision.

THE COURT:  Is that a claim in this case?

MR. LANGLEY:  Yes, Judge.  Our claim is by way of --

THE COURT:  Don't you have to go take that up with a bankruptcy judge?

MR. LANGLEY:  We did file a motion to substitute.

THE COURT:  All right.  Good luck over in bankruptcy.  All right.

MR. LANGLEY:  Judge Kimball denied everything, but this morning he granted a motion for reconsideration.  I haven't read his order yet.  I'm not sure what he's going to consider.

THE COURT:  Okay.

MR. LANGLEY:  But the same issue is around --

THE COURT:  So then that doesn't -- why do I

even need to address this?  Mr. Breslin, it shouldn't even matter, correct?  It's moot.

MR. BRESLIN:  Well, Judge, here's what Mr. Langley left out.  And Mr. Leto is correct, and I'm going to address that if Your Honor wanted to get into it, there's two things going on with the claims against Mr. Lubin and his company.  FVP has sued them for fraud.  We sued Hi Bar for fraud and Lubin for fraud, and his company spent for engaging in a conspiracy to -- we alleged they engaged in a fraud --

THE COURT:  Let me ask you a question.  Have you resolved all the issues with respect to the money collected by the trustee in the bankruptcy --

MR. BRESLIN:  Yes.

THE COURT:  You-all had worked that out.  The claims against the Farache defendants, that's only brought by FVP, correct?

MR. BRESLIN:  Correct.

THE COURT:  So, Mr. Leto, your clients would be out, right?  If it's resolved and approved by the bankruptcy court, your clients would be out, correct?  Mr. Leto?

MR. LETO:  No. Wait.  I'm sorry, Judge.  Say that one more time.

THE COURT:  If the bankruptcy court approves you-all's agreement over the funds collected by the bankruptcy trustee, you're out, correct?  You have nothing left in this case, right?

MR. LETO:  I have no further claims at that point.

THE COURT:  Okay.  So any issues between Hi Bar and Mr. Lubin and Mr. Lubin's company SLID, or JL Investments, whatever, that's not part of this case, correct?

MR. LETO:  There's not -- there's no pleading on that issue anywhere in this case.

THE COURT:  Okay.  So what would be left then is FVP claims against the Farache's who took the cars to begin with before they got --

MR. BRESLIN:  No, Judge, what would remain is the FVP claims against Lubin.  Graner, who there's a default against.  So there would be a first trial, Judge.  So it's not like the first trial disappears. Hi Bar disappears out of the first trial, except for the company Hi Bar, because we're seeking the --

THE COURT:  At that point, there'd be no reason to sever out because it seems like it's fraud claims, and you might as well do them all against Lubin while you do them against the Farache's.

MR. BRESLIN:  Well, Judge, that issue is up before Your Honor.  But the only claims that would remain are the fraud claims against Lubin and Graner, which there's a default.  The Farache's are not named in those accounts.  There's the New York defendants' fraud claims, and there's the Farache defendants' fraud claims.

THE COURT:  Let me do this, when do you have a hearing to get your settlement approved by the bankruptcy court?

MR. BRESLIN:  Well, Judge, we don't know yet, but the judge just issued an order reconsidering.  I filed a motion to reconsider.  Judge Kimball reconsidered, and he indicated that he now will release the funds in the bankruptcy court.  That will negate all claims to the bankruptcy funds regarding crime.

THE COURT:  Okay.  When will that be done?

MR. BRESLIN:  The only remaining will be the fraud claims.

THE COURT:  When?  The question is when.  When will that be done?

MR. LETO:  The order at the bottom of the order, I guess, requests that this clerk set a

hearing on this regular motion calendar.  So we haven't gotten that notice of hearing yet, but I imagine it will be fairly quick.

THE COURT:  Probably in the next couple weeks, right?

MR. LETO:  Yeah, I would say that.  Okay, so --

MR. LANGLEY:  If I may, Judge, there's something they're both skipping over.  In both this case and the bankruptcy case, there are motions pending to determine if the common interest agreement was actually terminated, and if it's not, then for my clients to substitute it in place of Hi Bar.  So it hasn't been resolved.  They want to convince you that it's been resolved.

