UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

AUTO WHOLESALE OF BOCA, LLC,                    Case No. 22-15627-EPK

    Debtor.                                         Chapter 7

_____/

## NOTICE OF FILING STATE COURT HEARING TRANSCRIPT

Franklin Capital Funding, LLC, Franklin Capital Group, LLC and Franklin Capital Management, LLC (jointly and severally, "Franklin" or the "Franklin Parties"), by and through undersigned counsel, hereby file the attached hearing Transcript from August 13, 2025 in the *FVP Opportunity Fund III, L.P. v. Karma of Broward Inc., et al.*, Case No. CACE22-005125, in the Circuit Court of the 17th Judicial Circuit, in and for Broward County, which relates to the *Expedited Joint Motion to Order Distribution of Auction Proceeds to Counsel for the FVP Parties Pursuant to State Court Order* **[ECF No. 954].**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing to those parties registered to receive electronic noticing on August 19, 2025.

**SHRAIBERG PAGE, P.A.**
Attorneys for Franklin
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047

By:  /s/ Patrick R. Dorsey
      Patrick R. Dorsey, Esq.
      Fla. Bar. No. 0085841

{2425/000/00549705}

Page 1

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

Case No. CACE-22-005125

FVP OPPORTUNITY FUND III, LP, A DELAWARE
LIMITED PARTNERSHIP; FVP INVESTMENTS, LLC,
A DELAWARE LIMITED LIABILITY COMPANY; AND
FVP SERVICING LLC, DELAWARE LIMITED
LIABILITY COMPANY,

    Plaintiffs,

vs.

KARMA OF BROWARD, INC.,
a Florida corporation, et al.,

    Defendants.
_____/
HI BAR CAPITAL, LLC, a New York
limited liability company, et al.,
    Plaintiff,
V    Case No. CACE-22-06401
KARMA OF PALM BEACH, INC.,
a Florida corporation, et al.,
_____/

Judge David Haimes
Broward County Courthouse
201 Southeast Sixth Street,
17150
Fort Lauderdale, Florida 33301
August 13, 2025
1:30 p.m. to 4:50 p.m.

ALL PENDING MOTIONS and
MOTION FOR SUMMARY JUDGMENT

Reported By:
Cheryl L. Jenkins, RPR, RMR

Page 2

APPEARANCES:

SCHWARTZ BRESLIN, by
JERRELL "JERRY" BRESLIN, Esquire
    and
BUSCHEL GIBBONS, by
ROBERT BUSCHEL, Esquire
    and
COHEN & MCMULLEN, by
MICHAEL MCMULLEN, Esquire
BRADFORD COHEN, Esquire
    and
JONATHAN SCHWARTZ, Esquire (via Zoom)
On behalf of the Plaintiffs, FVP Opportunity Fund III,
LP, a Delaware Limited Partnership; FVP Investments,
LLC, a Delaware Limited Liability Company; and FVP
Servicing LLC, Delaware Limited Liability Company

KATZMAN WASSERMAN BENNARDINI & RUBINSTEIN, by
CHARLES BENNARDINI, Esquire
    and
SCOTT C. GHERMAN, P.A., by
SCOTT GHERMAN, Esquire (via Zoom)
On behalf of the Defendants,
Lisa Farache, Moshe Farache,
1001 Clint Moore, LLC/Auto Wholesale of Boca

LETO LAW FIRM, by
MATTHEW LETO, Esquire
On behalf of the Defendant, Hi Bar

SHRAIBERG PAGE, by
PATRICK DORSEY, Esquire
On behalf of Franklin Capital Funding
and Franklin Capital Group

Page 3

CONTINUED APPEARANCES

DAVID LANGLEY, Esquire
    and
KASEN & KASEN, by
MICHAEL KASEN, Esquire (via Zoom)
On behalf of Avrumi Lubin and JL Special Investments

STEVEN MEYER, Esquire (via Zoom)
On behalf of MMS Ultimate Services, Incorporated

AKERMAN, by
BRETT MARKS, Esquire (via Zoom)
On behalf of Millco-Atwater

ALSO PRESENT

Katie Gleason, Esquire
Lisa Farache
Moshe Farache

Page 4

THE COURT: Okay. So, we are now on the record, all right? So, everything else had nothing to do with the case.

All right. So we're on the record in Case CACE-22-5125, FVP Opportunity Fund III, LP, et al. versus Scott Zankl, et al.

Let me start with the plaintiffs. Can I get appearances?

MR. BRESLIN: Good morning, Judge. Jerry Breslin for the FVP parties.

THE COURT: Good morning, Mr. Breslin, and who else is with you?

MR. BRESLIN: Michael McMullen, Brad Cohen, and Rob Buschel.

THE COURT: All right. Good afternoon.

MR. COHEN: Good afternoon, Judge.

THE COURT: All right. Everyone on Zoom, could you hear that? There's four attorneys for the plaintiff. Could you hear them all?

MR. GHERMAN: Yes.

THE COURT: Okay. Perfect.

And then now for the defense, let me start with Mr. Zankl.

(No verbal response.)

THE COURT: All right. Mr. Zankl is not

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

Page 5

here. He's not on Zoom.

All right. So let me go for the rest of the co-defendants. Who wants to go first?

MR. BENNARDINI: Good afternoon, your Honor. Charles Bennardini on behalf of Lisa Farache, Moshe Farache, 1001 Clint Moore, and nominal defendant Auto Wholesale of Boca, and with me on Zoom is my co-counsel, Mr. Gherman. Mr. and Mrs. Farache are also in the courtroom, along with another one of their lawyers, Katie Gleason. Thank you, Judge.

THE COURT: All right. Good afternoon, Mr. Bennardini, Mr. Gherman, as well as the Faraches.

All right. Can I get appearances for the remaining co-defendants?

MR. LETO: Yes. Good afternoon, your Honor. I'm Matthew Leto, on behalf of Hi Bar Capital, Mordecai Herbst, and Yisroel Herbst (phonetic).

THE COURT: All right. Good afternoon, Mr. Leto.

All right, and then we have next?

MR. DORSEY: Good afternoon, Judge. Patrick Dorsey, D-O-R-S-E-Y, on behalf of the Franklin parties, Franklin Capital Funding and Franklin Capital Group.

THE COURT: All right. Good afternoon,

Page 6

Mr. Dorsey.

MR. DORSEY: Thank you, Judge.

THE COURT: And then next?

MR. LANGLEY: Yes, good afternoon, your Honor. David Langley here for Avrumi Lubin and JL Special Investments.

THE COURT: All right. Is Mr. Lubin -- Mr. Lubin is not here.

MR. LANGLEY: I think he's trying to get on Zoom, or maybe he's waiting until 2:30.

THE COURT: Okay. I do not see him on Zoom, and nobody's in the waiting room, so --

MR. LANGLEY: Okay.