THE COURT:  These are issues for the bankruptcy court.

MR. LANGLEY:  No, there's a motion pending before Your Honor.

THE COURT:  To do what?

MR. LANGLEY:  To declare that the common interest agreement is still valid.

THE COURT:  Okay.  Well, why would I do that if you have another judge that's going to consider it, right?

MR. LANGLEY:  Well, that's a very good

question, Judge.  And if you want Judge Kimball to determine that, it might be helpful to put that on the record so all of us can tell him that.

THE COURT:  All right. Well, I don't think I need to tell him that.  He's a federal bankruptcy judge.  He can do that if he wants to.

MR. LANGLEY:  He seems disinclined to get into a fight amongst the parties.

THE COURT:  Well, in any event, let me set you all for August 13th.  I'm going to put you on at 10 o'clock for a two-hour hearing.  Hopefully, at that point -- it will be a two-hour status.  All right. Hopefully you all will have a little more clarity for me, and then we'll figure out what needs to be set where.

All right.  But the only other issue I had was there was the motion to stay.  That has to do with the Franklin parties.

What's this Michigan litigation?

MR. DORSEY:  The August 13th is just on Mr. Breslin's motion.

THE COURT:  No, it's going to be a status for the whole case.  I want to figure out where we're at.  Yeah, make it 10:30 start time.

MR. DORSEY:  Yeah, we just have a pretrial

conference actually in a related adversary proceeding that's not related to the release of the funds before Judge Kimball at 10 a.m. so I just wanted to let Your Honor know that.

THE COURT:  All right.  So that might not work.  How about we do it at 1 o'clock?

MR. LANGLEY:  Works for me.

THE COURT:  All right.  So August 13th -- we'll make it 1:30.  1:30.  And we'll put it on for an hour.  Just one hour.  It's going to be a status, so I can figure out what's going on at that point in the case.  All right.

MR. BRESLIN:  Judge, are you going to rule on whether or not I get a hearing on my motion to strike?

THE COURT:  Not right now.  I want to have a little more clarity and figure out what's --

MR. BRESLIN:  Thank you, Judge.

THE COURT:  What I don't want to do is a whole bunch of duplication and a whole bunch of -- it seems like you're asking me to do stuff that might be already -- might be moot, depending on your -- I've got to figure out what the bankruptcy court judge says, and if the funds are all distributed, I'd like to narrow this rather than -- we've already

got 1,800 -- over 1,800 filings in a case that's three years old.

The idea is to try and bring closure to closure, not create more issues in the case.  All right?

MR. BRESLIN:  Thank you, Judge.

THE COURT:  We'll see where we're at after the bankruptcy court cleans some things up.

So what's this motion say?  Is that a Michigan case?

MR. LETO:  Correct, Judge.  And my presentation will be mercifully briefer than what you heard, and I think it will go a long way towards cleaning up the issues, is my hope.

There are two components to the trial in September.  Who's in first place --

THE COURT:  Yes, you have all --

MR. LETO:  Who's in first place among the lenders --

THE COURT:  Don't stop recording or transcribing.  Yep.

MR. LETO:  Who's in first place among the lenders and various tort claims against Mr. Lubin?  That's what's going to be tried in September.

As you heard, the lenders have settled.  We're

FVP OPPORTUNTY FUND III, LP, a Delaware limited partnership v. HI BAR CAPITAL LL

going to the bankruptcy court.  That's going to resolve who's in first.  So I think the only thing that's going to be tried in September will be various tort claims against Mr. Lubin.

My client --

THE COURT:  Followed by tort claims against the Farache's.

MR. LETO:  Followed by a separate trial with separate tort claims against the Farache's, which arise -- I don't think they should be tried together, Judge, because they arise from different fact patterns.

THE COURT:  Okay.  That's what I need to know.