THE COURT: All right, and then -- all right. Anybody else on Zoom that hasn't made an appearance that wants to make an appearance?

MR. KASEN: Good afternoon, your Honor. Michael Kasen, the law firm of Kasen & Kasen, representing Avrumi Lubin. I think that I have a pro hac vice motion pending, your Honor, that was filed earlier today.

THE COURT: So you're with Mr. Langley?

MR. KASEN: I am.

Okay. Any objection from anybody to the pro hac vice motion?

MR. BRESLIN: No, Judge.

Page 7

THE COURT: No. All right, and I take it you're a member in good standing, et cetera?

MR. KASEN: I am, your Honor.

THE COURT: All right. So that's granted.

MR. KASEN: Thank you, Judge.

MR. MEYER: Your Honor, I'm Steven Meyer here. I represent Defendant MMS Ultimate Services, Incorporated.

THE COURT: All right. Good afternoon, Mr. Meyer. I'm sorry, you represent MMS?

MR. MEYER: Correct.

THE COURT: Okay. All right. I think that's everybody, right?

Oh, wait, there's Mr. Schwartz?

MR. BRESLIN: Yes.

MR. COHEN: He's on our side, Judge.

MR. SCHWARTZ: Yes, Judge, Jonathan Schwartz. I'm just observing today. I'm co-counsel with Mr. Breslin, Mr. McMullen, Mr. Cohen, and Mr. Buschel.

THE COURT: All right. Good afternoon, Mr. Schwartz.

MR. SCHWARTZ: Good afternoon, Judge.

THE COURT: Let me just see here. How about Brett Marks?

Page 8

MR. MARKS: Judge, good afternoon. This is Brett Marks, with Akerman, LLP. I represent one of the adversary defendants, Millco-Atwater. We don't have any motions at issue today. We're just observing the hearing.

THE COURT: All right. You are welcome to observe, it's a public courtroom. All right. Good afternoon, Mr. Marks.

All right, now I think I have everybody.

All right. We're here, I've got the afternoon for you. Let me start with what hopefully is the easier one, and will save me a lot of time going forward, and that is the joint motion to approve settlement. Let me pull that up.

All right. Is there an objection from anybody? Just the Lubin parties --

MR. LANGLEY: Yes, Judge.

THE COURT: -- I take it, correct?

MR. LANGLEY: Yes, Judge. We filed an objection. I don't see it showing up on the docket, but I would advise the Court that the same motion was filed in the bankruptcy case with Judge Kimball, and he denied it last night.

THE COURT: Why did -- what was the basis for his denial?

MR. LANGLEY: He read through our motion,

2 (Pages 5 to 8)

Page 9

which shows that Mr. Lubin actually has an interest in the funds. The three other parties are attempting to take the funds for themselves and to cut out Mr. Lubin, who's the assignee of Spin, and who is the assignee of Hi Bar.

THE COURT: Okay.

MR. LANGLEY: And based on just a letter from Mr. Leto saying the common interest agreement is invalid, they're claiming that we're not a part of it.

THE COURT: All right. That's the 2:30 motion for summary judgment, right?

MR. LANGLEY: Correct, yes, Judge.

THE COURT: So --

MR. LANGLEY: That hasn't been heard yet.

THE COURT: Well, it's part of it.

MR. DORSEY: I'm sorry, I just need to correct a misstatement. Judge Kimball denied the motion because he said he didn't have jurisdiction over the issue. He said, if there's a dispute, I want the state court to decide.

THE COURT: Okay.

MR. DORSEY: He didn't determine anything.

THE COURT: So if I grant the motion, then you go back -- I'm sorry, deny the motion, it's not going to go back, right?

MR. BRESLIN: Correct.

Page 10

MR. LANGLEY: If I can add just one thing, Judge, and Mr. Dorsey is correct, but there's some very good language in that order that I think the Court should look at that we quoted in our response, which has been uploaded.

And, Judge, I would point out that the urgency of the motion is that Judge Kimball doesn't want to keep the money in the bankruptcy court registry.

We're fine with either moving it to the state court registry or to Mr. Breslin's trust account. We just don't want it dispersed from there until you make a decision on --

THE COURT: Let me ask you a question, though. Say --

MR. BRESLIN: Judge, it's our motion, if we could argue it?

THE COURT: No, I know.

Say Mr. Lubin was successful, and at the end of the day, he wins every one of his claims. He doesn't get the entire pot, right?

MR. LANGLEY: There's a waterfall provision back to Mr. Leto's client. Right, so he doesn't get it all, but he gets 70 percent, at least, for the first million.

THE COURT: So he gets 700,000 --

Page 11

MR. LANGLEY: Well --

THE COURT: -- is the most he can get out of anything?

MR. LANGLEY: No, no, no. I mean, there's over 2 million in the bankruptcy court.

THE COURT: Right.

MR. LANGLEY: Mr. Leto is holding some funds. There may be other funds out there, but it's the Hi Bar's claims, as they're defined in the common interest agreement, were assigned to Spin. They were subsequently assigned to Mr. Lubin. There's a waterfall provision back to Hi Bar. So it starts at 70 percent to Spin, 30 percent to Hi Bar, and then it goes down from there, depending on the amount, that's all spelled out in the common interest agreement, but the majority of the funds would go to Mr. Lubin.

THE COURT: And so you're going to tie up everything just based on Mr. Lubin -- because it sounds as though --

MR. LANGLEY: Well, Judge --

MR. BRESLIN: If I could --

MR. LANGLEY: -- you need to decide who the common interest is.

THE COURT: I just had a quick question about that to begin with. So let me start over then.

Page 12

So we're here for the joint motion to approve settlement. Who wants to take the lead on that?

MR. BRESLIN: Yes, thank you, Judge. I'd like to go first.

Judge, the joint motion was filed by me. It was filed on behalf of the FVP parties, the Franklin parties, and the Hi Bar parties.

Judge, if you take a look at the complaint, the FVP parties and the Franklin parties have sued Hi Bar Capital, as well as the members of Hi Bar Capital, Yisroel Herbst and Mr. Dorsey, through his cross-claim, the Franklin cross-claims, have sued his son, Mordecai.

Judge, the reason that we are here is because we initially went to the bankruptcy court, because this whole matter began when Mr. Farache took the vehicles off the lots at 101 Clint Moore, and then he declared bankruptcy, AWB declared bankruptcy, the cars went to the bankruptcy court. There were three parties fighting in the bankruptcy court over those vehicles, FVP, Hi Bar, Franklin.

So there were three companies.

THE COURT: I remember. That was going to be our first trial, was to see who had priority over that, but now you've settled it --

MR. BRESLIN: Right, so --

3 (Pages 9 to 12)

Page 13

THE COURT: -- and so I don't have to have my first trial as long as I approve the settlement.

MR. LANGLEY: Correct.