MR. LETO:  Yep.  In 2022, my client sued Mr. Lubin's wholly owned company, Spin Capital, for the same facts that are alleged in this case.  They basically said that Mr. Lubin committed fraud by entering into an assignment agreement, that he subsequently breached the assignment agreement, and they obtained a $5.4 million judgment against Spin Capital.

Again, the facts alleged in that case are substantially identical to the facts alleged here. The Michigan court entered a lengthy order, final judgment, in which it included Mr. Lubin lied in

entering into the assignment agreement, that he damaged the underlying borrowers, that he damaged Franklin.  This is all going to further narrow the issues at trial because it's all going to be collateral estoppel res judicata.

Why would we try the same matters twice?  So all my motion to stay says is, look, we have a Michigan final judgment calling Mr. Lubin a liar, which he is.  Let's have collateral estoppel apply. Let's have the Court analyze the findings of that final judgment prior to the trial, so we're not trying the same things over again.

I think, by the way, Judge --

THE COURT:  Why would there be a motion to stay?

MR. LETO:  Because, Judge, sometimes when I ask state court judges for their availability, they tell me sometimes it's 2027.  I filed a motion for summary judgment based on the collateral estoppel effect of the Michigan judgment.  If that's heard before the trial, I think we're good.  I just wanted to make sure I had a chance to show Your Honor that these issues were final before trial occurred.

THE COURT:  All right.  Response?  And, by the way, you're talking about you need a hearing before

this Court, by then?

MR. LETO:  Correct on the preclusive effect of the Michigan judgment.

THE COURT:  When do you want the hearing?

MR. LETO:  I apologize.  The motion was filed in late June, so I believe Mr. Langley's response is due in early August, so if we could have that summary judgment hearing in mid-August, that would be fine with me.

THE COURT: All right.  Pick a day.  August -- well, you want me to hear this one after we do our status on August 13th?

MR. BRESLIN:  Same date?  I would mention, Judge, I need to file a response.  I'm going to file a counter-motion for summary judgment.  I don't think that's going to delay things up.  It'll just be a counterargument to Mr. Dorsey's --

MR. LETO:  Your Honor, if you can fit it in.  I think this is pretty cut and dry, that we don't need two courts calling Mr. Lubin a liar when one already has.  So if you can fit this in on August 13th, I'll stay as late as you want.

THE COURT:  All right.  We'll have that August 13th.

MR. LETO:  Okay.

THE COURT:  So instead of one hour, how much time?  30 minutes?

MR. BRESLIN:  I would say maybe more --

MR. LETO:  I do think, Judge, this is the rare summary judgment motion, which I will think -- it's case dispositive.  So I really want time to flush it out.

THE COURT:  So at 2:30.  I'll give you an hour.

MR. LETO:  Thank you.

THE COURT:  All this will be in person.

MR. LETO:  Perfect.

MR. DORSEY:  Judge, does that resolve the motion to stay?

THE COURT:  Yep.

MR. DORSEY:  So don't need a response from me?

THE COURT:  No.

MR. LETO:  I told you it would be shorter.

THE COURT:  All right.

MR. BRESLIN:  And all the comments I made, Judge, none of those apply to Mr. Dorsey.  He's been a perfect gentleman in this entire case.

MR. DORSEY:  I appreciate it.

THE COURT:  All right.  So we'll see August 13th at 1:30 for a one-hour status, followed by 2:30 for a motion for summary judgment.  All right.  Good

luck in the bankruptcy court, everyone.  Thank you very much.

MR. BRESLIN:  Thank you, Your Honor.  Have a great day.

(Thereupon, the hearing was concluded.)

-   -   -

C E R T I F I C A T E

- - -


        I, Kimberly Sullivan, Reporter, State of

Florida at Large, certify that I was authorized to

and did report the foregoing proceedings and that the

transcript is a true and complete record of my

stenographic notes.

        This Zoom hearing occurred using

videoconference technology, and it is therefore

subject to the technological limitations of court

reporting remotely.


        Dated this 30th day of July. 2025.


                /s/ Kimberly Sullivan
        _____

                Kimberly Sullivan, Court Reporter