MR. BRESLIN: Right, right. So that priority issue got kicked back to this Court, and so the priority issue was scheduled to go to trial in September with trial number one, and trial number one are the Hi Bar parties, movement; trial number two, the Farache parties.

So FVP, Franklin, and Hi Bar, and Hi Bar is represented by Mr. Leto, entered into a settlement agreement. So we've entered into a settlement agreement to resolve all the issues before your Honor.

And what we did was, we entered into the settlement agreement. We then went over to the bankruptcy court. We advised Judge Kimball that we entered into a settlement agreement.

Mr. Lubin filed an objection in the bankruptcy court saying, well, wait a second, I have rights there and, Judge Kimball, I don't want you to rule.

And so what Judge Kimball did was he then kicked it back to your Honor to make a determination as to whether or not we have an enforceable settlement agreement, and let me tell you why we do.

We've entered into a settlement agreement, Judge, but the three named parties to the settlement

Page 14

agreement are FVP, Franklin, and Hi Bar.

So what is Mr. Lubin's objection?

Hi Bar signed the settlement agreement. So we have a -- we've entered into an agreement with Hi Bar, it's signed, sealed, and it's in effect.

So Mr. Lubin objects because he says that, I entered into an agreement years ago with Hi Bar, where I agreed with Hi Bar that I would fund some of the litigation, and in return for that, I would be entitled to some of the proceeds. So they have what's called a common interest agreement. Their common interest agreement was more or less an assignment of claims in various lawsuits to which Spin would be entitled to some proceeds if there was a recovery.

So a year ago Mr. Leto notified Mr. Lubin that that agreement is breached, that's the common interest agreement. So he gave them a notice of breach. Since that time Hi Bar has been paying their own bills. So to the extent that there ever was an agreement, it has been terminated.

Let's assume for the moment that it was never terminated. If it was never terminated, Judge, Mr. Lubin does not have rights under that agreement to substitute in as a partner. Mr. Lubin -- the only rights Mr. Lubin has under that agreement is to sue Hi Bar, and

Page 15

that's our position, and that's the position that I made in the joint motion.

So we have an agreement. We have a settlement agreement. We want your Honor to endorse the settlement agreement so we can go back to Judge Kimball and say that this agreement has been endorsed, but Mr. Lubin objects to it because he says that our agreement breaches his agreement.

Well, the legal issue here is when Hi Bar signed that settlement agreement with FVP and Franklin, did they have the power to do so? And they did, of course they did. They had the power to sign that agreement. The only question is -- and even if it breached the prior agreement, they still have the power to enter into the agreement, and that gives Lubin a cause of action.

Why is that relevant? Because if you look at the common interest agreement, if Lubin, if there's a default under the common interest agreement, then Lubin would have to bring an action in New York, because the sole jurisdiction under that agreement is in New York. He would have had to have, a year ago, when he was noticed of the termination, brought an action in New York to try to somehow get an order from a New York court that would be honored by your Honor to give him some rights here.

But, Judge, the case is here, Hi Bar is the

Page 16

party. Josh Lubin is not the party. Josh Lubin is trying to say that I want to substitute in and become Hi Bar, but that's just an absurd ask, legally and factually, because what's he saying, I want to become Hi Bar? We're suing Hi Bar for 7.5 million. We've settled that. So what is it, is Mr. Lubin saying, well, I want to become Hi Bar, but if there's a judgment against me for 7.5 million, I'm going to personally pay it? He's not saying any of that. So what it is, it's just, it's obstructionism.

So he has no legal grounds to prevent your Honor from endorsing the settlement agreement, because Hi Bar is Hi Bar. They're their own company.

THE COURT: Well, I understand your argument. All right.

MR. BRESLIN: They're --

THE COURT: Let me do this, I take it everybody else is in agreement, correct, except for Mr. Lubin?

MR. LETO: Yes, your Honor. I also just want to add one more thing, if we can, Hi Bar.

THE COURT: Go ahead.

MR. LETO: If I can?

The only other thing I wanted to add is, Mr. Lubin also has literally no claim in this case. In his pleadings, there's not a single pleading that he filed

4 (Pages 13 to 16)

Page 17

that asks your Honor to deal with this cooperation agreement, make a declaratory judgment about it, nothing. He's simply a defendant right now, that's all he is. So there's nothing even before your Honor which would give him any rights to have a decision made that he has rights under this agreement.

THE COURT: Let me ask you, did he file a proof of claim in the bankruptcy case?

MR. LETO: No, he doesn't have a claim.

MR. DORSEY: He has not.

THE COURT: All right. So he's got no claim here, he's only a defendant, and no claim in the bankruptcy case?

MR. LETO: Right, and just to kind of tie it off, under this cooperation agreement, it is terminable at Hi Bar's absolute discretion.

THE COURT: No, I understand.

MR. LETO: So --

THE COURT: That goes to the merits, and part of what was argued by Mr. Breslin as well goes to the merits. I'm not going to get into the merits of whether Lubin has a claim against Hi Bar or not for purposes of determining whether to approve the settlement. I just need to see if he even has basically standing or whatnot even to contest it, and so that is now directed to you,

Page 18

Mr. Langley.

MR. LANGLEY: Yes, Judge.

THE COURT: Okay. So --

MR. LANGLEY: So first, no court has ruled on a common interest agreement. I think what would be very instructive for the Court would be to read the Kimball opinion that we filed. There's a notice of filing, it should show up. I think --

THE COURT: Okay. Before I would even look at the Kimball opinion, what are the facts? How would Mr. Lubin --

MR. LANGLEY: Well, the same motion --

THE COURT: -- have any basis --

MR. LANGLEY: -- was filed in -- or a similar joint motion was filed in the bankruptcy court. That was set for hearing today at 11 o'clock. Yesterday, Judge Kimball ruled on it and canceled the hearing.

In his order, you asked about a proof of claim in the bankruptcy case. In his sale order he says, three parties are entitled to the proceeds, FVP, Franklin, and Hi Bar.

In his ruling yesterday he says, I previously said the only parties entitled to this are FVP, Franklin, and Hi Bar. I now realize that was incorrect. Lubin, if the common interest agreement survives, has an

Page 19

interest.

He basically is kicking the ball back to you to decide whether or not the common interest agreement exists or is still in effect and, Judge, the common interest agreement, 2A says, Hi Bar hereby assigns to Spin Capital any and all Hi Bar claims.

MR. LETO: Can you finish the sentence?

MR. LANGLEY: Those are defined --

THE COURT: All right. Let me --

MR. LANGLEY: -- subject to the terms --

THE COURT: I'm looking at your objection, and that was filed, just so we're clear, at 11:40 this morning.

MR. LANGLEY: Yes.

THE COURT: So --

MR. LANGLEY: The motion was filed yesterday, I don't know, after 5:00.

THE WITNESS: Well, the objection --

MR. LANGLEY: And I don't know how it got set for hearing today. I wasn't noticed that --

THE COURT: Well, but --

MR. LANGLEY: -- a motion filed yesterday was being set for hearing today.

THE COURT: What motion?

MR. LANGLEY: The joint motion to approve

Page 20

the settlement.

THE COURT: No, that was filed July 27th.

MR. LANGLEY: July 27th?

THE COURT: Joint motion for settlement, urgent motion, expedited hearing requested.

MR. LANGLEY: Okay. Do --

THE COURT: That's the one that we're all discussing, correct?

MR. LETO: Yes.

MR. LANGLEY: Okay.

THE COURT: Okay. There is not --

MR. LANGLEY: I'm sorry, there was something filed yesterday. We filed a response, Judge. So, two --

THE COURT: There was a notice of filing yesterday.

MR. LANGLEY: The notice of filing is the Judge Kimball opinion, which addresses all these same issues.

MR. BRESLIN: Judge, to give you a little --

THE COURT: Let me look at this.

MR. BRESLIN: Or a bigger understanding, Judge Kimball originally scheduled a hearing for today on the motion to release the funds, the motion to approve the settlement, to release the funds in the bankruptcy court.

Mr. Lubin filed objections in the bankruptcy

5 (Pages 17 to 20)

Page 21

court. Judge Kimball canceled the hearing for today and sent the matter back for your Honor to determine whether or not Mr. Lubin had any legal grounds to interfere with our settlement agreement.

So the issue would have been moot --

THE COURT: No, I understand.

MR. BRESLIN: -- if we had a hearing before Judge Kimball, and so --

THE COURT: Let me look at this now.

MR. BRESLIN: -- he kicked it back to your Honor.

THE COURT: Hang on.

So at 3:48 yesterday there was a notice of filing of Judge Kimball's order. It's 11 pages. I haven't had a chance to see this or the objection, but I'm looking at it. It says, the Court orders and adjudges as follows, the expedited joint motion to enforce sale order and, two, to order the distribution of auction proceeds, the counsel for the FVP parties is denied. Two, the Court cannot and will not rule on the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their relative rights to the net proceeds held in the registry of this Court.

The parties are encouraged to obtain a ruling from another Court, having competent jurisdiction,

Page 22

or to present an agreement in a form of agreed order as directed in the show cause -- order to show cause. Three, the hearing on the expedited joint motion, et cetera, was canceled.

All right. Well, I take it I am another court having competent jurisdiction.

MR. KASEN: Your Honor, if I may very briefly, just to clarify some of the procedure that has gone on here.

THE COURT: Just so the court reporter --

MR. KASEN: There was a --

THE COURT: Hang on, hang on, hang on. This is -- just so the court reporter knows, this is Mr. Marks speaking, and you're speaking on behalf of Mr. Lubin, correct?

MR. KASEN: It's Mr. Kasen speaking on behalf of Mr. Lubin, that's correct.

There was a joint motion --

THE COURT: Hang on a second.

MR. KASEN: -- by two --

THE COURT: Why is that not showing up? Oh, who is Brett Marks then?

COURT REPORTER: I think you have something pinned.

THE COURT: I don't think it's -- did I pin

Page 23

it? I don't think I did.

COURT REPORTER: No?

THE COURT: No. Now it's pinned, now I'm going to remove the pin.

All right. Mr. Kasen.

MR. KASEN: There was a joint motion to approve this settlement filed some time ago, but no hearing was set on that particular motion, and then last night, sometime after 5 o'clock, I can give you the exact time, it was at 5:48 p.m., it's Filing Number 229282707, the three parties filed what they titled superseding urgent motion, expedited hearing required. The FVP parties, Franklin parties, and Hi Bar parties' joint motion to enforce settlement, consensual resolution, and issue order to bankruptcy court.

And with that particular filing, that took place last night at about quarter of 6:00, that's when a hearing was set for today. Previous to that filing, there had not been a hearing set on this matter.

MR. LANGLEY: Yes, Judge, that's what I was attempting to argue.

THE COURT: All right. Well, I thought this was on for all pending motions, and then -- for a status and all pending motions, and then at 2:30 was the separate motion for summary judgment against Mr. Lubin.

Page 24

MR. LANGLEY: I didn't understand that all pending motions included something filed yesterday after 5:00, Judge, but --

THE COURT: No.

MR. LANGLEY: -- I can --

THE COURT: Again, you keep saying something after 5:00. I was looking at the joint motion, and that's what I read, was the joint motion filed July 27th.

MR. LANGLEY: That wasn't set for today, to my understanding but, Judge --

THE COURT: Why would it not be?

MR. LANGLEY: The simple resolution, we don't have an objection -- the urgency that they're claiming is Judge Kimball wants the money out of the bankruptcy court. We're fine with the money coming to the state court registry or to Mr. Breslin's trust account. We just don't want it dispersed from there until you decide on a common interest agreement.

Mr. Leto says --

THE COURT: Well, I may be deciding that in about 15 minutes, right?

MR. LANGLEY: Well, your Honor --

MR. KASEN: One more thing that I'd like to raise is that they're asking, the joint parties are asking for an endorsement of the settlement agreements, the terms

6 (Pages 21 to 24)

Page 25

of which haven't been disclosed to anybody.

I'm not exactly sure how your Honor can endorse a settlement agreement without knowing the terms of that --

THE COURT: Wouldn't the bankruptcy -- you'd have to let the bankruptcy court know, right? Unless it's not -- is it confidential?

MR. BRESLIN: Judge, the agreement is not confidential. The agreement has resolved the issue between Hi Bar and Franklin, and we've notified the bankruptcy court that the matter is resolved, and we're notifying your Honor that the matter is resolved. I'm happy to supply a copy of the settlement agreement to your Honor, but that's never been an issue.

Mr. Lubin is saying, Mr. Lubin is not --

THE COURT: Hang on.

So as far as the percentages of the 2 million plus that's in the bankruptcy, you're not willing to put that on the record as to what each has?

MR. BRESLIN: Well, it's --

THE COURT: Is it supposed to be confidential?

MR. BRESLIN: Well, the settlement agreement is, 100 percent of the money in the bankruptcy court is going to the FVP parties.

Page 26

THE COURT: Okay, and then what does Franklin and Hi Bar get out of it?

MR. BRESLIN: Franklin, we have a separate agreement with Franklin, and they share the FVP proceeds, and what Hi Bar is getting is there's a release of claims against the individual members.

Don't forget, Judge, we're suing Yisroel Herbst for $7.5 million, just like we're suing Mr. Lubin for $7.5 million.

THE COURT: Okay.

MR. BRESLIN: So there's a release of Mr. Herbst, and there are other terms and conditions in there.

THE COURT: All right, and as far as Franklin goes?

MR. BRESLIN: Franklin gets its share of the bankruptcy proceeds pursuant to a separate agreement with FVP.

THE COURT: Okay.

MR. KASEN: Your Honor, what the parties are intending to do here is cut off any rights that Lubin may have to those funds, and (inaudible) them beyond his reach by cutting Hi Bar out of that --

THE COURT: No, I understand that, but -- of course that's what they're trying to do, and the question

Page 27

is whether it's legal, and so that's for the Court to decide that.

COURT REPORTER: Judge, and can you just tell me again who that was that was speaking?

MR. KASEN: And, your Honor --

THE COURT: It's Mr. Kasen. It looks like it's Michael Kasen, K-A-S-E-N. Is that who's speaking?

MR. LANGLEY: Yes.

MR. KASEN: That's right.

THE COURT: Yeah, for some reason, usually you pop up on the screen, but I'm not sure what's going on with the Zoom.

MR. KASEN: I'm not sure either. My camera seems to be frozen also.

THE COURT: Okay.

MR. KASEN: I have a funny face that hasn't moved since the first part of the hearing here, so I don't know if it's on my end or on your end, but I'm guessing it might be on my end, and I apologize, your Honor.

MR. BRESLIN: Judge, I left out one thing.

You asked me about the bankruptcy proceeds. A hundred percent of the bankruptcy proceeds go to the FVP parties, but there are funds outside of the bankruptcy court that go to the Hi Bar parties.

THE COURT: Okay.

Page 28

MR. BRESLIN: A smaller amount.

MR. LANGLEY: So, Judge, we don't have a problem with the funds going someplace other than the bankruptcy court registry. We just don't want that dispersed until you rule on the common interest agreement. The common interest agreement says Hi Bar hereby assigns to Spin Capital any and all Hi Bar claims subject to the terms and conditions of this agreement.

THE COURT: All right. Do you want to go into --

MR. LANGLEY: And part two is --

THE COURT: -- the motion for partial --

MR. LANGLEY: Part two is --

THE COURT: Hang on. Do you want to go into the motion for partial summary judgment then? Because --

MR. LANGLEY: I'd be happy to if you want to argue that today, yes.

MR. BRESLIN: You're Honor, the motion for partial summary judgment --

THE COURT: That's based on collateral estoppel. You're saying that all of these issues have already been resolved in a separate case in Michigan.

MR. LANGLEY: No, no, no, that's the Franklin issue.

MR. BRESLIN: Yes, that's the --

7 (Pages 25 to 28)

Page 29

MR. LANGLEY: That's the Franklin assignment issue. That's not the agreement between Hi Bar and --

THE COURT: But that was against Mr. Lubin also, wasn't it?

MR. LANGLEY: Yes, but that doesn't concern the common interest agreement.

THE COURT: Okay, so that's something different.

MR. BRESLIN: That is --

MR. KASEN: Your Honor, I think that it's important to note -- again, it's Michael Kasen speaking, that Mr. Leto continues to espouse the idea that Hi Bar has the authority, pursuant to the common interest agreement, to terminate the agreement for any reason whatsoever, but the agreement is really quite clear. In Paragraph 2 under the common interest agreement, it states that they have the authority to terminate the common interest agreement, and in their sole discretion if they're not satisfied with certain enumerated -- with the defense of certain enumerated counterclaims, all of which have been dismissed, the common interest agreement appears to only allow termination for that one particular reason, not for any reason at all, but only if there's a dissatisfaction with that particular, with the defense of particular counterclaims, and that has not been asserted

Page 30

by anybody, and I don't think that it could be asserted by anybody, that there's a dissatisfaction with the way the counterclaims were defended --

MR. LETO: Excuse me, excuse me, Mr. Kasen is new to this, so maybe he just doesn't understand what happened here. There are counterclaims, because we filed a lawsuit. FVP filed a separate action, which became their counterclaims, and the action we filed became this case.

MR. KASEN: No --

(Two people speaking.)

MR. LETO: Excuse me, excuse me, excuse me, I'm talking, Mr. Kasen.

THE COURT: Hang on, hang on, hang on, hang on, hang on, hang on. All right.

MR. KASEN: But the common interest agreement --

THE COURT: All right. Mr. Kasen, I'm not even sure how to mute you because I'm not even sure where your voice is coming through on the Zoom, but I need you to stop for one sec.

All right. So let me -- so right now, I think the only issue that I think I need to resolve is if Mr. Lubin or Spin has any right to, I guess, stand in in this case and contest the settlement, that's the issue.

Page 31

Not whether there's any merits to a claim between Lubin and Spin and Hi Bar.

I mean, there might be a separate lawsuit there or whatnot down the road. I just need to know -- because right now, as far as I'm aware, the parties that have resolved the issue of the proceeds of the bankruptcy court were the three that were named, and the question is whether Mr. Lubin or Spin, I guess, had a right to be part of that conversation, and so that's the unique issue.

And so, Mr. Langley, the unique issue there, where in this common interest agreement does it say that your client would have a right to, I guess, be in the room where it happens, right?

MR. LANGLEY: Yes, Judge, 2A is the right to the Hi Bar claims, and 2B is the full authority to prosecute and settle the claims. I have a highlighted copy, if you'd like, Judge.

THE COURT: That's fine. I was about to print it out so I didn't have to keep looking at the screen.

MR. LANGLEY: It's right in here.

THE COURT: This is, it's the 11-page common interest agreement, right?

MR. LANGLEY: Yes.

And, Judge, if I could also point out --

Page 32

THE COURT: Let me just read this into the record. So Subsection 2, or Section 2 of the agreement says, prosecution and settlement of litigation claims and defenses -- and defensive counterclaims. A, from and after the effective date, Hi Bar hereby assigns to Spin Capital any and all Hi Bar claims subject to the terms and conditions of this agreement, including but not limited to Spin Capital's obligation to assign all Hi Bar claims back to Hi Bar in the event it exercised its rights pursuant to Section 2F hereof.

So if I go down to 2F, that's titled termination provisions, and it says, small ii, or small double i, in the event Hi Bar, in its absolute discretion, is not satisfied with Spin Capital's management of defensive counterclaims against Hi Bar, then Hi Bar shall provide written notice of such decision, which shall result in a termination of this agreement as of the date of such notice, and that's --

MR. KASEN: Your Honor, I think it's important to note that the counterclaims discussed in Paragraph 2F are defined in the agreement above.

THE COURT: Okay.

MR. LANGLEY: Yes, Judge, and --

THE COURT: And so above --

MR. LANGLEY: They were dismissed before --

8 (Pages 29 to 32)

Page 33

MR. LETO:  That's not true.

MR. LANGLEY:  They were dismissed before Mr. Leto ever got involved in the case, and they were dismissed without the required written notice saying we're unhappy with the defense of the counterclaims.

THE COURT:  All right.  So your argument is the only time they would have had the absolute discretion to terminate is before the counterclaims were dismissed?

MR. LANGLEY:  Exactly, Judge, that's --

THE COURT:  Because that's what the plain language --

MR. LANGLEY:  And they were defined, and they were both dismissed before Mr. Leto ever got hired.  So, that might be --

MR. LETO:  You're -- he's misstating the contract.

MR. LANGLEY:  -- why.

(Multiple people speaking.)

MR. LETO:  He's misstating the contract, if we look at Part H --

THE COURT:  Well, there's no misstating it, it doesn't say that in the contract, but --

MR. LETO:  Well, the definition --

COURT REPORTER:  Judge, I can only take one at a time.

Page 34

MR. LETO:  On Subpart H, which is on Page 2, it talks about counterclaims, but it says at the end, when it defines the term counterclaims, it includes certain defendants and FSG have asserted, and may assert in the future.

THE COURT:  All right.  Let me --

MR. LETO:  So it talks about --

THE COURT:  -- read H.

MR. LETO:  -- potential.

THE COURT:  H, and this is on Page 2, this is actually under recitals.

MR. LETO:  Correct.

THE COURT:  H, in the New York litigation, on or about March 18th, 2022, Excell Auto Group, Inc. filed a verified third-party complaint against Spin Capital, asserting certain claims and causes of action against Spin Capital, and certain defendants filed counterclaims against Hi Bar.

On or about March 25th, 2022, Franklin Capital Group, LLC, initiated an action captioned Franklin Capital Group, LLC versus Spin Capital, LLC, and Hi Bar Capital, LLC in the United States District Court for the Eastern District of Michigan, the Michigan court.  That's Case Number 2022-193300-CV, the Michigan litigation, and that's the subject of the motion for partial summary

Page 35

judgment.

MR. LANGLEY:  No, no, that's a different --

THE COURT:  That's a different Michigan case, okay.

Consequently, as part of -- and in conjunction with the New York litigation and the Michigan litigation, and potentially in the Florida litigation and the bankruptcy proceedings, certain defendants in FCG, LLC have asserted, and may assert in the future, claims, causes of actions, and counterclaims against one or both parties, collectively the counterclaims.  So all of that is collectively the counterclaims?

MR. LETO:  Yes, your Honor, which includes this case.

THE COURT:  All right, and so --

MR. KASEN:  Your Honor, no matter how you interpret it, there hasn't been an assertion by Hi Bar in an attempt to terminate this about their dissatisfaction with the defense of counterclaims.

The only basis for termination of the agreement that Hi Bar has espoused is that they -- that Mr. Leto wasn't paid his fee.

MR. LETO:  That's not true either.  In my termination letter it says, in addition to the nonpayment, which is required --

Page 36

THE COURT:  Now, what's the date of your termination letter?

MR. LETO:  April 3rd, 2024, on Paragraph 2, I can give your Honor a copy, it also says, finally, and for reasons unknown and without any factual basis, Mr. Lubin has taken litigation positions that are adversarial to Hi Bar.  That is exactly -- that's not only nonpayment, it's also what he did in this actual case that led to the termination, meaning Hi Bar was more than dissatisfied with his actions.

THE COURT:  And it says right there in that letter, April 3rd, 2024, that Hi Bar is exercising its absolute discretion.

MR. LETO:  It doesn't use --

(Multiple people speaking.)

MR. BRESLIN:  We should put that in the record, Matt.

MR. LANGLEY:  It says, Lubin didn't pay Mr. Leto's attorney's fees, so the contract is terminated.  That's basically what it says.

There was never the required written notice saying we're dissatisfied with the defense of the counterclaims, and the counterclaims that were contemplated when this agreement was written were the two that got dismissed.

9 (Pages 33 to 36)

Page 37

There are other claims pending here. I don't know that any would be considered counterclaims or direct claims by a plaintiff, and so there's never been any dissatisfaction with the defense of those claims.

It was Mr. Leto who was defending those claims. It was Mr. Leto who was hired.

The other document you have to see, Judge, is the authority to represent where my client --

THE COURT: Let me read this for a second.

So it says here, referring to -- those actions referring to failure to pay, as well as litigation positions that are adversarial to Hi Bar. Those actions, singularly and collectively, constitute a breach of the JDA, which is a reference to the common interest and joint litigation agreement, and so it says here, based upon Mr. Lubin and Spin's breach of the JDA and fee agreement, Hi Bar is no longer obligated to perform under any of the provisions set forth therein, including but not limited to the obligation to allow Spin and/or Mr. Lubin the right to engage in settlement discussions and case strategy, or Spin's right to receive payment under Section 3 of the JDA.

So I think that's pretty clear, and then it even goes on and say, to be clear, given Mr. Lubin and Spin's breach, in the event Hi Bar resolves any pending

Page 38

matters, Spin is not entitled to payment under the priority of distribution section, and all funds will be --

MR. KASEN: Judge, that letter --

THE COURT: -- given to Hi Bar.

MR. KASEN: -- that letter is a misinterpretation or a blatant ignoring of the language of the --

THE COURT: That's your argument, but that's for this Court to --

MR. LANGLEY: Judge --

THE COURT: -- make that determination.

MR. LANGLEY: -- Mr. Leto was hired under the joint representation agreement to represent Spin in the name of Hi Bar. It says in the common interest agreement, Hi Bar will remain as the plaintiff, but will do so on behalf of Spin.

MR. BRESLIN: Judge, may I be heard?

MR. LANGLEY: This is Mr. Leto saying Hi Bar is not happy with Mr. Leto's defense of the counterclaim. I mean, Mr. Leto was representing Spin's interest. There was no record -- there was no written notice, as required under 2F, from Hi Bar saying we're not satisfied with your defense of the counterclaims.

MR. BRESLIN: Judge --

MR. LANGLEY: Mr. Leto was the person that,

Page 39

if there were new counterclaims, and I don't believe that's what was contemplated in the common interest agreement, certainly the prior counterclaims that were contemplated were dismissed successfully. Anything new that came up, it was up to Mr. Leto to defend those.

There was never anything from Hi Bar saying we're unhappy with Mr. Leto's defense of any counterclaims.

What you just read there is Mr. Leto is unhappy that he didn't get paid, so he alone is terminating the common interest agreement. That's ridiculous.

MR. BRESLIN: Judge, may I be heard?

MR. LANGLEY: And I have one more thing. This is a motion filed a year ago, Judge, and it states, as is seen in the authority to represent, and inconsistent with the representations to this Court from the inception of this case, this entire time Mr. Leto has been secretly representing Josh Lubin and Spin, in addition to other clients, Herbst and Hi Bar. This was written by Mr. Breslin.

MR. BRESLIN: Yes, Judge --

MR. LANGLEY: This is his motion from a year ago, recognizing exactly what I'm arguing, that Mr. Leto is representing the interests of Spin and Lubin.

Page 40

MR. BRESLIN: Judge, very, very briefly.

THE COURT: Hang on, hang on.

Mr. Langley, are you finished?

MR. LANGLEY: Yes.

THE COURT: All right. Go ahead.

MR. BRESLIN: Judge --

MR. LANGLEY: Thank you.

MR. BRESLIN: -- the FVP parties have been dealing with Mr. Leto for the past two years, since we filed this lawsuit. Hi Bar has been represented by Mr. Leto. We've dealt with him. He's been litigating this case from the beginning.

Franklin has been dealing with Mr. Leto, who has represented Hi Bar from the beginning. We have trial in one month. We have come to a settlement agreement. Now we have a settlement agreement. All of a sudden, Mr. Lubin is saying, whoa, whoa, whoa, wait a second.

If he had a voice in this, he should have raised it a long time ago. He's estopped from raising it now. A, he doesn't have standing.

Assuming our settlement agreement breached that agreement between him and Mr. Herbst and Hi Bar and Spin, he can sue them, but that doesn't negate the validity of our settlement agreement. Mr. Lubin doesn't have the power.

10 (Pages 37 to 40)

Page 41

THE COURT: No, I understand.

All right. So I am going to grant the joint motion to approve the settlement, and based on just the plain language in the common interest and general litigation agreement, and based on the April 3rd, 2024 letter terminating that agreement, and the rights under Paragraph 3 of that agreement, which is the only basis that Mr. Lubin would have had to even raise any right to any of these proceeds, I am going to grant the joint motion. I do not see how Mr. Lubin has any right to stand in and contest the settlement.

Certainly he may have claims against Hi Bar and against Mr. Leto and whatnot, but that has nothing to do with the settlement for the proceeds in the bankruptcy court, and so based on all of that, I am granting the joint motion for settlement.

MR. LANGLEY: Judge, I would like --

THE COURT: And so the --

MR. LANGLEY: -- to request a brief stay of the order, giving us a chance to do an emergency --

MR. BRESLIN: Judge --

MR. LANGLEY: -- appeal.

You know, what Mr. Breslin is saying is we can go sue Hi Bar in New York. That's meaningless. Once the funds are gone, the funds are gone. So we'd like -- I

Page 42

would respectfully request a stay of the order for 30 days to --

THE COURT: All right.

MR. LANGLEY: -- give us a chance --

MR. BRESLIN: Judge, Judge, then we have to try the case. You know, then we have --

MR. LETO: Is he posting a bond? I mean, it's --

MR. BRESLIN: Judge, I vigorously --

THE COURT: Hang on, hang on, hang on. All right.

MR. BRESLIN: If they want to take an appeal --

THE COURT: It's an ore tenus motion to stay, that's denied.

MR. BRESLIN: Thank you.

THE COURT: All right. If they want to take it on appeal, my guess is they're going to have to post a supersedeas bond.

MR. DORSEY: Judge, this is Mr. Dorsey for the Franklin parties. Just one point of clarification.

Judge Kimball has been very clear, he thinks he lacks subject matter jurisdiction to determine any facet of this dispute.

Can the order granting the motion instruct

Page 43

the bankruptcy court to release the funds to Mr. Breslin's escrow account?

THE COURT: I can't order the bankruptcy court to do that.

What I can order is that, I do make a ruling that Mr. Lubin does not have an interest for the reasons stated on the record, does not have an interest.

MR. BRESLIN: Thank you.

MR. DORSEY: Thank you, Judge.

MR. BRESLIN: That's plenty.

MR. KASEN: Your Honor, I would ask -- if that's your Honor's ruling, I respect that.

I would ask that the Court is of that ruling require the full text of this particular settlement agreement and any related settlement agreements be made public, or at least provided to Mr. Lubin.

MR. LANGLEY: Judge --

MR. LETO: Under what authority? Discovery closed, like, weeks ago.

MR. LANGLEY: We filed a notice to produce at the last hearing on behalf of Lubin. At the same hearing --

THE COURT: All right. Is there an objection to turning over the settlement agreement? I don't even know, is it titled confidential or not?

Page 44

MR. LETO: There's no confidential --

MR. BRESLIN: I have no objection. I think he's entitled to see it.

THE COURT: All right. So Mr. Kasen, your client will get a copy of the settlement.

MR. KASEN: And all related settlement agreements, because the (inaudible) --

THE COURT: Well --

MR. KASEN: -- one settlement agreement that puts all the money to FVP, then there are separate settlement agreements between the FVP parties and the Franklin parties, and separate settlement agreements then between the FVP parties and Hi Bar parties.

MR. LETO: There's only one agreement with Hi Bar, your Honor.

THE COURT: All right. I guess the starting point will be the settlement agreement between the three parties, which includes Hi Bar. If there's a separate settlement agreement, I have no -- first of all, is there an objection to turning that over?

MR. BRESLIN: Judge, the Franklin parties and FVP have a common interest agreement, and in that common interest agreement is a blanket agreement. So that would apply to any of these funds.

MR. LANGLEY: But FVP --

11 (Pages 41 to 44)

Page 45

THE COURT: And is that confidential?

MR. BRESLIN: Well, it's stated as confidential. No one has ever moved to produce it.

THE COURT: All right. I would defer that one for another day then.

MR. BRESLIN: Right, thank you.

MR. LETO: We'll provide the Hi Bar settlement.

THE COURT: All right.

MR. BENNARDINI: Can the Farache --

MR. LANGLEY: Thank you, Judge.

MR. BENNARDINI: Can the Farache defendants get a copy of that, too, please, Judge?

MR. LETO: I will send it to you.

MR. BENNARDINI: Thank you.

MR. BRESLIN: I'm glad that was the easy one, Judge.

(Laughter.)

THE COURT: Yeah, I jinxed myself.

MR. BRESLIN: Let's move on to the tougher ones.

THE COURT: All right. So that takes care of the -- well, that takes care of the trial then as well, as long as --

MR. BRESLIN: It takes care of --

Page 46

THE COURT: No, I'm sorry, the first trial.

MR. BRESLIN: -- a lot of it.

MR. DORSEY: Most of it.

THE COURT: There's still some issues though?

MR. BRESLIN: Right, there's still the remaining claims against Mr. Lubin. There is a default against Mr. Getter (phonetic). So, and there's cross-claims by Franklin against Mr. Lubin. So, the first trial is --

THE COURT: And so that would not --

MR. BRESLIN: -- trimmed down dramatically.

THE COURT: So that one could not be done at the same time as the Farache defendants?

MR. BRESLIN: There are -- it would be very difficult to try them at the same time. They're completely separate issues, Judge, and that's why they were separated in the first place, and the exhibits in reference to Mr. Lubin's liability has nothing to do with the Farache liability. It is just, it's apples and oranges, Judge.

And we have the --

THE COURT: So let me ask you, if you're releasing all claims to Hi Bar as part of the settlement --

Page 47

MR. BRESLIN: We're releasing Yisroel Herbst as an individual defendant.

THE COURT: Okay.

MR. BRESLIN: The Franklin parties are releasing Yisroel Herbst and Mordecai Herbst, his son, as individual defendants.

Hi Bar remains a party for the purposes of piercing the corporate veil to achieve liability against Mr. Lubin, who has told everyone who will listen, that he is, in fact, Hi Bar.

So Hi Bar remains a party, but they will not be -- under the terms of the settlement agreement, they will not be appearing at the trial. We will not be seeking a judgment against Hi Bar, and to the extent that any verdicts are submitted to the jury regarding Hi Bar, we'll only be seeking a judgment against Mr. Getter and Mr. Lubin. So --

THE COURT: All right.

MR. BRESLIN: -- that's how the settlement agreement is laid out.

THE COURT: All right.

MR. KASEN: Your Honor, I have a -- this seems a little bit counterintuitive that we just spent the last 45 minutes arguing that Lubin has no right as standing in the shoes of Hi Bar, and now we're going to

Page 48

have a whole trial to determine if Lubin is, in fact, Hi Bar?

Judge --

MR. BRESLIN: We're suing him for fraud. We're suing him for seven and a half million dollars that we loaned based on misrepresentations that he made to my client, and --

MR. KASEN: Well --

MR. BRESLIN: This other issue, this other issue, the priority issue, has been resolved. So the priority issue is resolved. The fraud issue needs to be tried to the jury.

THE COURT: I understand.

MR. KASEN: But the priority issue is resolved by you arguing that Mr. Lubin has no connection at all to Hi Bar, and now you're going to argue that actions that were taken by Hi Bar --

THE COURT: All right. We're not going to try the case right now.

So, all right, what would be next that you all need to resolve?

MR. DORSEY: Franklin has a summary judgment motion that was set for 2.30.

THE COURT: Okay. That's against Mr. Lubin?

MR. DORSEY: Mr. Lubin.

12 (Pages 45 to 48)

Page 49

MR. BENNARDINI:  We have three motions set for 1:30, Judge.

THE COURT:  All right.  What were those?

MR. COHEN:  I got an easy one, Judge.

MR. BENNARDINI:  Number one is, your Honor ruled back on June 23rd that the words usury, loan sharking, illegal, and criminal are out with respect to speaking about the Faraches, and typically, your Honor was real clear in your order, in fact your Honor at that very hearing, said --

THE COURT:  Are we getting into that motion?  That's what I want to know.

MR. BENNARDINI:  I don't know, but that's what it's about.

THE COURT:  Right.

MR. BENNARDINI:  It's just a motion to have the Court enter an order as to what you already ordered on June 23rd, that's our motion.

THE COURT:  All right.  I need to go get my notes from June 23rd.

MR. BENNARDINI:  I've got a transcript for you.

THE COURT:  All right, but I want to take a look at my notes as well.

MR. BENNARDINI:  Thank you, sir.

Page 50

THE COURT:  So let me do that, let me take a quick break.

Just so I have a little bit of a heads-up, so what three motions, Mr. Bennardini, do you have?

MR. BENNARDINI:  I just have one.  The second one is --

MR. COHEN:  It's our motion.  Yeah, Judge, it's our motion for clarification, and also to get a more clear outlook on the ruling from the Court on the term, quote/unquote, usury.

So, it -- and we laid it out pretty clearly in the motion, in terms of what we have to prove, and the intent that we have to prove, and the motive that's involved.  So that's kind of the revolving door here, is that in order to get to the motive, we have to use the term usury.  The motive --

MR. BENNARDINI:  We're arguing it, Judge.

MR. COHEN:  No, I'm not arguing it.  I'm just saying, that's what it's about.

THE COURT:  It's a motion for clarification.

MR. COHEN:  That's --

MR. BENNARDINI:  It's actually, Judge --

(Multiple people speaking.)

MR. BRESLIN:  The second one is on Mr. Gray, it's my motion, it's the scope of -- I have an issue to

Page 51

present to your Honor regarding data entry and expert testimony, and the third motion is Mr. Buschel is going to handle it, where we're seeking a jury instruction on the resolution of the ownership issues of AWB that your Honor has already ruled on, so those are the three, and then the Franklin summary judgment.

MR. BENNARDINI:  Your Honor, the first motion is actually our motion --

THE COURT:  Okay.

MR. BENNARDINI:  -- to have the Court enter an order based upon what you ordered orally, which is what the Court instructed us to do when we could not get the other side to agree to the terms of an order.

THE COURT:  All right.  I'll have to take a look at that.

MR. BENNARDINI:  Thank you.

THE COURT:  And --

MR. BRESLIN:  But it's our motion.

THE COURT:  Okay.  So those three motions.

MR. BRESLIN:  Yes, sir.

THE COURT:  And then we have the motion for summary judgment at 2.30.

All right.  If I remember correctly, though, as far as the motion in limine regarding usurious, loan shark and things of that nature, I thought that was all

Page 52

agreed --

MR. BENNARDINI:  No.

THE COURT:  -- that you were not going to -- I thought they were not going to use certain terms, I thought that was agreed.

MR. BENNARDINI:  Well, no.  I can tell you what you said.

MR. BRESLIN:  Let him leave.

THE COURT:  I'm going to go grab my notes, and then we'll get into that.

MR. BENNARDINI:  I want to read what he said.

THE COURT:  All right.  I'm going to take a --

MR. BENNARDINI:  Thank you.

THE COURT:  We'll take a 10-minute break for the court reporter, and then we'll just continue on to finish everything else up.

MR. BENNARDINI:  Thank you.

THE COURT:  Okay.

MR. LETO:  And, your Honor, because Hi Bar has no other issues today, is it okay if I'm excused?

THE COURT:  No.

You are welcome to leave.

MR. LETO:  I may not want to leave, but if

13 (Pages 49 to 52)

Page 53

that's okay?

THE COURT:  All right.

MR. LETO:  Thank you, your Honor.

MR. COHEN:  It's been really exciting.

(A recess was taken, after which the following proceedings were had:)

(Thereupon, the excerpt was concluded.)

Page 54

CERTIFICATION

STATE OF FLORIDA      :
COUNTY OF MIAMI-DADE  :

I, Cheryl L. Jenkins, RPR, RMR, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were taken before me at the date and place as stated in the caption hereto on page 1; that the foregoing computer-aided transcription is a true record of my stenographic notes taken at said proceedings.

WITNESS my hand this 18th day of August, 2025.

_____

CHERYL L. JENKINS, RPR, RMR
Court Reporter and Notary Public
in and for the State of Florida at Large
Commission #HH 170910
December 27, 2025

14 (Pages 53 to 54)